UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>LOUISIANA HEALTH SERVICE INDEMNITY COMPANY D/B/A BLUECROSS BLUESHIELD OF LOUISIANA<br><br>v.<br><br>PFIZER, INC. ET AL. | Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin |

**LOUISIANA HEALTH SERVICE INDEMNITY COMPANY D/B/A BLUECROSS BLUESHIELD OF LOUISIANA'S MOTION FOR RECONSIDERATION OF ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

In its December 10, 2010 Memorandum and Order granting Defendant's Motion to Dismiss (the "Order," Dkt. No. 3154), the Court found that the Third-Party Payor ("TPP") Class Plaintiffs could not establish causation because they did not directly rely on misrepresentations by Defendants, and because they presented no evidence as to how many or which physicians who prescribed Neurontin to their members relied on fraud. Class Plaintiff, Louisiana Health Service Indemnity Company d/b/a BlueCross BlueShield of Louisiana ("BCBSLA") moves for reconsideration of the Order as to its ability to prove causation, regardless of aggregate proof, and for reconsideration of the Order as it pertains to its unjust enrichment claims.

**II.   BCBSLA OFFERED EVIDENCE THAT IT DIRECTLY RELIED UPON MISREPRESENTATIONS BY DEFENDANTS**

Facts regarding BCBSLA were submitted in Class Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 1754), the accompanying 314-page statement of facts ("SOF," Dkt. No. 1760) and supporting declarations and exhibits

1

(Dkt. Nos. 1755, 1759, 1761). Therein, BCBSLA did offer evidence that members of its internal pharmacy and therapeutics committee had direct contact with defendants' representatives who delivered fraudulent messages regarding off-label uses of Neurontin. See SOF ¶¶ 754, 756-766. BCBSLA relied on that information. See SOF ¶ 755. In addition, BCBSLA's pharmacy benefit managers ("PBM's"), at all relevant times, acted as the contractual and *de facto* agent of BCBSLA in design, control, and operation of BCBSLA's formularies, which could have been used to restrict off-label uses of Neurontin, and/or reduce the amounts paid for Neurontin by changing Neurontin's status on those formularies. See SOF ¶¶ 711-714, 720, 724, 726, 729, 734-738, 742-745. Only one corporate Rule 30(b)(6) deposition was taken of each of BCBSLA's three PBMs during the relevant time period and no fact depositions of PBM employees were taken. None of the corporate witnesses for any PBM were members of the PBM's pharmacy and therapeutics ("P&T") committee, and the deposition topics did not cover and/or the PBMs refused to allow their corporate witnesses to testify on topics concerning the PBMs' P&T committees. Defendants' marketed directly to PBM's and their P&T committee members through Defendants' Healthcare Management Customer Business Unit ("HCM CBU"). Each of BCBSLA's PBM's during the period from 1994 through 2004, was assigned a National Account Manager from Defendants' HCM CBU, who provided information and materials to the PBM and their P&T committee, including information and materials regarding fraudulent off-label uses of Neurontin.[1] BCBSLA should be allowed to take the fact depositions of each of its PBM's P&T committee members to determine what information and materials they received from Defendants regarding off-label uses of Neurontin, and whether or not those committee members relied upon any fraudulent information about off-label uses of Neurontin they received from Defendants in

---

[1] See October 1-2, 2007 deposition of Chrisopher DeSimone at pp. 607:1-609:10.

placing or keeping Neurontin in their formularies, or at a preferred tier of the formularies, or in making any recommendations to BCBSLA about instituting and cost control mechanisms for Neurontin.

### III. BCBSLA DID OFFER EVIDENCE THAT CERTAIN, IDENTIFIABLE PHYSICIANS RELIED UPON MISREPRESENTATIONS BY DEFENDANTS

BCBSLA offered evidence that numerous physicians, including neurologists, that wrote prescriptions for Neurontin that BCBSLA paid for were detailed by Pfizer and received materials containing and were told fraudulent messages regarding off-label uses of Neurontin. BCBSLA offered evidence that only after receiving these materials and hearing these fraudulent off-label messages did the physicians begin prescribing Neurontin at all, or the prescriptions of Neurontin skyrocketed. See SOF ¶¶ 779-805. These prescriptions are identifiable by physician name in the BCBSLA claims data. *Id*. These prescribers have not been deposed. BCBSLA should be allowed to take the depositions of these, and other Neurontin prescribing physicians, to determine whether or not those physicians indeed relied upon the fraudulent information about off-label uses of Neurontin they received from Defendants.

