# EXHIBIT K

```
 1                   UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3    _____

 4    IN RE:  NEURONTIN MARKETING,
      SALES PRACTICES AND PRODUCTS
 5    LIABILITY LITIGATION,                Civil Action
                                           No. 04-10981-PBS
 6
                                           December 1, 2010
 7                                         9:08 a.m.
      _____
 8

 9

10              TRANSCRIPT OF STATUS CONFERENCE

11           BEFORE THE HONORABLE PATTI B. SARIS

12              and HONORABLE LEO T. SOROKIN

13                UNITED STATES DISTRICT COURT

14             JOHN J. MOAKLEY U.S. COURTHOUSE

15                     1 COURTHOUSE WAY

16                    BOSTON, MA   02210

17

18

19

20
                     DEBRA M. JOYCE, RMR, CRR
21                    Official Court Reporter
                  John J. Moakley U.S. Courthouse
22                 1 Courthouse Way, Room 5204
                          Boston, MA   02210
23                         617-737-4410

24

25
```

```
 1    APPEARANCES:

 2    FOR THE PLAINTIFFS:

 3    ANDREW G. FINKELSTEIN, ESQ.
      KENNETH B. FROMSON, ESQ.
 4    Finkelstein & Partners, LLP.
      436 Robinson Avenue
 5    Newburgh, New York  12550

 6    LEVI BOONE, III, ESQ.
      Boone Law Firm PA
 7    401 West Sunflower Avenue
      Cleveland, MS 38732-1772
 8    662-843-7946

 9    JACK HARANG, ESQ.
      Law Offices of Newton B. Schwartz
10    1911 Southwest Freeway
      Houston, Texas 77098
11
      FOR THE DEFENDANTS:
12
      MARK S. CHEFFO, ESQ.
13    CATHERINE STEVENS, ESQ.
      Skadden, Arps, Slate, Meagher & Flom LLP
14    Four Times Square
      New York, NY 10036
15    212-735-3000

16    CHAD W. HIGGINS, ESQ.
      Goodwin Procter LLP
17    Exchange Place
      53 State Street
18    Boston, MA 02109
      617-570-1229
19

20

21

22

23

24

25
```

|  |  |
|---|---|
| 1 | come back again.  The same thing with the template discovery, a |
| 2 | few pages, that's wholly inadequate.  The whole idea that we |
| 3 | can't take prescribers, here's why:  Because you've ordered, as |
| 4 | I think the template is supposed to produce 10 years of |
| 5 | provider information, including prescribers, largely most of |
| 6 | these people have one or two providers who are not even the |
| 7 | prescriber.  So we get there and we find out those aren't even |
| 8 | the people who prescribed.  We can't produce sales reps unless |
| 9 | we know who the prescribers are.  So this isn't a motion to |
| 09:47 10 | compel, but that's a litany of problems that we've had. |
| 11 |           JUDGE SOROKIN:  Thank you.  That's helpful.  It |
| 12 | potentially raises two issues that I want you to appreciate. |
| 13 | One is that discovery has to be done in compliance.  It's not |
| 14 | enough to send a form to a plaintiff in a case like this and |
| 15 | say give me this information and get back a little bit of |
| 16 | information that upon thoughtful review somebody experienced in |
| 17 | this case would know is not complete and just turn it over to |
| 18 | the other side.  It's incumbent on you as counsel to ensure |
| 19 | that it's complete discovery.  That means you need to |
| 09:47 20 | communicate with that person, talk to them, go over it, ask the |
| 21 | kind of thoughtful and probing questions that counsel ordinary |
| 22 | ask or should ask of their clients in the course of document |
| 23 | production or response to paper discovery so that there's a |
| 24 | reasonable likelihood that it is complete.  I recognize that |
| 25 | it's possible in this kind of case that individual issues will |

```
 1    arise in an individual case about whether it's all done, and I
 2    would imagine that those kinds of issues have arisen in the
 3    Schwartz and Finkelstein and other cases, and my experience has
 4    been those have been largely resolved because I haven't seen
 5    them and it all went through discovery.  But if it doesn't look
 6    like it's complete, it probably isn't.  And it raises -- the
 7    two issue it raises is, one, the issue that the discovery needs
 8    to be completed, and if it's not, the cases will be dismissed.
 9              It raises a second issue of concern for you,
10    Mr. Boone.  At some point you're sort of representing that, in
11    fact, it is done when you turn it over.  I just want to tell
12    you this, that it raises the concern I never like to see a
13    lawyer in the position where they're exposing personally
14    themselves to the Court for a possible sanction, but I have to
15    tell you that if you're repeatedly -- if you undertake a large
16    number of cases that seems unrealistic to undertake and you
17    profess the ability to do it and then you proceed and then
18    there seems to be what Mr. Cheffo is talking about -- and I
19    don't know this is the case -- but what he's indicating might
20    be the case, potentially large-scale inadequate discovery
21    responses, all right, that could be a problem.
22              Now, I'm not saying that is the case right now, all
23    right, and you may have a different view of it, but understand
24    that you're the plaintiffs' counsel.  It's your job to get the
25    discovery done so that the case can move forward to
```

