# EXHIBIT W

```
                                                               Page 1
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2
 3
 4   HARDEN MANUFACTURING              )
     CORPORATION,                      )
 5                    Plaintiff,       )
                                       )
 6                                     ) CA No. 04-10981-PBS
     vs.                               )
 7                                     )
                                       )
 8   PFIZER, INC., et al,              )
                      Defendants.      )
 9
10
     BEFORE:   THE HONORABLE LEO T. SOROKIN, M.J.
11
12
                         STATUS CONFERENCE
13
14
15
              John Joseph Moakley United States Courthouse
16                       Courtroom No. 14
                       One Courthouse Way
17                      Boston, MA 02210
                     Thursday, June 15, 2006
18                         3:00 P.M.
19
20
21              Cheryl Dahlstrom, RMR
                Official Court Reporter
22      John Joseph Moakley United States Courthouse
               One Courthouse Way, Room 3209
23                  Boston, MA 02210
            Mechanical Steno - Transcript by Computer
24
25
```

Page 2

1  APPEARANCES:
2    FINKELSTEIN & PARTNERS, LLP
    By:  Andrew G. Finkelstein, Esq., and
3        Kenneth B. Fromson, Esq.
    436 Robinson Avenue
4      Newburgh, New York 12550
    - and -
5    GREENE & HOFFMAN, PC
    By:  Michael A. Tabb, Esq., and
6        Ilyas J. Rona, Esq.
    125 Summer Street
7      Boston, Massachusetts 02110
    On behalf of the Plaintiffs.
8
  DAVIS, POLK & WARDWELL
9      By:  James P. Rouhandeh, Esq.,
      Kathryn M. Carney Cole, Esq., and
10       Erik M. Zissu, Esq.
    450 Lexington Street
11     New York, New York 10017
    - and -
12   HARE & CHAFFIN
    By:  David B. Chaffin, Esq.
13     160 Federal Street
    Boston, Massachusetts 02110-1701
14     On behalf of the Defendants.

Page 3

P R O C E E D I N G S

THE CLERK:  Today is June 16th.  The case of In Re Neurontin, 04-10981, will now be heard before this Court. Counsel please identify themselves for the record.

MR. FROMSON:  For the plaintiffs, plaintiffs product liability, Kenneth B. Fromson, Finkelstein & Partners.  Good afternoon, Judge.

THE COURT:  Good afternoon.

MR. FINKELSTEIN:  Andrew Finkelstein, Finkelstein & Partners.

THE COURT:  Good afternoon.

MR. TABB:  For the marketing and sales class plaintiffs, Michael Tabb from Greene & Hoffman.

THE COURT:  Good afternoon.

MR. RONA:  Also from Greene & Hoffman, Ilyas Rona.

THE COURT:  Good afternoon.

MR. ROUHANDEH:  Good afternoon, your Honor.  Jim Rouhandeh from Davis, Polk & Wardwell for the defendants.

THE COURT:  Good afternoon, Mr. Rouhandeh.  Mr. Chaffin.

MR. CHAFFIN:  Thank you.

MS. COLE:  Kathryn Cole, also from Davis, Polk & Wardwell.

THE COURT:  Good afternoon.

MR. ZISSU:  Erik Zissu, also Davis, Polk.

Page 4

THE COURT:  Good afternoon.  I guess what we'll do -- I've gone through everything that you filed, and it -- I'll hear you.  I think the simplest thing to do -- it's not my intention to go through at the hearing request by request.  It is my intention to rule -- as to each of the requests for which there's a dispute, to rule on the dispute.  But I don't think it's necessary for me or productive to go through request by request here.

What I thought I'd ask you to do is, each of you, to, first, with respect to the -- sort of the template discovery and do the protective orders with respect to scheduling the depositions.  As to the templates, address both the medical records, prescription issue that you both talked about in your briefs.  And if there are other things you didn't talk about in your briefs, there are some points that you want to highlight as to some of those other disputes, quickly tell me about it.

I may -- when you're done, there are some individual items I have some questions about and I'll ask you about those. Then we can briefly talk about the deposition scheduling as well afterwards.

It's your case, Mr. Fromson, so why don't you go first on the templates.

MR. FROMSON:  Your Honor, addressing the template issue of the medical records and the pharmaceutical prescriptions, if I can address those issues as you brought

Page 5

those to our attention.

THE COURT:  Yes.

MR. FROMSON:  My understanding of the defendants' request for the medical records, based upon their positions in general, is that they don't expect -- they've indicated that plaintiffs are under the mistaken belief that plaintiffs have to go out and collect records over which they have possession, custody and control.  However, they only ask us to give them records over which we have possession, custody and control.  I don't know how to reconcile those statements in their position.

In speaking with defense counsel and reading their memorandum, it seems to me they expect us to interpret control, and possibly possession or custody, as meaning that, if any physician maintains medical records regarding any of our plaintiffs, our plaintiffs have control over them; and, therefore, we have to go out and get the medical records, pay for the medical records, collate the medical records, provide the medical records to defense counsel.  However, even if we do that, they still want an authorization just to make sure that we have gathered all of the medical records over which we allegedly have possession, custody and control.

