UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NEURONTIN MARKETING, SALES PRACTICES, AND : MDL Docket No. 1629
PRODUCTS LIABILITY LITIGATION :
: Master File No. 04-10981
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THIS DOCUMENT RELATES TO: : Judge Patti B. Saris
:
: Magistrate Judge Leo T.
: Sorokin
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HARDEN MANUFACTURING CORPORATION; :
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, :
dba BLUECROSS/BLUESHIELD OF LOUISIANA; :
INTERNATIONAL UNION OF OPERATING ENGINEERS, :
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL :
52 HEALTH BENEFITS TRUST; GERALD SMITH; and :
LORRAINE KOPA, on behalf of themselves and all others :
similarly situated, v. PFIZER INC. and WARNER-LAMBERT :
COMPANY. :
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION
TO PRECLUDE GARY VARNAM AND JAN FRANK WITYK FROM PURSUING
INDIVIDUAL CLAIMS OR, ALTERNATIVELY, TO SEVER AND TRANSFER THEIR
CLAIMS PURSUANT TO 28 U.S.C. § 1404**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ...............................................................................................................1

ARGUMENT......................................................................................................................4

I.        Gary Varnam and Jan Frank Wityk Are Not Parties and Should Not Be Permitted to
          Pursue Individual Claims Against Pfizer ....................................................................4

II.       If the Court Allows Varnam and Wityk to Proceed, It Should Sever Them and
          Transfer their Claims to the States in Which They Were Prescribed and Took
          Neurontin.................................................................................................................6

          A.       Severance Is Appropriate to Facilitate Transfer ....................................................6

          B.       A Plaintiff's Choice Of Forum Is Not Entitled To Deference...............................7

          C.       The Interests Of Justice And Efficiency Favor Transfer .......................................9

          D.       The Convenience Of Witnesses Favors Transfer .................................................12

          E.       Varnam and Wityk Will Not Be Prejudiced by Transfer .....................................17

CONCLUSION...................................................................................................................19

# TABLE OF AUTHORITIES

Page

## CASES

*In re Actimmune Marketing Litigation*, 614 F. Supp. 2d 1037 (N.D. Cal. 2009) ...................... 14

*Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437 (D.N.J. 2009) ......................................... 11

*Atari v. United Parcel Serv., Inc.*, 211 F. Supp. 2d 360 (D. Mass. 2002) ................. 9, 10, 11, 16

*Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392 (E.D. Pa. 2006) ..................... 12

*Beland v. U.S. Department of Transport*, No. Civ. 00-328, 2001 WL 274849
    (D.N.H. Feb. 14, 2001) ...................................................................................................... 16

*Berenson v. National Finance Services*, LLC, 319 F. Supp. 2d 1 (D.D.C. 2004) ..................... 12

*Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2 (D. Mass. 1987) ........................................... 7, 11

*Cain v. N.Y.  State Bd. of Elections*, 630 F. Supp. 221 (E.D.N.Y. 1986) .................................... 6

*Central Regional Employees Benefit Fund v. SmithKline Beecham Corp.*,
    No. 09-2125, 2010 U.S. Dist. LEXIS 90904 (D. Minn. Aug. 31, 2010) ...................... 11, 13

*Coady v. Ashcraft & Gerel*, 223 F.3d 1 (1st Cir. 2000) ............................................................. 2

*Commercial Solvents Corp. v. Liberty Mutual Insurance Co.*, 371 F. Supp. 247
    (S.D.N.Y. 1974) ................................................................................................................. 17

*Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250 (3d Cir. 2010) ................................... 11

*Dean v. Eli Lilly & Co.*, Civil Action No. 06-1375, 2007 U.S. Dist. LEXIS 39603
    (D.D.C. June 1, 2007) ....................................................................................................... 7, 8

*Deputy v. Long-Term Disability Plan of Sponsor Aventis Pharmaceuticals*,
    No. C02-2010, 2002 WL 31655328 (N.D. Cal. Nov. 21, 2002) ........................................ 13

*Dubois v. Moore*, 821 F. Supp. 792 (D. Mass. 1993) ............................................................... 11

*Engel v. CBS, Inc.*, 886 F. Supp. 728 (C.D. Cal. 1995) ........................................................... 11

*F.A.I. Electronics Corp. v. Chambers*, 944 F. Supp. 77 (D. Mass. 1996) ............................ 3, 15

*First Marblehead Corp. v. House*, 473 F.3d 1 (1st Cir. 2006) ................................................ 10

*Frobes v. Stryker Corp.*, No. 08 CV 1897, 2009 U.S. Dist. LEXIS 102034
(E.D.N.Y. Aug. 5, 2009) ................................................................................6, 7

*George v. Kraft Foods Global, Inc.*, No. 06-cv-798, 2007 U.S. Dist. LEXIS 18650
(S.D. Ill. Mar. 16, 2007) ...................................................................................16

*Glaros v. Perse*, 628 F.2d 679 (1st Cir. 1980)..............................................................5

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ........................................................15

*Handigran v. Travis & Natalie, Inc.*, 379 F. Supp. 2d 83 (D. Mass. 2005) ...............17

*Heindel v. Pfizer Inc.*, 381 F. Supp. 2d 364 (D.N.J. 2004).........................................13

*Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093 (N.D. Cal. 2006)............2

*Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*,
585 F. Supp. 2d 1339 (M.D. Fla. 2008)..............................................................14

*Italian Colors Restaurant v. American Express Co.*, No. C 03-3179,
2003 WL 22682482 (N.D. Cal. Nov. 10, 2003)..................................................16

*Kaufmann v. Prudential Insurance Co. of America*, 677 F. Supp. 2d 205
(D. Mass. 2009)....................................................................................................3

*Lagor v. Eli Lilly & Co.*, Civil Action No. 06-1967, 2007 U.S. Dist. LEXIS 43703
(D.D.C. June 18, 2007) ................................................................................13, 17

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) ........18

*Masonite Corp. v. Jeld-Wen, Inc.*, No. 2:06cv184, 2007 U.S. Dist. LEXIS 15131
(S.D. Miss. Mar. 2, 2007) ...................................................................................16

*McDevitt & St. Co. v. Fidelity & Deposit Co. of Md.*, 737 F. Supp. 351
(W.D.N.C. 1990)..................................................................................................17

