UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | : : : |
| | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | : Civ. Action No. : 04-cv-10739-PBS |
| KAISER FOUNDATION HEALTH PLAN, INC., et al. | : : |
| | Master File No. 04-10981 |
| v. | : : |
| PFIZER, INC., et al. | : Judge Patti B. Saris : |
| | : Magistrate Judge Leo T. Sorokin |
| | : : **ORAL ARGUMENT** : **REQUESTED** : |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR TREBLED DAMAGES AND PREJUDGMENT INTEREST UNDER
RICO AND UPDATED PREJUDGMENT INTEREST UNDER THE UCL**

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................................................ii

ARGUMENT ........................................................................................................................1

I.    Interest Cannot Properly Be Awarded On Plaintiffs' RICO Claims ..................................1

    A.    The Overwhelming Majority Of Federal Courts Have Refused To Award
        Interest Under Federal Statutes Providing Damage Multipliers, Including
        RICO .........................................................................................................................1

    B.    None Of The Relevant Factors Favor An Award Of Prejudgment Interest
        In This Case ..............................................................................................................6

        1.    Plaintiffs Are Fully Compensated By An Award Of Treble
            Damages ..........................................................................................................6

        2.    Plaintiffs' Damages Are Too Speculative To Support An Award
            Of Prejudgment Interest ................................................................................8

        3.    No Other Factors Justify An Award Of Prejudgment Interest In
            This Case ......................................................................................................11

II.    Prejudgment Interest Cannot Be Awarded On Trebled Damages ....................................12

III.    Dr. Hartman's Interest Calculations Are Unrelated To The Jury Verdict And Use
     An Inappropriate Rate of Interest ...................................................................................16

CONCLUSION ...................................................................................................................18

## TABLE OF AUTHORITIES

### CASES

*Abou-Khadra v. Mahshie*, 4 F.3d 1071 (2d Cir. 1993) ............................................................2, 4

*Aetna Casualty & Surety Co. of Illinois v. Levy*,
   No. 83-C-3566, 1985 WL 3766 (N.D. Ill. Nov. 7, 1985)....................................................6, 15

*Aetna Casualty Surety Co. v. P & B Autobody*, 43 F.3d 1546 (1st Cir. 1994)........................4, 15

*Allstate Insurance Co. v. Palterovich*, 653 F. Supp. 2d 1306 (S.D. Fla. 2009).......................5, 15

*American Timber & Trading Co. v. First National Bank of Oregon*,
   690 F.2d 781 (9th Cir. 1982) ....................................................................................................2

*Bingham v. Zolt*, 810 F. Supp. 100 (S.D.N.Y. 1993)............................................................3, 6, 7

*Bonilla v. Trebol Motors Corp.*, 150 F.3d 77 (1st Cir. 1998) ........................................................5

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)................................................................6

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ..........................................14

*Businessland Rents, Inc. v. Brothers*, No. 91-C-0144,
   1991 WL 249679 (N.D. Ill. Nov. 14, 1991) .............................................................................5

*Celi v. Trustees of Pipefitters Local 537 Pension Plan*, 975 F. Supp. 23 (D. Mass. 1997) .........17

*Chubb & Son Inc. v. Kelleher*, No. 92CV4484CBARML,
   2006 WL 1789118 (E.D.N.Y. Apr. 28, 2006) .......................................................................3, 7

*City of Milwaukee v. Cement Division, National Gypsum Co.*, 515 U.S. 189 (1995) ..............7, 16

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, No. 88-CV-3694,
   1996 WL 510097 (E.D.N.Y. Sept. 5, 1996) .............................................................................5

*Cook County, Illinois v. United States ex rel. Chandler*, 538 U.S. 119 (2003).....................13, 14

*In re Crazy Eddie Securities Litigation*, 948 F. Supp. 1154 (E.D.N.Y. 1996).........................3, 7

*D'Orange v. Feely*, No. 95-7904, 1996 WL 446254 (2d Cir. Aug. 8, 1996) .................................5

*Devon Distributing Corp. v. Miner*, 525 F. Supp. 2d 1089 (S.D. Iowa 2007) ............................13

*Dexter v. Cosan Chemical Corp.*, No. Civ.A. 91-5436,
    1997 WL 34663763 (D.N.J. Mar. 12, 1997)......................................................3, 7, 8

*Estates of Ungar ex rel. Strachman v. Palestinian Authority,*
    304 F. Supp. 2d 232 (D.R.I. 2004)........................................................3, 4, 13

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008)..........................................13, 15

*Fishman v. Estate of Wirtz*, 807 F.2d 520 (7th Cir. 1986) ........................................2

*Fortino v. Quasar Co.*, 950 F.2d 389 (7th Cir. 1991) ...............................1, 4, 13, 15

*Garden City Boxing Club, Inc. v. Hernandez*, No. 04 CIV. 2081,
    2008 WL 4974583 (S.D.N.Y. Nov. 24, 2008) .................................................13

*Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431 (7th Cir. 1989)................1

*Gross v. Waywell*, 628 F. Supp. 2d 475 (S.D.N.Y. 2009) ..........................................14

*Group III Capital, Inc. v. Parasol Group, Ltd.*, No. 00 Civ. 6860,
    2003 WL 1948801 (S.D.N.Y. Apr. 23, 2003) .....................................................3

*Gutman v. Klein*, No. 03 Civ. 1570, 2010 WL 4916722 (E.D.N.Y. Nov. 24, 2010).....................2

*Harding v. Cianbro Corp.*, 473 F. Supp. 2d 89 (D. Me. 2007),
    *amended on other grounds*, 498 F. Supp. 2d 337 (D. Me. 2007) ...........................4

*Kaiser Foundation Health Plan, Inc. v. Pfizer, Inc.*,
    No. 04-cv-10739 (D. Mass. Nov. 3, 2010) .....................................................11

*Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59 (E.D.N.Y. 2006)...........................13

*Louisiana Power & Light Co. v. United Gas Pipe Line Co.*,
    642 F. Supp. 781 (E.D. La. 1986) .............................................................3, 4

*Laitram Corp. v. NEC Corp.*, 115 F.3d 947 (Fed. Cir. 1997) ...............................16, 17

*Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056 (Fed. Cir. 1983)...........................13

*Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987) .........................................1

*In re M/V Nicole Trahan*, 10 F.3d 1190 (5th Cir. 1994) .............................................17

*Mansker v. TMG Life Insurance Co.*, 54 F.3d 1322 (8th Cir. 1995) ...........................17

*In re Marshall*, 970 F.2d 383 (7th Cir. 1992).................................................15, 16

*Masco Corp. v. Bennett*, No. 3:08-cv-161, 2010 WL 1405136 (W.D.N.C. Mar. 31, 2010)...........2

*Mill Pond Associates, Inc. v. E&B Giftware, Inc.*, 751 F. Supp. 299 (D. Mass. 1990)...............13

*Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235 (S.D.N.Y. 1993) ...............................5, 15

*Minco, Inc. v. Combustion Engineering, Inc.*, 903 F. Supp. 1204 (E.D. Tenn. 1995)................13

