UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:  NEURONTIN MARKETING, SALES
        PRACTICES AND PRODUCTS
        LIABILITY LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

ALL BOONE PRODUCT LIABILITY ACTIONS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

**UNREDACTED VERSION FILED UNDER SEAL**

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS'
<u>MOTION TO COMPEL COMPLETE DISCOVERY RESPONSES</u>**

Except for a handful of his 214 individual cases, Plaintiffs' lengthy Opposition Memorandum[1] does not address, much less deny, the particularized deficiencies highlighted by Pfizer's Motion to Compel.  At the last Status Conference before this Court, Mr. Boone rejected Pfizer's concerns about his clients' discovery responses, represented that his clients were in substantial compliance, and stated:  "I think the Court would probably ***need to look at these on a case-by-case basis***" in order to determine the adequacy of these responses.  (Dec. 1, 2010, Status Conf. Tr. [3179-15] at 33:13-17 (emphasis added).)  This Court then stated: "I think it's going to require a case-by-case determination, and what I'm expecting after the drop-dead date is one motion from [Defendants] that outlines any cases [they are] dissatisfied with, the general law, case by case each one, and then [Plaintiffs will] respond with the general law and then a ***case-by-case response***."  (*Id.* at 33:20-25 (emphasis added).)  Pfizer took Mr. Boone at his word, complied with the Court's guidance, and submitted a detailed Memorandum addressing the global discovery deficiencies pervasive throughout the 214 Boone responses.  Pfizer also prepared and submitted an Appendix outlining specific deficiencies in each individual case.  This was an extremely labor-intensive, time-consuming, and costly task.

In stark contrast, the Boone Plaintiffs' Opposition makes broad, vague, and generalized statements about some, of Pfizer's arguments, fails to respond to others, fails to respond on a case-by-case basis, and totally ignores Pfizer's case-specific Appendix A as to all but 10 of the 214 cases.[2]  Having asserted that Pfizer should undertake the enormous effort to spell out

---

[1] Plaintiffs' Opposition did not seek leave to exceed the page limitation.

[2]  With regard to the 10 cases that Plaintiffs highlight, they selectively respond to only a few of the arguments made by Pfizer.  (*Compare* Pls.' Memo at 21 [3206] at 5-20*, with* Appendix A [3179-1] at 1-15.)  While Pfizer maintains that Plaintiffs' responses in the 10 cases Mr. Boone addresses are deficient in many ways, Plaintiffs in those cases generally provided more information than in the nearly 200 cases remaining – in large part because Mr. Boone knew that their depositions were proceeding first and  Pfizer sent repeated deficiency letters.  In several instances, responses were not served until the day before the deposition, and Plaintiffs' responses at times directly conflicted with or differed from their prior responses.  As one example, Plaintiff ███████

Plaintiffs' deficiencies in detail, and on a case-by-case basis, any deficiencies not addressed with reasonable specificity should be deemed conceded.[3]

As a fallback to Plaintiffs' demonstrably false claims that they are in compliance with their discovery obligations, Plaintiffs assert that any deficiencies that may exist are not material or prejudicial.  (*See* Pls.' Opp. at 21 at 2, 23.)  However, the missing information concerns matters at the core of these lawsuits, including the nature of Plaintiffs' alleged injuries, who prescribed them Neurontin, the timing of the prescriptions, Plaintiffs' past mental health treatment, and other key information and documents about Plaintiffs' medical histories.  Their persistent failures to provide this basic information have seriously hindered Pfizer's ability to take meaningful depositions and respond to discovery.  Pfizer has had to keep every Boone Plaintiff deposition open due to these material deficiencies.  (*See, e.g.*, D. Watson Dep. [3179-9] at 198:9-19; Shoemaker Dep. [3179-14] at 160:16-24.)  Pfizer has expended substantial resources preparing for and traveling to these depositions, but will likely have to re-depose Plaintiffs based on new information learned there, and materials not previously disclosed.

---

[3] Even with regard to the 10 cases specifically mentioned in Plaintiffs' Opposition, most of the deficiencies raised by Pfizer were neither denied nor addressed.  For example, with regard to Plaintiff Jerry Lowe, Plaintiffs' Opposition states only that "Defendants complaint [sic] about medical providers." It does not address, however, Appendix A's noted deficiencies as to Mr. Lowe's responses for Interrogatory Nos. 2, 3, 4, 5, 10, 12, 15, and 24.  Mr. Lowe also claimed at his deposition ██████████████████████████████████████████████████████████████████████████  As to Plaintiff Vanessa Scott, the Opposition only addresses Pfizer's contention that she provided 4 names in response to Interrogatory No. 4 instead of the requested 10.  Yet it ignores the other deficiencies listed in Appendix A, including her failure to provide any medical provider list, failure to provide a prescription timeframe, and her inadequate answers to Interrogatory Nos. 1, 2, 3, 8, and 9.  As to Plaintiff Louisia Smith, Plaintiffs' Opposition simply claims that she could not remember the name of her husband or her children's birthdays, but it ignores many deficiencies outlined in Appendix A – including the fact that she listed only two medical providers even though her pharmacy records identify several others, that Pfizer's requests for the full names and addresses of the undisclosed providers has gone unanswered, and that Plaintiffs' answers were inadequate for Interrogatory Nos. 3, 4, 7, 8, 9, 11, and 14.  For Plaintiff Joyce Watson, Plaintiffs' Opposition only addresses Interrogatory No. 4 and the fact that her responses as to her alleged mental illness were inconsistent.  It fails to address Pfizer's points that she produced only 8 pages of medical records, failed to identify the physicians who prescribed Neurontin or the dates of use, identified numerous medical providers for the first time at her deposition, ████████████████████████████████████

Accordingly, Pfizer has been prejudiced not only by Plaintiffs' deficiencies, but also by relying on Mr. Boone's repeated  representations that template discovery was substantially accurate and complete, when in fact it was not.

