UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
                                                                :    MDL Docket No. 1629

In re: NEURONTIN MARKETING,           :

        SALES PRACTICES AND               :    Master File No. 04-10981

        PRODUCTS LIABILITY LITIGATION  :

                                                               :    Judge Patti B. Saris

------------------------------------------------------------x
                                                                :    Magistrate Judge Leo T. Sorokin

THIS DOCUMENT RELATES TO:             :

*Hamilton v. Pfizer Inc., et al.*                  :
Case No. 1:10-CV-11023 PBS           :

------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
TO COMPEL DEFENDANTS JANSSEN ORTHO LLC,
ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.,
JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &
DEVELOPMENT, L.L.C. AND JOHNSON & JOHNSON TO PRODUCE DISCOVERY**

Plaintiff, by the undersigned counsel, respectfully moves, pursuant to Rule 37 of the Federal Rules of Civil Procedure, for an Order compelling Defendants Janssen Ortho LLC, Ortho-McNeil-Janssen Pharmaceuticals, Inc., Johnson & Johnson Pharmaceutical Research & Development, L.L.C. and Johnson & Johnson (hereinafter referred to as "Defendants") to produce discovery regarding sales and marketing of Defendants' Topamax responsive to Plaintiff's October 7, 2010 Request for Production as such information is relevant to various salient issues in this litigation, including: (1) Defendants' negligence, failure to warn, suppression and recklessness in not demonstrating the safety of Topamax in off-label populations to whom the company had notice were using Topamax; (2) Defendants' negligence in knowingly and recklessly promoting Topamax to off-label populations without performing the adequate pharmacovigilance to ascertain whether Topamax was safe for such uses; and (3) that

Defendants had full knowledge of the extent of off label use of Topamax, yet Defendants did not know whether the product was safe for use in those off-label populations, and that Defendants were negligent and reckless in not taking adequate steps to learn of the safety in these populations.

## FACTUAL BACKGROUND

Plaintiff brings this action claiming that Defendants' prescription medication, Topamax, contributed to Derrick Hamilton's depression and resulting suicide on May 10, 2008. Mr. Hamilton was prescribed Topamax to treat his symptoms of trigeminal neuralgia, an off-label indication which was not approved by the FDA. Topamax is known to increase the risk of suicidality in those individuals who ingest it.[1] Plaintiff intends to prove at trial that by 2004, Defendants had evaluated the results from their own privately controlled clinical trials and confirmed a statistically significant increased risk of suicide related events with Topamax. Plaintiff contends that despite this evaluation, Defendants failed to warn physicians and patients of this risk, and in fact did not disclose this evaluation, analysis or results to the FDA. Declaration of Kenneth B. Fromson, Ex. A. By December 16, 2008, the FDA mandated that Defendants change their label to warn of the increased risk for suicidal behavior with the ingestion of their drug Topamax. Fromson Decl., Ex. B at 2.

On April 29, 2010, the United States Department of Justice issued a news release that manufacturers "Ortho-McNeil Pharmaceutical LLC and Ortho-McNeil-Janssen Pharmaceuticals Inc., both subsidiaries of Johnson & Johnson, have agreed to pay more than $81 million to resolve criminal and civil liability arising from the illegal promotion of the epilepsy drug

---

[1] The United States Food and Drug Administration (FDA) concluded that Topamax carried with it a statistically significant, twofold increased risk of suicidality. In this regard, the FDA determined an Odds Ratio of 2.53 (a doubling of the risk of suicidality with Topamax when compared to placebo patients). *See* fda.gov/downloads/drugs/drugsafety/postmarketingdrugsafetyinformationforpatientsandproviders/ucm/192556.

Topamax." Fromson Decl., Ex. C; *see also* Ex. D. (Plea Agreement, Information and Settlement Agreement and Criminal Judgment). Defendant Ortho-McNeil Pharmaceutical LLC pled guilty to 21 U.S.C. §§ 331(a), 331(a)(1) and 352 (f)(1), Misbranding (Fromson Decl., Ex. D, Criminal Judgment). In essence, Defendant admitted to distributing Topamax without adequate directions for use in the the Topamax label. 21 U.S.C. § 352(f)(1). The Department of Justice had alleged "that Ortho-McNeil Pharmaceutical promoted the sale of Topamax for off-label psychiatric uses through a practice known as the 'Doctor-for-a-Day' program. Using this program, Ortho-McNeil hired outside physicians to join sales representatives in their visits to the offices of health care providers and to speak at meetings and dinners about prescribing Topamax for unapproved uses and doses." Fromson Decl., Ex. C, Ex. D (Information) at 4-7.

