UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**PLAINTIFF KAISER'S REPLY BRIEF IN FURTHER
SUPPORT OF ITS MOTION FOR TREBLED DAMAGES
AND PREJUDGMENT INTEREST UNDER RICO AND
<u>UPDATED PREJUDGMENT INTEREST UNDER THE UCL</u>**

## **TABLE OF CONTENTS**

        **Page**

TABLE OF AUTHORITIES .................................................................................................... ii

I.      PFIZER CONCEDES THAT KAISER'S RICO DAMAGES MUST BE TREBLED AND THAT PREJUDGMENT INTEREST AWARDED UNDER THE UCL SHOULD BE UPDATED TO THE DATE OF JUDGMENT .................... 2

II.    KAISER IS ENTITLED TO PREJUDGMENT INTEREST ON ITS RICO AWARD TO FULLY COMPENSATE KAISER ......................................................... 3

      1.  Existing Law Supports an Award of Prejudgment Interest to Kaiser ..................... 4

      2.  Discretion to Award Prejudgment Interest Is Appropriate in this Case.................. 6

      3.  Any Award of Interest Is to Fully Compensate Kaiser and Damages Are Not Too Speculative to Preclude the Award of Prejudgment Interest .................... 7

      4.  Allowing Pfizer to Retain Interest on Funds Fraudulently Acquired from Kaiser Would Represent Unjust Enrichment ............................................. 9

III.   PLAINTIFFS' EXPERTS' CALCULATIONS ARE ACCURATE ........................... 10

      1.  Pfizer's Criticisms of Professor Rosenthal and Dr. Hartman Have Been Previously Considered and Rejected by the Court ............................................... 10

      2.  Dr. Hartman's Interest Calculations ................................................................... 12

IV.   CONCLUSION............................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Aetna Cas. & Sur. Co. of Ill. v. Levy*,
  No. 83-C-3566, 1985 WL 3766 (N.D. Ill. Nov. 7, 1985) ..........................................................4

*Aetna Cas. Sur. Co. v. P & B Autobody*,
  43 F.3d 1546 (1st Cir. 1994).........................................................................................1, 4, 8

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
  483 U.S. 143 (1987)................................................................................................................8

*Allstate Ins. Co. v. Palterovich*,
  653 F. Supp. 2d 1306 (S.D. Fla. 2009) ..................................................................................4

*American Timber & Trading Co. v. First Nat. Bank of Or.*,
  690 F.2d 781 (9th Cir. 1982) ..................................................................................................5

*Artmark-Chicago, Ltd. v. E. Mishan & Sons, Inc.*,
  No. 90 C 4512, 1992 U.S. Dist. LEXIS 12572 (N.D. Ill. Aug. 12, 1992)..........................2, 13

*Bingham v. Zolt*,
  810 F. Supp. 100 (S.D.N.Y. 1993)..........................................................................................3

*Brooklyn Sav. Bank v. O'Neil*,
  324 U.S. 697 (1945)................................................................................................................5

*Businessland Rents, Inc. v. Brian Bros.*,
  No. 91-C-0144, 1991 WL 249679 (N.D. Ill. Nov. 14, 1991) ...................................................4

*In re Chase & Sanborn Corp.*,
  127 B.R. 903 (S.D. Fla. Bankr. 1991) ..................................................................................13

*City of Milwaukee v. Cement Div., Nat. Gypsum Co.*,
  515 U.S. 189 (1995)................................................................................................................9

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  No. 88-CV-3694, 1996 WL 510097 (E.D.N.Y. Sept. 5, 1996), *rev'd on other grounds*, *Cofacredit,* 187 F.3d 229 (2d Cir. 1999) ..................................................................4

*Cook Cty., Ill. v. U.S. ex rel. Chandler*,
  538 U.S. 119 (2003)................................................................................................................5

*D'Orange v. Feely*,
  No. 95-7904, 1996 WL 446254 (2d Cir. Aug. 8, 1996) ...........................................................4

*Dexter v. Cosan Chem. Corp.*,
  No. 91-5436, 1997 WL 34663763 (D.N.J. Mar. 12, 1997) ...................................................... 5

*Estates of Ungar ex rel. Strachman v. Palestinian Auth.*,
  304 F. Supp. 2d 232 (D.R.I. 2004) .......................................................................................... 5

*Fishman v. Estate of Wirtz*,
  807 F.2d 520 (7th Cir. 1986) .................................................................................................. 6

*Fortino v. Quasar Co.*,
  950 F.2d 389 (7th Cir. 1991) .............................................................................................. 1, 5

*Garden City Boxing Club, Inc. v. Hernandez*,
  No. 04-2081, 2008 WL 4974583 (S.D.N.Y. Nov. 24, 2008) ................................................... 5

