# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
In re:   NEURONTIN MARKETING, SALES        :   MDL Docket No. 1629
         PRACTICES AND PRODUCTS            :
         LIABILITY LITIGATION              :   Master File No. 04-10981
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :   Judge Patti B. Saris
THIS DOCUMENT RELATES TO:                  :
                                           :
ALL BOONE PRODUCT LIABILITY ACTIONS        :   Magistrate Judge Leo T.
                                           :   Sorokin
                                           :
                                               **[PROPOSED**
                                           x   **DOCUMENT]**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

The Boone Plaintiffs knew about their discovery deficiencies – and were required by Orders of this Court to correct them – long before Pfizer filed its Motion to Compel on December 20, 2010. Although the majority of the Boone Plaintiffs now claim that they somehow lacked notice regarding their failures to comply with discovery, that argument is belied by the multiple deficiency letters sent by Pfizer, statements by the Court, the unambiguous terms of the Court's December 6, 2010 Order, and repeated representations made by Plaintiffs' counsel himself. Not only have Plaintiffs and their counsel received actual notice of their deficiencies on multiple occasions, the majority of their responses are so self-evidently inadequate and their counsel cannot in good faith claim to be unaware of their deficiencies – nor did he have a justifiable basis for certifying that these responses were complete.

Despite Plaintiffs' claims to the contrary, (*see* Pls.' Opp. Memo. [3235] at 2), Pfizer repeatedly raised Plaintiffs' global discovery deficiencies with their counsel. For instance, on November 23, 2010, Pfizer sent Mr. Boone a deficiency letter that highlighted common global deficiencies. (*See* Ex. A, Nov. 23, 2010 C. Stevens letter.)[1] That letter explained that Pfizer needed complete discovery responses in order to depose Plaintiffs without having to keep their

---

[1] All exhibits are attached to the accompanying Declaration of Catherine B. Stevens.

depositions open based on undisclosed discovery.  It further noted: "For Defendants to be forced to come to Cleveland, Mississippi, *twice* for each of your *230 Plaintiffs* in order to obtain a fair and complete deposition is simply unacceptable, particularly when Plaintiffs should have provided the relevant records and complete and adequate discovery responses years ago." (*Id.* at 2 (emphasis in original).)  Because Mr. Boone did not correct the global deficiencies described in Pfizer's letter, Pfizer later filed a Status Update explaining to the Court the same issues outlined in its letter and seeking guidance.  (*See* Defs.' Status Update [3132].)  Mr. Boone simultaneously filed a Status Update in which he claimed that all Boone Plaintiffs had submitted complete medical records, authorizations, template discovery responses, and medical provider lists.  (*See* Boone Pls.' Status Update [3134], at 3-4.)

On December 1, 2010, this Court held a status conference during which Pfizer again raised the issue of the Boone Plaintiffs' widespread and persistent discovery deficiencies.  The Court did not directly rule on these issues at that conference because it found that such determinations would have to be made on a "case-by-case basis," but it instructed Pfizer to file a motion to compel that "outline[d] any cases [it was] dissatisfied with."  (Ex. B, Dec. 1, 2010, Status Conf. Tr. at 33:20-34:3.)[2]  Mr. Boone then represented to the Court, "Your Honor, I think we complied with the information that were [sic] available to us."  (*Id.* at 34:11-15.)  Following that conference, the Court issued an order noting, among other things, that "defendants indicate that much of the template discovery is incomplete or unsatisfactory" for Boone Plaintiffs.  (Dec. 6, 2010, Scheduling Order [3141], at ¶ 5 (emphasis added).)   Based on Mr. Boone's

---

[2] At this conference, the Court also gave Mr. Boone the following warning:

> At some point you're sort of representing that, in fact, [a discovery responses] is done when you turn it over.  I just want to tell you this, that it raises the concern I never like to see a lawyer in the position where they're exposing personally themselves to the Court for a possible sanction, but I have to tell you that if you're repeatedly – if you undertake a large number of cases that seems unrealistic to undertake and you profess the ability to do it and then you proceed and then there seems to be . . . potentially large-scale inadequate discovery responses, all right, that could be a problem.

