UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
In re:  NEURONTIN MARKETING,                    : MDL Docket No. 1629
       SALES PRACTICES AND PRODUCTS :
       LIABILITY LITIGATION                        : Master File No. 04-10981
-------------------------------------------------------- x
                                                     : Judge Patti B. Saris
       THIS DOCUMENT RELATES TO:          : Magistrate Judge Leo T. Sorokin
                                                     :
       Paulette Hamilton, as Administratrix and    :
       Personal Representative of the Estate of     :
       DERRICK HAMILTON                                 :
------------------------------------------------------------x

**DEFENDANTS JANSSEN ORTHO LLC'S, ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.'S, JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.'S, AND JOHNSON & JOHNSON'S MEMORANDUM OF LAW IN OPPOSITION TO PAULETTE HAMILTON'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Defendants Janssen Ortho LLC, Ortho-McNeil-Janssen Pharmaceuticals, Inc., Johnson & Johnson Pharmaceutical Research & Development, L.L.C., and Johnson & Johnson, collectively ("Defendants"), submit this memorandum in opposition to Paulette Hamilton's ("Hamilton") motion to compel production of documents. As it relates to the Defendants responding to Hamilton's motion, this case is pending in this multi-district proceeding ("MDL") not because there are many extant cases involving Topamax®. This case is in this MDL because Hamilton claims that Neurontin® also allegedly caused Plaintiff's Decedent's suicide. This is the one and only product liability case involving Topamax® pending in a federal court. Accordingly, the fair and reasonable parameters of discovery, as it pertains to Defendants, are the claims Hamilton, in fact, is making regarding Topamax®. *See In re Stone & Webster, Inc. Sec. Litig.*, Civil Action No. 00-10874-RWZ, 2006 WL 2818489, at *4 (D. Mass. Sept. 29, 2006) ("defendants should not be burdened with discovery not targeted to the issues in play"). Viewed in this light and given her pleaded allegations against Defendants, Hamilton's motion to compel is premature and asks the Court to compel the production of documents that are not relevant to any of Hamilton's claims against Defendants. In light of Defendants' previous document production to Hamilton's counsel in two other lawsuits involving Topamax® and the specific claims raised here, pressing Hamilton's motion at this time borders on frivolous.

## Preliminary Statement

Hamilton misrepresents the meet-and-confer process the parties undertook to resolve their dispute over the document requests ("the Requests") at issue in this motion. The only discussion regarding the Requests was a brief exchange at the end of an extended meet-and-confer call regarding discovery issues in a different matter pending in Oklahoma state court and Hamilton's First Set of Requests for Admission. Under Local Rule 7.1(a)(2), Hamilton should

not have filed this motion because she did not attempt, in good faith, to resolve or narrow her issues concerning the Requests.

To avoid the fact that the Topamax® label in effect when Derrick Hamilton's ("Plaintiff's Decedent") doctor prescribed the medicine to him adequately warned of the potential risk of suicide, Hamilton served the Requests in a fishing expedition looking for alleged off-label promotion. Hamilton supports her claims for these documents by pointing to a plea agreement between some of the Defendants and the United States Department of Justice relating to conduct that ended years before Plaintiff's Decedent first took Topamax®. However, Hamilton's complaint does not claim that the prescribing physician in this case, Dr. Cynthia Sloan ("Dr. Sloan") heard any misrepresentations from Defendants' salespeople regarding the effectiveness of Topamax® for off label-uses. And there is no evidence or even an allegation in the Complaint, as it relates to Defendants, that off-label promotion occurred in this case. Yet Hamilton's only claim for why she needs documents (which broadly read may be in excess of a 1,000,000 pages) is related to off-label promotion issues.

