UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>ALL BOONE PRODUCT LIABILITY ACTIONS | Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin<br><br>**LEAVE GRANTED ON JANUARY 24, 2011** |

# REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

The Boone Plaintiffs knew about their discovery deficiencies – and were required by Orders of this Court to correct them – long before Pfizer filed its Motion to Compel on December 20, 2010. Although the majority of the Boone Plaintiffs now claim that they somehow lacked notice regarding their failures to comply with discovery, that argument is belied by the multiple deficiency letters sent by Pfizer, statements by the Court, the unambiguous terms of the Court's December 6, 2010 Order, and repeated representations made by Plaintiffs' counsel himself. Not only have Plaintiffs and their counsel received actual notice of their deficiencies on multiple occasions, the majority of their responses are so self-evidently inadequate and their counsel cannot in good faith claim to be unaware of their deficiencies – nor did he have a justifiable basis for certifying that these responses were complete.

Despite Plaintiffs' claims to the contrary, (*see* Pls.' Opp. Memo. [3235] at 2), Pfizer repeatedly raised Plaintiffs' global discovery deficiencies with their counsel. For instance, on November 23, 2010, Pfizer sent Mr. Boone a deficiency letter that highlighted common global deficiencies. (*See* Ex. A, Nov. 23, 2010 C. Stevens letter.)[1] That letter explained that Pfizer needed complete discovery responses in order to depose Plaintiffs without having to keep their

---

[1] All exhibits are attached to the accompanying Declaration of Catherine B. Stevens.

depositions open based on undisclosed discovery.  It further noted: "For Defendants to be forced to come to Cleveland, Mississippi, *twice* for each of your *230 Plaintiffs* in order to obtain a fair and complete deposition is simply unacceptable, particularly when Plaintiffs should have provided the relevant records and complete and adequate discovery responses years ago." (*Id.* at 2 (emphasis in original).)  Because Mr. Boone did not correct the global deficiencies described in Pfizer's letter, Pfizer later filed a Status Update explaining to the Court the same issues outlined in its letter and seeking guidance. (*See* Defs.' Status Update [3132].)  Mr. Boone simultaneously filed a Status Update in which he claimed that all Boone Plaintiffs had submitted complete medical records, authorizations, template discovery responses, and medical provider lists. (*See* Boone Pls.' Status Update [3134], at 3-4.)

On December 1, 2010, this Court held a status conference during which Pfizer again raised the issue of the Boone Plaintiffs' widespread and persistent discovery deficiencies.  The Court did not directly rule on these issues at that conference because it found that such determinations would have to be made on a "case-by-case basis," but it instructed Pfizer to file a motion to compel that "outline[d] any cases [it was] dissatisfied with." (Ex. B, Dec. 1, 2010, Status Conf. Tr. at 33:20-34:3.)[2]  Mr. Boone then represented to the Court, "Your Honor, I think we complied with the information that were [sic] available to us." (*Id.* at 34:11-15.)  Following that conference, the Court issued an order noting, among other things, that "defendants indicate that much of the template discovery is incomplete or unsatisfactory" for Boone Plaintiffs. (Dec. 6, 2010, Scheduling Order [3141], at ¶ 5 (emphasis added).)   Based on Mr. Boone's

---

[2] At this conference, the Court also gave Mr. Boone the following warning:

> At some point you're sort of representing that, in fact, [a discovery responses] is done when you turn it over.  I just want to tell you this, that it raises the concern I never like to see a lawyer in the position where they're exposing personally themselves to the Court for a possible sanction, but I have to tell you that if you're repeatedly – if you undertake a large number of cases that seems unrealistic to undertake and you profess the ability to do it and then you proceed and then there seems to be . . . potentially large-scale inadequate discovery responses, all right, that could be a problem.

(Dec. 1, 2010, Status Conference Tr. at 32:10-21.)

