**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

-----------------------------------------------------------x
                                                          :   MDL Docket No. 1629
In re:   NEURONTIN MARKETING,                             :
         SALES PRACTICES AND                              :   Master File No. 04-10981
         PRODUCTS LIABILITY LITIGATION                    :
-----------------------------------------------------------x   Judge Patti B. Saris
                                                          :
THIS DOCUMENT RELATES TO:                                 :   Magistrate Judge Leo T. Sorokin
                                                          :
Briggs v. Pfizer, et. al., No. 07-10327                   :
Drinkwine v. Pfizer, et. al., No. 09-10836                :
Hairfield v. Pfizer, et. al., No. 08-10930                :
Hamilton v. Pfizer, et. al., No. 10-11023                 :
Leu v. Pfizer Inc., et al., No. 09-10422                  :
McLendon v. Pfizer, et. al., No. 08-12034                 :
Morrow v. Pfizer, et. al., No. 08-11706                   :
Newberry v. Pfizer, et. al., No. 07-11499                 :
Peterson v. Pfizer, et. al., No. 10-10933                 :
                                                          :
-----------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF GENERIC DEFENDANTS' ASSENTED-TO MOTION TO STAY ALL PROCEEDINGS INVOLVING GENERIC DEFENDANTS

Teva Pharmaceuticals, USA, Inc., Ivax Pharmaceuticals, Inc., Actavis, Inc., Actavis Elizabeth, LLC, Purepac Pharmaceutical Co. (collectively "Generic Defendants"), with the assent of the Products Liability Plaintiffs' Steering Committee and the Pfizer defendants, respectfully submit this memorandum in support of their assented-to motion to stay all proceedings, including all case-specific and expert discovery and pre-trial motions practice in all cases naming Generic Defendants.

### INTRODUCTION

The Generic Defendants are cognizant of the Court's (and the parties') need to manage these cases in a manner that promotes efficiency and progress toward prompt resolution. However, because an upcoming United States Supreme Court ruling will directly impact and

control all of these cases, a brief stay of all proceedings, including expert discovery and pre-trial motions practice, will serve the interests of judicial economy and prevent needless duplicative discovery and motions practice that will have to be re-done as soon as the United States Supreme Court's decision is rendered.

A stay of case-specific and expert discovery and pre-trial motions in these cases is appropriate because, on December 10, 2010, the United States Supreme Court granted certiorari in three cases, all of which present the question whether state-law tort claims against generic pharmaceutical manufacturers — like the claims plaintiffs allege against the Generic Defendants in these cases — are preempted by federal law.  Resolution of the preemption question by the United States Supreme Court, which will occur in a matter of mere months, will squarely determine whether the causes of action asserted by plaintiffs in these cases are viable or preempted by federal law, as the Generic Defendants have asserted and will continue to assert in motions to dismiss, summary judgment motions and numerous pre-trial motions *in limine*.[1]  As such, the Supreme Court's grants of certiorari on the precise question that is at issue in <u>all</u> of the cases in which the Generic Defendants have been named provides a compelling reason that this Court should exercise its discretion to briefly stay all proceedings in these cases pending that decision.  This stay would only apply the nine above-captioned cases, and the rest Neurontin matters now pending would not be affected.

---

[1] The Generic Defendants acknowledge that the Court has previously heard and denied Motions to Dismiss [Dkt. # 1834] arguing that plaintiffs' state law claims are preempted by federal law and the Food & Drug Administration's labeling requirements.  *See* Dkt. # 2175, dated Nov. 11. 2008 (citing *Bartlett v. Mutual Pharm. Co., Inc.* 2009 U.S. Dist Lexis 90528 (D.N.H 2009) (holding that state law torn claims alleging defective labeling of generic drugs are not pre-empted by federal law); s*ee generally Wyeth v. Levine*, 129 [S.Ct.] 1187, (2009)).  However, the Supreme Court's ruling in the *Mensing* Cases will affect the viability of Plaintiffs' claims against the Generic Defendants in the gabapentin matters pending before the Court, including the applicability of both *Bartlett* and *Wyeth*.

LIBNY/4986105.1

**ARGUMENT**

**A Stay Is Supported By The United States Supreme Court's Pending Resolution Of The Threshold Issue In These Cases: Whether State-Law Tort Claims Against Generic Pharmaceutical Manufacturers Are Preempted By Federal Law.**

All proceedings involving the Generic Defendants should be stayed because, on December 10, 2010, the United States Supreme Court granted certiorari in three cases, *Pliva, Inc., et al. v. Mensing*, No. 09-993, *Actavis Elizabeth, LLC v. Mensing*, No. 09-1039, and *Actavis, Inc. v. Demahy*, No. 09-1501 (collectively, *Mensing* Cases), and consolidated those cases for briefing and argument. *See* Order List, 562 U.S. __, 2010 WL 621400, *1 (U.S. Dec. 10, 2010) (Exhibit A). Disposition of those consolidated cases is expected to occur by the end of the Supreme Court's current Term in June. *See* Supreme Court Guide For Counsel In Cases To Be Argued Before The Supreme Court, October 2010 Term, at 15 (available at: http://www.supremecourt.gov/oral_arguments/guideforcounsel.pdf) (last visited Jan. 26, 2011).

