UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
IN RE NEURONTIN MARKETING, SALES       )
PRACTICES, AND PRODUCTS LIABILITY      )
LITIGATION                             )        MDL Docket No. 1629
_____)        Master File No. 04-10981
                                       )
THIS ORDER RELATES TO:                 )        Judge Patti B. Saris
                                       )        Mag. Judge Leo T. Sorokin
ALL BOONE PRODUCTS LIABILITY ACTIONS )
_____)


REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION TO COMPEL (DOCKET # 3176)

February 3, 2011

SOROKIN, M.J.


        The Defendants move to compel complete discovery responses from those Plaintiffs

represented by Attorney Levi Boone and seek as relief either an Order compelling complete

discovery, dismissal, sanctions or any other relief deemed appropriate by the Court.  Docket #

3176.  Because of Boone's repeated failures to comply with Court orders, his disregard of the

Court's rulings on the scope of discovery (bordering on willful non-compliance), his failure to

produce the required discovery despite repeated opportunities to do so, and, because Boone's

basic paper discovery is so incomplete and defective that proceeding with his cases would

require individual case discovery to essentially begin anew, after years of litigation,  I

RECOMMEND that the Court DISMISS the three actions brought by Boone (i.e.,  05-cv-10834,

05-cv-10835 and 07-cv-11795) on behalf of all the Plaintiffs named within these complaints

1

whose claims remain pending pursuant to Fed. R. Civ. P. 41(b), for failure to prosecute and failure to comply with Orders of the Court, and pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v), as a sanction for failure to obey Orders to provide discovery.

I.     FACTUAL BACKGROUND

Boone brought suit on behalf of approximately three hundred and ninety-four plaintiffs from Mississippi claiming injury arising from the use of Neurontin. He filed three form complaints containing no specific allegations regarding any of the Plaintiffs he represented. Attached to each complaint was an exhibit listing the names of all of the Plaintiffs joining in the lawsuit. Although Boone has represented more personal injury plaintiffs than any other lawyer or law firm in this MDL (and perhaps more such plaintiffs than all other lawyers combined), Boone neither: (1) sought to become a member of the Products Liability Steering Committee; (2) appeared at numerous discovery hearings this Court has conducted during the pendency of this MDL regarding discovery in the products liability cases; nor (3) participated meaningfully in the litigation concerning the form of the template or standard paper discovery applicable to each personal injury case in this MDL. Rather, he has appeared or filed pleadings only to address issues which have arisen concerning his own cases.

On November 30, 2006, this Court ordered that: "the deadline for production of template discovery in any action pending before this Court as of November 30, 2006 shall be **January 15, 2007.** For all matters transferred to this Court after November 30, 2006, production must be completed within sixty days of the transfer date." Docket # 550 at 2 (emphasis in original). Boone has three cases pending in this district in this MDL: 05cv10834, 05cv10835 and 07cv11795. Two of these cases were opened in this district prior to November 30, 2006. For

these two, Boone did not comply with the January 15, 2007, deadline for template discovery. The third case opened on May 8, 2007, template discovery was due by July 8, 2007. Boone did not meet that deadline. In fact, as explained below, to date, he has failed to complete the paper discovery in his cases.

Subsequently, the Court required all plaintiffs' counsel to file a certification regarding each claim pending in the MDL. As part of the certification process, the plaintiffs' lawyers were required to meet individually with each client. Boone "failed to comply with the certification orders in a timely fashion" which required the Court to issue several orders to "force such compliance." Docket # 1500. In addition, Boone filed publicly on the docket various confidential information regarding his clients resulting in sanctions for Boone and possible harm to his clients. See Docket # 1664. As a result, the Court ordered Boone to inform all of his clients of his breach of their confidentiality and sanctioned Boone. Id.

Despite these sanctions and orders, the pace of the Boone cases has not matched the pace of the rest of the cases pending in the MDL. On June 9, 2010, this Court noted that virtually all of the other cases in the MDL (with the exceptions of Boone's cases and those cases brought by the Schwartz law firm) were on track to complete common discovery (that is both the template paper discovery and the basic fact depositions) by the fall of 2010, and would then be ready to transfer back to the filing court. Docket # 2839. Fifteen of Boone's Plaintiffs were within this group of cases.

On November 10, 2010, the Court directed the Parties to file a report detailing the status of all of the cases ready for transfer as of November 15, 2010 (which included fifteen of Boone's

plaintiffs).  The Plaintiffs' Steering Committee and the Defendants filed a Joint Report [1]

informing the Court of the status of all such cases.  According to this Report (Docket # 3129), of

the fifteen cases Boone had identified as belonging to this group, none were ready for transfer as

of November 15, 2010.  Of those fifteen cases in which Boone had neither dismissed the case

nor withdrawn, discovery remained incomplete.   In contrast, discovery was complete, with

minor exceptions, in all of the other cases listed.[2]  In short, virtually all of the other attorneys

prosecuted their cases to completion within the MDL, while Boone did not.

