EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
:  MDL Docket No. 1629
In re:  NEURONTIN MARKETING,   :
        SALES PRACTICES AND   :  Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION   :
:  Judge Patti B. Saris
------------------------------------------------------------x
:  Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:   :
:
*Hamilton v. Pfizer Inc., et al.*   :
Case No. 1:10-cv-11023 PBS   :
:
------------------------------------------------------------x

**[PROPOSED]
REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL DEFENDANTS JANSSEN ORTHO LLC,
ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.,
JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &
DEVELOPMENT, L.L.C. AND JOHNSON & JOHNSON TO PRODUCE DISCOVERY**

Plaintiff, by the undersigned counsel, respectfully replies to Defendants' opposition to Plaintiff's motion to compel Defendants Janssen-Ortho LLC, Ortho-McNeil-Janssen Pharmaceuticals, Inc., Johnson & Johnson Pharmaceutical Research and Development, L.L.C. and Johnson & Johnson (Defendants) to produce discovery regarding the sales and marketing of Defendants' Topamax that is responsive to Plaintiff's October 7, 2010 Request for Production.

**PRELIMINARY STATEMENT**

On February 1, 2011, the parties discussed potential resolution and/or withdrawal of Plaintiff's current motion.[1] The parties did agree to resolve Plaintiff's Document Request # 37

---

[1] Defendants state that Plaintiff did not confer or attempt to resolve this matter in good faith prior to the filing the instant motion. ECF Doc. # 3255 at 4. However, Defendants admit that there was an e-mail exchange regarding Defendants' response to Plaintiff's Request for Production, and that Plaintiff's counsel raised the issue during a telephone conference between the parties. *Id.* Unfortunately, when Plaintiff's counsel broached the subject and indicated Plaintiff's willingness to narrow the requests for production with defense counsel, we understood that defense counsel had rebuked the offer, was adamant that Plaintiff's requests were "overbroad, irrelevant and burdensome" and that Defendants were not willing to produce additional marketing documents other than what was

1

regarding "custodial files of Defendants' employees whose job responsibilities include sales and/or marketing of Topamax" inasmuch as Defendants have agreed to identify a limited number of custodians for the time period 2001-2008, and the parties will then confer over the production; the manner of production and whether cost-sharing is applicable. If unable to reach agreement, the parties will seek intervention of the Court.

However, the parties reached an impasse on Plaintiff's Document Request # 30 regarding Defendants' "Doctor-for-a-Day" Program. The parties also did not reach a resolution on Plaintiff's Document Request # 32 regarding aggregate prescription data in terms of scope of production. In light of the above, Plaintiff withdraws without prejudice that portion of the within motion pertaining to Plaintiff's Request for Documents # 37. Consequently, this Reply is limited to the discovery encompassed by Document Requests ## 30 and 32 and Defendants' argument as to cost-sharing.

**ARGUMENT**

1. **Defendants Had a Heightened Duty to Warn of the Risks Regarding Off-Label Use When Defendants Illegally Marketed Topamax for Off-label Uses, Regardless of Whether There Are Allegations of Fraud in Plaintiff's Complaint.**

Defendants are conflating two separate issues in their opposition papers. Presently, Plaintiff is not claiming that Defendants committed fraud in this case; therefore, the fact that Plaintiff's decedent's physicians have not yet been deposed is simply an irrelevant issue. If, and/or when, discovery were to reflect Defendants' direct fraudulent contact with the doctor (a direct nexus), then Plaintiff would interpose the appropriate motion to request leave from this Court to amend Plaintiff's pleadings to assert a claim for fraud.

---

provided in other Topamax cases or which pertained to case-specific sales representatives who may have detailed decedent's Topamax prescriber.

