IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


IN RE:                          )
                                ) CA No. 04-10981-PBS
NEURONTIN MARKETING, SALES PRACTICES,) Pages 1 - 32
AND PRODUCTS LIABILITY LITIGATION    )



STATUS CONFERENCE

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE




United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
February 7, 2011, 2:15 p.m.




LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 7200
Boston, MA  02210
(617)345-6787

1    A P P E A R A N C E S :

2

     FOR THE PLAINTIFFS:
3
          THOMAS M. SOBOL, ESQ. and KRISTEN JOHNSON PARKER, ESQ.,
4    Hagens Berman Sobol Shapiro, LLP, 55 Cambridge Parkway, Suite
     301, Cambridge, Massachusetts, 02142.
5
          ILYAS J. RONA, ESQ., Greene, LLP,
6    33 Broad Street, Boston, Massachusetts, 02109.

7

     FOR THE DEFENDANTS:
8
          KATHERINE ARMSTRONG, ESQ. and MARK S. CHEFFO, ESQ.,
9    Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times Square,
     New York, New York, 10036.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           P R O C E E D I N G S

2           THE CLERK:  In Re:  Neurontin Marketing, Sales

3   Practices, and Products Liability Litigation, Civil Action

4   No. 04-10981, will now be heard before this Court.  Will

5   counsel please identify themselves for the record.

6           MR. SOBOL:  Good afternoon, your Honor.  Thomas Sobol

7   for the class plaintiffs.

8           MS. PARKER:  Good afternoon, your Honor.  Kristen

9   Johnson Parker for the plaintiffs.

10          MR. RONA:  Good afternoon.  Ilyas Rona, also for the

11  plaintiffs.

12          MR. CHEFFO:  Good afternoon.  Mark Cheffo and

13  Katherine Armstrong with me.

14          THE COURT:  Yes, hello again to everyone.  So we're

15  closing up this case, I'm hoping.

16          What do you want to do, plaintiffs, with these two

17  individuals?  There were motions for summary judgment on them,

18  and we went down each class rep, and we assumed that there was

19  an individual claim because both sides were arguing summary

20  judgment.  And then you claim, well, no, there wasn't.  We went

21  back and checked, and there wasn't.  So what do you want to do?

22  Are these people interested in suing individually if they're

23  not class reps?

24          MR. SOBOL:  They're not interested in suing

25  individually.  They want to sue as class reps, and for reasons

1    I'd like to describe, therefore, I think it makes sense that to

2    the extent that there is an individual claim that's set forth

3    on their behalf in the Amended Consolidated Complaint, that

4    simply should be stayed.

5            THE COURT:  Well, is there or isn't there?  Because, I

6    mean, usually you go back and check, it says "individually and

7    as class rep."  The way you all briefed it was on a summary

8    judgment basis, so we assumed there was a claim.  Pfizer then

9    said, well, no, they never actually did assert an individual

10   claim.  And I'm not starting now.  Let's put it this way:  If

11   it's not there, it's not there.  I think under American Pipe,

12   it would probably be tolled anyway.  They can bring a separate

13   suit in their own district if they want to do so.  I think

14   that's that technical point.

15           MR. SOBOL:  Here's the reason that we oppose doing

16   anything other than leaving things the way that they are,

17   because if you try to say, well, no, we'll read into this

18   complaint that they also have an individual claim and we'll

19   dismiss that or transfer it to some other court --

20           THE COURT:  Well, no, I would only sever it if there

21   was an -- let me just put it this way:  Is it in here that

22   there's an individual complaint?  Excuse me.  Let me just say,

23   is it in here that --

24           MR. SOBOL:  They assert a claim individually and on

25   behalf of the class, but they've only sought to prosecute or

1   press claims on a class basis.  In order for them to be a class

2   representative, they have to have their own claim.  So, yes,

3   they have their own claim, but they're not interested in

4   pursuing their own claim.  They've only sued as a class rep,

5   and they were named as a class rep.

6          THE COURT:  Well, let me just put it this way:  I

7   understand there's a pending motion for reconsideration

8   somewhere on the bipolar class, which I haven't ruled yet.  I

9   understand that.  However, if in fact I deny class cert and

10   there's no class claim, as far as I'm concerned, I need to know

11   whether or not to dismiss the case in its entirety or to sever

12   this and transfer it to their home district.

13          MR. SOBOL:  If you feel compelled to do that, you'd be

14   better off dismissing the claim and having that be a part of

15   the judgment that we can take up on appeal.

16          THE COURT:  Well, I don't want it to be on appeal if

17   you then say, "Oh, no, there's an individual claim."  This

18   happened to me once before where there was some three-minute

19   discussion, and then it was just an "i" I hadn't dotted or a

20   "t" I hadn't crossed.

21          MR. SOBOL:  No, we're not interested in doing that.  I

22   want to explain the reason.

