# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE: ) CA No. 04-10981-PBS
NEURONTIN MARKETING, SALES PRACTICES, ) Pages 1 - 33
AND PRODUCTS LIABILITY LITIGATION )

STATUS CONFERENCE
BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

-and-

LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE

United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
February 11, 2011, 2:07 p.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 7200
Boston, MA 02210
(617)345-6787

APPEARANCES:

FOR THE PLAINTIFFS:

KENNETH B. FROMSON, ESQ., Finkelstein & Partners, LLP, 785 Broadway, 3rd Floor, Kingston, New York, 12401.
JAMES A. STEGALL, III, ESQ., Law Offices of Newton & Schwartz, Sr., 1911 Southwest Freeway, Houston, Texas, 77098.

FOR THE DEFENDANT:
CATHERINE B. STEVENS, ESQ. and KATHERINE F. ARTHUR, ESQ., Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times Square, New York, New York, 10036.



PROCEEDINGS

THE CLERK: In Re: Neurontin Marketing, Sales Practices, and Products Liability Litigation, Civil Action No. 04-10981, will now be heard before this Court. Will counsel please identify themselves for the record.

MR. FROMSON: Good afternoon, your Honors. Kenneth Fromson for the Plaintiff Steering Committee.

MR. STEGALL: I'm James Stegall. I'm with the law offices of Newton Schwartz in Houston.

MS. STEVENS: Good afternoon, your Honors. Catherine Stevens on behalf of Pfizer.

MS. ARTHUR: Good afternoon. Katherine Arthur on behalf of Pfizer.

THE COURT: Thank you. So of course Judge Sorokin and I are most eager to hear about the status of all these cases, so why don't we begin with plaintiffs' side, Mr. Fromson.

MR. FROMSON: Your Honor, with respect to the Court's order of February 4, 2011, I would like to bring to the Court's attention that with respect to the application, Docket No. 3164, which was within Paragraph 1 of the order, this particular plaintiff, for whom my law firm had moved for withdrawal, was ordered to be in court today or to have an attorney present or to send a letter. Long story short, that plaintiff's name is Mr. Belbruno. He contacted me yesterday evening. He received the Court's order only on this week. He



asked me to relate to the Court his intention of going forward pro se at this time. He is also blind and unable to ambulate very well, and so he was not able, based upon his hardships, to get here. I would respectfully request that you would accept my representation that he intends to move forward pro se.

THE COURT: Is he getting his own lawyer, did he mention?

MR. FROMSON: He did not mention it, but I would hope that he would, but he did want to at least make sure that my message was brought to the Court today to be somewhat, as best possible, compliant with the Court's order.

THE COURT: Did he claim that the Neurontin contributed to any of these conditions?

MR. FROMSON: Your Honor, yes. I was familiar with the case, obviously, before we withdrew from the action, and the injury would in fact be alleged to have been the blindness from which he suffers as related to the suicide attempt that he had done.

THE COURT: It's interesting because I've heard of several side effects, but that's not one I'd heard about.

MR. FROMSON: Blindness isn't the side effect. It was the result of the suicide attempt that left him blind.

THE COURT: I see, I understand.

MR. FROMSON: Other than that, I don't have a specific housekeeping matter or --



THE COURT: Where is he from?

MR. FROMSON: He resides in New Jersey, and the case was originally filed in New Jersey.

THE COURT: So perhaps the thing that would make that the easiest to do would be to send that back to New Jersey where he's from, and where you're from, right?

MS. STEVENS: New York, your Honor.

THE COURT: New York, New Jersey. So what do you recommend?

MR. FROMSON: I think that goes towards a more global picture of what the Court intends to do with the group of pro se plaintiffs and defense counsel's plan of action to most diligently and efficiently manage those cases. I for one would suggest that the Court maintain some control over those cases because of the efficiency with which this Court has managed the case thus far, but that's between yourself, obviously, your Honor, and Pfizer.

THE COURT: Okay, did you have anything on him?

JUDGE SOROKIN: No. I'm just wondering how many pro se people there are?

MS. STEVENS: There are approximately thirty pro se plaintiffs right now that we have, and, as your Honors are aware, we filed a motion to get some guidance on where we're going with the pro ses. You had initially suggested that we send them back immediately. We had hoped, after we looked at

THE COURT: Well, which ones are?

