**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

                                                           )
**IN RE:  NEURONTIN MARKETING, SALES**    )
**PRACTICES, AND PRODUCT LIABILITY**          )
**LITIGATION**                                                )
                                                           )          **MDL Docket No. 1629**
                                                           )          **Master File No. 04-10981**
_____)

                                                                      **Judge Patti B. Saris**
                                                                      **Mag. Judge Leo T. Sorokin**

**THIS DOCUMENT RELATES TO:**

_Jessie Allen, et al v. Pfizer, Inc._, Case No.  1:07-cv-11795-PBS
_Mary Cooper, et al v. Pfizer, Inc._, Case No. 1:05-cv-10834-PBS
_Leroy Anderson, et al v. Pfizer, Inc._, Case No.   1:05-cv-10835-PBS

_____

**PLAINTIFFS' OBJECTIONS TO THE PROPOSED FINDINGS, REPORT AND**
**RECOMMENDATIONS OF U. S. MAGISTRATE JUDGE ON DEFENDANTS'**
**MOTION TO COMPEL (DOCKET #3176)**

_____

          The Plaintiffs, pursuant to Fed. R. Civ. P. 72 (b) 2 file their specific objections to

the proposed findings, report and recommendations of U. S. Magistrate Judge M. J.

Sorokin filed on February 4, 2011 in the above referenced cases regarding Defendants'

Motion to Compel. (Docket #3176).

          On February 4, 2011, U. S. Magistrate Judge M. J. Sorokin (hereinafter "Court" )

recommended that the Court dismiss the three actions brought by Boone _(i.e.,_ 05-cv-10834, 05-cv-

10835 and 07-cv-l 1795) on behalf of all the Plaintiffs named within these complaints pursuant to

Fed. R. Civ. P. 41(b), for alleged failure to prosecute and alleged failure to comply with Orders

of the Court, and pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v), as a sanction for alleged failure to

obey Orders to provide discovery.

The Plaintiffs object to each and every finding, report, and recommendations, whether specifically delineated as such or not, made by the Court on February 4, 2011. Plaintiffs submit their specific objections to the Court's finding, report, and recommendations, section by section, as follows:

## I.        FACTUAL BACKGROUND

**Plaintiffs object** to the findings and/or report included under the FACTUAL BACKGROUND section of the report, as follows:

As of February 4, 2011 there existed only 200 Boone Plaintiffs, not 390 Plaintiffs. Boone had previously voluntarily dismissed 143 Plaintiffs and 47 Plaintiffs were dismissed by Court without objections by Boone.   Of the remaining 200 Plaintiffs, 183 of the Plaintiffs are contained in *Jessie Allen, et al v. Pfizer, Inc.*, *Case No.  1:07-cv-11795-PBS*; and 20 Plaintiffs are contained in *Leroy Anderson, et al v. Pfizer, Inc., Case No.  1:05-cv-10835-PBS;* and 7 Plaintiffs are contained in the *Mary Cooper, et al v. Pfizer, Inc.*, *Case No. 1:05-cv-10834-PBS.*

**Plaintiff objects** to the Court's finding that they failed to comply with the discovery deadline of July 8, 2007 set by Court.

The Complaint in *Jessie Allen, et al v. Pfizer, Inc.*, *Case No.  1:07-cv-11795-PBS* was transferred from the U. S. District Court of Mississippi to MDL No. 1629 on September 24, 2007.  (*See Conditional Transfer Order (CTO-47), Document 5, Case 4:07-cv-00074, filed 9/24/07, U. S. District Court, Northern District of Mississippi, attached as **Exhibit 1 hereto***)

Accordingly, because the Complaint in *Jessie Allen, et al v. Pfizer, Inc.,* supra, was not transferred to MDL 1629 until September 24, 2007 it was impossible for the 183

Plaintiffs therein to have complied with the Court's discovery deadline of July 8, 2007. As such, Plaintiffs' failure to comply with the July 8, 2007 deadline should not be considered a violation of the Court's Order.  Plaintiffs' failure to comply with July 8, 2007 deadline should not be counted in the calculation of alleged repeated failures to comply with Court orders.  Thus, the Court's finding that Boone did not meet the July 8, 2007 deadline is inapplicable and the Court should have excluded this failure as a factor in reaching the recommendations in this case.

The Complaint in *Leroy Anderson, et al v. Pfizer, Inc., Case No. 1:05-cv-10835-PBS* was transferred from the U. S. District Court of Mississippi to MDL No. 1629 on May 2, 2005.  (*See Transfer Order, Document 5, Case 4:04-cv-275, filed 5/2/2005, U. S. District Court, Northern District of Mississippi, attached as **Exhibit 2 hereto***)

The Complaint in *Mary Cooper, et al v. Pfizer, Inc., Case No. 1:05-cv-10834-PBS* was transferred from the U. S. District Court of Mississippi to MDL No. 1629 on May 2, 2005.  (*See  Transfer Order, Document 5, Case 2:04-cv-255, filed 5/2/2005, U. S. District Court, Northern District of Mississippi, attached as **Exhibit 3 hereto***)

The remaining 17 Plaintiffs contained in *Leroy Anderson, et al v. Pfizer, Inc.,* supra, and *Mary Cooper, et al v. Pfizer, Inc.,* supra, who were subject to the January 15, 2007 discovery deadline submitted answers to template discovery beginning in April 2007 prior to any motion to compel or admonishment from the Court. (See Boone Chart, Doctket # 2885, 3064, 3093, 3123, 3161, and 3219) Accordingly, the conduct of these Plaintiffs was not extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance.

**Boone objects** to the Court's consideration that Boone is not a member of the Plaintiff Steering Committee.  The Plaintiff Steering Committee had been formed long before Boone Plaintiffs' cases were transferred to MDL 1629.  Schwartz Law Firm represented 122 Plaintiffs, but also was not a member of the Plaintiff Steering Committee.  Lack of membership in the Plaintiff Steering Committee bears no relationship to discovery issues involved in this case.  Since the Complaint in *Jessie Allen, et al v. Pfizer, Inc.,* supra, containing 92% of the Plaintiffs, was not transferred to the MDL until September 24, 2007, it is doubtful that Boone would have been allowed to join the Plaintiff Steering Committee several years after it was formed. Accordingly, the Court's consideration of whether Boone was a member of the Plaintiff Steering Committee is misplaced and should not have been factored in the Court's recommendations.

**Boone objects** to the Court's finding that Boone cases have not matched the pace of other cases.  Boone cases have kept pace with Schwartz's 122 cases, the second largest group in MDL 1629.  The Court noted in the June 9, 2010 that the Boone and Schwartz case were running behind the other cases in the MDL. (Docket 2839 at 2)

The Court found that none of Boone cases were ready for transfer as of November 15, 2010, but none of Schwartz' cases were ready for transfer as of November 15, 2010 also.  The same warning that the Court provided to Boone was also provided to Schwartz because his cases were in the same posture as Boone. (Docket #2839 at 6)

On December 6, 2010 the Court entered a Revised Scheduling Order For All Products Liability Cases. (Docktet 3141, p. 2, 3)  The Order, in part, provided , as follows:

4

'Regarding the Schwartz Law Firm cases, the Court remains concerned that template paper discovery may not be complete because the submissions to the Court state that is the status regarding the Schwartz cases within the first wave o 130 cases. Accodingly, Defendants may file the same motions regarding the cases as they may file in the Boone cases.  The Court also cautions Attorney Schwartz as it has Attorney Boone as paragraph 5's admonitions apply fully to the Schwartz cases as well."

The only difference in the Schwartz and Boone cases is that Schwartz kept stating that he was going to cull and dismiss many of his cases, which he is yet to do as of February 4, 2011.

Despite nearly 50% of Boone Plaintiffs having been dismissed (~143 Plaintiffs voluntarily dismissed and 47 Plaintiffs dismissed by Court without objections) the Court has commented,  "The Court……………………………………………wonders why, in the eyes of Attorney Boone, so many of his cases remain viable at this stage of the MDL when other, seasoned, plaintiffs' counsel are seeking to dismiss or withdraw from perhaps as many as half of their cases." (Docket 2839 at 3, 4)

Boone Plaintiffs' cases are viable and could not be justifiably dismissed.  Even setting aside the Plaintiffs cases involving gunshot, wrist cutting, overdosing, driving  off the road and other suicide attempts, the Plaintiffs cases with less serious physical injuries are worth pursuing.  These Plaintiffs allege that their "off-label" use of Neurontin caused them to experience suicide ideation and/or suicidal thoughts and depression. Additionally these Plaintiffs contend that they suffered continued pain from their underlying medical condition while taking Neurontin because it was ineffective for their pain.  They state that they underwent mental and emotional distress upon learning that Neurontin was not FDA approved for their pain condition.  They seek further damages

for the prescription cost/co-pay incurred, non-treatment of their underlying health condition, other medical and related expenses and punitive damages.

