UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-----------------------------------------------------------------X
In re:  NEURONTIN MARKETING,              :  MDL Docket No. 1629
        SALES PRACTICES, AND              :
        PRODUCTS LIABILITY LITIGATION     :  Master File No. 04-10981
                                          :
-----------------------------------------------------------------X  Judge Patti B. Saris
                                          :
THIS DOCUMENT RELATES TO:                 :  Magistrate Judge Leo T. Sorokin
                                          :
PLAINTIFFS' PRODUCTS LIABILITY GROUP      :
-----------------------------------------------------------------X
```

### MEMORANDUM IN SUPPORT OF APPLICATION OF JACK W. LONDON FOR INTERIM AWARD OF COMMON BENEFIT FEES AND EXPENSES

To the Honorable Court:

Jack W. London, a member of the Plaintiffs' Products Liability Steering Committee herein, makes application to the Court for Common Benefit expenses incurred and fees for time spent on behalf of the plaintiffs' products liability cases that have been settled as of this time, as set out below.

#### Counsel believes this motion is unopposed.

A. The cases that have been settled from which funds have been and will be deposited into the common benefit account to which this application is addressed are cases in which Finkelstein & Partners are counsel of record.   That firm's cases have been settled. Your Applicant has consulted with Mr. Finkelstein and with the attorneys in Finkelstein & Partners who have provided that firm's leadership and direction in this MDL for such cases and they do not oppose this Application.

B. Your Applicant also has notified counsel for the non-Finkelstein & Partners products liability plaintiffs and plaintiffs' counsel in this litigation of this application, by conference call and

by message, and has communicated directly with those who have so desired.  No opposition
to this motion has been expressed by them.  Counsel for the greater number of these cases,
including the Schwarz cases, the Garcia-Karam cases, the Brooks cases, the Cross cases, and
others affirmatively support this Application.

## II
## Common benefit fund

The Plaintiffs' Product Liability Common Benefit Fund was created pursuant to this
Court's Order granting *Motion to Establish A Common Benefit Fund* (Document 1129, February
14, 2008).  Pursuant to the Manual For Complex Litigation (4th Ed. 2004), the fund was
established to compensate and reimburse attorneys for services performed and expenses incurred
for the common benefit of MDL 1629 personal injury plaintiffs.

As of the date of filing this Application, all funds that are in the account and those likely
to be deposited in the account in the near future are from allocations ordered by the Court to be
withheld from settlement recoveries in cases in which Finkelstein & Partners are counsel of
record, including both state court cases and those MDL cases identified in the Court's order of
dismissal based on settlements, (Document Number 3307, February 22, 2011).   As will be set
out hereafter, Applicant's attorney work and expenses conferred a common benefit on those
cases.

## III
## Amount sought

### A.  Fees:

Your Applicant requests approval for payment of attorney fees for 1,495.6 hours of work
performed on behalf of the plaintiffs' products liability cases during the years 2006 – 2010.  An
itemized report of the hours spent and a summary of the work performed during that period is
filed under seal for *in camera* review as Exhibit A.   A copy of this exhibit has been provided in

advance to Finkelstein & Partners, to Newton Schwarz, and to each plaintiffs' counsel who have as of this date requested a copy.   The report is filed *in camera* because it contains extensive references to work product and tactical efforts made on behalf of the Track One cases, the Finkelstein cases, plaintiffs' products cases generally, and the common work of the Plaintiffs' Products Liability Group [PPLG].

Your Applicant requests payment at the rate of $250.00 per hour for the years 2006 - 2007, $300.00 per hour for the years 2008 - 2009, and $350.00 per hour for the year 2010.  The hours per year are detailed in Exhibit A.  These rates are consistent with rates generally in the Austin, Texas bar during this period.  See Filisko, ABA Journal, February 2011, pp 28-29, in which the average rate in Austin was $327.00 per hour during 2007.

**B.  Expenses:**

Your Applicant requests approval for payment of expenses in the amount of $52,712.67 incurred and paid by your Applicant on behalf of the MDL Plaintiffs' Products Liability Group, Steering Committee work, and Track One cases during the years 2005 – 2010.   An itemized report of the expenses incurred and paid during that period is filed under seal for *in camera* review as Exhibit B.   A copy of this exhibit has been provided in advance to Finkelstein & Partners, to Newton Schwarz, and to all plaintiffs' counsel who have as of this date requested a copy.   The report is filed *in camera* because it identifies certain references of work product and tactical efforts made on behalf of the Track One cases, the Finkelstein cases, plaintiffs' products cases generally, and the common work of the Plaintiffs' Products Liability Group.   The expenses sought herein do not include expenses incurred or paid for counsel's involvement in individual cases in which he is an attorney of record.

