**EXHIBIT A**

```
                                                                Page 1
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS
 2
 3
 4    IN RE:                              )
                                          ) CA No. 04-10981-PBS
 5    NEURONTIN MARKETING, SALES PRACTICES,) Pages 1 - 33
      AND PRODUCTS LIABILITY LITIGATION    )
 6
 7
 8
 9                       STATUS CONFERENCE
10              BEFORE THE HONORABLE PATTI B. SARIS
                   UNITED STATES DISTRICT JUDGE
11
                               -and-
12
                         LEO T. SOROKIN
13              UNITED STATES MAGISTRATE JUDGE
14
15
16
17                             United States District Court
                               1 Courthouse Way, Courtroom 19
18                             Boston, Massachusetts
                               February 11, 2011, 2:07 p.m.
19
20
21
22
23                      LEE A. MARZILLI
                     OFFICIAL COURT REPORTER
24                 United States District Court
                   1 Courthouse Way, Room 7200
25                     Boston, MA  02210
                         (617)345-6787
```

Page 2

1   A P P E A R A N C E S:
2
    FOR THE PLAINTIFFS:
3
        KENNETH B. FROMSON, ESQ., Finkelstein & Partners, LLP,
4   785 Broadway, 3rd Floor, Kingston, New York, 12401.
5       JAMES A. STEGALL, III, ESQ., Law Offices of Newton &
    Schwartz, Sr., 1911 Southwest Freeway, Houston, Texas, 77098.
6
7   FOR THE DEFENDANT:
8       CATHERINE B. STEVENS, ESQ. and KATHERINE F. ARTHUR, ESQ.,
    Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times Square,
9   New York, New York, 10036.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1            P R O C E E D I N G S
2       THE CLERK: In Re: Neurontin Marketing, Sales
3   Practices, and Products Liability Litigation, Civil Action
4   No. 04-10981, will now be heard before this Court. Will
5   counsel please identify themselves for the record.
6       MR. FROMSON: Good afternoon, your Honors. Kenneth
7   Fromson for the Plaintiff Steering Committee.
8       MR. STEGALL: I'm James Stegall. I'm with the law
9   offices of Newton Schwartz in Houston.
10      MS. STEVENS: Good afternoon, your Honors. Catherine
11  Stevens on behalf of Pfizer.
12      MS. ARTHUR: Good afternoon. Katherine Arthur on
13  behalf of Pfizer.
14      THE COURT: Thank you. So of course Judge Sorokin and
15  I are most eager to hear about the status of all these cases,
16  so why don't we begin with plaintiffs' side, Mr. Fromson.
17      MR. FROMSON: Your Honor, with respect to the Court's
18  order of February 4, 2011, I would like to bring to the Court's
19  attention that with respect to the application, Docket
20  No. 3164, which was within Paragraph 1 of the order, this
21  particular plaintiff, for whom my law firm had moved for
22  withdrawal, was ordered to be in court today or to have an
23  attorney present or to send a letter. Long story short, that
24  plaintiff's name is Mr. Belbruno. He contacted me yesterday
25  evening. He received the Court's order only on this week. He

Page 4

1   asked me to relate to the Court his intention of going forward
2   pro se at this time. He is also blind and unable to ambulate
3   very well, and so he was not able, based upon his hardships, to
4   get here. I would respectfully request that you would accept
5   my representation that he intends to move forward pro se.
6       THE COURT: Is he getting his own lawyer, did he
7   mention?
8       MR. FROMSON: He did not mention it, but I would hope
9   that he would, but he did want to at least make sure that my
10  message was brought to the Court today to be somewhat, as best
11  possible, compliant with the Court's order.
12      THE COURT: Did he claim that the Neurontin
13  contributed to any of these conditions?
14      MR. FROMSON: Your Honor, yes. I was familiar with
15  the case, obviously, before we withdrew from the action, and
16  the injury would in fact be alleged to have been the blindness
17  from which he suffers as related to the suicide attempt that he
18  had done.
19      THE COURT: It's interesting because I've heard of
20  several side effects, but that's not one I'd heard about.
21      MR. FROMSON: Blindness isn't the side effect. It was
22  the result of the suicide attempt that left him blind.
23      THE COURT: I see, I understand.
24      MR. FROMSON: Other than that, I don't have a specific
25  housekeeping matter or --

Page 5

1       THE COURT: Where is he from?
2       MR. FROMSON: He resides in New Jersey, and the case
3   was originally filed in New Jersey.
4       THE COURT: So perhaps the thing that would make that
5   the easiest to do would be to send that back to New Jersey
6   where he's from, and where you're from, right?
7       MS. STEVENS: New York, your Honor.
8       THE COURT: New York, New Jersey. So what do you
9   recommend?
10      MR. FROMSON: I think that goes towards a more global
11  picture of what the Court intends to do with the group of
12  pro se plaintiffs and defense counsel's plan of action to most
13  diligently and efficiently manage those cases. I for one would
14  suggest that the Court maintain some control over those cases
15  because of the efficiency with which this Court has managed the
16  case thus far, but that's between yourself, obviously, your
17  Honor, and Pfizer.
18      THE COURT: Okay, did you have anything on him?
19      JUDGE SOROKIN: No. I'm just wondering how many
20  pro se people there are?
21      MS. STEVENS: There are approximately thirty pro se
22  plaintiffs right now that we have, and, as your Honors are
23  aware, we filed a motion to get some guidance on where we're
24  going with the pro ses. You had initially suggested that we
25  send them back immediately. We had hoped, after we looked at

