UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:   NEURONTIN MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

MDL Docket No. 1629

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Master File No. 04-10981

THIS DOCUMENT RELATES TO:

Judge Patti B. Saris

*Allen, et al. v. Pfizer, Inc. et al*, 1:07-cv-11795-PBS;
*Anderson, et al. v. Pfizer, Inc. et al.*, 1:05-cv-10835-PBS;
*Cooper, et al. v. Pfizer Inc. et al.*, 1:05-cv-10834-PBS

Magistrate Judge Leo T.
Sorokin

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE
<u>FINDINGS, REPORT AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

SUMMARY OF ARGUMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 4

    The Boone Cases Were Initiated By The Filing Of Mass Complaints With Few
        Factual Allegations Regarding Plaintiffs' Claimed Injuries, Almost None
        Of Which Involved Suicide ................................................................................. 4

    The Boone Plaintiffs Violated Initial Deadlines For Template Discovery And
        Certification ....................................................................................................... 5

    The Court Ordered Plaintiffs To Comply With Template Discovery Or Face
        Dismissal ........................................................................................................... 7

    Plaintiffs' Discovery Noncompliance Continued Despite the Court's Warning ............... 7

    Plaintiffs Inaccurately Claimed That All Template Discovery Was Complete In
        All Cases ........................................................................................................... 9

    After Multiple Warnings, Plaintiffs Still Failed To Comply With Their Discovery
        Obligations ....................................................................................................... 10

ARGUMENT ......................................................................................................................... 11

I.    Pfizer Established That All Boone Plaintiffs' Discovery Responses Are Deficient
    And They Did Not Rebut That Showing ......................................................................... 11

II.   The Boone Plaintiffs Failed To Provide Complete Answers To Interrogatories ............. 14

    A.   Boone Provided A Boilerplate, Non-Responsive Answer To Interrogatory
        Number Eleven On Behalf Of Many of His Clients ............................................. 14

    B.   The Boone Plaintiffs Disobeyed The Court's Discovery Rulings And
        Refused To Answer Two Interrogatories That The Court Ordered
        Answered ........................................................................................................... 17

    C.   The Boone Plaintiffs Made Improper Objections Or Failed To Respond To
        Several Other Interrogatories .............................................................................. 17

III.  The Boone Plaintiffs And Their Counsel Violated Various Court Orders And
    Otherwise Failed To Provide Threshold Discovery ........................................................ 19

    A.   Plaintiffs Failed To Provide Complete Medical Provider Lists ........................... 19

i

B.      The Boone Plaintiffs Disobeyed The Court's Discovery Rulings
        Regarding Disclosure Of Medical Records.........................................................21

C.      The Boone Plaintiffs Have Failed to Provide Non-Medical Authorizations
        As Ordered By The Court ..................................................................................23

IV.     Plaintiffs' Counsel Engaged In Misconduct And Affirmatively Contributed To
        His Clients' Discovery Deficiencies ................................................................23

A.      Plaintiffs' Counsel Failed To Make Himself Available For Depositions As
        Ordered By The Court.........................................................................................23

B.      Boone's Process For Gathering Information From His Clients Prevented
        Satisfactory Discovery Responses ....................................................................24

V.      Dismissal Was Appropriate Due To The Long Pattern Of Discovery Neglect And
        The Egregious And Pervasive Noncompliance With Court Orders In These Cases.........26

CONCLUSION...............................................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*In re Baycol Products Litigation*, MDL No. 1431, 2007 WL 2744459
    (D. Minn. Sept. 17, 2007) ...........................................................................................27

*Cintrón-Lorenzo v. Departamento de Asuntos del Consumidor*, 312 F.3d 522
    (1st Cir. 2002) .........................................................................................................27

*Colokathis v. Wentworth-Douglass Hospital*, 693 F.2d 7 (1st Cir. 1982) .................................27

*Dávila-Álvarez v. Escuela de Medicina Universidad Central del Caribe*,
    257 F.3d 58 (1st Cir. 2001) .....................................................................................28

*Farm Construction Services, Inc. v. Fudge*, 831 F.2d 18 (1st Cir. 1987)...................................28

*In re Fosamax Products Liability Litigation*, No. 1:08-cv-04901-JFK, 2009 WL
    105502 (S.D.N.Y. Jan. 12, 2009) ...........................................................................27

*In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*,
    496 F.3d 863 (8th Cir. 2007)...........................................................................26, 30

*HMG Property Investors, Inc. v. Parque Industrial Rio Canas, Inc.*, 847 F.2d 908
    (1st Cir. 1988) .........................................................................................................27

*In re Family Dollar FLSA Litigation*, No: 3:08MD1932-MU, 2009 WL 2046042
    (W.D.N.C. July 10, 2009) .......................................................................................15

*Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962) ...................................................................27, 29

*In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217
    (9th Cir. 2006) ............................................................................................26, 27, 30

*In re Rezulin Products Liability Litigation*, MDL No. 1348, 2004 WL 1700618
    (S.D.N.Y. July 27, 2004) ........................................................................................27

*Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este*, 456 F.3d 272
    (1st Cir. 2006) .........................................................................................................26

*Top Entertainment Inc. v. Ortega*, 285 F.3d 115 (1st Cir. 2002) ...............................................28

*Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43 (1st Cir. 2002)................................26, 29

*Young v. Gordon*, 330 F.3d 76 (1st Cir. 2003) ...................................................................23, 26

**Statutes**

28 U.S.C. § 1407...........................................................................................................................26

Fed. R. Civ. P. 11 ................................................................................................................16

Fed. R. Civ. P. 25 ................................................................................................................15

Fed. R. Civ. P. 26(g)(1) .......................................................................................................16

Fed. R. Civ. P. 33(b) ...........................................................................................................16

Fed. R. Civ. P. 33(b)(5) .......................................................................................................17

Fed. R. Civ. P. 37(a)(4) .......................................................................................................19

Fed. R. Civ. P. 37(b)(2)(A) ...................................................................................................3

Fed. R. Civ. P. 41(b) .......................................................................................................3, 27

Fed. R. Civ. P. 72(a) .............................................................................................................3

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or "Pfizer") hereby respond to Plaintiffs' objections to the Magistrate Judge's February 4, 2011 Findings, Report and Recommendations [3276]. For the reasons discussed below, this Court should overrule Plaintiffs' objections and adopt Magistrate Judge Sorokin's Report and Recommendations in its entirety.

<u>**SUMMARY OF ARGUMENT**</u>

This Court has long recognized that the "orderly management" of this multi-district litigation "requires the parties to heed the Court's orders and to pursue their claims in a diligent and timely fashion" and that the Court must enforce discovery rules by ordering any appropriate sanction or remedy, including dismissal. (Discovery Order No. 25 [1335], at 5.) In the case of the Boone Plaintiffs, dismissal as a sanction for discovery abuses and for failure to prosecute is more than justified. Plaintiffs' and their counsel's failures to satisfy their basic discovery obligations are egregious, repetitious, deliberate or at the very least deliberately indifferent, and unmitigated by any legitimate excuses. They have engaged in a long pattern of noncompliance with Discovery Orders spanning several years. They sat on the sidelines in this multidistrict litigation while other parties worked to move their cases toward resolution. The Court already imposed lesser sanctions on Plaintiffs' counsel, which apparently failed to deter further misconduct. In a June 9, 2010 Order, the Court explicitly warned Plaintiffs that continued failure to correct discovery deficiencies and comply with the Court's Orders would result in dismissal. In fact, this Court already dismissed 47 cases filed by the Boone Law Firm for not complying with that same Order. Not only had the remaining Boone Plaintiffs still substantially failed to comply as of six months later, their deficiencies were blatant, unjustified, and widespread. Significant deficiencies plagued every single Boone case. Despite this global noncompliance, Plaintiffs' counsel insisted to the Court that template discovery was complete in all cases. His inaccurate assertions directly resulted in a huge and unnecessary waste of judicial resources.

After four years, the Boone Plaintiffs still have not produced complete responses to basic template discovery. Their deficiencies are not due to mere oversights or good faith discovery

disputes. Rather, they failed to disclose numerous materials that not even their counsel disputes Pfizer is entitled to. The missing materials go to the very heart of the disputes in these cases and include complete medical provider lists identifying the physicians that prescribed Neurontin, medical records, alleged dates of injury, what injury they were alleging, the timeframes during which Plaintiffs allegedly took Neurontin, records authorizations, and other fundamental information sought by template interrogatories. These serious deficiencies prejudiced Pfizer's efforts to form defenses, provide its own responses in case-specific discovery, prepare for depositions, and pursue follow-up discovery.

