# EXHIBIT D

Page 1

```
 1                   IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MASSACHUSETTS
 2

 3

 4   IN RE:                              )
                                         ) CA No. 04-10981-PBS
 5   NEURONTIN MARKETING, SALES PRACTICES,) Pages 1 - 33
     AND PRODUCTS LIABILITY LITIGATION    )

 6

 7

 8

 9                      STATUS CONFERENCE
10             BEFORE THE HONORABLE PATTI B. SARIS
                    UNITED STATES DISTRICT JUDGE
11
                            -and-
12
                      LEO T. SOROKIN
13             UNITED STATES MAGISTRATE JUDGE

14

15

16

17                               United States District Court
                                 1 Courthouse Way, Courtroom 19
18                               Boston, Massachusetts
                                 February 11, 2011, 2:07 p.m.
19

20

21

22

23                     LEE A. MARZILLI
                     OFFICIAL COURT REPORTER
24                United States District Court
                  1 Courthouse Way, Room 7200
25                    Boston, MA  02210
                       (617)345-6787
```

Page 2

APPEARANCES:

FOR THE PLAINTIFFS:

    KENNETH B. FROMSON, ESQ., Finkelstein & Partners, LLP,
785 Broadway, 3rd Floor, Kingston, New York, 12401.
    JAMES A. STEGALL, III, ESQ., Law Offices of Newton &
Schwartz, Sr., 1911 Southwest Freeway, Houston, Texas, 77098.

FOR THE DEFENDANT:
    CATHERINE B. STEVENS, ESQ. and KATHERINE F. ARTHUR, ESQ.,
Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times Square,
New York, New York, 10036.

Page 3

PROCEEDINGS

THE CLERK: In Re: Neurontin Marketing, Sales Practices, and Products Liability Litigation, Civil Action No. 04-10981, will now be heard before this Court. Will counsel please identify themselves for the record.

MR. FROMSON: Good afternoon, your Honors. Kenneth Fromson for the Plaintiff Steering Committee.

MR. STEGALL: I'm James Stegall. I'm with the law offices of Newton Schwartz in Houston.

MS. STEVENS: Good afternoon, your Honors. Catherine Stevens on behalf of Pfizer.

MS. ARTHUR: Good afternoon. Katherine Arthur on behalf of Pfizer.

THE COURT: Thank you. So of course Judge Sorokin and I are most eager to hear about the status of all these cases, so why don't we begin with plaintiffs' side, Mr. Fromson.

MR. FROMSON: Your Honor, with respect to the Court's order of February 4, 2011, I would like to bring to the Court's attention that with respect to the application, Docket No. 3164, which was within Paragraph 1 of the order, this particular plaintiff, for whom my law firm had moved for withdrawal, was ordered to be in court today or to have an attorney present or to send a letter. Long story short, that plaintiff's name is Mr. Belbruno. He contacted me yesterday evening. He received the Court's order only on this week. He

Page 4

asked me to relate to the Court his intention of going forward pro se at this time. He is also blind and unable to ambulate very well, and so he was not able, based upon his hardships, to get here. I would respectfully request that you would accept my representation that he intends to move forward pro se.

THE COURT: Is he getting his own lawyer, did he mention?

MR. FROMSON: He did not mention it, but I would hope that he would, but he did want to at least make sure that my message was brought to the Court today to be somewhat, as best possible, compliant with the Court's order.

THE COURT: Did he claim that the Neurontin contributed to any of these conditions?

MR. FROMSON: Your Honor, yes. I was familiar with the case, obviously, before we withdrew from the action, and the injury would in fact be alleged to have been the blindness from which he suffers as related to the suicide attempt that he had done.

THE COURT: It's interesting because I've heard of several side effects, but that's not one I'd heard about.

MR. FROMSON: Blindness isn't the side effect. It was the result of the suicide attempt that left him blind.

THE COURT: I see, I understand.

MR. FROMSON: Other than that, I don't have a specific housekeeping matter or --

Page 5

THE COURT: Where is he from?

MR. FROMSON: He resides in New Jersey, and the case was originally filed in New Jersey.

THE COURT: So perhaps the thing that would make that the easiest to do would be to send that back to New Jersey where he's from, and where you're from, right?

MS. STEVENS: New York, your Honor.

THE COURT: New York, New Jersey. So what do you recommend?

MR. FROMSON: I think that goes towards a more global picture of what the Court intends to do with the group of pro se plaintiffs and defense counsel's plan of action to most diligently and efficiently manage those cases. I for one would suggest that the Court maintain some control over those cases because of the efficiency with which this Court has managed the case thus far, but that's between yourself, obviously, your Honor, and Pfizer.

THE COURT: Okay, did you have anything on him?

JUDGE SOROKIN: No. I'm just wondering how many pro se people there are?

