UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
:   MDL Docket No. 1629
In re:   NEURONTIN MARKETING,   :
       SALES PRACTICES AND   :   Master File No. 04-10981
       PRODUCTS LIABILITY LITIGATION   :
:   Judge Patti B. Saris
------------------------------------------------------------x
:   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:   :
:
*Hamilton v. Pfizer Inc., et al.*   :
Case No. 1:10-cv-11023 PBS   :
:
------------------------------------------------------------x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

On February 1, 2011, the parties discussed potential resolution and/or withdrawal of Plaintiff's current motion. The parties have reached an impasse on Plaintiff's Document Request # 30 regarding Defendants' "Doctor-for-a-Day" Program. The parties also could not reach a resolution on Plaintiff's Document Request # 32 regarding aggregate prescription data in terms of scope of production and Defendants' argument as to cost-sharing.

**1. Defendants Had a Heightened Duty to Warn of the Risks Regarding Off-Label Use When Defendants Illegally Marketed Topamax for Off-label Uses.**

Plaintiff is not claiming that Defendants committed fraud in this case; therefore, the fact that Plaintiff's decedent's physicians have not yet been deposed is simply irrelevant.[2] Plaintiff is claiming that Defendants were negligent and reckless because Defendants had knowledge that there would be an increase in overall physician prescribing for off-label uses that were not approved by the Food and Drug Administration due to Defendants' illegal marketing for such

---

[2] If, and/or when, discovery were to reflect Defendants' direct fraudulent contact with the doctor (a direct nexus), Plaintiff would request leave from this Court to amend Plaintiff's pleadings to assert a claim for fraud.

1

uses (e.g., Doctor-for-A-Day Program); yet Defendants failed to adequately monitor the safety of their drug particularly for these off-label uses.  If Defendants had not breached their duty of care from January 2001 to November 2003, prior to when Plaintiff's decedent, Derrick Hamilton, began ingesting Defendants' drug Topamax for an off-label use, and instead had established adequate pharmacovigilance and monitoring of these off-label uses, then Defendants would have or should have discovered the increased risk for suicidality from the ingestion of their drug Topamax in regard to these off-label uses and warned the prescribing physician.

Judge Saris has already found that national marketing documents relating to off-label marketing are relevant to Plaintiff's negligence, failure-to-warn, and negligent pharmacovigilance claims against Defendants.  *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 114 (D. Mass. 2009).  Judge Saris "conclude[ed] that a manufacturer of a pharmaceutical has a duty to disclose to physicians and patients material facts about the risks of the drug, <u>particularly when it is engaged in off-label marketing</u> for uses not approved by the FDA, if it knows that the plaintiff and/or his prescriber does not know or cannot reasonably discover the undisclosed facts."  *Id.* at 110 (emphasis added).[3]  In no way did Judge Saris limit a drug company's heightened duty to warn of risks only to Plaintiffs and their physicians who are the direct targets of the off-label marketing.  ECF Doc. # 3255 at 11.

Here, Defendants' actions fall squarely within Judge Saris's opinion, and so discovery of Defendants' off-label marketing, even if not directly to Plaintiff's decedent's prescriber, is relevant to Plaintiff's causes of action.

---

[3] Judge Saris further noted: "The Supreme Court has recently recognized that 'manufacturers have superior access to information about their drugs, especially in the postmarketing phase as new risks emerge.' *Wyeth v. Levine*, 129 S. Ct. 1187, 1202, 173 L. Ed. 2d 51 (2009) (holding that the FDA's drug labeling regulations do not preempt state law tort suits). 'After the FDA approves a drug, the manufacturer remains under an obligation to investigate and report any adverse events associated with the drug.' *Id*. at 1219.  *See generally* 21 CFR § 314.80 (placing responsibility for post-marketing surveillance on the manufacturer)." 618 F. Supp. 2d at 109-10.

### 2. Aggregate Prescription Data Demonstrates Defendants' Negligence, Motive and Reckless Conduct

While off-label prescribing by physicians is not itself improper, a manufacturer with knowledge of both extensive off-label use and material facts about risks inherent with taking the drug (e.g., depression and suicide) has a duty to take action.  Pursuant to Rule 26(b) of the Federal Rules of Civil Procedure, a party may seek discovery of "any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  The marketing documents Plaintiff has demanded will demonstrate that Defendants were on notice of both the risks of depression and the substantial off-label use of Topamax.  This evidence is probative of Defendants' negligence, reckless conduct, motive and state of mind:  rather than make the proper application to the FDA for approval of the off-label indications, Defendants instead intentionally embarked on a profit-driven illegal marketing campaign without regard for public safety.

### 3. Aggregate Prescription Data From Third Parties Regarding Topamax Prescriptions After the Date of Plaintiff's Decedent's Ingestion Is Relevant to Defendants' Motive.

