# UNITED STATE DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEURONTIN MARKETING | § | |
| AND SALES PRACTICES | § | |
| LITIGATION | § | MDL Docket No. 1629 |
| | § | |
| | § | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | § | |
| | § | Judge Patti B. Saris |
| VIRGIL L. ANDERSON,  ET AL | § | |
| vs. PFIZER INC., ET AL | § | |
| Case No. 06-11024-PBS | § | |
| | § | |
| MARTHA ACCETULLO, ET AL | § | |
| vs. PFIZER, INC., ET AL | § | Magistrate Judge Leo T. Sorokin |
| Case No. 06-10912-PBS | § | |
| | § | |
| KAMALIHA Y. BREWSTER, ET AL | § | |
| vs. PFIZER, INC, ET AL | § | |
| Case No. 06-11022-PBS | § | |
| | § | |
| CHARLES D. GIRARD, ET AL, | § | |
| vs. PFIZER, INC., ET AL | § | |
| Case No. 06-11023-PBS | § | |

## OBJECTIONS TO ORDERS OF MARCH 21, 2011 (DOCUMENT NO. 3358) AND FOR OTHER RELIEF[1]

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Martha Accetullo, et al, Plaintiffs listed on Exhibit "A" which is attached

and incorporated by reference for all purposes as if again set forth verbatim herein, through the

undersigned counsel of record, Newton B. Schwartz, Sr. and Jack W. Harang, APLC, assisted by

---

[1] In the event that such above Orders (Document 3358) are determined to be (contrary to their present form) jointly orders of both the Honorable Judge Patti B. Saris and Magistrate Judge Leo T. Sorokin, Schwartz parties reserve their rights to file Notices of Appeal per FRAP 4(a)(i) et seq.   Objections are made to Judge Saris de novo per FRCP Rule 72(a) and/or (b).  These objections and/or Notice of Appeals are made timely now only to the District Court within 14 days of March 21, 2011. Movant parties above reserve Notice of Appeal, on or prior to April 20, 2011 reserve further appellate rights, if per FRAP 4(a)(i) et seq. only if such orders are determined to be Final and/or certified as appealable Interlocutory order to the above orders (Document No. 3358). Schwartz parties reserve their right to file such protective Notices of Appeals of such on or before March 21, 2011 Orders to the United State Court of Appeals for the First Circuit at Boston Massachusetts to the extent that they, if any, are determined to also be Final or otherwise appealable Orders of Judge Saris.  As of now, they are not (unless or until sanctions are imposed, if any are).  Other relief is sought herein in addition to the following objections.

Schwartz attorneys, James A. Stegall, III, Vincent Lo and Mabel Lee-Lo (all collectively called Schwartz parties and/or Plaintiffs and their attorneys).

This failure to respond to any Court order is inexcusable and we respectfully beg the Court's pardon for any of the failures to respond to the Court's Orders relative to the responses about the withdrawal of certain cases.

## I.   A BRIEF HISTORY OF LAW

All this came about when the possibility of resolving these cases came up last year, Defendant's counsel suggested to Plaintiffs' counsel that if Plaintiffs would pare down their cases to ones involving real events and that could show some valid correlation to ingestion that resolution would be more likely.

It was discussed and continues to be discussed that most all of these cases are referred cases and that we can recommend to the client's primary attorney what action they would or should do and failing to take our advice, we would withdraw.

In that and subsequent conversations, the conversation has always focused on the fact that we believe that when all of the cases have been evaluated against that criteria that there would be 35+ strong cases remaining but that we were going through the process.

We offered to present for deposition those individuals we believed at that time to be more likely than not in our upper category, the purpose of which was to present the Defendants from preparing for and taking depositions that could result in a dismissal or "Dud".

While this process was ongoing we were complying with the Court's orders for discovery depositions.  To date we have responded to all template discovery, participated in 41 depositions and have from the inception of this litigation dismissed or withdrawn from 56 cases.  We have expended better than 12,000 hours and incurred substantial costs.

The order that forms the basis for this order was and is based on Plaintiffs' <u>voluntary</u> attempts to reduce the number of Plaintiffs that it has in an attempt to (1) present the most meritorious cases and (2) refer back all cases that did not have verifiable suicides or attempts. We do not and have not represented that suicide ideations are not meritorious, but only that we believe the economics are such that the continued litigation would not be in the clients or lawyers best interest.

