UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
IN RE NEURONTIN PRODUCTS        )
LIABILITY LITIGATION            )
_____)
                                )
THIS DOCUMENT RELATES TO:       )
                                )
Allen et al. v. Pfizer, Inc.    )  CIVIL ACTION NO. 04-10981-PBS
No. 07-cv-11795-PBS             )
                                )
Cooper et al. v. Pfizer, Inc.   )
No. 05-cv-10834-PBS             )
                                )
Anderson et al. v. Pfizer, Inc.)
No. 05-cv-10835-PBS             )
_____)
```

MEMORANDUM AND ORDER

April 5, 2011

Saris, U.S.D.J.

In these products liability cases, plaintiffs[1] allege that
they, or their decedents, suffered various injuries when their
doctors prescribed the drug Neurontin, manufactured by defendants
Pfizer and Warner-Lambert Company. All plaintiffs named in the
above-listed complaints reside in Mississippi and are represented
by Attorney Levi Boone, of the Boone Law Firm. Defendants have

_____

[1] The parties seem to disagree on the number of plaintiffs
remaining in these cases. Mr. Boone claims that only 200
plaintiffs remain. (See Pl.'s Objections to Report at 2.)
However, other assertions in his memorandum suggest the number
may be 210. With the exception of Grace Scott, who is not
considered here, the docket does not reflect any stipulations of
dismissal filed by plaintiffs since the Report was issued.
Accordingly, the Court will proceed as though there are 216
plaintiffs remaining.

moved to compel all of these plaintiffs to provide full and complete responses to template discovery requests, and they seek relief for plaintiffs' failure to comply under Fed. R. Civ. P. 37(a). The motion was referred to Magistrate Judge Sorokin, who issued a Report and Recommendation ("Report") on February 4, 2011, allowing the motion and ordering dismissal of all cases in which Attorney Boone is the attorney of record. Plaintiffs have filed objections to the Report, and defendants have responded to those objections.

Except as outlined in this opinion, I agree with and adopt the Report, including the statement of facts. After a detailed review of the record, I **ALLOW** the motion to compel. As to the plaintiffs listed in Appendices A-E to this opinion, these cases are **DISMISSED** with prejudice for egregious failure to prosecute and to comply with this Court's orders. As to the plaintiffs listed in Appendix F, I **ORDER** plaintiffs to pay the defendants' costs for the second day of depositions, as outlined herein. Finally, as to the plaintiffs listed in Appendix G, I **ORDER** these plaintiffs to supplement their interrogatories with <u>complete</u> and <u>accurate</u> responses, and to provide defendants with all medical records currently in their possession, within thirty days. Failure to comply with this order will result in dismissal.

## I. BACKGROUND

This motion deals primarily with plaintiffs' insufficient

responses to template discovery. In 2005, the Court referred the
Neurontin multi-district litigation for full pretrial case
management to Magistrate Judge Sorokin. (See Docket No. 182.)
Magistrate Judge Sorokin has presided over the development of a
discovery schedule, along with discovery disputes, in this
litigation for more than five years. Accordingly, most of the
discovery orders referred to in this memorandum were issued by
Magistrate Judge Sorokin.

The parameters of "template" discovery in this large multi-
district litigation were litigated by the parties and decided
upon by the Magistrate Judge in 2006. (See Discovery Order No. 2
[Docket No. 372].) "Template" discovery was developed by the
Magistrate Judge, with input from the parties, as a means of
managing discovery for the hundreds of products liability cases
filed in this MDL. Template discovery, in the context of this
case, includes production of documents and responses to
interrogatories by both parties. As an example, defendants'
Request for Production of Documents (see Docket No. 333) sought
documents such as medical records, lists of medical providers,
and medical release forms. Template discovery also encompasses
depositions. The Magistrate Judge ordered that at least three
depositions would be taken in each case - the plaintiff,
prescribing physician, and sales representative - prior to the
case being transferred back to its home court. The template
discovery at issue here involves only the production of documents

and responses to interrogatories.

