UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
In re: NEURONTIN MARKETING, SALES         : MDL Docket No. 1629
PRACTICES AND PRODUCTS                    :
LIABILITY LITIGATION                      : Master File No. 04-10981
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
: Judge Patti B. Saris
THIS DOCUMENT RELATES TO:                 :
: Magistrate Judge Leo T.
*Anderson, et al v. Pfizer, Inc., et al*, No. 06-11024-PBS;   : Sorokin
*Accetullo, et al. v. Pfizer, Inc., et al.*, No. 06-10912-PBS; :
*Brewster, et al. v. Pfizer Inc., et al.*, No. 06-11022-PBS;  :
*Girard, et al. v. Pfizer Inc., et al.*, No. 06-11023-PBS.    :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM IN OPPOSITION TO THE SCHWARTZ FIRM'S OBJECTIONS
TO MAGISTRATE JUDGE'S ORDERS AND MOTION FOR OTHER RELIEF**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or "Pfizer") submit this Opposition Memorandum in response to the "Objections to Orders of March 21, 2011 (Document No. 3389) and for Other Relief" ("Objections") filed by the Law Offices of Newton B. Schwartz ("the Schwartz firm"). Those Objections pertain to Magistrate Judge Sorokin's March 21, 2011 Order: (i) granting Pfizer's motions to compel; and (ii) requiring the Schwartz firm to explain why Plaintiffs and counsel should not be sanctioned for violating the Court's February 11, 2011 Scheduling Order by twice ignoring deadlines and failing to seek relief from the Order. Although the Schwartz firm does not deny that these orders were violated, its combative and often unintelligible Objections seek to place blame on everyone other than Plaintiffs' counsel of record, Newton Schwartz, including Judge Saris, Magistrate Judge Sorokin, his own lawyers, Pfizer, and its counsel. For the reasons stated herein, this Court should overrule Plaintiffs' Objections.

**PRELIMINARY STATEMENT**

In addition to its procedurally improper effort to seek relief that was already waived under the Federal Rules and local rules, the Schwartz firm's Objections mischaracterize the

record and Pfizer's position, and contain statements and concessions that highlight the nature and breadth of its discovery and other abuses.

Since the fall of 2010, the Schwartz firm, which currently represents 83 Plaintiffs in this multidistrict litigation, has repeatedly stated to Pfizer's counsel and in public filings that it will voluntarily dismiss or withdraw from all but 30 to 40 cases that it believes are "viable." Indeed, Plaintiffs' counsel made such representations in open court at a hearing on February 11, 2011. Based on those repeated representations, Magistrate Judge Sorokin entered a Scheduling Order on February 11, 2011 to govern the timing of the Schwartz firm's voluntary dismissals or withdrawals and to facilitate scheduling of discovery in the remaining cases. Moreover, the parties have staged discovery and the allocation of resources based on these repeated representations. Yet, the Schwartz firm's Objections would have the Court believe that Magistrate Judge Sorokin's Scheduling Order came as a total surprise and without any foundation. Without explanation, the Schwartz firm violated the deadlines of the February 11, 2011 Scheduling Order by twice failing to submit a list of cases for dismissal or motions to withdraw. The Schwartz firm's failure to provide a final list of cases going forward has severely prejudiced Pfizer's efforts to allocate resources in these cases, schedule depositions, subpoena witnesses, produce documents, and otherwise coordinate discovery. Spending resources to take depositions and conduct discovery in cases that are not viable and will be dismissed is unnecessarily wasteful and inefficient.

Not only has the Schwartz firm failed to submit a list of cases to be dismissed or moved to withdraw, as required, or explain its inconsistencies, it also has now violated three of Magistrate Judge Sorokin's direct orders. The Schwartz firm first missed the deadline, in violation of the Court's February 11, 2011 Scheduling Order [3287], for submitting, by February 14, 2011, a preliminary list of cases it had decided to dismiss. It later, again, failed to submit a list of other cases it intended to dismiss, or move to withdraw from cases, by March 11, 2011. Magistrate Judge Sorokin then issued an Order on March 21, 2011 [3358] requiring the Schwartz firm to explain by March 24, 2011 its previous noncompliance and show cause why sanctions

should not be imposed. After the Schwartz firm failed to comply with Magistrate Judge Sorokin's March 21, 2011 Order, Pfizer filed its third motion, this time for sanctions. Only then did the Schwartz firm file the present Objections to the March 21, 2011 Order. Much of the Schwartz firm's Objections contains irrelevant and convoluted arguments and claims that have no bearing on the March 21, 2011 Order.

