UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                                    :
In re:  NEURONTIN MARKETING, SALES           : MDL Docket No. 1629
        PRACTICES, AND PRODUCTS              :
        LIABILITY LITIGATION                 : Master File No. 04-10981
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             : Judge Patti B. Saris
                                             :
THIS DOCUMENT RELATES TO:                    :
                                             : Magistrate Judge Leo T.
AETNA, INC. v. PFIZER INC., 04 CV 10958 (PBS): Sorokin
                                             :
                                             : [LEAVE TO FILE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x  GRANTED ON 4/12/11]
```

**DEFENDANTS' SURREPLY MEMORANDUM IN
OPPOSITION TO AETNA, INC.'S MOTION TO ALTER OR
AMEND THE JUDGMENT PURSUANT TO FED. R. CIV. P. 59(E)**

Mark S. Cheffo
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Tel: (212) 735-3000


Lisa M. Ropple
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

## TABLE OF CONTENTS

                                                                                                             Page

TABLE OF AUTHORITIES ................................................................................................ii

SUMMARY OF ARGUMENT .............................................................................................1

ARGUMENT.........................................................................................................................2

I.     Aetna's Attempt To Distinguish *Hemi Group* Relies On Flawed Reasoning And An Inapposite Case..........................................................................................................2

II.    Aetna Continues To Ignore The Overwhelming Weight Of Precedent That Supports This Court's Decision To Grant Defendants' Motion For Summary Judgment As To Aetna ........................................................................................................6

III.   Aetna Has Not Identified Any Newly Discovered Evidence To Demonstrate That This Court's Factual Findings Were Incorrect................................................................11

CONCLUSION.....................................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ....................2

*BCS Services, Inc. v. Heartwood 88, LLC*, ___ F.3d ____, 2011 WL 1045853 (7th Cir. Mar. 24, 2011).................... 1, 3, 4

*Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008).................... 1,2, 6

*Couch v. Cate*, 379 F. App'x 560 (9th Cir. May 14, 2010).................... 2, 6

*DDR Construction Services, Inc. v. Siemens Industry, Inc.*, ___ F. Supp. 2d __, 2011 WL 982049 (S.D.N.Y. Mar. 22, 2011) .................... 3, 6

*Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003) ....................7

*District 1199P Health & Welfare Plan v. Janssen*, L.P., No. 10-2021, 2011 WL 1086004 (D.N.J. Mar. 21, 2011)....................6

*Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010) .................... 1,2, 3, 4, 5, 6

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992)....................2

*Hood ex rel. Mississippi v. Eli Lilly & Co.* (In re Zyprexa Products Liability Litigation), 671 F. Supp. 2d 397 (E.D.N.Y. 2009).................... 8, 10

*Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*, __ F.3d __, 2011 WL 833222 (11th Cir. Mar. 11, 2011).................... 8, 9, 10

*Matrixx Initiatives, Inc. v. Siracusano*, ___ S. Ct. ___, 2011 WL 977060 (Mar. 22, 2011)..........4

*McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) ....................7

*In re Neurontin Marketing Sales Practices & Products Liability Litigation*, 618 F. Supp. 2d 96 (D. Mass. 2009) ....................5

*In re Neurontin Marketing, Sales Practices & Products Liability Litigation*, 257 F.R.D. 315 (D. Mass. 2009) ....................5

*In Re Neurontin Marketing, Sales Practices, & Products Liability Litigation*, 433 F. Supp. 2d 172 (D. Mass. 2006) ....................7

*Palmer v. Champion Mortgage*, 465 F.3d 24 (1st Cir. 2006)....................1

*In re Pharmaceutical Industry Average Wholesale Price Litigation*, 582 F.3d 156 (1st Cir. 2009) ....................10

*Phoenix Bond & Indemnity Co. v. Bridge*, Nos. 05 C 4095, 07 C 1367,
