UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 <br><br> Master File No. 04-10981 <br><br> Judge Patti B. Saris <br><br> Magistrate Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO: *Barlow v. Pfizer Inc, et al.* Case No. 1:05-cv-11501-PBS | **LEAVE GRANTED ON APRIL 19, 2011** |

# REPLY IN FURTHER SUPPORT OF DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S DENIAL OF MOTION FOR AN ORDER PROHIBITING IMPROPER TACTICS DURING FACT WITNESS DEPOSITIONS AND IMPOSING SANCTIONS

Defendants Pfizer Inc and Warner-Lambert Company LLC (together, "Pfizer") submit this reply brief in further support of their Objection to Magistrate Judge's Denial of Motion for an Order Prohibiting Improper Tactics During Fact Witness Depositions and Imposing Sanctions.

Plaintiff's Response memorandum [3127] ignores most of the concerns raised in Pfizer's objection and mischaracterizes Pfizer's other arguments. For instance, Plaintiff provides no explanation for the inflammatory letter sent to Dr. Flowers telling him that he was a "victim" of Pfizer's "scheme." Nor does it attempt to provide a legitimate purpose for playing the cherry-picked video deposition of Dr. Glanzman. Plaintiff's Response does not explain how the use of internal company documents or a plea entered years after Plaintiff's Neurontin prescription was appropriate or how this could have even conceivably influenced her physician's treatment decisions. Finally, Plaintiff's Response fails to address Plaintiff's counsel's cumulative misconduct, which is aimed at frustrating Pfizer's ability to conduct a fair deposition of Dr. Flowers and – at the very least – demonstrates her counsel's disregard for the proper purpose of a deposition in favor of a mini-trial in which he attempts to tarnish the testimony of fact witnesses.

Instead of addressing the arguments actually raised in Defendants' motion, Plaintiff's Response veers off on a tangent about the relevance of evidence related to the promotion of Neurontin.  First, the issue is not whether such evidence would be admissible *at trial*, a question not at issue here.  Rather, the issue is whether certain questions and documents were appropriate for *this deponent*, a fact witness with a narrow scope of knowledge and connection to this case.  Dr. Flowers did not initially prescribe Neurontin to Mrs. Barlow, but continued a prescription by another doctor.  And he only treated her for a few months, from August of 2000 to December of 2000.  (*See* Flowers Dep. [3097-1] at 37:7-13.)

Contrary to what Plaintiff would have the Court infer, the underlying motion does not raise objections to her counsel's inquires into any alleged promotion **to Dr. Flowers** prior to him prescribing Neurontin for Mrs. Barlow.  Rather, the basis for Pfizer's motion is a pattern of improper discovery tactics employed by Plaintiff's counsel – tactics that no other attorney in this multi-district litigation has seen the need to employ – that are not intended to serve any discovery-related purpose and are intended only to bias the witness.  With regard to Dr. Flowers, the legitimate purpose of conducting his deposition was for the parties to obtain information about his treatment of Mrs. Barlow.  *See Garcia v. City of Springfield Police Dep't*, 230 F.R.D. 247, 249 (D. Mass. 2005) (explaining that a non-expert treating physician's testimony should be limited to his diagnosis and treatment of his patient).  None of Plaintiff's counsel's conduct described in Pfizer's motion was focused on that treatment or any other legitimate purpose.  Plaintiff's after-the-fact justifications (e.g., that her counsel played the misleadingly-edited video in order to find out how Dr. Glanzman's testimony would have affected Dr. Flowers' prescribing decision) are obvious subterfuges.

Plaintiff further mischaracterizes several other aspects of Pfizer's objection.  Although he knows it is not the case, Plaintiff's counsel disingenuously claims that Pfizer is seeking to have "Mrs. Barlow's counsel and all MDL plaintiffs' counsel submit their proposed deposition questions and exhibits in advance for the defendant to get a ruling before the deposition." (Pl.'s Response [3127], at 2.)  That is a knowing misrepresentation of Pfizer's position.  Pfizer has

2

never requested anything that even resembles such a remedy.  Indeed, Pfizer wants to avoid a "circus" atmosphere during the depositions of physicians – an atmosphere created only by Plaintiff's counsel in this case.

Moreover, Plaintiff incorrectly claims that the record shows Dr. Glanzman's video testimony and the internal Pfizer documents "would have affected [Dr. Flowers'] decision to prescribe Neurontin for Mrs. Barlow." (*Id.* at 4.)  Quite the opposite of Plaintiff's assertion, Dr. Flowers explicitly testified that he does *not* consider internal company documents or the testimony of pharmaceutical company employees when making prescribing decisions. (Flowers Dep. [3097-1] at 170:21-171:18.)  Further, Dr. Flowers testified that had success treating bipolar patients with an anxiety component before he saw Mrs. Barlow and that he still prescribes Neurontin for such patients today. (Ex. A, Flowers Dep. at 132:1-135:20.)

Furthermore, Plaintiff misstates Pfizer's arguments at the *Bulger* pre-trial hearing by claiming that Pfizer had asserted plaintiffs must ask the treating physician about the guilty plea for it to be admissible. (Pl.'s Response at 3.)  That is a complete distortion of the argument; Pfizer's attorney simply noted that the attorneys in *Bulger* did not ask the prescribing physicians whether they had relied on any marketing or advertising activities by Pfizer.  Pfizer does not object to questioning Dr. Flowers regarding his *personal* exposure to marketing.  Pfizer objected to asking Dr. Flowers hypothetical questions that were far beyond his personal experience.

