UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                            : MDL Docket No. 1629

In re:  NEURONTIN MARKETING, SALES
         PRACTICES, AND PRODUCTS                : Master File No. 04-10981
         LIABILITY LITIGATION                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x Judge Patti B. Saris
                                            :

THIS DOCUMENT RELATES TO:                    : Magistrate Judge Leo T.
                                            : Sorokin

KAISER FOUNDATION HEALTH PLAN, INC., ET AL. V.  :
PFIZER INC, ET AL., 04 CV 10739 (PBS)           :
                                            :
                                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR NEW TRIAL AND TO RE-OPEN EVIDENCE
OR, ALTERNATIVELY, TO ALTER OR AMEND JUDGMENT**

**(Public – Redacted Version)**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.   PFIZER SHOULD NOT BE PERMITTED TO RELITIGATE ARGUMENTS
     PREVIOUSLY REJECTED BY THE COURT ON NUMEROUS OCCASIONS ........... 2

     A.   The Court Properly Admitted Evidence Of Defendants' RICO Enterprise............ 2

     B.   The CME And Publications Activities Have A Nexus To Plaintiffs'
          Claims ............................................................................................................ 4

     C.   Kaiser Has Demonstrated The Existence Of A Pattern Of Racketeering
          Activity ........................................................................................................... 5

     D.   The Parties Have Previously Litigated Pfizer's Remaining Claims
          Regarding The Sufficiency RICO Evidence .............................................................. 7

II.  PLAINTIFFS' AMENDMENT TO NAME THE MAC ENTERPRISE DOES
     NOT ENTITLE PFIZER TO A NEW TRIAL ..................................................................... 8

III. THE COURT MADE NO EVIDENTIARY RULINGS NECESSITATING A
     NEW TRIAL ......................................................................................................................... 9

     A.   The Guilty Plea and Evidence of Related Government Investigations or
          Agreements Were Properly Admitted ........................................................................ 9

     B.   The July 21, 1999 "Snake Oil" Email Was Properly Admitted ........................... 10

     C.   Testimony Concerning ███████████████████████
          ██████████ ............................................................................................. 10

     D.   Testimony of David Franklin and Related Evidence Was Properly
          Allowed .......................................................................................................... 12

     E.   Testimony from Dr. Curt Furberg, Dr. John Abramson, and Related
          Evidence Were Properly Allowed ......................................................................... 13

     F.   The Court's Brief Curative Instruction Concerning the Unsupported
          Argument of Counsel Regarding Premiums Collected by Kaiser Was
          Proper .............................................................................................................. 14

IV.     THE COURT'S REFUSAL TO TRANSFER TO ANOTHER VENUE DID NOT
        HARM PFIZER ......................................................................................................... 15

V.      THE 2011 COCHRANE REVIEW IS NOT GROUNDS FOR A NEW TRIAL ............. 16

VI.     PFIZER IS NOT ENTITLED TO ANY ADDITIONAL OR ALTERNATIVE
        RELIEF ..................................................................................................................... 19

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Betterbox Commc'ns Ltd. v. BB Techs., Inc.,
  300 F.3d 325 (3d Cir. 2002) (Alito, J.) ......................................................................17

Blinzer v. Marriott Int'l, Inc.,
  81 F.3d 1148 (1st Cir. 1996) ......................................................................................17

Boateng v. General Dynamics Corp.,
  460 F. Supp. 2d 270 (D. Mass. 2006) ......................................................................15

Committee to Defend the U.S. Constitution v. Moon,
  776 F. Supp. 568 (D.D.C. 1991) ............................................................................4, 5

Conway v. Electro Switch Corp.,
  825 F.2d 593 (1st Cir.1987) ...................................................................................1, 7

Ironworkers Local Union 68 v. AstraZeneca Pharms., LP,
  MDL-1796, 2011 WL 833222 (11th Cir. Mar. 11, 2011) ......................................14

Kansky v. Coca-Cola Bottling Co. of New England,
  492 F.3d 54 (1st Cir. 2007) .........................................................................................1

Kettenbach v. Demoulas,
  901 F. Supp. 486 (D. Mass. 1995) ...............................................................17, 18, 19

Lexecon Inc. v. Milberg Weiss Berhad Hynes & Lerach,
  523 U.S. 26 (1998) ....................................................................................................16

Palmer v. Champion Mortgage,
  465 F.3d 24 (1st Cir. 2006) ..................................................................................1, 5, 7

Quaker Alloy Casting Co v. Gulfco Indus., Inc.,
  123 F.R.D. 282 (N.D. Ill. 1988) .............................................................................1-2

Ray Larsen Assocs., Inc. v. Nikko Am., Inc.,
  No. 89 Civ. 2809, 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) ............................5, 6

Rivera v. M/T Fossarina,
  840 F.2d 152 (1st Cir. 1988) .....................................................................................17

U.S. v. Minicone,
  960 F.2d 1099 (2d Cir. 1992) ......................................................................................7

iii

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971)...........................................................................................................17

### STATUTES

28 U.S.C. § 1407(a) ............................................................................................................16

Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331, *et seq.* ...................................9

### OTHER AUTHORITIES

Fed. R. Civ. P. 59..........................................................................................................17, 18

