UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re:  NEURONTIN MARKETING, SALES PRACTICES,
        AND PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:

KAISER FOUNDATION HEALTH PLAN, et al. v.
PFIZER INC., 04 CV 10739 (PBS)

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION FOR NEW TRIAL AND TO RE-OPEN
EVIDENCE OR, ALTERNATIVELY, TO ALTER OR AMEND JUDGMENT**

Mark S. Cheffo
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

Raoul D. Kennedy
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Embarcadero Center
San Francisco, CA 94111
Tel:  (415) 984-6400

James E. Hooper
WHEELER TRIGG O'DONNELL LLP
1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel:  (303) 244-1800

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................ii

I.      The Court Has Broad Discretion To Grant A New Trial....................................................1

II.     Motion To Grant New Trial Or Re-Open Evidence To Admit 2011 Cochrane
        Review ..............................................................................................................................2

III.    Plaintiffs' Document Dump Lacked The Required Foundation And Should Have
        Been Excluded Under Rule Of Evidence 403....................................................................5

IV.     The CME And Publications Activities Plaintiffs Describe Have No Nexus To
        Plaintiffs...........................................................................................................................7

V.      Plaintiffs Offer No Response To Defendants' Additional Arguments Regarding
        The Document Dump .........................................................................................................9

VI.     The Erroneous Admission Of Documents Regarding A Purported MAC
        Enterprise Requires A New Trial ......................................................................................9

VII.    Other Prejudicial Evidentiary Rulings And Failure To Transfer Venue Require A
        New Trial ........................................................................................................................10

CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Adams v. United States*,
No. 03-0049-E-BLW, 2009 WL 2207690 (D. Idaho July 15, 2009)............................5

*Adams v. United States*,
No. 03-0049-E-BLW, 2009 WL 2590426 (D. Idaho Aug. 18, 2009) ..........................5

*Apparel Art International, Inc. v. Jacobson*
967 F.2d 720 (1st Cir. 1992) ......................................................................................9

*Chakrabarti v. Cohen*,
31 F.3d 1 (1st Cir. 1994) ............................................................................................1

*Chilson v. Metropolitan Tranist Authority*,
796 F.2d 69 (5th Cir. 1986)........................................................................................3

*Committee to Defend the United States Constitution v. Moon*,
776 F. Supp. 568 (D.D.C. 1991)..............................................................................8, 9

*Espeaignnette v. Gene Tierney Co.*,
43 F.3d 1 (1st Cir. 1994) ............................................................................................1

*Fisher v. Kadant, Inc.*,
589 F.3d 505 (1st Cir. 2009) ....................................................................................10

*Jennings v. Jones*,
587 F.3d 430 (1st Cir. 2009) ......................................................................................1

*Ji v. Bose Corp.*,
647 F. Supp. 2d 80 (D. Mass. 2009), *aff'd.*, 626 F.3d 116 (1st Cir. 2010) ..................1

*Kettenbach v. Demoulas*,
901 F. Supp. 486 (D. Mass. 1995).........................................................................2, 3

*National Anti-Hunger Coalition v. Executive Committee of the President's Private
Sector Survey on Cost Control*,
711 F.2d 1071 (D.C. Cir. 1983)..................................................................................3

*Peacock v. Board of School Commissioners*,
721 F.2d 210 (7th Cir. 1983)......................................................................................3

*Player v. Motiva Enterprises, LLC*, 240 F. App'x 513 (3d Cir. 2007) ..............................5

*Poppell v. City of San Diego*,
    149 F.3d 951 (9th Cir. 1998) ........................................................................................5

*Ray Larsen Associates. v. Nikko America, Inc.*,
    No. 89 Civ. 2809 (BSJ), 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) ..........................9

*Rosebud Sioux Tribe v. A & P Steel, Inc.*,
    733 F.2d 509 (8th Cir. 1984) ........................................................................................3

*Shamis v. Ambassador Factors Corp.*,
    No. 95 Civ. 9818 (RWS), 1997 WL 473577 (S.D.N.Y. Aug. 18, 1997) .....................9

