# EXHIBIT A



3 of 25 DOCUMENTS

**Hemi Group, LLC v. City of New York**

**No. 08-969**

*2010 U.S. LEXIS 768*

**January 25, 2010, Decided**

**DISPOSITION:**   Reversed and remanded.

**SYLLABUS**

Respondent New York City taxes the possession of cigarettes. Petitioner Hemi Group, based in New Mexico, sells cigarettes online to residents of the City. Neither state nor city law requires out-of-state sellers such as Hemi to charge, collect, or remit the City's tax; instead, the City must recover its tax on out-of-state sales directly from the purchasers. But the Jenkins Act, *15 U.S.C. §§ 375-378*, requires out-of-state sellers to submit customer information to the States into which they ship cigarettes, and New York State has agreed to forward that information to the City. That information helps the City track down cigarette purchasers who do not pay their taxes. Against that backdrop, the City filed this lawsuit under the Racketeer Influenced and Corrupt Organizations Act (RICO), alleging that Hemi's failure to file the Jenkins Act reports with the State constituted mail and wire fraud, which are defined as "racketeering activit[ies]," *18 U.S.C. § 1961(1)*, subject to enforcement under civil *RICO, § 1964(c)*. The District Court dismissed the claims, but the Second  [*2] Circuit vacated the judgment and remanded. Among other things, the Court of Appeals held that the City's asserted injury -- lost tax revenue -- came about "by reason of" the predicate mail and wire frauds. It accordingly determined that the City had stated a valid RICO claim.

*Held:* The judgment is reversed, and the case is remanded.

*541 F.3d 425*, reversed and remanded.

CHIEF JUSTICE ROBERTS delivered the opinion of the Court in part, concluding that because the City cannot show that it lost tax revenue "by reason of" the alleged RICO violation, it cannot state a RICO claim. Pp. 5-15.

(a) To establish that an injury came about "by reason of" a RICO violation, a plaintiff must show that a predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Holmes v. Securities Investor Protection Corporation, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532*. Proximate cause for RICO purposes should be evaluated in light of its common-law foundations; it thus requires "some direct relation between the injury asserted and the injurious conduct alleged." *Ibid.* A link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. *Id., at 271, 274, 112 S. Ct. 1311, 117 L. Ed. 2d 532.*

The City's causal theory cannot  [*3] satisfy RICO's direct relationship requirement. Indeed, the causal link here is far more attenuated than the one the Court rejected as "purely contingent" and "too remote" in *Holmes. Id., at 271, 112 S. Ct. 1311, 117 L. Ed. 2d 532.* According to the City, Hemi committed fraud by selling cigarettes to city residents and failing to submit the required customer information to the State. Without the reports from Hemi, the State could not pass on the information to the City, even if it had been so inclined. Some of the customers legally obligated to pay the cigarette tax to the City failed to do so. Because the City did not receive the customer information, it could not determine which customers had failed to pay the tax. The City thus could not pursue those customers for payment. The City thereby was injured in

the amount of the portion of back taxes that were never collected. As the Court reiterated in *Holmes*, "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step," *id., at 271-272, 112 S. Ct. 1311, 117 L. Ed. 2d 532*, and that "general tendency" applies with full force to proximate cause inquiries under RICO, *e.g., ibid*. Because the City's causation theory requires the Court to move well beyond the first step, [*4] that theory cannot satisfy RICO's direct relationship requirement.

The City's claim suffers from the same defect as the RICO claim rejected in *Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 458-461, 126 S. Ct. 1991, 164 L. Ed. 2d 720*, where the conduct directly causing the harm was distinct from the conduct giving rise to the fraud, see *id., at 458, 126 S. Ct. 1991, 164 L. Ed. 2d 720*. Indeed, the disconnect between the asserted injury and the alleged fraud in this case is even sharper. In *Anza,* the same party had both engaged in the harmful conduct and committed the fraudulent act. Here, the City's theory of liability rests not just on separate *actions*, but separate actions carried out by separate *parties*. The City's theory thus requires that the Court extend RICO liability to situations where the defendant's fraud on the third party (the State) has made it easier for a *fourth* party (the taxpayer) to cause harm to the plaintiff (the City). Indeed, the fourth-party taxpayers here only caused harm to the City in the first place if they decided not to pay taxes they were legally obligated to pay. Put simply, Hemi's obligation was to file Jenkins Act reports with the State, not the City, and the City's harm was directly caused by the customers, not Hemi. The [*5] Court has never before stretched the causal chain of a RICO violation so far, and declines to do so today. See, *e.g., id., at 460-461, 126 S. Ct. 1991, 164 L. Ed. 2d 720*. Pp. 5-9.

(b) The City attempts to avoid this conclusion by characterizing the violation not merely as Hemi's failure to file Jenkins Act reports with the State, but as a more general systematic scheme to defraud the City of tax revenue. But if the City could escape the proximate-cause requirement merely by alleging that the fraudulent

scheme embraced all those indirectly harmed by the alleged conduct, the Court's RICO proximate cause precedent would become a mere pleading rule. That precedent makes clear that "the compensable injury flowing from a [RICO] violation . . . 'necessarily is the harm caused by [the] predicate acts.'" *Anza, supra, at 457, 126 S. Ct. 1991, 164 L. Ed. 2d 720*. Because the only fraudulent *conduct* alleged here is a violation of the Jenkins Act, the City must, but cannot, show that Hemi's failure to file the Jenkins Act reports led directly to its injuries.

The City also errs in relying on *Bridge v. Phoenix Bond & Indem. Co., 553 U.S. ___, 128 S. Ct. 2131, 170 L. Ed. 2d 1012*. There, the plaintiffs' causation theory was "straightforward": The causal link in *Bridge* involved a direct and easily identifiable [*6] connection between the fraud at issue and the plaintiffs' injury, *id., at ___, 128 S. Ct. 2131, 170 L. Ed. 2d 1012* ; the plaintiffs there "were the *only* parties injured by petitioners' misrepresentations," *id., at ___, 128 S. Ct. 2131, 2144, 170 L. Ed. 2d 1012, 1027*; and there were "no independent factors that account[ed] for [the] injury," *id., at ___, 128 S. Ct. 2131, 2144, 170 L. Ed. 2d 1012, 1027*. The City's theory in this case is anything but straightforward: Multiple steps separate the alleged fraud from the asserted injury. And in contrast to *Bridge*, where there were "no independent factors that account[ed] for [the plaintiffs'] injury," *id., at ___, 128 S. Ct. 2131, 2144, 170 L. Ed. 2d 1012, 1027*, here there certainly were: The City's theory of liability rests on the independent actions of third and even fourth parties. Pp. 10-14.

**JUDGES:** ROBERTS, C. J., delivered the opinion of the Court in part, in which SCALIA, THOMAS, and ALITO, JJ., joined, and in which GINSBURG, J., joined in part. GINSBURG, J., filed an opinion concurring in part and concurring in the judgment. BREYER, J., filed a dissenting opinion, in which STEVENS and KENNEDY, JJ., joined. SOTOMAYOR, J., took no part in the consideration or decision of the case.