1

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

```
HARDEN MANUFACTURING CORP.     . CIVIL ACTION NO. 04-10981-PBS
      Plaintiff                .
                               .
           V.                  . BOSTON, MASSACHUSETTS
                               . APRIL 26, 2011
PFIZER, INC., et al            .
      Defendants               .
. . . . . . . . . . . . . . . .
```

#### TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

Newton B. Schwartz, Sr.
Jack Harang, Esq.
James Stegall, Esq.
1911 Southwest Freeway
Houston, TX 77098
713-630-0708
nbs@nbslawyers.com

Levi Boone, Esq. (telephonically)
Boone Law Firm PA
401 West Sunflower Avenue
Cleveland, MS 38732-1772
662-843-7946
LBoone@BooneLawFirm.com

Mark S. Cheffo, Esq.
Skadden, Arps, Slate, Meagher &
  Flom LLP
Four Times Square
New York, NY 10036
212-735-3000
mark.cheffo@skadden.com

***MARYANN V. YOUNG***
**Certified Court Transcriber**
**P.O. Box 506**
**Wrentham, MA  02093**
**(508) 384-2003**

```
Catherine B. Stevens, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY 10036
212-735-3353
catherine.stevens@skadden.com
```

Court Reporter:

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

*MARYANN V. YOUNG*
Certified Court Transcriber
P.O. Box 506
Wrentham, MA  02093
(508) 384-2003

2

1        **P R O C E E D I N G S**

2        CASE CALLED INTO SESSION

3            THE CLERK:  Today is April 26th, the case of In Re

4    Neurontin 04-10981 will now be heard before this Court.

5    Counsel; please identify themselves for the record.

6            MR. STEGALL:  My name's James Stegall.  I'm here with

7    Jack Harang and Newton Schwartz.

8            MR. SCHWARTZ:  For the plaintiffs, Your Honor.

9            THE COURT:  All right.

10           MR. BOONE:  My name is Levi Boone.

11           THE COURT:  All right, good afternoon.

12           MR. BOONE:  I'm here for the Boone plaintiff.

13           MR. CHEFFO:  Good afternoon, Your Honor, it's Mark

14   Cheffo with Catherine Stevens--

15           MS. STEVENS:  Good--

16           MR. CHEFFO:  --for Pfizer.

17           MS. STEVENS:  Good afternoon.

18           THE COURT:  All right, good afternoon.

19           So I guess there's two things to discuss, Mr. Boone's

20   cases and Mr. Schwartz's cases.  I think, I'll summarize where

21   I think things are.  In Mr. Boone's cases I think there's not a

22   lot to discuss, Mr. Boone.  And, but if there's more to tell me

23   from either you or Mr. Cheffo then go ahead.  Essentially where

24   I think Mr. Boone's cases stand at the moment is that Judge

25   Saris has ruled on the recommendation that I made, that she

3

1   adopted it in part and not in part and that essentially what

2   she did was she said she adopted it and dismissed about 161

3   cases of Mr. Boone's.  She did not adopt it with respect to

4   about 41 cases.  They're listed in exhibits to her order and

5   said those cases may proceed.  She directed that within 30 days

6   of her order, and I don't believe that 30 days has elapsed yet.

7   I think we're still in the middle of that 30 day period.  That

8   Mr. Boone and those plaintiffs who are the 41 plaintiffs whose

9   cases proceed are to supplement their discovery in certain

10  respects.  And I think she ordered that Mr. Boone pay fees to

11  Pfizer's counsel for making them, for the motion that they

12  made.

13          So with respect to that, Mr. Boone or Mr. Cheffo, are

14  we all on that same page?

15          MR. CHEFFO:  I think generally we're just –

16  everything you said is correct.  I think just one kind of tweak

17  to that.  There was actually 51 cases that the judge allowed.

18  Forty-one, you're correct, she basically said you have to

19  supplement by May 6th.  That was the 30 days.

20          THE COURT:  All right.

21          MR. CHEFFO:  Then there was another 10 cases in which

22  Judge Saris said they should be redeposed at plaintiffs cost,

23  you know, and expense.  So there's--

24          THE COURT:  Oh, these are the 10 who were deposed.

25          MR. CHEFFO:  Ten who were previously deposed but so

4

1    there's actually about 50 cases, 51 cases that are still

2    existing and then as you said there was 160 some odd cases that

3    were dismissed.

4              THE COURT:  Okay.

5              MR. CHEFFO:  And I think just--

6              THE COURT:  And the 10 redeposed are not subject to

7    the 30 day, May 6th, order to supplement their interrogatories

8    and the like?

9              MR. CHEFFO:  That's correct.

10             THE COURT:  Okay.

11             MR. CHEFFO:  And she did also the cost and Your Honor

12   may recall we had previously submitted, and I think that's

13   fully briefed, our fee application for the motion to compel.

14             THE COURT:  Right.  All right, so – and as a general

15   matter Mr. Boone do you agree that that's where things stand or

16   is there anything else to add to that?

17             MR. BOONE:  No, there's not anything else to add to

18   that, Your Honor, that is correct.

19             THE COURT:  Okay.  So with respect to the 41 cases

20   then that need to be supplemented by May 6th I guess my

21   questions is should I begin to be thinking about a,

22   establishing some schedule for those to proceed to depositions

23   or do you all have a suggestion, some other suggestion as to

24   how to proceed in those cases?

25             MR. CHEFFO:  I'll take a stab at it first I guess.

5

1  You know, Your Honor has a, your order that's in place as kind

2  of like a constitution and it seems to guide us, you know, the

3  15 day rule.

4           THE COURT:  Right.

5           MR. CHEFFO:  So I think we could probably continue

6  that.  we may need to, you know, have a little bit of a

7  respite, you know, for one month while we, you know, get the

8  responses if there's some additional authorizations but I think

9  if you were inclined to continue the, you know, the 15 day, you

10  know, that seems to work for us.  The one other thing just to

11  make sure--

12           THE COURT:  You want some time to basically maybe to

13  digest what he produces rather than start the depositions in

14  May?

15           MR. CHEFFO:  Exactly.  And what we, we have agreed to

16  cause we know that you, both you and Judge Saris have wanted us

17  to, you know, kind of continue a pace is we had a little bit of

18  back and forth but Mr. Boone will I think confirm that we've

19  agreed, what we've agreed to do was in May was to schedule the

20  10 first because, you know, we'd already done some--

21           THE COURT:  Right.

22           MR. CHEFFO:  --work on those.  And I think Mr. Boone

23  has confirmed that he has gotten dates for seven of those 10

24  which, you know, I think is in good faith in that regard.  And

25  then what we'd like to do is see what happens on May 6th, you

6

1   know, whether he's able to comply or, you know, there may be

2   some cases that he withdraws or dismisses from or whatever and

3   then have some period of time where we can digest that and then

4   maybe start in June with the 15 days for those cases if that

5   makes sense to the Court.

6           THE COURT:  Mr. Boone, what do you think about that?

7           MR. BOONE:  Yes, Your Honor, I think that starting in

8   June with the depositions would be good.  Now I may visit the

9   Court relating to the 15 days of deposition.  I know that

10  previously that's the way we've been operating.  That has

11  proven to be a real hardship and it may have contributed to

12  some of the issues that we're dealing with today.  But I'll do

13  that on motion.

14          THE COURT:  All right.  I confess a lack of surprise,

15  Mr. Boone, at the 15 days of depositions proven difficult.  I

16  recollect the conversations we all had last year where it seems

17  to me my memory is anyway that I thought the 15 days was a very

18  optimistic schedule that some of you proposed.  But I think

19  that – so maybe what would make sense is this, why don't I, I'm

20  not sure I'll memorialize this necessarily in an order but I'll

21  assume that you'll do the 10 re-deposition depositions in May.

22  That you've got seven already scheduled sounds like that's a

23  really good start by Mr. Boone and taking care of the other

24  three shouldn't be too hard.  You still have some time to do

25  that.

7

1          Why don't, if you want to – maybe what you all should

2   do, Mr. Cheffo and Mr. Boone, is talk to each other in the

3   middle of May.  I'll operate on the assumption that absent

4   anything else happening we'll start with 15 days of depositions

5   a month in June, just restart that with respect to Mr. Boone's

6   cases.  But why don't you both talk to each other.  I'm sure

7   you do that anyway.  And maybe if, Mr. Boone, you want to file

8   a motion and propose a different schedule that's fine.  You can

9   do that and certainly you're always free to file any motions

10  like that and I'll look at them.  And, but talk to each other

11  and see what makes sense as to if you, I'll hear it contested

12  or I'll hear it agreed, however it is, but – and why don't in

13  any event even if you decide you're not making a motion Mr.

14  Boone why don't we say by May, say May 21st – is that a business

15  day, Maria?  Maria, is the 21st a--

16          THE CLERK:  I'm sorry?

17          THE COURT:  May 21st is that – I got it, never mind.

18  How about by Friday May 20th, that's almost two weeks.  Just

19  file a notice either that you're going to, everyone's content

20  to proceed with the 15 days a month with respect to Mr. Boone's

21  cases starting in June or there's a motion that's been filed or

22  you're going to file a motion, you file it that day.  I think

23  if you're going to file a motion to change the schedule in time

24  for June, Mr. Boone, then you should file that motion by – when

25  do you think you'd know, Mr. Boone, if you want to change that

8

1   schedule?

2      MR. BOONE:  Well, I will know, I will know by May 5th

3   actually because--

4      THE COURT:  When you're putting together the

5   discovery responses?

6      MR. BOONE:  Well yeah, the discovery responses.  And

7   - yes, that's correct.

8      THE COURT:  You want me to say May 9th then if you're

9   going to file a motion to change the schedule?

10     MR. BOONE:  Yes, May 9th.  I could do that by May 9th.

11     THE COURT:  All right.  So why don't we say this, if

12  you're going to file - either file a motion by May 9th to change

13  the schedule or just file a, if you're going to file it by May

14  9th, file it by May 9th and then you can respond, Mr. Cheffo.  It

15  would be helpful to me if you responded by the 20th of May, then

16  I can get it done before June.

17     MR. CHEFFO:  Sure.

18     THE COURT:  And other than that then you don't have

19  to make the June the 20th filing.  Just Mr. Boone will make that

20  motion.  If he doesn't make a motion on the 20th you'll just

21  tell me that you're going to go, a joint filing, you're going

22  forward on the regular schedule.

23     MR. BOONE:  Okay.

24     THE COURT:  All right, anything else with respect to

25  Mr. - oh, one other - so anything with respect to the handling

9

1    of Mr. Boone's cases at the moment?

2            MR. CHEFFO:  No, I think – from my part I think we're

3    just waiting, you know, for the--

4            THE COURT:  Right.

5            MR. CHEFFO:  For the--

6            THE COURT:  Okay.  I mean I don't have anything else-

7            MR. CHEFFO:  Yeah.

8            THE COURT:  I'm just--

9            MR. BOONE:  Yeah,

10           THE COURT:  And, Mr. Boone, do you have anything

11   else?

