# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------ x

In re:  NEURONTIN MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

------------------------------------------------------------ x

THIS DOCUMENT RELATES TO:

*Anderson, et al. v. Pfizer, Inc., et al.*, No. 06-11024-PBS.

------------------------------------------------------------ x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

**PROPOSED DOCUMENT**

**UNREDACTED VERSION FILED UNDER SEAL**

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or "Pfizer") submit this reply memorandum in further support of their motion for sanctions in the cases of Plaintiffs David Weatherford, David Pettit, Janice Lee, and Patricia Brockman, who are represented by the Law Offices of Newton B. Schwartz ("the Schwartz firm").

As an initial matter, the Schwartz firm now complains that it should not be held responsible because it "did not insist that each deposition go forward." (Schwartz Memo. in Opp. [3599], at 3.) However, the cases have been pending for years, were certified, and are subject to pending deadlines. Moreover, this motion and the costs incurred in discovery of these cases could have been avoided if the Schwartz firm had simply sought a stay of discovery to determine the merits of these cases before proceeding with depositions. The Schwartz firm's attempt to shift the blame to Pfizer for requesting that discovery move forward in these four cases is absurd.

At the April 26, 2011 status conference, this Court ordered the Schwartz firm to provide a "list of names [that] it would make sense to not proceed with . . . ." (4/26/11 Hearing Tr. [3582-

1] at 44:17-24.) The Court explicitly cautioned the Schwartz firm that all of its other cases would be "subject to discovery and deposition, *every single one*." (*Id.* at 53:10-12 (emphasis added).) Because the Schwartz firm failed to include these four cases on that list or to seek a stay of discovery at any time in the months before the depositions, Pfizer was obligated to incur unnecessary expense in taking depositions in cases for which there is no objectively reasonable basis to proceed.[1]

Nothing in the opposition memorandum filed by the Schwartz firm highlights any evidence that would constitute a reasonable basis to pursue these claims. If anything, the speculative nature of the arguments offered by the Schwartz firm merely underscores that these claims are unfounded and that no significant investigation was undertaken before they were filed.

### I.   David Weatherford (prescribed Neurontin only after the alleged incident)

The Schwartz firm has not contradicted the clear evidence showing that Mr. Weatherford was not taking Neurontin at the time of or before



---

[1] The Schwartz firm also complains that more than one attorney attended the depositions on behalf of Pfizer. (*See* Schwartz Memo. in Opp. [3599], at 3.) However, that argument has no bearing on whether the Schwartz firm is in continued violation of Rule 11, § 1927, and this Court's certification Order. At most, that argument would only be pertinent in a proceeding to determine the reasonableness of the amount of attorneys' fees awarded. Pfizer reserves its right to seek reasonable attorneys' fees and costs after this motion is resolved.

[2] The Schwartz firm also attached some miscellaneous records dated *after May 12, 2003*, which are, therefore, irrelevant to whether Mr. Weatherford was taking Neurontin at the time of his injury.

2

Further, the Schwartz firm speculates that Mr. Weatherford may have purchased Neurontin from Rite Aid Pharmacy ("Rite Aid"), and it attaches a letter from Rite Aid dated July 12, 2011 stating that, at this point, Rite Aid has destroyed its records predating September 2004. (Schwartz Memo. in Opp. [3599], at 9; Schwartz "Exhibit III" [3599-6].) In light of the late date on this letter, however, it is clear that the Schwartz firm did not request records from Rite Aid until *after* Mr. Weatherford's deposition on June 27, 2011. As such, if Rite Aid destroyed any relevant pharmacy records in accordance with the timeframe set out in its document retention policy, such spoliation is attributable to the Schwartz firm's long, unjustified delay in seeking the records necessary to support Mr. Weatherford's complaint, which was filed more than five years before the Schwartz firm sent the record request. The Schwartz firm's failure is particularly egregious in light its certification to this Court in December 2007 that it had *"reviewed the relevant medical records* and allegations of the complaint and . . . believes pursuit of the action is warranted." (CMO & Order Re: Mots. to Withdraw [949], at 2-3 (emphasis added).) The Schwartz firm cannot use its own failure to timely collect and review records and investigate its client's claims to cast doubt on the present record, which shows that Mr. Weatherford did not use Neurontin on or before May 12, 2003. Regardless, the Schwartz firm's speculation that Neurontin records may have been destroyed by a pharmacy would not explain why there is no evidence whatsoever of any doctor writing a prescription for Neurontin for Mr. Weatherford prior to May 25, 2003.

