EXHIBIT C

```
 1                UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
 2

 3   _____

 4   IN RE:  NEURONTIN MARKETING,
     SALES PRACTICES AND PRODUCTS
 5   LIABILITY LITIGATION,          Civil Action
                                    No. 04-10981-PBS
 6
                                    August 17, 2010, 3:55 a.m.
 7   _____

 8

 9

10            TRANSCRIPT of MOTION HEARING

11         BEFORE THE HONORABLE LEO T. SOROKIN

12       UNITED STATES MAGISTRATE DISTRICT JUDGE

13                  1 COURTHOUSE WAY

14                 BOSTON, MA   02210

15

16

17

18

19

20

21
                   DEBRA M. JOYCE, RMR, CRR
22                   Official Court Reporter
                 John J. Moakley U.S. Courthouse
23                1 Courthouse Way, Room 5204
                       Boston, MA  02210
24                      617-737-4410

25
```

```
 1   think the -- there is not an agreement on that motion or is
 2   there?
 3              MR. FROMSON:  No, your Honor, there's opposition.
 4              THE COURT:  So let me just summarize this motion, make
 5   sure you all understand what I understand the motion to be, and
 6   then I'll hear first from you, Mr. Fromson, because it's your
 7   motion.
 8              Essentially, there are expert witnesses in all of
 9   these products liability cases.  You plan to use them in all of
10   your 80 or so products liability cases when they go to trial
11   around the country, inferring that there's a strong chance that
12   other plaintiffs who are represented by other counsel may use
13   the same experts.
14              MR. FROMSON:  Yes, your Honor.
15              THE COURT:  And there are ten or so, and in your view
16   their expert testimony is the same in every case.  And what you
17   want to do is preserve their testimony but preserve trial
18   testimony, have their testimony taken in a courtroom,
19   videotaped with ideally Judge Saris presiding, I take it, and
20   the opportunity for each side to make objections, her to rule
21   contemporaneously on the objections, and then the depositions
22   would be available for each of the trials.
23              In addition, you want to do the same with Mr. Franklin
24   because his testimony is essentially not case specific.
25              That's what I understand you want, and they oppose it.
```

        THE COURT: So let me ask you this question: So -- two things that strike me about it. One is that all of these cases, if they go to trial, are going to trial in other federal courts around the country, and the whole premise of the MDL is we at the MDL take care of all the common discovery and rule on the major motions to dismiss, summary judgment issues, but then they all go back. And I would imagine that with respect to these witnesses there may be disputes about scope of the testimony. We're not talking about leading or non-leading questions, we're talking about substantive questions about the scope of the testimony, and those are essentially trial rulings.

        So the question, number one, is that really sensible in the division of authority within the MDL? Does that really make sense? Number one.

        And number two, given that if we -- if Judge Saris or I allow the testimony, it leaves open, presumably, the door for the trial judge to say I want to exclude that testimony upon an objection from either one of you. But -- so in that sense it's not finally determinative. But, on the other hand, if we exclude the testimony, if there's an objection by Mr. Cheffo to some line of questioning and we sustain the objection and, therefore, you don't elicit it, therefore, it's not in the videotape, then you go off to Kentucky or wherever and try that case and you want that, the only recourse is to bring in the

1   really couldn't have or would be kind of lost on these
2   particular issues -- on these particular plaintiffs.
3       I also think that the issue that we have a fundamental
4   legal issue is unavailability. Now, they're talking about
5   making this easy, but in order to show a videotape of an
6   expert, at least as I understand the law, it's pretty clear
7   that the expert has to be unavailable unless there's an
8   agreement by the parties or there's legitimate unavailability
9   under the rules at the time of trial. That would not kind of
10  abrogate those rules by just having a video available.
11      Again, I think we're going to be in the situation
12  where we go, we spend 20 days of back and forth preparing of
13  experts and tons of time and the utility of this by the time
14  that we ultimately would even consider using it at trial would
15  be basically nil.
16      You know, the other thing is, this is, frankly, and
17  absolutely, in my view at least, a premature motion. We
18  have -- at this point there are no trials set, not in the
19  federal courts; there's not cases been remanded. There's been,
20  you know, to credit of counsel, they've looked at their cases
21  again, even Mr. Finkelstein went from 80 cases to 40 cases. So
22  this is a litigation that is still developing in terms of
23  numbers of cases, what's trial ready, what's not trial ready.
24  So I think it's premature to basically assume we're going to
25  need to have all these experts for future trials when at this

```
 1   point we don't know what the landscape of the trials are going
 2   to look like.
 3           THE COURT:  So -- do you have anything about all of
 4   that, Mr. Fromson?
 5           MR. FROMSON:  Of course.  I'll try to be brief.
 6           Judge, we've culled down the cases --
 7           THE COURT:  Not about that --
 8           MR. FROMSON:  This is completely consistent with the
 9   complex manual of litigation in disperse litigation where
10   you're going to have multiple live appearances.  You want to
11   avoid that.  That's exactly what we're trying to do.  While
12   there's no individual trial looming, there's remand.  This is
13   about to become dispersed litigation in the next few months.
14   We're dealing with six experts from all over the country, one
15   in England, one in California, one in Florida, one in
16   Pennsylvania.  We simply shouldn't have to move forward at our
17   own peril with these experts who want to retire, may not want
18   to be involved in the litigation anymore in order to prove
19   unavailability.  That's not why this Court should order it.
20           THE COURT:  We wouldn't have to rule on
21   unavailability.
22           MR. FROMSON:  You wouldn't have to --
23           THE COURT:  I understand the argument is that it's a
24   futile endeavor because it won't satisfy unavailability.  If it
25   won't be admissible, why bother?  Again, I don't have to rule
```