UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                       )
IN RE: NEURONTIN                       )
MARKETING, SALES PRACTICES             )
AND PRODUCTS LIABILITY                 )
LITIGATION                             )
                                       )
_____)    MDL Docket No. 1629
                                       )
THIS ORDER RELATES TO:                 )
                                       )    Master File No. 04-10981-PBS
BLUE CROSS & BLUE SHIELD OF            )
ALABAMA, ET AL.                        )
                                       )
v.                                     )
PFIZER INC., ET AL.                    )
                                       )
C.A. No. 06-12295-PBS                  )
_____)
```

REPORT AND RECOMMENDATION ON
<u>PLAINTIFFS' MOTION TO REMAND</u>

November 17, 2011

SOROKIN, M.J.

Pending is the Motion to Remand this action to the Alabama state court of the Plaintiffs Blue Cross and Blue Shield of Alabama ("BCBS") and Municipal Workers Compensation Fund ("MWCF") (Docket # 650). For the following reasons, I RECOMMEND that the Court ALLOW their motion.

I.  <u>PROCEDURAL HISTORY</u>

On May 12, 2006, the Plaintiffs filed a Complaint in the Circuit Court of Montgomery,

1

Alabama against Pfizer Inc.[1] and David Longmire, MD in which they allege that they have suffered damages as a result of the Defendants' unlawful and fraudulent marketing scheme designed to promote the off-label use of Neurontin. Docket # s 668-4, 668-5. The Plaintiffs allege therein that because Pfizer was prohibited from promoting Neurontin for off-label uses, it developed and implemented a "peer selling" scheme in order to circumvent the law and to reap profits from increased sales of Neurontin. See, e.g., Docket # 68-4 at ¶¶ 6, 40-56. Pursuant to this strategy, Pfizer enlisted doctor-spokespersons, including Dr. Longmire, to make representations and misleading statements about Neurontin's efficacy to other physicians at events orchestrated by Pfizer. Id.

The doctor-spokespersons received fees for participating in marketing events such as medical education seminars, advisory board meetings, consultants meetings, speakers' bureaus, and similar events. Id. at ¶ 47. The Plaintiffs claim that due to the actions of Pfizer and Dr. Longmire, they were caused to pay for Neurontin when it was not medically necessary or effective for the condition for which it was prescribed. Specifically, the Plaintiffs allege that the Defendants violated the Alabama Deceptive Trade Practices Act ("ADTPA"), Ala. Code § 8-19-1, et seq. Docket # 668-5 at ¶¶ 170-76. In addition, the Plaintiffs assert claims against all of the Defendants for: fraud, deceit and suppression (id. at ¶¶ 182-88); negligent or wanton conduct (id. ¶¶ 190- 194); negligence or wantonness per se (id. at ¶¶ 195-201); and conspiracy (id. at ¶¶ 202-04). Finally, the Plaintiffs assert against Pfizer only a claim for unjust enrichment (id. at ¶¶ 177-81). The Complaint includes only causes of action arising under state law, and expressly states

---

[1] Also named as defendants are Warner-Lambert Company, Warner Lambert Company, LLC, and Parke-Davis. These defendants are not relevant to the instant motion.

2

that "any claims available to Plaintiffs under federal law are specifically disclaimed." Id. at ¶ 19.

On June 13, 2006, Pfizer removed the action to the United States District Court for the Middle District of Alabama, citing diversity jurisdiction under 28 U.S.C. § 1332 as its basis for doing so. Docket # 668-2. On June 26, 2006, the Plaintiffs filed in that District a motion to remand the case to state court. Docket # 650-2. On December 27, 2006, the matter was transferred to this Court as part of the Neurontin Multi-District Litigation ("MDL"). By February 17, 2006, all pending motions to remand within the MDL had been stayed until resolution of the motion for class certification. See Docket # 279.[2] On February 27, 2007, the Plaintiffs filed a motion for a decision on their motion to remand. Docket # 650. A hearing was held on April 17, 2007. Supplemental briefing was filed on January 8, 2008, and again in October 2011.

II. DISCUSSION

Removal of an action from a state court to the United States District Court on the basis of diversity of citizenship is governed by 28 U.S.C. § 1441(b), which provides that cases not involving a federal question "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). The removal statute should be strictly construed and any doubts about the propriety of removal should be resolved against the removal of an action. In re Pharm. Indus.

