UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:  NEURONTIN MARKETING, SALES           :     MDL Docket No. 1629
        PRACTICES AND PRODUCTS                :
        LIABILITY LITIGATION                 :     Master File No. 04-10981

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                       :     Judge Patti B. Saris

THIS DOCUMENT RELATES TO:                   :
                                       :     Magistrate Judge Leo T.
*Santos v. Pfizer, Inc.*, No. 10-11205-PBS.     :     Sorokin
                                       :     **UNREDACTED**
                                       :     **VERSION FILED**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x     **UNDER SEAL**

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

       Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or

"Pfizer") submit this memorandum in support of their motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56 on all counts brought by Plaintiff Ann Santos.

## PRELIMINARY STATEMENT

       Pfizer is entitled to summary judgment as to all of Plaintiff's claims because they are

barred by the applicable statute of limitations.   In her Complaint, Plaintiff alleges that she

experienced Stevens Johnson Syndrome ("SJS") as a result of her ingestion of Neurontin.   SJS

"is a rare, serious disorder in which [the patient's] skin and mucous membranes react severely to

a medication or infection."[1]   *Stevens-Johnson Syndrome*, Mayo Clinic.[2]   While Plaintiff was

diagnosed with SJS in January 2005, she did not file her Complaint until May 24, 2010 -- more

---

[1] While SJS may be associated with an allergic drug reaction, SJS is an *acute* syndrome, not a reaction associated with chronic, long-term use of a drug.  "[S]tudies have shown that the time to onset of [severe cutaneous adverse reactions including SJS] was within 4 weeks . . . .  [N]o significant risk persisted beyond 8 weeks of use."  Bernard Y-H. Thong & Teck-Choon Tan, *Epidemiology and Risk Factors for Drug Allergy*, 71:5 *Brit. J. of Clinical Pharmacology* 684, 688 (May 2011) (attached as Ex. A).

[2] http://www.mayoclinic.com/health/stevens-johnson-syndrome/DS00940 (last visited Nov. 3, 2011).

than 5 years after her diagnosis.  At the time of her diagnosis, 

For these reasons, and as established below, it is clear that for more than 3 years before the date she filed suit, Plaintiff both knew of her injury, and of the possible link between her medications and her injury.  Because there is no genuine issue of material fact as to the untimeliness of Plaintiff's claim, Pfizer is entitled to summary judgment.[3]

## FACTUAL BACKGROUND



_____

[3] While this motion focuses only on the statue of limitations, Pfizer also submits that it is entitled to summary judgment based on other grounds.

Therefore, Pfizer reserves its right to move this court for summary judgment in the future on this and other grounds.



---

[4] Ms. Santos was briefly deposed on September 15, 2011, but the deposition was limited in time and scope due to her health issues.  (*See* Ex. C, Santos Dep. at 96:11-14.)  Plaintiff's counsel agreed to leave the deposition open and continue it at a later date.  (*See id.* at 96:15-22.)



Ms. Santos did not file this suit against Pfizer until May 24, 2010.  (*See* Compl. [10-11205 Dkt. No. 1].)

## SUMMARY JUDGMENT STANDARD

"Summary judgment is properly granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 31 (1st Cir. 2009); *see also* Fed. R. Civ. P. 56(c)(2).  Where, as here, the non-moving party has the burden of proof to establish her claim, the movant "need not produce evidence negating the claim that there is a material issue in genuine dispute." *NEC Elecs., Inc. v. New Eng. Circuit Sales, Inc.*, 722 F. Supp. 861, 863 (D. Mass. 1989) (citation omitted).  Rather, the "moving party's burden is to point out to the district court 'that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Accordingly, Pfizer is entitled to summary judgment if Plaintiff fails "to make a sufficient showing on an essential element of her case with respect to which she has the

burden of proof." *Thomas v. Digital Equip. Corp.*, 880 F.2d 1486, 1489 (1st Cir. 1989) (citation omitted).

Rule 56(c) requires the nonmovant to "'go beyond the pleadings'" and, by admissible evidence, "'designate specific facts showing [that] there is a [genuine] issue for trial.'" *Bratton v. CSX Transp., Inc.*, 586 F. Supp. 2d 12, 16 (D. Mass. 2008) (citation omitted). If Plaintiff's evidence on any element is "'merely colorable or is not significantly probative, summary judgment may be granted.'" *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997) (citation omitted). Additionally, Plaintiff cannot satisfy her burden through "unsupported allegations, unreasonable inferences, and conclusory speculation," *Hann v. Micron Separations, Inc.*, 107 F.3d 1, 1997 WL 56859, at *1 (1st Cir. 1997) (per curiam) (unpublished table decision), or by pointing to "'some metaphysical doubt as to the material facts.'" *Tayag v. Lahey Clinic Hosp., Inc.*, 677 F. Supp. 2d 446, 450 (D. Mass. 2010) (Saris, J.) (citation omitted), *aff'd*, 632 F.3d 788 (1st Cir. 2011).

