# EXHIBIT A

1

```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS

HARDEN MANUFACTURING CORP.     . CIVIL ACTION NO. 04-10981-PBS
     Plaintiff                 .
                               .
          V.                   . BOSTON, MASSACHUSETTS
                               . APRIL 26, 2011
PFIZER, INC., et al            .
     Defendants                .
. . . . . . . . . . . . . . . . .

                    TRANSCRIPT OF MOTION HEARING
                BEFORE THE HONORABLE LEO T. SOROKIN
                  UNITED STATES MAGISTRATE JUDGE

         APPEARANCES:
           Newton B. Schwartz, Sr.
           Jack Harang, Esq.
           James Stegall, Esq.
           1911 Southwest Freeway
           Houston, TX 77098
           713-630-0708
           nbs@nbslawyers.com

           Levi Boone, Esq. (telephonically)
           Boone Law Firm PA
           401 West Sunflower Avenue
           Cleveland, MS 38732-1772
           662-843-7946
           LBoone@BooneLawFirm.com

           Mark S. Cheffo, Esq.
           Skadden, Arps, Slate, Meagher &
             Flom LLP
           Four Times Square
           New York, NY 10036
           212-735-3000
           mark.cheffo@skadden.com
```

*MARYANN V. YOUNG*
**Certified Court Transcriber**
P.O. Box 506
Wrentham, MA   02093
**(508) 384-2003**

Catherine B. Stevens, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY 10036
212-735-3353
catherine.stevens@skadden.com

Court Reporter:

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**P.O. Box 506**
**Wrentham, MA  02093**
**(508) 384-2003**

61

1  a lot of preparation if prior experience is a guide Pfizer's
2  going to come here and complain. I'm not threatening you. I'm
3  just telling you; you've been here, you've been in the
4  litigation, you know what happens in these cases. And what
5  seems sensible, I mean if you think the cases are good then
6  pursue them. I'm fine with that. But if they're going to be
7  evaporating then maybe it's better to evaporate them before you
8  spend a lot of time on them and before they spend a lot of time
9  on them, that's all. But you have to decide if you want them
10 to evaporate or not because they're all going forward unless
11 you file a motion.
12         MR. HARANG: Thank you, Your Honor.
13         THE COURT: And I'll think about the certification
14 issue. I will tell you that since what comes to my mind as the
15 synopsis of what we've been through and I'll give you a chance,
16 any one of the three of you to respond, it's just a waste of
17 time. And so I don't know that it addresses it but one
18 sanction that comes to mind is a monetary sanction to either
19 the court or to Pfizer for some part of that because I don't
20 know what the point of it was. And, I mean I'm not sanctioning
21 you for objecting to my order. I don't care about that.
22 people object all the time and that's fine. But I don't
23 understand what, where we are now that's different than where
24 we were in February other than a lot of paper that got done. I
25 mean do you have anything you want to say about all this?

62

1        MR. HARANG:  The distance between now and February,
2   Your Honor, was – looking through my eyes and seeing where we
3   are it's kind of like drawing up the plans for a house and all
4   of the stuff that has to--
5        THE COURT:  So why not file a motion for more time?
6        MR. HARANG:  Your Honor, we certainly should have.
7   There is--
8        THE COURT:  Or a motion that says, you know what,
9   there isn't anybody at the moment that we can identify.
10       MR. HARANG:  Those words have come out of my mouth
11  probably quite a few times, Your Honor, and I think that that
12  should have happened.  And that's why that response led off
13  with that paragraph.  There is no justification for not
14  responding to the Court.  How it happened, it just, it didn't
15  happen, Your Honor.  I feel relatively certain that it'll never
16  happen again and--
17       THE COURT:  I hope more than relatively.
18       MR. HARANG:  Well, probably with great certainty I
19  can tell you that it won't happen again and certainly was not
20  able to put a pen on a piece of paper in our office.  But--
21       THE COURT:  And, so what should I do?  I mean he,
22  look, he said, I mean I have what I have.  Should I – what, if
23  anything, should I do in response to all that transpired?
24       MR. HARANG:  I think you have done, there's nothing
25  more personally in my eyes that you could do to instill, one,

63

1   the fear of the Court and the fear of the Lord and (laugh)--
2          THE COURT:  They are different.
3          MR. HARANG:  Certainly they are, Your Honor.  And
4   they have different powers, one is jail and the others hell but
5   (laugh)--
6          THE COURT:  I didn't say that in my order.
7          MR. HARANG:  I know, Your Honor.  But – and that's
8   happened.  If the purpose of a sanction is to say by the way,
9   this is what should've been done, that impact has been created.
10  The steps that were being done to implement what was said, what
11  was discussed that led to that discussion in February that's
12  been being done.  And--
13         THE COURT:  Yeah, I'm not – I understand you're doing
14  that.
15         MR. HARANG:  Yeah.
16         THE COURT:  And I'm not ordering you to do that
17  because that's your decision to do.  From a case management--
18         MR. HARANG:  As it was our decision to say this is
19  how many cases we had back then and--
20         THE COURT:  And from a case management perspective
21  it's useful, that's why Judge Saris and I issued the order, is
22  for lawyers to tell the Court that there are cases which aren't
23  yet gone but we think are going to go and we think we can tell
24  the Court on this date and that's why we set dates to do that.
25  but those dates, one thing I learned was that didn't work in

