UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>------------------------------------------------------------<br><br>THIS DOCUMENT RELATES TO:<br><br>*Ann Santos v. Pfizer, Inc.,* No. 10-11205-PBS | MDL Docket No. 1629<br><br>Master File No. 04-10981<br><br>Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Ann Santos, hereby opposes the Motion for Summary Judgment filed by Defendants, Pfizer, Inc., and Warner-Lambert Company, LLC, because there is a factual dispute regarding accrual of the statute of limitations which constitutes a triable issue of timeliness. Under such circumstances, federal and applicable state laws dictate that summary judgment in favor of Defendants is inappropriate.

Summary judgment is only appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if it could reasonably be resolved in either party's favor at trial, and "material" if its outcome will affect the outcome under applicable law. *Mulvihill v. Top-Flite Golf Co.,* 335 F.3d 15, 19 (1st Cir. 2003); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In making a summary judgment determination, the court must scrutinize the record in the light most flattering to the party opposing the motion. *Mulvihill v. Top-Flite Golf Co.,* 335 F.3d 15, 19 (1st Cir. 2003). Not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them. *Donahue v.*

*Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57-58 (2d Cir. 1987). In fact, all inferences from, and ambiguities in, the underlying facts are to be resolved in favor of the party opposing summary judgment. *Minter v. Great Am. Ins. Co., 423* F.3d 460, 465 (5th Cir. 2005).

Regarding a limitations defense, summary judgment may only be granted "if there is no genuine dispute about the material facts, and the record evidence would not permit a reasonable jury to return a verdict for the nonmoving party." *Museum of Fine Arts, Boston v. Seger-Thomschitz*, 623 F.3d 1, 10 (1st Cir. 2010). In other words, where questions of fact are presented, *statute of limitations defenses are ordinarily submitted to the jury*. *Melendez-Arroyo v. Cutler-Hammer de P.R. Co., Inc.*, 273 F.3d 30 (1st Cir. 2001).

For example, in *Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628 (1st Cir. 1990), the United States First Circuit Court of Appeal held that it was for a jury to determine when the plaintiffs could be charged with having sufficient knowledge to trigger the applicable statute of limitations that commenced on the date that the aggrieved party had knowledge of a tort. See also, *BellSouth Telecommunications, Inc. v. W.R. Grace & Company-Conn.*, 77 F.3d 603, 609 (2d Cir. 1996) (summary judgment on statute of limitations grounds is inappropriate if there is an issue of fact as to when limitations began); *Lagassey v. State*, 846 A.2d 831, 847 (Conn. 2004) ("the determination of when a plaintiff in the exercise of reasonable care should have discovered 'actionable harm' is ordinarily a question reserved for the trier of fact"); *West Haven School Dist. v. Owens-Corning Fiberglas Corp.,* 721 F.Supp. 1547, 1556 (D. Conn. 1988) (question of when a cause of action accrues, so as to start a statute of limitation running, is ordinarily a question of fact for a trier, and consequently, court cannot grant summary judgment for defendant if there is a genuine dispute as to when the limitation period began); *Hamilton v. Smith*, 773 F.2d 461, 465-66 (2d Cir. 1985) (summary judgment is precluded where there existed

a factual dispute as to when a patient reasonably should have discovered medical malpractice); *Schmidt v. McKay*, 555 F.2d 30, 37-38 (2d Cir. 1977) (summary judgment erroneously granted where there was a genuine dispute over inferences to be drawn from otherwise undisputed facts regarding when the plaintiff reasonably should have discovered alleged fraud); *Saylor v. Lindsley*, 391 F.2d 965, 970 (2d Cir. 1968) ("the possible existence of a material issue of fact, i.e., when the plaintiff did discover, or reasonably should have discovered, the facts which give rise to the action, prevents summary disposition of the suit on the limitations ground"); *Kern v. Hettinger*, 303 F.2d 333, 338-39 (2d Cir. 1962) (plaintiff "entitled to his day in court" on disputed issue of when statute of limitation began to run).

Regarding a Rule 56.1 statement of the material facts of record as to which a genuine issue to be tried exists, Plaintiff will direct the Court to the actual content of the medical records attached to Defendants' motion. (Ex. E, F, H, I, J, K, L, M, N, R, and S). These records do not demonstrate discovery, knowledge, or awareness on the part of Ms. Santos of her specific condition or the connection between her injury and Defendants' conduct. Additionally, Ms. Santos's testimony elicited during deposition, which is in recess, disputes Defendants' contention about when she should have discovered and thereby accrued an actionable claim against Pfizer and Warner-Lambert. (Pl.'s Ex. A at 90:11-95:5.)

