UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
                                                            :
In re:  NEURONTIN MARKETING, SALES                          :  MDL Docket No. 1629
        PRACTICES AND PRODUCTS                              :
        LIABILITY LITIGATION                                :  Master File No. 04-10981
                                                            :
------------------------------------------------------------x
                                                            :  Judge Patti B. Saris
                                                            :
THIS DOCUMENT RELATES TO:                                   :
                                                            :  Magistrate Judge Leo T.
*Santos v. Pfizer, Inc.*, No. 10-11205-PBS.                 :  Sorokin
                                                            :
                                                            :  **UNREDACTED**
                                                            :  **VERSION FILED**
                                                            :  **UNDER SEAL**
------------------------------------------------------------x

### REPLY MEMORANDUM IN SUPPORT OF
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or "Pfizer") respectfully submit this reply memorandum in further support of their motion for summary judgment on all counts brought by Plaintiff Ann Santos. Because Plaintiff has failed to show an issue of material fact as to the untimeliness of her claims, they should be dismissed.

### INTRODUCTION

As an initial matter, because Plaintiff has failed to submit an opposing statement of facts, Plaintiff admits all facts set forth in Pfizer's Rule 56.1 Statement of Facts ("Defs.' SOF") [3737]. *See* D. Mass. Local R. 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."). Accordingly, the following facts, in addition to the others asserted therein, are deemed admitted for purposes of Pfizer's motion: (1) Plaintiff first became aware of her injury on January 18, 2005 (Defs.' SOF [3737] ¶¶ 6-7); (2) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* ¶¶ 10, 12); (3)

██████████████████████████████ (*id.* ¶¶ 16-17); and (4) ██████████████████

████████████████████████████████████████████████████████████████ (*id.* ¶ 18).[1]

As established above, and in Pfizer's opening memorandum, Plaintiff's medical records demonstrate that both she and her doctors had knowledge (more than three years before she filed suit) that her Stevens Johnson Syndrome ("SJS") may have been caused by Neurontin. Instead of rebutting that evidence, Plaintiff's response mistakenly argues that a genuine issue of fact exists because other medications were also considered as a suspected cause. Plaintiff claims that the records show "confusion regarding causation in this case" because "different healthcare providers speculated that it could have been various medications," including Neurontin, and her "treating physicians stopped all of her many medications," including Neurontin. (Pl.'s Resp. [3776] at 6-7.) However, Plaintiff's argument is contrary to both the applicable law and the undisputed evidence. Further, Plaintiff's attempts to rely on the doctrine of equitable tolling, or the need for additional discovery, also fail to save her claims.[2]

---

[1] Plaintiff also concedes that Connecticut law applies and that its three-year statute of limitations governs all of her claims. (*See* Pl.'s Resp. [3776] at 4.)

[2] Despite Plaintiff's argument to the contrary (Pl.'s Resp. [3776] at 1-3), courts routinely grant summary judgment where, as here, there is no genuine issue of fact as to whether a plaintiff's claims are time-barred. *See, e.g., Bernier v. Upjohn Co.*, 144 F.3d 178, 181 (1st Cir. 1998) (affirming summary judgment on statute of limitations grounds where plaintiff presented nothing that could "prove that her mother's use of DES was effectively not discoverable" at the time she was put on notice of the potential causal link between that medicine and her alleged injury); *Ives v. NMTC, Inc.*, 746 A.2d 236, 246-47 (Conn. Super. Ct. 1999) (granting summary judgment on statute of limitations grounds). In fact, several cases Plaintiff cites held that summary judgment was appropriate based upon the statute of limitations. *See Museum of Fine Arts, Bos. v. Seger-Thomschitz*, 623 F.3d 1, 9 (1st Cir. 2010) (affirming trial court's summary judgment in favor of defendant as to plaintiff's claims related to purloined artwork because defendant presented unrebutted evidence that she knew the artwork was stolen in 2003 and "the record evidence would not permit a reasonable jury to return a verdict for the nonmoving party"), *cert. denied*, 131 S. Ct. 1612 (2011); *see also BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## **ARGUMENT**

