# EXHIBIT 7

C
West's Arkansas Code Annotated Currentness
  Arkansas **Rules** of **Professional Conduct**(Refs & Annos)
    Client-Lawyer Relationship (Rules 1.1 to 1.18)
      → → RULE 1.2. SCOPE OF REPRESENTATION AND ALLOCATION OF AUTHORITY BETWEEN CLIENT AND LAWYER

(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation, and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activit- ies.

(c) A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent.

(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

COMMENT

**Scope of Representation Allocation of Authority between Client and Lawyer.**

[1] Paragraph (a) confers upon the client the ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations. The decisions specified in paragraph (a), such as whether to settle a civil matter, must also be made by the client. See Rule 1.4(a)(1) for the lawyer's duty to communicate with the client about such decisions. With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client as required by Rule 1.4(a)(2) and may take such action as is impliedly authorized to carry out the representation.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

[2] On occasion, however, a lawyer and a client may disagree about the means to be used to accomplish the client's objectives. Clients normally defer to the special knowledge and skill of their lawyer with respect to the means to be used to accomplish their objectives, particularly with respect to technical, legal and tactical matters. Conversely, lawyers usually defer to the client regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected. Because of the varied nature of the matters about which a lawyer and client might disagree and because the actions in question may implicate the interests of a tribunal or other persons, this Rule does not prescribe how such disagreements are to be resolved. Other law, however, may be applicable and should be consulted by the lawyer. The lawyer should also consult with the client and seek a mutually acceptable resolution of the disagreement. If such efforts are unavailing and the lawyer has a fundamental disagreement with the client, the lawyer may withdraw from the representation. See Rule 1.16(b)(4). Conversely, the client may resolve the disagreement by discharging the lawyer. See Rule 1.16(a)(3).

[3] At the outset of a representation, the client may authorize the lawyer to take specific action on the client's behalf without further consultation. Absent a material change in circumstances and subject to Rule 1.4, a lawyer may rely on such an advance authorization. The client may, however, revoke such authority at any time.

[4] In a case in which the client appears to be suffering diminished capacity, the lawyer's duty to abide by the client's decisions is to be guided by reference to Rule 1.14.

**Independence from Client's Views or Activities.**

[5] Legal representation should not be denied to people who are unable to afford legal services, or whose cause is controversial or the subject of popular disapproval. By the same token, representing a client does not constitute approval of the client's views or activities.

[6] The scope of services to be provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client. When a lawyer has been retained by an insurer to represent an insured, for example, the representation may be limited to matters related to the insurance coverage. A limited representation may be appropriate because the client has limited objectives for the representation. In addition, the terms upon which representation is undertaken may exclude specific means that might otherwise be used to accomplish the client's objectives. Such limitations may exclude actions that the client thinks are too costly or that the lawyer regards as repugnant or imprudent.

[7] Although this Rule affords the lawyer and client substantial latitude to limit the representation, the limitation must be reasonable under the circumstances. If, for example, a client's objective is limited to securing general information about the law the client needs in order to handle a common and typically uncomplicated legal problem, the lawyer and client may agree that the lawyer's services will be limited to a brief telephone consultation. Such a limitation, however, would not be reasonable if the time allotted was not sufficient to yield advice upon which the client could rely. Although an agreement for a limited representation does not exempt a lawyer from the duty to provide competent representation, the limitation is a factor to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

be considered when determining the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. See Rule 1.1.

[8] All agreements concerning a lawyer's representation of a client must accord with the Rules of Professional Conduct and other law. See, e.g., Rules 1.1, 1.8 and 5.6.

**Criminal, Fraudulent and Prohibited Transactions.**

[9] Paragraph (d) prohibits a lawyer from knowingly counseling or assisting a client to commit a crime or fraud. This prohibition, however, does not preclude the lawyer from giving an honest opinion about the actual consequences that appear likely to result from a client's conduct. Nor does the fact that a client uses advice in a course of action that is criminal or fraudulent does not, of itself, make a lawyer a party to the course of action. There is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud might be committed with impunity.

[10] When the client's course of action has already begun and is continuing, the lawyer's responsibility is especially delicate. The lawyer is required to avoid assisting the client, for example, by drafting or delivering documents that the lawyer knows are fraudulent or by suggesting how the wrongdoing might be concealed. A lawyer may not continue assisting a client in conduct that the lawyer originally supposed was legally proper but then discovers is criminal or fraudulent. The lawyer must, therefore, withdraw from the representation of the client in the matter. See Rule 1.16(a). In some cases, withdrawal alone might be insufficient. It may be necessary for the lawyer to give notice of the fact of withdrawal and to disaffirm any opinion, document, affirmation or the like. See Rule 4.1.

