**Exhibit A**

**Proposed Memorandum In Reply to Pfizer's Response to Joint Application for Reimbursement from the Common Benefit Fund (ECF 3814)**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-------------------------------------------------------------------X
In re:  NEURONTIN MARKETING,              :   MDL Docket No. 1629
        SALES PRACTICES, AND              :
        PRODUCTS LIABILITY LITIGATION     :   Master File No. 04-10981
                                          :
-------------------------------------------------------------------X   Judge Patti B. Saris
                                          :
THIS DOCUMENT RELATES TO:                 :   Magistrate Judge Leo T. Sorokin
                                          :
PLAINTIFFS' PRODUCTS LIABILITY GROUP      :
-------------------------------------------------------------------X
```

Memorandum In Reply to Pfizer's Response to Joint Application for
Reimbursement from the Common Benefit Fund (ECF 3814)

To the Honorable Court:

Jack W. London, individually and on behalf of Archie Carl Pierce and Eugene Brooks,

Applicants, respectfully submits this Memorandum in Reply to Pfizer's Response to Joint

Application for Reimbursement from the Common Benefit Fund and in support of their

Application.

I.

The Defendants, in the Response to Joint Application for Reimbursement (Docket

Number 3814), have made no effort to demonstrate that they have legal standing to contest the

Application (Docket Number 3762 and 3813), nor to contest or criticize any of the expenses

made the subject of the Application.   Your applicants respectfully submit that the Defendants

submitted their response for the purpose of attempting to taint the Court's evaluation of the

expenses, knowing that they had no standing to do so.

By authority first brought to this Court's attention by the Defendants, Rule F.R.C.P. Rule

23 (h) expressly applies to multi-district litigation and, by its terms, excludes these Defendants

from any voice in the Court's decision regarding common benefit funds.   *In Re High Sulfur Content Gasoline Product Liability Litigation*, 517 F.3d 220 (5th Cir. 2008).   See Rule 23 (h) (2), and comment by Rules Advisory Committee.  A non-settling defendant, and that includes Pfizer, has no say in the Court's decision regarding applications to the Common Benefit Fund.

II.

Your Movants would further show that the expert fees in issue were not only reasonable but were quite modest in comparison to fees the Defendant's experts charge and that Defendants' expert intentionally obscured documentation of billing records.

A.   Defendant's Expert Charges are vastly greater than any of those in issue:

Dr. Robert Gibbons, Defendant's expert epidemiologist, billed Pfizer some $383,113.00 before giving his first deposition.  Exhibit 1.  When asked to account for any of the time spent on the bills, or expenses, Dr. Gibbons testified that he kept track of his time  'in his memory;' Deposition exerpts, Dr. Gibbons, March 5, 2009, Exhibit 2, Page 787.  He also testified that he had been counseled  that having 'exquisitely detailed bills may not be the best plan for litigation-related work;' and that as a consequence he was not 'very very detailed in what he described in his bills.'  Deposition exerpts, Dr. Gibbons, March 5, 2009, Exhibit 2, Page 971.

In light of this, Defendant is in no position to criticize Professor Trimble or Dr. Blume's charges or  to advise the Court of what the plaintiffs should be paying the plaintiffs' experts.

B.  Professor Trimble's Charges

Given that Professor Trimble had to travel to and from England for his deposition, and to both recover from travel and to prepare for his deposition and give it, five days is hardly an excessive amount of time to travel, prepare, give a deposition, and travel again.

Nancy Heim, mentioned in the Response, is a medical illustrator who provided art work for Professor Trimble's exhibits.

III.

Your Movants would further show in reply to the Defendants' Response that some of the expenses in issue were driven up by Defendants' conduct of Dr. Blume's deposition.  In the first hearing to determine whether the preservation depositions would take place at all, at page 30, [Transcript,  Hearing before Magistrate Judge Sorokin, August 17, 2010], Exhibit 3, the Court stated: "I want to be clear on this.  One, we're talking about one day for each witness." Mr. Cheffo spoke in the hearing about preparing for a four hour proceeding.

However, when the defendants cross examined Dr. Blume, they did so for approximately thirteen hours!  The examination was often conducted by defense counsel asking her questions from reading a screen on his Blackberry and asking detailed questions about statistics in an article he had not produced before the deposition, it having been in print less than a week. Tactics of that kind drive costs up, not down.

IV.

