Exhibit 2

Excerpts, Deposition of Dr. Robert Gibbons

March 5, 2009

Gibbons, Robert D PhD (Defense Expert) 3/5/2009 9:09:00 AM

787

1 do a lot of different things. I have done a lot
2 of different things on this case. I did these
3 analyses. I don't remember when I did these
4 analyses.
5    Q. How do you keep track of your time to
6 bill counsel in this case?
7    A. Just usually based on kind of an
8 overview of how much time I have been spending.
9 Usually how many days have I spent working on
10 this during the course of a week or a two-week
11 period.
12       Most of the time I bill them every
13 couple of weeks or every month. It usually was
14 related to a particular series of tasks. I don't
15 have -- you know, I don't have time sheet kinds
16 of things if that's what you are asking.
17    Q. Well, do you keep a calendar at all?
18 I mean, how do you keep track of let's say that
19 on January the 15th of 2009 you did six hours of
20 work on this case? How would you keep track of
21 that?
22    A. Just from memory.
23    Q. Okay. Did you do any work on the
24 FORTRAN programs after the -- your last

788

1 deposition?
2    A. No, I don't believe so.
3    Q. Do you have any idea why the modified
4 date would have differed -- would be February 6th
5 for your FORTRAN programs?
6    MS. McGRODER: Objection, asked and
7 answered.
8 BY MR. ALTMAN:
9    Q. What?
10    A. Sitting here no -- now I don't, unless
11 I had just included -- you know, had something to
12 do with the construction of the -- of the CD for
13 you or maybe I opened them up to make sure that
14 they were, you know, adequately documented. I
15 don't really remember.
16       I do remember that I didn't change any
17 of the FORTRAN code. I had done all of that
18 prior to our deposition. I certainly didn't
19 change any of the language.
20    Q. Is it your opinion that when you open
21 up a file, it changes the modified date?
22    MS. McGRODER: Well, objection. If you have
23 an opinion, go ahead.
24

789

1 BY THE WITNESS:
2    A. My understanding is if you open
3 something up and resave it, it will change the
4 date, but there are also cases where when you
5 burn something to a CD, it can, you know, maybe
6 change the date. I'm not sure. I'm not an
7 expert in that.
8 BY MR. ALTMAN:
9    Q. Well, it didn't change -- all these
10 files are not dated the 6th of February. Some of
11 them maintain the date from January, correct?
12    MS. McGRODER: Well, object to form and
13 foundation.
14 BY THE WITNESS:
15    A. Well, there are lots of -- there are
16 lots of files here that had the date of 2/6/2009.
17 You know, I certainly didn't -- I don't think all
18 of these files were created on 2/6/2009.
19       So it had something to do with the
20 preparation of the files for you, you know, why
21 they all had that time stamp.
22 BY MR. ALTMAN:
23    Q. But why didn't the text files have a
24 date that changed?

790

1    A. I don't know.
2    Q. Okay.
3    MR. ALTMAN: We have to change tapes.
4    THE VIDEOGRAPHER: This is the end of tape
5 No. 1. We are off the record at 10:11.
6       (WHEREUPON, a recess was had at
7       10:11 a.m. until 10:13 a.m.)
8       (WHEREUPON, certain documents
9       were marked Gibbons Deposition
10       Exhibit Nos. 45, 46, for
11       identification, as of 3/5/09.)
12    THE VIDEOGRAPHER: This is the beginning of
13 tape No. 2. We are back on the record at 10:13.
14 BY MR. ALTMAN:
15    Q. Dr. Gibbons, before we continue, I
16 forgot to ask you earlier.
17       Have you already received the copies
18 of your transcript from the beginning part of
19 February?
20    A. Yes.
21    Q. Have you already completed your review
22 of those transcripts?
23    A. I have.
24    Q. Is there an errata sheet?

Gibbons, Robert D PhD (Defense Expert)   3/5/2009   9:09:00 AM

971

1  Q. Well, the November 30th bill -- I'm
2  not quibbling with you -- doesn't say anything
3  about reports, does it?
4  A. Please understand, you know, I'm a
5  university professor. I'm not too good at
6  providing really good descriptions of what I do
7  on these bills, and -- and in the past, not by
8  any of the lawyers sitting at this table, I have
9  been counseled in prior litigations in different
10  areas that having exquisitely detailed bills may
11  not be the best plan for litigation-related work.
12  So I haven't been very, very detailed in what I
13  have described in the work and haven't had too
14  many objections.
15  Q. Well, did Ms. McGroder or someone call
16  you after the November bill and say does this
17  include your work on the final report?
18  A. No, I've received no calls from
19  anybody regarding whether any -- any other
20  details about my bills.
21  Q. All right. Did Ms. McGroder call you
22  after the October 18th bill and ask whether that
23  would be enough to cover you through the filing
24  of the final report?

972

1  MS. McGRODER: Object to form.
2  BY THE WITNESS:
3  A. I never had a conversation with
4  Ms. McGroder regarding my -- the contents of my
5  bills or whether I would be billing on any -- any
6  area.
7  BY MR. LONDON:
8  Q. These bills or any of the other bills
9  in that exhibit, is that what you are saying?
10  You have submitted them. They have
11  been paid. You have never discussed them with
12  Ms. McGroder?
13  A. That's correct.
14  Q. Okay. Moving forward, the next bill
15  that I find that appears to not have an asterisk
16  is dated September 2, 2008.
17  Do you see that?
18  MS. McGRODER: Did you already talk about
19  the October 5?
20  MR. LONDON: I thought I did.
21  MS. McGRODER: I might have just missed it.
22  MR. LONDON: Okay. We will talk about
23  October 5.
24  THE WITNESS: You are trying to help him

973

1  out?
2  MS. McGRODER: Sorry. As soon as I said it,
3  I thought.
4  MR. LONDON: She wants -- she want you to
5  come off looking good.
6  BY MR. LONDON:
7  Q. What's the subject of your October 5
8  bill?
9  A. Oh, no, not the October 5 bill.
10  Q. I mean, you charged them $20,000 for
11  40 hours on October 5?
12  A. How could you miss that, Mr. London?
13  Q. It didn't seem like much money, and
14  then you charged them $16,000 13 days later.
15  Apart from that, what do I know about
16  those bills and what you did?
17  A. This was in support of the work on the
18  analysis of the gabapentin cohort, thinking about
19  analyses, performing analyses, reviewing, redoing
20  analyses, a variety of different things.
21  Q. But there's no way -- and you told me
22  earlier that you couldn't look at any of your
23  computer screens and reproduce these dates, and
24  now you are telling me there's no way we can look

974

1  at time records or e-mails or anything and
2  reproduce what was done on these dates. Is that
3  true?
4  MS. McGRODER: Well, object to form to the
5  extent it misstates his testimony.
6  BY THE WITNESS:
7  A. I don't keep such records, and so, no,
8  I never had them. So there's no way to reproduce
9  them.
10  BY MR. LONDON:
11  Q. And even though you don't keep such
12  records, you are also saying as far as you know
13  there are no such records whether kept by you or
14  anyone else?
15  MS. McGRODER: Object to form.
16  BY THE WITNESS:
17  A. That's correct.
18  BY MR. LONDON:
19  Q. The next bill -- unless Ms. McGroder
20  has others that I missed -- going further back in
21  time, further toward the front of the document is
22  dated September 2nd, 2008, 80901.
23  Do you see that?
24  A. Which one? I'm sorry.