# EXHIBIT E

## Cheffo, Mark S (NYC)

| | |
|---|---|
| **From:** | Newton B Schwartz [nbs@nbslawyers.com] |
| **Sent:** | Thursday, April 05, 2012 9:57 AM |
| **To:** | Cheffo, Mark S (NYC) |
| **Cc:** | jwharang@gmail.com; mabelleelo@yahoo.com; vlo@nbslawyers.com |
| **Subject:** | proposed order |
| **Importance:** | High |
| **Attachments:** | Rules of Professional Conduct.pdf; Check #3035.pdf |

Mark,

Your proposed Stipulation and Proposed Order of yesterday, April 4, 2012 has the following objections:

1) While I agree to pay now as stipulated below the $5,500 per check attached; or if refused, I shall tender the entire $6,809.29 into the Court registry at the hearing, Monday, April 9, 2012 paid under protest with reservation of rights including a potential reserved but unlikely appeal; and

2) That either payment of the $5,500 or $6,809.29 payment is made without any admission of any liability or culpability as to the charges based upon our Responses in filed Documents Nos. 3817, 3820 and Exhibit A 3820-1 and 3825 and in oral argument on April 9, 2012. Yours are filed.

The reasons include:

   a) My professional liability Errors and Omissions (E&O) insurer is not responsible for payment of any sanctions. But they state that they reserve their renewal option and will consider my executing your proposed stipulation in my August 21, 2012 renewal as to continued renewal and/or increase in premium rates; and

   b) More importantly, the State Bar of Texas, Commission for Lawyer Discipline (CLD) as well as that of Pennsylvania Bar where I have been currently licensed since 2007 will and in the recent past have considered such finding of sanctions to be violation of the following Texas Disciplinary Rules of Professional Conduct 3.01, 3.02, 3.03, 3.04, 3.05 and 3.06 attached.

Agreeing to your Stipulation can or will subject me to potential disciplinary proceedings

in one or both states or even in states where I practice but am not licensed to practice, as you do pro haec.

I can purchase a cashier's check for the $5,500 or $6,809.29 on Frost National Bank made payable to Pfizer, Inc. and/or your firm or both tomorrow Friday, April 6, 2012.

My proposed payment is attached encompassing my minimal above protection. I have good faith legal and factual defenses including those stated in the above filed and served documents copied to you.

You labor under the burdens of acts of predecessor counsel in entering a guilty plea which is admissible and potent before a jury in the cases to be tried including our Pastine and Girard cases. A nolo contendere plea would have avoided this if the D.O.J. would have accepted it.

In the Pastine case, the prescribing doctor has been deposed, so we request for Pfizer's sale representatives, his and your earliest availability for his deposition. He may have been deposed in other cases so that we may be able to consider stipulating his testimony in Pastine.

You well know that on remand, the MDL did not shorten appreciably the waiting time for trial based on Judge Sam Sparks' ruling in Austin W.D. Texas. Because that case like most of these will take an estimated 20-22 hours per side or 40-44 hours as compared with half that time as in Jack's trial this week, Judge Sparks had no such early time space readily available for 16 months. It was not set for trial until a year from now in 2013 although remanded in December 2011. During that lengthy interim before trial, discovery can continue. Mabel Lo is addressing the particular to your office very soon with Girard to follow.

If Pfizer can accept the above minimal protection language encompassing the above "without prejudice" or any admission of liability or culpability and to buy peace "the payment is here made in the interest of judicial economy without any admissions", we have an agreement.

I await your response; otherwise I will see you about 1:00pm Monday, April 9, 2012 outside Judge Sorokin's courtroom in Boston, Massachusetts. The above is made per Federal Rules of Evidence 4.08a.

Sincerely,
NEWTON B. SCHWARTZ, SR.

