```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS




                                    )
HARDEN MANUFACTURING CORP.,         )
                                    )
              Plaintiff,            )   Civil Action
                                    )   No. 1:04-cv-10981-PBS
vs.                                 )   March 30, 2012
                                    )   @2:00 p.m.
PFIZER, INC., ET AL,                )
                                    )
              Defendants.           )
```

MOTION HEARING

BEFORE:  THE HONORABLE LEO T. SOROKIN
           UNITED STATES MAGISTRATE JUDGE

John Joseph Moakley United States Courthouse
1 Courthouse Way, Courtroom No. 24
Boston, MA  02210

Helana E. Kline, RMR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
1 Courthouse Way, Room 5209
Boston, MA  02210

APPEARANCES:

For the Plaintiff:

Law Offices of Newton B. Schwartz
(By:  Mabel Lee Lo, Attorney at Law)
1911 Southwest Freeway
Houston, Texas  77098
(713) 630-0708


For the Defendant Pfizer, Inc.:

Skadden, Arps, Slate, Meagher & Flom, LLP
(By:  Mark S. Cheffo, Attorney at Law)
Four Times Square
New York, New York  10036
(212) 735-3000

```
1                    P R O C E E D I N G S

2              THE CLERK:  All rise.  The United States District

3     Court for the District of Massachusetts is now in session,

4     the Honorable Leo T. Sorokin presiding.  Today is March 30th,

5     the case of in re:  Neurontin, Civil Action 04-10981, will

6     now be heard before this Court.

7          Counsel, please identify themselves for the record.

8              MS. LO:  Mabel Lee Lo from the Law Offices of

9     Newton B. Schwartz representing the plaintiffs.

10             THE COURT:  Ms. Lo, is that your name?  Lo, did you

11     say?

12             MS. LO:  Mabel Lee Lo, yes, L-o.

13             THE COURT:  L-o, okay.  Welcome.

14             MR. CHEFFO:  Mark Cheffo for Pfizer.

15             THE COURT:  And, Mr. Cheffo, thank you.  Mr. Schwartz

16     didn't want to come?

17             MS. LO:  I'm sorry.  I have to apologize for -- on

18     behalf of Mr. Schwartz.  He has another hearing he has --

19     oh, I'm sorry.

20             THE COURT:  That's fine.

21             MS. LO:  He has another hearing that he has to attend

22     to, and also he has a recent death in the family.

23             THE COURT:  Oh, I'm sorry.

24             MS. LO:  Yes.

25             THE COURT:  That's too bad.  So what's the story?
```

1          MS. LO:  Well, your Honor, as you know we have the,

2     we have the plaintiffs that we need to -- we are in the

3     process of getting a written confirmation for the stayed

4     cases so that they agree to dismiss.  Then we can file with

5     Mr. Cheffo's agreement a stipulation of dismissal and --

6          THE COURT:  So how many people are there for whom

7     all that remains is to confirm that the person wishes to

8     confirm that the person wishes to dismiss their case?

9          MS. LO:  Okay.  Based on, based on the motion filed

10    by Mr. Cheffo's office on January the 31st there's a total

11    of 34 on that list; and amongst the 24 --

12         THE COURT:  The 24 or the 34?

13         MS. LO:  The 34, I'm sorry.  Amongst the 34 I have

14    been able to reach approximately ten of them and --

15         THE COURT:  Since the motion was filed?

16         MS. LO:  And then there are some of those -- since

17    the motion, yes, since the motion, and there are others

18    that we have been continuing to contact.  There are a few

19    amongst those 34 that our office has been in constant

20    contact periodically, and so I would say about one third of

21    the 34 --

22         THE COURT:  See, here's what I don't understand,

23    okay?  Of these 34 cases, as I understand the history, first,

24    people from your law firm, not you, but people from the law

25    firm told me that they wanted to dismiss cases so -- they

```
 1    told Judge Saris and I that.  So we said:  Okay, tell us
 2    which ones you want to dismiss ... a seemingly innocuous
 3    order, that is inviting your law firm to specifically tell
 4    the Court the specific cases that it had told us generally
 5    it wanted to dismiss.
 6        When that date came and went, nothing happened.  Then
 7    Pfizer filed a motion to compel compliance with our order,
 8    which was simply telling you to tell us what you said you
 9    were doing anyway, and no opposition if I recall correctly
10    to the motion to compel.  And then another motion to compel
11    because there was another similar date and nothing; and then
12    I issued an order to show cause; essentially, where are you
13    people, not responding to motions, not following up on Court
14    orders over a period of a month or six weeks, and where you
15    represent a lot of people in serious matters where there's
16    serious injuries that are alleged.
17        And then a blizzard of filings that the Court was
18    attempting to make all of you dismiss meritorious cases that
19    should be dismissed and the like, so, fine, don't dismiss
20    your cases.  The alternative -- do you know what the
21    alternative to dismissal is, do you?
22            MS. LO:  I --
23            THE COURT:  What happens in court if you're a
24    plaintiff and you don't dismiss your case; what's your other
25    choice?
```

1    You litigate your case, right.  In other words, if you're

2    a plaintiff, you litigate your case unless you decide you

3    want to dismiss your case because you've reached a settlement

4    or what have you.

5       Is there another option that you know of as a lawyer?

6          MS. LO:  Your Honor --

7          THE COURT:  So then we said:  Fine, we'll litigate

8    the cases.  You all come forward, your law firm comes forward

9    and says:  Judge, we don't want to litigate the cases, right;

10   that's what a motion to stay is.  Am I misunderstanding the

11   motion to stay?

12         MS. LO:  That's correct.

13         THE COURT:  Okay.  You said:  Judge, don't litigate

14   these cases.  Don't make us take depositions.  Don't make us

15   do discovery because we think these cases might go away

16   because we're going to go to these people and say to them:

17   We think these cases have no merit, and we'll see if they

18   agree to dismiss or I don't know if you were going to work

19   something out with Mr. Cheffo; and if they don't dismiss,

20   we're going to withdraw.  So we said:  Fine, we'll stay those

21   cases and we won't make all the lawyers, you and the other

22   side, do all the work while you go figure that out.

23      Now, I will tell you, here's what I would think would

24   occur in that process, but you tell me if there's something

25   I'm missing here ... you would write to the client and

1   explain your position to the client.  Am I correct that

2   would be the first step?

3          MS. LO:  Well, your Honor, yes, you are correct

4   partially, but partially not.  We did that but with no result

5   so since the --

6          THE COURT:  So that would be the subsequent step.

7   First, you would write to each person, correct?

8          MS. LO:  Yes.

9          THE COURT:  First, you would communicate with each

10  person, correct?  Am I correct?

11         MS. LO:  Correct.

12         THE COURT:  Either in writing or orally?

13         MS. LO:  Correct.

14         THE COURT:  You agree with me on that?

15         MS. LO:  Yes.

16         THE COURT:  And in that communication you would

17  communicate your views about the case?

18         MS. LO:  Correct.

19         THE COURT:  And then the person might say "I agree,"

20  and they might say "they don't agree" or they might say "I

21  wish to confer with you further or think about it a little

22  bit," right?

23         MS. LO:  Yes, except the process is more complicated

24  than one would think due to the individual's condition at

25  the time of the communication.

