UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------x
:
In re:  NEURONTIN MARKETING, SALES          :  MDL Docket No. 1629
         PRACTICES AND PRODUCTS              :
         LIABILITY LITIGATION                :  Master File No. 04-10981
------------------------------------------------x
                                             :  Judge Patti B. Saris
THIS DOCUMENT RELATES TO:                    :
                                             :  Magistrate Judge Leo T.
ALL SCHWARTZ PRODUCT LIABILITY ACTIONS       :  Sorokin
                                             :
------------------------------------------------x

### DEFENDANTS' OPPOSITION TO
### NEWTON B. SCHWARTZ'S MOTION TO WITHDRAW AS CO-LEAD COUNSEL

Defendants Pfizer Inc and Warner-Lambert Company LLC (together, "Pfizer" or "Defendants") respectfully file this opposition to Newton B. Schwartz's motion to withdraw "as co-lead counsel . . . but remaining as counsel of record."[1]  (Schwartz Br. [3872], at 1.)

Mr. Schwartz's motion is the latest in a series of highly peculiar motions and filings that do nothing to advance the progress of his cases or this litigation.  In fact, the relief sought is clearly intended to allow Mr. Schwartz to further remove himself from accountability for cases that he filed many years ago.  Mr. Schwartz apparently wants to continue to represent the various remaining Plaintiffs, and have his associates work on the cases, but wants to avoid having to appear at conferences to address the status of his cases.  Of course, what Mr. Schwartz neglects to note is that this Court only required his attendance at conferences after years of neglecting his cases, ignoring this Court's orders and rules, and failing to remain in contact with his own clients.  The fact that he spends the bulk of his motion discussing other cases and other clients is telling and further highlights why he should be directed to assume direct responsibility for the

---

[1] In the "Certificate of Conference" accompanying his motion, Mr. Schwartz explained that he spoke with Catherine Stevens on May 11, 2012, and that Pfizer took "no position on" his motion.  During that call, however, it was unclear exactly what relief Mr. Schwartz would be seeking from the Court, which prevented Pfizer from forming a position at that time.  More specifically, it was not understood that he wanted to withdraw only as "co-lead counsel."

cases he filed.

Mr. Schwartz and his firm must remain available to appear before the Court in order to keep these cases moving forward in a timely manner. As this Court observed, "making people appear in front of me motivates things. It seems to kindle fires." (Ex. A, 4/9/12 Hr'g Tr. at 56:23-57:13.) This need is particularly important here given the Schwartz firm's history of neglecting its cases. The Schwartz firm initially filed claims on behalf of approximately 225 plaintiffs over six years ago, and Pfizer has expended great resources to defend these claims. While a majority of these cases have now been subject to dismissal or counsel withdrawal, that did not occur through the Schwartz firm's critical review and voluntary dismissal of cases or through settlement. Rather, Pfizer has had to engage in repeated efforts to compel the Schwartz firm to evaluate its cases, the majority of times after costly medical records collection and depositions.

Indeed, just recently, Pfizer had to file a motion for sanctions because the Schwartz firm repeatedly violated this Court's Order to provide status reports with regard to its stayed cases, (*see* May 6, 2011 Order [Dkt. No. 3455]), and that motion ultimately resulted in counsel withdrawals or dismissals in additional cases. Prior to that, this Court reprimanded the Schwartz firm for other violations of its orders. (*See* 4/26/11 Hr'g Tr. [Dkt. No. 3777-1] at 61-71.) In both instances, the Schwartz firm failed to make a serious attempt to remedy its violations until this Court ordered Mr. Schwartz to appear at a hearing and reprimanded him personally. While Mr. Schwartz now requests that the he no longer be required to attend such hearings, that would eliminate a necessary case-management tool that has been key to moving these cases forward.

Mr. Schwartz cannot, however, seriously dispute this Court's authority to order attorneys in cases pending before it to appear at hearings. As the First Circuit has explained, "courts cannot effectively administer justice unless they are accorded the right to establish orderly processes and manage their own affairs." *Young v. Gordon*, 330 F.3d 76, 81 (1st Cir. 2003). "'[T]his power is necessary to prevent undue delays in the disposition of pending cases, docket congestion, and the possibility of harassment of a defendant.'" *Colokathis v. Wentworth-*

2

*Douglass Hosp.*, 693 F.2d 7, 9 (1st Cir. 1982) (citation omitted).  This inherent case-management authority is particularly important in multidistrict litigation "because of the large number of cases that must be coordinated, its greater complexity, and the court's statutory charge to promote the just and efficient conduct of the actions."  *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1222 (9th Cir. 2006) (citing 28 U.S.C. § 1407); *see also In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("MDL courts must be given greater discretion to organize, coordinate and adjudicate its proceedings . . . .").  This inherent authority to require Mr. Schwartz to appear at hearings is vital to this Court's case-management abilities, and the failure to exercise that authority here would seriously disrupt the timely resolution of the remaining Schwartz cases.

