# EXHIBIT A

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

```
IN RE:                              )
                                    )
NEURONTIN MARKETING, SALES          )
PRACTICES AND PRODUCTS              )
LIABILITY LITIGATION                )   Civil Action
                                    )   No. 04-10981-PBS
                                    )
                                    )
                                    )
                                    )
```

**MOTION HEARING**

BEFORE THE HONORABLE LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
April 9, 2012
2:00 p.m.

\* \* \* \*

CATHERINE A. HANDEL, RPR-CM, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
(617) 261-0555

```
 1   seem to be fully met.
 2            And then last year when we had -- there were some
 3   various pleadings and orders regarding dismissing cases or not
 4   dismissing cases.  I won't characterize those documents in any
 5   way other than they all exist.  That is, I issued some orders.
 6   Judge Saris issued some orders.  You filed some papers.
 7            And then what happened is after all that was done,
 8   all your cases were pending, and you came to the Court and
 9   said, Judge, I want you to stay some of these cases and you
10   identified which ones, because these are cases that we think
11   we, the Schwartz law firm, don't want to pursue anymore.  We
12   think we want to either withdraw as counsel.  We want to
13   dismiss them.  So, we don't want to put ourselves or the
14   defendants or the plaintiff to the burden of further
15   litigation.  Give us a little bit of time.  Give us some time
16   without the litigation, staying the case, to talk to them, to
17   see whether they agree with whatever we might suggest.
18   Perfectly reasonable request, I thought, and I said fine, and
19   I did that, and all I asked of you was to report to me every
20   30 days as to the status of this.
21            So, what I understood from what the request was and
22   from what I would understand from all these other cases and
23   handling cases, that you would write a letter or otherwise
24   communicate orally with the client, explain to them the
25   situation, have a discussion.  It might entail one
```

```
 1   conversation.  It might entail several.  It might be one
 2   meeting.  It might be several.  And then you would reach a
 3   conclusion and that conclusion will be one of three things:
 4           (A) You dismiss the case, (B) you withdraw the
 5   case -- you withdraw as counsel, rather, or (C) you would
 6   decide to proceed with the case, representing the person as
 7   counsel.
 8           From my perspective, any one of those three results
 9   would be fine.  They would be the judgment that you and your
10   clients made after conversation about what to do, and in any
11   one of those three circumstances, the stay would be lifted and
12   the cases -- in one form or another, something would happen to
13   the cases.
14           But what never occurred to me would happen is that
15   almost a year later, they would still be stayed and that --
16   and I've gone over this pretty carefully, all the various
17   status reports that your firm has filed recently in response
18   to my orders and it doesn't seem that there's been that much
19   communication until recently.  So, I'm just at a loss as to,
20   frankly, what to do to move these cases forward on any one of
21   those courses.
22           MR. SCHWARTZ:  May I respond?
23           THE COURT:  Yes.
24           MR. SCHWARTZ:  First of all, your Honor, you're
25   absolutely correct.  In 58 years, 53 of it in private practice
```

