IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


IN RE:                              )
                                    ) CA No. 04-10981-PBS
NEURONTIN MARKETING, SALES PRACTICES,) Pages 1 - 52
AND PRODUCTS LIABILITY LITIGATION    )
                                    )



MOTION HEARING

BEFORE THE HONORABLE LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE




United States District Court
1 Courthouse Way, Courtroom 24
Boston, Massachusetts  02210
May 23, 2012, 2:58 p.m.




LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 7200
Boston, MA  02210
(617)345-6787

1    A P P E A R A N C E S:

2

     FOR THE PLAINTIFFS:
3

          NEWTON B. SCHWARTZ, SR., ESQ., 1911 Southwest Freeway,
4    Houston, Texas, 77098.

5         JACK W. HARANG, ESQ., 3500 N. Hullen Street, Metairie,
     Louisiana, 70002.
6

7    FOR THE DEFENDANTS:

8         MARK S. CHEFFO, ESQ. and KATHERINE A. LYON, ESQ.,
     Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times Square,
9    New York, New York, 10036.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

8b2f87da-5574-49d1-82f3-0bc4c1ff6067

1          P R O C E E D I N G S

2          THE CLERK:  Today is May 23, the case of In Re:

3     Neurontin, Civil Action 04-10891, will now be heard before this

4     Court.  Will counsel please identify themselves for the record.

5          MR. SCHWARTZ:  Newton Schwartz for the plaintiffs,

6     your Honor.

7          MR. HARANG:  Jack Harang for the plaintiffs.

8          MR. CHEFFO:  I'm Mark Cheffo, your Honor.

9          MS. LYON:  Katherine Lyon for Pfizer.

10         THE COURT:  All right, please be seated.  So let me

11    just summarize where I think things are.  As I see it, there

12    are the following categories of cases:  We have those cases

13    that were never stayed that were brought by the Schwartz law

14    firm which you wish to proceed with and complete the discovery.

15    There are, I think, twenty-three of those cases, and the

16    plaintiffs and the defendants filed a joint status report

17    proposing similar but not identical paces at which depositions

18    should be taken.  That's one category.

19         The second category are the category of cases that

20    were originally stayed pursuant to a series of requests between

21    May and August or September of 2011 filed by Mr. Schwartz's law

22    firm for the purpose of providing a period of time to allow

23    them to determine whether they wished to withdraw, whether they

24    wished to dismiss voluntarily, or whether they might decide to

25    want to press the case.  As to those categories of cases, those

1   stayed cases rather, at this point I think they fall into the

2   following categories:  There's one case which in the report it

3   indicates that plaintiff's counsel wishes to in a sense lift

4   the stay, although no request has been made to lift it, and

5   move it to the category of cases to be litigated.  There are

6   two cases, I believe, in which the status report indicates that

7   plaintiffs' counsel will either move to withdraw or file a

8   stipulation of dismissal, but that action hasn't occurred yet.

9   There are a series of cases -- I don't recall exactly how many

10  but quite a number -- which have been dismissed, and therefore

11  those individual cases are over; a stipulation of dismissal was

12  filed.  And then there are another group of cases in which

13  Mr. Schwartz's law firm has filed a motion to withdraw.  It's

14  filed it on its own behalf and I think on behalf of -- I'm not

15  sure if it was local or originating counsel, but Mr. Harang is

16  not mentioned other than to say, "We've asked him whether he

17  wants to do it, and he hadn't yet indicated whether he intended

18  to or not."

19          So the first question I simply have as to those cases,

20  Mr. Harang, are those cases in that category ones you wish to

21  proceed with yourself without Mr. Schwartz, if I were to allow

22  that motion, or are those cases in which you too are seeking or

23  going to seek to withdraw?

24          MR. HARANG:  Your Honor, I think that part of that

25  answer comes is that I'm not sure that I'm enrolled in those

1    cases to withdraw from them, okay?

2          THE COURT:  I see, okay.  I didn't go and look.

3    That's a good question.

4          MR. HARANG:  That was why the no response came.

5          THE COURT:  Okay.

6          MR. HARANG:  And to which one of those cases and how

7    they stand, if I were to enroll in those cases, I really have

8    not had a chance to look at those in that perspective, your

9    Honor.

10         THE COURT:  I see.  And as you sit here now, do you

11   know whether or not you have an appearance in those cases?

12         MR. HARANG:  My understanding is that I do not.

13         THE COURT:  Okay.

14         MR. HARANG:  And that was one of the glitches that

15   came, and one of the questions that was raised in the earlier

16   part of this week was that if you had to file a motion if you

17   wanted to withdraw from those cases, and then they said, well,

18   you may have to file an admission to file a withdrawal; and I

19   said there's something about that seems inherently illogical,

20   that if I'm not in them anyway, I may not have to withdraw from

21   them.

22         THE COURT:  So to state the obvious, if all people who

23   have an appearance on behalf of a plaintiff have filed a motion

24   to withdraw, and if the Court allows the motion to withdraw and

25   no substitute counsel has appeared, I view that person as

1   pro se.  So if you don't have a notice of appearance in a case,

2   then I can't see, absent something Mr. Cheffo would tell me,

3   why you would have to withdraw if you haven't appeared.  The

4   only lawyers ordinarily who withdraw are those who have

5   appeared, unless I'm missing something.

6        MR. HARANG:  I believe that was my appreciation of it.

7   And these cases are cases that had been reviewed as far as the

8   meritorious condition of the cases, and I don't think that I

9   have any different position from that.  I just was --

10        THE COURT:  You're just not going to file a motion to

11   withdraw something you haven't filed in the first place.

12        MR. HARANG:  There was a procedural issue there that

13   seemed like I was chasing my tail.

14        THE COURT:  Okay.

15        Do you know, Mr. Cheffo, whether or not in those cases

16   in which Mr. Schwartz's office filed to withdraw, whether or

17   not Mr. Harang has an appearance?

18        MR. CHEFFO:  The answer is, I don't know specifically,

19   but I don't think that he has, but maybe I can just take a step

20   back for a minute because I think the way you characterized it

21   is exactly accurate.  I would say, and I don't want to jump

22   ahead, but we've actually, there has been some significant

23   developments or what I perceive to be significant developments

24   in the last few days that might, you know, help us get a little

25   bit quicker to where I think your Honor wants to be.

1          THE COURT:  All right, so I'll hear you.

2          MR. CHEFFO:  And then Mr. Schwartz I know probably

3     would want to speak to this.  So I think the way you

4     characterized the cases is accurate.  There was, you know, case

5     noted dismissed, those are gone.  There's the cases that were

6     stayed.  There are approximately forty of them, and of those, I

7     think there was about fifteen that were dismissed, and what we

8     saw in the last day or two was a flurry of motions to withdraw

9     with respect to about twenty-five of those.  I think you asked

10    the same question that I had for Mr. Harang, which is, you

11    know, "Are you in those cases?  What's your intention?"  So I

12    agree, I don't think he's formally there, but, you know, I

13    think that's true for all of the cases, so I guess there is a

14    question of then kind of "What are you doing here if you're not

15    in any cases?"  So if his position is, "I'm not in and I'm just

16    monitoring this litigation," I don't mean to be facetious, but

17    at some point we have to figure out what his role is or is not

18    because my position would probably be different with respect to

19    whether the cases are pro se, whether they should be remanded

20    as pro se.  If Mr. Harang says, "Well, no, I'm going to

21    represent all these people," then --

22          THE COURT:  Let me ask it this way, Mr. Harang:  In

23    those cases in which Mr. Schwartz's law firm is seeking to

24    withdraw, or perhaps has already withdrawn, if they are

25    remanded as pro se cases to the originating courts, is it your

1    present intention or at present anticipation to file a notice

2    of appearance in any or all of those cases?

3               MR. HARANG:  In those cases, your Honor, the ones that

4    we were just talking about, the ones that have been reviewed

5    and considered to have some difficulties in the cases --

6               THE COURT:  The ones that are subject to motions to

7    withdraw.

8               MR. HARANG:  -- I don't have any intention -- my first

9    blush, okay, is that I have no intention to intervene into

10   those cases or to -- and so wasn't a signing-off attorney in

11   the cases -- to file a notice of appearance.  And you heard the

12   last time we were here, one of the reasons that that had

13   happened is, yes, I was monitoring.  My job is to try these

14   cases.  The discovery was to be done, and then I was to take

15   over that part of it.

