UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
In re: NEURONTIN MARKETING, SALES      : MDL Docket No. 1629
PRACTICES AND PRODUCTS                 :
LIABILITY LITIGATION                   : Master File No. 04-10981
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
: Judge Patti B. Saris
THIS DOCUMENT RELATES TO:              :
: Magistrate Judge Leo T.
UNREPRESENTED PLAINTIFFS               : Sorokin
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DEFENDANTS' CASE MANAGEMENT
PROPOSAL FOR UNREPRESENTED PLAINTIFFS**

Defendants Pfizer Inc. and Warner-Lambert Company LLC (together, "Pfizer" or "Defendants") submit this case management proposal with respect to cases pending in this MDL in which plaintiffs are no longer represented by counsel or a motion to withdraw as counsel is pending. Pfizer respectfully requests that this Court require plaintiffs in each of those cases to submit the following at this time: (1) a declaration that he or she intends to proceed with his or her claim on a pro se basis, has a good-faith basis for proceeding, and understands he or she may be liable for costs and attorneys' fees for pursuing a claim without factual or legal basis; and (2) a signed declaration by a case-specific expert stating that he or she will testify that Neurontin was the cause of plaintiff's alleged injury. Further, this Court should order that failure to comply with this requirement within 60 days will result in dismissal of the case.

**PRELIMINARY STATEMENT**

Past experience in this litigation demonstrates that the overwhelming majority of the pro se plaintiffs with current lawsuits do not intend to pursue their claims and/or will not – or cannot – proffer expert testimony as required to create a genuine issue of fact as to the element of specific causation. Indeed, *none* of the pro se plaintiffs, whose cases have been remanded to date, have disclosed a specific causation expert, and Pfizer has been awarded summary judgment in *every* pro se case in which the transferor court has set a deadline for expert disclosure.

If this Court were to remand the numerous remaining pro se cases without first screening them to determine whether plaintiffs intend to proceed and have a reasonable possibility of surviving summary judgment, it would place a significant and unnecessary burden on other district courts from around the country. Transferor courts, which are less familiar with the background of these cases, would have to waste resources by, for example, ruling on summary judgment motions and motions under 28 U.S.C. § 1404 (considering that many of these cases were not filed in the plaintiff's home state).[1] Accordingly, considerations of judicial economy weigh heavily in favor of adopting procedures to screen these pro se cases before remand.

In particular, this Court should order that unrepresented plaintiffs establish both an intent to proceed on a pro se basis and that they can proffer the necessary medical evidence to support specific causation. Similar MDL courts have recognized that such orders are necessary to promote effective case management and judicial efficiency. *See, e.g.*, *In re: Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig.*, No. M:05-CV-01699, Pretrial Order No. 29, at 2 (N.D. Cal. Aug. 1, 2008) (attached as Ex. B); *In re Rezulin Prods. Liab. Litig.*, No. 00 Civ. 2843, 2005 WL 1105067, at *1 (S.D.N.Y. May 9, 2005). In this litigation, such an order would eliminate baseless claims in one coordinated proceeding. Further, Pfizer's proposal is reasonable, imposes no travel requirements or other unnecessary burdens on the plaintiffs, and would promote the just, speedy, and inexpensive resolution of actions.

For these reasons and those explained below, this Court should enter a case management order requiring all unrepresented plaintiffs, within 60 days from entry of the order, to sign and file the template declaration that Pfizer has attached as Exhibit A[2] and file a declaration signed by a qualified specific causation expert that supports their claims.

---

[1] Even if some cases are not dismissed, this Court should consider remanding cases to the appropriate forum where plaintiffs did not file in their respective home states. To do so might prevent other courts from having to decide multiple § 1404 motions.

[2] All exhibits are attached to the accompanying Declaration of Catherine B. Stevens.

## BACKGROUND

At recent status conferences, this Court has encouraged the parties to begin taking the necessary steps "to close this MDL." (6/29/12 Hearing Tr. at 30:24-31:1 (attached as Ex. C).) As this Court has recognized, in order to wind down this MDL, all the cases currently pending – including cases where plaintiffs' attorneys have withdrawn from representations – should either be remanded to their respective transferor courts or dismissed.[3]

The majority of the cases transferred to this MDL have been dismissed, whether as a result of settlement or other reasons. In order to help this Court wind down Neurontin litigation, Pfizer has proposed a procedure to screen the remaining pro se cases. (*See* 6/29/12 Hearing Tr. at 31:2-9.) The Court has advised that "once the withdrawal process is adjudicated and resolved, [it will consider] whatever [Pfizer] would like to do with respect to the pro se cases . . . ." (*Id.* at 31:2-9.) On September 11, 2012, this Court entered a "Final Scheduling Order" in which it directed, among other things, that "[a]ny proposals to change the handling of pro se cases shall be submitted by October 15, 2012." [4026]. Pfizer now respectfully submits the proposal detailed herein.

