# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CYNTHIA ULETT LYNCH, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. WA-07-CV-00169-WSS |
| PFIZER INC, ET AL., | § § § | |
| Defendants. | § | |

### DEFENDANTS PFIZER INC, PHARMACIA CORPORATION, AND G.D. SEARLE LLC'S MOTION FOR SUMMARY JUDGMENT

Defendants Pfizer Inc, Pharmacia Corporation, and G.D. Searle LLC (collectively, "Pfizer") respectfully submit this Motion for Summary Judgment. This Court should grant summary judgment in favor of Pfizer for at least three independent reasons. First, because Plaintiff failed to designate any expert supporting her claims by the applicable deadline, she cannot establish that the prescription medicine Neurontin is capable of causing the type of injury she alleges (general causation) or that it caused her specific alleged harm (specific causation). Second, the Neurontin label is presumptively adequate under Texas Civil Practice and Remedies Code section 82.007; Neurontin's label was approved by the U.S. Food and Drug Administration ("FDA"), and Plaintiff cannot rebut the presumption of adequacy because none of the narrow statutory exceptions apply here. Third, there is no genuine issue of fact as to the necessary element of proximate causation because Plaintiff cannot show that an alternative warning would have affected her physician's decision to prescribe Neurontin. For all these reasons, summary judgment is required.

## BACKGROUND

This is a pharmaceutical failure-to-warn case in which Plaintiff alleges that she incurred personal injuries from using Bextra and Neurontin, two prescription medicines manufactured by Pfizer. (*See* Compl. at 3-4.) Plaintiff commenced this action on April 5, 2007 by filing a *pro se* Complaint in the 169th Judicial District Court of Bell County, Texas.

With respect to Neurontin, the Complaint alleged Plaintiff was prescribed Neurontin in 2004 in order to treat "pressure in her head from [an] accident." (*Id.* at 7.) She filled only one Neurontin prescription on August 24, 2004 for 100mg one time per day. She claimed that, after taking Neurontin for fifteen days, she "was having seizures, [and] could not move her hands and feet." (*Id.*) However, there is no mention of Plaintiff experiencing any seizure-like symptoms in the medical records that were produced or collected in this litigation.

Pfizer timely removed the lawsuit to this Court on May 24, 2007. (*See* Notice of Removal [Dkt. No. 1].) On July 9, 2007, the Judicial Panel on Multidistrict Litigation ("JPML") severed Plaintiff's claims related to Bextra and Neurontin and transferred them to respective multidistrict litigations ("MDLs") pending in the Northern District of California (*In re Bextra & Celebrex Mktg., Sales Practices & Prods. Liab. Litig.*) and the District of Massachusetts (*In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*).

Unlike the Plaintiff here, the vast majority of other plaintiffs with personal injury claims consolidated in the Neurontin MDL "allege[d] that they, or their decedents, suffered suicide-related injuries when their doctors prescribed the drug Neurontin" and "that Neurontin caused behavioral disturbances, depression, and ultimately suicidal actions (including completed suicide) . . . ." *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 612 F. Supp. 2d 116,

2

121 (D. Mass. 2009). As such, the MDL Court considered and issued *Daubert*[1] rulings as to suicidality experts who were designated to testify about issues of general causation – *i.e.*, "whether Neurontin has the capacity to cause the alleged suicide-related events." *Neurontin*, 612 F. Supp. at 122. Plaintiff in this case, however, has not alleged that she suffered any suicide-related injuries. (*See, generally,* Compl.) In the Neurontin MDL, no plaintiff disclosed, and the MDL Court never considered, expert testimony related to whether Neurontin can cause seizure-like symptoms of the type alleged by Plaintiff here.

While pending in the Northern District of California, Plaintiff's Bextra claims were dismissed with prejudice due to Plaintiff's failures to provide certain discovery and comply with court orders, and her requests for relief from that judgment were denied both by the Bextra MDL court, and by this Court. (*See* Order Den. Pl.'s Mot. for Relief from J. or Order [Dkt. No. 17].)

On June 6, 2011, the JPML entered a conditional order remanding Plaintiff's claims related to Neurontin back to this Court. On October 3, 2011, this Court entered a scheduling order that set pretrial deadlines for this case. (*See* Scheduling Order [Dkt. No. 30].) On February 24, 2012, the Court amended that scheduling order to require that Plaintiff "shall provide [her] designation of testifying experts to the other parties by no later than March 15, 2012" [Dkt. No. 37], and it later extended Plaintiff's deadline for expert disclose to March 29, 2012 [Dkt. No. 41]. Even though that deadline has now passed, Plaintiff has failed to produce any report or identify any expert who will testify with regard to elements of her claims that she will bear the burden to prove at trial, including general causation and specific causation.

