UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
In re:  NEURONTIN MARKETING, SALES :  MDL Docket No. 1629
PRACTICES AND PRODUCTS :
LIABILITY LITIGATION :  Master File No. 04-10981
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:  Judge Patti B. Saris
THIS DOCUMENT RELATES TO: :
:  Magistrate Judge Leo T.
UNREPRESENTED PLAINTIFFS :  Sorokin
:
:  **LEAVE TO FILE**
:  **GRANTED ON 10/25/12**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DEFENDANTS' REPLY TO PRODUCT LIABILITY PLAINTIFFS' CASE
MANAGEMENT PROPOSAL FOR UNREPRESENTED PLAINTIFFS**

Defendants Pfizer Inc. and Warner-Lambert Company LLC (together, "Pfizer" or "Defendants") submit this brief reply to the proposal and objections filed by the Plaintiffs' Steering Committee ("PSC") ("PSC Proposal") [Doc. 4038] in response to Defendants' Case Management Proposal for Unrepresented Plaintiffs [Doc. 4033]. The PSC's response disregards the long history of this litigation and many lessons learned over the years, the unnecessary burden and expense the approach they seek would impose on courts across the country as well as on Pfizer and the unrepresented parties, and the practicality and fairness of Pfizer's proposal.

Specifically, Pfizer's proposal – that each unrepresented plaintiff provide, within 60 days, (1) a declaration that he or she intends to proceed with the litigation and understands that he or she may be liable for costs and attorneys' fees and (2) a declaration signed by a case-specific expert that he or she will testify that Neurontin caused the plaintiff's alleged injury – provides a coordinated and efficient way to identify for remand to transferee courts only those cases, among the approximately 60 pending cases involving unrepresented plaintiffs, in which the plaintiffs both intend to proceed and can meet the basic requirement of designating an expert. This approach could be effectively and efficiently overseen by this Court through its existing infrastructure and is likely to result in many fewer than 60 cases being remanded to other district

courts for further proceedings.  It will minimize the unnecessary docketing, motion practice, and in some cases hearings, in courts around the country, that have been required in the previously remanded pro se actions, virtually all of which have resulted in dismissals for failure to prosecute or designate an expert.

Even in the single pro se case that the PSC cites, *Teater*, in the District of Oregon, Plaintiff has not yet disclosed an expert and has indicated she does not have one, even though discovery is closing in November 2012.  Moreover, the fact that one case out of all of the previously remanded pro se cases now involves counsel (incidentally, appointed counsel because the plaintiff could not find an attorney) should not drive the procedure for managing the 60 remaining cases.  These plaintiffs have had months, if not years, to find new counsel and have not done so, and the only plaintiffs' attorneys with experience with these cases have withdrawn or declined to represent them.

The PSC generally supports as an alternative to immediate remand the first requirement of Pfizer's proposal, that is, a declaration or certification from the plaintiff that he or she has reviewed the medical records and intends to proceed.  Based on past experience, this step alone is insufficient and has resulted in hundreds of cases remaining on the docket here and in the New York coordinated litigation, only to be ultimately dismissed after plaintiffs fail to appear, prosecute, or designate experts.  The Finkelstein firm is well aware of this pattern and it is hard to understand their objection to adding the reasonable next step to the pre-remand process.  The PSC contends only that, "to order now-*pro se* plaintiffs to produce case-specific expert witness causation reports in the MDL rather than in their transferor courts would impose on them conditions that the Court has previously rejected and would put them in a worse position than the *pro se* plaintiffs who were never represented and whose cases were remanded." (PSC Proposal ¶ 6.)  Plaintiffs' reasoning is neither logical nor supportive of these unrepresented parties' own best interests.  This Court is, of course, free to adjust its case management procedures to fit the litigation as it exists over time and it has done so in the past.

Pfizer has no doubt that the irony is not lost on the Court that counsel who have moved to

withdraw from these cases, or have refused to be retained by these Plaintiffs because their cases are not viable, are supporting an approach whereby the Court would transfer scores of those pro se plaintiffs to district courts around the country to have dockets opened or re-opened, judges assigned, scheduling orders set, transfer motions possibly made, and expert designations required.  Pfizer's experience over the last few years with exactly that process, and the significant amount of inefficiency and waste it involved for all parties and for many different federal courts (*see, e.g.*, Defendants' Proposal at 6-7), strongly favors the modified approach it is suggesting the Court adopt now.

The litigation has advanced to the point that plaintiffs' disclosures of case-specific experts will be the critical next step that will determine whether a case can continue.  Pfizer is seeking only to manage that step in this coordinated litigation in a streamlined way that will allow the unrepresented plaintiffs to evaluate their cases and decide how they want to proceed pursuant to a clear directive from this Court and within a reasonable timeframe.  This approach is consistent with the MDL statute and objectives and with the overall shared goal of all parties and the judicial system of conserving resources and reaching finality in litigation.

Furthermore, under its proposal, Pfizer will agree to waive its rights to seek costs and fees in any of the cases dismissed or discontinued at this stage, before remand.  This too will benefit plaintiffs who might otherwise choose to simply sign a certification and blindly proceed with a case for which they have and will have no expert and no basis to continue.

In conclusion, Pfizer respectfully requests that this Court enter an order requiring all unrepresented plaintiffs with cases still pending in this MDL to, within 60 days of entry of the order: (1) certify that they intend to proceed by signing and filing the proposed declaration, and (2) file a signed declaration by a qualified medical expert stating that he or she will testify that Neurontin was the specific cause of plaintiff's alleged injury.

Dated:  October 25, 2012

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
       Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

-and-

ROPES & GRAY LLP

By: /s/ Justin J. Wolosz
       Justin J. Wolosz
       BBO # 643543

Prudential Tower
800 Boylston Street
Boston, MA  02199
Tel:  (617) 951-7000
Email:  justin.wolosz@ropesgray.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on October 25, 2012.

/s/ Justin J. Wolosz
Justin J. Wolosz

4