UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
In re: NEURONTIN MARKETING, SALES       : MDL Docket No. 1629
PRACTICES AND PRODUCTS                  :
LIABILITY LITIGATION                    : Master File No. 04-10981
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
: Judge Patti B. Saris
:
THIS DOCUMENT RELATES TO:               :
: Magistrate Judge Leo T.
*Telles v. Pfizer Inc.*, No. 1:07-cv-11156-PBS. : Sorokin
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

In accordance with this Court's October 17, 2012 Order [4036] and Federal Rules of Civil Procedure 37(b) and 41(b), Defendant Pfizer Inc. ("Defendant" or "Pfizer") submit this memorandum in support of its motion to dismiss the claims of Plaintiffs Gloria Telles, individually and as next friend of Jacob Telles ("Plaintiffs").

**PRELIMINARY STATEMENT**

Although Plaintiffs provided some initial responses to Pfizer's template discovery requests on January 18, 2011, those responses were materially incomplete and nonresponsive in several key respects. In other cases in this multidistrict litigation, the Court has held that a plaintiff's failure to fully comply with template discovery obligations may provide grounds for dismissal or other sanctions. In this case, despite this Court's order that Plaintiffs must provide complete template discovery responses by January 31, 2011, multiple deficiency letters sent by Pfizer since then, and this Court's recent order that a failure to serve complete template discovery by October 31, 2012 may result in dismissal [4036], Plaintiffs still have not provided complete template discovery responses. Thus, the Court should dismiss their claims both as a sanction for failure to comply with a Court Order and for failure to prosecute.

Indeed, Plaintiffs' longstanding failure to correct deficiencies in basic template discovery are all the more egregious in light of the surrounding circumstances: this case has been pending

for more than five years; the Court ordered that all template discovery should be completed in these cases by January 31, 2011 (*see* Revised Scheduling Order [3141], at 2); Pfizer has sent multiple deficiency letters to Plaintiffs' counsel that have gone unanswered (*see, e.g.*, Ex. A, K. Lyon letter dated 5/4/12; Ex. B, C. Stevens letter dated 10/5/12); and this Court explicitly warned Plaintiffs directly that their failure to provide complete template discovery may result in dismissal – a warning they failed to heed.  Accordingly, at this late stage in the litigation, the appropriate sanction for Plaintiffs' violations of the Court's orders is dismissal, and involuntary dismissal is also warranted on the ground of failure to prosecute.

## BACKGROUND

On June 19, 2006, this Court directed all plaintiffs in this multidistrict litigation to respond to template discovery.[1]  (*See* Discovery Order No. 2 [372].)  Plaintiffs in this case provided some discovery responses on January 6, 2011, and they also provided some limited supplemental discovery on May 5, 2011.  (*See generally* Ex. C, Pls.' Interrog. Resps.; Ex. D, Pls.' R.F.P. Resps.; Ex. E, 5/5/2011 W. Boyaki letter.)[2]  However, Plaintiffs' responses were incomplete and nonresponsive in many material respects and lacked several categories of key information – as explained in greater detail below in section I.  In particular, Plaintiffs failed to provide, among other things, full and complete responses to Interrogatories 12 and 14, which requested specific information about Plaintiffs' prescriptions, Plaintiffs' prescribing healthcare

---

[1] The Court has generally summarized the purpose and parameters of template discovery as follows:

> The parameters of "template" discovery in this large multi-district litigation were litigated by the parties and decided upon by the Magistrate Judge in 2006. . . . "Template" discovery was developed by the Magistrate Judge, with input from the parties, as a means of managing discovery for the hundreds of products liability cases filed in the MDL.  Template discovery, in the context of this case, includes production of documents and responses to interrogatories by both parties. As an example, defendants' Request for Production of Documents . . . sought documents such as medical records, lists of medical providers, and medical release forms.

(4/5/11 Order [3390], at 3.)

[2] All exhibits are attached to the accompanying Declaration of Catherine B. Stevens.

providers, and Plaintiffs' medical treatment. Plaintiffs also failed to produce necessary pharmacy and medical records needed to support their claims. For example, Plaintiffs did not produce pharmacy records of the alleged Neurontin prescription or any record documenting the injury alleged in their Complaint. Further, Plaintiffs failed to serve a medical provider list, contrary to the express orders of this Court. Plaintiffs are also missing the necessary authorization to receive records from Texas Health and Human Services, despite repeated requests that Plaintiffs provide this authorization.

