# United States Court of Appeals
## For the First Circuit

---

No. 11-1806

IN RE: NEURONTIN MARKETING AND SALES PRACTICES LITIGATION

HARDEN MANUFACTURING CORPORATION, individually and on behalf of itself and all others similarly situated; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, d/b/a Blue Cross Blue Shield of Louisiana,

Plaintiffs, Appellants,

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND, on behalf of itself and all others similarly situated; LORRAINE KOPA, on behalf of herself and all others similarly situated; GERALD SMITH, on behalf of himself and all others similarly situated; JEANNE RAMSEY, on behalf of herself and all others similarly situated; CAROLYN HOLLAWAY, on behalf of herself and all others similarly situated; GARY VARNAM, on behalf of himself and all others similarly situated; JAN FRANK WITYK, on behalf of herself and all others similarly situated,

Plaintiffs,

v.

PFIZER, INC.; WARNER-LAMBERT COMPANY LLC,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

---

Before

Lynch, <u>Chief Judge</u>,
Souter,[*] <u>Associate Justice</u>,
and Lipez, <u>Circuit Judge</u>.

————————————

    <u>Thomas M. Greene</u>, with whom <u>Michael Tabb</u>, <u>Ilyas J. Rona</u>, <u>Ryan P. Morrison</u>, and <u>Greene LLP</u> were on brief, for appellants.
    <u>John H. Beisner</u>, with whom <u>Mark S. Cheffo</u>, <u>Katherine A. Armstrong</u>, and <u>Skadden, Arps, Slate, Meagher & Flom LLP</u> were on brief, for appellees.

————————————

April 3, 2013

————————————

————————————

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

LYNCH, **Chief Judge**.  This appeal by Harden Manufacturing Corporation and others (together, "Harden plaintiffs") is one of three that arose from multidistrict litigation ("MDL") concerning the off-label marketing of Neurontin, an anticonvulsant drug manufactured by Pfizer, Inc.  Today we issue our decisions in Kaiser Foundation Health Plan, Inc. v. Pfizer, Inc. (Kaiser), Nos. 11-1904, 11-2096 (1st Cir. _____, 2013), and Aetna, Inc. v. Pfizer, Inc. (Aetna), No. 11-1595 (1st Cir. _____, 2013), which are relevant to this appeal.  We assume familiarity with both opinions, which dispose of many of Pfizer's arguments, and limit our discussion here to the issues particular to this appeal.

The Harden plaintiffs, representing a putative class of third-party payors ("TPPs"), ask us to reverse both the district court's grant of summary judgment to Pfizer and the court's denial of class certification on the plaintiffs' claims under section 1962 of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, the New Jersey Consumer Fraud Act (NJCFA), N.J. Stat. Ann. §§ 56:8-1 to 56:8-195, and state common law claims of fraud and unjust enrichment.  The core of the plaintiffs' claims, as in Kaiser and Aetna, is the allegation that Pfizer engaged in a fraudulent off-label marketing campaign that caused the TPPs to pay for Neurontin prescriptions that were ineffective for the off-label conditions at issue, and that the plaintiffs suffered injury when they paid for those prescriptions.  The

-3-

details of these allegations are described in the district court's opinion in In re Neurontin Mktg. & Sales Practices Litig. (Harden II), 257 F.R.D. 315, 317-18 (D. Mass. 2009). The Harden plaintiffs' appeal is limited to only the claims regarding the off-label use of Neurontin for bipolar disorder, as to both the summary judgment and the class certification issues.

The plaintiffs argue that the district court erred in concluding that they failed to present a genuine issue of material fact as to whether their injuries were caused by Pfizer's conduct. They also argue that the district court abused its discretion in denying class certification on the basis of a finding that individual issues of causation and damages would predominate.

Based on the same reasoning we set forth in Kaiser and Aetna, and applying the facts of record here, we reverse the grant of summary judgment as to the plaintiffs' RICO claim. Based on the record evidence, the Harden plaintiffs are not so differently situated from Kaiser that they should be precluded from proving their case to a jury. The district court considered the Harden plaintiffs' failure to show any direct reliance on Pfizer's misrepresentations in making decisions about their formularies, together with the plaintiffs' use of aggregate evidence of causation, to be inadequate to survive summary judgment. We disagree. We also vacate the grant of summary judgment as to the state law claims. In light of our decision regarding summary

-4-

judgment, we vacate the denial of class certification and remand for further proceedings consistent with this opinion.

