UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------------X
In re: NEURONTIN MARKETING,                        : MDL Docket No. 1629
       SALES PRACTICES, AND                        :
       PRODUCTS LIABILITY LITIGATION               : Master File No. 04-10981
                                                   :
------------------------------------------------------------------X  Judge Patti B. Saris
                                                   :
THIS DOCUMENT RELATES TO:                          : Magistrate Judge Leo T. Sorokin
                                                   :
PLAINTIFFS' PRODUCTS LIABILITY GROUP               :
------------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF APPLICATION OF JACK W. LONDON, ARCHIE CARL PIERCE, AND EUGENE BROOKS FOR AWARD OF COMMON BENEFIT FEES**

To the Honorable Court:

Jack W. London, a member of the Plaintiffs' Products Liability Steering Committee herein, Archie Carl Pierce, and Gene Brooks submit this application to the Court for approval of fees to be paid out of the Common Benefit Fund for legal services performed on behalf of the plaintiffs' products liability cases, as set out below.

**I.
Common Benefit Fund**

The Plaintiffs' Product Liability Common Benefit Fund was created pursuant to this Court's Order granting *Motion to Establish A Common Benefit Fund* (Document 1129, February 14, 2008). Pursuant to the Manual For Complex Litigation (4th Ed. 2004), the fund was established to compensate and reimburse attorneys for services performed and expenses incurred for the common benefit of MDL 1629 personal injury plaintiffs.

As will be set out hereafter, Applicant's attorney work and expenses conferred a common benefit on those cases. It is appropriate to award fees and expenses from a common benefit fund

1

for work that has been and is complex and strenuous. See, e.g., *Bowling v Pfizer*, 102 F.3d 777 (6th Cir. 1996), Manual For Complex Litigation (4th Ed.) §14.222; *Texas State Teachers Ass'n v. Garland ISD*, 489 U.S. 782, 790-792 (1989). An award of interim fees and expenses contemplates that the Court will at some point in the future enter a final order regarding fees and expenses. See, e.g., *In Re Diet Drugs Product Liability Litigation*, 401 F.3d 143, (3d Cir. 2005).

Insofar as products liability cases are pending herein, this litigation is nearing an end. Orders and recommendations have been made by the Magistrate that remands, resolves, or dismisses the remaining cases. Among the factors for the Court to consider in awarding fees are whether the work performed benefited the plaintiffs, the hourly value of the work, whether the services were undertaken on a contingency basis, the societal interest in compensating attorneys who produce benefits as an incentive to others, the complexity of the litigation, and the professional skill and standing of counsel on both sides.

Your applicants do not seek a lodestar multiplier to the hourly rate for time spent on this work in the past but, instead, seek only to recover actual time incurred for the plaintiffs' common benefit. Moreover, your Applicants do not individually represent a large pool of other cases in this MDL from which to anticipate future fees. To the extent this is a factor, see *In re Sulzer Hip Prosthesis*, 268 F.Supp. 2d 907 (N.D. Ohio, 2003), affirmed 398 F. 3d 778 (6th Cir. 2005).

## II.
## Work Performed

Your Applicants have worked on behalf of the products liability plaintiffs, including represented plaintiffs and pro se plaintiffs, for their benefit in this litigation.

A. Jack W. London is a member of the Plaintiffs' Product Liability Steering Committee. He assumed primary responsibility on the Steering Committee for the non-Finkelstein and Partners cases after those cases were settled in January 2011. At that time there were

2

twenty-two other law firms and individual attorneys who represented 103 product liability plaintiffs (not including the Levi Boone cases) with pending cases (including the Schwartz cases but not including the Boone cases and pro se cases). At that time the Court had remanded the pro-se cases to their originating courts. His work for the benefit of the products liability plaintiffs since then has been generally in these areas:

1. Setting up and conducting a global mediation in April 2011: In this capacity, he worked with defense counsel to set up a mediation process for all such cases and arrange for a mediator in New York. He then worked with plaintiffs' counsel to draft and submit a global mediation statement of the liability evidence to summarize the litigation for the mediator, to assist individuals in drafting individual mediation proposals, to submit mediation demands, and to conduct the mediation in April 2011. He regularly communicated with each attorney or lead attorney for all plaintiffs, and continued to do so after the mediation and in many cases after remand. Measured by the number of cases that settled at or as a result of that process, it was successful.

