EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------------------X
In re:  NEURONTIN MARKETING,           :  MDL Docket No. 1629
        SALES PRACTICES, AND           :
        PRODUCTS LIABILITY LITIGATION  :  Master File No. 04-10981
                                       :
------------------------------------------------------------X  Judge Patti B. Saris
                                       :
THIS DOCUMENT RELATES TO:              :  Magistrate Judge Leo T. Sorokin
                                       :
PLAINTIFFS' PRODUCTS LIABILITY GROUP   :
------------------------------------------------------------X
```

Declaration of Dr. Jack Fincham

My name is Dr. Jack Fincham. I hold a Ph.D in Social and Administrative Pharmacy and for ten years served as Dean of the University of Kansas School of Pharmacy where I am a Professor of Pharmacy Practice and Administration and Adjunct Professor in the School of Public Affairs. Among my professional positions I am on the editorial board of the peer reviewed *Journal of Pharmaceutical Finance, Economics, and Policy*. My resume and list of publications is attached to this Declaration.

In my professional career I conducted the first large scale assessment of the use of antidepressant, anticonvulsant, and antipsychotic medications prescribed off-label for non-approved indications, published in 2006 in the peer-reviewed article *Off-label Use of Antidepressant, Anticonvulsant, and Antipsychotic Medications Among Georgia Medicaid Enrollees 2001*, 76 Journal of Clinical Psychiatry, 2006, 972-982.

I have studied Neurontin sales and marketing practices in connection with work I performed for Mr. Pierce and Mr. London in *Barlow v Pfizer, et al*, after that case was remanded to the Western District of Texas. In connection with my study I adopted the method of assessing increased prescriptions of Neurontin by doctors identified in Radley Finkelstein et al, *Off-label Prescribing Among Office-Based Physicians. Arch Intern Med*, 2006: 166: 1022-26.

I spent hours between March 2012 and March 2013 studying Neurontin marketing, industry standards, and related subjects. In my work I analyzed almost three hundred separate groups of records that pertained to the marketing and distribution of Neurontin. Of these, approximately two hundred twenty –five groups, consisting of approximately forty-five thousand pages, were confidential documents from Warner-Lambert / Parke Davis regarding Neurontin, were Research Reports of relevant events that were reported by Warner-Lambert/ Parke Davis / Pfizer scientists in Neurontin clinical trials, were expert reports and depositions that were taken

in MDL 1629 *In Re Neurontin*, were public records that were associated with the marketing of Neurontin or its risks, such as the public hearings of the FDA, or were scholarly articles relating to Neurontin marketing and risks or to industry standards.

  I charge $350.00 per hour for my work as an expert witness. My total billing for the work I did in the Irene Barlow case was $83,018.00, including expenses. It is my opinion that of that amount, $55,930.00 would be applicable to all cases in the Neurontin products liability litigation that have as a basis the marketing and risks of Neurontin in off-label populations. It is my estimate that 68 % of the records I reviewed were relevant to Neurontin development, marketing, pharmacology, and risks in all cases and that approximately 32 % of my work was specific to Irene Barlow. It is my opinion that the study I performed of Neurontin development, marketing, pharmacology, and risks generally would be relevant to all Neurontin products liability cases with the exception of the documents that were specific to Irene Barlow.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _8th_ day of April, 2013.

_[signature]_
Dr. Jack Fincham