# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------X
In re:  NEURONTIN MARKETING,                : MDL Docket No. 1629
       SALES PRACTICES, AND                         :
       PRODUCTS LIABILITY LITIGATION       : Master File No. 04-10981
                                                                           :
---------------------------------------------------------------X  Judge Patti B. Saris
                                                                           :
THIS DOCUMENT RELATES TO:                  : Magistrate Judge Leo T. Sorokin
                                                                           :
PLAINTIFFS' PRODUCTS LIABILITY GROUP :
---------------------------------------------------------------X

### Declaration of Dr. Michael Freeman

My name is Dr. Michael Freeman.  I hold a Ph.D. and M.P.H. in epidemiology and biostastics from Oregon State University.  I am a full Affiliate Professor of Epidemiology and Psychiatry at Oregon Health Sciences University School (OHSU) of Medicine and I am a candidate for the M.D. degree.  I have developed and teach three faculty peer-reviewed courses for trauma surgeons, emergency medicine physicians, M.D., M.P.H., and Ph.D students and for forensic psychiatry fellows on both general causation and on specific causation.  My position is funded by a grant from the Centers for Disease Control.  My resume and list of publications is attached to this Declaration.

I have studied the epidemiology of Neurontin risks in connection with work I performed for Mr. Pierce and Mr. London in *Barlow v Pfizer*, et, al. after that case was remanded to the Western District of Texas.

I and my staff spent more than one hundred hours between July 2011 and March 2013 studying specific Neurontin and anti-epileptic databases of suicide and suicide related risks.  This included an independent analysis of two databases, being one database of 47,918 bipolar patients who took any of the eleven anti-epileptic drugs studied by the FDA plus lithium and one database of 131,178 gabapentin (Neurontin) patients of hospital and clinic patient records gathered between 2000 and 2006.  These databases were compiled by Pharmetrics and provided to Dr. Robert Gibbons.  In connection with my study I also analyzed all expert and supplemental expert reports by Dr. Gibbons, including approximately 1100 pages of his deposition testimony and his trial testimony from MDL 1629 *In Re Neurontin*, *Smith v Neurontin*, and the *Daubert* hearings conducted by Judge Saris in 2008.  I studied the FDA meta analysis / statistical analysis of placebo trials of eleven antiepileptic drugs, the FDA public hearing records, and the enormous body of peer-reviewed literature that has been generated concerning study populations of the risk of suicide, suicide related behaviors, Neurontin, gabapentin, and anti-epileptic drugs

since the publication by the FDA of the original alert to physicians and publication of the two articles by Dr. Gibbons regarding his studies of anti-epileptic drugs and bipolar patients and of Neurontin and the risk of suicide.

I then performed individual analyses of the Pharmetrics database sets, first to review Dr. Gibbons' work and, second to produce my own analysis of the risk of suicide related behavior in patients taking Neurontin, including studies of patients before and after diagnosis, before and after initiation of treatment with Neurontin and gabapentin, time to event studies, and comparisons of patients taking Neurontin or gabapentin for a specific indication to similar patients taking no drug. After my work was reviewed by Dr. Gibbons and he wrote two reports regarding my opinions I performed further analyses.

In addition, I reviewed approximately twenty-two sets of Warner-Lambert, Pfizer, and Parke-Davis clinical trial research reports to analyze patients who had changes in medical condition before and after taking and discontinuing Neurontin.

It is my estimate that 90 % of the records I reviewed were relevant to the analysis of Neurontin epidemiology risks, particularly in the Pharmetrics Database and the Dr. Gibbons studies, and that approximately 10 % of the records, specifically medical and hospital records, were specific to Irene Barlow. It is my opinion that the study I performed would be relevant to all Neurontin products liability cases with the exception of the documents that were specific to Irene Barlow. I charge $700.00 per hour for my work as an expert witness. My total billing for the work I did in the Irene Barlow case was $70,575.00. It is my opinion that of that amount, $63,500.00 would be for time incurred on work that would be applicable to all cases in the Neurontin products liability litigation that have as a basis the marketing and risks of Neurontin in off-label populations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of April, 2013.

_____
Dr. Michael Freeman