# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, d/b/a BLUECROSS/BLUESHIELD OF LOUISIANA; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; JAN FRANK WITYK; and GARY VARNAM, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>PFIZER INC. and WARNER-LAMBERT COMPANY,<br><br>     Defendants. | Chief Judge Patti B. Saris<br>Magistrate Judge Leo T. Sorokin |

## MEMORANDUM OF LAW IN OPPOSITION TO CLASS PLAINTIFFS' POST-MANDATE MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

APPLICABLE STANDARDS .............................................................................................. 3

ARGUMENT ........................................................................................................................ 4

I.     The First Circuit's Decisions Do Not Support Class Certification.................................... 4

II.    Common Issues Do Not Predominate Because Injury, Causation And Damages
       Cannot Be Proven Classwide .................................................................................. 5

       A.     Professor Rosenthal's Analysis Cannot Establish Classwide Injury For A
              Putative Class Composed Primarily Of Small TPPs................................................. 5

       B.     Professor Rosenthal's Analysis Cannot Establish Classwide Damages ................ 9

       C.     Individual Issues Regarding Physicians' Prescribing Decisions
              Predominate Over Any Common Questions........................................................... 12

       D.     Individual Issues Regarding TPPs' Formulary And Reimbursement
              Decisions Predominate Over Any Common Questions........................................ 17

III.   Significant Conflicts Between The States' Laws Preclude Certification Of
       Plaintiffs' NJCFA Claim.......................................................................................... 18

IV.    A Class Proceeding Would Not Be Superior To Individual Proceedings ...................... 22

V.     No Class Can Be Certified Without Additional Discovery ............................................. 23

CONCLUSION.................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aetna, Inc. v. Pfizer, Inc.* ("*Aetna Opinion*"),
  712 F.3d 51 (1st Cir. 2013) .................................................................................... 4, 7

*Aiello v. Providian Financial Corp.*,
  239 F.3d 876 (7th Cir. 2001) ...................................................................................... 11

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997).................................................................................................... 20

*Andrews v. American Telephone & Telegraph Co.*,
  95 F.3d 1014 (11th Cir. 1996) .................................................................................... 23

*Beattie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007) ........................................................................................ 9

*Bright v. Asset Acceptance, LLC*,
  No. 11-5846 (JBS/JS), 2013 WL 3990817 (D.N.J. Aug. 1, 2013) .................................. 10

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ...................................................................................... 13

*Castano v. American Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) .................................................................................. 19, 20

*Central Regional Employees Benefit Fund v. Cephalon, Inc.*,
  No. 09-3418 (MLC), 2009 WL 3245485 (D.N.J. Oct. 7, 2009) ...................................... 21

*Chen-Oster v. Goldman, Sachs & Co.*,
  285 F.R.D. 294 (S.D.N.Y. 2012) ................................................................................ 23

*Clark v. Pfizer Inc.*,
  990 A.2d 17 (Pa. Super. Ct. 2010) ................................................................................ 8

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ........................................................................................ passim

*Cowden v. Parker & Associates, Inc.*,
  No. 5:09-323-KKC, 2013 WL 2285163 (E.D. Ky. May 22, 2013) .................................. 11

*Delta Chevrolet, Inc. v. Wells*,
  371 S.E.2d 250 (Ga. Ct. App. 1988) ............................................................................ 22

iii

*Dominguez v. UAL Corp.*,
  666 F.3d 1359 (D.C. Cir. 2012) ...................................................... 6

*Emig v. American Tobacco Co.*,
  184 F.R.D. 379 (D. Kan. 1998)...................................................... 20

*Gariety v. Grant Thornton, LLP*,
  368 F.3d 356 (4th Cir. 2004) ...................................................... 20

*Georgine v. Amchem Products, Inc.*,
  83 F.3d 610 (3d Cir. 1996)......................................................... 20

*Glazer v. Whirlpool Corp.*,
  722 F.3d 838 (6th Cir. 2013) ....................................................... 9

*Harden Manufacturing Corp. v. Pfizer, Inc.* ("*Harden Opinion*"),
  712 F.3d 60 (1st Cir. 2013)................................................... passim

*Harding v. Tambrands Inc.*,
  165 F.R.D. 623 (D. Kan. 1996)..................................................... 19

*Heindel v. Pfizer, Inc.*,
  381 F. Supp. 2d 364 (D.N.J. 2004) .................................................. 8

*In re Bextra & Celebrex Marketing Sales Practices & Product Liability Litigation*,
  495 F. Supp. 2d 1027 (N.D. Cal. 2007) ............................................ 21

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*,
  288 F.3d 1012 (7th Cir. 2002) ..................................................... 20

*In re Community Bank of North Virginia Mortgage Lending Practices Litigation*,
  MDL 1674, 2013 WL 3972458 (W.D. Pa. July 31, 2013) ............................... 14

*In re Flonase Antitrust Litigation*,
  291 F.R.D. 93 (E.D. Pa. 2013)...................................................... 11

*In re LifeUSA Holding Inc.*,
  242 F.3d 136 (3d Cir. 2001)........................................................ 13

*In re Managed Care Litigation*,
  298 F. Supp. 2d 1259 (S.D. Fla. 2003) ............................................. 21

*In re Mercedes-Benz Tele Aid Contract Litigation*,
  257 F.R.D. 46 (D.N.J. 2009)..................................................... 19, 20

*In re Neurontin Marketing & Sales Practices Litigation* ("*Amended Findings*"),
  No. 04-cv-10739-PBS, 2011 WL 3852254 (D. Mass. Aug. 31, 2011)................. passim

iv

*In re Neurontin Marketing & Sales Practices Litigation* ("*Class Cert. Reconsideration Decision*"),
No. 04-cv-10981-PBS, 2011 WL 1882870 (D. Mass. May 17, 2011) ..................... passim

*In re Neurontin Marketing & Sales Practices Litigation*,
754 F. Supp. 2d 293 (D. Mass. 2010) ........................................................... 10

*In re Neurontin Marketing, Sales Practices & Products Liability Litigation* ,
257 F.R.D. 315 (D. Mass. 2009) .................................................................. 10

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
522 F.3d 6 (1st Cir. 2008) ...................................................................... 1, 4, 6

*In re Rail Freight Fuel Surcharge Antitrust Litigation*,
725 F.3d 244, 2013 WL 4038561 (D.C. Cir. 2013).................................... 6, 11

*In re Rezulin Products Liability Litigation*,
392 F. Supp. 2d 597 (S.D.N.Y. 2005)............................................................ 21

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
No. 2:06-cv-5774 (SRC), 2009 WL 2043604 (D.N.J. July 10, 2009) ............. 21

*In re St. Jude Medical, Inc.*,
522 F.3d 836 (8th Cir. 2008) ......................................................... 2, 13, 14, 15

*In re TJX Cos. Retail Security Breach Litigation*,
246 F.R.D. 389 (D. Mass. 2007) .................................................................. 14

*In re U.S. Foodservice Inc. Pricing Litigation*,
12-1311-CV, 2013 WL 4609219 (2d Cir. Aug. 30, 2013) ............................. 14

*Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*,
634 F.3d 1352 (11th Cir. 2011) .................................................................... 18

*Kaiser Foundation Health Plan, Inc. v. Pfizer, Inc.* ("*Kaiser Opinion*"),
712 F.3d 21 (1st Cir. 2013).................................................................... passim

*Lindsey v. Normet*,
405 U.S. 56 (1972)...................................................................................... 16

*Maniscalco v. Brother International (USA) Corp.*,
709 F.3d 202 (3d Cir. 2013)........................................................................ 19

*Marcus v. BMW of North America, LLC*,
687 F.3d 583 (3d Cir. 2012)........................................................................ 18

*Martins v. 3PD, Inc.*,
No. 11-11313-DPW, 2013 WL 1320454 (D. Mass. Mar. 28, 2013) ............... 11

*McLaughlin v. American Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008)...................................................................................... 14

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*,
   578 N.W.2d 222 (Iowa 1998) .................................................................................... 21

*Montgomery v. New Piper Aircraft, Inc.*,
   209 F.R.D. 221 (S.D. Fla. 2002) ............................................................................... 19

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001)......................................................................................... 6

*O'Gara ex rel. Portnick v. Countrywide Home Loans, Inc.*,
   282 F.R.D. 81 (D. Del. 2012) .................................................................................... 11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).................................................................................................... 18