### IV. BCBSLA'S UNJUST ENRICHMENT CLAIMS SHOULD NOT BE DISMISSED

In the Court's Order dated June12, 2006, (Docket No. 356), the Court denied Defendants' Motion to Dismiss Class Plaintiffs' claims for unjust enrichment. Class Plaintiffs claims under the theory of unjust enrichment should not be dismissed. An unjust enrichment claim rests on the equitable principle that "[a] person who is unjustly enriched at the expense of another is required to make restitution to the other." Restatement (Third) of Restitution and Unjust Enrichment § 1. Consistent with this principle, BCBSLA's claims for unjust enrichment share a core of common elements: (1) plaintiff conferred a benefit upon the defendant; (2) defendant appreciated or knew of the benefit, and (3) defendant accepted or retained the benefit under such

circumstances as to make non-payment inequitable or unjust.[2]  All of these elements are satisfied.  BCBSLA conferred a benefit on Defendants when it bought, and paid for, Neurontin that should never have been prescribed.  BCBSLA spent over $11 million for Neurontin.  See SOF ¶ 778.  Defendants not only voluntarily accepted and retained these payments, but it did so with full knowledge and awareness that, as a result of its wrongdoing, BCBSLA paid for Neurontin when they otherwise would not have done so.  Under these circumstances, BCBSLA has demonstrated that as a matter of justice, equity, and good conscience, Defendants should not be allowed to retain the enormous benefit that BCBSLA conferred, and instead must disgorge it.[3]

## CONCLUSION

For all the foregoing reasons, Class Plaintiff, BCBSLA respectfully requests that the Court reconsider it's decision and not dismiss it's RICO and state consumer protection act claims, and to  reinstate its Unjust Enrichment Claim.

---

[2] *See, e.g. Sharp v. Kosmalski*, 40 N.Y.2d 119, 123 (1976) ("A person may be deemed to be unjustly enriched if he (or she) has received a benefit, the retention of which would be unjust (Restatement, Restitution, § 1, Comment a)"); *id*. at 123 (it "was just for this type of case that there evolved equitable principles and remedies to prevent injustices. Equity still lives"); *Wolf v. Wolf*, 356 Pa. Super. 365, 374 (Pa. 1986) ("essential elements of 'unjust enrichment' are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment for value"), *overturned on other grounds, Van Buskirk v. Van Buskirk*, 527 Pa. 218 (Pa. 1991); *Matagorda County v. Tex Ass'n of Counties County Gov't Risk Management Pool*, 975 S.W.2d 782, 784; *See also VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519, 526 (1994); *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 144 N.J. 564, 575, 677 A.2d 747, 752-53 (1996) (observing that "the key element" of a restitution claim "is that one party has been unjustly enriched at the expense of another.").

[3] See, e.g., In re Lorazepam & Clorazepate Antitrust Litig., 295 F. Supp. 2d 30, 50-51 (D.D.C. 2003) (finding that end payor plaintiffs adequately stated claim for unjust enrichment where they "absorbed millions of dollars in overcharges, which significantly increased Mylan's revenue and net earnings."); In re Cardizem CD Antitrust Litig., 105 F. Supp. 2d 618, 671 (D. Mich. 2000) (denying motion to dismiss unjust enrichment claim where "Plaintiffs here have alleged that they conferred a benefit, in the form of overpayments and increased profits, on Defendants, that Defendants accepted that benefit and that it would be unjust under the alleged circumstances for Defendants to retain that benefit."); see also In re Terazosin Hydrochloride Antitrust Litigation, 220 F.R.D. 672 (S.D. Fla. 2004) (certifying as class action endpayors' claim against drug company for unjust enrichment where plaintiffs alleged that company earned additional profit by suppressing generic competition).

Dated: December 20, 2010                    Respectfully Submitted,


                                            By:   **/s/ James R. Dugan**
                                            James R. Dugan, Esq.
                                            Douglas R. Plymale, Esq.
                                            Dugan Law Firm, PLC
                                            365 Canal Street, Suite 1000
                                            New Orleans, LA 70130

                                            *Member of the Class Plaintiffs' Steering Committee and Attorneys for Louisiana Health Insurance Indemnity Company D/B/A BlueCross BlueShield of Louisiana*

                                            Charles A. O'Brien
                                            BlueCross BlueShield of Louisiana
                                            5525 Reitz Ave.
                                            P.O. Box 98029
                                            Baton Rouge, Louisiana 80809

                                            *Counsel For Louisiana Health Service Indemnity Company D/B/A Bluecross Blueshield Of Louisiana*


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on December 20, 2010.

                                            /s/ James R. Dugan