1   depositions.  And, you know, it may be that Pfizer is asking
2   for too much.  If that's the defense, that's a defense, I'll
3   look at it.  But understand that, you know, that template
4   discovery was worked out a long time ago.  I haven't had a
5   single motion, I don't think, in the course of five years
6   disputing the scope of the template discovery, and I don't
7   expect that I would look very seriously at such a motion at
8   this stage.  So it's being done, that's the template, that's
9   what has to be done, one has to do it.  And it's not sufficient
10  to say here's a medical authorization and I remember one
11  provider who didn't prescribe Neurontin and I'm done.  So keep
12  that in mind.
13          MR. BOONE:  Yes, your Honor.  I think the Court would
14  probably need to look at these on a case-by-case basis because
15  we do disagree with the characterization that's been made.  We
16  have submitted template discovery responses and supplemented
17  most of those.
18          JUDGE SOROKIN:  All right.
19          MR. BOONE:  But we can bring them to the Court.
20          JUDGE SOROKIN:  I intend to look at them.  I think
21  it's going to require a case-by-case determination, and what
22  I'm expecting after the drop-dead date is one motion from you
23  that outlines any cases you're dissatisfied with, the general
24  law, case by case each one, and then you'll respond with the
25  general law and then a case-by-case response.  And then I'll

|   |   |
|---|---|
| 1 | the time, labor, and expense and then dismiss them later when I |
| 2 | think what was fairly obvious to everyone else in the room was |
| 3 | a lot of your cases were probably appropriate for dismissal. |
| 4 | So just food for thought.  In other words, it's better |
| 5 | to be proactive and sensible than it is after the fact. |
| 6 | MR. BOONE:  I agree with you. |
| 7 | JUDGE SOROKIN:  I appreciate, nonetheless, that if in |
| 8 | your judgment the cases aren't appropriate to proceed that you |
| 9 | are dismissing them and talking to your clients about it. |
| 09:52 10 | MR. BOONE:  And we're still looking at that. |
| 11 | JUDGE SOROKIN:  Is there anything else? |
| 12 | MR. CHEFFO:  Your Honor, there is just one other -- |
| 13 | sorry, I didn't mean to interrupt. |
| 14 | Again, I know we hear, all of us, loud and clear, and |
| 15 | I think we agree that the Court's looking, both you and Judge |
| 16 | Saris, to kind of get this to a point where it can be resolved. |
| 17 | But here's the one but.  You know, this is from Mr. Boone's |
| 18 | complaint.  Now, if he decides that he's going to amend it or |
| 19 | there's going to be different issues -- but the claims here |
| 09:53 20 | include -- and this is just kind of a standard complaint, |
| 21 | there's a suicide, so certainly from a Daubert perspective |
| 22 | we've beaten that horse.  But A through H, memory loss, liver |
| 23 | failure, kidney failure, heart attack, stroke, high blood |
| 24 | pressure, other injuries.  And when you go through this kind |
| 25 | of -- he has this list of -- kind of a chart, I guess, from |

```
 1   interviews of his people, what it was prescribed for, heartbeat
 2   fast -- I'm just kind of picking these at random -- kidney
 3   problems, nervous, panicky, depression.  There's like -- about
 4   20 different disease endpoints that are other than suicide --
 5            JUDGE SOROKIN:  In other words, Neurontin instead of
 6   causing suicide caused liver problems.
 7            MR. CHEFFO:  Or heartbeat fast, which have never been
 8   subject to Daubert challenges.  So it's just another issue that
 9   either if those are claims he's going to proceed with 200 or
10   some-odd cases, I think that we'd have to have another round of
11   Daubert or he's going to decide that these -- and there's
12   probably even a bigger one.  A lot of these cases -- in his
13   initial --
14            JUDGE SOROKIN:  See what he has to say.
15            MR. CHEFFO:  I'm sorry?  Yeah.
16            MR. BOONE:  Your Honor, we're only pursuing the
17   suicidality issues, suicide, attempted suicide, suicide
18   ideation.
19            JUDGE SOROKIN:  Not liver failure, none of those other
20   things.
21            MR. BOONE:  None of those other things.
22            JUDGE SOROKIN:  So why don't you talk to Mr. Cheffo --
23            MR. BOONE:  I'll be happy to.
24            JUDGE SOROKIN:  -- and work out some filing that
25   you're going to do that makes clear on the record and the
```

1  docket that those aren't being pursued, then that resolves your
2  issue.
3       MR. CHEFFO: It does, with the one caveat -- I don't
4  want to take up the Court's time, certainly Mr. Boone and I can
5  talk about this. I think Judge Saris raised this -- we all
6  understand the completed suicide and the suicide attempts --
7  the concept of suicide ideation. In other words, in a lot of
8  these form template discovery there was never any indication.
9  There's been some supplements and some of the plaintiffs have
10 said I didn't attempt suicide, I certainly didn't commit
11 suicide if they're being deposed, but I had a suicide ideation.
12 You know, the issue of whether that's compensable --
13      JUDGE SOROKIN: As to the other issues, you're going
14 to work it out --
15      MR. CHEFFO: Absolutely.
16      JUDGE SOROKIN: -- on the record, they're gone. You
17 can talk about this, but I think I will tell you in the end
18 that would be a question for Judge Saris. But I think if it
19 weren't clear to you already I think it unlikely that in Judge
20 Saris' view that at this date in this MDL that now is the time
21 to be raising a new disease that requires a different set of
22 expert discovery. And I don't want to speak for Judge Saris,
23 and in the end it would be her decision, but I think that we're
24 pretty far down the road in the case. So if it's within the
25 expert discovery that's been done, that's one thing. If it's