We do not believe that's reasonable.  We stand by our papers and our memoranda of law and the generic objections that are made, and there's various case law that's set forth within those documents.  We think it far more productive and efficient

Electronically signed by Cheryl Dahlstrom (601-345-770-8518)          8cee6961-0f43-4a06-80cd-6ec19324b3ff

Page 10

1  MR. FROMSON: I'm not willing to go get the five and
2  ten. I don't think it -- I think we should be on an even
3  playing field. I have an authorization. He has an
4  authorization. We can both go out and get the medical records
5  equally. We have discussed in the past the option of getting
6  then jointly but that option was rejected.
7  Today I stand before you with our first argument,
8  which is, we shouldn't have to go get them. There's adequate
9  case law indicating we should not have to go get them, that an
10 authorization would be sufficient.
11 THE COURT: Okay. What about the prescription
12 records? Why are the prescription records, at least as to
13 Neurontin prescriptions, shouldn't you have to, in an answer to
14 interrogatory, identify the people who prescribed the
15 prescriptions?
16 MR. FROMSON: Again --
17 THE COURT: Whether or not -- whether I make you get
18 the medical records or whether I don't make you get the medical
19 records?
20 MR. FROMSON: First, I will fall back and rely on my
21 motion papers. Now, as I understand it, why wouldn't they want
22 the best evidence if the prescription records speak for
23 themselves, they're from the pharmacy, they indicate the
24 history, the date, the prescription strength? If they're
25 typewritten, why should I go through the burden, the necessity,

Page 11

1  of having to retype them into an interrogatory? It doesn't
2  seem to be the most efficient way to do this when they can
3  simply be attached. I do understand there to be case law and
4  the federal rules which indicate I should not have to go
5  through that step to compile data.
6  THE COURT: You can always provide business records
7  under the rule in lieu -- even if they ask interrogatory --
8  business records that are reasonably and are equally
9  sufficient, or whatever the language of the rule is, then you
10 can do that.
11 But why shouldn't the obligation, at least as to the
12 Neurontin prescriptions, be on you?
13 MR. FROMSON: If I may finish. Not all prescription
14 records will be typewritten. Records will be handwritten on
15 charts, on scripts, or in any other format within these
16 plaintiffs' charts. They can also be within other third-party
17 documents, whether they be insurance records, which we are
18 willing to give authorizations for.
19 For us to have to interpret them, the handwriting,
20 whether something is 300mg B.I.D. or T.I.D. Whatever the
21 numeric figure is or the acronym is for the prescription
22 record, it leaves room for error, error that will only hold
23 against an individual plaintiff who's going to have to verify
24 the interrogatory response for an issue over which they have no
25 knowledge. They do not have the legal knowledge. They do not

Page 12

1  have the medical knowledge to approve of the way that we have
2  interpreted those handwritten records. It simply leaves room
3  for error across the board.
4  We would simply attach the records we have in our
5  possession or provide them with an authorization, as I
6  indicated earlier, so that we could then both be on an even
7  playing field, and both parties would have access to the
8  records.
9  THE COURT: But a lot of their -- a lot of your
10 requests turn on the timing of various -- of the prescriptions
11 or who issued the prescriptions. If you don't have to identify
12 and commit as to who did it and when, then they have to
13 basically make the same interpretation. And they -- as you
14 suggest, it's fraught with error. They could be wrong. And
15 then -- or they could -- it may be that there's two reasonable
16 interpretations of something and so they take one. And then
17 there's, you know, dispute later about, well, they should have
18 produced more or what have you.
19 MR. FROMSON: Similar to the way Mr. Rouhandeh
20 approached a middle ground today on the rule, there are middle
21 grounds that can be approached on this issue. For example, if
22 we could provide simply a range date. If we are able to at
23 least interpret the range when we believe a patient took
24 Neurontin and the last date of the prescription, that, at
25 least, would leave less room for error. We could say this

Page 13

1  physician to this physician, these dates, that's the range. At
2  the very least, we could come to that conclusion.
3  THE COURT: Okay.
4  MR. FROMSON: But to risk going through each
5  individual page leaves room for error, error that will only go
6  to the plaintiffs -- it would only serve to jeopardize the
7  plaintiff because they'll then indicate our verification is
8  untrue. It's a lie. It's just -- it's not necessary. The
9  records will speak for themselves from whatever source they get
10 them, whether us, according to an order, or directly from the
11 facility, which is what we think is best.
12 THE COURT: Don't you have to commit at some point as
13 to when they started taking Neurontin and when they stopped or
14 the last time that they took it was?
15 MR. FROMSON: Yes, we do. When would that be? I
16 think that, ultimately, when the causation expert -- individual
17 expert renders his opinion, which is not until the future, then
18 we'll have a certain burden that will have to be met. But,
19 now, at this stage of discovery, it does not seem right that we
20 should have to show them their work product in preparation with
21 our experts, which isn't even due yet.
22 THE COURT: They have to use their work product if
23 they commit as to when the discovery now -- somebody has to do
24 something.
25 MR. FROMSON: I understand. As I indicated, there's