*McEvily v. Sunbeam-Oster Co.*, 878 F. Supp. 337 (D.R.I. 1994).........................3, 12

*Morson v. Kreindler & Kreindler, LLP*, No. 09-10199-RGS, 2009 WL 2032395
(D. Mass. July 10, 2009)........................................................................................2

*Multibene Ingredients Oy, Ltd. v. Sturm Foods, Inc.*, 658 F. Supp. 2d 250
(D. Me. 2009).......................................................................................................17

*Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216 (3d Cir. 2009) ...............11

*In re Norplant Contraceptive Products Liability Litigation*, 946 F. Supp. 3
  (E.D. Tex. 1996)...........................................................................................18

*Pennsylvania Employees Benefit Trust Fund v. AstraZeneca Pharms. LP*,
  No. 6:09-cv-5003, 2009 WL 2231686 (M.D. Fla. July 20, 2009) ......................14

*In re Pharmaceutical Industry Average Wholesale Price Litigation*, 230 F.R.D. 61
  (D. Mass. 2005)......................................................................................10, 11

*Princess House, Inc. v. Lindsey*, 136 F.R.D. 16 (D. Mass. 1991) ...............................12

*Rowles v. Hammermill Paper Co.*, 689 F. Supp. 494 (E.D. Pa. 1988) .......................9

*Southern Illinois Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*,
  No. 08 CV 5175, 2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) ......................14

*Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152 (S.D. Cal. 2005) ........................ 9, 13, 15

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
  No. 2:06-cv-5774, 2009 WL 2043604 (D.N.J. July 10, 2009) ...........................15

*Schwilm v. Holbrook*, 661 F.2d 12 (3d Cir. 1981)...................................................17

*Smith v. Pfizer (In re Neurontin Marketing, Sales Practices & Products Liability
  Litigation)*, No. 1:05-cv-11515-PBS (D. Mass. Aug. 14, 2009)...........................12

*Southern States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip.*,
  241 F.R.D. 85 (D. Mass 2007).........................................................................10

*Steir v. Girl Scouts of the USA*, 383 F.3d 7 (1st Cir. 2004)........................................5

*Sturm v. Consolidated Rail Corp.*, Civil Action No. 90-4251,
  1990 U.S. Dist. LEXIS 11816 (E.D. Pa. Sept. 5, 1990)....................................9

*Sub-Micron System, Inc. v. Sub-Micron Surfacing, Inc.*, No. 93 C 3295,
  1993 WL 524273 (N.D. Ill. Dec. 10, 1993).......................................................12

*TransAmerica v. Trans-American Leasing*, 670 F. Supp. 1089 (D. Mass. 1987) ......................7

*Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996) ....................6

*Triune Steel Erectors, Inc. v. Shappert Engineering Co.*, Case No. 91 C 20178,
  1991 U.S. Dist. LEXIS 20515 (N.D. Ill. Oct. 2, 1991) ......................................9

*U.S. ex rel. Ondis v. City of Woonsocket, R.I.*, 480 F. Supp. 2d 434 (D. Mass. 2007)...............7

*Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766 (C.D. Cal. 2006) ........................................10

*Vista HealthPlan, Inc. v. Amgen, Inc.*, No. CV 07-3711, 2007 WL 4144893
    (C.D. Cal. Nov. 13, 2007)................................................................................... passim

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) .............................................................16

*W. Marine Products, Inc. v. Dolphinite*, No. 04-10251-PBS, 2005 WL 1000259
    (D. Mass. Mar. 23, 2005)...................................................................................................13

*Wellons v. Numerica Sav. Bank, FSB*, 749 F. Supp. 336 (D. Mass. 1990) ..........................9, 11

*White v. SmithKline Beecham Corp.*, Civil Action No. 06-3025, 2007 WL 1237952
    (E.D. Pa. Apr. 26, 2007)....................................................................................................8

*Wyndham Associates v. Bintliff*, 398 F.2d 614 (2d Cir. 1968) ..................................................6

## STATUTES

Fed. R. Civ. P. 21 ......................................................................................................................6

Fed. R. Civ. P. 45(c)(3)(A)(ii) ..................................................................................................15

## OTHER AUTHORITIES

4 James Wm. Moore et al., *Moore's Federal Practice* ¶ 21.06[2] (3d ed. 2007).......................6

Restatement (Second) of Conflict of Laws § 148(1) (1971) ......................................................8

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") submit this memorandum in support of their Motion to Preclude Gary Varnam and Jan Frank Wityk from Pursuing Individual Claims or, Alternatively, to Sever and Transfer Their Claims Pursuant to 28 U.S.C. § 1404.

## INTRODUCTION

On December 10, 2010, this Court issued a Memorandum and Order granting summary judgment and dismissing the claims of all named Class Plaintiffs.  (*See* 12/10/10 Mem. and Order [3154].)  The Court denied Pfizer's motion for summary judgment with respect to Gary Varnam and Jan Frank Wityk and advised the parties to "inform the court whether [their] cases should be transferred pursuant to 28 U.S.C. § 1404."  (*Id.* at 29 n.4.)

As a threshold matter, Gary Varnam and Jan Frank Wityk are not named in the operative pleading, the Third Amended Class Action Complaint ("TACAC"), are not proper parties to this action.  Accordingly, they should not be permitted to proceed as individual plaintiffs.  Although Plaintiffs' renewed motion for class certification proposed to add Varnam and Wityk as additional *class representatives*, they were expressly proposed to seek class certification, not to assert additional individual consumer claims.  (Pls.' Mem. in Support of Renewed Mot. for Class Cert. [1018] at 1, 7-8.)  In its opposition to Plaintiffs' renewed motion for class certification, Pfizer duly objected to the motion to the extent it sought to amend the TACAC to add Varnam and Wityk as class representatives or plaintiffs, citing, among other things, this Court's prior order foreclosing additional amendments.  (*See* Defs.' Mem. in Opp. to Renewed Mot. for Class Certification [1174-2] at 9 n.7, 42-43.)  In May 2009, this Court denied Plaintiffs' renewed motion for class certification in its entirety.  (Mem. and Order [1780].)  Plaintiffs never renewed the request to amend the TACAC to add Varnam and Wityk as individual plaintiffs, and they have never set forth any allegations on behalf of those individuals (jurisdictionally or otherwise) in any pleading.  Although Pfizer, in its motion for summary judgment on the claims of the Class and Coordinated Plaintiffs, which it filed while Plaintiffs' renewed motion for class certification (including their motion to amend to add Varnam and Wityk) was pending, argued that summary