*Min v. Chung*, No. 86-7486, 1987 WL 14148 (E.D. Pa. Jul. 16, 1987)...................................5, 15

*Monex Deposit Co. v. Gilliam*, No. SACV 09-287,
2010 WL 2349095 (C.D. Cal. Jun. 1, 2010)..........................................................................5

*Monex Deposit Co. v. Gilliam*, No. SACV 09-287,
2010 WL 2380873 (C.D. Cal. May 24, 2010) .........................................................5, 14, 15

*Neal v. Honeywell, Inc.*, 995 F. Supp. 889 (N.D. Ill. 1998) .......................................................16

*In re Neurontin Marketing & Sales Practices Litigation*,
1:04-cv-10981 (D. Mass. Dec. 10, 2010) .............................................................................10

*In re Neurontin Marketing & Sales Practices Litigation*,
1:04-cv-10981 (D. Mass. Jan. 8, 2010) ................................................................................12

*In re Neurontin Marketing, Sales Practices & Products Liability Litigation*,
257 F.R.D. 315 (D. Mass. 2009) ............................................................................................9

*In re Neurontin Marketing, Sales Practices, & Products Liability Litigation*,
433 F. Supp. 2d 172 (D. Mass. 2006)...................................................................................11

*Nu-Life Construction Corp. v. Board of Education of New York*,
789 F. Supp. 103 (E.D.N.Y. 1992).................................................................................3, 4, 7

*PacifiCare Health System, Inc. v. Book*, 538 U.S. 401 (2003).............................................13, 14

*Panix Products, Ltd. v. Lewis*, No. 01 Civ. 2709,
2003 WL 21659370 (S.D.N.Y. Jul. 15, 2003) ..................................................................3, 7

*Reich v. Sea Sprite Boat Co.*, 64 F.3d 332 (7th Cir. 1995) ..........................................................4

*Rodgers v. United States*, 332 U.S. 371 (1947) ........................................................................12

*Rubin v. Donoghoe*, 2006 WL 3254481 (D. Conn. Oct. 20, 2006) .........................................6, 15

*Rush v. Scott Specialty Gases, Inc.*, 940 F. Supp. 814 (E.D. Pa. 1996)......................................16

*SEB S.A. v. Sunbeam Corp.*, No. 02-80527-CIV,
 2004 WL 5564188 (S.D. Fla. Mar. 22, 2004).................................................................17, 18

*Security Insurance Co. of Hartford v. Old Dominion Freight Line, Inc.*,
 314 F. Supp. 2d 201 (S.D.N.Y. 2003) .................................................................................17

*SouthStar Funding, LLC v. Sprouse*, No. 3:05-CV-253-W,
 2007 WL 812174 (W.D.N.C. Mar. 13, 2007).....................................................................14

*State of Indiana ex. rel. Zoeller v. Pastrick*, 696 F. Supp. 2d 970 (N.D. Ind. 2010) .............1, 2, 3

*Stone v. Bayer Corp. Long Term Disability Plan*, No. 08-CV-356-BR,
 2010 WL 2595675 (D. Or. June 21, 2010) ........................................................................17

*Texas Industrial, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981)......................................14

*Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51 (2d Cir. 1971) .........................................2, 11

*Tri Component Products Corp. v. Benarroch*, No. 87-CIV-2351,
 1988 WL 126560 (S.D.N.Y. Aug. 5, 1988).........................................................................5

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
 529 U.S. 765 (2000) .....................................................................................................13, 14

*Vickers v. Principal Mutual Life Insurance Co.*, 993 F. Supp. 19 (D. Mass. 1998)....................17

*Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831 (2d Cir. 1992).... 6, 7, 8, 12

## STATUTES

28 U.S.C. § 1961................................................................................................... 16, 17, 18

29 U.S.C. § 1132.........................................................................................................6

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this opposition to Plaintiffs' Motion for Trebled Damages and Prejudgment Interest Under RICO and Updated Prejudgment Interest Under the UCL.  For the reasons discussed below, prejudgment interest cannot properly be awarded on Plaintiffs' RICO claims or on trebled damages.  In addition, interest cannot be awarded based upon Dr. Hartman's calculations, which bear no relation to the damages actually awarded by the jury and use an inappropriate rate to calculate interest.[1]

## ARGUMENT

### I.    Interest Cannot Properly Be Awarded On Plaintiffs' RICO Claims

#### A.    The Overwhelming Majority Of Federal Courts Have Refused To Award Interest Under Federal Statutes Providing Damage Multipliers, Including RICO

As numerous federal courts have held, an award of prejudgment interest is unnecessary and inappropriate when a plaintiff recovers statutory damages that are a multiple of actual damages.  As the Seventh Circuit has explained:

> [P]rejudgment interest should *not* be awarded in a case such as this where the violation of the age discrimination law is found to be willful and as a result the damages are doubled . . . .  Like most of the other circuits, we have held that if double damages are awarded[,] prejudgment interest may not be awarded. . . . [W]hen such interest is added to an award that is half punitive, as the plaintiffs would have us do, it ceases to have a compensatory function and becomes an unauthorized form of punitive damages.

*Fortino v. Quasar Co.*, 950 F.2d 389, 397-98 (7th Cir. 1991).[2]  Similarly, in a case under the

---

[1] Defendants incorporate by reference their prior Bench Memorandum in Response to Kaiser's Request for Prejudgment Interest [2726] and their Opposition to Plaintiffs' Motion to Admit Tables Showing Damages With Interest Into Evidence [2882].

[2] Both *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431 (7th Cir. 1989), and *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987), cited by Plaintiffs (Pl. Br. [3156] at 6), pre-dated the Seventh Circuit's decision in *Fortino*.  *Liquid Air* contains no substantive discussion of the issue of prejudgment interest and *Gorenstein* does not address the situation where multiple damages are more than sufficient to make the plaintiff whole, the point considered by the Seventh Circuit in *Fortino*. *See generally State of Indiana ex. rel. Zoeller v. Pastrick*, 696 F. Supp. 2d 970, 989 (N.D. Ind. 2010)

Clayton Act, the Second Circuit has explained:

> It is reasonable to interpret Congress's silence on the matter as indicating that trebled damages are sufficient penalty and that interest need not be included. Moreover, trebled damages will more than adequately compensate [the plaintiff] for its injuries.  Thus, there is no inherent policy reason to award moratory interest here and not doing so avoids difficult questions of proof – including highly abstruse inquiries as to proper rates and the time from which interest should run. Since the trebled damage device in any event adequately serves the penal and remedial purposes of the antitrust laws, we believe that it is sounder, absent contrary express Congressional intent, to consider that these difficult and time-consuming inquiries are intended to be avoided.

*Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 80 (2d Cir. 1971), *rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc.,* 409 U.S. 363 (1973); *see also Fishman v. Estate of Wirtz*, 807 F.2d 520, 561 (7th Cir. 1986) (disallowing prejudgment interest on treble damages in federal antitrust case); *Am. Timber & Trading Co. v. First Nat'l Bank of Or.*, 690 F.2d 781, 786 (9th Cir. 1982) ("[T]he district court properly refused to add prejudgment interest to the already substantial double recovery under the Bank Act.").