Furthermore, Plaintiffs' Opposition provides no explanation (much less justification) for why Mr. Boone unilaterally altered the scope of Defendants' template discovery, contrary to this Court's Discovery Order No. 2, with improper time limitations, objections, and inadequate space to fully respond.  Instead, Mr. Boone attempts to ignore this issue by claiming in broad and unsubstantiated strokes that Plaintiffs disregarded his improper written instructions and actually answered all discovery responses without regard to his limitations.  (*See* Pls.' Opp. at 4.)  Of course, there is nothing to support that unrealistic claim and the Boone Plaintiffs deposed have contradicted it.  (*See, e.g.*, Skinner Dep. [3179-25] at 151:7-10 (stating that she only provided four names in response to Interrogatory No. 4 because she "only had four lines").)

Plaintiffs' Opposition also does not deny that Plaintiffs provided "canned responses obviously drafted by counsel and not the individual Plaintiffs."  *In re Family Dollar FLSA Litig.*, 3:08MD1932-MU, 2009 U.S. Dist. LEXIS 59165, at *23 (W.D.N.C. July 10, 2009).  Rather than explaining why Plaintiffs have sought to add new injuries in response to Interrogatory No. 11, years after the Complaints were filed, and on the eve of their depositions, they claim only as follows:  "Obviously, only a limited number of injuries have passed the *Daubert* test in this case and suicidal ideation is one of the few injuries that Daubert [sic], so it should not be surprising that many Plaintiffs would have suicidal ideation as an injury." (Pls.' Opp. at 4.)  Basically, Mr. Boone's position seems to be that these Plaintiffs have recently disclosed a new injury, not because of new information, but rather because he believes the Court will admit scientific evidence related to that injury under *Daubert*.  Mr. Boone's eleventh-hour efforts to assert a highly subjective claim, based on his view that it has passed muster under *Daubert,* might explain why the majority of the 214 Boone Plaintiffs, who previously wrote "N/A" or crossed out Interrogatory No. 11 in their handwritten responses, recently changed their answers to include allegations of suicidal ideation.  Such late stage supplementation raises serious concerns

3

about whether Plaintiffs have been coerced or influenced to suddenly recall new, and previously undisclosed ideation or "abnormal thinking."[4]

In addition, Plaintiffs' Opposition contains numerous material factual assertions that directly contradict the record.  First, the unequivocal claim that all Plaintiffs have identified their Neurontin-prescribing physicians in their medical provider lists is clearly false and ignores the specific examples raised in Pfizer's Memorandum and Appendix A.  Even the amended medical provider lists received in August 2010 lack critical identifying information, such as the prescribing physicians' full names and addresses.   Second, while their Opposition uncategorically claims that "Plaintiffs have produced copies of all of the medical records currently in their possession," (*see* Pls. Opp. at 3), depositions have indicated the opposite – namely that there are unproduced medical records in Plaintiffs' possession, (*see, e.g.*, D. Watson Dep. [3179-9] at 9:22-13:6; Brown Dep. [3179-7] at 172:22-175:7), and further that some records may not be "currently in their possession" because of spoliation caused by their counsel's failure to advise them as to their retention obligations, (*see, e.g.*, D. Watson Dep. [3179-9] at 10:11-13; Kyle Dep. [3179-10] at 10:19-11:8-11).   Third, while Plaintiffs' claim that they "believe that most other [non-medical] authorizations have been submitted," (*see* Pls. Opp. at 3), they cannot hold this belief in good faith in light of Pfizer's numerous unanswered deficiency letters highlighting the need for additional authorizations.   (*See, e.g.*, C. Stevens correspondence from August 4, 2010, to November 23, 2010 [3179-3 to 3179-6].)  Fourth, in an attempt to explain why certain template discovery responses were left completely blank,

---

[4] As one example, Plaintiff ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Plaintiffs' Opposition claims that Plaintiffs' answers were "to the best of their memory and belief." (*See* Pls. Opp. at 3).  However, there are numerous examples where Plaintiffs omitted simple and basic information from their discovery responses only to readily remember it during their depositions.  (*See, e.g.*, Shoemaker Dep. [3179-14] at 139:14-155:17; Kyle Dep. [3179-10] at 12:4-23:4.)  Fifth, while Plaintiffs' Opposition claims that they "generally answered all interrogatories," (*see* Pls. Opp. at 4), the vast majority provided only an objection and no answer whatsoever to Interrogatory Nos. 8 and 9.  Sixth, while Plaintiffs claim that a "Medical Provider List has been provided on behalf of each active plaintiff," (*see id*. at 22), Pfizer still lacks medical provider lists for several cases, (*see* Appendix A), and the lists that have been received for other Plaintiffs are predominately incomplete.  Finally, Plaintiffs' Opposition completely fails to address the serious spoliation issues raised in Pfizer's Memorandum.

## <u>CONCLUSION</u>

Defendants respectfully request that the Court grant their motion to compel.

Dated: January 7, 2011

Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By:     /s/ Mark S. Cheffo             
           Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

-and-

ROPES & GRAY LLP

By:    /s/ Ana M. Francisco
          Ana M. Francisco
          BBO #564346

Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel:  (617) 951-7000
Email:  ana.francisco@ropesgray.com

*Attorneys for Defendants Pfizer Inc and*
*Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 7, 2011.

              /s/ Ana. M. Francisco
              Ana M. Francisco