On October 7, 2010, Plaintiff served Defendants with a Request for Production of Documents and Data. Fromson Decl., Ex. E. Defendants served a response to Plaintiff's Request for Production on or about November 10, 2010. Fromson Decl., Ex. F. Defendants have refused to provide documents responsive to several of the document requests. *Id.* In regard to the following document requests, Defendants responded to each with the identical blanket objection, namely, "OMJPI objects to this Request on the grounds that it is overbroad and unduly burdensome, that it seeks production of documents that are neither relevant nor reasonably calculated to lead to the production of relevant information":

**Plaintiff's Document Request No. 30:**

All documents regarding Defendants' "Doctor-for-a-Day" program.

**Plaintiff's Document Request No. 32:**

Documents sufficient to show aggregate prescription data received from third parties regarding Topamax (e.g., IMS Health, Inc.) through the date of these request for documents.

**Plaintiff's Document Request No. 37**:

Produce all documents regarding Topamax and suicidality, suicide, suicide attempts, suicidal ideation, suicide related events, suicidal behavior, and/or events with evidence of self-harm from the custodial files of Defendants' employees whose job responsibilities include sales and/or marketing of Topamax.

Plaintiff's counsel conferred with Defendants' counsel in an effort to resolve this dispute, to no avail. For example, Plaintiff's counsel is amenable to narrowing the scope and volume of the requested information responsive to the above requests. Plaintiff does not require "all" documents, and Plaintiff remains amenable to discuss a limited number of sources and custodians from which responsive discovery can be reasonably obtained. Nevertheless, Defendants stood on their objections and will not provide documents responsive to the requests.

## ARGUMENT

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, where a party "fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." A District Judge exercises broad discretion when supervising the discovery process. *Arzuaga-Perello v. Shell Co. (Puerto Rico), Etc.,* No. 98-1834, 1999 U.S. App. LEXIS 2162 (1st Cir. Feb. 4, 1999); *Cruden v. Bank of New York,* 957 F.2d 961, 972 (2d Cir. 1992). The First Circuit has stated that it will intervene concerning the trial court's discretion "only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.'" *Arzuaga-Perello* at *2 (citing to *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 91 (1st Cir. 1996)).

Pursuant to Fed. R. Civ. P. 26(b)(1), Plaintiff is entitled to "discovery regarding any nonprivileged matter that is relevant to an party's claim or defense." Moore's Federal Rules Pamphlet 2009). Courts have generally followed the premise that "the broad mandates of Fed.

4

R. Civ. P. 26 demand that the scope of discovery be liberally construed so as to provide both parties with information essential to proper litigation on all the facts." *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 103 F.R.D. 635, 637 (D. Mass. 1984) (citing to *Mitsui & Co. v. Puerto Rico Water Resources Auth.,* 79 F.R.D. 72 (D.P.R. 1978).

Defendants' national marketing documents relating to off-label marketing are relevant to Plaintiff's negligence, failure-to-warn, and negligent pharmacovigilance claims against Defendants. *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 114 (D. Mass. 2009).

Judge Patti B. Saris, in her May 26, 2009 Order, succinctly described the heightened duty to warn that a pharmaceutical manufacturer bears when it engages in off-label marketing of a drug:

> Based on the reasoning of this caselaw, the Court concludes that a manufacturer of a pharmaceutical has a duty to disclose to physicians and patients material facts about the risks of the drug, <u>particularly when it is engaged in off-label marketing</u> for uses not approved by the FDA, if it knows that the plaintiff and/or his prescriber does not know or cannot reasonably discover the undisclosed facts.

*Id.* at 110 (emphasis added).

The manufacturer's <u>knowledge</u> of off-label use with its drug is inextricably intertwined with a manufacturer's duty to disclose material facts about risks with the drug. While off-label prescribing by physicians is not itself improper, a manufacturer with knowledge of both extensive off-label use and material facts about risks inherent with taking the drug (e.g., depression and suicide), has a duty to take action. As explained below, the documents which Plaintiff has demanded will serve to demonstrate that Defendants were on notice both of the risks of depression and of the substantial off-label use of Topamax. Thus, Defendants' marketing documents are probative of Defendants' negligence.