*Gorenstein Enters. v. Quality Care-USA*,
  874 F.2d 431 (7th Cir. 1989) ................................................................................................ 13

*Lam, Inc. v. Johns-Manville Corp.*,
  718 F.2d 1056 (Fed. Cir. 1983) ........................................................................................... 5, 9

*Liquid Air Corp. v. Rogers*,
  834 F.2d 1297 (7th Cir. 1987) ................................................................................................ 4

*In re Marshall*,
  970 F.2d 383 (7th Cir. 1992) ............................................................................................... 5, 9

*Miltland Raleigh-Durham v. Myers*,
  840 F. Supp. 235 (S.D.N.Y. 1993) .................................................................................... 4, 13

*Min v. Chung*,
  No. 86-7486, 1987 WL 14148 (E.D. Pa. Jul. 16, 1987) .......................................................... 4

*Monex Deposit Co. v. Gilliam*,
  No. SACV 09-287-JVS, 2010 WL 2349095 (C.D. Cal. Jun. 1, 2010) .................................... 4

*Neal v. Honeywell, Inc.*,
  995 F. Supp. 889 (N.D. Ill. 1998) ....................................................................................... 5, 8

*Osterneck v. Ernst & Whinney*,
  489 U.S. 169 (1989) ................................................................................................................ 9

*PacifiCare Health Sys., Inc. v. Book*,
  538 U.S. 401 (2003) ........................................................................................................ passim

*Platten v. HG Bermuda Exempted Ltd.*,
  437 F.3d 118 (1st Cir. 2006) ................................................................................................... 1

*Reich v. Sea Sprite Boat Co., Inc.*,
    64 F.3d 332 (7th Cir. 1995) ..................................................................................5, 9

*Rubin v. Donoghoe*,
    05-CV-1644, 2006 WL 3254481 (D. Conn. Oct. 20, 2006) ......................................4

*Rush v. Scott Specialty Gases, Inc.*,
    940 F. Supp. 814 (E.D. Pa. 1996) ........................................................................5, 9

*Shearson/Am. Express Inc. v. McMahon*,
    482 U.S. 220 (1987)....................................................................................................8

*SouthStar Funding, LLC v. Sprouse*,
    No. 05-253, 2007 WL 812174 (W.D.N.C. Mar. 13, 2007).........................................5

*State of Indiana ex rel. Zoeller v. Pastrick*,
    696 F. Supp. 2d 970 (N.D. Ind. 2010) .................................................................3, 10

*Trans World Airlines, Inc. v. Hughes*,
    449 F.2d 51 (2d Cir. 1971).........................................................................................5

*Tri Component Prods. Corp. v. Benarroch*,
    No. 87-CIV-2351, 1988 WL 126560 (S.D.N.Y. Aug. 5, 1988) ............................3, 4

*Vermont Agency of Nat. Resources v. U.S. ex rel. Stevens*,
    529 U.S. 765 (2000)....................................................................................................5

*Wickham Contracting Co. v. Local Union No. 3, IBEW*,
    955 F.2d 831 (2d Cir. 1992).......................................................................................6

**STATUTES**

18 U.S.C. § 1964(c) ................................................................................................................1

35 U.S.C. § 284......................................................................................................................5

29 U.S.C. § 626(b) . ...............................................................................................................5

By its silence, Pfizer has conceded two issues raised in Kaiser's motion for trebled damages and prejudgment interest: (1) that Kaiser's damages under RICO must be trebled; and (2) that Kaiser is entitled to an update, through the date of judgment, of this Court's award of interest on Kaiser's UCL claim. These points are undisputed.

Pfizer's sole contention is that prejudgment interest cannot be properly granted on the RICO award. Pfizer argues, based on legally and factually distinguishable cases, that an award of prejudgment interest on a RICO claim is impermissible under the law. Pfizer seems to reason that because *certain* federal statutes that contain multiplied or exemplary damages provisions are considered punitive in nature, *see, e.g.*, *Fortino v. Quasar Co.*, 950 F.2d 389, 397 (7th Cir. 1991) (describing double damages of ADEA claim as "half-punitive"), RICO awards must be punitive in nature as well and thus ineligible for interest. But Pfizer seems unwilling to accept the well-settled notion that all trebling provisions are not the same, and that RICO treble damages are remedial in nature and intended for compensatory purposes. *See PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406 (2003) ("[W]e have repeatedly acknowledged that the treble-damages provision contained in RICO itself is remedial in nature."). RICO's remedial nature means that awards of prejudgment interest *are* permissible on a successful RICO claim. *See, e.g.*, *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1572 (1st Cir. 1994) ("RICO damages are primarily compensatory in nature, and thus prejudgment interest was properly awarded.").