(Dec. 1, 2010, Status Conference Tr. at 32:10-21.)

representations that his clients' discovery responses were adequate across the board, the Court ordered that Pfizer file a "motion setting forth the alleged non-compliance and requesting appropriate relief by December 20, 2010." (*Id.*)[3]  Following the Court's Order, counsel for Pfizer met and conferred with Mr. Boone about deficiencies in his cases during a  telephone conference, but no agreement was reached.[4]

Not only does the record establish that Plaintiffs had repeated actual notice of their discovery deficiencies, this Court ordered Plaintiffs to provide complete responses.  On June 19, 2006, this Court first ordered all Plaintiffs to respond to template discovery.  (Discovery Order No. 2 [372], at 3-6.)  Then, on June 9, 2010, because of the Boone Plaintiffs' widespread non-compliance, the Court set a schedule for completion of template discovery and even specifically instructed Mr. Boone "to pay particular attention to" the Court's warning "that the failure to comply with the Court's Orders set forth herein may result in dismissal of the claims of a plaintiff or of cases brought by counsel." (Further Scheduling Order [2839], at 3-6 (emphasis in original omitted).)  Finally, this Court's December 6, 2010 Order gave the Boone Plaintiffs one last opportunity to correct their template discovery deficiencies without further need for judicial intervention.  (Dec. 6, 2010, Scheduling Order [3141], at ¶ 5.)  In light of these overlapping orders, Plaintiffs' characterization of Pfizer's Motion to Compel as "premature" is absurd. (Pls.' Opp. Memo. [3235] at 4.)  As of December 20, 2010 when Pfizer filed its motion, no less than

---

[3] While the Court recognized that it had previously applied a "rolling schedule" to the Boone Plaintiffs' production of template discovery, its Order explicitly revised that schedule based on Mr. Boone's representations that his clients have "produced all of the template discovery." (Dec. 6, 2010, Scheduling Order [3141], at ¶ 5 & fn.1.)

[4] With regard to the cases for which Plaintiffs admit to receiving specific deficiency letters, their claim – that "Plaintiffs in this group were supplemented in accordance with Defendants' deficiency letters" – is verifiably incorrect in most cases. (*Compare* Pls.' Memo. in Opp. [3206] at 5-20*, with* Appendix A [3179-1] at 1-15; *see also* Defs.' Reply Memo [3214], at 2 fn.3.)  Even in these cases, Mr. Boone generally does not respond to Pfizer's deficiency letters, and – even where some supplementation is provided – Pfizer often does not receive it until just before Plaintiffs' depositions so that the supplemented information is unhelpful with regard to preparing for depositions.

three Court orders directly mandated Plaintiffs to respond to template discovery.[5]

Contrary to Plaintiffs' assertions, Pfizer did not have an obligation to send separate deficiency letters in each case.[6]  It was sufficient that Pfizer contacted Mr. Boone about global discovery deficiencies.  Rather than requesting more detail or indicating that he would make good faith efforts to address the global deficiencies, Mr. Boone responded to both Pfizer's complaints and this Court's inquiries by affirmatively representing that his clients' template discovery was essentially complete.  (*See* Defs.' Status Update [3132]; Dec. 1, 2010, Status Conf. Tr. at 34:11-15; Dec. 6, 2010, Scheduling Order [3141], at ¶ 5 & fn.1.)  Even now, despite the fact that Pfizer has set forth in great detail the many discovery deficiencies in each of these cases, Mr. Boone persists with the untenable position that "[a]ll Plaintiffs have responded to Defendants' discovery."  (Pls.' Opp. Memo. [3235] at 5.)