In two state court cases involving Topamax®, one in Oklahoma state court and the other in New Jersey state court, Hamilton and Defendant's counsel represent the plaintiffs and defendants in those cases respectively. To make the discovery process less burdensome for all parties, counsel agreed on a plan to share discovery in all three cases. To this end, on August 12, 2010, counsel agreed that whatever documents were produced by Defendants in the New Jersey case could be used by plaintiffs in this case and the Oklahoma case. (*See* Winter Decl. Ex. C). In the New Jersey case, Defendants made 40 numbered productions consisting of more than 76,000 documents and approximately 1,200,000 pages, along with three media productions, and an entire database of post-marketing adverse event reports. In addition, 26 individuals have been deposed and the transcripts for these depositions total 4,282 pages. Because of the broad scope of the

documents produced in the New Jersey case, counsel also agreed that plaintiffs in this case and the Oklahoma case would not pursue duplicative discovery from Defendants. Finally, counsel agreed that, to the extent that there were areas of document production that Hamilton wanted to pursue from Defendants, counsel would coordinate to reasonably and efficiently agree on the scope of the additional discovery. This agreement was memorialized in an e-mail exchange between counsel. (*See id.*)

## Background

Dr. Sloan diagnosed Plaintiff's Decedent with trigeminal neuralgia ("TN") in March 2005. (Winter Decl. Ex. D). TN is a syndrome that causes excruciating facial pain, and because of the pain and suffering it causes, the disease is associated with a very high incidence of suicide, *see* Sashank Prasad & Steven Galetta, *Trigeminal Neuralgia, Historical Notes and Current Concepts*, THE NEUROLOGIST, Volume 15, Number 2, March 2009 at 87, with the suicide rate associated with the period of approximately three years after diagnosis, *see* Brent Weichers, *TN Patient His Personal Story*, TNA THE FACIAL PAIN ASSOCIATION, http://www.fpa-support.org/2001/01/brent-weichers-tn-patient-his-personal-story/ ("In fact: for those who live with Trigeminal Neuralgia for more than 3 years about half commit suicide."); Satta Sarmah, *Nerve Disorder's Pain So Bad It's Called the 'Suicide Disease'* MEDILL REPORTS CHICAGO (Feb. 28, 2008) http://news.medill.northwestern.edu/chicago/news.aspx?id=79817. Plaintiff's Decedent committed suicide three years after he was diagnosed with TN in April 2008.

In August 2005, Dr. Sloan prescribed Topamax® to Plaintiff's Decedent to help relieve the pain caused by the TN. (Winter Decl. Ex. E). Topamax® eliminated the pain, and Plaintiff's Decedent continued to take Topamax® (Winter Decl. Ex. F) until November 2006, when he could no longer afford to pay for it. (*See* Winter Decl. Exhs. F, G). During the fourteen months that Plaintiff's Decedent took Topamax®, he reported no side effects from the medication.

(Winter Decl. Exhs. E-H). Between November 2006 and March 2008, Plaintiff's Decedent turned to other medicines for pain relief and underwent two nerve blocks. Neither the other medicines nor the nerve block worked as well as Topamax®, so Dr. Sloan prescribed Topamax® again in early March 2008. (Winter Decl. Ex. I).

Hamilton filed her complaint on May 4, 2010 in the Galveston Division of the Southern District of Texas. (Winter Decl. Ex. A). Hamilton's complaint alleges that Topamax® (and several other medicines) contributed to Plaintiff's Decedent committing suicide. Defendants filed their answer on July 19, 2010 (Winter Decl. Ex. B). The case was transferred to this Court so that Hamilton's claims against Pfizer, the manufacturer of Neurontin®, would be part of the Neurontin® MDL. Hamilton's claims against Defendants remain a single case.

On October 7, 2010, Hamilton served a First Set of Requests for Production of Documents. Defendants provided responses and objections to these Requests on November 10, 2010. (Winter Decl. Ex. J). In an e-mail dated December 6, 2010, Plaintiff called Defendants' responses "perfunctory," without identifying any particular responses that were deficient or why they were unsatisfactory. (Winter Decl. Ex. K).

There was no further communication regarding these responses until a meet-and-confer call on December 15, 2010 regarding discovery in the Oklahoma case and Hamilton's Requests for Admission. Counsel spent the call conferring on those discovery issues, not Defendants' responses to the document requests in this case. While at the end of the call, Hamilton's counsel raised general issues regarding Defendants' responses to the document requests, he neither made a specific argument about the relevance of documents responsive to the Requests nor offered to narrow the Requests.