2

representations that his clients' discovery responses were adequate across the board, the Court ordered that Pfizer file a "motion setting forth the alleged non-compliance and requesting appropriate relief by December 20, 2010." (*Id.*)[3] Following the Court's Order, counsel for Pfizer met and conferred with Mr. Boone about deficiencies in his cases during a telephone conference, but no agreement was reached.[4]

Not only does the record establish that Plaintiffs had repeated actual notice of their discovery deficiencies, this Court ordered Plaintiffs to provide complete responses. On June 19, 2006, this Court first ordered all Plaintiffs to respond to template discovery. (Discovery Order No. 2 [372], at 3-6.) Then, on June 9, 2010, because of the Boone Plaintiffs' widespread non-compliance, the Court set a schedule for completion of template discovery and even specifically instructed Mr. Boone "to pay particular attention to" the Court's warning "that the failure to comply with the Court's Orders set forth herein may result in dismissal of the claims of a plaintiff or of cases brought by counsel." (Further Scheduling Order [2839], at 3-6 (emphasis in original omitted).) Finally, this Court's December 6, 2010 Order gave the Boone Plaintiffs one last opportunity to correct their template discovery deficiencies without further need for judicial intervention. (Dec. 6, 2010, Scheduling Order [3141], at ¶ 5.) In light of these overlapping orders, Plaintiffs' characterization of Pfizer's Motion to Compel as "premature" is absurd. (Pls.' Opp. Memo. [3235] at 4.) As of December 20, 2010 when Pfizer filed its motion, no less than

---

[3] While the Court recognized that it had previously applied a "rolling schedule" to the Boone Plaintiffs' production of template discovery, its Order explicitly revised that schedule based on Mr. Boone's representations that his clients have "produced all of the template discovery." (Dec. 6, 2010, Scheduling Order [3141], at ¶ 5 & fn.1.)

[4] With regard to the cases for which Plaintiffs admit to receiving specific deficiency letters, their claim – that "Plaintiffs in this group were supplemented in accordance with Defendants' deficiency letters" – is verifiably incorrect in most cases. (*Compare* Pls.' Memo. in Opp. [3206] at 5-20, *with* Appendix A [3179-1] at 1-15; *see also* Defs.' Reply Memo [3214], at 2 fn.3.) Even in these cases, Mr. Boone generally does not respond to Pfizer's deficiency letters, and – even where some supplementation is provided – Pfizer often does not receive it until just before Plaintiffs' depositions so that the supplemented information is unhelpful with regard to preparing for depositions.

3

three Court orders directly mandated Plaintiffs to respond to template discovery.[5]

Contrary to Plaintiffs' assertions, Pfizer did not have an obligation to send separate deficiency letters in each case.[6] It was sufficient that Pfizer contacted Mr. Boone about global discovery deficiencies. Rather than requesting more detail or indicating that he would make good faith efforts to address the global deficiencies, Mr. Boone responded to both Pfizer's complaints and this Court's inquiries by affirmatively representing that his clients' template discovery was essentially complete. (*See* Defs.' Status Update [3132]; Dec. 1, 2010, Status Conf. Tr. at 34:11-15; Dec. 6, 2010, Scheduling Order [3141], at ¶ 5 & fn.1.) Even now, despite the fact that Pfizer has set forth in great detail the many discovery deficiencies in each of these cases, Mr. Boone persists with the untenable position that "[a]ll Plaintiffs have responded to Defendants' discovery." (Pls.' Opp. Memo. [3235] at 5.)

Moreover, now that Pfizer has undertaken the time-consuming task of filing a motion with regard all 214 cases, Plaintiffs – instead of responding in kind with the appropriate degree of specificity – simply complain about the size and timing of the motion. (*See* Pls.' Opp. Memo. [3235] at 2.) Prior to the filing of this motion, however, both the Court and Mr. Boone himself stressed the need to approach discovery deficiencies "on a case-by-case basis," (Dec. 1, 2010, Status Conf. Tr. at 33:13-17, 33:20-25), and the length of the Pfizer's motion is directly proportional to the number of cases addressed therein and the magnitude of the Boone Plaintiffs' discovery deficiencies.[7] While Plaintiffs belatedly suggest that their counsel did not have

---

[5] While the Boone Plaintiffs argue that some of their depositions are not scheduled to take place for several months, (Pls.' Opp. Memo. [3235] at 6), that does not excuse direct violations of Court orders. Additionally, this last minute supplementation on the day or week before a scheduled deposition severely prejudices Pfizer's discovery efforts because it needs time to make use of the disclosed information in preparation for depositions.