In the *Mensing* Cases, the United States Supreme Court will decide whether state-law tort claims brought against generic pharmaceutical manufacturers — just like the claims asserted by plaintiffs in these cases — are preempted by federal drug labeling laws. *See, e.g.*, Petition for Writ of Certiorari, *Pliva, Inc., et al. v. Mensing*, No. 09-993 at i (U.S. Feb. 19, 2010) ("Whether the Eighth Circuit abrogated the Hatch-Waxman Amendments [to the federal Food, Drug & Cosmetic Act] by allowing state tort liability for failure to warn in direct contravention of the Act's requirement that a generic drug's labeling be the same as the FDA-approved labeling for the listed (or branded) drug.") (Exhibit B); Petition for Writ of Certiorari, *Actavis Elizabeth, LLC v. Mensing*, No. 09-1039 at i (U.S. Feb. 25, 2010) ("[W]hether the Eighth Circuit Court of Appeals misinterpreted [federal regulations requiring a generic drug manufacturer to maintain the labeling for a generic the same as the labeling for the brand or listed drug that is its bioequivalent,] and the doctrine of conflict preemption[,] when it concluded that generic drug

manufacturers could be held liable under state law for failing to strengthen the warnings in the labeling for the generic drug.") (Exhibit C); Petition for Writ of Certiorari, *Actavis, Inc. v. Demahy*, No. 09-1501 at i (U.S. June 7, 2010) ("Are the states preempted under the Supremacy Clause of the Constitution from requiring additional safety information on a generic product label where the brand has not changed its label?") (Exhibit D).

The Supreme Court's answer to these questions will in all likelihood determine whether plaintiffs have sustainable state-law tort claims against the Generic Defendants, but if they do, the nature and elements of such claims, the nature of proof required to substantiate them, and possibly even the issue of who must carry the burden of such proof.  Because the resolution of those questions will issue within the next few months, a stay in the cases naming the Generic Defendants pending the Supreme Court's disposition of the *Mensing* Cases is warranted to prevent the necessary reopening of case specific and expert discovery and the re-litigation of potentially dozens of pre-trial and summary judgment motions that concern, among other things, the subjects of preemption, the contours and scope of compliance with FDA's regulations, and the effect, if any, of compliance with industry norms and standards.  For obvious reasons, what the scope of plaintiffs' state-law tort claims look like (if they are not, in fact, preempted) post-*Mensing* will fully inform how (if at all) the parties prepare these issues for trial, brief these issues on dispositive and *Daubert* motions, and how the courts decide them.  It would be inefficient and contrary to principles of judicial economy to require the parties to incur the substantial costs associated with discovery, briefing and arguing, and other pretrial proceedings relating to, not to mention to require the courts to hear and adjudicate, these issues without first obtaining the United States Supreme Court's impending resolution of these questions.

It bears further mention that other courts have recognized that staying a case, or aspects of it, pending resolution of an appeal that will conclusively resolve a common issue of law is not only beneficial to the parties, but also serves to protect judicial economy, because not doing so, and choosing instead "to adjudicate anew issues that will most likely be conclusively resolved by the [court of appeals] or the United States Supreme Court" is simply "fruitless." *Anaheim Gardens, et al. v. United States*, 1997 WL 580613, *8 (Fed. Cl. 1997); *see also Cienega Gardens, et al. v. United States*, 331 F.3d 1319, 1324 (Fed. Cir. 2003) (approving same). This course of action makes sense, because a stay in these circumstances "would advance the interests of judicial economy and avoid duplicative litigation … [and] avoid the expenditure of unnecessary litigation costs. Not only would staying this case promote cost-effective litigation, but it would also streamline the ultimate resolution of this case on the merits once the common issues have been resolved by the [court of appeals] or the United States Supreme Court." *Anaheim Gardens*, 1997 WL 580613, *8.