Regarding the rest of Boone's cases (i.e., excluding the fifteen noted above), on June 9,

2010, Boone represented two hundred and ninety-two plaintiffs.  Docket # 2839 at 1.  Before

transfer back to the Court of original jurisdiction, each case required the completion of paper

template discovery as well as the depositions of the plaintiff (or the plaintiff's representative),

the prescribing physician(s) and the sales representative(s) selling to these physician(s).  These

plaintiffs lagged "substantially behind all the other cases in this MDL,"  Id. at 2, even the

"medical authorizations and basic template discovery in the Boone" cases remained

"incomplete" as of June 2010.  Id. Boone proposed a schedule, joined in by the Defendants, that

contemplated fifteen days of depositions per month. Id. at 3.  Boone is a solo practitioner, as far

as the Court is aware.  The Court adopted the fifteen day proposal, but otherwise revised the

---

[1]  Boone filed no separate status report addressing his cases, nor an objection to the report submitted.  Thus, Boone is bound by this report provided by the Plaintiffs' Products Liability Steering Committee and the Defendants.

[2]  The exceptions were: six cases filed by the Schwartz law firm and cases awaiting rulings on motions to dismiss, cases in which the plaintiff was attempting to find alternate counsel, or in which there were other idiosyncratic circumstances affecting just a single case or a handful of cases (e.g., a plaintiff who is too ill to be deposed, or a plaintiff who could not be located).

schedule (e.g., by restricting it to a period of five months while the parties had requested no such limitation).  See Id. at 2-4.  In doing so, the Court ordered Boone:

1.  to produce the authorizations and other information required by Docket # 372 page 3 by July 7, 2010;

2. to report to the Court once per month, beginning July 10, 2010, regarding the status of discovery as to each of Boone's plaintiffs;

3.  to produce the template discovery for twenty plaintiffs by the first of each month and for twenty more plaintiffs by the fifteenth of each month, commencing on July 15, 2010 and continuing "until the production of the template discovery is complete."

4.  to engage in fifteen days[3] of depositions each month for the five months commencing with November 2010 with the depositions proceeding on a case-by-case basis so that beginning in December of 2010 the Court could return to the transferor courts three to five Boone cases each month.  The Court further ordered that when taking the deposition of one physician or sales representatives the parties should depose the person as to all Boone plaintiffs.  Given the close geographical proximity of all of Boone's plaintiffs, the record suggested that would result in efficient use of the parties', lawyers' and witnesses' time.

Docket # 2839 at 2-5.

The Court then cautioned Boone regarding the consequences of failing to comply with these orders and specifically warned him that a failure to comply could result in dismissal of his cases:

Resolving these cases will involve a substantial expenditure of resources by the Court, the parties and counsel.  **Counsel are warned that the failure to comply with the Court's Orders set forth herein my result in dismissal of the claims of a plaintiff or of case brought by counsel.  In light of the circumstances noted herein as well as Attorney Boone's previous failure to comply with governing rules and orders, the Court directs him to pay particular attention to this warning.**

Docket # 2389 at 6 (emphasis in original).

Boone promptly failed to comply with the Court's June Order.  His first case chart was "incomplete."  See Docket # 2886.  More significantly, he listed seventy-five cases in which he had failed to provide the required authorizations to the Defendants by the July 7, 2010, deadline.

---

[3]  The Order was for fifteen days of depositions, rather than fifteen depositions.

Id. at 2.  The Court ordered Boone to produce the authorizations by July 23, 2010, "or those cases will face DISMISSAL."  Id.  Subsequently, the undersigned recommended that the Court dismiss the claims of forty-seven of these plaintiffs when Boone failed to provide the authorizations, Docket # 3025.  The Court did so.  See Electronic Order of August 30, 2010.

In advance of the Court's December 1, 2010 Status Conference, Boone reported and represented to the Court that:

- "Plaintiffs have submitted to Defendant all medical records made available to them, additionally all Plaintiffs have submitted medical authorizations to Defendant."

- "All Plaintiffs have answered template discovery and in many instances have supplemented their answers so as to provide Defendant with all available information prior to their deposition."

- "[A]ll Plaintiffs have submitted a prescriber list to Defendant that indicates who [sic] respective prescribers."

Docket # 3134 at 3-4

At the December 1, 2010 status conference, Boone reiterated his general representations that his clients had produced all they know or possess.  Docket # 3179-15 at 6 ("we do disagree with the characterization that's been made. We have submitted template discovery responses and supplemented most of those").  The Defendants claimed otherwise.  To resolve this dispute between the Parties, the Court directed briefing on the matter.  Docket # 3141 at 2-3.  The Defendants filed a pleading identifying general problems affecting many or all of Boone's cases and identifying some individual instances of deficiencies.  Docket # 3177.  In further support of their motion, they filed various exhibits including: (a) a two-hundred-plus page exhibit identifying problems in each and every one of Boone's cases on a case-by-case basis; and (b) eight boxes of documents containing deficient discovery responses from Boone organized by

individual plaintiffs. Boone opposed. Docket # 3206. Even after reviewing the Defendants' claims, Boone has persisted in asserting that he had "completed" template discovery for all of his plaintiffs (excluding those cases in which the Plaintiff voluntarily dismissed or Boone withdrew as counsel) by no later than October 26, 2010. See Docket # 3219 (Boone's latest self-report on the status of template and other discovery filed January 9, 2011). The Court has now reviewed the Parties' respective filings and has found a disturbing failure to comply with the Court's discovery orders and a disturbing level of incomplete and/or non-compliant discovery from Boone's clients.