Plaintiff is claiming that Defendants were negligent and reckless because they had knowledge that there would be an increase in overall physician prescribing for off-label uses that were not approved by the FDA due to their illegal marketing for such uses (e.g., Doctor-for-A-Day Program); yet Defendants failed to adequately monitor the safety of their drug particularly for these off-label uses. Defendants aptly point out in their opposing papers that the U.S. Government's Information covered Defendants' off-label promotion period from January 2001 to November 2003, prior to when Plaintiff's decedent began ingesting Defendants' drug Topamax. ECF Doc. # 3255 at 12. Plaintiff claims that if Defendants had not breached their duty of care during that period and subsequently, and instead had established adequate pharmacovigilance and monitoring of these off-label uses, then Defendants would have or should have discovered the increased risk for suicidality from the ingestion of their drug Topamax in regard to these off-label uses. Thus, Defendants were obligated and had a heightened duty to adequately warn Plaintiff's decedent or his treating physician of the increased risk of suicidality due to Topamax prior to Derrick Hamilton's first ingestion of Topamax, which was prescribed for an off-label use.

This Court has already found that national marketing documents relating to off-label marketing are relevant to Plaintiff's negligence, failure-to-warn, and negligent pharmacovigilance claims against Defendants. *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 114 (D. Mass. 2009). Judge Patti B. Saris clearly noted in her May 26, 2009 opinion that a pharmaceutical manufacturer is mandated to monitor their drugs and with emphasis in the postmarketing phase:

> The Supreme Court has recently recognized that "manufacturers have superior access to information about their drugs, especially in the postmarketing phase as new risks emerge." *Wyeth v. Levine*, 129 S. Ct. 1187, 1202, 173 L. Ed. 2d 51 (2009) (holding that the FDA's drug labeling regulations do not preempt

3

> state law tort suits).  "After the FDA approves a drug, the manufacturer remains under an obligation to investigate and report any adverse events associated with the drug." *Id*. at 1219.  *See generally* 21 CFR § 314.80 (placing responsibility for post-marketing surveillance on the manufacturer).

618 F. Supp. at 109-10.

In no way did Judge Saris limit a pharmaceutical manufacturer's heightened duty to warn of the increased risk of suicidality only to Plaintiffs and their physicians who are the direct targets of the off-label marketing of a drug as Defendants suggest (ECF Doc. # 3255 at 11):

> Based on the reasoning of this caselaw, the Court concludes that a manufacturer of a pharmaceutical has a duty to disclose to physicians and patients material facts about the risks of the drug, <u>particularly when it is engaged in off-label marketing</u> for uses not approved by the FDA, if it knows that the plaintiff and/or his prescriber does not know or cannot reasonably discover the undisclosed facts.

618 F. Supp. at 110 (emphasis added).  Here, Defendants' actions fall squarely within Judge Saris's opinion, and so discovery of Defendants' off-label marketing, even if not directly to decedent's prescriber, is relevant to Plaintiff's causes of action.

   **2. The Aggregate Prescription Data Will Demonstrate Defendants' Negligence, Motive and Reckless Conduct:  That Defendants Had Knowledge That Substantial Amounts of Topamax Were Being Prescribed for Off-Label Uses Not Approved by the FDA Due to Their Successful Illegal Off-Label Marketing; Yet Defendants Failed to Perform Adequate Pharmacoviglance and Warn Physicians and Patients of the Risks of Ingesting Topamax for Such Unapproved Uses.**

Judge Saris emphasized that when a pharmaceutical company markets a drug for uses that are not approved for the FDA, the company has a heightened duty to warn and adequately disclose to physicians and patients (who have no way of discovering) the risks for such uses, *supra*.  While off-label prescribing by physicians is not itself improper, a manufacturer with knowledge of both extensive off-label use and material facts about risks inherent with taking the drug (e.g., depression and suicide) has a duty to take action.  Pursuant to Rule 26(b) of the Federal Rules of Civil Procedure, a party may seek discovery of "any non-privileged matter that

4

is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Plaintiff refers the Court to her moving papers, which detail that the documents Plaintiff has demanded will serve to demonstrate that Defendants were on notice of both the risks of depression and the substantial off-label use of Topamax. Thus, Defendants' marketing documents are probative of Defendants' negligence. Moreover, Defendants' illegal off-label marketing is relevant and will serve to demonstrate Defendants' reckless conduct and motive: that Defendants established and implemented a well-planned illegal off-label marketing scheme to increase their bottom line from the off-label uses of Topamax, while at the same time Defendants failed to establish and implement adequate pharmacovigilance to monitor the adverse effects of the off-label usage and in total disregard for the safety of those consuming their drug Topamax for said usage. The marketing documents also are relevant to Defendants' state of mind. In essence, rather than complete the arduous and expensive process of making the proper application to the Food and Drug Administration for approval of the off-label indications, Defendants instead made the conscious decision to embark on a profit-driven illegal off-label marketing campaign without any regard for the health or safety of off-label users.