23          THE COURT:  Okay.

24          MR. SOBOL:  If we go up on appeal, and if for some

25   reason the First Circuit concludes, "No, you're wrong, we

1    interpret the law differently, there should be a class," then

2    it comes back down here, okay.  If you've done something so

3    that Varnam and Wityk don't have even an individual claim, then

4    they can't be the class rep anymore because their claim has

5    either been dismissed and it's gone, and we couldn't do

6    something with it, or it's gone to some other forum.  So we

7    have a very practical issue.  It's just sort of this notion

8    that if for some reason your decisions are reversed and come

9    back down here, we don't want to have lost those two class reps

10   because you know the problems we have in AWP with that.

11              THE COURT:  I understand that --

12              MR. SOBOL:  That's our problem.

13              THE COURT:  -- but let me just tell you this:  I'm not

14   trying these cases.  Let me just make it crystal clear.  I am

15   closing this case down.  I'm either going to do a class,

16   whatever is left if I'm reversed on whatever class action

17   decisions I do, but I'm not individually trying these cases.

18   If in fact there is an individual claim, it's going back to

19   their states.  And under 1404 and also the congestion of the

20   court, I mean, at some point I can't be the permanent Neurontin

21   judge or the permanent AWP judge.  It can't happen.  These

22   cases have been going on for decades, for over a decade in one

23   of them and six or seven years in this one.  They just keep

24   coming.

25              MR. CHEFFO:  Your Honor, you know, I think

b195e8bd-4116-4cec-a9b6-ebf842b0fd95

1  that what -- you know, and I say this respectfully -- I don't

2  think Mr. Sobol answered your question, and if he did, I think

3  he misspoke because we have two very simple arguments here.

4  And this is -- I'm going to read from --

5           THE COURT:  Well, you've won on one.  If it's

6  individual, it's being shipped up to wherever.

7           MR. CHEFFO:  Just so you understand, I think you need

8  to understand exactly how these people got here.  This is from

9  Page 5 of their opposition:  "As to transfer, Varnam and Wityk

10  did not file civil actions elsewhere that were later

11  transferred to this court.  Both first asserted claims here on

12  behalf of the consumer class in the renewed motion for class

13  certification.  There is simply no individual civil action to

14  transfer and nowhere to transfer their claims."

15           You asked, are they in the complaint or not?  And we

16  made two arguments on summary judgment, and actually,

17  admittedly, this was a little bit before my personal time, but

18  basically Pfizer's position was:  Look, you had cut a time for

19  amending the complaint.  You had said no more amendments, okay.

20  And then they moved for class cert.  You denied that.  Then

21  they renewed for class certification, and in their renewed

22  motion for class certification, they said, "We found a few

23  additional class reps."

24           Pfizer argued two things -- well, a bunch of things,

25  but they first argued, "This is kind of an end-around around

1   the Court's order.  You said you can't amend, so by including

2   these folks in the class certification renewal, you're

3   essentially adding new people."  So they did make that

4   argument.  And then they said, "But, nonetheless, even if you

5   allow it, we're going to take some limited discovery and we're

6   going to deal with it on summary judgment because --" there was

7   a little bit of a Hobson's choice because the motion for

8   renewed class certification was still pending, and then there

9   was the summary judgment motion.  So basically Pfizer proceeded

10  on the summary judgment motion, both against the people it

11  agreed were plaintiffs in the original complaint, and there

12  were three folks, including these two, who were never.  You can

13  look back at the original complaint, and notwithstanding what

14  Mr. Sobol just said, you will not find -- and I don't think

15  there's any disagreement -- you will not find these folks in

16  the initial complaint.  There's no instrument that started it.

17  They only got named in the class certification.  So now we're

18  in a situation --

19          THE COURT:  But when they got added in the class -- I

20  as a matter of practice will freely allow additions of class

21  reps to the extent someone dies or somehow it doesn't make the

22  mark in terms of representing a group.

23          MR. CHEFFO:  Sure.

24          THE COURT:  I haven't gone back and done the whole

25  postmortem, but when I allowed them to be added class rep, did

1    they seek to be added as individuals?

2         MR. CHEFFO:  Well, that's the thing.  As far as I

3    know, they've never moved to amend the complaint to be added as

4    individuals.  And I think your Honor said that, and I've read

5    some of the transcripts, you said, "Look, I'll free them --"

6    and I think most courts would.  You know, this isn't a picayune

7    argument about, "Well, you've certified a class.  We want to

8    add some folks."  What this was, now we're in a situation where

9    they said they want to be class reps, there's nothing in the

10   complaint.  If you'd certified a class, obviously this would be

11   a different story, but now there's no class certified.  And we

12   have these folks who you can't even find out where they were

13   from, you know, so we had to do some research.

14        So we've now argued two things:  One is, we think, by

15   denying the class, these people have no claims.  If your Honor

16   determines for some reason to kind of say, "Well, we're going

17   to allow it, I'm going to consider them to have claims," then

18   what we propose is a very practical alternative because we are

19   mindful of two things:  One is, at some point we need to figure

20   out what we're doing in this litigation; your Honor needs to be

21   able to move on.  And they've said they're going to appeal the

22   other part, so they should be severed, and these folks pursuant

23   to 1404 -- one's from Maine and one's from Ohio -- should be

24   sent back with whatever claims that they have.  Or, again, we

25   think your Honor certainly would be within the rights and

b195e8bd-4116-4cec-a9b6-ebf842b0fd95

1   consistent with the procedural history here just to say, by

2   virtue of the denial of the class certification, these people

3   have no claims.  But what they can't do --

4          THE COURT:  Excuse me.  Would you agree that under

5   American Pipe, that if I ultimately deny class cert, that the

6   statute of limitations has been tolled for them?