MS. STEVENS: We have a list of 32 cases from the Schwartz law firm of which they intend to proceed. I understand that that may not be a concrete number, but --

THE COURT: When can you dismiss or allow people to go pro se for the others?

MR. STEGALL: We would ask for anywhere from 30 to 60 days to finalize that list. She's correct, and that we have made representations and intend to stick to them that we will be reducing our number from eighty anywhere down to thirty-five to forty cases.

THE COURT: Well, do you know some for sure that you're dismissing?

MR. STEGALL: Yes, ma'am.

THE COURT: Well, why don't you do that instantly.

MR. STEGALL: Yes, ma'am.

THE COURT: How many are in that category?

MR. STEGALL: I don't have a hard number for you, but it would probably be ten to fifteen cases.

THE COURT: Do those instantly, instantly, like Monday.

MR. STEGALL: Yes, ma'am.

THE COURT: And maybe another 30 days to finalize the remaining ones so we're just not wasting. Do you know a certain number that are definitely going forward?



MR. STEGALL: Yes, ma'am. At this point the thirty-two she identified are going forward.

THE COURT: And those are the ones that you think you still are a little bit behind on on discovery or just with respect to those cases that you're --

MR. STEGALL: With respect to the depositions, yes, ma'am, but we are moving along at a pretty good pace.

THE COURT: And when are you going to be done with -- I forget, do you know when we were supposed to be done with those?

JUDGE SOROKIN: February depositions, I think. On the original schedule, we would have had all the depositions in theory done in February, if I remember right.

In any event, when do you think you'll be done with the depositions of those cases that you're going to proceed with?

MR. STEGALL: Being a conservative estimate, I would say anywhere still from six to nine months from now because if we get -- there are -- you know, we identified -- we'll do a sales rep, we'll do the prescribing doctor, and the plaintiff obviously. Well, in many instances there's more than one prescribing doctor, and getting those depositions scheduled is -- getting a doctor scheduled in and of itself is a hassle.

THE COURT: Six to nine is too far out there.

MS. STEVENS: Your Honor, we're moving at the fifteen



days of deposition pace, which was the last scheduling order.

MR. STEGALL: And -- I'm sorry, I didn't mean to interrupt. I apologize.

THE COURT: But given that schedule, six to nine months is usually a full cycle. Can you add more -- how big a firm is your firm?

MR. STEGALL: It's not particularly big. There's about seven lawyers in total, and there's three of us working these depositions.

THE COURT: Well, I don't know that I'm going to give you six to nine. You've been on notice for a while. If you don't take all discovery, you don't, because I'm not going to try them all here is the thing. We've got to get this case moving forward. And I think Schwartz has taken, you know, a backseat, not as backseat as Mr. Boone did, but, still, you've got to get this thing ready, and Judge Sorokin and I are going to consult about how much time makes sense here.

JUDGE SOROKIN: So let me just ask, you've got eighty cases, is that right?

MR. STEGALL: Yes, sir.

JUDGE SOROKIN: And thirty-two you know you're going forward on?

MR. STEGALL: Yes, sir.

JUDGE SOROKIN: And the other forty-eight, the question is, are you going to go forward on any of those, some



of those, and of the ones you're not going forward on, you're either going to dismiss or withdraw?

MR. STEGALL: Yes, your Honor.

JUDGE SOROKIN: So the forty-eight is the universe of cases you're making a decision about in the next 30 days?

MR. STEGALL: And, as I said before, we anticipated the number that might be added to the thirty-two to be a small number, three to five.

JUDGE SOROKIN: So if you end up with thirty-five, how many of those thirty-five cases at fifteen days of depositions a month, even if you lagged a little bit, how many depositions -- I'm just trying to figure out how many depositions there are for those people. Six to nine months would be 60 to 90, 90 to 120 more depositions, I think.

MR. STEGALL: If we can stay at the fifteen days for depositions, I mean, in theory we're talking about 60 depositions maybe, additional depositions, so even at 15 a month, that's at least four months.

JUDGE SOROKIN: Are these plaintiffs from the same geographic area, or are they all spread out?

MR. STEGALL: They're spread out, your Honor.

JUDGE SOROKIN: So they're not all from where your law firm is located?

MR. STEGALL: None of them are, your Honor.

JUDGE SOROKIN: I see, all right. So there's no