Punitive damages are allowable if the defendant acted with actual malice; acted with gross negligence which evidences a willful, wanton or reckless disregard for the safety of others; or committed actual fraud.  Miss. Code Ann. § 11-1-65(1)(a).

Punitive damages are awarded in a large enough amounts to punish a wrongdoer of its actions and also deter the wrongdoer from repeating such conduct in the future. A punitive damage award should also be large enough to serve as a warning to others and thank the injured party for bringing the suit which protects the public from future harmful acts. *Whittington v. Whittington*, 535 So. 2d 573 (Miss. 1988); *Snowden v. Osborne*; 269 So. 2d 858 (Miss. 1972).

Pfizer's admitted criminal conduct meet the standard of willful and wanton disregard for the safety of others when it marketed Neurontin for an untested off-label use to increase sales of the product.

Accordingly, these Plaintiffs continue to seek their day in court

**Boone objects** to the Court improperly factoring into the recommendations that Boone inadvertently publicly filed confidential information regarding his clients.  This error occurred when Boone was trying to prove to the Court that medical records had been requested of certain clients to prevent dismissal of their cases, but inadvertently the cover letters to the medical facilities contained confidential information.  Per order of the Court, Boone went through a laborious process on notifying each client of the occurrence and offering free credit checks and credit monitoring, if requested.  This event however

bears no relationship as to whether Boone Plaintiffs complied with discovery orders of the Court and as such the event should not have been considered by the Court.

**Boone objects** to the Court's finding that the inclusion in his first case chart seventy-five cases in which medical authorizations had not been provided was in violation of the Court's Order.

The Court is correct that Boone listed in his first case chart seventy-five cases in which medical authorizations had not been provided, but it was also listed on the medical authorization section of the chart **"no, move to withdraw"** meaning that no authorization had been provided and that Boone would move to withdraw from these cases.  (See Boone Chart, Doctket #3064, 3093, 3123, 3161 and 3219)  The implication that Boone somehow tried to mislead the Court or violate the Court's Order regarding these seventy-five Plaintiffs is wrong.  Boone did not object to the Court's recommendation of dismissal of 47 of these Plaintiffs.  Accordingly, there is no relationship between Boone's listing of 75 cases in his first chart that had no authorizations (even though the chart indicated "no" and "move to withdraw") and the propriety of the discovery responses in the remaining cases.  Boone's listing of these 75 Plaintiffs as explained does not violate any Court order and should not have been considered by the Court in determining the recommendations in these cases.  The fact that 75 Plaintiffs failed to timely produce authorizations, whereas over 200 Plaintiffs did produce authorizations, does not equal to a disregard of the Court's Order by Boone.  The Court subsequently dismissed 47 of the 75 Plaintiffs without objections from Boone.  The failure of these 47 Plaintiffs should not serve as basis for recommendation of dismissal of all Plaintiffs.  The failure of the 47 Plaintiffs to provide the authorizations is not Boone's fault either, but rather it is the fault

of the 47 Plaintiffs who have long been dismissed from this litigation.  This failure does not constitute any violation of any Court Order by Boone or any pattern of behavior of Boone so as to justify dismissal of all Plaintiffs' cases.

> **A.  Boone has Failed to Make Himself Available for Depositions as Ordered by the Court.**

**Plaintiffs object** to the Court's finding and/or report that "*Boone has failed to make himself available for depositions as ordered by the Court*".

The manner in which depositions were scheduled involved the Defendants submitting to Plaintiffs a list of Plaintiffs and/or prescribers that Defendants wanted to depose on particular dates.  Plaintiffs' counsel would thereafter respond to Defendants' proposed schedule. Depositions for November 20l0 proceeded, as follows:

### A.  <u>Depositions taken November 2010</u>

1.  Jack Hollister, M.D., prescribing physician for Plaintiff Shirley Drennan, was deposed on November 9, 2010 in Starksville, Mississippi.

2.  Margaret Cassada, M.D., physician for Plaintiff Shirley Drennan, was deposed on November 10, 2010.

3.  Harold Wheeler, M.D., prescribing physician for Plaintiff Shirley Drennan, was scheduled to be deposed on November 11, 2010, but the physician canceled the deposition at the last minute.

4.  Charles Brock, M.D., prescribing physician for Plaintiff Catherine Duvall, was deposed on November 15, 2010 in Cleveland, Mississippi.

5.  Nathaniel Brown, M.D., prescribing physician for Catherine Duvall, was deposed on November 15, 2010 in Mound Bayou, Mississippi.

6.  Plaintiff Debbie Sullivan was proposed by Defendant to be deposed on November 9, 2010 in Cleveland, Mississippi, which was the same date that Jack Hollister, M.D., prescribing physician for Plaintiff Shirley Drennan, was deposed in Starksville, Mississippi.

7.   Plaintiff Maybelle Newsome was proposed by Defendant to be deposed on November 11, 2010, which was the same date that Harold Wheeler, M.D., prescribing physician for Plaintiff Shirley Drennan, was scheduled to be deposed.

8.  Plaintiff James Hunter was proposed by Defendant to be deposed on November 15, 2010 which was the same date that Charles Brock, M.D., and Nathaniel Brown, M.D., prescribing physicians for Plaintiff Catherine Duvall, was deposed.

9.  Defendant proposed deposition dates for Plaintiffs, Elizabeth Marie Knight, Delories Powell, and Christopher Kyles for November 18, 19, and 20, respectively.  These dates would have been the traveling dates for Plaintiffs' attorney for the hearing that was scheduled for November 19, 2010 in Boston.

10. Defendant also proposed Plaintiff's depositions for November 8, 2010 and November 12, 2010, but Plaintiff counsel informed Defendant's counsel that he was previously scheduled for Court hearing on November 8, 2010 in an unrelated case in Jackson, MS and for CLE on November 12, 2010.

Plaintiffs' counsel, as well as Defendants' counsel, had set aside the full day of November 11, 2010 to depose Dr. Harold Wheeler, but Dr. Wheeler canceled the deposition at the last minute.  The cancellation of deposition by the physician was totally out of the control of Plaintiffs' counsel.

Plaintiff Maybelle Newsome was proposed by Defendant to be deposed on November 11, 2010, which is the same date that Harold Wheeler, M.D. was proposed to be deposed. Fully expecting to depose Dr. Wheeler the deposition of Maybelle Newsome on the same date was not scheduled. Maybelle Newsome was subsequently deposed.

This Court scheduled a hearing in this case on November 19, 2010 in Boston, MA. Plaintiffs' counsel resides in Cleveland, Mississippi. In order to attend the November 19, 2010 hearing Plaintiffs' counsel was scheduled to fly to Boston on November 18, 2010. Plaintiffs' counsel would have attended the hearing on November 19 and fly back home on the morning of November 20, 2010. In fact, as Plaintiffs' counsel was boarding the plane on November 18 when he was notified that the hearing had been cancelled. There was no way for Plaintiffs' attorney to have known in advance that the November 19, 2010 hearing would be cancelled as to go forward with the depositions of Plaintiffs, Elizabeth Marie Knight, Delories Powell, and Christopher Kyles scheduled for November 18, 19, and 20, respectively. These dates would have been the traveling dates for Plaintiffs' attorney for the hearing that was scheduled for November 19, 2010 in Boston, MA. Again, the event that precipitated the cancelling of these depositions was out of Plaintiffs' attorney's control. The deposition of Deloris Powell and Christopher Kyles were subsequently taken. The claim of the Estate of Elizabeth Marie Knight was voluntarily dismissed by Plaintiffs.

Mississippi has mandatory CLE hours. Plaintiffs' counsel informed Defendants that on November 12, 2010 he had to attend a CLE seminar in order to comply with Mississippi's CLE requirement.

Plaintiffs' counsel was previously scheduled for Court hearing on November 8, 2010 in an unrelated case in Jackson, MS.

Further, the Court's Order of June 9, 2010 had set the discovery deadline for November 15, 2010 on these cases and the parties were not clear if depositions could occur after this date without Court approval.

Furthermore the cases of several Plaintiffs that were scheduled for November 2010 were voluntarily dismissed.

The explanations of Plaintiffs' counsel provided herein regarding the November 2010 depositions was previously provided to the Court on 11/29/2010 in *Boone Plaintiffs Status Update Regarding Intended Depositions.* (Docket #3134).