### C. No other fee agreement

Applicant has no fee agreement with Finkelstein & Partners regarding the settled cases. Although all of Applicant's work on the Track One and Finkelstein cases was generally requested by and/ or directed by Mr. Finkelstein and senior attorneys in Finkelstein & Partners, your Applicant agreed to work on such matters on the basis that he would be compensated for such work and for expenses incurred from the Common Benefit Fund and not by Finkelstein & Partners.

Applicant does not know the amount of the settlements in the Finkelstein & Partners cases. Mr. Finkelstein and defense counsel have advised that the settlements are confidential. Without in any degree disclosing any settlement or the amount of all settlements, or any other number or component of the settlement, counsel has nevertheless indicated that the amount to be withheld from such settlements pursuant to the order creating the Common Benefit Fund would be adequate to pay the attorney fees and expenses requested in this application.

### D. Payment from the Common Benefit Fund

Applicant requests the Court order that any fees and expenses paid pursuant to this Application be paid on a regular basis, such as monthly or quarterly, as money is deposited into the account from such settlements, until paid.

### IV
### Work performed

Your Applicant was appointed to the Plaintiffs' Products Liability Steering Committee, along with Andrew Finkelstein, in 2005. Eleanor Polimeni of Finkelstein & Partners was appointed as liaison counsel. There are no other members of the Steering Committee.

The efforts of your Applicant during 2005 were in the nature of an apprenticeship, acquisition of records and discovery, learning the complexity of the Neurontin discovery

database (in excess of one million pages), and learning the litigation history, including the

*Franklin* litigation.   Your Applicant does not seek recovery of fees for 2005.

Beginning in 2006 and continuing through 2010, your Applicant assisted in:

A. Drafting and revising case specific and generic discovery requests, interrogatories, objections, and replies.

B. Revising and editing for filing Rule 26 disclosures and responses and supplemental filings of Rule 26 disclosures and responses.

C. Preparing for, identifying, and selecting exhibits for, attending, and taking the depositions of key employees of Pfizer / Warner-Lambert associated with the development and marketing of Neurontin.

D. Assisting with review of drafts and revisions of expert witness reports, Rule 26 reports, and exhibits to expert reports.

E. Legal research, revising, and editing opposition memoranda to Motions for Summary Judgment on preemption and marketing (fraud) and on Motions for Summary Judgment adjunct to Defendants' *Daubert* motions directed at Plaintiffs' general causation expert witnesses.

F. Legal research, revising, editing, and drafting motions and opposition to motions and supporting declarations by experts, with exhibits, in support of and in opposition to *Daubert* motions and Motions in Limine, both in general causation and in Track One cases before trial.

G. Preparing for, identifying, selecting exhibits for, and taking and defending the depositions of key expert witnesses, both plaintiff and defense witnesses, including general causation witnesses and case-specific witnesses in the Track One cases before trial.   This included preparing such witnesses for their depositions and included consultations with experts and trial team members for preparation to depose various defense employees and experts.

H. Revision of briefs and memoranda and Rule 26 disclosures to incorporate the evidence from the Food and Drug Administration following the 2008 Alert regarding increased suicidality from Neurontin and other anti-epileptic drugs, the FDA Statistical Analysis, the FDA hearings, and the defense responses.

I. Preparing for, attending, and representing the plaintiffs in hearings, including the *Daubert* hearings on general causation in June and July 2008, the epidemiology *Daubert* motions, defendants' discovery cost shifting motion, and the Motions in Limine in the products liability litigation, both MDL wide and Track One cases.

J.  Participating as a member of the trial team for the Track One cases that were
scheduled to be tried and commenced trial, in July 2009, March 2010, and May 2010,
including preparation of witnesses, exhibits, deposition excerpts to be used in the
trials, draft editing pre-trial orders, selection of plaintiffs' deposition excerpts and
exhibits for trial, replies to defendants' objections to deposition excerpts and exhibits,
objection to defendants' designations of deposition excerpts and exhibits, drafting and
revising pre-trial briefs and memoranda, draft and editing jury instructions and verdict
sheets, draft and editing motions in limine, preparation for direct testimony of
witnesses and expert witnesses with exhibits, preparation for cross examination of
defense witnesses and experts, with exhibits, preparation for and participation in pre-
trial hearings, jury selection, and presentation of witnesses and exhibits in trial.