Page 14

1   THE COURT: Well, which ones are?
2   MS. STEVENS: We have a list of 32 cases from the
3 Schwartz law firm of which they intend to proceed. I
4 understand that that may not be a concrete number, but --
5   THE COURT: When can you dismiss or allow people to go
6 pro se for the others?
7   MR. STEGALL: We would ask for anywhere from 30 to 60
8 days to finalize that list. She's correct, and that we have
9 made representations and intend to stick to them that we will
10 be reducing our number from eighty anywhere down to thirty-five
11 to forty cases.
12   THE COURT: Well, do you know some for sure that
13 you're dismissing?
14   MR. STEGALL: Yes, ma'am.
15   THE COURT: Well, why don't you do that instantly.
16   MR. STEGALL: Yes, ma'am.
17   THE COURT: How many are in that category?
18   MR. STEGALL: I don't have a hard number for you, but
19 it would probably be ten to fifteen cases.
20   THE COURT: Do those instantly, instantly, like
21 Monday.
22   MR. STEGALL: Yes, ma'am.
23   THE COURT: And maybe another 30 days to finalize the
24 remaining ones so we're just not wasting. Do you know a
25 certain number that are definitely going forward?

Page 15

1   MR. STEGALL: Yes, ma'am. At this point the
2 thirty-two she identified are going forward.
3   THE COURT: And those are the ones that you think you
4 still are a little bit behind on on discovery or just with
5 respect to those cases that you're --
6   MR. STEGALL: With respect to the depositions, yes,
7 ma'am, but we are moving along at a pretty good pace.
8   THE COURT: And when are you going to be done with --
9 I forget, do you know when we were supposed to be done with
10 those?
11   JUDGE SOROKIN: February depositions, I think. On the
12 original schedule, we would have had all the depositions in
13 theory done in February, if I remember right.
14   In any event, when do you think you'll be done with
15 the depositions of those cases that you're going to proceed
16 with?
17   MR. STEGALL: Being a conservative estimate, I would
18 say anywhere still from six to nine months from now because if
19 we get -- there are -- you know, we identified -- we'll do a
20 sales rep, we'll do the prescribing doctor, and the plaintiff
21 obviously. Well, in many instances there's more than one
22 prescribing doctor, and getting those depositions scheduled
23 is -- getting a doctor scheduled in and of itself is a hassle.
24   THE COURT: Six to nine is too far out there.
25   MS. STEVENS: Your Honor, we're moving at the fifteen

Page 16

1 days of deposition pace, which was the last scheduling order.
2   MR. STEGALL: And -- I'm sorry, I didn't mean to
3 interrupt. I apologize.
4   THE COURT: But given that schedule, six to nine
5 months is usually a full cycle. Can you add more -- how big a
6 firm is your firm?
7   MR. STEGALL: It's not particularly big. There's
8 about seven lawyers in total, and there's three of us working
9 these depositions.
10   THE COURT: Well, I don't know that I'm going to give
11 you six to nine. You've been on notice for a while. If you
12 don't take all discovery, you don't, because I'm not going to
13 try them all here is the thing. We've got to get this case
14 moving forward. And I think Schwartz has taken, you know, a
15 backseat, not as backseat as Mr. Boone did, but, still, you've
16 got to get this thing ready, and Judge Sorokin and I are going
17 to consult about how much time makes sense here.
18   JUDGE SOROKIN: So let me just ask, you've got eighty
19 cases, is that right?
20   MR. STEGALL: Yes, sir.
21   JUDGE SOROKIN: And thirty-two you know you're going
22 forward on?
23   MR. STEGALL: Yes, sir.
24   JUDGE SOROKIN: And the other forty-eight, the
25 question is, are you going to go forward on any of those, some

Page 17

1 of those, and of the ones you're not going forward on, you're
2 either going to dismiss or withdraw?
3   MR. STEGALL: Yes, your Honor.
4   JUDGE SOROKIN: So the forty-eight is the universe of
5 cases you're making a decision about in the next 30 days?
6   MR. STEGALL: And, as I said before, we anticipated
7 the number that might be added to the thirty-two to be a small
8 number, three to five.
9   JUDGE SOROKIN: So if you end up with thirty-five, how
10 many of those thirty-five cases at fifteen days of depositions
11 a month, even if you lagged a little bit, how many
12 depositions -- I'm just trying to figure out how many
13 depositions there are for those people. Six to nine months
14 would be 60 to 90, 90 to 120 more depositions, I think.
15   MR. STEGALL: If we can stay at the fifteen days for
16 depositions, I mean, in theory we're talking about 60
17 depositions maybe, additional depositions, so even at 15 a
18 month, that's at least four months.
19   JUDGE SOROKIN: Are these plaintiffs from the same
20 geographic area, or are they all spread out?
21   MR. STEGALL: They're spread out, your Honor.
22   JUDGE SOROKIN: So they're not all from where your law
23 firm is located?
24   MR. STEGALL: None of them are, your Honor.
25   JUDGE SOROKIN: I see, all right. So there's no