On December 10, 2010, in compliance with the Court's orders, Pfizer submitted to the Court a detailed Memorandum addressing the global discovery deficiencies pervasive throughout the 214 Boone responses, a case-specific Appendix outlining particular deficiencies in each individual case, and eight boxes of discovery materials. This extensive evidentiary submission went largely unrebutted by the Boone Plaintiffs, who did not even attempt to respond to many discovery issues raised by Pfizer and totally ignored Pfizer's case-specific Appendix as to all but 10 of the 214 cases. Upon reviewing the parties' briefing and the materials presented, Magistrate Judge Sorokin "found a disturbing failure to comply with the Court's discovery orders and a disturbing level of incomplete and/or non-compliant discovery from Boone's clients." (Report and Recommendation [3276], at 7.) He explained that Defendants – with their briefing, case-specific Appendix, and the materials submitted – complied with the Court's request to file a motion raising discovery deficiencies with particularity, but the Boone Plaintiffs failed to respond to the Defendants' submission on a case-by-case basis. (*Id.* at 20-21.) Accordingly, the Magistrate Judge found that the record established that "all the discovery responses are deficient." (*Id.* at 22-23.)

Magistrate Judge Sorokin also independently reviewed the record and made the following specific findings, *inter alia*, with regard to the Boone Plaintiffs' failures to comply with this Court's Orders and their discovery obligations: (1) Plaintiffs failed to rebut the Defendants' showing that the Boone Plaintiffs' responses to template discovery were deficient in every case;

(2) Plaintiffs totally disregarded the rulings in Discovery Order No. 2 and answered interrogatories for a narrower timeframe than the Order required; (3) Plaintiffs failed to comply with their template discovery obligations regarding medical providers; (4) Plaintiffs failed to produce "copies of all of the medical records currently in their possession and" supplement their production as required by Discovery Order No. 2; (5) Plaintiffs failed to provide many non-medical authorizations; (6) most Plaintiffs totally refused to answer Interrogatories Nos. 8 and 9 even though the Court specifically ordered them to do so; (7) the process applied by Plaintiffs' counsel to collect information from his clients was flawed and prevented satisfactory discovery responses;[1] (8) Plaintiffs' counsel failed to make himself available for depositions.  (*See id.* at 7-20.)  These findings as to discovery non-compliance are afforded deference and should not be set aside unless "clearly erroneous or . . . contrary to law."  Fed. R. Civ. P. 72(a).

Applying the relevant law to his findings, Magistrate Judge Sorokin then concluded that the Boone Plaintiffs' noncompliance and discovery misconduct warranted dismissal as a sanction for failure to obey Court Orders, Fed. R. Civ. P. 37(b)(2)(A), and failure to prosecute, Fed. R. Civ. P. 41(b).  (*See* Report and Recommendation [3276], at 23-26.)  This conclusion was justified in light of:  (1) the Boone Plaintiffs' long pattern of noncompliance with Court Orders and their basic discovery obligations throughout this litigation; (2) the fact that this Court has already imposed lesser sanctions on Plaintiffs' counsel that apparently did not have an adequate deterrent effect; (3) the fact that the Boone Plaintiffs did not comply with the Court's June 9, 2010 Order despite the explicit warning "that the failure to comply with the Court's Orders set forth herein may result in dismissal of the claims of a plaintiff or of cases brought by counsel"; and (4) the blatant and pervasive deficiencies across all Boone Plaintiffs' disclosures despite their counsel's insistence to the Court that template discovery was complete in all cases.

As explained in greater detail below, the record provides ample support for all of the

---

[1] For example, many Plaintiffs gave the stock answer of "suicide ideation and abnormal thinking" in response to Interrogatory No. 11, which the Magistrate Judge found was nonresponsive and improper.

Magistrate Judge's findings and conclusions, and the Boone Plaintiffs have failed to demonstrate in their Objections that the findings are clearly erroneous.  Thus, this Court should overrule all objections by the Boone Plaintiffs' and fully adopt the Magistrate Judge's Report and Recommendations.

## FACTUAL BACKGROUND

### The Boone Cases Were Initiated By The Filing Of Mass Complaints With Few Factual Allegations Regarding Plaintiffs' Claimed Injuries, Almost None Of Which Involved Suicide

In August 2004 and May 2007, the Boone Law Firm filed three complaints against Pfizer in Mississippi that together comprised personal injury claims of 394 Plaintiffs alleging a myriad of injuries.  The only facts regarding individual Plaintiffs disclosed – by way of a chart attached as an exhibit to the 2007 *Allen* Complaint – were their names, their addresses, their dates of birth, the alleged reasons they took Neurontin, and what side effects they allegedly experienced.  The pleadings set forth a myriad of diverse injuries, but most were in no way related to suicide. Those alleged injuries included high blood pressure, low blood pressure, irregular blood pressure, strep throat, flatulence, paralysis of internal organs, numb lip, numb thumbs, numb face, "about to bite her tongue," hair loss, staff [sic] infection in blood, congestive heart failure, anyerius [sic] on the aorta, heart attack, stroke, scerosis [sic] of the liver, inflamed liver, enlarged liver, inflamed pancreas, dimenture [sic], fighting, leg amputation, shaking inside, nightmares, sleep apnea, deep sleep, high blood sugar, diabetes, fainting, itchy feeling, stomach aches, bleeding ulcers, frequent urination, inability to urinate, and dizziness.

The Boone cases were transferred to this Court for coordinated pretrial discovery. Throughout this litigation, this Court has expressed "significant concern regarding the ability of the Boone Law Firm to handle the large number of plaintiffs it represents in this MDL."  (Further Scheduling Order [2839], at 2.)  The Boone Plaintiffs' ongoing pattern of discovery neglect has validated the Court's concerns.  The Court has issued overlapping orders in an attempt to move this litigation forward, but Plaintiffs consistently ignored those orders.  Their lax approach to

discovery caused the vast majority of these cases to remain mired in the preliminary stages of litigation. More than four years after they were transferred, none are sufficiently developed to be remanded to their home district.

**The Boone Plaintiffs Violated Initial Deadlines For Template Discovery And Certification**

On June 19, 2006, this Court issued an Order directing all Plaintiffs to respond to template discovery – subject to the Court's various rulings on the parties' objections. (Discovery Order No. 2 [372], at 3-6.) A subsequent Order provided that "the deadline for production of template discovery in any action pending before this Court as of November 30, 2006 shall be January 15, 2007. For all matters transferred to this Court after November 30, 2006, production must be completed within sixty days of the transfer date." (Discovery Order No. 6 [550], at 2.) Pursuant to that Order, Plaintiffs' template discovery responses were due in two of the Boone actions (*Anderson* and *Cooper*) by January 15, 2007. In *Allen*, the deadline for template discovery was November 23, 2007. Nevertheless, many Boone Plaintiffs, particularly those in the *Allen* case, failed to provide any responses to Pfizer's template discovery requests before the applicable deadlines expired. Nor did they request extensions from Pfizer or the Court. Plaintiffs now, in their Objections to the Magistrate Judge's Order, inappositely argue the *Allen* case was not subject to the July 8, 2007 deadline for the close of fact discovery because it was transferred to this Court on September 24, 2007. (Pls.' Objections [3303] at 2-3.) Yet they ignore the self-effectuating nature of Discovery Order No. 6 in that template discovery was due sixty days after transfer (*i.e.* November 23, 2007) – a deadline they missed by several years. (Discovery Order No. 6 [550], at 2.)

On November 9, 2007, the Court issued an order requiring all plaintiffs' counsel, including Mr. Boone, to certify that they had reviewed their cases and found sufficient bases upon which to proceed. (CMO & Order Re: Mots. to Withdraw [949], at 2-3.) Although Mr. Boone submitted papers on behalf of some plaintiffs, this Court found the submission to be "incomplete or ambiguous," (Discovery Order No. 23 [1179]), and ultimately ordered him to

supplement his filings and then file a master list of all the certifications. (*See* Discovery Order No. 26 [1337] & Electronic Order entered Sept. 9, 2008.) While Mr. Boone subsequently filed form certifications and some documents in some of his cases more than nine months after the Court had originally ordered him to do so, (*see* Boone Certifications [1380-1413]), he still failed to fully comply with the Court's Order in various respects. Despite the Court's previous instruction "that by certifying that counsel has reviewed the 'relevant medical records,' counsel is not merely certifying that the documents indicate the plaintiff received an off-label prescription for Neurontin" (Discovery Order No. 26), Mr. Boone certified 88 plaintiffs based only on limited pharmacy records and 9 cases where the records submitted did not indicate that the patient had been prescribed Neurontin at all. For 195 plaintiffs, he provided medical records that contained absolutely no reference to or support for the Plaintiffs' alleged injuries. Mr. Boone also totally ignored the Court's Order to file a master list. (*See* R&R on Mot. to Dismiss [1500], at 2 ("To date, Boone has not submitted the master list.").) For those reasons, Pfizer moved to dismiss the majority of Plaintiffs' claims. (Defs.' Mot. to Dismiss [1445].)

On December 11, 2008, the Court found "that Boone failed to comply with the certification orders in a timely fashion, and that the Court was forced to issue several orders to force such compliance," but it declined to dismiss the cases at that time because of Mr. Boone's agreement to execute stipulations of dismissal in 65 cases and his representation that he "believes that pursuit of [the remaining] plaintiffs' claims is warranted." (R&R on Mot. to Dismiss [1500], at 2-3 & n.1.) The Court explicitly reserved its ruling, however, as to whether Mr. Boone's representations were justified based on the records he claimed to have reviewed. (*Id.* at 3.)