MS. STEVENS: There are approximately thirty pro se plaintiffs right now that we have, and, as your Honors are aware, we filed a motion to get some guidance on where we're going with the pro ses. You had initially suggested that we send them back immediately. We had hoped, after we looked at

Page 10

1     MR. FROMSON:  Generically, and as a plaintiff, when
2  the Supreme Court rules that our actions can go forward, we
3  will ask that the stay be lifted and that discovery can go
4  forward against the generics, for which there was previously a
5  discovery order in place, and we were on the eve of expert
6  disclosure from January 23 or 24 where the expert disclosure
7  was --
8     THE COURT:  Who manufactures the generics?
9     MR. FROMSON:  I'm sorry, your Honor?
10     THE COURT:  Does Pfizer represent it?
11     MR. FROMSON:  No, your Honor.
12     THE COURT:  So it's not against Pfizer?
13     MR. FROMSON:  It's not.  It's against makers such as
14  IVAX, Activa.
15     THE COURT:  Why should I keep it?
16     MR. FROMSON:  Well, because at the time Pfizer was in
17  each of those cases, and so therefore you didn't transfer them
18  out.  Also --
19     THE COURT:  But I'm thinking of transferring them out
20  now, let me tell you.  I've, for better or for worse, had the
21  Neurontin case involving Pfizer since 1996 on and off, but I
22  don't know why I'm picking up every -- shouldn't it just be
23  sent back as another MDL?
24     MR. FROMSON:  Your Honor, given the fact that the
25  cases have been here and that you had a discovery schedule in

Page 11

1  place for five to seven cases --
2     THE COURT:  But I'd be starting all over again with
3  these generics, right?
4     MR. FROMSON:  Not necessarily.  Discovery is done.
5  You had dispositive motion practice ready to resolve the issue
6  by June or July of 2011, so there was no --
7     THE COURT:  So remind me.  I mean, I don't remember
8  having all those generics.
9     MR. FROMSON:  Envision, if you will, approximately
10  five to eight cases involving a generic manufacturer of
11  gabapentin.  The science is exactly the same.
12     THE COURT:  I've written about the science.
13     MR. FROMSON:  Yes, you have, your Honor.
14     THE COURT:  So somebody else can use it.
15     MR. FROMSON:  That's true, your Honor.  And,
16  nevertheless, this Court entertained the fact discovery with
17  those underlying defendants --
18     THE COURT:  Right.
19     MR. FROMSON:  -- and set a discovery schedule for the
20  dispositive motion practice, and the parties were moving
21  forward so that they would have had one summary judgment motion
22  in front of you instead of possibly five or six in front of
23  five or six different judges around the country.  You being the
24  most knowledgeable on the issues would have probably been
25  able --

Page 12

1     THE COURT:  I don't know if I'm going to keep them.
2     MR. FROMSON:  That's fine, your Honor.  I understand.
3     THE COURT:  So let me say that because it's a
4  brand-new defendant.  And are these individual cases?  Is that
5  it?
6     MR. FROMSON:  They're individual cases, and I believe
7  that the Court kept it for efficiency purposes, and that you'd
8  be able to resolve it in one motion practice come this June or
9  July.  That's what was originally scheduled.
10     THE COURT:  I'm not sure I'm going to stick with that,
11  but, anyway, let's leave that as a question mark.  You're going
12  to send me the list.  How many cases are there that I'm going
13  to do the dismissal order on?
14     MR. FROMSON:  Now you're referencing what we discussed
15  off the record, Judge?
16     THE COURT:  Yes.
17     MR. FROMSON:  And so I --
18     THE COURT:  You don't know how many, all right, or at
19  least it's not certain yet.
20     So now we deal with -- is anyone here for Mr. Boone?
21     MR. FROMSON:  No.
22     THE COURT:  No, okay.  We have not yet heard back from
23  him?
24     MR. FROMSON:  He did call me, your Honor, last week in
25  response to the recent court order, and he asked whether he

Page 13

1  needed to be at this conference.  We reviewed the Court's
2  order --
3     JUDGE SOROKIN:  -- excused his claims.
4     MR. FROMSON:  Thank you, Judge, and that was my
5  understanding.
6     THE COURT:  Did he mention whether he was going to be
7  writing an opposition, an objection?
8     MR. FROMSON:  He was equivocal.
9     THE COURT:  Okay.  So then what about the Schwartz
10  cases?
11     MR. STEGALL:  Yes, ma'am.  At present we have
12  approximately eighty cases remaining.  These are all cases
13  where template discovery has been completed.  We have been
14  taking depositions.  We've not been up to the speed that the
15  Court had required earlier, but we are getting there.  We have
16  fifteen depositions, for example, scheduled in the next three
17  weeks, so we're moving.  However, there are many remaining
18  depositions to be taken before the required sales rep,
19  plaintiff, and treating depos are completed.
20     MS. STEVENS:  Your Honor, the reason that we lagged a
21  little bit behind was because of correspondence we had from the
22  Schwartz law firm that indicated they were going to be
23  dismissing a substantial number of these cases, and we were
24  trying to figure out exactly which cases were proceeding and
25  which cases were not.