Aggregate prescription data from the time-period before Plaintiff's decedent's ingestion, but during Defendants' illegal off-label promotion period, may demonstrate increased prescriptions consistent with Defendants' illegal marketing efforts.  Data after the date of the January 31, 2008 FDA Alert and subsequent changes to the package insert for Topamax will serve to demonstrate how the FDA Alert since 2008, and/or Defendants' bolded suicide warning since 2009, affected the prescribing practices of physicians (i.e., whether prescriptions for Topamax decreased.)[5]  A decrease in prescriptions would prove that a heightened warning influenced prescription practices, and that Defendants had a profit-based motive not to enhance their warning while promoting Topamax for unapproved uses.

---

[5] Upon information and belief, manufacturers of the generic form of Topamax were granted approvals to market generic Topamax by 2009, and so to the extent Defendants' aggregate data for Topamax includes the generic form (i.e., Topiramate), such data is encompassed by Plaintiff's discovery request.

**4. Defendants' Have Not Met Their Burden in Order to Shift the Cost for the Discovery Requested.**

The presumption under the federal rules is that the producing party bears the cost of complying with the discovery requests. A court may shift the burden of the cost to the requesting party only in the event that the discovery request seeks information not reasonably accessible because of undue burden and expense. Fed. R. Civ. P. 26(b)(2)(B)(C).[6] The party asserting the "unduly burdensome" objection to a discovery request has the burden to demonstrate: (1) not only the undue burden or expense, but (2) that expense is unreasonable in light of the benefits to be secured from discovery. *Hagemeyer N. Am., Inc., v. Gateway Data Scis. Corp.,* 222 F.R.D. 594, 602-03 (E.D. Wis. 2004) (holding order shifting costs of production should only issue when request truly threatens the responding party to undue burden or costs).

In an analysis for cost-shifting, courts traditionally apply "The Zubalake Factors" about which this Court is readily aware. *Zubulake v. USB Warburg, LLC,* 217 F.R.D. 309, 322 (S.D.N.Y. 2003).[7] In regard to the first factor, the documents in question are extremely relevant to Plaintiff's claims that, *inter alia,* Defendants were negligent and reckless in placing the profit motive over public safety. As to the second factor, the discovery sought is not available from sources other than Defendants. As to the third factor, Defendants have expressed a willingness to discuss production of third party prescribing data (ECF Doc. # 3255 at 6); the production of documents of sales representatives who actually contacted Dr. Sloan (*id.* at 15); and note that

---

[6] *Peskoff v. Faber,* 251 F.R.D. 59, 61 (D.D.C. 2008) (holding cost of forensic search for e-mail and other electronic records in response to discovery requests does not represent burden or expense so undue as to cost-shifting); *see also Expedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,* 309 F. Supp. 2d 459, 465-67 (S.D.N.Y. 2003) (holding cost-shifting not required despite the fact that discovery requests would cost $400,000 inasmuch as responding party was worth $5.7 billion and potential damages in the case also exceeded $68 million).

[7] The Zubulake Factors include: (1) the extent to which request is specifically tailored; (2) availability of information from other sources; (3) total costs of production, compared to amount in controversy; (4) total costs of production, compared to resources available to each party; (5) relative ability of each party to control costs and its incentive to do so; (6) importance of issues at stake in litigation; and (7) relative benefits to parties of obtaining information. The factors are weighed in descending order of importance, not equally.

4

Plaintiff previously received training materials for sales representatives in the concurrent litigation (*id.* at 6). Although Defendants have previously produced training materials in the concurrent litigation, that litigation does not concern an off-label use of Topamax – marketing documents concerning Defendants' knowledge or promotion for off-label uses have not been produced. The marketing documents that Plaintiff requests were, at least in part, based upon the very subject of the Government's Information regarding Defendants' off-label promotion scheme. Common sense dictates that Defendants have already located and maintained in a centralized location documents responsive to the U.S. Government's action against them. In regard to factors four and five, Defendants comprise a multi-billion dollar company whose resources far outweigh Plaintiff's, and, as mentioned above, it is reasonable to assume that Defendants have heretofore gathered such documents in anticipation of their defense against the Government's case. Regarding factors six and seven, the documents that Plaintiff requested are critical to Plaintiff's prosecution of this action. Clearly, these are issues that go to the very heart of this case, and Plaintiff will be severely prejudiced if the discovery requested is not produced.

Dated:  March 23, 2011                           Respectfully submitted,

                                                 FINKELSTEIN & PARTNERS, LLP

                                      By:       **/s/ Kenneth B. Fromson**
                                                 Kenneth B. Fromson, Esquire
                                                 1279 Route 300, P.O. Box 1111
                                                 Newburgh, NY  12551

                                                 *Attorneys for Plaintiff Paulette Hamilton*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on March 23, 2011.

                                                 **/s/ Andrew G. Finkelstein**
                                                 Andrew G. Finkelstein