To this end Plaintiffs has continued to go through their case load, has made recommendations to local lawyers regarding the withdrawal and dismissal of approximately 20 more cases.

Mr. Cheffo has been advised of this ongoing process.  It is not in either party's best interest to take depositions in cases that may not be carried through.  However, sometimes that is the only way to ferret out issues and as clients feeling sometimes only at the last minute or the night before.  The Court is well aware of the fact that we are dealing with a psychologically fragile population where lives are sometimes blurred.

Plaintiffs will continue to work toward a population that well fit into what can most properly be described as a suitable group.

What Plaintiffs are and will continue to do is to work to a meaningful resolution for their clients that is both ethically, morally and legally appropriate.

The inherent danger of such or required client reduction "quotas" or "numbers" required by the above objected to orders of March 21, 2011 being sought and obtained by Pfizer's counsel is that each client is factually sui genris.  Each improperly dismissed client suffers a death penalty.  Each withdrawn client is relegated to pro se status and suffers similar dismissal with prejudice.  The above 34 of 39 January 3, 2011 dismissals/withdrawals for procedural

noncompliance with discovery including non-cooperation with Schwartz counsel was for objectively defined purpose.  As contrasted with them these objectionable Orders of March 21, 2011 challenge seriously Schwartz counsel ethical and fiduciary duty considerations requiring individual client examination of all medical and pharmaceutical records, causation, confounders, personal detail history, etc., in evaluating and categorizing the remaining Schwartz' clients generally.  This unlike other pharmaceutical cases such as the Vioxx litigation MDL, in the Eastern District of Louisiana.  There Judge Fallon set two specific conditions that were eligible for settlement and compensation or two finite bright line objective conditions.  A detailed point system as to each condition was put into place (before any MDL).

This is not so with Neurontin.  There is no litmus test or bright line demarcation separating the valid and meritorious with varying degrees of damages from the ineligible, or low (de minimis) or non-compensable or non-meritorious cases and clients.  Once Rule 11 FRCP, requirements are satisfied, Daubert challenges (*Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 125 L.Ed. 2d 469, 113 S.Ct. 2786, 2795 (1993)) are the only other "gatekeeping" threshold requirements up to F.R.CIV.P 56 pretrial Motions for Summary Judgment.

Such individual detailed examination requirements and ethical restraints prevent Schwartz counsel agreeing to dismissals en masse now prematurely even if Court ordered.  They require injury analysis client by client to satisfy any numbers of remaining clients by the above prescribed deadline dates.  Discovery is ongoing.  That is one vice of the objected to Orders at issue.  These are and can be no quotas ordered to be enforced or for such further impermissible 54 reduction in clients for sake of reduction alone, as here.  The Court in her inherent power can order, inter alia, remand of all the remaining Schwartz party cases beyond a prescribed 30-35 to 40 (about half of present Exhibit "A" and "A-1").  Those which are shown on Exhibit "A" on the

dates shown (far right column Exhibit "A").  Note some dismissals there extending back to 2010 or earlier.

Another real danger posed by the Court's orders of February 11, 2011 now memorialized in Judge Sorokin's objected to and appealed Order of March 21, 2011, ante, (Document No. 3358) is that they require premature withdrawals and/or dismissals which would be and are violative of fiduciary duties owing to each client.  This is a deprivation of both procedural and/or substantive due process of law and rights and privileges inuring to and hold to each client who has satisfied Rule 11 threshold requirements, ante.

Pfizer's trial plan to have Schwartz parties reduce to their 35-50 "best cases" i.e. those most meeting all above criteria, death or serious, permanent and disabling injuries from suicides and suicide attempts objective manifested (being presently 76).  While this arguably may be a valid strategy and inventive plan, it flies in the face of the above serious ethical constraints upon Schwartz counsel.  It penalizes the clients who have lesser but nonetheless meritorious cases with a death penalty.  It is a "race to the top" at the impermissible expense of those clients left behind innocently.  Concepts of "leverage" etc., openly discussed in pre-mediation among counsel have no place in this Court in pretrial proceedings.