The deadline for plaintiffs to complete template discovery was January 15, 2007 for plaintiffs named in <u>Cooper v. Pfizer</u> and <u>Anderson v. Pfizer</u>, and July 8, 2007 for plaintiffs named in <u>Allen v. Pfizer</u>.  Defendants allege that template discovery is incomplete for all 216 plaintiffs remaining in these cases.

When Mr. Boone's cases were originally transferred to this Court for pre-trial management as part of the multi-district litigation, he had three cases with 394 individual plaintiffs.  Over time, many of those cases have been dismissed, whether by stipulation or court order.  While he originally pursued damages based on a panoply of injuries, including injuries unrelated to suicide, Mr. Boone has represented to the Court that he is "only pursuing the suicidality issues, suicide, attempted suicide, suicide ideation." (<u>See</u> Hr'g Tr. 36, Dec. 1, 2010.) Since 2008, defendants have filed three motions to dismiss the Boone plaintiffs' cases for failure to comply with discovery orders and one motion to compel compliance with a discovery order.  (<u>See</u> Docket Nos. 1260, 1445, 2984, 3080.)  The first two motions to dismiss were denied, and Mr. Boone was permitted more time to file complete discovery responses.  The last motion to dismiss was allowed as to 47 Boone plaintiffs who had failed, in 2010, to file releases allowing defendants to access their medical records.  The motion to compel was later withdrawn.

The Magistrate Judge has held multiple status conferences to

determine the status of discovery in the Boone plaintiffs' cases.
Although the Magistrate Judge repeatedly expressed concern that
Mr. Boone had not complied with the discovery schedule, rather
than impose immediate sanctions, the Magistrate Judge set new
deadlines to give Mr. Boone a reasonable amount of time to cure
deficiencies in discovery.  It appears that none of these new
deadlines were met.  Attorney Boone was warned of the possibility
of sanctions if he failed to cure the deficiencies in his
clients' discovery responses.  (See, e.g., Hr'g Tr. 32, Dec. 1,
2010.)  Indeed, in August 2010, Mr. Boone was fined $500 as a
sanction for failing to comply with the Magistrate Judge's
discovery orders, namely the requirement that Mr. Boone file
monthly status reports with the Court.  (See Docket No. 3031.)
In addition, the Magistrate Judge recommended that the Court
dismiss forty-seven plaintiffs represented by Mr. Boone for
failure to produce medical authorizations.  (Docket No. 3025.)
The Court adopted that recommendation, without objection, on
August 30, 2010.[2]

Discovery misconduct has continued.  As an example of
particularly extreme conduct, in 2010 Mr. Boone filed 125

---

[2] Although Mr. Boone argues that the dismissal of those forty-
seven plaintiffs should not be viewed as a sanction because he
did not object to dismissal, the Magistrate Judge did, in fact,
characterize dismissal as a sanction.  (Docket No. 3025 at 2
("Dismissal is an available sanction, see Samos Imex Corp. v.
Nextel Communications, 194 F.3d 301, 305 (1st Cir. 1999), and, in
the circumstances of each of these forty-seven cases, is the
appropriate sanction.").)

original or supplemental interrogatory responses, <u>none</u> of which was signed or verified by the individual plaintiffs.[3] Sixty-three, or more than half, of those filings, give the same answer, nearly word for word, to Interrogatory No. 11 (asking about incidents of psychiatric illness): "Abnormal thinking and suicidal ideation" without any further descriptive information. The case of plaintiff Josephine Jackson explains why this is particularly problematic. In 2008, Ms. Jackson filed handwritten interrogatory responses, signed under oath, and wrote "N/A (none of my family members have seek/need any of the above [psychiatric] services." Mr. Boone produced an unsigned supplemental response for Ms. Jackson in 2010 that stated "Abnormal thinking and suicidal ideation" in response to Interrogatory No. 11. At Ms. Jackson's deposition, the following exchange occurred:

> Q: Now, in response to the - the new set that we got today, it says that, as far as you are concerned, for you, that you had abnormal thinking and suicidal ideation. Did you have suicidal ideation?