The Schwartz firm does not deny that it violated Magistrate Judge Sorokin's orders. It instead argues that it should not be held accountable for such failures because: (1) a senior lawyer who attended the February 11 hearing, and who has been coordinating the Schwartz firm's cases and traveling around the country for depositions in these cases, apparently was totally misinformed (at best); and (2) the Schwartz firm's attorneys are unable, after years, to determine which of their cases have a reasonable factual basis (despite their Rule 11 requirements to have such basis *before* they filed these lawsuits years ago), and which are "duds" (their word).[1] These "excuses" not only are incredible, they are patently meritless.

As an initial matter, the Schwartz firm's Objections should be denied on the basis of waiver because they pertain to deadlines set by the Court's February 11, 2011 Scheduling Order. The Schwartz firm failed to make a timely objection to that Order. Moreover, it is not clearly erroneous or contrary to law for Magistrate Judge Sorokin to establish deadlines based on express representations made by one of Plaintiffs' attorneys authorized to speak on Plaintiffs' behalf, especially considering that the statements by that attorney were consistent with what the Schwartz firm had repeatedly claimed for months – namely, that it would significantly reduce its caseload. None of Magistrate Judge Sorokin's rulings exceeded his discretion in managing these cases. He did not, as characterized by the Schwartz firm, impose any quotas. Consistent with his case-management authority, his Scheduling Order simply set a timeframe for the Schwartz firm to identity specifically which of the cases that it had represented to Pfizer and the Court would be dismissed or withdrawn from, and he then issued an Order to memorialize those

---

[1] Schwartz Objections [3389] at 2.

deadlines. In his most recent March 21, 2011 Order – the only one to which the Schwarz firm has timely objected – Magistrate Judge Sorokin gave the Schwartz firm an opportunity to explain its prior non-compliance and was met with silence. Accordingly, the Schwartz firm's baseless Objections should be overruled.

## FACTUAL AND PROCEDURAL BACKGROUND

Contrary to the claims in its Objections, beginning in late 2010 (in the context of case management, and not settlement), the Schwartz firm told Pfizer that it was in the process of reviewing and culling its remaining cases. (*See, e.g.*, Ex. A, 11/10/10 C. Stevens letter (commenting on the Schwartz firm's "stated intention to review certain cases to determine whether [it] will dismiss or withdraw from representation of those Plaintiffs"); Ex. B, 11/11/10 C. Stevens letter (same).)[2] The impetus was the parties' mutual desire to avoid costly and time-consuming discovery in cases that were not, in the Schwartz firm's view, viable. On November 24, 2010, the parties filed a joint report regarding deposition scheduling that explained as follows:

> The Law Offices of Newton B. Schwartz have been reviewing their files over the last few weeks to determine whether they will seek to dismiss or withdraw from the representation of certain Plaintiffs. Due to these efforts, and in an attempt to avoid the unnecessary scheduling of, and costs associated with, the taking of depositions in cases that might be dismissed, the parties have not yet taken depositions in the cases referenced in their October 25, 2010, submission.

(Joint List of Intended Dec. Deps. [3133].) In reference to this document, Judge Sorokin noted at a December 1, 2010 hearing that "there was a filing from Mr. Schwartz'[s] law firm indicating they were reviewing their cases to see whether there were cases that after this stage of the discovery they wanted to dismiss or withdraw from . . . ." (Ex. C, 12/1/10 Hearing Tr. at 17:4-20.) Although Mr. Schwartz now attempts to disassociate himself from his own seasoned attorney's statements, they were fully consistent with what Mr. Schwartz had been saying for months.

---

[2] All exhibits are attached to the accompanying Declaration of Catherine B. Stevens.