      2010 WL 3526469 (N.D. Ill. Sept. 1, 2010) , *rev'd sub nom. by BCS Services, Inc. v. Hartwood 88, LLC*, __ F.3d __, 2011 WL 1045853 (7th Cir. Mar. 24, 2011) ...................3

*In re Rezulin Products Liability Litigation*, 524 F. Supp. 2d 436 (S.D.N.Y. 2007).......................7

*In re Rezulin Products Liability Litigation*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005).......................7

*UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010) , *petition for cert. filed*, No. 10-1173, 2011 WL 110986 (U.S. Mar. 25, 2011)............................................................8

*United Food & Commercial Workers Central Pennsylvania & Regional Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255 (9th Cir. 2010) .......................8

*United States v. McMillan*, 600 F.3d 434 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 504 (2010)..................................................................................................................................4

*In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Products Liability Litigation*, MDL No. 2100,
      §2010 WL 3119499 (S.D. Ill. Aug. 5, 2010) ....................................................................7

*In re Zyprexa Products Liability Litigation*, 253 F.R.D. 69 (E.D.N.Y. 2008)...............................8

*In re Zyprexa Products Liability Litigation*, 493 F. Supp. 2d 571 (E.D.N.Y. 2007)......................8

**STATUTES AND RULES**

Fed. R. Civ. P. 59(e)........................................................................................................ 1, 11

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer" or "Defendants") hereby submit this surreply memorandum in opposition to Aetna, Inc.'s Motion to Alter or Amend the Judgment Pursuant to Fed. R. Civ. P. 59(e).  For the reasons discussed below, that motion should be denied.

## SUMMARY OF ARGUMENT

Over a year after this Court granted Pfizer's motion for summary judgment, Aetna moved to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), without even addressing the relevant standard under Rule 59.  Aetna did not identify any newly discovered evidence or new authority.  Instead, it simply recycled arguments that this Court rejected when it granted Defendants' motion for summary judgment on January 8, 2010 (1/8/10 Mem. & Order [2309]) and ***rejected again*** on December 10, 2010, ***after the Kaiser trial***, when the Court granted Pfizer's motion for summary judgment as to each of the putative class representative Third Party Payors ("TPPs") (12/10/2010 Mem. [3154]).  In its reply, Aetna ignores virtually all of the arguments and authorities discussed in Pfizer's opposition.  Indeed, as in its opening memorandum, Aetna  refuses even to acknowledge the existence of this Court's December 10, 2010 decision.  Instead, Aetna devotes the lion's share of its reply to discussing a recent Seventh Circuit decision, post-dating Pfizer's opposition, which reversed one summary judgment case that Pfizer only tangentially mentioned in two sentences of its 20-page opposition.

Plaintiffs cannot satisfy their burden to show that this Court committed a manifest error of law,[1] by reliance on *BCS Services, Inc. v. Heartwood 88*, *LLC*, ___ F.3d ____, 2011 WL 1045853 (7th Cir. Mar. 24, 2011), the latest case in the litigation that led to the Supreme Court's decision in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), to which this Court gave due consideration in its summary judgment decision in January 2010, and which has since been clarified by *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010).  (*See* 1/8/10 Mem. & Order at 21, 31 (discussing *Bridge*).)  The Seventh Circuit's more recent decision in a

---

[1] *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006).

factually dissimilar case does not change the fact that this Court's grant of summary judgment against Aetna was supported by overwhelming precedent involving more similar claims – including a long line of cases brought by TPPs seeking to recover amounts paid for off-label prescriptions. Furthermore, the <u>relevant</u> recent case law has only lent further support to this Court's decision.

For the reasons discussed in Defendants' opening opposition brief, and as further discussed below, Aetna's motion should be denied.