Plaintiff is also incorrect as a matter of law when she argues that this Court lacks a legal basis to sanction and deter her counsel's improper discovery conduct intended to taint a fact witness's testimony.  Federal Rule of Civil Procedure 30(d)(2) provides that "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent."  The court also has the "inherent power to manage its own proceedings and to control the conduct of litigants who appear before it through orders or the issuance of monetary sanctions for bad-faith, vexatious, wanton or oppressive behavior."  *Strahan v. Simon Property Group, Inc.*, No. 08-cv-10764, 2008 WL 5273684, at *1 (D. Mass. Dec. 11, 2008) (citing *United*

*States v. Kouri-Perez*, 187 F.3d 1, 6-8 (1st Cir. 1999)).  Other courts have imposed sanctions in similar situations where attorneys communicated with non-party fact witnesses, even though the representations were factually true, for no other purpose than to "influence these witnesses not to cooperate with defendant's counsel" and thereby "gain a tactical advantage." *Parker v. Upsher-Smith Labs, Inc.*, No. 3:06-cv-0518, 2009 WL 418596, at *4, *8 (D. Nev. Feb. 18, 2009); *see also In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005) (finding that courts have supervisory authority to prevent parties from engaging in "'misleading communications'" with putative class members, including biased, one-sided accounts that "omit[] critical information") (citation omitted).  Lastly, Plaintiff ignores the clear import of the admonitions in this Court's November 18, 2009 Order about attempts to influence the testimony of fact witnesses.  (Nov. 18 Order [2175].)

       Both Plaintiff and the Magistrate Judge mistakenly assume that the misconduct described in Pfizer's motion can be cured by exclusion of evidence at trial.  However, that assumption is clearly erroneous in light of the type of harm caused by the conduct at issue.  First, if Plaintiff's counsel is allowed to continue their ongoing strategy, Pfizer will continue to be deprived of a fair opportunity to retrieve untainted testimony from treating physicians that might supply evidence helpful in supporting Pfizer's defense.  Second, once the well has been poisoned, it cannot be unpoisoned.  Evidentiary rulings cannot somehow remove an unfair prejudice once instilled in the minds of these key witnesses, who will carry any established bias with them when they testify at trial.  Plaintiff's argument about a lack of evidence clearly showing a subjective bias in Dr. Flowers, even if true, is irrelevant.  The mere fact that an unfair discovery strategy to taint a witness's testimony was unsuccessful does not legitimize it.  Third, Plaintiff's counsel's pattern of misconduct causes a significant and unnecessary waste of discovery time and resources.  It is unreasonable to expect Pfizer's counsel to prepare counter-designations and rebuttal evidence to respond to these unfair tactics at every deposition of a treating physician.  Finally, Plaintiff's counsel's deposition tactics project an unflattering image of the discovery process to these non-party witnesses.  These physicians arrive expecting to answer questions about the care of

their patients, and instead they are subjected to mini-trials on tangential issues – complete with a barrage of out-of-context video testimony, internal corporate documents of which they have no knowledge, and argumentative questions about what they think is "right." Physicians should not be forced to field questions about every topic that is potentially relevant at trial. These physicians have busy schedules, and their time would be exponentially better spent caring for patients than being forced to watch Plaintiff's counsel test-run his case-in-chief prior to trial.

Because the Magistrate Judge's Order fails to address any of these legitimate concerns, it should be set aside. Its conflation of these discovery issues with evidentiary issues does nothing to remedy the problem. Mrs. Barlow's counsel's actions – sending unsolicited inflammatory letters, playing misleadingly-edited clips from other depositions, showing non-pertinent "bad actor" materials, asking "do you think its right" and other argumentative questions – not only produce inadmissible testimony; these tactics collectively represent an ongoing strategy to improperly influence the witness's admissible testimony and deprive Pfizer of the opportunity to obtain untainted testimony. Regardless of whether Plaintiff's improper strategy achieves its goal, it results in unnecessary waste of Pfizer's and the fact-witness's time and resources. Thus, the Magistrate Judge's Order, which allows this pattern of misconduct to continue undeterred, is clearly erroneous and should be overturned for the sake of protecting the integrity of the discovery process in this litigation.

## CONCLUSION

For all the foregoing reasons, the Court should set aside the Magistrate Judge's Order denying Pfizer's motion and grant the relief requested therein.

Dated: April 19, 2011

    Respectfully submitted,

    SKADDEN, ARPS, SLATE, MEAGHER
      && FLOM LLP

    By:  /s/ Mark S. Cheffo
         Mark S. Cheffo

    Four Times Square
    New York, NY 10036
    Tel: (212) 735-3000
    Mark.Cheffo@skadden.com

    -and-

    ROPES & GRAY LLP

    By:  /s/ Ana M. Francisco
         Ana M. Francisco
         BBO # 564346

    Prudential Tower
    800 Boylston Street
    Boston, MA 02199-3600
    Tel: (617) 951-7000
    Ana.Francisco@ropesgray.com

    *Attorneys for Defendants Pfizer Inc and*
    *Warner-Lambert Company LLC*

## **CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on April 19, 2011.

    /s/ Ana M. Francisco
    Ana M. Francisco

6