Fed. R. Civ. P. 60..........................................................................................................17, 18

Fed. R. Evid. 106 ...............................................................................................................3

Fed. R. Evid. 403 ..........................................................................................................2, 11

Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Plaintiffs" or "Kaiser") respectfully submit this memorandum of law in opposition to Defendants' Motion for New Trial and to Re-Open Evidence or, Alternatively, to Alter or Amend Judgment, (cited as Defs. Mem.")[1] and avers as follows:

## INTRODUCTION

As explained in Plaintiffs' concurrently-filed Opposition to Defendants' Renewed Motion for Judgment as a Matter of Law, Defendants' Motion for New Trial and to Re-Open Evidence or, Alternatively, to Alter or Amend Judgment merely recapitulates previously rejected arguments and seeks to introduce one "new" piece of evidence – a 2011 study that could never have been considered by the parties during the relevant time period.  Defendants cannot meet their substantial burden, and their motion should be denied.

## ARGUMENT

When assessing a motion for a new trial under Rule 59, a trial judge has limited discretion.  "[T]he trial judge may set aside a jury's verdict only if he or she believes that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." *Conway v. Electro Switch Corp.*, 825 F.2d 593, 598–99 (1st Cir.1987). Further, a motion to alter or amend the judgment should not be granted unless the movant "demonstrate[s] either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error or law." *Palmer v. Champion Mortgage,* 465 F.3d 24, 30 (1st Cir. 2006); *accord Kansky v. Coca-Cola Bottling Co. of New England*, 492 F.3d 54, 60 (1st Cir. 2007).  Further, court rulings "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co*

---

[1] Defendants Pfizer, Inc. and Warner-Lambert Company are referenced herein collectively as "Defendants" or "Pfizer."

*v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988).   Pfizer cannot meet this burden here.[2]

## I.  PFIZER SHOULD NOT BE PERMITTED TO RELITIGATE ARGUMENTS PREVIOUSLY REJECTED BY THE COURT ON NUMEROUS OCCASIONS

### A.  THE COURT PROPERLY ADMITTED EVIDENCE OF DEFENDANTS' RICO ENTERPRISE

Pfizer again makes a Rule 403 objection to the admission into evidence of 111 exhibits relevant to the then-alleged (now proven) RICO enterprises.   Pfizer made this argument, repeatedly, during trial.  *See* Dkt. Nos. 2669, 2604, 2631, and 2658.   The Court acknowledged Pfizer's concerns, required Kaiser to explain how these documents related to its RICO claims and why they should be admitted (*see* Kaiser's RICO Evidence, Dkt. No. 2660), and determined that admitting these exhibits caused Pfizer no undue prejudice.  3/15 Tr. 7-9.

The Court did not merely admit these documents wholesale.   In response to Pfizer's initial blanket objections, the Court required Kaiser to submit a brief that explained how each of the documents related to a specific RICO enterprise.   In the Court's words, "[I]t's a 403 objection on a document dump theory.  And that's why I forced them to write the memo, to link it in."  3/15 Tr. 8:9-10.

Contrary to Pfizer's claim, these documents were not submitted "in lieu of testimony from knowledgeable witnesses" and without any context.   Kaiser introduced video deposition testimony from several witnesses that discussed CDM, MAC, and Pfizer's interactions with both. As the Court noted, the RICO exhibits supported witness testimony.  *See* 3/15 Tr. 9:2-25 (Court: "[T]hese depositions have been talking about Cline Davis and MAC, so essentially as I see it,

---

[2] In addition to the motion for a new trial, Pfizer also styles its motion as a motion to "Re-Open Evidence."   Pfizer does not indicate under which rule of civil procedure such relief is requested, or any standard of law under which such relief can be addressed.

these documents document that relationship, so . . . it's not a surprise at all."). These documents did not simply "stand alone," as Pfizer claims. *See generally* Defs. Mem. Indeed, the documents did not stand alone as the Court permitted Pfizer to introduce its own binder of documents, pursuant to Rule 106. As noted by Pfizer's counsel at trial, "under the completeness rule we basically think that if those are going to come in, that these need to also be in the record." *See* 3/15 Tr. 9-10.

Pfizer cannot colorably claim to have been deprived of an opportunity to address the contents of these exhibits. Pfizer, claims that they were deprived of an opportunity for "cross-examination" (Defs. Mem. at 2), but 109 of the 111 exhibits were included on Kaiser's exhibit list,[3] a list that was exchanged with Defendants well before trial. Had Pfizer wanted to address the contents of any of the documents, they were free to bring a witness to trial that could discuss them. If Pfizer wanted to "cross examine, test the evidence, [or] develop its own case," (Def. Mem. at 2) it was free to call witnesses to do so. Instead, **Pfizer failed to put a single Pfizer/Parke Davis/Warner Lambert witness on the stand.** Pfizer went so far as to object to Kaiser's attempt to subpoena Lloyd Knapp, a Pfizer employee who appeared on Pfizer's witness list.