*Sunward Corp. v. Dun & Bradstreet, Inc.*,
    811 F.2d 511 (10th Cir. 1987) ......................................................................................5

*United States v. Meserve*,
    271 F.3d 314 (1st Cir. 2001) ........................................................................................7

*Vild v. Visconsi*,
    956 F.2d 560 (6th Cir. 1992) ........................................................................................9

## STATUTES

Fed. R. Civ. P. 15(a) .........................................................................................................9

Fed. R. Civ. P. 59 .............................................................................................................1

## MISCELLANEOUS

12 James Wm. Moore et al., *Moore's Federal Practice* § 60.42(3) (3d ed. 1997) .............3

Pursuant to the Second Amended Post-Judgment Schedule [3372], Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer" or "Defendants"), respectfully submit this Reply Memorandum of Law in Further Support of their Motion for New Trial and to Re-Open Evidence or, Alternatively, to Alter or Amend Judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure.

## I.  The Court Has Broad Discretion To Grant A New Trial

Plaintiffs claim that this Court has "limited discretion" to grant a new trial.  (Pl. Resp. [3422] at 1.)  To the contrary, "a district court has broad discretion to grant a new trial on some or all of the issues if a verdict appears to be 'against the weight of the evidence.'"  *Ji v. Bose Corp.*, 647 F. Supp. 2d 80, 85 (D. Mass. 2009), *aff'd.*, 626 F.3d 116 (1st Cir. 2010); *see also Chakrabarti v. Cohen*, 31 F.3d 1, 5 (1st Cir. 1994) (noting "trial court's broad discretion to order new trials").  Prejudicial evidentiary error is also grounds for a new trial.  *See Espeaignnette v. Gene Tierney Co.*, 43 F.3d 1, 8-9 (1st Cir. 1994).  Moreover, "'the district court has the power and duty to order a new trial whenever, in its judgment, the action is required in order to prevent injustice.'"  *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009) (citation omitted).  Defendants' motion identifies numerous prejudicial evidentiary errors, in light of which the jury's verdict is against the weight of the competent evidence and represents a blatant miscarriage of justice.

Plaintiffs also complain that Defendants' motion "recapitulates previously rejected arguments," and incorrectly suggest that a new trial motion requires new arguments or some dramatic change in circumstances.  (Pl. Resp. at 1, 5.)  As discussed below, Defendants' motion regarding the 2011 Cochrane Review satisfies the standards for relief based on newly discovered evidence.  But the remainder of Defendants' motion is based primarily on evidentiary errors that Defendants were required to preserve at trial.  Plaintiffs' contention that these arguments offer nothing new is a concession that Defendants' arguments were properly preserved and are ripe for consideration.

II.     **Motion To Grant New Trial Or Re-Open Evidence To Admit 2011 Cochrane Review**

In response to Defendants' arguments regarding the 2011 Cochrane Review, Plaintiffs assert inapposite procedural technicalities, but utterly fail to address the substance or import of this new evidence.  Plaintiffs' evasions cannot obscure how devastating this evidence is to their theories of causation and efficacy with respect to neuropathic pain.  One of the parties' only points of agreement has been that the Cochrane Group is an extremely well respected organization whose publications are rightly viewed as important sources of information for prescribing doctors.  The Cochrane Group has now reviewed the same studies and previously unpublished data presented to the Court and jury in this case.  Even after reviewing this information and accounting for Plaintiffs' claims of publication bias, the Cochrane Group has again concluded that Neurontin is an effective treatment for off-label neuropathic pain conditions.  Thus, the 2011 Cochrane Review directly contradicts the jury's and the Court's findings of inefficacy.  These findings, and the judgment predicated thereon, are simply contrary to reality – a reality in which fully informed doctors continue to prescribe Neurontin for off-label neuropathic pain conditions, the fully informed Plaintiffs continue to allow and pay for such prescriptions, and the fully informed Cochrane Group continues to recommend such prescriptions.  Allowing this judgment to stand would be a denial of reality and a blatant injustice.