12           MR. BOONE:  Yes, Your Honor.  We're not in the

13   position to take any of the sales representative depositions at

14   all even on these 10 cases that Judge Saris say that she wants

15   reposed and I bring up those 10 because the defendant knows all

16   of the treating physicians so therefore they can identify the

17   sales rep--

18           THE COURT:  The re-depositions are just re-

19   depositions of the plaintiffs, right?

20           MR. BOONE:  Exactly.

21           THE COURT:  Not redeposing the sales representatives

22   in those cases to the extent they've been – have any of them

23   been deposed?

24           MR. BOONE:  No, and that's what I'm getting at.

25           THE COURT:  Okay.

1      MR. BOONE:  They've not been deposed because we've

2  not been provided information on them and the reason we've not

3  been provided information the defendant has said that they not

4  known all of the plaintiffs' providers so therefore they could

5  not identify all of the sales representatives.  And I said, as

6  to the 10 people who are being redeposed, who have already been

7  deposed, one they have identified I mean for surety all of

8  these plaintiffs' providers so therefore they should be able to

9  give us the names of those sales representatives.

10      Now what we did, Your Honor, back on December 20th of

11  2010 we filed a motion to compel.

12      THE COURT:  I remember that.

13      MR. BOONE:  Yes.  And we were seeking this type of

14  information because I mean these defendants objected to all of

15  the template discovery and I really can't take any depositions.

16  My plaintiffs are being deposed but we can't go forward at all

17  on the plaintiffs' side because they've not responded to--

18      THE COURT:  So you're saying you don't know who a

19  single sales representative is with respect to any of those 10

20  plaintiffs?

21      MR. BOONE:  They provided us the name of a sales

22  represent, they provided us the name of a sales representative

23  that no longer works for them and they did not know the

24  whereabouts which was information totally unfruitful for us.

25      THE COURT:  So wait, just so I'm clear, as to these

11

1   10 plaintiffs you have received the names of the persons who

2   were the sales representatives who called on their providers at

3   the time those providers were prescribing neurontin?

4            MR. BOONE:  I don't believe that is correct, Your

5   Honor.  I'm not verifying but I don't believe that is correct.

6   I don't believe we have received the names of those sales

7   representatives.

8            THE COURT:  What do you think, if anything, you have

9   received with respect to the names of sales representatives for

10  those 10?

11           MR. BOONE:  Your Honor, basically what we've gotten

12  was an objection to all of the interrogatories.

13           THE COURT:  So you don't think you've gotten any

14  names of sales representatives?

15           MR. BOONE:  Well, I'm not going – I can't go on

16  record cause I do recall but I didn't prepare for that

17  particular--

18           THE COURT:  Okay.

19           MR. BOONE:  So I won't go on record and say I haven't

20  received any but I can go on record and say that we've gotten

21  very little information, you know, that would help us to depose

22  any of those sale rep. relative to those 10 plaintiffs.

23           THE COURT:  All right, let me see what Mr. Cheffo has

24  to say.

25           MR. CHEFFO:  Yeah, well, I think I can maybe both

12

1   respond and short circuit this, you know, like Mr. Boone I

2   wasn't aware that this was an issue for him right now but, you

3   know, it's fine that we're talking about it so I can't tell you

4   with respect to the 10.  What I can tell you is that it's our

5   intention, and I do know we have given some names, and it's our

6   intention to the extent that there are provider, you know, we

7   now know the prescribers, certainly we're going to comply with

8   that.  You know it does take some time.  And probably what Mr.

9   Boone is saying perhaps some of his frustration but again,

10  these are folks who prescribed it often 2002, 2001, 2004 so the

11  fact that they are no longer sales reps, you know, is not

12  surprising to me.

13          THE COURT:  Are no longer employed.

14          MR. CHEFFO:  I'm sorry, they're no longer employed by

15  Pfizer is not only surprising, nor is it, you know, what we

16  find in many of these cases there are no sales reps if they

17  received it in the hospital or different situations.  But, you

18  know, as to those 10 I do know that we have given the names of

19  sales reps and we've also given call notes.  Where they match

20  up in those 10 I'm happy to go back this afternoon or tomorrow

21  and try and tell him exactly and work with him on that.  But

22  it's our expectation that once we get the information we will

23  do what we've done for all the other plaintiffs is to give them

24  the sales rep information so Mr. Boone could have an

25  opportunity to depose any or all of them.

13

1        THE COURT:  So maybe the simplest thing to do with

2   respect to those 10 is you'll go back and look over to be sure

3   that either you've already turned over the names of the sales

4   reps or, and the call sheets, and to the extent you haven't

5   that then you'll do that and to the extent you have you can

6   tell Mr. Boone, we did, here's either another copy or here's

7   where it is in the production and the like.

8        MR. CHEFFO:  Absolutely.  We'll certainly do that,

9   Your Honor.

10       THE COURT:  All right.  And then hopefully that'll

11  resolve that.  Maybe that could all get resolved before the

12  sixth so that if either there's no issue or if there is an

13  issue then it's something that Mr. Boone will know about and he

14  can bring up.

15       Anything else, Mr. Boone?

16       MR. BOONE:  No.  You said May the 6th--

17       THE COURT:  Well I'm saying to - in other words I'm

18  saying what I want them to do is they're going, Mr. Cheffo says

19  he's going to go back today or tomorrow and start looking at

20  this to get the information to you.  So by May 6th he should

21  have, Pfizer should have gotten to you all they say they can

22  get you with regard to the sales, who these sales reps are.

23  They may have already done it, but to the extent they - with

24  respect to these 10 people.  Is that a realistic time period?

25       MR. BOONE:  Your Honor--

14

1          THE COURT:  Hold on, I'm just looking at Ms. Stevens

2 and she's beginning to watch the color drain from her face.

3          MR. CHEFFO:  I can promise you everything but then,--

4          THE COURT:  Yes.

5          MR. CHEFFO:  --but Catherine actually has to do it

6 so--

7          THE COURT:  That's why I was looking at her.

8          MR. CHEFFO:  Yeah, yeah.  Thank you, Your Honor.

9          Why don't you tell the Judge.

10          MS. STEVENS:  Your Honor, I think we can certainly

11 get him names and whether the sales reps are still employed by

12 Pfizer then we'll have to go back and check their files to see

13 what records they have of what they detailed at the time.  So

14 they may take a little bit longer but we can certainly get him

15 names and get him the call notes quickly.

16          MR. CHEFFO:  And what we'll do is we'll certainly

17 make sure, I'm sorry to interrupt, but we'll get them well in

18 advance of any depositions that he wants to schedule.  So--

19          THE COURT:  Right but he can't schedule the

20 deposition if he doesn't know who the person is.

21          MR. CHEFFO:  No, but we'll give the names and--

22          THE COURT:  Right.

23          MR. CHEFFO:  --whatever we have.

24          THE COURT:  Okay.

25          MR. CHEFFO:  And then if there's--

15

1          THE COURT:  So by May 6th, Mr. Boone, you'll have all

2   the names with respect to those 10 of the sales reps.

3          MR. BOONE:  Yes.

4          THE COURT:  And you'll work with Ms. Stevens about

5   getting the call notes and if – so after May 6th if on May 6th

6   you say, you know what, I've got what I've got from Ms. Stevens

7   and I'm not happy, you know, they're not telling me the names

8   of people or whatever, then you can always, there's always

9   resort to the filing a motion with the court after conferring.

10  And if, I'm sure they'll move diligently with respect to giving

11  you the other but if you don't think that they are then you can

12  bring of course that to the court as well.

13         MR. BOONE:  Yes.  Your Honor, just one other thing.

14  The defendant responses to the plaintiffs, to the template

15  discovery none of them bears any verifications at all.  They're

16  not, none of them are signed under oath at all.

17         THE COURT:  So I guess I make two points about that,

18  Mr. Boone.  One is that I appreciate your sensitivity to that

19  requirement of the rules.  And the interrogatory answers need

20  to be signed under the rules under oath by the person making

21  the answers and signed by counsel as to the objections if any

22  are lodged, although I have the sense in this case that

23  everybody's lodging objections so then they'd be signed by

24  counsel as well.  So if there are interrogatory answers in your

25  cases that are not signed under oath then what I would suggest

16

1    that you do is I would suggest the following, first you ought

2    to go, Mr. Cheffo go look.  If there's ones that are signed

3    under oath you ought to just get them signed under oath cause

4    that's what the rule requires.  But if they haven't done it

5    what I would do, Mr. Boone, is the local rules of this federal

6    court require before you file a discovery motion that you can,

7    or any motion for that matter, you confer with the other side.

8    I'd call them up or I'd write him a letter and I'd say here's

9    the following, of my 51 cases here's ones that are

10   interrogatory answers that weren't signed under oath.  And then

11   I assume what they'll do is they'll arrange to have them

12   promptly signed under oath and if they're not, if they don't

13   promptly cure the issue or you can't resolve it with them then

14   you should file a motion and then the Court will review it.

15           MR. BOONE:  Yes, sir.

16           THE COURT:  Anything else?

17           MR. BOONE:  No, that's all.  That's all I have.

18           THE COURT:  All right.  With respect to the sanction

19   that judge Saris imposed about the fees where does that stand

20   from each of your perspectives?

21           MR. BOONE:  Your Honor, this is Levi Boone.  Well, is

22   it appropriate at this forum to argue why that's not

23   appropriate?

24           THE COURT:  No, I'll tell you why.

25           MR. BOONE:  Okay.

17

1          THE COURT:  Because--

2          MR. BOONE:  I understand.

3          THE COURT:  Not because that's, I don't mean to

4    suggest that you can't do that.  I just think that that's Judge

5    Saris' – if what you're saying you'd like to do is argue that

6    it's not appropriate, that the order requiring you to pay fees,

7    that portion of the order, should be revisited you need to

8    argue that to Judge Saris because that's Judge Saris' order.

9          MR. BOONE:  I thought it was going to come back to

10   you to make the assessment though.

11         THE COURT:  Fine but if what you, I though what you

12   were saying was you wanted to argue that she said, I don't have

13   the order in front of me but my memory is she said, you pay

14   personally the fees of Pfizer with respect to the motion to

15   compel that led to her order.  If what you want to do is say,

16   Judge, I think Judge Saris shouldn't have imposed any order of

17   payment of fees or should only have imposed an order of half,

18   then I think that would go to Judge Saris in the first instance

19   unless she specifically said to me she wanted me to address it

20   because it's her order.  And it's not even her, I didn't, in my

21   report and recommendation in fact I did not, I recommended a

22   different, a somewhat different disposition with respect to the

23   sanction, not dramatically so but somewhat different.  And so I

24   think that, if what you want to argue is that fees that they

25   incur are not reasonable or are not within the scope of the

1    order she issued then that would be fine and I think you could

2    do that.  Do you understand the distinction I'm making?

3            MR. BOONE:  I think I do.  I would have to argue that

4    on paper to, the distinction that you're making I'd have to--

5            THE COURT:  Yeah, I think if you want to argue that –

6    is what you want to argue that she shouldn't have imposed the

7    fee sanction?

8            MR. BOONE:  Well I thought that you were going to

9    make the final assess, I thought it was coming back to your lap

10   and you were going to assess how much it was going to be and

11   that's what I was going to argue to you.