None of the equivocal testimony or speculative arguments submitted by the Schwartz firm casts doubt on the clear evidence showing Mr. Weatherford was not taking Neurontin



Because the evidence shows that Mr. Weatherford was not taking Neurontin at the time of his alleged injury, there is no reasonable basis to proceed with his suit.

3

II.   **David Pettit (continued to take Neurontin)**

The Schwartz firm does not deny that David Pettit continued to take Neurontin long after the class-wide suicidality warning was added to its labeling, and that he was still taking Neurontin as recently as the day of his deposition. Moreover, the Schwartz firm does not even attempt to explain how an alleged failure to warn could have even arguably caused his injury, considering that the Neurontin labeling has included an anti-epileptic class-wide suicidality warning for several years. Thus, the necessary element of proximate cause in Mr. Pettit's claim cannot be established because he cannot show that the alternative warning, which he alleges should have been provided, would have changed his use of Neurontin. As such, the Schwartz firm has failed to present any objectively reasonable basis for this case to go forward.

III.   **Janice Lee (statute of limitations and lack of injury)**

The Schwartz firm does not dispute any of the following: (1) Ms. Lee actually believed that Neurontin was the cause of her alleged injury as of early 2001; (2) the statute of limitations applicable to this case is three years; and (3) Ms. Lee did not file her claim until April 27, 2006, which was more that five years after she initially formed the belief that Neurontin caused her injury. Thus, in the absence of some basis to toll the statute of limitations, it is undisputed that Ms. Lee's claims are time-barred.

While the Schwartz firm makes the conclusory assertion that equitable estoppel should apply,[3] Ms. Lee cannot establish equitable estoppel under South Carolina law, which requires proof that a defendant somehow "induced [plaintiff's] failure to comply with the statute of limitations." *Wiggins v. Edwards*, 442 S.E.2d 169, 171 (S.C. 1994). "An inducement for delay may consist of either an express representation that the claim will be settled without litigation or other conduct that suggests a lawsuit is not necessary." *Hedgepath v. Am. Telephone & Telegraph Co.*, 599 S.E.2d 327, 338 (S.C. Ct. App. 2001). Pfizer did neither in this case, and

---

[3] The Schwartz firm also makes a passing reference to *American Pipe* tolling, but it neither explains how *American Pipe* applies to Ms. Lee's claims, nor identifies any class action that could even arguably have tolled them. (*See* Schwartz Memo. in Opp. [3599], at 2.)

4

there is nothing in the record to support such a claim. Equitable estoppel cannot be established where, as here, a plaintiff presents "no evidence of conduct on the defendant's part warranting estoppel." *Black v. Lexington Sch. Dist. No. 2*, 488 S.E.2d 327, 330 (S.C. 1997). A plaintiff must present some evidence "that the defendant made . . . misrepresentations or misled the plaintiff or her counsel." *Id.* at 331 (quoting *Gadsden v. Southern R.R.*, 206 S.E.2d 882, 883 (S.C. 1974)).

In this case, Ms. Lee has not and cannot point to any representation of Pfizer that induced her not to file a lawsuit or "lulled [her] into 'a false sense of security.'" *Hedgepath*, 599 S.E.2d at 339 (citations omitted); *see also* 51 Am. Jur. 2d, Limitations of Actions, § 149, p 721 ("[T]he party seeking to toll the statute of limitations must explain why due diligence did not lead or could not have led to the discovery of the facts and the cause of action."). The Schwartz firm does not point to any conduct on the part of Pfizer that allegedly induced Ms. Lee not to act on her belief that Neurontin caused her injury. Indeed, there is none. Instead, the Schwartz firm argues that, even though Ms. Lee actually believed that Neurontin caused her injury in 2001,[4] she lacked "[medical] knowledge" of causation.[5] (*See* Schwartz Memo. in Opp. [3599], at 14.) However, the absence of a medical opinion would not have prevented the statute of limitations from running. It is well-settled under South Carolina law that the limitations period begins to run when a plaintiff has actual knowledge, as Ms. Lee did in this case, or constructive knowledge of the basis for a claim, not when "a full blown theory of recovery is developed." *Snell v.*

---

[4] The Schwartz firm notes that ████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
Regardless, Defendants dispute that Neurontin caused Ms. Lee's alleged injury, for many reasons.