---

[2] On August 29, 2007, the Court denied, without prejudice, the Plaintiffs' initial motion to certify a nationwide class of consumers and third-party payors who purchased Neurontin for off-label indications. Docket # 831. On May 13, 2009, the Court also denied the Plaintiffs' renewed motion for class certification. Docket # 1780. A motion for reconsideration was denied on May 17, 2011. Docket # 3469. On July 7, 2011, the class Plaintiffs appealed the decision denying class certification to the First Circuit Court of Appeals. See Docket # 3529.

3

Average Wholesale Price Litig., 431 F.Supp.2d 98, 105 (D.Mass.2006) (Saris, J.) (citing Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir.1999)). The removal of an action does not in itself create jurisdiction and a removing defendant faces the burden of demonstrating the federal court's jurisdiction. See BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., 132 F.3d 824, 831 (1st Cir.1997). It is well settled that in cases that do not involve a federal question, diversity must be complete in order for federal jurisdiction to attach. That is, no defendant may share citizenship with any plaintiff. See, e.g., Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 27 (1st Cir.2000).

Pfizer argues that the Plaintiffs have fraudulently joined Dr. Longmire solely to destroy diversity jurisdiction. The doctrine of fraudulent joinder provides an exception to the requirement of complete diversity where a plaintiff has joined a non-diverse defendant in bad faith, in order to defeat removal. See In Re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp.2d at 117 (and cases cited therein); see also, 14B Wright, Miller & Cooper, Federal Practice & Procedure § 3723 (3d ed.1998).[3] Both Plaintiffs are citizens of Alabama, as is Dr. Longmire. Docket # 668-4 at ¶¶ 13, 16.[4] Pfizer is a Delaware corporation with its principal place of business in New York. Id. at ¶ 14. Thus, Pfizer's removal is improper unless it demonstrates that Dr. Longmire was fraudulently joined.

A plaintiff's assertion of a claim against a defendant who is a citizen of the same state

---

[3] A successful assertion of fraudulent joinder also overcomes the requirement of unanimity, in that a federal court may ignore a lack of consent for removal from a fraudulently-joined defendant and permit the removal of the case. See In re Diet Drugs, 220 F.Supp.2d 414, 422 (E.D.Pa.2002). There has been no suggestion that this case involves a federal question.

[4] The Complaint includes two paragraphs numbered thirteen, and the citation is to both.

amounts to fraudulent joinder when it is done "without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the [defendant's] right of removal." Wilson v. Republic Iron & Steel, 257 U.S. 92, 98 (1921). In the First Circuit,[5] a removing defendant asserting fraudulent joinder must demonstrate, by clear and convincing evidence, either (1) that there has been outright fraud committed in the Plaintiff's pleadings, or (2) that there is no possibility, based on the pleadings, that the Plaintiff can state a cause of action against the non-diverse defendant in state court. In Re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp.2d at 117-18. "[A] finding of fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant." Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir.1983). "[T]he Court's task is not to decide the case, but, rather, it is to determine whether the plaintiff's claims against the non-diverse defendants have such little prospect of success that their joinder was improper . . . . Put another way, the relevant inquiry is whether there is a sufficiently reasonable basis for the claim to preclude a finding that joinder amounts to nothing more than a means to prevent removal." Arriaga v. New England Gas Co., 483 F. Supp. 2d 177, 183-84 (D.R.I. 2007)

---

[5] The First Circuit Court of Appeals has not articulated a standard for evaluating assertions of fraudulent joinder. District Courts in this circuit have followed the standard and rationale of the Second Circuit articulated in Whitaker v. Am. Telecasting, Inc., 261 F.3d 196 (2d Cir.2001). See, e.g., Mills v. Allegiance Healthcare Corp., 178 F.Supp.2d 1, 4 (D.Mass.2001) (Saris, J.); In Re New England Mut. Life Ins. Co. Sales, 324 F.Supp. 2d 288, 297-298 (D.Mass.2004) (Keeton, J.); In Re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp.2d 109, 117-118 (D. Mass.2006) (Saris, J.). The standard in the Eleventh Circuit, where the Middle District of Alabama is located, is identical. See Triggs v. John Crump Toyota, 154 F.3d 1284, 1287 (11th Cir.1998) ("Joinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant . . . [t]he second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts"). Thus, the Court need not consider which circuit's rule is applicable.