## ARGUMENT

### I.    Plaintiff's Claims Are Barred By The Statute Of Limitations

#### A.    The Statute Of Limitations Applicable To Plaintiff's Claims Is 3 Years

While Plaintiff's Complaint alleges various theories of recovery,[5] all of her claims are governed by the Connecticut Product Liability Act ("CPLA") and, therefore, are all subject to a 3-year statute of limitations.[6]

---

[5] The Complaint alleges strict product liability (Compl. ¶¶ 199-217), breach of express and implied warranties (*Id.*¶¶ 218-23, ¶¶ 297-301), negligence (*Id.* ¶¶ 224-36), negligence per se (*Id.* ¶¶ 250-61), misrepresentation by omission (*Id.* ¶¶ 237-49), negligent misrepresentation (*Id.* ¶¶ 262-71), fraud and misrepresentation (*Id.*¶¶ 272-77), fraud by concealment (*Id.* ¶¶ 278-87), violation of consumer protection laws (*Id.* ¶¶ 288-96), constructive fraud (*Id.* ¶¶ 302-07), intentional infliction of emotional distress (*Id.* ¶¶ 308-11), negligent infliction of emotional distress (*Id.* ¶¶ 312-16), and medical monitoring (*Id.* ¶¶ 317-20).

[6] Even though Plaintiff filed her case in New York federal court, New York's choice of law rules require application of Connecticut substantive law. *See, e.g.*, *Devore v. Pfizer Inc.*, 867 N.Y.S.2d 425, 428 (N.Y. App. Div. 2008). Based on communications from Plaintiff's counsel, it is undisputed that Connecticut law governs her claims.

The exclusivity provision of the CPLA provides that "[a] product liability claim . . . shall be *in lieu of all other claims* against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." Conn. Gen. Stat. Ann. § 52-572n(a) (West 2005) (emphasis added). Interpreting this provision, the Connecticut Supreme Court has repeatedly held that the CPLA provides the *sole* remedy for any Plaintiff seeking compensation related to any harm caused by a product. *See, e.g., Sylvan R. Shemitz Designs, Inc. v. Newark Corp.*, 967 A.2d 1188, 1192 (Conn. 2009); *Gerrity v. R.J. Reynolds Tobacco Co.*, 818 A.2d 769, 773 (Conn. 2003). Accordingly, the timeliness of all of Plaintiff's claims depends upon whether she filed her Complaint within 3 years after the limitations period began to run.[7]

### B.    Plaintiff Discovered Her Injury More Than 3 Years Before She Filed Her Complaint

Section 52-577a requires that a CPLA claim must be brought "within three years from the date when the injury . . . is first sustained or discovered or in the exercise of reasonable care should have been discovered." Conn. Gen. Stat. Ann. § 52-577a(a) (West 2005). One major purpose of this statute is to "encourage parties to timely investigate and file claims." *Collin v. Securi Int'l*, 322 F. Supp. 2d 170, 174-75 (D. Conn. 2004) (applying Connecticut law). Interpreting this statute, Connecticut courts have held that the limitations period begins to run when a plaintiff discovers or reasonably should have discovered "actionable harm," which occurs when "the plaintiff discovers (1) that [she] has been injured and (2) that the defendant's conduct caused this injury." *Ives v. NMTC, Inc.*, 746 A.2d 236, 240 (Conn. Super. Ct. 1999).

---

[7] Even if Plaintiff's fraud-based claims were not subsumed by the CPLA, though they are, they would fall under the Connecticut Unfair Trade and Practices Act ("CUTPA"), which prohibits unfair or deceptive acts or practices in the "advertising," "sale," or "distribution" of any "article, commodity or thing of value" in the state. Conn. Gen. Stat. Ann. § 42-110a(4) (West 2007); *see also Mountain W. Helicopter, LLC v. Kaman Aerospace Corp.*, 310 F. Supp. 2d 459, 461 n.1 (D. Conn. 2004) (holding that Plaintiff's claims were actually CUTPA claims even though complaint did not expressly invoke the statute). CUTPA claims are also subject to a 3-year statute of limitations from the date of the allegedly deceptive act or practice, Conn. Gen. Stat. Ann. § 42-110g(f) (West 2007). Additionally, the statute of limitations applicable to tort actions generally is also 3 years from the date of the act or omission. *See* Conn. Gen. Stat. Ann. § 52-577 (2005). As such, regardless of Plaintiff's stated theory of recovery, her claims are time-barred under Connecticut law.