64

1  this situation.  So therefore that's why whatever I do,
2  certification or not, we're going forward on all cases and no
3  cases will be suspended from depositions unless you file a
4  pleading that says you don't want to go forward in the case.
5           MR. HARANG:  Yes, Your Honor.
6           THE COURT:  And if you want to take it out
7  temporarily to do something you can file a pleading to do that,
8  but - I guess I'll, you know, I'm not going to prolong this any
9  longer but I mean if there's something else, fine.  If not,
10 I'll take it under advisement the question of whether I should
11 do certification or if I should impose some monetary sanction
12 or if it's enough the way it is.
13          I'll be honest with you, I hate imposing monetary
14 sanctions.  I hate imposing sanctions.  It's one of the least
15 rewarding and most painful aspects of this job but one of the
16 reasons that it comes to mind here is I just don't understand
17 why here beyond just, you know, we're not talking about one
18 order that got missed in a pile of email.  We're talking about
19 multiple orders and motions and that then, at any point in time
20 in a one-page pleading could have been remedied by either,
21 Judge, we're looking into this, we need more time; Judge,
22 there's no cases to dismiss; we might want to do this but we're
23 not ready.  You gave us this much time and here's the reasons
24 we need more time and - but nothing.  So what it caused people
25 to do is the things people do when it looks like a law firm

65

1   fell off the face of the Earth and they issue orders to see,

2   (knocking) anybody home?  And if they're a party they file

3   motions and both those things take time and effort on a party's

4   part, mine.  That's just why, that's why I threw it out there.

5   That's what came to mind.

6           MR. HARANG:  There's no question.  I mean there isn't

7   and I can't say that there's, any rationale and for – I mean

8   there isn't.  There's no excuse for doing it, Your Honor, and--

9           THE COURT:  Do you want to go – I'm sorry, go ahead.

10          MR. HARANG:  And, you know, it should meet within the

11  Court's purview to do whatever you feel I think.  But I think

12  that the speech you just gave may have come, gone out of this

13  mouth in other directions and that also was maybe I should have

14  looked over too and said, you know, the bucks got to stop

15  somewhere along here.  And so there's no excuse for that.  I

16  mean there wasn't, Your Honor, and I don't know, you know, I

17  could say, oh--

18          THE COURT:  I understand.

19          MR. HARANG:  --well the order – and I can come up

20  with all kinds of – and I've been doing this long enough, I can

21  come up with a lot of reasons why something happened.  There's

22  no reason.

23          THE COURT:  Do you want the certification or don't

24  you?

25          MR. HARANG:  Your Honor, the certification honestly

66

1  with as many, you know, we've got people in rural South
2  Carolina.  We've got people in rural Arkansas.  To get that
3  process, just the process of getting them to, a notary to get
4  the thing done is probably going to – it'll have its effect.
5  It'll probably eliminate a good--
6           THE COURT:  Are you in communication with them?
7           MR. HARANG:  Oh, yes, Your Honor, sure.
8           THE COURT:  So this isn't--
9           MR. HARANG:  And so isn't local counsel that--
10          THE COURT:  Right.  All right, so this isn't like the
11 last time around where the certification I went through way
12 back when where there were some people who, I'm not saying it
13 was you guys, but there were some plaintiffs' counsel with
14 respect to some plaintiffs they didn't even know where they
15 were.  And, you know, the person had moved on over the time and
16 they couldn't find them and they couldn't get them to respond.
17          MR. HARANG:  I mean do we have, you know, we don't
18 see them once a week.
19          THE COURT:  No, I don't, I'm not asking--
20          MR. HARANG:  And some of these people we've never
21 seen but the local counsel has and we've concurred with local
22 counsel and communicated with these people when they did their
23 interrogatories, when they did--
24          THE COURT:  All right.
25          MR. HARANG:  --all of their discovery processes, Your

67

1  Honor.
2           THE COURT:  I'll think about it.
3           MR. HARANG:  No, this is not a, you know, hey by the
4  way, and I've been in a lot of mass litigation and I know, I
5  clearly understand the people that have never seen--
6           THE COURT:  Okay.
7           MR. HARANG:  --or talked to or--
8           THE COURT:  Right.
9           MR. HARANG:  --maybe haven't written to some of these
10 people.
11          THE COURT:  Yeah, all right.
12          Do you have something else, Mr. Cheffo?
13          MR. CHEFFO:  I just have two quick things.  You will
14 take it under advisement, I think we said we're going to say,
15 you know, just like ECFs didn't get answered, briefs just don't
16 get written overnight and we did have to do that.  You'll take
17 that and do what you're going to do with it.  But I would say
18 this goes back to case management issue because, you know, it's
19 not just the paper and the time.  We've been now in limbo and I
20 feel like when we're leaving here that, not for any faults of
21 the Court, but now there's 80 cases and candidly because of
22 this expectation of 30 we've been trying to triage depositions,
23 collect, you know, cause collection of the medical records is
24 very expensive.  So we now have a bolus of 80 cases and
25 hopefully in the next few days or week we'll hear about them.