Ms. Santos does not dispute Defendants' assertion of the date of the onset of her injury: it is true that on January 18, 2005, she was hospitalized and then diagnosed with Stevens-Johnson Syndrome (SJS).[1] It is Defendants' distorted interpretation of the information contained in her medical records that Plaintiff disputes and which make summary judgment inappropriate,

---

[1] SJS is an immune-complex-mediated hypersensitivity complex that is a severe expression of erythema multiforme. SJS typically involves the skin and mucous membranes, including oral, nasal, eye, vaginal, urethral, and GI and lower respiratory tract mucous membranes may develop during the course of the illness. SJS is a serious systemic disorder with potential for severe morbidity and even death.

because reasonable jurors could disagree with Defendants' interpretation. Furthermore, the lack of case specific discovery relevant to the timeliness issue makes summary judgment premature, since Ms. Santos's deposition is woefully incomplete.

### SUMMARY JUDGMENT FOR DEFENDANTS IS INAPPROPRIATE BECAUSE THERE IS A GENUINE ISSUE REGARDING WHEN MS. SANTOS DISCOVERED THE ESSENTIAL ELEMENTS OF HER CLAIMS AGAINST THEM

Under Connecticut law, a products liability claim must be brought within "three years from the date when the injury ... is first sustained or discovered or in the exercise of reasonable care should have been discovered...." Conn. Gen. Stat. § 52-577a. However, in Connecticut, a cause of action does not begin to accrue until a plaintiff suffers actionable harm. "The harm to be alleged must have become actionable; that is, the plaintiff must have discovered all the essential elements of the cause of action it seeks to assert." *West Haven School Dist. v. Owens-Corning Fiberglas Corp.,* 721 F.Supp. 1547, 1556 (D. Conn. 1988). Therefore, "[a]ctionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." *Champagne v. Raybestos-Manhattan*, 562 A.2d 1100, 1107 (Conn. 1989) (citation omitted).

Contrary to Defendants' allegation herein that knowledge of injury and causation is not required to start the running of the statute of limitations, the applicable law does require knowledge of these elements by Plaintiff in order to suffer an *actionable* harm. "A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence … They are therefore necessary ingredients for 'actionable harm'." *Catz v. Rubenstein*, 513 A.2d 98, 101 (Conn. 1986) (citation omitted). Even under Massachusetts substantive law, cognizance of injury

and its cause is required before a limitations period is deemed to commence running. *Errichiello v. Eli Lilly and Co.,* 618 F.Supp. 484 (D.C. Mass. 1985).

Additionally, the doctrine of equitable tolling is accepted in Connecticut and has been applied to limitations in other statutes. See, e.g., *Williams v. Commission on Human Rights & Opportunities*, 777 A.2d 645 (Conn. 2001). "Under the equitable tolling doctrine, a statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Wiele v. Board of Assessment Appeals of City of Bridgeport*, 988 A.2d 889 (Conn. App. 2010). "The tolling of a statute of limitations may potentially overcome a statute of limitations defense. When a statute of limitations is tolled, it does not run and the time during which the statute is tolled is considered, in effect, as not having occurred. Therefore, if a statute in a particular case is tolled, it is as if the statute commenced on a later date." *Gager v. Sanger*, 897 A.2d 704, 708, cert. denied, 907 A.2d 90 (Conn. 2006).

In *West Haven School Dist. v. Owens-Corning Fiberglas Corp.,* 721 F.Supp. 1547 (D. Conn. 1988), a school district brought a products liability action against manufacturers to recover public funds expended to abate health hazards created by the presence of asbestos in school buildings. The United States District Court for the District of Connecticut held that a genuine issue of material fact, precluding entry of summary judgment, existed as to when the cause of action accrued, and thus whether the action was barred by the statute of limitations. The court held that "actionable injury" required as follows: "in addition to tortious conduct on the part of the defendants, there must have existed actual injury to the plaintiff School District, and the School District must have known that there was a causal connection between the conduct and the injury." *West Haven* at 1556.  The parties had conducted extensive discovery, and presented different interpretations of the evidence. The court concluded that "that the defendants' own

equivocation both accurately reflects the conflicting evidence on this question and points up the inappropriateness of resolving the matter by summary judgment. On the record now before the court, a rational trier of fact could well find for the nonmoving party-that is, could find that the School District did not have an actionable claim until after January 7, 1980-and thus the court must hold that there exists a 'genuine issue for trial'." *Id*.