I.  **Plaintiff Had Sufficient Notice to Trigger the Statute of Limitations Over Three Years Prior to Filing Suit**

First, contrary to Plaintiff's argument, the statute of limitations accrues when a plaintiff has notice that a defendant's product *may* be a *potential* cause, not – as Plaintiff posits – when all other potential causes are ruled out and the product is determined to be the sole cause. As the First Circuit has explained, "notice of likely cause is ordinarily enough to start the statute running" and such notice places a duty on the plaintiff "to discover from the legal, scientific, and medical communities whether the theory of causation is supportable and whether it supports a legal claim." *Fidler v. Eastman Kodak Co.*, 714 F.2d 192, 199 (1st Cir. 1983); *see also Bernier*, 144 F.3d at 180 ("As soon as one is on notice of an injury, or at least one that may have been caused by a third party, one must act reasonably in considering and investigating this possibility."); *Collin v. Securi Int'l*, 322 F. Supp. 2d 170, 174-75 (D. Conn. 2004) (explaining that the purposes of Connecticut's statute of limitations is to "encourage parties to timely investigate and file claims"). In this case, Plaintiff was made aware, no later than May 15, 2007, that Neurontin or one of her other medications may have caused her SJS. At minimum, this created a duty to investigate the possible causal link between Neurontin and her SJS. Her failure to investigate that potential cause did not – as she now argues – prevent accrual of the statute of limitations.

Indeed, this Court has granted summary judgment in other cases under nearly identical circumstances. For example, in *Starer v. Baxter Healthcare Corp.*, No. Civ.A. 96CV10683PBS, 2003 WL 21918885 (D. Mass. Aug. 12, 2003) (Saris, J.), this Court granted summary judgment in favor of a defendant who manufactured latex because the undisputed evidence demonstrated that the plaintiff suspected a causal connection between latex and her alleged injury more than three years before filing suit. In that case, plaintiff had experienced allergic reactions while using latex gloves beginning in 1983, and at that time "she suspected she might be allergic to rubber gloves." *Id.* at *1. Like in this case, the plaintiff told her doctors that she had an "allergy

3

to latex gloves" as early as 1988, and "[h]er medical records [were] replete with references to a latex allergy and warnings that exposure to latex can cause anaphylaxis." *Id.* at *2. Plaintiff brought suit in 1996, and she argued – much like Plaintiff in this case – that the statute of limitations did not bar her claim because she was not "officially tested and diagnosed with a latex allergy" until 1995. *Id.* This Court correctly rejected that argument because "[n]otice of likely cause is usually enough to start the statute of limitations running." *Id.* The Court concluded there was no genuine issue of fact as to whether the plaintiff had sufficient knowledge of the potential cause of her injury more than three years before filing suit, particularly given the fact that plaintiff "told treating physicians that she had a contact allergy to latex gloves." *Id.* at *3. While the plaintiff argued that "she had no knowledge that it was specifically the latex in the gloves [as opposed to some other component she had been exposed to] that was causing her reaction until she was diagnosed . . . in 1995," this Court rejected that argument and noted that "a plaintiff need not know the specific injurious ingredient that caused an injury, in order for the statute of limitations to accrue." *Id.*

For the same reasons articulated in *Starer*, Plaintiff's notice of the potential causal link between Neurontin and SJS, which is undisputed, triggered the limitations period. While Plaintiff makes the vague argument that Pfizer has somehow "distorted . . . the information contained in her medical records" (Pl.'s Resp. [3776] at 3), she does not dispute that her doctors told her that the potential cause "could have been various medications" including Neurontin (*id.* at 7), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Defs.' SOF [3737] ¶¶ 16-17), or that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* ¶ 18).[3] Because a reasonable fact-finder could only find that these undisputed facts, at the very least, demonstrate notice of a causal link, there is no genuine issue

---

[3] Plaintiff's argument that Exhibit T shows "Ms. Santos did not want to take any medications she had previously been prescribed for fear of SJS" (Pl.'s Resp. [3776] at 7) merely goes to demonstrate that Plaintiff was on notice of the potential causal link between her Neurontin use and her SJS injury. If she did not want to take Neurontin "for fear of SJS" (*id.*), she obviously believed Neurontin could have caused her SJS at that time.