[11] Where the client is a fiduciary, the lawyer may be charged with special obligations in dealings with a beneficiary.

[12] Paragraph (d) applies whether or not the defrauded party is a party to the transaction. Hence, a lawyer must not participate in a transaction to effectuate criminal or fraudulent avoidance of tax liability. Paragraph (d) does not preclude undertaking a criminal defense incident to a general retainer for legal services to a lawful enterprise. The last clause of paragraph (d) recognizes that determining the validity or interpretation of a statute or regulation may require a course of action involving disobedience of the statute or regulation or of the interpretation placed upon it by governmental authorities.

[13] If a lawyer comes to know or reasonably should know that a client expects assistance not permitted by the Rules of Professional Conduct or other law or if the lawyer intends to act contrary to the client's instructions, the lawyer must consult with the client regarding the limitations on the lawyer's conduct. See Rule 1.4(a)(5).

CODE COMPARISON (MODEL RULES)

Rule 1.2(a) has no counterpart in the Disciplinary Rules of the Code. EC 7-7 states that "In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

the authority to make decisions is exclusively that of the client...." EC 7-8 states that "In the final analysis, however, the ... decision whether to forego legally available objectives or methods because of nonlegal factors is ultimately for the client.... In the event that the client in a nonadjudicatory matter insists upon a course of conduct that is contrary to the judgment and advice of the lawyer but not prohibited by Disciplinary Rules, the lawyer may withdraw from the employment." DR 7-101(A)(1) provides that "A lawyer shall not intentionally ... fail to seek the lawful objectives of his client through reasonably available means permitted by law.... A lawyer does not violate this Disciplinary Rule, however, by ... avoiding offensive tactics...."

Rule 1.2(b) has no counterpart in the Code.

Rule 1.2(c) has no counterpart in the Code.

With regard to paragraph (d), DR 7-102(A)(7) provides that a lawyer shall not "counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent." DR 7-102(A)(7) provides that a lawyer shall not "counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent." DR 7-102(A)(6) provides that a lawyer shall not "participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false." DR 7-106 provides that "A lawyer shall not ... advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal ... but he may take appropriate steps in good faith to test the validity of such rule or ruling." EC 7-5 states that "A lawyer should never encourage or aid his client to commit criminal acts or counsel his client on how to violate the law and avoid punishment therefor."

With regard to Rule 1.2(e), DR 2-110(C)(1)(c) provides that a lawyer may withdraw from representation if a client "insists" that the lawyer engage in "conduct that is illegal or that is prohibited under the Disciplinary Rules." DR 9-101(C) provides that "a lawyer shall not state or imply that he is able to influence improperly ... any tribunal, legislative body or public offi- cial."

LAW REVIEW AND JOURNAL COMMENTARIES

Hall, Defensive Defense Lawyering or Defending the Criminal Defense Lawyer from the Client, 11 U. Ark. Little Rock L.J. 329 (1988-1989).

LIBRARY REFERENCES

    Attorney and Client ⬬ 32(4).
    Westlaw Key Number Search: 45k32(4).
    C.J.S. Attorney and Client §§ 45 to 46.

NOTES OF DECISIONS

    Attachment and garnishment 3
    Consulting with client 1
    Enforcement of judgment 4

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Facts to be determined 5
Misappropriations 6
Proceeding with client's cause 2

1. Consulting with client

In allowing entry of order continuing custody of minor children with their grandparents, attorney hired by natural parents to regain custody did not violate professional conduct rule requiring lawyer to consult with client as to means by which objectives of representation were to be pursued, since order was not final but rather merely maintained status quo, order was part of agreement for continuance in hearing regarding custody, clients agreed to continuance, and continuance was in clients' best interests, in light of fact that parents had not heeded attorney's advice to improve their home and work situations. Rules of Prof.Conduct, Rule 1.2(a). Purtle v. Committee on Professional Conduct, 1994, 317 Ark. 278, 878 S.W.2d 714. Attorney And Client ⚖ 44(1)