The most telling point is that the only complaints about the bills or expenses are from Pfizer, not from the plaintiffs or plaintiffs  attorneys.   The plaintiffs attorneys not only voted to take the depositions but have made no complaint whatever with the amounts incurred or charged. Pfizer has a right to a fair trial.  It does not have a right to control what the plaintiffs attorneys spend on witnesses in their attempts to level the playing field for their clients.

Conclusion

For these reasons, Your Applicants respectfully pray the Court give no weight to the remarks Pfizer asserts in its indignant reply to the Application for Reimbursement and, instead,

that the Court rule on the Application on its own merit, taking into account the nature of the

expenses, the common benefit provided by the work in question, and the relative standing of the

parties.

Respectfully submitted,

LAW OFFICES OF JACK W LONDON
3701 Bee Cave Rd., Suite 200
Austin, TX 78746
512-478-5858 (telephone)
512-479-5934 (facsimile)


By: _____
     Jack W. London
     State Bar No. 12512500


**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system has been served
pursuant to Case Management Order No. 3 on _____.


_____
Jack W. London, Esquire

Exhibit 1


Bills submitted by Dr. Robert Gibbons to Pfizer before February 2009

(Exhibit 25 to Dr. Gibbons's deposition)

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL  60614

INVOICE NO.  080401
DATE: April 1, 2008

CONSULT TO:
Wheeler Trigg and Kenedy LLP
attn: Jim Hooper

| ITEM | DESCRIPTION | PRICE ($) |
|---|---|---|
| 1 | Review of background materials related to the Neurontin matter | 24 hrs |
| 2 | Conference calls and preparation | 3 hrs |
|  |  |  |
|  | Rate $500/hour |  |
|  |  |  |
|  |  |  |
|  | TOTAL | $13,500.00 |

Payment Terms
    Please remit payment within 30 days of invoice date to:
        Robert D. Gibbons Ltd.
        2021 North Mohawk
        Chicago, IL  60614
        FEIN # 36-326-0796

EXHIBIT 25
FOR I.D. 2/4/09

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL 60614

INVOICE NO. 080403
DATE: April 23, 2008

**CONSULT TO:**
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Analysis of RCT data | 8 hrs |
| 2 | Analysis of AERS data | 24 hrs |
| 3 | File specifications for analyses and related discussions | 8 hrs |
| 4 | Review of Plaintiff declarations and related materials | 4 hrs |
| 5 | Preparation of declaration | 8 hrs |
| | | |
| | Rate $500/hour | |
| | | |
| | TOTAL | $26,000.00 |

**Payment Terms**
　　　　Please remit payment within 30 days of invoice date to:
　　　　　　Robert D. Gibbons Ltd.
　　　　　　2021 North Mohawk
　　　　　　Chicago, IL 60614
　　　　　　**FEIN # 36-326-0796**

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL 60614

INVOICE NO. 080404
DATE: May 20, 2008

**CONSULT TO:**
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Preparation of Expert Report | 54 hrs |
| | | |
| | | |
| | | |
| | | |
| | Rate $500/hour | |
| | TOTAL | $27,000.00 |

**Payment Terms**
　　Please remit payment within 30 days of invoice date to:
　　　　Robert D. Gibbons Ltd.
　　　　2021 North Mohawk
　　　　Chicago, IL 60614
　　　　**FEIN # 36-326-0796**

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL 60614

INVOICE NO. 080601
DATE: June 13, 2008

**CONSULT TO:**
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Meetings (in DC and Chicago), conference calls, review of Pfizer and FDA materials, preparation for Daubert hearing. | 60 hrs |
| 2 | Ground Transport for DC meeting | $199 |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Rate $500/hour |  |
|  | TOTAL | $30,199.00 |

Payment Terms
    Please remit payment within 30 days of invoice date to:
        Robert D. Gibbons Ltd.
        2021 North Mohawk
        Chicago, IL 60614
        FEIN # 36-326-0796

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL 60614

INVOICE NO. 080605
DATE: June 22, 2008

CONSULT TO:
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|---|---|---|
| 1 | Preparation for and participation in Daubert hearing | 40 hrs |
| 2 | Expenses (Air $583, Taxis in Boston $41, Limo in Chicago $199) | $823 |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Rate $500/hour |  |
|  |  |  |
|  | TOTAL | $20,823.00 |

Payment Terms
      Please remit payment within 30 days of invoice date to:
          Robert D. Gibbons Ltd.