4/5/2012

Law Office of Newton B. Schwartz, Sr.
1911 Southwest Freeway
HOUSTON, TEXAS 77098
(713) 630-0708 Tel
(800) 536-6006 toll free
(713) 630-0789 Fax
nbs@nbslawyers.com

This electronic transmission (and/or the documents attached to it) may contain confidential information belonging to the sender that is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510 and 2521, and may be legally privileged. This message (and any associated files) are intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. If you have received this communication in error, please notify The Law Office of Newton B. Schwartz, Sr. immediately by telephone (713 630-0708) and destroy the **original** message.

**From:** Cheffo, Mark S [mailto:Mark.Cheffo@skadden.com]
**Sent:** Wednesday, April 04, 2012 2:05 PM
**To:** 'Newton B Schwartz'
**Subject:** proposed order

Newton,

Please review and let me know if this is agreeable.

Marl

---------------------------------------------------------------------------
*******************************************************

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
*******************************************************
*******************************************************

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
*******************************************************
===========================================================================

4/5/2012

accounting profession or of financial specialists. Where consultation with a professional in another field is itself something a competent lawyer would recommend, the lawyer should make such a recommendation. At the same time, a lawyer's advice at its best often consists of recommending a course of action in the face of conflicting recommendations of experts.

**Offering Advice**

5. In general, a lawyer is not expected to give advice until asked by the client. However, when a lawyer knows that a client proposes a course of action that is likely to result in substantial adverse legal consequences to the client, duty to the client may require that the lawyer act if the client's course of action is related to the representation. A lawyer ordinarily has no duty to initiate investigation of a client's affairs or to give advice that the client has indicated is unwanted, but a lawyer may initiate advice to a client when doing so appears to be in the client's interest.

**Intermediary**

6. In regard to a lawyer serving as intermediary for clients with conflicting interests, see Rule 1.07.

## Rule 2.02. Evaluation for Use by Third Persons

A lawyer shall not undertake an evaluation of a matter affecting a client for the use of someone other than the client unless:

(a) the lawyer reasonably believes that making the evaluation is compatible with other aspects of the lawyer's relationship with the client; and

(b) the client consents after consultation.

Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990.

### Comment:

**Definition**

1. An evaluation may be performed at the client's direction but for the primary purpose of establishing information for the benefit of third parties; for example, an opinion concerning the title of property rendered at the behest of a vendor for the information of a prospective purchaser, or at the behest of a borrower for the information of a prospective lender. In some situations, the evaluation may be required by a government agency; for example, an opinion concerning the legality of the securities registered for sale under the securities laws. In other instances, the evaluation may be required by a third person, such as a purchaser of a business.

2. Lawyers for the government may be called upon to serve as advisors or as evaluators. A lawyer for the government serves as advisor when the lawyer is an advocate for a government agency or is a counselor for a government agency. When serving as an advisor the rule of confidentiality of information applies. See Rules 1.05 and 2.01.

3. A lawyer for the government serves as evaluator when the lawyer's official responsibility is to render opinions establishing the limits on authorized government activity. In that situation this Rule applies.

4. In addition to serving as advisors or as evaluators, lawyers may be called upon to serve as investigators. When serving as investigator, the identity of the client is critical, because only the client has a confidential relationship with the lawyer. See Rule 1.05. Thus, a lawyer who makes an investigative contact with a non-client in circumstances which might cause the non-client to believe that the lawyer is representing him in the matter should make that non-client aware that rules concerning client loyalty and confidentiality are not applicable. See Rule 1.05. See also Rule 1.12(e).

**Third Persons**

5. When the evaluation is intended for the information or use of a third person, the evaluation involves a departure from the normal client-lawyer relationship. The lawyer must be satisfied as a matter of professional judgment that making the evaluation is compatible with other functions undertaken in behalf of the client. For example, if the lawyer is acting as advocate in defending the client against charges of fraud, it would normally be incompatible with that responsibility for the lawyer to perform an evaluation for others concerning the same or a related transaction. Assuming no such impediment is apparent, however, the lawyer should advise the client of the implications of the evaluation, particularly the lawyer's responsibilities to third persons and the duty to disseminate the findings.