1          THE COURT:  Complicated in what way?

2          MS. LO:  Okay.  I have a few, which we have been in

3    constant contact since the filing to stay discovery last

4    year, and we --

5          THE COURT:  Just by chance, just a little idle

6    curiosity question --

7          MS. LO:  Yes.

8          THE COURT:  -- where in all of the monthly status

9    reports that I was to receive, but where in the two documents

10   or three documents that were filed does it say clearly as

11   to any one of these 34 people you or the law firm was in

12   constant communication with the person over this period of

13   time?

14         MS. LO:  Your Honor, at the time when we filed the

15   supplement on March 3rd of 2012, the ones that I have been

16   in constant contact or I have contacted I can vouch for

17   that, but for the cases that other attorneys worked on,

18   especially the ones that Mr. Stegall worked on since his

19   departure from the firm, those are the ones that I do not

20   want to misrepresent to the Court by filing something that

21   I have not been able to verify regarding the status so as

22   to --

23         THE COURT:  Did not Mr. Stegall leave records?

24         MS. LO:  Mr. Stegall left the records, but I have --

25         THE COURT:  Is he not available to contact?  Does he

1   not speak to the firm anymore?

2          MS. LO:  Well, we have been in the process but --

3          THE COURT:  He left on good terms or not good terms

4   between him and the firm, without getting into whether it

5   was him or the firm?

6          MS. LO:  I would say he's on good terms, but I have

7   attempted, and I am still waiting pending on certain results.

8          THE COURT:  Mr. Cheffo, is Mr. Stegall a lawyer who

9   sort of regularly appeared at the various hearings until

10  March of last year when I had the hearing where there were

11  several lawyers from the Schwartz law firm including

12  Mr. Schwartz?

13         MR. CHEFFO:  That's correct.  Tray is his nickname,

14  he was the lawyer who was -- one of the lawyers with Mr. and

15  Mrs. Lo who also represented -- you're right, Tray was here.

16  He left I believe their firm sometime in January or so,

17  January, February, and my understanding was on good terms,

18  but last time it was Jack Harang and Newton Schwartz who

19  came with him.

20         THE COURT:  Okay.  Good ahead.

21         MS. LO:  So I would say it may be under representing

22  to the Court in the supplement --

23         THE COURT:  What I don't really understand is even

24  if you're in constant communication with all these people,

25  even if I put aside the fact that you and the law firm just

```
1    disregarded, there's several lawyers, to file monthly status
2    reports, and even if I concluded that you did all the things
3    that you should do; you just didn't tell me about it the way
4    you are required to, but you either wrote or communicated
5    with the client.  Then, you met with them and then you
6    followed up.  What I don't understand still is -- well, let
7    me ask this question:  what prospect did these 34 plaintiffs
8    have of recovering any money while their case was stayed?
9            MS. LO:  None.
10           THE COURT:  None, okay.
11           MS. LO:  It's none if it's not being prosecuted.
12           THE COURT:  And so they either need to be litigated,
13   right --
14           MS. LO:  Yes.
15           THE COURT:  -- or if a decision is made which you
16   and the client agree upon, that the case is not meritorious
17   of litigation, then to dismiss the case; or if the decision
18   is made between you, your client, and the defendants to
19   settle the claim in some way, then obviously you don't
20   need to litigate it; but if they're stayed, nothing's gonna
21   happen.
22      What I don't understand is how long -- I understand you
23   might not get it done in a week, right?  A week, it seems to
24   me a week would be a sufficient amount of time to communicate
25   with your client at least once.  So if you stayed, if you
```

1    filed a motion to stay on May 1st, 2011, or whatever day it

2    was in May, May 9th, I would assume that by May 16, 2011,

3    you would have either written to all those people or called

4    all those people, at least called them, even if you hadn't

5    spoken to them; and that within a month you would have had

6    the first communication with them orally.  Even if you wrote

7    to them, you would have had some oral communication, and

8    then maybe a decision is made and maybe many of these people

9    have mental health problems, right?

10        MS. LO:  Yes.

11        THE COURT:  And so maybe that makes it harder to

12   make a decision; they might have other people they wish to

13   consult with, they might have guardians; they might not have

14   a guardians but they might have a family member who's

15   important to them so you need to consult with that person

16   too or the like, but, in fact, would you agree with me that

17   that's the kind of consulted process that probably would

18   occur before you file a lawsuit on their behalf, correct?

19        MS. LO:  Yes.

20        THE COURT:  In the ordinary course, in fact, you'd

21   agree with me that if somebody like this came to you with a

22   claim, you would meet with them, right, and talk about their

23   case?  They would tell you what it is they were complaining

24   about, right?

25        MS. LO:  Except --

1        THE COURT:  Or they might talk to the lawyer who

2    referred it to you?

3        MS. LO:  Yes.

4        THE COURT:  Right.  Then, you would do a little bit

5    of legal research about the factual and legal basis for the

6    claim before you filed it, right?

7        MS. LO:  Correct.

8        THE COURT:  Right.  That might then cause you to

9    talk to the client again because maybe some of what they

10   wanted to complain about was not susceptible for formulation

11   into a civil complaint but other aspects of it were and you

12   wished to discuss the nature, now that you researched the

13   law and the facts, the nature of what they could and couldn't

14   get and how likely they are to prevail and what they might

15   look at so they understand, right?

16      You might have that conversation with a client?

17       MS. LO:  Yes.

18       THE COURT:  And, in fact, that might take a little

19   longer than usual with a client who has a mental health

20   problem because the explanations might be a little more

21   complete, and they might want to check with a family member

22   and talk to someone else before they make a final decision,

23   right?

24       MS. LO:  Yes, your Honor.  In this process I've had

25   people on this stay list which I personally talked to, and

1    it has been a yo-yo.

2           THE COURT:  So would it ordinarily take you one year

3    to decide to go through the process between communicating

4    with the client and reaching the point that they make a

5    decision to sue or not to sue?

6           MS. LO:  I feel, this is just my personal feeling and

7    viewpoint regarding this situation, it's for the client that

8    was assigned to me initially.

9           THE COURT:  Well, right now you're speaking for all

10   34?

11          MS. LO:  Yes.

12          THE COURT:  Yes.

13          MS. LO:  Right now on all 34, so when I represented

14   to you about a third of them, those are the ones that I

15   personally worked on, and knowing the status, and I can kind

16   of gauge on the approximate outcome as to whether they would

17   agree.

18          THE COURT:  So what do I know about the other two

19   thirds?

20          MS. LO:  The other two thirds --

21          THE COURT:  Is there nobody from your law firm

22   despite that the motion's been pending -- for how long,

23   Mr. Cheffo?

24          MR. CHEFFO:  Several months.

25          THE COURT:  Since January?

1          MR. CHEFFO:  Since January, yes.

2          THE COURT:  So since January the motion's been

3    pending and still you come here today at the end of March

4    and you're not able to tell me conclusively the status,

5    whether it's dismissed, withdrawn, the communication and

6    nature of it; you can't tell me where two thirds of the

7    cases stand?

8          MS. LO:  No.  Your Honor, may I make a request?

9    May I request for time so that I can -- because I do not

10   know for the cases that Mr. Stegall worked on what level of

11   contact but --

12         THE COURT:  What did you think I was asking for when

13   I issued my order that said I wanted to know the status of

14   everything that happened since the stay?