Further, Mr. Schwartz's attempt to remain as "counsel of record" while failing to appear before this Court would be unworkable and unprecedented.  As the Court explained at the April 9, 2012 hearing, the Schwartz firm has three options with respect to each of these cases:  "(A) You dismiss the case, (B) . . . you withdraw as counsel . . . or (C) you . . . decide to proceed with the case, representing the person as counsel."  (Ex. A, 4/9/12 Hr'g Tr. at 8:4-7.)  Instead of choosing any one of these options set forth by the Court, Mr. Schwartz now attempts to select a cryptic and unacceptable fourth option – to withdraw as "co-lead counsel" but remain "counsel of record."  (Schwartz Br. [3872], at 1.)  Yet he provides no explanation as to what this fourth option (withdrawing while not withdrawing) would entail.  For example, what would his firm's role be in this MDL?  What obligations would he have to this Court, Pfizer, and to his clients?  Who will be responsible for evaluating these cases and recommending voluntary dismissal to the clients where appropriate?  Who will be responsible for providing status reports to the Court?  What will his role be if any of these cases are remanded for trial?  Who is responsible for the ongoing obligations under Rule 11 and this Court's Certification Order to ensure that there is a sufficient basis to pursue these claims?  Without answers to these and other such questions, Mr. Schwartz's proposed course of action is unmanageable.

As the Court correctly explained, "you either have to litigate the case or you have to

withdraw . . . if you think you can't litigate." (Ex. A, 4/9/12 Hr'g Tr. at 14:5-8; *see also id.* at 13:21-22 ("[I]n the world I live in, Mr. Schwartz, . . . you either dismiss cases or you litigate cases.").) Quite simply, unless Mr. Schwartz withdraws from his representation in these cases, he and his firm remain subject to this Court's inherent authority to manage the cases before it.

Moreover, other practical problems would arise from Mr. Schwartz's request "to recognize Jack W. Harang as sole lead counsel in all of their joint Neurontin cases." (Schwartz Br. [3872], at 3.) For instance, there are several aspects of these cases that have not been overseen by Mr. Harang. In particular, the Schwartz firm has been managing discovery in the MDL, and Mr. Harang has not. For instance, at the hearing, when the Court asked Mr. Harang about certain groups of cases in which discovery had not been stayed, Mr. Harang responded, "I think [Mr. Schwartz] probably needs to address it because I don't know how that category has come about." (Ex. A, 4/9/12 Hr'g Tr. at 40:8-13.) Further, Mr. Harang indicated that he has had little involvement with deposition discovery in these cases:

> The Court:   What do you see that needs to be done? How many depositions do you want to take? How long do you think those cases need to be ready to go?
> Mr. Harang: [T]rying to organize this stuff is not something I was doing. . . .

(*Id.* at 41:5-42:13.) When the Court later asked who would be taking depositions for the Plaintiffs, Mr. Schwartz responded that counsel from the Schwartz firm, Mabel and Vincent Lo, would be handling them. (*See id.* at 44:23-45:10.) Indeed, even Mr. Schwartz recognizes in his motion that "Mr. and Mrs. Lo jointly remain principally assigned only to our joint Neurontin cases alone on their dockets." (Schwartz Br. [3872], at 3.) Considering that the Schwartz firm has been overseeing deposition discovery in these cases and intends to continue to do so going forward, a supervisory attorney from the Schwartz firm must be available to appear before the Court with respect to issues that may arise.

Finally, Mr. Schwartz has provided insufficient justification for seeking to avoid future appearances before the Court. He merely claims that he is too busy with other cases. (*See* Schwartz Br. [3872], at 1 (stating that he "is now co-counsel of record in current cases involving

4

over 10,000 clients' claims worldwide").)  However, that is not a legitimate excuse.  As the First Circuit has repeatedly explained, "Most attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences."  *de la Torre v. Continental Ins. Co.*, 15 F.3d 12, 15 (1st Cir. 1994) (quoting *Pinero Schroeder v. Federal Nat'l Mortg. Asso.*, 574 F.2d 1117, 1118 (1st Cir. 1978)); *see also Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe*, 257 F.3d 58, 66 (1st Cir. 2001) ("[A]ttorneys must organize their work so as to meet the time requirements of the matters they are handling."); *Freiria Trading Co. v. Maizoro S.A. de C.V.*, 187 F.R.D. 47, 49 (D. Mass. 1999) ("[B]eing involved in another case – even a high profile case – will not excuse an attorney from following court orders in a different case.").  Mr. Schwartz and his firm voluntarily undertook to represent hundreds of clients in this MDL, and he must therefore commit the resources necessary to do so, which includes making himself available to travel to the MDL Court where these cases are pending.

For all these reasons, Pfizer respectfully requests that this Court deny Mr. Schwartz's motion to withdraw "as co-lead counsel . . . but remaining as counsel of record."

Dated:  May 16, 2012                           Respectfully submitted,

                                               SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                               By: /s/ Mark S. Cheffo
                                                   Mark S. Cheffo

                                               Four Times Square
                                               New York, NY 10036
                                               Tel:  (212) 735-3000
                                               Email:  Mark.Cheffo@skadden.com

                                               -and-

5

ROPES & GRAY LLP

By: /s/ Justin J. Wolosz
    Justin J. Wolosz
    BBO # 643543

Prudential Tower
800 Boylston Street
Boston, MA  02199
Tel:  (617) 951-7000
Email:  justin.wolosz@ropesgray.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on May 16, 2012.

/s/ Justin J. Wolosz
Justin J. Wolosz