1  representing plaintiffs exclusively, we don't -- I have to go
2  a step further.  We don't make money until the check clears,
3  which is usually after trials and appeals.
4        Now, I'm not going to go into the various cases that
5  we've had, the classic one being *Chick Kam Choo vs. Exxon*,
6  where we tried it 22 years after the case was originally filed
7  in federal court.  Ten years later the U.S. Supreme Court
8  reversed the Fifth Circuit and my late cousin, who ruled to
9  dismiss us under the anti-injunction statute, which *Chick Kam
10 Choo* rode on, which was brought up the first day of the
11 Medicare relief --
12       THE COURT:  I get the point that it took a long time.
13 Some cases take 22 years, but let me ask you this, Mr.
14 Schwartz.
15       MR. SCHWARTZ:  That's the --
16       THE COURT:  During the 22 years that that case was
17 being litigated, how long was it -- was it stayed for the
18 first 21 years and then you litigated it in the last year?
19       MR. SCHWARTZ:  No.
20       THE COURT:  Right.  In fact, you were fighting it
21 most of the 22 years.
22       MR. SCHWARTZ:  It was in the state appellate
23 courts --
24       THE COURT:  Right.
25       MR. SCHWARTZ:  -- the Fifth Circuit twice and the

```
 1              MR. SCHWARTZ:  That's separate, and the nine.
 2              Now, today this morning in my office we got --
 3              THE COURT:  So, you have three groups:  23 you say
 4    you want to litigate.
 5              MR. SCHWARTZ:  34 --
 6              THE COURT:  34 that are stayed.
 7              MR. SCHWARTZ:  Nine --
 8              THE COURT:  Nine that are --
 9              MR. SCHWARTZ:  Out of those 34, nine --
10              THE COURT:  What's the nine?
11              MR. SCHWARTZ:  We subtract one each today because --
12    and I read into the record -- I'll read into the record the
13    names of the two --
14              THE COURT:  What are the nine cases?  There are nine
15    cases you want to litigate and there are nine cases that are
16    stayed?
17              MR. SCHWARTZ:  I don't think -- right now, from our
18    meeting Saturday, that we want to litigate, the 23.
19              Now, some cases -- one case that we originally valued
20    very highly, Mr. Harang took the deposition with Mr. Steve
21    Malone and it's probably one that Mr. Cheffo mentioned to Ms.
22    Lo after the hearing last Friday, the 30th, that we've given
23    away some good cases.  That case was one of our top three
24    choices until we learned, not in the deposition that they took
25    -- they may have known it and we didn't.  It should have been
```

```
 1   easily known.  It's public record.  That he -- that the son
 2   made a substantial six -- high six-figure malpractice
 3   settlement with the doctor that prescribed the Neurontin.
 4          Now, how that cuts both ways -- it's clearly a credit
 5   against any verdict from -- and may have other confounders in
 6   there, but there's a case that we -- I valued as one of the
 7   three best cases all along, along with Pastine and Mr. Girard.
 8          THE COURT:  But I'm not evaluating cases.
 9          MR. SCHWARTZ:  I understand.  I'm just saying that we
10   want to try these and we want --
11          THE COURT:  So, the nine cases -- you have 23 you say
12   you want to try.  You have nine cases -- 34 cases that you say
13   are stayed, that are subject to the various stayed orders --
14          MR. SCHWARTZ:  We have to take one away from each of
15   those, because today we're filing a motion to dismiss, not
16   withdraw, Shanna Ericsson-Harkness -- this is one of the 34.
17          THE COURT:  So, the 34 becomes 33.
18          MR. SCHWARTZ:  And Wanda Nichols becomes -- one of
19   the nine becomes now eight.
20          THE COURT:  What do you want to do with the other
21   eight?  Are those cases -- in the world I live in, Mr.
22   Schwartz, that you either dismiss cases or you litigate cases.
23          MR. SCHWARTZ:  Well, you named the correct third
24   alternative in the transcript and again today, your Honor.
25   The third is the ethical constraint we have.  We can't just
```

```
 1   dismiss a case because it's with prejudice.
 2           THE COURT:  Right.  You don't have authority to
 3   dismiss a case.  I understand that.
 4           MR. SCHWARTZ:  Right.
 5           THE COURT:  So, then you either have to go to the
 6   client -- you either have to litigate the case or you have to
 7   withdraw if you want to ethically -- if you think you can't
 8   litigate.
 9           MR. SCHWARTZ:  Correct.
10           THE COURT:  So, my question is:  In those eight
11   cases, are those cases you want to withdraw from or are those
12   cases you want to litigate?
13           MR. SCHWARTZ:  As of right now, the withdrawal and --
14   withdrawal, not litigate, barring unforeseen last-minute
15   developments or late --
16           THE COURT:  So, you have 34 cases that became 33
17   cases today that you're either going to obtain dismissal or
18   you want to withdraw from.  That's one category.
19           MR. SCHWARTZ:  -- withdraw -- either obtain dismissal
20   if the client consents.
21           THE COURT:  Right, or withdraw.  That's one category.
22           You have eight cases that are not stayed that you
23   wish to do the same thing with.
24           MR. SCHWARTZ:  The Los are evaluating those as we
25   speak and over the weekend to give a --
```