16              Now, that answer does not necessarily go to the next

17   part I think that you're going to hear, is that as to the

18   twenty-three or twenty-four cases --

19              THE COURT:  No, the twenty-three stand in a different

20   category.  They weren't stayed and --

21              MR. HARANG:  Yes.  I think Mr. Schwartz is planning on

22   withdrawing from those also.

23              THE COURT:  Oh.

24              MR. CHEFFO:  And just for clarification, so I think

25   we're generally on the same page, as they say.  I'm really just

1    reading from -- and I haven't gone back and checked -- this is

2    Mabel Lo's e-mail to Mr. Harang that we were copied on, and she

3    says, "Attached are the original complaints."  Now, this goes

4    to the stayed cases filed in Massachusetts where you're listed

5    as lead or local counsel on the complaints.  So I do think that

6    there's some reference to Mr. Harang on the complaints, right?

7             MR. HARANG:  Exactly.  Yes, that's what I just said.

8    It was on the complaint, yes.

9             MR. CHEFFO:  Well, I mean, that's usually --

10            THE COURT:  But did you sign the --

11            MR. HARANG:  But the answer to the question is that,

12   no, I don't have any intention in intervening or enrolling in

13   those cases that have been moved --

14            THE COURT:  Well, when you say your name is on the

15   complaint, on the signature line, are you one of the lawyers

16   listed at the end of the complaint?

17            MR. HARANG:  Yes, your Honor.

18            THE COURT:  I see.  So that might -- I'd have to go

19   back -- that might constitute an appearance.

20            MR. HARANG:  Some type of an appearance, that could,

21   your Honor, but I don't believe that --

22            THE COURT:  Any other appearance was filed?

23            MR. HARANG:  -- any other formal appearance or

24   requesting appearance before the Court has been made.

25            THE COURT:  All right.

1          MR. CHEFFO:  And I raise it really not to cause

2    problems, just the opposite.  I mean, to the extent that we're

3    going to have to provide notice to people, you know, I think

4    you'd want to do this once; and if Mr. Harang was on the papers

5    and if his intention is to withdraw from those --

6          THE COURT:  That ship might have sailed.

7          MR. CHEFFO:  Sorry?

8          THE COURT:  That ship might have sailed, only during

9    this litigation but --

10         MR. CHEFFO:  Well, that's fair, but at least notifying

11   these twenty-five or so people.

12         THE COURT:  Yes.  So we want to do that once, we want

13   to do it right, we want to tell them one time all of the

14   lawyers that were representing them; if all of them wish to

15   withdraw, then tell them of that fact and give them an

16   opportunity to object, if they wish, and do that only once, so

17   we need to clarify that.

18         MR. CHEFFO:  Exactly, and then to the extent that, you

19   know, the Court will allow me, we can come back because I have

20   some thoughts about, you know, how to get us to where I think

21   your Honor wants to be is resolution; you know, lawyers or not,

22   pro se, and ultimately remanded or dismissed cases, so we can

23   talk about that.

24             And the only thing I wanted to highlight again for the

25   Court was, Mr. Harang is correct.  Mr. Schwartz and I have been

1    talking the last few days, and I think it's fair to say that,

2    you know, the Court's emphasis on activity or requiring us to

3    kind of all parties to get together has been helpful.

4    Certainly we've been talking.  I think Mr. Schwartz will likely

5    tell you he's taken a critical look at the remaining twenty-two

6    cases, and what he's told me and I think he'll tell the Court

7    is that after looking at that, his intention is to withdraw

8    with respect to those twenty-two.  So eventually his view --

9    and I don't mean to be speaking for him -- I think he can get

10   up and do this himself -- but his view would be to either talk

11   to those people and find out in short order whether they're

12   going to dismiss, and, if not, he would move to withdraw, so

13   that after some period, whether it's 30 days, whether he asks

14   for a little more time, he and his firm and Mabel and Vincent

15   will extricate themselves from this litigation.

16        THE COURT:  As to those twenty-three cases, what's

17   your view, Mr. Harang?

18        MR. HARANG:  I'm sorry, your Honor?

19        THE COURT:  As to the twenty-three cases that until

20   now I thought Mr. Schwartz wanted to pursue, those twenty-three

21   never having been stayed up to now, it appears that

22   Mr. Schwartz might wish to either dismiss those cases if the

23   client agrees or withdraw if the client doesn't wish to

24   dismiss.  Is it your view you would like to continue with those

25   cases or not?

1        MR. HARANG:  That again is at first blush "yes," your

2   Honor, and in talking to --

3        THE COURT:  Yes, you'd like to continue?

4        MR. HARANG:  Yes, and talking to the local lawyers, I

5   don't know -- this will come as quite a surprise to them -- I

6   don't know what their position is as far as --

7        THE COURT:  So let me tell all of you one thing I was

8   thinking about with respect to the twenty-three cases before

9   you told me this, because when I came in I was assuming that

10  the twenty-three cases were twenty-three cases that

11  Mr. Schwartz wished to press and Mr. Harang wished to press,

12  based on the fact that never before have those twenty-three

13  cases been subject to a motion to stay by Mr. Schwartz.

14  Certainly at the hearings I had in March I had no indication

15  that those were cases that were thought to be not meritorious

16  or cases in which counsel did not wish to press them.  So

17  that's why I asked for the submission from both of you

18  regarding how to proceed, and I'll tell you now what I was

19  thinking about and what I remain thinking about to the extent

20  that those cases remain live cases.  I'm not inclined to go

21  quite with the format that you each -- you each suggest the

22  same format with a different pace; that is, eight to ten

23  depositions a month or ten to twelve.  That format was one that

24  you may have borrowed from me.  I imposed that format earlier

25  in this litigation.  That's the format at first blush I would

1   ordinarily impose, as I did, because it would leave to all of

2   you to figure out what order to do all the depositions in and

3   allow you to work all that out, and my first instinct is to

4   leave that to the lawyers.  There's a lot of scheduling issues,

5   even in a single case, but let alone in a multitude of cases as

6   arises here.  But I am cognizant of the years having rolled by

7   in this litigation.  Not all of those seven years that I have

8   been involved in this litigation involved discovery with

9   respect to the personal injury cases.  For a substantial period

10  of time, you were all or your predecessors were all occupied

11  with the scientific discovery on this side of the case, and

12  obviously they were doing different discovery on the sales and

13  marketing side, and that was appropriate to do first, and then

14  we began looking at the individual cases to do.  But,

15  nonetheless, we are here long after even Mr. Boone's cases are

16  done, and those cases were not the first out of the box.

17          So I'm not inclined to do that kind of structure.

18  What I'm inclined to do is the following:  There were

19  twenty-three cases, and I'm inclined to say we're going to do a

20  certain number of depositions every month.  We're starting with

21  the first case alphabetically, and you will do -- if, for

22  example, I selected fifteen depositions a month -- that was a

23  number that came to my mind, but I would want to hear from all

24  of you, A, as to the number, and, B, as to what I'm laying out

25  for you, but this is my inclination at the moment -- to say you

1    will do, say, fifteen depositions a month.  Starting with the

2    first case in the list alphabetically, you will do all the

3    depositions in the first case, say, in June.  If my memory

4    serves, I think the first case had maybe five or six

5    depositions in it, so you would do those.  You would do all of

6    the depositions in the second case because that might take

7    you -- there were two in the first case, five in the second

8    case, four in the third case, so that would put you at eleven.

9    The fourth case had -- you would do four depositions.  That

10   would take you to fifteen if I set the level at fifteen.  You'd

11   do those in June.  That means in July 1 or in July, the Court

12   could remand the first three cases, and we would proceed in

13   July to conclude the depositions in the fourth case.  Having

14   done some, the first in June but not all of them, you would run

15   through -- the fifteen would take you -- finish that case and

16   we'll go to the next case.  So every month you'd do fifteen.

17   You'd start alphabetically in the first case and you'd run

18   through them, and every month we would finish however many

19   cases we finished, and we would peel them off that way and send

20   them on their way.