## CASE MANAGEMENT PROPOSAL

The Court should enter a case management order to determine which, if any, of the plaintiffs formerly represented by counsel intend to pursue their claims and have a reasonable possibility of creating a genuine issue of fact for trial. Such case management orders are authorized and encouraged by the Federal Rules of Civil Procedure. For example, Rule 16(a)(2) provides courts with the discretion of "establishing early and continuing control so that the case will not be protracted because of lack of management." To accomplish this goal and "facilitate[e] . . . the just, speedy, and inexpensive disposition of [an] action," a district court has the discretion to fashion a pre-trial order that addresses, among other things: (1) "formulating

---

[3] All Neurontin cases that were originally filed in Massachusetts have been dismissed or adjudicated.

and simplifying the issues; and eliminating frivolous claims"; (2) "determining the appropriateness and timing of summary adjudication under Rule 56"; (3) "controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37"; (4) and "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems[.]"  Fed. R. Civ. P. 16(c)(2)(A), (E), (F), (L), (P).

Indeed, Pfizer's proposal here is consistent with this Court's past case management efforts.  Throughout this MDL proceeding, this Court has recognized the need to implement appropriate screening procedures to ensure that only cases with a reasonable basis should proceed.  For example, the Court has previously required that plaintiffs' attorneys certify that pursuit of each action was warranted.  (*See* 9/1//07 CMO [949], at 2-3.)  As the Court explained, such measures were needed "to ensure efficient case management" and facilitate "the expeditious management and resolution of this MDL."[4]  (*Id.* at 3.)

Considering plaintiffs' attorneys have since filed motions to withdraw in many cases, there is now a need for this Court to enter a case management order to screen cases in which plaintiffs do not intend to proceed or have no reasonable possibility of proceeding to trial.  As such, Pfizer proposes that the Court impose the following requirements on Plaintiffs:

**I.     This Court Should Require Plaintiffs to Declare Whether They Intend to Proceed on a Pro Se Basis and Have a Good Faith Basis for Their Claims**

It is clear that at least some of the unrepresented plaintiffs do not intend to pursue their claims.  Since plaintiffs' counsel have withdrawn, plaintiffs have taken no action to move their cases forward.  They have neither disclosed successor counsel nor declared that they wish to proceed pro se.  Plaintiffs' inaction with respect to their cases is inconsistent with an intent to proceed with their lawsuits.  Indeed, the New York state court overseeing the coordinated

---

[4] In cases in which plaintiffs' counsel have withdrawn from representation, it can be inferred that their previous certification of these cases under the Court's case management order has also been withdrawn.

4

proceeding involving Neurontin claims faced a similar situation after many plaintiffs' counsel withdrew, and that court ultimately dismissed the claims of most of the remaining unrepresented plaintiffs for failure to prosecute because – like here – plaintiffs had taken hardly any action to move their claims forward after their counsel had withdrawn.  Further, as one of plaintiffs' former counsel has explained, some plaintiffs have failed to maintain regular contact or respond to inquiries about their claims.  At a June 29, 2012 hearing, Mr. Jack Harang stated that "some [plaintiffs], as I looked back at some of these files, just don't respond at all . . . ."  (6/29/12 Hearing Tr. at 29:5-15.)

Even though it appears some unrepresented plaintiffs do not intend to pursue their claims, it is unlikely they will independently file voluntary dismissals without action by this Court because they either lack the capacity and knowledge to do so or they have failed to stay informed as to the status of their cases.  Accordingly, the Court should enter an order for the purpose of identifying which of the remaining unrepresented plaintiffs have a serious intent to pursue their claims.  Otherwise, remanding such cases to their respective transferor courts would result in a waste of the parties' and courts' resources.