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

3

## **STANDARD OF REVIEW**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted where there is no genuine issue as to any material fact and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 148 (5th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once a motion for summary judgment has been filed, the nonmoving party may not rest on mere allegations or denials in the pleadings, but must present affirmative evidence setting forth specific facts in order to demonstrate the existence of a genuine issue for trial. *See Celotex*, 477 U.S. at 322-23. The nonmovants' burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, or the mere existence of a non-material factual dispute. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). Where the record as a whole could not lead a rational jury to find for the nonmoving party, there is no genuine issue for trial and summary judgment in favor of the defendant must be entered. *Wheeler v. Miller*, 168 F.3d 241, 247 (5th Cir. 1999). In a case involving issues of whether a prescription medicine can cause a particular injury, a defendant pharmaceutical manufacturer is entitled to summary judgment where it "demonstrat[es] an absence of [expert] evidence regarding general causation." *Wells v. SmithKline Beecham Corp.*, No. A-06-CA-126-LY, 2009 U.S. Dist. LEXIS 21251, at *21 (W.D. Tex. Feb. 18, 2009), *aff'd*, 601 F.3d 375 (5th Cir. 2010).

# ARGUMENT

I.   **Plaintiff Cannot Establish a Genuine Issue of Fact as to General or Specific Causation Because She Has Failed to Disclose Any Expert Testimony**

Pfizer is entitled to summary judgment because Plaintiff has no expert testimony to establish either general or specific causation, both of which are essential elements of her claims under Texas law. *Wells*, 2009 U.S. Dist. LEXIS 21251, at *16 ("Drug cases often turn on whether the product is capable of causing a plaintiff's injury. In such a case, a plaintiff must prove both general and specific causation." (citation omitted)); *see also Copley v. Smith & Nephew, Inc.*, No. H-97-2910, 2000 U.S. Dist. LEXIS 22448, at *2 n.1 (S.D. Tex. Feb. 1, 2000) ("Causation is an essential element of all product liability causes of action, regardless of the theory asserted."). To prove causation, Plaintiff must show both that the alleged harm she experienced would not have occurred "but [ ] for" her use of Neurontin *and* that it was a "substantial cause of the event in issue" – not merely a contributing factor. *Wells*, 2009 U.S. Dist. LEXIS 21251, at *14 (citing *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007)). In a pharmaceutical product liability case, such as this case, a plaintiff must present evidence that her exposure to the defendant's product "more than . . . doubl[ed] . . . the risk" of incurring the alleged injury. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997).

Because this case involves complex issues of medical causation, Texas law requires Plaintiff to prove general and specific causation through expert testimony. *See Hilton v. Matrixx Initiatives, Inc.*, No. 4:04-CV-519-Y, 2007 U.S. Dist. LEXIS 73264, at *5 (N.D. Tex. Feb. 20, 2007) (in a case involving allegations that ingestion of a pharmaceutical product caused a permanent loss of plaintiff's senses of smell, granting "summary judgment in favor of the defendants due to the lack of reliable causation testimony"); *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 830 (E.D. Tex. 2002) ("Evidence of general causation must be

5

provided in the form of expert testimony . . . ."); *see also Current v. Atochem N. Am., Inc.*, No. W-00-CA-332, 2001 U.S. Dist. LEXIS 26241, at *18 (W.D. Tex. Sept. 18, 2001) (Smith, J.) ("It is clear that without [an expert's] testimony, the Plaintiffs cannot meet their burden of proof on the causation element."); *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119-20 (Tex. 2004) (holding that cases where the alleged causal connection between the defendant's conduct and the plaintiff's injury is "beyond the jury's common understanding . . . require expert testimony" in order for the plaintiff's claims to survive summary judgment).

Accordingly, Plaintiff's claim that Neurontin, as opposed to some other condition or exposure, caused seizure-like symptoms can only be established by an opinion from a qualified medical professional applying a reliable methodology. *See Copley*, 2000 U.S. Dist. LEXIS 22448, at *22 ("Expert testimony is required on the causation element where the issue is one a lay jury ordinarily would not be competent to make."); *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982) ("Expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of the layman."). Because Plaintiff has not proffered and cannot proffer any such admissible expert testimony, she cannot create a genuine issue of fact sufficient to survive summary judgment.