In an effort to move discovery forward in these cases, Pfizer sent Plaintiffs' counsel correspondence outlining discovery deficiencies with respect to template discovery and requesting supplementation. For example, Pfizer sent a letter to Plaintiffs' counsel on May 5, 2012, explaining that it still has not received "pharmacy records and other records critically relevant to Plaintiffs' claims" and further explained Plaintiffs had still not provided a Texas Health and Human Services authorization. (*See* Ex. A, K. Lyon letter dated 5/4/12.) Pfizer also sent a letter on October 5, 2012, requesting outstanding discovery and explaining that, if Pfizer did not receive outstanding discovery by October 10, 2012, it would be forced to seek relief from the Court. (*See* Ex. B, C. Stevens letter dated 10/5/12.) Pfizer received no responses to the deficiency letters it had sent in May and October 2012, nor did it receive any supplemental discovery materials from Plaintiffs at that time.

On September 11, 2012, this Court entered a "Final Scheduling Order" providing that motions with respect to certain cases, including this case, must be filed by October 15, 2012 [4026]. Because Pfizer still had not received Plaintiffs' outstanding discovery, it filed a motion to extend the Court's deadline with respect to this case. The Court granted that motion and, in doing so, it ordered:

> Plaintiff [Telles] shall respond to the outstanding discovery requests and shall produce the complete template discovery, to the extent it has not already done so, within fourteen days. If Plaintiff fails to comply with the Court's discovery orders, Plaintiff faces a possible dismissal of its action as a sanction for non-compliance with the discovery rules and/or for a failure to prosecute this action.

(10/17/2012 Electronic Order [4036].) Accordingly, Plaintiffs had until October 31, 2012 to provide the outstanding discovery. That deadline has now come and gone, but the Plaintiffs never served any supplemental discovery nor did they seek an extension from Pfizer or the Court.

## ARGUMENT

### I.   Plaintiffs' Discovery Responses Remain Deficient

Plaintiffs failed to provide complete and adequate responses to template discovery in the following material respects:

#### A.   Plaintiffs Failed To Provide All Required Authorizations

While Plaintiffs submitted some medical authorizations, they did not provide – and have ignored Pfizer's repeated requests that they provide – an authorization from Texas Health and Human Services, which is needed to collect records from that agency. In Discovery Order No. 2, this Court ruled that Plaintiffs should produce documents or authorizations to obtain documents as follows:

> (1) produce those documents in their possession that are responsive to Defendants' requests, as established by the Court's rulings below, (2) provide to Defendants a list that identifies all of the entities that are, or were, in possession of such documents, to the best of Plaintiffs' knowledge; and (3) produce appropriate release forms to the Defendants.

(Discovery Order No. 2 [372], at 4, n.2.) The required authorizations, or the corresponding records, have been routinely provided by other firms in this litigation. (*See* 2/4/11 Report & Recommendation [3276], at 12 (observing that "other plaintiffs' counsel in this MDL have routinely complied with the Court's Order" to provide non-medical authorizations).) Yet Plaintiffs here violated this order by failing to provide all authorizations.

4

### B. Plaintiffs Did Not Fully and Adequately Respond To Interrogatory No. 14

Plaintiffs provided incomplete responses to Interrogatory No. 14, which asked:

> State the name and addresses of witnesses with knowledge of any and all medications (whether prescription or not) or drugs (whether prescription or not) which Plaintiff took . . . at any time during a twenty-year period prior to his/her death. For each prescription, please also state the name of the prescribing health-care professional, the name of the prescription, the prescription dosage, each date that the prescription was prescribed, where the prescription was filled, the reason for the prescription and whether it was effective at treating the condition for which it was prescribed.

(*See, e.g.*, Ex. F, Template Interrog. No. 14.) With regard to this discovery request, the Court has explained, "Interrogatory No. 14 concerns medications taken by the plaintiffs. A response that does not <u>at least</u> include information about Neurontin, and the dates it was used, is insufficient. For many plaintiffs with multiple prescriptions, a complete answer will require a much longer list." (4/5/11 Order [3390], at 17-18 (emphasis in original).)