I.

The putative class representatives in this appeal are Harden Manufacturing Corporation, a self-insured employer; ASEA/AFSCME Local 52 Health Benefits Trust, a public employee union health benefits trust; and Louisiana Health Service Indemnity Corporation, d/b/a Blue Cross Blue Shield of Louisiana, a nonprofit health insurance provider.[1]  See In re Neurontin Mktg. & Sales Practices Litig. (Harden III), 754 F. Supp. 2d 293, 307-08 (D. Mass. 2010).  The Harden plaintiffs are all TPPs; that is, they pay for the costs of drugs prescribed for their members.  They currently seek to represent a nationwide class of TPPs who reimbursed for Neurontin prescriptions for the off-label condition of bipolar disorder between 1994 and 2004.

We review the record on summary judgment as it stood when the district court ruled.  Lewis v. City of Boston, 321 F.3d 207, 214 n.7 (1st Cir. 2003).  In this case, the district court completed the trial that formed the basis of the Kaiser appeal before rendering summary judgment as to the Harden plaintiffs, and the court relied on the facts adduced in that trial when granting

---

[1] In the district court, the putative class representatives also included International Union of Operating Engineers Local No. 68 Welfare Fund, another union health provider.  This plaintiff has voluntarily withdrawn from the appeal.

-5-

summary judgment here.[2]  See Harden III, 754 F. Supp. 2d at 296.
Accordingly, in this decision we adopt the facts concerning
Pfizer's development and marketing of Neurontin as we explained
them in Kaiser, slip op. at 7-10, 16-17.

Harden filed its class action complaint against Pfizer[3]
in U.S. District Court in Massachusetts on May 14, 2004.  On August
8, 2005, the present named plaintiffs moved to certify a nationwide
class under Fed. R. Civ. P. 23(a) and 23(b)(3).  At that time, the
proposed class consisted of all TPPs that had purchased or
reimbursed for Neurontin for a number of off-label uses between
January 1, 1994 and December 31, 2004.[4]  In re Neurontin Mktg. &
Sales Practices Litig. (Harden I), 244 F.R.D. 89, 91-92 (D. Mass.
2007).  The district court initially denied the motion without
prejudice on August 29, 2007, finding, inter alia, that the
commonality requirement was not met.  Id. at 105, 115.

-----

[2] This situation stands in contrast to the state of the record
in Aetna, where the district court granted summary judgment on
Aetna's claims before proceeding with the Kaiser trial.  See Aetna,
slip op. at 5.

[3] Warner-Lambert Company, a subdivision of Pfizer, was also
named as a defendant.  Warner-Lambert developed Neurontin in the
1980s and early 1990s before the company was acquired by Pfizer in
2000.  In re Neurontin Mktg. & Sales Practices Litig. (Kaiser
Findings), No. 04-cv-10739-PBS, 2011 WL 3852254, at *5 (D. Mass.
Aug. 31, 2011).

[4] The class certification motion also included a class of
individual patient-consumer plaintiffs.  Since the consumers have
not appealed, we do not address their claims.

Significantly, Pfizer had also argued in response to this motion that class certification was inappropriate because the Harden plaintiffs could not prove causation on a class-wide basis, but rather would have to prove for each class member: (1) that its physicians were personally exposed to off-label marketing that contained false statements or material omissions, (2) that such statements or omissions in the marketing materials caused those doctors to issue the prescriptions, and (3) that the prescriptions were ineffective for those doctors' patients. <u>Id.</u> at 109. At the time the district court decided the motion, the plaintiffs had commissioned, but had not yet received, an expert report from Dr. Meredith Rosenthal, which the plaintiffs expected to use to prove causation by aggregate data analysis.[5] <u>Id.</u> at 109-110. While the district court expressed some reservations about the Harden plaintiffs' proposed method of proof, it did not make any definitive rulings on causation due to the limited record. <u>See id.</u> at 110-15.