2. Preservation depositions: Working from Magistrate Judge Sorokin's order to take preservation depositions of MDL witnesses, he chose which experts and witnesses from whom to take a preservation deposition, worked with all plaintiffs' counsel to learn which medical conditions were the basis of the remaining litigation so that those conditions would be within the scope of the preservation depositions and to assure that the subjects would be relevant to their cases, and worked with the witnesses to obtain commitments to be deposed and to arrange dates and locations for their depositions. He next worked with the plaintiffs' counsel to set up funding for the depositions and to arrange for volunteers to participate in preparing the witnesses,

subjects, and exhibits for the depositions, a process that was frequently obviated when the volunteering counsel settled his or her cases or withdrew from the litigation. Ultimately, he worked with two attorneys in the MDL (Brooks and Pierce) to take the preservation depositions. He then reviewed the MDL depositions, reports, references and items relied on in each of the witnesses' respective expert reports and reviewed the depositions and reports of their defense counterparts in the MDL. The greatest amount of time was spent in (a) meeting with the witnesses to be deposed, i.e., Trimble and Blume, (b) reviewing Blume, Trimble, Franklin, Greenland, and King reports, depositions, and exhibits and the discovery and scholarly items considered by them in the MDL discovery and *Daubert* hearings and in the *Bulger*, *Shearer*, and *Smith* Track One cases and in the underlying *Franklin v Warner-Lambert* whistleblower case, (c) in preparing exhibits for the depositions, and (d) in final preparation of the witnesses for the depositions. Finally, he took the preservation depositions of Professor Trimble and Dr. Blume and helped Carl Pierce to take Dr. Franklin's deposition, a process that also involved a dispute with defense counsel and successfully resisting a last-minute Motion to Quash Dr. Franklin's deposition. Because the witnesses live in various locations, it was necessary to travel to London, New York, Boston, and Orlando to meet with the witnesses and to take the depositions. (As may be seen from the attached time records, it is proposed that travel days be billed at one-half the billing rate).

3. In addition, London worked with individual counsel and those pro se plaintiffs who requested assistance to review their medical records and defendants' sales representatives' marketing contact with the treating doctors, to assist them (and

encourage them), to comply with the Court's orders to certify that their cases were appropriate for this litigation and that they take the depositions of the plaintiffs, prescribing doctors, and sales representatives to comply with Court-ordered conditions for remand, and to assist in certain cases to identify existing discovery for their use in motions for summary judgment. As did the Court and opposing counsel, London spent a great deal of attorney time on cases represented by the Schwartz firm, trying to straighten out or unravel their briefs and responses to pending motions; much of this time was wasted when the Schwartz firm proceeded on its course and, later, withdrew from all or most of the cases in which it was of record. He has forwarded copies to pro se plaintiffs and to plaintiffs' counsel of pertinent orders in the MDL to advise of the need for compliance with such orders, filed status reports and recommendations for completion of the products liability cases in the MDL, and contacted individual plaintiffs and attorneys for status reports of their litigation in an effort to assist them in bringing their litigation to a resolution. London had frequent contact with certain pro se plaintiffs and helped them as requested to obtain documents subject to and by their agreement to adhere to the confidentiality orders of this Court. Finally, London assembled a collection of the discovery records, research reports, discovery depositions, *Daubert* hearing testimony, and preservation depositions taken in MDL-1629 for the use of pro se plaintiffs and counsel representing plaintiffs and makes it available to them for cost of duplication and on assurance of their compliance with the confidentiality orders herein.

**B.** Archie Carl Pierce is an individual attorney who volunteered to assist in the preparation and taking of the preservation deposition of Dr. David Franklin, the 'whistleblower'

whose experience at Warner-Lambert was the first litigation involving claims of off-label Neurontin marketing. He reviewed Dr. Franklin's deposition testimony in *Franklin v. Warner-Lambert* and in *Shearer v Pfizer* and his trial testimony in *Bulger v Pfizer* and *Shearer v Pfizer*, together with Dr. Franklin's discovery disclosure in *Franklin v Pfizer*. He helped London select and prepare exhibits for the deposition and traveled to Boston to take the deposition.