*Poulos v. Caesars World, Inc.*,
   379 F.3d 654 (9th Cir. 2004) ..................................................................................... 14

*Prishwalko v. Bob Thomas Ford, Inc.*,
   636 A.2d 1383 (Conn. App. Ct. 1994)....................................................................... 22

*Prohias v. Pfizer, Inc.*,
   485 F. Supp. 2d 1329 (S.D. Fla. 2007) ........................................................................ 8

*Roach v. T.L. Cannon Corp.*,
   No. 3:10-CV-0591, 2013 WL 1316452 (N.D.N.Y. March 29, 2013) ........................ 11

*Sandwich Chef of Texas, Inc. v. Reliance National Indemnity Insurance Co.*,
   319 F.3d 205 (5th Cir. 2003) ..................................................................................... 13

*Sellinger v. Freeway Mobile Home Sales, Inc.*,
   521 P.2d 1119 (Ariz. 1974)........................................................................................ 21

*Smilow v. Southwestern Bell Mobile Systems, Inc.*,
   323 F.3d 32 (1st Cir. 2003)........................................................................................... 3

*Smith v. Family Video Movie Club, Inc.*,
   No. 11 CV 1773, 2013 WL 1628176 (N. D. Ill. Apr. 15, 2013)................................. 11

*Spence v. Glock, Ges.m.b.H.*,
   227 F.3d 308 (5th Cir. 2000) ..................................................................................... 20

*Standard Fire Insurance Co. v. MTU Detroit Diesel, Inc.*,
   No. 07-3827 (GEB), 2009 WL 2568199 (D.N.J. Aug. 13, 2009)................................ 21

*Stout v. J.D. Byrider*,
  228 F.3d 709 (6th Cir. 2000) ........................................................ 13

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012 ................................................... 9

*Thomas v. Arrow Financial Services, LLC*,
  No. 05 C 5699, 2006 WL 2438346 (N.D. Ill. Aug. 17, 2006) ......................................... 11

*Thompson v. Jiffy Lube International, Inc.*,
  250 F.R.D. 607 (D. Kan. 2008) ................................................... 19

*UFCW Local 1776 v. Eli Lilly & Co.*,
  620 F.3d 121 (2d Cir. 2010) ................................................ 5, 14, 18

*United States v. Armour & Co.*,
  402 U.S. 673 (1971) ................................................................ 16

*Vista HealthPlan, Inc. v. Amgen, Inc.*,
  CV 07-3711 PSG (AGRx), 2007 WL 4144893 (C.D. Cal. Nov. 13, 2007) .............. 14, 15

*Wallace v. Powell*,
  3:09-CV-286, 2010 WL 3398995 (M.D. Pa. Aug. 24, 2010) ......................................... 14

*Wallace v. Powell*,
  3:09-CV-286, 2013 WL 2042369 (M.D. Pa. May 14, 2013)......................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ...................................................... passim

*Weinberg v. Sun Co.*,
  777 A.2d 442 (2001) ................................................................. 22

*Wheeler v. United Services Auto Association*,
  3:11-CV-00018-SLG, 2013 WL 4525312 (D. Alaska Aug. 27, 2013)............................ 10

## STATUTES & RULES

Ala. Code § 8-19-10(e) (West 2012) ........................................................... 22

Fed. R. Civ. P. 23 ..................................................................... passim

Fed. R. Civ. P. 23(a) ..................................................................... 3, 4

Fed. R. Civ. P. 23(b) ....................................................................... 3

Fed. R. Civ. P. 23(b)(3) ......................................................... 4, 11, 14, 15

Mich. Comp. Laws Ann. § 445.911 (West 2012)..........................................................................21

Miss. Code Ann. § 75-24-15(4) (West 2012) .............................................................................22

Or. Rev. Stat. Ann. § 646.638 (West 2012)................................................................................21

## <u>OTHER AUTHORITIES</u>

Joseph M. McLaughlin,
     *McLaughlin on Class Actions* § 5:54 (9th ed. 2012) .......................................................13

Restatement (Second) of Conflict of Laws § 148 (1971) ...........................................................19

**PRELIMINARY STATEMENT**

This Court correctly denied Plaintiffs' three prior requests for class certification and should deny their fourth request as well.  Although the First Circuit remanded for further consideration, *see Harden Mfg. Corp. v. Pfizer, Inc.* ("*Harden Opinion*"), 712 F.3d 60, 70 (1st Cir. 2013), its holdings are consistent with this Court's prior rulings that a nationwide third-party payer ("TPP") class cannot be certified.  Moreover, recent Supreme Court decisions confirm the correctness of this Court's prior denials of class certification.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

Plaintiffs' motion incorrectly assumes that the First Circuit has already resolved all class certification issues in their favor.  If this were true, the First Circuit could have simply reversed with instructions to certify a class.  Instead, the First Circuit "express[ed] no view as to whether the plaintiffs can, on remand, meet the requirements of Rule 23." *Harden Opinion*, 712 F.3d at 70.  Plainly, the First Circuit believed that issues bearing on class certification remain unresolved and it remanded so that this Court could consider these issues in the first instance. *See id.* Rather than addressing these unresolved issues, Plaintiffs devote the bulk of their motion to simply reciting the procedural history of this case and the details of the First Circuit's holdings.

Numerous issues unaddressed in Plaintiffs' brief preclude class certification.  <u>*First*</u>, regardless of whether aggregate evidence is legally sufficient with respect to large national TPPs like Kaiser and Aetna, it cannot establish classwide injury for a class composed primarily of small TPPs.  Most putative class members are small self-insured employers that—much like individual consumers—likely paid for no more than a handful of bipolar prescriptions issued by as few as one doctor.  In these circumstances, Prof. Rosenthal's inability to determine which prescriptions were caused by the alleged fraudulent promotion renders Plaintiffs incapable of demonstrating through common evidence "that each member of the class was in fact injured." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 28 (1st Cir. 2008).

<u>*Second*</u>, the Supreme Court recently held that predominance is not satisfied where, as here, "[q]uestions of individual damage calculations will inevitably overwhelm questions

common to the class." *Comcast*, 133 S. Ct. at 1433.  This confirms the correctness of this Court's ruling that "complex issues related to calculating damages make the class unmanageable."  *In re Neurontin Mktg. & Sales Practices Litig.* ("*Class Cert. Reconsideration Decision*"), No. 04-cv-10981-PBS, 2011 WL 1882870, at *6 (D. Mass. May 17, 2011).

<u>*Third*</u>, the First Circuit recognized Pfizer's right to present "individual testimony" from physicians who prescribed Neurontin to a TPP plaintiff's members.  *See Harden Opinion*, 712 F.3d at 69.  The purported legal sufficiency of aggregate proof does not support class certification in these circumstances.  *See, e.g.*, *In re St. Jude Med., Inc.*, 522 F.3d 836, 840 (8th Cir. 2008).  Plaintiffs do not dispute that admitting testimony from even one physician for each of the 13,070 putative class members would defeat predominance and render the class unmanageable.  Instead, Plaintiffs argue that Pfizer should be restricted to the same "representative" physician testimony presented in *Kaiser*, even though none of those physicians treated any of the putative class members' insureds.  This is precisely the sort of "Trial By Formula" rejected by the Supreme Court in *Dukes*, which holds that defendants have a right to "individualized determinations" regarding the decisions on which each putative class member's claim is based.  131 S. Ct. at 2560-61.

<u>*Fourth*</u>, despite Plaintiffs' disavowal of direct reliance, a class proceeding would require individual inquiries regarding when each TPP first learned of Neurontin's purported inefficacy for bipolar disorder and what steps, if any, it took in response.  A significant portion of the *Kaiser* trial was devoted to these issues, which related not only to Kaiser's direct reliance theory, but also to Pfizer's defenses regarding causation, injury, and mitigation of damages.  Although Pfizer did not prevail, there was no question that the fact-finders needed to weigh this evidence in order to determine essential elements of Kaiser's claims.