judgment was warranted with respect to Varnam and Wityk, along with the named individual consumers and other named parties, it did so in the interest of caution and to avoid waiving arguments involving those individuals because Plaintiffs' motion to add Varnam and Wityk was pending before the Court.  Pfizer certainly never consented to their addition as parties to the action and submits that, given the Court's denial of Plaintiffs' renewed motion for class certification, the only motion in which Plaintiffs sought to add Varnam and Wityk, those two individuals are not parties, have not pled individual claims, and their addition should not be permitted through amendment to the TACAC at this very late date.

Should the Court nevertheless determine to grant Varnam and Wityk leave to participate and permit them to pursue individual claims, it should sever them from the plaintiffs named in the TACAC and transfer their actions to federal district courts in Maine and Ohio, the states in which Varnam and Wityk were prescribed and took Neurontin.  Severance is appropriate given the Court's denial of class certification and grant of summary judgment as to the other proposed class representatives.  Requiring these actions to proceed individually would both permit the Court to enter final judgment on the claims of the plaintiffs named in the TACAC, which this Court has dismissed, and facilitate the transfer of Varnam's and Wityk's respective claims to the states in which they were prescribed and took Neurontin.

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Three principal concerns govern a district court's analysis of a motion to transfer:  (1) the convenience of the witnesses; (2) the convenience of the parties; and (3) the interests of justice.  *See Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000).  In deciding a transfer motion, a district court must make "an 'individualized, case-by-case consideration of convenience and fairness.'"  *Morson v. Kreindler & Kreindler, LLP*, No. 09-10199-RGS, 2009 WL 2032395, at *2 (D. Mass. July 10, 2009) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *accord Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th

Cir. 2000)).   Courts may consider a number of factors in evaluating the guiding concerns of convenience and justice, including:  the location of evidence, the familiarity of the forum with the governing law, the availability of compulsory process, the plaintiff's choice of forum, and the difference in costs of litigation in each forum.  *See, e.g.*, *Kaufmann v. Prudential Ins. Co. of Am.*, 677 F. Supp. 2d 205, 208 (D. Mass. 2009) (citing *Howe v. Goldcorp Inv., Ltd.*, 946 F.2d 944, 951 (1st Cir. 1991)); *F.A.I. Electronics Corp. v. Chambers*, 944 F. Supp. 77, 80-81 (D. Mass. 1996) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *McEvily v. Sunbeam-Oster Co.*, 878 F. Supp. 337, 344-45 (D.R.I. 1994).

As discussed more fully below, each of these factors favors transfer of any claims that Varnam and Wityk are permitted to pursue against Pfizer to Maine and Ohio, their respective home states at the time they were prescribed Neurontin (and, in Mr. Varnam's case, his current home state).[1]   Varnam and Wityk seek to recover in this litigation for payments made for Neurontin prescriptions based upon alleged fraudulent marketing.  As this Court has held, in order to prevail on their claims, they must "show that the defendants' alleged fraud caused the treating physician to prescribe Neurontin when he or she otherwise would have used alternative treatments."  (12/10/10 Mem. and Order at 23-24.)  Thus, Varnam's and Wityk's home states at the time they were prescribed and took Neurontin and in which the transactions at issue took place – including the prescription of Neurontin by their respective physicians and any representation to those physicians by Pfizer – would have substantial interest in the claims at issue, while Massachusetts would have little, if any, interest.  Pfizer is not a Massachusetts corporation, and other than the fact that this MDL is located in Massachusetts, there is no nexus between this state and any claims by these individuals.  As such, the citizens of Massachusetts should not be burdened with a potentially lengthy jury duty to adjudicate Varnam's and Wityk's claims.

---

[1] Although Wityk moved from Ohio to Butler, Indiana (near Indiana's western border with Ohio) in 2005, she was living in Bryan, Ohio, and was prescribed and took Neurontin there between August 2000 and September 2001, and, on information and belief, her prescribing doctors continue to reside in northern Ohio.

Furthermore, critical non-party witnesses, including the prescribing physicians, are located in Varnam's and Wityk's home states at the time they were prescribed Neurontin, and are thus outside of this Court's subpoena power. Even witnesses willing to appear voluntarily would be greatly inconvenienced by a forum located hundreds of miles away from their places of residence. As courts have repeatedly held, this factor weighs heavily in favor of transfer. Accordingly, as demonstrated below, in the interest of justice and for the convenience of the parties and witnesses, the Court should transfer any claims by Varnam and Wityk it determines to allow to proceed to, respectively, the District of Maine and the Northern District of Ohio.

## ARGUMENT

### I.   Gary Varnam and Jan Frank Wityk Are Not Parties and Should Not Be Permitted to Pursue Individual Claims Against Pfizer

Varnam and Wityk are not named in the TACAC and Plaintiffs' only request to add them to this action was made as part of their renewed motion for class certification. Pfizer opposed that motion in its entirety and specifically opposed the motion to the extent it sought leave to amend to add Varnam, Wityk, and two others (Carolyn Hollaway and Jeanne Ramsey) as proposed new class representatives. (*See* Defs.' Mem. in Opp. to Renewed Motion for Class Certification [1174-2] at 9 n.7, 42-43.) Pfizer argued that such amendment was contrary to the Court's Order of September 29, 2006, in which the Court foreclosed further amendment of the Class Action Complaint "[w]ith the exception of the proposed amendment regarding timing of the alleged illegal acts." (Electronic Order entered Sept. 29, 2006.) Pfizer further argued that any motion to amend in the context of Plaintiffs' renewed motion for class certification was untimely and unduly prejudicial. (Defs.' Mem. in Opp. to Renewed Motion for Class Certification [1174-2] at 42-43.) Pfizer cited, for example, the fact that its opportunity to take discovery of the new proposed class representatives had been "exceedingly compressed." (*Id.* at 43.)