The vast majority of courts that have examined this issue as applied to RICO have concluded that prejudgment interest is inappropriate because RICO treble damages more than adequately compensate plaintiff for actual damages suffered.  *See Abou-Khadra v. Mahshie*, 4 F.3d 1071, 1084 (2d Cir. 1993) (affirming district court's decision not to award prejudgment interest); *Gutman v. Klein*, No. 03 Civ. 1570, 2010 WL 4916722, at *5 (E.D.N.Y. Nov. 24, 2010) (declining to award prejudgment interest, observing that interest is not normally awarded in treble damage cases absent "exceptional circumstances"); *Masco Corp. v. Bennett*, No. 3:08-cv-161, 2010 WL 1405136, at *3 (W.D.N.C. Mar. 31, 2010) ("The Court finds that in this matter the treble damages more than adequately compensate the plaintiffs for their losses and thus declines to grant the plaintiffs prejudgment interest."); *State of Indiana ex. rel. Zoeller v. Pastrick*, 696 F. Supp. 2d 970, 989 (N.D. Ind.  2010) (denying plaintiffs' request for prejudgment

---

(observing that "the Seventh Circuit has historically disallowed prejudgment interest where a plaintiff received doubled or trebled damages").

interest under RICO); *Chubb & Son Inc. v. Kelleher*, No. 92CV4484CBARML, et al., 2006 WL 1789118, at *5 (E.D.N.Y. Apr. 28, 2006) (finding that "the treble damages more than make [the plaintiff] whole, and that prejudgment interest on the RICO claim would be an undue windfall"); *Panix Prods., Ltd. v. Lewis*, No. 01 Civ 2709, 2003 WL 21659370, at *3 (S.D.N.Y. July 15, 2003) (finding that awarding prejudgment interest in addition to RICO treble damages would be excessive); *Group III Capital, Inc. v. Parasol Group, Ltd.*, No. 00 Civ. 6860, 2003 WL 1948801, at *3 (S.D.N.Y Apr. 23, 2003) (same); *In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1166 (E.D.N.Y. 1996) (refusing to award prejudgment interest on RICO trebled damages and noting that courts declined to award judgment interest "[i]n the majority of cases where a plaintiff's damages are trebled" because "courts have found those damages sufficient compensation"); *Bingham v. Zolt*, 810 F. Supp. 100, 102 (S.D.N.Y. 1993) (observing that "treble damages will usually more than adequately compensate a plaintiff for actual damages suffered"); *Nu-Life Constr. Corp. v. Bd. of Educ. of N.Y.*, 789 F. Supp. 103, 105-06 (E.D.N.Y. 1992) (denying prejudgment interest on RICO treble damages award because such interest would "'overcompensate'" plaintiff and "provide an undeserved windfall"); *La. Power & Light Co. v. United Gas Pipe Line Co.*, 642 F. Supp. 781, 811 (E.D. La. 1986) ("The RICO statute does not provide for the recovery of prejudgment interest, and federal courts have generally refused to award prejudgment interest on claims which provide for multiple damages.").[3]

Plaintiffs argue that because treble damages are partly intended to serve a remedial

---

[3] Similarly, in cases involving violation of the Clayton Act, which provides for trebled damages, prejudgment interest is usually denied. *See Nu-Life Constr. Corp.*, 789 F. Supp. at 105 (observing that "the treble damages provision of the Clayton Act has been held to sufficiently compensate victims of antitrust injuries without the need to add an award of interest"). Because "the legislative intent underlying the enactment of RICO's treble damages provision tracks that of the Clayton Act. . . . interest awards under RICO are similarly unnecessary to fairly compensate a successful plaintiff." *Id.* Courts also frequently decline to award prejudgment interest in cases involving other statutes which provide for treble damages. *See, e.g.*, *Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 304 F. Supp. 2d 232, 237-40 (D.R.I. 2004) (refusing to award prejudgment interest for violation of Antiterrorism Act, which already provided for treble damages); *Dexter v. Cosan Chem. Corp.*, No. Civ.A. 91-5436, 1997 WL 34663763, at *2-3 (D.N.J. Mar. 12, 1997) (modifying court order permitting prejudgment interest under NJ Spill Act because "where treble damages or substantial punitive damages are awarded it is inequitable to award prejudgment interest").

purpose, that prejudgment interest should be awarded.  (Pl. Br. at 5-6.)  Plaintiffs have it backwards.  It is precisely because one purpose of treble damages is to compensate plaintiffs that courts have consistently refused to award prejudgment interest where the plaintiff was awarded double or treble damages.  Because the damages multiplier is more than sufficient to make the plaintiff whole, prejudgment interest no longer serves its compensatory function, but results in a windfall to plaintiffs and an award of an additional penalty beyond what is authorized by the statute.  *See Fortino*, 950 F.2d at 398 (observing that one purpose of double damages in a Title VII case was "to make sure that the judgment does not inadvertently undercompensate the plaintiff" so that prejudgment interest should not also be awarded); *Reich v. Sea Sprite Boat Co.*, 64 F.3d 332, 333 (7th Cir. 1995) ("Indeed, we have held that the penalty component of such double or triple damages schemes sometimes serves in lieu of prejudgment interest on the compensatory portion of the award."); *Nu-Life Constr. Corp.*, 789 F. Supp. at 105 (observing that "the treble damages provision of the Clayton Act has been held to sufficiently compensate victims of antitrust injuries without the need to add an award of interest"); *La. Power & Light*, 642 F. Supp. at 811 (observing that "multiple damages more than reimburse a plaintiff for any loss he suffers from an unavailability of the funds he seeks to recover").

Plaintiffs cite *Aetna Casualty Surety Co. v. P & B Autobody*, 43 F.3d 1546 (1st Cir. 1994) and *Abou-Khadra v. Mahshie*, 4 F.3d 1071 (2d Cir. 1993), for the proposition that a court has discretion to award prejudgment interest under RICO.  Significantly, in the latter case, the Second Circuit affirmed the *denial* of prejudgment interest.  *See Abou-Khadra*, 4 F.3d at 1084. In *Aetna*, the discussion of prejudgment interest played ***no role*** in the First Circuit's decision because, as the court made clear, the defendant failed to preserve the issue for appeal.  *See Aetna*, 43 F.3d at 1571.  As other courts have noted, this discussion is non-binding dicta.  *See Harding v. Cianbro Corp.*, 473 F. Supp. 2d 89, 100 (D. Me. 2007) (noting that the discussion of prejudgment interest in *Aetna* is dictum), *amended on other grounds*, 498 F. Supp. 2d 337 (D. Me. 2007); *Estates of Ungar ex. rel Strachman  v. Palestinian Auth.*, 304 F. Supp. 2d 232, 240 (D.R.I. 2004) (same).  Indeed, the First Circuit itself has acknowledged that the issue

4

remains unsettled post-*Aetna.  See Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 87-88 (1st Cir. 1998).