5

First, Defendants' marketing documents are relevant to Plaintiff's proof that Defendants had a regulatory duty to create, establish and execute a pharmacovigilance plan to evaluate and analyze suicide and depression adverse events.  Although documents received in discovery reflect that Defendants did seek to revise their U.S. package insert in 2004 regarding cognitive/neuropsychiatric adverse events, Defendants chose not to inform patients or healthcare providers in the United States of (a) a three-fold higher risk of suicide related events, or (b) a specific admonition that patients be monitored for emerging signs of depression.  Ironically, such information was submitted to the United Kingdom regulatory authority for use in Europe.  Fromson Decl., Ex. G.  Defendants' conduct in choosing not to adequately inform U.S. patients and healthcare providers of a statistically significant increased risk of suicide related events is inextricably intertwined with their motivation: profit. Documents providing information concerning the sales data for Topamax is central to Plaintiff's cause of action and to establish when the duty to take action through warning and enhanced pharmacovigilance arose.  Plaintiff intends to use the national marketing documents including documents relating to aggregate prescription data (e.g., NDC Health, Scott Levin, IMS Health, Verispan data) received from third parties regarding Topamax to establish when Defendants should have undertaken to create a pharmacovigilance plan.

Defendants not only knew of Topamax's subsequent <u>widespread</u> off-label use, as detailed in the Department of Justice Information and Plea Agreement in reference to Topamax, Defendants engaged in illegal off-label marketing practices to cause such widespread off-label use.  Fromson Decl., Ex. D.  Documents in Defendants' possession regarding Topamax and suicidality, suicide, suicide attempts, suicidal ideation, suicide related events, suicidal behavior, and/or events with evidence of self-harm from the custodial files of Defendants' employees

6

whose job responsibilities include sales and/or marketing of Topamax will serve to demonstrate that Defendants were on notice of such risks and negligently failed to warn of same while at the same time marketing the drug for off-label uses.

Similarly, aggregate prescription data (e.g., NDC Health, Verispan, Scott-Levin or IMS Health data) possessed by Defendants, if any, (1) will reflect Defendants' knowledge of physicians' prescribing practices concurrently with Defendants' off-label marketing; or (2) even in the absence of Defendants' affirmative off-label marketing, the data will reflect Defendants' knowledge of off-label prescription.  Moreover, distinct from marketing purposes, the information is relevant from a safety perspective:  the data reflects increases and decreases in prescriptions concurrently with enhanced warnings (e.g., the FDA Alert 2008).

Applying the language and reasoning of Judge Saris, for purposes of Plaintiff's negligence claims, Plaintiff shall pursue at trial the foundational evidence that Defendants "engaged in off-label marketing" and thus had a "particular[]" "duty to disclose to physicians and patients material facts about the risks of [Topamax]."  *See* 618 F. Supp. 2d at 110. Defendants were negligent and breached their duty of care to Plaintiff and/or her decedent, by failing to adequately warn about the increased risk of suicidality with Topamax ingestion, <u>particularly</u> where Defendants had knowledge of the substantial off-label use with Topamax. Documents regarding Defendants' "Doctor-for-a-Day" program will serve as evidence that Defendants actively promoted Topamax for off-label uses and were well aware of the substantial off-label use.  This discovery is relevant to Plaintiff's claims that Defendants' knowledge of substantial off-label use and subsequent failure to warn of suicidality proximately caused Derrick Hamilton to commit suicide.

Here, Plaintiff is not utilizing the documents to demonstrate fraud or dilution of the warning in this case, but intends to utilize the documents to demonstrate Defendants' intentional breach of their common law and statutory duty of care. According to the law of this case, Defendants have a heightened duty of care when promoting the drug for off-label uses, uses not approved by the FDA. 618 F. Supp. 2d at 110. Plaintiff requires the national marketing documents to demonstrate that Defendants were negligent and reckless when they knowingly disregarded the safety of the off-label population taking Topamax, by not performing the requisite pharmacovigilance, while promoting Topamax for off-label uses. Even absent direct promotion, the company was well aware of the extent of the off-label use and it did not know whether the product was safe for use in those populations.

Plaintiff respectfully requests that the Court grant this motion in its entirety and order that Defendants produce documents responsive to the above specified requests for production within the next 30 days.

Dated: January 10, 2011                                  Respectfully submitted,

                                                         FINKELSTEIN & PARTNERS, LLP


                                                  By:    **/s/ Andrew G. Finkelstein**
                                                         Andrew G. Finkelstein, Esquire
                                                         1279 Route 300, P.O. Box 1111
                                                         Newburgh, NY  12551

                                                         *Attorneys for Plaintiff Paulette Hamilton*


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on January 10, 2011.

                                                         **/s/ Andrew G. Finkelstein**
                                                         Andrew G. Finkelstein