Nor does Pfizer present a cogent way to explain why many courts routinely award prejudgment interest to judgments under RICO. Pfizer suggests that with one or two exceptions, all of the cases awarding interest are wrongly decided. What Pfizer overlooks is that many of these cases turn on a central question: did the RICO defendant earn interest on the fraudulent spoils? In certain cases, the RICO defendant tricks the plaintiff into handing over money, which

1

the defendant then keeps. In these cases, not only does the defendant fraudulently acquire plaintiff's money, the defendant then also acquires the interest that such money earns. Of course, there are many cases where interest is not awarded. In many of those cases, however, the RICO defendant caused an economic injury, but money did not necessarily change hands. Or if it did, it went into numerous pockets, not just the defendant's. In such cases, courts are generally unwilling to award interest since the defendant did not earn interest on the spoils of its fraud.

Here, Kaiser deserves to be compensated for *all* of its loss, not just the money it spent on Neurontin as a result of the fraud, but also the interest on those funds that Pfizer was able to earn year after year as a result of its fraudulent concealment of the fraud. While the RICO award compensates Kaiser for the first fraud, an award of prejudgment interest is necessary to compensate it for the interest that was later earned on that fraudulently obtained money. Allowing Pfizer to keep that interest would be a windfall *to Pfizer* and would be manifestly unjust. Kaiser respectfully requests that its motion be granted in its entirety.

**I.   PFIZER CONCEDES THAT KAISER'S RICO DAMAGES MUST BE TREBLED AND THAT PREJUDGMENT INTEREST AWARDED UNDER THE UCL SHOULD BE UPDATED TO THE DATE OF JUDGMENT**

Pfizer does not contest that the amount of damages that Kaiser recovers under the RICO statute must be trebled by this Court. *See* 18 U.S.C. § 1964(c) (successful plaintiff "shall recover threefold the damages [it] sustains"); *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 125 (1st Cir. 2006) (treble damages under RICO "mandatory"). Kaiser's RICO damages are therefore $142,089,276, exclusive of interest.

Similarly, by its silence, Pfizer concedes that the award of prejudgment interest under the UCL already conferred upon Kaiser by this Court, *see* UCL Findings at 140, should be updated to the date on which judgment is entered. *See Artmark-Chicago, Ltd. v. E. Mishan & Sons, Inc.*, No. 90 C 4512, 1992 U.S. Dist. LEXIS 12572, at *19 n.2 (N.D. Ill. Aug. 12, 1992) (ordering the

calculation of prejudgment interest through the date the judgment was to be entered). Interest will continue to accrue at the California statutory rate of 7% per annum until the entry of judgment. As set forth in its opening brief and the attachments thereto, Kaiser, through its expert, has recalculated interest through various time periods, and requests that this Court update the interest awarded on the UCL claim through the date of judgment.[1]

## II. KAISER IS ENTITLED TO PREJUDGMENT INTEREST ON ITS RICO AWARD TO FULLY COMPENSATE KAISER

With respect to prejudgment interest under RICO, Pfizer's opposition makes two serious errors. First, by comingling RICO cases and non-RICO cases, Pfizer incorrectly suggests that a majority of cases declined to award interest. A closer examination of *RICO cases* reveals that this suggestion is simply wrong. Second, Pfizer fails to address why courts routinely award prejudgment interest and attempts to dismiss those cases as merely mistakes. There are in fact valid reasons to award prejudgment interest. Many cases involve situations where the defendant, like Pfizer, swindles the plaintiff and pockets the fraudulent spoils. In those cases, the defendant earns interest off of the ill-gotten gains, and courts often require that interest to be returned.[2] The award of interest is even more common where the defendant uses a fraudulent artifice, such as a bad faith bankruptcy filing, to delay the plaintiff from recovering the fraudulent spoils. Here, Pfizer utilized a decade-long artifice, the continued suppression of negative data, long after Kaiser had already paid for the prescriptions, to prevent Kaiser from knowing the existence and

---

[1] Kaiser will make its application for post-judgment interest in its post-judgment briefing.

[2] *Compare, e.g., Tri Component Prods. Corp. v. Benarroch*, No. 87-CIV-2351, 1988 WL 126560, at *7 (S.D.N.Y. Aug. 5, 1988) (adding prejudgment interest prior to trebling RICO award where defendant embezzled funds from plaintiff), *with State of Indiana ex rel. Zoeller v. Pastrick*, 696 F. Supp. 2d 970 (N.D. Ind. 2010) (declining to award interest on RICO claim where defendants did not personally profit) *and Bingham v. Zolt*, 810 F. Supp. 100, 102 (S.D.N.Y. 1993) (denying request to award interest where "there was evidence introduced by the defendants that the value of the diverted estate assets was actually *enhanced* during the period of the wrongdoing" and where plaintiff also was awarded punitive damages) (emphasis added).

3

extent of the fraud and thereby further delayed recovery. For this reason, among others, an award of prejudgment interest is appropriate.