Moreover, now that Pfizer has undertaken the time-consuming task of filing a motion with regard all 214 cases, Plaintiffs – instead of responding in kind with the appropriate degree of specificity – simply complain about the size and timing of the motion.  (*See* Pls.' Opp. Memo. [3235] at 2.)  Prior to the filing of this motion, however, both the Court and Mr. Boone himself stressed the need to approach discovery deficiencies "on a case-by-case basis," (Dec. 1, 2010, Status Conf. Tr. at 33:13-17, 33:20-25), and the length of the Pfizer's motion is directly proportional to the number of cases addressed therein and the magnitude of the Boone Plaintiffs' discovery deficiencies.[7]  While Plaintiffs belatedly suggest that their counsel did not have

---

[5] While the Boone Plaintiffs argue that some of their depositions are not scheduled to take place for several months, (Pls.' Opp. Memo. [3235] at 6), that does not excuse direct violations of Court orders. Additionally, this last minute supplementation on the day or week before a scheduled deposition severely prejudices Pfizer's discovery efforts because it needs time to make use of the disclosed information in preparation for depositions.

[6] With their arguments, Plaintiffs incorrectly attempt to switch the burden to Defendants, but it is Plaintiffs who must prove that an award of expenses is not appropriate.  *See* Fed. R. Civ. P. 36(b), advisory committee notes ("The provision places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust.").

[7] Even after Pfizer filed its Motion to Compel, egregious examples of blatant discovery deficiencies and misconduct continue to surface.  For instance, at the deposition of Plaintiff Josephine Jackson on January 7, 2011, she was asked about her answer to Interrogatory No. 11, which contained a

sufficient time to respond, (Pls.' Opp. Memo. at 2), Mr. Boone never requested an extension from either Pfizer or this Court prior to expiration of the established deadline.

Finally, to further aid the Court, Pfizer will submit the names of attorneys and paralegals who performed work in the preparation of its Motion to Compel, the name of their graduate institution, and their class year. (*See* Ex. E, Chart of Hours Worked.) Pfizer calculated legal fees conservatively based on prevailing rates in the community and, even then, made substantial voluntary reductions. (*See* Defs.' Memo. in Supp. of Attorneys' Fees [3217].) The amount requested is both reasonable and significantly less than the actual cost of bringing this motion in 214 individual cases. In fact, the expenses requested amount to less than $520 per case.

## CONCLUSION

Defendants respectfully request that the Court grant their request for an award of attorneys' fees and costs.

Dated: January 20, 2011                    Respectfully submitted,

                                           SKADDEN, ARPS, SLATE,
                                             MEAGHER & FLOM LLP

                                           By:    /s/ Mark S. Cheffo
                                                  Mark S. Cheffo

---

stock response that she suffered "abnormal thinking and suicide ideation," which also appears in several other Boone discovery responses. (*See* Defs.' Memo. in Supp. of Mot. to Compel [3177], at 19-21.) When asked whether she actually had ever experienced suicide ideation, however, she responded, "I don't know who put that there, because I did not tell nobody that." (Ex. C, Jackson Dep. at 113:17-114:7.) In addition, at the recent deposition of Plaintiff Jacqueline Kendrick on January 13, 2011, Pfizer learned about numerous medical records that Plaintiff kept at her house but failed to produce during discovery. (*See* Ex. D, Kendrick Dep. at 248:25-259:10.) These missing documents were highly material to the case because they showed that Plaintiff was prescribed Neurontin in 2001, even though the records Pfizer had obtained indicated that she did not begin taking it until 2003. (*See id.*) When asked whether "anyone told [her] that [she] should preserve those documents so that [she] can produce them in this lawsuit," she responded, "No, sir." (*Id.* at 255:24-256:2.) Late in the deposition, Plaintiff Kendrick gave defense counsel a copy of some unproduced medical records, but she stated that there were still more undisclosed records at her house. (*See id.* at 324:4-353:22.) In addition to her failure to produce medical records, Plaintiff Kendrick had no explanation for why she disclosed allegations of suicide ideation and depression for the first time in September 2010 but failed to disclose those allegations in either her Complaint or previously-filed response to interrogatories. (*See id.* at 311:7-320:16.)