Although Defendants did not agree on this call to produce documents responsive to Hamilton's overbroad, irrelevant and burdensome requests, Defendants expressed a willingness

4

to abide by the parties' prior agreement and confer with Hamilton to try to narrow the scope of the requests. In this regard, because Dr. Sloan is the only physician who prescribed Topamax® to Plaintiff's Decedent, if Hamilton had asked for documents relating to contacts between Dr. Sloan and Defendants regarding Topamax®, she would (and will) receive them as Defendants produced these types of documents in Plaintiffs' counsel's state court cases. Moreover, in filing this premature motion, Hamilton ignored a discussion that counsel had on September 16, 2010 regarding similar requests that were made in the Oklahoma case. The substance of that call was summarized in an e-mail from Hamilton's counsel. (Winter Decl. Ex. L). On that call, Defendants agreed to consider disclosure of third-party prescribing data for Topamax® from 2007 until 2010 and counsel for both parties agreed that training materials regarding Topamax® provided to sales representatives presumably had been exchanged in the New Jersey case and need not be produced again. Rather than scheduling another meet-and-confer call focused on narrowing scope of the Requests based on this previous discussion, Hamilton filed this unnecessary motion seeking aggregate prescription data received from third parties regarding all prescriptions of Topamax® for all times and all documents regarding Topamax® and suicide from all employees who sold and/or marketed Topamax®. These requests are not calculated to obtain relevant documents to Hamilton's claims against Defendants. Accordingly, they are both premature and improper.

## ARGUMENT

### I. Hamilton's Motion To Compel Is Premature

Hamilton should not have filed this motion because she has not complied with Local Rule 7.1(a)(2)'s mandate that "[n]o motion shall be filed unless counsel certify that they have conferred and attempted in good faith to resolve or narrow the issue." At this stage in the litigation, the parties have just exchanged written discovery, Hamilton has yet to provide

5

Defendants with usable authorizations for medical records and no discovery schedule is in place. Thus, there was no urgency or legitimate reason for filing this motion now, and by filing it, Hamilton is wasting both the parties' and the Court's resources and time.

A.   **Hamilton Has Not Complied With Local Rule 7.1(a)(2)**

Hamilton did not comply with Local Rule 7.1(a)(2) because her counsel did not confer and attempt in good faith to resolve or narrow the issues. Hamilton filed this motion after a meet-and-confer call that focused on discovery in an Oklahoma state court case and Hamilton's Requests for Admission in this case. There has been no meet-and-confer regarding the Requests at issue in this motion.

Aside from one e-mail from counsel stating that Defendants' responses were "perfunctory" the only time the Requests were discussed was at the end of a December 15, 2010 meet-and-confer call among Defendants' counsel, Defendants' Oklahoma co-counsel, and Hamilton's counsel. Defendants' Oklahoma co-counsel was on the call because the subject of the call was discovery responses in the Oklahoma case. At the end of a productive discussion regarding discovery in that case and the Hamilton's Requests for Admission, Hamilton's counsel briefly asked about the Requests, without giving any indication that Hamilton was willing to narrow the scope of Requests that are plainly overbroad.

Hamilton's motion states that "Plaintiff's counsel is amenable to narrowing the scope and volume of the requested information responsive to [the Requests]" and "[p]laintiff does not require 'all' documents, and plaintiff remains amendable to discuss a limited number of sources and custodians from which responsive discovery can be reasonably obtained." Hamilton Memorandum at 4 ("Hamilton Memo"). In the single brief discussion regarding these Requests on December 15, Hamilton's counsel did not express such a willingness to compromise and did not provide any suggestions for how to narrow the scope of the overbroad Requests. And if, as

6

the motion states, Hamilton's counsel "remains amenable" to limiting the scope of the Requests, then Hamilton's motion to compel is frivolous because Defendants said they were willing to meet and confer again regarding these requests. However, Hamilton's counsel neither made any further attempt to confer about the Requests nor did he inform Defendants' counsel that Hamilton planned to file this motion.

Defendants do object to producing "all" documents in response to overbroad and burdensome Requests as they were written, but Defendants were and are willing to confer again to try to resolve and narrow these issues. In an earlier meet-and-confer in the Oklahoma case about some of the same general issues, Defendants expressed a willingness to work to resolve the issues and narrow the requests. The topics of the call were summarized in a September 16, 2010 e-mail from Hamilton's counsel to Defendants' counsel. (Winter Decl. Ex. L). On the call, Defendants agreed to consider disclosure of Topamax® prescription from third-parties for the prescriber in the Oklahoma case and agreed to produce (and subsequently did produce) sales representative call notes relating to the healthcare practitioners involved in that case. In addition, the parties agreed that sales representative training materials produced in the New Jersey case presumably are the same materials that would be produced in the Oklahoma case.