[6] With their arguments, Plaintiffs incorrectly attempt to switch the burden to Defendants, but it is Plaintiffs who must prove that an award of expenses is not appropriate. *See* Fed. R. Civ. P. 36(b), advisory committee notes ("The provision places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust.").

[7] Even after Pfizer filed its Motion to Compel, egregious examples of blatant discovery deficiencies and misconduct continue to surface. For instance, at the deposition of Plaintiff Josephine Jackson on January 7, 2011, she was asked about her answer to Interrogatory No. 11, which contained a

4

sufficient time to respond, (Pls.' Opp. Memo. at 2), Mr. Boone never requested an extension from either Pfizer or this Court prior to expiration of the established deadline.

Finally, to further aid the Court, Pfizer will submit the names of attorneys and paralegals who performed work in the preparation of its Motion to Compel, the name of their graduate institution, and their class year. (*See* Ex. E, Chart of Hours Worked.) Pfizer calculated legal fees conservatively based on prevailing rates in the community and, even then, made substantial voluntary reductions. (*See* Defs.' Memo. in Supp. of Attorneys' Fees [3217].) The amount requested is both reasonable and significantly less than the actual cost of bringing this motion in 214 individual cases. In fact, the expenses requested amount to less than $520 per case.

## CONCLUSION

Defendants respectfully request that the Court grant their request for an award of attorneys' fees and costs.

Dated: January 24, 2011                    Respectfully submitted,

                                                        SKADDEN, ARPS, SLATE,
                                                          MEAGHER & FLOM LLP

                                                          By:     /s/ Mark S. Cheffo
                                                                 Mark S. Cheffo

---

stock response that she suffered "abnormal thinking and suicide ideation," which also appears in several other Boone discovery responses. (*See* Defs.' Memo. in Supp. of Mot. to Compel [3177], at 19-21.) When asked whether she actually had ever experienced suicide ideation, however, she responded, "I don't know who put that there, because I did not tell nobody that." (Ex. C, Jackson Dep. at 113:17-114:7.) In addition, at the recent deposition of Plaintiff Jacqueline Kendrick on January 13, 2011, Pfizer learned about numerous medical records that Plaintiff kept at her house but failed to produce during discovery. (*See* Ex. D, Kendrick Dep. at 248:25-259:10.) These missing documents were highly material to the case because they showed that Plaintiff was prescribed Neurontin in 2001, even though the records Pfizer had obtained indicated that she did not begin taking it until 2003. (*See id.*) When asked whether "anyone told [her] that [she] should preserve those documents so that [she] can produce them in this lawsuit," she responded, "No, sir." (*Id.* at 255:24-256:2.) Late in the deposition, Plaintiff Kendrick gave defense counsel a copy of some unproduced medical records, but she stated that there were still more undisclosed records at her house. (*See id.* at 324:4-353:22.) In addition to her failure to produce medical records, Plaintiff Kendrick had no explanation for why she disclosed allegations of suicide ideation and depression for the first time in September 2010 but failed to disclose those allegations in either her Complaint or previously-filed response to interrogatories. (*See id.* at 311:7-320:16.)

5

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

-and-

ROPES & GRAY LLP

By:    /s/ Ana M. Francisco
        Ana M. Francisco
        BBO #564346

Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel:  (617) 951-7000
Email:  ana.francisco@ropesgray.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 24, 2011.

        /s/ Ana. M. Francisco
        Ana M. Francisco