In addition, just two years ago, when the United States Supreme Court granted certiorari in *Wyeth v. Levine*, a case involving the question whether a plaintiff's state-law tort claims against a brand-name drug manufacturer were preempted by federal law, a number of courts in which lawsuits which would be subject to the Supreme Court's ruling were pending (just as in these cases) stayed or held in abeyance those cases pending resolution of the appeal. *See, e.g.*, *Mason, et al. v. SmithKline Beecham*, No. 08-2265, Order Granting Motion to Stay Appeal Pending Supreme Court Disposition in *Wyeth v. Levine* (7th Cir. July 2, 2008) (granting plaintiff's motion to hold in abeyance its appeal of the judgment entered by the district court, in favor of defendants on preemption grounds, pending disposition of *Levine*); *Miller v. SmithKline Beecham*, Nos. 08-5042, 08-5050, Order Granting Motion to Hold Appeal in Abeyance Pending

Decision in *Wyeth v. Levine* (10th Cir. June 4, 2008) (same); *Dobbs v. Wyeth Pharms.*, No. 08-6018, Order of Circuit Mediator for the Tenth Circuit Court of Appeals Holding Case in Abeyance Pending Decision in *Wyeth v. Levine* (10th Cir. Mar. 7, 2008) (entering, on Circuit Mediator's own motion, order holding appeal in abeyance pending disposition of *Levine*); *Baumgardner, et al. v. Wyeth Pharms.,* No. 05-cv-05720, Order Staying Proceedings Pending Decision By Supreme Court in *Levine* (E.D. Pa. June 18, 2008) (granting plaintiff's request to stay proceedings in district court pending disposition of *Levine*) (collectively, Exhibit E).

Indeed, other state and federal courts have already issued stays in other generic pharmaceutical cases pending the outcome of *Mensing* Cases.  *See, e.g.*, *Thiel v. Wyeth, Inc.*, No. 6:10-cv-1304-Orl-35-GJK (M.D. Fla. Jan. 25, 2011); *Simpson v. PLIVA, Inc.*, No. 7:10-cv-01771-HGD (N.D. Ala. Jan. 21, 2011); *Purvis v. Teva Pharmaceuticals USA, Inc.*, Civ. Action No. 10-807-BAJ-SCR (M.D. La. Jan. 19, 2011); *Pirello v. Qualitest Pharmaceuticals Inc.*, Civ. Action No. 10-298-BAJ-CN (M.D. La. Jan. 19, 2011); *Scheaffer v. Teva Pharms. USA, Inc.*, No. 2:09-CV-06124-MVL-KWR (E.D. La. Jan. 18, 2011), *Booty v. Teva Pharms. USA, Inc.*, No. 2:09-CV-06389-MVL-KWR (E.D. La. Jan. 18, 2011), and *Lotts v. Wyeth, Inc.*, No. 2:09-CV-06125-MVL-JCW (E.D. La. Jan. 18, 2011); *Loyd v. Actavis*, No. 0:10-cv-03127-DSD-JSM (D. Minn. Jan. 12, 2011); *Stoddard v. PLIVA USA, Inc.*, No. 4:08-CV-173-H (E.D.N.C. Jan. 10, 2011); *Phelps v. Wyeth, Inc.*, No. 09-6168-TC (D. Ore. Jan. 4, 2011); *Brasley-Thrash v. Teva Pharms. USA Inc.*, No. 1:10-cv-00031-KD-C (S.D. Ala. Jan. 3, 2011); *Mensing v. Wyeth, Inc.*, Civil No. 07-3919 (D. Minn. Dec. 29, 2010); *Jacobsen v. Wyeth, Inc.*, Case No. 2:10-cv-00823 (E.D. La. Dec. 17, 2010); *Huck v. PLIVA, Inc.*, Case No. LACV01894 (Iowa Dist. Ct., SAC County Dec. 15, 2010); *Dubuisson v. Wyeth, LLC*, No. 2:09-cv-06786 (E.D. La. Dec. 2, 2010); *but see Austin v. Actavis Inc.*, Case 2:10-cv-01949-HGB-ALC (E.D. La. Jan. 10, 2011) (denying

stay in light of *Mensing* and *Demahy*); *Levine v. Wyeth, Inc.*, Case 8:09-cv-00854-VMC-AEP

(M.D. Fla. Jan. 5, 2011)(same).[2]

As those courts recognized, the best course is to grant a stay and await guidance from the

United States Supreme Court rather than litigate issues that will shortly be resolved.  That

reasoning applies with particular force here, because the Supreme Court ultimately may hold that

plaintiffs' claims are preempted by federal law, and even if the Supreme Court's decision stops

short of that result, it will almost inevitably materially change the rules under which plaintiffs'

claims are litigated.  The fact that the Supreme Court has agreed to hear these cases (despite

strong opposition and in the absence of a clear circuit split) signals the Court's concerns about

the lower courts' rulings that would allow these claims to proceed.

Moreover, the federal government filed an *amicus curiae* brief in the *Mensing* Cases,

explaining that the Hatch-Waxman Amendments and FDA regulations mandate that generic drug

labeling must be the "same as" the brand-name drug labeling both before and after approval, that

generic drug companies cannot unilaterally change, update or supplement their labeling, and that

generic drug companies cannot unilaterally send Dear Doctor letters (just as the Generic

Defendants have been arguing in these cases).  *See, e.g.*, Brief for the United States As Amicus

Curiae at 4-5 (U.S. Nov. 2, 2010) ("The Hatch-Waxman Amendments require 'the labeling * * *

for [a generic] drug [to be] the same as the labeling approved for the [brand-name drug].")