A.     **Boone has Failed to Make Himself Available for Depositions as Ordered by the Court.**

Boone has failed to proceed with depositions in accord with the Court's Orders (and to the degree he himself proposed to the Court). On October 25, 2010, as required by the Court's June 9, Order, the Parties informed the Court of the names of the witnesses to be deposed during the required fifteen days of depositions in November of 2010. Docket # 3110. In November, a number of depositions did not go forward as Boone claimed that the dates proposed by the Defendants were not "practical," and Boone appeared for depositions on less than fifteen days in November. Docket # 3134. Thus, although Boone had proposed to the Court that he perform fifteen days of depositions per month, and although the Court had ordered fifteen days of depositions per month (for a period of five months) and Boone had joined in a filing representing to the Court that he would be participating in fifteen days of depositions per month in November, he then nevertheless failed to take part in fifteen days of depositions. See Docket # 3132 (noting Boone's failure to confirm deposition dates in November).

Unfortunately, this pattern has continued. For December, the Defendants requested leave of Court not to proceed with the depositions due to alleged deficiencies in Boone's discovery responses. See Docket # 3132. Following a December 1, 2010, status conference, the Court rejected this request and reaffirmed its order that "[d]epositions in the Boone Law Firm cases . . . shall proceed at the pace of fifteen days per month respectively. If either side seeks relief from this requirement they shall file a motion with the Court." Docket # 3141 at 3. No such motion has been filed. Yet, Boone told defense counsel he was available to take depositions for only seven days plus one afternoon in December. Docket # 3179-8. Notably, Boone agreed to the deposition of one person, Elizabeth Knight, whom the Defendants subsequently learned had died almost three years prior. Docket # 3177 at n. 5.

Similarly, in January, 2011, Boone has also declined to make himself available for fifteen days of depositions – the month has twenty business days (excluding weekends and federal holidays) and Boone indicated that he was unavailable on seven of these twenty days, with the result that he cannot possibly comply with the Court's ordered fifteen days of depositions. Id.

**B.** **In 2006, the Court Determined the Time Period Governing Template Interrogatory Responses, Boone Did Not Object, but Elected to Disregard the Rulings and Requested Information from his Clients Only for a Narrower Time Period Than Ordered.**

In 2006, the Court specifically overruled objections from various plaintiffs' counsel regarding the time period for the identification of certain medical providers. Docket # 372. The Court rejected the proposed "5 years since Neurontin" or "10 years since incident" limits proposed by the Plaintiffs (See Docket # 334 at 19-20) and required the Plaintiffs to identify all

mental health providers and twenty years of all medical providers.  Docket #372 at 6 (overruling objections to the time periods in Interrogatory Nos. 10, 12).

Boone used his own form to obtain information from his clients.  The form he developed requested information from Boone's clients only for the period of time Plaintiffs had originally proposed as the relevant time (the 5-year/10-year periods).   See, e.g., 2008 Interrogatory Responses from Larry Vail, JoAnn Walls, Shirley Walters.  When Boone supplemented these responses in 2010, the interrogatory questions he provided contained the very same time limitation sought by the Plaintiffs in 2006 and rejected by the Court at that time.   See, e.g., 2010 Interrogatory Responses from Larry Vail, JoAnn Walls, Shirley Walters and Della Washington. While Boone now asserts, in a simple conclusory pleading that he adopts under oath, that the answers provided were rendered "without regarding to [sic] time limitation," (Docket # 3206 at 4), the questions Boone put to his clients in writing speak for themselves.

Similarly, in 2006, the Court also overruled the Plaintiffs' objections to the applicable time period for the Defendants' Template Interrogatories numbered 14 and 24.  Docket #s 372, 334.  Nonetheless, Boone responded to the Interrogatories only for the shorter time period the Plaintiffs failed to obtain.  See, e.g., 2006 and 2010 Interrogatory Responses of Larry Vail, Eddie Vail, JoAnn Walls, Shirley Walters, and Della Washington.[4]

Unsurprisingly, in light of these deficiencies, Boone has in some cases failed to produce the names of any medical providers, while in other cases the names of only one or two providers have been provided.

---

[4]  Defendants assert that these interrogatories are not the only interrogatories in which Boone disregarded the Court's rulings and sought insufficient information from his clients.  See also Interrogatory Nos. 2, 3, 5, 6, 12, and 13.

Boone defends his answers by asserting that he has produced prescription records containing all of the information the Defendants need. The Court's review reveals that Boone has produced, in some cases, printouts of prescription records relating to his clients. However, these records do not encompass the entire time period called for by the interrogatory questions.