3. **Plaintiff's Request For Aggregate Prescription Data From Third Parties Regarding Topamax Prescriptions After the Date of Plaintiff's Decedent's Ingestion Is Relevant to Defendants' Motive.**

Defendants state that Plaintiff's request for the production of aggregate prescription data from third parties regarding Topamax through October 7, 2010, years after the drug was prescribed in this case, is not relevant. ECF Doc. # 3255 at 13. Aggregate prescription data from both before and after decedent's ingestion of Topamax is probative of numerous issues: (1) data from the time-period before decedent's ingestion, but during Defendants' illegal off-label promotion period, may demonstrate increased prescriptions consistent with Defendant's illegal

marketing efforts; (2) data from the time period after the date of the January 31, 2008 FDA Alert and subsequent changes to the package insert for Topamax will serve to demonstrate how the FDA Alert since 2008, and/or Defendants' bolded suicide warning since 2009 affected the prescribing practices of physicians (i.e., whether prescriptions for Topamax decreased.)[2]  A decrease in prescriptions would reflect evidence that a heightened warning influenced prescription practices, and such evidence would corroborate Plaintiff's argument regarding Defendant's profit-based motive not to enhance their warning while at the same time promoting Topamax for unapproved uses.

### 4. Defendants' Have Not Met Their Burden in Order to Shift the Cost for the Discovery Requested.

The presumption under the Federal Rules of Civil Procedure is that the producing party bears the cost of complying with the discovery requests.  A court may shift the burden of the cost to the requesting party only in the event that the discovery request seeks information not reasonably accessible and to prevent undue burden and expense. Fed. R. Civ. P. 26(b)(2)(B)(C); *Moore's Federal Rules Pamphlet*, Lexis/Nexis 2011); *Peskoff v. Faber,* 251 F.R.D. 59, 61 (D.D.C. 2008) (holding cost of forensic search for e-mail and other electronic records in response to discovery requests does not represent burden or expense so undue as to justify shifting to plaintiff as requesting party); *see also Expedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,* 309 F. Supp. 2d 459, 465-67 (S.D.N.Y. 2003) (holding cost-shifting not required despite the fact that discovery requests would cost $400,000 inasmuch as responding party was worth $5.7 billion and potential damages in the case also exceeded $68 million).

---

[2] Upon information and belief, manufacturers of the generic form of Topamax were granted approvals to market generic Topamax by 2009 and so to the extent Defendants' aggregate data for Topamax includes the generic form (i.e., Topiramate), such data is encompassed by Plaintiff's discovery request.

6

The case law and the rules are clear that the party asserting the "unduly burdensome" objection to a discovery request has the burden to demonstrate: (1) not only the undue burden or expense, but (2) that expense is unreasonable in light of the benefits to be secured from discovery. *Hagemeyer N. Am., Inc., v. Gateway Data Scis. Corp.,* 222 F.R.D. 594, 602-03 (E.D. Wis. 2004) (holding order shifting costs of production in response to discovery request should only issue when request truly threatens to subject responding party to undue burden or costs).

Seven different factors used by federal courts to determine whether cost-shifting measures are appropriate, known as "The Zubulake Factors," include the following: (1) the extent to which request is specifically tailored to discover relevant information; (2) availability of such information from other sources; (3) total costs of production, compared to amount in controversy; (4) total costs of production, compared to resources available to each party; (5) relative ability of each party to control costs and its incentive to do so; (6) importance of issues at stake in litigation; and (7) relative benefits to parties of obtaining information. The factors are weighed in descending order of importance, not equally. *Zubulake v. USB Warburg, LLC,* 217 F.R.D. 309, 322 (S.D.N.Y. 2003); *Hagemeyer,* 222 F.R.D. at 602-03; *Expedior*, 309 F. Supp. 2d at 465-66.