7          MS. ARMSTRONG:  Not sufficiently, your Honor, because

8   I think that American Pipe tolling ends as of the very first

9   denial, not on any reconsiderations.  The first time you deny

10  it, that stops it.

11         THE COURT:  Because if there's an issue, I'd let them

12  amend it and then sever it, I mean, if they wanted to pursue

13  it.  See, that's the whole thing.  I mean, I will never try

14  those cases.  Those will go back to their home districts where

15  all the witnesses are and where the law is.  I won't try them.

16  But if there was some confusion here, I would allow you to

17  amend it, put them in as individuals, and then sever them and

18  send them back after the whole class thing was over with.

19         MR. CHEFFO:  And, I mean, again, our legal position

20  is, we don't think they're there, but the real crux of this was

21  not to try to assert some kind of statute of limitations trick

22  here.  The point was that they were never named.  And if your

23  Honor determined that they were in the case and they still had

24  a viable claim, our point is, the rest of the case should

25  proceed.  If these folks have claims in Ohio or Maine, they

1    should get sent back, and the plaintiffs will do whatever they

2    need to do with them.

3         MS. ARMSTRONG:  But the other point, your Honor, is

4    that  the only reason why they were added was to serve as class

5    representatives, and they have no interest in pursuing a claim

6    as an individual --

7         THE COURT:  Well, I don't know.  That's what I'm --

8         MS. ARMSTRONG:  -- so there's no reason to amend the

9    complaint to add them --

10        THE COURT:  Well, let me put it this way:  I'm not

11   going to play the statute of limitations game.  I had assumed,

12   and I missed it -- I'm sorry, there was so much paperwork -- I

13   didn't realize, because the motion for summary judgment was so

14   detailed about them as individuals, that no one, sort of at

15   least at that iteration, was talking about individual claims

16   versus class rep claims, and I didn't understand or remember

17   that some of them came in initially and some came in later just

18   as class reps.  You've now flagged it for me.  Good.

19        So now I'm back to base one, Mr. Sobol.  This is the

20   issue:  I understand I owe you an opinion on Neurontin/Redux,

21   the bipolar class that you're seeking.  I haven't done it yet.

22   I've been swamped with McKesson and AWP and all the thousands

23   of cases that your firm brings in front of me, all right?  I

24   haven't gotten there yet.  I had to write an opinion on

25   Neurontin.  I mean, I've just been -- and I've got a new job,

b195e8bd-4116-4cec-a9b6-ebf842b0fd95

1    so I haven't written it yet.  So when I do, if I am consistent

2    with what I said before and this goes up on appeal -- I

3    understand you need your class reps, you want to keep them

4    here -- if I'm upheld and then it comes back down, do these

5    people want to be in it as individuals, or do they just want to

6    say "good-bye"?

7              MR. SOBOL:  They want to pursue their claims only as

8    class reps.

9              THE COURT:  Right.

10             MR. SOBOL:  That means that they have to have their

11   own individual claim to be able to do that.

12             THE COURT:  I'm not sure that that's true or not.

13   They have to --

14             MR. SOBOL:  Well, because they have to have, you know,

15   they have to have the same interests as the class members, they

16   have to have a claim that is substantially --

17             THE COURT:  Well, do you want to amend it to just make

18   sure it's clear that it's individual?

19             MR. SOBOL:  I think that at Docket No. 1018 at Page 1,

20   Note 1, as we indicated also in our --

21             THE COURT:  Docket 1018?

22             MR. SOBOL:  Docket 1018 at Page 1, Note 1, we out of

23   an abundance of caution ask that the Third Consolidated Amended

24   Complaint be amended to add both Wityk and Varnam's claims.

25             THE COURT:  What is that?  I'm sorry, is that a brief?

1    MS. ARMSTRONG:  I think it's the motion for class

2  certification.

3    MR. SOBOL:  Yes, I believe dealing with the motion for

4  class certification.

5    THE COURT:  But that's not how you move to amend a

6  complaint.  I don't read every note.  You people give me these

7  massive briefs.  So do you want to move to amend them?  I've

8  never allowed it, did I?

9    MR. SOBOL:  It never has been acted on.

10    THE COURT:  Well, because you can't move for adding a

11  party through a footnote.

12    MR. SOBOL:  But also, as a practical matter, we didn't

13  think it relevant.  But we will do that.  My point is a very

14  simple one:  We don't want these individuals' claims to be

15  harmed, either by sending them to some other place or

16  dismissing them here and having us appeal them, or having them

17  be -- they don't have any interest.  If I had a claim for $50,

18  if I came to you, your Honor, and said, "I have a claim for

19  $50.  I have no interest ever pursuing my own claim, but I want

20  to represent everybody else in the United States who's been

21  denied the $50," and if you say, "You can't have class

22  certification," I would say, "Fine, your Honor.  Leave my case

23  here while the appeal goes up as to whether there can be class

24  certification, but don't harm my individual claim."  I don't

25  want to have to go through the bother of having to deal with it

1   until we know whether there can be class.  That's all we're

2   trying to accomplish.