## B.  Depositions for December 2010

Depositions for December 2010 occurred, as follows:

Plaintiff Deborah Watson was deposed on December 7, 2010;

Plaintiff Christopher Kyle was deposed on December 9, 2010;

Plaintiff Lashonda Skinner was deposed on December 15, 2010;

Plaintiff Maybelle Newsome was deposed on December 16, 2010;

Plaintiff James Hunter was deposed on December 17, 2010;

Plaintiff Bobbie Bryson was deposed on December 20, 2010;

Plaintiff Jessie Allen was deposed on December 21, 2010;
Plaintiff Deloris Powell was deposed on December 28, 2010;

Plaintiff Jerrell M. Bearden was deposed on December 28, 2010;

Plaintiff Debbie Sullivan drove from Jackson, Mississippi to Cleveland, Mississippi for her deposition on December 2010, but the Defendants had not arranged for a stenographer or videographer so the deposition was postponed;

Plaintiff Terry Banks provided a medical excuse from his physician informing

that he was undergoing therapy for advanced lung cancer and that his clinical condition precluded him from attending his deposition scheduled for December 14, 2010;

Plaintiff Laperial Melvin informed Plaintiffs' counsel on the morning of her deposition scheduled for December 12/30/2010 that she was being admitted to the hospital on an emergency basis. **(See 12/30/2010 email to Defendants, Exhibit 4).**

Plaintiffs Ethel Howard, William Webb, and Estate of Elizabeth Marie Knight notified Defendants that they would dismiss their cases and thereby cancelling the depositions scheduled for December 8 and 14, respectively. (Docket #3194-1 at 1, 2)

The Court was previously made known of the Status of the December depositions by virtue of the *Status of the Boone Law Firm December Depositions* filed on December 27, 2010.  (Docket #3194-1 at 1, 2)

The ***claim of the Estate of Elizabeth Knight was known to be an estate claim.*** Long before the scheduling of the deposition, the claim of Elizabeth Knight was made known and listed as the Estate of Elizabeth Knight. Boone Discovery Chart filed 7/11/2010 list the claim as "Estate of Elizabeth Knight". (Docket 2885 at 4)  The letter to Mark Cheffo, Esq. dated 7/19/2010 that enclosed medical provider lists for Plaintiffs list the subject claim as "Estate of Elizabeth Knight. (**See letter, Exhibit 5**) Plaintiff's (supplemental) Answer to Interrogatories filed September 5, 2010 lists the Plaintiff as "Estate of Elizabeth Knight". (**See Exhibit 6**)

Contrary to the Court's findings and report, not only did Boone make himself available for depositions, Boone even hired outside counsel to cover the deposition of Plaintiff Deloris Powell in efforts to comply with the Court's Order.  Plaintiffs' counsel hired outside counsel, Arnold Lee, Esq. to handle the deposition of Plaintiff Deloris

Powell on December 28, 2010 while Plaintiffs' counsel was simultaneously handling the deposition of Plaintiff Jerrell M. Bearden.

### C. Depositions for January 2011

Depositions for January 2011 occurred, as follows:

Plaintiff Annie Gatewood was deposed on January 5, 2011;

Plaintiff Lee Allan Haley was deposed on January 6, 2011;

Plaintiff Josephine Jackson was deposed on January 7, 2011;

Plaintiff Charlotte Jenkins was deposed on January 12, 2011;

Plaintiff Jacqueline Kendrick was deposed on January 13, 2011;

Plaintiff Ellaweise Lacy was deposed on January 19, 2011;

Plaintiff Henry Landrum was deposed on January 20, 201l;

Plaintiff Birdie Langdon was deposed on January 21, 2011;

Plaintiffs Lois S. Adams, Grace Scott and Helen Williams dismissed their cases;

Plaintiff Sherman McDonald, Jr. was not reachable for at least two days prior to his deposition scheduled  for January 25, 2011 so Plaintiff's counsel notify Defendants' counsel of the uncertainty and Defendants' choose to not appear for the deposition, which is reasonable, but Defendants' counsel also refused to appear for the deposition of Plaintiff Linda Murray scheduled for January 26, 2011.  Defendants' counsel stated that she was not coming to Mississippi for just one deposition.

In fact, in January 2011, Plaintiffs' counsel appeared for eight (8) depositions, was available for two (2) additional depositions that the Defendants unilaterally cancelled, dismissed three (3) Plaintiffs, and postponed one (1) Plaintiff due to estate work needed.

In summary, the finding and report that **"*Boone has failed to make himself available for depositions as ordered by the Court*"** is not supported by the evidence.   As aforesaid, Boone even hired outside counsel to help meet the requirements of the Court's Order. Unfortunately some Plaintiffs were too ill to attend their depositions and other Plaintiffs choose to dismiss their case.  Obviously Boone could not travel to Boston, appear at a hearing, fly back home, and attend depositions all at the same time.

> **B.     In 2006, the Court Determined the Time Period Governing Template Interrogatory Responses, Boone Did Not Object, but Elected to Disregard the Rulings and Requested Information from his Clients Only for a Narrower Time Period Than Ordered.**

**Plaintiffs object** to the Court's findings and/or report that Boone elected to disregard the Court's ruling and requested information from his clients only for a narrower time period than ordered.

Boone received the Template Discovery Form used by Boone Plaintiffs from the Plaintiff Steering Committee.  This fact is mentioned not in an effort to shift blame, but rather to show that Boone did not redesign the Template Discovery Form in any effort to disregard the Court's Order.  Boone followed the Form that was provided.   Therefore Boone has not intentionally disregarded the Court's ruling and requested information from his clients only for a narrower time period than ordered.  As soon as Boone learned that the limitations were not applicable, Boone began to supplement Plaintiffs' interrogatory answers that may have had limitation answers and all new supplements were made without limitations.  In many instances the supplemental answers without limitations were the same as the original answers with the limitations.

As aforesaid Plaintiffs were supplementing their interrogatory responses on a continuous basis prioritizing the supplementation based upon the Plaintiffs scheduled to be deposed.

14

Over 80% of the Plaintiffs have not been scheduled to be deposed including the Plaintiffs Larry Vail,  JoAnn Walls, Shirley Walters and Della Washington, whose interrogatory responses were reviewed by the Court.  These Plaintiffs' template discovery would have been supplemented in the same course.

Plaintiffs further cured the limitation issue by completing a Medical Provider List Form that requested a list of every health-care professional or facility that provided any type of care (mental or physical) over the last 20 years. (**See Exhibit 7**, Part 1, Part 2) that contain a composite sampling of Medical Provider Lists, including  Audrey Berry (55), Lynette Criss(6), Linda Cunningham(5), Ruby Crapps(7), Catherine Duvall(7), Annie Edwards(9), Michael Fisher(6),Beneal Miller Gildon(9), Frances Glenn(5), Fannie Grinston(5), Lee Haley(5), Tommy Hardy(10), Marie Barber(6), Vannila Bennett(10), Estate of Joe Blaylock(8), Frances Bouie(13), Darrell Brooks, Sr.(9), Jessie Brown(6), Thomas Brown(13), Christine Harris(9), Freddie Harris(5), Bobbie Bryson(15), Melvin Harris(5), Belinda Havard(6), Florence Hayes(5), Rufus Hendon(7), Carl Henry(9), Narie Givens(7), Mae Catherine Hester(4), Shawand Hicks(8), Evia Holmes(10), Frank Hoover(6), Ruby Hoover(7), Emma Howard(10), James Hunter(9), Lillie Hunter(4),Jerry Lowe (22), Charles Ingram(4), Doris Johnson(11), Shanetta Lacy(6), Ollie Johnson(6), Rose Jones(9), Falisha Knight(7), Henry Landrum(5), Dawn Lepord(4), Mickey Livingston(6), Sylvia Longino(15), Lula Lott(6), Jerry Lowe(10), Alford Darby(5), Carolyn Davis(4), Mary Adams(4), Jannie Lucas(10), Betty Newson(6), Lolita Myers(4), Ruby Maxine Smith(4), Della G. Washington(4)).

Please notice that Medical Provider List for Audrey Berry was completed in her handwriting on the Form that Boone submitted to the Plaintiffs for the listing of their

medical providers.  This Medical Provider List Form specifically requests Plaintiffs to list all of their physicians for the past 20 years.  This Form is evidence that Boone was complying with the Court ordered time frame without regard to the time limitation objection on the interrogatories.

As this Court can see Plaintiffs have provided Medical Provider Lists that include varying numbers of physicians ranging from four (4) to fifty (55).  Accordingly the Defendants' representation made to the Court regarding the Medical Provider List is inflated to say the least.  The Court's reliance on Defendants' representation as to the Medical Provider List casually related to the negative findings, report and recommendations.

The Court reports that Boone has not provided medical provider list in some cases without specifying the cases.  **Boone objects** to this finding.  Again, without specifying the cases the Court states that in other cases the names of only one or two providers have been provided.  Boone objects this finding.

The Court has not made an individual review of each of Boone's Plaintiffs to determine if the medical provider list was deficient as to each Plaintiff.  It is unfair and unjust for all Plaintiffs' cases to be dismissed without a review to determine if each Plaintiff has a deficient medical provider lists. The number of doctors listed on the medical provider list varies from plaintiff to plaintiff.

**Boone objects** to the Court's conclusion/finding/report that "in no case has Boone complied with his template discovery obligations regarding medical providers".  The facts regarding the varying numbers of medical providers submitted by the respective Plaintiffs belie the Court's conclusion/finding/report.