K.  Meeting with and communicating with plaintiffs' counsel and pro se plaintiffs outside
the Finkelstein firm to comply with ongoing orders, such as the orders of this Court to
certify cases in lieu of a *Lone Pine* order and to comply with certain provisions of this
Court's local rules; reporting to counsel of ongoing matters, such as pending motions
for summary judgment, and informing counsel of orders of the Court that called for
compliance, training attorneys in the litigation, provision of discovery and records to
attorneys, assistance to them in filing Electronic Case Filing records, and assistance
as requested in complying with the Court's orders to conduct core discovery and
discovery depositions in individual cases.

During this period it was necessary to participate in numerous meetings, both with the
other attorneys working on Track One cases, the trial teams, and with all attorneys who represent
plaintiffs in this litigation.  These meetings were conducted in person in offices and conference
rooms in New York, Massachusetts, Illinois, Nevada, New Jersey, Oregon, Louisiana, and
Texas.   These meetings were conducted for several hours at a session (including telephone
meetings of the Plaintiffs' Products Liability Group attorneys), and on certain occasions, for
several days, to review documents, engage in preparation for depositions, meet and prepare
witnesses, identify and select exhibits, prepare for proceedings and trials, and to brief and assist
members of the Plaintiffs' Products Liability Group on matters of common benefit to the group.
There was vigorous and very productive exchange with all members of the groups, both the trial
teams, the Track One litigation attorneys, and the plaintiffs' products liability attorneys and pro
se plaintiffs, that benefitted the cases in common.

V

## Appropriate to Approve Application for Approval of Interim Common Benefit Fund Fees and Expenses

It is appropriate to award fees and expenses from a common benefit fund for work that has been and is complex and strenuous. See, e.g., *Bowling v Pfizer*, 102 F.3d 777 (6th Cir. 1996).

Interim fees and expenses are appropriately awarded where settlement of a portion of the cases in an MDL is achieved. See Manual For Complex Litigation (4th Ed.) §14.222; *Texas State Teachers Ass'n v. Garland ISD*, 489 U.S. 782, 790-792 (1989). An award of interim fees and expenses contemplates that the Court will at some point in the future enter a final order regarding fees and expenses and credit interim fees and expenses against any final award ordered at a later stage or at the end of the litigation. See, e.g., *In Re Diet Drugs Product Liability Litigation*, 401 F.3d 143, (3d Cir. 2005).

Among the factors for the Court to consider are whether the work performed benefited the plaintiffs, the hourly value of the work, whether the services were undertaken on a contingency basis, the societal interest in compensating attorneys who produce benefits as an incentive to others, the complexity of the litigation, and the professional skill and standing of counsel on both sides.

The work performed by your Applicant provided a common benefit to the Track One Cases and to the Finkelstein & Partner cases, and has and will continue to benefit the remainder of the Plaintiffs' Products Liability Group. As set out above, after the completion of the three Track One cases in which your Applicant participated as a member of the trial and trial preparation teams, Finkelstein & Partners were able to successfully settle their entire inventory of Neurontin cases brought against Parke – Davis, Warner – Lambert, and Pfizer defendants. This includes their MDL inventory and all their state court cases. Further details of your Applicant's efforts are contained within the exhibits submitted *in camera*, the public disclosure

of which would reflect work product and tactics.  It would not be in the interests of the remaining cases for these records to be made public.

Your applicant does not seek a lodestar multiplier to the hourly rate for time spent on this work in the past but, instead, seeks only to recover actual time and expenses incurred for the plaintiffs' common benefit.  Moreover, your Applicant does not individually represent a large pool of other cases in this MDL from which to anticipate future fees.  To the extent this is a factor, see *In re Sulzer Hip Prosthesis*, 268 F.Supp. 2d 907 (N.D. Ohio, 2003), affirmed 398 F. 3d 778 (6th Cir. 2005).  Indeed, work by your Applicant on this Steering Committee and Track One litigation required that he decline substantial involvement in other work and decline to be retained in certain cases that, but for this litigation, would have been accepted.

## CERTIFICATE OF CONSULTATION

I hereby certify that I have conferred in good faith with counsel for parties whose interests are affected by the motion.  It is believed that this Application is unopposed.

WHEREFORE, PREMISES CONSIDERED, Jack W. London prays the Court approve this Application.

Respectfully submitted,

LAW OFFICES OF JACK W LONDON
3701 Bee Cave Rd., Suite 200
Austin, TX 78746
512-478-5858 (telephone)
512-479-5934 (facsimile)

By: _____
Jack W. London
State Bar No. 12512500

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on _March 11, 2011_

_____
Jack W. London, Esquire