Intermittently in 2008, some Boone Plaintiffs forwarded Defendants handwritten answers to Pfizer's template discovery requests in identical "fill-in-the-blank" forms. These forms substantively changed the requests in the template interrogatories served by Pfizer and imposed time limitations that were directly contrary to several rulings in the Court's June 19, 2006 Order. In addition, these forms lacked sufficient blank spaces for Plaintiffs to fully answer many of the interrogatories. Further, it appears that Mr. Boone simply forwarded Pfizer copies of whatever

6

handwritten answers his clients provided on these forms – without any further inquiry and despite Plaintiffs' patent failures to fully answer all interrogatories.   Several other Boone Plaintiffs provided no discovery responses whatsoever at this time.

**The Court Ordered Plaintiffs To Comply With Template Discovery Or Face Dismissal**

On June 9, 2010, because Mr. Boone had "done nothing in this litigation beyond producing some of the template discovery on behalf of his clients," and most of the cases involving other firms were on track to complete common discovery by the fall of 2010, the Court set forth a timeframe for completion of initial discovery in all but 15 Boone cases.  (Further Scheduling Order [2839], at 3.)  This Order directed that, beginning on July 15, 2010, Boone Plaintiffs should produce template discovery responses for 20 Plaintiffs on the first and fifteenth of every month until completion of template discovery.  (*Id.* at 5.)  In additional to template discovery, the Court also ordered Mr. Boone to provide any and all outstanding medical authorizations for the remaining Plaintiffs, submit a chart each month as to the status of all cases, and make himself available for fifteen days of depositions each month for the five months commencing with November 2010.  (*Id.* at 4-5.)  The Court's Order included the following warning:  "In light of . . . Attorney Boone's previous failure to comply with governing rules and orders, the Court directs him to pay particular attention to" the warning "that the failure to comply with the Court's Orders set forth herein *may result in dismissal of the claims of a plaintiff or of cases brought by counsel*."  (*Id.* at 6 (emphasis omitted).)

**Plaintiffs' Discovery Noncompliance Continued Despite the Court's Clear Warning**

Over the course of the next months, Mr. Boone's efforts fell far short of satisfying the Court's Orders in numerous respects.  On July 12, 2010, the Court admonished Mr. Boone for filing an "incomplete" discovery chart and failing to provide certain medical disclosures.  (*See* Further Order Re: All Boone Cases [2886], at 2.)  The Court gave Mr. Boone until July 23 to provide the missing medical authorizations, which ultimately resulted in the Court dismissing 47 cases as a sanction for his noncompliance.  (Aug. 11, 2010 R&R [3025] & Electronic Order

7

entered Aug. 30, 2010.)  On August 10, 2010, Mr. Boone missed another deadline, and the Court levied a sanction of $500 on him.  (Order of Sanctions [3031].)  That Order stated: "The Court need not detail every instance of Attorney Boone's failure to comply with Court Orders over the past several years of this litigation. . . .   Attorney Boone's repeated failures to adhere to Court imposed deadlines not only delays the resolution of this matter; they also are a considerable drain on the Court's time and resources."  (*Id.* at 1-2.)

While the remaining Boone Plaintiffs served template discovery response by December 2010, those responses were incomplete and lacked much of the basic but critical information that Pfizer needed to proceed in discovery.  Pfizer sent Mr. Boone multiple letters and e-mails explaining what information was missing – including complete medical provider lists, medical records, and other authorizations – and requesting that he provide them as soon as possible. (*See, e.g.*, Aug. 4, 2010 C. Stevens letter [3179-3].)[2]  Pfizer further explained that it would suffer prejudice because the deficiencies made "it difficult for Defendants to collect the relevant records necessary to complete Plaintiffs' depositions, and those of their prescribers, [and] also [made] it difficult for Defendants to comply with their own discovery obligations in these cases." (*Id.*)

In its June 9, 2010 Order, the Court ordered that *all* template and common discovery should be completed by September 14, 2010 in 15 specified Boone cases,[3] as well as other cases involving other plaintiffs' firms.  On November 17, 2010, however, the Plaintiffs' Steering Committee and Pfizer filed a Joint Status Report with regard to those cases, and not a single one of the 15 Boone Plaintiffs in that group had completed fact discovery or was ready to be remanded to the transferor court.  (Joint Status Report [3129].)  In sharp contrast, the majority of

---

[2] *See also, e.g.*, Aug. 26, 2010 C. Stevens letter; Sept. 23, 2010 C. Stevens letter; Oct. 1, 2010 C. Stevens letter; Oct. 22, 2010 C. Stevens letter; Oct. 22, 2010 C. Stevens email; Oct. 27, 2010 C. Stevens letter; Nov. 23, 2010 C. Stevens letter [3179-3 to -6].

[3] These were the cases of Plaintiffs Beckum, Drennan, Duvall, Faith Ford, Galinda Ford, Lowe, Miller, Price, Scott, Shoemaker, Smith, Thornton, Townsend, Trim, and Watson.

the cases subject to the September 14, 2010 discovery deadline involving other plaintiffs' firms were substantially complete.  (*See id.*)

**Plaintiffs Inaccurately Claimed That All Template Discovery Was Complete In All Cases**

On November 23, 2010, Pfizer sent Mr. Boone yet another letter that highlighted common global deficiencies in all pending cases.  (*See* Nov. 23, 2010 C. Stevens letter [3258-1].)  That letter explained that Pfizer needed complete discovery responses in order to depose Plaintiffs without having to keep their depositions open.  It further noted: "For Defendants to be forced to come to Cleveland, Mississippi, *twice* for each of your *230 Plaintiffs* in order to obtain a fair and complete deposition is simply unacceptable, particularly when Plaintiffs should have provided the relevant records and complete and adequate discovery responses years ago."  (*Id.* at 2 (emphasis in original).)   As Pfizer had previously explained, it would suffer prejudice because the deficiencies made "it difficult for Defendants to collect the relevant records necessary to complete Plaintiffs' depositions, and those of their prescribers, [and] also [made] it difficult for Defendants to comply with their own discovery obligations in these cases."  (C. Stevens letter [3179-3].)  Because Mr. Boone did not correct the global deficiencies in the cases described in the letter, Pfizer filed a Status Update requesting guidance on these discovery issues.  (*See* Defs.' Status Update [3132].)   Mr. Boone filed a separate Status Update in which he unequivocally claimed that all Boone Plaintiffs had submitted complete medical records, authorizations, template discovery responses, and medical provider lists.  (*See* Boone Pls.' Status Update [3134], at 3-4.)

On December 1, 2010, this Court held a status conference during which Pfizer raised the issue of inadequacies in the Boone Plaintiffs' discovery responses.  The Court warned Mr. Boone that partially complete responses would not satisfy Plaintiffs' discovery obligations and aptly explained as follows:

> [D]iscovery has to be done in compliance.  It's not enough to send a form to a plaintiff in a case like this and say give me this information and get back a little bit of information that upon thoughtful review somebody experienced in this case would know is not complete and just turn it over to the other side.  It's incumbent

> on [Mr. Boone] as counsel to ensure that it's complete discovery.  That means [he] need[s] to communicate with that person, talk to them, go over it, ask the kind of thoughtful and probing questions that counsel [ordinarily] ask or should ask of their clients in the course of document production or response to paper discovery so that there's a reasonable likelihood that it is complete.

(Dec. 1, 2010, Status Conference Tr. [3179-15] at 31:13-32:8.)  Despite this admonishment, Mr. Boone maintained the untenable position that his clients were in substantial compliance.  He also stated:  "I think the Court would probably need to look at these on a case-by-case basis" to determine the adequacy of these responses.  (*Id.* at 33:13-17.)  This Court then stated: "I think it's going to require a case-by-case determination, and what I'm expecting after the drop-dead date is one motion from [Defendants] that outlines any cases [they are] dissatisfied with, the general law, case by case each one, and then [Plaintiffs will] respond with the general law and then a case-by-case response."  (*Id.* at 33:20-25.)  On December 6, 2010, this Court ordered that, "[i]nsofar as the [template discovery] responses are unsatisfactory or incomplete, Defendants may file a motion to compel" in the Boone cases.  (Dec. 6, 2010, Scheduling Order [3141], at ¶ 5 (signed by Saris, J., and Sorokin, M.J.).)[4]

### After Multiple Warnings, Plaintiffs Still Failed To Comply With Their Discovery Obligations

Despite these repeated warnings from the Court and multiple letters sent by Pfizer requesting adequate responses, Plaintiffs still had not corrected the numerous deficiencies. Accordingly, after a lengthy meet and confer call with Mr. Boone, Pfizer sought relief in accordance with the terms of the Court's Order by filing a motion on December 20, 2010 as to 214 Boone cases.  In light of the previous statements by both Mr. Boone and the Court, Defendants made a conscious effort to raise the discovery deficiencies on a case-by-case basis. Pfizer submitted a Memorandum of Law and a case-specific Appendix outlining particular deficiencies in each individual case.  Pfizer also sent to the Court eight boxes of documents

---

[4] While the Court recognized that it had previously applied a "rolling schedule" to the Boone Plaintiffs' production of template discovery, its Order explicitly revised that schedule based on Mr. Boone's representations that his clients had "produced all of the template discovery."  (Dec. 6, 2010, Scheduling Order [3141], at ¶ 5 & fn.1.)

containing deficient discovery responses from Mr. Boone organized by individual plaintiffs. This was an extremely labor-intensive, time-consuming, and costly task.[5]  In stark contrast, the Boone Plaintiffs' filed an Opposition on January 5, 2010 that made only broad, vague, and generalized statements about only some of Pfizer's arguments, failed to respond to others, failed to respond on a case-by-case basis, and almost entirely ignored Pfizer's case-specific Appendix.