Page 14

1    THE COURT:  Well, which ones are?
2    MS. STEVENS:  We have a list of 32 cases from the
3  Schwartz law firm of which they intend to proceed.  I
4  understand that that may not be a concrete number, but --
5    THE COURT:  When can you dismiss or allow people to go
6  pro se for the others?
7    MR. STEGALL:  We would ask for anywhere from 30 to 60
8  days to finalize that list.  She's correct, and that we have
9  made representations and intend to stick to them that we will
10  be reducing our number from eighty anywhere down to thirty-five
11  to forty cases.
12    THE COURT:  Well, do you know some for sure that
13  you're dismissing?
14    MR. STEGALL:  Yes, ma'am.
15    THE COURT:  Well, why don't you do that instantly.
16    MR. STEGALL:  Yes, ma'am.
17    THE COURT:  How many are in that category?
18    MR. STEGALL:  I don't have a hard number for you, but
19  it would probably be ten to fifteen cases.
20    THE COURT:  Do those instantly, instantly, like
21  Monday.
22    MR. STEGALL:  Yes, ma'am.
23    THE COURT:  And maybe another 30 days to finalize the
24  remaining ones so we're just not wasting.  Do you know a
25  certain number that are definitely going forward?

Page 15

1    MR. STEGALL:  Yes, ma'am.  At this point the
2  thirty-two she identified are going forward.
3    THE COURT:  And those are the ones that you think you
4  still are a little bit behind on on discovery or just with
5  respect to those cases that you're --
6    MR. STEGALL:  With respect to the depositions, yes,
7  ma'am, but we are moving along at a pretty good pace.
8    THE COURT:  And when are you going to be done with --
9  I forget, do you know when we were supposed to be done with
10  those?
11    JUDGE SOROKIN:  February depositions, I think.  On the
12  original schedule, we would have had all the depositions in
13  theory done in February, if I remember right.
14    In any event, when do you think you'll be done with
15  the depositions of those cases that you're going to proceed
16  with?
17    MR. STEGALL:  Being a conservative estimate, I would
18  say anywhere still from six to nine months from now because if
19  we get -- there are -- you know, we identified -- we'll do a
20  sales rep, we'll do the prescribing doctor, and the plaintiff
21  obviously.  Well, in many instances there's more than one
22  prescribing doctor, and getting those depositions scheduled
23  is -- getting a doctor scheduled in and of itself is a hassle.
24    THE COURT:  Six to nine is too far out there.
25    MS. STEVENS:  Your Honor, we're moving at the fifteen

Page 16

1  days of deposition pace, which was the last scheduling order.
2    MR. STEGALL:  And -- I'm sorry, I didn't mean to
3  interrupt.  I apologize.
4    THE COURT:  But given that schedule, six to nine
5  months is usually a full cycle.  Can you add more -- how big a
6  firm is your firm?
7    MR. STEGALL:  It's not particularly big.  There's
8  about seven lawyers in total, and there's three of us working
9  these depositions.
10    THE COURT:  Well, I don't know that I'm going to give
11  you six to nine.  You've been on notice for a while.  If you
12  don't take all discovery, you don't, because I'm not going to
13  try them all here is the thing.  We've got to get this case
14  moving forward.  And I think Schwartz has taken, you know, a
15  backseat, not as backseat as Mr. Boone did, but, still, you've
16  got to get this thing ready, and Judge Sorokin and I are going
17  to consult about how much time makes sense here.
18    JUDGE SOROKIN:  So let me just ask, you've got eighty
19  cases, is that right?
20    MR. STEGALL:  Yes, sir.
21    JUDGE SOROKIN:  And thirty-two you know you're going
22  forward on?
23    MR. STEGALL:  Yes, sir.
24    JUDGE SOROKIN:  And the other forty-eight, the
25  question is, are you going to go forward on any of those, some

Page 17

1  of those, and of the ones you're not going forward on, you're
2  either going to dismiss or withdraw?
3    MR. STEGALL:  Yes, your Honor.
4    JUDGE SOROKIN:  So the forty-eight is the universe of
5  cases you're making a decision about in the next 30 days?
6    MR. STEGALL:  And, as I said before, we anticipated
7  the number that might be added to the thirty-two to be a small
8  number, three to five.
9    JUDGE SOROKIN:  So if you end up with thirty-five, how
10  many of those thirty-five cases at fifteen days of depositions
11  a month, even if you lagged a little bit, how many
12  depositions -- I'm just trying to figure out how many
13  depositions there are for those people.  Six to nine months
14  would be 60 to 90, 90 to 120 more depositions, I think.
15    MR. STEGALL:  If we can stay at the fifteen days for
16  depositions, I mean, in theory we're talking about 60
17  depositions maybe, additional depositions, so even at 15 a
18  month, that's at least four months.
19    JUDGE SOROKIN:  Are these plaintiffs from the same
20  geographic area, or are they all spread out?
21    MR. STEGALL:  They're spread out, your Honor.
22    JUDGE SOROKIN:  So they're not all from where your law
23  firm is located?
24    MR. STEGALL:  None of them are, your Honor.
25    JUDGE SOROKIN:  I see, all right.  So there's no