One example may suffice.  There ethical constraints clashed with valid, general accepted financial practices in the preparation of the *In re Agent Orange Product Liability Litigation*, 818 F.2d 149 (2nd Cir. 1987).  Nine attorneys nationally including Schwartz prosecuted these cases. They have continued for several decades starting in the early 1970's and 1980's and continuing by other counsel since initial distributions to clients after the Second Circuit in the numerous decision of Honorable Judge Jack Weinstein in Brooklyn, Eastern District, New York (citations are omitted).  Each attorney who helped finance the case initially was to receive a multiplier on

their substantially aggregate dollar investment of the cases (totaling in the aggregate seven figures) while prosecuting the cases with their own internal staffs.   While the Second Circuit Court of Appeals otherwise permitted the award settlement reached, it struck down the above contractual financial arrangement for ethical reasons.   The hundred thousand or more Vietnam veterans received their $180 million (with accrued interest totaling $240 million) settlement funds.   They paid only a nominal hourly Court approved fee (far below each of the nine attorney fee earned nominally).   Yet the case is ongoing 35 years later despite the (1) trial settlement in the mid 1980's; and (2) the Vietnam war ending and veterans returning in the mid 1970's and an end to the chemical exposures.

While it is in the interest of justice that there be an end of litigation, it cannot be, as ordered here, at the expense of depriving valid bona fide victims of Neurontin of their day in Court.   If not here, then it should be on remand to their respective states and districts.   This has been done regularly over the course of this litigation since 2005.   There can be no permissible "short cut" to justice for Neurontin clients.

Defendants well knew the above upon their receipt of such discovery, but were under no duty to acknowledge it then.   They are now (i) continued evaluation of the merits of the 5 cases and (ii) to meet deadlines above and herein.   While there is and was little or no excuse for such delay in calling this to the Court's attention viz a viz its order of January 3, 2011, Schwartz party attorneys had then adopted, for better or worse, a "go along to get along" relation with Pfizer's counsel.   They seek herein formally and move to reinstate the 6-7 client Plaintiffs (identified on Exhibit "A" and "A1") who are:

#14 Mary Anderson, who furnished such template August 6, 2010; and

#15 Larry Dauernheim, who like Finkelstein's client Mr. Belbruno is blind and otherwise disabled mentally and/or physically as are most Neurontin Plaintiffs. See Exhibit "B" February 11, 2011 Transcript at p. 4-5. However, he had only suicidal ideations, that is not being eligible to be compensated by Pfizer herein, but he may proceed pro se as is Finkelstein's client Mr. Belbruno. He is one of their 30 pro se withdrawing counsel; and

#18 Linda Phipps like Ms. Anderson her complete discovery was turned over to Defendants on August 16, 2010; and

#29 Loretta Dreher and #30 Christopher Hall both of whom were timely complied with all discovery requirements.

#47 Drew Gordon furnished January 18, 2011.

#49 Sherry Groves, deceased through her daughter Jennifer Napoli-Branson.

Since these issues are inextricably intertwined and will be required to be resolved in determining both Plaintiffs objections to this Court's order and to develop a full and complete Record and Transcript. This is a formal Motion to Reinstate the 5 above named Plaintiffs in the interest of justice and for all other legal and factual reasons stated herein and previously and in subsequent deadline of April 12, Schwartz' Responses to Defendants Motion to Impose Sanctions and other relief of Document No. 3375.

On or about December 7, 2010, out of Schwartz' entire attached Exhibits "A" and "A-1" their remaining active or list consists of 132 Schwartz clients. 39 noted thereon on January 3, 2011 or thirty percent (30%) 35 (excluding the 4 ante, it was 26.5%) of the Schwartz party entire client base was summarily dismissed outright in compliance with the Defendant's Proposed Order of December 7, 2010 (Document No. 3148-1). As of and effective, January 3, 2011 (Document No. 3202), said 39 parties (clients now proposed 34) were dismissed for non-

cooperation and total non-compliance with furnishing long existing discovery templates, i.e., written discovery.  Exhibit "A" is a list of the then remaining 132 clients after prior culling and dismissal and/or withdrawal from and/or not filing out of an original total universe of over 240 referred clients by counsel in all states indicated on Exhibit "A" and other states.  Each client's state of residence is shown on Exhibits "A" and "A-1".