>
> A. I don't know who put that there, because I did not tell nobody that.
>
> Q. Do you did not [sic] have suicidal ideation when you were taking Neurontin?

---

[3] With his objections to the Report, Mr. Boone filed 68 interrogatory responses that he claims provide evidence that supplemental interrogatory responses were, in fact, signed. However, not one had an example of a verification by a plaintiff. Each interrogatory response was signed by Mr. Boone, but only in the context of a certificate of service.

A. No.

(Docket No. 3258, Ex. C at 113-14.)  The reasonable inference is that Mr. Boone filed supplemental interrogatory responses without consulting his clients.  This is serious misconduct.

On December 1, 2010, the Court held a status conference, jointly presided over with the Magistrate Judge, with respect to all Neurontin products liability cases.  Mr. Boone was present, as were counsel for defendants.  After defendants' counsel raised certain concerns about inadequate discovery responses, Mr. Boone represented that he and his clients had fully complied and that, upon a case-by-case review, "the Court will get a different impression once the Court sees we have supplemented."  (Hr'g Tr. 34.)  Pursuant to the Magistrate Judge's scheduling order following that hearing, defendants filed the instant motion to compel.  With that motion, they also filed an extensive appendix, outlining the alleged deficiencies with each plaintiff's discovery responses.  They provided Magistrate Judge Sorokin with eight boxes of documents, including interrogatory responses that had been filed by each plaintiff.  Mr. Boone opposed the motion, but did not provide a case-by-case analysis of individual plaintiffs' responses.

In his Report, the Magistrate Judge agreed with defendants that template discovery was incomplete for each of Boone's plaintiffs.  He found that attorney Boone has "repeatedly failed to complete template discovery responses despite repeated

opportunities and despite repeated orders to do so" and that his
behavior was so extreme as to warrant dismissal. (Report at 24-
25.) While the Magistrate Judge did not review each and every
plaintiffs' file, the sample of cases he did review corroborated
his conclusion that template discovery was incomplete. The
Report recommended that the Court dismiss the Boone plaintiffs'
cases pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute
and failure to comply with orders of the court, and pursuant to
Fed. R. Civ. P. 37(b)(2)(A)(v) as a sanction for failure to obey
orders to provide discovery.

Boone objected to almost every aspect of the Report.
Tellingly, he does not address Josephine Jackson's statements at
her deposition, described above. While the Court will not
outline each objection here, one major complaint was that the
Magistrate Judge failed to review each of plaintiffs' cases in
analyzing defendants' motion to compel. Boone asserts that such
a review must be done by the Court on a case-by-case basis.
(Objections at 28 ("Although these Plaintiffs are listed in a
multi-party complaint, they nevertheless are individual
Plaintiffs whose case [sic] must be judged individually.").)
Because Boone himself did not provide the Court with a case-by-
case analysis in support of his objections, the Court undertook
its own individual review of the template discovery. This review
involved a 200-page index of cases provided by defendants, eight
boxes of documents including interrogatory responses and medical

providers lists for each plaintiff, and eighty exhibits submitted
by Attorney Boone.  Based on this review, the Court finds the
following.

1.    Seventeen plaintiffs have not provided <u>any</u>
interrogatory responses to defendants.  <u>See</u> Appendix A.

2.    Of those plaintiffs who have filed interrogatory
responses, two plaintiffs have not filed authorizations allowing
defendants to retrieve their medical records.  <u>See</u> Appendix B.
Two other plaintiffs have not filed a list of their medical
providers.  <u>See</u> Appendix C.

3.    With respect to plaintiffs not listed in Appendices A-
C, there are eighty-nine plaintiffs who have not provided
defendants with the most basic information in this case: the
dates that they used Neurontin and the physicians who prescribed
it to them.  <u>See</u> Appendix D.  (<u>See also</u> Discovery Order No. 2
(requiring all plaintiffs to provide defendants with basic
information about their Neurontin use).)