On December 15, 2010, the parties held a conference call during which the Schwartz firm told Pfizer's counsel that it would send a list of the cases in which it intended to proceed with depositions.  (*See* 12/17/10 T. Stegall email [3355-1].)  On December 21, 2010, the Schwartz firm sent Pfizer a tentative list of 35 cases that it claimed would be going forward.  (*See* 12/21/10 T. Stegall email [3355-2].)  On January 3, 2011, the Court dismissed the claims of 39 Schwartz Plaintiffs for their failure to produce any template discovery.  (*See* Order Dismissing Pls. [3202].)  On January 5, 2011, because the Schwartz firm still had not provided a final list of cases, Pfizer's counsel sent an email requesting a list prior to the conference scheduled before the Court in January.  (*See* Ex. D, 1/5/11 C. Stevens email.)  On January 7, 2011, James "Trey" Stegall from the Schwartz firm sent Pfizer's counsel an email that provided: "As to a commitment from us regarding dismissing or withdrawing from cases, I believe the statements I have made to you in the past will prove true."  (Ex. E, 1/7/11 T. Stegall email.)  On January 25, 2011, the parties filed a joint report about upcoming depositions with the Court that contained the following qualification:

> Defendants have chosen these cases based on ***the Schwartz firm's representations that it is dismissing or withdrawing from all but approximately 35 of its cases***.  The above-mentioned cases [in which depositions will take place] are a part of the 35 remaining cases.  To the extent the Schwartz firm fails to dismiss or withdraw pursuant to its representations to counsel regarding the same, Defendants will select other cases in which to take depositions in February, and will promptly notify the Court in that event.

(Joint Dep. List for Feb. [3264], at 1 fn. 1 (emphasis added); *see also* Defs.' Dep. List for Jan. [3196], at 1 fn. 1.)  The Schwartz firm approved that joint filing, and did not object to another filing containing the same qualification.  (*See* 1/25/11 T. Stegall email [3355-3]; *see also* Defs.' Dep. List for Jan. [3196], at 1 fn. 1.)  On February 9, 2011, Pfizer's counsel conducted a conference call with the Schwartz law firm.  During that call, attorneys from the Schwartz firm, including Newton Schwartz and Jack Harang, assured Pfizer's counsel that they would still be dismissing a large portion of the firm's caseload, as previously indicated, because they are not viable.

At the Status Conference on February 11, 2011, presided over by Judge Saris with the assistance of Magistrate Judge Sorokin, Pfizer's counsel raised the issue of the Schwartz firm's failure to provide a list of cases that would be going forward and stated that it was Pfizer's understanding that the Schwartz firm would soon dismiss a large number of pending cases. (*See* Feb. 11, 2011 Conference Tr. [3355-4] at 13:20-14:4.)  Mr. Stegall, who appeared at this conference on behalf of the Schwartz firm, agreed with the statements of Pfizer's counsel, and represented to the Court that his firm had "made representations and intend[s] to stick to them that we will be reducing our number from eighty anywhere down to thirty-five to forty cases." (*Id.* at 14:7-11.)  He also requested 30 to 60 days to "finalize that list" of cases that the Schwartz firm intended to pursue. (*Id.*)

In response to questions posed by Judge Saris, Mr. Stegall acknowledged that he was presently aware of about 10 to 15 cases that the Schwartz firm would soon dismiss.  Judge Saris then instructed him to dismiss "those instantly, instantly, like Monday," and he replied, "Yes, ma'am." (*Id.* at 14:12-22.)  Magistrate Judge Sorokin also asked Mr. Stegall a series of questions regarding the remaining Schwartz cases:

> Q: So let me just ask, you've got eighty cases, is that right?
> A: Yes, sir.
> Q: And thirty-two you know you're going forward on?
> A: Yes, sir.
> Q: And the other forty-eight, the question is, are you going to go forward on any of those, some of those, and of ***the ones you're not going forward on, you're either going to dismiss or withdraw***?
> A: Yes, your Honor.
> Q: So the forty-eight is the universe of cases you're making a decision about in the next 30 days?
> A: And, as I said before, we anticipated the number that might be added to the thirty-two [i.e., cases they intend to pursue] to be ***a small number, three to five***.

(*Id.* at 16:18-17:8 (emphasis added).)  In other words, Mr. Stegall represented to the Court that – within the next 30 days – the Schwartz firm anticipated dismissing or withdrawing from representation in approximately 43 to 45 cases.