## ARGUMENT

### I. Aetna's Attempt To Distinguish *Hemi Group* Relies On Flawed Reasoning And An Inapposite Case

At the time it granted Defendants' motion for summary judgment as to Aetna, the Supreme Court had yet to issue its opinion in *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010), in which it reiterated its prior holdings in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992), and *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006), and clarified the relation between those two decisions and its decision in *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S. Ct. 2131 (2008). *See Couch v. Cate*, 379 F. App'x 560, 565 (9th Cir. 2010) ("The Supreme Court recently clarified that [RICO] proximate cause requires '"some direct relation between the injury asserted and the injurious conduct alleged"' and explicitly rejected forseeability as a standard for determining proximate causation.") (citations omitted). As one court recently explained:

> [T]he Supreme Court's January 2010 decision in [*Hemi Group*] makes absolutely clear what is required to establish proximate cause in the RICO context, and what fails to meet that requirement.
>
> . . . .
>
> . . . *Hemi Group* establishes twin requirements for RICO proximate causation: (1) the injury alleged must, generally, be the "first step" harm caused by the conduct invoked. [*Hemi Group*, 130 S. Ct.] at 989 (the "general tendency of the law, in regard to damages at least, is *not to go beyond the first step*." (emphasis added)). And (2) the alleged conduct must be "directly responsible" for the harm alleged rather than simply allowing that harm to come about more easily. *Id.* at 990.

*DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, ___ F. Supp. 2d ___, 2011 WL 982049, at \*13-14 (S.D.N.Y. Mar. 22, 2011).

In an attempt to blunt the impact of *Hemi Group*, Aetna places great reliance on the Seventh Circuit's decision in *BCS Services, Inc. v. Heartwood 88, LLC*, ___ F.3d ____, 2011 WL 1045853 (7th Cir. Mar. 24, 2011). However, *BCS Services* does not represent new authority in the sense contemplated by Rule 59, nor does it involve facts that are even remotely analogous to the instant case. *BCS Services* is the latest decision in the same litigation that led to the Supreme Court's decision in *Bridge*. *See* 2011 WL 1045853, at \*1. In *Hemi Group*, the Supreme Court described and distinguished the very narrow fact pattern at issue in *Bridge*, which involved competing bidders at a tax lien auction. As the Supreme Court explained:

> A losing bidder alleged that a competitor had defrauded the county by employing shadow bidders to secure a greater proportion of liens than it was due. . . . Because of the zero-sum nature of the auction, and because the county awarded bids on a rotational basis, each time a fraud-induced bid was awarded, a particular legitimate bidder was necessarily passed over.

*Hemi Group*, 130 S. Ct. at 992 (citation omitted). "[T]here were 'no independent factors that account[ed] for [the plaintiff's] injury." *Id.* (alteration in original; citation omitted). Back in the district court, the evidence showed that bids were not awarded on a rotational basis, but a random basis. Believing that the more complex bid process altered the proximate cause analysis, the district court granted summary judgment to the defendants. *See Phoenix Bond & Indem. Co. v. Bridge*, Nos. 05 C 4095, 07 C 1367, 2010 WL 3526469, at \*6 (N.D. Ill. Sept. 1, 2010), *rev'd sub nom. by BCS Servs., Inc. v. Hartwood 88, LLC*, __ F.3d __, 2011 WL 1045853 (7th Cir. Mar. 24, 2011).[2] On appeal, the Seventh Circuit concluded that the difference between rotational and random awards of liens did not render the chain of causation indirect. *See BCS Servs.*, 2011 WL 1045853, at \*6 ("The only intermediate cause and effect pair was the raising of hands (cause)

---

[2] When discussing *Bridge*, Defendants, in the space of two sentences, described the subsequent proceedings in that case post-*Hemi Group*. Defendants did not "herald" the decision (Pls' Reply at 1). The focus of Defendants' argument was the Supreme Court's decision in *Hemi Group*, not a district court opinion in a factually inapposite case.

3

and the auctioneer's determination of the winning bid (effect) . . . .").[3]

As an initial matter, when this Court granted Defendants' motion for summary judgment as to Aetna, it fully considered the Supreme Court's decision in *Bridge* (1/8/10 Mem. & Order at 21, 31), and did so without the benefit of the Supreme Court's later decision in *Hemi Group*. *BCS Services*, therefore, does not represent new authority that requires this Court to revisit its decision under the standards governing Rule 59 motions.