Finally, Pfizer had an opportunity to make individual objections to any of the exhibits Kaiser sought to introduce. The Court noted that it expected Pfizer may make such objections: "I'm assuming there might be parts that you'd move to strike or sanitize or whatever," and:

> I'm going to allow [the RICO documents] in short of your moving to strike certain sections of them. ... [I]n other words, if there's a three-page e-mail chain and they've only quoted from part of it, if you wanted to, I suppose I could strike the rest of it. But short of sanitizing them, I'm going to allow them in, subject to somebody in your team telling me something wasn't referenced, because they

---

[3] Kaiser specifically moved to amend the exhibits list to add the two additional documents. Dkt. No. 2643.

> put quotes from each one of them in the footnotes is what they did,
> which seemed pertinent.

*See* 3/15 Tr. 9:7-23. But Pfizer never made a single specific objection to any individual RICO

exhibit. Pfizer never even responded to Kaiser's brief setting out the RICO evidence.

It was Pfizer's choice not to address any of the damning RICO documents during trial;

Pfizer is not entitled to a new trial because it failed to adopt a cogent defense strategy the first

time around.

### B.     THE CME AND PUBLICATIONS ACTIVITIES HAVE A NEXUS TO PLAINTIFFS' CLAIMS

Pfizer argues that Kaiser cannot demonstrate the existence of a nexus between Pfizer's

misleading CME and publication strategies and Kaiser's injuries. This faulty argument is

addressed substantively in section II, parts A and B of Kaiser's concurrently-filed Memorandum

of Points and Authorities in Opposition to Defendants' Motion for Amended and Additional

Findings. The astounding aspect of Pfizer's attempt to relitigate the previously decided RICO

issues is Pfizer's utter lack of basis for reinstituting its motion. According to Pfizer, the

"evidence does not show a *relevant* pattern of racketeering activity." Defs. Mem. at 5.

(emphasis in original). Pfizer cites to *Committee to Defend the U.S. Constitution v. Moon*, 776 F.

Supp. 568, 571 (D.D.C. 1991) as purported authority for why the Court must reverse its prior

rulings on the RICO issues, all of which were fully briefed prior to any of the Court's rulings on

these points. *Moon* has no application to this case and does not require reconsideration of the

issues here.

First, the mere fact that the *Moon* court found no racketeering acts in that complaint has

nothing to do with the present case. Second, the facts of *Moon* shed little insight on Pfizer's

claim that "the evidence [here] does not show a *relevant* pattern of racketeering activity." In

*Moon*, the plaintiffs, the board members of the Committee to Defend the United States

4

Constitution could not establish any injury to the Committee because at best the complaint alleged a single wrongful diversion of funds.  *Id.* at 573.  With regard to the discussion of a "pattern" of racketeering activity or "relevant pattern" that would be applicable in this case, the *Moon* court's insight was null.  *Id.* at 571.  Simply put, *Moon* does nothing to advance Pfizer's argument.

Next Pfizer goes on to address arguments that Plaintiffs advanced in briefing before the Court more than a year ago.  *See, e.g.,* Defs. Mem. at 5-7 ("Plaintiffs argue that 'Parke-Davis supported numerous CMEs held throughout the country.'" (Pl. RICO Br. at 19, Dkt. No. 2660)). As set forth above, a motion to alter or amend the judgment requires "newly discovered evidence" or "manifest error or law."  *Palmer,* 465 F.3d at 30.  Here, nothing new is offered.  No new arguments.  No new evidence.  No claims of "manifest errors of law."  Nor has Pfizer argued the weight of the evidence in its favor is so great that it would be a miscarriage of justice to allow the jury verdict to stand.  Simply changing headings on previously argued motions does not entitle Pfizer to post-trial relief in this case.

### C.   KAISER HAS DEMONSTRATED THE EXISTENCE OF A PATTERN OF RACKETEERING ACTIVITY

Pfizer argues that Kaiser has failed to show the existence of an enterprise or pattern of racketeering activity because there is no relation between Pfizer's 1999 letter to Kaiser's DIS in response to the latter's inquiry about Neurontin's efficacy for treating bipolar disorders and Pfizer's CME and publication strategy.  Defs. Mem. at 7-8.  This argument is without merit.[4] Pfizer cites *Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, No. 89 Civ. 2809, 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) to illustrate its understanding of the requirement of a pattern of racketeering activity.  Pfizer claims that that case demonstrates that a multifaceted scheme

---

[4] Kaiser incorporates by reference its previously submitted summary of the RICO evidence (Dkt. No. 2660).

designed to maximize a company's earnings does not amount to a pattern of racketeering activity. Defs. Mem. at 8. However, the case does no such thing. In *Ray Larsen*, the plaintiff alleged that the defendant's practice of siphoning funds out of the U.S. operated as a component part of the alleged pattern of racketeering activity, but the court found that this practice was too remote from the fraudulent representations made directly to the plaintiff to be considered part of that pattern. 1996 WL 442799 at *6-7. Instead, that conduct was directed toward the Internal Revenue Service; its only connection to the actionable fraud was that it similarly served to increase the company's bottom line. *Id.* at *7. Here, by contrast, Pfizer's systematic misrepresentations at CMEs in its publication strategy and in direct communications with Kaiser are all akin and all designed specifically to inflate Neurontin's profitability. Where in *Ray Larsen* the tax evasion was unrelated or remotely related to the defendant company's direct misrepresentations to the plaintiff, here, the fraudulent CME and publication strategy carried out by Pfizer was directly related to Pfizer's misrepresentations to Kaiser, such as the 1999 letter about Neurontin's purported efficacy for treating bipolar disorder. These facts sustain the Court's determination that Kaiser made a sufficient showing of "horizontal relatedness," *i.e.*, the close relation between racketeering acts forming a pattern.