Plaintiffs' arguments are without merit.  First, Plaintiffs argue that the 2011 Cochrane Review does not constitute newly discovered evidence for purposes of a new trial motion because it "was obviously not in existence at the time of the March 2010 Kaiser trial."  (Pl. Resp. at 17.)  This Court rejected an identical argument in a case affirmatively cited by Plaintiffs in their own brief.  *See Kettenbach v. Demoulas*, 901 F. Supp. 486 (D. Mass. 1995) (Saris, J.).  In *Kettenbach*, this Court approvingly cited cases holding that "so long as the 'evidence pertain[s] to facts in existence at the time of trial, and not to facts that have occurred subsequently,' . . . whether the evidence itself came into existence after trial is immaterial."  *Id.* at 494 (citation

2

omitted).  The Court "f[ound] these cases persuasive and entirely consistent with First Circuit case law."  *Id.* (emphasis in original) (citing *Rivera v. M/T Fossarina*, 840 F.2d 152, 156 (1st Cir. 1988)).  Numerous other courts have reached the same conclusion.[1]  Plaintiffs' contrary argument is based on "slopp[y] phras[ing]" of the applicable standard.  12 James Wm. Moore et al., *Moore's Federal Practice* § 60.42(3)(a) (3d ed. 1997).

The 2011 Cochrane Review relates directly and exclusively to facts in existence at the time of trial.  Indeed, it was prepared for the express purpose of updating prior reviews with "unpublished information made available through [this] litigation."  (2011 Cochrane Review [3362-1] at 2.)  The 2011 Cochrane Review also definitively resolves a disputed question of fact that was integral to Plaintiffs' theories of causation and efficacy, *i.e.*, whether the Cochrane Group would have proclaimed Neurontin ineffective for off-label neuropathic pain conditions in its 2000 and 2005 reviews had it been aware of the allegedly suppressed studies and data. Clearly, it would not have.  Regardless of its publication date, the connection between the 2011 Cochrane Review and the facts in existence at the time of trial could not be more direct or obvious.

Plaintiffs also argue that Defendants did not exercise "due diligence" in obtaining this evidence because the 2011 Cochrane Review is "merely a meta-analysis that Pfizer and its experts could have conducted."  (Pl. Resp. at 16, 18.)  This argument desperately seeks to retreat from Plaintiffs' prior assertions regarding the Cochrane Group's stature as a principal source of "evidence-based" medicine that "physicians all across the country . . . and health plans like Kaiser would rely upon."  (2/25 Tr. (Dickersin) at 72:12-20.)  Had Defendants performed this same meta-analysis, Plaintiffs would have attacked it as being purportedly fraudulent.  They

---

[1] *See also, e.g., Nat'l Anti-Hunger Coal. v. Exec. Comm. of the President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1075 n.3 (D.C. Cir. 1983) ("evidence falls within the rule as long as it 'pertain[s] to facts in existence at the time of the trial'") (citation omitted); *Peacock v. Bd. of Sch. Comm'rs*, 721 F.2d 210, 214 (7th Cir. 1983) ("Material not in existence until after trial falls within 60(b)(2) . . . if it pertains to facts in existence at the time of trial."); *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 516, 523 (8th Cir. 1984) (reversing trial court's rejection of post-trial evidence demonstrating that witness had committed perjury); *Chilson v. Metro. Tranist Auth.*, 796 F.2d 69, 71 (5th Cir. 1986) (reversing trial court's rejection of post-trial evidence showing that property valuation "was different from that which had been brought out by the evidence at trial").

cannot do so here because the Cochrane Group's independence and expertise are undisputed. (*See* 2/23 (Abramson) at 121:1-7 (emphasizing that the Cochrane Review "isn't Pfizer," and instead "is the most trusted review articles").)