12           THE COURT:  All right.  I'll hear you on that.

13           MR. BOONE:  And I'm not sure if, perhaps I probably

14   should put it in writing.

15           THE COURT:  Well let me ask you this before we get to

16   that just procedurally.  This is my understanding of the

17   procedural status of that.  Judge Saris issued her order and

18   she said, with certain restrictions, one of which was no more

19   than I think $300 an hour for a lawyer and was it 190 or 150,

20   some number for a paralegal.  I don't have the--

21           MR. CHEFFO:  I think it was 350 and 100 is my best

22   recollection.

23           THE COURT:  350 and 100, all right, whatever it was

24   it is what it says in the order and told you to submit an

25   application.  You then responded and said we've submitted our

19

1   application cause I earlier asked for it and you said in our

2   existing application, docket number whatever, there's no lawyer

3   over the 350 and no paralegal over the, whatever the number

4   was, 110.  And so you said there it is, we want it.  So I guess

5   that puts it in your court, Mr. Boone, cause I guess facially I

6   would look at it and say Judge Saris ordered pay the cost of

7   the motion.  They filed a detailed bill that said this is what

8   we spent on the motion.  The application is within the, by

9   their representation within the guidelines of what Judge Saris

10  said in terms of can't charge more per lawyer or per paralegal.

11  So what's your response?

12          MR. BOONE:  Well--

13          THE COURT:  And if you want to submit something in

14  writing as well that's fine.

15          MR. BOONE:  Well I'll just briefly, I wanted to say

16  that when it comes back to Your Honor in terms of the

17  percentage or the amount there were matters that I think that

18  Your Honor should consider in this case, that I would ask the

19  Court to consider.

20          THE COURT:  Such as?

21          MR. BOONE:  Yes.  Well, such as I believe that, that

22  the filings of the defendant has really led both Your Honor and

23  Judge Saris to conclusions that I don't believe are accurately

24  reflected by the record.  I mean, I mean everybody know and

25  this questions been asked of me before, I mean we are appealing

20

1   the Judge Saris decision.  We have no choice but to do that.

2   but I think counsel obviously know that there's just a plethora

3   of just errors and it's got to be based upon what the defendant

4   submitted to both Your Honor and to Judge Saris because I mean

5   there are things like interrogatories were not answered and I

6   have correspondence that it was, that we sent it to Catherine

7   Stevens.  I mean there are people--

8           THE COURT:  So – wait, Mr. Boone.

9           MR. BOONE:  Actually 20 people that--

10          THE COURT:  Let me just stop you there.  It sounds to

11  me like what you're bringing up is the merits of the order.

12  That is what you're saying – if you want to pursue whatever

13  appellate rights you have, that's fine, and I take no offense

14  at that and I'm sure Judge Saris takes no offense at that.  You

15  do whatever is in your judgment in the best interest of your

16  clients.  And so if what you want to do is say that the order

17  itself was error, there was a mistake or wrong, either

18  completely or in part with respect to individual cases because

19  in fact the record doesn't support it, that's different than

20  the fee application.  The fee application the way I'm looking

21  at it is Judge Saris ruled.  She said this.  She ordered this.

22  So the question is with respect to the fee application is there

23  something or are you telling me that you want to file a motion

24  to stay payment of the fee application pending some motion or

25  appeal you're filing and, but if you just want to reconsider

21

1   the decision that seems to me not the fee application issue.

2   That seems to me a motion for reconsideration.

3            MR. BOONE:  Okay.  Well, Your Honor, let me – can I,

4   may I have a specified time to put in writing, you know, what I

5   want to address to the Court--

6            THE COURT:  Sure.

7            MR. BOONE:  --either by way of a stay or the--

8            THE COURT:  Why don't I, you tell me – why don't I do

9   this.  Why don't I view, I view the situation this way, Judge

10  Saris entered an order.  Pfizer's made its application.  By

11  their representation it facially complies with the guidelines

12  that Judge Saris established.  That is they're only seeking for

13  this motion and it's within the price range or the charge, the

14  hourly rates that she established as the maximums.  You want to

15  file a response.  That's fine.  So you tell me what is, you

16  know, what's – it's April 26th, what's a reasonable date you

17  would request in order to respond?

18           MR. BOONE:  Your Honor, I'd like to respond, I could

19  respond on May the 9th if that's okay with the Court, the same

20  time that I can respond relating to the schedule.  The reason--

21           THE COURT:  That's fine.

22           MR. BOONE:  Okay.

23           MR. CHEFFO:  I just want to say while I certainly

24  have no problem, I would just point out two things.  Mr. Boone

25  did file a response but, you know, I think based on the nature

1    of this and the importance probably to Mr. Boone and we're not

2    going to take an objection if he wants to supplement that.  And

3    I just want to be very--

4                 THE COURT:  A response back before me when you filed

5    the--

6                 MR. CHEFFO:  Before Judge Saris'--

7                 THE COURT:  --bills.

8                 MR. CHEFFO:  --order he did respond to that

9    basically, you know, I don't remember exactly but there was a

10   response--

11                THE COURT:  Before Judge Saris' order it was before

12   me.  I ordered you to submit something--

13                MR. CHEFFO:  Exactly.

14                THE COURT:  --about the bills and you did.  And then

15   he responded then.

16                MR. CHEFFO:  He did.

17                THE COURT:  Yes.

18                MR. CHEFFO:  But again, you know, I mean--

19                THE COURT:  No, I understand.  I think nonetheless

20   that--

21                MR. CHEFFO:  I'm with you, Your Honor, and so I just,

22   I want to make sure because there are some kind of technical

23   issues I think so we're all clear here, you're only talking

24   about this May 9th date only relates to the fee application

25   whatever timelines may run regarding his appellate rights or

23

1  motions to reconsider under the rules are not implicated by

2  this May 9th date.

3           THE COURT:  I'm only - correct.  The only date I'm

4  setting, so we're clear, is Mr. Boone has said to me that

5  before I or Judge Saris issues a further order with respect to

6  the fees, such as the amount in your application is the amount

7  that it will be or anything else, he would like to file a

8  further pleading and I think that's perfectly reasonable.  And

9  so neither Judge Saris nor I will issue an order ordering him

10  beyond the order that she has already issued regarding the

11  amount of money to pay pending Mr. Boone's filing on May 9th.

12           MR. CHEFFO:  And if we could just maybe - I'm sorry.

13           THE COURT:  And if you want to respond to what he--

14           MR. CHEFFO:  A week, could we have a week?

15           THE COURT:  Yes.  So - and then we'll see.  With

16  respect to whether or not an appeal lies, if it does what the

17  time period is, reconsideration motions, what deadlines apply

18  if any, to all of that, that has nothing to do with may 9th.

19  Those are what they are.  And - all right, are we set on that?

20           MR. BOONE:  Yes.

21           THE COURT:  Everybody clear?

22           MR. CHEFFO:  Yes, Your Honor.

23           THE COURT:  Clear, Mr. Boone?

24           MR. BOONE:  Yes.

25           THE COURT:  All right.  So what I've got is on May

24

1    9th, Mr. Boone, you will file your, if you're going to make a

2    request to change the 15 days a month starting in June you'll

3    file that by May 9th.  And on May 9th you'll file any sort of

4    response to the fee application, whatever you want regarding

5    the fee application.

6             MR. BOONE:  Yes.

7             THE COURT:  That you want Judge Saris or I to

8    consider before making a determination as to the amount of

9    money.  And on May 16th Pfizer will file any response regarding

10   the fee application.  And on May 20th Pfizer will file a

11   response to the request.  To the extent it's not a joint, you

12   know, if you want to file a response to whatever Mr. Boone

13   files on May 9th regarding the scheduling you'll do it by the

14   20th or you'll otherwise just let me know no one's seeking a

15   change.  All right.

16            Anything else with respect to Mr. Boone.

17       PAUSE

18            THE COURT:  No?

19            MR. CHEFFO:  No, Your Honor.

20            MR. BOONE:  No.

21            THE COURT:  All right.  Done with Mr. Boone's cases.

22   Mr. Boone you're welcome to stay on the phone if you wish as we

23   talk about Mr. Schwartz cases and you're welcome to not stay on

24   the phone.  It doesn't make any difference to me.  It's up to

25   you.

25

1          MR. BOONE:  Thank you, Your Honor.  I'll just hang

2    on.

3          THE COURT:  All right, fine.

4          That brings us to Mr. Schwartz cases.  To move this

5    along, let me summarize where I think things are, all right,

6    and then if anybody wants to supplement what I have to say or

7    disagrees with what I have to say or thinks I got it wrong,

8    that's fine.  Where I think things are is back last summer,

9    June of 2010 I established a schedule to govern the Schwartz

10   cases.  Similar to the Boone schedule it provided for

11   authorizations, template discovery and then depositions.  That

12   went forward.  In December of 2006 (sic) Judge Saris and I had

13   a, and I apologize for a somewhat longwinded explanation but I

14   think to encapsulate all the issues that are potentially in

15   play I should do this this way.  In December 2010 Judge Saris

16   and I held a joint status conference in this case regarding

17   among other things the cases in which the Schwartz law firm is

18   plaintiffs' counsel and I issued an order shortly thereafter

19   establishing a schedule for briefing of issues to the extent

20   people wanted to raise certain kinds of issues.  If not that

21   day, within a couple days Pfizer made a motion to dismiss

22   approximately 30 something cases that had been brought by the

23   Schwartz law firm claiming that template discovery had not been

24   done or was incomplete or in some way deficient.  The time

25   period, the ordinary time under the rules for responding to

26

1    that motion came and went.  There was no motion if recollect to

2    extend the time period and there was no opposition filed.

3            On or about January 3rd Judge Saris issued an order

4    allowing this unopposed the motion to dismiss and dismissing a

5    number of those cases.  On February, a date I don't recall, but

6    in early February 2010 Judge Saris and I had another joint

7    status conference at which I think it was Mr. Stegall but I

8    could be – it was you, Mr. Stegall, indicated that there were

9    cases that the Schwartz law firm thought it was going to

10   dismiss and other cases it thought it might dismiss but as to

11   the others it needed a period of 30 to 60 days.  Judge Saris at

12   hearing with respect to the first group and me after the

13   hearing had an order with respect to both groups set a schedule

14   of when the Schwartz law firm should inform the Court about

15   those.

16           The first date in February, a few days later, came

17   and went without any filing and then a motion to compel.  That

18   motion to compel was not responded to.  And then the second

19   date came and a second motion to compel where nothing was

20   filed.  And then that all culminated in the order I issued

21   which the Schwartz law firm objected to indicating essentially

22   I was allowing the first motion to compel as unopposed and that

23   the, there had been a subsequent filing by the Schwartz law

24   firm indicating they were dismissing one case and seeking to

25   withdraw from six and indicating that if that was the filing

27

1   that they thought was with respect to the two dates that had

2   been established then maybe they could explain to the Court the

3   discrepancy between the kind of numbers that were being talked

4   about and the sole case that was being dismissed.  There was

5   then an objection and then Judge Saris I think just the other

6   day ruled, overruled the objection finding that that

7   progression of events had not established a quota of cases to

8   be dismissed.