[5] Tellingly, the Schwartz firm does not cite to a single case where the doctrine of equitable estoppel was found to apply. In *Hedgepath v. American Telephone & Telegraph Co.*, 599 S.E.2d 327, 338 (S.C. Ct. App. 2001) and *Ingram v. Kasey's Associates*, 531 S.E.2d 287 (2000), the courts found that equitable estoppel did not toll the statute of limitations. The other two cases the Schwartz firm cites, *Mayes v. Paxton*, 437 S.E.2d 66 (1993) and *Evins v. Richland County Historic Preservation Commission*, 532 S.E.2d 876 (2000), do not even discuss the doctrine of equitable estoppel for purposes of tolling the statute of limitations and, therefore, are completely inapposite in this context.

*Columbia Gun Exchange, Inc.*, 276 S.C. 301, 278 S.E.2d 333, 334 (1981). Accordingly, a medical opinion as to causation is not required. In *Knox v. Greenville Hosp. Sys.*, 608 S.E.2d 459 (S.C. Ct. App. 2005), for example, the court found that a medical malpractice claim was time-barred because the limitations period ran from that date the *plaintiff* knew that the insertion of an IV may have caused him injury, and the *Knox* court explicitly rejected the plaintiff's argument that "he did not discover that he had a cause of action until his orthopedic surgeon informed him of the true nature of his injury" – the exact same argument that the Schwartz firm propounds here. *Id.* at 571; *see also Kelly v. Univ. of Conn. Health Ctr.*, 963 A.2d 1, 7 (Conn. 2009) (explaining that knowledge of an injury triggers the limitations period "despite the absence of an expert medical opinion"). As such, Ms. Lee's failure to obtain a medical opinion regarding causation cannot provide a basis for tolling the statute of limitations under a theory of equitable estoppel. Because the undisputed testimony shows that Ms. Lee actually believed that Neurontin caused her injury in 2001, the limitations period began to run at that point, and her claims filed more then five years later are indisputably time-barred.

### IV.  Plaintiffs Who Continue To Take Medications With A Suicidality Warning

The Schwartz firm does not dispute that [REDACTED]. Rather, in its response, the Schwartz firm merely sets up a "straw man" argument by focusing on the adequacy of the warning (*see* Schwartz Memo. in Opp. [3599], at 11-13), but it wholly fails to address Pfizer's actual contention – that Plaintiffs cannot show that the allegedly inadequate warning actually caused them injury. Quite simply, the adequacy of the warning is a moot point where – as here – the undisputed evidence shows that Plaintiffs would not have followed the alternative warning. *See Anderson v. Green Bull, Inc.*, 322 S.C. 268, 293 (Ct. App. 1996) (holding that a "seller is not liable for any injuries caused by the use of the product if the user ignores the warning"); *see also Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007) (dismissing claims by plaintiffs who continued to take the medication even after filing suit); *Whalen v. Pfizer, Inc.*, 862

6

N.Y.S.2d 812 (table), 2005 WL 2875291, at *3 (Sup. Ct. 2005) (finding no injury where plaintiff, with knowledge of alleged misrepresentation, continued to use the product). Because the undisputed evidence shows that these Plaintiffs cannot establish the necessary element of proximate cause, there is no good faith basis to pursue their claims, and the Schwartz firm is in continued violation of Rule 11, 28 U.S.C. § 1927, and the Court's Certification Order.

## CONCLUSION

For the reasons stated above and in Pfizer's Memorandum in Support of its Motion for Sanctions [3581], the Court should impose sanctions on the Schwartz firm and dismiss the claims of South Carolina Plaintiffs. The Court should award Pfizer its costs and attorneys' fees – incurred in taking these Plaintiffs' depositions and in bringing this motion – as a sanction for the Schwartz firm's violation of Rule 11, § 1927, and this Court's certification Order.

Dated: September 7, 2011

                        Respectfully submitted,

                        SKADDEN, ARPS, SLATE, MEAGHER
                           & FLOM LLP

                        By: /s/ Mark S. Cheffo
                            Mark S. Cheffo

                        Four Times Square
                        New York, NY 10036
                        Tel: (212) 735-3000
                        Mark.Cheffo@skadden.com

ROPES & GRAY LLP

By: /s/ Justin J. Wolosz
Justin J. Wolosz
BBO #643543

Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Email: justin.wolosz@ropesgray.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on September 7, 2011.

/s/ Justin J. Wolosz
Justin J. Wolosz

8