(internal citations omitted). In determining whether a joinder is fraudulent, the Court should resolve all factual and legal ambiguities in favor of the plaintiff. Mills v. Allegiance Healthcare Corp., 178 F.Supp.2d 1, 6 (D.Mass.2001).

Pfizer does not contend that the Plaintiffs' pleadings contain outright fraud. Rather, Pfizer contends that there is no possibility, based upon the pleadings, that the Plaintiffs can state a cause of action against Dr. Longmire in Alabama's courts. According to Pfizer, the Plaintiffs do not have a valid cause of action against Dr. Longmire under Alabama law because they have not alleged, and cannot demonstrate, the requisite elements of causation and reliance.[6] Under Alabama law, a plaintiff must establish that he acted in reliance upon a misrepresentation at issue. See Hunt Petroleum Corp. v. Alabama, 901 So. 2d 1, 4 (Ala. 2004). Pfizer's chief argument in this respect is that the Plaintiffs have not alleged specific reliance by particular individual physicians upon statements made by Longmire. See, e.g., Docket # 3669 at 3 ("the Complaint contains no allegations explaining how . . . three representations made to groups of physicians in Florida and Massachusetts a decade prior to Plaintiffs' suit caused Plaintiffs to pay for Neurontin prescriptions in Alabama for which they otherwise would not have paid").

A review of the Plaintiffs' Complaint indicates that they have, for present purposes, sufficiently alleged causation. The Plaintiffs appear to have largely tracked the complaints filed in this Court to portray a scheme whereby Pfizer paid doctors to advocate for Neurontin. They allege that Pfizer convened consultants' meetings as a front for funneling cash and other benefits to physicians, such as Dr. Longmire. See Docket # 668-5, at ¶¶ 160-65. They further allege that

---

[6] I note that in fraud cases, the term "causation is often discussed in terms of reliance." Fisher v. Comer Plantation, Inc., 772 So. 2d 455, 466 (Ala.2000).

Dr. Longmire "wrongfully marketed, promoted and/or lectured regarding Neurontin and its uses," for off-label treatment in order to increase Pfizer's market share and profits from Neurontin. See Docket # 668-4 at ¶ 16. Specifically, the Plaintiffs allege that Dr. Longmire made false and/or misleading statements as to the efficacy of Neurontin for pain at the Jupiter Beach, Florida Consultants' Meeting in April of 1996 when he stated "most [patients] do better as you raise [the dose] higher." Docket # 668-5, at ¶ 133. Dr. Longmire is also alleged to have made false statements such as: "the problem with Neurontin in terms of real trigeminal neuralgia is that it has to be titrated upward. And when I say 1500 milligrams, that's the target starting dose. There are colleagues in the Huntsville area who, I have people on 5400 with no side effects." Id. at ¶ 134. Longmire was paid fees as well as extensive travel benefits by Pfizer for agreeing to engage in peer-to-peer selling of off-label Neurontin. See Id. at ¶¶ 151-154. In addition, the Plaintiffs allege that Pfizer also funded purported "studies" by Longmire by paying him $7,000.00 for a study entitled, "Neurontin for Pain Reduction of Sympathetically Medicated Pain and Sudomotor Function," and $2,000.00 for his study entitled "Retrospective Analysis of Neurontin in the Treatment of Pain." Id. at ¶ 163.

The Plaintiffs claim that by implementing this marketing scheme, the Defendants (a group that includes Dr. Longmire), made misrepresentations and omissions of material fact that "directly and proximately caused Plaintiffs' damages." Id. at ¶ 189. In addition, they allege that the Defendants caused the Plaintiffs to pay for Neurontin when it was not medically necessary, or effective. Id. at ¶ 173. They also allege that "[a]s a proximate consequence of [defendants' conduct], Plaintiffs have been caused to suffer injury and damages," id. at ¶ 194; "Defendants' violation of the FDCA and related regulations proximately caused Plaintiffs [sic] injury and

7

damages." id. at ¶ 201; and that "[a]s a proximate consequence of said conspiracy and collusion among the named Defendants and/or among the named Defendants and unknown third parties, the Plaintiffs have been injured and damaged." id. at ¶ 204.