The latter element is satisfied when a plaintiff "recognized, or should have recognized, the critical link between her injury and the defendant's causal connection to it." *Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d Cir. 1992) (applying Connecticut law). Actual knowledge of injury and causation is not required to start the running of the statute of limitations. Rather, the limitations period begins to run when "'plaintiff has knowledge of facts that would put a reasonable person on notice . . . that the injury was caused by the negligent conduct of another.'" *Kelly v. Univ. of Conn. Health Ctr.*, 963 A.2d 1, 7 (Conn. 2009) (citation omitted).

Further, "an injury occurs when a party suffers some form of actionable harm. The harm need not have reached its fullest manifestation before the statute begins to run." *Burns v. Hartford Hosp.*, 472 A.2d 1257, 1261 (Conn. 1984). Under this standard, "the plaintiff's knowledge of injury may constitute actionable harm despite the absence of an expert medical opinion." *Kelly*, 963 A.2d at 7. Moreover, when determining whether a plaintiff had constructive knowledge of "actionable harm," "'[t]he focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories.'" *Mountaindale Condo. Ass'n v. Zappone*, 757 A.2d 608, 616 (Conn. App. Ct. 2000) (citations omitted).

In this case, Plaintiff became aware in January 2005 of facts that would put a reasonable person on notice of the alleged causal nexus between her injuries and Neurontin. 

Accordingly, clear evidence

demonstrates that Plaintiff was made aware of her potential causes of action against the manufacturers of her medications at or around the time █████████████████████████████

Plaintiff cannot disclaim knowledge of facts in her own medical records. Connecticut courts have held that plaintiffs should be imputed with knowledge of information contained in documents to which they have access. For example, in *Peerless Ins. Co. v. Tucciarone*, 708 A.2d 611 (Conn. App. Ct. 1998), the owners of a building destroyed by fire in 1988 filed a products liability suit in 1992 against the manufacturers of a light fixture. *Id.* at 612. The owners argued that the limitations period did not begin to run until January 1991, when their expert opined that the manufacturer's product had caused the fire. *Id.* Both the trial and appellate courts rejected the owners' argument and held that the owners' product liability claim was time-barred because, on October 20, 1988, a deputy fire marshal had issued a report opining that a light fixture had caused the fire. *Id.* at 614. The court found that the report from the fire marshal established an "actionable injury," and "[t]he owners did not have to wait until they received [their expert's] report before bringing suit because 'harm need not have reached its fullest manifestation before the statute begins to run.'" *Id.* (citation omitted, footnote omitted).

Like in *Peerless,* ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ As such, the statute of limitations began to run in January 2005 when Plaintiff became aware that her episode of SJS could have been related to her medications, ████████████████████

Finally, additional evidence proves that Plaintiff was aware of the potential causal link between Neurontin and her SJS more than three years before filing her lawsuit. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

████████████     Thus, there can be no genuine factual dispute as to whether Plaintiff was aware of the alleged causal link between Neurontin and her episode of SJS more than 3 years before she filed her Complaint on May 24, 2010.  As such, Pfizer is entitled to summary judgment.

### C.      Plaintiff Has No Legitimate Basis To Assert Equitable Tolling

To the extent Plaintiff argues that the statute of limitations should be tolled because of fraudulent concealment, Plaintiff bears the "burden of pleading facts sufficient to establish that the statute of limitations should be tolled." *OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 504 (D. Conn. 2007).  In order to establish fraudulent concealment, however, Plaintiff must first specifically allege:

> (1) [Pfizer's] actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiffs' cause[s] of action; (2) . . . [Pfizer's] intentional concealment of these facts from the plaintiffs; and (3) . . . [Pfizer's] concealment of the facts for the purpose of obtaining delay on the plaintiffs' part in filing a complaint on their cause[s] of action.

*Bartone v. Robert L. Day Co.*, 656 A.2d 221, 225 (Conn. 1995).  It is not sufficient for Plaintiff to simply show that a fraud had been committed (which Plaintiff here cannot do regardless because there is no evidence of concealment of any fact regarding Neurontin and SJS).

Rather, to establish fraudulent concealment, Plaintiff must prove that such fraud was "'directed to the very point of obtaining the delay' in filing a complaint." *World Wrestling Entm't, Inc. v. THQ, Inc.*, No. X05CV065002512S, 2008 WL 4307568, at *10 (Conn. Super. Ct. Aug. 29, 2008) (quoting *Bartone*, 656 A.2d at 225 n.5).  As such, Plaintiff may not simply rely upon the allegations of concealment underlying her claims; she must show "affirmative acts of concealment" that satisfy the particular elements of fraudulent concealment. *Johnson v. Wadia*, No. CV 85 0075560 S, 1991 Conn. Super. LEXIS 669, at *8 (Conn. Super. Ct. Mar. 28, 1991); *see also World Wrestling Entm't*, 2008 WL 4307568, at *11.  The specific intent necessary for fraudulent concealment may not be presumed, and Plaintiff must present some evidence to establish it. *See Connell v. Colwell*, 571 A.2d 116, 121 (Conn. 1990) (holding that fraudulent