68

1 But I guess I'm raising this from a scheduling perspective

2 because, you know, we're not in a position to if they don't

3 dismiss the 80 cases we're going to need more time now because

4 I don't know which cases--

5         THE COURT:  Have I set a deadline for the end of the

6 depositions?

7         MR. CHEFFO:  Well we just have our 15 or 20 days--

8         THE COURT:  Is it just doing 15 a day, we're doing 15

9 days a month until we're done.

10         MR. CHEFFO:  I mean frankly, you know, when we got

11 this list of 35 we geared up and did everything we're supposed

12 to we believe for those 35 cases they gave us and we assume

13 that--

14         THE COURT:  This list of 35 was the 35 ones you

15 thought, they thought were the best.

16         MR. CHEFFO:  That they thought they were going to

17 proceed with.

18         THE COURT:  Okay.

19         MR. CHEFFO:  And that's, you know, we – again in

20 fairness they said there may be a few cases so they said

21 between 30 and 40 but we had this agreement let's proceed and

22 that's the ones we've been scheduling.  For the rest, you know,

23 I can't say nothing's happened but certainly there's been, the

24 valve has been turned off to a large extent.  So, you know, we

25 may need some time.

69

1  THE COURT: So here's the thing. One, it's fine with
2  me among yourselves to proceed first with the 35. Two, if you
3  get to the point where you need more time because you focused
4  on the, because they made representations to you with respect
5  to wanting to get rid of, they might get rid of certain case -
6  they were going to proceed with these 35 and not necessarily
7  the others and so you didn't move on those 35 and then you want
8  more time. You'll ask for more time and you'll explain that's
9  why they want it and I would assume that it would pretty
10 unlikely that they would want to come forward and say we
11 represented to them that we weren't going to move forward on
12 those. And so they didn't, the released them and we relied on
13 our representation but now we don't want them to rely on our
14 representation, we don't want to give them more time.
15     MR. CHEFFO: Right.
16     THE COURT: Now you'll run up against a separate time
17 issue which is Judge Saris and I want to move these cases.
18     MR. CHEFFO: That's really what I'm--
19     THE COURT: Right.
20     MR. CHEFFO: Yeah.
21     THE COURT: And so what, you know, you all face and
22 I'm going to ponder and probably discuss with Judge Saris is
23 this. We want these cases to move forward. So far there's
24 nothing on the record except that one case that's being
25 dismissed and there's six withdrawn that suggests to me that

70

1  any of these 80 odd cases aren't intending to be proceeded
2  with.  And so that is there's approximately 80 something cases.
3  There's one dismissed in March.  Six motions to withdraw, I
4  think they're still pending.  And, but all the rest of Schwartz
5  cases there's been discussion that maybe they want to get rid
6  of some or not but they're all on the record as they want to
7  go, according to the docket which is what the Court needs to
8  make its decisions by and the pleadings and the docket, they're
9  all ready to go.  You're fine for your scheduling to focus on
10 those 35.
11          We'll have to think about, Judge Saris and I, that's
12 what we have.  We're going to proceed with those 80.  If
13 there's, you know, what do we do about the fact if people
14 vacillate and, you know, if for example they said 55 cases they
15 wanted to get, 45 cases they were not going to proceed on and
16 so you relied on that 45 and then, you know, what do we do with
17 that if then they want to proceed with some or all those 45 and
18 how do we address that.  I don't have an answer for you at the
19 moment but I'm pondering that.  And if this – the best analogy
20 I can give you is if we were setting the trial dates we'd be
21 setting trial dates for all 80 and plaintiffs would be ready
22 and defendants would be ready and I might be willing to order
23 them, the 35 first, but you brought the case, you better be
24 ready to litigate it.  And if you don't want to litigate it
25 file a pleading that says you don't want to litigate it.

71

1        I don't want to, I understand the position that that
2   puts you in.  I'm trying to think about how to reasonably
3   manage the cases but I'm not sure, I'll think about
4   certification but I'm not sure if it isn't just another
5   sidestep.  It would potentially reduce cases but it doesn't,
6   while we do that we don't move any forward necessarily.  And so
7   I'll think about how to address that.  All right.
8            MR. CHEFFO:  Thank you, Your Honor.
9            THE COURT:  Anything else?
10           MR. HARANG:  I think not.
11           MR. SCHWARTZ:  No, Your Honor.
12           MR. HARANG:  Thank you.
13           THE COURT:  All right.  Pleasure seeing you all.
14           MR. CHEFFO:  Thank you, Your Honor.
15           MR. SCHWARTZ:  Thank you, Your Honor.
16           THE COURT:  We're adjourned.
17  //
18  //
19  //
20  //
21  //
22  //
23  //
24  //
25  //