Similarly, *Catz v. Rubenstein*, 513 A.2d 98, 101 (Conn. 1986), involved a medical malpractice action in which the plaintiff immediately knew of her injury and the identity of her physician. The plaintiff, however, learned only later, more than two years after the date of her injury, that there was a causal connection between her injury and the wrongful conduct of her physician. The Connecticut Supreme Court held that the plaintiff suffered actionable harm when she discovered this connection. *Id*. at 101. In reaching its conclusion, the court emphasized the principle that causation is an essential element of a negligence action.

In the case at bar, Ms. Santos' did not know that SJS was attributable to Neurontin until shortly before suit was filed. The documents attached by Defendants to their motion actually establish the confusion regarding causation in this case. Exhibits I and J only contain statements that the diagnosis was SJS, not that Ms. Santos knew her condition. In fact, in January of 2005, when Defendants now contend she should have been aware of her causes of action, Ms. Santos was on life support. (Pl. Ex. A, Dep. Of Ann Santos, at 93:11.)

Defendants' Exhibits K and M demonstrate that Ms. Santos was on no fewer than nine medications when she was admitted to the New Britain General Hospital; she thought she was having an allergic reaction to peaches. *None* of these records link SJS to Neurontin, nor do they demonstrate knowledge on Ms. Santos's part of such a connection. (Def. Ex. I, J, K, L.)

Exhibit N demonstrates that the treating physicians did not even know what caused the SJS. At different times, different healthcare providers speculated that it could have been various medications or, more often, they did not comment on the cause except to say it was "uncertain". (Def. Ex. R.) If her doctors did not know what caused SJS, how can Ms. Santos be charged with awareness of the cause? The treating physicians stopped all of her many medications, precisely because they did not know what caused her condition. (Def. Ex. R.) Even as late as 2008, her records indicated speculation that she was allergic to Lipitor. (Def. Ex. E, F, H.) On May 15, 2007, the date at which Defendants seek to establish accrual of the statute of limitations, the actual content of her medical records for that date attribute SJS to Lipitor. (Def. Ex. T.) These particular records also demonstrate that Ms. Santos did not want to take *any* of the medications she had previously been prescribed for fear of SJS because she did not know what caused the onset of SJS. (Def. Ex. T.)

More importantly, Ms. Santos's September 2011 deposition was recessed for health reasons. (Pl. Ex. A at 96.) Counsel for Defendants' only began asking her about the incident which gave rise to this suit a couple of minutes before the recess. (Pl. Ex. A at 90:7.) The extent of her testimony in that short amount of time was that her doctors did not tell her anything, they just took her off all of her medications and concerned themselves with treating the SJS, which was very severe.[2] (Pl. Ex. A at 92:25-95:5.) Counsel for Plaintiff offered to resume Ms. Santos deposition in November of 2011, but the offer was declined by Defendants.

---

[2] Ms. Santos suffers from blindness, light intolerance, severe scarring, loss of a finger, and pain as a result of her SJS caused by ingestion of Neurontin. Defendants knew of the causal connection between SJS and Neurontin in the late 1990's but did not properly warn of this serious adverse condition, choosing instead to bury the condition in the label and equivocated as to any casual connection by stating that "Adverse events. . .[which] may have no causal relationship to [Neurontin] include the following, erythema multiforme, Stevens-Johnson syndrome." Furthermore, Neurontin was marketed and sold, off-label, for pain management.

Therefore, the impoverished state of the record makes a determination regarding the statute of limitations or the doctrine of equitable tolling by summary judgment impossible. The strain of Defendants' inferences, which they ask the District Court to draw in their favor by granting summary judgment, is not irrefragable proof that would bar Ms. Santos's claim. Further, the record is simply in need of greater factual development. Complete discovery may better demonstrate the material facts relevant to Ms. Santos's awareness of an actionable harm caused by these manufacturers. But at this point, the Court cannot, consistent with summary judgment protocol, indulge the inferences favorable to Defendants that would bar Plaintiff's claim.

## **CONCLUSION**

Defendants cannot and have not established a lack of genuine dispute about the material facts of timeliness under Connecticut substantive law or federal procedural law. For the legal and factual reasons discussed above, Plaintiff, Ann Santos, prays that this Court deny the Motion for Summary Judgment filed by Defendants, Pfizer, Inc., and Warner-Lambert Company, LLC.

Respectfully submitted,

/s/P. Ann Trantham
P. Ann Trantham, Esq.
patrantham@gmail.com
Robert L. Salim, APLC
1901 Texas Street
Natchitoches, Louisiana 71457
Telephone: (318) 352-5999
Facsimile: (318) 354-1227

*Attorney for Plaintiff, Ann Santos*

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment was filed through the ECF System and has been served pursuant to Case Management No. 3 on February 2, 2012.

/s/P. Ann Trantham