4

for trial and summary judgment is appropriate. *See Hann v. Micron Separations, Inc.*, 107 F.3d 1, 1997 WL 56859, at *1 (1st Cir. 1997) (per curiam) (unpublished table decision) (explaining that a plaintiff cannot overcome summary judgment through "unsupported allegations, unreasonable inferences, and conclusory speculation"); *Tayag v. Lahey Clinic Hosp., Inc.*, 677 F. Supp. 2d 446, 450 (D. Mass. 2010) (Saris, J.) (holding that "'some metaphysical doubt as to the material facts'" will not preclude summary judgment) (citation omitted), *aff'd*, 632 F.3d 788 (1st Cir. 2011).[4]

Second, this Court should afford no weight to Plaintiff's unsupported claim that she "did not know SJS was attributable to Neurontin until shortly before suit was filed." (Pl.'s Resp. [3776] at 6-7.) As an initial matter, Plaintiff's argument is irrelevant because, as explained above, her notice of the potential causal link was sufficient to trigger the statute of limitations, and actual knowledge of a definitive causal link is not required. Regardless, Plaintiff's conclusory assertion, which is not even supported by admissible evidence, constitutes nothing more than a self-serving conclusion that cannot create a genuine issue of fact for summary judgment purposes. As courts have explained, "an adverse party may not rest upon mere conclusory allegations or denials. The party opposing the motion [for summary judgment] must set forth 'concrete particulars.' . . . It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts . . . ." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (applying Connecticut law) (citations omitted) (alterations in

---

[4] The cases cited by Plaintiff are inapposite. Most address a situation where, unlike here, conflicting evidence created a factual question as to whether plaintiffs had sufficient knowledge to put a reasonable person on notice of actionable harm. *See W. Haven Sch. Dist. v. Owens-Corning Fiberglass Corp.*, 721 F. Supp. 1547, 1556 (D. Conn. 1988) (explaining that there was "conflicting evidence" as to whether the plaintiff should have had knowledge about an asbestos hazard in its buildings). As the First Circuit explained in one case cited by Plaintiff, "[t]he party seeking the benefit of the discovery rule has the burden of showing . . . that she lacked actual knowledge of the basis for her claim," *Museum of Fine Arts, Bos.*, 623 F.3d at 9, but Plaintiff here has presented no evidence whatsoever to satisfy that burden. Furthermore, in this case, Pfizer has presented unrebutted evidence establishing Plaintiff's notice of the causal link, unlike, for example, in *Catz v. Rubenstein*, 513 A.2d 98 (Conn. 1986), on which Plaintiff relies, where the plaintiff had not been explicitly made aware of the purported causal link between her injury and the defendant's conduct.

5

original). Indeed, under similar circumstances, the Court in *BellSouth*, in affirming summary judgment based upon Connecticut's statute of limitations, observed that a plaintiff's disavowal of knowledge of actionable harm should be afforded no weight because "[s]uch conclusory statements are insufficient to raise a triable issue of material fact, and hence [are] properly disregarded." *Id.* For the same reasons, Plaintiff's self-serving and unsupported assertion here does not preclude summary judgment.

Third, Plaintiff's argument that she "was on life support" in January 2005 is unavailing. (Pl.'s Resp. [3776] at 6.) ▮ (*See* Defs.' SOF [3737] ¶¶ 12-13.) Further, Plaintiff does not contend that she was mentally incompetent when ▮ (Defs.' SOF [3737] ¶ 18.)