2. Proceeding with client's cause

Trial court did not err in permitting plaintiff's counsel to continue to serve as counsel in medical malpractice action in which counsel and plaintiff disagreed regarding the merits of the case and whether to proceed; counsel's response to defendants' summary judgment motion used candor, as required, to inform the court that pursuing the case would be frivolous, it did not appear that counsel's evaluation of the merits of the case was made in bad faith, and there was nothing in the record to suggest that plaintiff had terminated counsel's representation. Shields v. QHG of Springdale, Inc., 2009, 302 S.W.3d 598, 2009 Ark. 88. Attorney and Client ⚖ 76(1)

It is well settled that the attorney will always be justified in ceasing to proceed with his client's cause [unless specially instructed to go on] whenever he shall be bona fide influenced to this course by a prudent regard for the interest of his client. Pennington's Ex'rs v. Yell, 1850, 11 Ark. 212, 52 Am.Dec. 262, Unreported. Attorney And Client ⚖ 108

Although it is attorney's duty to pursue his client's cause through all its stages, he is not imperiously bound to institute new collateral suits without special instructions to do so-as actions against the sheriff or clerk for the failure of their duty in the issuance or service of process. Pennington's Ex'rs v. Yell, 1850, 11 Ark. 212, 52 Am.Dec. 262, Unreported. Attorney And Client ⚖ 108

3. Attachment and garnishment

Attorney failing to follow client's instructions to bring suit and obtain writ of garnishment for fire insurance moneys due debtor before judgment became liable for resulting loss to client, though debtor promised to pay claim on receipt of insurance moneys. W.L. Douglas Shoe Co. v. Rollwage, 1933, 187 Ark. 1084, 63 S.W.2d 841. Attorney And Client ⚖ 108

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Attorney's erroneous belief that law prohibited garnishment before judgment did not excuse his failure to follow client's positive instructions to institute suit and obtain writ of garnishment. W.L. Douglas Shoe Co. v. Rollwage, 1933, 187 Ark. 1084, 63 S.W.2d 841. Attorney And Client ⇨ 108

### 4. Enforcement of judgment

An attorney may cease to send out execution, whenever he, in good faith, may deem it to the interest of his client so to do, without first giving notice to his client, and asking instructions. Pennington's Ex'rs v. Yell, 1850, 11 Ark. 212, 52 Am.Dec. 262, Unreported. Attorney And Client ⇨ 108

### 5. Facts to be determined

Special judge's finding that attorney, who failed to use check given to attorney by client's mother for payment of court costs in client's criminal matter, did not violate rule of professional conduct that required a lawyer to abide by a client's decisions concerning the objectives of representation and to consult with the client as to the means by which they are to be pursued, was not clearly erroneous, as issue of check's intended purpose was matter of credibility for judge to determine. Ligon v. Newman, 2006, 231 S.W.3d 662, 365 Ark. 510. Attorney And Client ⇨ 53(2)

### 6. Misappropriations

Disbarment of attorney was warranted, in attorney disciplinary case, where attorney misappropriated client funds involving multiple clients, attorney's actions prejudiced clients and law firm that employed attorney, and attorney concocted various methods to cover up his misappropriation of client funds when law firm confronted attorney, in violation of the professional rules. Ligon v. Newman, 2006, 231 S.W.3d 662, 365 Ark. 510. Attorney And Client ⇨ 59.14(2)

Rules of Prof. Conduct, Rule 1.2, AR R RPC Rule 1.2

Current with amendments received through 11/1/11

(C) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Rules of Prof.Conduct, Rule 1.4

Page 1

C
West's Arkansas Code Annotated Currentness
  Arkansas Rules of Professional Conduct (Refs & Annos)
    Client-Lawyer Relationship (Rules 1.1 to 1.18)
      → → **RULE 1.4. COMMUNICATION**

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules.

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

(c) A lawyer shall promptly notify a client in writing of the actual or constructive receipt by the attorney of a check or other payment received from an insurance company, an opposing party, or from any other source which constitutes the payment of a settlement, judgment, or other monies to which the client is entitled.

COMMENT

[1] Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation.

**Communicating with Client.**

[2] If these Rules require that a particular decision about the representation be made by the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

client, paragraph (a)(1) requires that the lawyer promptly consult with and secure the client's consent prior to taking action unless prior discussions with the client have resolved what action the client wants the lawyer to take. For example, a lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer. See Rule 1.2(a).

[3] Paragraph (a)(2) requires the lawyer to reasonably consult with the client about the means to be used to accomplish the client's objectives. In some situations--depending on both the importance of the action under consideration and the feasibility of consulting with the client--this duty will require consultation prior to taking action. In other circumstances, such as during a trial when an immediate decision must be made, the exigency of the situation may require the lawyer to act without prior consultation. In such cases the lawyer must nonetheless act reasonably to inform the client of actions the lawyer has taken on the client's behalf. Additionally, paragraph (a)(3) requires that the lawyer keep the client reasonably informed about the status of the matter, such as significant developments affecting the timing or the substance of the representation.