          2021 North Mohawk
          Chicago, IL 60614
          FEIN # 36-326-0796

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL  60614

INVOICE NO.  080703
DATE: July 13, 2008

CONSULT TO:
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Preparation of supplemental report | 30 hrs |
| 2 | Review of FDA materials including AMICUS brief, Pfizer briefing and slides, and transcripts of Daubert hearing and related calls. | 16 hrs |
| 3 | Meetings on 7/11 and 7/12 | 16 hrs |
| | | |
| | | |
| | Rate $500/hour | |
| | TOTAL | $31,000.00 |

Payment Terms
      Please remit payment within 30 days of invoice date to:
          Robert D. Gibbons Ltd.
          2021 North Mohawk
          Chicago, IL  60614
          FEIN # 36-326-0796

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL  60614

INVOICE NO.  080709
DATE: July 29, 2008

CONSULT TO:
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Preparation and participation in trial | 32 hrs |
| 2 | Expenses (air $365, hotel (extra night due to flight cancellation) $502, ground Chicago $184, ground Boston $40) | $1,091 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Rate $500/hour |  |
|  |  |  |
|  | TOTAL | $17,091.00 |

Payment Terms
        Please remit payment within 30 days of invoice date to:
                Robert D. Gibbons Ltd.
                2021 North Mohawk
                Chicago, IL  60614
                FEIN # 36-326-0796

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL  60614

INVOICE NO.  080710
DATE: July 29, 2008

CONSULT TO:
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| | | $15,000 |
| 1 | Expense for data from IMS/PharMetrics | |
| | | |
| | | |
| | | |
| | | |
| | Rate $500/hour | |
| | | |
| | TOTAL | $15,000.00 |

Payment Terms
    Please remit payment within 30 days of invoice date to:
        Robert D. Gibbons Ltd.
        2021 North Mohawk
        Chicago, IL  60614
        FEIN # 36-326-0796

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL 60614

INVOICE NO. 080801
DATE: August 6, 2008

CONSULT TO:
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Create specifications for statistical databases | 8 hrs |
| 2 | Construct statistical database, compute summary statistics and perform screening analyses for BP cohort | 50 hrs |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Rate $500/hour |  |
| | TOTAL | $29,000.00 |

Payment Terms
    Please remit payment within 30 days of invoice date to:
        Robert D. Gibbons Ltd.
        2021 North Mohawk
        Chicago, IL 60614
        FEIN # 36-326-0796

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL 60614

INVOICE NO. 080901
DATE: September 2, 2008

CONSULT TO:
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| | | 40 hrs |
| 1 | Analytic work on PharMetrics data | |
| | | |
| | | |
| | | |
| | | |
| | Rate $500/hour | |
| | | $20,000.00 |
| | TOTAL | |

Payment Terms
    Please remit payment within 30 days of invoice date to:
        Robert D. Gibbons Ltd.
        2021 North Mohawk
        Chicago, IL 60614
        FEIN # 36-326-0796

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL 60614

INVOICE NO. 080902
DATE: September 2, 2008

**CONSULT TO:**
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Review of Jewell, McCrory, and Perry expert reports and re-analysis of associated data. | 44 hrs |
| | | |
| | | |
| | | |
| | | |
| | Rate $500/hour | |
| | **TOTAL** | $22,000.00 |

**Payment Terms**
   Please remit payment within 30 days of invoice date to:
      Robert D. Gibbons Ltd.
      2021 North Mohawk
      Chicago, IL 60614
      **FEIN # 36-326-0796**

2



Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL 60614

INVOICE NO. 080902
DATE: October 5, 2008

CONSULT TO:
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Analytic work on PharMetrics data | 40 hrs |
| | | |
| | | |
| | | |
| | | |
| | Rate $500/hour | |
| | | |
| | TOTAL | $20,000.00 |

Payment Terms
    Please remit payment within 30 days of invoice date to:
        Robert D. Gibbons Ltd.
        2021 North Mohawk
        Chicago, IL 60614
        FEIN # 36-326-0796

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL 60614

INVOICE NO. 081007
DATE: October 18, 2008

CONSULT TO:
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|---|---|---|
| 1 | Complete analytic work on PharMetrics data and prepare draft report | 32 hrs |
| | | |
| | | |
| | | |
| | | |
| | Rate $500/hour | |
| | TOTAL | $16,000.00 |

Payment Terms
    Please remit payment within 30 days of invoice date to:
        Robert D. Gibbons Ltd.