**Access to and Disclosure of Information**

6. The quality of an evaluation depends on the freedom and extent of the investigation upon which it is based. Ordinarily a lawyer should have whatever latitude of investigation seems necessary as a matter of professional judgment. Under some circumstances, however, the terms of the evaluation may be limited. See Rule 1.02. For example, certain issues or sources may be categorically excluded, or the scope of search may be limited by time constraints or the noncooperation of persons having relevant information. Any such limitations which are material to the evaluation should be described in the report. If after a lawyer has commenced an evaluation, the client refused to comply with the terms upon which it was understood the evaluation was to have been made, the lawyer's obligations are determined by law, having reference to the terms of the client's agreement and the surrounding circumstances.

**Financial Auditors' Requests for Information**

7. When a question concerning the legal situation of a client arises at the instance of the client's financial auditor and the question is referred to the lawyer, any response by the lawyer should be made in accordance with procedures recognized in the legal profession.

## III. Advocate

## Rule 3.01. Meritorious Claims and Contentions

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous.

Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990.

**Comment:**

1. The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, affects the limits within which an advocate may proceed. Likewise, these Rules impose limitations on the types of actions that a lawyer may take on behalf of his client. See Rules 3.02–3.06, 4.01–4.04, and 8.04. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.

2. All judicial systems prohibit, at a minimum, the filing of frivolous or knowingly false pleadings, motions or other papers with the court or the assertion in an adjudicatory proceeding of a knowingly false claim or defense. A filing or assertion is frivolous if it is made primarily for the purpose of harassing or maliciously injuring a person. It also is frivolous if the lawyer is unable either to make a good faith argument that the action taken is consistent with existing law or that it may be supported by a good faith argument for an extension, modification or reversal of existing law.

3. A filing or contention is frivolous if it contains knowingly false statements of fact. It is not frivolous, however, merely because the facts have not been first substantiated fully or because the lawyer expects to develop vital evidence only by discovery. Neither is it frivolous even though the lawyer believes that the client's position ultimately may not prevail. In addition, this Rule does not prohibit the use of a general denial or other pleading to the extent authorized by applicable rules of practice or procedure. Likewise, a lawyer for a defendant in any criminal proceeding or for the respondent in a proceeding that could result in commitment may so defend the proceeding as to require that every element of the case be established.

4. A lawyer should conform not only to this Rule's prohibition of frivolous filings or assertions but also to any more stringent applicable rule of practice or procedure. For example, the duties imposed on a lawyer by Rule 11 of the Federal Rules of Civil Procedure exceed those set out in this Rule. A lawyer must prepare all filings subject to Rule 11 in accordance with its requirements. See Rule 3.04(c)(1).

## Rule 3.02. Minimizing the Burdens and Delays of Litigation

In the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter.

Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990.

**Comment:**

1. This Rule addresses those situations where a lawyer or the lawyer's client perceive the client's interests as served by conduct that delays resolution of the matter or that increases the costs or other burdens of a case. Because such tactics are frequently an appropriate way of achieving the legitimate interests of the client that are at stake in the litigation, only those instances that are "unreasonable" are prohibited. As to situations where such tactics are inconsistent with the client's interests, see Rule 1.01. As to those where the lawyer's conduct is motivated primarily by his desire to receive a larger fee, see Rule 1.04 and Comment, paragraph 6 thereto.

2. A lawyer's obligations under this Rule are substantially fulfilled by complying with Rules 3.01, 3.03, and 3.04 supplemented by applicable rules of practice or procedure. See paragraph 4 to the Comment to Rule 3.01.

**Unreasonable Delay**

3. Dilatory practices indulged in merely for the convenience of lawyers bring the administration of justice into disrepute and normally will be "unreasonable" within the meaning of this Rule. See also Rule 1.01(b) and (c) and paragraphs 6 and 7 of the Comment thereto. This Rule however, does not require a lawyer to eliminate all conflict between the demands placed on the lawyer's time by different clients and proceedings. Consequently, it is not professional misconduct either to seek (or as a matter of professional courtesy, to grant) reasonable delays in some matter in order to permit the competent discharge of a lawyer multiple obligations.