15         MS. LO:  Because, because for those cases I can only

16   base on what has been represented, but meanwhile I know we

17   each have done work on these plaintiffs.

18         THE COURT:  Why wouldn't that have been in your

19   report to the Court in the last couple of weeks?

20         MS. LO:  I cannot represent -- misrepresent without

21   having a confirmation so that's the reason why.

22         THE COURT:  But why would you then not say:  Judge,

23   this is what the status is of these cases; and as to these

24   other cases, we're not prepared to say.  We need more time

25   in order to collect the information?

1      MS. LO:  Maybe that is a mistake on our part for

2   failing to put that on the status report, but what I can

3   inform you, and which would be confirmed with what has

4   already been represented to the Court in our filing

5   yesterday, is for the people that we have been able to

6   receive a confirmation regarding whether they want to

7   dismiss or not, it's already been stated in the report.

8   And we have already sent out another set of letters to

9   these people with a postage paid envelope for them to sign

10   the form and return it to us so that we have --

11      THE COURT:  So how many people are you prepared to

12   say today that you reasonably anticipate -- it doesn't make

13   any difference to me whether they dismiss their cases or

14   not.  I'm perfectly happy to have you go through litigation.

15   That's why -- you know what this room is, right?  This is a

16   courtroom, right?

17      MS. LO:  Yes.

18      THE COURT:  And so that's what we do, I'm perfectly

19   happy with that.  The only reason these cases got stayed,

20   there's only one reason, and do you know why that is?

21      MS. LO:  Because it's not moving forward?

22      THE COURT:  No.  You don't know why the cases were

23   stayed?

24      MS. LO:  Yeah, so as to --

25      THE COURT:  Because you, your law firm, not you, or

1    maybe you signed the pleading, I don't recall, but your law

2    firm asked us to stay these cases.  That's the only reason

3    we've stopped these cases.

4        The only reason since March -- May, sorry, since May 9th

5    of last year and then later dates for the subsequent motions

6    to stay that no depositions were taken on these clients'

7    behalf, no discovery was undertaken on their behalf, is

8    because your law firm said:  stay the case.

9        I will tell you that when I got those motions I

10   reasonably thought that 30 days, 60 days, 90 days at the

11   outside, you would either come back and say:  Judge, we're

12   dismissing this case or withdrawing from this case or we

13   want you to lift the stay in this case and we'll proceed.

14   Any one of those three would have been a perfectly

15   satisfactory outcome to that process from my perspective,

16   but I'm here, you know, ten months later as to some of the

17   cases, and that hasn't been said as to any one of the cases

18   as far as I can tell.

19       So my question to you is, I mean, am I right about that?

20   It hasn't been said at least to your understanding as to any

21   of the cases that have been stayed?  There's four cases by

22   my measure that your firm had that have been dismissed since

23   the first motion to stay, but it's not clear to me that any

24   of those four were part of the stay.  I'm not positive but --

25             MS. LO:  Without --

```
 1            THE COURT:  You're not sure?

 2            MS. LO:  Based on memory, I'm not sure.

 3            THE COURT:  Okay.  So are there any cases that you're

 4     standing here today that you wish to lift the stay on and

 5     proceed to litigation?

 6            MS. LO:  Not at the present moment.

 7            THE COURT:  Are there any cases as you stand here

 8     today that you wish to today or tomorrow file a motion to

 9     withdraw them?

10            MS. LO:  This is where the difficulty is.  We can

11     file a motion to withdraw, but without having been able to

12     talk to the plaintiffs and to get a positive response

13     whether they wish to proceed pro se or try and seek other

14     counsel or whether they wish to dismiss, that is something

15     that hasn't been --

16            THE COURT:  So your answer is:  No, as you stand

17     here today right now in your judgment as a lawyer there's no

18     case that you wish to file a motion to withdraw in right

19     now?  That's fine, if that's what your judgment is.

20            MS. LO:  But, your Honor, your Honor, there are a

21     few that I believe we would have to do so this month.

22            THE COURT:  But not today?

23            MS. LO:  Well --

24            THE COURT:  I'm only asking -- I'm trying to

25     understand when --
```

```
 1              MS. LO:  Okay.

 2              THE COURT:  -- okay, the Schwartz law firm will be

 3      in the position to possibly make a decision about these 34

 4      cases?  When the Schwartz firm, I'm not telling you when I

 5      say you're going to do it, when you say you're going to be

 6      capable of making a decision of either:  withdraw, dismiss,

 7      or litigate, okay?

 8         How much time do you on behalf of the Schwartz law firm

 9      think you want for that?  You will tell me that, and then I

10      will decide --

11              MS. LO:  Okay.

12              THE COURT:  -- what to do?  So I'm asking you,

13      there's none you want to dismiss today, fine.  There's none

14      as I understand it you want to withdraw from today; is that

15      correct?

16              MS. LO:  Correct.

17              THE COURT:  Okay.  And there's none that you want to

18      dismiss today, is that correct; none that you're prepared to

19      dismiss today?

20              MS. LO:  Not today, but maybe next week.

21              THE COURT:  Fine.  Okay, so how long until you're

22      ready to decide:  lift, withdraw, or dismiss?

23              MS. LO:  Your Honor, may I request 90 days?

24              THE COURT:  No -- yes, you can request 90 days.  If

25      you're looking to, you can request whatever you want, okay?
```

1    Why would you possibly need 90 days?

2           MS. LO:  Okay.  Because, your Honor, I hope you

3    understand, I'm being put into this position trying to

4    follow up on certain things that my colleague has worked on.

5           THE COURT:  Who?

6           MS. LO:  Mr. Stegall with his departure from the

7    firm, because Mr. Stegall was the one who has been following

8    up on --

9           THE COURT:  So let me just, just so we're clear on

10   one thing, I'm not of the view that -- my impression of

11   Mr. Stegall in the course of his, of what I saw of his

12   representation of the clients in this case was he did a very

13   fine job, and he seemed -- he was prepared.  It's my memory

14   he came to court prepared, that he knew what he was talking

15   about, that he was appropriate, that he was ready to go, and

16   as a general matter, what he said he followed through on.

17         And so to the extent that, and the reason I bring this

18   up is because I got some feeling of this previously, not

19   from you, that to the extent the suggestion is that somehow

20   the reason for all these problems is Mr. Stegall somehow

21   didn't attend to his responsibilities or the like, I'm not

22   sympathetic to that argument because I haven't seen a basis

23   for it.

24         To the extent what you're saying to me is that you need

25   more time because as I understand the dislocation of the

1    lawyer from the office, you have to pick up the slack for

2    him; I understand that, and that's reasonable, but he left

3    the office in January and this is --

4              MS. LO:  No.  February, your Honor.

5              THE COURT:  February when?

6              MS. LO:  February 10th.

7              THE COURT:  February 10th, so did he leave

8    unexpectedly or did he give notice?

9              MS. LO:  Yes.  To me it was unexpected because he

10   left on the 10th, which was his last day on a Friday; I did

11   not get to find out until the Tuesday of that week.