1      THE COURT: Well, I'm not interested in -- the time
2  for evaluation has passed. The moment is now to tell me are
3  those eight in the bucket as of right now at this moment,
4  okay, in the bucket of, Judge, I want them stayed because --
5  or I want them in the box of I'm thinking we want to withdraw.
6      MR. SCHWARTZ: We do want them stayed for final
7  investigation, because the Los are very -- by their ancestry
8  and nature have two assets that I don't have. One is immense
9  patience --
10     THE COURT: Based on their what?
11     MR. SCHWARTZ: Their --
12     THE COURT: Based on their --
13     MR. SCHWARTZ: They're not Chinese -- let me say
14  this:
15     One is from Hong Kong, born there. One is from
16  Macau. Macau is a Portuguese colony.
17     I've always treated them as People's Republic of
18  China citizens first native born. They are not -- they are
19  American citizens by virtue of -- not birth right, but
20  following the immigration procedures. They have two -- one
21  has been with me twelve years, one ten. They have immense
22  patience that I don't have in dealing with some of these
23  clients who would call weekly and want to talk an hour or two
24  and make repeated -- I'll use the phrase Chinese water
25  torture. That's maybe not politically correct today, but

```
 1    can explain to you what those are.
 2            MR. HARANG:  I'm sorry, that one skipped me, your
 3    Honor.
 4            THE COURT:  So, as I understand it, there are three
 5    categories of cases that you and Mr. Schwartz have in this
 6    MDL.  One is the stayed cases.  That's what we've been talking
 7    about now.  34 cases stayed, now down to 33 at the moment
 8    because of one dismissal filed today.  That's what we just
 9    finished discussing.
10            There's a second category that I was talking to Ms.
11    Lyon about a minute or two ago of 23 cases.  Those are cases
12    that you haven't sought to stay.  And that's fine.  And those
13    are cases that some amount of deposition discovery has taken
14    place in.  You heard what she had to say about --
15            MR. HARANG:  That's primarily the plaintiffs and the
16    prescribers and some of the -- some of the representatives.
17            THE COURT:  Right.  Some of the prescribers.
18            And then the third category is the category that Mr.
19    Schwartz indicated are cases in which they're not stayed, but
20    you and Mr. Schwartz have come to the conclusion that you
21    think you would like to either dismiss or withdraw, but you
22    have to talk to the plaintiffs.  That group of nine is now a
23    group of eight because apparently today there was a
24    stipulation of dismissal filed as to one.  So, I call it the
25    group of eight.
```

```
 1            They're not in the group of 23 because you and Mr.
 2   Schwartz aren't thinking about wanting to litigate them and
 3   not as much has happened with those group of eight as the
 4   group of 23, but they're not in the group of 34 because they
 5   haven't been stayed.
 6            So, my question is:  What do you want me to do about
 7   those?  If you want to talk to Mr. Schwartz, that's fine.
 8            MR. HARANG:  I think he probably needs to address it
 9   because I don't know how that category has come about.  I know
10   that there are a certain number of cases that we consider to
11   be not wanting to go forward with, but I don't know how that
12   nine got carved out.  I imagine it got carved out of what is
13   now the 23 or 24.
14            THE COURT:  Right.
15            MR. HARANG:  But how that decision --
16            THE COURT:  I'll come back to that in a minute.
17            As to the 23, what I hear Pfizer saying is we're done
18   deposing the plaintiffs.  We're done deposing a lot of the
19   sales reps and --
20            MR. HARANG:  Prescribers.
21            THE COURT:  I'm sorry, not sales reps.  I'm done
22   deposing a lot of the prescribers, but we have ten or twelve
23   prescribers left.  That won't take that long to depose the
24   prescribers, a reasonable period of time.  Various judgments
25   of what's reasonable might differ, but, nonetheless, a
```

```
 1    reasonable period of time.  And those prescribers will be done
 2    and then that group of cases, subject to the sales reps, is
 3    ready to go.
 4             MR. HARANG:  Yes, your Honor.
 5             THE COURT:  What do you see that needs to be done?
 6    How many depositions do you want to take?  How long do you
 7    think those cases need to be ready to go?
 8             MR. HARANG:  That part of doing that -- trying to
 9    organize that stuff is not something I was doing.  I have
10    looked at it some and the -- I know --
11             THE COURT:  So, who bears that responsibility?
12             MR. HARANG:  Who bore the responsibility.  Tray was
13    handling the coordination of those depositions, your Honor.
14             THE COURT:  Okay.
15             MR. HARANG:  And so --
16             THE COURT:  Are you and Mr. Schwartz the same law
17    firm or a different law firm?
18             MR. HARANG:  Different law firm.  I have an office in
19    his law firm, but my primary office is Louisiana.
20             THE COURT:  I see.  You have your own separate
21    practice?
22             MR. HARANG:  Yes, your Honor.
23             THE COURT:  I see.
24             MR. HARANG:  So, the answer is that I can't -- I
25    can't give you an answer, but I can give you an answer -- in
```