21          I was thinking of one scheduling caveat to that.  I

22   recognize that the witnesses who remain to be deposed by and

23   large are the sales representatives and the doctors.  The

24   doctors are not within any of your controls, and doctors in my

25   experience are generally somewhat difficult to arrange

1   depositions with.  Sales representatives are perhaps within

2   Pfizer's control, but these people may not be working for

3   Pfizer anymore, and they still may present scheduling

4   difficulties.  So I would be open to the possibility that you

5   could substitute.  That is, in June you're going alphabetically

6   through, say, the first four cases.  If there's somebody in the

7   first case you reasonably, because of scheduling issues, can't

8   get to, then you could reschedule that person, provided you did

9   it within a certain amount of time.  I was thinking 30 or 60

10  days.  And as long as, A, you can substitute them, you do

11  somebody who's further ahead in the schedule, we'll be done in

12  June.  So you do the fifteen in June, or whatever number I

13  select, and then you can defer that person.  We wouldn't then

14  be able to remand the case in July, but we would know that it

15  would be done within another 30 or 60 days.  After that period

16  of time, if the person can't be had, they can't be had.  And

17  absent relief from the Court that somebody is intentionally

18  making them unavailable or not cooperating in good faith in the

19  scheduling, the opportunity to take that person's deposition is

20  passed, passed; and I would be then saying that in this Court's

21  view, there was a fair and reasonable opportunity to take the

22  deposition, it was done, not it's a deferral to take that

23  person later.  You may persuade the judge who presided over the

24  trial to do it later, and that would be within that person's

25  discretion to revisit the decision, obviously, but the

1    presumption, at least from my perspective, would be, it

2    wouldn't be because there is not going to be an incentive to

3    just pass everyone by and kick the can down the road.  The

4    purpose is to do these common depositions here.  It's a

5    somewhat difficult -- it imposes somewhat of a burden on the

6    parties to do it, but it seems to be a reasonable way to assure

7    that it will happen and that we will be dispatching cases

8    regularly, as opposed to waiting till the very end of the

9    process to dispatch them all.  That's what I came out thinking

10   about, wanting to hear your responses, both to the format and

11   to the number to do every month.

12        MR. CHEFFO:  I may surprise you as being a defendant

13   in saying I agree, your Honor.  I think that's a good approach,

14   I do.  I think that we're at a point in this litigation that we

15   need to know which cases are going to survive, and if cases are

16   going to complete, they need to be completed and remanded so

17   that we can address them.  So from our perspective, you know,

18   particularly I think you hit some of caveats, you know, of

19   scheduling and things, there's a little bit of a safety valve,

20   if you will, if someone is on vacation or sick, but I think

21   your proposal makes a lot of sense.  You know, I ultimately

22   think the key question that Mr. Harang is going to have to

23   answer is, are these going to be represented cases or not?

24        THE COURT:  Well, if they're unrepresented cases, then

25   I'm not going to impose the schedule.  If all plaintiffs'

1    counsel withdraw from these cases, the twenty-three, then it

2    would be my intention to treat them the way I've treated all

3    other pro se cases in this litigation, which is, we would then

4    remand them and we wouldn't do this schedule.  Or if in the

5    course of the schedule the twenty-third, you know, partway

6    through it before we got to number twenty-three or number

7    eighteen the same event transpired, then I probably would do

8    the same thing as to that case.

9            MR. CHEFFO:  Fair enough, and tell me if you want to

10   stick on the schedule point, but I just wanted to raise one

11   issue with respect to the pro ses.

12           THE COURT:  Come back to that in a minute.  The one

13   other issue that is out there, you put in your papers,

14   Mr. Cheffo, that you thought that the plaintiffs had waived

15   their right to the sales representative depositions.  I

16   remember you made that point at the earlier hearing.  I will

17   tell you all that I could see the contention that you all

18   waived your right to take any other depositions in these cases

19   on the theory that the time for taking depositions is passed.

20   I did not review all of the deadlines that I had established

21   for discovery in these cases generally or in particular to the

22   Schwartz cases.  My memory is that I have set more than one

23   schedule for discovery that had ending points, all of which

24   ended substantially months ago, and I think that the Court

25   would be within its rights under the law to say that everybody

1    has missed the opportunity.  It's not my intention or

2    inclination to do that because I just don't think that that

3    would be fair under the circumstances, so I'm not inclined to

4    do that.  And I'm not sure how you distinguish between the

5    sales reps and the doctors, and what I was inclined to say was,

6    if you wanted to have the opportunity to submit a further

7    filing explaining why you think they've waived that right and

8    then the plaintiffs would have an opportunity to respond to

9    that, that wouldn't delay the schedule.  I don't see many of

10   these sales reps at the beginning, so I don't think there's a

11   lot of harm that comes from proceeding, and then I would

12   resolve that.  And if I decided that they get them, they get

13   them, and if I decide they don't, they don't.  So that's my

14   intention on that.

15           Before we turn to the pro se and the state cases, I

16   guess the question I have for you, Mr. Schwartz, is:  As to the

17   twenty-three cases that until today it was my understanding

18   your firm intended to pursue, Mr. Cheffo says you're intending

19   to file motions to withdraw from those cases if the clients

20   don't agree to dismiss, and my first question is simply, is

21   that correct?

22           MR. SCHWARTZ:  Your Honor, two days ago I made a

23   decision to withdraw from this litigation after your Honor

24   ruled upon my limited attempt to do so, which you've already

25   ruled on, so I won't revisit that.  I had no knowledge.  If

1    Mr. Cheffo knew your rulings just today, he's kept them close

2    to the vest because he's never mentioned anything in your

3    scheduling order that you mentioned --

4         THE COURT:  I would be stunned if Mr. Cheffo knew.  It

5    would give me grave concern if he knew, since the only person

6    who knew besides me was my law clerk who I had discussed it

7    with, but --

8         MR. SCHWARTZ:  No insider trading here like the trial

9    in Manhattan now, there's no insiders, so I'll just skip that.

10   I had decided after more than five years --

11        THE COURT:  Now that you're telling me Mr. Cheffo told

12   you about this case --

13        MR. SCHWARTZ:  No, he did not, he expressly did not.

14        THE COURT:  Okay.

15        MR. SCHWARTZ:  We had a careful talk about the cases.

16   There are twenty-two, incidentally, and if you'll see

17   Document 3957 --

18        THE COURT:  That's the one you want to resuscitate, or

19   one you did want to resuscitate.

20        MR. SCHWARTZ:  3957, your Honor, was filed today at

21   1:00 because the draft copy last night when I went over it with

22   Mabel and Vincent Lo at 8:00 o'clock, they were revising it,

23   and I was in the air today.

24        THE COURT:  All right, so the short answer is that I'm

25   correct -- Mr. Cheffo is correct that you intend, with respect

1    to all of the cases that are pending in this MDL, to withdraw?

2              MR. SCHWARTZ:  Correct.

3              THE COURT:  Whether or not your client agrees to

4    dismiss?

5              MR. SCHWARTZ:  With the following provisos:  first of

6    all, that referring counsel -- a short brief history:  Prior to

7    my entering the case, Mr. Harang and all current counsel except

8    Sacks & Weston --

9              THE COURT:  When you say "current counsel," you

10   confuse me.

11             MR. SCHWARTZ:  They're local, local counsel.

12             THE COURT:  The people I'm thinking about are the

13   following two categories of lawyers:  A, lawyers who filed a

14   formal notice of appearance in any one or more of these cases,

15   or, B, lawyers whose name appears on a pleading, either the

16   complaint, a motion, or an opposition to a motion in any one of

17   these cases.  I recognize that a lawyer might have had a

18   client, referred the client to you.  You might have a

19   relationship in this case with that lawyer, you might feel the

20   need to talk to that lawyer before you move to withdraw or

21   otherwise, but those lawyers, to put not too fine a point on

22   it, those are your problem.  And my question and my interest is

23   only those lawyers who have appearances or have signed

24   pleadings or names appear on pleadings, are those lawyers

25   seeking to withdraw?  So what you're telling me is, I think,

1  you and everybody in your law firm intends to withdraw from all

2  of these cases?