Specifically, Pfizer submits plaintiffs should sign and submit the proposed certification attached as Exhibit A.  This proposed certification has three parts:  First, because plaintiffs have not disclosed successor counsel, they should certify whether they intend to proceed with their claims on a pro se basis.  If they do not intend to proceed, dismissal is appropriate.  Second, plaintiffs should certify that they have reviewed the complaint filed on their behalf and, to the best of their knowledge, there is a reasonable basis in fact and law for all allegations asserted therein.  Such a requirement is both consistent with this Court's previous case management orders and Federal Rule of Civil Procedure 11, which requires that all pleadings be supported by a signature that makes certain minimal representations to the Court.  Even though plaintiffs' pleadings were originally signed by counsel, their counsel has since withdrawn, and therefore plaintiffs must attest that their pleadings comply with Rule 11 if they intend to proceed as pro se litigants.  Third, plaintiffs should acknowledge that they understand that they may be liable for

costs and attorneys' fees for pursuing a claim without legal or factual basis. This is also consistent with Rule 11 and other laws that support sanctions against a party for pursuing a claim without basis in law or fact.

This proposed certification process is reasonable and necessary to identify the plaintiffs that intend to proceed with their lawsuits.

## II.     This Court Should Require Plaintiffs to Produce a Declaration from a Specific Causation Expert

In addition, Pfizer submits that cases in which plaintiffs have no reasonable possibility of success should be dismissed in a coordinated manner in this MDL and should not be remanded. Otherwise, numerous different judges from around the country will be forced to waste resources adjudicating several cases that are of dubious merit. Accordingly, Pfizer respectfully requests that this Court order each unrepresented plaintiff to produce a signed declaration of a qualified medical expert stating that he or she will testify that Neurontin was the specific cause of plaintiff's alleged injury. If plaintiffs cannot produce such evidence, their cases should be dismissed because there is no reasonable possibility their claims can survive summary judgment.

Based on other pro se Neurontin cases, it is reasonable to conclude that most of the pro se plaintiffs will not meet their burden of production of a case specific expert at the summary judgment stage. For example, this Court remanded the cases of pro se plaintiffs Sumait and Fenelon, who were previously represented by the Finkelstein firm, to the Southern District of New York. (*See* Conditional Remand Order (attached as Ex. D).) After remand, the transferor court set a deadline for plaintiffs to disclose the identities and reports of experts, as required by Rule 26(a)(2)(A) and (B). Plaintiffs failed to identify an expert and Pfizer filed a motion for summary judgment because plaintiffs could not establish a genuine issue of fact as to the issue of specific causation. (*See Sumait* Mot. for Summary Judgment (attached as Ex. E); *Fenelon* Mot. for Summary Judgment (attached as Ex. F).) In ruling on Pfizer's motion, the magistrate judge in those cases explained that causation must be proven with competent expert testimony. (*See Sumait* Summary Judgment Order, at 6 (attached as Ex. G); *Fenelon* Summary Judgment Order,

at 7 (attached as Ex. H).)  Because plaintiffs failed to disclose any expert testimony, the magistrate judge granted Pfizer's motion for summary judgment and the district judge affirmed. (*See id.*)

Likewise, in *Lynch v. Pfizer, Inc., et al.*, another case involving a pro se plaintiff remanded to the Western District of Texas, the plaintiff failed to disclose any expert testimony by the deadline set by the transferor court.  Accordingly, Pfizer filed a motion for summary judgment, *inter alia*, because plaintiff could not create a genuine issue of fact as to the element of specific causation.  (*See Lynch* Mot. for Summary Judgment (attached as Ex. I).)  In ruling on that motion, the district judge explained, "Ordinarily in a product liability action, 'expert testimony is needed to satisfy the reasonable medical probability standard for establishing a causal link' between the product at issue and the plaintiffs' injuries.'"  (*See Lynch* Summary Judgment Order, at 3 (attached as Ex. J) (quoting *Anderson v. Siemens Corp.*, 335 F.3d 466, 474 (5th Cir. 2003)).)  Accordingly, the court held that because "Plaintiff has failed to offer any expert testimony in support of her claims, or to even identify an expert who is willing to testify on her behalf," summary judgment in favor of Pfizer was appropriate.  (*See id.* at 4.)

Plaintiffs' claims cannot survive in the absence of expert testimony on the issue of specific causation, and pro se plaintiffs in this litigation typically will not produce expert testimony as to the issue of specific causation.  As such, it is likely that Pfizer is entitled to a dismissal or summary judgment – regardless of whether plaintiffs are required to disclose their preliminary experts at this stage or after remand.  Accordingly, Pfizer's proposal that plaintiffs disclose specific causation experts at this time will not affect the outcome in these cases; it will merely arrive at the outcome through more speedy and efficient means.