Indeed, the court overseeing the Neurontin MDL granted summary judgment in favor of Pfizer in a case involving similar circumstances. In *In re Neurontin Marketing & Sales Practices & Products Liability Litigation*, No. 04-cv-10981-PBS, 2010 WL 3169485 (D. Mass. Aug. 10, 2010), the plaintiff argued that "[d]uring 2002 and 2003, while still taking Neurontin, plaintiff began to experience more seizure-like symptoms," but she disclosed no expert testimony that could establish a causal link between her alleged injury and Neurontin. *Id.* at *1. Accordingly, the MDL Court granted summary judgment in favor of Pfizer because – as is the case here –

6

"there [was] no evidence in the record to support [plaintiff's] claim that Neurontin specifically caused her injuries." *Id.* at *4.

The requirement of expert testimony to establish a genuine issue of fact as to complex medical causation issues cannot be relaxed simply because Plaintiff has attempted to proceed in this case on a *pro se* basis. Indeed, other Texas courts have dismissed claims of *pro se* claimants for failure to present expert testimony. In *Rasheed v. Church & Dwight Co.*, No. 5:11CV80, 2012 U.S. Dist. LEXIS 10736 (E.D. Tex. Jan. 30, 2012), for example, a plaintiff brought an action alleging that a condom manufacturer's product caused injuries to his genitals. *Id.* at *2. At the summary judgment stage, the plaintiff failed to "produce[] any expert testimony or other reliable summary judgment evidence of general causation" or "any evidence indicating that [the defendant's] condom caused specific injury to him." *Id.* at *9. Accordingly, the magistrate judge recommended that summary judgment in favor of defendant be granted, and the district court adopted that recommendation. *Id.* at *11; *accord Rasheed v. Church & Dwight Co.*, No. 5:11CV80, 2012 U.S. Dist. LEXIS 10739, at *22 (E.D. Tex. Jan. 12, 2012). In granting summary judgment, the court rejected the plaintiff's argument that he had "been discriminated against because of his *pro se* status." *Rasheed*, 2012 U.S. Dist. LEXIS 10736, at *4-5.

For the same reasons, Plaintiff's failure in this case to disclose any expert testimony that could create a genuine issue of fact as to the necessary elements of general and specific causation requires that summary judgment be entered in favor of Pfizer.

II. **Plaintiff Cannot Rebut the Presumption of Adequacy Afforded to Neurontin's FDA-Approved Labeling Under Texas Law**

Plaintiff's sole cause of action is grounded in the strict products liability theory of failure to warn. (*See* Compl. at 5 ("Plaintiff alleges that upon these occasions, Plaintiff was not warned of the dangerous side effects of the drugs BEXTRA and NEURONTIN.").) However, Texas law

7

provides a statutory presumption that pharmaceutical manufacturers cannot be held liable for failing to warn[2] of alleged risks associated with their products if the accompanying label was approved by the FDA. Texas Civil Practice and Remedies Code section 82.007 provides, in relevant part:

> (a) In a products liability action alleging that an injury was caused by a failure to provide adequate warnings or information with regard to a pharmaceutical product, there is a rebuttable presumption that the defendant or defendants, including a health care provider, manufacturer, distributor, and prescriber, are not liable with respect to the allegations involving failure to provide adequate warnings or information if:
>
>> (1) the warnings or information that accompanied the product in its distribution were those approved by the United States Food and Drug Administration for a product approved under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Section 301 et seq.), as amended, or Section 351, Public Health Service Act (42 U.S.C. Section 262), as amended . . . .

Tex. Civ. Prac. & Rem. Code Ann. § 82.007 (West 2011). Here, there is no dispute that the Neurontin label was approved by the FDA at the time Plaintiff received her prescription in 2004 and, therefore, it is presumed to be adequate.[3] *See* 21 U.S.C. § 355(a), (b)(1)(F) (providing that a drug manufacturer may not market a new drug before receiving FDA approval with respect to, inter alia, "the labeling proposed to be used for such drug").

---

[2] To the extent Plaintiff seeks recovery under a theory of design defect, her claims also are barred by Texas's adoption of Restatement (Second) of Torts section 402A, comment k, which precludes liability for design defect with respect to unavoidably unsafe products such as prescription medicines like Neurontin. *See Woodhouse v. Sanofi-Aventis U.S. LLC*, No. EP-11-CV-113-PRM, 2011 U.S. Dist. LEXIS 98062, at *9-11 (W.D. Tex. June 23, 2011). In addition, Plaintiff cannot establish a claim for design defect because there is no "evidence of a safer alternative design." *Gerber v. Hoffmann-La Roche Inc.*, 392 F. Supp. 2d 907, 922 (S.D. Tex. 2005).