Not only have the Plaintiffs failed to respond to each category requested in Interrogatory No. 14, they did not even provide the minimal information described in the Court's April 5, 2011 Order. In fact, Plaintiffs did not list a single prescription. (*See* Ex. C, Pls.' Interrog. Resp., No. 14.) Plaintiffs only provided the names and contact information for two non-medical witnesses (apparently the minor plaintiff's siblings) and stated, "They were witnesses to the seizure and the taking of medication. See also attached letters from Walmart." (*Id.*) That response falls far short of providing the necessary information that is responsive to this interrogatory.

The prescription information sought in this interrogatory is of central importance in this case given the allegations that a medication – Neurontin – was the direct cause of Plaintiffs' alleged injuries, but Plaintiffs failed to provide a complete response to each element requested in Interrogatory No. 14. (*See* 4/5/11 Order [3390], at 17 (observing that "responses will only be deemed acceptable if they respond to each element of an interrogatory").)

### C. Plaintiffs Did Not Provide Complete Responses To Interrogatory No. 12 Or A Medical Provider List

Pfizer's Interrogatory No. 12 requested, *inter alia*, that Plaintiffs "[i]dentify every health-

5

care professional or facility that provided any type of consultation or care whatsoever to Plaintiff (whether mental or physical) over the last twenty years and identify the location where such consultation and/or treatment was rendered." The Court has overruled objections to the time periods in these interrogatories. (*See* 2/4/11 Report & Recommendation [3276], at 8-9 (observing that the Court overruled "objections to the time periods in Interrogatory Nos. 10, 12" citing Docket # 372 at 6).)

In response, Plaintiffs provided the names and contact information for only three doctors with no other information. Not only is there no indication that these are the only treating healthcare providers, Plaintiffs omitted much of the additional information requested in this interrogatory, including the type of treatment rendered, the dates and circumstances of treatment, or the names of witnesses with knowledge of treatment.

Similarly, Plaintiffs have not provided a complete list of medical providers, despite this Court's order on June 19, 2006, which states:

> Each Plaintiff shall also produce a list identifying (1) his or her psychiatric medical providers for the twenty years preceding the date of the alleged incident; (2) his or her non-psychiatric medical providers for the ten/five year period defined in Plaintiffs' papers; and (3) each medical provider (doctors, social workers, psychologists, hospitals, etc.) from whom he or she has sought medical records, regardless of whether the requested records have been received.

(Discovery Order No. 2 [372], at 3.) The Court also instructed Plaintiffs to "identify the physicians who prescribed Neurontin to them, as well as the date range(s) of each prescription period." (*Id.* at 4.) Yet the Plaintiffs failed to comply with these directives of the Court.

The Plaintiffs' failure to provide this key information, which is clearly available to them, has significantly impeded Pfizer's efforts to depose and collect potentially relevant records from their treating physicians. Even though Plaintiffs signed some medical authorizations, Pfizer's ability to use them effectively is limited by Plaintiffs' failure to provide complete medical provider lists. This Court has long-recognized the importance of the medical provider lists to basic discovery in this litigation. In fact, when ruling on a motion to compel or dismiss certain

plaintiffs represented by another firm in this litigation, the Court imposed the discovery sanction of dismissal on plaintiffs who had failed to provide medical provider lists. (*See* 4/5/11 Order [3390], at 9, 18, 22.)

## II. Well-Established Law from the First Circuit and This Court Supports Dismissal Of Plaintiffs' Claims

This Court has long recognized that the "orderly management" of this multidistrict litigation "requires the parties to heed the Court's orders and to pursue their claims in a diligent and timely fashion" and that the Court must enforce discovery rules by ordering any appropriate sanction or remedy when parties, such as the Plaintiffs here, violate those orders. (Discovery Order No. 25 [1335], at 5.) With respect to this case in particular, the Court specifically warned Plaintiffs that failure to provide complete responses to template discovery by October 31, 2012 would give rise to "a possible dismissal of its action as a sanction for non-compliance with the discovery rules and/or for a failure to prosecute this action." (10/17/2012 Electronic Order [4036].)