On December 19, 2007, the Harden plaintiffs renewed their motion for class certification. The district court denied the motion on May 13, 2009. <u>Harden II</u>, 257 F.R.D. at 333. The court found that the plaintiffs had overcome the commonality problem by splitting the TPP class into multiple subclasses that were specific

---

[5] Dr. Rosenthal's qualifications and the details of her completed report are discussed in <u>Kaiser</u>, slip op. at 13-15.

to the off-label indications for which Neurontin had been prescribed, id. at 319, but that this time, the motion failed on the basis of predominance, see id. at 317, 331-33. The court concluded that the plaintiffs could not use statistical evidence to establish class-wide causation in a consumer fraud claim under either RICO or the NJCFA. See id. at 323-33. While Dr. Rosenthal's regression analysis showed that "essentially all" Neurontin prescriptions for bipolar disorder were the result of Pfizer's off-label marketing, id. at 329, the court found that the Rosenthal report nonetheless could not provide class-wide evidence of causation because it did not take account of doctors' individual prescribing decisions or the possibility that some of Pfizer's off-label marketing might not have been fraudulent, see id. at 330-31. The court then reasoned that the TPPs could alternatively show causation by evidence that they had directly relied on Pfizer's misrepresentations in deciding how to treat Neurontin on their formularies (the lists of drugs for which TPPs agree to reimburse). See id. at 333. But because of the TPPs' heterogeneity in their processes of constructing and managing their formularies, id. at 332, such reliance could not be shown by proof common to the class, id. at 333.

On May 28, 2009, the Harden plaintiffs moved for reconsideration as to the bipolar subclass only. This motion would not be resolved until after a series of other proceedings.

In March 2009, while the second class certification motion was pending, Pfizer had moved for summary judgment on the Harden plaintiffs' claims, as well as on the claims of the other TPP plaintiffs in the MDL, including Kaiser and Aetna. Pfizer argued, as relevant in this appeal, "that [p]laintiffs ha[d] failed to create a triable issue of fact as to causation." In re Neurontin Mktg. & Sales Practices Litig. (Neurontin Coordinated SJ), 677 F. Supp. 2d 479, 485 (D. Mass. 2010). Similar to its arguments in the class certification context, Pfizer argued that Dr. Rosenthal's report was inadequate to raise a genuine issue of fact as to causation because it could not distinguish which prescriptions were actually influenced by the allegedly fraudulent marketing campaign. Id. at 493-96. Without the Rosenthal report, Pfizer argued, there was no evidence of causation, because the individual doctors who had provided evidence had not stated that they relied on any of Pfizer's alleged misrepresentations. Pfizer also contended that the TPP plaintiffs had failed to show a sufficiently direct relationship between Pfizer's alleged conduct and the plaintiffs' alleged injuries to support a finding of proximate causation, and that plaintiffs had failed to raise a genuine issue of fact as to whether Neurontin was ineffective for the off-label conditions at issue, which would preclude a finding of compensable injury.

The Harden plaintiffs responded that their statistical and circumstantial evidence sufficed to create a triable issue of fact as to causation because it demonstrated, as a general matter, that Pfizer's marketing was what caused doctors to prescribe Neurontin for off-label conditions, which led directly to the TPPs' injury of having to pay for prescriptions that were ineffective. See Harden III, 754 F. Supp. 2d at 310. They argued that it should be for a jury to weigh individual doctors' stated reasons for prescribing Neurontin against the Rosenthal report's data analysis and the plaintiffs' other evidence of Pfizer's fraudulent marketing campaign. Unlike in the Kaiser and Aetna cases, the Harden plaintiffs did not claim that they had directly relied on any misrepresentations by Pfizer in making decisions about whether to include or restrict Neurontin on their formularies. Id. at 307-08, 311. They also argued that they had introduced "overwhelming" evidence that Neurontin was ineffective for the off-label conditions at issue.[6]

On January 8, 2010, the district court granted Pfizer's summary judgment motion with respect to Aetna and denied it with respect to Kaiser, holding that "in a misrepresentation action involving fraudulent marketing of direct claims to doctors, a