C.  Eugene Brooks is an individual attorney who volunteered to assist in the preparation and taking of the preservation depositions of Dr. Cheryl Blume and Professor Michael Trimble. Dr. Blume was the MDL expert on FDA practices and on the potential existence of a signal of suicidality. Professor Trimble was the MDL expert on the biological relationship between Neurontin and suicidality. Brookes reviewed Dr. Blume's and Professor Trimble's deposition testimony in MDL-1629, *In re Neurontin*, in the Track One cases of *Shearer v Pfizer* and *Smith v Pfizer,* and their testimony in the *Daubert* hearings of July 2008. He traveled to London, UK, to meet with Professor Trimble and London to begin to learn the science of Professor Trimble's expertise and to read the discovery records on this subject for the first time, then helped London select and prepare exhibits for the depositions and to review and prepare for anticipated cross-examination from the reports, depositions, and records of defendants' counterpart experts, such as Dr. William Taylor. He then traveled to New York to assist in the preparation and deposition of Professor Trimble. He also assisted in selecting Dr. Blume's deposition exhibits and in reviewing for anticipated cross-examination, the reports, depositions, and records of defendants' counterpart experts, such as Dr.

Arrowsmith-Love. Brooks then traveled to Orlando Florida to meet with, prepare, and assist in the deposition of Dr. Blume.

### III.
### Amount Sought

Your Applicant requests approval for payment of attorney fees for:

1. Jack W. London: $145, 162. 50 for 440.75 hours of work at the rate of $350.00 per hour, half-rate for travel days, for legal work performed on behalf of the plaintiffs' products liability cases during the years 2011-2013. London's Declaration, together with an itemized report of the hours spent and a summary of the work performed during that period is attached herein as Exhibit A. Of the total time spent, twenty-four hours of preparation and twenty-four hours of travel were incurred between May 17, 2011 and June 11, 2011 in connection with both learning the science applicable to Professor Trimble's expert opinion and learning directly from him in order to be able to competently prepare for and take his preservation deposition.

2. Archie Carl Pierce: $11,911.00 for 41.6 hours of work at the rate of $350.00 per hour, half-rate for travel days, for legal work performed as set out above. Pierce's Declaration, together with an itemized report of the hours spent and a summary of the work performed is attached herein as Exhibit B.

3. Eugene Brooks: $77,455.00 for 240.3 hours of work at the rate of $350.00 per hour, half-rate for travel days, for legal work performed as set out above. Brooks' Declaration, together with an itemized report of the hours spent and a summary of the work performed during that period is attached herein as Exhibit C. Of the total time spent, fifty-one and one-half hours of preparation and twenty hours of travel were incurred between May 17, 2011 and June 11, 2011 in connection with both learning the science applicable to

7

Professor Trimble's expert opinion and learning directly from him in order to be able to assist him and assist Mr. London to competently prepare for and take his preservation deposition.

These rates are consistent with rates generally in the Austin, Texas bar during this period. See Filisko, ABA Journal, February 2011, pp 28-29, in which the average rate in Austin was $327.00 per hour during 2007.

## IV.
## No Other Agreements

Your Applicants have no fee agreement with any attorneys in this litigation. Your Applicants do not know the amount of the settlements in any cases other than those in which they are attorneys of record; defense counsel has advised that the settlements are confidential. Without in any degree disclosing any settlement or the amount of all settlements, or any other number or component of the settlements, counsel believes that the amount that has been allocated from such settlements to the Common Benefit Fund is adequate to pay the attorney fees and expenses requested in this application and the expenses that are the subject of the separate Application of Jack W. London and Archie Carl Pierce for Award of Expenses related to Dr. Freeman and Dr. Fincham.

## V.
## CERTIFICATE OF CONSULTATION

Your Applicants have notified counsel, including counsel in remanded cases, who have an interest in the product liability litigation of this application.   It is believed that this Application is unopposed.

WHEREFORE, PREMISES CONSIDERED, Jack W. London prays the Court approve this Application.

Respectfully submitted,

LAW OFFICES OF JACK W LONDON
3701 Bee Cave Rd., Suite 200
Austin, TX 78746
512-478-5858 (telephone)
512-479-5934 (facsimile)

By: _____
Jack W. London
State Bar No. 12512500

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on ___April 25, 2013___

_____
Jack W. London, Esquire

9