<u>*Fifth*</u>, Plaintiffs' claim under the New Jersey Consumer Fraud Act ("NJCFA") raises choice-of-law issues that defeat predominance and would render a class unmanageable.  Plaintiffs' assumption that the NJCFA can be applied to all putative class members' claims cannot be reconciled with this Court's ruling in *Kaiser* that the applicable law was that of

2

California, the state where Kaiser is based, where most of its members and their physicians are located, and where most of the prescriptions in question were filled.  *In re Neurontin Mktg. & Sales Practices Litig. ("Amended Findings")*, No. 04-cv-10739-PBS, 2011 WL 3852254, at *53 (D. Mass. Aug. 31, 2011).  The clear import of this ruling is that each putative class member's claim would likely be governed by the law of that TPP's home state.  Significant outcome-determinative differences between the states' consumer protection laws preclude certification of a sprawling nationwide class.

<u>*Finally*</u>, Plaintiffs cannot satisfy Rule 23's superiority requirement because they seek substantial awards under RICO, which provides for treble damages and attorney's fees.  Moreover, there is no basis for Plaintiffs' argument that individual trials would require the same "multitude of physicians" to testify in each case.  (Mem. in Supp. of Post-Mandate Mot. For Class. Cert. [4154] ("Pl. Mem.") at 24.)  Most putative class members' claims depend on prescribing decisions made by as few as one physician.  As to these TPPs, the need for testimony from a "multitude of physicians" arises only from Plaintiffs' attempt to aggregate their claims into an unmanageable class.

## **APPLICABLE STANDARDS**

Plaintiffs have the burden of proving that class certification is appropriate, and to do so they "must establish the four elements of Rule 23(a) and one of the several elements of Rule 23(b)."  *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003).  The Court cannot accept Plaintiffs' submissions at face value, but must subject them to a "'rigorous analysis.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  As the Supreme Court recently explained, "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'  In order to justify a departure from that rule, 'a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'"  *Id.* at 2550 (citations omitted).  This means class members' "claims must depend on a common contention . . . of such a nature that it is capable of

3

classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551.

Rule 23(b)(3)'s predominance requirement is "far more demanding" than Rule 23(a)'s commonality prerequisite discussed in *Dukes*. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008). For purpose of determining whether common issues predominate over individual ones, only those questions that can be answered with common proof are relevant. *See Dukes*, 131 S. Ct. at 2556-57. Common issues do not predominate where causation and injury cannot be established with common proof, *see New Motor Vehicles*, 522 F.3d at 25-26, or where damages are not "capable of measurement on a classwide basis," *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).

## ARGUMENT

## I.   THE FIRST CIRCUIT'S DECISIONS DO NOT SUPPORT CLASS CERTIFICATION

Plaintiffs incorrectly contend that the First Circuit's analysis "applies to both summary judgment and class certification" and "leave[s] no doubt that a class of the third party payors should be certified." (Pl. Mem. at 1, 11.) To the contrary, the First Circuit's holdings and analysis are expressly confined to claims by individual TPPs. *See Harden Opinion*, 712 F.3d at 62; *Kaiser Found. Health Plan, Inc. v. Pfizer, Inc.* ("*Kaiser Opinion*"), 712 F.3d 21, 25 (1st Cir. 2013); *Aetna, Inc. v. Pfizer, Inc.* ("*Aetna Opinion*"), 712 F.3d 51, 53 (1st Cir. 2013). Although the First Circuit remanded the issue of class certification for further consideration, it "express[ed] no view as to whether the plaintiffs can, on remand, meet the requirements of Rule 23." *Harden Opinion*, 712 F.3d at 70. In particular, because it did not reach the issue of class certification, the First Circuit did not have occasion to address the Supreme Court's recent decisions in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), both of which are fatal to Plaintiffs' motion.

In holding that an individual TPP can make a legally sufficient, *prima facie* showing of causation, injury, and damages through aggregate proof, the First Circuit in no way implied that

the same aggregate proof could suffice as common evidence for a nationwide TPP class.  The First Circuit made clear that these are distinct issues.  For example, it construed the *Lilly* decision to hold that aggregate evidence might be sufficient "'with respect to individual claims by some TPPs'" even though it "'cannot support class certification.'"  *Kaiser Opinion*, 712 F.3d at 46 (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 136 (2d Cir. 2010)).  This Court drew the same distinction in *Kaiser*.  *See Amended Findings*, 2011 WL 3852254, at *58 ("The instant case is not a class action and is therefore distinguishable from *Eli Lilly*.").

Indeed, even though the First Circuit allowed Kaiser to recover and Aetna to proceed with respect to all off-label uses at issue, Plaintiffs' request for certification is limited to claims pertaining to bipolar disorder.  (Post-Mandate Mot. for Class Cert. [4153] ("Pl. Mot.") ¶ 2.)[1]  Plaintiffs effectively concede that, despite the First Circuit's legal sufficiency holdings, certification cannot be granted for any other indications.  As discussed below, the same principles that preclude certification of the other indication-specific subclasses also preclude certification of a bipolar subclass.  In short, this Court's repeated denials of class certification[2] are consistent with the First Circuit's decisions and should be reinstated.

## II.   COMMON ISSUES DO NOT PREDOMINATE BECAUSE INJURY, CAUSATION AND DAMAGES CANNOT BE PROVEN CLASSWIDE

### A.   Professor Rosenthal's Analysis Cannot Establish Classwide Injury For A Putative Class Composed Primarily Of Small TPPs

Prof. Rosenthal's analysis cannot establish classwide injury because most putative class members are small self-insured employers that—much like individual consumers—likely paid for no more than a handful of bipolar prescriptions issued by as few as one doctor.  In these circumstances, Prof. Rosenthal's inability to determine which prescriptions were caused by the

---

[1]   Although Plaintiffs purport to reserve their rights with respect to other indications (Pl. Mot. ¶ 2), Pfizer maintains that Plaintiffs have abandoned any such claims.  This Court granted summary judgment, denied class certification, and entered final judgment against Plaintiffs with respect to all off-label indications.  Plaintiffs' appeal "[wa]s limited to only the claims regarding the off-label use of Neurontin for bipolar disorder, as to both the summary judgment and the class certification issues."  *Harden Opinion*, 712 F.3d at 62.

[2]   Pfizer incorporates by reference all of its arguments and evidence submitted in opposition to Plaintiffs' prior motions for class certification.

alleged fraudulent promotion does not "only concern[] the extent of damages" (Pl. Mem. at 14); it renders Plaintiffs incapable of demonstrating through common evidence "that each member of the class was in fact injured."  *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 28 (1st Cir. 2008).

As the First Circuit held in *New Motor Vehicles*, plaintiffs seeking class certification must demonstrate that the "fact of damages," as distinct from "the measure of those damages," is susceptible to common proof.  *Id.* at 28.  *See also, e.g.*, *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 188 (3d Cir. 2001) ("The ability to calculate the aggregate amount of damages does not absolve plaintiffs from the duty to prove each [class member] was harmed by the defendants' practice."); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 2013 WL 4038561, at *6-7 (D.C. Cir. 2013) (vacating class certification where district court had failed to consider whether economist's regression models could provide "common evidence of classwide injury").  Moreover, Plaintiffs' argument that damages need not be proven with "mathematical certainty" (Pl. Mem. at 14) "applies only to the showing needed to support a damage award, not to the constitutional requirement that the plaintiff show the fact of injury." *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1364-65 (D.C. Cir. 2012).[3]

Plaintiffs' expert Dr. Rena Conti purports to determine which TPPs are members of the proposed class by "estimat[ing] the probability that a plan of a given size (i.e., number of members) has at least one patient who received Neurontin for a particular indication" and by establishing thresholds regarding "the number of members necessary to assure with 99%, 95%, and 90% probability respectively that a TPP has at least one member in a particular sub-class." (Revised Conti Decl. [1142] ¶ 54.)  According to Dr. Conti, a putative bipolar-only TPP class would include more than 13,070 members, of which more than 9,895 are self-insured employers. (*Id.* ¶ 58.)  As Dr. Conti explains, self-insured employers are the "smallest category of payer" in terms of their membership size.  (*Id.* at ¶ 57.)

---

[3]   As discussed *infra* Section II.B, Plaintiffs' inability to show that damages are "capable of measurement on a classwide basis" is an additional reason to deny class certification.  *Comcast*, 133 S. Ct. at 1433.