The Court denied Plaintiffs' renewed motion for class certification in its entirety. (Mem.

and Order [1780].)[2]  The Court's Order did not provide for any amendment to the TACAC or for Plaintiffs to add Varnam and Wityk as individual parties to proceed outside of the context of a motion for class certification.  Plaintiffs never moved separately for leave to amend the pleading to add Varnam and Wityk.

In light of Plaintiffs' attempt to add Varnam and Wityk as class representatives and in the interest of avoiding any waiver of defenses, Pfizer took limited discovery from them and included arguments addressed to them in its motion for summary judgment.  Pfizer's position, however, has always been that Varnam and Wityk are not proper parties to this action and that leave to amend should be denied as untimely and prejudicial.

The law is clear that "leave to amend may properly be denied for a variety of reasons including 'undue delay, bad faith or dilatory motive on the part of the movant,'" or "'undue prejudice to the opposing party by virtue of allowance of the amendment.'"  *See, e.g., Glaros v. Perse*, 628 F.2d 679, 687 (1st Cir. 1980) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In addition, as the First Circuit has explained:

> Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.  Particularly disfavored are motions to amend whose timing prejudices the opposing party by "requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy. . . ."

*Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) (quoting *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52-53 (1st Cir. 1998)).  Each of the reasons identified in *Glaros* and *Steir* warrants denial of any motion to amend to allow Varnam and Wityk to assert and proceed on individual claims at this late date, after the denial of class certification and long after the close of discovery.

---

[2] Plaintiffs moved for reconsideration of the Court's denial of their renewed class certification motion [1796], but the Court promptly made clear that it would not reconsider its ruling with respect to any consumer class.  (*See* 9/18/09 Hearing Tr. [2114] at 84:21-25 (COURT: "I'm not going to change my mind about individuals.").)

Accordingly, because neither Varnam nor Wityk are proper parties in this litigation and have neither pled nor, since the Court's denial of Plaintiffs' renewed motion for certification, sought to plead, individual claims on which they could proceed, the Court should deem them non-parties and deny any motion to amend as untimely and prejudicial.

## II.   If the Court Allows Varnam and Wityk to Proceed, It Should Sever Them and Transfer their Claims to the States in Which They Were Prescribed and Took Neurontin

If the Court nevertheless determines to allow Varnam and Wityk to proceed with individual claims against Pfizer, it should sever and transfer such claims to their respective home states at the time they were prescribed and took Neurontin.  Although Pfizer submits, for the reasons set forth above, that neither Varnam nor Wityk is a "Plaintiff" in this litigation, it will refer to them as "Plaintiffs" for purposes of this argument.

### A.   Severance Is Appropriate to Facilitate Transfer

Rule 21 provides that "[t]he court may . . . sever any claim against a party."  Fed. R. Civ. P. 21.  Courts have repeatedly held that claims may be severed under this provision, even if they are not misjoined, for the purpose of facilitating transfer of the severed claims pursuant to 28 U.S.C. § 1404(a).  *See, e.g.*, *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1545 (10th Cir. 1996) ("[A] court may sever claims under [Rule] 21, and thereby enable the transfer of claims within a case."); *accord Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618-21 (2d Cir. 1968); *Frobes v. Stryker Corp.*, No. 08 CV 1897, 2009 U.S. Dist. LEXIS 102034, at *17-18 (E.D.N.Y. Aug. 5, 2009); *see also Cain v. N.Y.  State Bd. of Elections*, 630 F. Supp. 221, 225 (E.D.N.Y. 1986) ("A claim may be severed . . . solely for the purpose of facilitating transfer."); 4 James Wm. Moore et al., *Moore's Federal Practice* ¶ 21.06[2] (3d ed. 2007) ("[T]he fact that a claim might be subject to transfer to a more appropriate venue is a valid reason to order severance.").

Here, severance from the other parties in the TACAC is especially appropriate because the Court has denied class certification and granted summary judgment as to all Plaintiffs named in the TACAC and the other proposed class representatives.  Severing Varnam and Wityk from

the Plaintiffs and claims in the TACAC would allow the Court both to enter final judgment as to the named Plaintiffs and other proposed class representatives against whom it has granted summary judgment and transfer Varnam's and Wityk's respective claims to the appropriate district courts.

### B.  A Plaintiff's Choice Of Forum Is Not Entitled To Deference

The deference ordinarily afforded to a plaintiff's choice of forum does not apply in this case for several reasons.  First, Massachusetts is not significant because neither Varnam nor Wityk is a Massachusetts resident.  *See U.S. ex rel. Ondis v. City of Woonsocket, R.I.*, 480 F. Supp. 2d 434, 436 (D. Mass. 2007) (holding that plaintiff's choice of venue should be given less weight because "plaintiff is a nonresident of the chosen forum") (quoting 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3848 at 134-39 (2007)); *accord Frobes*, 2009 U.S. Dist. LEXIS 102034, at *15.  Varnam is a resident of Maine, where he has resided at all relevant times.  *See Dean v. Eli Lilly & Co.*, Civil Action No. 06-1375, 2007 U.S. Dist. LEXIS 39603, at *7 (D.D.C. June 1, 2007) ("Deference to the plaintiff's forum choice diminishes further when the defendant seeks transfer to a forum where the plaintiff resides.").  Wityk was a resident of Ohio at the time she was prescribed and took Neurontin and, on information and belief, currently lives in Butler, Indiana, her residence at the time of her deposition in 2008.

Second, "[w]here [as here] the operative facts of the case have no material connection with this district, plaintiff's choice of forum carries less weight" and is "not dispositive."  *Brant Point Corp. v. Poetzsch,* 671 F. Supp. 2, 5 (D. Mass. 1987); *TransAmerica v. Trans-American Leasing*, 670 F. Supp. 1089, 1093 (D. Mass. 1987).  As one court explained in a case involving a Florida plaintiff (there, a third-party payor) seeking to recover for the cost of off-label prescriptions allegedly caused by a California defendant's marketing and promotional activities:

> [T]he Court finds that Plaintiff's choice of forum is entitled to less deference because California is not Plaintiff's domicile and Plaintiff has no contact with this district.  Some of the operative facts allegedly took place in California, including the decisions made by [the defendant] to improperly promote and market off-label uses of [the drugs at issue].  More significant facts, however, took place in

> Florida, including the alleged calls and visits from [the defendant's] sales representatives to local physicians, the writing and filling of prescriptions, and the reimbursements by [the plaintiff] to its members.  Furthermore, [the defendant's] activities in Florida are substantially connected to Plaintiff's specific claims because the issues of whether Plaintiff and its members were subjected to unlawful marketing, the extent of Plaintiff's injuries, and causation all center around [the defendant's] sale of [drugs] in Florida.