In any event, as discussed below, Plaintiffs have not identified any factors that would justify a discretionary award of interest in this case.  Indeed, the handful of cases cited by Plaintiffs where prejudgment interest was awarded in RICO actions are readily distinguished from the case at hand.  In six cases, the court entered a default judgment against the defendants and engaged in little or no substantive discussion of the factors governing an award of prejudgment interest.  For example, in *D'Orange v. Feely*, No. 95-7904, 1996 WL 446254 (2d Cir. Aug. 8, 1996), the issue of when prejudgment interest should be awarded was not specifically discussed.  Instead, the issue was whether the court, on a default judgment, could award an amount in excess of the complaint.  *See id.* at *1, *4.[4]

In two other cases cited by Plaintiffs, the courts acknowledged that prejudgment interest should be awarded only in "under exceptional circumstances, such as 'where a defendant has sought unreasonably and unfairly to delay or obstruct the course of litigation.'"  *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, No. 88-CV-3694, 1996 WL 510097, at *16 (E.D.N.Y. Sept. 5, 1996) (citation omitted), *rev'd on other grounds*, 187 F.3d 229 (2d Cir. 1999); *accord Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 243 (S.D.N.Y. 1993).  In both cases, the courts found that the defendants unreasonably delayed the litigation by filing bad faith petitions for bankruptcy and calculated prejudgment interest only from the time of the defendants' bankruptcy filing.  *See Cofacredit*, 1996 WL 510097, at *16; *Miltland Raleigh-Durham*, 840 F. Supp. at 242-43.  In contrast, here, all of the relevant factors weigh *against* an award of prejudgment

---

[4] Likewise, prejudgment interest was awarded after default judgments in the following cases cited by Plaintiffs:  *Monex Deposit Co. v. Gilliam*, No. SACV 09-287, 2010 WL 2380873 (C.D. Cal. May 24, 2010); *Monex Deposit Co. v. Gilliam*, No. SACV 09-287-JVS, 2010 WL 2349095 (C.D. Cal. Jun. 1, 2010); *Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 2d 1306 (S.D. Fla. 2009); *Businessland Rents, Inc. v. Brothers.*, No. 91-C-0144, 1991 WL 249679 (N.D. Ill Nov. 14, 1991); *Tri Component Prods. Corp. v. Benarroch*, No. 87-CIV-2351, 1988 WL 126560 (S.D.N.Y. Aug 5, 1988); *Min v. Chung*, No. 86-7486, 1987 WL 14148 (E.D. Pa. Jul. 16, 1987).  Only *Allstate* contains even the barest discussion of the factors to be weighed by the courts, where default judgment was entered as a result of the defendant's discovery abuses.  *See* 653 F. Supp. 2d at 1314-15.

interest.  *See* Section I.B, *infra*.[5]

**B.      None Of The Relevant Factors Favor An Award Of Prejudgment Interest In This Case**

**1.      Plaintiffs Are Fully Compensated By An Award Of Treble Damages**

In *Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831 (2d Cir. 1992), upon which Plaintiffs rely (Pl. Br. at 8-9), the Second Circuit considered the appropriateness of prejudgment interest in a case arising under the Labor Management Relations Act ("LMRA"). *See* 955 F.2d at 832.  As the court explained, where an award of prejudgment interest is discretionary, a court should consider the following factors:  "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court."  *Id.* at 834.

The Second Circuit also cautioned that "[a]wards of prejudgment interest must not result in over-compensation of the plaintiff.  Accordingly, the Court has suggested disapproval of such awards where the statute itself fixes damages deemed fully compensatory as a matter of law."  *Id.* at 834 (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)).  Thus, the Second Circuit observed that "prejudgment interest is improper where the statute itself already provides for full compensation or punitive damages" such as where double or treble damages are available.  *Id.* at 835.  Although the court affirmed the award of prejudgment interest in *Wickham*, it noted that

---

[5] Besides *Cofacredit* and *Miltland*, Plaintiffs cite only two cases not involving a default judgment in support of their untenable statement that "[f]ederal courts routinely exercise their discretion and award prejudgment interest in addition to RICO damages" (Pl. Br. at 7):  *Rubin v. Donoghoe*, No. 3: 05-CV-1644, 2006 WL 3254481 (D. Conn. Oct. 20, 2006); *Aetna Cas. & Sur. Co. of Ill. v. Levy*, No. 83-C-3566, 1985 WL 3766 (N.D. Ill. Nov. 7, 1985).  In *Rubin*, the court did not award prejudgment interest, but considered it only as part of its estimate of probable damages for purpose of the plaintiff's motion for a prejudgment remedy.  *See Rubin*, 2006 WL 3254481, at *1, *11.  *Levy* was decided prior to the Seventh Circuit's decision in *Fortino* and fails to address the implications of trebling on a prejudgment interest award.  *Levy*, 1985 WL 3766, at *3; *see also Bingham*, 810 F. Supp. at 103 n.3 (declining to follow *Levy*, which was contrary to the weight of authority and where the court failed to provide its reasoning).

Plaintiffs' reliance upon ERISA cases is misplaced, because ERISA does not provide for treble damages.  *See* 29 U.S.C. § 1132.

"The LMRA does not fix liquidated damages, and does not double or treble damages. Nor is a Section 303(b) award punitive in nature. Therefore, the interest award to Wickham is not overly compensatory or otherwise improper." *Id.* at 839. Following *Wickham*, courts within the Second Circuit have consistently refused to award prejudgment interest in RICO cases absent exceptional circumstances. *See Bingham*, 810 F. Supp. at 101-02 ("Applying the *Wickham* factors to the present case, we find that the treble damage award on the RICO recovery adequately compensates plaintiff for the actual damages suffered and obviates the need to award prejudgment interest."); *accord In re Crazy Eddie Sec. Litig.*, 948 F. Supp. at 1166; *Chubb & Son Inc.*, 2006 WL 1789118, at *5; *Panix Prods.*, 2003 WL 21659370, at *3; *Nu-Life Constr. Corp.*, 789 F. Supp. at 105.

Plaintiffs nakedly assert that an award of prejudgment interest is necessary to fully compensate them (Pl. Br. at 8-9), but provide no explanation for why an award of actual damages, trebled, is insufficient to make them whole. The jury found that Plaintiffs had sustained actual damages in the amount of $47,363,092. As the Supreme Court has stated, and Plaintiffs concede (Pl. Br. at 5), the purpose of prejudgment interest is to "restor[e] a party to the condition it enjoyed before the injury occurred" by compensating it "'for the loss of use of money due as damages from the time the claim accrues until judgment is entered.'" *City of Milwaukee v. Cement Div. Nat"l Gypsum Co.*, 515 U.S. 189, 196 (1995) (citation omitted). According to Plaintiffs' own expert, the lost time value of the actual (untrebled) damages sustained by Kaiser (using the prime rate) is only $25,412,395. (Pl. Br. at 12 n.12.) Thus, even based on Dr. Hartman's prejudgment interest calculations, Kaiser would be fully compensated by an award of $72,775,487.[6] Even based upon Dr. Hartman's calculations, therefore, a treble damage award of $142,089,276 is almost twice the amount needed to compensate Kaiser for the actual damages found by the jury and the lost use of that amount. For example, in *Dexter v.*

---

[6] Pfizer does not concede that the jury's damage award is supported by the evidence or that Dr. Hartman has correctly calculated prejudgment interest. *See infra* Section III.