### 1. Existing Law Supports an Award of Prejudgment Interest to Kaiser

Pfizer's first argument against prejudgment interest implies that "numerous" federal courts recognize a bright-line rule that "prejudgment interest is unnecessary and inappropriate when a plaintiff recovers statutory damages that are a multiple of actual damages." Defendants' Opposition to Plaintiffs' Motion for Trebled Damages and Prejudgment Interest Under RICO and Updated Prejudgment Interest Under the UCL ("Defs. Br.") at 1. This argument reflects a fundamental misperception that all federal statutes with multiple or exemplary damage provisions are created equal. They are not. This argument also assumes – without explanation – that the numerous courts that have awarded interest on RICO claims all committed error.[3] They did not.

Pfizer's indiscriminate reliance on case law from other federal statutes stems from a purported misunderstanding of the difference between multiple damages that are punitive in nature (and thus interest is generally unavailable) and multiple damages that are compensatory in nature (and thus interest is routinely awarded). As the Supreme Court noted in *PacifiCare*, "[o]ur cases have placed different statutory treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards." *PacifiCare*, 538 U.S. at

---

[3] *See, e.g.*, *D'Orange v. Feely*, No. 95-7904, 1996 WL 446254, at *4 (2d Cir. Aug. 8, 1996); *Aetna*, 43 F.3d 1546; *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987); *Monex Deposit Co. v. Gilliam*, No. SACV 09-287-JVS, 2010 WL 2349095, at *8 (C.D. Cal. Jun. 1, 2010); *Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 2d 1306, 1333 (S.D. Fla. 2009); *Rubin v. Donoghoe*, 05-CV-1644, 2006 WL 3254481, at **11-12 (D. Conn. Oct. 20, 2006); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, No. 88-CV-3694, 1996 WL 510097, at *16 (E.D.N.Y. Sept. 5, 1996), *rev'd on other grounds*, *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 243 (S.D.N.Y. 1993); *Businessland Rents, Inc. v. Brian Bros.*, No. 91-C-0144, 1991 WL 249679, at *7 (N.D. Ill. Nov. 14, 1991); *Tri Component Prods. Corp. v. Benarroch*, No. 87-CIV-2351, 1988 WL 126560, at *7 (S.D.N.Y. Aug. 5, 1988); *Min v. Chung*, No. 86-7486, 1987 WL 14148, at *1 (E.D. Pa. Jul. 16, 1987); *Aetna Cas. & Sur. Co. of Ill. v. Levy*, No. 83-C-3566, 1985 WL 3766, at **2-3 (N.D. Ill. Nov. 7, 1985).

405. Some multipliers like those contained in the ADEA[4] are considered punitive in nature (*see Fortino,* 950 F.2d at 397), others, like RICO, are "remedial in nature." *Id.* at 406. Pfizer's brief ignores this distinction and haphazardly paints all multipliers with the same broad brush, and as if they all are punitive in nature.[5]

Relying heavily on two non-RICO cases, *Fortino*, *supra*, and *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 80 (2d Cir. 1971), Defendants make the sweeping argument that an award of multiplied damages presumptively precludes the assessment of prejudgment interest as a matter of law. First, the precedential value of the cases cited by Defendants is doubtful even within the circuits in which they were issued in light of the Supreme Court's holding in *PacifiCare, supra,* which clearly distinguishes RICO's remedial provisions from the more punitive provisions of other statutes. A review of the underpinnings of *Fortino* reflects that the Seventh Circuit described the doubling of damages under the ADEA for "willful" violations as akin to "an award of punitive damages," s*ee Fortino*, 950 F.2d at 397 – in contrast to RICO trebling's compensatory nature. Second, Pfizer's misguided attempt to create a "presumption"

---

[4] Age Discrimination in Employment Act, 29 U.S.C. § 626(b) *et seq*.