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

-and-

ROPES & GRAY LLP

By:      /s/ Ana M. Francisco
         Ana M. Francisco
         BBO #564346

Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel:  (617) 951-7000
Email:  ana.francisco@ropesgray.com

*Attorneys for Defendants Pfizer Inc and*
*Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 20, 2011.

/s/ Ana. M. Francisco
Ana M. Francisco

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
In re:  NEURONTIN MARKETING, SALES          :     MDL Docket No. 1629
        PRACTICES AND PRODUCTS              :
        LIABILITY LITIGATION                :     Master File No. 04-10981
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :     Judge Patti B. Saris
THIS DOCUMENT RELATES TO:                   :
                                                        :
ALL BOONE PRODUCT LIABILITY ACTIONS         :     Magistrate Judge Leo T.
                                                        :     Sorokin
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF CATHERINE B. STEVENS IN SUPPORT OF DEFENDANTS'
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

I, Catherine B. Stevens, declare and state as follows:

1.      I am counsel with the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, attorneys for Defendant Pfizer Inc.   I make this declaration based on my own personal knowledge and information.

2.      Attached hereto as Exhibit A is a true and correct copy of a deficiency letter sent to the Boone Law Firm dated November 23, 2010.

3.      Attached hereto as Exhibit B is a true and correct copy of excerpts from the December 1, 2010, status conference held in the United States District Court for the District of Massachusetts.

4.      Attached hereto as Exhibit C is a true and correct copy of excerpts from the January 7, 2011, deposition of Josephine Jackson.

5.      Attached hereto as Exhibit D is a true and correct copy of excerpts from the January 13, 2011, deposition of Jacqueline Kendrick.

6.      Attached hereto as Exhibit E is a chart of the names of legal professionals who worked on Pfizer's Motion to Compel, the number of hours they worked, the name of their graduate institution, and their class year.

I declare the foregoing statements are true and correct under the penalties of perjury, this the 20th day of January, 2011.

/s/ Catherine B. Stevens
Catherine B. Stevens

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 20, 2011.

/s/ Ana M. Francisco
Ana M. Francisco

# EXHIBIT A

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522
―――――
TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
212 735-3353
DIRECT FAX
917-777-3353
EMAIL ADDRESS
CATHERINE.STEVENS@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

November 23, 2010

BY FEDERAL EXPRESS

Levi Boone
Boone Law Firm, P.A.
401 West Sunflower Avenue
P.O. Box 1772
Cleveland, MS 38732

RE:   In re: Neurontin Marketing, Sales Practices, and
        Products Liability Litigation MDL No. 1629

Dear Mr. Boone:

As you are aware, starting on November 1, 2010, and during each of the
following four months (until the end of March 2011), Magistrate Judge Sorokin's
June 9, 2010, Further Scheduling Order Regarding All Products Cases [2839] ("the
Order") requires the parties to take fifteen days of depositions per month in the cases
filed by the Boone Law Firm.  On October 25, 2010, the parties filed with the Court
a joint list of the depositions to take place in November 2010.  [3110].  On October
29, 2010, Defendants provided a list of proposed deposition dates for those Plaintiffs
to your firm, but those dates were never confirmed by your office.  Therefore, none
of the proposed depositions for November 2010 have taken place.