Rather than scheduling a meet-and-confer call to discuss the Requests in detail and try to reach a compromise or wait to see what documents Defendants produce, Hamilton filed this unnecessary motion to compel. Plaintiff should be ordered to engage in a good faith meet-and-confer process to resolve and frame for resolution any legitimate issues that are left after the parties' discussions.

### B.  Hamilton's Motion To Compel Is Premature Because Discovery In This Case Has Just Begun

Discovery in this matter has only just begun. Defendants received Hamilton's Rule 26 disclosure on December 29, 2010 and did not receive some of Plaintiff's medical records until on or about December 31, 2010. (Winter Decl. Ex. M). As of today, Hamilton still has not provided usable medical authorization to Defendants and the parties only have begun the process of written discovery. Hamilton has not been deposed nor has the deposition of Dr. Sloan been taken to see if, in fact, there is any evidence whatsoever that Defendants' salespeople promoted Topamax® to Dr. Sloan for the treatment of TN.

Hamilton also filed this motion before Defendants had an opportunity to produce documents responsive to the Requests. For example, Defendants stated in their responses to Hamilton's Interrogatories that they would produce copies of any relevant and responsive "documents provided by [Defendants] to, or received by [Defendants] from, the practice of decedent's health care providers…" (Winter Decl. Ex. N). Such documents, if they do exist, would be responsive to the Requests and might eliminate the need for this clearly premature motion.

### II.  Hamilton's Motion Should Be Denied Because The Requests Seek Information That Is Irrelevant To Her Claims.

Fed. R. Civ. P. 26(b)(1) allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense." A party must show good cause if it seeks broader discovery "of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1); *see also In re Subpoena to Michael Witzel*, 531 F.3d 113, 118 (1st Cir. 2008). The Advisory Committee Notes to the 2000 Amendment of Rule 26(b)(1) state that if there is an objection to the relevance of discovery, the Court will determine "whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long

8

as it is relevant to the subject matter of the action." Advisory Committee Notes, 2000 Amendment; *see also In re Subpoena to Michael Witzel*, 531 F.3d at 118. Hamilton's Requests are not relevant to her claims because the documents she seeks relate to off-label promotion, which is not an issue in this case, as there is no allegation of off-label promotion to Dr. Sloan in the complaint. Moreover, there are no fraud, misrepresentation or fraudulent concealment causes of action alleged against Defendants.

### A. Documents Related To Off-Label Marketing Are Not Relevant To Hamilton's Claims.

Hamilton's motion seeks documents that are irrelevant to any of her claims against Defendants. Hamilton alleges the following causes of action against Defendants: (1) negligence, (2) defective design, (3) manufacturing defect, (4) failure to warn, (5) breach of implied warranty, and (6) breach of express warranty. (*See* Winter Decl. Ex. A) The complaint neither makes any claims related to off-label promotion nor alleges that Dr. Sloan received misrepresentations from Defendants regarding the effectiveness of Topamax® for treatment of TN. (*See id.*) Hamilton's motion to compel, however, makes it clear that she wants these documents only to support theories related to off-label marketing.

Hamilton's motion (Hamilton Memo at 5) cites this Court's May 26, 2009 Order, *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 114 (D. Mass. 2009), for the proposition that "Defendants' national marketing documents relating to off-label marketing are relevant to Plaintiff's negligence, failure-to-warn, and negligent pharmacovigilance claims against Defendants." Hamilton's reliance on this decision is misplaced. The cited ruling pertained to fraud claims against a different defendant in the Neurontin® MDL, and the specific page cited by Hamilton does not mention the relevance of off-label promotion to claims of negligence, failure-to-warn, or negligence pharmacovigilance claims. *See id.* at 114. The page

9

Hamilton cites simply references the Court's decision to grant motions to dismiss some of the plaintiffs' fraud claims and deny some of the motions to dismiss fraudulent concealment claims. *See id.* No fraud or fraudulent concealment claims are pled against Defendants in this case.