(quoting 21 U.S.C. § 355(j)(4)(G)) (first two alterations in original; third alteration added)

(Exhibit F); *id.* at 12-13 ("The holder of an approved ANDA [*i.e.*, a generic drug manufacturer]

is not free to change its approved labeling at will.") (citing 21 C.F.R. § 314.70(a) (2001)); *id.* at

---

[2] Defendants filed motions for reconsideration subsequent to the *Austin* and *Levine* denials of motions to
stay the cases.  Plaintiff consented to the motion for reconsideration in *Austin*.  The parties in *Levine* requested
dismissal in light of settlement proceedings while the motion for consideration was pending.  The Generic
Defendants can provide referenced stay orders upon request of the Court.

13 ("[A]n ANDA holder … could not unilaterally change its approved labeling under the CBE process."); *id.* ("FDA has consistently taken the position that an ANDA holder may not unilaterally change its approved labeling."); *id.* at 19 ("[A]bsent FDA's assent, [generic drug manufacturers] could not lawfully have disseminated their product with the sort of warnings respondent seems to propose."); *id.* at 15 ("[A]n ANDA holder unilaterally sending [Dear Doctor Letters] … could have resulted in misbranding the drug.").  Obviously, FDA's interpretation of the statute and regulations it is charged with administering is due considerable deference, *see Auer v. Robbins*, 519 U.S. 452, 462 (1997), and again, the Supreme Court would not have taken these cases if there was not a substantial possibility that it would reverse the lower courts' decisions and hold that these kinds of claims are preempted, or at a minimum clarify the proper application of the FDA regulations.

　　　All things considered, the equities strongly favor a stay of discovery and pre-trial motions practice pending the Supreme Court's disposition of the *Mensing* Cases.  Plaintiffs will suffer no meaningful prejudice from a temporary stay extending through the date of the Supreme Court's decision, expected by no later than the end of the Court's current term, but the Generic Defendants will be severely prejudiced absent such a stay.  From a discovery perspective, there is substantial further case-specific, as well as numerous expert reports to be prepared and expert depositions to be taken in these cases.  And if history is any indication of how these cases will proceed, the parties will be filing and arguing numerous pre-trial motions *in limine*, *Daubert* motions, and summary judgment motions in each individual case, many of which, as noted above, involve issues directly tied to and likely controlled by those presented in the *Mensing* Cases.

8

Requiring this extensive and expensive expert discovery and pre-trial motions practice to proceed — despite the fact that the Supreme Court will issue a ruling in a matter of months that could foreclose plaintiffs' state-law tort claims or otherwise change the rules under which those claims will be litigated— will needlessly require the parties and this Court to expend time and resources that may ultimately prove unnecessary.  Simply put, there is no good reason *not* to enter a brief stay expert of discovery and pre-trial motions practice pending resolution of the *Mensing* Cases, given the short duration of the requested stay and the near certainty that the rulings from the United States Supreme Court will definitively resolve the legal framework within which these cases may proceed (if they may proceed at all).  A brief stay will avoid an enormous drain on this Court and allow these issues to be coordinated and litigated in an orderly fashion in the cases going forward.  In recognition of these considerations, as noted above, plaintiffs' counsel have consented to the relief sought herein.

## CONCLUSION

For all of the foregoing reasons, the Generic Defendants respectfully request that the Court stay all proceedings, including discovery and pre-trial motions practice in all cases naming the Generic Defendants pending the United States Supreme Court's resolution of the *Mensing* Cases.

9

Dated:  January 26, 2011

Respectfully submitted,

*Teva Pharmaceuticals, USA, Inc., and
Ivax Pharmaceuticals, Inc.*

By:  /s/ U. Gwyn Williams
U. Gwyn Williams (BBO # 565181)
Chad W. Higgins (BBO # 668924)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
617.570.1000
gwilliams@goodwinprocter.com
chiggins@goodwinprocter.com

*Attorneys for Actavis, Inc., Actavis Elizabeth,
LLC, and Purepac Pharmaceutical Co.*

By: /s/ Megan Kinsey-Smith
Megan Kinsey-Smith
McKenna, Long & Aldredge, LLP
1900 K Street, North West
Suite 100
Washington, DC 20006
202-496-7500
Fax: 202-496-7756
mkinsey-smith@mckennalong.com

LIBNY/4986105.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) pursuant to Case Management Order #3 on January 26, 2011.

s/ U. Gwyn Williams

LIBNY/4986105.1