Given this evidence, the Court concludes that in no case has Boone complied with his template discovery obligations regarding medical providers. The nature and scope of the defects identified both in individual cases and in the process Boone employed to gather the information infect the responses of each and every plaintiff he represents. [5]

### C. Boone Disregarded and Disobeyed the Court's Clear and Settled Discovery Rulings Regarding Disclosure of Medical Records

Boone has also failed to comply with the Court's required template discovery requiring each plaintiff to produce "copies of all of the medical records currently in their possession and [to] supplement the production as they receive medical records in the future." Docket # 372. First, in approximately one hundred cases Boone produced less than twenty pages of medical records. In another one hundred and eighty cases, Boone produced less than one hundred pages of medical records. These numbers are substantially lower than the number of pages produced

---

[5] To say, as Boone does, that a "Medical Provider List has been provided on behalf of each active plaintiff" is not a meaningful response to the objections raised by the Defendants. Moreover, out of all of the Plaintiffs Boone represents, he identified by name only three who listed more than six medical providers and identified by name only three more Plaintiffs listing between two and six providers in their discovery responses. Accordingly, the responses are facially defective. All of the Plaintiffs suffer from serious medical problems and those that have been deposed revealed additional providers. The law does not require the Court to turn a blind eye to reality and accept the facially incredible discovery responses nor does the law require the Court to review the boxes of discovery responses produced by Boone to search for cases in which Boone identified more providers when Boone has not done so.

by the other plaintiffs' counsel in this MDL, whose clients brought the same type of Neurontin suicide-related injury claims as Boone's clients.

Second, the depositions taken to date confirm the deficiency in the production of records. Boone's clients have admitted to the possession of medical records not produced (Docket # 3179-9 at 9-13), admitted to the destruction of medical records (by throwing away prescription slips) after the filing of this lawsuit (Id. at 20), and conceded that neither Boone nor anyone else from his office ever told the plaintiff to preserve medical records. (Docket # 3179-10 at 10). Boone, at one of the depositions, attempted to use mental health records that he had failed to produce as required. Docket # 3197-7 at 172-175.

Third, in the face of this evidence, Boone makes a conclusory representation, albeit under oath, that each Plaintiff has produced "all of the medical records currently in their possession." Docket # 3206 at 2. No other response is provided and the Court does not credit this assertion. Rather, the Court finds that Boone has: (1) failed to advise his clients to preserve and to produce medical records in their possession; (2) failed to obtain from his clients all of the medical records in their possession; and (3) failed to produce all medical records in his possession.

One further point bears note here. Boone contends that "[i]t does seem to be a waste of time and resources for Plaintiffs to provide additional medical records to the Defendants and for the Defendant to gather the records also." Docket # 3206 at 22. The Court ordered each Plaintiff (represented by Boone or otherwise) to produce all the relevant medical records in his/her possession and to supplement that production in the future. Boone and his clients must comply with that Order or seek relief from it. Boone may not decide for himself what is the

most "efficient" manner to litigate his cases without regard to the orders of the Court and then proceed to do what he believes most efficient, in blatant disregard of the Court's Orders. Moreover, gathering medical records, even "armed" with medical authorizations, is not necessarily an easy task. Having copies of medical records provided by each Plaintiff, along with a diligently-prepared list of medical providers, substantially speeds the process and lowers the burden with only minimal effort from the Plaintiff.

Accordingly, the Court concludes that Boone's disregard and disobedience of the Court's orders infects the production of medical records by each and every Plaintiff represented by Boone.

### D.   Boone Has Failed to Obtain Non-medical Authorizations From His Clients As Ordered by the Court

In Discovery Order Number 2, the Court ordered all products liability plaintiffs to:

(1) produce [relevant documents that are in the possession of educational or governmental entities] in their possession that are responsive to Defendants' requests, as established by the Court's rulings below, (2) provide to Defendants a list that identifies all of the entities that are, or were, in possession of such documents, to the best of Plaintiffs' knowledge; and (3) produce appropriate release forms to the Defendants. Any documents that are in the possession of a Plaintiff's counsel or former counsel shall be produced to the Defendants directly by Plaintiff, rather than by way of a release.

The other plaintiffs' counsel in this MDL have routinely complied with the Court's Order. However, the Defendants contend that many Boone plaintiffs have failed to produce either records or authorizations responsive to this Order and that the "vast majority" of Boone Plaintiffs have failed to provide authorizations for employment and education records. Docket #3177 at 19. Boone responds by essentially conceding that he has failed to obtain the required

authorizations from his clients, and says that he "believe[s] that most other authorizations have been submitted." Docket # 3206 at 3. He provides no citation for his assertion. Notably, this concession contradicts Boone's repeated assertions to the Court that he has completed template discovery. Moreover, in June of 2010, the Court ordered Boone to produce all such authorizations by July 7, 2010, or face dismissal of his cases, in light of Boone's failure to satisfy the original deadline for template discovery.

**E.    Boone Disobeyed the Court's Discovery Rulings and Refused to Answer Two Interrogatories That the Court Ordered Answered.**

In Discovery Order Number 2, the Court ruled, regarding Interrogatories Eight and Nine, that "Plaintiffs shall respond to the interrogatory as propounded." Docket # 372 at 6.[6] The Court issued this order over **four years ago**. Notably, Boone neither sought reconsideration of this Order, objected to or appealed from the Order, nor sought relief in any other way from the obligations imposed by the Order.[7] Despite this record, Boone objected to these interrogatories and nearly all of his clients refused to provide any response to these interrogatories beyond the objections. Boone's entire response to all of the Defendants' assertions of blank or evasive interrogatory responses (i.e., the issue regarding Interrogatories Eight and Nine as well as other complaints) is reproduced herein:

> Plaintiffs have provided their best answer to Defendants' interrogatory [sic] to the best of their memory and belief at the time the answer is given. Often Plaintiffs' answers are supplemented with more complete and additional answers. During depositions it is not

---

[6] These two interrogatories seek information regarding bank accounts and debts of the plaintiff. Docket # 334 at 16.