Such factors weigh in favor of Plaintiff in the instant case. In regard to the first factor, as noted in Plaintiff's moving papers and the Information, *supra*, the documents in question are extremely relevant to Plaintiff's claims that, *inter alia,* Defendants were negligent, and that Defendants' conduct was reckless in placing the profit motive over safety by establishing the illegal off-label marketing scheme to increase their bottom line over establishing adequate pharmacovigilance procedures to assure the safety of those ingesting Topamax for off-label

indications. As to the second factor, the documents and/or information that Plaintiff has requested is not available from other sources other than Defendants.

As to the third factor, in their opposition papers, Defendants have expressed a willingness to discuss production of third party prescribing data [ECF Doc. # 3255 at 6]; the production of documents of sales representatives who actually contacted Dr. Sloan [ECF Doc. # 3255 at 15]; and note that Plaintiff previously received training materials for sales representatives in the concurrent litigation [ECF Doc. # 3255 at 6]. Although Defendants have previously produced training materials in the concurrent litigation, that litigation does not concern an off-label use of Topamax – marketing/training documents concerning Defendants' illegal off-label marketing documents have not been produced. Defendants aver that to collect and review the documents responsive to the request would cost in excess of one million dollars. ECF Doc. #3256-16, Defs. Ex. P. However, the marketing documents that Plaintiff requests were, at least in part, based upon the very subject of the Government's Information, and it is therefore inconceivable and incredulous that Defendants have not heretofore located and reviewed such documents and included same in a database in anticipation of their defense against the Government's charges related to Defendant's off-label marketing campaign. Plaintiff believes that the items of discovery sought in the within motion are reasonably tailored and that the costs of production would be commensurate with the discovery that should be produced in accordance with similar pharmaceutical wrongful death actions. Furthermore, in regard to factors four and five, Defendants comprise a multi-billion dollar pharmaceutical company whose resources far outweigh Plaintiff's, and, as mentioned above, it is reasonable to assume that Defendants have heretofore gathered such documents in anticipation of their defense against the Government's case and performed most of the heavy lifting in regard to the documents.

Regarding factors six and seven, the documents that Plaintiff requested are critical to Plaintiff's prosecution of this action. The documents will serve as evidence to demonstrate: Defendants' negligence and recklessness in their failure to implement adequate pharmacovigilance; Defendants' motive to make profits at the expense of ensuring the safety of those ingesting their drug Topamax; and Defendants' failure to adequately warn physicians and patients of the increased risks for suicidality. Clearly, these are issues that go to the very heart of this case, and Plaintiff will be severely prejudiced if the discovery requested is not produced.

## CONCLUSION

Plaintiff respectfully requests that the Court find that the discovery requested by Plaintiff requested are relevant, and that Defendants have not demonstrated that their burden to provide the requested discovery rises to the level of burden contemplated under Fed. R. Civ. P. 26(b)(2)(B) and the advisory committee notes, and, therefore, that the Court (1) grant Plaintiff's motion to compel production of discovery consistent with Plaintiff's Document Requests ## 30 and 32; and (2) order that Defendants produce discovery responsive to Plaintiff's requests for production ## 30 and 32 within the next 30 days; and (3) recognize that Plaintiff's motion to compel production of documents responsive to Plaintiff's request for production #37 is withdrawn without prejudice.

Dated: February 4, 2011                    Respectfully submitted,

                                           FINKELSTEIN & PARTNERS, LLP

                                    By:    /s/ Kenneth B. Fromson
                                           Kenneth B. Fromson, Esquire
                                           1279 Route 300, P.O. Box 1111
                                           Newburgh, NY  12551

                                           *Attorneys for Plaintiff Paulette Hamilton*

9

## **CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on February 4, 2011.

                                           **/s/ Andrew G. Finkelstein**
                                             Andrew G. Finkelstein