3          THE COURT:  This is just a procedural skirmish.

4          MR. SOBOL:  Exactly, and I don't want the interest of

5   the class --

6          THE COURT:  Excuse me, excuse me.  Let me just say, am

7   I quite clear here that you tried to amend to add these people

8   through a footnote?  Is that what happened?

9          MR. SOBOL:  We didn't think it was necessary to amend

10  them, but, yes, we did identify that by a footnote.  And the

11  parties proceeded as if they were in the consolidated complaint

12  and went forward with class and went forward with summary

13  judgment as if they were parties, and it hasn't been an issue

14  until now.

15         THE COURT:  Excuse me, but we're all lawyers, we're

16  anal compulsive, okay?  So I need you to just officially move

17  and me to officially allow it.  Now, if in fact I deny the

18  motion for reconsideration and you appeal and I'm upheld and

19  this comes down --

20         MR. SOBOL:  They will dismiss their individual

21  complaints.

22         THE COURT:  All right.

23         MR. SOBOL:  And if it's reversed, then the individual

24  counts will be here and available for them to be class reps.

25         THE COURT:  Fine.

1          MR. CHEFFO:  Your Honor, just to be heard, I mean,

2     again, you know, what happens now -- and Mr. Sobol hasn't

3     talked to his client -- I mean, we're in a situation now that

4     we're basically saying, have these claims and these people sit

5     around for a year, a year and a half maybe when, you know --

6          THE COURT:  No, they won't.  I guarantee you, as soon

7     as this case is appealed, I'm freezing the docket.

8          MR. CHEFFO:  No, I understand, but under their

9     proposal -- so, I mean, look, if what you're saying is, you're

10    going to sever and you're going to grant the 1404 and stay it,

11    I mean, but what's going to -- 

12         THE COURT:  No, I'm not.  This is what I'm going to

13    do, this is what I'm going to do.  Let me start with two

14    propositions:  I am never going to try these cases.  If for

15    some reason there's no class and they are left as the two

16    remaining things, they will be transferred to their home areas.

17    Let me just start there.  You will get your motion under 1404

18    granted.  Let's start there.

19         Part two, you are quite right, you cannot amend a

20    complaint with a footnote, but at this point there's no

21    prejudice to anyone to clarify, because it was briefed as if

22    they were in as individuals.  I mean, that's what fooled us if

23    it were.  I didn't go back and check all the little nuts and

24    bolts as to who was an individual and who was a class rep, so

25    I'm going to let them add them as individuals.  But I'm never

1   going to try the case, I can just guarantee you that.  I'm too

2   busy, and it makes no sense.  The witnesses are somewhere else

3   and the law is somewhere else, and it doesn't sound like they

4   want to anyway.  He's just already announced they'll dismiss

5   out the cases.  Why do you care?

6          MR. CHEFFO:  Well, no, we do care for a few reasons.

7   One is, you know, I think you have to at least sever them

8   because they're part of the claim.  We need a final judgment so

9   that this can be appealed.  I mean, that's part of the issue.

10  It's not just a picayune issue.  We have one case --

11         THE COURT:  All right, well, that's a good

12  technicality.  So I would 54(b) it or something.  That's fair.

13  Then I'll stay the rest.

14         MR. CHEFFO:  We do think that, again, you know,

15  consistent -- and it sounds like your Honor has already ruled

16  on this, but, you know, putting off to another day all these

17  issues if these people have claims to sit around, and I'm not

18  saying that you're going to make it sit around but just the

19  appellate process, we're now going to have claims on your

20  docket that are going to be stayed --

21         THE COURT:  Two little itsy-bitsy claims that are

22  going to go away, so I'll stay them, and it will disappear off

23  my docket so they don't show up as old cases.  But the big

24  issue is, as far as I know, the only thing I have that I owe

25  you all at this point is a motion for reconsideration.  Is that

1    wrong?

2            MR. SOBOL:  I would suggest we do it by way of case

3    management.  I've given you a tentative list and --

4            THE COURT:  With thousands of plaintiffs here?

5            MR. SOBOL:  So the notion here, first, so that you

6    understand, this chart is not final.  I'm still working out,

7    the parties are working out to make sure that we can agree

8    exactly as to what all the economic cases are in this MDL.  So

9    that's the first thing you need to understand, your Honor,

10   right?  What we've done is, we've divided the MDL in half.

11   There's the economic side, and then there's the personal injury

12   side.

13           THE COURT:  Right.

14           MR. SOBOL:  So this is an effort to have only the

15   economic cases, okay?  This list is tentative.  It's not final,

16   okay?  As you'll see, one thing that the parties need to do is,

17   we need to have some form of a judgment that gets entered that

18   follows your summary judgment so that there's something that's

19   appealable, you know, by the plaintiffs at that point, right?

20   And the one thing that -- so that the two legacy issues there

21   are entering the judgment but also dealing with the motion for

22   reconsideration on class.