Over 80% of the Plaintiffs have not been deposed or otherwise examined as to whether they have medical records in their possession that have not been produced.  Notwithstanding the Court recommends 100% dismissal of Plaintiffs when there is no evidence that the 85% of Plaintiffs not yet deposed have medical records not produced.  Further most Plaintiffs deposed have indicated that they do not have medical records in their possessions.  Other Plaintiffs have brought medical records, such as prescription slips to the deposition.  Often the information contain on the prescription slip is also contained on the pharmacy printouts that have been produced to Defendants.   Moreover Plaintiffs are advised upon intake to submit all relevant documents to our firm.  Plaintiffs are also instructed to bring any related documents to the deposition.

Again over 80% of the Plaintiffs have not been deposed so it cannot be reliably concluded that the 80% of Plaintiffs even have medical records in their possession, and if so, that the records have not been preserved or requested to be preserved.

The Court made no determination as to whether the information on the medical records (prescription slips) is not otherwise provided by production of medical records and pharmacy records.

### D.  Boone Disregarded and Disobeyed the Court's Clear and Settled Discovery Rulings Regarding Disclosure of Medical Records

**Boone objects** to the Court's finding and/or report that "Boone disregarded and disobeyed the Court's Clear and Settled Discovery Rulings Regarding Disclosure of Medical Records".

Without reviewing the case of each Plaintiff, the Court found that Boone has also failed to comply with the Court's required template discovery requiring each plaintiff to produce "copies of all of the medical records currently in their possession and [to] supplement the production as they receive medical records in the future."

17

First, the Court references 280 Boone Plaintiffs when in fact there were only 213 Plaintiffs at the time that the Motion to Compel was filed, and in 10 of the 213 cases there were pending agreed upon dismissals.  At time of the Court's ruling on the Motion to Compel on February 4, 2011 there were only 200 Boone Plaintiff cases.  So we don't know if the approximate100 cases alleged to have 20 pages or less of medical records include dismissed cases.  The 180 Plaintiffs that produced around 100 pages of medical records may be the only active Plaintiffs. Some Plaintiffs produced even more than 100 pages of medical records.  Even with the Court's count the Plaintiffs have produced over 20,000 pages of medical records to Defendants. Without individually reviewing and specifying the Plaintiffs it is impossible to know which Plaintiff fits into the particularly grouping.  It is possible that active Plaintiffs may be subject to sanction based upon facts relating to dismissed Plaintiffs.  The Court should not have recommended dismissal of all Plaintiffs cases without a review of all cases to determine if noncompliance exists, and even if so, was such noncompliance willful, and if less harsh sanctions were warranted.

**Boone objects** to the Court's findings/report that Boone has failed to produce "copies of all of the medical records currently in their possession and [to] supplement the production as they receive medical records in the future."  As aforesaid, Boone has produced by Defendants' admission over 20,000 pages of medical records.  There is no competent basis for the Court to have concluded that 100 pages of medical records of respective Plaintiffs were not all the medical records that **Plaintiffs has in his possession.**  The fact that Defendants state that other plaintiffs have produced more records is not a sufficient basis to recommend that all Plaintiffs' cases be dismissed.

Boone has produced all records that have come into his possession from Plaintiffs' medical facilities and from Plaintiffs individually.  (See **Boone's Declaration**)

Boone has now even incorporated language from the notice of deposition into his cover letter to Plaintiffs notifying them of their depositions, as follows:

I request that you look around your house to determine if you have any of the documents or things listed below as follows:

1. All documents, records, correspondence, and other material reviewed by the deponent in preparation for this deposition.

2. All documents, books, records, films, videotapes, photographs, diaries, calendars, reports, memoranda, and papers in the deponent's custody and possession related to: (i) the claims set forth in Plaintiff's Complaint; (ii) the injuries allegedly sustained by Mary Lawson; (iii) any medical records for Mary Lawson; and (iv) any communications with any healthcare professional about Neurontin.

3. All documents, records, correspondence, or other material s in your possession relating to Neurontin.

4. All documents, records, correspondence, or other material s in your possession relating to Pfizer.

If you have any of these documents bring them with you to the deposition and give them to me upon your arrival.

**(See Exhibit 9 ---deposition cover letter)**

Accordingly **Boone objects** to the Court findings that Boone has: (1) failed to advise his clients to preserve and to produce medical records in their possession; (2) failed to obtain from his clients all of the medical records in their possession; and (3) failed to produce all medical records in his possession.

**Boone objects** to the finding/report/suggestion that Boone tried to evade the Court's order by replying to an email inquiring as to Defendants' thoughts about medical records that were not in Boone's possession in light of the Plaintiffs having executed medical authorizations.  Boone had already sent all medical records in his possession to Defendants prior to replying to the email.  The suggestion that Boone was somehow trying to disregard the Court's order is misplaced. (**See email, Exhibit 10)**

The Court without reviewing each Plaintiff's case improperly concluded that the production of each and every Plaintiff is infected.

**D.    Boone Has Failed to Obtain Non-medical Authorizations From His Clients
As Ordered by the Court**

**Boone objects** to the Court's finding and/or report that "Boone has failed to obtain non-medical Authorizations from his clients".

There remained 200 Boone Plaintiffs as of February 4, 2011.  Prior to the Court's report and recommendation Plaintiffs had submitted non-medical Authorizations on 174 Plaintiffs.  (**See Exhibit 11 – 10/4/2010 Letter enclosing 25 non-medical authorizations, Exhibit 12 – 10/6/2010 Letter enclosing 40 non-medical authorizations, Exhibit 13 showing emailing of 109 non-medical authorizations**)

The remaining Plaintiffs with outstanding non-medical authorizations were being cured prior to the Court's February 4, 2011 recommendations.

As shown, Defendants' assertion and the Court's apparent agreement that the "vast majority" of Boone Plaintiffs have failed to provide authorizations for employment and education records is inaccurate.

**E.    Boone Disobeyed the Court's Discovery Rulings and Refused to Answer
Two Interrogatories That the Court Ordered Answered.**

**Boone objects** to the Court's finding and/or report that Boone disobeyed the Court's discovery rulings and refused to answer two interrogatories that the Court ordered to be answered.

Boone followed the Template Discovery Form that was provided by the Plaintiff Steering Committee.  Boone did not redesign the Template Discovery Form to provide the objections contained thereon.  Boone has not intentionally disregarded the Court's ruling.  As soon as Boone learned that the objections were not applicable, Boone began to supplement Plaintiffs' responses to interrogatories no. 8 and 9 and all new supplemental answers provided

a response to interrogatories no. 8 and 9.  **(See Exhibits 14 – 26, sampling of Plaintiffs'**
**Interrogatories Answers that responded to Interrogatory no. 8 and 9).**  Additionally
during the depositions, the Plaintiffs provided answers to interrogatories no. 8 and 9 without
objection from Plaintiffs' counsel.

As shown many Plaintiffs have provided responses to Interrogatories no. 8 and 9, but
yet their cases were also recommended for dismissal.

The Court commented that Boone did not object to Discovery Order no. 2, but
Discovery Order #2 was entered in 2006 which is one year prior to the *Jessie Allen, et al, supra*
Complaint being filed.  Accordingly, Boone had no opportunity to object or appeal the order as
the Court implies should have been done.

   **F.     Boone Provided A Canned, Non-Responsive Answer to Interrogatory**
   **Number Eleven On Behalf of Many of His Clients**

**Boone objects** to the Court's finding and/or report that "Boone provided a canned, non-
responsive answer to interrogatory number eleven on behalf of many of his clients."

Without reviewing the individual interrogatory responses and supplemental responses
of each Plaintiff, the Court summarily recommends dismissal of all Plaintiffs cases
notwithstanding that most Plaintiffs provided detailed answers to interrogatory no. 11.
A sampling of Plaintiffs' Answers to Interrogatory no. 11 is listed below:
Plaintiff Shirley Drennan responded to Interrogatory no. 11, as follows:

**ANSWER TO INTERROGATORY NO. 11:**
**Plaintiff shot herself in January 2001 while she was taking Neurontin that was prescribed by the**
**pyschiarist Dr. Hines for severe pain.  Plaintiff's dosages was consistently increased because Neurontin**
**was not working for her pain.  Plaintiff had thoughts of suicide all the while she was taking Neurontin.**
**Plaintiff tried to commit suicide by overdose while on Neurontin.  Plaintiff has not had any thoughts of**
**suicide after stop taking Neurontin.  Plaintiff was at Life Help in Greenwood, Mississippi. Plaintiff shot**
**herself right above her breast on the left side attempting to shoot herself in the heart.**

**(Exhibit 28, Drennan's Interrogatories Answers)**

Plaintiff Deborah Watson responded to Interrogatory no. 11, as follows:

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 11:  Plaintiff thought about overdosing while taking Neurontin.**

Plaintiff intentional ran off the road in an attempt to commit suicide.  Abnormal thinking and suicidal ideation.  Further Plaintiff incorporates all medical records produced and to be produced that describe any instances of psychiatric or mental illness, suicide, attempted suicide, homicide or other violent behavior by Plaintiff.   Plaintiff is not aware of any family member having any instances of psychiatric or mental illness, suicide, attempted suicide, homicide or other violent behavior.