## ARGUMENT

### I.      Pfizer Established That All Boone Plaintiffs' Discovery Responses Are Deficient And They Did Not Rebut That Showing

In light of the Boone Plaintiffs' failure to address in the vast majority of cases the discovery deficiencies established by Pfizer's Appendix – despite their counsel's argument at the December 1, 2010 hearing that cases should be addressed on a "case-by-case" basis and the Court's instruction to do the same – as well as the numerous other documented instances of noncompliance and misconduct, Magistrate Judge Sorokin found:

> The Court has before it substantial and unrebutted evidence of deficiencies in the discovery responses in individual cases and the identified problems along with the deficiencies in the process employed by Boone warrant the conclusion that all the discovery responses are deficient.  In addition, the Court has the unrebutted detailed recitation of problems in each and every one of Boone's cases.

(Report and Recommendations [3276], at 22-23.)    Undoubtedly, the record supports the conclusion reached by the Magistrate Judge.

Even now, the Boone Plaintiffs have not attempted to respond to the individual deficiencies raised in Pfizer's case-specific Appendix, despite their insistence that "they . . . are

---

[5]  For instance, a staff of paralegals spent more than 300 hours collecting, reviewing, and organizing the materials sent by the Boone Plaintiffs.  (*See* Memo. in Supp. of Attorneys' Fees [3217] at 2.)  The difficulty in compiling these materials was exacerbated by the Boone Plaintiffs' haphazard and disorganized production.  In the majority of instances, the discovery responses were not labeled as supplemental responses and, instead, each has the same title, which caused confusion.  Additionally, the Boone Plaintiffs' discovery responses frequently cross-referenced other documents, including medical provider lists and medical records.  A team of attorneys also reviewed these confusing, inconsistent, and (in some cases) handwritten materials in drafting the motion, supporting memoranda, and case-specific Appendix.  In cases where depositions occurred, attorneys also reviewed transcripts because in many cases Plaintiffs provided more and sometimes different information at their depositions than in their discovery responses.

individual Plaintiffs whose case [sic] must be judged individually." (Pls.' Objections [3303] at 28.) Instead of addressing Pfizer's case-specific assertions, they now complain that they needed more time to respond to Pfizer's motion. (*Id.* at 30.) Yet their counsel never once requested an extension of this Court's briefing schedule set on December 6, 2010. Moreover, if Plaintiffs' counsel lacked the resources to competently *and timely* litigate the hundreds of cases that he filed, then it was his responsibility to associate additional counsel to provide support. It is not improper for this Court and Pfizer to take steps to move each of these cases toward resolution within a reasonable timeframe. If these cases were allowed to continue to move at the same pace as they have moved for the past four years, it would take many more years to even get most of them ready for remand to the trial court. Plaintiffs' counsel also attempts to explain his failure to respond by characterizing the case-specific Appendix submitted by Pfizer as "gigantic." (*Id.*) In reality, however, it only amounts to about one page per Plaintiff, and the size of the Appendix is directly proportional to the number of Plaintiffs represented by Mr. Boone and the instances of discovery deficiencies in these cases.

Pfizer's case-specific Appendix comprised brief descriptions of the discovery deficiencies under the headings of each case name. The deficiencies raised therein included (but were not limited to) the following: (1) the quantity of documents that had been produced and the surrounding circumstances indicating that a particular Plaintiff's production was incomplete; (2) the names of Plaintiffs who had not produced medical providers lists; (3) instances where a Plaintiff had listed a small number of medical providers despite having named many more at his or her deposition; (4) instances where a Plaintiff named only a few medical providers despite the fact that his or her medical records contained more names of doctors; (5) the interrogatories that each Plaintiff totally failed to answer, wrote an evasive answer such as "N/A", or simply objected to; and (6) an interrogatory-by-interrogatory explanation in each case as to how and why Plaintiffs' answers were nonresponsive, inaccurate, or incomplete. The Magistrate Judge specifically found that Pfizer's Appendix and other memoranda complied with the Court's Order to raise these discovery issues on a case-by-case basis and established deficiencies in every case.

(Report and Recommendations [3276], at 20-21, 22-23.)   Resorting to broad generalities, Plaintiffs' response to Pfizer's Motion to Compel completely ignored Pfizer's case-specific Appendix as to all but 10 of the 214 cases.   Even with regard to the 10 cases specifically mentioned in Plaintiffs' Opposition, most of the deficiencies raised by Pfizer were neither denied nor addressed.[6]

Despite Plaintiffs' many complaints and attempts to shift blame, the record remains clear: After Plaintiffs' counsel insisted that the Court consider discovery on a case-by-case basis, the Court specifically requested Pfizer to raise all deficiencies with particularity and then set a briefing schedule.   Pfizer's filings on December 20, 2010 complied with that Order and made an affirmative showing of discovery noncompliance in each case.   Plaintiffs then failed even to respond – much less rebut – the vast majority of individual deficiencies raised in Pfizer's motion, nor did they request an extension of the briefing schedule set by the Court.   As such, the arguments by Plaintiffs' counsel that the answers of a few Plaintiffs to a few interrogatories were less incomplete than others cannot cure Plaintiffs' failure to demonstrate, on a case-by-case

---

[6]   For example, with regard to Plaintiff Jerry Lowe, Plaintiffs' Opposition stated only that "Defendants complaint [sic] about medical providers."   (*Compare* Pls.' Opp. to Mot. to Compel [3206] at 5-20*, with* Appendix A [3179-1] at 1-15.)   It did not address, however, the case-specific Appendix's noted deficiencies as to Mr. Lowe's responses for Interrogatories Nos. 2, 3, 4, 5, 10, 12, 15, and 24.   Mr. Lowe also claimed at his deposition that he had thoughts of killing himself, but that fact did not appear in his discovery response, which stated only that he was addicted to Neurontin.   Further, Mr. Lowe had disclosed no prescription timeframe, but testified that he filled a prescription for Neurontin in 2010.   As to Plaintiff Scott, the Opposition only addressed Pfizer's contention that she provided 4 names in response to Interrogatory No. 4 instead of the requested 10.   Yet it ignored the other deficiencies listed in the case-specific Appendix, including her failure to provide any medical provider list, failure to provide a prescription timeframe, and her inadequate answers to Interrogatories Nos. 1, 2, 3, 8, and 9.   As to Plaintiff Louisa Smith, Plaintiffs' Opposition simply claimed that she could not remember the name of her husband or her children's birthdays, but it ignored the many deficiencies outlined in the case-specific Appendix – including the fact that she listed only two medical providers even though her pharmacy records contained several others, that Pfizer's requests for the full names and addresses of the undisclosed providers had gone unanswered, and that Plaintiffs' answers were inadequate for Interrogatories Nos. 3, 4, 7, 8, 9, 11, and 14.   For Plaintiff Joyce Watson, Plaintiffs' Opposition addressed only Interrogatory No. 4 and the fact that her responses as to her alleged mental illness were inconsistent.   It failed to address Pfizer's points that she produced only 8 pages of medical records, failed to identify the physicians who prescribed Neurontin or the dates of use, identified numerous medical providers for the first time at her deposition, and disclosed for the first time at her deposition that she was experiencing suicidal thoughts daily.

basis, that they had complied with their discovery obligations and the Orders of this Court. Plaintiffs' many irrelevant, post hoc excuses and attempts to shift responsibility do not detract from the unrebutted evidence establishing that all cases were deficient and not in compliance with the Court's Orders.

## II.     The Boone Plaintiffs Failed To Provide Complete Answers To Interrogatories

### A.     Boone Provided A Boilerplate, Non-Responsive Answer To Interrogatory Number Eleven On Behalf Of Many of His Clients

"[D]isturbing," "completely non-responsive," "canned," and so out of sync with the factual record that it raised "serious questions in the Court's mind under Fed. Civ. P. 11" – these were all ways the Magistrate Judge described the answers to Interrogatory No. 11 supplied by Plaintiffs' counsel on behalf of his clients.  (Report and Recommendations [3276], at 14-16.)