This is contrasted with the dismissals on January 3, 2011 in respect to the above proposed orders of December 7, 2010 (Document No. 3148-1).  That order, at least was objectively verifiable.  These objected to Orders of March 21, 2011 are non-objectively verifiable.  Such January 3, 2011, 39 dismissals were not en masse without individual objective yardsticks.  The Order of February 11, 2011 subsumed on March 21, 2011 has no such objective yardsticks or criteria or tests to be applied.

The above specific Orders objected to and appealed from herein "…Order on Pending Scheduling and Discovery Motions…" March 21, 2011 (Document No. 3358).  Such refers to and rely entirely upon the February 11, 2011 Court hearing before your Honor and Judge Sorokin.  It was jointly attended by James A. Stegall, III for Schwartz Plaintiffs, Kenneth B. Fromson for the Finkelstein MDL and state court parties and Mesdames Catherine B. Stevens and Katherine F. Arthur for Defendant Pfizer.  The full 34 page certified transcript is attached as Exhibit "B".  It is adopted by reference per FRCP 10(c) and is attached and incorporated by reference.

## II.      THE HEARING OF FEBRUARY 11, 2011

Schwartz is responsible per Rule 11 for all of his attorneys, including each of their answers and representations throughout these cases including at depositions and hearings.  All

other hearings were attended by either Schwartz' December 2008 and October 2009 and/or Harang (Jack) as lead co-attorney except February 11, 2011 was attended by Mr. Stegall alone.

1. Like the Finkelstein client, Mr. Belbruno from whom they withdrew (Exhibit "B" transcript at p. 4, February 11, 2011 Status Conference) before your Honor and Judge Sorokin. Schwartz attorneys also have similarly impaired client, Mr. Larry Dauernheim (Exhibit "A" #29). He is also blind. He was dismissed on January 3, 2011 along with 38 other clients for alleged "failure to respond to discovery", yet he and four others of the 39 had completed all discovery. This quasi objective test, unlike the orders at issue of March 21, 2011 at issue here, resulted in a readily determinable standing by furnishing discovery template qualifications of a client to recover at trial. The orders of February 11, memorialized on March 21, 2011, objected to herein could or should have been but were not objective. Such en masse Court ordered quota qualified withdrawals contravene Rule 11 and ethical and fiduciary duties owed by Schwartz counsel and those of local referring counsel. It is respectfully submitted that these Orders arguably may unreasonably exceed this Court's inherent power to control her own docket per 28 U.S.C. § 1407.

2. It has been most difficult, if not impossible, to ascertain reasonably certain or finally the merits of each case on its own facts to eliminate, withdraw and dismiss of client's damage each suffering a death penalty by dismissal. This is what is required by your Honor's and Judge Sorokin's Orders of March 21, 0211. Hence there is objective difficulty and near impossibility of literal compliance with the Court's orders. Such legal representations now memorialized in the above Orders of March 21, 2011 require unreasonable substantial reductions in numbers by withdrawals and/or dismissals on

shortened time-frame. This is without regard to the merits of the remaining approximately 76 Schwartz clients Exhibit "A" and "A-1".

3. In Exhibit "B" in the colloquy of February 11, 2011. They are referred to by defense counsel Ms. Stevens as "…the next cluster is probably the Schwartz Plaintiffs I believe…" (Id. at p. 8, lines 16-17). Each is an individual person with specific medical facts, history, treatments, reaction and prognosis. The only prescribed or generally accepted objective disqualifications are: (1) non-prescription; (2) non-use or non-ingestion or taking; (3) medical causation and/or causation in fact per pre-qualified Daubert experts; and (4) sufficient damage or injuries is not. Pfizer and perhaps this Court also have adopted the maximum "de minimis non curat lex". That has been inserted here, by Defendant, eliminating otherwise compensable claims for suicidal ideation and other lesser consequential damages. Those are not by case law, rule or statute, but by Pfizer's fiat.

4. As an example, a suicidal ideation is compensable in many states, but is "de minimis" damage and is not compensable here; each state law of damages control of remand.