4.    Among plaintiffs who filed interrogatory responses and
provided information about Neurontin use, there are forty-two
plaintiffs who provided no response to Interrogatory No. 11,
which asks plaintiffs to

> describe any instances of psychiatric or mental
> illness, suicide, attempted suicide, homicide or other
> violent behavior by Plaintiff or any of Plaintiff's
> family members . . . and, for each such instance,
> identify the person; the person's relationship to
> Plaintiff; the nature of the person's illness or

behavior and identify the individuals that might have
knowledge of these incidents.

Given Mr. Boone's representation to this Court that he was "only
pursuing the suicidality issues, suicide, attempted suicide,
suicide ideation," (see Hr'g Tr. 36, Dec. 1, 2010) an answer to
Interrogatory No. 11 should be considered one of the most basic
pieces of information in this case.  In addition to the
plaintiffs who did not provide any response to Interrogatory No.
11, there are fourteen plaintiffs who responded with answers
limited to a few words, such as "depression," or "abnormal
thinking and suicidal ideation."[4]  See Appendix E.  Without more
information, such bare-bones answers are grossly insufficient.

     5.   Ten plaintiffs have already been deposed by defendants.
See Appendix F.  Serious concerns were raised by their
depositions.  For example, defendants learned about treatment
providers not previously disclosed, undisclosed medical records
in plaintiffs' possession, and newly alleged injuries.  Due to
this new information, depositions were not completed.

     6.   Forty-one plaintiffs do not fall into one of the above
categories, although their discovery responses are thin and many
of their interrogatory responses were not verified.  See Appendix

_____

[4] Although 63 of the interrogatory responses filed in 2010 by
Boone clients listed "Abnormal thinking and suicidal ideation,"
as a response to Interrogatory No. 11, many of those plaintiffs
have ignored other essential obligations of discovery, such as
providing defendants with the dates they took Neurontin, and
therefore are not listed in Appendix E.

G.

## II.  STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 72(a), this Court must "consider timely objections [to the Report] and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

## III.  DISCUSSION

Defendants move to compel plaintiffs to comply with the Magistrate Judge's discovery orders pursuant to Fed. R. Civ. P. 37(a).  In cases where a motion to compel is connected to a failure to comply with a court's discovery order, a number of sanctions are available to the court.  Fed. R. Civ. P. 37(b)(2)(A) provides in relevant part that "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders.  They may include . . . dismissing the action or proceeding in whole or in part."  Likewise, Rule 41(b) states that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  See also Link v. Wabash R. Co., 370 U.S. 626, 629-30 (1962).  "The sanction of dismissal with prejudice for want of prosecution, however, is a unique and awesome one, foreclosing forever a plaintiff's opportunity to obtain judicial redress."

Pomales v. Celulares Telefonica, Inc., 342 F.3d 44, 48 (1st Cir. 2007).  "Dismissal with prejudice for failure to prosecute is appropriate in the face of 'extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance.'"  Id. (citing Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987)); see also 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2369 (2d ed. 1995).  "Where a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal."  HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 918 (1st Cir. 1988).

The First Circuit has noted the inherent vagueness in the case law regarding dismissal for failure to prosecute or obey court orders, stating that "[t]he difficulty is that the range of circumstances is so vast, and the problems so much matters of degree, as to defy mechanical rules."  Robson v. Hallenbeck, 81 F.3d 1, 2 (1st Cir. 1996).  The court did, however, list certain considerations to guide district courts, including "the severity of the violation, . . . the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions."  Id. (citing Figueroa-Ruiz v. Alegria, 896 F.2d 645,

648 (1st Cir. 1990)).  In terms of the severity of violations, the court wrote that "[r]epeated disobedience of a scheduling order is inherently prejudicial, because disruption of the court's schedule and the preparation of other parties nearly always results. . . .  A succession of violations . . . indicating a general unwillingness to comply with a court-imposed scheduling order, is for us enough to justify dismissal."  Id. at 4; see also HMG Property Investors, Inc. v. Parque Industrial Rio Canas, Inc., 847 F.2d 908, 918 (1st Cir. 1988) (dismissal justified where "the contumacy was not a single isolated mishap, but the tip of a rather large iceberg") (internal quotation marks omitted); Farm Constr. Servs., Inc. v. Fudge, 831 F.2d 18, 21 (1st Cir. 1987) ("We can find no abuse of discretion on the part of the district court in dismissing a case where the appellant has intentionally disregarded court orders on repeated occasions and substituted its own judgment for that of the court.").