Shortly after the February 11, 2011 Status Conference, Magistrate Judge Sorokin issued a

6

written Scheduling Order instructing the Schwartz firm to take two actions: First, the Court ordered that "the Schwartz law firm shall file by the close of business February 14, 2011 a list of the cases it now knows it intends to dismiss." (2/11/11 Further Scheduling Order [3287], at ¶ 2.) Second, it ordered that "[n]o later than March 11, 2011, the Schwartz law firm shall file a list of all of the other cases it intends to dismiss as well as a motion to withdraw in any case in which it does not intend to proceed as counsel." (*Id.*) Notably, the Schwartz firm did not object to that Scheduling Order prior to the expiration of the 14-day deadline set by Rule 72(a), nor did it seek an extension of either deadline.

The first of the Court's deadlines expired, but the Schwartz firm failed to file any list of cases to be dismissed or any explanation as to why it did not file a list, contrary to its representations at the February 11, 2011 hearing. On February 15, 2011, Pfizer's counsel sent the Schwartz firm an email stating, "you were supposed to have filed by the close of business yesterday, a list of cases that you know that you intend to dismiss. We did not see a filing yesterday. What is your intention?" (2/15/11 C. Stevens email [3299-2].) Pfizer's counsel received no response to its email. Accordingly, on February 17, 2011, Pfizer moved to compel compliance with the deadline. (*See* 2/17/11 Defs.' Mot to Compel [3298].) The Schwartz firm did not respond to Pfizer's motion. On February 22, 2011, Mr. Newton Schwartz sent Pfizer's counsel an email that listed the names of 11 Plaintiffs and stated, "As per the Court Order, below is the list of our *initial* 11 clients for our withdrawal which we will submit as to form upon Jack Harang's return tomorrow." (Ex. F, 2/22/11 N. Schwartz email (emphasis added).) In that list of 11 cases, depositions had already taken place in 4 of the cases and 1 had already been dismissed by the Court's January 3, 2011 Order. (*See* Ex. G, 2/23/11 C. Stevens email.) Despite the email from Mr. Schwartz, the Schwartz firm did not move to voluntarily dismiss or withdraw from the 10 remaining cases listed in that email. On March 11, 2011, the second of the Court's deadlines passed – again without any filing from the Schwartz firm. Pfizer, therefore, filed another motion to compel on March 14, 2011. (*See* 3/14/11 Defs.' Mot to Compel [3339].) The Schwartz firm again failed to respond to Pfizer's motion.

7

On March 15, 2011, the Schwartz firm sought to dismiss 1 case and withdraw from 7 other cases, [3344, 3345], far fewer than the number of cases the Schwartz firm had previously represented would be dismissed. (*See* Defs.' Resp. to Mot. to Withdraw [3354] at 2-4.) As Magistrate Judge Sorokin later observed, those Schwartz filings were "substantially different, without explanation, than the representations [that the Schwartz firm] made to the Court." (*See* Order on Pending Scheduling and Discovery Motions [3358], at 2.) Pfizer had already taken depositions in 4 of those cases based on the representation that these cases were on the list of 35 cases that would proceed. Additionally, Pfizer's counsel flew to Arkansas *twice* to take the deposition of the 1 Plaintiff that the Schwartz firm sought to dismiss – only to have her cancel twice at the last minute. (*See* Resp. to Mot. to Dismiss [3352].) Furthermore, none of the 8 Plaintiffs listed in the Schwartz firm's March 15, 2011 Motion to Withdraw were on the list of 11 cases that Mr. Schwartz represented his firm would be withdrawing from in his email on February 22, 2011. (*Compare* Schwartz Mot. to Withdraw [3345-2], *with* Ex. F, 2/22/11 N. Schwartz email.)

On March 21, 2011, Magistrate Judge Sorokin found that the Schwartz firm had violated the February 11, 2011 Scheduling Order and granted Pfizer's motion to compel. (*See* Order on Pending Scheduling and Discovery Motions [3358] at 1-2.) The Court also issued the following Order:

> The Court hereby orders that by March 25, 2011 the Schwartz law firm: (1) file the list(s) required by the February 11, 2011 Order or explain the discrepancies between its representations to the Court and the untimely filings it made; (2) respond to the pending motion to comply [with regard to the March 11, 2011 deadline] by March 25, 2011; and (3) show cause why the Court should not impose sanctions, e.g. monetary fines or dismissal, for failure to comply with the Court's Orders.