Moreover, as much as Aetna strains to analogize itself to the tax bidders in *Bridge/BCS Services*, the Supreme Court's discussion in *Hemi Group* makes clear that the fact pattern in *Bridge/BCS Services* bears no resemblance to the instant case. Unlike *Bridge/BCS Services*, where the Seventh Circuit noted that cause and effect was essentially instantaneous, it is undisputed that causation in this case depends on the "independent actions of third and even fourth parties," *Hemi Group*, 130 S. Ct. at 992 – most notably the independent decision by thousands of physicians to prescribe Neurontin. Because "[m]ultiple steps . . . separate the alleged fraud from the asserted injury," *id.* at 992, proximate cause is lacking.[4]

This Court has recognized and the parties have agreed that the prescribing decisions of physicians are essential links in the chain of causation. Aetna could not sustain an injury simply by placing Neurontin on formulary. Unless a physician was induced by fraudulent marketing to prescribe Neurontin for an ineffective off-label use, there could be no injury. It is not, therefore,

---

[3] The Seventh Circuit further explained that, statistically, random and rotational selection should yield approximately the same results over a sufficiently large sample size. *See BCS Servs.*, 2011 WL 1045853, at *10. The Seventh Circuit's comparison of random versus rotational selection was not an endorsement of the use of aggregate evidence in a case such as this.

[4] Aetna's reliance on *Matrixx Initiatives, Inc. v. Siracusano*, ___ S. Ct. ___, 2011 WL 977060 (Mar. 22, 2011) (Pls' Reply at 4) is even more misplaced. *Matrixx* was not a RICO case and did not address the use of aggregate statistical evidence by a plaintiff to satisfy its burden to prove causation, injury and/or reliance. Instead, the Supreme Court was referring to scientific evidence that a drug produces a certain adverse effect. *See id.* at *9. Even as to that question, the Court noted: "We need not consider whether the expert testimony was properly admitted in those cases, and we do not attempt to define here what constitutes reliable evidence of causation." *Id.*

*United States v. McMillan*, 600 F.3d 434 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 504 (2010) (Pls' Reply at 8 n.6) is equally inapt. *McMillan* concerned a criminal prosecution for mail fraud, not a civil RICO action.

simply a question of intervening or superseding cause, as Aetna claims. (Pls' Reply at 8.) The decisions of prescribing physicians are essential links in a causal chain that must be proven by Aetna – not Defendants. Even under a theory predicated on third-party reliance, Aetna would still have to show that specific, individual physicians relied on alleged misrepresentations by Defendants when making prescribing decisions. Absent such evidence, Aetna is left with an impermissible fraud-on-the-market theory. *See In re Neurontin Mktg. Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 111-12 (D. Mass. 2009). And this Court has repeatedly recognized that a variety of factors influence the prescribing decisions of treating physicians. (12/10/2010 Mem. at 24). *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 330 & n.9 (D. Mass. 2009). Thus, Aetna's attempt to analogize this case to *BCS Services* (Pls' Reply at 7-8) fails on this basis as well.

Aetna also attempts to dismiss *Hemi Group* as a plurality decision and urges this Court to adopt instead the dissent's "foreseeability" approach. (Pls' Reply at 6-7.) Rejecting that argument, Chief Justice Roberts explained in *Hemi Group*:

> The dissent would have RICO's proximate cause requirement turn on foreseeability, rather than on the existence of a sufficiently "direct relationship" between the fraud and the harm. It would find that the City has satisfied that requirement because "the harm is foreseeable; it is a consequence that Hemi intended, indeed desired; and it falls well within the set of risks that Congress sought to prevent." If this line of reasoning sounds familiar, it should. It is precisely the argument lodged against the majority opinion in *Anza*. There, the dissent criticized the majority's view for "permit[ting] a defendant to evade liability for harms that are not only foreseeable, but the *intended* consequences of the defendant's unlawful behavior." But the dissent there did not carry the day, and no one has asked us to revisit *Anza*.