The requirement of "vertical relatedness" is also satisfied, as has already been shown in Kaiser's RICO evidence submission (Dkt. No. 2660, section II). Pfizer incorrectly argues that Kaiser has presented no evidence that Parke-Davis's marketing partner, CDM, had "any involvement whatsoever" in Parke-Davis's 1999 letter to DIS. Defs. Mem. at 8. On the contrary, Kaiser has already established that the Parke-Davis and CDM partnership operated as an enterprise to produce strategies and tactics to "grow" Neurontin's "emerging" uses, *i.e.*, off-label indications. CDM was retained to consult with Parke-Davis on all aspects of Parke-Davis's

Neurontin business,[5] joining Parke-Davis's internal Extended Neurontin Disease Team, an interdisciplinary team that had primary oversight over the marketing of Neurontin.[6]  For five years, between June 1995 and June 2000, CDM prepared marketing strategy proposals for Neurontin[7] and prepared marketing tactics to implement those strategies, including Parke-Davis's strategy to "Expand Emerging Uses," which Parke-Davis in fact implemented.[8]  The 1999 letter that Pfizer claims bears no relation to this thoroughgoing enterprise is clearly a communication made in furtherance of the very same purpose for which the enterprise was created (promotion of off-label uses of Neurontin), with the consequence that its distribution to DIS unquestionably qualifies as an act "related to the activities of the enterprise."  *U.S. v. Minicone*, 960 F.2d 1099, 1108 (2d Cir. 1992).

### D.   THE PARTIES HAVE PREVIOUSLY LITIGATED PFIZER'S REMAINING CLAIMS REGARDING THE SUFFICIENCY RICO EVIDENCE

In the remainder of Part I of Pfizer's motion for a new trial (*see* Defs. Mem. at 9-12)[9] Pfizer once again ignores the relevant legal standards and attempts to relitigate issues on how *Pfizer* would interpret the evidence presented on Pfizer's RICO enterprise.  Pfizer does not argue the overall weight of the evidence requires the Court to decide differently to prevent a miscarriage of justice.  *See Conway*, 825 F.2d at 598–99.  As noted above, Pfizer chose not to offer any witnesses at trial.  Moreover, nowhere does Pfizer attempt to show that "new" evidence has arisen giving different meaning to anything already presented. *Palmer,* 465 F.3d at 30.  Instead, Pfizer again resorts to citing Plaintiffs' previously filed brief in support of its RICO

---

[5] 3/11 Tr. (Crook) 19:3-20:3 (testimony of Neurontin product manager for Parke-Davis).

[6] 3/11 Tr. (Knoop) 41:23-43:16.

[7] 3/11 Tr. (Knoop) 44:8-18.

[8] *Id.* at 37:21-24; 38:3-39:1; 41:23-43:16.

[9] Section D (discussing scientific studies and CME events), Section E (evidence regarding alleged irrelevant conditions) and Section F (evidence regarding activities of companies allegedly not claimed to be part of any enterprise).

evidence (Dkt. No. 2660) and insists that evidence has been misconstrued. *See* Defs. Mem. at 9-12. Pfizer already had the chance to litigate these same issues, and lost. *See, e.g.* Memorandum of Law in Support of Defendants' Motion For A Judgment As A Matter of Law Based Upon Lack Of Sufficient Evidence To Prove Conduct Of RICO Enterprise Through A Pattern Of Racketeering Activity (Dkt. No. 2669); *see also* 3/15 Tr. 9:7-23 (Court allowing entry of evidence on RICO after briefing). Pfizer's attacks are improper, and Pfizer cannot retrace its steps to cover a tactical error – its failure to present contrary evidence on Plaintiffs' RICO enterprise theory.

## II.   PLAINTIFFS' AMENDMENT TO NAME THE MAC ENTERPRISE DOES NOT ENTITLE PFIZER TO A NEW TRIAL

The Court properly allowed Kaiser to amend the complaint to add the formal allegation of a MAC enterprise. There was no surprise in this amendment; the factual information that substantiated the MAC enterprise was fully developed in the complaint. By the time of trial, ample discovery had been conducted with respect to MAC and MAC's dealing with Parke Davis and Pfizer. Kaiser's exhibit list identified numerous documents produced by MAC and pertaining to MAC.

Kaiser moved specifically to name the MAC enterprise at an appropriately early stage of the trial. Defendants objected. The Court granted Kaiser's motion to amend, finding that Pfizer suffered no prejudice as the factual background was well developed in the complaint and discovery. 2/22 Tr. 23-24 ("[I]if in fact that one enterprise has been listed in the complaint, there's no surprise prejudice for adding it formally into the complaint as a sub-enterprise"; "I'm inclined to allow that amendment.").