Likewise, Plaintiffs' argument that the 2011 Cochrane Review was merely "cumulative" and "would [not] have changed the trial's outcome" does not withstand a moment's scrutiny. (Pl. Resp. at 18.)  At trial, Plaintiffs argued that previous Cochrane Reviews should be ignored because Defendants purportedly misled the Cochrane Group by withholding unpublished data. Even today, Plaintiffs spuriously assert that the Cochrane Group remains "unaware" of their criticisms of various studies.  (Pl. Resp. at 18-19.)  The 2011 Cochrane Review definitively refutes Plaintiffs' arguments and evidence.  As noted above, the Cochrane Group has now considered previously "unpublished information made available through [this] litigation." (2011 Cochrane Review [3362-1] at 2.)  The Cochrane Group is also well aware of Plaintiffs' criticisms, having reviewed and cited the published findings of Plaintiffs' expert Dr. Dickersin, who is also the Cochrane Group's director.[2]  The Cochrane Group addressed its director's misgivings by carefully assessing the "risk of bias in included studies" and accounting conservatively for any "missing data."  (*See* 2011 Cochrane Review [3362-1] at 6.)  Thus, the 2011 Cochrane Review "did not depend on what authors of the original studies chose to report or not report."  (*Id.*)

Finally, Plaintiffs contradict their own trial evidence and arguments by suggesting that Cochrane Reviews are irrelevant to the issue of causation.  They do so by pretending that the Cochrane Group did not review Neurontin's efficacy for off-label neuropathic pain conditions until "2005," after "Kaiser's damages end[ed] in 2004."  (Pl. Resp. at 19.)  If this were true, it would beg the question of why Plaintiffs spent so much of their limited trial time attempting to prove that Defendants misled the Cochrane Group.  But it is not true.  The Cochrane Group first reviewed anticonvulsant drugs, including Neurontin, for off-label neuropathic pain conditions in

---

[2] *See* 2011 Cochrane Review [3362-1] at 2, 27, 33 (citing S. Swaroop Vedula et al., *Outcome Reporting in Industry-Sponsored Trials of Gabapentin for Off-Label Use*, 361 New Eng. J. Med. 1963 (2009)).

the year 2000.  (*See* DX 1772 at 2; 3/19 Tr. (Bird) at 29:13-15.)  By Plaintiffs' own admission, if the purportedly tainted 2000 Cochrane Review had looked like the fully informed 2011 Cochrane Review, "physicians all across the country . . . and health plans like Kaiser" would have seen compelling evidence of efficacy and would have relied on this evidence.  (2/25 Tr. (Dickersin) at 72:12-20.)

### III.    Plaintiffs' Document Dump Lacked The Required Foundation And Should Have Been Excluded Under Rule Of Evidence 403

As set forth in Defendants' opening brief, Plaintiffs' document dump should have been rejected under Federal Rule of Evidence 403 because, presented without foundational testimony from knowledgeable witnesses, the prejudicial value of these documents substantially outweighed any probative value.  (*See* Defs' Mem. [3363] at Section I.)

Plaintiffs' response fails to meet the substance of Defendants' argument.  For example, Defendants cited several cases holding that parties cannot prove essential elements of their claims through a document dump presented without foundation or context.[3]  Plaintiffs do not discuss or attempt to distinguish these cases, nor do they cite any authority allowing them to present their case in this fashion.  Likewise, Plaintiffs have ignored Defendants' argument demonstrating that the document dump exhibits were not self-explanatory and that Plaintiffs' characterizations of these exhibits were rife with distortions.  (*See* Defs' Mem. at Section I.A.)  The Court initially ruled that, absent witness testimony, these documents could be admitted only if they were "somehow self-explanatory that they demonstrate an enterprise."  (3/8 Tr. (Court) at 189:9-13; *see also, e.g.* 3/5 Tr. (Court) at 150:19-22.)  Plaintiffs' failure to even address this issue confirms that the documents should not have been admitted.