9          So I think where that leaves us is this, within the

10   objection I believe plaintiffs sought the reinstatement of six,

11   alternately referred to as five and seven but I think it was

12   six cases, who were dismissed on the January 3rd order and Judge

13   Saris endorsement overruling the objection doesn't specifically

14   address that and I'm not sure that's really within the

15   objection because my order didn't have anything to do with, at

16   least in my reading of the order, have anything to do with

17   Judge Saris' January order dismissing, allowing the unopposed

18   motion to dismiss.

19          So I guess where I see things is this, if there are

20   in fact cases in that category, that list of people from

21   January who you all want to reinstate then you should just file

22   a straightforward motion to reinstate addressing the two things

23   that I think you know need to be addressed.  One is, was in

24   fact the discovery done or has it been done.  That was the

25   premise in some form of what the motion was.  And two, if you

28

1    think appropriate address either why it wasn't opposed at the

2    time or why it wasn't sought to be vacated until it was sought,

3    first brought up in the objection.  In other words, why now?  I

4    think it's not, this isn't rocket science.  And then if you

5    file such a motion then I suspect Pfizer will file a response.

6    That's usually what happens when motions are filed in court.

7    And then either Judge Saris or I will rule on that.  And that

8    there's in fact I think with respect to Mr. Martinez you filed

9    a motion of that nature.  He was dismissed at some point

10   earlier in the process if my – that was one of your cases,

11   wasn't it?  And then you filed a motion for reinstatement.  I

12   can't remember what Pfizer's response to that motion was,

13   whether they opposed or not.  But in any event I think his case

14   was reinstated at some point.  So I'm not saying that they'll

15   be reinstated or not.  I don't have a view of it.  But I think

16   if, I know that you raised it so if you want to raise it then

17   I'd suggest just raise it in the straightforward easy manner to

18   raise it in.

19           The second issue it seems to me – I'm not going to

20   set a date for filing that motion cause I don't think it's

21   incumbent on the Court to set a date on that.  In other words

22   they were dismissed.  Their status at the moment is they're

23   dismissed.  If you want to bring them back when you think it's

24   the appropriate time to bring them back you file a motion to

25   bring them back.

1          The second – I read from the course of the pleadings

2    that you don't intend to dismiss any other cases.  That's fine,

3    and I read that only because no one ever filed anything saying

4    the cases you want to dismiss.  If you wanted, and I guess so

5    we're all clear, it was never my intention to order you to

6    dismiss cases you didn't want to dismiss.  It was my intention

7    to order you to tell us cases that you wanted to dismiss that

8    you said you knew you intended to dismiss at that moment.  In

9    my view there's a substantial distinction.

10          So the way I read the docket is there's one case

11   since February you've identified you want to dismiss and you've

12   made that known by filing the stipulation dismissal with

13   respect to that case.  Because no other names were filed either

14   on the February date or on the March date, the only conclusion

15   I draw is that there are no other cases at the moment you wish

16   to dismiss which is your choice and that's fine and we will

17   simply proceed with all of your cases and we'll move forward on

18   them.

19          So I think unless you all, you the plaintiffs or you

20   the defendants, have a different view it seems to me where we

21   stand with the Schwartz cases is as follows.  There might be a

22   motion with respect to some of the people who were dismissed in

23   January and if there is then we will deal with that in the

24   ordinary course.  There are, I don't recall the number, is it

25   80 or however many are pending at the moment, Schwartz cases

1    and we need to – I assume, I'm surmising that in the last two

2    months perhaps that 15 day a month schedule has not been

3    followed or have people been doing that in the Schwartz cases

4    all along?

5              MR. STEGALL:  Your Honor, we have been--

6              THE COURT:  Okay.

7              MR. STEGALL:  --continuing with the depositions.

8              THE COURT:  All right.

9              MR. STEGALL:  We have been actively continuing with

10   depositions.

11             THE COURT:  Fine.  So they've been – great.  Good.

12   So then I guess the question I have is sort of where do we

13   stand on that process and then do we just or, you know, we'll

14   just continue on that process to where we reach the endpoint.

15   I don't think – that's the issues that come to mind unless

16   there are others that people, and I'm here – if people think

17   there's other issues or there's anything else people want to

18   bring up, I'm all ears.

19             MR. CHEFFO:   I'll let them talk.

20             MR. STEGALL:  Your Honor, I just wanted – there is

21   also the motion to impose sanctions that is pending and so I'm

22   wondering should I--

23             THE COURT:  Oh right.

24             MR. STEGALL:  Should I--

25             THE COURT:  The motion to compel – I allowed the

31

1  motion to compel.  You mean arising out of the motion to compel

2  that was unopposed that I allowed?

3         MR. STEGALL:  Yes, Your Honor.

4         THE COURT:  Yes, you're right.  That's another issue

5  to address.

6         MR. CHEFFO:  And the – yeah.

7         THE COURT:  And then there's two more motions to

8  compel that I think Pfizer filed with respect to the later

9  date.  One with respect to the date in March and one with

10  respect to then the order that I issued that you then appealed.

11  I'll tell you to short circuit things a little bit, with

12  respect to the order I issued they appealed, I think that while

13  they didn't seek a stay of the order, you know, and I suppose a

14  federal courts professor would think that you ought seek a stay

15  of an order that's issued by the federal court before you just

16  decide to yourself disregard it and they might be generally a

17  wise practice, I think that nonetheless they appealed the order

18  and I understood the appeal to be their, I mean I'm not sure

19  I'm so inclined to address the fact that they didn't comply.  I

20  think what I did say was in some, was it 10 days or something,

21  I don't recall at the moment, you should, explain – either make

22  the filings from the first two dates or supplement and explain

23  just why they're just different, like you changed your mind.

24         So – yes?

25         MR. CHEFFO:  I'm a big fan of the goose gander rule

32

1   and I think what's happened, you know, if you'll recall and I

2   think your chronology certainly is correct, Your Honor, but,

3   you know, we had the February 11th it turns out and February

4   14th, Valentine's Day, was the day I think Stevens and Mr.

5   Stegall were here.  You know here's why I look at it from a

6   little different perspective because, you know, they didn't

7   comply with the 14th.  We didn't move for sanctions.  We just

8   moved to compel three days later after sending letters.  Then

9   March 11th came.  They were supposed to file something else.

10  Again wrote letters, tried to meet and confer.  Didn't move for

11  sanctions, just moved to compel saying can you file it.  And

12  again, this isn't just because this is some technical filing--

13          THE COURT:  Well I'll tell you all the reason I

14  issued my order and said I was contemplating sanctions was

15  because I'm beginning to wonder if you all people had fallen

16  off the face of the earth because you had been at a hearing,

17  Judge Saris, my recollection, said at the hearing in three days

18  file the list that you say you know about.  Nothing happened.

19  Pfizer filed a motion to compel.  I can't recall in all my

20  years in this case a motion Pfizer filed to compel that wasn't

21  responded to either by one that related to your law firm that

22  wasn't responded to by your law firm.  And I can't recall

23  frankly with respect to any other law firm off the top of my

24  head anyone else who didn't do that.  So I thought that seemed

25  rather unusual.  Then the next date came and another, and you

1   didn't do it.  So I put that in cause I was beginning to wonder

2   what happened to the Schwartz law firm and why aren't they

3   responding to the ordinary course deadlines and notices in some

4   form or another.  So, I mean I, that's the principal

5   essentially you're saying you're seeking to vindicate.

6          MR. CHEFFO:  Well, it is but then, I mean and that

7   kind of doesn't even stop there that I've never seen actually a

8   Court issue an order to show cause saying tell me why you

9   shouldn't be sanctioned for missing the prior two deadlines and

10  they don't respond to that either.  And then it's only after

11  that that we moved for sanctions, which the sanctions were not

12  an economic sanction which I still would ask the Court to

13  impose and we'll talk a little about that hopefully.  You see

14  on the sanctions we sought were not kind of pound of flesh--

15          THE COURT:  But I think the order to show cause is

16  what they appealed.  Well you characterize as the order to show

17  cause.

18          MR. CHEFFO:  Well, not really.  Maybe, I'm not sure

19  what they really appealed.  But the order to show cause was

20  tell me why you didn't file the prior orders and here's why it

21  makes a difference.  Again, it's not just, you know, we missed

22  a date and Pfizer's running in because, you know, kind of

23  gotcha.

24          THE COURT:  Yeah.

25          MR. CHEFFO:  The real issue is, you know, we've had

34

1   some candid conversations and I don't want to get back and

2   forth of the lawyer conversations.  I don't think that's

3   appropriate.  But the bottom line is there has been significant

4   prejudice here because way back when going to October when

5   you've asked us to all kind of coordinate, you know, it wasn't

6   just informal.  They gave us a list of presumptive 35 cases.

7   We scheduled, you know, these are not cases that are all in

8   Boston, all in Alabama.

9           THE COURT:  Yeah.

10          MR. CHEFFO:  They're all over the country.  So then

11  they said, well, we want to dismiss some of those cases.  Now

12  it's 80 cases.  Then it's, they've told me today it's 20 cases

13  are going to be dismissed or withdrawn from.  I mean it's

14  basically--

15          THE COURT:  Are you dismissing cases?

16          MR. HARANG:  Your Honor, may I address this?

17          THE COURT:  Sure.

18          MR. HARANG:  The, and I think because a lot of this

19  stems from the conversation – Jack Harang, Your Honor, that

20  were between counsel and the beginnings and this whole part

21  about the reduction of numbers came about as the pronouncement

22  of the settlement came with Mr. Finkelstein's cases and our

23  discussions on what would put our cases in posture to reach

24  into the same category.  Came down to--

25          THE COURT:  That you could reach a settlement with

35

1   Pfizer?

2           MR. HARANG:  Yes, sir.  Yes, sir.

3           THE COURT:  Yeah.  Okay.

4           MR. HARANG:  And in speak, in talking to Mr. Cheffo

5   and said, okay, here's what we have to do.  We understand that

6   the cases that fall into the ideation category or not on the

7   table for Pfizer.  We have other cases that we're going try and

8   prioritize.  Did that and still are doing that.  But I said

9   here's the glitch that comes for us and that is these cases are

10  all referred, mostly were referred to me and, that is to our

11  group.  We can't ethically, morally, legally say hey guys, see

12  you later, okay.  And so what we had to do was go through the

13  cases, come up with a rationale, write the letters to the

14  referring lawyers, let the referring lawyers address their

15  problems with the clients and we have done that on all of these

16  cases per se one or two that we assume we want to get rid of,

17  Your Honor, we feel fall into that category.  There's still

18  probably eight or 10 that may kind of sit of the fence that

19  we're not dealing with.  They have replied, not very quickly.

20  We have sent them another letter that said hurry along or we're

21  going to have to get out of here one way or another, you can

22  take it over or we're going to get out, we've given you enough

23  time.  That 80 something number, Your Honor, is--

24          THE COURT:  80 is about where you are the present,

25  right now pending.