The Plaintiffs have sufficiently alleged causation and reliance. Pfizer may be correct in asserting that the Plaintiffs ultimately will not prevail against Dr. Longmire in the Alabama state court. However, the present inquiry for the Court is not whether the Plaintiffs have "winning" claims. Rather, the Court "must determine whether there is an objectively reasonable basis for the claims; if so, then federal jurisdiction is lacking and the state court should be permitted to hear the claims." In re Massachusetts Diet Drug Litig., 338 F. Supp. 2d 198, 202 (D. Mass.2004).

Despite Pfizer's arguments, the Court cannot conclude that the allegations in the Complaint do not plausibly allege reliance on misrepresentations of Longmire which caused the Plaintiffs to pay for prescriptions for which they would not otherwise have paid. The Complaint alleges not only the speaking engagements in Florida and Massachusetts (at which physicians from other locales, including Alabama might plausibly be in attendance), but also Longmire's articles, which might be read by physicians anywhere. Nor does the Complaint even allege that all of the prescriptions at issue were written in Alabama. Even if we assume that to be the case, the Plaintiffs are now aware of a significantly greater participation by Longmire in the alleged common scheme than is reflected in the Complaint, which facts the Alabama court would presumably permit to be the subject of an amendment. Specifically, in the context of his own suit against Pfizer, Longmire has alleged his participation in additional speaking engagements in nine additional locations in seven states, including one in Alabama. See Docket # 712-2 at ¶ 30.

8

To be sure, with respect to the claims alleging reliance by their prescribing physicians, the Plaintiffs face the difficulty of proving which doctors' prescriptions were caused by the Defendants' alleged misconduct, and which were not. See Docket # 2309 at 26-27 ("to prevail, a [third party payor] must demonstrate that it relied on a misrepresentation or omission, or provide a reliable methodology to calculate the percentage of the doctors who prescribed Neurontin based on Defendants' alleged fraud"). The Plaintiffs, though, also allege direct injury in that they allege misrepresentations relied on by the Plaintiffs themselves, rather than by physicians or patients. See, e.g., Docket #668-4 at ¶ 5 (the Defendants promoted the off-label use of Neurontin so that the Plaintiffs would be "unlawfully influenced into treating prescriptions of Neurontin as medically necessary and effective, and therefore defrauded or otherwise influenced into paying for Neurontin for off-label uses").

Moreover, the Complaint includes a claim for conspiracy which is immune to Pfizer's arguments about the failure to specifically plead reliance by physicians upon statements of Longmire himself. Docket # 668-5 at ¶¶ 202-04. Since civil conspirators are liable for one another's wrongful acts in furtherance of a common scheme, in order to prevail against Longmire on this particular claim the Defendants need only show that he was a participant in the common scheme and that misrepresentations made in furtherance of the conspiracy (not necessarily by Longmire personally) were relied upon by, and caused damage to, the Plaintiffs. See, e.g., Mabry v. State, 40 Ala.App. 129, 135 (1959) ("a conspiracy comes into being when two or more persons enter upon an unlawful enterprise with a common purpose to aid, assist, advise, or encourage each other in whatever may grow out of the enterprise upon which they enter, each is responsible civilly and criminally for everything which may consequently and

9

proximately result from such unlawful purpose, whether specifically contemplated or not, and whether actually perpetrated by all or less than all of the conspirators").

Certainly, the fact that the Plaintiffs named as a defendant only Dr. Longmire (but not any of the other numerous physicians who are alleged to have been recruited by Pfizer as Neurontin advocates) is arguably suspicious. Because Dr. Longmire is an Alabama resident, one could make the argument that the Plaintiffs must have sued Dr. Longmire simply in order to defeat federal jurisdiction over their claims. However, as long as the Plaintiffs have an objectively valid basis for naming a particular defendant, their subjective strategic motivations are "largely irrelevant." <u>In re Massachusetts Diet Drug Litig.</u>, 338 F. Supp. at 202. As discussed above, the Plaintiffs have alleged claims against Dr. Longmire that are, for present purposes, at least colorable. Accordingly, the Plaintiffs should be entitled to proceed in state court, where they filed their original complaint.

III.     CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court ALLOW the Plaintiffs' Motion to Remand.[7]

                                             /s / Leo T. Sorokin
                                             Leo T. Sorokin
                                             United States Magistrate Judge

---

[7] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).