concealment could not be proved where there was "no evidence submitted to the trial court from which it could be inferred that the defendant misrepresented . . . facts with the intent necessary to constitute fraudulent concealment"). Plaintiff must prove fraudulent concealment by "clear, precise, and unequivocal evidence." *Bartone*, 656 A.2d at 224. Further, Plaintiff "must 'allege with particularity the circumstances' surrounding the alleged fraudulent concealment in accordance with the heightened pleading requirements for fraud that are specified in Rule 9(b)." *OBG Technical Servs.*, 503 F. Supp. 2d at 504-05 (citation omitted).

Despite the strict requirements for establishing fraudulent concealment in Connecticut, Plaintiff's Complaint makes only conclusory and broad allegations that "Defendants, through failing to disclose a known defect to Plaintiff's physicians and/or Plaintiff, and misrepresenting their drug as safe for its intended use, actively concealed from said individuals the true risks associated with the use of their neurontin drug products." (Compl. ¶ 137.) As an initial matter, the Court should disregard those unspecified allegations of fraudulent concealment because they are too vague to satisfy the requirements of either Federal Rule of Civil Procedure 8 or 9(b). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-51 (2009) (explaining that plaintiffs' "legal conclusions," "bare assertions," and "conclusory" allegations are "not entitled to be assumed true" and "must be supported by factual allegations"); *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 189 (1st Cir. 2006) ("Under Rule 9(b) of the Federal Rules of Civil Procedure, it is incumbent upon the plaintiff 'to plead with particularity the facts giving rise to the fraudulent concealment claim.'") (citation omitted).

Regardless, Plaintiff has not even alleged all the requisite elements of fraudulent concealment under Connecticut law. *Bartone*, 656 A.2d at 225. She does not claim – and indeed there is no objectively reasonable basis to allege – that Pfizer was aware of the facts underlying Plaintiff's claim and intentionally made efforts to conceal any information ***for the specific purpose of delaying Plaintiff's suit***. At best, Plaintiff is attempting to rely on the same factual allegations that other plaintiffs have alleged in Neurontin litigation – *i.e.*, that Pfizer generally failed to disclose certain risks about suicide-related behavior (even though her case does not

10

involve allegations of suicide) to the public at large – which underlies her failure to warn and other substantive claims.

Connecticut courts have made clear that, even if Plaintiffs' allegations were supported by evidence (which they are not), they would still be inadequate to establish fraudulent concealment for purposes of tolling when Plaintiff has not alleged or proven that Pfizer acted with the specific "purpose of obtaining delay on the plaintiffs' part in filing a complaint." *Id.*; *see also Connell*, 571 A.2d at 121 (holding that fraudulent concealment cannot be established without some evidence to show that a defendant possessed the requisite intent); *Johnson*, 1991 Conn. Super. LEXIS 669, at *8-9 ("'[F]raudulent concealment which will toll the running of the statute of limitations does not depend upon the underlying cause of action being inherently fraudulent, but requires *independent acts of fraudulent concealment* of the events or circumstances constituting the underlying cause of action.'") (quoting 54 C.J.S., *Limitations of Actions*, § 88, p. 127) (emphasis added). Regardless, there is no evidence that Pfizer concealed any alleged risks related to SJS – much less for the specific purpose of obtaining delay in the filing of this lawsuit. Thus, there is no reasonable basis under Connecticut law for Plaintiff to assert equitable tolling based on fraudulent concealment in an attempt to revive her claims that are otherwise barred by the 3-year statute of limitations.

Finally, for the reasons discussed above, the record establishes that Plaintiff was aware of the alleged causal nexus between Neurontin and her injury more than 3 years before she filed suit. Therefore, her assertion of fraudulent concealment is irrelevant because she cannot establish that any action of Pfizer actually prevented her from discovering an "actionable injury." *See* 51 Am. Jur. 2d *Limitations of Actions* § 164 (2011) ("[A] party seeking to toll the statute of limitations must explain why due diligence did not lead or could not have led to discovery of the facts and the cause of action.").

## CONCLUSION

For the foregoing reasons, this Court should grant Pfizer's motion for summary judgment.

Dated:  December 13, 2011

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP

By: /s/ Mark S. Cheffo
     Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

-and-

ROPES & GRAY LLP

By: /s/ Justin J. Wolosz
     Justin F. Wolosz
     BBO # #643543

Prudential Tower
800 Boylston Street
Boston, MA  02110
Tel:  (617) 951-7000
Email:  justin.wolosz@ropesgray.com

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on  December 13, 2011.

               /s/ Justin J. Wolosz
               Justin J. Wolosz