Fourth, to the extent Plaintiff contends that the statute of limitations cannot accrue until a medical expert opines that Neurontin was the sole cause of her injury, she is incorrect as a matter of law. The Connecticut Supreme Court has held that "the plaintiff's knowledge of injury may constitute actionable harm [thereby triggering the statute of limitations] despite the absence of an expert medical opinion." *Kelly v. Univ. of Conn. Health Ctr.*, 963 A.2d 1, 7 (Conn. 2009); *see also Burns v. Hartford Hosp.*, 472 A.2d 1257, 1261 (Conn. 1984) ("The harm need not have reached its fullest manifestation before the statute begins to run."). As explained above, Plaintiff's knowledge of the potential causal link triggered the statute of limitations and her duty to find medical support for that link. *See Starer*, 2003 WL 21918885, at *2 ("'Once on notice, the plaintiff 'has the duty to discovery from the legal, scientific, and medical communities whether the theory of causation is supportable and whether it supports a legal claims.'") (citation omitted). Her failure to timely investigate does not toll the limitations period.

Similarly, Plaintiff argues that her records, in addition to identifying Neurontin as a potential causal agent, also indicated that "she was allergic to Lipitor." (*See* Pl.'s Resp. [3776] at

6

7.) However, that does not negate her knowledge that Neurontin was a potential cause. There is no requirement – as Plaintiff suggests – that all other potential causes be conclusively ruled out. As this Court previously explained, "[t]he statute of limitations begins to run 'once the plaintiff has enough information to target the defendant as a suspect, though not necessarily to identify the defendant as the culprit.'" *Starer*, 2003 WL 2191885, at *2. Rather than requiring all other causes to be ruled out, the limitations period begins to run when a plaintiff has notice of her injury and the potential causal link to the defendant's conduct, as was the case here.

## II.   Plaintiff Has Failed to Show that Equitable Tolling Applies

While Plaintiff makes a passing reference to the doctrine of equitable tolling in her brief (*see* Pl.'s Resp. [3776] at 5), she does not make the requisite showing to establish its applicability. Under Connecticut law, Plaintiff has the "burden of pleading facts sufficient to establish that the statute of limitations should be tolled." *OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 504 (D. Conn. 2007). Among other things, Plaintiff would have to submit evidence showing that Pfizer was aware of the facts underlying Plaintiff's claim and intentionally made efforts to conceal any information for the specific purpose of delaying Plaintiff's suit. *Bartone v. Robert L. Day Co.*, 656 A.2d 221, 225 (Conn. 1995); *World Wrestling Entm't, Inc. v. THQ, Inc.*, No. X05CV065002512S, 2008 WL 4307568, at *10 (Conn. Super. Ct. Aug. 29, 2008). Here, however, Plaintiff has presented no evidence whatsoever to satisfy her burden of establishing equitable tolling, and therefore her failure to timely file her action cannot be excused on that basis. *See Connell v. Colwell*, 571 A.2d 116, 121 (Conn. 1990) (holding that fraudulent concealment could not be proved where there was "no evidence submitted to the trial court from which it could be inferred that the defendant misrepresented . . . facts with the intent necessary to constitute fraudulent concealment"); *see also Bartone*, 656 A.2d at 224.

## III.   No Additional Discovery Is Necessary

Plaintiff's contention that her own "deposition is woefully incomplete" is not grounds for

7

denying summary judgment. (Pl.'s Resp. [3776] at 4.) While Federal Rule of Civil Procedure 56(d) provides that a summary judgment motion may be deferred "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," Plaintiff here has not invoked that rule, followed the required procedure set forth therein, or made the requisite showing. Nor could she, because Plaintiff cannot argue that her own testimony is somehow "unavailable" to herself.

## CONCLUSION

For the foregoing reasons and the reasons stated Pfizer's opening brief [3736], this Court should grant Pfizer's motion for summary judgment.

Dated: February 16, 2012

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

-and-

ROPES & GRAY LLP

By: /s/ Justin J. Wolosz
    Justin J. Wolosz
    BBO # 643543

Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Email: justin.wolosz@ropesgray.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on February 16, 2012.

/s/ Justin J. Wolosz
Justin J. Wolosz