[4] A lawyer's regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation. When a client makes a reasonable request for information, however, paragraph (a)(4) requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer, or a member of the lawyer's staff, acknowledge receipt of the request and advise the client when a response may be expected. Client telephone calls should be promptly returned or acknowledged.

**Explaining Matters.**

[5] The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. Adequacy of communication depends in part on the kind of advice or assistance that is involved. For example, when there is time to explain a proposal made in a negotiation, the lawyer should review all important provisions with the client before proceeding to an agreement. In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that are likely to result in significant expense or to injure or coerce others. On the other hand, a lawyer ordinarily will not be expected to describe trial or negotiation strategy in detail. The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation. In certain circumstances, such as when a lawyer asks a client to consent to a representation affected by a conflict of interest, the client must give informed consent, as defined in Rule 1.0(e).

[6] Ordinarily, the information to be provided is that appropriate for a client who is a comprehending and responsible adult. However, fully informing the client according to this standard may be impracticable, for example, where the client is a child or suffers from diminished ca-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

pacity. See Rule 1.14. When the client is an organization or group, it is often impossible or inappropriate to inform every one of its members about its legal affairs; ordinarily, the lawyer should address communications to the appropriate officials of the organization. See Rule 1.13. Where many routine matters are involved, a system of limited or occasional reporting may be arranged with the client. Practical exigency may also require a lawyer to act for a client without prior consultation.

**Withholding Information.**

[7] In some circumstances, a lawyer may be justified in delaying transmission of information when the client would be likely to react imprudently to an immediate communication. Thus, a lawyer might withhold a psychiatric diagnosis of a client when the examining psychiatrist indicates that disclosure would harm the client. A lawyer may not withhold information to serve the lawyer's own interest or convenience or the interests or convenience of another person. Rules or court orders governing litigation may provide that information supplied to a lawyer may not be disclosed to the client. Rule 3.4(c) directs compliance with such rules or orders.

CODE COMPARISON (MODEL RULES)

This Rule has no direct counterpart in the Disciplinary Rules of the Code. DR 6-101(A)(3) provides that a lawyer shall not "neglect a legal matter entrusted to him." DR 9-102(B)(1) provides that a lawyer "shall promptly notify a client of the receipt of his funds, securities, or other properties." EC 7-8 states that "a lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations." EC 9-2 states that "a lawyer should fully and promptly inform his client of material developments in the matters being handled for the client."

LAW REVIEW AND JOURNAL COMMENTARIES

Hughes, Ethics and the Arkansas Pro Bono Lawyer, 46-WTR Ark. Law. 14 (2011).

McAlpine & Duke, Immigration Practice In Arkansas: A Practitioners' Guide, 23 U. Ark. Little Rock L. Rev. 953 (Summer 2001).

LIBRARY REFERENCES

Key Numbers

    Attorney and Client ⇨ 32(4).
    Westlaw Key Number Search: 45k32(4).
    C.J.S. Attorney and Client §§ 45 to 46.

NOTES OF DECISIONS

  Collection of money 3
  Failure to communicate 2
  Misappropriations 4
  Nonlawyer staff communications 1

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

1. Nonlawyer staff communications

Special judge's finding that no professional rule violations occurred during attorney's handling of restitution agreement for client, as a possible aggravator in support of disbarment, was not clearly erroneous, despite assertion of director of the supreme court committee on professional conduct that attorney failed to keep his client reasonably informed and intentionally attempted to defraud party that was owed restitution; issue turned wholly on credibility of witnesses, and special judge determined both that no one gained anything in the matter and that, if attorney intended to commit a criminal act, he did not do a good job of hiding it. Ligon v. Newman, 2006, 231 S.W.3d 662, 365 Ark. 510. Attorney And Client 59.5(4)

Failure to explain contract or clarify objectives of representation in personal injury action arising out of automobile accident, while relying upon nonlawyer staff to communicate with client, violated rule requiring lawyer to explain matter to extent reasonably necessary to permit client to make informed decisions regarding representation. Rules of Prof.Conduct, Rule 1.4(b). Mays v. Neal, 1997, 938 S.W.2d 830, 327 Ark. 302. Attorney And Client 44(1)