        2021 North Mohawk
        Chicago, IL 60614
        FEIN # 36-326-0796

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL  60614

INVOICE NO.  081004
DATE: October 5, 2008

CONSULT TO:
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|---|---|---|
| 1 | Preparation of draft expert report based on review of Jewell, McCrory, and Perry expert reports and re-analysis of associated data. | 16 hrs |
| | | |
| | | |
| | | |
| | | |
| | | |
| | Rate $500/hour | |
| | | |
| | TOTAL | $8,000.00 |

Payment Terms
    Please remit payment within 30 days of invoice date to:
        Robert D. Gibbons Ltd.
        2021 North Mohawk
        Chicago, IL  60614
        **FEIN # 36-326-0796**

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL 60614

INVOICE NO. 081010
DATE: October 26, 2008

CONSULT TO:
Davis, Polk and Wardwell
attn: Matt Rowland

*pd # 693794*
*11-7-08*

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Review of McCrory and Perry expert reports | 40 hrs |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Rate $500/hour |  |
| | TOTAL | $20,000.00 |

Payment Terms
        Please remit payment within 30 days of invoice date to:
            Robert D. Gibbons Ltd.
            2021 North Mohawk
            Chicago, IL 60614
            FEIN # 36-326-0796

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL  60614

INVOICE NO.  081102
DATE: November 15, 2008

**CONSULT TO:**
Davis, Polk and Wardwell
attn: Matt Rowland

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Review Pfizer pain data, construct statistical database, begin analysis. | 40 hrs |
|   |             |           |
|   |             |           |
|   |             |           |
|   |             |           |
|   | Rate $500/hour |        |
|   |             |           |
| | **TOTAL** | $20,000.00 |

*#696220*

*12·12-08*

**Payment Terms**
   Please remit payment within 30 days of invoice date to:
      Robert D. Gibbons Ltd.
      2021 North Mohawk
      Chicago, IL  60614
      **FEIN # 36-326-0796**

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL 60614

INVOICE NO. 081104
DATE: November 30, 2008

**CONSULT TO:**
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Prepare CD with materials relied upon for PharMetrics analyses | 8 hrs |
| | | |
| | | |
| | | |
| | | |
| | Rate $500/hour | |
| | | |
| **TOTAL** | | $4,000.00 |

\# 697147
12-18-08

**Payment Terms**
   Please remit payment within 30 days of invoice date to:
      Robert D. Gibbons Ltd.
      2021 North Mohawk
      Chicago, IL 60614
      **FEIN # 36-326-0796**

2

*to PD*
*12/30*

**Robert D. Gibbons Ltd.**
**2021 North Mohawk**
**Chicago, IL  60614**

**INVOICE NO.** 081103
**DATE:** November 30, 2008

**CONSULT TO:**
Davis, Polk and Wardwell
attn: Matt Rowland

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Complete pain analyses and prepare expert report | 24 hrs |
| 2 | Construct migraine statistical database and begin analysis | 32 hrs |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Rate $500/hour |  |
|  | **TOTAL** | $28,000.00 |

**Payment Terms**
   Please remit payment within 30 days of invoice date to:
      Robert D. Gibbons Ltd.
      2021 North Mohawk
      Chicago, IL  60614
      **FEIN # 36-326-0796**

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL  60614

INVOICE NO.  081201
DATE: December 15, 2008

**CONSULT TO:**
Davis, Polk and Wardwell
attn: Matt Rowland

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Complete all analyses and expert report. | 24 hrs |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Rate $500/hour |  |
|  |  |  |
|  | TOTAL | $12,000.00 |

**Payment Terms**
Please remit payment within 30 days of invoice date to:
Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL  60614
**FEIN # 36-326-0796**

2

02/03/2008 18:31 FAX  8164215547     SHOOK HARDY & BACON                                           ☒ 020/022

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL 60614

INVOICE NO. 090101
DATE: January 22, 2008

CONSULT TO:
Davis, Polk and Wardwell
attn: Matt Rowland

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Conference calls. | 3 hrs |
| 2 | Review Jewell deposition and related materials. | 8 hrs |
| 3 | Reanalysis of Backonja study  data | 8 hrs |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Rate $500/hour |  |
|  |  |  |
|  | TOTAL | $9,500.00 |

Payment Terms
    Please remit payment within 30 days of invoice date to:
        Robert D. Gibbons Ltd.