4. Frequently, a lawyer seeks a delay in some aspect of proceeding in order to serve the legitimate interests of the client rather than merely the lawyer's own interests. Seeking such delays is justifiable. For example, in order to represent the legitimate interests of the client effectively, diligent lawyer representing a party named as a defendant in a complex civil or criminal action may need more time to prepare a proper response than allowed by applicable rule of practice or procedure. Similar considerations may pertain in preparing responses to extensive discovery requests. Seeking reasonable delays in such circumstances is both the right and the duty of a lawyer.

5. On the other hand, a client may seek to have a lawyer delay a proceeding primarily for the purpose of harassing or maliciously injuring another. Under this Rule, a lawyer is obliged not to take such an action. See also Rule 3.01. It is not a justification that similar conduct is often tolerated by the bench and the bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay undertaken for the purpose of harassing or malicious injuring. The fact that a client realizes a financial or other benefit from such otherwise unreasonable delay does not make the delay reasonable.

**Unreasonable Costs and Other Burdens of Litigation**

6. Like delay, increases in the costs or other burdens of litigation may be viewed as serving a wide range of interests of the client. Many of these interests are entirely legitimate and merit the most stringent protection. Litigation by its very nature often is costly and burdensome. This Rule does not subject a lawyer to discipline for taking any actions not otherwise prohibited by these Rules in order to fully and effectively protect the legitimate interests of a client that are at stake in litigation.

7. Not all conduct that increases the costs or other burdens of litigation, however, can be justified in this manner. One example of such impermissible conduct is a lawyer who counsels or assists a client in seeking a multiplication of the costs or other burdens of litigation as the primary purpose, because the client perceives himself as more readily able to bear those burdens than is the opponent, and hopes to gain an advantage in resolving the matter unrelated to the merits of the client's position.

## Rule 3.03. Candor Toward the Tribunal

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal;

(2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act;

(3) in an ex parte proceeding, fail to disclose to the tribunal an unprivileged fact which the lawyer reasonably believes should be known by that entity for it to make an informed decision;

(4) fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(5) offer or use evidence that the lawyer knows to be false.

(b) If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall make a good faith effort to persuade the client to authorize the lawyer to correct or withdraw the false evidence. If such efforts are unsuccessful, the lawyer shall take reasonable remedial measures, including disclosure of the true facts.

(c) The duties stated in paragraphs (a) and (b) continue until remedial legal measures are no longer reasonably possible.

Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990.

**Comment:**

1. The advocate's task is to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client is qualified by the advocate's duty of candor to the tribunal.

**Factual Representations by a Lawyer**

2. An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone on the client's behalf, and not assertions by the lawyer. Compare Rule 3.01. However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or a representation of fact in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation. The obligation prescribed in Rule 1.02(c) not to counsel a client to commit or assist the client in committing a fraud applies in litigation. See the Comments to Rules 1.02(c) and 8.04(a).

**Misleading Legal Argument**

3. Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but should recognize the existence of pertinent legal authorities. Furthermore, as stated in paragraph (a)(4), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction which has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.

**Ex Parte Proceedings**

4. Ordinarily, an advocate has the limited responsibility of presenting one side of the matters that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party. However, in an ex parte proceeding, such as an application for a temporary restraining order, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of unprivileged material facts known to the lawyer if the lawyer reasonably believes the tribunal will not reach a just decision unless informed of those facts.

**Anticipated False Evidence**

5. On occasion a lawyer may be asked to place into evidence testimony or other material that the lawyer knows to be false. Initially in such situations, a lawyer should urge the client or other person involved to not offer false or fabricated evidence. However, whether such evidence is provided by the client or by another person, the lawyer must refuse to offer it, regardless of the client's wishes. As to a lawyer's right to refuse to offer testimony or other evidence that the lawyer believes is false, see paragraph 15 of this Comment.