12             THE COURT:  I see.  Did Mr. Schwartz know before?

13             MS. LO:  I do not know.

14             THE COURT:  Did you know before, Mr. Cheffo?

15             MR. CHEFFO:  Well, I only know from their own papers

16   where he said he gave a week or so notice and I --

17             THE COURT:  Okay.

18             MR. CHEFFO:  I knew he was actually looking for a

19   position so, I mean, maybe I knew more than Mr. Schwartz did

20   so --

21             THE COURT:  Okay.

22             MR. CHEFFO:  So, I mean, I'll address some of these.

23   I don't know that it was a long time; I think he was looking

24   for a job.

25             THE COURT:  Okay, fair enough.  So it might have been

```
 1    a week before?

 2           MR. CHEFFO:  I mean, and I think Ms. Lo will tell

 3    you too she's not -- she didn't just come onto these cases in

 4    February; she's been involved in these cases with Mr. Lo for

 5    a significant period of time.

 6           MS. LO:  Your Honor, I don't mean to -- I just want

 7    to make one correction.  I do not mean to put the blame on

 8    anyone, but the fact is when Mr. Stegall was at the firm he

 9    was the person to do the majority --

10           THE COURT:  So if you say 90 days, that means that

11    in theory, are you saying you want 90 days before you tell

12    me anything on any one of the 34 cases?

13           MS. LO:  No --

14           THE COURT:  What are you saying?

15           MS. LO:  -- that's not the case.  I would like for

16    90 days to be able to contact and get a resolution.  For

17    instance, I have some -- a few cases where I have been in

18    contact for the last two, three weeks already, and the

19    plaintiff was in a mental institution, and for that situation

20    I am unable to proceed any further.

21           THE COURT:  Just out of curiosity, has he or she

22    been in a mental institution -- I'm sorry.  When was that

23    person's case stayed?

24           MS. LO:  Well, this is one of the cases -- this is

25    one of the cases that we're working on, not a stayed case
```

```
 1   but --
 2             THE COURT:  Was that person's case stayed on
 3   May 9th, August 11th, September 14th, August 16th, just out
 4   of curiosity even if you don't know which date it was stayed
 5   on, has he been in, he or she been in a mental institution
 6   since that time?
 7             MS. LO:  This is not one of, not one of those people.
 8             THE COURT:  Not one of the 34?
 9             MS. LO:  Not one of the 34.
10             THE COURT:  How many other cases do you have that
11   are pending?
12             MS. LO:  Right now we have below 25.  24, 23 right
13   now.
14             THE COURT:  And what's the status, and in each of
15   those 23 or 24 cases, has the defendant had the opportunity
16   to take the plaintiff's deposition?
17             MS. LO:  Again without reviewing each single name,
18   but I believe for the majority, yes.
19             THE COURT:  But not all?
20             MS. LO:  I --
21             THE COURT:  You don't think all but you're not sure?
22             MS. LO:  I would say the majority and possibly --
23             THE COURT:  Have you taken the doctor and prescriber
24   depositions in all of those cases, your office?
25             MS. LO:  Yes.
```

```
1                 THE COURT:  So there's no more --

2                 MS. LO:  On some of them.

3                 THE COURT:  Are those cases ready to be transferred,

4     remanded?

5                 MS. LO:  Not yet.

6                 THE COURT:  Why not?

7                 MS. LO:  We're working on it.  Because some of the

8     prescribers we have not taken the depositions, and the sales

9     representatives' depositions need to be taken also.

10                THE COURT:  All right.  Did I not set a schedule a

11    long time ago that would have provided for those depositions

12    that would have already concluded?  I'm asking; I'm not --

13    I thought that a long time ago I set a schedule of doing

14    depositions a certain number a month; and if I recall,

15    generally, that you would all be done by now with those

16    depositions.

17       Am I wrong about that?

18                MS. LO:  I do not think so but --

19                THE COURT:  How many depositions have you taken in

20    the last month?

21                MS. LO:  The last month?

22                THE COURT:  In March.

23                MS. LO:  This is March, not in March but we had two

24    depositions in February.

25                THE COURT:  Prescribers or sales reps?
```

 1              MS. LO:  Prescribers.

 2              THE COURT:  All right.  So you want 90 days, and

 3      what happens at the end of 90 days?

 4              MS. LO:  There will either be a stipulation of

 5      dismissal or a motion to withdraw as counsel and refer back

 6      to local counsel or it will be one of the two situations.

 7              THE COURT:  And how do I -- why should I conclude

 8      that that will happen now within 90 days when despite the

 9      motions to stay, the orders for status reports and all the

10      rest, and given the 60 days, 60 plus days that have elapsed

11      since Pfizer's motion, it hasn't happened?

12              MS. LO:  Your Honor, again, it's back to the same

13      explanation.  With some of the plaintiffs, it may take just

14      two conversations, and then there's an agreement to dismiss.

15              THE COURT:  So 90 days would be enough for two

16      conversations?

17              MS. LO:  Please.

18              THE COURT:  I'm just asking.

19              MS. LO:  Some of the plaintiffs, two conversations

20      would be sufficient, and that has been presented for

21      dismissal already.

22          While, as with other plaintiffs, the ones that we have

23      the stayed cases on, we have many, many conversations; and

24      depending on the extreme cases, depending on the state of

25      the plaintiff or if the family members get involved, that

1    complicates the situation.

2        While as with others, which we already stated in the

3    status report filed yesterday, are the ones who said:

4    Yes, I agree; I will sign the form, but we have already

5    previously sent letters.

6            THE COURT:  Who's going to try these cases if they

7    go to trial?

8            MS. LO:  Mr. Schwartz would be one.

9            THE COURT:  Who would be the lead lawyer?

10           MS. LO:  The lead lawyer, probably Mr. Schwartz or

11   Mr. Harang.  Again, I do not know.

12           THE COURT:  Where is Mr. Harang?

13           MS. LO:  Mr. Harang, I believe, is out of town

14   getting ready for a trial.  I do not know for sure, but I

15   saw him packing boxes, loading it for -- it looks like for a

16   trial.

17           THE COURT:  Neither thought this motion important

18   enough to either attend or ask for a different date so they

19   could attend?