| | |
|---|---|
| 1 | THE COURT: Well, what do you need to do that and how |
| 2 | long would it take? |
| 3 | MR. SCHWARTZ: I think Mr. Cheffo and I have |
| 4 | discussed that before Mr. Harang got here today, to make |
| 5 | available for those -- we can ask from him and Jack London and |
| 6 | anybody that took them and review them and -- you know, we |
| 7 | don't want to plow the same field twice. |
| 8 | MR. HARANG: The defendant has them all. |
| 9 | MR. SCHWARTZ: Okay. Mr. Cheffo has them all, as |
| 10 | Jack points out. Let us see them and -- you know, depends on |
| 11 | who took them. I've often relied on the deposition. We're |
| 12 | relying on their perpetuation and -- from the main three |
| 13 | experts in the whole case, the whistler blower and the other |
| 14 | two. So, why would we not on these? We're not saying we're |
| 15 | bound by it, but we would, obviously, review them. As Mr. |
| 16 | Harang pointed out, they at least will shorten the deposition. |
| 17 | I always get prior depositions of doctors -- |
| 18 | THE COURT: How many depositions have happened since |
| 19 | March 2011 in these cases? |
| 20 | MR. SCHWARTZ: Mabel Lo gave you -- because she's in |
| 21 | better knowledge. I think I saw the number 68 or -- maybe |
| 22 | opposing counsel, Ms. Lyon, can tell us. |
| 23 | THE COURT: Who is going to take these depositions on |
| 24 | plaintiff's side? To the extent they're -- to the extent you |
| 25 | need to take a sales rep's deposition, who will take the |

```
 1   deposition?
 2           MR. SCHWARTZ:  Either Vincent or Mabel Lo, and I'm
 3   interviewing lawyers now to replace Mr. Stegall, too, but, of
 4   course, to break in a lawyer cold in a case is not the best,
 5   even though he's done Neurontin.  I think he's done ten other
 6   pharmaceutical cases.  It helps none in Neurontin.
 7           THE COURT:  So, not the two of you.  Mabel Lo,
 8   Vincent Lo or somebody else in the firm?
 9           MR. SCHWARTZ:  Yes.  They're principally assigned to
10   do these cases.
11           MR. HARANG:  Depends.  There may be some that I'm
12   going to take.
13           THE COURT:  All right.
14           MR. CHEFFO:  Your Honor, I want to address a few
15   other points.  I think there's also a little bit of a
16   disconnect here.  We've now talking about sales reps, but I'm
17   going to address that last.
18           First is, as much as I think the points of delay and
19   I think the word "egregious" are accurate, it would be
20   inconsistent with my client's interest if I objected to the
21   fact that they say after 30 days, we're going to dismiss
22   cases.  So, while I think it's gone too late, just to be
23   clear, I certainly would not and do not object to the
24   dismissals.
25           I think with respect to the withdrawal --
```

1  it's that cause-and-effect argument he's making.  I think the
2  argument he's making is -- he's contrasting with Finkelstein
3  the cases went like clockwork and all the depositions were
4  noticed and done, and with your law firm that hasn't happened,
5  and that lots and lots of cases were just dismissed.  You
6  started out with 225.  Now we're down to 23 that you indicate
7  you want to proceed on and of those 23, no sales rep
8  depositions have been taken yet, and two prescribers that your
9  firm noticed and a number more that Pfizer has noticed.  And
10 so, I think what he's suggesting is not much has been done,
11 and that given that -- I think the forfeiture argument -- I'm
12 not saying I agree with it, but I think -- just to make it
13 clear, I think the forfeiture argument is -- goes like this:
14         The Court says schedule for depositions in these
15 cases.  It said do this number of depositions every month
16 until you're done.  I think Judge Saris and I made fairly
17 clear that our expectation was to finish all these cases no
18 later than December 31st of 2011.  I don't think that was the
19 first end date that we articulated.  I think we had
20 articulated earlier end dates, perhaps with more aspiration,
21 but -- and that given the amount of time that's gone on and
22 still we come back here, that in that process he's saying you
23 forfeit.  I'm not saying I adopt that argument, but I think
24 that's what he's saying.
25         There is a measure of frustration that I have that I