3      MR. SCHWARTZ:  Yes, with the following provisos:

4  First of all, whether they're of record or not, I have an

5  ethical duty --

6      THE COURT:  Sure.

7      MR. SCHWARTZ:  -- to them to keep the full disclosure

8  all along.  And Mr. Harang said he just learned two days ago of

9  my decision.  He learned it at exactly the same moment on his

10  cell call that my staff was advised that Monday afternoon after

11  discussions and -- can I go into it briefly, without going into

12  any privileged communications, why and what our intentions are?

13  Mr. Cheffo and I have spent a great deal of time working this

14  out, subject to the Court's approval.

15      THE COURT:  Well, in a minute or two, what are the

16  provisos and what are the intentions?

17      MR. SCHWARTZ:  Well, that the lawyers, local lawyers,

18  Mr. Miller in Arkansas, Mr. Lerner in Nevada, Mr. Higginbotham

19  in West Virginia, Mr. Green -- I think that's all -- they were

20  in the case long before I was.  The case generally before it

21  got -- I filed the first one in Arkansas, which led to here.

22      THE COURT:  When you say they're in the case, they

23  have appearances in the case, or they just talked to the client

24  and had a relationship with the client?

25      MR. SCHWARTZ:  They have an attorney-client ethical

Page 22

1    relationship.

2             THE COURT:  Fine.

3             MR. SCHWARTZ:  One, months ago, even suggested that I

4    was going to withdraw and that I should do it, but I've stayed

5    in the case --

6             THE COURT:  So you want to talk to them and see

7    whether it's acceptable to them if you do this?

8             MR. SCHWARTZ:  And also to give them adequate time.

9    For example, one of the disputes that Mr. Cheffo and I had is,

10   he originally said 15 days, and I said, no, 30 to 60 days, and

11   they've asked for 60 days, which would fly in the face of your

12   just-announced schedule that of course we knew nothing about

13   till today --

14            THE COURT:  Right.

15            MR. SCHWARTZ:  -- because some of these clients --

16            THE COURT:  So what you want to do, if I'm clear, is

17   have 60 days is what you're asking me for as to the

18   twenty-three cases.  As to the twenty-three not stayed case,

19   you want to have 60 days to talk to the lawyers that referred

20   the cases to you and to give them the chance to see whether

21   they wish to hire -- whether they're going to appear, whether

22   another lawyer is going to appear; and at the end of that

23   60 days, either you're going to withdraw or you're going to

24   withdraw and someone else is going to appear?

25            MR. SCHWARTZ:  And/or not just them but the clients'

1  consent.  You know, under your Rule 83 --

2        THE COURT:  Right, and to give them the opportunity --

3  well, once you file the motion, the client, even if they hadn't

4  the opportunity before, you're correct that the more

5  appropriate way to do it is to see if the client objects in

6  advance.

7        MR. SCHWARTZ:  The rule is implicated, the 83.5.2,

8  which requires four conditions precedent, which we can't meet

9  now because two of those four are implicated already; they're

10  in effect and we need Court approval to do it.

11        THE COURT:  Yes, I understand you need --

12        MR. SCHWARTZ:  But I have spent -- as I said, when I

13  substituted six years ago, actually, for Mr. Sacks before these

14  cases were ever filed and sent to this MDL, I assumed the

15  burden of going forward, and I've done it.  And at this point,

16  for reasons that have to remain confidential to some extent,

17  although Mr. Cheffo knows many of the reasons, the cases that I

18  have chosen to withdraw, waiving all fees and waiving all

19  expenses, even those for the medical and experts and

20  depositions that we've taken, if a case subsequently results in

21  a settlement or a verdict or so forth.  As a courtesy, I did

22  call one other lawyer, who's not in any contractual relation

23  with us is Mr. London.  I called him twice -- he has not

24  returned the call -- to advise him of the decision we're making

25  today, subject to Court approval.  All of this is subject to

Page 24

1    Court approval.

2            THE COURT:  Sure, yes, you're asking, you're filing a

3    motion, right.

4            Mr. Harang, with respect to these twenty-three cases,

5    what do you want to do?

6            MR. SCHWARTZ:  Actually there are twenty-two, your

7    Honor.

8            THE COURT:  Twenty-two.

9            MR. SCHWARTZ:  If you read the current 3957 filing at

10   an hour ago today, that's a very detailed, meticulous number of

11   contacts, dates, attempts and so forth, some of it bordering on

12   privilege, but it at least shows due diligence to the clients.

13           THE COURT:  Yes, all right.  Mr. Harang, what do you

14   want to do about those cases?

15           MR. HARANG:  Your Honor, first off, I would like to

16   have a chance to review the cases because part of what I have

17   done has been, just as an oversight, is to cursorily talking,

18   "What are you doing with the doctors?  What doctors are you

19   taking?" that type of thing.  So other than a few cases that I

20   know rather intimately, I'd like an opportunity to look at

21   those.

22           Secondly, the individuals that will be the lawyers

23   that although they may not have made an appearance now, I have

24   a feeling they may, and particularly one, Mr. Miller, who sent

25   an e-mail to Mr. Schwartz saying that, along with a few other

1   things that the Court probably doesn't need to hear, but my

2   thought is that if we could get, say, 90 days to seek other

3   counsel or you provide us with the list of other law firms that

4   are taking on the Neurontin cases, we can serve our clients,

5   "who have waited long and patiently for the resolution of this

6   case.  Perhaps you could assist us in finding other counsel so

7   that there would be an easy transfer of files to other

8   competent counsel."  And that was from Peter Miller.  That's

9   one of the lawyers that referred that, and he does have at

10  least one of the more meritorious cases, as I appreciate it.

11          MR. SCHWARTZ:  In fact, your Honor, if I might add

12  here, two of the four that we tagged as the best cases are not

13  in the alphabetical order you've suggested but would not be

14  implicated, but Mr. Harang is intimate with one of the

15  twenty-two cases because he and Mr. Stiegel took the deposition

16  of Theresa Huff's son, Joshua Martinez, which he can speak to

17  better than I can, since he was familiar with that deposition.

18          THE COURT:  So what you want to do, Mr. Harang, is

19  have 90 -- this 90-day period you're asking for applies only to

20  the twenty-two or twenty-three cases?

21          MR. HARANG:  Yes, your Honor, and that was coming from

22  someone else, not me, but --

23          THE COURT:  Is that 90 for you or for them?

24          MR. HARANG:  Part of that 90 days is for me, and the

25  remainder --

1              THE COURT:  Are you telling me there's a possibility

2        that at the end of whatever period of time I gave you, you

3        would stand up here and say, "Judge, I want to do this case or

4        this group of cases or some group of cases, and I or people

5        under my direction will do these remaining depositions"?

6              MR. HARANG:  Yes.

7              THE COURT:  And you would be the person who would be

8        in charge?

9              MR. HARANG:  I'm the one that's going to say that to

10       you, your Honor, and if I say that to you, then that's the one

11       that's going to do it.

12             THE COURT:  All right, recognizing that whenever I

13       start it, the schedule is likely to be what I just described.

14             MR. HARANG:  I understand that.

15             THE COURT:  Why do you need 90 days?

16             MR. HARANG:  The 90 days was a total -- that was

17       Mr. Miller's -- I was reading his e-mail, and I think the

18       90 days was in his mind.  If Newton is going to get out of the

19       case, or whoever is going to be the transition, to be able

20       to -- for them to locate people with, one, either the right

21       resources or the abilities or the involvement enough to get

22       them into the cases to help them with them.

23             THE COURT:  Right.

24             MR. HARANG:  And since they have not -- and I know

25       this, that none of the local lawyers have been the referring

1   lawyers, the lawyers that will probably be filing

2   appearances -- have not been involved in the depositions or in

3   the proceedings along the way, that there is a little catch-up

4   time.  But we're only talking about as to those twenty-two,

5   twenty-three cases, and the particular case that Mr. Schwartz

6   mentioned is probably one that I am not going to want to go

7   forward with.

8               THE COURT:  All right.

9               MR. HARANG:  Okay?

10              THE COURT:  Mr. Cheffo, you had something to say about

11   the pro se, and you may have something to say about this?