In essence, the choice now before this Court comes down to two options: (1) enter the case management order proposed by Pfizer that will – in a consolidated and efficient manner – screen the cases that have no reasonable possibility of success or (2) shift the burden of resolving meritless cases to multiple transferor courts across the country who are unfamiliar with the background of these cases and will be forced to, at minimum, set deadlines for disclosure of

experts, consider the parties' summary judgment briefs, and rule on summary judgment motions in multiple cases. Under either scenario, the ultimate outcome will be the same, but the first option will be far more efficient and promote the goals of this MDL and the Federal Rules of Civil Procedure.

In addition to being consistent with prior case management efforts of this Court, other courts have adopted similar requirements in analogous pharmaceutical cases. For example, in *In re: Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig.*, which was a case that involved allegations that a pharmaceutical medication caused heart attacks, strokes, and other injuries, the court required plaintiffs to "serve a Rule 26(a)(2) case specific expert report regarding specific causation, signed and sworn to by a physician or other medical expert" in order to avoid dismissal. (*See, e.g.*, Ex. B, No. M:05-CV-01699, Pretrial Order No. 29, at 2 (N.D. Cal. Aug. 1, 2008).) The court required such a report to contain, *inter alia*, "[a] list of the plaintiff's medical records reviewed by the expert prior to the preparation of the Case-Specific Expert Report . . . ." (*Id.*) The court then ordered that any plaintiff who failed to submit a case-specific expert report "will be subject to having his or her claims, as well as any derivative claim(s), dismissed with prejudice . . . ." (*Id.*)

Similarly, in *In re Rezulin Prods. Liab. Litig.*, No. 00 Civ. 2843, 2005 WL 1105067, at *1 (S.D.N.Y. May 9, 2005), a case involving allegations that a pharmaceutical medicine caused liver injuries, the court "require[d] plaintiffs to produce case-specific expert reports" in the MDL court. In so ordering, the court explained that "this course is essential to the fair and efficient administration of this litigation." *Id. See also, e.g.*, *Acuna v. Brown & Root Inc.*, 200 F.3d 335 (5th Cir. 2000) (affirming the district court's use of a pre-trial scheduling order requiring plaintiffs to submit an expert affidavit establishing certain facts or face dismissal); *Baker v. Chevron USA, Inc.*, No. 1:05-CV-227, 2007 WL 315346 (S.D. Ohio Jan. 30, 2007) (explaining courts are authorized to enter pretrial orders requiring plaintiffs to produce expert affidavits in order "to identify and cull potentially meritless claims and streamline litigation in complex cases involving numerous claimants"); *In re Love Canal Actions*, 547 N.Y.S.2d. 174

(N.Y. Sup. Ct. 1989) (ordering plaintiffs to submit, *inter alia*, reports or affidavits of a physician or other qualified expert demonstrating that plaintiff's alleged injury was, in fact, caused by chemicals from the old Love Canal landfill).

As the above-cited cases demonstrate, requiring plaintiffs to disclose a specific causation expert in this MDL is not only reasonable and supported by precedent, it is actually a less rigorous requirement than what has been imposed by other MDL courts in similar circumstances.

Finally, considering that plaintiffs can submit their expert declaration through this Court's electronic filing system or by mail, it will place no greater burden on them to disclose their expert in this MDL court than in the transferor court.  Pfizer's proposed case management order will impose no more burden on plaintiffs than what is required by law to establish their respective claims.  Accordingly, this Court should adopt Pfizer's case management proposal in its entirety.

## CONCLUSION

For the reasons stated above, this Court should require all unrepresented plaintiffs with cases still pending in this MDL to do the following: (1) certify that they intend to proceed by signing and filing the proposed declaration attached as Exhibit A and (2) file a signed declaration by a qualified medical expert stating that he or she will testify that Neurontin was the specific cause of plaintiff's alleged injury.  Both submissions should be due 60 days from entry of the order, and plaintiffs should be advised that their failure to comply with all provisions of the Court's case management order will result in dismissal of their claims with prejudice.

Dated: October 15, 2012

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

-and-

ROPES & GRAY LLP

By: /s/ Justin J. Wolosz
    Justin J. Wolosz
    BBO # 643543

Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Email: justin.wolosz@ropesgray.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on October 15, 2012.

/s/ Justin J. Wolosz
Justin J. Wolosz