[3] Under the learned intermediary doctrine, it is irrelevant whether Plaintiff actually read the warning that accompanied Neurontin. *See Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 185 (Tex. 2004) ("[A] pharmaceutical manufacturer is not required to warn patients of the dangers of a prescription drug . . . ."). Rather, Pfizer satisfied its duty to warn by providing an adequate warning to Plaintiff's physician. *See Sanofi-Aventis*, 2011 U.S. Dist. LEXIS 98062, at *7 ("'[P]harmaceutical companies . . . [that] sell [ ] prescription drugs are required to warn only the prescribing physician, who acts as a "learned intermediary" between the manufacturer and consumer.'" (citations omitted)
*(cont'd)*

8

Because section 82.007(a) creates a presumption in favor of Pfizer, "it shifts the burden of producing evidence to the party against whom the presumption operates," which is Plaintiff in this instance. *Ackermann v. Wyeth Pharms.*, 471 F. Supp. 2d 739, 749 (E.D. Tex. 2006), *aff'd*, 526 F.3d 203 (5th Cir. 2008). The presumption of non-liability set forth in this statute can only be rebutted where a plaintiff can present "some evidence" that one of five enumerated exceptions applies. *See id.* at 749-50; *see also Murthy v. Abbott Labs.*, No. 4:11-cv-105, 2012 U.S. Dist. LEXIS 29683, at *39 (S.D. Tex. Mar. 6, 2012) (indicating that "under general principles of Texas statutory interpretation, the exceptions to § 82.007(a) enumerated in § 82.007(b) should be treated as exclusive"). Because Plaintiff in this case cannot do so, Pfizer is entitled to summary judgment. *See, e.g.*, *Ebel v. Eli Lilly & Co.*, 536 F. Supp. 2d 767, 775-78 (S.D. Tex. 2008), *aff'd*, 321 F. App'x 350 (5th Cir. 2009); *In re Norplant Contraceptive Prod. Liab. Lit.*, MDL No. 1038, 1997 U.S. Dist. LEXIS 10377, at *2-3 (E.D. Tex. Feb. 18, 1997).

### III. There is no Genuine Issue of Fact That Any Alleged Failure to Warn Affected Her Physician's Prescribing Behavior

Summary judgment also is appropriate for the independent reason that there is no genuine issue of fact as to whether any alleged "failure to warn was a producing cause of the injury." *Ackermann v. Wyeth Pharms.*, 526 F.3d 203, 208 (5th Cir. 2008). In order to create a genuine issue of fact as to this element, a plaintiff bears the burden to present "evidence to suggest that [her prescribing physician] was unaware of the risks engendered by [the medicine's] use at the time [her prescribing physician] prescribed the drug or that an alternative warning would have changed [her prescribing physician's] decision to prescribe" the medicine at issue. *Ebel v. Eli Lilly & Co.*, 321 F. App'x 350, 356 (5th Cir. 2009). In this case, however, Plaintiff cannot

---
*(cont'd from previous page)*
(alterations in original)).

9

present evidence creating a genuine issue of fact as to whether her physician was unaware of any alleged risks associated with Neurontin or that an alternative warning would have changed her physician's prescribing behavior. This absence of evidence as to the element of causation is fatal to her claim because "she, as the plaintiff, bears the burden of establishing that the allegedly inadequate warning is the producing cause of the harm." *Id.* Thus, summary judgment in favor of Pfizer also is appropriate for this independent reason. *See id.* at 358 (granting summary judgment against plaintiff as to her product liability claims concerning a prescription medicine because she "presented no evidence to suggest that [the prescribing physician] would have changed either [the prescribing physician's] decision to prescribe Zyprexa or [the prescribing physician's] risk-benefit analysis had [the prescribing physician] received some alternative warning concerning Zyprexa").

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that this Court grant its motion for summary judgment.

Dated: April 3, 2012

        Respectfully submitted,

        GORDON & REES, L.L.P.

        By:   /s/ Leslie A. Benitez
           Kenneth J. Ferguson
           State Bar No. 6918100
           Leslie A. Benitez
           State Bar No. 02134300
           J. Andrew Hutton
           State Bar No. 24012878
           816 Congress Avenue, Suite 1510
           Austin, TX 78701
           512 (391-0197) (Telephone)
           512 (391-0183) (Facsimile)

                                **ATTORNEYS FOR PFIZER INC,**
                                **PHARMACIA CORPORATION, AND**
                                **G.D. SEARLE LLC**

<b><u>CERTIFICATE OF SERVICE</u></b>

I hereby certify that on this 3rd day of April 2012, a true and correct copy of the foregoing was electronically filed with the Clerk of Court for the Western District of Texas using the CM/ECF system, and is available for viewing and downloading from the ECF system. Notice of Electronic Case Filing has been sent automatically to all parties listed in the Service List in effect on the date of electronic filing, which constitutes service of same, and satisfies the requirements of Rule 5 of the Federal Rules of Civil Procedure.

                                                             */s/ Leslie A. Benitez*_____