Indeed, in situations like this one – where the violations are repeated, unexcused, prejudicial, and long-standing – any sanction short of dismissal would be insufficient. The First Circuit has repeatedly acknowledged that failure to comply with discovery orders provides adequate grounds for ordering a dismissal with prejudice as a sanction. *See, e.g.*, *Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este*, 456 F.3d 272, 275 (1st Cir. 2006) (noting that "federal courts possess wide-ranging power to sanction parties who repeatedly balk at complying with court-imposed deadlines"). As the First Circuit has observed, "disobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal)." *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002). Dismissal for non-compliance with discovery orders not only protects the rights of the parties, it also vindicates the Court's "strong" "interest in administering its docket." *Id.*; *see also Santiago-Díaz*, 456 F.3d at 277 (recognizing that "the district court has an interest in the efficient management of its docket"). "[C]ourts cannot effectively administer justice unless they are accorded the right to

establish orderly processes and manage their own affairs[, and t]he sanction of dismissal is an important part of the armamentarium that the law makes available to trial courts." *Young*, 330 F.3d at 81. This sanction also serves to "deter others from similar misconduct." *Id.* at 83.

Dismissal is a particularly appropriate sanction for discovery misconduct in the multidistrict litigation context. Courts have recognized that "multidistrict litigation is different because of the large number of cases that must be coordinated, its greater complexity, and the court's statutory charge to promote the just and efficient conduct of the actions." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1222 (9th Cir. 2006) (citing 28 U.S.C. § 1407). "MDL courts must be given greater discretion to organize, coordinate and adjudicate its proceedings, including the dismissal of cases for failure to comply with its orders." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007). These considerations "may tip the balance" in favor of dismissal in the MDL context. *In re PPA*, 460 F.3d at 1222. As such, MDL courts frequently dismiss the claims of plaintiffs who fail to comply with discovery mandates. *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, No. 1:08-cv-04901-JFK, 2009 WL 105502, at *1-2 (S.D.N.Y. Jan. 12, 2009); *In re Baycol Prods. Litig.*, MDL No. 1431, 2007 WL 2744459, at *1-2 (D. Minn. Sept. 17, 2007); *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, 2004 WL 1700618, at *1-2 (S.D.N.Y. July 27, 2004).

Alternatively, failure to diligently prosecute also describes the Plaintiffs' ongoing noncompliance with this Court's orders and overall discovery neglect. As such, Federal Rule of Civil Procedure 41(b) provides an alternative and independent ground for dismissal. As the First Circuit has recognized, "courts – especially trial courts – 'must be given considerable leeway in exercising their admitted authority to punish laggardly or noncompliant litigants.'" *Cintrón-Lorenzo v. Departmento de Asuntos del Consumidor*, 312 F.3d 522, 526 (1st Cir. 2002) (citation omitted). "'[T]his power is necessary to prevent undue delays in the disposition of pending cases, docket congestion, and the possibility of harassment of a defendant.'" *Colokathis v. Wentworth-Douglass Hosp.*, 693 F.2d 7, 9 (1st Cir. 1982) (citaion omitted); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962).

**III.     Plaintiffs' Failure To Comply With Court Orders Warrant Dismissal**

When determining whether violations of discovery orders warrant dismissal, the Court has previously considered five factors:  (1) "the severity of the violation," (2) "the deliberateness of the misconduct," (3) "mitigating excuses," (4) "prejudice to the other side and to the operations of the court," and (5) "the adequacy of lesser sanctions."  *See In re Neurontin Marketing, Sales Practices & Products Liability Litigation*, No. 04-10981-PBS, 2011 U.S. Dist. LEXIS 37212, at *61 (D. Mass. Apr. 5, 2011) (quoting *Robson v. Hallenbeck*, 81 F.3d 1, 2 (1st Cir. 1996)).  All five factors weigh in favor of dismissing the Plaintiffs' claims.

First, Plaintiffs' protracted misconduct and disregard of the Court's orders are severe.  At this point, Plaintiffs have violated two hard deadlines for template discovery set by orders of this Court:  the January 31, 2011 deadline set by the Revised Scheduling Order [3141] and the October 31, 2012 deadline set by the Court's October 17, 2012 Order [4036].  The First Circuit has made clear that even a single violation of a court order "constitutes extreme misconduct" and may warrant dismissal.  *Tower Ventures*, 296 F.3d at 46.

Second, Plaintiffs' pattern of noncompliance, despite having numerous opportunities and time to comply, indicates deliberate misconduct.  As the Court previously observed, a "succession of violations" demonstrates "a general unwillingness to comply with a court-imposed scheduling order" and, therefore, "justif[ies] dismissal.'"  *In re Neurontin*, 2011 U.S. Dist. LEXIS 37212, at *61 (quoting *Robson*, 81 F.3d at 4).  Indeed, the Plaintiffs' long-standing noncompliance – and particularly their failure to produce discovery even after this Court ordered them to do so and warned that dismissal for noncompliance might result – demonstrates a general unwillingness to comply with a discovery schedule.