---

[6] Significantly, neither Pfizer's memoranda in support of summary judgment nor the Harden plaintiffs' responses explicitly addressed the elements of the plaintiffs' claims under the NJCFA or state common law. The Harden plaintiffs cited only one case construing NJCFA, in passing, in a footnote.

plaintiff TPP or class must prove through individualized evidence
that the misrepresentation caused specific physicians, TPPs, or
consumers to rely on the fraud, and cannot rely on aggregate or
statistical proof." Neurontin Coordinated SJ, 677 F. Supp. 2d at
494. Kaiser's claims were allowed to continue to trial because
Kaiser had presented sufficient evidence that it had directly
relied on Pfizer's published materials in determining which
restrictions, if any, to place on Neurontin's formulary status.
See id. at 496-97.

    The district court went on to hold a five-week trial, at
which a jury concluded that Pfizer had fraudulently marketed
Neurontin for four off-label conditions, including bipolar
disorder, and that this conduct had violated RICO. In re Neurontin
Mktg. & Sales Practices Litig. (Kaiser Findings), No. 04-cv-10739-
PBS, 2011 WL 3852254, at *1 (D. Mass. Aug. 31, 2011). The district
court reached the same conclusion in a bench trial on Kaiser's
state law claim. See id. at *60. During the Kaiser trial, the
district court accepted Dr. Rosenthal's report as evidence and
permitted Dr. Rosenthal to testify as an expert witness. Id. at
*32-33. That and other evidence of causation is described in our
Kaiser opinion. See Kaiser, slip op. at 12-19, 36-48. We affirmed
the jury's and district court's verdicts. See id., slip op. at 3.

    On December 10, 2010, after the Kaiser trial had
concluded, the district court returned to Pfizer's summary judgment

-11-

motion respecting the Harden plaintiffs, and it granted summary judgment to Pfizer.  Harden III, 754 F. Supp. 2d at 296, 311.  The court reiterated its finding from the earlier summary judgment decision that the Rosenthal report alone could not support the TPPs' causation argument, concluding that while the report "demonstrates the likelihood of some injury, . . . it does not suffice to demonstrate the extent of harm caused by the fraud, as opposed to run-of-the-mill off-label detailing.  Most courts have rejected such aggregate proof." Id. at 310-11.  Because the Harden plaintiffs "ha[d] not directly relied on misrepresentations by defendants,"[7] and could not use the Rosenthal report to show reliance by physicians, the court held that the Harden plaintiffs had failed to present a triable issue of fact as to causation.  Id. at 311.

Then, on May 17, 2011, the district court addressed the Harden plaintiffs' May 28, 2009 motion for reconsideration of the denial of class certification as to the subclass of TPPs who had paid for off-label prescriptions of Neurontin for bipolar

---

[7] On December 20, 2010, one of the Harden plaintiffs -- Blue Cross Blue Shield of Louisiana -- filed a motion to reconsider the summary judgment ruling, asserting that it had shown direct reliance on Pfizer's misrepresentations in the development of its formulary.  The district court denied this motion on April 20, 2011.  None of the other Harden plaintiffs moved the court to reconsider the summary judgment ruling on this basis, and none -- including Blue Cross Blue Shield of Louisiana -- challenge on appeal the finding that they failed to show direct reliance.

disorder.[8]  In re Neurontin Mktg. & Sales Practices Litig. (Harden

IV), No. 04-cv-10981-PBS, 2011 WL 1882870, at *1 (D. Mass. May 17,

2011).    Relying  on  evidence  adduced  since  the  prior  class

certification denial, including evidence presented at the Kaiser

trial, the district court determined that "[p]laintiffs have proved

that it is more likely than not likely [sic] that they were harmed

by Pfizer's conduct because many doctors would not have prescribed

Neurontin  for  bipolar  disorder  if  they  had  known  there  was  no

reliable  scientific  evidence  supporting  its  use."  Id. at *5.

However, the court went on to find that the Rosenthal report still

did  not  satisfy  the  predominance  requirement  as  to  causation  or

damages.  Id. at *4-5.  It held that, "in order to differentiate

those prescriptions that were caused by fraud from those that were

attributable  to  non-fraudulent  off-label  marketing  or  other

independent  factors,  a  factfinder  would  have  to  perform  a  granular

doctor-by-doctor analysis."  Id. at *5.  Such an inquiry would be

unmanageable  in  a  class  action  litigation.  Id.  Moreover, "complex

issues related to calculating damages" would also make the class

unmanageable, and thus the Harden plaintiffs had failed to satisfy

Fed. R. Civ. P. 23(b)(3)'s superiority requirement.  Id. at *6.