This is significant because mere membership in the class—and, *a fortiori*, the likelihood that any injury was sustained—becomes increasingly tenuous for smaller TPPs. For example, Dr. Conti opines that there is only an "~88%" probability that Harden—the only named self-insured employer—insured a *single patient* that received a bipolar prescription.[4] (*Id.* ¶ 60.) And even this probability cannot be taken at face value because there is no basis for Plaintiffs' assumption that drug utilization by small TPPs—as opposed to multi-state or national insurers like Kaiser and Aetna—matches the national average. *See, e.g.*, *Comcast*, 133 S. Ct. at 1435 n.6 (holding that even if regression analysis was limited to "overbuilder theory" of antitrust impact, there would still be no commonality of issues unless it could show "that the extent of overbuilding (absent deterrence) would have been the same in all counties").

The First Circuit's principal holdings regarding the admissibility and legal sufficiency of Prof. Rosenthal's analysis are set forth in its *Kaiser* and *Aetna* opinions, which concern large TPPs that paid for hundreds of thousands of bipolar prescriptions. (*See* 8/11/08 Hartman Decl. [1450-8] at Tables B.5 & B.7.) As to these large TPPs, the First Circuit held that causation and injury do not depend on "'which doctor's prescriptions were caused by [fraud]'" and that quantifying the number of such prescriptions "belongs to the damages phase" of the case. *Aetna Opinion*, 712 F.3d at 58 (citations omitted); *see also Kaiser Opinion*, 712 F.3d at 39 (holding that the number of prescriptions attributable to fraudulent promotion presented a "damages question"). But the First Circuit neither held nor suggested that Prof. Rosenthal's analysis could establish classwide causation and injury when most TPPs paid for few (if any) prescriptions.[5] To the contrary, the First Circuit made clear that aggregate evidence is sufficient only where the TPP can show that it "'suffered the sort of injury that would be the expected consequence of the

---

[4]  Thus, Harden does not even meet Dr. Conti's lowest probability threshold (90%) for membership in the class it purports to represent. Harden met Dr. Conti's threshold only with respect to neuropathic pain (Revised Conti Decl. [1142] ¶ 60), as to which Plaintiffs have abandoned their request for class certification.

[5]  The First Circuit's *Harden* opinion incorporated these holdings without directly addressing their application to small TPPs. *See Harden Opinion*, 712 F.3d at 61, 68 n.10. Although the First Circuit held that Plaintiffs, including Harden, could survive summary judgment based on Prof. Rosenthal's analysis, it emphasized that "Pfizer will, of course, have an opportunity to argue against [the] admissibility [of Prof. Rosenthal's analysis] at the trial of the Harden plaintiffs' claims, if Pfizer has objections specific to this case." *Id.* at 68 n.10.

defendant's wrongful conduct.'" *Harden Opinion*, 712 F.3d at 68 (citation omitted).  And as this Court previously recognized, the purported ability to infer such an injury from aggregate proof depends on the size of the TPP.  (*See* 9/18/09 Tr. [2114] at 35:2-36:6 (observing that if a TPP insured "millions and millions of patients," it might be reasonable to assume that it paid for at least one fraudulently-induced prescription).)

Because so many putative class members paid for so few prescriptions, proving that *those particular prescriptions* were caused by fraud is essential to establishing injury.  In this respect, putative class members are similarly situated to consumer plaintiffs, as to whom there is no dispute that aggregate evidence cannot suffice.  *See, e.g.*, *Clark v. Pfizer Inc.*, 990 A.2d 17, 27 (Pa. Super. Ct.) ("Professor Rosenthal's report is inadequate to show reliance and/or causation for any individual [consumer] class member, let alone for every member on a class-wide basis."), *appeal denied*, 13 A.3d 473 (Pa. 2010); *see also Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 380-81 (D.N.J. 2004); *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336-37 (S.D. Fla. 2007).[6]

For the same reason Prof. Rosenthal cannot demonstrate which consumers paid for fraudulently induced prescriptions, she cannot demonstrate classwide injury in a putative class composed primarily of small TPPs.  Consider that even if a jury were to accept Prof. Rosenthal's opinion that 99.4% of bipolar prescriptions were caused by fraudulent promotion, that would leave 0.6%—more than *70,000 bipolar prescriptions*—written for independent reasons.[7]  Many putative class members likely paid only for these non-fraudulently-induced prescriptions and, thus, suffered no injury whatsoever.  But which ones?  Prof. Rosenthal cannot tell us.

Moreover, Plaintiffs concede that a jury could find a "lesser percentage" of fraudulently-induced prescriptions than Prof. Rosenthal found.  (Pl. Mem. at 14.)  To illustrate, while this

---

[6]  Plaintiffs did not appeal from the summary judgments or class certification denials for the four consumer class representatives who failed to present legally sufficient individualized evidence of causation and injury.  *See Harden Opinion*, 712 F.3d at 63 n.4.  Likewise, Plaintiffs did not seek leave to appeal from this Court's refusal to certify a bipolar-only consumer class, *see id.*, nor have they asked this Court to reconsider that ruling in light of the First Circuit's decisions.

[7]  Prof. Rosenthal opines that 11,710,680 bipolar prescriptions were caused by fraud.  (8/11/08 Rosenthal Decl. [1450-7] at Attachment G.)  If this represents 99.4% of all bipolar prescriptions, then the total number of bipolar prescriptions would be 11,781,368.  0.6% of this total yields 70,688 non-fraudulently-induced prescriptions.

Court accepted Prof. Rosenthal's 99.4% figure for purposes of determining the amount of restitution in *Kaiser*, *see Amended Findings*, 2011 WL 3852254, at *58, the jury's significantly lower award under RICO (*see* Verdict [2760]) is consistent with a finding that only 83.45% of bipolar prescriptions were caused by fraud.[8]  This finding would leave nearly *2 million bipolar prescriptions* written for independent reasons—enough to wipe out the claims of hundreds if not thousands of putative class members.  But which ones?  Prof. Rosenthal cannot tell us.

In sum, individualized inquiries into the prescriptions paid for by each TPP would be required to determine which putative class members were injured and which were not.  This distinguishes Plaintiffs' authorities,[9] defeats predominance, and would render the proposed class unmanageable.  Accordingly, the Court should reinstate its prior rulings denying Plaintiffs' requests for class certification.

### B.  Professor Rosenthal's Analysis Cannot Establish Classwide Damages

Even if Plaintiffs could establish the fact of injury on a classwide basis (which they cannot), individual issues regarding damages would preclude class certification.  In denying Plaintiffs' most recent motion, this Court correctly ruled that "complex issues related to calculating damages make the class unmanageable."  *Class Cert. Reconsideration Decision*, 2011 WL 1882870, at *6.  The First Circuit's holding that Pfizer's arguments regarding the limitations of Prof. Rosenthal's analysis present "a question of damages," *Kaiser Opinion*, 712 F.3d at 45, is, therefore, consistent with this Court's stated reasons for denying class certification.

---

[8]   Attached as Exhibit A is a chart demonstrating how this 83.45% figure is derived from the jury's damages award.

[9]   Plaintiffs cite cases in which purchasers of front-load washing machines asserted design defect claims based on the machines' alleged propensity to develop mold buildup.  Courts in these cases held that individual issues did not predominate because simply proving a design defect would establish classwide injury at the point of sale regardless of whether individual class members experienced mold build-up problems.  *See, e.g.*, *Glazer v. Whirlpool Corp.*, 722 F.3d 838, 857 (6th Cir. 2013); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 479 (C.D. Cal. 2012).  Likewise, in *Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007), the plaintiffs alleged that a telecommunications provider sent bills containing identical written misrepresentations to all class members, which, under the Federal Communications Act, could establish classwide injury regardless of whether class members were deceived.  *See id.* at 565-66.

The United States Supreme Court's recent decision in *Comcast Corp. v Behrend*—issued after appellate briefing and oral argument in this case were complete—highlights the impropriety of Plaintiffs' proposed class action.  In *Comcast*, the Supreme Court held that "any model supporting a 'plaintiff's damages case must be consistent with its liability case.'"  133 S. Ct. 1426 at 1433.  Plaintiffs argue that this case involves no "mismatch of proof" between their liability and damages theories.  (Pl. Mem. at 21-22.)  To the contrary, even though the bulk of Plaintiffs' purported evidence of fraudulent promotion concerns publications and CME events, Prof. Rosenthal purports to measure the impact of "expenditures on detailing."  *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 329 (D. Mass. 2009).  And as this Court has recognized, "there is no evidence as to what the detailers said to any of the doctors." *In re Neurontin Mktg. & Sales Practices Litig.*, 754 F. Supp. 2d 293, 310 (D. Mass. 2010). Because Prof. Rosenthal fails to measure damages resulting from the particular types of marketing on which Plaintiffs' fraud allegations and evidence are premised, common issues do not predominate.  *See Comcast*, 133 S. Ct. at 1433 (holding that common issues did not predominate where regression analysis "failed to measure damages resulting from the particular antitrust injury on which petitioners' liability in this action is premised").