*Vista HealthPlan, Inc. v. Amgen, Inc.*, No. CV 07-3711, 2007 WL 4144893, at *4 (C.D. Cal. Nov. 13, 2007).  In *Vista HealthPlan*, the plaintiff had filed suit where the defendant was headquartered.  Here, there is even less justification for the Plaintiff's choice of forum, given that Pfizer is a Delaware corporation headquartered in New York.

Neither Varnam nor Wityk can identify any connection between Massachusetts and any claims they have for payments for alleged off-label Neurontin prescriptions for which they have paid some or all of the cost.  Instead, as this Court's 12/10/10 Order on summary judgment establishes, the operative facts involve alleged conduct and injuries primarily in the states in which their prescriptions for Neurontin were written and the medicines purchased, and where alleged statements to prescribing physicians were made.  (*See* 12/10/10 Mem. and Order at 3-11, 24-25.)[3]  *See also Dean*, 2007 U.S. Dist. LEXIS 39603, at *9 (transferring personal injury action against pharmaceutical manufacturer to Massachusetts, noting that "the plaintiffs' claims arose in Massachusetts because the alleged prescription, purchase, and exposure to DES occurred in that state"); *White v. SmithKline Beecham Corp.*, Civil Action No. 06-3025, 2007 WL 1237952, at *2-4, *7 (E.D. Pa. Apr. 26, 2007) (transferring claims from defendant pharmaceutical company's home state to the forum where the drug at issue "was marketed and prescribed" and where the alleged injury occurred, even though some decisions regarding the drug were made in the transferor forum).

---

[3] Pfizer submits that this Court's statement of facts and determinations of law in its 12/10/10 Order support the instant motion by establishing that, to the extent any issue of fact exists for trial, it will involve transactions that took place in Varnam's and Wityk's home states at the time they were prescribed Neurontin and the testimony of their prescribing doctors in those states.  Pfizer disputes, however, the Court's determination that the record supports a finding of such an issue of fact and reserves its rights with respect to the facts and issues addressed in the Court's Order, including for the purposes of challenging or disputing any findings or conclusions at trial or on appeal.

C.     **The Interests Of Justice And Efficiency Favor Transfer**

1.     **Maine and Ohio Have Greater Interests in Resolving these Local Controversies in their Courts**

The interests of Maine and Ohio – Varnam's and Wityk's respective home states at the time they were prescribed and took Neurontin – in resolving local controversies in their courts also favor transfer.  *See Atari v. United Parcel Serv., Inc.*, 211 F. Supp. 2d 360, 365 (D. Mass. 2002) (noting that the potential transferee jurisdiction "has a clear interest in trying and resolving the case in a local forum"); *accord Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1167 (S.D. Cal. 2005) (finding that the district in which the alleged conduct had occurred "would have a strong interest" in the action and that "it would not be an undue burden for jurors in that district to decide [the] case"); *Sturm v. Consol. Rail Corp.*, Civil Action No. 90-4251, 1990 U.S. Dist. LEXIS 11816, at *7 (E.D. Pa. Sept. 5, 1990) (noting that "the great importance attached by the courts to local decision-making militates in favor of transfer").   Courts have repeatedly emphasized that the interest of justice is "served by a transfer to the district where . . . a local jury can decide the ramifications of the actions at issue in [the] case."  *Triune Steel Erectors, Inc. v. Shappert Eng'g Co.*, Case No. 91 C 20178, 1991 U.S. Dist. LEXIS 20515, at *9 (N.D. Ill. Oct. 2, 1991); *see also Rowles v. Hammermill Paper Co.*, 689 F. Supp. 494, 497 (E.D. Pa. 1988) ("Where feasible, matters of local interest should be decided by local juries . . . .").

Here, Maine (for Varnam) and Ohio (for Wityk) have strong interests in resolving the claims at issue because the alleged wrongful conduct and injuries occurred there.  *See Wellons v. Numerica Sav. Bank, FSB*, 749 F. Supp. 336, 337 (D. Mass. 1990) (finding the fact that "New Hampshire [was] the state where the cause of action arose" to "weigh heavily" in favor of transfer).  Again, in a case involving similar claims, the *Vista HealthPlan* court explained:

> Given that a large percentage of the witnesses likely reside in the various plaintiffs' respective states, and that many of the operative facts allegedly giving rise to [the plaintiff's] claims – such as the prescription of the drugs at issue to members of Plaintiff's health benefit plans, the purchases of and reimbursements for those prescriptions medicines, any representations made by [the defendant] to the prescribing physicians and/or reliance upon such representations – occurred in the plaintiffs' home states, including Florida, the Court concludes that this factor

9

weighs in favor of transfer.

*Vista HealthPlan*, 2007 WL 4144893, at *8.

Likewise, Massachusetts jurors should not be burdened with applying foreign law and making decisions about events that occurred outside their state. *See Atari*, 211 F. Supp. 2d at 365 (observing that "fairness suggests that jury duty should fall on [the] citizens" of the state where the incident lying at the heart of the civil action occurred); *see also Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 783 (C.D. Cal. 2006) ("'Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation.'") (quoting *Gulf Oil*, 330 U.S. at 508-09).

### 2.   Maine and Ohio Have Greater Familiarity with the Applicable Law

To the extent Varnam and Wityk are permitted to proceed on state law consumer fraud, common law fraud, and unjust enrichment claims, in addition to federal RICO claims, those state law claims will be governed by the laws of their home states of Maine and Ohio.  In cases involving alleged misrepresentations, Massachusetts generally applies the law of the state where the representations were made, received and acted upon by the plaintiff or, in cases like this one involving prescription medicines and prescribing decisions, the prescribing doctor. *See First Marblehead Corp. v. House*, 473 F.3d 1, 9 (1st Cir. 2006); *Southern States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip.*, 241 F.R.D. 85, 93 (D. Mass 2007); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 82-83 (D. Mass. 2005) (Saris, J.) ("*A.W.P.*"); *see also* Restatement (Second) of Conflict of Laws § 148(1) (1971).