*Cosan Chemical Corp.*, No. Civ.A. 91-5436, 1997 WL 34663763 (D.N.J. Mar. 12, 1997), the court declined to award prejudgment interest, observing that "[e]ven assuming that the treble damages in this case may be used in part to cover large attorneys' fees and disbursements which plaintiffs incurred in this case, there will be ample sums left to cover plaintiffs' loss of the use of their money." *Id.* at *3. Where, as here, the statute separately provides for attorneys' fees and court costs, there is even less justification for prejudgment interest.

### 2. Plaintiffs' Damages Are Too Speculative To Support An Award Of Prejudgment Interest

The Second Circuit further observed in *Wickham* that "[t]he speculative nature of the damages in question will always be relevant to a sound decision on a consideration of whether prejudgment interest should be awarded." 955 F.2d at 836. In *Wickham*, for example, the jury was able to fix damages with a fair amount of precision. The total revenue to be earned by the plaintiff under the contracts at issue was known with certainty to be $502,000 and there was evidence supporting the plaintiff's claim that the expected profit was 10%. As a result, "the upper limit on damages could be calculated with some certainty at about $50,200, the total profits expected under the three contracts." *Id.* at 840.

For the reasons set forth in Defendants' prior memoranda of law,[7] the evidence offered by Plaintiffs in support of their claimed damages is extremely speculative and subject to wide margins of error. Even if Plaintiffs' damages evidence were sufficient to support a judgment (and Defendants maintain it is not),[8] the following factors all combine to create an extremely wide margin of error:

---

[7] Memorandum of Law in Support of Defendants' Motion for Judgment as a Matter of Law Based Upon Lack of Sufficient Evidence of Injury or Causation [2671]; Memorandum of Law in Support of Defendants' Motion for Judgment as a Matter of Law Based Upon Lack of Sufficient Evidence to Prove Damages [2673], Memorandum of Law in Support of Defendants' Supplemental Motion for Judgment as a Matter of Law Based Upon Lack of Sufficient Evidence of Injury, Causation or Damages [2741].

[8] For the reasons set forth in Defendants' prior motions and supporting memoranda, Defendants submit that the evidence is insufficient, as a matter of law, to satisfy Plaintiffs' burden to prove injury and causation or to quantify their damages with reasonable certainty. Pursuant to Federal Rule of Civil Procedure 50(b), Defendants intend to renew each of their motions for judgment as a matter of law.

(1)     Prof. Rosenthal did not consider Kaiser-specific data, much less data specific to any of the eight separately incorporated PMGs, each of which independently developed its own formulary with its own approved indications and restrictions. Instead, she extrapolated from national data for all Neurontin prescriptions, the vast majority of which were not for Kaiser members and applied her extrapolations to Plaintiffs, neither of which actually wrote or approved the formulary for any of the eight separate PMGs.   She did this notwithstanding Plaintiffs' repeated assertion that their drug utilization management is very different from that of other TPPs.   (*See* Mem. of Law in Support of Defs' M. for J. as a Matter of Law Based Upon Lack of Sufficient Evidence of Injury or Causation [2671] at 14-16; Mem. of Law in Support of Defs' M. for J. as a Matter of Law Based Upon Lack of Sufficient Evidence to Prove Damages [2673] at 2-3.)

(2)     Prof. Rosenthal only attempted to correlate detailing expenditures with prescriptions, notwithstanding this Court's determination that insufficient evidence of fraudulent detailing had been presented.   (3/19 Tr. at 221:5-10.)

(3)     Although the Court held that this case would be submitted to the jury only as a suppression case, *id.*, Prof. Rosenthal did not measure impacts of alleged suppression of medical literature or formulary decisions by PMGs.   (2671 at 16-17; *see also In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 329 (D. Mass. 2009) (observing that "'[b]ecause of the limits in [her] data, [she is] unable to account systematically' for the influence that the 'manipulation of the published literature to which physicians look for impartial information' had on prescribing" (alterations in original; citation omitted)).

(4)     Prof. Rosenthal's "analysis [did] not take into account any other factors that may have led doctors to prescribe Neurontin for off-label indications."  *Id.* at 330.

(5)     Prof. Rosenthal employed an improper, results-oriented methodology.   For example, she omitted a time trend, did not consistently include a constant, and repeatedly changed her model for each of her indication/specialty pairings until she got the result that she wanted. (2671 at 17.)

(6)     Prof. Rosenthal based her disaggregation of the purported effects of Defendant's various alleged acts on prescriptions for multiple different indications on survey data with wide margins of error, sometimes as high as 60 percent.   (3/22 Tr. (Keeley) at 113:21-114:24.)

(6)     The ICD9 codes used by Prof. Rosenthal to disaggregate the data for multiple different indications were provided to her by Plaintiffs' counsel and were not supported by any medical testimony.   For example, she admitted that she included ICD9 codes for depression in her "bipolar" calculations.   (2671 at 18; Mem. of Law in Support of Defs' Supp. M. for J. as a Matter of Law Based Upon Lack of

Sufficient Evidence of Injury, Causation or Damages [2741] at 1-3.)[9]

(7) Prof. Rosenthal's calculations included several computational and statistical errors. (3/8 Tr. (Rosenthal) at 58:7-60:14; 3/22 Tr. (Keeley) at 49:10-51:4, 53:12-19.) These computational errors resulted in significant overstatement of damages. (3/22 Tr. (Keeley) at 57:24-58:18.)

Indeed, as this Court recently observed when granting summary judgment dismissing the claims by the Class TPPs:

Dr. Rosenthal used national data, correlated with information about Pfizer's promotional spending, to determine the percentages of Neurontin prescriptions that were "caused" by Pfizer's fraud. While this analysis demonstrates the likelihood of some injury, particularly in the area of bipolar disorder, *it does not suffice to demonstrate the extent of harm caused by the fraud*, as opposed to run-of-the-mill off-label detailing. Most courts have rejected such aggregate proof. The Second Circuit recently held, in a class action regarding sales and marketing of the drug Zyprexa, that where "[p]laintiffs allege an injury that is caused by physicians relying on [a pharmaceutical company's] misrepresentations," the injury cannot be shown by generalized proof."

*In re Neurontin Mktg. & Sales Practices Litig.*, No. 1:04-cv-10981, Mem. & Order [3154] at 26-27 (D. Mass. Dec. 10, 2010) (emphasis added; alteration in original).[10]

Because Dr. Hartman's estimates depended on the percentages of alleged wrongful prescriptions calculated by Prof. Rosenthal, every error made by Prof. Rosenthal is carried forward into Dr. Hartman's damages calculations. Dr. Hartman then compounded the imprecision by failing to account for the following in his estimates:

(1) Dr. Hartman did not exclude from his damages calculations prescriptions that benefited patients. (2673 at 3-5.)