[5] Pfizer incorrectly relies upon a range of cases that have nothing to do with RICO's remedial damages provision, including, *Garden City Boxing Club, Inc. v. Hernandez*, No. 04-2081, 2008 WL 4974583 (S.D.N.Y. Nov. 24, 2008) (awarding statutory and enhanced damages for willful violation of Communications Act of 1934); *SouthStar Funding, LLC v. Sprouse*, No. 05-253, 2007 WL 812174 (W.D.N.C. Mar. 13, 2007) (assessing claim for punitive damages in addition to trebled RICO damages); *Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 304 F. Supp. 2d 232 (D.R.I. 2004) (damages multiplied under Antiterrorism Act); *Cook Cty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119 (2003) (damages multiplied under the False Claims Act); *Vermont Agency of Nat. Resources v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000) (interpreting treble damages provision of False Claims Act); *Neal v. Honeywell, Inc*., 995 F. Supp. 889 (N.D. Ill. 1998) (damages multiplied under the False Claims Act); *Dexter v. Cosan Chem. Corp*., No. 91-5436, 1997 WL 34663763 (D.N.J. Mar. 12, 1997) (damages multiplied under New Jersey's Spill Act); *Rush v. Scott Specialty Gases, Inc*., 940 F. Supp. 814 (E.D. Pa. 1996) (assessing damages under Title VII of the Civil Rights Act); *Reich v. Sea Sprite Boat Co., Inc*., 64 F.3d 332 (7th Cir. 1995) (damages awarded under the Occupational Safety and Health Act); *In re Marshall*, 970 F.2d 383 (7th Cir. 1992) (awarding statutory damages under Truth in Lending Act); *Lam, Inc. v. Johns-Manville Corp*., 718 F.2d 1056 (Fed. Cir. 1983) (damages multiplied under patent law, 35 U.S.C. § 284); *American Timber & Trading Co. v. First Nat. Bank of Or.*, 690 F.2d 781 (9th Cir. 1982) (damages multiplied under National Bank Act); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) (awarding liquidated damages under the Fair Labor Standards Act).

against any awards of prejudgment interest in cases of treble or multiple damages is not only contradicted by the cases that show that there is no such presumption, but it is even directly contradicted by *Fishman v. Estate of Wirtz*, 807 F.2d 520 (7th Cir. 1986), a case relied upon by Pfizer.  *See* Defs. Br. at 2.  *Fishman* concludes that the "most recent cases have moved away from the position that congressional silence is dispositive" and explains that courts have moved away from "the presumption that this statutory silence meant that Congress did not wish to authorize such interest."  *Fishman*, 807 F.2d at 561.

Pfizer's attempt to conflate the purposes of different trebling provisions does not allow it to avoid the conclusion that RICO's trebling provision is compensatory in nature and that an award of interest is appropriate.  Here, as described in Plaintiff Kaiser's Memorandum of Law in Support of Motion for Trebled Damages and Prejudgment Interest Under RICO and Updated Prejudgment Interest Under the UCL ("Plfs. Opening Br.") (*see, e.g.*, Plfs. Opening Br. at 5-6), an award of prejudgment interest would serve to effectuate the broad remedial purposes of RICO and fully compensate Kaiser for damages suffered as a result of Pfizer's RICO violations.

**2.     Discretion to Award Prejudgment Interest Is Appropriate in this Case**

Perhaps recognizing that there is no bright-line rule prohibiting an award of interest on RICO damages – *i.e*., that interest here is discretionary, just as Kaiser argues in its opening brief – Pfizer next argues that "Plaintiffs have not identified any factors that would justify a discretionary award of interest in this case."  Defs. Br. at 5.  Pfizer argues that "even if" the Court were to assess the factors set forth in *Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831 (2d Cir. 1992), prejudgment interest in this case would result in overcompensation to Kaiser.  Defs. Br. at 6.  Again, Pfizer is mistaken.  Kaiser's opening brief clearly articulates that prejudgment interest is discretionary and demonstrated how each of the *Wickham* factors was satisfied with corresponding factual analysis.  *See*  Plfs. Opening Br. at 6-

14. Kaiser listed numerous reasons, including: Kaiser's non-profit status and provision of medical care to millions of people (Plfs. Opening Br. at 8); the balance of equities favor the award since Kaiser's claims were only filed after Pfizer's settlement with the government relating to the off-label marketing of Neurontin and the years of legal wrangling to fully uncover the fraud (Plfs. Opening Br. at 9); and among other things, that the failure to award prejudgment interest would reward Pfizer for its decade-long concealment of its marketing fraud (Plfs. Opening Br. at 10). Pfizer's argument that Plaintiffs "nakedly assert" a request for prejudgment interest is simply wrong. Kaiser has support each of the factors warranting a discretionary award of interest under RICO.

### 3. Any Award of Interest Is to Fully Compensate Kaiser and Damages Are Not Too Speculative to Preclude the Award of Prejudgment Interest

Pfizer claims, bizarrely, that prejudgment interest is inappropriate because "the evidence offered by [Kaiser] in support of [its] claimed damages is extremely speculative and subject to wide margins of error." Defs. Br. at 8. If anything, the RICO award is by its nature conservative and undercounts the true magnitude of the fraud. Because RICO is a "leaky bucket" where damages are difficult to prove because of the rigorous proof that is needed to demonstrate that all damages stem from racketeering activity, RICO verdicts are usually less than the plaintiff's true injury. RICO trebling reflects the fact that provable losses generally fall far short of the actual harm to the victim of fraud and racketeering, and the RICO treble damages provision attempts to approximate the victim's actual damages. Pfizer's argument on this point supports Kaiser's request because one of the reasons that courts often award prejudgment interest on RICO damages is precisely that RICO damages "are largely compensatory in the special sense that they ensure that wrongs will be redressed in light of the recognized difficulties of itemizing [the

7

damages caused from racketeering activity]." *Aetna*, 43 F.3d at 1572 (quoting *Liquid Air Corp.*, 834 F.2d at 1310, *cert. denied*, 492 U.S. 917 (1989)).