As noted in our previous letters of August 4, 2020, August 26, 2010,
September 23, 2010, October 1, 2010, October 22, 2010, and October 27, 2010, the
discovery responses and productions of documents and authorizations by Plaintiffs

Levi Boone
November 23, 2010
Page 2

represented by the Boone Law Firm have been unacceptable to date. This forces
Defendants to enter a Plaintiff's deposition blindly, and with little information
regarding each Plaintiff's case and relevant history in advance. It has been
Defendants' experience in the cases where depositions of Plaintiffs have taken place,
that there are simply not enough medical and other records for a productive and
complete deposition to occur. Therefore, Defendants have had to keep each and
every one of these depositions open, so that once additional medical and other
relevant records are collected or produced, these depositions can be continued, and
hopefully will provide a more comprehensive picture of each Plaintiff's history and
claims.

For example, prior to the deposition of Louisia Smith, Plaintiff had only
produced 5 pages of records, and had provided inadequate and incomplete discovery
responses, as noted in our October 27, 2010, letter to your firm. As another example,
Defendants deposed Joyce Watson with only 9 pages of records, and inadequate and
incomplete discovery responses, as noted in our October 22, 2010, letter to your
firm.

For Defendants to be forced to come to Cleveland, Mississippi, *twice* for each
of your *230 Plaintiffs* in order to obtain a fair and complete deposition is simply
unacceptable, particularly when Plaintiffs should have provided the relevant records
and complete and adequate discovery responses years ago.

The same is true for depositions of prescribing physicians. As noted in our
letters of August 4, 2010, and September 23, 2010, and our emails of August 12,
2010, and September 30, 2010, Defendants have had difficulty identifying and
locating the prescribers for many Plaintiffs represented by the Boone Law Firm
based on inadequate or incomplete discovery responses and provider lists. Further,
given the few records produced by Plaintiffs, Defendants lack medical records from
the majority of prescribers for Plaintiffs represented by the Boone Law Firm. It
would be wholly unfair, and unproductive, for Defendants to be forced to proceed
with depositions of prescribers for which medical records have not yet been obtained
or produced. That prejudice is compounded when Defendants also lack other records
sufficient to determine the relevant history of each Plaintiff prior to a prescriber's
deposition.

On November 24, 2010, as required by the Order, Defendants intend to file
with the Court a proposal for the fifteen days of December 2010 depositions for
Plaintiffs represented by the Boone Law Firm. In this filing, Defendants' proposal
will note the above-mentioned difficulties, and will request the Court's attention and
guidance as to how to properly and fairly proceed at this point. A copy of our

Levi Boone
November 23, 2010
Page 3

proposed filing is enclosed.  Please let us know if you would like to discuss the
issues raised in this letter, or our proposed filing.

Sincerely,

Catherine B. Stevens

Enclosure

# EXHIBIT B

<pre>
 1                  UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
 2

 3    _____

 4    IN RE:  NEURONTIN MARKETING,
      SALES PRACTICES AND PRODUCTS
 5    LIABILITY LITIGATION,                Civil Action
                                           No. 04-10981-PBS
 6
                                           December 1, 2010
 7                                         9:08 a.m.

 8    _____

 9

10              TRANSCRIPT OF STATUS CONFERENCE

11         BEFORE THE HONORABLE PATTI B. SARIS

12          and HONORABLE LEO T. SOROKIN

13            UNITED STATES DISTRICT COURT

14         JOHN J. MOAKLEY U.S. COURTHOUSE

15               1 COURTHOUSE WAY

16              BOSTON, MA  02210

17

18

19

20
                 DEBRA M. JOYCE, RMR, CRR
21                Official Court Reporter
            John J. Moakley U.S. Courthouse
22           1 Courthouse Way, Room 5204
                 Boston, MA  02210
23                  617-737-4410