Hamilton then cites a different portion of the Court's ruling regarding other parties to support the claim that pharmaceutical manufacturers face a "heightened duty to warn…when it engages in off-label marketing of a drug." (Hamilton Memo at 5) Whatever the "heightened duty" of the defendants at issue in the Court's prior ruling, this duty does not apply to the Defendants here because there is no allegation of off-label marketing to Dr. Sloan by Defendants. Indeed, according to Hamilton, as it relates to Defendants Topamax® was prescribed for "its intended purpose." (*See* Winter Decl. Ex. A, ¶ 447)

The Court's ruling cited by Hamilton demonstrates the significance that no off-label promotion was directed at Dr. Sloan by Defendants because the Court dismissed fraud claims when plaintiffs' only alleged affirmative misrepresentations or suppression of information to prescribing physicians was through a general "national marketing" campaign that included misrepresentations about Neurontin's® safety and effectiveness of off-label uses. *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d at 111-12. As this Court already ruled, fraud claims must be dismissed when a plaintiffs fails to demonstrate that his or her physician heard misrepresentations from a pharmaceutical company's sales force. *Id.* Here, it is not even alleged that Defendants' sales representatives made affirmative representations to Dr. Sloan about the use of Topamax® for any off-label uses, let alone TN.

Although the Court's prior ruling applied to fraud claims, which were not pled in this case, the quote cited by Hamilton shows that for evidence of off-label promotion to be relevant to a specific case, the representations need to be made directly to the prescribing physician and need to influence the decision to prescribe the medicine. *See Id.* at 111-12.

10

Neither Hamilton's complaint nor her motion allege that Dr. Sloan received and relied upon misrepresentations about the effectiveness of Topamax® in the treatment of TN, and that is because no evidence of this type exists. Accordingly, Hamilton's extremely broad requests for sales and marketing documents should be denied. *See In re Stone & Webster, Inc. Sec. Litig.*, 2006 WL 2818489, at *4 (D. Mass. Sept. 29, 2006) ("defendants should not be burdened with discovery not targeted to the issues in play"); *see also Tran v. Sonic Indus. Services, Inc.*, No. CIV-10-69-C., 2010 WL 5376348, at *3 (W.D. Okla. Dec. 21. 2010) (request to produce all e-mails between defendant's employees and vendors is too broad and burdensome to compel discovery); *Purkey v. Rubino*, No. CV 04-0548-E-MHW, 2006 WL 3497267, at *6 (D. Idaho Dec. 4, 2006) (denying motion to compel because requests for all documents covering a 10-year period, which could potentially cover every employee, were overly broad and sought irrelevant information); *Coleman v. American Red Cross*, 23 F.3d 1091, 1098 (6th Cir. 1994) (document request to search every file in a headquarters for possibly responsive documents is improper).

    **B.**    **Hamilton's Requests For Documents Related To The "Doctor-For-A-Day" Program**

Hamilton's request for documents related to a "Doctor-for-a-Day" program also should be denied. The Government's investigation and the subsequent plea agreement focused on off-label promotion through a "Doctor-for-a-Day" Program. According to the Government's Information, the off-label promotion in this program began in January 2001 and ended in November 2003, which is almost two years before Dr. Sloan prescribed Topamax® to Plaintiff's Decedent. (*See* Winter Decl. Ex. O). None of the government documents that Hamilton cites provides any evidence that Dr. Sloan met with doctors participating in the program. (*See id.*; Hamilton Memo Ex. C). In addition, the Government's Information states that the illegal off-

label promotion was for prescribing Topamax® to treat bipolar disorder, mood disorder, drug and alcohol dependence, and essential tremor; it does not mention TN.  (*See* Winter Decl. Ex. O).

Hamilton cites to the plea agreement as evidence of the alleged relevancy of the Requests, but the "Doctor-for-a-Day" program has no relevance to the issues in this case. The program was completed long before Dr. Sloan prescribed Topamax® to Plaintiff's Decedent, there is no evidence that Dr. Sloan was contacted by any participants in the program, and the program had nothing to do with TN, the condition for which Plaintiffs' Decedent was prescribed the medicine.  Therefore, discovery regarding the program in this case should be denied.  *See In re Stone & Webster, Inc. Sec. Litig.* 2006 WL 2818489, at *4 ("defendants should not be burdened with discovery not targeted to the issues in play").