[7] The Court further notes that it does not recall a single discovery dispute regarding these two interrogatories since the Court's Order in June 2006 resolving the matter.

surprising that even more details to an answer given are solicited. The complaint of the
Defendants relating to Plaintiffs missing a prior address is hardly evasive and more akin
to a lapse in memory.

Docket # 3206 at 4.

Boone does not deny or explain his refusal to have his clients answer Interrogatories
Eight and Nine as ordered by the Court. He does not even attempt to explain how the objections
he authored as counsel, in these circumstances, warrant his clients declining to answer the two
interrogatories

F.     **Boone Provided A Canned, Non-Responsive Answer to Interrogatory
       Number Eleven On Behalf of Many of His Clients**

Interrogatory Eleven seeks specific descriptions of "any instances of psychiatric or
mental illness, suicide, attempted suicide, homicide or other violent behavior by Plaintiff or any
of Plaintiff's family members . . ." Many Boone Plaintiffs provided the following identical
response: "Abnormal thinking and suicidal ideation." [8] The answer itself is completely non-
responsive. It fails to identify any specific instances of illness and it fails to identify the person
or persons suffering. Moreover, no two plaintiffs, let alone a large number of plaintiffs, in good
faith, could possibly provide <u>identical</u> answers to this Interrogatory. Yet, Boone defends the
identical answers he provided. Boone's entire response to the Defendants' complaint about
these answers is:

Defendants complain that some Plaintiffs have indicated the same injury, i.e. abnormal
thinking and suicidal ideation. Obviously, only a limited number of injuries have passed the

---

[8] Some of Boone's plaintiffs began their response with the five words in the text and
then provided an additional response. For example, Plaintiff Josephine Jackson incorporated all
her medical records "that describe" instances of psychiatric or mental illness etc. Notably,
Jackson later denied participation in providing this answer. <u>See infra</u> at 18-19.

*Daubert* test in this case and suicidal ideation is one of the few injuries that Daubert [sic], so it should not be surprising that many Plaintiffs would have suicidal ideation as an injury.

Docket # 3206 at 4.

Boone's response, however, misses the point of the Defendants' objection. The Interrogatory does not ask each Plaintiff to list the name of the injury the Plaintiff claims – rather, it asks each Plaintiff to identify, with specific descriptions, certain types of illnesses or suicidal behavior engaged in by either the Plaintiff or family members. That Boone persists in this explanation for the identical interrogatory responses, at this late stage (after numerous deficiency complaints from the Defendants, a discovery conference, review of the Defendants' motion, preparation of his written response to the motion and at least the opportunity to consult with numerous other counsel in this MDL, including the Products Liability Steering Committee), leaves the Court with only two possible conclusions: either Boone simply does not understand this most basic interrogatory, or he has willfully chosen to have many of his clients provide identical non-responsive answers. In either case, an opportunity for further supplemental discovery would serve no purpose.

As another Court wrote, "a review of the responses reveal[ed] that they [were] canned responses obviously drafted by counsel and not the individual Plaintiffs. Such responses represent[ed] a blatant disregard for this Court's previous discovery Order." In re Family Dollar FLSA Litig., at *23, 3:08MD1932-MU, 2009 U.S. Dist. LEXIS 59165 (W.D.N.C.July 10, 2009). Accordingly, the Court dismissed the claims of the plaintiffs filing the identical responses. Id.

There is a further disturbing quality to Boone's handling of this interrogatory. Many Boone clients provided responses to this interrogatory earlier in this litigation in which they

wrote "N/A" or "None" in response to this interrogatory -- no doubt because earlier in the litigation Boone was pressing, on behalf of some clients, claims of injuries other than suicide or attempted suicide from the use of Neurontin.  Now Boone has "supplemented" these plaintiffs' answers with the canned answer noted.  For example, Elizabeth Knight, in 2007, responded, "None," but in 2010, the unsworn interrogatory response (a violation of Rule 33(b)(5)), advances the canned answer, incorporates unspecified medical records (without complying with Rule 33(d)), and then says Knight took "Neurontin for depression.  She got real mean while taking neurontin and talked about hurting family members."  Strikingly, Knight's 2007 disclosures give no hint of depression, referring only to doctors treating her for joint or heart problems and her answers deny any history of mental illness.  Moreover, Ms. Knight is the same Plaintiff described <u>supra</u> at 8 whom Boone offered to make available for a December, 2010, deposition despite the fact that she had died in approximately late 2007.  <u>See also</u> <u>infra</u> at 23-25 (describing Plaintiff Jackson disputing the accuracy of the 2010 interrogatory responses served under her name).  This type of large scale change in injury raises serious questions in the Court's mind under Fed. R. Civ. P. 11.

       **G.**     **Boone's Process for Gathering Information From His Clients Prevented Satisfactory Discovery Responses.**

Boone used a form document to respond to the template interrogatories in many cases.  As already noted, this form asks for less information than the Court ordered disclosed by placing time limits on some of the interrogatory questions.  <u>See</u> <u>supra</u> at 8-9.  The form suffers from additional problems.