23           THE COURT:  Right.

24           MR. SOBOL:  In addition, as to Aetna, you'll see there

25   was a motion for the entry of judgment as to Aetna which they

1    opposed, so that will need to be addressed.

2         THE COURT:  Okay.

3         MR. CHEFFO:  They only opposed it, I think, because

4    they wanted everything to go up at the same time.  I don't want

5    to speak for them, but I think at this point it would now be

6    ripe.

7         MR. SOBOL:  Right, that's right.  And also, by the

8    way, just take a step back, your Honor.  Although you're

9    looking at this list, I have suggested, and I think counsel, I

10   think that, you know, Mark agrees and Katherine agree that it

11   makes sense for the parties to maybe come to some suggestions

12   as to how to clean up portions of this to see if we can reach

13   agreement as to how to clean up portions of this rather than

14   putting that on you, but I'm just going through the --

15        THE COURT:  No, that's good.  So what you'll do is

16   come up with a proposed 54(b) order basically --

17        MR. SOBOL:  Correct.

18        THE COURT:  -- on everything that needs to go up and

19   why it needs to go up, and that these two little cases are just

20   not controlling.

21        MS. ARMSTRONG:  Your Honor, if I could just sort of

22   maybe shortcut things a little bit here --

23        THE COURT:  Yes.

24        MS. ARMSTRONG:  -- because that list, there's a lot of

25   things on that list that don't pertain to the finality of what

1   you're dealing with now.  So finality for the pending judgment

2   before you, I think we need entry of judgment as to Aetna and

3   Guardian, and we've submitted those.  We need entry of judgment

4   in the class cases --

5            THE COURT:  When you say you've submitted those,

6   where?

7            MS. ARMSTRONG:  We filed a motion for entry of

8   judgment on Aetna and Guardian, and Guardian does not oppose

9   but Aetna does.  They have the same consolidated complaint.

10  Then we've got the class consolidated complaint.  There's the

11  motion for reconsideration on class certification pending.

12  There's Blue Cross-Blue Shield of Louisiana's motion for

13  reconsideration on summary judgment pending.  So those motions

14  can be decided.  Then we can submit an agreed-upon 54(b)

15  judgment --

16           THE COURT:  But why don't I just do this.  I'm not

17  going to get to these things in the foreseeable future.  Let me

18  just put it right out there.  AWP has swamped me.  I have two

19  crates full of documents in McKesson and another two crates

20  involving California, and I am overwhelmed, quite candidly.

21  I've got a whole set of motions coming in tomorrow, and I am

22  not going to get to it all.  The one thing I know I'm done with

23  is Kaiser.  I think I'm done, right?

24           MS. ARMSTRONG:  We submitted your judgment, 54(b)

25  judgment --

b195e8bd-4116-4cec-a9b6-ebf842b0fd95

1          THE COURT:  Yes, why don't I just send that up and

2     send up Aetna?

3          MR. CHEFFO:  On Aetna you can, I mean, but the way our

4     schedule works, and I know it's not necessarily good news, your

5     Honor, but when your judgment happens, there's a whole

6     number -- there's our post-trial motions in the Kaiser case,

7     and the plaintiffs have indicated they're going to seek a fee

8     application, so there is a whole --

9          THE COURT:  But the fee application waits.  I don't do

10    that right away.  I stay that pending appeal, and I will not

11    get involved with it.  So let me just talk through Kaiser.  So

12    what else post-judgment motions?

13         MS. ARMSTRONG:  Once judgment is entered, then the

14    28-day clock starts to run for Rule 50, 52, 59 motions.

15         THE COURT:  I don't want to wait for those.  I mean

16    hasn't this been briefed to death?

17         MR. CHEFFO:  I don't think so.

18         MS. ARMSTRONG:  No.  The 28-day clock does not start

19    to run until judgment is entered.

20         THE COURT:  Why can't you just raise all this in the

21    appellate level?  Is there something that --

22         MS. ARMSTRONG:  We have to raise them post-trial by

23    these motions.

24         THE COURT:  Well, in any event, I want to enter

25    judgment on Kaiser.  That's a different issue than the class

1    cert.

2         MR. CHEFFO:  You can enter judgment on Kaiser.  That's

3    before you, and I think we've submitted an agreed order.

4         THE COURT:  So Kaiser I'm going to do.

5         MR. CHEFFO:  We also think with respect to, if we deal

6    with -- if you carve out, let's say, not in legal terms, but if

7    you carve out these two individual plaintiffs, you can enter

8    judgment with respect to the denial of the class.

9         THE COURT:  And then second is the class.

10        MR. CHEFFO:  And we could also give you --

11        THE COURT:  Third is Aetna.  I don't necessarily want

12   to wait for all of them.  It will take another year.  I can't

13   get to all of it right away.

14        MR. CHEFFO:  And Guardian as well would also -- they

15   have not contested it.