**(Exhibit 29, Watson's Interrogatories Answers)**

Plaintiff Edward Jordan responded to Interrogatory no. 11, as follows:

 **ANSWER TO INTERROGATORY NO. 11:  Plaintiff had suicidal thoughts and plans of shooting himself and jumping off the bridge.  Plaintiff went up on Mississippi Arkansas Bridge to jump off, but God intervened before he completed the act.  Further Plaintiff incorporates all medical records produced and to be produced that describe any instances of psychiatric or mental illness, suicide, attempted suicide, homicide or other violent behavior by Plaintiff.**

**(Exhibit 30, Jordan's Interrogatories Answers)**

Plaintiff Claudette Greer responded to Interrogatory no. 11, as follows:

 **ANSWER TO INTERROGATORY NO. 11:**
**Plaintiff while taking Neurontin became depressed, had mood swings, suicidal thoughts and suidicual ideation.  Plaintiff was contemplating taking an overdose of pain medication, but thought about her children and grandchildren and did go through with it.  These thoughts would reoccur every week while taking neurontin.  Plaintiff thought about running off the bridge into water so as to drown herself because she can not swim.  She thought of killing herself by running off a bridge on several occasions.  Plaintiff felt unusually angry at the world while taking neurontin.  Plaintiff believes her memory is negatively affected by Neurontin.  The depression, mood swings and suicidal thoughts and suidicual ideation went away in about months after stopping Neurontin.**

**(Exhibit 31, Greer's Interrogatories Answers)**

 Plaintiff Sanders Williams responded to Interrogatory no. 11, as follows:

 **ANSWER TO INTERROGATORY NO. 11:**
**Plaintiff got into many physical altercation. Damaged mother's house…police were called. Severe depression. Thought about killing himself. Put a gun to his head and pulled the trigger, but it misfired. Considered a drug overdose as well, but his grandmother.**

 **Abnormal thinking and suicidal ideation.  Further Plaintiff incorporates all medical records produced and to be produced that describe any instances of psychiatric or mental illness, suicide, attempted suicide, homicide or other violent behavior by Plaintiff.**

**(Exhibit 32, Williams' Interrogatories Answers)**

 Further examples of detailed answers to interrogatory no. 11 is provided by the

following Plaintiffs:

 Exhibit 33, Linda Cunningham-…..04/08/2008------depression;
 Exhibit 35, Alford Darby-…………….04/08/2008------depression;

Exhibit 36, Emma Clark-................04/08/2008------suicidal thoughts;

Exhibit 37, Darrell Brooks-................3/26/2008------depression;

Exhibit 38, Thomas J. Brown-............04/04/2008-------suicidal thoughts—weapon;

Exhibit 39, Catherine Duvall-..........04/14/2008------suicidal thoughts & depression;

Exhibit 40, Hershel Jack Price-..........04/16/2010-------depression;

Exhibit 41, Louisia Smith-................04/19/2007------depression, anxiety;

Exhibit 42, Jannie Smith-.................04/25/2007-------depression, suicidal thoughts;

Exhibit 43, Terry Banks-..................03/25/2008-------depression, suicidal thoughts;

Exhibit 44, Pearlie Maddox-...............04/17/2007------depression, suicidal thoughts, self
Inflicted pain;

Exhibit 45, Lolita Myers-..................04/27/2007------Extreme anger, violence, moods

Exhibit 46, Estate of William Webb-... 04/27/2007------depression

Exhibit 47, Re'Shedia Young-............ .04/12/2007------death wishes, anger;

Exhibit 48, Mary Cooper-..................04/12/2007-----very depressed, "go off on people";

Exhibit 49, Betty Newson-..................04/17/2007-----Easily upset, lashing out at people;

Exhibit 50, Jerrell Bearden-................04/12/2007-----Attempted suicide with gun;

Exhibit 51, Frank S. Smith-........ ........04/18/2007------depression and suicidal thoughts;

Exhibit 52, Lee Haley-.......................04/12/2007---Severe depression, suicidal thoughts

Exhibit 53, James Hunter-..................04/12/2007------depression, snapping at others;

Exhibit 54, Patricia Rhodes-................04/13/2007------thoughts of suicide, depression;

Exhibit 55, Vivian Allen-..................03/25/2008------depression;

Exhibit 56, Michael Trim-..................7/22/2010------Attempted suicide, cut wrist;

Exhibit 57, Pamela Shields-...............05/05/2008------depression and suicidal thought

Exhibit 58, Mary Lawson----------------12/9/2011---depressed, thought of hurting self

Exhibit 59, Roy Carroll...................12/15/2010----Thoughts of violence aga others

Exhibit 60, Bobbie Bryson-............12/15/2010----violent behavior and depression

Exhibit 61, Maybelle Newsome-............12/14/2010------crazy thoughts, suicidal thoughts
And anxiety while driving;

Exhibit 62, Debbie Sullivan.............-12/08/2010-----Severe depression;

Exhibit 63, Estate of Aliece Garrett-...10/10/2010-----depression;

Exhibit 64, Estate of Katherine Warfield-10/01/2010—depression, cried a lot,
Suicidal thoughts and ideation

Exhibit 65, Shirley Ann Walters........-10/01/2010----Attempted suicide—overdose;

Exhibit 66, Joann Walls..................-10/01/2010---Attempted suicide---veered car
To run off bridge to kill herself

Exhibit 67, Larry Vail....................-10/01/2010---Attempted suicide—overdose;

Exhibit 68, Francis Womack............-10/01/2010---depression, "I hate life";

Exhibit 69, O. C. Williams, Sr..........-10/01/2010---mean, moody, severely
Depressed;

Exhibit 70, Jessie Allen...................10/14/2010 ---violent behavior;

Exhibit 71, Doris Toy....................-10/01/2010----depression, abnormal
Thinking, suicide ideation,
Violent thoughts & behavior

Exhibit 72, Taylor Williams..............-10/01/2010----memory loss, abnormal
Thinking & suicide ideation;

Exhibit 73, Nolan Williams...............10/01/2010-----depression;

Exhibit 74, Morris E. Townsend..........10/01/2010-----Attempted suicide by Police;

Exhibit 75, Helen Williams...............10/01/2010------Severe depression;

Exhibit 76, Carole Williams…………...10/01/2010---   planned to commit suicide
By overdose;
Exhibit 77, Edneatha White……………10/01/2010-----severe depression;
Exhibit 78, Magnolia Thomas…………10/01/2010-----wanted to kill herself and
Her son;
Exhibit 79, Michaelon Weathersby, minor-10/01/2010----violent behavior;
Exhibit 80, Erestia Thomas…………….10/01/2010---violence, thoughts of suicide
Exhibit 81, Joyce Watson………………10/01/2010---severe depression, attempted
Attempted suicide;

The propriety of the response "abnormal thinking and suicidal ideation" can only be tested after a deposition of the respective Plaintiff.  Further "abnormal thinking and suicidal ideation" is a description of a certain type of illness or suicidal behavior.  Moreover, the Plaintiffs voluntarily supplemented their responses to provide more details regarding their injuries.   The Court's broad recommendation of dismissal of all Plaintiffs' cases is not warranted.

### G.    Boone's Process for Gathering Information From His Clients Prevented Satisfactory Discovery Responses.

**Plaintiffs object** to the Court's finding and/or report that "Boone's process for gathering information from his clients prevented satisfactory discovery responses".

Interrogatory no. 7, specifically requests the Plaintiff to "identify **each person** known" with knowledge of facts relevant to the case.

Interrogatory no. 7 reads, as follows:

> **Identify each person known to Plaintiff or Plaintiff's counsel who has knowledge of any facts relevant to this case, specifying as to each person the nature and extent of the personal knowledge that you claim they have concerning the facts of this case.**

The interrogatory requests identification of "each person" notwithstanding the space provided on the form.  The Plaintiff could have written on the back of the form or added an additional page if needed.  The form was not intended as a limitation.  There is no evidence that

the form caused the Plaintiffs to think that their answer should be limited to one person because of the space provided on the form particularly in light of the clear language of the interrogatory.

Moreover, most Plaintiffs have listed numerous persons in response to interrogatory no. 7.

Even if the Court is saying that Boone's form caused Plaintiffs to provide limited answers, most Plaintiffs nevertheless provided adequate answers to interrogatory no. 7.

Interrogatory no. 10, specifically inquires as to "if **at any time**" Plaintiff ever consulted a psychiatrist, psychologist, therapist, counselor, or other mental health professional of any sort.