Interrogatory No. 11 asked:

Please describe any instances of psychiatric or mental illness, suicide, attempted suicide, homicide or other violent behavior by Plaintiff or any of Plaintiff's family members . . . for each such instance, identify the person; the person's relationship to Plaintiff the nature of the person's illness or behavior and identify the individuals that might have knowledge of these incidents.

Despite the fact that many of the Boone Plaintiffs had never before raised allegations of suicide ideation in this lawsuit, many of their 2010 supplemental responses contained or consisted solely of the answer: "Abnormal thinking and suicidal ideation."  Other Plaintiffs, in addition to this stock response, also raised a variety of other behavioral and psychological issues for the first time in this litigation.  Plaintiffs then cross-referenced Interrogatory No. 11 in their responses to Interrogatory No. 19, which asked for a computation of damages.  These answers were critical, considering that they were one of the only instances where Plaintiffs actually described what injuries they were still alleging.

Plaintiffs' 2010 answers to Interrogatory No. 11 are improper for several reasons.  First, this response was the first time that the majority of Plaintiffs disclosed allegations of suicide ideation and other psychological injuries, despite the fact that their cases had been pending for several years.  (*See* Memo. in Supp. of Mot. to Compel [3177] at 19-21.)  Second, the Boone

14

Law Firm, which represents hundreds of plaintiffs in this litigation, cannot simply recite the canned response of "suicide ideation and abnormal thinking" to interrogatories that seek individualized information.  *See In re Family Dollar FLSA Litig.*, No. 3:08MD1932-MU, 2009 WL 2046042, at *5-6 (W.D.N.C. July 10, 2009).  Third, the answers, as the Magistrate Judge observed, fail to respond on a basic level to the question presented.  Fourth, it is patently unfair for Plaintiffs to raise a never-before-disclosed alleged injury at this late stage when Pfizer has been evaluating these cases and proceeding with discovery based on responses to the initial templates.  Fifth, Plaintiffs' counsel admitted that these large-scale changes in alleged injuries were tied to his belief that such injuries would be more likely to survive a *Daubert* challenge.  (*See* Pls.' Opp. to Mot. to Compel [3206] at 4 ("Obviously, only a limited number of injuries have passed the *Daubert* tests in this case and suicidal ideation is one of the few injuries that Daubert [sic], so it should not be surprising that many Plaintiffs would have suicidal ideation as an injury.").)  Sixth, the circumstances suggest that some Plaintiffs may have been improperly influenced to suddenly recall previously undisclosed ideation or "abnormal thinking."  For instance, when Plaintiff Roy Carroll was asked what specifically prompted him to change his response in 2010 (describing behavioral issues) from his answer in 2007 (no response), he claimed it was because "the lawyer went over the questions with me."  (Carroll Dep. [3215-2] at 159:12-160:7.)

Finally, and perhaps most troubling, the record contains strong evidence that the Boone Law Firm may have added new allegations of injuries in some cases without an adequate investigation to ensure there was a factual basis.  For example, Plaintiff Elizabeth Knight's answer to Interrogatory No. 11 in 2007 made no mention of suicide ideation.  Plaintiff Knight died from unrelated causes in 2008.[7]  Yet Pfizer received an unverified response on behalf of

---

[7] Despite Plaintiffs' counsel's contentions to the contrary, the claims of Plaintiff Knight were not pled as an estate claim nor has counsel filed a motion to substitute parties.  *See* Fed. R. Civ. P. 25 (setting forth procedure for substitution of parties upon death).  He did, however, agree to take her deposition in 2010 until defense counsel informed him she was deceased.  Pfizer also had to inform Plaintiffs' counsel in 2011 that Plaintiff Ollie Johnson had died in early 2010.

Plaintiff Knight in 2010 that disclosed for the first time depression and other psychological and behavioral symptoms.   Plaintiffs' counsel was apparently unaware of Ms. Knight's death, because Pfizer had to inform him that Plaintiff Knight had died after he had agreed to take her deposition in 2010.

Furthermore, at the deposition of Plaintiff Josephine Jackson on January 7, 2011, she was shown the response to Interrogatory No. 11 submitted on her behalf, which contained a stock answer that she suffered "abnormal thinking and suicide ideation."  Regarding suicidal ideation, she then testified, "I don't know who put that there, because I did not tell nobody that."  (Jackson Dep. [3258-3] at 113:17-114:7.)[8]

Even now, Plaintiffs' counsel does not explain why his clients' answers to Interrogatory No. 11 changed over the years.  Instead, he responds to these serious charges by arguing that "[t]he propriety of the response 'abnormal thinking and suicidal [sic] ideation' can only be tested after a deposition of the respective Plaintiff."  (Pls.' Objections [3303], at 24.)  This not only misses the point, it highlights the underlying misconduct.  Plaintiffs' counsel cannot simply include new allegations – in response to *Daubert*-related developments in the litigation – that are not based on a reasonable investigation or an interview with Plaintiffs, but rather on the gamble that he may later solicit testimony to support these allegations at their depositions.  Even if that gamble ostensibly paid off in some cases, his tactics would have still violated Federal Rules of Civil Procedure 26(g)(1) and 11.

---

[8] Magistrate Judge Sorokin also observed, based upon a random sample of sixteen Plaintiffs' responses, that most of them were unverified.  *See* Fed. R. Civ. P. 33(b).  Plaintiffs contend that additional signature pages were provided between December 20, 2010 when Pfizer filed its motion and February 4, 2011 when the Magistrate Judge filed his Report (Pls.' Objections [3303] at 28); however, testimony such as Plaintiff Jackson's raises the concern that not all plaintiffs reviewed the interrogatory answers when they signed their interrogatory responses.  Similarly, Plaintiff Shoemaker stated in his 2010 response to Interrogatory No. 11 that he "tried to overdose while taking Neurontin."  (2010 Shoemaker Resp. To Interrogs. [3179-13], Resp. No. 11.)  Yet at his deposition, Plaintiff testified that he has never tried to overdose on drugs.  (Shoemaker Dep. [3179-14], at 135:12-18.)  Plaintiffs' counsel cannot serve unverified interrogatory answers on behalf his clients – particularly answers that raise new alleged injuries of suicide ideation for the first time in this litigation – without first confirming their accuracy of those answers with Plaintiffs themselves.  Additionally, the majority of recent verifications received by Pfizer were unattached to the original discovery.

### B. The Boone Plaintiffs Disobeyed The Court's Discovery Rulings And Refused To Answer Two Interrogatories That The Court Ordered Answered

Nearly all Boone Plaintiffs improperly objected to Interrogatory Nos. 8 and 9 (seeking certain financial information) without providing any response whatsoever. Considering that this Court ruled that "[r]egarding Interrogatory Nos. 8 & 9, Plaintiffs shall respond to the interrogatory as propounded," (Discovery Order No. 2 [372], at 6), it was indisputably improper for Plaintiffs to simply object without answering. Again, the Boone Plaintiffs do not dispute that their failure to respond to these interrogatories was improper. They simply note that their counsel used a form designed by someone else. (Pls.' Objections [3276], at 20.) Regardless of who originally drafted the objection, Plaintiffs and their counsel were still required to follow Orders of this Court. Furthermore, Plaintiffs' counsel's attempt to adopt another's objection and then disavow responsibility is contrary to the Federal Rules. *See* Fed. R. Civ. P. 33(b)(5) (requiring that "the attorney who objects must sign any objections"). The facts here are cut and dry: This Court specifically ordered Plaintiffs' to respond to these Interrogatories, but they refused to do so.

### C. The Boone Plaintiffs Made Improper Objections Or Failed To Respond To Several Other Interrogatories

Plaintiffs also failed to provide any responses to other interrogatories, or they simply wrote an evasive response such as "don't recall" or "N/A." Such failures to respond prevented Defendants from obtaining very basic information prior to depositions. For example, while Plaintiff Scott stated that she had no children in response to Interrogatory No. 1, Defendants learned at her deposition that she in fact does have children. (*Compare* Scott Interrogatory Response [3179-21], *with* Scott Dep. [3179-22], at 13:18-25.) She also failed to explain that her grandmother and brother lived with her, and she failed to disclose her prior residence in Memphis, where she lived for eight years. (Scott Dep. at 16:4-25.) Despite having much of this information readily available, Plaintiff Scott failed to respond to or crossed out Interrogatory

Nos. 1, 5, 6, 7, 10, 11, 13, 24, and 25.[9]   Non-answers and evasive answers like "don't recall" are particularly inappropriate in light of the Court's Discovery Order No. 2, which gave specific instructions as to how to answer many of these particular interrogatories.  (*See* Discovery Order No. 2 [372], at 6 (referencing Interrogatory Nos. 6, 10, 13, 24).)