5. The critical colloquy is set forth (p. 13, line 9) the Court: "…So then what about the Schwartz cases?...". Counsels' responses and estimates, made in good faith, with the Court are now unintendedly memorialized and subsumed into the Orders. Such is disputed and at issue here.

Mr. Stegall, while being forthright and responsive, was overly optimistic in his estimates more so than representations and surely not representative of known facts; he failed to take into account all of the numerous medical and pharmaceutical and other specific client records some dating back to 1999. His net number estimates were off from

Exhibits "A" and "A-1" as of the February 11, 2011 hearing.  The few subsequent dismissals and/or withdrawals on their face now at issue and objections to Plaintiffs' counsel to potentially severe sanctions.

After the dismissal of above 39 (35), if reinstated such estimates, Schwartz clients on January 3, 2011, 95 (99) viable Plaintiffs' remaining Exhibits "A" and "A-1" list.  Between January 3, and February 11, 2011 hearing another nine more were withdrawn from or dismissed leaving 86-(90)[2].  This was within the range of Stegall's estimated of "…approximately 80 cases remaining…" (Id at p. 13, lines 11 and 12)

Eleven more were withdrawn from or dismissed in March 2011 leaving 75 (79) or 5 below Mr. Stegall's February 11, 2011 estimate above Exhibit "B".

One of the serious problems remaining as to complying with this Court's quota and shortened deadline requirements is its above Order of March 21, 2011.  They are now memorialized as orders which are ethically challenging, if not near impossible of compliance. Exhibits "A" and "A-1" not only those remaining to get down to the "…I don't have a hard number for you, but it would probably be ten to fifteen cases…" (Id. at p. 14, lines 18-19).  There was no final factual basis in fact, then or now for Mr. Stegall's above assessment, based on known existing facts and documents.  Subsequent examination of all details in each remaining case of the 75 (79); therefore there was and is no basis to literally for Schwartz counsel to comply ethically with the promised reductions down to this estimate of "30-31", withdrawing and leaving such clients pro se.  That is a basis for objections to this Order.

In sum, compliance with both the Court's required reduction of 80 (84) present cases down to "…and thirty-two you know you're going forward on?…" Id at p. 16 lines 21-23 (per question from Judge Sorokin), to James Stegall   "…we anticipated the number that might be

---

[2] The 90 maximum total is the proposed addition back if granted, of the 4 dismissed Plaintiffs (of 39) ante.

added to the thirty-two to be a small number, three to five …".  Mr. Stegall's estimate of this was overly optimistic, incorrect and unfounded, based upon, the known existing facts including those records received in interim six weeks evaluations of each case specially after February 11, 2011.

He was correct, in his estimate of taking 15 depositions per month for four months = 60. They have been scheduled and complied with and is ongoing.

Interestingly none of the above Exhibits "A" and "A-1", Schwartz clients were withdrawn from and/or converted to or a part of the "…approximately 30 pro se Plaintiffs right now that we have…".  Ms. Stevens, Id. at p. 5 lines 21 et seq. (February 11, 2011, Exhibit "B").

As a ninth year attorney, Mr. Stegall may have been guilty of telling the Court what Pfizer counsel wanted to hear, and not what he knew to be his and the Schwartz party files.  It was finally evaluated with Messrs. Harang and Schwartz telling Mr. Mark Cheffo, in their 31 minute conference call on March 30, 2011.

All of the remaining above colloquy with counsel on February 11, 2011 per Exhibit "B" is adopted by reference per Rule 10(c), ante.

None of the other Plaintiffs' counsel have been required to make such determination.

III.   SUMMARY OF OBJECTIONS TO ORDER ON PENDING SCHEDULING AND DISCOVERY MOTIONS DOCUMENT NO. 3358, MARCH 21, 2011

Above Par. I-III are adopted by reference per Rule 10(c).