In addition, the First Circuit has found that dismissals are justified when the district court has previously warned a party that dismissal will result from failure to comply with discovery orders.  See, e.g., Cintron-Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522, 526 (1st Cir. 2002) (protracted noncompliance with court orders, "in the teeth of explicit warnings," justified dismissal); Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 4-5 (1st Cir. 2002) (dismissal justified where the plaintiff, despite being "suitably forewarned," nevertheless

disobeyed a court order).

The Magistrate Judge, in his Report, finds that Mr. Boone's pattern of conduct in this litigation merits dismissal, both as a sanction pursuant to Rule 37, and for failure to prosecute and comply with court orders pursuant to Rule 41(b).  The Court agrees with the Magistrate Judge that Mr. Boone's conduct involves extremely protracted inaction, measured in years, disobedience of court orders, ignorance of warnings, contumacious conduct, and other aggravating circumstances.  See <u>Cosme Nieves</u>, 826 F.2d at 2.

First, Mr. Boone's inaction has been extremely protracted, and can be measured in years.  Basic template discovery was due, for the bulk of these plaintiffs, on July 8, 2007.  Three and a half <u>years</u> later, the Court's review of the record reveals that <u>none</u> of the Boone plaintiffs have fully complied with their discovery obligations.  Second, Mr. Boone has repeatedly disobeyed explicit orders of the Magistrate Judge.  Indeed, at least one order issued to all litigants in the products liability cases by the Magistrate Judge singled out Mr. Boone and admonished him to pay particular attention to court deadlines. (<u>See</u> Report at 3-7.)  Third, Mr. Boone has repeatedly ignored the Magistrate Judge's warnings.  Indeed, the Magistrate Judge has previously sanctioned Mr. Boone for missing deadlines and ignoring orders by fining him $500.  (<u>See</u> Docket No. 3031.)  At the status conference on December 1, 2010, the Magistrate Judge

explicitly told Mr. Boone that failure to complete discovery would potentially result in dismissal of his cases. (Hr'g Tr. 18 ("And what you are inviting me – it's inviting me to issue further orders that are going to result potentially in dismissal of your cases if the discovery is not done.").)

It has become clear at this point in the litigation that admonitions and even monetary sanctions are not effective. Under the legal standards set forth by the First Circuit, dismissal for failure to prosecute and failure to obey court orders or, in the alternative, as a sanction, is appropriate for those Boone plaintiffs who have provided virtually no discovery. However, for those plaintiffs who have met certain threshold discovery requirements, described below, the Court will look to lesser sanctions in order to protect both the plaintiffs' and defendants' interests.

**1.    Plaintiffs Who Have Been Deposed**

Ten plaintiffs have already been deposed. (<u>See</u> Appendix F.) Defendants have held those depositions open on the basis of newly disclosed information that should have been provided to defendants years ago. While the information learned at the depositions unquestionably highlights previous failures of these plaintiffs to comply with discovery obligations, the resources to conduct the deposition have already been expended. Dismissal would be too harsh.