(*Id.* at 2, 3; *see also* Electronic Order entered 3/21/11.) In violation of all three prongs of that Order, the Schwartz firm filed nothing by the March 25, 2011 deadline.[3] It is on this record that

---

[3] On March 29, 2011, Pfizer moved for sanctions and other relief based on the Schwartz firm's failure to comply with that Order.

8

the Schwartz firm alleges due process and other judicial errors in its Objections.

## ARGUMENT

**I.      The Schwarz Firm Has Waived Objections To The Magistrate Judge's February 11, 2011 Scheduling Order**

Even though the Schwartz firm claims its objections are directed at Magistrate Judge Sorokin's March 21, 2011 Order, the substance of its filing actually focuses on the deadlines set by the February 11, 2011 Scheduling Order. For instance, the Schwartz firm argues that Magistrate Judge Sorokin should not have ordered it to submit an initial list of cases to be dismissed – in accordance with its representations about winnowing its case – by February 14, 2011, and a second list by March 11, 2011.[4] (*See* Schwartz Objections [3389], at 12-13.) However, both of those deadlines were set in the Court's February 11, 2011 Scheduling Order, to which the Schwartz firm did not timely object. The Scheduling Order also could not have come as a surprise based on the hearing that preceded it. Federal Rule of Civil Procedure 72(a) provides that objections to non-dispositive orders of a magistrate judge must be made, if at all, within 14 days of the order, and "a party may not assign as error a defect in the order not timely objected to." Because the Schwartz firm failed to file any objections to the February 11 Scheduling Order within 14 days, it waived all objections to that Order, including the provisions requiring it to submit lists of cases to be dismissed or withdrawals by certain dates. *See, e.g.*, *Keating v. Secretary of Health & Human Serv.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986). Thus, this Court should overrule the Schwartz firm's Objections to the February 14, 2011 and March 11, 2011 deadlines on grounds of waiver.

---

[4] The Schwartz firm's Objections ostensibly enumerate several objections on pages 12 to 15. The first two are objections to the deadlines in the February 11 Scheduling Order, which were waived. The remaining points do not appear to be specific requests for relief. Instead, they constitute general arguments not accompanied by particular objections, such as "This slow methodical procedural process is an ethical requirement, not contemplated by the Court's order above; and including two layers of attorneys for each Plaintiff[.]" (Schwartz Objections [3389], at 13.)

## II.     All Objections Should Be Denied On The Merits

Following two complete and unexplained failures to comply with the Court's Scheduling Order, Magistrate Judge Sorokin did not immediately sanction the Schwartz firm, but issued his March 21, 2011 Order and generously provided the firm an opportunity to explain its non-compliance. It failed to do so. Given the Schwartz firm's repeated violations of the Court's deadlines – violations that it does not deny – it cannot demonstrate that any rulings of the Magistrate Judge are clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a) (providing that all non-dispositive rulings of magistrate judges should be afforded deference and should not be set aside unless "clearly erroneous or . . . contrary to law"). Moreover, Rule 72 is not a license to violate a magistrate judge's order while objections are pending. To avoid compliance, a party is required to seek a stay of the order before any deadline or risk being held in contempt of court. *See United Electric Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1098 (1st Cir. 1992) (observing that a party seeking to appeal an order "should either obtain a stay of the order or comply with its terms until an appeals court amends or vacates the order" or else be subject to contempt); *see also See In re Novak*, 932 F.2d 1397, 1401 (11th Cir. 1991). The Schwartz firm did not seek such a stay but unilaterally decided that it did not have to comply with the Court's Orders.

### A.     The Schwartz Firm Violated The Orders Of The Court

The Schwartz firm never explained to Magistrate Judge Sorokin or to Pfizer why it did not comply with the deadlines set in the February 11, 2011 Scheduling Order or respond to either of Pfizer's motions to compel. The Schwartz firm also has not explained why it wholly disregarded the Magistrate Judge's March 21, 2011 Order. Such willful noncompliance with court orders, standing alone, supports sanctions. The Schwartz firm cannot willfully disregard orders of the Magistrate Judge, even where it disagrees with those orders. Regardless of whether it found the February 11 and March 21, 2011 Orders objectionable, the Schwartz firm had an obligation to make all good faith efforts to comply. Yet, contrary to that obligation, the Schwartz firm did not even attempt to meet the deadlines or request extensions from the Court.