*Hemi Group*, 130 S. Ct. at 991 (citations omitted). Chief Justice Roberts further explained:

> [T]he City cannot escape the proximate cause requirement merely by alleging that the fraudulent scheme embraced all those indirectly harmed by the alleged conduct. Otherwise our RICO proximate cause precedent would become a mere pleading rule. In *Anza*, for example, Ideal alleged that National's scheme "was to give National a competitive advantage over Ideal." But that allegation did not prevent the Court from concluding that National's fraud directly harmed only the State, not Ideal. As the Court explained, Ideal could not "circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense."

5

*Id.* (citations omitted).[5]  Justice Roberts was joined by Justices Scalia, Thomas and Alito.  Justice Ginsburg concurred, indicating that she would decide the case on more narrow grounds, but she did not join the three dissenting justices.  *See id.* at 994-95 (Ginsburg, J., concurring).

As Justice Roberts makes clear, the result in *Hemi Group* was compelled by the Court's prior decisions in *Holmes* and *Anza*, neither of which was overruled by *Bridge*.  Indeed, while holding that first-party reliance was not always required, the Supreme Court in *Bridge* recognized that "the absence of first-party reliance may in some cases tend to show that an injury was not sufficiently direct to satisfy § 1964(c)'s proximate-cause requirement." *Bridge*, 553 U.S. at 659.  While foreseeability is <u>necessary</u> to proximate cause,[6] it is not <u>sufficient</u>.  As the Ninth Circuit recently observed:  "*Hemi Group* definitively foreclosed RICO liability for consequences that are only foreseeable without some direct relationship."  *Couch*, 379 F. App'x at 566; *see also District 1199P Health & Welfare Plan v. Janssen, L.P.*, No. 10-2021, 2011 WL 1086004, at *11 (D.N.J. Mar. 21, 2011) (citing *Hemi Group* and observing:  "Equally unpersuasive is [the] argument [made by third-party payors] that they are the intended, foreseeable victim of Defendants' conduct."); *DDR Constr. Servs.*, 2011 WL 982049, at *15 (noting that the Supreme Court rejected a foreseeability test in *Hemi Group*).

## II. Aetna Continues To Ignore The Overwhelming Weight Of Precedent That Supports This Court's Decision To Grant Defendants' Motion For Summary Judgment As To Aetna

As discussed in Defendants' opening opposition brief, at the time it was decided, this Court's decision granting summary judgment as to Aetna was consistent with the overwhelming weight of precedent developed by Courts that have carefully considered – and rejected – similar

---

[5] Aetna makes an argument similar to the one rejected in *Hemi Group* and *Anza* when it argues that "[l]ike Kaiser, Aetna also appeared on Defendants' list of "Top 10 HMOs Targeted for Neurontin." (Pls' Reply at 2 n.2.)  While Defendants dispute the sufficiency of Kaiser's evidence of direct reliance, it clearly was not limited to the cited document (TX 90, mistakenly cited as TX 11), which discusses the positioning of Neurontin "to neurologists as an excellent add-on AED for epilepsy patients not well controlled on their current AEDs," an on-label use.

[6] No more than this can be read into *Bridge*'s use of the word "foreseeable."  *Bridge* did not overrule either *Holmes* or *Anza*.

6

claims by TPPs seeking to recover for alleged off-label marketing of prescription medicines. (*See* Defs' Mem. [3369] at 10.) Following this Court's January 2010 decision, the Southern District of Illinois added its voice to the chorus of district courts (seven in all) that have rejected these types of claims. *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 WL 3119499, at *9 (S.D. Ill. Aug. 5, 2010).