III.    THE COURT MADE NO EVIDENTIARY RULINGS NECESSITATING A NEW
        TRIAL.

    A.    THE GUILTY PLEA AND EVIDENCE OF RELATED GOVERNMENT
        INVESTIGATIONS OR AGREEMENTS WERE PROPERLY ADMITTED.

Pfizer continues to press the remarkable argument that its 2004 guilty plea for violating the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331, *et seq.* ("FDCA"), is *irrelevant* to this action, even though this action arises out the same illegal marketing campaign that gave rise to the 2004 guilty plea. The parties fully briefed the admissibility of the guilty plea prior to trial. *See* Dkt. Nos. 2302 and 2415. As Kaiser explained then, the guilty plea is directly relevant to Kaiser's claims, beginning with its claim under California's Unfair Competition Law, which allows a plaintiff to prove a violation of the statute by showing a violation of a federal statute, including the FDCA. *See* Dkt. No. 2415 at 7-8. The guilty plea was also relevant to showing a common purpose to promote Neurontin illegally, a required showing under RICO, and it was directly relevant to showing causation, as Kaiser showed the steps it took to reduce Neurontin prescriptions after information concerning Defendants' misconduct emerged, including through the guilty plea.

Pfizer previously conceded – indeed, argued for – the relevance of the guilty plea in arguing that the statute of limitations on Kaiser's fraud claims began running with awareness of the criminal investigation against it. Here, it conflates the Court's rejection of Pfizer's argument that notice of the government's investigation into Defendants' criminal activities did not suffice to put Kaiser on notice of fraud with relevance. But the question of when Kaiser had notice of Defendants' fraud for statute of limitations purposes is separate from the simpler question of whether the guilty plea and evidence of government investigations into Defendants' conduct are relevant to Kaiser's claims. As this Court held, they unquestionably are. Thus, there is no

inconsistency between this Court's rulings rejecting Pfizer's statute of limitations argument and admitting the guilty plea as probative of Pfizer's fraudulent marketing.

Pfizer also incorrectly asserts that Kaiser sought admission of the guilty plea as character evidence or "other crimes."   However, the guilty plea and evidence of related government investigation were not evidence of "other crimes;" they went to the heart of the case, concerning the elements of the claims alleged.   Although Pfizer would prefer to keep out what may have been damaging evidence, there was no unfair prejudice from introducing a guilty plea voluntarily entered into by Warner-Lambert concerning the conduct at issue in this trial.   Pfizer's assertion of a due process violation lacks any authority or sustained argument, and is meritless.

**B.   THE JULY 21, 1999 "SNAKE OIL" EMAIL WAS PROPERLY ADMITTED**

Christopher Wohlberg, M.D., Ph.D., a Pfizer employee who had studied Neurontin, wrote in an email in 1999 that Neurontin "is the 'snake oil' of the twentieth century." (TX 479.)  The document was admissible as a business record of a party opponent.   Further, the email, written by a Pfizer employee with extensive familiarity with Neurontin and before Pfizer had a financial interest in advocating Neurontin for off-label uses, is highly probative and not unfairly prejudicial. *See also* Dkt. No. 2666.   Thus, Pfizer's challenges under Federal Rules of Evidence 401, 402, 403, and 802 fail.   The email was properly admitted.

**C.   TESTIMONY CONCERNING** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



### D.  TESTIMONY OF DAVID FRANKLIN AND RELATED EVIDENCE WAS PROPERLY ALLOWED

Although it abandons most of the grounds it previously asserted, Pfizer rehashes a portion of its attempt, prior to trial, to prevent David Franklin from testifying to his firsthand knowledge of Defendants' fraud.  *See* Dkt. No. 2326.[11]  Pfizer continues to argue that Dr. Franklin lacked firsthand knowledge of the Neurontin fraud outside of the Northeast Customer Business Unit ("CBU").  However, his actual testimony at trial belied Pfizer's pretrial assertions.  For that reason, and for the reasons stated in Kaiser's opposition (Dkt. No. 2406) to Pfizer's motion *in limine*, the Court properly allowed Dr. Franklin to testify.

Dr. Franklin made it clear the Neurontin fraud was not confined to the Northeast CBU.  As the Court correctly noted in its Findings of Fact and Conclusions of Law, "Soon after Dr. Franklin was hired, he attended a *national* training for *all* Parke-Davis liaisons in Ann Arbor, Michigan."  Dkt. No. 3120 ("Findings") at 20 (emphasis added).  There, the medical liaisons were told to disregard FDA regulations regarding off-label marketing and told of the "importance of not creating a paper trail."  *Id.* at 21.  Further, *all* medical liaisons received a voice mail from Phil Magistro, a Parke-Davis employee, telling the medical liaisons "to kick some ass, we want to sell Neurontin on pain.  And monotherapy and everything that we can talk about, that's what we want to do."  *Id.*  The Court correctly concluded that his "testimony… supports the reasonable inference that the same strategy of direct marketing was being employed nationwide."  *Id.* at 30-31.  Dr. Franklin's testimony was highly probative of Pfizer's misconduct, and was not confined to a particular region.

---

[11] That motion was itself largely a rehash of arguments from its previous unsuccessful attempt to exclude Dr. Franklin's testimony from the *Bulger* trial.  *See* Dkt. No. 1912.