In lieu of any substantive response, Plaintiffs instead present a series of evasions.  First, Plaintiffs emphasize that "the Court required Kaiser to submit a brief that explained how each of

---

[3]  *See Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 522 (10th Cir. 1987); *Player v. Motiva Enters., LLC*, 240 F. App'x 513, 521 (3d Cir. 2007); *Poppell v. City of San Diego*, 149 F.3d 951, 968 (9th Cir. 1998); *Adams v. United States*, No. 03-0049-E-BLW, 2009 WL 2207690, at *1 (D. Idaho July 15, 2009); *Adams v. United States*, No. 03-0049-E-BLW, 2009 WL 2590426, at *1 (D. Idaho Aug. 18, 2009).

the documents related to a specific RICO enterprise." (Pl. Resp. at 2-3.) As a threshold matter, the Court did not review the documents before admitting them to determine whether they support the inaccurate characterizations in Plaintiffs' RICO Evidence brief, which they do not. (*See, e.g.*, 3/15 Tr. (Court) at 9:13 ("I haven't gone through all the documents."); 3/8 Tr. (Court) at 176:10-11 ("I'm not going to have time to sit and read them all").) Moreover, the jury did not have the benefit of any such narrative because, as the Court correctly ruled, Plaintiffs' counsel's argumentative and selective summaries of the documents could not be presented as evidence. (*See, e.g.*, 3/8 Tr. (Court) at 163:22-23, 182:8-13.) The fact that **the Court** required a 51-page brief in order to understand what these documents supposedly mean and how they supposedly fit Plaintiffs' RICO theory[4] only underscores that **the jury** – left without any such guidance – could not reasonably have drawn the elaborate and unfounded inferences described in Plaintiffs' RICO Evidence brief. The notion that the jury could have done so is simply irreconcilable with the Court's stated inability to "figure out" or "dream . . . up" Plaintiffs' RICO theory based on these same documents. (3/8 Tr. (Court) at 182:3-7, 186:12-15.)

Second, Plaintiffs contend that their RICO case was based not only on their document dump, but on "video deposition testimony from several witnesses." (Pl. Resp. at 2.) But Plaintiffs do not dispute that the majority of their 111 document dump exhibits were not discussed **by any witness**, and that what little testimony was presented largely came from Plaintiffs' experts, who had no personal knowledge of the documents. The fact that certain deponents mentioned CDM or MAC does not provide the requisite foundation or context for the majority of these documents.

Third, Plaintiffs attempt to shift the burden to Defendants to provide the requisite context and foundation by arguing that the documents were on Plaintiffs' exhibit list and that Defendants could have used their extremely limited trial time to produce witnesses to discuss them. (Pl. Resp. at 3.) But as noted in Defendants' opening brief, the First Circuit has roundly rejected

---

[4] (*See* 3/8 Tr. (Court) at 166:1-22, 167:7-20, 179:1-7, 182:3-7, 186:12-15.)

6

such attempts to shift the burden to the objecting party.  *See, e.g.*, *United States v. Meserve*, 271 F.3d 314, 327-28 (1st Cir. 2001).  Plaintiffs do not discuss *Meserve*, nor do they cite any contrary authority.

## IV. The CME And Publications Activities Plaintiffs Describe Have No Nexus To Plaintiffs

Plaintiffs' response confirms that their document dump failed to demonstrate a relevant pattern of racketeering activity because, *inter alia*, there is no evidence that PMG doctors attended any allegedly fraudulent CMEs or read any allegedly fraudulent publications.  (*See* Defs' Mem. at I.B.)  Plaintiffs have cited no evidence to the contrary and instead rely solely upon conclusory statements and speculation, which are legally insufficient to establish the required nexus.  At a minimum, Defendants are entitled to a new trial because the jury's finding of a causal nexus was based on the erroneously admitted document dump and was against the weight of the competent evidence.