36

1          MR. HARANG:  Yeah, right not.  But there's 30,

2     roughly 30 of those that letters have gone out with reasons,

3     with a sample letter to the referring lawyer, Dear Mr. so and

4     so in Arkansas this is not, we don't want you to write what

5     we're saying but these are the reasons and here's how you can

6     put it in a letter and do it, okay.  And as we know they have

7     sent them out.  And have not been that great but they've had

8     their shoves.  And so when we get back to Houston tomorrow we

9     may have 28 letters sitting on our desk that say, yes, the

10    clients have said it's fine, we don't have any problem with

11    dismissing the case or no, they want, you know, they want to

12    stay in but they understand you're out of the case; one of

13    those kind of things.  So – and it's not that, and I don't know

14    the exact number on this but the depositions have gone forward

15    and the cases that have gone forward.  There was one that was

16    as I know a surprise to us anyway, Mr. Stegall can speak to

17    that more directly cause he's been doing the dep--

18          THE COURT:  So can I ask you two questions?

19          MR. HARANG:  Sure, Your Honor.

20          THE COURT:  One is if essentially what you're telling

21    me is, you're proceeding with the case, just like in every

22    other case, and while you're proceeding with the case you're

23    also negotiating with the other side about a settlement, all

24    right, or--

25          MR. CHEFFO:  That's not accurate.

37

1          THE COURT:  Or discussing--

2          MR. HARANG:  We're not, we're trying to posture that

3    to happen maybe.

4          THE COURT:  Or discussing how you might be able to

5    posture it to possibly get to something that might be something

6    you could all agree upon.  And there's no agreement now.  And

7    if what you're trying to do to get to the place to get an

8    agreement with Mr. Cheffo is knock down, essentially go through

9    the cases and essentially say, you know what, this group of

10   cases we think we might be able to have a shot to persuade Mr.

11   Cheffo to get a settlement with his client and this group we

12   don't think we have a shot with.  Why don't you have those, you

13   know, but you want to proceed with the cases, I'm not ordering

14   you all to do this and settlement is between all of you, but

15   you could tell them you know what, let's not focus on these.

16   You could come to the Court and say you know we'd like to

17   structure the discovery in such a way to facilitate a

18   settlement so we don't want to – you know there's cases that we

19   might be able to settle, we might not, we'd like to put these

20   off.  We'd like to put these at the end of the list and because

21   there's this process we're going through.

22          MR. HARANG:  That's--

23          THE COURT:  Are you having those like--

24          MR. CHEFFO:  See, here's the problem.  The answer is

25   we, you know, we have mediation with the other folks on Friday.

38

1              THE COURT:  Yeah.

2              MR. CHEFFO:  It's court ordered.  And there's nothing

3    personal – that's exactly the conversation that we had and just

4    to be candid we, you know, and I don't think he suggested this,

5    we never said we're going to settle X but basically had

6    conversations of, you know, you've been around the litigation

7    knowing it, you have, you know, a hundred and something--

8              THE COURT:  Right.

9              MR. CHEFFO:  --cases.  There's no way that makes

10   sense to even chat about them when you have these cases that

11   are X, Y and Z.  So that's when they – and we, this isn't just

12   between counsel.  We've actually filed things with the Court--

13             THE COURT:  I remember in November.

14             MR. CHEFFO:  --in our monthly status where we say

15   we--

16             THE COURT:  Right.

17             MR. CHEFFO:  --intend there to be 30 or 40 cases.

18             THE COURT:  So you guys are talking about which cases

19   might be in the pool that would be--

20             MR. CHEFFO:  But here's the problem, we did that back

21   in December, right, and then we go and say, okay, let's focus

22   on those 35 cases.  Then we go and it turns out five of those

23   cases are cases that they say they're going to withdraw from.

24   And I keep, I've been asking for six months, give me the 30

25   cases that you think you're going to proceed, 40 cases--

39

1          THE COURT:  Right.

2          MR. CHEFFO:  --so we could focus on those and we're

3   still now with 80 cases.

4          THE COURT:  So here's the thing with respect to that.

5   to the extent that all of you, in order to maximize your chance

6   of settling it, want to direct the ordering of the cases in a

7   way that's otherwise fairly reasonable but they're not open to

8   that, but the way you get the Court to do something is you ask.

9   So if you want the Court to say, if for example there's 30

10  cases that you think – what you're saying is there's 30 cases

11  you want to get out of or at least your judgment is--

12         MR. HARANG:  In that neighborhood, yes, Your Honor.

13         THE COURT:  That, in that neighborhood there's--

14         MR. HARANG:  Close neighborhood.

15         THE COURT:  And so what you'd really, but it's a

16  process you have to go through and so what you'd really rather

17  do is not do the discovery on those 30 now.  You'd rather put

18  them at the back of the line.  Then you should go to Mr. Cheffo

19  and say these 30 we want to put at the back of the line and we

20  want to make a, can we structure the order, and you can either

21  do it among yourselves or you make a motion.  I mean that's

22  not--

23         MR. HARANG:  That's kind of what we, when he was

24  talking about the 35 cases or so that we start--

25         THE COURT:  Right.

40

1    MR. HARANG:  We did go back and did kind of a quick

2    but did attempt at prioritizing the cases that we've had filed

3    before that--

4         THE COURT:  Right.

5         MR. HARANG:  --didn't pan in that whole process which

6    one of them was a big surprise to us.  But the others, and

7    we've – so, yes, Your Honor, we would love to do it that way

8    and that's what we're trying to--

9         THE COURT:  But then what you have to do, that's by

10   and large something you got to work out with Mr. Cheffo.  In

11   other words if you want to--

12        MR. HARANG:  And he's a very reasonable person, Your

13   Honor, and I think that we probably could do that.

14        THE COURT:  Right.  I mean if there's ones that you

15   want to do later, you go talk to him and say we want to do them

16   later.  And if you can't agree then you come to the Court and

17   ask for that.  The second thing I don't really understand is if

18   – what I hear you saying is look, Judge, it's not so, these

19   aren't just our clients.  We can't just go and say you know

20   what, this is a case that no longer has merit and we want, go

21   to the client and recommend that dismissal or withdraw because

22   we have these other arrangements, there's other lawyers

23   involved.  I understand that, okay.  We set deadlines.  I think

24   I won't surprise you by saying not ever single deadline the

25   Court has established in this multidistrict litigation has been

41

1   met on that day and never continued by the Court, all right.

2   And so if there's a deadline and you think you need more time

3   you know what you're doing, what you do is you file a motion to

4   the Court and say, Judge, you told me to tell you by March

5   whenever, when these cases we're actually going through this

6   process, we want to do this but you know what, we had to do

7   this, we had to do this, we're part way through the process.

8   Right, when you go to the appeals court – you ever do an

9   appeal?

10          MR. HARANG:  A few times, yes, Your Honor.

11          THE COURT:  A few times, all right, and you want more

12  time from the Appeals Court do you file a motion with the

13  Appeals Court that says you gave me 30 days to write my brief,

14  I haven't started it yet, I'm not thinking about it, can you

15  really give me 30 more days?  Or do you file a motion with the

16  Court of Appeals to continue that says I've substantially

17  worked on the brief, I'm moving along but I'm also very busy on

18  these matters in the trial court and these other things.  Can

19  you give me more time, I'm doing it, I'm paying attention to

20  you too but I'm doing it.  And it's a more complicated issue

21  because it's a case of first impression or it's more

22  complicated cause I have to talk to these lawyers.  Just file

23  something.

24          MR. HARANG:  Your Honor, what you're saying is

25  absolutely correct and I think that if you read the first

42

1   paragraph that came in our response was there's no legitimate

2   excuse for not replying to the Court.  And for that we can only

3   ask for an apology.  And I think that, I think there was a

4   misunderstanding as to what was the procedure that should have

5   been followed and I apologize.

6            THE COURT:  And I'm not trying to like, you know,

7   harangue you.  I don't view this as personal.

8            MR. HARANG:  That's okay.  I've had it before.

9            MR. SCHWARTZ:  That's his name.  That's his name,

10  Your Honor, some—

11           THE COURT:  Yes.

12           MR. SCHWARTZ:  --people spell it with a U-E at the

13  end.

14           MR. HARANG:  Drop the U-E, it would have came out of

15  the Bible.

16           THE COURT:  Right.  But I wondering, where do we go

17  from here because I mean from my perspective you haven't asked

18  for more time to explain to me what cases you want to dismiss.

19  So the only inference I draw is then the ones you want to

20  dismiss are the ones you told us about and the rest we proceed.

21  And if you don't want, if you want something different that's,

22  then ask.

23           MR. HARANG:  I think we can, we certainly will ask,

24  Your Honor.  We certainly should have said to the Court, we

25  don't have any at this moment and, but we are in this process--

43

1          THE COURT:  I mean what do you want to do going

2   forward today with the 80 cases?

3          MR. HARANG:  Your Honor, I think if we can hand or

4   sit on the phone in the next day or two with Mr. Cheffo and

5   say, here, these are the next cases we know, we feel that we're

6   going to go forward with.  These are the ones that are in that

7   category that we, we know we're, we've sent letters for.  I

8   think it's some we've actually sent you, I don't know if we've

9   sent you the names of the people but we sent the indicator that

10  they had been sent to the local counsel to, just send the

11  letters on and give him that list.

12         THE COURT:  Right.

13         MR. HARANG:  This is the group that we are not

14  planning on--

15         THE COURT:  I mean is this a group of - so as to this

16  approximately 30 cases is this a group of people who you, that

17  absent the referring counsel giving you something that you

18  don't know about the case, a new fact, a new reliable fact--

19         MR. HARANG:  Witness.

20         THE COURT:  A new witness that you, one way or

21  another you intend to withdraw from the case at a minimum?

22         MR. HARANG:  Yes, Your Honor.  Yes, Your Honor.

23         THE COURT:  All right.

24         MR. HARANG:  As soon as we feel like we've fulfilled

25  an ethical and--

44

1          THE COURT:  You've gone through the process that you

2    need to do.

3          MR. HARANG:  --professional responsibility.

4          THE COURT:  That you've notified them and had the

5    conversations and then you intend to withdraw from those cases.

6          MR. HARANG:  That's what our letters say to them,

7    Your Honor.

8          THE COURT:  All right.

9          MR. HARANG:  I think we attached a copy of one of the

10   letters in the motion.  I'm not sure.  But it says, absent

11   that, you know, the client has an opportunity to--

12         THE COURT:  Okay.

13         MR. HARANG:  --go with you or get out or one of the

14   other things but we're not staying in.

15         THE COURT:  All right.  So as to those cases, all

16   right, if those are – to paraphrase what I previously ordered

17   if those are cases that you now intend to dismiss or seek to

18   withdraw from, right, that is now, not 35 years from now, then

19   it seems to me you should tell Mr. Cheffo who those people are

20   and give him the list of names and it would make sense to not

21   proceed with, not put Pfizer to the expense of litigating those

22   cases for the moment and the Court with the burden of

23   adjudicating anything that might come up pending either those

24   people deciding to pursue the cases pro se, those people

25   deciding to dismiss or those people deciding to have other

45

1    counsel appear on their behalf and, or too much time going by

2    such that it's not reasonable for the Court to wait for them to

3    make that decision.