2. Failure to communicate

Decision by Committee on Professional Conduct to impose six-month suspension on attorney's license to practice law was supported by preponderance of evidence; attorney engaged in serious misconduct involving dishonesty or deceit by taking fee from new client while withholding the fact that his license was shortly to be suspended, thereby profiting at expense of client, who had to spend additional money to retain another attorney, and attorney had a prior disciplinary record that indicated a substantial disregard of his professional duties and responsibilities. Young v. Ligon, 2008, 283 S.W.3d 587, 373 Ark. 289. Attorney and Client 59.13(3)

Attorney's conduct in failing to return client's calls until after the statute of limitations on her claim had expired, and in failing to inform client that their attorney-client relationship would have to terminate because of his suspension, violated the professional rule that required a lawyer to keep a client reasonably informed about the status of the matter and to promptly comply with reasonable requests for information. Walker v. Supreme Court Committee on Professional Conduct, 2007, 246 S.W.3d 418, 368 Ark. 357. Attorney And Client 44(1)

Attorney's conduct in failing to inform client that his law license was suspended and that the suspension might result in his failure to pursue her claim violated the professional rule that required a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. Walker v. Supreme Court Committee on Professional Conduct, 2007, 246 S.W.3d 418, 368 Ark. 357. Attorney And Client 44(1)

Attorney violated professional conduct rule regarding communication with clients, with re-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

spect to mental health patient seeking placement in less-restrictive environment than state hospital; after hearing on placement request, for which hearing attorney had not retained a psychiatrist to testify for patient, attorney did not communicate with patient regarding retention of psychiatrist for seven months, which communication occurred one month after patient released attorney from the representation. Ligon v. Price, 2004, 200 S.W.3d 417, 360 Ark. 98. Attorney And Client ⚙ 44(1)

Attorney violated professional conduct rule requiring explanation of matters to client to extent reasonably necessary to permit client to make informed decisions regarding the representation, while representing mental health patient seeking placement in less-restrictive environment than state hospital; attorney did not explain to patient why attorney could not find a psychiatrist to testify for patient at hearing on placement request. Ligon v. Price, 2004, 200 S.W.3d 417, 360 Ark. 98. Attorney And Client ⚙ 44(1)

Failing to communicate with client to extent necessary to permit her to make informed decisions regarding personal injury representation and assisting paraprofessional and other employees of firm in performing activities constituting unauthorized practice of law warranted reprimand. Rules of Prof.Conduct, Rules 1.4(b), 5.3(b), 5.5(b). Mays v. Neal, 1997, 938 S.W.2d 830, 327 Ark. 302. Attorney And Client ⚙ 59.8(1)

In allowing entry of order continuing custody of minor children with their grandparents, attorney hired by natural parents to regain custody did not violate professional conduct rule requiring lawyer to consult with client as to means by which objectives of representation were to be pursued, since order was not final but rather merely maintained status quo, order was part of agreement for continuance in hearing regarding custody, clients agreed to continuance, and continuance was in clients' best interests, in light of fact that parents had not heeded attorney's advice to improve their home and work situations. Rules of Prof.Conduct, Rule 1.2(a). Purtle v. Committee on Professional Conduct, 1994, 317 Ark. 278, 878 S.W.2d 714. Attorney And Client ⚙ 44(1)

3. Collection of money

Special judge's findings that attorney failed to timely pay money owed to city by client in criminal matter, failed to describe specific expenses covered by check given to attorney by client's mother, deposited such check into his personal account, and committed theft in connection with taking of funds from check, in violation of professional conduct rules including rule requiring reasonable diligence and promptness, rule requiring separation of clients' and attorney's property, and rule prohibiting dishonest conduct, did not contradict special judge's finding that director of professional conduct committee failed to prove that check was intended to cover fees in separate matter involving county, but were based on testimony of witnesses, and thus such findings were not clearly erroneous. Ligon v. Newman, 2006, 231 S.W.3d 662, 365 Ark. 510. Attorney And Client ⚙ 54

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

4. Misappropriations

Disbarment of attorney was warranted, in attorney disciplinary case, where attorney misappropriated client funds involving multiple clients, attorney's actions prejudiced clients and law firm that employed attorney, and attorney concocted various methods to cover up his misappropriation of client funds when law firm confronted attorney, in violation of the professional rules. Ligon v. Newman, 2006, 231 S.W.3d 662, 365 Ark. 510. Attorney And Client ⚷ 59.14(2)

Rules of Prof. Conduct, Rule 1.4, AR R RPC Rule 1.4

Current with amendments received through 11/1/11

(C) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.