        2021 North Mohawk
        Chicago, IL 60614
        FEIN # 36-326-0796

2

Robert D. Gibbons Ltd.
2021 North Mohawk
Chicago, IL 60614

INVOICE NO. 090102
DATE: January 22, 2008

CONSULT TO:
Shook, Hardy & Bacon
attn: Lori McGroder

| ITEM | DESCRIPTION | PRICE ($) |
|------|-------------|-----------|
| 1 | Review depositions and other materials | 8 hrs |
| | | |
| | | |
| | | |
| | | |
| | Rate $500/hour | |
| | TOTAL | $4,000.00 |

Payment Terms
    Please remit payment within 30 days of invoice date to:
        Robert D. Gibbons Ltd.
        2021 North Mohawk
        Chicago, IL 60614
        FEIN # 36-326-0796

2

Exhibit 2


Excerpts, Deposition of Dr. Robert Gibbons

March 5, 2009

787

1  do a lot of different things.  I have done a lot
2  of different things on this case.  I did these
3  analyses.  I don't remember when I did these
4  analyses.
5      Q.   How do you keep track of your time to
6  bill counsel in this case?
7      A.   Just usually based on kind of an
8  overview of how much time I have been spending.
9  Usually how many days have I spent working on
10  this during the course of a week or a two-week
11  period.
12      Most of the time I bill them every
13  couple of weeks or every month.  It usually was
14  related to a particular series of tasks.  I don't
15  have -- you know, I don't have time sheet kinds
16  of things if that's what you are asking.
17      Q.   Well, do you keep a calendar at all?
18  I mean, how do you keep track of let's say that
19  on January the 15th of 2009 you did six hours of
20  work on this case?  How would you keep track of
21  that?
22      A.   Just from memory.
23      Q.   Okay.  Did you do any work on the
24  FORTRAN programs after the -- your last

788

1  deposition?
2      A.   No, I don't believe so.
3      Q.   Do you have any idea why the modified
4  date would have differed -- would be February 6th
5  for your FORTRAN programs?
6      MS. McGRODER:  Objection, asked and
7  answered.
8  BY MR. ALTMAN:
9      Q.   What?
10      A.   Sitting here no -- now I don't, unless
11  I had just included -- you know, had something to
12  do with the construction of the -- of the CD for
13  you or maybe I opened them up to make sure that
14  they were, you know, adequately documented.  I
15  don't really remember.
16      I do remember that I didn't change any
17  of the FORTRAN code.  I had done all of that
18  prior to our deposition.  I certainly didn't
19  change any of the language.
20      Q.   Is it your opinion that when you open
21  up a file, it changes the modified date?
22      MS. McGRODER:  Well, objection.  If you have
23  an opinion, go ahead.
24

789

1  BY THE WITNESS:
2      A.   My understanding is if you open
3  something up and resave it, it will change the
4  date, but there are also cases where when you
5  burn something to a CD, it can, you know, maybe
6  change the date.  I'm not sure.  I'm not an
7  expert in that.
8  BY MR. ALTMAN:
9      Q.   Well, it didn't change -- all these
10  files are not dated the 6th of February.  Some of
11  them maintain the date from January, correct?
12      MS. McGRODER:  Well, object to form and
13  foundation.
14  BY THE WITNESS:
15      A.   Well, there are lots of -- there are
16  lots of files here that had the date of 2/6/2009.
17  You know, I certainly didn't -- I don't think all
18  of these files were created on 2/6/2009.
19      So it had something to do with the
20  preparation of the files for you, you know, why
21  they all had that time stamp.
22  BY MR. ALTMAN:
23      Q.   But why didn't the text files have a
24  date that changed?

790

1      A.   I don't know.
2      Q.   Okay.
3      MR. ALTMAN:  We have to change tapes.
4      THE VIDEOGRAPHER:  This is the end of tape
5  No. 1.  We are off the record at 10:11.
6      (WHEREUPON, a recess was had at
7      10:11 a.m. until 10:13 a.m.)
8      (WHEREUPON, certain documents
9      were marked Gibbons Deposition
10      Exhibit Nos. 45, 46, for
11      identification, as of 3/5/09.)
12      THE VIDEOGRAPHER:  This is the beginning of
13  tape No. 2.  We are back on the record at 10:13.
14  BY MR. ALTMAN:
15      Q.   Dr. Gibbons, before we continue, I
16  forgot to ask you earlier.