6. If the request to place false testimony or other material into evidence came from the lawyer's client, the lawyer also would be justified in seeking to withdraw from the case. See Rules 1.15(a)(1) and (b)(2), (4). If withdrawal is allowed by the tribunal, the lawyer may be authorized under Rule 1.05(c)(7) to reveal the reasons for that withdrawal to any other lawyer subsequently retained by the client in the matter; but normally that rule would not allow the lawyer to reveal that information to another person or to the tribunal. If the lawyer either chooses not to withdraw or is not allowed to do so by the tribunal, the lawyer should again urge the client not to offer false testimony or other evidence and advise the client of the steps the lawyer will take if such false evidence is offered. Even though the lawyer does not receive satisfactory assurances that the client or other witness will testify truthfully as to a particular matter, the lawyer may use that person as a witness as to other matters that the lawyer believes will not result in perjured testimony.

**Past False Evidence**

7. It is possible, however, that a lawyer will place testimony or other material into evidence and only later learn of its falsity. When such testimony or other evidence is offered by the client, problems arise between the lawyer's duty to keep the client's revelations confidential and the lawyer's duty of candor to the tribunal. Under this Rule, upon ascertaining that material testimony or other evidence is false, the lawyer must first seek to persuade the client to correct the false testimony or to withdraw the false evidence. If the persuasion is ineffective, the lawyer must take additional remedial measures.

8. When a lawyer learns that the lawyer's services have been improperly utilized in a civil case to place false testimony or other material into evidence, the rule generally recognized is that the lawyer must disclose the existence of the deception to the court or to the other party, if necessary rectify the deception. See paragraph (b) and Rule 1.05(h). See also Rule 1.05(g). Such a disclosure can result in grave

consequences to the client, including not only a sense of betrayal by the lawyer but also loss of the case and perhaps a prosecution for perjury. But the alternative is that the lawyer would be aiding in the deception of the tribunal or jury, thereby subverting the truth-finding process which the adversary system is designed to implement. See Rule 1.02(c). Furthermore, unless it is clearly understood that the lawyer will act upon the duty to disclose the existence of false evidence, the client can simply reject the lawyer's advice to reveal the false evidence and insist that the lawyer keep silent. Thus the client could in effect coerce the lawyer into being a party to fraud on the court.

**Perjury by a Criminal Defendant**

9. Whether an advocate for a criminally accused has the same duty of disclosure has been intensely debated. While it is agreed that in such cases, as in others, the lawyer should seek to persuade the client to refrain from suborning or offering perjurious testimony or other false evidence, there has been dispute concerning the lawyer's duty when that persuasion fails. If the confrontation with the client occurs before trial, the lawyer ordinarily can withdraw. Withdrawal before trial may not be possible, however, either because trial is imminent, or because the confrontation with the client does not take place until the trial itself, or because no other counsel is available.

10. The proper resolution of the lawyer's dilemma in criminal cases is complicated by two considerations. The first is the substantial penalties that a criminal accused will face upon conviction, and the lawyer's resulting reluctance to impair any defenses the accused wishes to offer on his own behalf having any possible basis in fact. The second is the right of a defendant to take the stand should he so desire, even over the objections of the lawyer. Consequently, in any criminal case where the accused either insists on testifying when the lawyer knows that the testimony is perjurious or else surprises the lawyer with such testimony at trial, the lawyer's effort to rectify the situation can increase the likelihood of the client's being convicted as well as opening the possibility of a prosecution for perjury. On the other hand, if the lawyer does not exercise control over the proof, the lawyer participates, although in a merely passive way, in deception of the court.

11. Three resolutions of this dilemma have been proposed. One is to permit the accused to testify by a narrative without guidance through the lawyer's questioning. This compromises both contending principles; it exempts the lawyer from the duty to disclose false evidence but subjects the client to an implicit disclosure of information imparted to counsel. Another suggested resolution is that the advocate be entirely excused from the duty to reveal perjury if the perjury is that of the client. This solution, however, makes the advocate a knowing instrument of perjury.