20           MS. LO:  Well, your Honor, this is my first

21   appearance.  When I saw the order regarding this hearing

22   date, I did not know, I did not know there were options

23   that we could ask or request for a different date, and just

24   informed Mr. Schwartz about that and then found out a few

25   days ago --

```
 1              THE COURT:  I think Mr. Schwartz has been around
 2    long enough to know that if the Court schedules a hearing,
 3    he understands the concept of asking the Court for an
 4    earlier or a later date within a reasonable period of time
 5    if he thinks for some reason he has a scheduling conflict.
 6         I would imagine that that's happened in this litigation
 7    before and many times before and if the request, you know,
 8    is possible, Courts always try to be accommodating to the
 9    lawyers' schedules if they can reasonably accommodate them,
10    but in any event so they both knew about the hearing date
11    and then you told them?
12              MS. LO:  I did not know about -- I cannot speak for
13    Mr. Harang.
14              THE COURT:  How about Mr. Schwartz?
15              MS. LO:  But Mr. Schwartz knows.
16              THE COURT:  I see, okay.  All right.  Anything else?
17              MS. LO:  I just want to restate:  even though in
18    our motion for leave, the request for motion for leave to
19    file a sur-reply, it was stated -- I just wish that your
20    Honor would understand:  Yes, we have a deadline to meet;
21    we want to move forward as quickly as possible, and I just
22    hope that your Honor would understand we try to do that,
23    and it's based on individual cases.  Certain plaintiffs'
24    conditions just prohibits from moving swiftly at that moment
25    because as I stated already --
```

```
 1            THE COURT:  I don't think you have any fear of

 2   anybody saying that you've been swift in litigating the

 3   cases.  I don't think that you have to worry about that.

 4            MS. LO:  Okay.

 5            THE COURT:  This has been seven years that I've been

 6   in this MDL, all right, and whatever observations I've made

 7   about the progress of the -- let's put it this way,

 8   Mr. Cheffo, are the Finkelstein cases in litigation or done?

 9            MR. CHEFFO:  They're done, your Honor.

10            THE COURT:  And they had over a hundred cases,

11   correct?

12            MR. CHEFFO:  Well over 100.

13            THE COURT:  Is there anything about -- and each of

14   plaintiff's made claims of either actual or attempted suicide

15   was the claim?

16            MR. CHEFFO:  That's correct, and they were some of

17   the hardest litigated cases I've experienced and they were

18   able to be settled.

19            THE COURT:  And Mr. --

20            MR. CHEFFO:  Boone?

21            THE COURT:  Mr. Boone had over 400 plaintiffs.

22            MR. CHEFFO:  Correct, your Honor.

23            THE COURT:  Are those cases all done?

24            MR. CHEFFO:  They're all done.

25            THE COURT:  Admittedly, some of them by the Court
```

1    dismissing them by sanctions and the ones that weren't

2    dismissed that way are done?

3          MR. CHEFFO:  That's correct.

4          THE COURT:  Anybody other than the Schwartz law firm

5    have more than 25 cases?

6          MR. CHEFFO:  No.  In fact, I don't think there's

7    anybody else in the entire litigation that has more than two

8    cases.

9          THE COURT:  And as to the handful of other -- the

10   people who have one or two cases here and there, what's the

11   status of those people's cases?

12         MR. CHEFFO:  Frankly, I think there's one that was

13   remanded.  That was Mr. London's case, the Strickland case,

14   that was remanded to Atlanta.  The rest have either been

15   dismissed or withdrawn, and the only thing that remain are

16   just pro se cases which have been remanded.

17         THE COURT:  So is there anything left in the MDL

18   other than the Schwartz cases?

19         MR. CHEFFO:  I don't think there is.

20         THE COURT:  On the products liability side?

21         MR. CHEFFO:  I think those are the only cases that

22   are still remaining.

23         THE COURT:  All right.  So there's no fear of being

24   swift, not first to the finish line.

25         MS. LO:  Well, your Honor --

```
 1              THE COURT:  Okay.

 2              MS. LO:  -- maybe I misspoke.

 3              THE COURT:  No.

 4              MS. LO:  Please excuse me.  This is my first hearing

 5    on this case, and I am just being put in --

 6              THE COURT:  You go back and give Mr. Schwartz a big

 7    thank you, right, for giving you a chance to show up here on

 8    this hearing.

 9              MS. LO:  So please be lenient on me, I try to do the

10    best I can for the firm and for the plaintiffs.

11              THE COURT:  You're doing a very fine job.  There's

12    no reason that -- you're doing a very fine job today, and

13    these cases are not first and foremost your responsibility;

14    you're not the person, you're not the lead lawyer on these

15    cases, you're not the person who's trying them, you're not

16    the one who's responsible for them; you're responsible but

17    not the ultimate --

18              MS. LO:  Yes.

19              THE COURT:  -- responsible person for them.  I

20    understand that, and, all right, let me hear from

21    Mr. Cheffo.  Thank you.

22              MR. CHEFFO:  Thank you, your Honor.  I just have a

23    few comments.  I think you said this maybe back in April,

24    and it resonated with me.  You said something like these

25    are the things -- this is the type of hearings that you hate
```

the most, sanctions, and I have to tell you as a lawyer they're absolutely the worst thing.  They're physically draining because you don't really want to be in this position; but having said that, you're conflicted or at least I'm conflicted.  You can't let cases lie and you have to represent your client.  You try and make phone calls; you make efforts, and you're ultimately forced with:  either do nothing and face, you know, questions from the Court or ultimately have to make this type of motion.

So with that, you know, I would say a few things. First, it's incredibly telling that Mr. Schwartz is not here today, and I don't think it's just a matter of, you know, he couldn't make it because, frankly, I was at the MDL in San Diego.  Had he called last week or any other time and said:  I'd like to move this, you know, I could have avoided that; I would have certainly said yes.

And I also think that, you know, obviously, none of my comments today or earlier or in the papers are in any way directed at Ms. Lo nor should they be because she's an associate at their firm, has responsibility for the cases she handles, but, ultimately, it's Mr. Schwartz and Mr. Harang that are counsel of record; and I think to send, you know, someone here basically -- and again this is not a slight in any way -- but really without authority, without the complete picture, is frankly just appalling.  You know,

```
 1    it's a waste of the Court's time, a waste of our time,

 2    again, on an issue when the whole issue here is wasting time.

 3        You know, a few other points.  There's been no shortage

 4    of sur-replies and flurries of briefs that Mr. Schwartz is

 5    kind of able to log on ECF.  What I said to Ms. Lo earlier

 6    was if you had just taken the time and spent ten minutes

 7    calling each one of the plaintiffs, he probably would have

 8    saved a lot of time, less time than filing all the briefs

 9    and all the accusations, and we wouldn't ever have to be

10    here.

11            THE COURT:  It's really only just about, do you want

12    to lift the stay and litigate the case or do you want to

13    withdraw or do you want to dismiss?  That's it.

14            MR. CHEFFO:  And, your Honor, I think again to

15    reflect back, some of the questions you've asked and some

16    of the issues we could pretty much look at the April 2011

17    transcript and it would almost apply here.  What are you

18    gonna do, what do you want to do, so there does come a

19    point here.  You know, I was looking back at some of the

20    statistics, and this may be instructive for the Court

21    because I think it's part of a bigger problem here.

22        Mr. Schwartz initially filed 225 cases.  Right now

23    there's less than 10% of the cases, so there's 23 cases that

24    they currently say they want to litigate.

25        There were -- there are 34 stayed cases; of which as
```

1    you've highlighted, really nothing's happened in the last

2    year, and then there are nine more non-stayed cases which

3    they've basically said they want to add to the stay, but

4    they haven't filed motions.  That's by my count.

5          THE COURT:  That's your view to add them to the

6    count or well, informally?

7          MR. CHEFFO:  Well, in connection with usually it

8    comes in when we notice a deposition of the plaintiff or

9    someone else and then they'll come back and say:  We now

10   want to add them to the stay list or worse, which is in more

11   situations, we actually fly to Arkansas or wherever it is.

12   We take the plaintiff's deposition.  Then, we get a letter

13   saying, you know, we'd like to dismiss the case so there's

14   been 150 terminated cases, you know --

15         THE COURT:  Those terminated cases are not settled;

16   those are just dismissed?

17         MR. CHEFFO:  No, not a single penny has been paid

18   to any of these cases ever, and I think that, you know,

19   this issue about that time will somehow heal everything is

20   I think incorrect.

21      Other law firms, as your Honor has pointed out, you

22   know, I'm not unsympathetic or unmindful of the fact that if

23   someone -- if you can't find someone.