Case 1:04-cv-10981-PBS   Document 3877-1   Filed 05/16/12   Page 16 of 18

56

just want these cases to happen.  I'm happy to do whatever needs to be done that you people present me to resolve when I need to resolve things, and I'm sure Judge Saris -- I speak for her and I'm sure she would do the same.  That what's frustrating is to continually come back and feel that -- what I'm hearing is, Judge, we're getting rid of a bunch of our cases, but we have some cases we really do want to do and we really will do them in the future, and I feel like I've heard that song before.  That's what frustrating.  I just want to see the cases go forward.  I think the plaintiffs are entitled to that.  Defendants are entitled to that.

MR. SCHWARTZ:  We'll pick our candidates, your Honor.  We'll have two or three more by the end of the week and our five of the 23 -- at least we'll know for sure.  Mr. Harang has been in a trial all last week and hasn't had a chance to hear our reasoning on those, on that evaluation.

THE COURT:  Right.  All right.

So, I'm going to take this under advisement.  I'll issue a short order shortly addressing -- I'm going to address all the categories of the cases.  I don't view this as just the motion with respect to the stayed cases.  I want to get on top of all these cases.

I think that -- Mr. Harang, one thing you said has given me great hope and you've reminded me of something that I sometimes forget and I thank you for reminding me.  And that

```
 1   is that it does seem that making people appear in front of me
 2   motivates things.  It seems to kindle fires.
 3          And so, you can anticipate that one aspect of
 4   whatever it is I do is I'm going to have another hearing.
 5   You're reminding me that at the beginning of this MDL before
 6   -- I don't recall either of the two of you coming to these
 7   particular hearings regularly and I think it was before Mr.
 8   Cheffo might have been involved and maybe he came to some of
 9   them, but I used to have a hearing every month and it was, at
10   least from my perspective, pretty effective at keeping things
11   on track.  So, I may have further hearings.  If -- or further
12   status conferences to make sure that whatever remains, remains
13   on track.  That will address the three categories of cases.
14          Mr. Cheffo filed yesterday, I think, his submission
15   that I invited regarding a prior hearing.  I will tell you,
16   I'm inclined to award something.  I haven't had a chance to
17   read carefully what his submission is, but I'm -- if you wish,
18   Mr. Schwartz --
19          MR. SCHWARTZ:  I would appreciate it, your Honor.
20          THE COURT:  Sure.
21          MR. SCHWARTZ:  Because I, you know --
22          THE COURT:  That's fine.  You don't have to explain
23   why.  You don't need a --
24          MR. SCHWARTZ:  No.  I want to.
25          The fact of my brother-in-law's death is not any
```

```
 1    basis for that.  He happened to --
 2              THE COURT:  I'm sorry.
 3              MR. SCHWARTZ:  -- young man, died on -- and the
 4    funeral was the 26th, the Monday preceding the Friday hearing.
 5    The burial was Wednesday, but the important thing was that I
 6    and a co-counsel who's having scheduled surgery today in
 7    Houston, the same two lawyers that tried Chick Kam Choo in 19
 8    -- in 2000, the case I referred to that went to the Supreme
 9    Court, the Fifth Circuit twice, the Texas Supreme Court --
10              THE COURT:  Yes, I recall.
11              MR. SCHWARTZ:  He and I were retained on the 12th in
12    a case involving valuable Thailand artifacts and we had some
13    addigation cases in Thailand.  That's our connection.  Plus,
14    we were referred by the widow of a New York Giants' football
15    player of some fame.  He played football with in college
16    and --
17              THE COURT:  If you're trying curry favor with me,
18    that's not --
19              MR. SCHWARTZ:  No.  No.  No.  This is 19 -- this is
20    1950.  Y.A. Tittle, which you've never heard of --
21              COURT REPORTER:  I'm sorry, say that again, please.
22              THE COURT:  Y.A. Tittle.
23              MR. SCHWARTZ:  T-i-t-t-l-e.  He was an end on that
24    team.
25              We got retained involving these artifacts and began
```