12              MR. CHEFFO:  Yes.  Can I address these first?

13              THE COURT:  Yes.

14              MR. CHEFFO:  And then we can come back to the pro ses?

15   I want to get us to a point where -- I know the Court does as

16   well, and hopefully counsel does, of getting some resolution.

17   You know, my concern is just about the timing of this.  You

18   know, if we wait 90 days, I don't know what that means, wait 90

19   days and then Mr. Schwartz or someone makes a motion to

20   withdraw?  You have to give the client at least another

21   30 days, and then they come back and someone needs time.  So

22   the times appear to be untenable and really unrealistic.  I

23   mean, on the one hand, you know, I appreciate Mr. Harang's

24   candor, but really what we're hearing again, this is, you know,

25   a hearing where you specifically say that in addition to

1    sanctions, we're going to talk about the process of these

2    cases.  And he is or apparently is co-lead counsel, and

3    apparently there's all these other folks who are kind of out

4    there for the last six or seven years, and this idea that, you

5    know, well, now we have to give them time because they have no

6    idea what's going on, well, that's kind of part of the problem,

7    that no one seems to really know what's going on with these

8    cases.  People should be knowing.  They should come to court

9    and say, "And there are twenty-two cases.  I know this case."

10   I mean, I know what's going on with these twenty-two cases and

11   what the faults and issues are with them, and I would expect

12   their own lawyers would.

13          So, you know, it seems to me this is an issue that

14   Mr. Harang should look at in a week and say, "Okay, here's the

15   twenty-two cases that I want to prosecute.  Am I interested?"

16   Mr. Schwartz has indicated, I'm sure he'll share all the

17   records.  I don't think there's any issue with that.  If he

18   wants information about the cases from us or discovery, we'll

19   give it.

20          So I guess I'm just really reacting much more to the

21   timing here, that, you know, these are folks who haven't been

22   involved, not Mr. Harang, but these other people we hear about,

23   I don't know who these people are.  And not being involved in

24   the case for seven years and then coming forward and saying,

25   you know, "I need more time to kind of get involved in this

1   litigation," seems unrealistic and unnecessary.

2           So to cut to the chase on that one, your Honor, my

3   suggestion would be -- you know, you just issued an order, I

4   thought, that was very instructive the way you had set it out.

5   I think in the Heninger & Garrison cases you basically allowed

6   a certain period of time.  It was all within really 30 days.  I

7   think, you know, you did a motion to withdraw, the people could

8   object, and also then you built in that they had to also file

9   something where they intended to proceed.

10          THE COURT:  Yes.

11          MR. CHEFFO:  And all of that was done basically within

12  30 days.  So it can't work exactly the same because we may have

13  other lawyers here, but what I'm suggesting is, Mr. Schwartz

14  should do what he's doing on a reasonably expedited basis.

15  It's unclear to me, frankly --

16          THE COURT:  What about the pro se cases?

17          MR. CHEFFO:  Oh, with respect to the pro se cases,

18  here's my comments on those.  Just to give your Honor a little

19  bit of insight really what's happened with those, typically

20  when they get remanded, almost every one except one, they,

21  frankly, are nonresponsive.  What we've asked the courts to

22  do -- Judge Rakoff in the Southern District had a few of these

23  cases -- we go to the judge and basically say, you know, "You

24  should set an expert deadline."  He was receptive.  Actually,

25  it was a magistrate judge also who was receptive.  The

1    plaintiffs don't respond.  We then have to make a summary

2    judgment motion.  So it's not something that we can't do, but

3    it's fairly cumbersome both, frankly, for Pfizer and the courts

4    that we're dealing with.  It's not like when these cases are

5    getting remanded, the history shows us that 50 percent or

6    75 percent of these people are prosecuting their cases.  It's

7    really just a matter of filing lots of paper that never gets

8    responded to, magistrates have to write orders, and judges have

9    it on their dockets.

10          So I think there should -- and we made this proposal

11   and I think it was rejected early on that the pro ses have to

12   identify an expert.  So if the Court doesn't want to go that

13   far, I think there are other intermediate steps.  The first is,

14   to the extent that there's anybody out there --

15          THE COURT:  How many of the pro se cases have already

16   been remanded?  In other words, are they all remanded other

17   than whatever becomes pro se out of this?

18          MR. CHEFFO:  No, and in fact I have a list, and I can

19   give it to you now or send it to your chambers.  We were

20   prepared to tell you pretty much everything that's out there.

21   So there was about thirty cases.  I would say probably twenty

22   or so of them have been remanded, and we have a list of current

23   cases that probably should be remanded in terms of pro se

24   cases.

25          THE COURT:  Okay.

1          MR. CHEFFO:  But I would just offer a few things that

2   we might want to consider doing.  One is, they should file an

3   intent to proceed.  Two, there should be an order that if any

4   lawyers are representing or have a current intention to

5   represent these people, they should appear because then they

6   wouldn't be pro se.  You know --

7          THE COURT:  Nobody has showed up in any of these pro

8   se cases we've remanded.

9          MR. CHEFFO:  That's true, but, again, this kind of

10  amorphous position, I don't want a case remanded and then have

11  someone who's kind of been hanging out there or Mr. Harang say,

12  "Oh, I'm now the lawyer for these folks."  If that's the case,

13  then they should proceed the normal track.  These are just --

14  maybe it won't happen, but I think it's important.

15          You know, I will tell you one situation with one of

16  the pro ses.  There was request for discovery and things of

17  that, you know, and our reaction was, well, there's a PSE, so

18  to the extent that there's discovery, it should be made clear

19  that they can get that discovery that's already been re-had.

20          I think that's -- so it's the intent to proceed.

21  It's --

22          THE COURT:  So this is what you should do in the pro

23  se cases.

24          MR. CHEFFO:  Sure.

25          THE COURT:  You should file a -- to the extent you

1   want the Court to do something differently than the Court has

2   been doing with the pro se cases, file a motion that says,

3   "Pfizer wants the Court to do this," whatever it is, just as

4   you just described, lay it out in writing what it is.  It

5   doesn't have to be a 20-page memo but what you want, and attach

6   to it as an exhibit the list of pro se cases which remain here

7   to which you would like it applied to; whether it's all of

8   them, and here's the list of all of them, or for some reason

9   you distinguish between them in some fashion, then say that.

10          MR. CHEFFO:  Fair enough.

11          THE COURT:  With respect to cases -- I'm very much

12  trying to resolve all pending matters in this litigation.  I

13  issued a number of orders you saw in the Heninger cases just

14  yesterday or today.  It's my general understanding at the

15  moment that what remains to be addressed at this moment for me,

16  a little bit more for Judge Saris because some of the things I

17  just issued are reports and recommendations, but what remains

18  for me to address are what I'm calling the Schwartz cases, plus

19  one motion from Mr. London with respect to reimbursement from

20  the common fund, which has been pending for a time and which I

21  intend to resolve shortly.  I don't -- I'm not in my mind any

22  other individual cases that are out there that need to be

23  addressed, so I would say to you, if you've got a list, then

24  what I would suggest that you do is, other than the pro se

25  cases -- it could be in the same motion or in a separate

1    motion -- file a motion saying, "Judge, here's whatever else is

2    out there, and we want you to remand these cases," or, "These

3    cases remain to do common discovery, and this is the discovery

4    that remains that we think should happen," or whatever it is

5    that you think should happen in those cases, and caption them

6    as you do appropriately to which case or cases they pertain to,

7    and then I'll look at them and I'll respond to them.  So that

8    my hope is that if -- it sounds like there's some cases there,

9    that it's not just Schwartz and the pro se.

10           MR. CHEFFO:  There are about four other cases that are

11   represented by counsel.

12           THE COURT:  All right, so propose to me what they are,

13   what the cases are and what you think should happen to them --

14   are they ready for remand, do they need discovery, whatever it

15   is -- and then I'll address them, and then we'll be on track

16   and be concluding everything.

17           With respect to the Schwartz cases, they seem to fall

18   into two categories:  those cases, the twenty-two or so that

19   Mr. Harang is interested in at least reviewing, and those cases

20   which have been stayed which Mr. Harang is not interested in

21   proceeding with is my understanding.  Is that correct?