Third, Plaintiffs have proffered no excuse for their noncompliance with template discovery.  In fact, they have not responded to Pfizer's multiple deficiency letters, nor did they request an extension of any deadline to produce discovery.

Fourth, the Plaintiffs' failure to provide complete discovery has caused Pfizer prejudice.  As this Court has explained, "'[r]epeated disobedience of a scheduling order is inherently

9

prejudicial, because disruption of the court's schedule and the preparation of other parties nearly always results.'" *In re Neurontin*, 2011 U.S. Dist. LEXIS 37212, at *61 (quoting *Robson*, 81 F.3d at 4). Indeed, the Plaintiffs' failures to procure and produce adequate information and materials have inhibited Pfizer's ability to conduct depositions and further discovery. The unreasonable delay caused by Plaintiffs' noncompliance gives rise to a presumption of prejudice – especially in the MDL context where many different interests have been affected. *See In re PPA*, 460 F.3d at 1227-28.

Fifth, any sanction short of dismissal would be ineffective in light of Plaintiffs' ongoing pattern of ignoring this Court's orders. Providing these Plaintiffs with yet another do-over would only aggravate the prejudice to Pfizer and further siphon resources away from the Court. As one MDL court has noted, "a lesser sanction [short of dismissal] would not be as effective in deterring other plaintiffs in this MDL from flouting the Court's discovery orders" and "would divert resources from advancing these MDL proceedings . . . .'" *In re Fosamax*, 2009 WL 105502, at *2 (alteration in original) (citations omitted). Indeed, the First Circuit has acknowledged that lesser sanctions need not be levied before dismissal may be imposed. *See Tower Ventures*, 296 F.3d at 45-46 ("[A] litigant who ignores case-management deadlines does so at his peril.") (citation omitted).

Finally, not only do all the relevant factors weigh in favor of dismissal, this Court has already imposed dismissal on other plaintiffs in this litigation for similar violations as those committed by the Plaintiffs here. For example, the Plaintiffs have not provided a medical provider list, and the Court previously imposed dismissal on plaintiffs represented by another law firm for failing to provide medical provider lists. *See In re Neurontin*, 2011 U.S. Dist. LEXIS 37212, at *65 (affirming dismissal of plaintiffs who "have not filed medical providers lists"). The Court has also acknowledged that other plaintiffs' failure to provide complete answers to certain interrogatories – after the Court has ordered plaintiffs to do so – should result in dismissal. *See id.* at *66-67 (explaining that a response to Interrogatory No. 14 "that does not at least include information about Neurontin, and the dates it was used, is insufficient" and the

failure to provide such information after the Court has ordered plaintiffs to do so "will result in dismissal of the case"); *see also Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 2781 (1976) (per curiam) (observing that dismissal for failure to timely answer written interrogatories "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent").

For all the above reasons, the Court should dismiss the Plaintiffs' claims as a sanction for violating its orders. Fed. R. Civ. P. 37(b)(2)(A)(v). Further, the Plaintiffs' failure to comply with discovery demonstrates a clear lack of interest or intention in proceeding, and therefore failure to prosecute provides an alternative and independent ground for dismissal. Fed. R. Civ. P. 41(b).

## CONCLUSION

For all the foregoing reasons, Pfizer respectfully requests that the Court issue an order dismissing the claims of these Plaintiffs and issuing any other relief the Court deems appropriate.

Dated: November 6, 2012                   Respectfully submitted,

                                                                   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                                                   By: /s/ Mark S. Cheffo
                                                                          Mark S. Cheffo

                                                                  Four Times Square
                                                                  New York, NY 10036
                                                                  Tel: (212) 735-3000

                                                                  -and-

ROPES & GRAY LLP

By: /s/ Justin J. Wolosz
 Justin J. Wolosz
 BBO # 643543

Prudential Tower
800 Boylston Street
Boston, MA  02199
Tel:  (617) 951-7000
Email:  justin.wolosz@ropesgray.com

*Attorneys for Defendant Pfizer Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on November 6, 2012.

/s/ Justin J. Wolosz
Justin J. Wolosz