---

[8] Pfizer argued that this motion was moot as a result of the
December 2010 summary judgment decision, but the district court did
not rule on this argument.  In re Neurontin Mktg. & Sales Practices
Litig. (Harden IV), No. 04-cv-10981-PBS, 2011 WL 1882870, at *1 (D.
Mass. May 17, 2011).

On June 28, 2011, the district court entered a separate judgment in favor of Pfizer on all of the Harden plaintiffs' claims, and the plaintiffs filed a timely appeal on July 7, 2011.

II.

On appeal, the Harden plaintiffs argue that the district court erred in concluding that they did not raise a triable issue of fact as to but-for or proximate causation. We review a grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party. Podiatrist Ass'n, Inc. v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003). We will reverse a grant of summary judgment if we find that the nonmovant has "established a genuine issue of material fact that a reasonable jury could resolve in [its] favor." Collins v. Univ. of N.H., 664 F.3d 8, 19 (1st Cir. 2011) (emphasis omitted) (quoting Coffin v. Bowater, Inc., 501 F.3d 80, 97 (1st Cir.2007)) (internal quotation mark omitted).

A.      RICO Proximate Causation

The district court found that the Harden plaintiffs had presented adequate evidence that Pfizer fraudulently promoted Neurontin for off-label treatment of bipolar disorder; that this conduct likely caused harm to the plaintiffs; and that such harm would be the expected consequence of Pfizer's conduct. See Harden IV, 2011 WL 1882870, at *5; Harden III, 754 F. Supp. 2d at 310; Harden I, 244 F.R.D. at 111. Based on these findings, the Harden

-14-

plaintiffs argue, the court should have determined that the plaintiffs survived summary judgment on the proximate causation issue. Pfizer responds that the causal chain here is too attenuated to establish proximate cause because it is based on the individual prescribing decisions of thousands of physicians who exercise independent medical judgment.

As we explained in Kaiser, slip op. at 23, our RICO analysis is controlled by the Supreme Court's decisions in Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992), and its progeny. See Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006); Bridge v. Phoenix Bond & Indem. Co., 128 S. Ct. 2131 (2008); Hemi Grp., LLC v. City of New York, 130 S. Ct. 983 (2010). The proximate causation question in this appeal is essentially identical to the question presented in Kaiser's appeal, and we decide here, as we did there, that the causal chain is sufficiently direct to survive the Court's test at the summary judgment stage.

First, the Harden plaintiffs need not have demonstrated that they directly relied on Pfizer's misrepresentations in order to survive summary judgment. The Supreme Court has held that direct reliance is not an element of proximate cause in a civil RICO cause of action based on mail fraud, as the plaintiffs' case is here. See Bridge, 128 S. Ct. at 2134. It is true that Kaiser, unlike the Harden plaintiffs, presented evidence that it had directly relied on Pfizer's misrepresentations in the course of

-15-

managing its formulary, but that evidence, while helpful in
Kaiser's presentation to the jury, was not essential to Kaiser's
ability to prove proximate cause.  See Kaiser, slip op. at 30,32-
36.  The absence of direct reliance evidence in this case does not
mean that the Harden plaintiffs' remaining evidence of causation
was insufficient, as a matter of law or fact, to reach a jury.