In addition, the Supreme Court held in *Comcast* that, without a methodology to measure damages on a class-wide basis, a plaintiff "cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class." 133 S. Ct. at 1433.  Although Plaintiffs cite authorities that purport to distinguish or limit *Comcast*'s holding (*see* Pl. Mem. at 20-22), numerous other courts have concluded that the Supreme Court meant what it said.  *See Bright v. Asset Acceptance, LLC*, No. 11-5846 (JBS/JS), 2013 WL 3990817, at *12-14 (D.N.J. Aug. 1, 2013) (denying class certification) ("In [*Comcast*], the Supreme Court held that class certification is inappropriate when '[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class.'").[10]  Decisions

---

[10]   *See also, e.g.*, *Wheeler v. United Servs. Auto. Ass'n*, 3:11-CV-00018-SLG, 2013 WL 4525312, at *4 (D. Alaska Aug. 27, 2013) ("*Comcast* thus holds that where a proposed Rule 23(b)(3) class involves individualized damages,

prior to *Comcast* also recognized that class certification should be denied where, as here, individual issues predominate as to damages.[11]

The District of Massachusetts recently held that *Comcast* "called . . . into question" the argument advanced here by Plaintiffs that "'courts generally find the predominance requirement to be satisfied even if individual damages issues remain.'" *Martins v. 3PD, Inc.*, No. 11-11313-DPW, 2013 WL 1320454, at *8 & n.3 (D. Mass. Mar. 28, 2013). Though it did not construe *Comcast* to "extinguish[] [this proposition] entirely," the *Martins* court held that *Comcast* does restrict certification to cases where "[damages] determinations will neither be particularly complicated nor overwhelmingly numerous." *Id.* The court denied certification with respect to those claims involving "individual assessment of the measure of damages," which also implicated "questions of liability." *Id.* at *8.

Determining damages in this case would not be "straight forward" (Pl. Mem. at 14), as Plaintiffs contend. In *Kaiser*, determining damages required the fact-finders to consider highly individualized evidence including, *inter alia*: whether Kaiser's drug utilization was consistent

---

the plaintiff must provide the district court with a method that is capable of measuring damages on a classwide basis. Without such a method, *Comcast* instructs that the predominance requirement of Rule 23(b)(3) cannot be met . . . ."); *Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 2013 WL 4038561, at *6, *8 (noting that "[*Comcast*] sharpens the defendants' critique of the damages model," and that "[b]efore [*Comcast*], the case law was far more accommodating to class certification under Rule 23(b)(3)"); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 101 (E.D. Pa. 2013) ("Since I certified this class a year ago, the Supreme Court released *Comcast* . . ., which held that damages must be able to be measured classwide in order to sustain class certification. This opinion arguably renders class certification in cases like this one more difficult to prove."); *Cowden v. Parker & Associates, Inc.*, No. 5:09-323-KKC, 2013 WL 2285163, at *6 (E.D. Ky. May 22, 2013) (denying class certification) ("In *Comcast*, the Supreme Court confirmed that, at least in some cases, '[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class.'" (citation omitted)); *Smith v. Family Video Movie Club, Inc.*, No. 11 CV 1773, 2013 WL 1628176, at *10 (N.D. Ill. Apr. 15, 2013) (under *Comcast*, "damages must be susceptible to measurement across the entire class"); *Roach v. T.L. Cannon Corp.*, No. 3:10-CV-0591 (TJM/DEP), 2013 WL 1316452, at *3 (N.D.N.Y. Mar. 29, 2013) (denying class certification where "Plaintiffs have not offered a damages model susceptible of measurement across the entire class," and rejecting argument that individualized damages questions do not defeat predominance as being "in contravention of the holding of [*Comcast*]").

[11]   *See, e.g.*, *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 881 (7th Cir. 2001) (holding that "case [wa]s not suitable for class action treatment because of the variance in injury among the members of the class and the cost of individualized hearings that would in consequence be required for assessing damages"); *O'Gara ex rel. Portnick v. Countrywide Home Loans, Inc.*, 282 F.R.D. 81, 90-91 (D. Del. 2012) ("Plaintiff has failed to present any evidence regarding how damages can be proven on a class-wide basis. Thus, predominance is not satisfied here"); *Thomas v. Arrow Fin. Servs., LLC*, No. 05 C 5699, 2006 WL 2438346, at *6 (N.D. Ill. Aug. 17, 2006) (finding lack of predominance where individualized inquiry would be required to ascertain each class member's damages).

with national averages, *see Amended Findings*, 2011 WL 3852254, at *32 n.20; whether PMG physicians attended CME events where misrepresentations were allegedly made, *see id.* at *16, 30; whether off-label prescribing increased following PMG physicians' attendance at those CME events, *see id.* at *30; which alternative drugs would likely have been prescribed by PMG physicians had Neurontin not been prescribed, *see id.* at *33; and what steps Kaiser took (or failed to take) to mitigate its damages, *see id.* at *30. Likewise, determining damages in a class proceeding would require separate hearings on these and other issues with respect to each of the more than 13,070 putative class members. Under *Comcast*, the need for such individualized inquiries renders class certification inappropriate.

### C.   Individual Issues Regarding Physicians' Prescribing Decisions Predominate Over Any Common Questions

Plaintiffs' attempt to prove classwide causation, injury, and damages based on Prof. Rosenthal's regression analysis cannot be reconciled with the Supreme Court's decision in *Dukes*. The plaintiffs in *Dukes* sought to represent a nationwide class of female Wal-Mart employees asserting employment discrimination claims and seeking, *inter alia*, awards of backpay. Even though "[p]ay and promotion decisions at Wal-Mart are generally committed to local managers' broad discretion," *Dukes*, 131 S. Ct. at 2547, the plaintiffs argued that classwide discrimination was a common question that could be resolved by statistical regression analyses, *id.* at 2555.

The Supreme Court reversed the lower courts' decisions granting and approving class certification. *See id.* at 2555-57, 2560-61. It held that "[e]ven if they are taken at face value, [the regression analyses] are insufficient to establish that respondents' theory can be proved on a classwide basis [because] . . . '[i]nformation about [gender-based pay and promotion] disparities at the regional and national level does not establish the existence of disparities at individual stores.'" *Id.* at 2555 (citation omitted). Moreover, even if the plaintiffs' regression analyses could demonstrate significant disparities at all stores, "that would still not demonstrate that

commonality of issue exists" because Wal-Mart would be entitled to present testimony from the individual store managers to rebut the plaintiffs' statistical evidence. *Id.* at 2555.

The Supreme Court further held "that respondents' claims for backpay were improperly certified." *Id.* at 2557. It rejected the Ninth Circuit's approach—trying a "sample set" of class members' claims and extrapolating the results to the remaining class members—as a "Trial by Formula" that would impermissibly deprive Wal-Mart of its right to "individualized determinations of each employee's eligibility for backpay." *Id.* at 2560-61. The Supreme Court concluded that "a class cannot be certified on the premise that Wal–Mart will not be entitled to litigate its statutory defenses to individual claims." *Id.* at 2561.