To the extent that Varnam and Wityk seek to maintain claims under New Jersey's Consumer Fraud Act ("NJCFA"), this Court has already observed that the NJCFA cannot be applied to non-residents' pharmaceutical marketing claims.  *See AWP*, 230 F.R.D. at 82-83 (holding that class members' marketing claims are governed by the consumer protection laws of each class member's home state); *see also Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010) (plaintiff who purchased defendant's product in another state "is not entitled to sue under the [NJCFA]"); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 463

(D.N.J. 2009) (denying certification of nationwide NJCFA class, "finding that each state has an overwhelming interest in seeing its own consumer protection statute govern in cases where residents were victims of fraud perpetrated within the state's borders"); *accord Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 220-21 (3d Cir. 2009).

This factor also favors transfer of this action to Varnam's and Wityk's respective home states during the relevant time period. *See, e.g.*, *Cent. Regional Employees Benefit Fund v. SmithKline Beecham Corp.*, No. 09-2125, 2010 U.S. Dist. LEXIS 90904, at \*6-7 (D. Minn. Aug. 31, 2010) (transferring third-party payor pharmaceutical marketing action to plaintiffs' home state of New Jersey, noting, "the State of New Jersey has an interest in providing a forum for these Plaintiffs and that court would have the advantage of familiarity with New Jersey's law"); *Atari*, 211 F. Supp. 2d at 365 (finding that "the case should be transferred to the forum whose law will govern the case"); *Dubois v. Moore*, 821 F. Supp. 792, 793 (D. Mass. 1993) (transferring case to New Hampshire under § 1404(a) partially because "New Hampshire law will govern the dispute"); *Wellons*, 749 F. Supp. at 337 (finding the fact that "New Hampshire law will undoubtedly govern the issues in this case" to "weigh heavily" in favor of transfer); *Brant Point,* 671 F. Supp. at 5 (noting that transfer is appropriate because it is preferable that North Carolina law be "construed by a federal court sitting in that state, rather than by a court unfamiliar with North Carolina law"); *accord Engel v. CBS, Inc.*, 886 F. Supp. 728, 733 (C.D. Cal. 1995) ("'[T]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems . . . in law foreign to itself.'") (ellipses in original) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964)).[4]

The preference for allowing local federal courts to construe applicable state law is particularly strong where, as here, an action includes claims under state consumer protection

---

[4] For example, in *Smith v. Pfizer (In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.)*, No. 1:05-cv-11515-PBS, Dkt. 10 (D. Mass. Aug. 14, 2009), this Court reserved ruling on certain issues raised by the Defendants' motion for summary judgment, noting that the issues involved questions of Tennessee law and were "best left for the transferor court in Tennessee to resolve." *Id.* at 2.

laws. These statutes reflect complex policy choices by state legislators balancing the interests of businesses and consumers within each state. *See, e.g., Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006) ("States have a strong interest in applying their own consumer protection laws to their citizens."); *see also Berenson v. Nat'l Fin. Servs.*, LLC, 319 F. Supp. 2d 1, 4-5 (D.D.C. 2004) (transferring state consumer protection claims because, *inter alia*, "[c]learly, this Court's Massachusetts colleagues have greater familiarity with Massachusetts law and therefore superior capability to accurately apply Massachusetts law"); *Sub-Micron Sys., Inc. v. Sub-Micron Surfacing, Inc.*, No. 93 C 3295, 1993 WL 524273, at *11 (N.D. Ill. Dec. 10, 1993) (transferring action from Illinois to New Jersey; noting that "familiarity with New Jersey law is especially helpful in interpreting state statutes such as the New Jersey Consumer Fraud Act that reflect and are designed to implement the state's consumer protection policy").

### D.   The Convenience Of Witnesses Favors Transfer

The convenience of essential witnesses weighs heavily in favor of a transfer of claims by Varnam and Wityk to forums in Maine and Ohio, respectively. Courts have emphasized that "[c]onvenience of the expected witnesses is '[p]robably the most important factor, and the factor most frequently mentioned'" when deciding a motion to transfer under § 1404(a). *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991); *accord Vista HealthPlan*, 2007 WL 4144893, at *4; *McEvily*, 878 F. Supp. at 344-45.

Accordingly, courts have granted motions to transfer where, as here, non-party "witnesses with firsthand knowledge relevant and material to plaintiffs' allegations" were located in the transferee forum. *Saleh*, 361 F. Supp. 2d at 1167; *see also Cent. Regional Employees Benefit Fund*, 2010 U.S. Dist. LEXIS 90904, at *5 (transferring action to third-party payors' home state of New Jersey, noting, "[t]he key non-party witnesses . . . are located in New Jersey including the Plaintiffs' insureds and doctors who prescribed the . . . drug; ensuring their appearance at trial is an important consideration"); *Lagor v. Eli Lilly & Co.*, Civil Action No. 06-1967, 2007 U.S. Dist. LEXIS 43703, at *12-14, *20 (D.D.C. June 18, 2007) (granting motion to

transfer personal injury action to Rhode Island where "the resolution of [the central] issues" would require testimony from plaintiff's physicians and pharmacy in Rhode Island); *W. Marine Prods., Inc. v. Dolphinite*, No. 04-10251-PBS, 2005 WL 1000259, at *1 (D. Mass. Mar. 23, 2005) (transferring venue when most of the witnesses were located in Florida); *Deputy v. Long-Term Disability Plan of Sponsor Aventis Pharmaceuticals*, No. C02-2010, 2002 WL 31655328, at *3-4 (N.D. Cal. Nov. 21, 2002) (granting motion to transfer to plaintiff's home state of Texas where plaintiff's allegations would potentially require testimony from the plaintiff's "treating doctors and other medical professionals" located in Texas); *cf. Heindel v. Pfizer Inc.*, 381 F. Supp. 2d 364, 367-68, 377-78 (D.N.J. 2004) (determining that Pennsylvania law applied to plaintiffs' claims that defendant deceptively marketed its prescription drugs, noting that "the most important aspects of the transaction underlying th[e] lawsuit [were] the decisions of the physician and the relationship between doctor and patient, all of which occurred in Pennsylvania").