(2) Dr. Hartman did not exclude prescriptions written by physicians who still would have prescribed Neurontin in Plaintiffs' hypothetical "but for" world. (*Id.* at 8-9.)

(3) Dr. Hartman did not account for physicians who would have prescribed a drug

---

[9] A chart review of over 20,000 prescriptions conducted by Kaiser of its own drug utilization found that its Neurontin prescriptions for bipolar comprised only approximately 4 percent of Kaiser's total Neurontin prescriptions, (3/3 Tr. (Carrejo) at 54:10-68:20), compared to 16 percent estimated by Dr. Hartman. (PX 408F.)

[10] This Court distinguished Kaiser on the grounds that it provided evidence of direct reliance. *See* Mem. & Order [3154] at 23. This distinction, however, does not render Prof. Rosenthal's calculations any more precise.

other than one on Plaintiffs' list of cheaper drugs.  (*Id.* at 7.)

(4)     Dr. Hartman did not exclude prescriptions written for patients who had tried, without success, Plaintiffs' proposed alternative drugs.  (*Id.* at 7-8.)

(5)     Dr. Hartman did not exclude prescriptions written for patients for whom Plaintiffs' cheaper drugs were contraindicated.  (*Id.* at 8.)

(6)     Dr. Hartman included prescriptions written after publication of studies that Plaintiffs' claim were suppressed.  (*Id.* at 10-11.)

Because Plaintiffs will be more than fully compensated by an award of treble damages, and substantial imprecision in Plaintiffs' damages calculations creates a significant risk that compensatory damages are overstated, Plaintiffs should not be awarded prejudgment interest. *See Trans World Airlines*, 449 F.2d at 80.

### 3.     No Other Factors Justify An Award Of Prejudgment Interest In This Case

As discussed above, in the only two cases found by Plaintiffs where the courts awarded prejudgment interest after substantively considering the interplay between treble damages and prejudgment interest in light of the *Wickham* factors, the courts found that the defendants had unreasonably delayed the litigation by filing for bankruptcy in bad faith.  *See supra* at 5.  No similar factors are present here.  To the contrary, the evidence showed that Plaintiffs were alerted to off-label marketing claims by the Pink Sheet no later than April 3, 2000.  *See Kaiser Foundation Health Plan, Inc. v. Pfizer, Inc.*, No. 04-cv-10739, Findings of Fact & Conclusions of Law [59] at 125 (D. Mass. Nov. 3, 2010).  And Plaintiffs conceded that they were on notice of their claims for fraud by 2002.  *Id.* at 126.  However, Kaiser did not file suit until several years later, on February 1, 2005.  (1st Am. Compl. [29].)  Even then, the allegations of the complaint were insufficient and Plaintiffs were ordered by this Court to re-plead.  *See In re Neurontin Mktg., Sales Practices, & Prods. Liab. Litig.*, 433 F. Supp. 2d 172, 185-86 (D. Mass. 2006).  And throughout the life of this litigation, Plaintiffs took no action to restrict formulary access to Neurontin or gabapentin, even after receiving their expert reports.  Indeed, until February 9, 2010, Kaiser Health Plan continued to recommend Neurontin to its members as an effective treatment for neuropathic pain (as well as other off label conditions), stating that "gabapentin and

pregabalin are the only drugs that have proved to help relieve some types of chronic pain," that some anticonvulsants have fewer side effects than TCAs, and that "[t]he anticonvulsant gabapentin may be your best bet for safely treating chronic pain because it is not used by the body in the same way as many other medicines."  (DX 918A, 918.)  Even as of the time of trial, the Kaiser Permanente online drug encyclopedia listed only Neurontin and generic gabapentin under the heading "Drugs for Managing Pain Originating From a Nerve," and the website stated that "'[g]abapentin may also be used to treat other [off-label] nerve pain conditions such as diabetic neuropathy, peripheral neuropathy, trigeminal neuralgia),'" and that AEDs, including Neurontin, are "often used for pain involving the nerves."  (DX902A; 902B; 3/2 Tr. (Carrejo) at 138:6-139:7.)

Nor can the fact that Defendants vigorously defended this litigation justify an award of prejudgment interest.  Where a plaintiff is otherwise made whole by an award of treble damages, prejudgment interest cannot be justified based on the fact that the defendant contested liability. That is especially true here, where this Court has granted summary judgment dismissing the claims of six other TPPs and all except two consumer plaintiffs in related litigation.  *See* Mem. & Order [3154]; *In re Neurontin Mktg. & Sales Practices Litig.*, 1:04-cv-10981, Mem. & Order [2309] (D. Mass. Jan. 8, 2010).

## II.    Prejudgment Interest Cannot Be Awarded On Trebled Damages

Even if the Court found that prejudgment interest should be awarded, it must be limited to the $47,363,092 actual damages found by the jury.  Courts have consistently held that prejudgment interest may be awarded only on the actual damages found by the trier of fact (here the jury) and not penalties or statutory multipliers.  *See Rodgers v. United States*, 332 U.S. 371, 376 (1947) ("We are unable to say that it would be consistent with the congressional purpose for the courts to add interest to these very substantial penalties already imposed upon non-cooperating farmers."); *Wickham Contracting Co.*, 955 F.2d at 834-35 (observing that "prejudgment interest should not be awarded if the statutory obligation on which interest is

sought is punitive in nature" or the "statute itself already provides for . . . punitive damages");
*Fortino*, 950 F.2d at 397-98 (observing that "when [prejudgment] interest is added to an award
that is half punitive . . . , it ceases to have a compensatory function and becomes an unauthorized
form of punitive damages"); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir.
1983) ("[P]rejudgment interest cannot be assessed on the increased or punitive portion of the
damage award.  Prejudgment interest is awarded to compensate for the delay in payment of the
damages, and not to punish the infringer." (citation omitted)); *Garden City Boxing Club, Inc. v.
Hernandez*, No. 04 CIV. 2081, 2008 WL 4974583, at *7 (S.D.N.Y. Nov 24, 2008) ("[S]ince the
recommended statutory and enhanced damages are, in part, punitive, an award of pre-judgment
interest is not appropriate in this case."); *Estates of Ungar ex rel. Strachman v. Palestinian Auth.*,
304 F. Supp. 2d 232, 237-40 (D.R.I. 2004) (holding that prejudgment interest could not be
assessed on treble damages).[11]