The compensatory and remedial nature of RICO awards is abundantly clear after the Supreme Court's decision in *PacifiCare*, *supra*. Comparing different statutory treble damages provisions, the Court differentiated the multiple-damages provision in the False Claims Act, the Clayton Act, and the RICO statute, and explained that the provision are different in nature. *Id.* at 405-406. While the treble-damages provision of the False Claims Act is "'essentially punitive in nature,'" *id.* at 405 (quoting *Vermont Agency of Natural Res.*, 529 U.S. at 784), the treble-damages provision of the RICO statute is "remedial in nature." *Id.* at 406. *See also Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 151 (1987) ("Both RICO and the Clayton Act are designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorneys' fees"); *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 241 (1987) (RICO treble damages have a "remedial function").

Tellingly, Pfizer does not seriously dispute that prejudgment interest should ordinarily attach to remedial (as opposed to punitive) damages. Pfizer seeks to gloss over the Supreme Court's classification of RICO damages as compensatory by repeatedly saying, without basis, that "[h]ere, the award of treble damages is almost twice the amount needed to compensate" Kaiser. Defs. Br. at 15; *id.* at 16 ("[t]he trebled portion of the award does not represent money that Plaintiffs were out-of-pocket during the relevant time period"). But this argument ignores that RICO damages *are* remedial in nature; it also is a glaring signal that this Court should award prejudgment interest on Kaiser's RICO damages. *See Neal*, 995 F. Supp. at 896-897 (awarding

8

prejudgment interest on compensatory portion of multiplied damages); *Rush*, 940 F. Supp. 814 (same); *Reich*, 64 F.3d 332 (same).[6]

In its various mischaracterizations of the cases cited above, Pfizer commits the precise error that *PacifiCare* warns against: it conflates remedial and punitive damages provisions. Any argument as to the speculative nature of the damages preventing assessment of interest is a red-herring, and has been rejected on numerous occasions by this Court. *See* Section III.1, *infra*. Kaiser was deprived of monies over many years, and to preclude the assessment of interest only benefits and incentivizes Pfizer to continue to obfuscate.

### 4. Allowing Pfizer to Retain Interest on Funds Fraudulently Acquired from Kaiser Would Represent Unjust Enrichment

Pfizer's various arguments are strangely silent on the question of fundamental fairness: as between Kaiser and Pfizer, which entity should enjoy the benefit of the interest that Pfizer earned on money that Pfizer fraudulently obtained from Kaiser? Permitting Pfizer to retain the substantial interest it earned on the funds misappropriated from Kaiser would amount to granting Pfizer a non-consensual, interest-free loan from the entity it defrauded. To be restored to its economic position before Pfizer's fraud, Kaiser should be compensated for the time value of the diverted funds. *See City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 195 (1995) (prejudgment interest "ensure[s] that an injured party is fully compensated for its loss"); *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989) (prejudgment interest "an element of

---

[6] Pfizer also cites *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056 (Fed. Cir. 1983) and *In re Marshall*, 970 F.2d 383 (7th Cir. 1992). These cases are inapposite. In *Lam*, a patent infringement case, the court declined to award prejudgment interest because the damages multiplier applied expressly to punish the patent infringer. 718 F.2d at 1066 ("[W]here, as here, the damages were increased to punish [the infringer] for its willful infringement, prejudgment interest cannot be assessed on the increased or punitive portion of the damage award"). In *Marshall*, moreover, the plaintiff had suffered no actual damage to which prejudgment interest could have attached; the proper remedy was an award of statutory damages, which is more akin to a penalty than to compensation. 970 F.2d at 385-386. Thus, these cases are in agreement with the principle advanced by Kaiser in this case: that prejudgment interest should attach to compensatory damages.

complete compensation"). Only after the compensatory prejudgment interest is incorporated into Kaiser's damages should the mandatory trebling of damages under RICO occur.

Pfizer's legal support for its argument that prejudgment interest is inappropriate in this case elides the distinction between cases in which a defendant liable under RICO acquired interest-generating funds, as here, and cases in which a defendant liable under RICO impermissibly channeled funds to others. Pfizer's reliance on *State of Indiana ex rel. Zoeller v. Pastrick*, 696 F. Supp. 2d 970 (N.D. Ind. 2010), for instance, is misguided. Defs. Br. at 1 n.2, 2. In *Pastrick*, the defendant politicians engaged in improper use of government funds, channeling public money into reelection projects. 696 F. Supp. 2d at 975-976. Prejudgment interest on the plaintiffs' RICO claim was inappropriate in part because the defendants were not unjustly enriched, not having personally retained any of the misappropriated funds. *Id.* at 986. The same cannot be said here. Pfizer reaped and retained the benefits of its illegal activities, depriving Kaiser of the use of monies that should not have been paid to Pfizer. An award of prejudgment interest approximates recovery of economic losses sustained by Kaiser.