24

25
</pre>

```
1    APPEARANCES:

2    FOR THE PLAINTIFFS:

3    ANDREW G. FINKELSTEIN, ESQ.
     KENNETH B. FROMSON, ESQ.
4    Finkelstein & Partners, LLP.
     436 Robinson Avenue
5    Newburgh, New York  12550

6    LEVI BOONE, III, ESQ.
     Boone Law Firm PA
7    401 West Sunflower Avenue
     Cleveland, MS 38732-1772
8    662-843-7946

9    JACK HARANG, ESQ.
     Law Offices of Newton B. Schwartz
10   1911 Southwest Freeway
     Houston, Texas 77098
11
     FOR THE DEFENDANTS:
12
     MARK S. CHEFFO, ESQ.
13   CATHERINE STEVENS, ESQ.
     Skadden, Arps, Slate, Meagher & Flom LLP
14   Four Times Square
     New York, NY 10036
15   212-735-3000

16   CHAD W. HIGGINS, ESQ.
     Goodwin Procter LLP
17   Exchange Place
     53 State Street
18   Boston, MA 02109
     617-570-1229
19

20

21

22

23

24

25
```

arise in an individual case about whether it's all done, and I
would imagine that those kinds of issues have arisen in the
Schwartz and Finkelstein and other cases, and my experience has
been those have been largely resolved because I haven't seen
them and it all went through discovery.  But if it doesn't look
like it's complete, it probably isn't.  And it raises -- the
two issue it raises is, one, the issue that the discovery needs
to be completed, and if it's not, the cases will be dismissed.

It raises a second issue of concern for you,
Mr. Boone.  At some point you're sort of representing that, in
fact, it is done when you turn it over.  I just want to tell
you this, that it raises the concern I never like to see a
lawyer in the position where they're exposing personally
themselves to the Court for a possible sanction, but I have to
tell you that if you're repeatedly -- if you undertake a large
number of cases that seems unrealistic to undertake and you
profess the ability to do it and then you proceed and then
there seems to be what Mr. Cheffo is talking about -- and I
don't know this is the case -- but what he's indicating might
be the case, potentially large-scale inadequate discovery
responses, all right, that could be a problem.

Now, I'm not saying that is the case right now, all
right, and you may have a different view of it, but understand
that you're the plaintiffs' counsel.  It's your job to get the
discovery done so that the case can move forward to

1    depositions.  And, you know, it may be that Pfizer is asking

2    for too much.  If that's the defense, that's a defense, I'll

3    look at it.  But understand that, you know, that template

4    discovery was worked out a long time ago.  I haven't had a

5    single motion, I don't think, in the course of five years

6    disputing the scope of the template discovery, and I don't

7    expect that I would look very seriously at such a motion at

8    this stage.  So it's being done, that's the template, that's

9    what has to be done, one has to do it.  And it's not sufficient

09:50 10   to say here's a medical authorization and I remember one

11   provider who didn't prescribe Neurontin and I'm done.  So keep

12   that in mind.

13          MR. BOONE:  Yes, your Honor.  I think the Court would

14   probably need to look at these on a case-by-case basis because

15   we do disagree with the characterization that's been made.  We

16   have submitted template discovery responses and supplemented

17   most of those.

18          JUDGE SOROKIN:  All right.

19          MR. BOONE:  But we can bring them to the Court.

09:51 20          JUDGE SOROKIN:  I intend to look at them.  I think

21   it's going to require a case-by-case determination, and what

22   I'm expecting after the drop-dead date is one motion from you

23   that outlines any cases you're dissatisfied with, the general

24   law, case by case each one, and then you'll respond with the

25   general law and then a case-by-case response.  And then I'll

1    decide.  And I understand you'll be telling me you think you've

2    complied so you're confident that none of your cases will be

3    dismissed on that basis.

4         MR. BOONE:  I'm not saying that we're perfect, I'm

5    saying there --

6         JUDGE SOROKIN:  No, I didn't ask for that.

7         MR. BOONE:  Yes, but I think -- certainly I think the

8    Court will get a different impression once the Court sees we

9    have supplemented.

09:51 10         JUDGE SOROKIN:  Do you think you have fully complied?

11         MR. BOONE:  Your Honor, I think we complied with the

12    information that were available to us.  There may be

13    information that our client did not have and did not give and

14    we could not make it available to the defendant.  But we have

15    been fully compliant with what was available to us.