C. **Hamilton's Request For Aggregate Prescription Data From Third Parties Regarding All Topamax® Prescriptions Is Overbroad, Unduly Burdensome, And Seeks Documents That Are Irrelevant To Hamilton's Claims.**

Hamilton requests the production of aggregate prescription data received from third parties regarding Topamax® through October 7, 2010.  Hamilton claims she needs these documents "to establish when Defendants should have undertaken to create a pharmacovigilance plan."  (Hamilton Memo at 6).  However, aggregate data regarding all prescriptions by all doctors of Topamax® for a period of years after the medicine was last prescribed, has no bearing on whether Dr. Sloan knew of the risk of suicide before she prescribed Topamax® to Plaintiff's Decedent.

Hamilton further states that "Plaintiff intends to use the national marketing documents including documents relating to aggregate prescription data…received from third parties regarding Topamax® to establish when Defendants should have undertaken to create a pharmacovigilance plan."  (Hamilton Memo at 6).  This conclusory statement does not establish

12

how aggregate prescription data will show when Defendants should have taken any actions at all. Hamilton's motion also does not explain how aggregate prescription data has any connection to the specific warnings that Defendants provided to Dr. Sloan regarding the risk of suicide. As with the marketing documents, Hamilton does not state specifically how the documents are probative to her case because she wants to obtain the documents for some far-fetched theories that are irrelevant to the claims set forth in Hamilton's complaint.

Hamilton comes closest to giving a reason for the relevancy of the aggregate data when she states that it "(1) will reflect Defendants' knowledge of physician's prescribing practices concurrently with Defendants' off-label marketing; or (2) even in the absence of affirmative off-label marketing, the data will reflect Defendants' knowledge of off-label prescription." (Hamilton Memo at 7) Even if these claims were true, which they are not, Defendants' knowledge of all Topamax® prescribers' practices are irrelevant, as there is only one doctor who prescribed Topamax® to Plaintiff's Decedent. Defendants' knowledge of off-label prescription is irrelevant to this case because there is no evidence of off-label marketing to Dr. Sloan.

**D.     Hamilton's Request For All Custodial Files Of Sales And Marketing Personnel Is Overbroad And Seeks Documents That Have No Relevance To Any Of Her Claims**

Over the course of six years, Dr. Sloan was contacted by four different sales people regarding Topamax®, yet the Requests demand that Defendants:

> Produce all documents regarding Topamax and suicidality, suicide, suicide attempts, suicidal ideation, suicide related events, suicidal behavior, and/or events with evidence of self-harm form the custodial files of Defendants' employees whose job responsibilities include sales and/or marketing of Topamax.

The breadth of this request is staggering. Defendants employ hundreds of people whose responsibilities include or included the sales and/or marketing of Topamax®. Documents in the custodial files of employees who never contacted Dr. Sloan simply are irrelevant to this case.

13

For those sales representatives who actually contacted Dr. Sloan, Defendants are working to determine what documents exist. As Defendants did in the two state court cases and as stated in their Responses to Hamilton's First Set of Interrogatories, Defendants will produce copies of any relevant and responsive "documents provided by [Defendants] to, or received by [Defendants] from, the practice of decedent's health care providers…" (Winter Decl. Ex. N). And in this regard, Defendants are producing the relevant call-logs documenting calls from their salespeople to meet with Dr. Sloan. In addition, Defendants already produced documents responsive to the Requests. For example, Defendants produced Topamax® sales training documents as well as Topamax® marketing and promotional materials. These documents are responsive to the Requests. These documents are responsive to the Requests, yet Hamilton's motion gives no indication that she reviewed these documents before filing this motion.

Rather than wait to see what documents Defendants produce from the files of the relevant salespeople, Hamilton moved to compel the production of "all documents regarding Topamax and suicide…from the custodial files of Defendants' employees whose job responsibilities include sales and/or marketing of Topamax." (Hamilton Memo at 4). As shown by their responses to Hamilton's Interrogatories, Defendants have been willing and are willing to produce documents from the relevant salespeople. (*See* Winter Decl. Ex. N). Defendants should not have to produce all documents related to Topamax® and suicide from every employee whose job responsibilities includes sales and/or marketing of Topamax®. *See Tran v. Sonic Indus. Services, Inc.*, 2010 WL 5376348, at *3 (request to produce all e-mails between defendant's employees and vendors is too broad and burdensome to compel discovery); *Purkey v. Rubino*, 2006 WL 3497267, at *6 (denying motion to compel because requests for all documents covering a 10-year period, which could potentially cover every employee were overly broad and sought

14

irrelevant information); *Coleman v. American Red Cross*, 23 F.3d at 1098 (document request to search every file in a headquarters for possibly responsive documents is improper).