For example, the form leaves space for the Plaintiff to identify only one person in response to Interrogatory Seven's query to identify "each person" with "knowledge of any facts relevant to this case." See, e.g., Eugene Smith 2008 Interrogatory Response. Similarly, it leaves room for only three mental health providers (Id., at Interrogatory Number Ten), three witnesses to any prescription taken by plaintiff (Id., at Interrogatory Number Fourteen) and one person with knowledge of Plaintiff's mental state in the seventy-two hours preceding a suicide attempt or death (Id., at Interrogatory Number Twenty-two). In those cases in which the form itself was not forwarded on to the Defendants and instead Boone produced a fully-typed response, the nature of the responses indicate that they were based on the same type of form, containing the same limitations. Thus, the brevity of the answers from Boone's clients is unsurprising.

### H.     Boone Disregarded Fed. R. Civ. P. 33 In "Supplementing" Interrogatory Answers

Boone has repeatedly represented to the Court that he has completed template discovery and that in the course of discovery he has provided supplemental responses to many interrogatory answers. The Defendants submitted to the Court eight boxes of documents containing the medical provider lists and interrogatory responses for all of Boone's clients. Those plaintiffs that supplemented their original answers from 2007 or 2008 with further answers did so in 2010. The Court has reviewed a random selection of the responses by reviewing at least two separate 2010 supplemental interrogatory responses from each of the eight boxes.[9] None of these supplemental responses bear the signature of the plaintiff answering the

---

[9] The Court reviewed the 2010 Supplementary Interrogatory Responses for the following plaintiffs: Creswill, Memye; Everett, Gregory; Garrett, Estate Aliece; Grinston Fannie; Hardy, Tommy; Hong, William; Hoover, Ruby; Lepard, Dawn; Livingston, Mickey; Newsome, Mabel; Perez, Sharon; Smith, Eugene; Spencer, Bennie; Vail, Larry; and Walls, Joan.

interrogatories. The Rule requires that each interrogatory be answered "under oath." Fed. R. Civ. P. 33(b)(3). Indeed, the supplemental responses contain no signatures whatsoever, that is no one has attested under oath to the answers. All they contain is a certificate of service bearing Boone's signature. Rule 33 requires more. Rule 33(b)(5) provides: "The person who makes the answers must sign them, and the attorney who objects must sign any objections." Boone failed to comply with both aspects of this rule. The signature of counsel, of course, represents the attorney's certification of compliance with various discovery obligations. See Fed. R. Civ. P. 26(g)(1).

This is not a case in which a party served interrogatory responses and has merely failed to produce signed copies in a timely fashion. One example suffices. Interrogatory number 11 asks plaintiffs to "describe any instances of psychiatric or mental illness, suicide, attempted suicide" by the Plaintiff or the Plaintiff's family members. In 2008, Plaintiff Josephine Jackson responded "N/A (none of my family members have seek/need any of the above services." Jackson signed her handwritten responses, under oath, on April 18, 2008. Jackson's 2008 Interrogatory Responses. Boone produced for Jackson a supplemental response in 2010 that contained the following answer to Interrogatory number 11:

> Abnormal thinking and suicidal ideation. Further Plaintiff incorporates all medical records produced and to be produced that describe any instances of psychiatric or mental illness, suicide, attempted suicide, homicide or other violent behavior by Plaintiff.

> Jackson 2010 Interrogatory Responses.

---

Boone served these responses on August 22, 2010.  Notably, the answers are unsigned (i.e., neither Jackson nor anyone else signed for the answers and Boone failed to sign for the objections).  At Jackson's deposition on January 7, 2011, the following exchange occurred:

Q: Now, in response to the – the new set that we got today, it says that, as far as you are concerned, for you, that you had abnormal thinking and suicidal ideation.  Did you have suicidal ideation?[10]

A: I don't know who put that there, because I did not tell nobody that.

Q: Do you did not have suicidal ideation when you were taking Neurontin?

A: No.

Docket #3258, Ex. C at 113:17-114:7.

On this record, the unsigned interrogatory answers raise a serious issue under Rule 11.

## I.    Boone Has Improperly Cross-Referenced Answers

Interrogatory Number Twenty-Two asks for the name and address of "any individuals who may have had contact with Plaintiff or would have knowledge of his/her behavior or mental state, in the 72 hours immediately preceding his/her suicide attempt or death."  One representative example of improper cross-referencing occurs in the case of Jacquelyn Posey.  In 2010, the response to this interrogatory for Posey was "See Plaintiff's answer to interrogatory no. 4 and 12 herein," thereby suggesting she had attempted or committed suicide or otherwise died.  Interrogatory Number Twelve asks for the identification of health care professionals consulting with Plaintiff over the past twenty years, so by definition the answer would differ.  In

---

[10]    The Court has omitted the prior question and the brief preface to this question both of which refer to Jackson's initial 2008 answer to Interrogatory No. 11.

this case, Posey answered by referenced to her "Medical Providers List" which identified doctors treating for various periods. Nothing in the list would give the Defendants a clue as to which, if any, had knowledge of the seventy-two hours about which Interrogatory Number Twenty-Two asks. Interrogatory Number. Four asks for the names of the ten persons to whom the Plaintiff was closest over the past ten years. Posey's response lists an address without a name and the words, "[t]o be supplemented," hardly an informative answer to Interrogatory Number Four, let alone to Interrogatory Number Twenty-Two. This type of improper cross-referencing is simply evasion of a party's obligation to answer truthfully the interrogatories approved by the Court.[11]

See also Delores Powell 2010 Interrogatory Responses (same cross-referencing although Answer Number 4 provides an actual answer); Janice Primer 2010 Interrogatory Responses (same).