16        THE COURT:  Contested what?

17        MR. CHEFFO:  Guardian has basically, I think --

18   they're not challenging the entry of judgment --

19        MR. SOBOL:  I thought that -- if I may your Honor, I

20   think it's important for the parties to meet and confer and

21   provide you with a suggestion regarding how the pending

22   Neurontin economic claims matters should be cleaned up.  And

23   the reason I'm saying that is, Guardian has a different

24   position.  I think that they've already dismissed.  Aetna has a

25   motion pending, an opposition to the entry of judgment, which

b195e8bd-4116-4cec-a9b6-ebf842b0fd95

1    they might modify, but I need to speak to their counsel.

2           THE COURT:  Well, talk to them.  That's fine.

3           MR. SOBOL:  On the class side, I have been asking

4    Pfizer if we can have a discussion regarding entering a

5    judgment on the class claims to make sure that that's

6    appealable.  That's something we can also --

7           THE COURT:  But I'm not --

8           MR. SOBOL:  All of these things within very short

9    order could basically be given to your Honor on a silver

10   platter.

11          THE COURT:  No, but the key difference is, I am done

12   with Kaiser.  I'm done.  You may file what you want.  I'm done

13   with at least what I need to do to enter judgment.

14          MR. SOBOL:  On Kaiser, I think that the pleadings are

15   in and are before you that are ripe for you to now enter

16   judgment.

17          MR. CHEFFO:  Mr. Sobol can't have it both ways.  I

18   mean, anything related to that should be -- we agree.  I'm

19   trying to give you what I think are the issues that there's

20   really very little --

21          THE COURT:  But I'm not going to get to them for the

22   foreseeable future.  That's the issue.  Come tomorrow, wait

23   till you see.  There are crates, crates of documents.  I

24   haven't even dealt with the McKesson thing that they filed,

25   which basically seeks to certify every jail in America.  I am

1   swamped.  So I want what can go up to go up.  I want Kaiser to

2   go up.  I want Aetna and Guardian to either be resolved or go

3   up.  Class cert is a much harder issue because I learned a lot

4   in the Kaiser case, which is making me rethink bipolar.  I

5   don't know, okay?  That's where it's at.  I need to think about

6   that.  That isn't so quick for me.  And so that's why I don't

7   want it all to be held up for bipolar.

8          MR. SOBOL:  That's fine.  And what I also suggest is,

9   the parties will meet and confer as to the balance of all these

10  actions because there may be a way where we can come to an

11  agreement regarding either we call some counsel and they're

12  agreeing to dismiss depending upon what --

13         THE COURT:  So why don't you confer within the next

14  two weeks or three weeks, and you can propose something, but in

15  the meantime -- so when do you all want to confer?  By when,

16  end of February?

17         MR. SOBOL:  Fine.

18         THE COURT:  All right, end of February you'll confer

19  and give me a status report and a proposed judgment on anything

20  that you can agree on because I want to trigger this period.  I

21  forgot all about post-judgment motions.  I feel as if I've

22  studied Kaiser just so dramatically.  I mean, there's always a

23  chance I make a mistake.  I've made mistakes before.  I assumed

24  these people were already in individually.  I hadn't -- no one

25  even flagged for me that they were only in as class reps.  So,

b195e8bd-4116-4cec-a9b6-ebf842b0fd95

1  you know, you catch things that I make mistakes on, and that's

2  great, but basically I can't hold everything up for the class

3  cert thing, and so I just will take my time on that, and I

4  haven't even started with it yet, post-Kaiser.

5       MR. CHEFFO:  And that's really what I'm trying to

6  articulate.  There are some issues.  And I guess just with

7  respect to, the other thing I would add, I mean, the summary

8  judgment with respect to the individuals is something else that

9  judgment can be entered if we proceed as -- I mean, that's why

10  we're here today.  So if you're going to allow them to move to

11  amend, you're going to, it sounds like, grant that.  You're

12  going to then, I guess, sever and enter a 54(b).

13       THE COURT:  Right.

14       MR. CHEFFO:  Right, with respect to everyone other

15  than these two folks.

16       THE COURT:  Yes, that's a good idea, yes.

17       MR. SOBOL:  And then their claims I suggest be stayed,

18  and if class cert gets reversed, they'll be here, and if the

19  class cert gets issued, you --

20       THE COURT:  Sure, but I wanted that on a different

21  track from the Kaiser, Aetna, Guardian -- do I have it all?

22       MS. ARMSTRONG:  Cardinal.

23       THE COURT:  Excuse me?

24       MR. SOBOL:  No, no, no.

25       MR. CHEFFO:  That's the thing.  I mean, these

1    individual -- we think that the 54(b) issue should be with

2    respect to the plaintiffs in the class, not necessarily the

3    classes you've talked about but with respect to your summary

4    judgment rulings, really what we're talking about today.

5              THE COURT:  I don't need them to go up at the same

6    time Kaiser does, do I?  I don't care really.  I don't care.  I

7    don't really care.  But what I do care about is not holding it

8    all up for class cert.

9              MR. CHEFFO:  Understood.  We just think that there are

10   some overlapping issues even with respect to -- or there could

11   be some overlapping issues with respect to Kaiser and these

12   individual plaintiffs.