Interrogatory no. 10 reads, as follows:

> **If at any time Plaintiff ever consulted a psychiatrist, psychologist, therapist, counselor, or other mental health professional of any sort, including but not limited to, an individual with a social work degree, school counselors, counselors at work, counselors at church, etc., or if Plaintiff underwent psychiatric or psychological examination or treatment of any kind, please state the name, address and specialty of the person performing the consultation or treatment, the name and location of the facility where it took place, the nature of the therapy received and the dates the therapy was received**

The interrogatory requests identification of "each person" notwithstanding that spaces for three providers were provided on the form.  The Plaintiffs could have written on the back of the form or add an additional page if needed.  There is no evidence that the form cause the Plaintiffs to think that their answer should be limited to three providers if more providers were applicable.

Further the information requested in interrogatory no. 10 was also provided in response to interrogatory no. 12 that requests Plaintiffs to list all of their physicians for the past 20 years. Thus if the Plaintiffs inadvertently left out providers in response to interrogatory no. 10 the providers would be included in response to interrogatory no. 12.

Moreover the Plaintiffs properly answered interrogatory no. 10 by listing the psychiatrist, psychologist, therapist, counselor, or other mental health professional, where applicable, and only in a few cases were such information applicable.

Interrogatory no. 14, specifically requests "name and addresses of **<u>witnesses</u>** with knowledge of any and all medication taken by Plaintiff.

Interrogatory no. 14 reads, as follows:

**State the name and addresses of witnesses with knowledge of any and all medications (whether prescription or not) or drugs (whether prescription or not) which Plaintiff took orally, by injection, through ingestion, by suppository or by external application at any time during a twenty-year period prior to his/her death. For each prescription, please also state the name of the prescribing health-care professional, the name of the prescription, the prescription dosage, each date that the prescription was prescribed, where the prescription was filled, the reason for the prescription and whether it was effective at treating the condition for which it was prescribed**

The interrogatory requests name and addresses of "**witnesses**" notwithstanding that spaces for three witnesses were provided on the form.  The Plaintiffs could have written on the back of the form or add an additional page if needed.  There is not any evidence that the form caused the Plaintiffs to think that their answer should be limited to three witnesses if more witnesses were applicable.

The form was provided only as an easy way for Plaintiffs to complete.  The form did not state provide answers only in the space below.

Interrogatory no. 22, specifically request Plaintiffs to "name and address of **<u>any individuals</u>**" who had contact with Plaintiffs within 72 hours preceding a suicide attempt or death.

Interrogatory no. 22 reads, as follows:

**Please state the name and address of any individuals who may have had contact with Plaintiff, or would have knowledge of his/her behavior or mental state, in the 72 hours immediately preceding his/her suicide attempt or death.**

The interrogatory requests "name and address of **<u>any individuals</u>**" who had contact with Plaintiffs within 72 hours preceding a suicide attempt or death notwithstanding the

space provided on the form.  The Plaintiff could have written on the back of the form or add an additional page if needed.  The form was not intended as a limitation.  There is no evidence that the form caused the Plaintiffs to think that their answer should be limited to one person because of the space provided on the form.

Moreover, Plaintiffs have properly listed numerous persons, if applicable, in response to interrogatory no. 22.

The Court has not reviewed each Plaintiff's response to interrogatory no. 7, 10, 14 and 22 and therefore cannot properly conclude "In those cases in which the form itself was not forwarded on to the Defendants and instead Boone produced a fully-typed response, the nature of the responses indicate that they were based on the same type of form, containing the same limitations.

The Plaintiffs' answer to interrogatories no. 7, 10, 14 and 22 vary from Plaintiff to Plaintiff and there is not any evidence that the answers were limited.

**H.     Boone Disregarded Fed. R. Civ. P. 33 In "Supplementing" Interrogatory Answers**

**Boone objects** to the Court's finding and/or report that "Boone disregarded Fed. R. Civ. P.33 in supplementing interrogatory answers.

Based upon the Court's review of only 8 supplemental interrogatory answers the Court has concluded that Boone disregarded Fed. R. Civ. P.33 in supplementing interrogatory answers as to all Plaintiffs.  Even the Defendants don't make this claim.  Plaintiffs have submitted verifications as to many Plaintiffs and Plaintiffs were continuing to supplement verification upon receipt prior to the Court's February 4, 2011 recommendations.

In an effort to get supplemental answer to Defendants as soon as possible, the Plaintiffs would submit the supplemental answers to Defendants prior to verificatations, but the verification would be later mailed to Defendants.  The interrogatory responses would be supplemented usually following phone conversation with Plaintiffs.  The supplemental responses would then be emailed to Defendants, but also mailed to Plaintiffs with instructions to verify and return to Boone Law Firm for forwarding to Defendants.  The first answer to interrogatories by the Plaintiffs were all verified under oath.  It is only some of the supplemental answers that verification s were yet to be sent to Defendants.  Plaintiffs have not willfully violated or ignored FRCP 33.  Plaintiffs were simply trying to get information in Defendants hand as soon as possible.  If Plaintiffs had waited 3 or 4 days after the supplementation was done  over the phone the Defendants would not have gotten the supplementations until after the Plaintiffs' deposition because the supplementation were based primarily upon deficiency letters submitted by Defendants that did not come until 2 or 3 or 4 days before the depositions.  Plaintiffs have verifications that are ready to be submitted  and were being submitted before February 4, 2011.

A review of two supplemental interrogatory answers from each of eight (8) boxes is not a random selection.  Even if such review was a random selection, which is denied, this process would be unfair and unjust to the remaining 192 Plaintiffs because their individual cases would be judged on the basis on only eight (8) cases.

Although these Plaintiffs are listed in a multi-party complaint, they nevertheless are individual Plaintiffs whose case must be judged individually.

Some Plaintiffs have not even supplemented their interrogatory answers, thus no verification required, but notwithstanding their cases are recommended to be dismissed for lack of verification under oath.

As discussed further herein below, the Defendants (Pfizer) did not sign its interrogatory answers under oath nor did Defendants' attorneys sign any objections.

**I.      Boone Has Improperly Cross-Referenced Answers**

**Boone objects** to the Court's finding and/or report that Boone improperly cross-referenced answers to interrogatories as an evasion to answer truthfully the interrogatories.

Interrogatory no. 4 requests the ten (10) people closest to Plaintiffs in the last 10 years. The response to this interrogatory usually is Plaintiff's spouse, children, parents, and close friends.

Interrogatory no. 22 requests the name of persons Plaintiff had contact with within 72 hours preceding the suicide attempt or death of Plaintiff. The people who fit this category are most often the same people listed in answer to interrogatory no. 4, i.e., Plaintiff's spouse, children, parents, and close friends.

Thus the cross-reference of the answer to interrogatory no. 4 as a response to interrogatory no. 22 is appropriate under most circumstances.  The cross-reference is not an attempt to not answer interrogatory no. 22 truthfully.  There is no benefit or advantage to Boone or Boone's Plaintiffs to not answer interrogatory no. 22 truthfully.

Plaintiffs were not intending to suggest by answering interrogatory no. 22 that they had attempted suicide or death except where appropriate.  None of Boone's Plaintiffs are alleged to have sustained death as a result of ingesting Neurontin.  Plaintiffs' assumed that interrogatory no. 22 also included any person that Plaintiffs had contact with within 72 hours of any alleged injury including suicidal thoughts, suicidal ideation, and continued pain due to ineffectiveness of Neurontin.

Interrogatory no. 12 requests Plaintiffs to list their physicians.  The physicians that treated Plaintiffs while they were taking Neurontin would be aware of the continued pain of Plaintiffs even within 72 hours of the pain.  Accordingly, it was appropriate to cross-reference

the answer to interrogatory no. 12 as a response to interrogatory no. 22.  Certainly, there was no effort to not answer interrogatory no. 22 truthfully.

> J.    **The Defendants Have Established That Boone's Responses to the Template Discovery Are Deficient in Every Case and Boone Has Not Rebutted This Showing.**

**Plaintiffs object** to the Court's finding and/or report that the Defendants have established that Boone's responses to the template discovery are deficient in every case.

The Court has not reviewed every case to make a determination as to whether the template discovery is deficient in every case.

The Defendants on December 20, 2010 filed a gigantic motion to compel regarding 214 Plaintiffs without any regard to their obligation under FRCP 37 to attempt in good faith to resolve discovery disputes prior to filing a motion to compel.  Defendants filed the gigantic motion knowing that in light of Plaintiffs depositions already scheduled in these cases for Dec. 20, 21, 22, 28, 30, Jan. 4, 5 , and the  holidays also therein, that Plaintiffs would not be able to completely respond to the motion by the short deadline of January 4, 2011.

Accordingly, given the tight schedule Plaintiffs' counsel could only respond generally to some of the allegations made in Defendants' Motion to Compel.  It took the Defendants using several lawyers and paralegals 855 hours to prepare the Motion to Compel.  At the rate of 8 hours per day including weekends and holidays it would have taken a single lawyer 107 days to prepare Defendants' Motion to Compel.  Essentially, this is the situation that Plaintiffs' attorney was faced with.  Given the Plaintiffs depositions already scheduled in these cases for Dec. 20, 21, 22, 28, 30, Jan. 4, and 5, it was impossible for Plaintiffs' attorney to respond on a case-by-case basis.