In addition to those evasive answers, many Boone Plaintiffs responded to requests by writing "to be supplemented," which prevented Pfizer from obtaining vital facts prior to depositions.  For example, Plaintiff Shoemaker initially provided no response to Interrogatory Nos. 6 (asking for whether he has ever consumed alcohol or used illegal drugs) and 13 (asking whether he was ever charged with or convicted of committing a crime).  (2008 Shoemaker Resp. To Interrogs. [3179-12].)  Plaintiffs' counsel submitted additional responses for Mr. Shoemaker in 2010, but wrote "to be supplemented" in response to the question about criminal history and "No" in response to the question about drug and alcohol use.  (2010 Shoemaker Resp. To Interrogs. [3179-13].)  At his deposition, however, Plaintiff Shoemaker conceded that he was arrested in 1992 for grand larceny, was convicted of driving under the influence ("DUI") charge and possession of marijuana in 1993, pled guilty to a DUI charge and operating a vehicle with a suspended license in 1994, plead guilty to criminal misdemeanor and petty larceny in 1995, was charged with killing animals in 1997, was arrested for a DUI charge and manslaughter in 2005, pled guilty to manufacturing methamphetamines, and was charged with burglary in 2005.  (Shoemaker Dep. [3179-14] at 139:14-151:17.)   When defense counsel asked Plaintiff Shoemaker why he failed to disclose this information, (after his counsel interjected with several baseless objections) Plaintiff could provide no explanation.  (*Id.* at 152:7-155:17.)[10]

---

[9] Plaintiff Carl Henry responded "N/A" to Interrogatory Nos. 6, 8, 9, 10, 11, 13, 16, 17 and 18.  (*See* Ex. S, Henry Resp. to Interrogs. [3179-23].)  Plaintiff Mae Hester wrote "n/a" in response to requests regarding her employment history, drug use and related treatment, psychiatric treatment, and criminal history.  (*See* Ex. S, Hester Resp. to Interrogs. [3179-23].)  Plaintiff Emma Gregory answered "don't know" to Interrogatory No. 1, which seeks information about her marriage date and location, and then provided no response whatsoever to the remaining 24 interrogatories.  (*See* Ex. S, Gregory Resp. to Interrogs. [3179-23].)

[10] Mr. Shoemaker also testified that he thought he still had a bottle of Neurontin in his possession that had not been produced.  (Shoemaker Dep. [3179-14] at 136:3-12.)

Answers like "to be supplemented," "N/A," or "don't recall" were completely unhelpful and inappropriate given how long the litigation was pending, and should "be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).

## III.   The Boone Plaintiffs And Their Counsel Violated Various Court Orders And Otherwise Failed To Provide Threshold Discovery

### A.   Plaintiffs Failed To Provide Complete Medical Provider Lists

Magistrate Judge Sorokin found that the Boone Plaintiffs' medical provider lists were incomplete and concluded that the improper time limitations unilaterally added to the template forms sent by Plaintiffs' counsel caused or contributed to these global inadequacies.  (*See* Report and Recommendations [3276], at 9-10.)  For instance, while Interrogatory No. 14 asks, in part, for the name of the healthcare professional that prescribed the medication, the defective form used by Boone Plaintiffs does not even elicit or leave room for the name of the prescriber.  As a result, some Boone Plaintiffs have disclosed no medical providers whatsoever, and many have disclosed only one or two.  Defendants' past experience in this litigation indicates that the Boone Plaintiffs have seen far more medical providers in the last 10-20 years, and several of them later testified about numerous providers not previously disclosed before their depositions.  Furthermore, unlike plaintiffs represented by other firms in this multi-district litigation, the majority of Boone Plaintiffs failed to identify which physicians prescribed Neurontin, and the vast majority failed to provide the date ranges of each prescription period – thus preventing Pfizer from responding in case-specific discovery.[11]  (*See* Discovery Order No. 2 [372], at 4 (ordering Plaintiffs to "identify the physicians who prescribed Neurontin to them, as well as the date range(s) of each prescription period."); *also compare* Bennett (Finkelstein Plaintiff) Resp. to

---

[11] Despite Pfizer's repeated explanation that it could not identify certain case-specific information regarding sales representatives without this basic information, the Boone Plaintiffs filed a motion to compel disclosures that they themselves were preventing.  Their recent argument that the Magistrate Judge should have considered their motion to compel first does not make sense given that Plaintiffs were withholding the information Pfizer needed to respond to their requests.  Pfizer was able to search for and produce such materials for plaintiffs represented by other law firms because Pfizer was able to ascertain case-specific information, including the name of prescribing doctors and the dates Plaintiffs took Neurontin, to enable its responses.

Interrogs. [3179-16], Resp. No 12, *with* Brown (Boone Plaintiff) Resp. to Interrogs. [3179-17], Resp. No 12.)

The Boone Plaintiffs' woefully incomplete medical provider lists did not supply Defendants with enough information to search for responsive materials for Plaintiffs' discovery requests.  As this Court previously recognized, "a lot of [plaintiffs' discovery] requests turn on the timing of various – of the prescriptions or who issued the prescriptions."  (June 15, 2006 Status Conference Tr. [3179-27] at 12:9-18.)  In many cases, Plaintiffs have not even disclosed the name of the physician who prescribed Neurontin or specifically identified the prescriber. Without complete medical provider lists, the full names and addresses of physician(s) that prescribed Neurontin, and date ranges for each Neurontin prescription period or a date of injury, Pfizer could not retrieve case-specific discovery.[12]

This common deficiency also impeded Defendants efforts to efficiently depose and collect records from treating physicians.  While Plaintiffs signed authorizations for some medical records, their provider lists and other discovery responses were so inadequate that Pfizer could derive only minimal utility from such authorizations and, therefore, Pfizer had to proceed with depositions of Plaintiffs even though it was unable to obtain a large portion of their medical records.  For example, Plaintiff Scott disclosed 8 additional providers at her deposition that had not been included in her medical provider list.   Plaintiff Watson disclosed 21 additional providers.  Plaintiff Kyle disclosed an additional 4, and Plaintiff Trim disclosed an additional 5. These are just a few examples of where Pfizer had to take depositions of Plaintiffs without all

---

[12] For example, Plaintiff Louisia Smith only provided the names and addresses for two doctors in her provider list:  Dr. Kenneth J. Hayles and Dr. Parvez Karim.  (Louisia Smith Provider List [3179-18].) Yet Defendants later learned through her pharmacy records that she had consulted three other doctors who prescribed her Neurontin, Dr. Jenkins, Dr. Sanders, and Dr. Wilkerson – none of whom appeared on Ms. Smith's medical provider list.  (Smith Pharmacy Record [3179-19].)  Even then, Pfizer could not locate the doctors or use this information because it only had the doctors' last names.  On three separate occasions, Pfizer wrote to Mr. Boone requesting these prescribing physicians' first names and addresses, but he never responded or provided that information.  (*See* Aug. 12, 2010 C. Stevens email; Sept. 30, 2010 C. Stevens email; Oct. 27, 2010, C. Stevens letter [3179-20].)  Without a full name and address, Pfizer could not search for records.

names of medical providers or complete medical records.  Naturally, Pfizer had to keep the deposition of Plaintiffs open in each of these and other cases, which amounts to great waste of resources directly resulting from Plaintiffs' failure to comply with their discovery obligations. Additionally, considering that the Boone Plaintiffs were mostly from the same area, there was a great deal of overlap in the Neurontin prescribers amongst Plaintiffs.  Pfizer sought to depose each doctor regarding multiple Plaintiffs in a single day to save both the parties resources and the doctors' time.  Yet Plaintiffs' failures frustrated those efforts and created much inefficiency. These provider lists constituted some of the most basic information sought by Pfizer in discovery and was readily available to Plaintiffs.  Their failure to supply the information as ordered by the Court significantly prejudiced Pfizer's attempts to move these cases forward in a just, speedy, and inexpensive manner.

**B.      The Boone Plaintiffs Disobeyed The Court's Discovery Rulings Regarding Disclosure Of Medical Records**

This Court ordered that "Plaintiffs shall produce copies of all of the medical records currently in their possession and they shall supplement the production as they receive medical records in the future." (Discovery Order No. 2 [372], at 3.)  The Boone Plaintiffs failed to obey this clear directive.  As the Magistrate Judge correctly observed, in about 180 cases (the vast majority), less than 100 pages were produced by each individual Plaintiff.  In approximately 100 cases, the number of pages produced was less than 20 pages.  The small quantity of total documents produced by each Boone Plaintiff compared to the average amount produced in other cases involving other firms further highlights the incompleteness of their document production efforts.