A.  Procedurally and substantively:

1.  Such Order of March 21, 2011, is objected to and appealed from de novo to Judge Saris, who participated in the February 11, 2011 hearing, Exhibit "B":

a.  Order to file by February 14, 2011 a list of the cases (Schwartz) "…it now knows it intends to dismiss…" There were none known intended to be dismissed.  Nor

12

could they be for the reasons stated herein.  That is compliance with it, but there was and is no excuse for failing to timely respond.  For this, I apologize to both your Honor and counsel;

b.  By March 11, 2011 "…a list of all other cases in which intends to dismiss or withdraw…" (Document No. 3287).  Again there were none finally confirmed as of March 11.  Per Exhibit "A" adopted as of March 15, 2011.  Two business days after those listed on Exhibit "A", one more was dismissed (S. Gilbrow) and seven or Exhibit "A" eight, were in fact withdrawn from as of March 15, 2011 leaving 76 (80) clients; and Schwartz parties are faulted and sought to be sanctioned, for not advising counsel of the second nonappearance the day before her rescheduled deposition that was the exact time Schwartz counsel's first learned of it, and received her written authority to dismiss her case.  It was sent forthwith to opposing counsel.  Yet Pfizer seeks up to $30,000, (the amount proposed by Mr. Cheffo to counsel in the 31 minute phone call on March 30, 2011, with counsel). This may be decided later.

c.  Also noted on Exhibit "A" and in compliance with the above Court's orders were entered March 3, 2011, correspondence to and from local referring counsel regarding requested approval of dismissals as to those four named  Schwartz' withdrawals.

d.  This slow methodical procedural process is an ethical requirement, not contemplated by the Court's orders above; and including two layers of attorneys for each Plaintiff; and

e.   Complying with ethical requirements in all states and in this Court for withdrawals and/or dismissals of cases; and

f.   Counsel for Schwartz' Plaintiffs have conducted forty-one (41) depositions as scheduled; they have been the most productive as to each of their clients numerous damages, injuries, conditions, resulting in infirmities in whole or in causal part from Neurontin.  To that extent there have not been any violations, much less unjustifiable (28 U.S.C. § 1407) violations alleged in said Orders of this Court to and including March 21, 2011.

g.   In sum, such Orders of March 21, 2011 are objected to as having little or no basis in fact or law, including for imposition of sanctions aside from innocent failure to respond to each Order.  They will be responded to separately by the April 12, 2011 deadline for Document No. 3375, served March 29, 2011; and

h.   As to the deferral of fees and costs by Pfizer, (Order March, 21, 2011, Document No. 3359) pending their actual request, the Schwartz parties reserve the right to reply thereto and contest and reserve all defenses and responses thereto.

i.   The above Certificate of Conference was held by and between Jack Harang and Newton B. Schwartz, Sr. on the one hand and Mark Cheffo on March 30, 2011 for 31 minutes (afternoon) discussing and attempting to resolve the disputes.  Only the following was agreed to:

1.   That Pfizer can and may refuse to mediate on April 28 and/or 29, 2011 with the Schwartz parties as is its privilege; and

2.   A finite number or names of additional voluntary withdrawals, dismissals, and/or deferrals to referring local counsel, in addition to those enumerated on

Exhibits "A" and "A-1" could not be furnished by Plaintiffs' counsel or agreed to specifically, but will even if, arguendo, belatedly.

Schwartz counsel will timely respond to Pfizer's "Motion to Impose Sanctions and Award Other Relief Due To The Schwartz Firm's Failure to Comply With Court Orders" (Document No. 3375) filed March 29, 2011.  The above objections and de novo appeals are responses to such Orders of March 21, 2011, and will be adopted in toto by reference per Rule 10(c) FRCP therein.

WHEREFORE Schwartz parties Plaintiffs' adopts all of the above per Rule 10(c) and pray for withdrawal, rescission, extension and/or limitation of such Court Orders to meet and/or cure all of their above objections and for all other relief to which they show themselves entitled.

Respectfully submitted,

*/s/Newton B. Schwartz, Sr.*
Newton B. Schwartz, Sr.
1911 Southwest Freeway
Houston, Texas 77098
nbs@nbslawyers.com
Telephone: (713) 630-0708
Facsimile: (713) 630-0789

Jack W. Harang
JACK W. HARANG, APLC
228 St. Charles Ave., Suite 501
New Orleans, LA 70130
Telephone: (504) 581-7050
Facsimile: (504) 581-7057

## CERTIFICATE OF CONFERENCE

See Par. A(i) at page 15.

*/s/ Newton B. Schwartz, Sr.*

.

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on this 4th day of April, 2011

_/s/Newton B. Schwartz, Sr.____
Newton B. Schwartz, Sr.