## 2.    Plaintiffs Listed in Appendices A-E

The plaintiffs listed in Appendices A-E have not provided defendants with the most basic information in this litigation. Plaintiffs in Appendix A have not filed interrogatory responses. Plaintiffs in Appendix B have not provided defendants with authorizations to retrieve their medical records.  Plaintiffs in Appendix C have not filed medical providers lists.  Plaintiffs in Appendix D have not provided defendants with the dates that they used Neurontin or the physician who prescribed it to them. Plaintiffs in Appendix E provided either no response, or an egregiously insufficient response, to Interrogatory No. 11 concerning suicide attempts, suicidal ideation, and other psychiatric problems.

After four years, or longer in the cases of some plaintiffs, it is entirely inexcusable that plaintiffs have not disclosed information to support the most basic elements of their claims. The refusal of these plaintiffs to obey the Court's orders and permit defendants to engage in meaningful discovery in these cases merits a serious sanction.

Accordingly, the claims brought by plaintiffs listed in Appendices A-E to this opinion will be dismissed with prejudice.

## 3.    The Remaining Plaintiffs

As the Court noted previously, there are forty-one plaintiffs who have met the threshold discovery requirements

outlined by the Court.  Namely, these plaintiffs have provided

defendants with the following: (1) at least some interrogatory

responses; (2) medical records authorizations; (3) medical

providers lists; and (4) an answer to Interrogatory No. 11 that

lists <u>at least</u> something more than a stock answer such as

"abnormal thinking and suicidal ideation."  Many plaintiffs

exceed the threshold defined in (4) simply by listing a family

member who witnessed a basic claim of depression or thoughts of

suicide.  While these answers are not good enough, they are

sufficient to avoid outright dismissal.

Each of the forty-one plaintiffs listed in Appendix G must

provide defendants with a <u>complete</u> list of medical providers and

with <u>all</u> the medical records in their possession.  If subsequent

deposition testimony reveals that certain providers or records

have not been disclosed, dismissal will be ordered.  Also, each

of these forty-one plaintiffs must supplement their interrogatory

responses within **<u>THIRTY</u>** days of this order.  Supplemental

responses will only be deemed acceptable if they respond to each

element of an interrogatory.  For example, an acceptable response

to Interrogatory No. 11 is not "depression, witnessed by my wife

Jane Doe."  The response should at minimum provide dates, a

detailed description of symptoms, and any treatment sought.  As

another example, Interrogatory No. 14 concerns medications taken

by the plaintiffs.  A response that does not <u>at least</u> include

information about Neurontin, and the dates it was used, is insufficient.  For many plaintiffs with multiple prescriptions, a complete answer will require a much longer list.  Each of these supplemental responses _must_ be signed under oath by the plaintiff in accordance with Fed. R. Civ. P. 26(g).  Failure to comply with these orders will result in dismissal of the case, and the Court may consider making a referral of attorney Boone to the Mississippi Bar.

Defendants' motion for attorney's fees incurred in preparing the motion to compel is allowed (Docket Nos. 3176, 3217).  Defense counsel shall submit a bill for reasonable attorney's fees capped at $350 an hour for attorneys and $100 an hour for paralegals.  Plaintiffs' counsel shall pay the amount personally.

## IV.  ORDER

Except as outlined here, the Court **ADOPTS** the Report and Recommendation of the Magistrate Judge (Docket No. 3276) and **ALLOWS** the Motion to Compel (Docket No. 3176).  The Court orders that cases brought by all those plaintiffs listed in Appendices A-E are **DISMISSED WITH PREJUDICE**.  With respect to plaintiffs listed in Appendix G, plaintiffs are **ORDERED** to supplement their discovery responses, according to the guidelines herein, within THIRTY days of this order.  Failure to comply will result in dismissal.  Plaintiffs' counsel is also **ORDERED** to pay defendants' attorney's fees.

The remaining plaintiffs shall comply with the Revised
Scheduling Order of December 6, 2010, which requires Mr. Boone
(along with defendants' counsel) to conduct fifteen days of
depositions per month.  (Docket No. 3141.)