### B. The Schwartz Firm's Attempts to Disassociate Itself From Representations Of Its Own Attorney Are Unavailing

Rather than providing an explanation for noncompliance with the February 11 and March 21, 2011 Orders, the Schwartz firm asserts, in a conclusory fashion and for the first time weeks after the hearing, that the representations made by a Schwartz firm attorney at the February 11, 2011 hearing were "overly optimistic, incorrect and unfounded," had "no final factual basis in fact, then or now," and were the consequence of "telling the Court what Pfizer counsel wanted to hear." (*See* Schwartz Objections [3389], at 11-12.) In other words, the Schwartz firm seeks to excuse its noncompliance by arguing that its own senior associate, who was sent to appear and speak on the firm's behalf at a case management hearing and who has participated in numerous depositions in these cases, misled the Court, even if unintentionally, and spoke without authority or factual basis. Mr. Schwartz's tactic is not only unavailing, it is unbecoming.

The Court and Pfizer are entitled to rely on statements by an attorney from the Schwartz firm making an appearance at a hearing. Furthermore, contrary to the Schwartz firm's recent claims that Mr. Stegall was expressing only his personal opinion at the February 11, 2011 hearing, other representatives of the Schwartz firm, including Mr. Schwartz, have insisted to Pfizer for months that their firm has been significantly culling its cases. Pfizer's counsel was assured that the Schwartz firm was in the process of reducing its caseload during conference calls, including the call on February 9, 2011 between Newton Schwartz and Mark Cheffo. The Schwartz firm also approved a report filed with this Court on November 24, 2010 that claimed the Schwartz firm had "been reviewing [its] files over the last few weeks to determine whether [it] will seek to dismiss or withdraw from the representation of certain Plaintiffs." (Joint List of Intended Dec. Deps. [3133].) A joint report was also submitted on January 25, 2011 that confirmed "the Schwartz firm's representations that it is dismissing or withdrawing from all but approximately 35 of its cases." (Joint Dep. List for Feb. [3264], at 1 fn. 1.) If the Schwartz firm now wishes to recant, it should do so without blaming Mr. Stegall, whose representations at the February 11, 2011 conference were consistent with the message coming from all levels of the

Schwartz firm for many months.

### C. The Magistrate Judge's Rulings Were Reasonable Under The Circumstances

Pfizer has been significantly prejudiced by its reasonable reliance on the Schwartz firm's representations that it would soon be dismissing many of its cases. Because Pfizer does not know with certainty which cases will be voluntarily dismissed or subject to withdrawal, its efforts to coordinate discovery have been frustrated. Considerations about which cases will go forward affect Pfizer's allocation of resources. As of April, Pfizer's counsel does not know which cases it should collect records for, which depositions should proceed, which prescribing physicians should be subpoenaed, or which case-specific materials should be produced. It is inappropriate for Plaintiffs to force Pfizer to conduct burdensome discovery in cases that the Schwartz firm knows, or anticipates, it will dismiss. Even after years of litigation, the number of cases that the Schwartz firm intends to pursue continues to fluctuate. Not only does that uncertainty affect Pfizer's allocation of resources, it also prevents the Court from crafting a sensible plan for discovery.

Given those considerations, along with the repeated representations from the Schwartz firm, it was reasonable for Magistrate Judge Sorokin to issue a Scheduling Order to establish a cutoff date on which the Schwartz firm must withdraw from cases and present a list of cases that it intends to dismiss so that the parties can move forward with discovery timely and efficiently. It was likewise reasonable and necessary for Magistrate Judge Sorokin to issue subsequent a Order to enforce the deadlines in that February 11, 2011 Scheduling Order. The basic purpose of the Court's Scheduling Order was to ascertain, as soon as possible, which cases would be going forward – and which would be dismissed or subject to withdrawal – so that the Court and the parties could formulate an efficient discovery plan that might alleviate the waste of discovery resources on cases that would be dismissed regardless. Magistrate Judge Sorokin did not require that any case be dismissed; he only set deadlines by which the Schwartz firm should file a list of cases that it did not intend to pursue, or move to withdraw from representation.

Contrary to the Schwartz firm's mischaracterizations, Magistrate Judge Sorokin has

never required a "quota" of dismissed cases. Magistrate Judge Sorokin did not dismiss a single case, require that the Schwartz firm withdraw from any case, or a set number of cases that may proceed. In fact, even in Pfizer's recent motion for sanctions for the Schwartz firm's failure to comply with Orders of the Magistrate Judge, Pfizer does not argue that any specific cases should be dismissed. Rather, Pfizer asks the Court to order the Schwartz firm and individual Plaintiffs to submit updated certifications affirming that each case is sufficiently meritorious to go forward.