Indeed, Aetna had attempted to distinguish itself from the foregoing decisions in order to avoid dismissal by alleging that it was pursuing a theory similar to the one described by the Second Circuit in *Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003).[7] In *Desiano*, however, the Second Circuit was careful to note that the plaintiff TPPs alleged an injury based on direct reliance. *See* 326 F.3d at 349. After the record was further developed in *Desiano*, it became apparent that the TPPs had not even controlled their formularies, much less made formulary decisions based upon direct representations from the defendant. Thus, their claims were dismissed on summary judgment. *See In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 603-06 (S.D.N.Y. 2005); *see also In re Rezulin Prods. Liab. Litig.*, 524 F. Supp. 2d 436, 441-42 (S.D.N.Y. 2007) (granting summary judgment dismissing claims by government TPP and holding that, in the absence of direct reliance, plaintiff was pursuing an impermissible fraud-on-the-market theory). So, too, in this case, in its January 2010 decision, this Court discussed the direct injury requirement of *Desiano* (1/8/10 Mem. & Order at 28) and distinguished Kaiser from Aetna by noting that "[t]hese activities represent direct interaction between Kaiser and Pfizer, providing the evidence of causation alluded to by the Desiano court." (*Id.* at 29.)

Following *Desiano*, the Second Circuit decided *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), which this Court correctly cited in support of the proposition that, in the absence of a direct injury, aggregate evidence of an alleged widespread marketing scheme is insufficient to meet a plaintiffs' burden of proof. (1/8/10 Mem. & Order at 25.) Once again,

---

[7] *See In Re Neurontin Mktg., Sales Practices, & Prods. Liab. Litig.*, 433 F. Supp. 2d 172, 185-86 (D. Mass. 2006) (discussing *Desiano*).

7

developments in the law following this Court's January decision bolster its reasoning. In September 2010, the Second Circuit's opinion in *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010) ("*UFCW*"), *petition for cert. filed*, No. 10-1173, 2011 WL 110986 (U.S. Mar. 25, 2011) vacated one of the key decisions that plaintiffs had relied upon, reversed another,[8] and firmly closed the door on the only theory (price inflation) left open by Judge Weinstein in his decision in *Zyprexa III*,[9] where he rejected the use of aggregate proof in a case brought by a government TPP.

The Ninth and Eleventh Circuits have also affirmed dismissal of claims by TPPs alleging that prescription drugs were fraudulently marketed off-label. The Ninth Circuit held that the alleged injuries were too indirect to satisfy RICO's proximate cause requirement. *See United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th Cir. 2010). The Eleventh Circuit held that the plaintiffs failed to state a cognizable injury since prescribing trends should be anticipated by actuaries employed by TPPs and captured when setting premiums. *See Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, __ F.3d __, 2011 WL 833222, at *7-9 (11th Cir. Mar. 11, 2011). Both courts rejected the notion that the defendants owed a duty to disclose to TPPs. *See Amgen*, 400 F. App'x at 257; *Ironworkers*, 2011 WL 833222, at *8 n.33.

Aetna's only rejoinder to this long line of cases involving similar plaintiffs asserting similar claims to its own is that the cases are "out-of-circuit." (Pls' Reply at 4.) However, the Court is not presented with a few aberrant decisions from a handful of courts. Instead, for varied, but related and overlapping reasons, three federal circuit courts of appeal and seven district courts from all over the country have rejected claims by TPPs seeking to recover amounts paid for off-label prescriptions. This level of consensus among federal courts cannot be so easily

---

[8] The Second Circuit vacated in part *In re Zyprexa Products Liability Litigation*, 493 F. Supp. 2d 571 (E.D.N.Y. 2007) ("*Zyprexa I*") (denying summary judgment) and reversed *In re Zyprexa Products Liability Litigation*, 253 F.R.D. 69 (E.D.N.Y. 2008) ("*Zyprexa II*") (certifying a class).

[9] *Hood ex rel. Miss. v. Eli Lilly & Co.* (In re Zyprexa Prods. Liab. Litig.), 671 F. Supp. 2d 397 (E.D.N.Y. 2009) ("*Zyprexa III*").