### E.    TESTIMONY FROM DR. CURT FURBERG, DR. JOHN ABRAMSON, AND RELATED EVIDENCE WERE PROPERLY ALLOWED

Contrary to Pfizer's assertions, the testimony of Dr. Curt Furberg and Dr. John Abramson was properly admitted.  Pfizer mischaracterizes Dr. Furberg's testimony as being simply about "the alleged relationship between Neurontin and the risk of suicide." Defs. Mem. at 16.  Instead, Dr. Furberg's testimony went squarely to the fraud at issue, as he, like many other witnesses, compared what was known to Pfizer with what Pfizer represented and failed to state to the public and to healthcare professionals about Neurontin.  Dr. Furberg testified that Pfizer failed, despite the FDA's recommendations after an early review of data, to notify healthcare providers and the public about risks of depression associated with Neurontin.  Dr. Furberg referred specifically to a published article by Pfizer researchers that did not mention the safety conclusions that the FDA has previously drawn despite reviewing the identical data set. 3/10 Tr. 77.  Dr. Furberg noted the particular importance of full information regarding Neurontin's association with depression to the vulnerable population of bipolar patients suffering from depression and their doctors.  *Id.* at 73.  There was nothing unfairly prejudicial about this testimony or how it was used, as Kaiser's counsel only mentioned it briefly in closing argument, again in the context of summarizing Pfizer's fraud, and without reference to suicide.  *See* 3/23 Tr. 157-58.

Pfizer's conclusory statements about Dr. John Abramson's testimony are also incorrect. The Court properly denied Pfizer's motion *in limine* to exclude this testimony, as well as Pfizer's subsequent motion to strike (which largely rehashed the first motion), for the reasons stated in Kaiser's prior briefing opposing Pfizer's attempts to exclude or strike Dr. Abramson's testimony. *See* Dkt. Nos. 2407 and 2608.

**F.  THE COURT'S BRIEF CURATIVE INSTRUCTION CONCERNING THE UNSUPPORTED ARGUMENT OF COUNSEL REGARDING PREMIUMS COLLECTED BY KAISER WAS PROPER**

Next, Pfizer asks for a new trial on the basis of a very brief curative instruction from the Court after Pfizer's counsel, in closing argument, presented a new argument, without support the trial record, that Kaiser passed on, or should have passed on the costs of Pfizer's fraud to its insureds.  In the closing argument, counsel for Pfizer asserted that "to the extent that Kaiser paid more for sugar pills or paid for more Neurontin than it should have, that got passed onto [Kaiser's] insureds, presumably years ago."  3/23 Tr. 28:12-14.  As support for this assertion, along with a confusing analogy to the Academy Awards, Pfizer's counsel referred to a single question and answer from Albert Carver's deposition.  Following closing arguments, the Court aptly noted that Mr. Carver's testimony was "one line in the entire trial record," and that Pfizer's argument about Kaiser's passing the cost of its fraud onto its insureds is "rank speculation."  *Id.* at 145:21-24.  Without even referring explicitly to Pfizer's closing argument, the Court briefly reminded the jury to follow its instructions on damages, and that "there's nothing in the record about whether or not the payment of premiums or increases might have compensated for that, so that would at this point be speculative."  *Id.* at 218:1-7. Pfizer, whose proposed jury instructions (Dkt. No. 2492) on damages included no reference to the issue raised in its closing argument, suffered no prejudice from this very brief and appropriate curative instruction.

Finally, Pfizer's argument against the curative instruction and attempt to immunize itself – and the entire pharmaceutical industry – from fraud through reliance on the *Ironworkers Local Union 68* opinion joined by two members of an Eleventh Circuit panel should be rejected.  *See Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*, MDL-1796, 2011 WL 833222, at *10 (11th Cir. Mar. 11, 2011) (Judge Martin concurring only in the result). That decision has never been adopted by the First Circuit or anywhere else, and its holdings about the deficiencies in the

14

particular complaint at issue have no bearing on the questions of whether the Court properly exercised its discretion in issuing a brief instruction curing an unsupported assertion of counsel that was based on "rank speculation."

## IV. THE COURT'S REFUSAL TO TRANSFER TO ANOTHER VENUE DID NOT HARM PFIZER

Pfizer also continues to press its frivolous argument that the Court's refusal to transfer this case, which had been before it for nearly a decade, deprived it of a fair trial. Pfizer's venue transfer motion was the subject of forty-four pages of briefing prior to the trial. *See* Dkt. Nos. 2194, 2256, and 2257-2. Transfer of venue is an issue "peculiarly . . . for the exercise of judgment by those in daily proximity to these delicate problems of trial litigation." Wright & Miller, Fed. Prac. & Proc. § 3847 (quotation omitted). The burden of proof that transfer was warranted rested with Pfizer. *See Boateng v. General Dynamics Corp.*, 460 F. Supp. 2d 270, 275 (D. Mass. 2006). Pfizer did not carry its burden then, and it does not carry it now.