Plaintiffs contend that they "presented ample evidence" that PMG doctors attended CME events "at which half-truths, misleading claims, and blatant misrepresentations concerning Neurontin were made."  (Pl. Rule 52(b) Resp. [3420] at 3.)  But Plaintiffs offer nothing but the same bait-and-switch tactics that Defendants exposed in their opening brief.  First comes the bait:  Plaintiffs note that PMG doctors attended a ***single CME program***, entitled "New Frontiers in Social Phobia and Bipolar Disorders," for which they presented no evidence whatsoever regarding its content.  (*Id.*)  By their silence, Plaintiffs concede that there is no evidence regarding what slides were shown, what statements were made, or whether Neurontin was even discussed at this CME.  (*See* Defs' Mem. at 6.)  Then comes the switch:  Plaintiffs proceed to discuss ***different CME programs*** where they claim fraudulent statements were made.  (*See* Pl. Rule 52(b) Resp. at 3-4.)  But Plaintiffs do not even claim that any PMG doctors attended these CMEs.  Plaintiffs' argument ultimately boils down to the following conclusory statement: "This evidence of systematic fraud in CMEs provides the nexus between Pfizer's conduct and Plaintiffs' injuries."  (*Id.* at 4.)  In other words, Plaintiffs asked the jury and this Court to

7

speculate that allegedly fraudulent representations made at different CME programs might have been repeated at the only CME program for which there is evidence of attendance by PMG doctors. Plaintiffs' rank speculation is not evidence.

Likewise, Plaintiffs fail to show that a single PMG doctor received or reviewed a single one of the allegedly misleading publications described in Plaintiffs' RICO Evidence brief. Again, they rely entirely on their conclusory assertion that PMG doctors "**would have received** the output of Pfizer's misleading publication strategy." (*Id.* (emphasis added).) Beyond this rank speculation, what is particularly troubling is Plaintiffs' failure to deny or explain the fact that they affirmatively misled this Court regarding one of the publications in question. Plaintiffs represented that a March 1999 issue of *Progress in Neurology* (PX80) was mailed "***to all neurologists throughout the United States***." (Pl. RICO Br. [2660] at 27 & n.103 (emphasis added).) The Court believed Plaintiffs' representation. (*See* Findings [3120] at 47.) But as shown in Defendants' opening brief, the representation was false. (*See* Defs' Mem. at 6-7.) Plaintiffs' exhibit explicitly refers to the mailing of ***four different issues*** of *Progress in Neurology* that were published in the year 2000. (PX92.) Plaintiffs did not introduce any of these four issues at trial, and did not present any evidence that they contained purportedly misleading statements about off-label Neurontin use. As for the March 1999 issue that Plaintiffs claim is misleading (PX80), there is no evidence regarding its purported distribution to PMG neurologists or anyone else. Apparently unable to offer any response on this issue, Plaintiffs have simply ignored it.

In sum, Plaintiffs bombarded the jury with documents regarding the purported off-label marketing of Neurontin to prescribing doctors via allegedly fraudulent CME programs and publications, but they did not present any evidence that their own members' prescribing doctors were exposed to any such marketing. These documents had no nexus to Plaintiffs' claims and should have been excluded. Plaintiffs try in vain to distinguish *Committee to Defend the United States Constitution v. Moon*, 776 F. Supp. 568 (D.D.C. 1991), but the case is squarely on point. The *Moon* court did not, as Plaintiffs contend, "f[i]nd no racketeering acts in that complaint."

(Pl. Resp. at 4.)  Instead, the Court found the complaint replete with allegations of racketeering acts that "ha[d] nothing whatsoever to do with the [plaintiff]."  *Moon*, 776 F. Supp. at 571.  In considering RICO's "pattern" requirement, the court properly considered "only . . . those acts which have resulted in business or property harm to the [plaintiff]."  *Id.*  Other courts have reached similar conclusions.[5]  Plaintiffs do not and cannot cite any contrary authority that would allow them to satisfy RICO's "pattern" requirement based on conduct that allegedly harmed third parties but did not harm Plaintiffs.

## V.    Plaintiffs Offer No Response To Defendants' Additional Arguments Regarding The Document Dump

Defendants' opening brief demonstrates that Plaintiffs' document dump should have been excluded because:  it does not show that Pfizer controlled the content of the publications and educational activities Plaintiffs criticize (Defs' Mem. at Section I.D); it relies on evidence regarding irrelevant conditions (*id.* at Section I.E); and it relies on the activities of third-party companies not alleged to be part of any enterprise (*id.* at Section I.F).  Plaintiffs have not even attempted to respond.