4            MR. HARANG:  We gave them a 30 day deadline inside of

5    the letter which I think kind of fits within the cannons of

6    what you're, you know, enough time to--

7            THE COURT:  Yeah.

8            MR. HARANG:  --say do this kind of things.  And that

9    time is running out and that's why we've--

10           THE COURT:  All right.  So that leaves 50 case – so

11   in the first instance you'll talk to Mr. Cheffo about that and

12   give him a list.  That leaves 50 cases, okay.  Are those 50 we

13   just move forward on or no?

14           MR. HARANG:  Yes, Your Honor, there are 10 in the 50,

15   that's what I was saying to you, that--

16           THE COURT:  Yeah.

17           MR. HARANG:  --there's 10 in the 50 that there's a

18   question, we can think of being categorized in the group that

19   could be deposed but they would be the last ones that I would

20   depose of that group of 50 they'd be the last 10.

21           THE COURT:  So the 40 you want to go first.

22           MR. HARANG:  And we can do that.  I mean we can give

23   them that, in that sequence, that order so.

24           THE COURT:  In other words there's 40 you'd say Tier

25   I and 10 in Tier II or are you saying--

46

1          MR. HARANG:  Yes.

2          THE COURT:  --one to 50.

3          MR. HARANG:  Yeah – no.  That's correct, Your Honor.

4          THE COURT:  One to 50.

5          MR. HARANG:  There's a distinction that we make.

6  We're candidly--

7          THE COURT:  So you think you can rate them

8  specifically enough to say this is my best case, my second

9  best, my third best, my 50th?

10          MR. HARANG:  We have cases that are suicides.  We

11  have cases that are bonafide suicides--

12          THE COURT:  No, I'm just asking if you can rate

13  them--

14          MR. HARANG:  No, I understand, yeah, but that's – and

15  then there are those that gray down from those categories and,

16  yes, that's correct.

17          THE COURT:  And so I don't know what to be frank with

18  all of you, what significance to me that – from my perspective

19  they all go forward.  They would do discovery on all of them

20  unless one of two things happens.  You all decide among

21  yourselves to settle then obviously we're done with that case.

22  Or the plaintiff decides to dismiss, we're done with that case.

23  Or if you withdraw then either somebody else comes in, I'll

24  have a conversation with them about scheduling, or they go pro

25  se and then we'll put them in the way we're treating the pro se

47

1    cases.

2              MR. HARANG:  Yes, Your Honor.

3              THE COURT:  You guys among yourselves if you wish to,

4    you know, I haven't gotten down to the level of which person's

5    case or which deposition goes in which order cause I think

6    you're all better suited than me to figure that out.  And it's

7    important to all of you to, you know, to know, to tell Mr.

8    Cheffo these are our, this category and that category, all in

9    favor of sharing information.  I think it makes this kind of

10   process move better and that's fine but that's between all of

11   you.

12             I mean that comes back to what you're telling me is

13   you're ready to go on 50 of the cases.  Some depositions have

14   already occurred on some of them and you're ready to keep going

15   on the depositions with those 50.  And the 30 you really don't

16   want to do anything on pending at least enough time to play out

17   this process.

18             MR. HARANG:  Yes, Your Honor.  Yes.  And that's it in

19   a nutshell and in the process we've taken--

20             THE COURT:  So if I were to summarize this, would it

21   be fair to summarize it in the following fashion.  That you

22   would be prepared to give a list by the close of business

23   tomorrow to Mr. Cheffo of 30 cases in which absent,

24   approximately 30, absent something – that you have, that in

25   those 30 cases you have told the referring counsel you

48

1    recommend dismissal or in any event you intend to withdraw

2    absent something coming up from them in the course of that

3    process and that that would play out sometime in the next maybe

4    15 days, maybe 30 days.  I'm not necessarily at the moment

5    setting an arbitrary deadline on it.  And so as to those you

6    don't want to proceed with depositions at the moment.

7                MR. HARANG:  That would include the ones we've

8    already sent the letters to because that's how the--

9                THE COURT:  It includes whoever--

10               MR. HARANG:  Yeah.  Sure.  Sure.

11               THE COURT:  You know who it includes, whoever you

12   want to do that to in their case.

13               MR. HARANG:  I just didn't want a misunderstanding

14   with the Court because that--

15               THE COURT:  Yeah.

16               MR. HARANG:  --30 constitutes some that we've already

17   sent letters on and--

18               THE COURT:  The only people who aren't in the 30--

19               MR. HARANG:  Huh?

20               THE COURT:  The only people who aren't in that 30 are

21   the people who have already been dismissed.

22               MR. HARANG:  That's correct.

23               THE COURT:  Okay.  So you have 80 something cases.

24   It could be from my perspective zero or it could be 80 or any

25   number in between.  All it is is if there's people that today

49

1  you don't want to proceed with depositions on then you got to

2  tell Mr. Cheffo that you don't want to proceed with depositions

3  on those and the reason you don't want to proceed with

4  depositions is because you have, you have or you will tomorrow

5  recommend to their lawyers, their referring lawyers, that you

6  want to withdraw or dismiss the case.

7          MR. HARANG:  Sure.

8          THE COURT:  Fine.  That's a reasonable reason for me

9  to allow you not to proceed with depositions in those cases if

10  you're representing that you've done that and you want to do

11  that for a period of time.  But - a period of time to allow

12  that to play out.

13         MR. HARANG:  Yeah.

14         THE COURT:  But other than that everybody else we

15  continue with depositions as you've been doing.

16         MR. HARANG:  And we can have that to him, let's say

17  by Thursday morning, Your Honor, giving us time to get back and

18  get to--

19         THE COURT:  Noon on - all right, you have to fly

20  back.

21         MR. HARANG:  Yeah.  Yeah.

22         THE COURT:  Okay.  So close of business Thursday?

23         MR. HARANG:  Sure, that'd be great.

24         THE COURT:  All right.  All right.

25         So before we get to the sanction issue, Mr. Cheffo,

50

1  with respect to what to do about the Schwartz cases do you have

2  anything to say?

3        MR. CHEFFO:  No, I think, I view it as pretty much

4  two categories for purposes.  One is they're either in or

5  they're out because really--

6        THE COURT:  Yeah.

7        MR. CHEFFO:  --what I'm - and I think for the Court's

8  purposes because one of the issues, and again I just want to

9  state this on the record so we're not back here because what's

10 really important for me at this point is I mean I'd like all

11 the cases to be dismissed obviously but if a case, you know, is

12 in Arizona, Canada, it's no big surprise.  If someone else is

13 in Arizona I'm going to send someone to take a deposition in

14 Arizona.  If there's a case that ultimately pops up that was in

15 Arizona I would send, we'd use that trip.  So that's why - if

16 30, that's great.  Then we'll know that there's 50 and we'll

17 schedule those.  But the 30 or whatever number it is has to be

18 defined.  There has to be some definition cause the problem is

19 we haven't been able--

20       THE COURT:  So this is what I want you to do,

21 Mr. Harang.

22       MR. HARANG:  Okay.

23       THE COURT:  If you want this relief, if you want not

24 to proceed with depositions as to any individual case for a

25 period of time you need to file a motion, all right.  And I'll

51

1   give you more than, it doesn't have to be a long notion.  You

2   file - this is where it stands, from my perspective every case

3   that you have right now that has not, forget about the ones

4   that are dismissed, every case that's pending is on schedule,

5   it's part of the 15 days a month of depositions and fair game

6   for anybody to proceed with depositions in that.  If you want

7   to put somebody in the suspend category because you want to go

8   through the process of seeking to withdraw, you know, going

9   through what you need to do before you file a motion to

10  withdraw or seeking to persuade or recommend to someone that

11  they might consider dismissal then that's fine.  And I'm

12  telling you in advance that I would view, if you make the

13  representation to me that you're doing that process then for at

14  least a period of time I would view that as a reasonable basis

15  to suspend that, exempt that case from the deposition process.

16  But you need to put on the record that you want to do that in a

17  pleading signed by one or more of you and you need to attach a

18  list of the cases in which you're doing that in.

19          Now if you want to file the list under seal I'm okay

20  with you filing it under seal but until you either, until I say

21  or Judge Saris says that they're exempt, they're not exempt,

22  all right.  Now if you want to share the list with Mr. Cheffo

23  among yourselves for your own purposes you will, I'm telling

24  you all that if you're doing that and you've told me that as to

25  the people on this list we've sent a letter recommending

52

1   dismissal or saying to absent and agreeing to dismissal the

2   Schwartz law firm is going to or all of you are going to

3   withdraw, absent hearing something unusual from Pfizer, I would

4   exempt that person, that case from the deposition list.  But

5   you file that.  I'm not going to set a deadline on when you

6   file it.  You can file that whenever you want.

7           MR. HARANG:  Thank you, Your Honor.

8           THE COURT:  But until you file it those people aren't

9   exempt.  You file whenever you do.  I'll promptly read it and

10  issue an order.  You have my permission in advance to file the

11  exhibit to it listing the names and case numbers under seal.

12  And--

13          MR. HARANG:  And I think your rules provide that we

14  can supply that to them just on a public filing is what it

15  says.

16          THE COURT:  Right.  Fine.  So – all right, that takes

17  care of the process of the cases, all right.

18          MR. HARANG:  Thank you, Your Honor.

19          THE COURT:  I'm still--

20          MR. SCHWARTZ:  Your Honor, may I be heard on the

21  scheduling matter.  Mr. Harang may not remember it but on

22  Thursday, the day he asked for the deadline, he has a court

23  ordered deposition that is an issue being decided whether to

24  take it for a case that's being mediated in federal court.

25          THE COURT:  You don't have to worry about the

53

1    deadline, do you know why?  Notwithstanding the fact that he

2    asked for the Thursday deadline I imposed no deadline.

3                MR. SCHWARTZ:  It may take an extra day and also Mr.

4    Cheffo may be busy doing his mediation those two dates for

5    preparation with the Judge.

6                THE COURT:  Well here's the two things.  You don't

7    need to worry about either of those things because, A) I'm not

8    imposing a deadline.  All of your - you're Mr. Schwartz, right?

9                MR. SCHWARTZ:  Yes, Your Honor.

10               THE COURT:  All right.  All of your cases that your

11   law firm is in are going forward.  All of them are subject to

12   discovery and deposition, every single one.

13               MR. SCHWARTZ:  Until we say they're not.

14               THE COURT:  Until I say they're not.

15               MR. SCHWARTZ:  Okay.

16               THE COURT:  And I'm not going to say they're not

17   unless you file a motion that says we're seeking to withdraw or

18   we're trying to go through the process to withdraw, we're

19   recommending to the client.  Absent you telling me that,

20   they're all out there for deposition and they're fair game for

21   Pfizer and fair game for you.  And I'm not setting a deadline

22   cause that's up to you.  If you want to make that request, you

23   make that request.  You don't want to make that request, don't

24   make that request.  But I'm not going to, I'm not going to sort

25   of just say, well, we'll take care of these and you can give

54

1    the list.  If you want to make the request in writing in a

2    pleading that you want to do that, fine, and if you do and if

3    you say what I've indicated you say then in all likelihood I

4    will exempt temporarily that case from discovery.  But right

5    now every one of your cases in subject to discovery and not

6    exempt.  And you don't have to worry about Thursday and you

7    don't have to worry about Mr. Cheffo cause you don't need Mr.