17      Have you already received the copies
18  of your transcript from the beginning part of
19  February?
20      A.   Yes.
21      Q.   Have you already completed your review
22  of those transcripts?
23      A.   I have.
24      Q.   Is there an errata sheet?

Gibbons, Robert D PhD (Defense Expert)  3/5/2009  9:09:00 AM

971

1    Q.   Well, the November 30th bill -- I'm
2  not quibbling with you -- doesn't say anything
3  about reports, does it?
4    A.   Please understand, you know, I'm a
5  university professor.  I'm not too good at
6  providing really good descriptions of what I do
7  on these bills, and -- and in the past, not by
8  any of the lawyers sitting at this table, I have
9  been counseled in prior litigations in different
10  areas that having exquisitely detailed bills may
11  not be the best plan for litigation-related work.
12  So I haven't been very, very detailed in what I
13  have described in the work and haven't had too
14  many objections.
15    Q.   Well, did Ms. McGroder or someone call
16  you after the November bill and say does the
17  include your work on the final report?
18    A.   No, I've received no calls from
19  anybody regarding whether any -- any other
20  details about my bills.
21    Q.   All right.  Did Ms. McGroder call you
22  after the October 18th bill and ask whether that
23  would be enough to cover you through the filing
24  of the final report?

972

1    MS. McGRODER:  Object to form.
2  BY THE WITNESS:
3    A.   I never had a conversation with
4  Ms. McGroder regarding my -- the contents of my
5  bills or whether I would be billing on any -- any
6  area.
7  BY MR. LONDON:
8    Q.   These bills or any of the other bills
9  in that exhibit, is that what you are saying?
10    You have submitted them.  They have
11  been paid.  You have never discussed them with
12  Ms. McGroder?
13    A.   That's correct.
14    Q.   Okay.  Moving forward, the next bill
15  that I find that appears to not have an asterisk
16  is dated September 2, 2008.
17    Do you see that?
18    MS. McGRODER:  Did you already talk about
19  the October 5?
20    MR. LONDON:  I thought I did.
21    MS. McGRODER:  I might have just missed it.
22    MR. LONDON:  Okay.  We will talk about
23  October 5.
24    THE WITNESS:  You are trying to help him

973

1  out?
2    MS. McGRODER:  Sorry.  As soon as I said it,
3  I thought.
4    MR. LONDON:  She wants -- she want you to
5  come off looking good.
6  BY MR. LONDON:
7    Q.   What's the subject of your October 5
8  bill?
9    A.   Oh, no, not the October 5 bill.
10    Q.   I mean, you charged them $20,000 for
11  40 hours on October 5?
12    A.   How could you miss that, Mr. London?
13    Q.   It didn't seem like much money, and
14  then you charged them $16,000 13 days later.
15    Apart from that, what do I know about
16  those bills and what you did?
17    A.   This was in support of the work on the
18  analysis of the gabapentin cohort, thinking about
19  analyses, performing analyses, reviewing, redoing
20  analyses, a variety of different things.
21    Q.   But there's no way -- and you told me
22  earlier that you couldn't look at any of your
23  computer screens and reproduce these dates, and
24  now you are telling me there's no way we can look

974

1  at time records or e-mails or anything and
2  reproduce what was done on these dates.  Is that
3  true?
4    MS. McGRODER:  Well, object to form to the
5  extent it misstates his testimony.
6  BY THE WITNESS:
7    A.   I don't keep such records, and so, no,
8  I never had them.  So there's no way to reproduce
9  them.
10  BY MR. LONDON:
11    Q.   And even though you don't keep such
12  records, you are also saying as far as you know
13  there are no such records whether kept by you or
14  anyone else?
15    MS. McGRODER:  Object to form.
16  BY THE WITNESS:
17    A.   That's correct.
18  BY MR. LONDON:
19    Q.   The next bill -- unless Ms. McGroder
20  has others that I missed -- going further back in
21  time, further toward the front of the document is
22  dated September 2nd, 2008, 80901.
23    Do you see that?
24    A.   Which one?  I'm sorry.

Exhibit 3


Excerpts, Hearing Transcript

August 17, 2010

1          UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
2

3    _____

4    IN RE:  NEURONTIN MARKETING,
     SALES PRACTICES AND PRODUCTS
5    LIABILITY LITIGATION,              Civil Action
                                        No. 04-10981-PBS
6
                                        August 17, 2010, 3:55 a.m.