12. The other resolution of the dilemma, and the one this Rule adopts, is that the lawyer must take reasonable remedial measure which may include revealing the client's perjury. A criminal accused has a right to the assistance of an advocate, a right to testify and a right of confidential communication with counsel. However, an accused should not have a right to assistance of counsel in committing perjury. Furthermore, an advocate has an obligation, not only in professional ethics but under the law as well, to avoid implication in the commission of perjury or other falsification of evidence.

**False Evidence Not Introduced by the Lawyer**

13. A lawyer may have introduced the testimony of a client or other witness who testified truthfully under direct examination but who offered false testimony or other evidence during examination by another party. Although the lawyer should urge that the false evidence be corrected or withdrawn, the full range of obligation imposed by paragraphs (a)(5) and (b) of this Rule do not apply to such situations. A subsequent use of that false testimony or other evidence by the lawyer in support of the client's case, however, would violate paragraph (a)(5).

**Duration of Obligation**

14. The time limit on the obligation to rectify the presentation of false testimony or other evidence varies from case to case but continues as long as there is a reasonable possibility of taking corrective legal actions before a tribunal.

**Refusing to Offer Proof Believed to be False**

15. A lawyer may refuse to offer evidence that the lawyer reasonably believes is untrustworthy, even if the lawyer does not know that the evidence is false. That discretion should be exercised cautiously, however, in order not to impair the legitimate interests of the client. Where a client wishes to have such suspect evidence introduced, generally the lawyer should do so and allow the finder of fact to assess its probative value. A lawyer's obligations under paragraphs (a)(2), (a)(5) and (b) of this Rule are not triggered by the introduction of testimony or other evidence that is believed by the lawyer to be false, but not known to be so.

## Rule 3.04. Fairness in Adjudicatory Proceedings

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence; in anticipation of a dispute unlawfully alter, destroy or conceal a document or other material that a competent lawyer would believe has potential or actual evidentiary value; or counsel or assist another person to do any such act.

(b) falsify evidence, counsel or assist a witness to testify falsely, or pay, offer to pay, or acquiesce in the offer or payment of compensation to a witness or other entity contingent upon the content of the testimony of the witness or the outcome of the case. But a lawyer may advance, guarantee, or acquiesce in the payment of:

(1) expenses reasonably incurred by a witness in attending or testifying;

(2) reasonable compensation to a witness for his loss of time in attending or testifying;

(3) a reasonable fee for the professional services of an expert witness.

(c) except as stated in paragraph (d), in representing a client before a tribunal:

(1) habitually violate an established rule of procedure or of evidence;

(2) state or allude to any matter that the lawyer does not reasonably believe is relevant to such proceeding or that will not be supported by admissible evidence, or assert personal knowledge of facts in issue except when testifying as a witness;

(3) state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused, except that a lawyer may argue on his analysis of the evidence and other permissible considerations for any position or conclusion with respect to the matters stated herein;

(4) ask any question intended to degrade a witness or other person except where the lawyer reasonably believes that the question will lead to relevant and admissible evidence; or

(5) engage in conduct intended to disrupt the proceedings.

(d) knowingly disobey, or advise the client to disobey, an obligation under the standing rules of or a ruling by a tribunal except for an open refusal based either on an assertion that no valid obligation exists or on the client's willingness to accept any sanctions arising from such disobedience.

(e) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:

(1) the person is a relative or an employee or other agent of a client; and

(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990.

**Comment:**

1. The procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedures, and the like.

2. Documents and other evidence are often essential to establish a claim or defense. The right of a party, including the government, to obtain evidence through discovery or subpoena is an important procedural right. The exercise of that right can be frustrated if relevant material is altered, concealed or destroyed. Applicable law in many jurisdictions, including Texas, makes it an offense to destroy material for the purpose of impairing its availability in a pending proceeding or one whose commencement can be foreseen. See Texas Penal Code, §§ 37.09(a)(1), 37.10(a)(3). See also 18 U.S.C. §§ 1501–1515. Falsifying evidence is also generally a criminal offense. Id. §§ 37.09(a)(2), 37.10(a)(1), (2). Paragraph (a) of this Rule applies to evidentiary material generally, including computerized information.