24         THE COURT:  Is the 150 exact or approximate?

25         MR. CHEFFO:  I think it's exact.

1          THE COURT:  So I come up with 9; it's 150 terminated,

2     23 to litigate, 34 stayed, 9 in the in-between; that is,

3     they haven't been stayed but indicated to you they'd like

4     to stay.  I come up 216.

5          MR. CHEFFO:  And I think there's 7 -- I also had one

6     more statistic -- 7 cases that they moved to withdraw from.

7     I don't want to jump around too much, but just a point on

8     that, which I think your Honor should also deal with, I

9     think it's fair to say, because we found this when we take

10    these depositions, that the Schwartz firm contrary to what

11    you might think has actually never met most of these people.

12         In fact, the first time that they ever talk to them are

13    usually at the deposition or before the deposition, which is

14    a problem with when you advertise and you basically take

15    cases and you know nothing about them.  You get down to the

16    deposition, you take them, and then you write a letter

17    after we travel to find out that the case has no merit.

18    The person's not taken the drug; they're still taking

19    Neurontin, there's no injuries.

20         This has been, you know, a constant problem.  We haven't

21    brought all of these to the Court's attention, but with

22    hundreds of cases, this has been hundreds of thousands of

23    dollars that basically has been spent frankly for no good

24    purpose.

25         Plaintiffs certainly are not benefited by this because

1    you have someone's who's told, you know, your problems are

2    caused by Neurontin; they either stopped taking it or they

3    don't seek treatment, and all of these people wind up years

4    later with virtually no compensation and their cases being

5    dismissed.  Even the cases where they say they're going to

6    withdraw from, what they do is say:  we're going to withdraw

7    and allow the local referring lawyer, but you wouldn't know

8    who that person is nor would I because they're not counsel

9    of record in this litigation.

10        In fact, Ms. Lo can correct me, I don't think we've ever

11    seen another lawyer other than the Schwartz firm lawyer at

12    any deposition, any communication.  So this idea that

13    there's all these referring lawyers out there who will

14    somehow pick up the mantel is also somewhat unclear to me

15    who those people are since no one's ever heard from them in

16    six years, and so it's a little bit of a bait-and-switch.

17    You know, they keep saying:  Well, we can't dismiss these

18    cases without client approval; and as to your report, we

19    know the ethics.  No one's suggesting that they just kind

20    of go out willy-nilly and dismiss cases, but after a year

21    certainly if the client doesn't respond to you in a serious

22    personal injury case you move to withdraw or -- I've never

23    seen communications with all these referring lawyers that I

24    can recall.

25        You know, a few other things.  I think Ms. Lo has

highlighted, and in the papers they highlight these one or
two problem cases where what I told her was, I said, we
were in a situation where of the 60, you know, cases or of
the 34, there were two or three cases where you said:  Mark,
hey, I can't get ahold of this person.  Obviously, it would
be a different situation than saying, you know, that one
situation applies to all of these cases.

So I think really this to me highlights really a bigger
problem, you know, with the Schwartz firm frankly.  It's
not -- you know, the more that they put in their papers
that we're seeking to sanction them because they didn't
file a piece of paper; I think and I believe the Court
understands, it's not -- you know, the court rules are
important.  I don't think I would necessarily be making a
motion if someone missed a filing; I think your Honor
would address those issues.

The real issue here is:  what's in those documents?
Have they have been filing them all along every month, we
either would have found out two things:  one is they were
doing what they should be doing, right, and we could kind
of ask them and question them or we'd find out what we
know now which is they've done virtually nothing.  And
even in the chart they just submitted yesterday, if you
look carefully at a lot of it, it's:  Well, we sent a letter
in April, May, or March or August of 2011, the last contact

1    was in September.

2         So, again, I come back to, if I get a motion for

3    sanctions before I whip off a ten-page sur-reply, I'd

4    probably go and actually call the people and try and

5    resolve those issues before today, and I think this is

6    just the fact that I don't think Mr. Schwartz takes this

7    seriously, and I think you've given him every opportunity

8    to address this; he's counsel of record, and I think there's

9    only one way unfortunately to get his attention, and that's

10   through a stern sanction.

11        THE COURT:  Let me ask you this question, Mr. Cheffo:

12   with respect to the 23 that they say they want to litigate,

13   have you taken the plaintiff's deposition in each of those?

14        MR. CHEFFO:  We have taken most of those.

15        THE COURT:  Okay.

16        MR. CHEFFO:  And, again, what I will tell you,

17   though, is so the answer is yes.  They said the 23, and then

18   all I can tell you is based on history, you know, that was

19   a much larger number, but all I'm saying is I expect that

20   number to still shrink.

21        THE COURT:  Shrink, but among the 23, so you've

22   taken many but not quite all of the plaintiff's depositions?

23        MR. CHEFFO:  Well, in fact, I would say subject to

24   maybe one or two I believe we've taken every plaintiff

25   deposition.

```
 1              THE COURT:  All right.  Out of those 23?
 2         MR. CHEFFO:  Yes.
 3              THE COURT:  Have they taken a prescriber deposition
 4    in each of those 23 cases?
 5              MR. CHEFFO:  Again, subject to a one-off, and I'm
 6    pretty sure on this, I don't believe that the Schwartz firm
 7    has noticed a single deposition ever, ever in any case.
 8    So to the extent that there was prescribers taken, it's
 9    because Pfizer, we took the depositions; and notwithstanding
10    what they said in their papers the sales reps after six
11    years they have never asked for a single sales rep's
12    deposition, so this idea of that we're --
13              THE COURT:  So how many of the cases have you taken
14    the sales rep or prescriber depositions in?
15              MR. CHEFFO:  Well, every one of the cases.
16              THE COURT:  Now, typically, has it been --
17              MR. CHEFFO:  Well, the sale reps we wouldn't take.
18              THE COURT:  You wouldn't take the sales reps; they're
19    your people?
20              MR. CHEFFO:  They're former employees.
21              THE COURT:  So the sale rep, you'd only take if
22    the person left Pfizer, were working somewhere else, might
23    not be available to you ordinarily, so there might be a few
24    cases where you took the sales reps --
25              MR. CHEFFO:  Right, but I'd tell you we never would.
```

```
 1    We typically wouldn't do that.

 2              THE COURT:  All right, so you don't think you

 3    initiated any sales reps?

 4              MR. CHEFFO:  Right, correct.

 5              THE COURT:  As to the prescribers, would you

 6    typically notice the prescribers' depositions or not?

 7              MR. Cheffo:  We typically would, yes.  That's

 8    something we would want to get the testimony where we can.

 9              THE COURT:  So of the 23 there have been no sale rep

10    depositions because you haven't taken them and they haven't

11    taken them?

12              MR. CHEFFO:  Correct.

13              THE COURT:  And prescribers, they haven't noticed

14    any of them; you've noticed and taken some of them?

15              MR. CHEFFO:  That's correct.

16              THE COURT:  Do they ask questions when you notice

17    them?

18              MR. CHEFFO:  Well, Ms. Lo could probably speak to

19    that.  I can tell you unfortunately on this one I have to

20    defer to -- you know, when I say "we."

21              THE COURT:  You're not doing those depositions?

22              MR. CHEFFO:  -- I've not taken a single one of the

23    Neurontin depositions, but there is an Exhibit A, and if I

24    could hand this up to your Honor?

25              THE COURT:  Sure.
```

```
1              MR. CHEFFO:  I don't have that copy with me.

2              THE COURT:  I know which document you're referring

3      to.

4              MR. CHEFFO:  This, I think, will answer the question.

5      Thank you.  That's my only copy, so I'll do it from memory.

6              THE COURT:  I'll give it back to you.

7              MR. CHEFFO:  No, you can have it; I just don't have

8      it in front of me but if you look in progress --

9              THE COURT:  Yes.

10             MR. CHEFFO:  -- those, I believe, are the 23 cases;

11     and then if you look in one of the columns.

12             THE COURT:  I see.  So, for example, depos completed

13     plaintiff, depos remaining:  prescriber/sales rep, all right.

14        So one, Ms. Logan's, of the prescribers, were taken;

15     and Ms. Pasteen, that's two; Ms. Sines, that's three;

16     Saint-Hilaire, four; Taggart, that's five; Valentino as

17     well as the treating physician, Wilhelm.  That's it then of

18     the ones in progress.  Of all the other ones in progress,

19     only the plaintiff's deposition's been taken, okay.

20        And, I take it, of the 34 stayed, probably no depositions

21     because they got stayed in lieu of depositions; maybe you

22     took a plaintiff or some of them but not many?

23             MR. CHEFFO:  Exactly.  Usually, again, my experience

24     is, you know, because I do get the reports on these, that's

25     been some of the frustration.  It's two things, your Honor:
```