22           MR. HARANG:  Yes, your Honor.

23           THE COURT:  And which Mr. Schwartz is not interested

24   in proceeding with.  And as I sit here now, the universe of

25   lawyers who have appeared in those cases is at most Mr. Harang

1    and Mr. Schwartz's law firm.

2         So I suggest the following process for you to comment

3    on now:  I am inclined to treat what Mr. Schwartz and

4    Mr. Harang have said to me as a motion to withdraw from all of

5    those cases that have been stayed that remain pending.

6         MR. SCHWARTZ:  That's correct, your Honor.

7         THE COURT:  That is, that aren't subject to a

8    stipulation of dismissal, that it's a motion to withdraw.  And

9    what I would be inclined to do then is say:  They have sought

10   to withdraw.  I would think I would memorialize this in an

11   order.  I would then order Mr. Harang and Mr. Schwartz, one or

12   both of them, to serve my order on the plaintiff, informing the

13   plaintiff that their counsel who represent them is seeking to

14   withdraw, that they have a period of time, probably 21 days, to

15   object to this if they wish to object; and if they wish to

16   object, they should file their objections with the court at the

17   address listed in the order.  And I would review them, and then

18   I would consider whether or not to allow the motions to

19   withdraw.  And if they were withdrawn, they would be treated as

20   pro se cases, and that will move those cases forward.

21        If lawyers who are referring counsel wish to appear in

22   those cases, they can file a notice of appearance.  That's what

23   lawyers do when they see a case that they want to do that there

24   is a client who they want to represent and is willing to have

25   them represent them.  This isn't rocket science.  And I'll

1    address it on the merits of the motion.  I don't know that it

2    needs any more briefing.  What I understand from Mr. Schwartz

3    is, he doesn't wish to proceed in this MDL period, and already

4    based on the filings, even before today, he doesn't think these

5    state cases are cases meritorious of being pursued.

6          And the same applies, Mr. Harang, as to the merit of

7    the cases to you.  I don't think I need you to write a brief

8    about it.  It may be that your clients wish to hear from you,

9    and, if so, you'll I'm sure, pursuant to your obligations,

10   would explain to them the situation and what your views were.

11   That would move those forward in one form or another.  I'm not

12   interested in waiting around or I don't see any reason to wait

13   around for a lot of back-and-forth between you two and whatever

14   lawyers were otherwise involved in these cases.  It's the

15   clients' decision; it's not those lawyers' decision.  And the

16   client is entitled to notice that you wish to get out of it,

17   and I'm going to give them notice in this form by having you

18   serve my order on them that explains the procedures, and

19   they'll have an opportunity to object, and then I'll rule.  And

20   anybody who wants to get into the case can just file a notice

21   of appearance.

22         As to the cases that are not now stayed that

23   Mr. Harang wants some time to review and possibly consult with

24   other lawyers, I'm not prepared to give you 90 days at the

25   moment, Mr. Harang, because 90 days to just look into all of

1    them is simply at the present time too long.  I understand the

2    pressures you might be under from a busy trial practice and the

3    volume in these cases, but I can't simply say, "See you in 90

4    days."

5              So what I'm inclined to do in the face of what I

6    understand you to be saying to me, which is, "Judge, I'm

7    interested in reviewing these cases.  I'm telling you, Judge,

8    that at the end of my review of these cases, there may be one

9    or more cases in which I'm prepared to stand up in court and

10   say, Judge, I will do it, and I will take care of the common

11   discovery here, and it would be my present intention to proceed

12   with the case when it was remanded.  And I understand the

13   schedule you're going to impose along the lines that you

14   described, and I'm prepared to do that, if I decide after

15   reviewing the case that I want to do it."

16             So I'm prepared to do this:  I'm prepared to say I'll

17   have another hearing in 30 days.  You give me a filing, you

18   make a filing in -- I'm going to issue an order that sets it

19   out but probably in about 30 days -- I have to look at my

20   calendar -- and you make a filing with me in, say, probably

21   something like 20 to 25 days telling me of the status of what

22   they are.  I imagine that each of these reviews is an

23   individual case review.  So I'm not giving you 90 days to

24   report on all twenty-three cases.  You report to me in 30 days

25   on how far you've gotten.  If you know in 30 days that you're

1    not doing any of them, tell me that.  If you know in 30 days

2    that you've reviewed this many of them and you're doing some of

3    them, then tell me that.  And then as to the some, I know what

4    to move, we can move forward to the next step, and that would

5    be something that then I would consider as to whether -- and I

6    would assume then you might want to ask me for more time.  I'm

7    going to be more likely to give you more time if you show me

8    that in the time I've given you, you've completed a review of

9    some of the cases, and you've either conclusively determined

10   you're in or you're out.  I will tell you that if you come back

11   in 30 days and tell me, "I've been reviewing them all, Judge,

12   and I haven't come to a conclusion about even one of them, I

13   need 60 more days to make a determination on any of them," I'm

14   not so likely to want to give you 60 more days.

15           MR. HARANG:  That's not my in my nature, your Honor.

16           THE COURT:  Okay, I didn't think so.  So what I want

17   to see is progress, hope, so show me that.  I understand why

18   you might need -- why 10 days would be too quick in terms of

19   getting the files and looking at them in the current schedule,

20   so I'll give you 30.  In 30 I would reasonably expect you

21   should be able to come back and tell me conclusively as to, if

22   not as to all of them, some meaningful number of them.  And

23   then at that point it would be my inclination to get started

24   the following month with at least some of the depositions, and

25   at that point I would hear you all on, should it be fifteen as

1    I threw out, should it be the ten to twelve Mr. Cheffo threw

2    out, although it sounds like he's willing to do the fifteen, or

3    is it at the eight to ten that was originally proposed?  But

4    one way or another, it's going to be in alphabetical order or

5    going to be in order of the cases, and we're going to do them

6    month by month with some accommodation for witness scheduling

7    as to something along the lines of what I outlined.  And if

8    other lawyers want to get in, they know our address, they know

9    how to fill out a notice of appearance; they can file a notice

10   of appearance.  So that's how I'm inclined.  Any thoughts about

11   that?

12             MR. HARANG:  Your Honor, that sounds reasonable.

13             THE COURT:  All right.

14             MR. CHEFFO:  It sounds reasonable.  The only thing I

15   would say that I should have mentioned earlier is, I'm glad we

16   haven't focused a lot on the sanctions today.  I would ask the

17   Court to defer that until a later hearing --

18             THE COURT:  Yes.

19             MR. CHEFFO:  -- because I think part of, frankly, our

20   view of why we made it depends on the progress that's being

21   made here, so I would ask the Court not to rule on that.

22             THE COURT:  I'm not intending at the moment to rule on

23   that.

24             MR. CHEFFO:  Thank you.

25             MR. SCHWARTZ:  Your Honor, may I clear one point up.

1    Number one, even though I've never personally met any of the,

2    quote, "referring lawyers" that were in with Mr. Harang and

3    them, they've worked other cases like Vioxx, some or all, I've

4    never met them, but we've always made available -- the marvels

5    of scanning now, we can send ten --

6            THE COURT:  I don't have any doubt, Mr. Schwartz, that

7    you intend to make available all the documents in these cases

8    you have to Mr. Harang and to whatever lawyers have contractual

9    relationships, or if a lawyer on behalf of a plaintiff contacts

10   you and says, "I'm considering entering this case, would you

11   provide me the file on case XYZ," I have no question in my mind

12   that you would do that.  It wasn't a concern of mine.

13           MR. SCHWARTZ:  We've done that from day one.

14   Mr. Harang when he's in Houston actually is in our office, and

15   he can access them directly himself.  He has his own access.

16           THE COURT:  Oh, so maybe he doesn't need 30 days.  He

17   can access them all electronically.  Very persuasive,

18   Mr. Schwartz.

19           MR. SCHWARTZ:  But Mr. Cheffo and I, subject to the

20   Court approval, if you want some specifics here, I said,

21   "Mark --"  We've scheduled in the Pastine case, which I viewed

22   as one of our best, which they naturally disagree that it's not

23   the best or not good at all, they've been with a Mr. --

24           THE COURT:  I think it's fair to say they don't think

25   any of them are any good.