RICO's proximate cause inquiry includes both the question
of whether there is "some direct relation between the injury
asserted and the injurious conduct alleged," Holmes, 503 U.S. at
268, and the consideration of three functional factors that reflect
concerns of justice and administrability, id. at 269-70.  Here, a
reasonable jury could have found that the injury to the Harden
plaintiffs was direct because the plaintiffs have adduced evidence
that they were "the primary and intended victims of [Pfizer's]
scheme to defraud."  Bridge, 128 S. Ct. at 2139.  The causal chain
in this case is not so attenuated as to support summary judgment
for Pfizer because, as we explained in Kaiser, Pfizer knew that the
structure of the American health care system meant that almost all
off-label Neurontin prescriptions written by physicians would be
paid for by TPPs.  See Kaiser, slip op. at 34.  The Harden
plaintiffs' evidence showed that Pfizer's marketing strategy
specifically aimed to increase Neurontin's market share in
prescriptions for bipolar disorder -- prescriptions for which TPPs
would pay.  See Harden IV, 2011 WL 1882870, at *5 (finding that

-16-

Pfizer "engage[d] in a nationwide fraudulent marketing campaign" aimed at increasing the number of Neurontin prescriptions for bipolar disorder even though "there [was] no reliable scientific evidence to support the use of Neurontin to treat bipolar disorder").  Under these circumstances, drawing all reasonable inferences in the plaintiffs' favor, a factfinder could conclude that the Harden plaintiffs' injury was a "foreseeable and natural consequence" of Pfizer's scheme.  <u>Bridge</u>, 128 S. Ct. at 2144; <u>see</u> <u>BCS Servs., Inc.</u> v. <u>Heartwood 88, LLC</u>, 637 F.3d 750, 758 (7th Cir. 2011) ("Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct, he has done enough to withstand summary judgment on the ground of absence of causation.").

     Pfizer argues that because doctors exercise independent medical judgment in making decisions about prescriptions, the actions of these doctors break the causal chain.  But as we held in <u>Kaiser</u>, slip op. at 35, the fact that some physicians may have considered factors other than Pfizer's detailing materials does not add such attenuation to the causal chain as to eliminate proximate cause.  Rather, this argument presents a question of proof, to be resolved at trial, regarding the total number of prescriptions (if any) that were attributable to Pfizer's actions.

     As to the functional factors in the proximate cause analysis, <u>see</u> <u>Holmes</u>, 503 U.S. at 269-70, Pfizer likewise has not

shown that there are no genuine issues of material fact.  The
plaintiffs presented evidence at the summary judgment stage that
they would be able to calculate damages attributable to Pfizer's
conduct.[9]  See Holmes, 503 U.S. at 269.  While the parties dispute
whether there is any risk of duplicative recovery and whether the
Harden plaintiffs are in the best position to bring suit, see id.
at 269-70, the Harden plaintiffs' evidence that they were among the
primary victims of Pfizer's scheme is enough to raise triable
issues on these questions.

B.      RICO But-For Causation

        The Harden plaintiffs argue that the district court erred
in requiring them to provide doctor-by-doctor evidence of reliance
in order to survive summary judgment on but-for causation.  The
but-for causation question here, as in Kaiser, is whether Pfizer's
allegedly fraudulent marketing campaign caused the plaintiffs to
pay for more Neurontin prescriptions for bipolar disorder than they
otherwise would have paid for.  The Harden plaintiffs maintain that
the Rosenthal report, along with other circumstantial evidence,
provided strong, admissible evidence of but-for causation, and once
the plaintiffs made that showing, any burden of demonstrating that
physicians actually prescribed Neurontin for non-fraudulent reasons

---

[9] The class plaintiffs submitted the report of damages expert
Dr. Raymond Hartman.  As with Dr. Rosenthal's report, the district
court accepted Dr. Hartman's report as evidence of damages in the
Kaiser trial.  See Kaiser, slip op. at 19-20, 22.

-18-

-- i.e., that a superseding cause interrupted the chain of
causation -- fell upon Pfizer.   Pfizer argues that physicians'
decisions to prescribe Neurontin are not "superseding causes," but
essential links in the Harden plaintiffs' chain of causation, and
that the individualized nature of physicians' prescribing decisions
renders aggregate proof inappropriate.

These arguments again track the same ground we covered in
Kaiser.   We conclude here, as we did there, that the Rosenthal
report is capable of providing proof of but-for causation.[10]   The
Harden plaintiffs need not prove causation through the testimony of
individual doctors.   The combination of the aggregate evidence and
the circumstantial evidence was enough for the Harden plaintiffs to
overcome summary judgment.