Plaintiffs' fleeting references to *Dukes* fail to address the Supreme Court's holdings and cannot obscure its direct applicability to this case. Plaintiffs merely argue that *Dukes* did not "alter class certification principles" or address "civil RICO or state [consumer fraud] claims." (Pl. Mem. at 19.) This does not help them because *Dukes* is fully consistent with the extensive body of case law holding that RICO and other fraud-based claims are unsuitable for class treatment "[i]f there is any material variation in the representations made, or in the degrees of reliance thereon." Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:54 (9th ed. 2012); *accord* Fed. R. Civ. P. 23(b)(3) advisory committee's note ("a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed").[12] Plaintiffs' claims

---

[12]  *See also, e.g.*, *In re St. Jude Med., Inc.*, 522 F.3d 836, 838-40 (8th Cir. 2008) (finding fraud claims unsuitable for class treatment because the plaintiffs alleged their physicians learned about the defendant's medical device through numerous different misrepresentations and the physicians, who denied relying upon those misrepresentations, had different sources of information concerning the device); *Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 219-21 (5th Cir. 2003) (noting that "[t]he pervasive issues of individual reliance that generally exist in RICO fraud actions create a working presumption against class certification" and holding that the aggregate proof offered by the plaintiff did not overcome this presumption); *In re LifeUSA Holding Inc.*, 242 F.3d 136, 145-46 (3d Cir. 2001) (reversing certification of consumer fraud class action where claims arose "not out of one single event or misrepresentation," but from thousands of non-uniform sales presentations); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340-41 (4th Cir. 1998) (reversing class certification where "[p]laintiffs built their . . . fraud . . . claims on the shifting evidentiary sands of individualized representations to franchisees" such that "proof of reasonable reliance would depend upon a fact-intensive inquiry into what information each franchisee actually had"); *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000) (affirming denial of class certification where proving reliance would "require[] an individual assessment of what documents the customer reviewed and in what manner [and] what representations Defendants made to each customer"); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215,

fall squarely within this settled principle because they require proof that psychiatrists who prescribed Neurontin to each putative class member's insureds relied on non-uniform representations allegedly made over the course of nine years through various different channels, including publications, CME events, and detailing visits.  The three RICO class certification cases Plaintiffs cite are easily distinguished.[13]

The First Circuit's decisions do not support a different result.  Although the First Circuit held that an individual TPP can proceed via aggregate evidence, it also recognized Pfizer's right to present "individual testimony" from prescribing physicians.  *See Harden Opinion*, 712 F.3d at 69 ("Ultimately, it is a jury's task to weigh the individual testimony presented by Pfizer against the aggregate and circumstantial evidence presented by the Harden plaintiffs.").  Courts addressing this scenario have held that the purported legal sufficiency of aggregate proof of causation does not support class certification where the defendant has a right to respond by presenting individualized evidence.  *See In re St. Jude Med., Inc.*, 522 F.3d 836, 840 (8th Cir. 2008) (reversing class certification; holding that even if state law permitted plaintiffs to rely on general proof of causation, defendant could not be precluded from presenting individual evidence "negating a plaintiff's direct or circumstantial showing of causation"); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 396 (D. Mass. 2007) (denying class certification; holding that defendants' right to introduce individualized evidence rebutting plaintiffs' showing of classwide reliance defeated predominance).  *See also Vista HealthPlan, Inc. v. Amgen, Inc.*,

---

223 (2d Cir. 2008) (holding that, where reliance is individualized, it "cannot be the subject of general proof"); *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 665-66 (9th Cir. 2004) (where one motivation does not fit all, "an individualized showing of reliance is required").

[13]   In *In re U.S. Foodservice Inc. Pricing Litig.*, 12-1311-CV, 2013 WL 4609219 (2d Cir. Aug. 30, 2013), the Second Circuit upheld class certification based on allegations that fraudulently inflated "phony invoices" were sent to all class members.  *Id.* at *1, *6.  Such claims bear no resemblance to TPP claims of fraudulent off-label promotion, as to which the Second Circuit reversed class certification.  *See Lilly*, 620 F.3d at 134-36.  Likewise, in *In re Community Bank of North Virginia Mortgage Lending Practices Litigation*, MDL 1674, 2013 WL 3972458, at *6 (W.D. Pa. July 31, 2013), the plaintiffs' RICO claims were predicated on "identical" written misrepresentations. *Id.* at *6.  Finally, *Wallace v. Powell*, 3:09-CV-286, 2013 WL 2042369 (M.D. Pa. May 14, 2013), is a false imprisonment/civil rights case involving an alleged "conspiracy that resulted in the unconstitutional and unlawful adjudications of all Juvenile Plaintiffs by the same judge."  *Id.* at *6.  Because the plaintiffs' incidental RICO counts allege that they were "*forced* to pay monetary fines," they raise no serious dispute as to causation and reliance. *Wallace v. Powell*, 3:09-CV-286, 2010 WL 3398995, at *9 (M.D. Pa. Aug. 24, 2010) (emphasis added).

14

CV 07-3711 PSG (AGRx), 2007 WL 4144893, at *6 (C.D. Cal. Nov. 13, 2007) (transferring venue to state where physicians resided; holding that "even if Plaintiff [TPP] can adequately support causation with [generalized] proof, Amgen will still require physician testimony to defend itself from Plaintiff's claims").

Plaintiffs urge this Court to do precisely what these decisions forbid:  circumvent Rule 23(b)(3)'s predominance requirement by precluding Pfizer from introducing testimony from any of the physicians who prescribed Neurontin to each TPP's members, based on meritless assurances that Pfizer can adequately "defend itself on an aggregate basis."  (Pl. Mem. at 15-17.) Plaintiffs' various arguments in support of this arbitrary and unfair procedure must be rejected.

*First*, Plaintiffs' argument that prescribing physicians' testimony "would not be admissible" in a non-class trial (*id.* at 16-17) displays a gross misreading of the decisions they cite.  The First Circuit's holding that such testimony "presents a question of proof," *Harden Opinion*, 712 F.3d at 67, plainly acknowledges its admissibility.  Neither the First Circuit nor this Court found that "physician recollection of the factors that influenced their prescription decisions is notoriously unreliable," as Plaintiffs contend.  (Pl. Mem. at 16.)  The First Circuit merely referenced—but did not endorse—Professor Rosenthal's view on this issue.  *See Kaiser Opinion*, 712 F.3d at 30.  Far from rejecting physicians' testimony regarding their *own* prescribing decisions, the First Circuit merely held that their testimony did not negate causation with respect to "thousands of *other* prescribing decisions."  *Harden Opinion*, 712 F.3d at 68-69 (emphasis added).  If anything, the First Circuit's opinions support the need for additional physician testimony to rebut the notion that the testimony adduced to date is somehow atypical.  Likewise, while this Court characterized two physicians' testimony as "not entirely credible," *Class Cert. Reconsideration Decision*, 2011 WL 1882870, at *5, it admitted these and many other physicians' testimony at the *Kaiser* trial.[14]  In *Dukes*, the Supreme Court held that the defendant

---

[14]     Other courts have also recognized that "[w]hen such evidence is available, then it is highly relevant and probative on the question whether there is a causal nexus between alleged misrepresentations and any injury."  *St. Jude Med., Inc.*, 522 F.3d at 840.

had a right to present testimony from individual store managers, all of whom would likely "claim to have been applying some sex-neutral, performance-based criteria." 131 S. Ct. at 2555. That these witnesses would not readily admit to sexism might make them "unreliable" in Prof. Rosenthal's estimation, but it most certainly did not make their testimony inadmissible in *Dukes*. So too with prescribing doctors here.

*Second*, Plaintiffs' argument that Pfizer must make do with testimony from "representative doctors" (Pl. Mem. at 15) is indistinguishable from the "Trial by Formula" procedure rejected in *Dukes*, in which defendants would have been allowed to present individual defenses only in representative cases. *See* 131 S. Ct. at 2560-61. Moreover, Plaintiffs' argument begs the question: "representative" of what? As discussed *supra* Section II.A, most putative class members are small self-insured employers that likely paid for no more than a handful of bipolar prescriptions issued by as few as one doctor. Testimony by different physicians is neither "representative" of nor an acceptable substitute for the one or two or three physicians whose decisions form the entire basis for such a TPP's claim. Pfizer has a right to "individualized determinations" regarding these physicians' decisions, including "the right to raise any individual affirmative defenses it may have." *Dukes*, 131 S. Ct. at 2560-61. Indeed, due process mandates that Pfizer be given "'an opportunity to present every available defense'" to each TPP's claim. *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (citation omitted); *see also United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) (the "right to litigate the issues raised" in a case is "a right guaranteed . . . by the Due Process Clause").

*Third*, Plaintiffs' argument that testimony from more than a few "representative" physicians would be precluded as "cumulative" (Pl. Mem. at 15, 17) is unsupported and meritless. Most putative class members' claims would not require testimony from a "parade" of prescribing doctors (Pl. Mem. at 17), but only from the few doctors (or one doctor) who issued bipolar prescriptions to that TPP's members. For these TPPs, the need for a "parade" of doctors arises only from Plaintiffs' attempt to aggregate their claims into an unmanageable class. In any event, physicians' testimony regarding the distinct prescribing decisions on which each putative

class member's claim is based is no more "cumulative" than store managers' testimony regarding their distinct employment decisions in *Dukes*, and it cannot be excluded on that basis.