Here, as this Court has already recognized in its Order on summary judgment, the primary sources of relevant testimony in this case are the non-party prescribing physicians. (*See, e.g.*, 12/10/10 Order at 3-10, 21-26.) With respect to Varnam, those witnesses are Drs. John Arness, Beverley Grimm, and Teresa Hermida, all of whom, based on information and belief, including recent online searches, currently reside in Varnam's home state of Maine.[5] With respect to Wityk, her prescribing physicians were Drs. Nagaveni Ragothaman and Jerrold Gray, both of whom, based on information and belief, including recent online searches, continue to reside in northern Ohio. Indeed, this Court based its denial of summary judgment with respect to Varnam and Wityk on its finding that one of Varnam's prescribers, Dr. Arness, and one of Wityk's prescribers, Dr. Ragothaman, received "Dear Doctor" letters from Pfizer that allegedly provided misleading information about Neurontin's efficacy for bipolar disorder and omitted negative study results. (*See* 12/10/10 Order at 24-25.) The Court held:

---

[5] At the time that discovery was taken with respect to Varnam, Dr. Grimm, who had previously resided in Maine, was living in Australia. Online searches, however, indicate that Dr. Grimm currently resides and practices in Maine.

> Defendants point out that no doctor testified that he would not have prescribed Neurontin to a patient if he had been aware of these negative trials. Still, a fact-finder could reasonably infer that a doctor would not prescribe a drug if she were aware of overwhelmingly and uniformly negative evidence about its efficacy in treating bipolar disorder. The receipt of the "Dear Doctor" letters by the treating physicians for Gary Varnam and Jan Frank Wityk, both of whom suffered from this mental disease, creates a triable issue of fact as to causation.

(*Id.* at 25.)

Thus, testimony at trial from Varnam's and Wityk's physicians regarding why they prescribed Neurontin, their clinical observations regarding Neurontin and its efficacy for their patients, the effect of the "Dear Doctor" letters at issue, and whether they would have prescribed an alternative medicine had they been aware of the allegedly withheld information is clearly relevant and admissible evidence, as is testimony from Varnam and Wityk themselves, and close family members and friends, regarding Varnam's and Wityk's experiences while taking Neurontin. *See, e.g., Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*, 585 F. Supp. 2d 1339, 1344 (M.D. Fla. 2008) (finding, in similar pharmaceutical marketing action, that "each physician who prescribed Seroquel to an individual consumer or health and welfare fund member would have to be questioned as to whether his or her independent medical judgment was influenced by Defendants' misrepresentations, and to what extent"); *see also In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1052 (N.D. Cal. 2009); *S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175, 2009 WL 3151807, at *6-7 (S.D.N.Y. Sept. 30, 2009); *Pa. Employees Benefit Trust Fund v. AstraZeneca Pharms. LP*, No. 6:09-cv-5003, 2009 WL 2231686, at *6 (M.D. Fla. July 20, 2009); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 WL 2043604, at *15 (D.N.J. July 10, 2009) (all recognizing the relevance of individual physician testimony in similar cases). Indeed, testimony from these non-party, non-resident doctors will be indispensable.

The location of non-party witnesses, like the prescribing physicians, is of particular concern because non-parties located more than 100 miles from the forum district are not subject to a subpoena to compel their appearance. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii); *Vista HealthPlan*,

2007 WL 4144893, at *6 ("Because the fact witnesses are outside the geographic reach of this district's subpoena power, [the defendant] may not have access to these witnesses at trial. If the case is transferred, the Southern District of Florida will have subpoena power over the witnesses who reside within that district."); *see also F.A.I. Electronics*, 944 F. Supp. at 80-81 (noting that lack of compulsory process weighs in favor of transfer); *see also Saleh*, 361 F. Supp. 2d at 1164 ("[T]he convenience of nonparty witnesses is more important than party witnesses.").

It is also clear that Pfizer cannot just "live with the depositions" here. Varnam's and Wityk's prescribing physicians testified at their depositions (or by declaration in Dr. Grimm's case) that they based their prescription decisions on their clinical experience and independent medical judgment. (*See* Defs.' Stmt. of Undisputed Material Facts [1693] at 6-10.) In opposing summary judgment, Plaintiffs sought to impeach this testimony by presenting evidence purportedly showing that some of the doctors were detailed and received "Dear Doctor" letters. But the doctors were not asked about this evidence during their depositions. The Court ruled that this post-deposition evidence raises fact questions regarding the reasons for each doctor's prescription decisions. (*See* 12/10/10 Order at 24-25.) Defendants respectfully disagree. But assuming arguendo that such fact questions exist, the only way to resolve them would be to have the doctors appear at trial and testify about whether these details and "Dear Doctor" letters played any part in their prescription decisions. Allowing the jury to answer that question without any testimony from the doctors would be impermissibly speculative.

Indeed, as the Supreme Court has recognized, "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to [the] court, jury or most litigants." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947). Similarly, courts have repeatedly recognized that "limiting [the defendant] to 'recorded' testimony from non-party witnesses while Plaintiff benefits from live testimony would be 'manifestly unfair.'" *Vista HealthPlan*, 2007 WL 4144893, at *6; *see also Atari*, 211 F. Supp. 2d at 363 (noting that few witnesses "would be subject to process in Massachusetts, and thus would be available only through deposition testimony"); *George v.*

*Kraft Foods Global, Inc.*, No. 06-cv-798, 2007 U.S. Dist. LEXIS 18650, at *28 (S.D. Ill. Mar. 16, 2007) ("The Court is unwilling to set up a situation in which Defendants 'cannot compel personal attendance [of witnesses at trial] and may be forced to try their case[] on deposition.'") (alterations in original; citations omitted); *Masonite Corp. v. Jeld-Wen, Inc.*, No. 2:06cv184, 2007 U.S. Dist. LEXIS 15131, at *8 (S.D. Miss. Mar. 2, 2007) ("[A] party should not be required to try his case with depositions rather than live witnesses.  This is especially true when the qualitative value of the witnesses' testimony is high.") (citation and internal quotation marks omitted); *Beland v. U.S. Dep't of Transp.*, No. Civ. 00-328, 2001 WL 274849, at *3 (D.N.H. Feb. 14, 2001) ("[E]nsuring the presence of live witness testimony better serves the interest of justice.").  Moreover, "even if the fact witnesses such as prescribing physicians agree to travel to [Massachusetts] voluntarily, they will still be inconvenienced by having to travel to [Massachusetts], and so will their patients back in [their home states]," here, Maine and Ohio. *Vista HealthPlan*, 2007 WL 4144893, at *6.