Plaintiffs' argument that prejudgment interest may be awarded on trebled damages rests
solely on the characterization of trebled damages as "remedial."  (Pl. Br. at 12 n.12.)  Plaintiffs'
argument misapprehends Supreme Court jurisprudence on this issue, which makes clear that
treble damages serve *both* a remedial and a compensatory function.  *See Exxon Shipping Co. v.
Baker*, 554 U.S. 471, 507 (2008) (analogizing punitive damages to the treble damage provisions
of RICO and other federal statutes); *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 405
(2003) (noting that treble damages occupy different positions "along the spectrum between
purely compensatory and strictly punitive awards"); *Cook County, Ill. v. United States ex rel.
Chandler*, 538 U.S. 119, 131-32 (2003) (explaining that treble damages provision of the False
Claims Act served both a compensatory and punitive function); *Vermont Agency of Natural Res.
v. United States ex rel. Stevens*, 529 U.S. 765, 786 (2000) ("'The very idea of treble damages

---

[11] *See also Mill Pond Assocs., Inc. v. E&B Giftware, Inc.*, 751 F. Supp. 299, 302-03 (D. Mass.
1990); *Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 65 (E.D.N.Y. 2006); *Devon
Distributing Corp. v. Miner*, 525 F. Supp. 2d 1089, 1096 (S.D. Iowa 2007); *Minco, Inc. v. Combustion
Eng'g, Inc.*, 903 F. Supp. 1204, 1225 (E.D. Tenn. 1995), *aff'd*, 95 F.3d 1109 (Fed. Cir. 1996).

reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers.'" (quoting *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981))); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 485 (1977) (characterizing the Clayton Act's treble damages as remedial, but also noting that "treble damages also play an important role in penalizing wrongdoers and deterring wrongdoing").[12] Thus, as the court explained in *SouthStar Funding, LLC v. Sprouse*, No. 3:05-CV-253-W, 2007 WL 812174 (W.D.N.C. Mar. 13, 2007), while "a statutory damages multiplier may have a remedial purpose in the sense" that it is intended to incentivize private attorneys generals or to compensate for intangible injuries that may be difficult to prove, treble damages undeniably have a punitive function as well. *See id.* at *4; *see also Gross v. Waywell*, 628 F. Supp. 2d 475, 492 (S.D.N.Y. 2009) (observing that treble damages have a punitive function).

As discussed above, the fact that RICO treble damages serves a compensatory function counsels against an award of *any* prejudgment interest, since one element of compensation encompassed within treble damages is the lost time value of money. *See Cook County, Ill.*, 538 U.S. at 131 (noting that the treble damages provision of the False Claims Act helped to assure full recovery in light of the fact that the statute made no provision for prejudgment interest). Thus, the weight of authority holds that prejudgment interest should not be awarded in RICO actions. *See supra* Section I.A.[13] Plaintiffs' request for prejudgment interest on trebled damages

---

[12] Plaintiffs incorrectly suggest that *PacifiCare* constitutes some sort of sea change in the relevant law. (Pl. Br. at 12.) The issue before the Supreme Court in *PacifiCare* had nothing to do with prejudgment interest. Instead, the court considered only whether the term "punitive damages" in an arbitration agreement encompassed RICO treble damages. *See* 538 U.S. at 405. The court ultimately did not decide the issue, holding only that in light of the dual purpose of treble damages, the arbitration agreement was sufficiently ambiguous that the Supreme Court should not attempt to interpret the arbitration clause in advance of arbitration. *See id.* at 406-07. The court's discussion of the remedial purpose of treble damages did not represent a novel shift in the law, but simply summarized its precedents dating back to 1982. *See id.* at 406.

[13] Plaintiffs' reference to the "weight of authority" in footnote 12 of their brief is more than sophistry; it is a frank mischaracterization of the relevant case law. As discussed *supra*, the prevailing trend among courts who have carefully considered the issue is not to award any prejudgment interest in RICO cases. Such courts would never reach the question of whether prejudgment interest on the trebled amount was appropriate. Among the cases cited by Plaintiffs where courts did award prejudgment interest, several limited it to actual damages, not treble damages. *See Monex Deposit Co.*, 2010 WL

amounts to a request for interest on interest.  Further, as the Seventh Circuit has explained, even if statutory damages can be characterized as liquidated compensatory damages, they represent too rough a guess at actual damages to support an award of prejudgment interest.  *See In re Marshall*, 970 F.2d 383, 385-86 (7th Cir. 1992).[14]

Here, the award of treble damages is almost twice the amount needed to compensate Plaintiffs for the damages found by the jury and the interest estimated by Plaintiffs' expert on that amount.  *See supra* at 7.  The rest of any RICO award, an amount almost equal to Plaintiffs' actual damages with interest, represents a "bounty" with no compensatory function at all.  *See Exxon Shipping Co.*, 554 U.S. at 511.  Awarding prejudgment interest on the trebled amount would be contrary to the purposes of both punitive damages and prejudgment interest.

First, to award prejudgment interest on an award that already serves, in part, a punitive function is the equivalent of awarding penalties beyond what is expressly authorized by the statute.  *See Fortino*, 950 F.2d at 397-98.

---

2380873, at *4 (awarding 2% prejudgment interest on untrebled damages of $613,350, or $12,267); *Palterovich*, 653 F. Supp. 2d at 1332 n.22 ("The undersigned notes that the prejudgment interest is based solely on the amount of actual damages because it is not permissible to 'compute[ ] prejudgment interest on the amount of trebled damages, instead of the actual damages' . . . ." (alteration in original; citation omitted)); *Min*, 1987 WL 14148, at *1 (awarding 6% prejudgment interest over 27 months on untrebled damages of $67,500, or $9,022.50); *Levy*, 1985 WL 3766, at *4 ("The Court, however, will not treble the interest award. The plaintiff is fully compensated by the interest awarded herein.").

Plaintiffs' remaining cases fall far short of a "weight of authority."  They can hardly be characterized even as a minority trend.  As discussed *supra* at 4-5, in *Aetna Casualty Surety Co. v. P & B Autobody*, the First Circuit held that the issue was not preserved for appeal.  *See* 43 F.3d at 1571.  The court discussed the issue only to the extent of finding that the plaintiff's argument was not so compelling as to constitute a miscarriage of justice, the high standard that would allow the First Circuit to consider a waived issue on appeal.  *See id.*  In one of the remaining cases cited by Plaintiffs, the amount of interest awarded was not stated and the court limited interest to the time period the bankruptcy automatic stay was in effect.  *See Miltland*, 840 F. Supp. at 243.  Another does not involve an actual judgment awarding of damages.  *See Rubin*, 2006 WL 3254481, at *1.  In none of the district court cases cited by Plaintiffs was the propriety of awarding interest on the trebled portion damages discussed.

[14] In fact, none of the other remedial purposes of treble damages identified by the Supreme Court support the award in this case.  The goal of encouraging private attorneys general is not served where, as here, Plaintiffs waited three years after they admittedly learned of their claims to file suit and did so only after other parties, including federal and state governments and a qui tam relator had filed several lawsuits.  Indeed, Plaintiffs admit that they did not file suit until after there had been a substantial government settlement.  (Pl. Br. at 9.)