### III.   PLAINTIFFS' EXPERTS' CALCULATIONS ARE ACCURATE

#### 1.   Pfizer's Criticisms of Professor Rosenthal and Dr. Hartman Have Been Previously Considered and Rejected by the Court

Pfizer resurrects a list of criticisms of Professor Rosenthal's analysis of off-label prescriptions caused by its fraud (Defs. Br. at 8-10) and Dr. Hartman's calculation of damages (Defs. Br. at 10-11.) Kaiser will not burden the Court by once again refuting these arguments point-by-point. Plaintiffs have already done so repeatedly in the course of the history of this litigation, both before and during trial. Each of Pfizer's criticisms has been rejected by the Court multiple times. Pfizer offers nothing new and provides no justification for why its failed arguments should now be accepted by the Court.

10

Before the start of trial Pfizer filed motions to exclude the testimony of Professor Rosenthal and Dr. Hartman under *Daubert*. These motions contain the same litany of criticisms Pfizer repeats in opposition to Kaiser's motion here. *See* Defendants' Memorandum of Law in Support of Motion *In Limine* to Exclude the Testimony of Meredith Rosenthal [Docket No. 2316] and Defendants' Memorandum of Law in Support of Motion *In Limine* to Exclude the Testimony of Raymond S. Hartman [Docket No. 2319].

In rejecting Pfizer's *Daubert* motion with respect to Dr. Rosenthal, the Court found that "Dr. Rosenthal is qualified to render an opinion on the fact of harm, and her methodology is reliable." Order Re: Motion in Limine to Exclude The Testimony of Meredith Rosenthal [Docket No. 2520] at 2. In addressing Pfizer's motion to exclude Dr. Hartman's testimony under *Daubert*, the Court instructed that Kaiser would need to 1) lay a foundation for the reliability of extrapolating from national data to Kaiser and 2) provide a foundation at trial for "alternative" drugs to Neurontin. The Court was satisfied that Kaiser was able to do each of these at trial. Findings of Fact and Conclusions of Law [Docket No. 3120] at 136. As to the rest of Pfizer's criticisms, the Court found they went to the weight of the opinion or were "without merit." February 18, 2010 Docket Entry.

As it must, Pfizer acknowledges that its criticisms of Professor Rosenthal and Dr. Hartman have been presented to the Court before. Defs. Br. at 8 n.7 (citing Memorandum of Law in Support of Defendants' Motion for Judgment as a Matter of Law Based Upon Lack of Sufficient Evidence of Injury or Causation [Docket No. 2671], Memorandum of Law in Support of Defendants' Motion for Judgment as a Matter of Law Based Upon Lack of Sufficient Evidence to Prove Damages [Docket No. 2673], Memorandum of Law in Support of Defendants' Supplemental Motion for Judgment as a Matter of Law Based Upon Lack of

11

Sufficient Evidence of Injury, Causation or Damages [Docket No. 2741]). Pfizer fails to mention that each of these motions was denied by the Court during the course of trial. The Court found none of Pfizer's arguments persuasive and allowed the jury to consider the analysis and testimony of both Professor Rosenthal and Dr. Hartman.

In the Court's Findings of Fact and Conclusions of Law, the Court underscored the qualifications of Professor Rosenthal as an expert and accepted her analysis of the percentage of Neurontin prescriptions caused by Pfizer's off-label promotion. Findings of Fact and Conclusions of Law [Docket No. 3120] at 75, 136. Similarly, the Court found Dr. Hartman to be a qualified expert and accepted his damages calculations, limited only by the Court's findings with respect to the time periods during which Pfizer violated the California Unfair Competition Law ("UCL"). *Id.* at 78, 136. The Court relied on Dr. Hartman's analysis in determining the award of restitution to Kaiser under the UCL. *Id* at 139.

Pfizer offers no new argument to the Court. It simply repeats previously rejected criticisms of Professor Rosenthal and Dr. Hartman. Pfizer provides no reason for the Court to revisit its previous orders regarding Professor Rosenthal's or Dr. Hartman's analysis, and in any event Pfizer's arguments are inapposite to this issue of interest on the RICO award.

### 2. Dr. Hartman's Interest Calculations

Dr. Hartman's calculation of prejudgment interest on the RICO award is accurate and his methodology is reasonable.[7] *See* Declaration of Raymond S. Hartman, Ph.D. In Re Updated Interest Calculations [Docket No. 3157] ("Hartman Decl."). In order to calculate interest, Dr. Hartman allocated the jury verdict using the time periods specified by the Court in its Findings of

---

[7] As noted *supra*, Pfizer does not criticize Dr. Hartman's calculations of interest on damages related to the violation of the UCL.

Fact and Conclusions of Law. For each indication Dr. Hartman first calculated a ratio of awarded damages in relation to the total amount of damages he previously calculated using the Court's specified time period for each indication. Hartman Decl. at ¶3. This ratio or percentage was then applied to each of the quarterly damage amounts previously calculated. These quarterly amounts were added to obtain a yearly pro-rated damage figure for each indication. *Id*. Using the prime rate, Dr. Hartman calculated compounded interest on each of these yearly amounts.[8] *Id*. To be conservative, his interest calculations on the annual total of pro-rated damages for each indication do not begin until the year after they have been fully incurred. *Id*. at n.7. So, for instance, in Dr. Hartman's calculations of interest on damages incurred in 1998, interest is calculated beginning in 1999, despite the fact that damages were incurred throughout 1998.

Dr. Hartman's use of the Court's time period from its Findings of Fact is eminently reasonable. Pfizer provides no support for its contention that the jury "appears to have rejected" the time periods accepted by the Court in its UCL decision. Defs. Br. at 17. Moreover, Pfizer's proposed alternative interest calculations defy logic. Pfizer proposes that prejudgment interest be calculated only from the very end of the damages period, *i.e.*, December 31, 2004. That is, despite the fact that the Court found Pfizer to be liable beginning in 1999, *see* Findings of Fact at

---

[8] The prime rate is an appropriate and conservative rate for the calculation of prejudgment interest. *See, e.g.*, *Miltland*, 840 F. Supp. at 243 (ordering defendant "to pay prejudgment interest on the RICO claims . . . at the prevailing average prime interest rate during said period"). *See also Gorenstein Enters. v. Quality Care-USA*, 874 F.2d 431, 436 (7th Cir. 1989) ("For the future, we suggest that district judges use the prime rate for fixing prejudgment interest where there is no statutory interest rate. That is a readily ascertainable figure which provides a reasonable although rough estimate of the interest rate necessary to compensate plaintiffs not only for the loss of the use of their money but also for the risk of default."); *Artmark-Chicago,* 1992 U.S. Dist. LEXIS 12572, at *19 (awarding prejudgment interest at the prime rate and describing that rate as "a convenient – though perhaps conservative – rate"); *In re Chase & Sanborn Corp.*, 127 B.R. 903, 917 (S.D. Fla. Bankr. 1991) ("[T]he neutral principle of the time-value of money further strongly supports the application of the prime rate and, in fact, has often been employed to fix prejudgment interest in cases, such as this one, where there is no governing statutory interest rate.").

13

71, Pfizer would have interest not calculated on damages until December 31, 2004. Pfizer wants the Court to assume that all damages occurred at the very end of the damages period, depriving Kaiser of interest on damages incurred during the period from June or September 1999 through December 2004. There is no logic to this suggestion. In fact, given Kaiser's purchases of Neurontin, it would be impossible for all damages to have accrued *only* in the fourth quarter of 2004. To assume that interest began only as of December 2004 assumes that all the damages occurred in December 2004 and ignores the fact that most of Kaiser's purchases of Neurontin and thus most of its damages were incurred far earlier in time. Dr. Hartman's calculations account for the fact that damages were incurred over time and that Kaiser has had to wait a substantial amount of time to be reimbursed for the injury inflicted by Pfizer. Dr. Hartman's calculations employ a reasonable and conservative methodology and the Court should rely on Dr. Hartman's analysis in calculating prejudgment interest on the RICO award.

## IV.    CONCLUSION

For the reasons set forth in Kaiser's Opening Brief and set forth herein, Kaiser requests this Court grant its motion and enter the Proposed Order submitted to this Court, granting relief as follows: treble the jury's $47,363,092 RICO verdict to $142,089,276, and award prejudgment interest on that award through the date of judgment which, if it were December 31, 2010, would be $76,237,185, for a total RICO award with interest of $218,326,461.[9]  Kaiser also respectfully requests that this Court update the interest calculation on the nominal $65,418,419 UCL award through the date of judgment which, if it were December 31, 2010, would be $37,059,858, for a total UCL award with interest of $102,478,277.

---

[9] Attached to its opening brief, Kaiser provided a chart updating interest through early 2011. Kaiser is able to provide interest to a specific day if requested by the Court.

Dated:  January 11, 2011

Respectfully submitted,

By:   */s/ Linda P. Nussbaum*
      Linda P. Nussbaum

Linda P. Nussbaum, Esq.
John D. Radice, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

*Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals*

*Of Counsel*

Thomas M. Greene, Esq.
GREENE LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein, Esq.
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol, Esq.
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142