16         The other thing I would say, your Honor, since we last

17    met our cases are down by 100.  So 100 of those cases are gone,

18    either we dismissed them voluntarily or motion to withdraw or

19    when your Honor recommended --

09:52 20         JUDGE SOROKIN:  Can I make a suggestion -- that's

21    great.  I appreciate that finally, Mr. Boone, you're

22    recognizing that some sense.  What I don't understand, to be

23    honest, with you, Mr. Boone, is why back in April, May, and

24    June when we had those discussions you couldn't have done that

25    then rather than putting the Court and all of counsel through

# EXHIBIT C

# FILED UNDER SEAL

# EXHIBIT D

# FILED UNDER SEAL

# EXHIBIT E

*In Re: Neurontin Marketing, Sales Practices and Products Liability Litigation*

<u>Chart of Hours Worked</u>

| Paralegal | Hours |
|---|---|
| Levon Alexanian | 56.4 |
| Santiago Assalini | 12.5 |
| Kizzy Bivins | 26.0 |
| Beth Brivic | 30.0 |
| Christopher Brolley | 16.0 |
| Ilisa Chaconas | 5.5 |
| Alissa Curran | 14.7 |
| Damion Fallon | 6.6 |
| Elizabeth Friedler | 1.5 |
| Kurt Halverson | 18.0 |
| Paige Horine | 22.4 |
| Cyndy Jensen | 36.3 |
| Keith LaRock | 2.8 |
| Christopher Lavin | 2.7 |
| Edward Lett | 2.5 |
| Nordo Nissi | 70.1 |
| Julie Nociolo | 2.0 |
| Shaun Pick | 12.5 |
| Maggie Scally | 10.6 |
| Jessica Sherwood-Noguchi | 10.7 |
| Johanna Snyder | 37.3 |
| Jenifer Woods | 31.6 |
| **Total** | 428.7 |

| Junior Associate | Hours | Law School | Class Year |
|---|---|---|---|
| Matt Johnson | 5.8 | Northwestern University School of Law | 2005 |
| Stephen Oertle | 16.5 | University of Michigan Law School | 2007 |
| Deborah Parraz | 16.5 | University of Maryland, School of Law | 2006 |
| Brittain Sexton | 97.6 | University of Tennessee | 2008 |
| Lincoln Wilson | 29.2 | Seton Hall University School of Law | 2008 |
| Scott Wilson | 21.8 | Columbia Law School | 2007 |
| **Total** | 187.4 | | |

| Senior Associate | Hours | Law School | Class Year |
|---|---|---|---|
| Katherine Arthur | 53.5 | Duke University School of Law | 2005 |
| Mauricio Gonzalez | 24.0 | Cornell Law School | 2003 |
| Megan Jones | 6.1 | Harvard Law School | 2003 |
| Lisa Nousek | 6.5 | University of Virginia School of Law, | 2005 |
| Stephanie Reedy | 17.3 | University of Denver Sturm College of Law | 2001 |
| Sean Saxon | 12.7 | University of Memphis School of Law | 1997 |
| **Total** | 120.1 | | |

| Partner/Counsel | Hours | Law School | Class Year |
|---|---|---|---|
| Mark Cheffo | 4.0 | Boston University School of Law | 1990 |
| Andrew Efaw | 25.7 | University of Pennsylvania Law School | 1997 |
| Michele Kendus | 8.9 | University of Baltimore School of Law | 2000 |
| William Marsillo | 5.0 | Harvard Law School | 1997 |
| Andrew Myers | 9.7 | University of California Boalt Hall School of Law | 2002 |
| Catherine Stevens | 49.0 | University of Louisville Louis D. Brandeis School of Law | 1995 |
| Magda Jimenez Train | 16.5 | Benjamin N. Cardozo School of Law | 1995 |
| **Total** | 118.8 | | |