### E. The Court Should Shift the Costs of Production, If Any, of Documents Responsive from Defendants' Employees Custodial Files to Hamilton

If Defendants are ordered to produce all documents related to Topamax® and suicide from every employee whose job responsibilities ever included sales and/or marketing of Topamax®, the Court should shift the costs of production to Hamilton because many of the requested documents are inaccessible and production will put an undue burden and excessive costs on Defendants. (*See* Winter Decl. Ex. P, Affidavit of Elizabeth Cherkis); *see Quinby v. WestLB AG*, 245 F.R.D. 94, 111 (S.D.N.Y. 2006) (shifting the costs of a portion of electronic discovery); *Zubalake v. UBS Warburg LLC*, 216 F.R.D. 280, 291 (S.D.N.Y. 2003) (shifting part of electronic discovery costs to requesting party); *OpenTV v. Liberate Technologies*, 219 F.R.D. 474, 479 (N.D. Cal. 2003) (ordering that the parties equally share the costs of production).

This Court has the discretion to shift all or part of the costs of producing these documents to Hamilton. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) (a court may "condition[] discovery on the requesting party's payments of the costs of discovery"); *see also Zubalake*, 216 F.R.D. at 283 ("the Rule 26(b)(2) proportionality test may subject the requesting party to protective orders under Rule 26(c) including orders conditioning discovery on the requesting party's payment of the costs of discovery.") (internal citations and quotes omitted); Fed. R. Civ. P. 26(b)(2)(B) ("The court may specify conditions for the discovery.")

The purpose of shifting the cost of production is to protect parties, like Defendants, from the undue burden and expense of overly broad requests like Hamilton's, which seek documents that are irrelevant to this litigation. *See Oppenheimer*, 437 U.S. at 358; *Quinby* at 104 ("cost-shifting is appropriate only where electronic discovery imposes an undue burden or

15

expense"). Cost-shifting is appropriate when inaccessible data is sought. *Zubalake*, 216 F.R.D. at 284. Here, to respond to Hamilton's requests, Defendants will have to restore at least parts of many custodial files of an unknown number of employees to recover documents dating to as far back as 1996, the year the United States Food and Drug Administration approved Topamax®. For many electronic mail files, Defendants have documents dating back only sixty days on their active servers, pursuant to the Defendants' auto-retention policy, so Defendants would have to many files dated before that date. Because Defendants would have to restore and produce the majority of these documents, the documents are considered inaccessible for any cost-shifting analysis. *Zubulake*, 216 F.R.D. at 284.

Applying *Zubulake's* seven part test for determining when cost-shifting is appropriate, this Court should shift the cost of production to Hamilton. The first *Zubulake* factor is the extent to which the request is specifically tailored to discover relevant information. *Zubulake*, 216 F.R.D. at 284. As explained above, Hamilton's request is not tailored to discover relevant information because Dr. Sloan was contacted by only four of Defendants salespeople, yet the request seeks documents from the custodial files of hundreds of employees. The custodial files of these four individuals are the only files that may contain sales and marketing documents, which have not already been produced, that are possibly relevant to Dr. Sloan's decision to prescribe Topamax® to Plaintiff's Decedent.

The third *Zubulake* factor is the total cost of production, compared to the amount in controversy. *Zubulake*, 216 F.R.D. at 284. "In an ordinary case, a responding party should not be required to pay for the restoration of inaccessible data if the cost of that restoration is significantly disproportionate to the value of the case." *Id.* at 288. An initial investigation into the cost of producing the requested documents indicates that the cost to collect, review, and produce the documents will be in excess of $1 million dollars. (Winter Aff. Ex. P). At this time,

16

the amount in controversy is unclear because Hamilton's complaint seeks general damages such as "[c]ompensatory damages in an amount in excess of the jurisdictional limits of this court." (Winter Aff. Ex. A). However, it is unlikely that damages, if any, will exceed the cost of this production.

Defendants will have very little ability to control the costs of producing these documents because it cannot narrow the scope of the requests and it must hire an outside firm to restore the files, which will then need to be reviewed and produced. Hamilton, however, can easily control the costs of this production by narrowing the scope of her request to cover only sales and marketing employees who had contact with Dr. Sloan. Because it would be simple for Hamilton control the costs of responding to this request and Defendants have little, if any, control over the costs, *Zubulake's* fifth factor weighs in favor of shifting the costs of production to Hamilton. *See Zubulake*, 216 F.R.D at 288.

The sixth *Zubulake* factor is neutral in the analysis because this case does not present a novel issue and product liability cases are common. The sixth factor is the importance of the issues at stake in the litigation, which only should rarely come into play in this analysis. *See Zubulake*, 216 F.R.D. at 289. Although Defendants take Hamilton's claims very seriously, this litigation does not present any unique or novel issues because product liability claims are common.

Finally, the seventh *Zubulake* factor tips in favor of shifting costs because Hamilton cannot identify any relevant benefit that she will receive from obtaining documents related Topamax® and suicide from the custodial files of all of Defendants' employees whose job responsibilities includes the sales and marketing of Topamax®. As explained above, Hamilton wants these documents to try to allege that Defendants made misrepresentation to Dr. Sloan regarding the effectiveness of Topamax® for the treatment of TN. This, however, is not an issue

in this case. Hamilton's complaint does not claim that Dr. Sloan heard any misrepresentations from Defendants' salespeople regarding the effectiveness of Topamax® for off label-uses. And there is no evidence or even an allegation in the Complaint, as it relates to Defendants, that off-label promotion occurred in this case.

### F.     Hamilton Makes Only Conclusory Statements About Why The Requested Documents Are Relevant.

Hamilton fills her motion with conclusory statements about the duties of pharmaceutical manufacturers to support her claim that this Court should compel the production of documents. For example, Hamilton asserts that "a manufacturer with knowledge of both extensive off-label use and material facts about risks inherent with taking the drug (e.g., depression or suicide), has a duty to take action." (Hamilton Memo at 5) Yet the motion cites no authority for this duty and does not specify what action a manufacturer allegedly must take. Hamilton then claims that the documents she wants are relevant because they show Defendants knowledge of off-label use, but provides no rationale for connecting Defendants' alleged knowledge of off-label use with something Dr. Sloan did or did not do.

Hamilton claims that "Defendants' marketing documents are relevant to Plaintiff's proof that Defendants had a regulatory duty to create, establish and execute a pharmacovigilance plan to evaluate and analyze suicide and depression adverse events." (*Id.* at 6). Hamilton, however, provides no explanation for how marketing documents would demonstrate that Defendants had any regulatory duty, which, to the best of Defendants' knowledge, is a legal question. And Hamilton does not even identify what kinds of marketing documents she is requesting. Her request for marketing documents is a wholly improper shot-in-the-dark to obtain information that has no bearing on this case. *See In re Stone & Webster, Inc. Sec. Litig.*, 2006 WL 2818489 at *4.

Hamilton's claims are similar to the fraud claims against Pfizer this Court dismissed more than a year ago. This Court granted a motion to dismiss claims when a plaintiff did not allege specific contact between defendants' salespeople and the plaintiff's prescribing physician. *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d at 111-12. The Court dismissed the fraud claims "because there [was] no allegation of reliance on specific statements or misrepresentations" and because "no doctor in these seven complaints testified she heard any misrepresentations from the Pfizer sales team." *Id.* In this case, there is not even an allegation in the complaint about off-label promotion to Dr. Sloan by Defendants regarding TN. Until such time as Hamilton makes such a connection, her request for overly broad and burdensome documents must be denied.

## Conclusion

Defendants respectfully request that Hamilton's motion be denied, that the parties be directed to meet-and-confer on any future discovery disputes, and that Hamilton be forewarned that sanctions may be imposed if, in the future, she moves to compel without exhausting the meet-and-confer process.

Dated: New York, New York
January 24, 2011

Respectfully Submitted,
PATTERSON BELKNAP WEBB & TYLER LLP

By: _/s/ John Winter_

John D. Winter
1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000

*Attorneys for Defendants*

19