J.      **The Defendants Have Established That Boone's Responses to the Template Discovery Are Deficient in Every Case and Boone Has Not Rebutted This Showing.**

At the December 1, 2010 Status Conference, Boone suggested that resolution of the Defendants' discovery complaints would require that the Court examine the Defendants' assertions of inadequate responses on a plaintiff-by-plaintiff basis. Docket # 3179-15 at 6. The Court then stated that the Defendants should outline cases they were "dissatisfied with, the

_____

[11]   A comparison of Posey's original 2008 with her 2010 answers illustrates another problem. In 2008, she answered as to Number Twenty-Two, "N/A." and as to Number Eleven (regarding instances of mental illness or suicide attempts) she likewise answered ,"N/A," thereby suggesting that she had no mental illness or history of suicide attempts. In 2010, as to Number Eleven, she explained "Abnormal thinking and suicidal ideation." In short, she provided the canned response already noted supra, in addition to her evasive responses regarding the names of persons with knowledge any suicide attempts or death.

general law, case by case each one, and then you'll (i.e., Boone will) respond with the general law and then a case-by-case response." Id.  The Defendants complied with this Order.

The Defendants contend that the individual responses of Boone's Plaintiffs are deficient in a variety of additional individual ways and in support thereof they have filed a two-hundred page Appendix describing alleged deficiencies in each Plaintiff's template discovery responses, and supported by the interrogatory responses and medical provider lists from each of the Plaintiffs.  Boone, however, has not responded to the Defendants' submission on a case-by-case basis except as to the a few plaintiffs for whom he conducted depositions in November.

Boone's limited case specific response consists of the general assertion that many of the deficiencies identified by the Defendants are not material and the reprinting in the text of his memorandum of some of the interrogatory responses these plaintiffs provided.   As already noted, the 2010 supplemental responses are irrelevant as no plaintiff signed a response.  In any event, the case specific responses only highlight the degree of Boone's non-compliance.  For example, Shirley Drennan's entire response to Interrogatory No. 11's inquiry regarding, inter alia, "any instances of psychiatric or mental illness" was a one paragraph description of two suicide attempts (for one of which no date or year was identified).  Docket #3206 at 6. Elsewhere in her responses, she made some brief reference to depression in describing the assistance provided by one or two medical providers, however, her response to Interrogatory No. 11 contains no description whatsoever of her history of depression.  At her deposition, the following exchanged occurred:

Q: Okay.  When was the first time that you had gone to a mental institution prior to January of 2001?

A: I can't remember the year, but I was sent to Willow Brook and they diagnosed me with major depression.

Drennan Deposition at 158.

Drennan further testified that she stayed for two weeks at Willow Brook and that she stayed there two times. Nowhere in her interrogatory answers did Drennan make a reference to Willow Brook, the diagnosis of depression or the circumstances giving rise to her two-week hospitalization. Several different interrogatories required Drennan to provide information about these events. See Interrogatory No. 7 (names of persons with knowledge of relevant facts); No. 10 (names of psychiatrists, psychologists, therapists etc. treating Plaintiff and the name of the facility at which treatment occurred); No. 11 (describe instances of psychiatric or mental illness); No. 12 (name the health care facilities providing mental or physical treatment to Plaintiff).

The failure to disclose Drennan's prior treatment at Willow Brook is a significant material omission and the natural and inevitable outcome of the process Boone employed to respond to the interrogatories. Similar issues arose in other depositions. Plaintiff Duvall, for example, revealed in her deposition suicide attempts not previously described in her interrogatory responses. Plaintiff Scott revealed numerous medical providers in her deposition not previously identified in her interrogatory responses.

In short, notwithstanding Boone's assertion to the contrary or the reprinting of selected interrogatory responses, the cases in which depositions occurred also suffer from the same specific and general problems described above. Moreover, although the Court has not made an individual review and determination of each of Boone's nearly three hundred cases, in the present circumstances, that is unnecessary. The Court has before it substantial and unrebutted

evidence of deficiencies in the discovery responses in individual cases and the identified

problems along with the deficiencies in the process employed by Boone warrant the conclusion

that all the discovery responses are deficient.  In addition, the Court has the unrebutted detailed

recitation of problems in each and every one of Boone's cases.

II.     DISCUSSION

<u>Applicable Standard</u>

      <u>Dismissal for Failure to Prosecute</u>

      The authority of a federal trial court to dismiss a plaintiff's action with prejudice because

of his failure to prosecute is well-established and is necessary in order to prevent undue delays in

the disposition of pending cases and to avoid congestion in the calendars of the District Courts.

<u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 629-630 (1962).  Fed. R. Civ. P. 41(b) provides in

relevant part that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any

order of court, a defendant may move for dismissal of an action or of any claim against the

defendant."  Fed. R. Civ. P. 41(b).  The sanction of dismissal with prejudice for want of

prosecution, however, is a "unique and awesome one, foreclosing forever a plaintiff's

opportunity to obtain judicial redress."  <u>Pomales v. Celulares Telefonica, Inc.</u>, 342 F.3d 44, 48

(1st Cir.2007).  Disposition on the merits is favored.  <u>Id.</u>, citing <u>Ortiz-Anglada v. Ortiz-Perez</u>,

183 F.3d 65, 66-67 (1st Cir.1999)(describing dismissal with prejudice for failure to prosecute as

"drastic").  Accordingly, fairness dictates that some limits be placed on the use of dismissal with

prejudice for want of prosecution.  <u>Pomales</u>, 342 F.3d at 48, <u>citing</u> <u>Velazquez-Rivera v. Sea-</u>

<u>Land Serv., Inc.</u>, 920 F.2d 1072, 1076 (1st Cir.1990).  "Dismissal with prejudice for failure to

prosecute is appropriate in the face of 'extremely protracted inaction (measured in years),

disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance.'" Id., citing Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2369 (2d ed.1995). "Where a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal." HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 918 (1st Cir.1988).

Boone's conduct in this case merits dismissal under Rule 41(b). He has repeatedly failed to complete template discovery despite repeated opportunities and despite repeated orders to do so. He has failed to make himself available for depositions. He has failed to solicit from his clients the information the Court ordered his clients to provide in the template interrogatories. He has failed to learn (or inform the Court and parties) of the death of at least one client three years ago. None of the supplemental interrogatory responses from 2010 are valid as none are signed at all, let alone under oath. Thus, in essence, he has not moved his cases forward despite the June order.

Dismissal As a Sanction

Fed. R. Civ. P. 37(b)(2)(A) provides in relevant part that "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include the following: . . . (v) dismissing the action or proceeding in whole or in part." "Discovery orders, other pre-trial orders, and, indeed, all orders governing the management of a case are enforceable under pain of sanction for unjustifiable violation." Barreto v. Citibank, N.A., 907 F.2d 15, 16

24

(1st Cir.1990). Sanctions are necessary not only to punish parties or counsel for dilatory actions or inaction, but also to deter others from similar conduct. Id. (citing Damiani v. Rhode Island Hospital, 704 F.2d 12, 16 (1st Cir.1983))(affirming dismissal under Rule 37 where there was willful disobedience of the court's order, and plaintiff's attorney also "arrogated control of discovery to himself and changed the date of compliance to suit his own convenience and that of his client").

A non-exclusive list of factors relevant to a District Court's exercise of discretion in dismissing a case with prejudice as a discovery sanction includes: the severity of the violation; the legitimacy of the party's excuse; repetition of violations; the deliberateness vel non of the misconduct; mitigating excuses; prejudice to the other side and to the operations of the court; and the adequacy of lesser sanctions. Malot v. Dorado Beach Cottages Associates, 478 F.3d 40, 44 (1st Cir.2007) (citing Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 5 (1st Cir.2006)).

 "Dismissal with prejudice is a harsh sanction, which should be employed only when a plaintiff's misconduct has been extreme and only after the district court has determined that none of the lesser sanctions available to it would truly be appropriate." Malot, 478 F.3d at 44 (quoting Estate of Solis-Rivera v. U.S., 993 F.2d 1, 2 (1st Cir.1993)). The disregard of court orders qualifies as extreme behavior. Id.; See also, In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d. 1217 (9th Cir.2006)(dismissing certain plaintiffs' cases with prejudice as Rule 37 sanction for failure to comply with MDL's Case Management Orders).[12]

---

[12]The First Circuit has noted that the argument that an attorney's sins should not be visited on his client is a seductive one, it is nevertheless "overborne by the nature of the adversary system" because a plaintiff has voluntarily chosen an attorney "as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative

The facts speak for themselves in this case. Further opportunities to complete discovery or to comply with the Court's prior orders would serve no purpose. Boone has repeatedly ignored and disregarded the Court's discovery orders. The Court has repeatedly given Boone opportunities to cure prior deficiencies with additional time and nothing has changed. The template discovery in Boone's cases remains incomplete and undone. In the course of not completing the discovery, Boone has violated numerous Court orders. The judicial effort and resources of the Parties that Boone's cases have consumed is substantial. No sanction less than the dismissal would be appropriate on this record. The behavior has been extreme, over an extended period of time.

---

litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." Damiani, 704 F.2d at 16 (citing Smith v. Ayer, 101 U.S. 320, 326 (1879).

III.    CONCLUSION

For the foregoing reasons, I RECOMMEND that the Defendants' Motion to Compel and For Sanctions (Docket # 3176) be ALLOWED, and that each case in which the Plaintiff is represented by Attorney Levi Boone (i.e., 05-cv-10834, 05-cv-10835 and 07-cv-11795) be DISMISSED pursuant to Fed. R. Civ. P. 41(b), for failure to prosecute and failure to comply with Orders of the Court, and pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v), as a sanction for failure to obey Orders to provide discovery.[13]


/s/ Leo T. Sorokin
LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE

---

[13] The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).