13             THE COURT:  The First Circuit isn't going to get to

14   this for years, right?  I mean, so they'll consolidate it at

15   some point, right?  How long did it take for AWP?  Years.  So,

16   I mean, at some point you can ask to consolidate the briefing

17   tracks.  But at least right now, you'll confer.  You'll come up

18   with a proposal if you can, or two joint proposals, and I'll do

19   it.  And I want to get triggered, if you're going to be filing

20   all this, let me just sort of say off the bat, only 20 pages a

21   side, and I don't think I need reply and surreply.  I can't

22   handle the volume of paper you're all giving me.  McKesson was

23   ridiculous.  The California cases are ridiculous.  I mean, I

24   can't deal with that number of pages.  Physically it takes me a

25   weekend to read just the paperwork.  So 20 pages a side, and I

1    don't want replies and surreplies.

2          MR. CHEFFO:  I mean, I'm just asking counsel.  I mean,

3    again, like anything else, your Honor, if you tell us to do it,

4    we'll do it.  I mean, I think that sometimes I find -- I know

5    you don't want a 100-page brief but --

6          THE COURT:  That's what I've been getting.

7          MR. CHEFFO:  Well, I don't think we've ever given you

8    one in these cases, but, look, all I'm suggesting is,

9    sometimes, I mean, 20 pages, it winds up becoming more work.  I

10   know when I read a 20-page brief, sometimes when it has 30

11   issues in it, what you wind up is this and then kind of a

12   string cite.  You know, I think if we were able to have a

13   little bit more time --

14         THE COURT:  Well, what do you want?

15         MR. CHEFFO:  Thirty pages?

16         THE COURT:  I can live with 30.  I can't live with 50

17   and 100.

18         MR. CHEFFO:  If we could do 25 pages and if we could

19   have a 10-page reply on these issues.

20         THE COURT:  Sold.

21         MR. CHEFFO:  Thank you, your Honor.

22         THE COURT:  Both sides, obviously, sold.  But she's

23   leaving.  Erin has been doing it for two years.  I've gone

24   through maybe six law clerks on all this stuff.  When she

25   leaves, I want Neurontin done.  That's my basic thing.  Because

1    of the budget crisis in the United States of America, I am not

2    getting a third law clerk for these MDLs again.  We're in a

3    whole new world now, and I'm doing the Sentencing Commission in

4    Washington.  I cannot deal with the volume of paperwork that

5    you've been giving me.  And I think in Kaiser it's a done deal.

6    Unless you catch me on a mistake, I'm not going to rethink

7    legally.  You may catch me in a mistake factually or legally,

8    but I'm not going to rethink just judgment calls, if you will,

9    so don't bother briefing it.  All right.

10         MR. SOBOL:  I make the following comment by way of a

11   suggestion that might help you in terms of being able to weed

12   through some of the paperwork on the motion for reconsideration

13   on class, which is that it might make sense if you could have a

14   brief oral argument on it because the extent of the disputed

15   issues are not or the -- or how your prior rulings bear on that

16   might aid you to be able to cut through a lot of things and

17   focus on what you really need to focus on.  I'm not arguing

18   anything at all right now.  Frankly --

19         THE COURT:  Maybe, maybe.  I haven't even really

20   gotten to it.  It's clear that in my first motion, I

21   misunderstood a key thing, which is every drug got -- every

22   formulary put Neurontin on because it was approved for

23   epilepsy.  That was something that I misunderstood from your

24   expert's brief, or either that or he was deliberately not

25   clear.  But then the issue is what people did to manage it

b195e8bd-4116-4cec-a9b6-ebf842b0fd95

1   afterwards for off-label uses.  That's what the clear

2   difference is.  I had thought the management happened before

3   they put it on the formulary, and it turns out it went on --

4   this is what I learned at trial -- everywhere, and it was a

5   question of how many managed it afterwards.  So that's

6   something I have to rethink.

7          MR. SOBOL:  Right, and all I'm suggesting, your Honor,

8   all I'm suggesting, without making any argument about it, is,

9   if you have Erin around for another four months and you're

10  losing Robert next week or whenever he's leaving --

11         THE COURT:  I'm losing everybody.

12         MR. SOBOL:  Right.  So what I'm suggesting is, it

13  might aid you and Erin if you had a half an hour or 45 minutes

14  for the parties to talk so you might be able to really cut

15  through it.

16         THE COURT:  Maybe, maybe.  I think I actually

17  understand the science of bipolar.  I know how little evidence

18  there was to support bipolar.  I also, though, know that I

19  didn't understand the formulary situation with respect to

20  Neurontin, that the management came or didn't come after it was

21  put on the formulary.  Maybe your expert when he kept saying it

22  took forever to -- oh, everyone made individualized

23  distinctions in putting it on the formulary and he gave all

24  these examples, as I understand it now, people made

25  individualized decisions after it was on the formulary

1    typically.  I mean, you can't say every single one in America.

2    That's --

3         MR. CHEFFO:  Even Kaiser we saw.  But, I mean, I agree

4    with Mr. Sobol.  I'm not going to argue.  I guess I would raise

5    two -- and, again, I'm not going to argue the merits -- I would

6    just raise one thing for consideration, your Honor.  One is,

7    certainly anytime, if your Honor wants oral argument, you know,

8    I'm not going to say, no, we're not going to come.  We'll

9    certainly do that.  I would say, and maybe I'm missing

10   something here, but the motion for reconsideration is based on

11   the third-party payors for whom you've granted summary

12   judgment, so why isn't -- I guess I'm asking a rhetorical

13   question, but our position would be, it's moot.  There's

14   summary judgment motion granted with respect -- the people who

15   are bring the claim have no individual claims, as Mr. Sobol

16   just -- you have to have an individual claim.  You've granted

17   summary judgment --

18        THE COURT:  Maybe.  I haven't gotten so much into

19   the --

20        MR. CHEFFO:  -- as to all but two people who are just

21   consumers, who you've said you're not even going to consider

22   the consumer, just with respect to TPPs, and there are no TPPs

23   left who have brought that claim, so --

24        THE COURT:  It may be.  I just haven't really focused,

25   and I'm not likely to do so.  And if I think I need oral

b195e8bd-4116-4cec-a9b6-ebf842b0fd95

1  argument, we'll bring it in is what I will do.  But I've that

2  brief for a while.  I deliberately didn't rule on it,

3  deliberately.  It's been over a year, maybe even two years.  I

4  deliberately didn't rule on it till after I had done the Kaiser

5  trial and the piece that I was going to do.  You know, I

6  deliberately.  I let it sit there, and now it's ripe.  Now I've

7  got to get to it.  But then in the interim, all the McKesson

8  stuff, et cetera, has come in and the California case.  You

9  know, I'm only one judge, so I'm hoping that I will get to it

10  by the end of this year, but I don't want all the Kaiser stuff

11  held up.  That's the key here.  I want it all to go up, I want

12  all these gazillion motions, and let it all go up on appeal.  I

13  take it -- can we go off the record just for one minute.

14          (Discussion off the record.)

15  SIDE-BAR CONFERENCE:

16          THE COURT:  So last week my daughter began to work for

17  Health Care for All.  She's a community organizer.  She's not a

18  lawyer.  So, to your knowledge, are they involved or in any way

19  would financially benefit from anything that I've been doing?

20          MR. SOBOL:  No.  It's my --

21          THE COURT:  Do you know what that is?

22          MS. ARMSTRONG:  To my knowledge, they're not a party.

23          MR. CHEFFO:  Well, they have been a party in other

24  litigations, and in fact I think Mr. Sobol's firm has

25  represented them in other litigations as a plaintiff, in fact

1    the Lipitor case we had, but that's in the past.  I don't know

2    that they're a plaintiff in this litigation.

3              THE COURT:  What do you think?

4              MR. SOBOL:  I'll have to go back and check, but I am

5    almost certain that Health Care for All, as well as its

6    affiliated Community Catalyst, Inc. and a subsidiary of

7    Community Catalyst called Health Lot Advocates, Inc., that none

8    of those three entities have been a plaintiff in the Neurontin

9    case or the AWP cases or the McKesson cases, okay?  Lawyers for

10   PAL, which is a subsidiary of Community Catalyst, which is not

11   connected with Health Care for All, though they tend to have

12   similar employees, lawyers for PAL have participated as

13   allocation counsel --

14             THE COURT:  I remember that.

15             MR. SOBOL:  -- in AWP cases and in McKesson cases,

16   okay?  But in Neurontin, as far as I know, there have been

17   no -- first of all, Health Care for All itself has not been a

18   party in any of those proceedings, as I recall.  I'm talking

19   about the other entities, just to give you the full picture.

20             THE COURT:  Thank you.  So if in fact -- could you

21   just make sure they're not involved in either Neurontin or AWP

22   as a separate entity.

23             MR. SOBOL:  Or McKesson.

24             THE COURT:  Or McKesson, yes.  And if for some reason

25   they are, what I'd probably do -- it's too late to just get off

1    these cases, but if for some reason they have any interest,

2    maybe what I would do is sever it off and send it to a

3    magistrate or something like that, that piece of it, whatever

4    it is.  I think they're not because we looked and I checked,

5    and I don't think they are, but just in case, I just wanted to

6    flag that one issue that started last week.  Okay?  All right,

7    thank you.

8              (End of side-bar conference.)

9              (Adjourned, 2:57 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2


3

   UNITED STATES DISTRICT COURT )
4  DISTRICT OF MASSACHUSETTS    ) ss.
   CITY OF BOSTON               )
5

6

7          I, Lee A. Marzilli, Official Federal Court Reporter,

8  do hereby certify that the foregoing transcript, Pages 1

9  through 32 inclusive, was recorded by me stenographically at

10 the time and place aforesaid in Civil Action No. 04-10981-PBS,

11 In Re:  Neurontin Marketing, Sales Practices, and Product

12 Liability Litigation, and thereafter by me reduced to

13 typewriting and is a true and accurate record of the

14 proceedings.

15     In witness whereof I have hereunto set my hand this 14th

16 day of February, 2011.

17

18

19

20

21          /s/ Lee A. Marzilli
           _____
22         LEE A. MARZILLI, CRR
           OFFICIAL FEDERAL COURT REPORTER
23

24

25

b195e8bd-4116-4cec-a9b6-ebf842b0fd95