Further the Defendants did not attempt in "good faith" to obtain additional discovery responses from ~200 Plaintiffs before filing the Motion to Compel.  Prior to the filing of the Motion to Compel the Defendants submitted discovery deficiency letters relating only to 14 Plaintiffs. Defendants' obligation to attempt in "good faith" to resolve discovery dispute was arguably met as to these 14 Plaintiffs only. Defendants' complaints of discovery deficiencies relating to the remaining 200 Plaintiffs were made for the first time in Defendants' Motion to Compel.  Accordingly, contrary to FRCP 37 the Defendants did not attempt in good faith to obtain additional discovery responses from 200 Plaintiffs prior to filing their Motion to Compel.  Further, contrary to the intent of FRCP 37, the Plaintiffs have not had a reasonable opportunity to cure any discovery deficiencies relating to these Plaintiffs before the Motion to Compel was filed.

This Court's Order of December 6, 2010 that permitted the filing of a Motion to Compel by December 20, 2010 should not have be used by Defendants as a release of their duty under FRCP 37 to put forth a good faith attempt to resolve the discovery dispute prior to court action.  The Defendants should have only filed a motion to compel relating to cases wherein the moving party had fulfilled its obligation under FRCP 37 to attempt in good faith to resolve the discovery issue prior to filing a motion.

As an example of Boone's non-compliance, the Court points to Plaintiff Shirley Drennan's response to Interrogatory No. 11.

Interrogatory no. 11 reads, as follows:

**INTERROGATORY NO. 11:**

**Please describe any instances of psychiatric or mental illness, suicide, attempted suicide, homicide or other violent behavior by Plaintiff or any of Plaintiff's family members including, but not limited to, his parents, siblings, grandparents, aunts, uncles, and cousins and, for each such instance, identify the person; the person's relationship to Plaintiff the nature of the person's illness or behavior and identify the individuals that might have knowledge of these incidents.**

Plaintiff Shirley Drennan's response to Interrogatory no. 11 reads, as follows:

**ANSWER TO INTERROGATORY NO. 11:**

   **Plaintiff shot herself in January 2001 while she was taking Neurontin that was prescribed by the pyschiarist Dr. Hines for severe pain.  Plaintiff's dosages was consistently increased because Neurontin was not working for her pain.  Plaintiff had thoughts of suicide all the while she was taking Neurontin.  Plaintiff tried to commit suicide by overdose while on Neurontin.  Plaintiff has not had any thoughts of suicide after stop taking Neurontin.  Plaintiff was at Life Help in Greenwood, Mississippi. Plaintiff shot herself right above her breast on the left side attempting to shoot herself in the heart.**

Drennan's response seems fair specific and certainly does not indicate an attempt to be evasive or to not answer interrogatory no. 11.

The Court states that Plaintiff's response to Interrogatory No. 11 contains no description whatsoever of her history of depression.

However in Drennan's responses to Interrogatories No. 10 and 12 indicate her history of depression, as follows:

Drennan's  answer to Interrogatory No. 10, provides:

Name/Specialty: **Dr. Hines**
Address**:  Browning Road, Greenwood, MS**
Name/Location of Facility:  **Life Help**
Nature of Therapy:  **depression, medicine**
Date(s) of Therapy**:  2 years ~**

Drennan's answer to Interrogatory No. 12, in part provides:

Health Care Professional/Facility: **St. Dominic Hospital**
Location:                                  **Jackson, MS**
Treated for:                            **2001 Gunshot wound and depression**
Dates of Treatment:                 **three and one-half weeks in 2001**

Health Care Professional/Facility: **Jack Hollister, M.D.**
Location:                                 **103 Dr.s Park, Starkville, MS**
Treated for:                            **back and depression**
Dates of Treatment:                  **for about 20 years**

The Court also points out that at Drennan's deposition she testified that she was sent to Willow Brook and was diagnosed with major depression.  Somehow the Court is concluding that Boone had knowledge of the Willow Brook's admission, but failed to disclose same. This is not true.  Perhaps Drennan didn't think of the admission at the time of her interview for interrogatory answers.  Boone can do no more than ask the Plaintiffs to provide him the names of every mental institutions treated.

Obviously Drennan was not trying to hide her Willow Brook's admission because if so she would have not disclosed this information at the deposition.  To say the least, Drennan's answer to interrogatories show a good faith attempt to properly respond to the interrogatories.  Her interrogatory answers do not show an abandonment of her claim or a fail to prosecute her claim.

Another example of answers to Interrogatory No.  10, 11 provided by Plaintiff Michael Trim, as follows:

**ANSWER TO INTERROGATORY NO. 10:**
Name/Specialty: **Mississippi State Hospital**
Address: **P. O. Box 157-A, Whitfield, MS 39193**
Name/Location of Facility:  **Whitfield, MS 39193**
Nature of Therapy:  **schizoaffective disorder**
Date(s) of Therapy: **1984**

Region 8 Mental Health Center
Canton, MS

**ANSWER TO INTERROGATORY NO. 11:**
Name/Relationship to Plaintiff:
Nature of Illness or Behavior: **while taking Neurontin, Michael G. Trim attempted to commit suicide by cutting his wrist on or about November 9, 2000.**

Person w/Knowledge of Illness or Behavior:  **R. Wayne Smith, MD of the Mississippi State Hospital; VA Medical Center, Woodrow Wilson Drive, Jackson, MS; Jackie Trim, 250 Pine Tree Lane, Ridgeland, MS 39157;  Sammy Trim, 270 Cameron St. Jackson, MS 39216;**

V. A. Medical Center
1500 East Woodrow Wilson Drive
Jackson, MS  39216

**Plaintiffs' object** to Court's finding and/or report that the Plaintiffs have failed to prosecute. The Plaintiffs have submitted over 20,000 pages of medical records to Defendants.  The Plaintiffs have submitted answers and supplement answers to Defendants' Template Discovery containing eight (8) boxes full.  Plaintiffs' attorney has participated in over 25 depositions of Plaintiffs and prescribers. Plaintiffs' attorney engaged in motion practice in this case.  Plaintiffs have provided all medical authorizations, medical provider list, and most other authorizations. Plaintiffs were supplementing the other authorizations to Defendants until the Court's ruling on February 4, 2011 in this cause.  Plaintiffs' counsel has appeared in-person for each required Court hearing in this cause except for the February 11, 2011 conference due to the pending report and recommendation of the Court.

### Plaintiffs Object to the method used by the Court in deciding Defendants' Motion to Compel that resulted in unfairness and injustice to the Plainiffs

The Plaintiffs filed a Motion to Compel against Defendants on December 20, 2010 (Docket 3180), the same day that the Defendants filed a Motion to Compel against Plaintiffs.

The Court chose only to address the Motion to Compel filed by Defendants.  This method used by the Court is unfair to the Plaintiffs because the Court did not consider the unclean hands of Defendants in responding Plaintiffs' Template discovery requests. The Defendants objected to <u>each</u> and <u>every</u> interrogatory.  <u>The Defendants did not provide an answer to any interrogatory.</u>  The Defendants (Pfizer) did not sign the interrogatory answer under oath.  Defendants' answers contained only a certificate of service bearing Defendants' attorney's signature. As the Court stated in reference to Boone, "Rule 33 requires more".  Rule 33(b)(5) provides: "The person who makes the answers must

sign them, and the attorney who objects must sign any objections." (Court's Report and Recommendation, Docket 3276) Defendants' attorneys failed to comply with both aspects of this rule. Ibid. The signature of counsel represents the attorney's certification of compliance with various discovery obligations. See Fed. R. Civ. P.26(g)(1). Ibid.

If the Court had reviewed Plaintiffs' Motion to Compel against Defendants that was filed on December 20, 2010, the Court would have seen and perhaps considered the unclean hands of Defendants and hopefully based in part thereon, would not have recommended 100% dismissal of Boone's Plaintiffs. Given Defendants' substantial discovery violation the Court may have recommended that the Defendants be denied the right to oppose liability in these cases.

Plaintiffs are prejudiced because the Court has not compared Defendants' discovery violations and given the nature of Court's recommendations the Plaintiffs' Motion to Compel has not been considered. Plaintiffs submit that had the Court considered Plaintiffs' Motion to Compel the Court's recommendation would be favorably different for the Plaintiffs.

**The Court indicated that Boone cases would only be subjected to dismissal if there was a  the failure to produce all the discovery ordered by the Court, within the time allotted by the Court,  in response to a motion to comply.**

On December 6, 2010 the Court entered a Revised Scheduling Order For All Products Liability Cases. (Doctket 3141, p. 2, 3) The Order, in part, provided, as follows:

"For the Boone Law Firm cases, defendants indicate that much of the template discovery is incomplete or unsatisfactory, in response Attorney Boone contends his plaintiffs have produced all that they know or possess. Insofar as Attorney Boone has failed to comply with discovery deadlines by failing to produce any discovery, Defendants may file a motion to dismiss for lack of prosecution and/or failure to obey the Court's orders. Insofar as the responses are unsatisfactory or incomplete, Defendants may file a motion to compel. Attorney Boone is cautioned, however, that the failure to produce all the discovery ordered by the Court in response to such motion to comply, within the time allotted by the Court, may result in dismissal as a sanction under Rule 37,

35

and/or for violation of the Court's Orders or failure to prosecute.  Defendants shall file any such motion  setting forth the alleged non-complaince and requesting appropriate relief by December 20, 2010…………………………………"

Attorney Boone has produced some discovery in every case.  The argument is over the quantity and quality of the produced discovery.

The Court clearly indicated that it would allot time for Plaintiffs to produce all discovery ordered by the Court in response to Defendants' motion to comply, and that upon Plaintiffs failure to comply thereafter would subject Plaintiffs' case to dismissal. The Court has not allotted Plaintiffs any time to cure deficiencies in response to Defendants' motion to compel.

In accordance with the Court's Order the recommendation of dismissal is not proper.

## Discussion

### Neither Plaintiffs nor Plaintiffs' Counsel's Conduct Amount to extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance so as to justify dismissal of their cases

Dismissal for failure to prosecute can only be proper upon a finding that a party's conduct indicated a "lack of interest in vindicating whatever rights [she] might have had," *Zavala Santiago v. Gonzalez Rivera,* 553 F. 2d 710, 713 (1st Cir. 1977)

Dismissal with prejudice for failure to prosecute is appropriate only in the face of "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance." *Cosme Nieves v. Deshler,* 826 F. 2d 1, 2 (1st Cir. 1987); *see* 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2369 (2d ed.1995).

Where the case is close, as to whether Plaintiffs' conduct is "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance", the courts should prefer less severe sanctions that preserve the possibility of disposition on the merits. *See Velazquez-Rivera,* 920 F.2d at 1079.

When considering dismissal with prejudice the Court must "fairly balance the court's venerable authority over case management with the larger concerns of justice, including the strong presumption in favor of deciding cases on the merits." *Torres-Vargas v. Pereira,* 431 F. 3d 389, 392 (1st Cir.2005); *Batiz Chamorro v. Puerto Rican Cars, Inc.,* 304 F. 3d 1, 4 (1st Cir.2002).

There is a non-exclusive list of substantive factors to consider when reviewing sanctions orders: "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." 468 F. 3d 1, 5 (1st Cir.2006) (quoting *Robson v. Hallenbeck,* 81 F. 3d 1, 2-3 (1st Cir.1996)).

The appropriateness of a particular sanction thus depends on the circumstances of the case. *Torres-Vargas,* 431 F.3d at 392. "[d]ismissal with prejudice is a harsh sanction, which should be employed only when a plaintiff's misconduct has been extreme and only after the district court has determined that none of the lesser sanctions available to it would truly be appropriate." *Estate of Solís-Rivera,* 993 F.2d at 2 (emphasis, citations, and internal quotation marks omitted).

As shown herein, ***Boone has made himself available for depositions***.  Boone has participated in every scheduled deposition except those that were rescheduled due to no fault on the part of Boone.  As explained, Plaintiffs Laperial Melvin and Terry Banks were too ill to be deposed; Defendant failed to secure stenographer for Plaintiff Debbie Sullivan's deposition; a  number of Plaintiffs including, Ethel Howard, William Webb, and Elizabeth Marie Knight decided to voluntarily dismiss their case prior to the depositions;  Plaintiffs, Estate of Elizabeth Marie Knight,  Delories Powell, and Christopher Kyles scheduled for November 18, 19, and 20, which were travelling dates for Plaintiffs' counsel to Boston;  Plaintiffs Debbie Sullivan and James Hunter were scheduled by Defendants on the same days that prescribing  physicians depositions were taken. The events that precipitated the cancelling of these depositions were out of Plaintiffs' attorney's control.  The cancellation of these depositions does not represent a failure to prosecute.  These depositions were mutually postponed by the parties and the Plaintiffs who were rescheduled were subsequently deposed.

Contrary to the Court's findings and report, not only did Boone make himself available for depositions, Boone even hired outside counsel to cover the deposition of Plaintiff Deloris Powell in efforts to comply with the Court's Order.

The ***claim of the Estate of Elizabeth Knight was known to be an estate claim***. Long before the scheduling of the deposition, the claim of Elizabeth Knight was made known and referred to as the Estate of Elizabeth Knight. (See Boone Chart that list the claim as "Estate of Elizabeth Knight", Docket  2885 at 4) .  Plaintiff's Answer to Interrogatories lists the Plaintiff as "Estate of Elizabeth Knight"

The ***Plaintiffs did not violate the Court's Order by failing to meet the July 8, 2007 discovery deadline*** because 183 of these Plaintiffs were not in MDL 1629 until September 24, 2007.

The few Plaintiffs that were subject to the January 15, 2007 ***did not have extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance***. These Plaintiffs begin submitting template responses in April 2007 without the nececessity of a motion to compel or any admonishment by the Court. The Plaintiffs have continued to supplement their answers to template discovery through February 4, 2011.

The ***Plaintiffs have not failed to prosecute***, but rather has submitted over 20,000 pages of medical records to Defendants; submitted answers and supplement answers to Defendants' Template Discovery containing eight (8) boxes full;  Plaintiffs' attorney has participated in over 25 depositions; Plaintiffs' attorney engaged in significant motion practice;  Plaintiffs have provided all medical authorizations, medical provider list, and most of the other authorizations; Plaintiffs were supplementing the other authorizations to Defendants until the Court's ruling on February 4, 2011; and Plaintiffs' counsel has appeared in-person for each required Court hearing.  In sum, the Plaintiffs' conduct do not show a lack of interest in vindicating whatever rights they might have. *Zavala Santiago v. Gonzalez Rivera,* 553 F. 2d 710, 713 (1st Cir. 1977)

The ***Court did not consider the adequacy of lesser sanctions*** as required under *Robson v. Hallenbeck,* 81 F. 3d 1, 2-3 (1st Cir.1996)).  The Court indicated in the December 6, 2010 Order that the Plaintiffs would be given an allotted amount of time to

cure any deficiencies following the Court's ruling on Defendants' Motion to Compel. The Plaintiffs were not afforded this lesser sanction.  Given the ton of work done by Plaintiffs the Court should have considered some sanction, if applicable, short of recommendation of dismissal of all Plaintiffs' cases.

The Court must "fairly balance the court's venerable authority over case management with the larger concerns of justice, including the strong presumption in favor of deciding cases on the merits." *Torres-Vargas v. Pereira,* 431 F. 3d 389, 392 (1st Cir.2005); *Batiz Chamorro v. Puerto Rican Cars, Inc.,* 304 F. 3d 1, 4 (1st Cir.2002). Accordingly, in order for justice to be accorded to every Plaintiff the ***Court should have conducted an individual review of each Plaintiff's case*** to determine if dismissal was the appropriate recommendation.

The caution by the Court made on December 6, 2010 was a future caution that after the Court allows Plaintiffs an allotted amount of time to cure deficiencies, in the Court's response to Defendants' Motion to Comply,  that the Plaintiffs' failure to cure within the allotted time may result in dismissal.  Plaintiffs never got the allotted time to cure deficiencies so therefore the Plaintiffs have not violated an order after having been warned based upon the December 6, 2010 Order.  (Docket #3141)

The Plaintiffs have shown that they followed the template discovery form provided by the Plaintiff Steering Committee.  Plaintiffs did not redesign the template discovery form.  Boone has shown that the form he provided to Plaintiffs for the answering of interrogatories was only an attempt to make the interrogatories easier to answer, the form was not to limit the answers.  Moreover upon learning that the form of template discovery received by Plaintiffs' counsel from the Plaintiff Steering Committee

the Plaintiffs supplemented their answers without limitation.  ***Plaintiffs' counsel actions regarding the template discovery does not reach the level of "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance "*** as would justify dismissal of Plaintiffs' cases.

The Plaintiffs are ready, willing, and able to correct any and discovery deficiencies, if given a reasonable opportunity to do so.  The Plaintiffs and Plaintiffs' counsel have expended an enormous amount of time and resources in the prosecution of these cases.  The sheer volume of work contradicts a finding of failure to prosecute.

WHEREFORE PREMISES CONSIDERED, the Plaintiffs request that the Court does not accept the U. S. Magistrate Judge's findings, report and recommendations. Plaintiffs request that this Court causes a practical management plan to be fashioned considering the totality of the circumstances.

Respectfully Submitted,
All Plaintiffs

/S/  Levi Boone, III

**BY:**_____
Levi Boone, III, MSB #3686
**BOONE LAW FIRM, P.A**.
401 West Sunflower Avenue
Post Office Box 1772
Cleveland, MS 38732
TEL: 662-843-7946
FAX: 662-843-7950

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served as required by Case Management Order Number 3 on the 18th day of February, 2011.

/s/ Levi Boone, III
Levi Boone, III

41