Furthermore, deposition testimony revealed the existence of medical records in Plaintiffs' possession that have not yet been produced.  During the deposition of Dr. Brown, Plaintiff Duvall's physician, Plaintiffs' counsel attempted to introduce several undisclosed mental health records.  (*See* Brown Dep. [3179-7] at 172:22-175:7.)  Additionally, Plaintiff Johnson has produced the same two pages of clinic notes twice, and the same two-page pharmacy list (limited

to 2002 to 2004) three times, but has produced no other medical or pharmacy records.  Yet in Exhibit B to Plaintiff Johnson's Complaint she stated that she has "been taking [Neurontin] since 2000 – still taking."  Also, Plaintiff Watson testified regarding a box of medical records located at her house that had not been produced.  (*See* D. Watson Dep. [3179-9], at 9:22-13:6.)  She also testified that no one told her she was required to preserve her medical records.  (*Id.* at 10:11-13; *see also* Kyle Dep. [3179-10], at 10:19-25 (stating that no one has "ever told [him] to keep documents relating to [his] healthcare pertaining to this lawsuit"); Lowe Dep. [3179-26] at 238:11-239:4.)  Similarly, at the deposition of Plaintiff Kendrick, Pfizer learned about numerous medical records that Plaintiff kept at her house but failed to produce during discovery.  (*See* Kendrick Dep. [3258-4] at 248:25-259:10.)  These missing documents were highly material to the case because they showed that Plaintiff was prescribed Neurontin in 2001, even though the records Pfizer had obtained indicated that she did not begin taking it until 2003.  (*See id.*)  When asked whether "anyone told [her] that [she] should preserve those documents so that [she] can produce them in this lawsuit," she responded, "No, sir."  (*Id.* at 255:24-256:2.)

The Boone Plaintiffs have not made a diligent attempt to satisfy their obligations to produce medical records in their possession, and Plaintiffs' counsel failed to advise his clients of their duties to preserve and produce records.  The Boone Plaintiffs' contentions to the contrary are merely conclusory.  They claim that Pfizer should have to affirmatively prove that each Plaintiff's individual production efforts were inadequate.  Inconsistent with that argument, however, they make no attempt to rebut the deficiencies raised in Pfizer's case-specific Appendix, which (in cases where the insufficiency of medical records was implicated) specifically described the quantity produced, the nature of the records, and the basis for Pfizer's conclusion that substantial responsive documents were missing in each case.  As such, the record clearly supports Magistrate Judge Sorokin's findings that Plaintiffs' counsel: "(1) failed to advise his clients to preserve and to produce medical records in their possession; (2) failed to obtain from his clients all of the medical records in their possession; and (3) failed to produce all medical records in his possession."  (Report and Recommendations [3276], at 11.)

**C.**     **The Boone Plaintiffs Have Failed to Provide Non-Medical Authorizations As Ordered By The Court**

The Boone Plaintiffs have failed to provide a myriad of non-medical authorizations or to supply corresponding records, despite this Court's Order to produce or provide authorizations for documents in the possession of educational, governmental, and other entities.  (Discovery Order No. 2 [372], at 4, n.2.)  Such authorizations, or the corresponding records, were routinely provided by other firms in this litigation.  In their objection to this finding, Plaintiffs point to emails attached as exhibits transmitting some non-medical authorizations.  However, these emails actually *support* the Magistrate Judge's finding that Plaintiffs had not produced all non-medical authorizations prior to the filing of Pfizer's motion, and certainly had not done so by December 1, 2010, when Plaintiffs' counsel told the Court that discovery was complete in all cases.  Many of the emails in Plaintiffs' Exhibit 13 were sent after December 20, 2010, the date on which Pfizer filed its motion.  (*See* Pls. Ex. 13 [3304-14 to -16].)  As the First Circuit has observed, "violation of a time-specific order [cannot be] cured by subsequent compliance . . . ." *Young v. Gordon*, 330 F.3d 76, 82-83 (1st Cir. 2003).

**IV.   Plaintiffs' Counsel Engaged In Misconduct And Affirmatively Contributed To His Clients' Discovery Deficiencies**

**A.**     **Plaintiffs' Counsel Failed To Make Himself Available For Depositions As Ordered By The Court**

The Court ordered that "[d]epositions in the Boone Law Firm cases . . . shall proceed at the pace of fifteen days per month . . . .  If either side seeks relief from this requirement they shall file a motion with the Court."  (Dec. 6, 2010, Scheduling Order [3141], at ¶ 7 (signed by Saris, J., and Sorokin, M.J.); *see also* June 9, 2010 Scheduling Order [2839], at 5-6.)  Fifteen days of depositions did not occur in November.  In December, Plaintiffs' counsel claimed he was available for only seven and a half days to take depositions.  (Dec. 2, 2010, L. Boone email chain [3179-8].)  In January, he made himself available for only thirteen days.  Thus, because Plaintiffs' counsel did not make himself available for fifteen days of depositions per month or file a motion seeking to be excused, he knowingly violated the Court's Order.

Plaintiffs' counsel now provides a laundry list of excuses for why fifteen days of depositions did not occur in these months.  For instance, he claims that he was unavailable on certain days because he had to take continuing legal education classes, he had to travel to and attend hearings, or he had previous obligations regarding other cases.  If anything, these circumstances suggest that Plaintiffs' counsel was single-handedly attempting representation in more cases than he had resources to handle alone.  (*See* June 9, 2010 Scheduling Order [2839], at 2 (expressing doubt that counsel could handle all of the cases in the MDL).)  Plaintiffs' counsel also argues that some depositions did not go forward because they were voluntarily dismissed on the eve of the depositions.  Yet Plaintiffs' counsel had previously declined – despite numerous opportunities – to voluntarily dismiss these cases long before their depositions were scheduled to take place.  As such, the excuses he now raises were all of his own making, either because he improvidently took on more cases than he could competently litigate on his own or because he recalcitrantly refused to dismiss cases that obviously lacked merit even as other plaintiffs' firms in this litigation were doing so.  In addition to the fact that his undeniable neglect is not excusable, the Court's Order made clear that, at the very least, Plaintiffs' counsel should have filed a motion seeking relief.  Failure to do so constituted a violation of the Order regardless of any post hoc excuses.

## B.  Boone's Process For Gathering Information From His Clients Prevented Proper Discovery Responses

Plaintiffs' counsel sent his clients a defective form that contained insufficient space for them to provide the information requested and imposed improper time limitations that were directly contrary to rulings of the Court.  Specific examples of these defects are listed in the Magistrate Judge's Report, ([3276] at 17), and Pfizer's Memorandum in Support of its Motion, ([3177] at 24-26).

Plaintiffs' counsel does not deny that his forms lacked sufficient space for Plaintiffs to fully respond, but he claims the insufficient space was not a problem because Plaintiffs could have written on the back of the paper or added additional pages.  (*See* Pls.' Objections [3303], at

24-25.)  The fact remains, however, very few Plaintiffs actually did write on the back or provide additional paper.  Plaintiffs' counsel also argues that it has not been affirmatively shown that Plaintiffs felt limited by the lack of space, but his argument once again ignores the testimony. (*See, e.g.*, Skinner Dep. [3179-25] at 151:7-10 (stating that she only provided four names in response to Interrogatory No. 4 because she "only had four lines").)  Just like any written instruction, the number of blank spaces in a fill-in-the-blank form communicates a limitation on what is being requested.  For example, asking a question and providing four blanks communicates that only four items are being sought.  These limitations, which are contrary to the Court's Orders, constitute yet another example of the flawed process Plaintiffs' counsel used to collect discovery from all his clients.

Furthermore, Plaintiffs' counsel does not deny that the defective forms supplied to Boone Plaintiffs unilaterally imposed time limitations on certain interrogatories, including those pertaining to the identification of mental health providers and all medical providers, that were previously overruled by the Court.  For example, the Court-approved version of Interrogatory No. 10 asked Plaintiffs to provide certain information about any psychiatrist or other mental health professional Plaintiffs may have seen at any time.  The altered form provided by Plaintiffs' counsel adds the following time limitation: "treatment to the Plaintiff for the time period since five (5) years before Plaintiff started taking Neurontin OR since ten (10) years before the occurrence of the incident alleged in the Complaint, whichever date is earlier."  (*See, e.g.*, 2008 Shoemaker Resp. To Interrogs. [3179-12].)  However, Discovery Order No. 2 explicitly stated, "Regarding Interrogatory Nos. 10 and 12, Plaintiffs' *time period limitation is OVERRULED*."  (Discovery Order No. 2 [372], at 6 (emphasis added).)  Plaintiffs' counsel also attached improper time limitations to Interrogatory Nos. 2, 3, 5, 6, 12, 13, 14, and 24.  This unilateral and arbitrary limit to the scope of Plaintiffs' discovery obligations was contrary to both this Court's Order and the Federal Rules.  Because Plaintiffs' responses have been restricted by invalid time limitations, they are inherently incomplete.

Plaintiffs' counsel's only excuse for using this defective form is that liaison counsel

drafted it.  (Pls.' Objections [3303], at 14.)  But willful ignorance of applicable rulings is not a valid excuse.  Regardless of who drafted the form, Plaintiffs' counsel had the duty to read and comply with the Court's unambiguous mandates.

## V.   Dismissal Was Appropriate Due To The Long Pattern Of Discovery Neglect And The Egregious And Pervasive Noncompliance With Court Orders In These Cases

Failure to comply with discovery orders – as the Boone Plaintiffs repeatedly did in this case – provides adequate grounds for ordering a dismissal with prejudice as a sanction.  *See, e.g.*, *Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este*, 456 F.3d 272, 275 (1st Cir. 2006) (noting that "federal courts possess wide-ranging power to sanction parties who repeatedly balk at complying with court-imposed deadlines").  As the First Circuit has observed, "disobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal)." *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002).  Dismissal for non-compliance with discovery orders not only protects the rights of the parties, it also vindicates the Court's "strong" "interest in administering its docket." *Id.*; *see also Santiago-Díaz*, 456 F.3d at 277 (recognizing that "the district court has an interest in the efficient management of its docket").  "[C]ourts cannot effectively administer justice unless they are accorded the right to establish orderly processes and manage their own affairs[, and t]he sanction of dismissal is an important part of the armamentarium that the law makes available to trial courts." *Young*, 330 F.3d at 81.  This sanction also serves to "deter others from similar misconduct." *Id.* at 83.

Dismissal is a particularly appropriate sanction for discovery misconduct in the multi-district litigation context.  Courts have recognized that "multidistrict litigation is different because of the large number of cases that must be coordinated, its greater complexity, and the court's statutory charge to promote the just and efficient conduct of the actions." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1222 (9th Cir. 2006) (citing 28 U.S.C. § 1407).  "MDL courts must be given greater discretion to organize, coordinate and adjudicate its proceedings, including the dismissal of cases for failure to comply with its orders." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir.

2007).  These unique considerations "may tip the balance" in favor of dismissal in the MDL context.  *In re PPA*, 460 F.3d at 1222.  As such, MDL courts frequently dismiss the claims of plaintiffs who fail to give proper accord to discovery mandates.  *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, No. 1:08-cv-04901-JFK, 2009 WL 105502, at *1-2 (S.D.N.Y. Jan. 12, 2009); *In re Baycol Prods. Litig.*, MDL No. 1431, 2007 WL 2744459, at *1-2 (D. Minn. Sept. 17, 2007); *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, 2004 WL 1700618, at *1-2 (S.D.N.Y. July 27, 2004).

Failure to diligently prosecute also fairly describes the Plaintiffs' recalcitrant noncompliance with this Court's Orders and overall discovery neglect.  As such, Federal Rule of Civil Procedure 41(b) provides an alternative and independent ground for dismissal.  As the First Circuit has recognized, "courts – especially trial courts – 'must be given considerable leeway in exercising their admitted authority to punish laggardly or noncompliant litigants.'"  *Cintrón-Lorenzo v. Departmento de Asuntos del Consumidor*, 312 F.3d 522, 526 (1st Cir. 2002) (citation omitted).  "'[T]his power is necessary to prevent undue delays in the disposition of pending cases, docket congestion, and the possibility of harassment of a defendant.'"  *Colokathis v. Wentworth-Douglass Hosp.*, 693 F.2d 7, 9 (1st Cir. 1982) (citaion omitted); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962).  The First Circuit has even held that, "where a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal."  *HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 918 (1st Cir. 1988).  Of course, the situation in the Boone cases is even more egregious considering that the Court not only warned Plaintiffs' counsel that noncompliance could result in dismissal, it had actually imposed lesser sanctions previously that apparently had no impact on Plaintiffs' continued intransigence.

In response, the Boone Plaintiffs' argument that they "have not had a reasonable opportunity to cure any discovery deficiencies . . . before the Motion to Compel was filed" is absurd.  (Pls.' Objections [3303], at 31.)  These template discovery responses were first due in

either January 15, 2007 or November 23, 2007 (three to four years before Pfizer filed its motion). This Court ordered Plaintiffs to complete template discovery or immediately face dismissal on June 16, 2010 (six months before Pfizer filed its motion).   Prior to filing its motion, Pfizer sent Plaintiffs' counsel numerous deficiency letters throughout 2010, held a lengthy meet and confer call with Plaintiffs' counsel, and raised these issues at a hearing in open court, but Plaintiffs' counsel only responded with the broad, unsupported claim that he considered template discovery to be complete.   There is also no merit to the Boone Plaintiffs' argument that "[t]he Court has not allotted Plaintiffs any time to cure deficiencies in response to Defendants' motion to compel." (*Id.* at 36.)   They argue that the Court's warning in its December 6, 2010 Order – that failure to comply with any future orders would result in dismissal – somehow entitles them to yet another chance at template discovery.   But the language they cite was merely a prospective warning made without knowledge of the severely incomplete and noncompliant state of Plaintiffs' discovery and made in the context of their counsel's less-than-candid assessment that template discovery was substantially complete.   The Magistrate Judge later reviewed the discovery record and found that Plaintiffs "repeatedly ignored and disregarded the Court's discovery orders," that "discovery is so incomplete and defective that proceeding with [these] cases would require individual case discovery to essentially begin anew, after years of litigation," and that "[f]urther opportunities to complete discovery or to comply with the Court's prior orders would serve no purpose" considering that Plaintiffs have repeatedly failed to take advantage of many such opportunities in the past.  (Report and Recommendation [3276], at 1, 26.)

That many of Plaintiffs' discovery failures and violations of this Court's Order were, unquestionably, caused by their attorney is no excuse for their failure to supervise their counsel and diligently prosecute their claims.  The First Circuit "has turned a 'deaf ear' to the plea that 'the sins of the attorney should not be visited upon the client.'"  *Farm Constr. Servs., Inc. v. Fudge*, 831 F.2d 18, 21 (1st Cir. 1987) (citation omitted); *accord Dávila-Álvarez v. Escuela de Medicina Universidad Central del Caribe*, 257 F.3d 58, 66-67 (1st Cir. 2001); *Top Entm't Inc. v. Ortega*, 285 F.3d 115, 119 (1st Cir. 2002).  As the Supreme Court has explained:

28

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.   Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

*Link*, 370 U.S. at 633-34 (citation omitted).  These lawsuits have been pending for years.  It was incumbent on Plaintiffs to monitor the progress of the litigation, to provide their attorney with the information needed to respond to discovery, and to make sure that their cases were moving forward.  *See id.* at 634 n.10 (observing that "a civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit").  Indeed, even Mr. Boone attempts to place responsibility for Plaintiffs' incomplete discovery responses on his clients.  (*See* Pls.' Objections [3303] at 25-27.)

These cases have all the hallmarks of litigation meriting dismissal.  The Boone Plaintiffs have consistently disregarded discovery Orders, which in and of itself constitutes extreme misconduct justifying dismissal.  *See Tower Ventures*, 296 F.3d at 46.  Not only do they lack any reasonable excuse for their discovery neglect, numerous aggravating circumstances are present, considering that Plaintiffs' counsel affirmatively caused many of these problems with the defective forms he supplied to his clients, inaccurately represented to this Court that all template discovery was complete in early December 2010 when that was clearly not the case, and failed to investigate allegations of suicidal ideation and other psychological injuries before adding them to his clients' discovery responses – in some cases without their consent and in contradiction to their earlier responses.  Pfizer has been prejudiced by Plaintiffs' ongoing discovery neglect because several witnesses have testified that spoliation has occurred, the lack of basic information has frustrated its own production efforts, and it has been forced to depose Plaintiffs without fundamental information and documents that go to the heart of their allegations and Pfizer's defenses.  The Court has likewise been burdened by a crowded docket and had to waste judicial resources by trying to force these Plaintiffs to move their cases forward for years.  Plaintiffs and their counsel's misconduct is particularly significant given the MDL context and

the Court's elevated case-management duties.  *See In re PPA*, 460 F.3d at 1222; *In re Guidant*, 496 F.3d at 867.  Any sanctions short of dismissal at this point would be ineffective – especially considering that lesser sanctions have in the past had no deterrent effect on these particular parties or their counsel – and would just lead to further waste of resources.  The pattern of extreme misconduct throughout the record supports dismissal.

<u>**CONCLUSION**</u>

For the reasons stated above, the Court should adopt the Report and Recommendations of Magistrate Judge Sorokin.

Dated: March 4, 2011                                    Respectfully submitted,

                                                           SKADDEN, ARPS, SLATE,
                                                             MEAGHER & FLOM LLP

                                                           By:      /s/ Mark S. Cheffo
                                                                    Mark S. Cheffo

                                                           Four Times Square
                                                           New York, NY 10036
                                                           Tel:  (212) 735-3000

                                                           -and-

                                                           ROPES & GRAY LLP

                                                           By:      /s/ Ana M. Francisco
                                                                    Ana M. Francisco
                                                                    BBO #564346

                                                           Prudential Tower
                                                           800 Boylston Street
                                                           Boston, MA 02199-3600
                                                           Tel:  (617) 951-7000
                                                           Email:  ana.francisco@ropesgray.com

                                                           *Attorneys for Defendants Pfizer Inc and*
                                                           *Warner-Lambert Company LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 4, 2011.

/s/ Ana. M. Francisco
Ana M. Francisco

31