/s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge

## APPENDIX A

**Plaintiffs Who Have Not Filed Interrogatory Responses**

1.  Robert Barnes

2.  Martha Beckum

3.  Ledorah Benton

4.  Donald Cohn

5.  Ruby Crapps

6.  Cora L. Crumble

7.  Theodore Crystian

8.  Marshall Dillon

9.  Clara M. Epps

10. Estate of Ethel Fleming

11. Emma Gregory

12. Linda Hales

13. Debra Ann Johnson

14. Lena Johnson

15. Ollie M. Johnson

16. Debra Neal

17. Bobby Woods

## APPENDIX B

**Plaintiffs Who Have Not Provided Medical Records Authorizations**

1.   Evia Holmes

2.   Emma Howard

## **APPENDIX C**

### **Plaintiffs Who Have Not Filed Medical Providers Lists**

1.   Tommy Mills

2.   Janice Primer

**Plaintiffs Who Have Not Provided Basic Information about
Neurontin Use (Prescribing Physician/Dates)**

1.   Terry Banks
2.   Katie Craig
3.   Serboya Delotta
4.   Pamela Ellis
5.   Lillie Beatrice Leggett Evans
6.   Gregory Linn Everett
7.   Inez Finscher
8.   Michael Fisher
9.   Marie Givens
10.  Frances Glenn
11.  Claudette Greer
12.  Tommy Hardy
13.  Billie Harkins
14.  Gregory Hasslet
15.  Charles Haynes
16.  Mark Head
17.  Rufus Hendon
18.  Shawand Hicks
19.  Evelyn Holt
20.  Frank Hoover
21.  Ruby Hoover
22.  Josephine Jackson
23.  Doris Johnson
24.  Robert Johnson
25.  Rose Jones
26.  Edward Jordan
27.  Johnny Keyes
28.  Falisha Knight
29.  Ellaweise Lacy
30.  Shanetta Lacy
31.  Mary Lawson
32.  Diann Lee
33.  Mickey Livingston
34.  Chris Logan
35.  Lula Maria Harper Lott
36.  Patricia McBeath
37.  Franklin McConnell
38.  MarQuittia McCoy
39.  Martha McIntee-Nelson
40.  Helen Meeks (Helen Booker-Meeks)
41.  Laperial Melvin
42.  Ava Mitchell
43.  Mattie Moore

44.  Helen Morgan
45.  Brandy Morgan
46.  Linda Murray
47.  Betty Newson (Betty Newsom)
48.  Martha Norman
49.  Tommie Odum
50.  Sharon Perez
51.  Kathy Phillips
52.  Jacquelyn Posey
53.  Delories Powell
54.  Cynthia Quimby
55.  Barbara Readus
56.  Sallie Rippy
57.  Wayne Rochelle
58.  Sean Self
59.  Bridgette Shields
60.  Sarah Shields
61.  Aaron Sims
62.  Eugene Smith
63.  Ronnie Smith
64.  Rosa Smith
65.  Ruby Smith
66.  Jerry Stagg
67.  Darlene Stampley
68.  John Staten
69.  Carl Steverson
70.  Debbie Sullivan
71.  Erestia Thomas
72.  Magnolia Thomas
73.  Martha Thompson
74.  Dorothy Tolliver
75.  Morris Townsend
76.  Doris Toy
77.  Larry Vail
78.  Joann Walls
79.  Shirley Ann Walters
80.  Estate of Kathy A. Warfield
81.  Della Washington
82.  Carole Williams
83.  Daisy Williams
84.  Eloise Williams
85.  Helen Williams
86.  Nolan Williams
87.  O.C. Williams, Sr.
88.  Sanders Williams, Jr.
89.  Taylor Williams

## APPENDIX E

**Plaintiffs Who Did Not Respond to Interrogatory #11 or Who Provided Egregiously Insufficient Information**

Plaintiffs Who Did Not Respond

1.    Mary Adams
2.    Estate of Leroy Anderson
3.    Mary Applewhite
4.    Mary Ashford
5.    Jimmie Barbee
6.    Marie Barber
7.    Teresser Bass
8.    Vannila Bennett
9.    Cassandra Benson
10.   Audrey Berry
11.   Elizabeth Bland
12.   Estate of Joe Blaylock
13.   Frances Bouie
14.   Minnie Campbell
15.   Lillie Cannon
16.   Claiborne Collier, Sr.
17.   Jimmy Darling
18.   Carolyn Davis
19.   Alton Dillon
20.   Annie Edwards
21.   Estate of Texcellar Fields
22.   Annie Gatewood
23.   Beneal Gildon
24.   Kenneth Green
25.   Melvin Harris
26.   Doyle Harrison
27.   Gloria Harrison
28.   Carl Henry
29.   Cassandra James
30.   James Jeffcoat
31.   Macatherine Jefferson
32.   Charlotte Jenkins
33.   Velma Johnson
34.   Jannie Lucas
35.   Bobbie Maggett
36.   Warren Nance
37.   Larry Potts
38.   Mark Prince
39.   Andrew Smith
40.   Bennie Spencer
41.   Gregory Suber

42. Dorian Taylor


## Plaintiffs Who Provided Insufficient Information

1. Jessie Brown - Response says only "depression and suicide thought"
2. Emma Clark - Response says only "had suicidal thoughts"
3. Memye Creswill - Response says only "Abnormal thinking and suicidal ideation"
4. Alford Darby - Response says only "depression"
5. Clarence Harris - Response says only "Abnormal thinking, agitated, depression, and paranoid"
6. Freddie Harris - Response says only "Abnormal thinking and suicidal ideation"
7. Linda Harveston - Response says only "Abnormal thinking and suicidal ideation"
8. Sylvia Longino - Response says only "Abnormal thinking and suicidal ideation"
9. Jerry Lowe - Response says only "addictive to Neurontin"
10. Sherman McDonald, Jr. - Response says only "Abnormal thinking and suicidal ideation"
11. Jimmy Sayles - Response says "Abnormal thinking and suicidal ideation," and is followed by "Mr. Sayles never had any abnormal thinking"
12. Pamela Shields - Response says only "depression and suicide thoughts"
13. William Webb - Response says only "depression, forgetfulness"
14. Edneatha White - Response says only "plaintiff suffered severe depression and abnormal thinking"

## <u>APPENDIX F</u>

## **Plaintiffs Who Have Been Deposed**

1.   Shirley Drennan

2.   Catherine Duvall

3.   Jerry Lowe

4.   Jerry Price

5.   Vanessa Scott

6.   Lashonda Skinner

7.   Louisa Smith

8.   Michael Trim

9.   Deborah Watson

10.  Joyce Watson

## APPENDIX G

### Remaining Plaintiffs

1.  Lois Adams
2.  Jessie Allen
3.  Vivian Allen
4.  Jerrell Bearden
5.  Darrell Brooks
6.  Thomas Brown
7.  Bobbie Bryson
8.  Roy Carroll
9.  Mary Cooper
10. Lynnette Criss
11. Linda Cunningham
12. Levi Davis
13. Annie Edwards
14. Essie Ford-Patterson
15. Estate of Aliece Garrett
16. Shannon Glass
17. Fannie Grinston
18. Lee Haley
19. Belinda Havard
20. Mae Hester
21. William Hony
22. James Hunter
23. Nikisha Johnson
24. Jacqueline Kendrick
25. Elizabeth Knight
26. Henry Landrum
27. Birdie Langdon
28. Dawn Lepard
29. Pearlie Maddox
30. Joyce McAdory
31. Lolita Myers
32. Maybelle Newsome
33. Hershel Jack Price
34. Vera Ray
35. Patricia Rhodes
36. Frank Smith
37. Jannie Smith
38. Bobby Steele
39. Michaelon Weatherby
40. Francis Womack
41. Re'Shedia Young