Instead of providing the requested explanation for its previous failures to comply, the Schwartz firm raises vague arguments that are totally inapposite to the present situation. For instance, it claims, without any supporting citations, that Magistrate Judge Sorokin's Orders somehow constitute "a deprivation of both procedural and/or substantive due process of law and rights and privileges." (Schwartz Objections [3389], at 5.) Apparently suggesting that this Court should modify its expectations regarding the efficient management of this litigation, the Schwartz firm generally refers to the "ongoing 35 years of litigation" in *In re Agent Orange Product Liability Litigation*, 818 F.2d 149 (2d Cir. 1987), as well as the *Vioxx* litigation. (*Id.* at 4, 5-6.) None of those examples, however, pertain in any way to the present case. Here, Magistrate Judge Sorokin set deadlines for the Schwartz firm to accomplish a particular task it has promised for months to complete, but the Schwartz firm has repeatedly failed to comply with the Court's Orders or provide a legitimate excuse for its failure. While Magistrate Judge Sorokin has not yet imposed sanctions for the Schwartz firm's willful failures to comply with his Orders, he would be well within his discretion to do so. *See, e.g.*, *Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este*, 456 F.3d 272, 275 (1st Cir. 2006) (noting that "federal courts possess wide-ranging power to sanction parties who repeatedly balk at complying with court-imposed deadlines"); *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002) (stating that "disobedience of court orders, in and of itself, constitutes extreme misconduct . . . ."). As such, Magistrate Judge Sorokin has not committed clear error or misapplied the law.

### D.     The Schwartz Firm's Arguments Highlight The Need For A Renewed Certification Process

Contrary to its prior representations, the Schwartz firm now argues that it cannot "ascertain reasonably certain or finally the merits of each case on its own facts to eliminate, withdraw and dismiss." (Schwartz Objections [3389], at 9.)  But that claim is belied by the long-standing orders of this Court, the parties' experience in this litigation, and the basic requirements under the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 11 imposes an initial and continuing duty on attorneys to conduct a reasonable investigation ensuring that that the factual and legal contentions in the complaint and subsequent filings have evidentiary support.

Additionally, pursuant to this Court's prior Certification Order, the Schwartz firm had a duty to investigate these cases and dismiss those that were not sufficiently meritorious years ago. (*See* CMO & Order Re: Mots. to Withdraw [949], at 2-3 (explaining that its certification requirement was designed "to ensure efficient case management").)  Despite the Court's prior Certification Order, circumstances now suggest that the Schwartz firm conducted, at best, an extremely limited investigation of its cases.  Several Schwartz Plaintiffs testified that they met their attorney *for the first time* on just the day before their depositions. (*See, e.g.*, Ex. H, Bellino Dep. at 10:10-17 (agreeing that the day before the deposition was "the first time that [she] met with any lawyer about this lawsuit that [she] filed"); Ex. I, Brazell Dep. at 13:9-24 (agreeing that the evening before the deposition was "the first time [she] met with Mr. Lo or anybody from Mr. Lo's law firm"); Ex. J, Davis Dep. at 10:19-11:19 (agreeing that the day before the deposition was "the first time [she] met with a lawyer relating to this lawsuit").)  It also appears that the Schwartz firm has made only superficial efforts to collect and review Plaintiffs' medical records. (*See, e.g.*, Ex. K, 11/18/10 M. Train letter (explaining that "the evidence in the medical records establish that Mr. Williams has no cognizable claim against Pfizer"); Ex. L, 2/7/11 C. Stevens letter (noting that "it is plain from Ms. Gann's allegations and the medical records produced, that there is no legitimate claim against Pfizer").)  For these and other reasons, Pfizer requested in its

recent motion for sanctions that the Court establish a new certification process for the Schwartz firm that requires both attorney certifications and Plaintiff declarations. The proposed certification procedures would incentivize the Schwartz firm to properly investigate and evaluate its cases, and would ensure that both counsel and clients are aware of their responsibilities and the consequences for pursuing a groundless suit.

Moreover, the Schwartz firm's perceptions of its ethical duties to its clients do not relieve it of its responsibilities to this Court. Zealous advocacy does not include the pursuit of groundless claims or the agglomeration of cases in hopes of gaining settlement leverage. Contrary to the Schwartz firm's assertions, other firms in this multidistrict litigation have been able to evaluate their cases and dismiss those lacking a reasonable basis (or withdraw from cases where compelled by Rule 11) without offense to their ethics. Excluding Boone and Schwartz, 49 cases have been voluntarily dismissed and attorneys have moved to withdraw in another 22 – just in the course of the past year.

The Schwartz firm misses the point when it claims that depositions need to be taken in these cases before it can be determined whether they lack merit or are "duds." The Schwartz firm had an obligation to investigate these cases at the outset, and over the course of the years that they have been pending. The Schwartz firm was required, at minimum, to conduct a basic investigation by, for example, interviewing Plaintiffs and reviewing their medical records, sooner than the night before a Plaintiff's deposition. It was far from clear error for Magistrate Judge Sorokin to set a timeframe for the Schwartz firm to review its remaining cases and make a basic determination as to which ones actually merit pursuing, based on its representations that it was doing so already.

## III.   The Motion To Reinstate Cases Should Be Denied

Citing to no procedural rule or legal precedent, the Schwartz firm seeks to revisit the Court's January 3, 2011 Order, [3202], dismissing 6 Plaintiffs, along with others. While the Schwartz firm submits a variety of unsupported excuses for those Plaintiffs' failure to comply

with discovery, which led to dismissal of their cases, the Court need not consider these issues *five months* after Pfizer first raised them in its motion to dismiss filed on December 7, 2010, especially where the Schwartz firm failed even to oppose that motion.  (*See* Mot. to Dismiss [3148].)

The Court's December 6, 2010 Order provided that, where Plaintiffs "failed to comply with discovery deadlines by failing to produce any discovery, Defendants may file a motion to dismiss for lack of prosecution and/or failure to obey the Court's orders."  (Dec. 6, 2010, Scheduling Order [3141], at ¶ 5; *see also id.* at ¶ 6 (explaining that "paragraph 5's admonitions apply fully to the Schwartz cases as well").)  In accordance with that Order, Pfizer filed a motion to dismiss certain Plaintiffs, and the Schwartz firm neither opposed Pfizer's motion nor sought an extension of time to respond.  The Court granted Pfizer's motion as unopposed, and the Schwartz firm made no objections to that ruling at the time.

The only explanation the Schwartz firm now provides for its failure to oppose Pfizer's motion to dismiss is as follows:  "Schwartz party attorneys had then adopted, for better or worse, a 'go along to get along' relation [sic] with Pfizer's counsel."  (Schwartz Objections [3389], at 6.)  While it is not clear what the Schwartz firm is trying to articulate, certainly the Schwartz firm is not asserting that it allowed the claims of 6 Plaintiffs to be dismissed with prejudice in the name of collegiality.  Its vague excuse for not responding to Pfizer's motion to dismiss these cases does not constitute justifiable neglect or any other legitimate excuse that would merit revisiting the Court's January 3, 2011 Order dismissing these cases.  Nothing about Pfizer's relationship with the Schwartz firm would have prevented it from responding to a motion to dismiss.  Thus, there is no basis for reinstating these cases or reconsidering issues that the Schwartz firm failed to timely raise, and the motion to reinstate these cases should be denied.

## **CONCLUSION**

For the reasons stated above, the Court should deny the Schwartz firm's Objections and motion to reinstate claims of dismissed Plaintiffs.

Dated: April 8, 2011

        Respectfully submitted,

        SKADDEN, ARPS, SLATE, MEAGHER
          & FLOM LLP

        By: /s/ Mark S. Cheffo
            Mark S. Cheffo

        Four Times Square
        New York, NY 10036
        Tel: (212) 735-3000
        Mark.Cheffo@skadden.com

        ROPES & GRAY LLP

        By: /s/ Lisa M. Ropple
            Lisa M. Ropple
            BBO # 555401

        Prudential Tower
        800 Boylston Street
        Boston, MA 02199-3600
        Tel: (617) 951-7000

        *Attorneys for Defendants Pfizer Inc and*
        *Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on April 8, 2011.

        /s/ Lisa M. Ropple
        Lisa M. Ropple