brushed aside, especially when two of the decisions were authored by courts (the Second Circuit and Eastern District of New York) upon whose earlier decisions Aetna had previously heavily relied.[10]

The only one of the more recent cases identified in Defendants' opposition brief that Plaintiffs discuss at all is the Eleventh Circuit's decision in *Ironworkers*. Aetna begins by noting that two members of the panel joined in the majority decision, while the third filed a concurrence. (Pls' Reply at 8-9.) Significantly, the third judge did not disagree with the outcome, but believed that a simpler route to the same result was stated by the Second Circuit in *UFCW*. The *Ironworkers* concurrence, therefore, also supports this Court's decision granting summary judgment. Moreover, while the concurring judge did not join in the majority's opinion, she did not characterize it as "bizarre," as Aetna suggests (Pls' Reply at 9), or criticize its reasoning. *See Ironworkers*, 2011 WL 833222, at *10 (Martin, J., concurring).[11]

Further, Plaintiffs' discussion of *Ironworkers* misconstrues its holding. *Ironworkers* stands for the simple proposition that TPPs do not sustain a loss from increased prescribing or prescription costs because such prescribing patterns are anticipated by their actuaries and captured in the form of increased premiums. *See Ironworkers*, 2011 WL 833222, at *7-9.

---

[10] This Court is not faced with choosing between a majority and minority rule, as was Judge Marrero in the inapposite Martin Act case cited in Aetna's conclusion. Instead, courts have been nearly unanimous in rejecting claims by TPPs similar to those asserted by Aetna.

[11] The concurrence reads, in its entirety, as follows:

> I agree with the majority's conclusion that this action must be dismissed, but I concur specially to express my view that there is a much simpler reason why the appellees should prevail. As the Second Circuit explained in *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010), the independent decisions of the physicians and other intermediaries involved in Seroquel's allegedly increased usage and pricing eviscerates the chain of causation necessary to demonstrate a RICO violation. *See id.* at 134-36. I believe that these breaks in the chain of causation, which were conceded by the appellants in their complaint and at oral argument, dictate the result of this appeal. I therefore do not join the broader analysis of the majority opinion, and concur in the outcome only.

*Ironworkers*, 2011 WL 833222, at *10 (Martin, J., concurring). Pfizer discussed Judge Martin's concurrence in its opening memorandum. (Defs. Mem. at 7 n.4.)

9

Responding to *Ironworkers*, Aetna does not contend that it was unable to predict Neurontin prescriptions and set its premiums at an appropriate level to recoup its costs. It argues instead that it should be able to recover even if it had no net out-of-pocket loss because it has alleged that prescriptions were induced by fraud. (Pls' Reply at 9.) Aetna misses the point of the Eleventh Circuit's analysis. As the Eleventh Circuit explained, a TPP who wants to limit prescriptions to on-label or medically necessary uses has tools at its disposal to do so, such as pre-authorization. Where a TPP elects not to utilize such tools, but instead relies upon its ability to recoup prescription costs through premiums established by its actuaries, the TPP cannot recover from a defendant if it has no out-of-pocket losses or for losses that are the result of its own actuarial errors. *See Ironworkers*, 2011 WL 833222, at *7-9.[12]

Aetna restates, without discussion, its averment that this long line of TPP off-label marketing cases is inconsistent with *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 582 F.3d 156 (1st Cir. 2009) ("*AWP*"), *cert. dism'd*, 131 S. Ct. 60 (2010), a price inflation case. Of course, this Court was intimately familiar with all the proceedings in the *AWP* litigation at the time of its January 2010 summary judgment decision in this case, so it clearly does not constitute new authority sufficient to support altering or amending the judgment. Moreover, Aetna fails to respond to the analyses of *AWP* in Defendants' opposition brief (Defs' Mem. at 12-14) or Judge Weinstein's decision in *Zyprexa III*. *See* 671 F. Supp. 2d. at 446-49, 459-60.[13]

---

[12] That Aetna resorts to inapt examples involving direct injuries (Pls' Reply at 9) to distinguish *Ironworkers* only highlights its own lack of direct injury.

[13] Aetna argues that Defendants' omitted a quotation from *Zyprexa III*, where Judge Weinstein noted that a few courts had rejected the Individualized Proof Rule in certain cases. (Pls' Reply at 10 n.7.) One of the cases referred to by Judge Weinstein was *AWP*. Pfizer specifically noted Judge Weinstein's discussion of *AWP*, which he refused to extend beyond cases involving price inflation. (Defs' Mem. at 12-13.) The other case cited by Judge Weinstein was his own decision in *Zyprexa II*, which was also limited to a price inflation theory and subsequently reversed by the Second Circuit. In the portion quoted by Aetna, Judge Weinstein mentioned the Supreme Court's decision in *Bridge*, but later observed: "Bridge did not involve injuries to a class or to a large, diffuse population, and did not address the use of aggregate proof to show reliance, loss causation, or injury." *See Zyprexa III*, 671 F. Supp. 2d. at 444. Plaintiffs' continued reliance on decisions in the *Zyprexa* litigation is simply unfathomable after Judge Weinstein's decision in *Zyprexa III* and the Second Circuit's decision in *UFCW*.

10

### III.  Aetna Has Not Identified Any Newly Discovered Evidence To Demonstrate That This Court's Factual Findings Were Incorrect

In its opposition to Aetna's motion, Defendants noted that Aetna (1) had not presented any new evidence to dispute any of the court's factual findings in its January decision, and (2) admitted that it did not rely and could not have relied on anything Defendants said or did when it added Neurontin to its formulary in 1994.  (Defs' Mem. at 16-17.)[14]  Defendants also exposed the fallacy in Aetna's attempt to compare itself to Kaiser, and the fact that Aetna ignored this Court's own explanations in decisions that *preceded and followed* the Kaiser trial, of why Kaiser is different than other TPPs.  (*Id.* at 17-19.)  Defendants also addressed Aetna's reliance on *old* evidence from Mr. Brodeur.  (*Id.* at 19-20.)  In its reply, Aetna regurgitates its opening arguments, but fails to respond to Defendants' opposition brief.  Defendants will not repeat their prior arguments here, but refer this Court to their opening memorandum.

### CONCLUSION

For all of the foregoing reasons, Pfizer respectfully requests that the Court deny Aetna's Motion to Alter or Amend the Judgment Pursuant to Fed. R. Civ. P. 59(e).

---

[14] Aetna continues to rely on this Court's comment at the February 2, 2011, conference regarding "its earlier misunderstanding concerning how the formulary process worked."  (Pls' Reply at 2.)  But the Court made virtually the same comments at the September 18, 2009, summary judgment hearing. (9/18/2009 Tr. [2114] at 85:22-86:3.)  The Court elaborated on these comments at the October 15, 2009, hearing on Class Plaintiffs' motion for reconsideration.  (10/15/2009 Tr. [2190] at 31:19-34:3.)  The Court based these comments on Class Plaintiffs' so-called "Errata" brief [1827], filed on June 11, 2009, which made the same arguments regarding the typical formulary process that Aetna now reiterates nearly two years later.  (*See* 10/15/2009 Tr. [2190] at 27:12-13).  Any notion that the Court was unfamiliar with these arguments until after the Kaiser trial is spurious.

11

Dated: April 12, 2011                    Respectfully submitted,

                                                    SKADDEN, ARPS, SLATE,
                                                      MEAGHER & FLOM LLP

                                                  By:     /s/ Mark S. Cheffo
                                                          Mark S. Cheffo

                                                  Four Times Square
                                                 New York, NY 10036
                                                 Tel:  (212) 735-3000

                                                 ROPES & GRAY LLP

                                                 By:     /s/ Lisa M. Ropple
                                                          Lisa M. Ropple
                                                          BBO # 555401

                                                 Prudential Tower
                                                 800 Boylston Street
                                                 Boston, MA 02199-3600
                                                 Tel:  (617) 951-7000
                                                 Email:  lisa.ropple@ropesgray.com

                                                 *Attorneys for Defendants Pfizer Inc and*
                                                 *Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on April 12, 2011.

                                                       /s/ Lisa M. Ropple
                                                       Lisa M. Ropple