Pfizer's only attempt to show prejudice from litigating in Boston is to argue that it could not offer the live testimony of certain PMG physicians. This, too, was fully briefed prior to trial. *See* Dkt. Nos. 2315 and 2392. As Kaiser explained then (*see* Dkt. No. 2392), the physicians Pfizer put on its witness list and who Pfizer complains were unavailable at trial were not subject to Kaiser's control. Pfizer offered no authority then, and offers none now, for the proposition that Kaiser had a duty to produce third parties for Pfizer, which could have secured videotaped deposition testimony during discovery, as all parties in this case did for witnesses throughout the country. Pfizer's complaint about the unavailability of PMG physicians is especially galling in light of its decision to shield its own officers and employees from live cross-examination. As the Court noted in its Findings of Fact and Conclusions of Law, "Kaiser offered testimony from four of its executives, including the chairperson of the Southern California Pharmacy and

15

Therapeutics Committee and the chairperson of Kaiser's Drug Information Service. Remarkably, Pfizer did not offer live testimony from any officer or employee, nor was any Pfizer representative present during the trial."  Findings at 3.

In any case, in addition to the Kaiser executives that the Court referenced in its Findings of Fact and Conclusions of Law, Pfizer offered testimony from PMG physicians, featuring that testimony in opening argument.  Tr. 2/24 139:22-145:7 (playing excerpts of depositions of Dr. Maizels and Dr. Chandler).  Pfizer continues to trumpet that testimony in other briefing as helpful to it.  *See* Dkt. No. 3367 (Mem. in Supp. of Renewed Mot. for Judg. as a Matter of Law) at 6-7.  Its claims of prejudice from the refusal to transfer venue to California are hollow and should be rejected.

Finally, Pfizer's strained analogy to *Lexecon Inc. v. Milberg Weiss Berhad Hynes & Lerach*, 523 U.S. 26 (1998) is misplaced.  *Lexecon* held that 28 U.S.C. § 1407(a) protects a plaintiff's choice of forum by requiring an MDL court to remand to the venue in which an action was filed.  Kaiser originally filed its case in this Court, so the principle of *Lexecon* is vindicated, not circumvented.  Unsurprisingly, Pfizer cites no case supporting its assertion that refusal to transfer a case under § 1404(a) is a "circumvention" of *Lexecon*.

## V.    THE 2011 COCHRANE REVIEW IS NOT GROUNDS FOR A NEW TRIAL

The only purportedly new evidence that Pfizer offers in its request for a new trial is the 2011 Cochrane Review.  However, this review is merely a meta-analysis that Pfizer and its experts could have conducted, and suffers from the same defects as other evidence Pfizer put before the Court.  The standard for vacating a judgment on the basis of new evidence is exceptionally high.  The moving party must establish:

(1) The evidence has been discovered since the trial; (2) The evidence could not by due diligence have been discovered earlier by the movant; (3) The evidence is

not merely cumulative or impeaching; and (4) The evidence is of such nature that it would probably change the result if a new trial is granted.

*Kettenbach v. Demoulas*, 901 F. Supp. 486, 493 (D. Mass. 1995) (quoting *Raymond v. Raymond Corp.,* 938 F.2d 1518, 1527 (1st Cir. 1991)).[12]  Such motions should only be granted "under exceptional circumstances." *Rivera v. M/T Fossarina*, 840 F.2d 152, 156 (1st Cir. 1988).[13]  To succeed, Pfizer must establish all four elements; it cannot establish any.

For the purpose of vacating a judgment, "newly discovered evidence" refers to "evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant." *Rivera*, 840 F.2d at 156 (quoting *Brown v. Pennsylvania Railroad Co.,* 282 F.2d 522, 526-27 (3d Cir. 1960), *cert. denied,* 365 U.S. 818 (1961)).  Events that occurred after the trial concluded cannot be the basis of a new trial motion.  *Betterbox Commc'ns Ltd. v. BB Techs., Inc.,* 300 F.3d 325, 331-32 (3d Cir. 2002) (Alito, J.) (in trademark infringement action, post-trial voiding of the trademark by USPTO was not "newly discovered evidence" because cancellation occurred after trial; denial of new trial motion upheld).  The 2011 Cochrane Review was obviously not in existence at the time of the March 2010 Kaiser trial.  And even if Pfizer were to argue that the underlying trials meta-analyzed in the 2011 Cochrane Review constitute the "facts in existence at the time of trial," it cannot possibly argue that it was "excusably ignorant" of the studies' existence.[14]

---

[12] Pfizer claims this Court has broad discretion to reopen the evidence based on considerations of fairness.  The standard it proposes only applies to allowing new evidence after a party has rested but before a verdict or judgment. *Blinzer v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1160 (1st Cir. 1996) (noting that court has discretion to allow party to admit new evidence after resting but before jury deliberation); *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 331 (1971) (explaining that in non-jury case, trial court has discretion to hear additional evidence after parties rest but before it has issued its decision).

[13] The standard for vacating a judgment based on newly discovered evidence is the same under Rule 59 or Rule 60. *Kettenbach*, 901 F. Supp. at 983, n.9.

[14] One of the underlying trials was not in existence at the time of trial, but was published in November 2010.  *See* Wallace MS *et al*, *Gabapentin extended-release tablets for the treatment of patients with postherpetic neuralgia: a randomized, double-blind, placebo-controlled, multicentre study.*  30 Clinical Drug Investigation 765 (2010).

Pfizer cannot clear the second hurdle either – that  through due diligence the evidence could not have been discovered before trial.  Pfizer could easily have conducted its own Cochrane-style meta-analysis of the published and unpublished studies long ago as Kaiser's expert Dr. Thomas Perry did.  It elected not to.  Rule 59 and Rule 60 cannot be used to second guess poor trial decisions related to the evidence presented at trial.

The 2011 Cochrane Review is also indisputably cumulative. Thus, Pfizer cannot satisfy the third required element either.  Even if the 2011 Cochrane Review had existed at the time of trial and been admitted, it would have been but another piece of scientific evidence for judge and jury to weigh in answering the question of Neurontin's neuropathic pain efficacy outside of postherpetic neuralgia ("PHN").  Given that Pfizer presented evidence of Neurontin's supposed efficacy from two pain experts, a statistical analysis of pain studies from a third expert, and the 2005 Cochrane review, the 2011 revision amounts to nothing more than a fourth bite at the apple.

To satisfy the final *Kettenbach* element, Pfizer must "demonstrate that the missing evidence was 'of such a material and controlling nature as [would] probably [have] change[d] the outcome.'"  *Kettenbach*, 901 F. Supp. at 497 (quoting *Anderson v. Cryovac, Inc.,* 862 F.2d 910, 924 n.10 (1st Cir. 1988) (alterations in original)).  *Id*.  Pfizer cannot show that the 2011 Cochrane Review probably would have changed the trial's outcome because it suffers from three of the same critical deficits that led the Court to conclude that Dr. Shawn Bird's opinion of efficacy for neuropathic pain was "not supported by the weight of the scientific evidence."  Findings at 98.

First, the 2011 Cochrane Review considered only published data from the Backonja study, unaware that once the underlying data was corrected for CNS-related side effects, the trial was no longer positive.  *See* Findings at 98-99.  Secondly, the 2011 Cochrane Review relies on at least 6 PHN studies.  But, as the Court correctly observed, Kaiser does not dispute that Neurontin

is effective for PHN, nor does it claim damages for Neurontin PHN prescriptions. *See id.* And finally, the 2011 Cochrane Review included only published data from the Serpell study. The Court noted that the unpublished data revealed this was really just another PHN study. *See id.* Pfizer's belated effort to inject the 2011 Cochrane Review is but another inappropriate attempt to use Neurontin's PHN indication as proof that Neurontin is effective for the *broad* category of neuropathic pain. Judge, jury, the FDA, and Pfizer's own Crowne Plaza pre-litigation experts have all seen through this argument.

Additionally, Pfizer contends that had the 2005 Cochrane Review looked like the 2011 Cochrane Review, Kaiser's formulary decisions would have been different. Defs. Mem. at 18-19. Notwithstanding the fact that it is Pfizer's suppression of evidence that is responsible for the deficiencies in the 2005 review, Kaiser's damages end in 2004. Without assistance from a time machine, the 2005 Review could not have affected formulary decisions that pre-dated it. Finally, while Pfizer argues that the 2011 Cochrane Review defeats Kaiser's causation claims, it does no such thing. Rather, the 2011 Cochrane Review serves as a perfect example of the long-lasting, if not permanent, effects of a decade's worth of marketing through a fraudulent publication strategy. In sum, Pfizer fails to prove any of the four required *Kettenbach* elements.

## VI.   PFIZER IS NOT ENTITLED TO ANY ADDITIONAL OR ALTERNATIVE RELIEF

In a last ditch attempt to tarnish the record, Pfizer requests "Alternative or Additional Relief" for the reasons "set forth in Defendants' Renewed Judgment As A Matter of Law and Motion for Amended And Additional Findings." *See* Defs. Mem. at 19. For the reasons stated in the accompanying oppositions to Pfizer's motions, Kaiser respectfully requests that the Court deny such additional or alternative relief. Pfizer's motions should be viewed as what they are, attempts to re-litigate positions that have been previously decided in Kaiser's favor. Pfizer has

failed to present any reasoned arguments to satisfy the stringent burden of overturning a jury verdict. There has been no miscarriage of justice or manifest error of law proven. As such, Pfizer's motion fails.

## CONCLUSION

For all the aforementioned reasons, Plaintiffs respectfully submit that Defendants' Motion for New Trial and to Re-Open Evidence or, Alternatively, to Alter or Amend Judgment should be denied.


Dated: April 19, 2011                    Respectfully submitted,


                                         By:    */s/ Linda P. Nussbaum*
                                                Linda P. Nussbaum

                                         Linda P. Nussbaum, Esq.
                                         John D. Radice, Esq.
                                         GRANT & EISENHOFER, P.A.
                                         485 Lexington Avenue
                                         New York, NY 10017

                                         *Attorneys for Plaintiffs Kaiser Foundation*
                                         *Health Plan, Inc. and Kaiser Foundation*
                                         *Hospitals*

*Of Counsel*

Thomas M. Greene, Esq.
GREENE LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Elizabeth Cabraser, Esq.
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol, Esq.
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2011, I caused a true and correct copy of **Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion for New Trial and to Re-Open Evidence or, Alternatively, to Alter or Amend Judgment** to be served upon all known counsel of record by electronic filing using the CM/ECF system.

 /s/ Linda P. Nussbaum
Linda P. Nussbaum