## VI.   The Erroneous Admission Of Documents Regarding A Purported MAC Enterprise Requires A New Trial

Plaintiffs incorrectly state that "[t]he Court properly allowed Kaiser to amend the complaint to add the formal allegation of a MAC enterprise."  (Pl. Resp. at 8.)  In fact, rather than moving to amend under Federal Rule of Civil Procedure 15(a), Plaintiffs simply alluded to proposed amendments in a footnote to the Joint Pre-Trial Memorandum [2500-2], at 59-60 n.16.  Although the Court indicated that it was "inclined to allow that amendment" (2/22 Tr. (Court) at 24:12), it never issued a ruling and Plaintiffs never amended their complaint.

---

[5] *See also, e.g.*, *Vild v. Visconsi*, 956 F.2d 560, 567 (6th Cir. 1992) (holding that the "pattern" requirement is not satisfied by "unrelated predicate acts that allegedly may have harmed ultimate purchasers or other third parties not similarly situated to the plaintiff"), *cited with approval in Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d 720, 723-24 (1st Cir. 1992); *Ray Larsen Assocs. v. Nikko Am., Inc.*, No. 89 Civ. 2809 (BSJ), 1996 WL 442799, at *7 (S.D.N.Y. Aug. 6, 1996) ("[A]cts . . . [that] are unrelated to the predicate acts which allegedly injured plaintiff . . . cannot be considered as part of the activity to extend the scope of the 'pattern'.") (citation omitted); *Shamis v. Ambassador Factors Corp.*, No. 95 Civ. 9818 (RWS), 1997 WL 473577, at *15 (S.D.N.Y. Aug. 18, 1997) (same).

As the Court recently recognized in connection with the Class Plaintiffs' latest amendment of their pleadings, Plaintiffs' footnote and the Court's inclination to allow amendment are no substitute for a proper motion, a formal ruling, and the subsequent filing of an amended complaint:

> THE COURT: . . . [A]m I quite clear here that you tried to amend to add these people through a footnote?  Is that what happened?"
>
> MR. SOBOL:  We didn't think it was necessary to amend them, but, yes, we did identify that by a footnote. . . .
>
> THE COURT:  . . . I need you to just officially move and me to officially allow it.

(2/7/11 Tr. [3288] at 14:6-17.)  Likewise, the First Circuit rejected a plaintiff's argument that a "passing request for leave to amend" made in an unrelated brief "should be treated '"as a Rule 15(a) motion to amend the pleadings before judgment.'"  *Fisher v. Kadant, Inc.*, 589 F.3d 505, 509 (1st Cir. 2009) (citation omitted).

It is now too late for Plaintiffs to move or for the Court to allow them to amend the complaint to add allegations of a MAC enterprise.  "[O]nce judgment has entered, the case is a dead letter, and the district court is without power to allow an amendment to the complaint because there is no complaint left to amend."  *Id.*

## VII.   Other Prejudicial Evidentiary Rulings And Failure To Transfer Venue Require A New Trial

As to the additional grounds for this motion set forth in Sections III and IV of Defendants' opening brief, Defendants will rest on their opening brief and the related briefing incorporated therein.

## CONCLUSION

For all of the reasons set forth above and in Defendants' opening brief, Defendants respectfully request that the Court grant their Motion for New Trial and to Re-Open Evidence or, Alternatively, to Alter or Amend Judgment.

Dated: May 3, 2011

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:    /s/ Mark S. Cheffo
       Mark S. Cheffo
Four Times Square
New York, NY 10036
Tel:  (212) 735-3000
Email:  Mark.Cheffo@skadden.com

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:    /s/ Raoul D. Kennedy
       Raoul D. Kennedy
Four Embarcadero Center
San Francisco, CA 94111
Tel:  (415) 984-6400
Email:  Raoul.Kennedy@skadden.com

WHEELER TRIGG O'DONNELL LLP

By:    /s/ James E. Hooper
       James E. Hooper
1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel:  (303) 244-1800
Email:  hooper@wtotrial.com

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

---

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on May 3, 2011.

/s/ Mark S. Cheffo
Mark S. Cheffo

---

11