8    Cheffo to make that filing and, though you need to confer.  Mr.

9    Cheffo has a lot of people and I'm sure on that issue there's

10   probably somebody else with whom you could confer.

11          All right, so anything else on that, Mr. Schwartz?

12          MR. SCHWARTZ:  No, Your Honor, except one other

13   matter that you presented that we had a motion to reinstate

14   right now one of the 39 that were dismissed who did comply with

15   discovery three days later, a Sherry Groves through Jennifer--

16          THE COURT:  So here's the thing about that.

17   Mr. Schwartz.

18          MR. SCHWARTZ:  --we'll file--

19          THE COURT:  This is, if you want to reinstate –

20   there's a lot of different numbers.  Okay, when I – no

21   disrespect but in your pleading you listed six names if I

22   recall.

23          MR. SCHWARTZ:  Correct.

24          THE COURT:  Once you said there were seven in the

25   pleading you wanted to reinstate and somewhere else you said

1    there were five you wanted to reinstate.  It was what it was.

2    So if there are people that you want to reinstate, be it one,

3    five, six, seven, or every single one, as I said at the outset

4    just file a motion.  File a motion and address two things in

5    your motion, all right.  One, establish in the motion with

6    supporting documentation that in your view shows that these

7    people in fact complied with their discovery obligations at

8    some point in time be it before, whenever, they've done the

9    template discovery or they've complied and since that was the

10   reason they were ostensibly dismissed.  And second, some

11   explanation as to why now?  Why when the motion was filed there

12   was no opposition?  Why when the order was issued there was no

13   prompt motion to vacate or reconsider?  Why did it come up now?

14   You all, one of you explained that with respect to Mr.

15   Martinez, how it all transpired and why it was a good faith

16   mistake.  And, so address that issue.  And then of course

17   before you file a motion confer with Pfizer as required under

18   the rules and then file it.  And then Pfizer will file a

19   response and then the Court will rule on it either we'll have a

20   hearing or we won't have a hearing but we'll rule on it and

21   we'll address it.  And you can file that motion whenever you

22   want.  I'm not setting a time to file it.  There's no deadline

23   to file it.  I'm not saying that when you file it will be

24   timely.  It's just you file it whenever you're ready and then

25   we will adjudicate it when it's ripe.

56

1          MR. SCHWARTZ:  Thank you, Your Honor.

2          THE COURT:  All right.

3          That leaves just the – so we're all set on the status

4    of the cases, the Schwartz cases.  Good.  All right.

5          That leaves just the sanction question.  I'm willing

6    to hear from any – the only person who's not going first on

7    this is me.

8          MR. CHEFFO:  Well, you know, again I think to frame

9    the issue as I said earlier, you know, this wasn't a "sanction"

10   that we sought was I think what I would consider non-

11   traditional sanction.  The sanction was multipart.  It was, you

12   know, based on what we see in some of the – so I think it's

13   both on the noncompliance but I think it's now based on the 30

14   to 50 to 80.  We think the recertification at this point if I

15   had to ask for one focus, and I would almost – if you want to

16   take that out of the sanction category as what would be a

17   prudent case management so I could argue either, you know, if

18   you're not inclined to have sanctions I would still urge the

19   Court at this point with these 80 cases with the time lapse

20   with the fact that, and no disrespect, that I think that, how

21   to say this politely, I think their focus on the litigation has

22   been more intense in the last six months than it had been in

23   the last five years.  And I think that as a result their

24   interaction with their clients has, there's been some time

25   passage and I think what that has led to is somewhat of a

1  disconnect perhaps not, I wouldn't say all, but between some of

2  their clients both interest.  And, you know, we saw, this is

3  one example, a woman who both sides went down to take her

4  deposition and she showed up, twice didn't show up for

5  depositions in another state and then that's the one case that

6  they move to dismiss on.  And I don't think that that's, you

7  know, there's a number of folks out there who I think may or

8  may not be as interested and also not, I think complied fully

9  with their discovery obligations.  So I would urge the Court

10 either as a sanction or just from a case management perspective

11 to deal with the recertification issue.

12         THE COURT:  So what do I do with recertification?

13 You're saying I order them to go talk to all their clients and

14 then certify that they want to go forward with all their cases?

15         MR. CHEFFO:  Yeah, and we've basically attached a,

16 you know, they could comment on it but we attached an affidavit

17 both from them and from their, it's short, it's a one-pager.

18 It's basically, you know, what we found is is when you actually

19 talk to people, and we've done this here and we've done this

20 also in other jurisdictions, and at this point when the cases

21 have been pending five or six years and someone goes and says

22 by the way, look, not only are you interested but, you know, if

23 you now proceed and if we take depositions and ultimately if

24 your case is dismissed you will have to bear potentially the

25 costs of--

58

1          THE COURT:  So impose the British rule after the

2    certification?

3          MR. CHEFFO:  Well it's not attorney fees.  It's just

4    what the federal rules require in terms of cost of depositions.

5    Putting aside a sanction issue, just--

6          THE COURT:  Right.

7          MR. CHEFFO:  --are you interested enough, and I say,

8    you know, without getting into the details, we've now been

9    through this litigation and we've talked about 14 or 15 of

10   these cases that they have that are as ii understand it, you

11   know, ideation cases.

12         THE COURT:  See here's, I'll tell you I'm not so

13   inclined to impose a certification process simply because – I

14   understand, it has some appeal to me as in the dress of case

15   management but my general thought is that we need to proceed,

16   all right.  What my own view of what's transpired since

17   February is a waste of a lot of people's time.  I mean

18   essentially, no disrespect to the Schwartz law firm, but we

19   burned through a lot of trees, a lot of paper, a lot of time

20   for myself and for Judge Saris, for plaintiffs' counsel and for

21   defense counsel and we've gone in one giant circle.  We are

22   right back where we were in February in front of Judge Saris

23   and me when the Schwartz law firm said there were about 30

24   cases that they wished to seek to withdraw or dismiss from.

25   And in between we had lots of motions to compel and orders

59

1  ignored and motions not responded to and objections and lengthy

2  pleadings and then we come right back to the same place.  And

3  so why we went through that process is not for me to reason

4  why.  And fortunately that's not an issue that I have to

5  adjudicate is why we went through that process.  It somewhat

6  defies my understanding as to why we went through that process,

7  and I certainly don't understand how it advanced the cause of

8  the plaintiffs getting closer to judgment in their favor but we

9  are where we are.

10       So to me it seems to me that the course for this case

11  is to move forward and keep moving ahead.  Now, and if the –

12  that's why I'm not setting dates for the Schwartz law firm to

13  say they – if they want to dismiss cases, they can dismiss

14  cases.  They don't want to dismiss cases our doors are open for

15  business and we're going to be adjudicating all of the cases.

16  But--

17       MR. CHEFFO:  I understand that.

18       THE COURT:  I'm sympathetic to your position--

19       MR. CHEFFO:  I have a dual interest too.  I mean I

20  want to move the cases and I don't see them necessarily, and if

21  you've ruled I'm not trying to revisit that but here's, you

22  know, I don't, I really don't, Your Honor, and I don't think

23  Pfizer does, wants to be in a situation later on moving for

24  sanctions on, you know, cases.  And while I appreciate that we

25  now have a procedure for these 80 cases, but we have 80 cases.

60

1    And now we're going to go and take depositions and, you know,

2    unless they move.  And even in the 50 cases and what I'm really

3    trying to avoid is to make sure that there's a serious focus by

4    the plaintiffs, and if they say that there is and there's

5    compliance, but if we're back here later in three or four

6    months with a list of 10 depositions of cases--

7              THE COURT:  Well I understand what the plaintiffs to

8    be asking for implicitly is they want to proceed with their

9    cases except possibly with whatever cases, if any, that they

10   identify to the Court that they don't wish to proceed on.  At

11   the moment they've identified, well they've identified one in

12   March and six that they wish to withdraw from in March or five,

13   I don't recall.  Other than those of all of the approximately

14   80 cases we're talking about I understand they wish to proceed

15   with and that they want to go forward.  And so go forward we

16   will.

17             I mean I'm open to it but of course what you, the

18   issue that comes up and the issue that's going to come up I can

19   tell you now based upon my experience in this case is that you

20   will have among - I don't know this but if prior experience is

21   a guide, you will have cases in which as you begin to develop

22   and prepare them that you decide that you wish not to proceed

23   in them.  And that revelation will come to you on the eve of

24   the deposition, during the deposition, after the deposition.

25   And when there's a lot of those or when they seem to come after

61

1   a lot of preparation if prior experience is a guide Pfizer's

2   going to come here and complain.  I'm not threatening you.  I'm

3   just telling you; you've been here, you've been in the

4   litigation, you know what happens in these cases.  And what

5   seems sensible, I mean if you think the cases are good then

6   pursue them.  I'm fine with that.  But if they're going to be

7   evaporating then maybe it's better to evaporate them before you

8   spend a lot of time on them and before they spend a lot of time

9   on them, that's all.  But you have to decide if you want them

10  to evaporate or not because they're all going forward unless

11  you file a motion.

12          MR. HARANG:  Thank you, Your Honor.

13          THE COURT:  And I'll think about the certification

14  issue.  I will tell you that since what comes to my mind as the

15  synopsis of what we've been through and I'll give you a chance,

16  any one of the three of you to respond, it's just a waste of

17  time.  And so I don't know that it addresses it but one

18  sanction that comes to mind is a monetary sanction to either

19  the court or to Pfizer for some part of that because I don't

20  know what the point of it was.  And, I mean I'm not sanctioning

21  you for objecting to my order.  I don't care about that.

22  people object all the time and that's fine.  But I don't

23  understand what, where we are now that's different than where

24  we were in February other than a lot of paper that got done.  I

25  mean do you have anything you want to say about all this?

62

1          MR. HARANG:  The distance between now and February,

2    Your Honor, was – looking through my eyes and seeing where we

3    are it's kind of like drawing up the plans for a house and all

4    of the stuff that has to--

5          THE COURT:  So why not file a motion for more time?

6          MR. HARANG:  Your Honor, we certainly should have.

7    There is--

8          THE COURT:  Or a motion that says, you know what,

9    there isn't anybody at the moment that we can identify.

10         MR. HARANG:  Those words have come out of my mouth

11   probably quite a few times, Your Honor, and I think that that

12   should have happened.  And that's why that response led off

13   with that paragraph.  There is no justification for not

14   responding to the Court.  How it happened, it just, it didn't

15   happen, Your Honor.  I feel relatively certain that it'll never

16   happen again and--

17         THE COURT:  I hope more than relatively.

18         MR. HARANG:  Well, probably with great certainty I

19   can tell you that it won't happen again and certainly was not

20   able to put a pen on a piece of paper in our office.  But--

21         THE COURT:  And, so what should I do?  I mean he,

22   look, he said, I mean I have what I have.  Should I – what, if

23   anything, should I do in response to all that transpired?

24         MR. HARANG:  I think you have done, there's nothing

25   more personally in my eyes that you could do to instill, one,

63

1    the fear of the Court and the fear of the Lord and (laugh)--

2          THE COURT:  They are different.

3          MR. HARANG:  Certainly they are, Your Honor.  And

4    they have different powers, one is jail and the others hell but

5    (laugh)--

6          THE COURT:  I didn't say that in my order.

7          MR. HARANG:  I know, Your Honor.  But – and that's

8    happened.  If the purpose of a sanction is to say by the way,

9    this is what should've been done, that impact has been created.

10   The steps that were being done to implement what was said, what

11   was discussed that led to that discussion in February that's

12   been being done.  And--

13         THE COURT:  Yeah, I'm not – I understand you're doing

14   that.

15         MR. HARANG:  Yeah.

16         THE COURT:  And I'm not ordering you to do that

17   because that's your decision to do.  From a case management--

18         MR. HARANG:  As it was our decision to say this is

19   how many cases we had back then and--

20         THE COURT:  And from a case management perspective

21   it's useful, that's why Judge Saris and I issued the order, is

22   for lawyers to tell the Court that there are cases which aren't

23   yet gone but we think are going to go and we think we can tell

24   the Court on this date and that's why we set dates to do that.

25   but those dates, one thing I learned was that didn't work in

64

1   this situation.  So therefore that's why whatever I do,

2   certification or not, we're going forward on all cases and no

3   cases will be suspended from depositions unless you file a

4   pleading that says you don't want to go forward in the case.

5          MR. HARANG:  Yes, Your Honor.

6          THE COURT:  And if you want to take it out

7   temporarily to do something you can file a pleading to do that,

8   but - I guess I'll, you know, I'm not going to prolong this any

9   longer but I mean if there's something else, fine.  If not,

10  I'll take it under advisement the question of whether I should

11  do certification or if I should impose some monetary sanction

12  or if it's enough the way it is.

13         I'll be honest with you, I hate imposing monetary

14  sanctions.  I hate imposing sanctions.  It's one of the least

15  rewarding and most painful aspects of this job but one of the

16  reasons that it comes to mind here is I just don't understand

17  why here beyond just, you know, we're not talking about one

18  order that got missed in a pile of email.  We're talking about

19  multiple orders and motions and that then, at any point in time

20  in a one-page pleading could have been remedied by either,

21  Judge, we're looking into this, we need more time; Judge,

22  there's no cases to dismiss; we might want to do this but we're

23  not ready.  You gave us this much time and here's the reasons

24  we need more time and - but nothing.  So what it caused people

25  to do is the things people do when it looks like a law firm

65

1   fell off the face of the Earth and they issue orders to see,

2   (knocking) anybody home?  And if they're a party they file

3   motions and both those things take time and effort on a party's

4   part, mine.  That's just why, that's why I threw it out there.

5   That's what came to mind.

6          MR. HARANG:  There's no question.  I mean there isn't

7   and I can't say that there's, any rationale and for – I mean

8   there isn't.  There's no excuse for doing it, Your Honor, and--

9          THE COURT:  Do you want to go – I'm sorry, go ahead.

10         MR. HARANG:  And, you know, it should meet within the

11  Court's purview to do whatever you feel I think.  But I think

12  that the speech you just gave may have come, gone out of this

13  mouth in other directions and that also was maybe I should have

14  looked over too and said, you know, the bucks got to stop

15  somewhere along here.  And so there's no excuse for that.  I

16  mean there wasn't, Your Honor, and I don't know, you know, I

17  could say, oh--

18         THE COURT:  I understand.

19         MR. HARANG:  --well the order – and I can come up

20  with all kinds of – and I've been doing this long enough, I can

21  come up with a lot of reasons why something happened.  There's

22  no reason.

23         THE COURT:  Do you want the certification or don't

24  you?

25         MR. HARANG:  Your Honor, the certification honestly

66

1   with as many, you know, we've got people in rural South

2   Carolina.  We've got people in rural Arkansas.  To get that

3   process, just the process of getting them to, a notary to get

4   the thing done is probably going to – it'll have its effect.

5   It'll probably eliminate a good--

6            THE COURT:  Are you in communication with them?

7            MR. HARANG:  Oh, yes, Your Honor, sure.

8            THE COURT:  So this isn't--

9            MR. HARANG:  And so isn't local counsel that--

10           THE COURT:  Right.  All right, so this isn't like the

11   last time around where the certification I went through way

12   back when where there were some people who, I'm not saying it

13   was you guys, but there were some plaintiffs' counsel with

14   respect to some plaintiffs they didn't even know where they

15   were.  And, you know, the person had moved on over the time and

16   they couldn't find them and they couldn't get them to respond.

17           MR. HARANG:  I mean do we have, you know, we don't

18   see them once a week.

19           THE COURT:  No, I don't, I'm not asking--

20           MR. HARANG:  And some of these people we've never

21   seen but the local counsel has and we've concurred with local

22   counsel and communicated with these people when they did their

23   interrogatories, when they did--

24           THE COURT:  All right.

25           MR. HARANG:  --all of their discovery processes, Your

67

1    Honor.

2           THE COURT:  I'll think about it.

3           MR. HARANG:  No, this is not a, you know, hey by the

4    way, and I've been in a lot of mass litigation and I know, I

5    clearly understand the people that have never seen--

6           THE COURT:  Okay.

7           MR. HARANG:  --or talked to or--

8           THE COURT:  Right.

9           MR. HARANG:  --maybe haven't written to some of these

10   people.

11          THE COURT:  Yeah, all right.

12          Do you have something else, Mr. Cheffo?

13          MR. CHEFFO:  I just have two quick things.  You will

14   take it under advisement, I think we said we're going to say,

15   you know, just like ECFs didn't get answered, briefs just don't

16   get written overnight and we did have to do that.  You'll take

17   that and do what you're going to do with it.  But I would say

18   this goes back to case management issue because, you know, it's

19   not just the paper and the time.  We've been now in limbo and I

20   feel like when we're leaving here that, not for any faults of

21   the Court, but now there's 80 cases and candidly because of

22   this expectation of 30 we've been trying to triage depositions,

23   collect, you know, cause collection of the medical records is

24   very expensive.  So we now have a bolus of 80 cases and

25   hopefully in the next few days or week we'll hear about them.

68

1    But I guess I'm raising this from a scheduling perspective

2    because, you know, we're not in a position to if they don't

3    dismiss the 80 cases we're going to need more time now because

4    I don't know which cases--

5            THE COURT:  Have I set a deadline for the end of the

6    depositions?

7            MR. CHEFFO:  Well we just have our 15 or 20 days--

8            THE COURT:  Is it just doing 15 a day, we're doing 15

9    days a month until we're done.

10            MR. CHEFFO:  I mean frankly, you know, when we got

11   this list of 35 we geared up and did everything we're supposed

12   to we believe for those 35 cases they gave us and we assume

13   that--

14            THE COURT:  This list of 35 was the 35 ones you

15   thought, they thought were the best.

16            MR. CHEFFO:  That they thought they were going to

17   proceed with.

18            THE COURT:  Okay.

19            MR. CHEFFO:  And that's, you know, we – again in

20   fairness they said there may be a few cases so they said

21   between 30 and 40 but we had this agreement let's proceed and

22   that's the ones we've been scheduling.  For the rest, you know,

23   I can't say nothing's happened but certainly there's been, the

24   valve has been turned off to a large extent.  So, you know, we

25   may need some time.

69

1            THE COURT:  So here's the thing.  One, it's fine with

2    me among yourselves to proceed first with the 35.  Two, if you

3    get to the point where you need more time because you focused

4    on the, because they made representations to you with respect

5    to wanting to get rid of, they might get rid of certain case –

6    they were going to proceed with these 35 and not necessarily

7    the others and so you didn't move on those 35 and then you want

8    more time.  You'll ask for more time and you'll explain that's

9    why they want it and I would assume that it would pretty

10   unlikely that they would want to come forward and say we

11   represented to them that we weren't going to move forward on

12   those.  And so they didn't, the released them and we relied on

13   our representation but now we don't want them to rely on our

14   representation, we don't want to give them more time.

15            MR. CHEFFO:  Right.

16            THE COURT:  Now you'll run up against a separate time

17   issue which is Judge Saris and I want to move these cases.

18            MR. CHEFFO:  That's really what I'm--

19            THE COURT:  Right.

20            MR. CHEFFO:  Yeah.

21            THE COURT:  And so what, you know, you all face and

22   I'm going to ponder and probably discuss with Judge Saris is

23   this.  We want these cases to move forward.  So far there's

24   nothing on the record except that one case that's being

25   dismissed and there's six withdrawn that suggests to me that

70

1   any of these 80 odd cases aren't intending to be proceeded

2   with.  And so that is there's approximately 80 something cases.

3   There's one dismissed in March.  Six motions to withdraw, I

4   think they're still pending.  And, but all the rest of Schwartz

5   cases there's been discussion that maybe they want to get rid

6   of some or not but they're all on the record as they want to

7   go, according to the docket which is what the Court needs to

8   make its decisions by and the pleadings and the docket, they're

9   all ready to go.  You're fine for your scheduling to focus on

10  those 35.

11         We'll have to think about, Judge Saris and I, that's

12  what we have.  We're going to proceed with those 80.  If

13  there's, you know, what do we do about the fact if people

14  vacillate and, you know, if for example they said 55 cases they

15  wanted to get, 45 cases they were not going to proceed on and

16  so you relied on that 45 and then, you know, what do we do with

17  that if then they want to proceed with some or all those 45 and

18  how do we address that.  I don't have an answer for you at the

19  moment but I'm pondering that.  And if this – the best analogy

20  I can give you is if we were setting the trial dates we'd be

21  setting trial dates for all 80 and plaintiffs would be ready

22  and defendants would be ready and I might be willing to order

23  them, the 35 first, but you brought the case, you better be

24  ready to litigate it.  And if you don't want to litigate it

25  file a pleading that says you don't want to litigate it.

71

1            I don't want to, I understand the position that that

2    puts you in.  I'm trying to think about how to reasonably

3    manage the cases but I'm not sure, I'll think about

4    certification but I'm not sure if it isn't just another

5    sidestep.  It would potentially reduce cases but it doesn't,

6    while we do that we don't move any forward necessarily.  And so

7    I'll think about how to address that.  All right.

8            MR. CHEFFO:  Thank you, Your Honor.

9            THE COURT:  Anything else?

10           MR. HARANG:  I think not.

11           MR. SCHWARTZ:  No, Your Honor.

12           MR. HARANG:  Thank you.

13           THE COURT:  All right.  Pleasure seeing you all.

14           MR. CHEFFO:  Thank you, Your Honor.

15           MR. SCHWARTZ:  Thank you, Your Honor.

16           THE COURT:  We're adjourned.

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

72

CERTIFICATION

1

2      I, Maryann V. Young, court approved transcriber, certify

3  that the foregoing is a correct transcript from the official

4  digital sound recording of the proceedings in the

5  above-entitled matter.

6

7  /s/ Maryann V. Young                June 1, 2011

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25