7    _____

8

9

10          TRANSCRIPT of MOTION HEARING

11      BEFORE THE HONORABLE LEO T. SOROKIN

12    UNITED STATES MAGISTRATE DISTRICT JUDGE

13           1 COURTHOUSE WAY

14          BOSTON, MA   02210

15

16

17

18

19

20

21          DEBRA M. JOYCE, RMR, CRR
               Official Court Reporter
22      John J. Moakley U.S. Courthouse
           1 Courthouse Way, Room 5204
23              Boston, MA   02210
                  617-737-4410
24

25

```
 1              MR. CHEFFO:  Just two quick things.  This is not a
 2     common unilateral exercise.  We have a lot of work with
 3     Mr. Fromson's cases going on.  As you would of might imagine,
 4     to the extent that someone would have to prepare for a
 5     four-hour trial deposition of experts, this is not an effort
 6     that's not without substantial work on our side.  And I
 7     suppose, though I think it's -- again, from our position, we've
 8     opposed this and I continue to oppose it, but if the Court were
 9     to say, you know, yes, we're going to allow this, then there's
04:27 10     the prospect we might say if they're going to do that, then
11     there may be some experts or some witnesses we want.  I don't
12     think that's the favored choice.
13              And the only thing -- because I think most of what
14     I've said is either in the papers or what your Honor will --
15     I'd just like to draw a distinction between Dr. Franklin and
16     these other experts because I really -- I just think for the
17     Court they're not lumped together.  There's really two points.
18     One, he's not --
19              THE COURT:  He's a fact witness.
04:27 20              MR. CHEFFO:  He's a fact witness.  His point's
21     limited.  Geographically, I think by his own testimony and
22     admission he worked four months for Parke-Davis in 1996 only in
23     the Northeast region.  So to the extent that cases are
24     around --
25              THE COURT:  He only worked for Parke-Davis for four
```

1    attorney assigned at that time.  He wasn't available to do the

2    trial preservation deposition for Dr. Franklin and we were not

3    envisioning remand in all the cases having the need for

4    Dr. Franklin's common testimony.  It was only to with respect

5    to the Tennessee case about which we were going to consider

6    that preservation deposition, but Dr. Franklin made himself

7    available to come to Tennessee, where, by the way, the Court

8    was going to allow him to testify, despite the fact that he

9    worked at Parke-Davis for only four months and was limited to

04:29 10   the Northeast business unit.

11          Lastly, somewhat tangential, as far as scheduling

12   depositions which was requested for September and October of

13   2010.  I withdraw those dates of September and October of 2010,

14   and simply ask if the Court does allow this, that the parties

15   coordinate --

16          THE COURT:  If I allow it, I'm going to tell all of

17   you to work out the dates between yourselves and the witnesses

18   first and then propose a schedule.

19          I'm going to take that motion under advisement.  I

04:30 20   want to think about it a little bit.  I want to look -- to the

21   extent that it's helpful, I want to look at that transcript.  I

22   may talk to Judge Saris about it.

23          I have one question.  So if I were to decide that some

24   or all of these witnesses that such a procedure were

25   appropriate for, I just want to be clear -- I know it's in the

1    papers, I want to be clear on this.  One, you're talking about

2    one day for each witness.

3          MR. FROMSON:  That's our proposal, direct and cross

4    over one business day.

5          THE COURT:  And your proposal is to divide the day in

6    what fashion?  You're saying, suggesting you want to talk to

7    them first to decide how to divide it up or do you want me to

8    decide with Judge Saris?

9          MR. FROMSON:  I honestly don't know the answer.  Equal

04:30 10   time is what we've usually done in this litigation whenever

11   we've dealt with depositions.

12         THE COURT:  So your proposal would be split.  I'm not

13   holding you to decide that question now, Mr. Cheffo.  I

14   understand, and I am going to think about that.

15         My question is this -- I'm not sure what I'm going to

16   do, to be perfectly honest with you.  I see significant

17   competing concerns.  But if I were to allow it, is that -- if

18   I'm -- if we're going to have some process like this, I only

19   want one such process that would encompass all that would be.

04:31 20   If I were to allow it for them, are you going to want to do it

21   for certain witnesses?

22         MR. CHEFFO:  You know, I think I probably have to

23   reserve on that because, to be candid with your Honor, if you

24   said kind of all or nothing, like even if I thought it would be

25   good for one or two of our witnesses, I still think this is a