3. Paragraph (c)(1) subjects a lawyer to discipline only for habitual abuses of procedural or evidentiary rules, including those relating to the discovery process. That position was adopted in order to employ the superior ability of the presiding tribunal to assess the merits of such disputes and to avoid inappropriate resort to disciplinary proceedings as a means of furthering tactical litigation objectives. A lawyer in good conscience should not engage in even a single intentional violation of those rules, however, and a lawyer may be subject to judicial sanctions for doing so.

4. Paragraph (c) restates the traditional Texas position regarding the proper role of argument and comment in litigation. The obligations imposed by that paragraph to avoid seeking to influence the outcome of a matter by introducing irrelevant or improper considerations into the deliberative process are important aspects of a lawyer's duty to maintain the fairness and impartiality of adjudicatory proceedings.

5. By the same token, the advocate's function is to present evidence and argument so that the cause may be decided according to law. Refraining from abusive or disruptive conduct is a corollary of the advocate's right to speak on behalf of litigants. A lawyer may stand firm against abuse by a tribunal but should avoid reciprocation.

6. Paragraph (d) prohibits the practice of a lawyer not disclosing a client's actual or intended noncompliance with a standing rule or particular ruling of an adjudicatory body or official to other concerned entities. It provides instead that a lawyer must openly acknowledge the client's noncompliance.

7. Paragraph (d) also prohibits a lawyer from disobeying, or advising a client to disobey, any such obligations unless either of two circumstances exists. The first is the lawyer's open refusal based on an assertion that no valid obligation exists. In order to assure due regard for formal rulings and standing rules of practice or procedure, the lawyer's assertion in this regard should be based on a reasonable belief. The second circumstance is that a lawyer may acquiesce in a client's position that the sanctions arising from noncompliance are preferable to the costs of compliance. This situation can arise in criminal cases, for example, where the court orders disclosure of the identity of an informant to the defendant and the government decides that it would prefer to allow the case to be dismissed rather than to make that disclosure. A lawyer should consult with a client about the likely consequences of any such act of disobedience should the client appear to be inclined to pursue that course; but the final decision in that regard rests with the client.

### Rule 3.05. Maintaining Impartiality of Tribunal

A lawyer shall not:

(a) seek to influence a tribunal concerning a pending matter by means prohibited by law or applicable rules of practice or procedure;

(b) except as otherwise permitted by law and not prohibited by applicable rules of practice or procedure, communicate or cause another to communicate ex parte with a tribunal for the purpose of influencing that entity or person concerning a pending matter other than:

(1) in the course of official proceedings in the cause;

(2) in writing if he promptly delivers a copy of the writing to opposing counsel or the adverse party if he is not represented by a lawyer;

(3) orally upon adequate notice to opposing counsel or to the adverse party if he is not represented by a lawyer.

(c) For purposes of this rule:

(1) "Matter" has the meanings ascribed by it in Rule 1.10(f) of these Rules;

(2) A matter is "pending" before a particular tribunal either when that entity has been selected to determine the matter or when it is reasonably foreseeable that that entity will be so selected.

Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990.

### Comment:

**Undue Influence**

1. Many forms of improper influence upon tribunals are proscribed by criminal law or by applicable rules of practice or procedure. Others are specified in the Texas Code of Judicial Conduct. A lawyer is required to be familiar with, and to avoid contributing to a violation of, all such provisions. See also Rule 3.06.

2. In recent years, however, there has been an increase in alternative methods of dispute resolution, such as arbitration, for which the standards governing a lawyer's conduct are not as well developed. In such situations, as in more traditional settings, a lawyer should avoid any conduct that is or could reasonably be construed as being intended to corrupt or to unfairly influence the decision-maker.

**Ex Parte Contacts**

3. Historically, ex parte contacts between a lawyer and a tribunal have been subjected to stringent control because of the potential for abuse such contacts present. For example, Canon 3A(4) of the Texas Code of Judicial Conduct prohibits many ex parte contacts with judicial officials. A lawyer in turn violates Rule 8.04(a)(6) by communicating with such an official in a manner that causes that official to violate Canon 3A(4). This rule maintains that traditional posture towards ex parte communications and extends it to the new settings discussed in paragraph 2 of this Comment.

4. There are certain types of adjudicatory proceedings, however, which have permitted pending issues to be discussed ex parte with a tribunal. Certain classes of zoning questions, for example, are frequently handled in that way. As long as such contacts are not prohibited by law or applicable rules of practice and procedure, and as long as paragraph (a) of this Rule is adhered to, such ex parte contacts will not serve as a basis for discipline.

5. For limitations on the circumstances and the manner in which lawyers may communicate or cause another to communicate with veniremen or jurors, see Rule 3.06.

### Rule 3.06. Maintaining Integrity of Jury System

(a) A lawyer shall not:

(1) conduct or cause another, by financial support or otherwise, to conduct a vexatious or harassing investigation of a venireman or juror; or

(2) seek to influence a venireman or juror concerning the merits of a pending matter by means prohibited by law or applicable rules of practice or procedure.

(b) Prior to discharge of the jury from consideration of a matter, a lawyer connected with shall not communicate with or cause communicate with anyone he knows to be a me the venire from which the jury will be selected juror or alternate juror, except in the course of proceedings.

(c) During the trial of a case, a lawyer not c ed therewith shall not communicate with o another to communicate with a juror or al juror concerning the matter.

(d) After discharge of the jury from further eration of a matter with which the lawyer w nected, the lawyer shall not ask questions of o comments to a member of that jury that are cal merely to harass or embarrass the juror or t ence his actions in future jury service.

(e) All restrictions imposed by this Rule lawyer also apply to communications with or in tions of members of a family of a venirema juror.

(f) A lawyer shall reveal promptly to the improper conduct by a venireman or a juror another toward a venireman or a juror or a me his family, of which the lawyer has knowledge.

(g) As used in this Rule, the terms "matte "pending" have the meanings specified in Rule

Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990.

### Comment:

1. To safeguard the impartiality that is essentia judicial process, veniremen and jurors should be p against extraneous influences. When impartiality is public confidence in the judicial system is enhanced. should be no extrajudicial communication with ve prior to trial or with jurors during trial or on beh lawyer connected with the case. Furthermore, a law is not connected with the case should not communic or cause another to communicate with a venireman or about the case. After the trial, communication by a with jurors is not prohibited by this Rule so long refrains from asking questions or making commer tend to harass or embarrass the juror or to influence of the juror in future cases. Contacts with dis jurors, however, are governed by procedural rules t tion of which could subject a lawyer to discipline und 3.04. When an extrajudicial communication by a law a juror is permitted by law, it should be made consi and with deference to the personal feelings of th

2. Vexatious or harassing investigations of jurors ly impair the effectiveness of our jury system. F reason, a lawyer or anyone on his behalf who cond investigation of veniremen or jurors should act with spection and restraint.

3. Communications with or investigations of men families of veniremen or jurors by a lawyer or by an his behalf are subject to the restrictions imposed u

560

```
                                                                    3035
              NEWTON B SCHWARTZ ATTY
              OPERATING TRUST ACCT II
                 1911 SOUTHWEST FREEWAY
                 HOUSTON, TX 77098-4803                          30-9/1140
                                                                     71

PAY
TO THE
ORDER OF   Pfizer Inc
                                              DATE Apil 4, 2012

           five thousand five hundred &00/100-------        $5,500.00
    MDLDocket1629-File04-10981                                      DOLLARS
    OrderMarch30,2012
    Sanctions payment
without any admission of
liability or culpability to buy peace
FOR & in the interests of judicial economy
under protests with
reservation of all rights & defenses

⑆"003035"  1:114000093I:  53000 5878"
```