one is, I can say with certainty, every case where there's
either just been a plaintiff or very minimal discovery, if
they've come in and said they want to dismiss it or stay it,
we've said yes and we'll waive costs and we're not dealing
with anything.

There's been a few cases where we had to take multiple
depositions and then they've come afterwards, and, you know,
we find out that the person wasn't even taking the drug and
that they want to dismiss the case ... as to those cases,
we've actually objected, but that's a few, that's a very few
cases.  The vast majority either they've unilaterally come
to us and asked for a stay or it's after we take the
plaintiff's deposition they've asked for a stay.

THE COURT:  Okay.  Anything else?

MR. CHEFFO:  No.  Like I said, it's never a --
it's never a happy moment, but I do think, as I said, and
not to, to reiterate this point too much, but I think your
Honor has kind of a bit of a bird's-eye view as to really
a systemic problem.

I mean, this is an issue of, you know, when you look at
the statistics, and, you know, you ask:  why is it that
someone could file 225 cases, get to a point where they have
less than 10% of those left; many of whom, I think, are no
different than the ones that were dismissed that are not
viable, and kind of carry on this litigation for six years

```
1    without lack of attention.  To my understanding, you know,
2    these are cases that came --
3         THE COURT:  Well, I'm not sure I see a lot of
4    carrying on.
5         MR. CHEFFO:  Well, you know, fair enough.
6         THE COURT:  Usually, I think of "carrying on" as
7    plaintiffs would take the depositions of the people they
8    wanted to take, and has the template discovery been completed
9    by you with respect to the 23; that is, your production?
10        MR. CHEFFO:  My understanding is yes.  I mean,
11   there's not been any deficiency letters that I know of.
12        THE COURT:  Right, and have they done template
13   discovery with respect to the 23?
14        MR. CHEFFO:  I think, I think they're generally have
15   done it, I mean, or we would have moved is my understanding,
16   but, you know, you know, look, subject to people always
17   remembered other providers, but I think they're generally
18   compliant in that regard; I just think that, you know, this
19   is an opportunity just for me frankly to highlight to your
20   Honor that, you know, this is -- this I think is just a
21   problem, that, you know, the Court should with all due
22   respect I think kind of look into a little bit longer.
23        I mean, how is it that someone can file these cases,
24   really not know anything about the clients, and, you know,
25   notwithstanding our efforts to work with them over time,
```

```
 1    and not raise this to a head?  We're now six years into it,

 2    and there's really no explanation as to what's happening

 3    with the cases.  The only thing is:  we need more time, and

 4    I think someone like Mr. Schwartz should be called to task

 5    to explain.

 6              THE COURT:  No, I'm inclined to have another hearing.

 7              MS. LO:  Your Honor, may I respond to --

 8              THE COURT:  Absolutely.

 9              MS. LO:  Okay.  Your Honor, first of all, Mr. Cheffo

10    said that at our firm, none of the attorneys has spoken to

11    the plaintiffs until before the depositions.  That is not

12    true, because, again, early on I was not involved at that

13    stage.  It's my understanding that even in the evaluation

14    of cases that at least the local attorney would have met

15    and spoken with the plaintiff.

16              THE COURT:  And how does that contradict what

17    Mr. Cheffo said?  Mr. Cheffo said that nobody from the

18    Schwartz law firm prior to depositions spoke to the

19    plaintiff.

20              MS. LO:  That's not true.

21              THE COURT:  But what you just told me was the local

22    lawyer, the local lawyer doesn't work for the Schwartz law

23    firm?

24              MS. LO:  Your Honor, for the discovery of every

25    single plaintiff --
```

```
 1              THE COURT:  Okay.
 2              MS. LO:  -- the plaintiff's attorney would have to
 3      talk to the individual plaintiffs so that's --
 4              THE COURT:  Good practice would dictate they would,
 5      I agree.
 6              MS. LO:  So that --
 7              THE COURT:  Do you know that they did?
 8              MS. LO:  I would say that for every single plaintiff
 9      that we have responded to either one of the attorneys,
10      whether it's Mr. Stegall --
11              THE COURT:  How many of them did you do?
12              MS. LO:  Again --
13              THE COURT:  Some portion?
14              MS. LO:  I would say 68 of them.
15              THE COURT:  68?
16              MS. LO:  68.
17              THE COURT:  Of the 250 or the 225 or a little less
18      because not all of them did discovery?
19              MS. LO:  It was about -- yes, it was about a little
20      over 100 at the time.
21              THE COURT:  So you did a little more than half; and
22      as to your half, you talked to each plaintiff before
23      completing the template --
24              MS. LO:  Yes.
25              THE COURT:  -- paper discovery?
```

1          MS. LO:  Yes.

2          THE COURT:  All right.  And you believe that

3     Mr. Stegall would have talked to the other plaintiffs for

4     the ones that he did the template discovery; is he the only

5     one that did that?

6          MS. LO:  He's the only one and there's another

7     attorney, Vincent; he worked on a few.

8          THE COURT:  Do you know whether or not anyone from

9     the Schwartz law firm talked to any of these plaintiffs

10    before the complaints were filed?

11         MS. LO:  That I do not know.

12         THE COURT:  You did not?

13         MS. LO:  I do not, no.

14         THE COURT:  No, you did not talk to any of them

15    before the complaints were filed?

16         MS. LO:  Because I did not work on this case.

17         THE COURT:  Then?

18         MS. LO:  Yes, then.

19         THE COURT:  Okay.

20         MS. LO:  And the second part regarding Mr. Cheffo

21    said he's never seen any communication with -- between us,

22    Mr. Schwartz's firm, and the local counsel that we have been

23    communicating and part of the -- I think part of the reason

24    that caused this delay and I do not -- I'm not speaking so

25    as to put the blame on anyone.  Please do not misunderstand

```
 1    it that way, but I think when there are more parties involved

 2    it may not always be a speedy way to complete the task and --

 3            THE COURT:  I will grant you, Ms. Lo, that when

 4    there's three people who have to be communicated with

 5    rather than two, it would take longer ordinarily than three.

 6    I do not agree that with ordinary -- in the ordinary case,

 7    even with the kinds of plaintiffs that you're dealing with,

 8    in the ordinary case, there might be few exceptions, that

 9    it would reasonably take 11 or 10 months to communicate with

10    local counsel and with the client to come to a conclusion

11    either we want to litigate this case or we're going to

12    withdraw or we're going to dismiss or we're going to withdraw

13    but the client wants to look for another lawyer, and, Judge,

14    can that person have 60 days to go find another lawyer?

15        To come to that conclusion doesn't strike me ordinarily

16    as an 11-plus-month 90-day process?

17            MS. LO:  Your Honor, for the initial filing --

18            THE COURT:  It's okay.  I understand your position.

19            MS. LO:  Yes.

20            THE COURT:  I understand what you're saying, that's

21    fine.  Anything else?

22            MS. LO:  Yes.  Regarding also the -- regarding,

23    regarding calling the individual plaintiffs because I am

24    just being put in these shoes, so I am following up on

25    the cases that I have a grasp of regarding as to what the
```

1  client's position is, and I have to also proceed, and I try

2  what would be easiest -- in my opinion, the easiest one that

3  I think would provide me with an answer, whether it's agree

4  or disagree to dismiss; and I'm reworking on that, even

5  though we have sent out letters before, and on the ones

6  that Mr. Stegall worked on, that's the next group of people

7  that I will be continuing with your permission's, your

8  Honor, and then regarding the --

9         THE COURT:  You don't need my permission to talk to

10  your clients.

11         MS. LO:  But with your permission to allow us

12  additional time so that we can resolve this?

13         THE COURT:  Let me give you a suggestion, Ms. Lo.

14  I haven't yet said that Judge Saris ought to dismiss these

15  cases.  The motion's been pending since January.  It does

16  appear that the engine's coming on, and that I see, when I

17  look at these reports and I've looked back at all the ones

18  that have been filed, which weren't very many, and most of

19  them were filed since the motion was filed, but there was

20  one lowly report in the nine or ten months when you were

21  supposed to or your firm was supposed to file one every 30

22  days, and there seems to be more activity than before.

23      You know, Mr. Cheffo's suggestion that usually what

24  people do when they see the motion for sanctions is they

25  solve the problem.  You've had two months to solve the

1    problem, which is two thirds of the time you're now asking

2    for.  If you want to -- I don't usually tell people how to

3    litigate their cases.  I'm not going to tell you how to

4    litigate your case, but if you want one suggestion, one

5    suggestion would be go solve the problem, okay, and I

6    would -- because I'm not ruling today.

7        I'll tell you my inclination is I'm dissatisfied that

8    neither Mr. Schwartz nor Mr. Harang are here, no disrespect

9    to you, but, ultimately, they're responsible for these cases;

10   they're the lead counsel on it.

11       What's hanging in the balance is a request to dismiss all

12   of these cases for failure to comply with court orders and

13   for failure to do anything essentially, in lay terms that's

14   what the motion is, and you've done a very fine job here,

15   both very persistently and politely, presenting the Schwartz

16   firm's position, and I give you cudos for that, but you're

17   not in the position to talk about all of it because you can

18   talk about what you did and now you're beginning to take

19   over since February what Mr. Stegall did.

20       You obviously didn't supervise Mr. Stegall, and I don't

21   expect that you should have; that responsibility fell on

22   Mr. Schwartz and Mr. Harang, and so I'm inclined to issue

23   an order scheduling another hearing that I order that one

24   or both of them appear, and then I'll address the matter

25   further at that hearing.

1          All right.  Anything else before we conclude?

2          MS. LO:  Yes, your Honor.  I also want to make a

3     correction regarding Mr. Cheffo's representation to the

4     Court that plaintiffs have not noticed any prescribers'

5     depositions.  That is not correct.  The two depositions

6     which I attended in the month of February were both

7     prescribers depositions which our firm noticed.

8          THE COURT:  All right.  How many other prescriber

9     depositions has your firm noticed?

10          MS. LO:  I do not know.  I know Mr. Stegall did, but

11     I do not know.

12          THE COURT:  Did you attend these depositions in

13     February?

14          MS. LO:  Yes, I did.  I personally took them.

15          THE COURT:  You personally took them?

16          MS. LO:  Yes.

17          THE COURT:  How many other depositions have you

18     personally taken in this case, not defended but taken?

19          MS. LO:  Taken, you mean --

20          THE COURT:  In this MDL?

21          MS. LO:  Prescribers or --

22          THE COURT:  First, prescribers.  Have you taken any

23     other prescribers besides those two?

24          MS. LO:  Not noticed by my firm, but I did attend

25     some prescribers.

```
 1              THE COURT:  All right.  So you haven't noticed any
 2    other -- and as far as you know, personally, you haven't
 3    taken any other prescriber depositions pursuant to a notice
 4    your firm issued?
 5              MS. LO:  Except for the ones that I did.
 6              THE COURT:  Except the two in February?
 7              MS. LO:  The two, and I know Mr. Stegall did notice
 8    some.
 9              THE COURT:  Some?
10              MS. LO:  But I do not know the numbers.
11              THE COURT:  All right.  How many sales
12    representatives' depositions have you taken?
13              MS. LO:  Sales representative is the next group,
14    which is on my --
15              THE COURT:  How many have you taken?
16              MS. LO:  None, none to date.
17              THE COURT:  Do you know if the Schwartz firm has
18    taken any sales representative depositions?
19              MS. LO:  Not to my knowledge.
20              THE COURT:  All right.  Thank you very much.
21              MS. LO:  Thank you.
22              THE COURT:  All right.  Mr. Cheffo, do you wish to
23    come by telephone if I have a further hearing?
24              MR. CHEFFO:  I appreciate it.  I don't mind coming
25    up.  If I can't make it, I'll let you know, but I'll
```

1    certainly come and fly up.

2        And just the only thing I would say is if, you know,

3    some of the facts on these few depositions, I think that's

4    not the main point of the hearing today, but to the extent

5    that there were a few depositions --

6            THE COURT:  I understand.

7            MR. CHEFFO:  -- taken or noticed, I certainly would

8    not object to that.  Thank you, your Honor.

9            THE COURT:  All right.  We're adjourned.  Thank you

10   very much.

11           THE CLERK:  This matter's adjourned.

12           (Whereupon, the proceedings concluded at 3:02 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2

3       I, Helana E. Kline, a Registered Merit Reporter,

4   Certified Realtime Reporter, and Federal Official Court

5   Reporter of the United States District Court, do hereby

6   certify that the foregoing transcript, from Page 1 to

7   Page 51, constitutes, to the best of my skill and ability,

8   a true and accurate transcription of my stenotype notes

9   taken in the matter of Harden Manufacturing Corp., v.

10  Pfizer, Inc., et al.

11

12

13

14

15

16

17

18

19

20

21

22

23      /s/ Helana E. Kline                    April 6, 2012

24      Helana E. Kline, RMR, CRR

25      Federal Official Court Reporter