1          MR. SCHWARTZ:  That's exactly correct.  But Cheney,

2     the local counsel, and Ms. Lo have been negotiating back and

3     forth to take the sales representative since April.  They've

4     now got a June 26 date or something like that.  I said,

5     "Mark --" this is right outside the courtroom before today --

6     "do you have a problem if Mabel or Vincent take that deposition

7     in the transition?"  We want to cooperate.  In other words,

8     we're fully with them in giving them any files.  He says he

9     prefers --

10         THE COURT:  How many depositions are scheduled right

11    now?

12         MR. SCHWARTZ:  Ms. Lo has been trying to schedule it,

13    and they finally agreed on a date.

14         THE COURT:  These are in the twenty-three cases or the

15    twenty-two cases?

16         MR. SCHWARTZ:  This is in one of the twenty-two,

17    Pastine, which was my number one --

18         THE COURT:  How many depositions are scheduled right

19    now in the next 60 days?

20         MR. SCHWARTZ:  It is June 26.

21         THE COURT:  So that's one.  Any other depositions?

22         MR. SCHWARTZ:  That's the only one I'm aware of, but,

23    you know, Mark said he'd prefer that we not go forward with

24    staffing and doing that.  You know, I said, you know, I want to

25    help all on the transition we can, not just giving records but,

1  you know, anything else they want, which --

2       THE COURT:  I don't see the point in doing a

3  deposition unless Mr. Harang is prepared to say right now that

4  in that case, he wants to proceed with that case, because

5  you're saying unequivocally that if I give you permission,

6  you're not proceeding with that case.

7       MR. SCHWARTZ:  Exactly.

8       THE COURT:  And so I don't see any reason to proceed

9  with depositions in any of the twenty-two cases before the next

10  hearing unless Mr. Harang now or before then is saying, "I want

11  to take that case and I'm going to proceed with it," in which

12  case Mr. Harang or whomever he designates, even if that's

13  Ms. Lo, can do the deposition, and that would be different.

14  But short of that, I don't see a reason to do the deposition

15  now.

16       MR. SCHWARTZ:  That one case is where West Virginia

17  counsel have expressed, one of their associates or partners --

18  I don't know what his status is -- expressed an interest like

19  Mr. Harang:  They want to be around to try the case, of course,

20  when it's remanded, but I said, well, you know, I've explained

21  to them now that it's not remanded yet until we finish.  And

22  Mr. Cheffo has given --

23       THE COURT:  So then they can try the case as long as

24  they come do the discovery first.

25       MR. SCHWARTZ:  Well, Mr. Cheffo --

1          THE COURT:  And they need to decide whether they want

2     to do the discovery in the next 30 days.

3          MR. SCHWARTZ:  I've passed on his message that it's

4     not one sales rep or one treating doctor.  And we're all

5     accessed to Mr. London's experts.  We contributed financially

6     to that being developed, but that it's not one or two; that it

7     can be fifteen or twenty depositions taken either before or

8     remand before trial, not one or two that I was --

9          THE COURT:  Mr. Harang, as to that one deposition in

10    that one case, are you ready to say that you're going to do

11    that case?

12         MR. HARANG:  No, your Honor.

13         THE COURT:  All right, fine.  So I don't think you

14    should do it.  That's the only deposition that's scheduled at

15    the moment.

16         MR. HARANG:  We're prepared to reschedule.

17         MR. SCHWARTZ:  Mark, is there any other --

18         MR. CHEFFO:  No, I think you're right, Newton.  I

19    think that's it.  And this is not a complication, but I just

20    think -- and we'll work this out, I think, in the next

21    30 days -- Katherine reminds me, one of the lawyers actually

22    did file a notice of appearance.  And we'll talk to him about

23    it, but basically because they filed a multi-plaintiff

24    complaint -- like, what do they call it, Girard or

25    something? -- so they filed a notice of appearance in the

1    Girard case, but --

2            THE COURT:  Girard being one of many people named

3    as --

4            MR. CHEFFO:  He filed four complaints with 250 people

5    initially.  There's twenty people, so there's probably like

6    eight or nine in the Girard case, so it's unclear to me whether

7    he's appearing in all eight of those cases or whether --

8            THE COURT:  Why don't you talk to him to clarify that.

9            MR. CHEFFO:  I just wanted to point it out.  We'll

10   work that out amongst ourselves.  That won't be a problem.

11           MR. SCHWARTZ:  As to Girard, your Honor, I'm relieved

12   to hear this, I didn't hear it before now, because Girard was

13   Mr. Stiegel's first choice and ones we've been pushing to get

14   to trial.  My role in it is unique in that even before my

15   considering withdrawal, I'm the only licensed Pennsylvania

16   lawyer in that Girard case since Mr. Sacks and Weston exited

17   five years ago, and I'm glad to know there's another lawyer in

18   it now so that I'm not the only link to practicing law.  And

19   it's in Federal Court anyway, so I don't know if you need a

20   state court admission in Pennsylvania to do that.

21           THE COURT:  Okay.  Well, the Federal Court in

22   Pennsylvania can figure that out.

23           Is it a common practice to file a personal injury

24   complaint on behalf of multiple plaintiffs who each had a

25   different incident of injury, albeit, there's a common

1   denominator in the sense that the allegation is, their injuries

2   all arose from the same medication, for example, but they

3   didn't take the same pill, they weren't eating the same thing?

4   I confess that until I saw the complaints filed by the

5   plaintiffs here and by Mr. Boone, I had never seen complaints

6   of that nature before.

7            MR. HARANG:  In several ways it can be done, your

8   Honor, but if they're class allegations, of course you can list

9   numerous plaintiffs --

10           THE COURT:  Sure, if it's a class action.

11           MR. HARANG:  -- or two, and I believe that there were

12   class references in those complaints, I believe, and that's

13   taxing an old memory but --

14           THE COURT:  But absent a proposed class action, how

15   would they be joined?

16           MR. HARANG:  I'm thinking of the other mechanism, and

17   Judge Fallon used it in Vioxx, they've used it now in the FEMA

18   cases, that you're allowed to enumerate all of the plaintiffs

19   in one listing so that you don't have to go through the

20   multiple filings and the multiple costs and everything else

21   that go in with it.

22           THE COURT:  Filing fees.

23           MR. HARANG:  Yes.

24           THE COURT:  I see.  And then is the thought that

25   ultimately -- but they're separate trials, right?  There's not

1   really a thought that all of these people would be joined for

2   an entire trial?

3           MR. HARANG:  No.  You mean all of them going to trial?

4           THE COURT:  Right.

5           MR. HARANG:  No, but in the case, like you used Vioxx

6   as an example, there was a pretty big global settlement, and

7   those people were all under the mantra of Judge Fallon in the

8   MDL.

9           THE COURT:  Sure, but, I mean, in this case, for

10  example, if you had 200 plaintiffs, it wouldn't really be the

11  thought -- you're really thinking if they all went to trial,

12  200 separate trials, not one trial for all 200 of them?

13          MR. HARANG:  One of the procedures is to use

14  representatives samples, of course.

15          THE COURT:  Right, but if you had ten representative

16  samples, you wouldn't have one trial with ten of them; you'd

17  have --

18          MR. HARANG:  One with ten.

19          THE COURT:  You would try all ten together?

20          MR. HARANG:  Yes.  In fact, we've done them with

21  twenty, your Honor, and it gives a little taste.  You've got to

22  bifurcate some of the stuff and play with it, but --

23          THE COURT:  Where you have one jury with the ten

24  plaintiffs, and that one jury hears all the evidence as to the

25  ten plaintiffs and then renders ten verdicts, so to speak?

1          MR. HARANG:  There's one we had twenty and went to

2     verdict on liability, damages, liability for punitive damages,

3     and compensatory damages for those plaintiffs, okay, because

4     there were certain class issues and certain non-class issues.

5     Obviously individual damages were not.  And that one jury

6     rendered verdicts in all of that and then came back and

7     rendered a verdict for the punitive damages.

8          THE COURT:  Essentially your argument, it's a common

9     nucleus of operative facts out of which the liability arises,

10    and the only thing that's different is damages.

11         MR. HARANG:  And you can separate out the few things

12    that aren't.  You can call it a subclass, you can call it a

13    subpart to the case, you can call it a bifurcation.  You can

14    call it a chicken if you needed to, and then --

15         THE COURT:  You don't care what you call it as long as

16    they're all together.

17         MR. HARANG:  Right.

18         MR. CHEFFO:  I'm just going to give you the, because I

19    can't not respond, give you the unvarnished defense view on

20    this perspective.  Why people do it?  I think they do it

21    usually to avoid fees, of having to file filing fees.  I'm not

22    suggesting it for these guys.  Just generally it happens

23    occasionally.  Some courts allow it.  The other thing why

24    people do it is to avoid removal.  They try and have fraudulent

25    joinder or fraudulent misjoinder by having twenty people.  For

Page 47

1    example, if Pfizer is a New York company, you put a bunch of

2    people and one person you file in the state court in Missouri,

3    and you say, "Oh, there's no joinder here," and then they try

4    and avoid severance.  So it's in my opinion --

5              THE COURT:  So if one person is a New York plaintiff,

6    then you can't remove?

7              MR. CHEFFO:  Again, I'm not imputing motives to these

8    people, but that's a motivation that plaintiffs do, and the

9    parties fight about whether that's appropriate.  And then they

10   also will argue sometimes that there should be joint trials,

11   and I, frankly, am not aware and haven't seen anything

12   recently, particularly in Pharma, for all the reasons you said,

13   whether you'd have ten people get up and say, you know, "My

14   doctor over in this state or Mrs. Smith --"  You know, it would

15   be just too cumbersome.  It does happen in things like asbestos

16   cases, I know, just because of volume, so --

17             THE COURT:  Airplane accidents.

18             MR. CHEFFO:  Yes, I think airplane accidents, those

19   kinds of things.  So I think, as a general matter, some

20   plaintiffs do it.  It's, you know, within their right to do.

21   As a general matter, most defendants vehemently oppose the

22   multiple filings and the --

23             THE COURT:  Oh, I'm sure.

24             MR. CHEFFO:  Yes.

25             MR. SCHWARTZ:  Your Honor, may I have a clarification.

1    As Mr. Cheffo and I discussed, subject to your approval, my

2    withdrawal is effective now as soon as the Court approves it,

3    so that during this transition, and I again plead for the

4    lawyers, the 60 days was based first of all on not only

5    Mr. Boone's case --

6              THE COURT:  Okay, the plea for the lawyers is noted.

7    It's an eloquent plea of mercy on their behalf, but it's

8    denied.  I'm not giving them 60 days at the moment.

9              MR. SCHWARTZ:  One more precedent for the record and

10   then you'll overrule it --

11             THE COURT:  Yes.

12             MR. SCHWARTZ:  -- is the Finkelstein case of Steven

13   Bel Bruno, your Honor, Document 3165.  He asked for 60, and I

14   assumed he got it.  I talked to Mr. Cheffo about it.  Do you

15   know?  Did you grant 60 days on that?

16             THE COURT:  Off the top of my head, I don't recall if

17   I granted 60 days or not, but I think the material

18   circumstances in the Finkelstein cases are materially different

19   than here, given the amount of time.

20             MR. SCHWARTZ:  Mr. Harang has urged it eloquently for

21   reading Mr. Miller's actual telegram or fax to me today, and so

22   you've been presented with it, and I just wanted to --

23             THE COURT:  I have, and I at the moment for the

24   reasons already stated --

25             MR. SCHWARTZ:  I've been ordered by a higher authority

1    to cease at 82 -- the higher authority is my wife of 45 years,

2    which is an unquestioned authority --

3             THE COURT:  No question it's a higher authority than

4    me.  She sounds like a wise woman.  No, I'm not at the moment

5    going to give 60 days.  I'm going to issue some orders that

6    will follow the lines of what I've outlined here today.  You're

7    not out of the cases at the moment, Mr. Schwartz, because I

8    haven't allowed the motion to withdraw, so you're still in the

9    cases.  However, there are no depositions that are going to be

10   taking place between now and the next court hearing, and I'm

11   not anticipating at the moment that your presence is required

12   at the next court hearing because -- at the moment I just don't

13   anticipate that.

14            Mr. Harang, your presence will be required because I'm

15   going to need to hear from you about these issues.  If

16   something in whatever transpires, Mr. Schwartz, occasions that

17   your presence seems to be required, then I'll issue a specific

18   order; I will say that you're required to appear, and I'll

19   explain why.  The only reason why I would anticipate your

20   presence would possibly be required is if a particular

21   plaintiff objects to your withdrawal and something about the

22   nature of their objection gives rise in my mind for a need to

23   have a hearing, as opposed to resolving it on what I know about

24   your position and what I know about the plaintiffs' position.

25   That seems unlikely, and so at the moment I would say you need

Page 50

1    not be here, but you're not yet out of the case until I issue

2    the order that says so.

3           MR. SCHWARTZ:  I understand.  As your Honor will see

4    from Document 3957 filed today, Mrs. Lo and Mr. Lo are the ones

5    that are intermediary, making these two and three and four

6    contacts with each client that's enumerated in here.  It

7    doesn't tell you the substance, but they're attempts to locate

8    and get communications, that they are my, you know, source of

9    all the information on these cases.

10          THE COURT:  Sure.  That's fine.  All right, anything

11   else?  Anything, Mr. Cheffo?  All right, then we are adjourned.

12   If you find the date that I established poses a particular

13   problem, then talk with each other, talk with Ms. Simeone.  I'm

14   not willing to move it a month, but I'm willing to move it to

15   accommodate the schedules.

16          MR. HARANG:  Your Honor, the last thing is,

17   procedurally, if we have an issue about the date or could

18   change it, do you have any objection if we call you and --

19          THE COURT:  Call Ms. Simeone.  Just pick a date, work

20   out a couple of days with Mr. Cheffo that work for you --

21          MR. HARANG:  Rather than going through the procedure

22   of doing filings --

23          THE COURT:  You don't have to file a motion.  You can

24   call Ms. Simeone, and if you say, "We want to move it, we've

25   agreed on one of these three dates, is the Court available on

1  one of these three dates?"  As long as it's within reason of

2  the date that I established, then you can just do that, and you

3  don't have to file a motion.  I need to look at a couple of

4  things before I schedule the date.  That's why I'm not doing it

5  right now.

6        MR. SCHWARTZ:  Should we undertake now with my

7  staff -- I'll volunteer my staff for Jack's use and my own use

8  in starting to communicate with the dismissed --

9        THE COURT:  You'll have an order issued electronically

10  from me no later than close of business tomorrow, which will be

11  the order that I will be directing you to send to your client,

12  so I wouldn't do it until you get that order.

13        MR. HARANG:  These are the ones that we're all

14  withdrawing from?

15        THE COURT:  Yes, right.  The twenty-three I'm leaving

16  to you to talk to or not.

17        MR. SCHWARTZ:  Twenty-two.

18        THE COURT:  Twenty-two.

19        MR. SCHWARTZ:  And Mr. Harang says it's down to

20  twenty-one, if he says he's not inclined to take the Martinez

21  case.

22        THE COURT:  Okay, we're adjourned.  Thank you very

23  much.

24        MR. HARANG:  Thank you, your Honor.

25        THE CLERK:  All rise.  This matter is adjourned.

8b2f87da-5574-49d1-82f3-0bc4c1ff6067

Page 52

1          (Adjourned, 4:02 p.m.)

2                    C E R T I F I C A T E

3

4

UNITED STATES DISTRICT COURT )
5  DISTRICT OF MASSACHUSETTS    ) ss.
   CITY OF BOSTON               )
6

7

8          I, Lee A. Marzilli, Official Federal Court Reporter,

9  do hereby certify that the foregoing transcript, Pages 1

10  through 52 inclusive, was recorded by me stenographically at

11  the time and place aforesaid in Civil Action No. 04-10981-PBS,

12  In Re:  Neurontin Marketing, Sales Practices, and Product

13  Liability Litigation, and thereafter by me reduced to

14  typewriting and is a true and accurate record of the

15  proceedings.

16      In witness whereof I have hereunto set my hand this 29th

17  day of May, 2012.

18

19

20

21

22          /s/ Lee A. Marzilli
        _____
23          LEE A. MARZILLI, CRR
            OFFICIAL FEDERAL COURT REPORTER
24

25