As we explained in Kaiser, slip op. at 49-50, Pfizer's
argument misapprehends the nature of the but-for causation inquiry.
A tort plaintiff need not "prove a series of negatives; he doesn't
have to 'offer evidence which positively exclude[s] every other
possible cause of the accident.'"   BCS Servs., 637 F.3d at 757
(alteration in original) (quoting Carlson v. Chisholm-Moore Hoist

---

[10] In Kaiser, slip op. at 40-48, we analyzed the admissibility
of Dr. Rosenthal's report and testimony under Fed. R. Evid. 702
and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).
Pfizer will, of course, have an opportunity to argue against its
admissibility at the trial of the Harden plaintiffs' claims, if
Pfizer has objections specific to this case.   However, at this
stage of the litigation, we adopt our conclusions from Kaiser in
determining that the Harden plaintiffs could rely on the report to
defend against summary judgment.

Corp., 281 F.2d 766, 770 (2d Cir. 1960) (Friendly, J.)).  "Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct," the burden shifts to the defendant to rebut this causal inference.  Id. at 758.

Although Pfizer presented testimony from doctors who stated that they prescribed Neurontin for off-label uses without relying on Pfizer's misrepresentations, the existence of these individual doctors does not defeat the implication -- clearly presented through Dr. Rosenthal's regression analysis -- that Pfizer's misinformation had a significant influence on thousands of other prescribing decisions.  And in addition to the aggregate statistical evidence, the Harden plaintiffs also presented circumstantial evidence that supported an inference of causation.  For instance, the plaintiffs offered documents showing that psychiatrists had almost never prescribed Neurontin for bipolar disorder until after Pfizer began its marketing campaign, at which point prescriptions jumped by 1700% in two years.  Ultimately, it is a jury's task to weigh the individual testimony presented by Pfizer against the aggregate and circumstantial evidence presented by the Harden plaintiffs.

More generally, Pfizer argues that the Harden plaintiffs' use of the Rosenthal report to show but-for causation was precluded by the decisions of other courts in pharmaceutical marketing RICO

fraud cases.  We reject these arguments here for the same reasons
we did in <u>Kaiser</u>.  First, regression analysis is a widely accepted
method of showing causation under several causes of action, and we
see no reason to reach a different conclusion for a specific subset
of RICO claims based on fraudulent pharmaceutical marketing.  <u>See</u>
<u>Kaiser</u>, slip op. at 41-43.  Second, the other pharmaceutical RICO
cases are largely inapposite to a case such as this, especially
where the plaintiffs allege a "quantity effect" rather than an
"excess price" theory.[11]  <u>See</u> <u>id.</u> at 50-53; <u>compare</u> <u>UFCW Local 1776</u>
<u>v. Eli Lilly & Co.</u>, 620 F.3d 121, 133-36 (2d Cir. 2010).  To the
extent that some district courts in other circuits may have
endorsed Pfizer's position that aggregate evidence is legally
insufficient to prove but-for causation, we disagree, at least on
the facts of this case.

C.      <u>RICO Injury</u>

        Finally, Pfizer argues that the Harden plaintiffs did not
show that Neurontin was always ineffective for all bipolar
patients, and hence cannot show that they suffered any injury.
Although the district court did not decide Pfizer's motion for
summary judgment on this basis, Pfizer urges it as an alternate

---

        [11] In the RICO pharmaceutical marketing context, a "quantity
effect" theory is an allegation that a defendant's fraud caused a
plaintiff to pay for more prescriptions than it would have absent
the fraud, whereas an "excess price" theory is an allegation that
the defendant's fraud caused the plaintiff to pay more for the drug
than it was worth.  <u>See</u> <u>UFCW Local 1776</u> v. <u>Eli Lilly & Co.</u>, 620
F.3d 121, 129 (2d Cir. 2010).

ground for affirmance.  See Hoyos v. Telecorp Commc'ns, Inc., 488 F.3d 1, 5 (1st Cir. 2007) (appellate court may affirm summary judgment on any basis apparent in the record).

    For the reasons stated in Kaiser, we reject Pfizer's position that these plaintiffs must prove the individual, subjective ineffectiveness of each off-label prescription in order to establish injury.  See Kaiser, slip op. at 55-58.  Given that conclusion, Pfizer's argument is premature.  The Harden plaintiffs have proffered clinical trial evidence that Neurontin is ineffective for bipolar disorder, which is certainly enough to raise a genuine issue of fact on the effectiveness issue.  The question of whether the Harden plaintiffs suffered injury is for the jury.

D.    State Law Claims

    The Harden plaintiffs' complaint included a claim under the NJCFA as well as state common law claims for fraud and unjust enrichment.  Pfizer's summary judgment motion did not specifically argue that the plaintiffs had failed to raise a triable issue of fact as to their state law claims, and the plaintiffs' opposition to Pfizer's motion likewise did not argue that they had overcome the summary judgment hurdle on those claims.  The district court granted summary judgment to Pfizer on the state law claims without

-22-

separate discussion.[12]  See Harden III, 754 F. Supp. 2d at 311.  In
their opening brief to this court, the Harden plaintiffs did not
explicitly argue that the district court erred in granting summary
judgment on the state law claims, although they argued that the
court erred in denying class certification on those claims.  In
response, Pfizer argued for the first time that the state claims
failed as a matter of law, under a number of theories.

Under these circumstances -- where both the district
court record and the briefing before us is substantially incomplete
on the state law issues -- we believe the best course of action is
to vacate the district court's grant of summary judgment on the
Harden plaintiffs' NJCFA and state common law claims.  We remand so
that the district court may decide any questions of state law in
the first instance.

### III.

The Harden plaintiffs also appeal the district court's
denial of class certification, arguing that the district court
erred in concluding that (1) common evidence could not demonstrate
causation and damages, and (2) a class action was not the superior
method of adjudication.  This court reviews denials of class

---

[12] The district court had earlier denied class certification
on the NJCFA claim on the basis that, under New Jersey law, the
plaintiffs could not rely on aggregate evidence to prove class-wide
causation, see Harden II, 257 F.R.D. at 332, but the court did not
address this issue on summary judgment, see generally Harden III,
754 F. Supp. 2d 293.

certification for abuse of discretion.  Waste Mgmt. Holdings, Inc.
v. Mowbray, 208 F.3d 288, 295 (1st Cir. 2000).  An abuse of
discretion may occur "when a court . . . relies upon an improper
factor, omits consideration of a factor entitled to substantial
weight, . . . mulls the correct mix of factors but makes a clear
error of judgment in assaying them[,] . . .[or] adopts an incorrect
legal rule."  Id. (citation omitted).

        Importantly, the district court's decisions on class
certification cover very similar issues as those involved in the
summary judgment decision.  In particular, the district court's
denials of the Harden plaintiffs' second motion for class
certification and motion for reconsideration pivoted on the
determination that the Rosenthal report could not provide proof of
causation or damages.  See Harden IV, 2011 WL 1882870, at *4;
Harden II, 257 F.R.D. at 331-32.  This conclusion is what led the
court to decide that a class action would be "unmanageable" due to
the requirement of a "granular doctor-by-doctor analysis." Harden
IV, 2011 WL 1882870, at *5.  The legal requirements to establish
proximate and but-for causation under RICO were key factors across
both the summary judgment and class certification decisions, and in
both instances the district court relied on many of the same
decisions from other circuits that we have found to be inapposite
for the case at hand.

-24-

In light of our holdings in <u>Kaiser</u> regarding RICO causation principles, we vacate the district court's denial of class certification[13] and remand for further proceedings. We express no view as to whether the plaintiffs can, on remand, meet the requirements of Rule 23.

IV.

The district court's grant of summary judgment in favor of Pfizer is <u>reversed</u> as to the Harden plaintiffs' RICO claims and <u>vacated</u> as to their NJCFA and state common law claims. The district court's denials of the Harden plaintiffs' renewed motion for class certification and motion for reconsideration are <u>vacated</u>, and the case is <u>remanded</u> for further proceedings consistent with this opinion.  <u>So ordered.</u>

---

[13] Because we reverse the district court's grant of summary judgment on the RICO claim and vacate summary judgment on the state law claims, we need not consider whether, as Pfizer has alleged, the summary judgment decision mooted the plaintiffs' motion for reconsideration.  <u>See</u> <u>Harden IV</u>, 2011 WL 1882870, at *1.