Plaintiffs suggest that "[t]he recent Kaiser trial is the model" for such an exclusionary rule. (Pl. Mem. at 17.)  But the reason so few prescribing physicians testified in *Kaiser* is that they resided beyond the Court's subpoena power, not because of any ruling that their testimony would have been "cumulative."[15]  Even in those dire circumstances, Pfizer was allowed to present testimony by some physicians who prescribed Neurontin to Kaiser's members.  Plaintiffs now seek to exponentially increase the prejudice to Pfizer by using Prof. Rosenthal's analysis to establish classwide causation while restricting Pfizer to the same drastically limited sample of physicians who testified in *Kaiser* and who did not write any of the prescriptions on which putative class members' claims are based.  Neither due process nor Rule 23 nor the First Circuit's opinions in this litigation permit such a fundamentally unfair and arbitrary procedure.

**D.    Individual Issues Regarding TPPs' Formulary And Reimbursement Decisions Predominate Over Any Common Questions**

Plaintiffs erroneously argue that, simply because they have disavowed any claim of individual reliance, "there [will not] be any focus in a class trial on what the individual plans did or did not do with regard to information relating to Neurontin."[16]  (Pl. Mem. at 24.)  It is true that this Court previously accepted Plaintiffs' argument that most TPPs initially placed Neurontin on their formularies unrestricted because it was an anti-epileptic medicine and did not take a proactive approach to managing Neurontin utilization.  *See Class Cert. Reconsideration*

---

[15]   *See* Kaiser's List of Witnesses to Be Presented at Trial [2179] at 1 n.2 (stating that prescribing physicians in California "are not under the control of Kaiser and cannot be compelled to participate in trial").

[16]  Plaintiffs have taken shifting positions on this issue depending on whether they were attempting to obtain class certification or survive summary judgment.  For example, after summary judgment was entered, one of the Plaintiffs—Louisiana Health Service Indemnity Company, d/b/a Blue Cross Blue Shield of Louisiana ("BCBSLA")—sought reconsideration.  (*See* BCBSLA Mot. for Reconsid. [3178].)  In its motion, BCBSLA broke ranks with its co-Plaintiffs and argued that it would have restricted Neurontin on its formularies but for Pfizer's alleged misrepresentations.  (*See id.* at 1-3.)  BCBSLA's motion was completely unfounded and this Court promptly denied it.  (*See* 4/20/11 Electronic Order.)  Nevertheless, the fact that one of the three putative class representatives raised this issue is a clear indication that many of the thousands of putative class members' claims would likewise raise individualized issues regarding direct reliance and formulary decisions.

17

*Decision*, 2011 WL 1882870, at *3.  But this does not insulate their conduct from consideration by the finder of fact.

For example, a significant portion of the *Kaiser* trial was devoted to Kaiser's admissions regarding Neurontin's efficacy for the relevant conditions, including "the embarrassing fact that favorable information about Neurontin for the treatment of neuropathic pain stayed on the Kaiser website until the week before trial."  *Amended Findings*, 2011 WL 3852254, at *30.  Although Pfizer did not prevail on this issue, there was no question that the fact-finders needed to consider and weigh this evidence in order to determine essential elements of Kaiser's claims.

Here, evidence that a putative class member may have chosen not to restrict psychiatrists' ability to prescribe Neurontin even after learning of negative bipolar studies would weigh against findings of causation and injury.  *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 607 (3d Cir. 2012) (vacating class certification); *see also Lilly*, 620 F.3d at 136 (observing that "[e]ven now, TPPs pay for Zyprexa and for the most part have not implemented close control or review of Zyprexa prescriptions").  Likewise, evidence that a putative class member may have chosen to rely on actuarial predictions of drug use and premium setting to recoup drug costs would weigh against a finding of injury.  *See Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1364 (11th Cir. 2011).  Thus, putative class members' claims require individual examination of what each TPP knew, when it knew it, and what it did or did not do in response.

## III.  SIGNIFICANT CONFLICTS BETWEEN THE STATES' LAWS PRECLUDE CERTIFICATION OF PLAINTIFFS' NJCFA CLAIM

Plaintiffs' motion must be denied for the additional reason that their NJCFA claim raises choice-of-law issues that defeat predominance and would render a class unmanageable.  Applying the NJCFA to the claims of TPPs nationwide would not comport with Massachusetts choice-of-law rules and, indeed, would be so "arbitrary and unfair" as to violate constitutional due process.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822 (1985).  A class action proceeding would instead require an individualized choice-of-law analysis for each TPP followed by application of numerous state consumer protection statutes that conflict in myriad

ways.  Courts consistently refuse to certify multi-jurisdiction consumer fraud classes in these circumstances.  *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742 n.15 (5th Cir. 1996) (decertifying nationwide class and noting that "it [is] difficult to fathom how common issues could predominate in this case when variations in state law are thoroughly considered").[17]

Tellingly, while Plaintiffs' motion expressly requests certification in connection with their NJCFA claim, *see* Pl. Mot. ¶ 3, their brief fails to address this claim at all.  Instead, Plaintiffs' motion simply assumes that New Jersey law can be applied to the claims of TPPs nationwide.  Plaintiffs previously cited *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009), as their lead authority for this proposition.  *See, e.g.*, Appellants' Reply Brief, *Harden Mfg. Corp. v. Pfizer, Inc.*, No. 11-1806, at 35 (1st Cir. Sept. 18, 2012).  However, the Third Circuit recently rejected the *Mercedes* court's rationale as one that would improperly "open[] the floodgates to nation-wide consumer fraud class actions brought by out-of-state plaintiffs involving transactions with no connection to New Jersey other than the location of the defendant's headquarters."  *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 210 (3d Cir. 2013).  Despite allegations of a fraudulent scheme that originated at the defendant's New Jersey headquarters, the Third Circuit held that the considerations set forth in the Restatement (Second) of Conflict of Laws § 148 (1971)—also applied in this jurisdiction—weighed strongly in favor of applying the law of the plaintiff's home state.  *See id.* at 211.

Likewise, Plaintiffs' attempt to apply the NJCFA nationwide cannot be reconciled with this Court's ruling in *Kaiser* that the applicable law was that of California, the state where Kaiser is based, where most of its members and their physicians are located, and where most of the prescriptions in question were filled.  *Amended Findings*, 2011 WL 3852254, at *53.  The clear import of this ruling is that each TPP's claim would likely be governed by the law of that TPP's

---

[17]   *See also, e.g.*, *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 625-26 (D. Kan. 2008) (declining to certify a nationwide class that would involve the application of consumer fraud laws that "substantial[ly] conflict[]"); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2002)  (finding that non-uniformity of consumer protection laws precluded class certification); *Harding v. Tambrands Inc*., 165 F.R.D. 623, 632 (D. Kan. 1996) (declining to certify nationwide class that included consumer fraud claims, noting that "instructing the jury in a manner that is both legally sound and understandable to a jury of laypersons would be a herculean task").

home state.  Moreover, the individualized and fact-specific nature of this Court's choice-of-law analysis in *Kaiser* indicates that a similar analysis would be required for each TPP regarding, e.g., the geographical scope of its operations and the locations of its members and their physicians.  The very need for such a complex choice-of-law analysis "makes individual adjudication superior to class treatment."  *Castano*, 84 F.3d at 749-50.  *See also, e.g.*, *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) ("[B]ecause we must apply an individualized choice of law analysis to each plaintiff's claims, . . . the proliferation of disparate factual and legal issues is compounded exponentially."), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Emig v. Am. Tobacco Co.*, 184 F.R.D. 379, 394 (D. Kan. 1998) (holding that the need to determine the state in which each class member's injury occurred would render class unmanageable).

Plaintiffs fail to address the significant outcome-determinative differences between the NJCFA and other states' consumer protection laws.  This omission alone is grounds for denying certification.  *See Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 313 (5th Cir. 2000) ("[I]n not presenting a sufficient choice of law analysis [Plaintiffs] have failed to meet their burden of showing that common questions of law predominate."); *accord Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004) ("The plaintiffs have the burden of showing that common questions of law predominate, and they cannot meet this burden when the various laws have not been identified and compared.").

It cannot be gainsaid that "[s]tate consumer-protection laws vary considerably."  *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002).  Indeed, Plaintiffs' own authority recognizes that "'significant conflicts exist between the NJCFA and the consumer protection statutes of other states.'"  *Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 63 (citation omitted).  Among the most fundamental conflicts is the availability and scope of a private cause of action.  Some statutes expressly provide for a private cause of

action.[18]  Others make no such provision.  Courts in Arizona and Delaware recognized a private cause of action despite the lack of a statutory provision to that effect,[19] but the Iowa Supreme Court declined to do so.[20]

There is also wide variation from state to state as to what constitutes a consumer transaction under the applicable statute.  For example, numerous courts have held that TPPs who pay some or all of the purchase price for their members' prescription drugs do not qualify as "consumers" under the NJCFA because "[they] do not use or consume the drugs they purchase." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2009 WL 2043604, at *32 (D.N.J. July 10, 2009) (citing *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 616-17 (S.D.N.Y. 2005) and *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1303-04 (S.D. Fla. 2003)); *accord Cent. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*, No. 09-3418 (MLC), 2009 WL 3245485, at *3 (D.N.J. Oct. 7, 2009); *Standard Fire Ins. Co. v. MTU Detroit Diesel, Inc.*, No. 07-3827 (GEB), 2009 WL 2568199, at *5 (D.N.J. Aug. 13, 2009).  For similar reasons, TPPs' expenditures for Neurontin would not qualify as consumer transactions under the applicable Ohio and Alabama statutes.  *See In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 495 F. Supp. 2d 1027, 1032, 1036 (N.D. Cal. 2007).  By contrast, this Court held that Kaiser could recover for such expenditures under California's Unfair Competition Law, *Amended Findings*, 2011 WL 3852254, at *59, and the *Bextra* court held that TPPs' expenditures arguably could establish standing under the laws of Michigan, New York, and Indiana.  *See* 495 F. Supp. 2d at 1033-37.

---

[18]  *See, e.g.*, Mich. Comp. Laws Ann. § 445.911 (West 2012) (providing a private right of action under the Michigan Consumer Protection Act); Or. Rev. Stat. Ann. § 646.638 (West 2012) (providing a private right of action under the Oregon Unlawful Trade Practices statute).

[19]  *See Sellinger v. Freeway Mobile Home Sales, Inc*., 521 P.2d 1119, 1122 (Ariz. 1974) (sanctioning a private right of action); *Young v. Joyce*, 351 A.2d 857, 859 (Del. 1975) (statutory purpose supports recognition of a private cause of action).

[20]  *See Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 228 (Iowa 1998) ("It is clear that, when state legislatures want consumers to enforce their consumer fraud acts, they expressly provide for that remedy in the statute.  Iowa has not done that.  The trial court correctly ruled that no private cause of action is created.").

States' consumer protection laws also vary in their requirements of proving reliance. In some states, no showing of reliance is required. *See, e.g.*, *Prishwalko v. Bob Thomas Ford, Inc.*, 636 A.2d 1383, 1388 (Conn. App. Ct. 1994) (stating that plaintiff need not prove reliance under state deceptive practices act). By contrast, a number of states require a showing of individual reliance. *See, e.g.*, *Delta Chevrolet, Inc. v. Wells*, 371 S.E.2d 250, 251 (Ga. Ct. App. 1988) ("'[A] claimant who alleges the [Georgia Fair Business Practices Act] was violated as the result of a misrepresentation must demonstrate that he was injured as the result of the reliance upon the alleged misrepresentation'"); *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (2001) (holding that individual reliance is required under Pennsylvania consumer protection statute). Additional variations include, *inter alia*, pre-suit notice requirements[21] and whether consumer fraud claims can be asserted as part of a class action.[22]

In sum, the myriad choice-of-law issues raised by Plaintiffs' state law claims, but unaddressed in their brief, provide an additional basis for denying class certification.

## IV. A CLASS PROCEEDING WOULD NOT BE SUPERIOR TO INDIVIDUAL PROCEEDINGS

For all the reasons discussed above, this litigation presents innumerable individual issues that not only preclude predominance, but also undermine any superiority of a class action device, as this Court correctly found. *See Class Cert. Reconsideration Decision*, 2011 WL 1882870, at *6 (finding that "complex issues related to calculating damages make the class unmanageable").

Plaintiffs suggest that the superiority requirement is met here because individual TPPs are "without effective strength to bring their opponents into court at all" and "'could never afford to press [their claims] one by one.'" (Pl. Mem. at 25 (citation omitted).) This argument is not even colorable. Plaintiffs seek to recover substantial awards under RICO, which provides for treble

---

[21] *See, e.g.*, Ala. Code § 8-19-10(e) (West 2012) ("At least 15 days prior to the filing of any action under this section, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be communicated to any prospective respondent by placing in the United States mail or otherwise.").

[22] *See, e.g.*, Miss. Code Ann. § 75-24-15(4) (West 2012) ("Nothing in this chapter shall be construed to permit any class action or suit, but every private action must be maintained in the name of and for the sole use and benefit of the individual person.").

damages. Even as to those putative class members that, like Harden, paid for few (if any) bipolar prescriptions, RICO provides for an award of attorney's fees and costs for a successful litigant. Moreover, Plaintiffs have had the benefit of coordinated discovery in the MDL; indeed, discovery from Pfizer is completed. Accordingly, any suggestion that the claims of putative class members could not be pursued in individual lawsuits must be rejected. *See Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1025 (11th Cir. 1996) (rejecting similar argument because "even small individual claims under RICO can be feasible given the possibility of the award of treble damages and attorneys' fees to successful plaintiffs") (citation omitted).

Plaintiffs alternatively argue that individual trials would be "less manageable" than a class proceeding because the same "multitude of physicians" would be required to testify in each case. (Pl. Mem. at 24.) To the contrary, as discussed *supra* Section II.A, most putative class members' claims depend on prescribing decisions made by as few as one physician. Testimony from a "multitude" of physicians would not be required in individual trials of these TPPs' claims, but would be required in a class proceeding and would render such a proceeding unmanageable.

## V.    NO CLASS CAN BE CERTIFIED WITHOUT ADDITIONAL DISCOVERY

At a minimum, the Court should deny or defer ruling on Plaintiffs' motion until additional discovery has been completed. The "rigorous analysis" required by *Dukes* "illustrates the need to develop the record fully before a class motion is considered." *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 298 (S.D.N.Y. 2012). As the Southern District of New York explained:

> Other cases subsequent to *Dukes* emphasize the importance of adjudicating a class motion only after class-related discovery is complete, discovery that often overlaps substantially with the merits. . . . "[A] trial court must receive enough evidence to be satisfied that each Rule 23 requirement has been met." Thus, because of the "rigorous analysis" required by *Dukes*, courts are reluctant to bifurcate class-related discovery from discovery on the merits.

*Id.* at 299-300 (citations omitted).

This Court previously indicated that it would not allow additional discovery in connection with Plaintiffs' motion. (*See* 7/9/13 Order [4142].) However, Pfizer respectfully

submits that even though substantial discovery has been conducted, the record is not sufficiently complete to allow the "rigorous analysis" necessary to certify a class.  Further discovery is required to determine, *inter alia*:  (1) the identities of the physicians affiliated with each putative class member who prescribed Neurontin to bipolar patients during the relevant time period; (2) whether putative class members' drug utilization differs from national averages—a question that affects class membership, causation, injury, and damages; (3) when putative class members first learned of Neurontin's alleged inefficacy for bipolar disorder and what steps, if any, they took in response; and (4) whether variations in class members' actuarial practices and premium setting impact their ability to "establish[] that damages are capable of measurement on a classwide basis." *Comcast*, 133 S. Ct. at 1433.

## CONCLUSION

For the foregoing reasons, Class Plaintiffs' post-mandate motion for class certification should be denied.

Dated: September 30, 2013

Respectfully submitted,

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP

By:   /s/ Mark S. Cheffo
      Mark S. Cheffo

51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000
Email:  markcheffo@quinnemanuel.com

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company LLC*

24

## <u>CERTIFICATE OF SERVICE</u>

I, Mark S. Cheffo, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) on September 30, 2013.

Dated: September 30, 2013                    /s/ Mark S. Cheffo_____
                                                          Mark S. Cheffo