> As the Fifth Circuit has observed:
>
> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.  Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

*In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004); *see also Italian Colors Restaurant v. American Express Co.*, No. C 03-3179, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003) ("Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions.").  Other than expert witnesses, there are few key witnesses located in Massachusetts.  A fact witness scheduled for only 30 minutes of testimony would be required to block out at least one to two days of time in order to travel here and testify.

Accordingly, the convenience of both party and non-party witnesses requires transfer of claims by Varnam and Wityk to, respectively, Maine and Ohio. *See Handigran v. Travis & Natalie, Inc.*, 379 F. Supp. 2d 83, 84 (D. Mass. 2005) (finding that a § 1404(a) transfer was appropriate where "witnesses all reside in Rhode Island"); *Multibene Ingredients Oy, Ltd. v. Sturm Foods, Inc.*, 658 F. Supp. 2d 250, 253 (D. Me. 2009) (finding that transfer was appropriate where there was "no evidence that any potential witnesses are located in Maine, or even more generally, in the Northeast") (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)); *see also Lagor*, 2007 U.S. Dist. LEXIS 43703, at *13-14 (noting that the fact that there were "no essential non-party witnesses in the District of Columbia" further favored transfer).

### E.      Varnam and Wityk Will Not Be Prejudiced by Transfer

Motions to change venue pursuant to section 1404(a) are not subject to specific time constraints and cannot be foreclosed by waiver. *See, e.g., Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir. 1981) (observing that section 1404(a) "does not include a time limitation"); *McDevitt & St. Co. v. Fidelity & Deposit Co. of Md.*, 737 F. Supp. 351, 355-56 (W.D.N.C. 1990) (noting that "section 1404(a) does not require a party to make a motion to transfer within a specified period of time after the filing of the cause of action"); *Commercial Solvents Corp. v. Liberty Mut. Ins. Co.*, 371 F. Supp. 247, 251 (S.D.N.Y. 1974) ("A motion pursuant to F.R.C.P. 12(b) must be made within a specified time period.   No such timeliness requirement is expressed in § 1404(a)."). Where, as here, a case is filed in an MDL, there is no reason to seek a transfer prior to completion of pre-trial proceedings.  Indeed, had Pfizer sought a transfer earlier, it would have simply caused unnecessary delay.  Moreover, given the fact that neither Varnam nor Wityk has ever actually been named in any pleading, Pfizer had no basis for making an earlier motion, and is moving now at the Court's request in its Order on summary judgment.  In short, there was no reason to seek a transfer before this time.

Moreover, transfer of Varnam's claim to his home state of Maine and Wityk's claim to her former home state and current neighboring state of Ohio would result in no more prejudice to them than an ordinary remand to a transferor court in an MDL, and, indeed, would have been the

required result had they originally filed actions in the states in which their claims arose.  As the Supreme Court made clear in *Lexecon*, the purpose of 28 U.S.C. § 1407 was to permit consolidation of actions *for pre-trial proceedings only* – not to permit a series of trials before a single court otherwise unconnected to the transactions at issue.  *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998).  Similarly, the *Norplant* court observed:

> If a party avoids the need for an MDL transfer order by filing directly in this court, the court is unable to rely on § 1407 for the efficient remand of such case to the proper venue after pretrial proceedings are concluded.  Instead, the court is forced to engage in the more burdensome task of relying on 28 U.S.C. § 1404(a) in evaluating the need for a change in venue.

*In re Norplant Contraceptive Products Liability Litigation*, 946 F. Supp. 3, 4 (E.D. Tex. 1996).[6]

---

[6] Because pretrial proceedings have been conducted as part of an MDL, relative court congestion (based, for example, on the relative time from filing to trial) is not particularly relevant and is not a significant factor for consideration.  To the extent Varnam and Wityk are determined to have individual claims, those claims stand in exactly the same position as if they had been originally filed in a convenient jurisdiction and were subject to remand pursuant to *Lexecon*.  Moreover, court congestion is arguably a neutral to transfer-favoring factor here:  as of March 31, 2010, the median time from filing to disposition for civil cases was 9.6 months in the District of Maine and 9.1 months in the Northern District of Ohio, compared to 9.7 months in the District of Massachusetts.  *See* Admin. Office of the U.S. Courts, Federal Caseload Statistics 2010, *available at* http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2010/tables/C05Mar10.pdf.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court find that Gary Varnam and Jan Frank Wityk are not parties to this action and cannot pursue individual claims against Pfizer or, alternatively, sever and transfer any claims it allows them to pursue to, respectively, the District of Maine and the Northern District of Ohio.

Dated: December 23, 2010                    Respectfully submitted,

                                            SKADDEN, ARPS, SLATE,
                                              MEAGHER & FLOM LLP

                                            By:     /s/ Mark S. Cheffo
                                                    Mark S. Cheffo

                                            Four Times Square
                                            New York, NY 10036
                                            Tel:  (212) 735-3000

                                                    -and-

                                            ROPES & GRAY LLP

                                            By:     /s/ Ana M. Francisco
                                                    Ana M. Francisco
                                                    BBO #564346

                                            Prudential Tower
                                            800 Boylston Street
                                            Boston, MA 02199-3600
                                            Tel:  (617) 951-7000
                                            Email:  ana.francisco@ropesgray.com

                                            *Attorneys for Defendants Pfizer Inc and*
                                            *Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on December 23, 2010.

/s/ Ana M. Francisco
Ana M. Francisco