Second, awarding prejudgment interest on trebled damages is inconsistent with the goal of compensating plaintiffs for the lost use of funds. *See City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 196 (1995). The trebled portion of the award does not represent money that Plaintiffs were out-of-pocket during the relevant time period. Plaintiffs do not become entitled to treble damages until judgment is entered. As a result, prejudgment interest should not be awarded on the trebled portion of any award. *See In re Marshall*, 970 F.2d at 385 (holding that rationale for prejudgment interest did not apply to statutory damages that did not represent plaintiff's actual out-of-pocket loss); *cf. also Rush v. Scott Specialty Gases, Inc.*, 940 F. Supp. 814, 817 (E.D. Pa. 1996) ("[I]f the purpose of awarding prejudgment interest is to compensate a plaintiff for the loss of use of money that she would otherwise have earned," a court should not award interest on money that the plaintiff "would never have earned but for the jury verdict."); *Neal v. Honeywell, Inc.*, 995 F. Supp. 889, 897 (N.D. Ill. 1998) (holding that "the rationale for pre-judgment interest disappears" when a plaintiff did not suffer and actual out-of-pocket loss), *aff'd*, 191 F.3d 827 (7th Cir. 1999).

## III. Dr. Hartman's Interest Calculations Are Unrelated To The Jury Verdict And Use An Inappropriate Rate of Interest

To calculate prejudgment interest on Plaintiffs' federal claims, Dr. Hartman used the prime rate of interest. Plaintiffs justify this rate by citing to Dr. Hartman's testimony where he speculated that Plaintiffs replaced any of their out-of-pocket losses by borrowing at a corporate rate. (Pl. Br. at 12 n.11.) However, no evidence was introduced at trial that Plaintiffs had to borrow in order to replace any of the amounts for which they sought to recover as damages. To the contrary, it is far more likely that any amounts expended by Kaiser Health Plan for prescriptions were passed on to its members as premiums. Under such circumstance, a more appropriate rate of interest is the rate as specified under 28 U.S.C. § 1961.[15]  *See Laitram Corp.*

---

[15] 28 U.S.C. § 1961 provides that postjudgment interest shall be calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System" and compounded annually. 28 U.S.C. § 1961(a). Between 1995 and 2004, those rates fluctuated between 0.95 (6/20/2003) and 7.24 (1/6/1995).
*See* http://www.federalreserve.gov/releases/h15/data/Weekly_Friday_/H15_TCMNOM_Y1.txt.

*v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (affirming use of Treasury bill rate when "there was no evidence that [the plaintiff] borrowed money at a higher rate, what that rate was, or that there was a causal connection between any borrowing and the loss of the use of the money awarded"); *In re M/V Nicole Trahan*, 10 F.3d 1190, 1196-97 (5th Cir. 1994) ("As there was no evidence that [the plaintiff] borrowed money, or was prevented from paying off loans because of the casualty" use of the Treasury bill interest rate was appropriate.).[16]

The time period used by Dr. Hartman to calculate interest is likewise unsupported by the record. Dr. Hartman ties his RICO interest calculations to the "revised timing" stated in this Court's findings regarding Plaintiffs' claim under California's Unfair Competition Law ("UCL"). (Hartman Decl. [3157] ¶ 3.) However, there is no basis for assuming that the jury used the same time period as this Court when deciding the issue of damages. Indeed, given the disparity between the jury damage award and this Court's UCL award, it is highly unlikely that they did. Plaintiffs did not request a verdict form that would have required the jury to explain which of Dr. Hartman's two methodologies, if either, they used, or for which years they awarded damages. And Plaintiffs' suggestion that the Court use a time period that the jury appears to have rejected is untenable.

For example, in *SEB S.A. v. Sunbeam Corp.*, No. 02-80527-CIV, 2004 WL 5564188 (S.D. Fla. Mar. 22, 2004), the court held that "the parties were entitled to receive prejudgment interest beginning at a date prior to the verdict only if the exact date was explicit in the verdict or if the date was easily ascertainable by the Court." *Id.* at *1. Because "the jury did not indicate

---

[16] *See also Stone v. Bayer Corp. Long Term Disability Plan*, No. 08-CV-356-BR, 2010 WL 2595675, at *4 (D. Or. June 21, 2010) (using the rate provided in 28 U.S.C. § 1961 absent evidence that the plaintiff had to borrow at a higher rate); *Vickers v. Principal Mut. Life Ins. Co.*, 993 F. Supp. 19, 21 (D. Mass. 1998) (holding that the "federal rate of interest should be the basis for calculating the prejudgment interest owed to the plaintiff" in ERISA action); *Celi v. Trs. of Pipefitters Local 537 Pension Plan*, 975 F. Supp. 23, 29 n.4 (D. Mass. 1997) (holding that the federal statutory rate was the appropriate rate); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1331 (8th Cir. 1995) (holding that rate provided in 28 U.S.C. § 1961 should be used for both pre- and post-judgment interest); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 314 F. Supp. 2d 201, 203 (S.D.N.Y. 2003) (fixing prejudgment interest rate at federal postjudgment rate and noting that "[s]everal circuits have pointed to the federal postjudgment rate as a starting point in exercising the district court's discretion").

when the damages arose or to what models the damages pertained," *id.* at *2, the court refused to award interest prior to the date of verdict, stating:  "Not only is such second-guessing of the jury inappropriate, but it is also the kind of speculative guesswork that is prohibited in awarding prejudgment interest from a date certain."  *Id.*  Even more extensive guesswork would be required here.  The most that can be said is that the damages awarded by the jury occurred prior to December 31, 2004.  In the absence of additional information, this is the only date that can be used for purpose of determining prejudgment interest.[17]

As discussed above, Plaintiffs will be fully compensated by an award of treble damages.  Even if prejudgment interest were awarded, it should not be based on the higher rate of interest used by Dr. Hartman or calculated over the period of time proposed.  Instead, the Court should use the rate provided in 28 U.S.C. § 1961.  Prejudgment interest should be limited to the actual damages found by the jury ($47,363,092) and the time period from December 31, 2004 to judgment.  Calculated in this manner, the amount of interest comes to $8,044,849 through December 2010.  (*See* Decl. of Michael C. Keeley ¶ 4.)

<u>**CONCLUSION**</u>

For all the foregoing reasons, Plaintiffs' request for prejudgment interest should be denied.  Alternatively, prejudgment interest should be limited to the actual damages found by the jury ($47,363,092) the time period from December 31, 2004 to judgment, and based upon the rates provided in 28 U.S.C. § 1961.

---

[17] Even using the prime rate, as Dr. Hartman does, restricting interest to the period of time following December 31, 2004, reduces the amount to $18,365,273.  (*See* Decl. of Michael C. Keeley ¶ 4.)

### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Pfizer respectfully requests oral argument on this motion.

Dated: December 24, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ Mark S. Cheffo
       Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000
Email:  Mark.Cheffo@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ Raoul D. Kennedy
       Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel:  (415) 984-6400
Email:  Raoul.Kennedy@skadden.com

WHEELER TRIGG O'DONNELL LLP

By:   /s/ James E. Hooper
       James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel:  (303) 244-1800
Email:  hooper@wtotrial.com

*Attorneys for Defendants Pfizer Inc and*
*Warner-Lambert Company LLC*

---

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on December 24, 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo