**UNREDACTED VERSION FILED UNDER SEAL**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>PFIZER INC. et al.,<br><br>  Defendants. | Chief Judge Patti B. Saris<br>Magistrate Judge Leo T. Sorokin |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO KAISER'S MOTION FOR ATTORNEYS' FEES

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

FEE AWARD STANDARDS ................................................................................................... 3

ARGUMENT ............................................................................................................................ 5

I.  KAISER'S PROFFERED HOURLY RATES ARE UNREASONABLE ........................ 5

  A.  Kaiser's Request for Out-of-Market Rates Must Be Rejected................................ 5

  B.  Boston Rates Awarded by This Court Are Substantially Lower Than the
      Boston Rates Claimed by Kaiser .......................................................................... 8

II.  KAISER PROFFERS NUMEROUS BILLS UNRELATED TO ITS
     PREVAILING PARTY STATUS ON ITS RICO CLAIM ............................................. 9

  A.  Kaiser Is Not Entitled to Fees for Work Attributable Solely to Its UCL
      Claim.................................................................................................................. 10

  B.  Kaiser Is Not Entitled to Fees for Unsuccessful Contentions............................. 11

  C.  Kaiser Is Not Entitled to Fees for Pursuing Settlement and Mediation............... 12

  D.  Kaiser Submits Bills for Other Work Unrelated to Its Prevailing Claims............ 13

III.  EVEN KAISER'S COMPENSABLE ENTRIES ARE GROSSLY
      OVERSTATED ......................................................................................................... 13

  A.  Kaiser's Non-Contemporaneous, Vague, and Inaccurate Billing Mandates
      a Reduction in Award ......................................................................................... 14

  B.  Kaiser's Application Is Riddled With Excessive and Duplicative Billing ........... 16

IV.  THE VAST MAJORITY OF KAISER'S EXPENSES ARE NON-
     REIMBURSABLE...................................................................................................... 18

  A.  Kaiser Is Not Entitled to Expert Fees ................................................................ 18

  B.  Kaiser's Travel Bills Are Excessive ................................................................... 20

  C.  Kaiser Is Not Entitled to Reimbursement for Overhead Costs............................ 20

CONCLUSION....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ackerley Communications of Massachusetts, Inc. v. City of Somerville,*
 901 F.2d 170 (1st Cir. 1990) ..................................................................................17

*Alfonso v. Aufiero,*
 66 F. Supp. 2d 183 (D. Mass. 1999) ..............................................4, 11, 15, 17

*Atlantech Inc. v. American Panel Corp.,*
 No. 07-10342, 2013 WL 870227 (D. Mass. Mar. 6, 2013) ...................................12

*Blum v. Stenson,*
 465 U.S. 886 (1984) .............................................................................................7, 8

*Bonilla v. Trebol Motors Corp.,*
 No. 92-1795 (JP), 1997 WL 178861 (D.P.R. Mar. 27, 1997), *rev'd in part on other grounds,*
 *Bonilla v. Volvo Car Corp.,* 150 F.3d 88 (1st Cir. 1998)........................................19

*Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human
 Resources,*
 532 U.S. 598 (2001) ............................................................................3, 10, 12, 13

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
 973 P.2d 527 (Cal. 1999) .......................................................................................10

*Chao v. Ballista,*
 No. 07cv10934-NG, 2011 WL 3654040 (D. Mass. Aug. 18, 2011)........................16

*Conservation Law Foundation, Inc. v. Patrick,*
 767 F. Supp. 2d 244 (D. Mass. 2011) .......................................................... *passim*

*Culebras Enterprises Corp. v. Rivera-Rios,*
 846 F.2d 94 (1st Cir. 1988)..........................................................................9, 10, 11

*Davis v. Footbridge Engineering Services, LLC,*
 No. 09cv11133-NG, 2011 WL 3678928 (D. Mass. Aug. 22, 2011)..........................9

*DiFiore v. American Airlines, Inc.,*
 No. 07-10070-WGY, 2010 WL 623635 (D. Mass. Feb. 18, 2010), *rev'd on other grounds,*
 646 F.3d 81 (1st Cir. 2011).....................................................................................12

*Diffenderfer v. Gomez-Colon,*
 587 F.3d 445 (1st Cir. 2009) ..................................................................................15

*Fox v. Vice,*
 131 S. Ct. 2205 (2011))............................................................................................3

*Fryer v. A.S.A.P. Fire & Safety Corp.,*
 750 F. Supp. 2d 331 (D. Mass. 2010), *aff'd,* 658 F.3d 85 (1st Cir. 2011) ................9

*Galanis v. Szulik,*
   No. 11-10122-NMG, 2012 WL 2500630 (D. Mass. June 26, 2012) ......................................... 9

*Gay Officers Action League v. Puerto Rico,*
   247 F.3d 288 (1st Cir. 2001)................................................................................................3, 5

*Grendel's Den, Inc. v. Larkin,*
   749 F.2d 945 (1st Cir. 1984).......................................................................................14, 16, 20

*Guckenberger v. Boston University,*
   8 F. Supp. 2d 91 (D. Mass. 1998) ................................................................................ *passim*

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983)...........................................................................................................7, 11

*Hermida v. Archstone,*
   No. 10-12083-WGY, 2013 WL 2896806 (D. Mass. June 14, 2013) ........................................ 9

*Huynh v. City of Worcester,*
   No. 08-40240-TSH, 2010 WL 5376863 (D. Mass. Dec. 20, 2010) .......................................... 9

*Jacobs v. Mancuso,*
   825 F.2d 559 (1st Cir. 1987) .................................................................................................. 7

*Kennedy v. Town of Billerica,*
   No. 04-12357-PBS, 2008 WL 2945436 (D. Mass. July 24, 2008), *vacated on other grounds,*
   617 F.3d 520 (1st Cir. 2010)..............................................................................................11, 12

*Libertad v. Sanchez,*
   134 F. Supp. 2d 218 (D.P.R. 2001).......................................................................................... 6

*Lipsett v. Blanco,*
   975 F.2d 934 (1st Cir. 1992)...........................................................................................7, 15, 17

*Maceira v. Pagan,*
   698 F.2d 38 (1st Cir. 1983) ................................................................................................5, 6

*Nelson v. Hecker,*
   No. 09-10513-JLT, 2010 WL 1741072 (D. Mass. Apr. 28, 2010) .......................................... 9

*In re Neurontin Products Liability Litigation,*
   No. 04-10981-PBS, 2011 WL 1326407 (D. Mass. Apr. 5, 2011) ........................................8, 9

*New England Carpenters Health Benefits Fund v. First Databank, Inc.,*
   2009 WL 2408560 (D. Mass. Aug. 3, 2009) ......................................................................... 7

*New England Regional Council of Carpenters v. Kinton,*
   284 F.3d 9 (1st Cir. 2002)......................................................................................................12

*Norkunas v. HPT Cambridge, LLC,*
   No. 11-12183-WGY, 2013 WL 5229838 (D. Mass. Sept. 18, 2013) .....................................20

*Parker v. Town of Swansea,*
   310 F. Supp. 2d 376 (D. Mass. 2004) ...................................................................................20

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,*
    478 U.S. 546 (1986).................................................................................................7

*Porter v. Cabral,*
    No. 04-11935-DPW, 2007 WL 602605 (D. Mass. Feb. 21, 2007) ...........................8

*Professional Services Group v. Town of Rockland,*
    No. 04-11131-PBS, 2008 WL 1924996 (D. Mass. Apr. 30, 2008) ........................10

*Rhode Island Medical Society v. Whitehouse,*
    323 F. Supp. 2d 283 (D.R.I. 2004)...........................................................................7

*Souza v. Southworth,*
    564 F.2d 609 (1st Cir. 1977)...................................................................................14

*Tri-City Community Action Program, Inc. v. City of Malden,*
    680 F. Supp. 2d 306 (D. Mass. 2010) .......................................................................9

*United States v. One Star Class Sloop Sailboat,*
    546 F.3d 26 (1st Cir. 2008).......................................................................................8

*Ursic v. Bethlehem Mines,*
    719 F.2d 670 (3d Cir. 1983)...............................................................................16, 17

*Vieques Conservation & Historical Trust, Inc. v. Martinez,*
    313 F. Supp. 2d 40 (D.P.R. 2004).............................................................................5

*Walsh v. Boston University,*
    661 F. Supp. 2d 91 (D. Mass. 2009) .........................................................................9

*West Virginia University Hospitals, Inc. v. Casey,*
    499 U.S. 83 (1991)...................................................................................................19

*Williams v. Poulos,*
    54 F.3d 764, 1995 WL 281451 (1st Cir. 1995).....................................................5, 6

## Rules / Statutes

18 U.S.C. § 1964(c) ......................................................................................................3

42 U.S.C. § 1988..........................................................................................................19

Fed. R. Civ. P. 50(b) ...................................................................................................10

Fed. R. Civ. P. 52.........................................................................................................11

Fed. R. Civ. P. 59.........................................................................................................10

Fed. R. Civ. P. 37...........................................................................................................1

Fed. R. Civ. P. 41...........................................................................................................1

## <u>Other Authorities</u>

ALM Legal Intelligence, *Billing Rates & Practices: A Study of the Billing Rates and Billing Practices of Attorneys in Small and Midsize Firms* (Jan. 2013)..............................................9

Alan Hirsch & Diane Sheehey, Fed. Judicial Ctr., *Awarding Attorneys' Fees and Managing Fee Litigation* (2d ed. 2005) .............................................................................................................8

## PRELIMINARY STATEMENT

Pfizer respectfully submits this memorandum of law in opposition to Kaiser's motion for an award of $10,906,001.53 in attorneys' fees and $1,536,891.50 in expenses. Pfizer does not dispute that RICO provides for an award of costs, including reasonable attorneys' fees, to the prevailing party. However, Kaiser's request is manifestly excessive and unreasonable.

Kaiser describes its request for more than $12 million in attorneys' fees and expenses as "extremely conservative." (Kaiser's Mem. in Supp. of Attorneys' Fees & Costs [4166] ("Pl. Mem.") at 1.) It is anything but. The gross over-reach of Kaiser's petition is readily apparent in comparison to Pfizer's fee petition in the products liability cases dismissed under Rules 37 and 41, which this Court approved. (*See* 4/5/11 Order [3390] at 18.) For example, Pfizer voluntarily reduced its requested hours by 20% across the board to "account for any potential overlapping efforts expended due to the multiple attorneys and legal assistants required." (Pfizer's Mem. in Supp. of Mot. for Attorneys' Fees & Costs [3217] ("Pfizer Fee Request") at 2.) Kaiser offers no such reduction. Likewise, Pfizer "d[id] not seek compensation at the regular rates charged and paid. Instead, the rates requested are based upon a careful review of the rates regularly approved as reasonable by the Courts of this District." (1/8/11 Cheffo Decl. [3218] ¶ 9.) In marked contrast, Kaiser requests the full "historical" rates purportedly charged[1] by each of its law firms in their home markets, ranging up to triple the presumptive Boston rates.

Further, while Pfizer submitted a modest request for copy, shipping, and discovery vendor costs, Kaiser's motion requests reimbursement for first-class flights, guided tours of Boston, manicures, "in-room entertainment" charges, and overtime running of air conditioning units. Notably, some of these more gratuitous expenses, including the guided tour and the video entertainment, were incurred on days that the submitting attorneys purported to bill 16 hours to trial, calling into question the credibility and thoroughness of Kaiser's entire submission.

---

[1]   In certain instances, Kaiser even fails to demonstrate that the "historical" rates it requests have ever actually been charged to any real client. (*See, e.g.*, Pl. Ex. A, Nussbaum Aff. ¶ 7 (stating ambiguously that rates were either actual rates or those that "have been accepted and approved in other complex class action litigations").)

Kaiser's petition suffers from four fundamental flaws, each of which warrants a drastic reduction in its award:

*First*, Kaiser's petition improperly seeks reimbursement at out-of-market rates. Under First Circuit law, the rates normally charged in the forum govern attorneys' fees awards unless the applicant can show that there were no qualified attorneys in the forum to handle the case. Kaiser has made no such showing here. To the contrary, it specifically claims that its local Boston counsel were the attorneys with the most knowledge of this litigation and best equipped to handle this trial. Moreover, the rates submitted by Kaiser's Boston attorneys vastly exceed what this Court has previously approved in this litigation, what courts typically award in this district, and what third-party sources report regarding applicable rates.

*Second*, Kaiser's petition improperly seeks reimbursement for numerous tasks unconnected to its prevailing party status on its RICO claim, including work related solely to its UCL claim and to pre-trial mediation. In addition, Kaiser fails to segregate work pertaining to its unsuccessful nociceptive pain-related claims, which represented 20.44% of its claimed damages.

*Third*, Kaiser's hours even for its properly compensable tasks are grossly excessive. Although Kaiser avers its submission is based on contemporaneous billing records, these records bear many indicia this is not so, including multiple consecutive entries for the same amount of time with the same description. Likewise, these billing records are frequently so vague it is impossible to discern the task performed in relation to the case. Moreover, Kaiser's submissions demonstrate overstaffing, billing attorneys for non-core work, and needless duplication of effort.

*Fourth*, Kaiser's request for more than $1.5 million in expenses is unsupported. The greatest portion of this claim—over $1 million—relates to expert fees, which are not recoverable in RICO cases. In addition, Kaiser's request for travel fees is exorbitant insofar as it seeks first-class airfare, luxurious hotel accommodations, and numerous gratuitous items including those discussed above. Kaiser's request for firm overhead items is likewise improper.

For these reasons, any award of attorneys' fees and expenses should be limited as set forth below and in the attached materials.

2

## FEE AWARD STANDARDS

The fee shifting provisions of RICO under 18 U.S.C. § 1964(c) are an exception to the rule that "parties are ordinarily required to bear their own attorney's fees . . . . Under this 'American Rule,' we follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001) (citation omitted). Accordingly, Kaiser is entitled to collect fees only to the extent they relate to its prevailing RICO claim.

Awards of attorneys' fees under RICO are computed using the "lodestar" approach, pursuant to which "the trial judge must determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001) (quotation omitted). "[T]he judge calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Id.* Although "the attorneys' contemporaneous billing records" are the "starting point," "the court's discretion is by no means shackled by those records." *Id.* at 295-96. To the contrary, "it is the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like." *Id.* at 296. "In these and other ways, the trial court, though adhering to the time-and-rate-based method of fee calculation, may fashion a lodestar which differs substantially from the fee requested by the prevailing party." *Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, 100 (D. Mass. 1998) (Saris, J.) (quotation omitted).

Kaiser makes much of the Supreme Court's recent instruction that "trial courts need not, and indeed should not, become green-eyeshade accountants" in issuing attorneys' fees awards. (Pl. Mem. at 7 (quoting *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011)).) Kaiser ignores, however, that the Supreme Court made this remark in the context of vacating an attorneys' fees award that failed to properly segregate work that was not compensable under the claim that authorized fee-shifting. *See Fox*, 131 S. Ct. at 2217-18. The Supreme Court's "green-eyeshade" remark is thus

3

not, as Kaiser suggests, license for a slapdash fee submission followed by a judicial stamp of approval, but rather a constraint on the important work of ensuring that exceptions to the American Rule are themselves properly limited. As this Court has observed, even though "a dispute over fees and costs should not spawn a second litigation of significant dimension," "the First Circuit examines these 'discretionary' decisions extremely closely," and examination of Kaiser's petition must therefore "proceed with care." *Guckenberger*, 8 F. Supp. 2d at 99 (quotation omitted).

Finally, Pfizer notes that Kaiser's fee petition is exceedingly difficult to evaluate due to the substantial degree of inconsistency and internal contradiction in both the substance and the format of the fee requests submitted by Kaiser's 16 law firms.[2] One significant problem relates to the fact that most entries are block-billed, and where an entry contains both improper and proper billing. Pfizer has striven to equitably calculate the proper amount of such bills under this Court's precedents, which suggest that entries containing both a proper and improper task should be allocated on a 50/50 basis. *See Alfonso v. Aufiero*, 66 F. Supp. 2d 183, 192 (D. Mass. 1999) (Saris, J.) ("Whenever such an entry involved one of the enumerated uncompensable categories discussed in this section, I allocated fifty percent of the hours in that entry to the category in question."); *accord Guckenberger*, 8 F. Supp. 2d at 102.[3] For the Court's convenience, Pfizer addresses each of the foregoing flaws both in this memorandum and a separate Exhibit itemizing the billing records at issue and the basis for Pfizer's objections. In addition, Pfizer has prepared a master spreadsheet, Exhibit A, which itemizes each billing entry along with Pfizer's proffered adjustments, thoroughly explaining Pfizer's conclusions concerning the proper amount of

---

[2]   For example, Kaiser's attorneys bill in different increments, some in tenth-hour, some in quarter-hour, and some, inexplicably, in both. (*Compare, e.g.*, Ex. A, Nussbaum Aff. Ex. 1, *with* Pl. Ex. M, Dugan Aff. Ex. 1, *and* Pl. Ex. H, Green. Aff. Ex. 1 at 134.) Some bills are sorted chronologically, while others are sorted by attorney. (*Compare* Pl. Ex. H, Green. Aff. Ex. 1, *with* Pl. Ex. G, Shapiro Aff., Ex. B.) And some bills are substantively self-contradictory, where the number of hours set forth in the itemized statement is different from the hours requested in the firm's declaration. (*Compare, e.g.*, Pl. Ex. D, Kilsheimer Aff., Ex. 1 (requesting 8975.75 hours), *with id.*, Ex. 2 (requesting a total of 8984.5 hours).)

[3]   Pfizer's billing adjustment practices in connection with this motion are set forth more fully in the supporting Declaration of Mark S. Cheffo, to which all exhibits are attached.

4

Kaiser's award. An Excel version of this spreadsheet will be separately provided to the Court.

## ARGUMENT

### I.   KAISER'S PROFFERED HOURLY RATES ARE UNREASONABLE

#### A.   Kaiser's Request for Out-of-Market Rates Must Be Rejected

The most significant defect in Kaiser's fee application is its request to be reimbursed at the "historical" rates each of its attorneys purportedly charged in their home jurisdiction, rather than the relevant rates in the forum market. All but two of Kaiser's out-of-market firms charged substantially more than its Boston firms.[4] Kaiser seeks rates for these out-of-market attorneys as high as $925/hour (Pl. Ex. N, Cabraser Decl., Ex. A), almost triple the presumptive Boston rate. *See infra* Section I.B. But in the First Circuit, it is well settled that, "[i]n general, the proper rate to apply to the work of out-of-town counsel is that of the forum community, rather than that which the attorney charges in the community in which she practices." *Williams v. Poulos*, 54 F.3d 764 (1st Cir. 1995) (table, text at 1995 WL 281451, at *4) (quotation omitted); *see also Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983) ("The reasonable hourly rate is usually stated to be that prevailing in the community for similar work." (quotation omitted)); *Gay Officers*, 247 F.3d at 296 ("[R]easonable hourly rates should be set by reference to rates in the court's vicinage rather than in the lawyer's region of origin.") (citation omitted).   This Court has likewise recognized the "presumption that local Boston rates apply." *Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, 103 (D. Mass. 1998) (Saris, J.); *accord Conservation Law Found., Inc. v. Patrick*, 767 F. Supp. 2d 244, 257 (D. Mass. 2011); *Vieques Conservation & Historical Trust, Inc. v. Martinez*, 313 F. Supp. 2d 40, 46 (D.P.R. 2004).   Courts in the First Circuit have thus allowed recovery of attorneys' fees at out-of-town rates only "if the complexities of a particular case *require* the particular expertise of non-local counsel, . . . *or* when the case is an undesirable one which capable attorneys within the forum community are not willing to prosecute or defend."

---

[4]   The only exceptions are Charles Barrett, who seeks $375/hr, and Alex Peet, who seeks $250/hr.  (Pl. Ex. L, Barrett Aff. at 7; Pl. Ex. O, Peet Aff. at 2.)  As discussed infra Section I.B, Mr. Barrett's rates exceed the prevailing market rates for Boston attorneys, while the rate for Mr. Peet, an associate, matches the Boston rate.

*Williams*, 1995 WL 281451, at *4 (quotation omitted). Conversely, however, "[i]f an outside lawyer is retained to perform work that could be done by local attorneys with comparable experience, the attorney is to be compensated at the local rate." *Libertad v. Sanchez*, 134 F. Supp. 2d 218, 235 (D.P.R. 2001) (citing *Maceira*, 698 F.2d at 40).

Here, Kaiser's own fee application conclusively refutes any attempt to establish that "there are no local attorneys who have the particular expertise of the specialist," *see id.*, for it specifically seeks compensation for multiple Boston attorneys whom it claims were critical to its prosecution of this action. As Kaiser explains, it retained "leading members of the Boston trial bar," including Thomas Greene, the attorney "that *started this whole multidistrict litigation*," and Thomas Sobol, one of the attorneys "*who knew the most about the Neurontin facts and law generally*." (Pl. Mem. at 2-3 (emphasis added).) Courts in the First Circuit have rejected the possibility that "there were no competent local counsel willing and able to litigate this case" when, as here, "some of Plaintiffs' attorneys . . . are based in [the forum]," and have accordingly declined to award out-of-town rates. *Libertad*, 134 F. Supp. 2d at 235; *see also Conservation Law Found.*, 767 F. Supp. 2d at 257. The result should be no different here.

Kaiser attempts to shift this presumption, arguing that "there is no need to make any such adjustments" from their out-of-town rates and characterizing this Court's decision in *Guckenberger* as standing for the proposition that local rates apply only to local controversies. (Pl. Mem. at 12.) To the contrary, *Guckenberger* recognizes the well-settled rule that "[u]nless the subject of the litigation is so unusual or *requires* such special skills that *only* an out-of-state lawyer possesses, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." *Guckenberger*, 8 F. Supp. 2d at 103 (quotation omitted, emphasis added). "'[T]he law firm's bill need not be swallowed whole by the client's litigation adversary just because it is the law firm's bill.'" *Id.* at 100 (quoting *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir. 1988)).

Kaiser also claims that its out-of-town attorneys "were the only attorneys who were familiar with the extraordinarily extensive factual record, expert and legal issues to assist with

6

trial preparation in the short time before trial." (Pl. Mem. at 13.) This is a non-sequitur. If Kaiser had initially retained Boston-area attorneys when it chose to file a complaint in this jurisdiction, then those Boston-area attorneys would have been just as familiar with the Kaiser-specific portions of the record as Greene LLP and Hagens Berman were with the broader record. Kaiser's choice not to do so is not grounds for applying out-of-market rates. *See Rhode Island Med. Soc'y v. Whitehouse*, 323 F. Supp. 2d 283, 292-94 (D.R.I. 2004) ("[M]any Rhode Island lawyers were competent to handle this case, but, for whatever reason, they were never contacted by Plaintiffs. . . . Such a showing is inadequate to establish that outside counsel was required.").

Finally, although Kaiser requests no enhancement to the lodestar award, it attempts to bolster its claim for inflated rates by going on at considerable length in its brief about the complexity of this case and the purported significance of the verdict, arguing, among other things, that it "was socially important for the medical research and biomedical community." (Pl. Mem. at 5.) These assertions are irrelevant, however, for they fail to even address the standard for out-of-market rates. And in any event, although the Supreme Court has indeed held in a civil rights case that "a crucial factor" in a fee award is the results obtained, *Hensley v. Eckerhart*, 461 U.S. 424, 435, 440 (1983), it is equally well settled that the degree of success and the complexity of litigation are themselves reflected in the lodestar and are thus not a basis for upward adjustment. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984). The First Circuit has accordingly rejected requested enhancements to lodestar fees even in cases where it would "not gainsay either the strength of the attorneys' performance or the magnitude of their triumph," observing that there was still "nothing in the record that indicates that the services and results overshadowed, or somehow dwarfed, the lodestar." *Lipsett v. Blanco*, 975 F.2d 934, 942-43 (1st Cir. 1992).[5]

---

[5] Equally irrelevant in this regard are Kaiser's remarks concerning the purportedly small ratio of its fee request to the total judgment amount, for this is not a class-action fee coming from a common benefit fund, but a lodestar fee based on a fee-shifting statute. *Cf. New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (Saris, J.); *see also Jacobs v. Mancuso*, 825 F.2d 559, 563-64 (1st Cir. 1987) ("[T]he proportion of damages to fees has limited relevance to our determination.").

7

**B.     Boston Rates Awarded by This Court Are Substantially Lower Than the Boston Rates Claimed by Kaiser**

Even as to its Boston counsel's rates, Kaiser has failed to satisfy its "burden of justifying the reasonableness of the requested rates by producing evidence of the prevailing market rate." *Conservation Law Found.*, 767 F. Supp. 2d at 256 (quotation omitted).   The declarations submitted by Kaiser merely recite what its own Boston attorneys purported to charge: rates ranging from $175 for paralegals, to as much as $445 for associates, to $650 for partners.[6] Kaiser has failed to show that these rates are "'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Porter v. Cabral*, No. 04-11935-DPW, 2007 WL 602605, at *12 (D. Mass. Feb. 21, 2007) (Woodlock, J.) (quoting *Blum*, 465 U.S. at 896 n.11).   Satisfying this burden requires "more than an affidavit showing the attorney's usual rate;" a fee applicant generally must also provide "affidavits from other counsel attesting to their rates or the prevailing market rate."   Alan Hirsch & Diane Sheehey, Fed. Judicial Ctr., *Awarding Attorneys' Fees and Managing Fee Litigation* 31 (2d ed. 2005) (citing, *inter alia*, *Blum*, 465 U.S. at 896 n.11).[7]

The prevailing market rate is far lower than the rates purportedly charged by Kaiser's Boston counsel.   Indeed, in this very MDL, the Court previously awarded Pfizer "reasonable attorney's fees capped at $350 an hour for attorneys and $100 an hour for paralegals."[8]  *In re*

---

[6]   (*See* Pl. Ex. I, Sobol Aff., Ex. 1 at 50-51 ; Pl. Ex. H, Green. Aff. Ex. 1 at 1; Pl. Ex. G, Shapiro Aff., Ex. B.) Because the Shapiro firm does not provide historical rates information, their approximate rates were calculated by dividing the total charge by the number of hours for specific billers.

[7]   Although Kaiser relies on precedents holding that the rate actually charged by the attorney is a reliable indicium of market value (*see* Pl. Mem. at 11-12), these are inapplicable because Kaiser has failed to show that all of its Boston attorneys actually charged these "historical" rates.   For example, certain of its attorneys explain, without any elaboration, that the proffered rates were either those actually charged or those "accepted and approved in other complex class action litigations." (Pl. Ex. I, Sobol Aff. ¶ 6.)  Indeed, because the majority of these firms operate on a contingency basis, the hourly rate actually charged for similar work is an elusive, if not nonsensical, concept. (*See, e.g.*, Greene LLP, Why Choose Greene LLP?, http://bit.ly/1edwJIn ("[W]e handle most of our cases on a contingency basis.   We believe clients will receive more creative and more valuable legal services when their attorneys are not billing them by the hour.").)  Moreover, even to the extent the rate purportedly charged by these firms is a reliable indicium of market value, the First Circuit has expressly held that it is "not conclusive," *United States v. One Star Class Sloop Sailboat*, 546 F.3d 26, 40 (1st Cir. 2008), and it cannot be controlling against Pfizer's showing herein that market rates are drastically lower than the rates claimed by Kaiser.

[8]   Much of the work there was performed by Pfizer's New York-based counsel Skadden Arps—a preeminent international law firm renowned for its expertise, but not for its low rates.

*Neurontin Prods. Liab. Litig.*, No. 04-10981-PBS, 2011 WL 1326407, at *7 (D. Mass. Apr. 5, 2011). The Court's prior fee award was consistent with the rates that other courts in this District have allowed as reasonable in the last several years[9] and with current market data showing that the average hourly rate for small and mid-size Boston commercial litigation firms is $285.[10] Kaiser's request for as much as three times this rate is unsupported and flatly unreasonable.

Based on the above precedents and market data, Pfizer submits that Kaiser's attorneys' fees for hours reasonably expended should be capped as follows: **$100** for paralegals and staff or contract attorneys, **$250** for associates and of counsel,[11] and **$350** for partners. (*See* Ex. C.)

## II.   KAISER PROFFERS NUMEROUS BILLS UNRELATED TO ITS PREVAILING PARTY STATUS ON ITS RICO CLAIM

Many of the hours submitted by Kaiser are non-compensable because they do not relate to its prevailing party status on its RICO claim. As the First Circuit has explained, the fact that Kaiser is a prevailing party "does not mean that [it] can recover for all the time spent in this

---

[9]   *See, e.g., Hermida v. Archstone*, No. 10-12083-WGY, 2013 WL 2896806, at *10 (D. Mass. June 14, 2013) (approving fees in complex consumer class action at "$350 hourly rate for the work performed by the lead attorneys, $275 per hour for an associate, and $125 per hour for administrative work"); *Nelson v. Hecker*, No. 09-10513-JLT, 2010 WL 1741072, at *1 (D. Mass. Apr. 28, 2010) (finding rates of $275 per hour for associates and $350 for lead counsel, "an active and experienced lawyer in consumer matters," reasonable); *Conservation Law Found*, 767 F. Supp. 2d at 257 (awarding rates for attorneys from $175 to $310 per hour); *Tri-City Cmty. Action Program, Inc. v. City of Malden*, 680 F. Supp. 2d 306, 315-16 (D. Mass. 2010) (finding rates of $350 per hour for partner, $275 per hour for senior associate, and $225 per hour for junior associates reasonable); *Huynh v. City of Worcester*, No. 08-40240-TSH, 2010 WL 5376863, at *2 (D. Mass. Dec. 20, 2010) (finding $275 per hour a reasonable rate for a senior associate and $200 per hour a reasonable rate for a junior associate); *Walsh v. Boston Univ.*, 661 F. Supp. 2d 91, 111-12 (D. Mass. 2009) (awarding partner $350 per hour, senior associate $275 per hour, and junior associate $175 per hour); *see also Galanis v. Szulik*, No. 11-10122-NMG, 2012 WL 2500630, at *1-2 (D. Mass. June 26, 2012) (evaluating request for fees by major law firms at up to $735 per hour for total award of $178,083.12 and reducing award to $75,000); *but see Davis v. Footbridge Eng'g Servs., LLC*, No. 09cv11133-NG, 2011 WL 3678928, at *4-5 (D. Mass. Aug. 22, 2011) (awarding rates up to $650 per hour in FLSA class action for total fee award of $245,101.60 where the court cited no opposing evidence submitted as to market rates).

[10]   *See* ALM Legal Intelligence, *Billing Rates & Practices: A Study of the Billing Rates and Billing Practices of Attorneys in Small and Midsize Firms* 36 (Jan. 2013) (attached as Ex. B).

[11]   Because Kaiser's fee application does not, for the most part, differentiate between junior and senior associates, nor does it provide any information on of counsel rates for Boston attorneys, Pfizer submits that a blended average rate for such attorneys is appropriate. "As the fee applicant, plaintiff must provide evidence that establishes the skill and experience of the person for whom fees are requested as well as evidence that informs the court of the relevant prevailing market rate." *Fryer v. A.S.A.P. Fire & Safety Corp.*, 750 F. Supp. 2d 331, 340 (D. Mass. 2010), *aff'd*, 658 F.3d 85 (1st Cir. 2011).

litigation." *Culebras Enters. Corp. v. Rivera-Rios,* 846 F.2d 94, 102 (1st Cir. 1988). Under this Court's precedents, all billing entries unrelated to Kaiser's prevailing party status must be stricken from the lodestar calculation. Elimination or reduction of Kaiser's claimed hours is required for work attributable solely to the UCL claim, work on its unsuccessful claims such as those pertaining to nociceptive pain prescriptions, and work on settlement or mediation.

### A.    Kaiser Is Not Entitled to Fees for Work Attributable Solely to Its UCL Claim

The sole statutory basis for Kaiser's fee application is its prevailing party status on its RICO claim, and work unrelated to that claim is therefore not subject to reimbursement. *See Prof'l Servs. Grp. v. Town of Rockland,* No. 04-11131-PBS, 2008 WL 1924996, at *2-3 (D. Mass. Apr. 30, 2008) (Saris, J.) (describing need to "ensure that Rockland is only compensated for the fees necessary to prevail on the Chapter 93A claim," for which fees were authorized).

Kaiser argues that it should be awarded additional fees pertaining to its UCL claim lest it be retroactively "disincentivized" from pursuing the UCL judgment. (Pl. Mem. at 15.)[12]  This argument ignores well-settled law holding that "[p]laintiffs may not receive . . . attorney fees" on a UCL claim. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 973 P.2d 527, 539 (Cal. 1999). Kaiser's disagreement with the resulting incentives is an issue to be taken up with the California legislature, not with this Court. For present purposes, Kaiser's request for attorney's fees pertaining to its UCL claim must be denied due to the absence of any "explicit statutory authority" for such an award. *Buckhannon,* 532 U.S. at 602 (quotation omitted).

As set forth in Exhibit D, a substantial amount of the billing in Kaiser's fee application relates solely to the UCL claim and is therefore non-compensable. Most significantly, because the RICO claim was tried to a jury and ended in a verdict, nearly all the work other than Rule 50(b) and Rule 59 motions from the date of verdict to the date of the Court's bench decision relates solely to the UCL claim and is therefore non-compensable. That work primarily involved

---

[12]   The notion that Kaiser was not adequately "incentivized" by the prospect of a trebled RICO award of $142 million plus RICO-related attorney's fees does not withstand scrutiny. Indeed, this Court rejected similar arguments when it denied pre-judgment interest on Kaiser's RICO claim, finding that "an award of treble damages will make the plaintiffs whole." (1/27/11 Order [3268] at 2.)

motion practice related to the proposed findings of fact and conclusions of law.  In addition, Kaiser spent a significant amount briefing the issue of "standing" at the Court's request in connection with Pfizer's UCL-specific Rule 52 motion for amended findings.  In total, Kaiser's billing entries containing work related solely to the UCL claim constitute 2,160.45 hours.  All of these UCL-related hours should be stricken from the lodestar.[13]

## B.   Kaiser Is Not Entitled to Fees for Unsuccessful Contentions

Because RICO attorneys' fees are awarded only to prevailing parties, Kaiser is not entitled to recover for work directed to its unsuccessful claims and contentions.  Indeed, "[t]he Supreme Court has clearly stated that in assessing a claim for attorneys' fees . . . the district court must exclude from the fees application all hours expended on unsuccessful claims that are distinct from successful claims."  *Culebras*, 846 F.2d at 102.  As this Court has explained, "'[a]ttorneys' fees normally should not be awarded for time spent in litigating (or preparing to litigate) unsuccessful, severable claims,'" which are those that "'rest on different facts and legal theories.'"  *Alfonso*, 66 F. Supp. 2d at 194 (declining to award fees on severable, unsuccessful malicious prosecution claim) (quotation omitted); *accord Guckenberger*, 8 F. Supp. 2d at 103.

Here, Kaiser failed to prove that Pfizer fraudulently promoted Neurontin for nociceptive pain, which represented 20.44% of Kaiser's claimed damages.  (*See* TX 408-HH, at Table B.7C (calculating Kaiser's total damages at $82,872,732, of which $16,937,210 was for nociceptive pain).)  Contrary to Kaiser's claims, the nociceptive pain indication is unquestionably factually separable—indeed, it was separated by both fact-finders—and the Court should "'simply reduce the award to account for the limited success.'"  *Kennedy v. Town of Billerica*, No. 04-12357-PBS, 2008 WL 2945436, at *3 (D. Mass. July 24, 2008) (Saris, J.) (quoting *Hensley*, 461 U.S. at 436-37), *vacated on other grounds*, 617 F.3d 520 (1st Cir. 2010).  Because Kaiser's billing records do not provide a basis to exclude work on nociceptive pain, Pfizer submits that the Court

---

[13]   Kaiser offers several billing entries for legal research on issues such as ▓▓▓▓▓ which could relate either to the RICO or UCL claim.  (*See generally* Ex. D.)  Pursuant to this Court's precedents on block-billing, such entries should be reduced by half.

should "instead reduce the bill (as adjusted for core and non-core claims) by a multiple." *See id.*
Here, that multiple should be a final reduction of 20.44% percent, corresponding to the ratio
between Kaiser's claimed damages for nociceptive pain and its total claim of damages. *See
Atlantech Inc. v. Am. Panel Corp.*, No. 07-10342-DPW, 2013 WL 870227, at *10 (D. Mass. Mar.
6, 2013) (finding "the proportion of the total award attributable to the [claim allowing fees]—
namely, 2.37%—to be the best available proxy for the degree to which Atlantech succeeded by
prevailing on [that claim]"); *accord Guckenberger*, 8 F. Supp. 2d at 109.

Two additional unsuccessful contentions, set forth more fully in Exhibit E, warrant a
reduction in Kaiser's fee award. First, Kaiser's attorneys devoted a significant (indeed, quite
arguably excessive) amount of post-trial work to their motion for pre-judgment interest on their
RICO claim, which this Court denied. (1/27/11 Order [3268] at 2.) Because this Court rejected
that contention, the hours associated with those entries should be stricken from Kaiser's fee
award. *See DiFiore v. Am. Airlines, Inc.*, No. 07-10070-WGY, 2010 WL 623635, at *2 (D.
Mass. Feb. 18, 2010) ("[A]ll time attributed to the motion for class certification, which was
denied by the Court, must be subtracted."), *rev'd on other grounds*, 646 F.3d 81 (1st Cir. 2011).
Second, Kaiser devoted significant time to a motion to compel the deposition of Carol Janney on
the eve of trial, which motion this Court also denied. (*See* Order dated Dec. 22, 2009.) The
751.4 hours containing entries associated with these unsuccessful contentions should be stricken.

## C.    Kaiser Is Not Entitled to Fees for Pursuing Settlement and Mediation

Kaiser's efforts at settling and mediating this case cannot be the subject of an attorneys'
fee award because they did not contribute to Kaiser's prevailing party status on its RICO claim.
Even successful settlement negotiations cannot support a fee award because settlements do not
entail a "judicially sanctioned change in the legal relationship of the parties." *New Eng. Reg'l
Council of Carpenters v. Kinton*, 284 F.3d 9, 30 (1st Cir. 2002) (quotation omitted). Here, the
parties' well-intentioned but ultimately unsuccessful efforts to mediate or settle this case prior to
trial had no impact on the results at trial. These attorneys' fees do not fall within RICO's limited
exception to the rule that "parties are ordinarily required to bear their own attorney's fees."

*Buckhannon*, 532 U.S. at 602. Accordingly, as set forth in Exhibit F, the entries relating to mediation and settlement efforts constitute 265.95 hours, and such work is not compensable.

### D.   Kaiser Submits Bills for Other Work Unrelated to Its Prevailing Claims

Kaiser's fee application also improperly attempts to fold in three more items unrelated to its prevailing party status which must be denied.

*First*, although Kaiser purports to submit bills for work on its case only, many of its attorneys improperly submit items showing work on other cases in this MDL. For example, numerous entries contain work relating to ████████████ and others refer to making ████ ████████████ (*See* Ex. G.) All such entries must be stricken from the award.



*Second*, Kaiser is not entitled to fees for client relations matters. ████████████████████ Kaiser also submits several bills for time spent dealing with the transition of client files between firms, and the transition of associates on and off the case. Those charges are improper not only because they are not properly billed to a client, but also because they involve a substantial amount of waste and duplication of substantive effort in prosecuting a case, as well as repetitive procedural filings for notices of withdrawal, appearance, and substitution. This work, the entries for which total 168.85 hours, must therefore be eliminated from any fee award. (*See* Ex. H.)

*Third*, Kaiser improperly categorizes work by at least one salaried physician and various "analysts" as attorney time, rather than as expert time. (*See* Pl. Ex. H, Greene Decl., Ex. 2 at PDF pg. 166 (discussing ████████████); Pl. Ex. B, Attaway Decl., Ex. 1 at 1 (billing for ████████████).) These individuals are not attorneys, but experts whose fees are not recoverable or administrative employees counted as overhead. *See infra* Section IV.

## III.   EVEN KAISER'S COMPENSABLE ENTRIES ARE GROSSLY OVERSTATED

Even as to properly compensable tasks, Kaiser's bills are grossly excessive and must be substantially reduced. As this Court has explained, "[t]hough the prevailing party is under an obligation to submit a request for fees including its calculations of hours expended multiplied by

a requested hourly rate, the Court 'has a right—indeed, a duty—to see whether counsel substantially exceeded the bounds of reasonable effort.'" *Guckenberger*, 8 F. Supp. 2d at 99-100 (quoting *Metro. Dist. Comm'n*, 847 F.2d at 17 (internal quotation omitted)). "Typically, a court proceeds to compute the lodestar amount by ascertaining the time counsel actually spent on the case and then subtract[ing] from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary." *Id.* at 100 (quotations omitted). Here, reductions are warranted both because (1) problems with Kaiser's billing render its actual hours difficult to ascertain and likely inflated, and (2) the hours that Kaiser did spend on the case are excessive.

### A.    Kaiser's Non-Contemporaneous, Vague, and Inaccurate Billing Mandates a Reduction in Award

The First Circuit has long "warned that a failure to document time 'might merit disallowal, or at least drastic reduction, of a fee award.'" *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984) (quoting *Souza v. Southworth*, 564 F.2d 609, 612 (1st Cir. 1977)). Attorneys submitting a fee application must "maintain detailed, contemporaneous time records," and their failure to do so "will call for a substantial reduction in any award or, in egregious cases, disallowance." *Id.* (quotation omitted). Kaiser fails to meet this standard.

Although nearly every one of the submitting firms states that it kept contemporaneous billing records, there are several indicia to the contrary. For example, during the trial itself, several attorneys consistently billed the same large amount of hours every day—16.0 flat—and provided generic descriptions of the use of their time on each day of the trial. Similarly, many attorneys billed the same flat-hour or half-hour amount of time for multiple days in a given period, often with generic descriptions.[14] (*See* Ex. I.) Other details raise serious questions regarding the accuracy of these supposedly contemporaneous entries. For example, as set forth in Point IV, some of Kaiser's attorneys seek reimbursement for leisure activities—e.g., guided tours of Boston, manicures, and in-room video entertainment—that occurred on the same days

---

[14] For example, several attorneys submitted bills using exclusively or almost exclusively flat-hour and half-hour increments. (*See* Pl. Ex. P, Thrash Aff.; Pl. Ex. L, Barrett Aff.; Ex. O, Peet Aff.)

for which they purport to bill 16 hours of trial-related work. (*See id.*) The attorneys who routinely engaged in these practices should have their fees reduced by 10% across the board.

In addition, even though Kaiser specifically disclaims any intent to submit bills "for read and review of routine ECF notices" (Pl. Mem. at 14), the billing records of the Shapiro firm and the Dugan firm contain page upon page of quarter-hour and third-hour entries for review of ECF notices, 131.6 hours in total. (*See Ex. J.*) Even more seriously, the Dugan firm's bills consist primarily of this routine review, with both its attorneys listing nearly identical descriptions of the docket materials they reviewed, many of which are unconnected to Kaiser's case (*see id.*), giving rise to the suspicion that these entries were generated *post hoc*. The First Circuit has upheld a district court's decision to strike attorney time where "plaintiffs had billed fifty or more menial items in quarter-hour increments when the actual task would have taken a negligible amount of time," *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 455-56 (1st Cir. 2009), and this Court should strike Kaiser's submission of the same. Moreover, this direct contradiction between Kaiser's representations in its brief and its supporting documentation, which is itself deeply flawed, raise serious questions regarding the accuracy and thoroughness of the entire submission.

This Court should also strike the entries embracing some 1,062.95 hours for which Kaiser's "records are not sufficiently precise as to the tasks accomplished or the claim pursued to allow the Court to assess whether the time spent was reasonable." *Alfonso*, 66 F. Supp. 2d at 194 (quotation omitted). In *Alfonso*, this Court struck records that contained "only vague descriptions such as 'Drafting documents,' 'Reviewing documents,' 'Case planning,' or 'Trial planning/Trial preparations.'" *Id.* Here also, Kaiser submits many similarly vague billing statements, including multiple-hour billings described with no more than ███████ or ███████ or the numerous entries designated with little more than "███████ (*See* Ex. K.*) These "gauzy generalities . . . are so nebulous that they fail to allow the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent." *Lipsett*, 975 F.2d at 938 (quotation omitted). On this basis, the hours for which Kaiser has failed to provide a specific accounting of the attorneys' work on this case must be stricken.

**B.     Kaiser's Application Is Riddled With Excessive and Duplicative Billing**

Kaiser's fee application requires substantial reduction due to excessive and duplicative billing. The "trial bench need not feel handcuffed by counsel's submission of time records, no matter how elaborate," but must instead "draw on her experience and wisdom in deciding whether the time spent on each phase was in excess of a reasonable amount." *Guckenberger*, 8 F. Supp. 2d at 100 (quotation omitted). Kaiser's application is excessive in several respects.

*First*, Kaiser grossly overstaffed this case. "[J]ust as there can be too many cooks in the kitchen, there can be too many lawyers on a case." *Guckenberger*, 8 F. Supp. 2d at 101. Kaiser's team on this matter consists of nearly 150 different attorneys and other personnel from 16 different firms. During the immediate pre-trial and trial period, the case was staffed with 33 attorneys, and 26 law clerks paralegals, many of them claiming to bill all day, every day, for five weeks or more. One attorney, for example, submitted bills for 427 hours in a one-month period. (*See* Pl. Ex. I, Sobol Decl., Ex. 1 (entries for KJP from 2/21/10 to 3/21/10).) Moreover, of the 33 attorneys involved in trial, only 6 had a speaking role at trial. *See Conservation Law Found.*, 767 F. Supp. 2d at 253-54 ("Four attorneys and a paralegal all billed time for trial observation; none of them had any speaking part. . . . [T]ime billed for trial observation cannot be considered a cost which ought be borne by the losing party."). Even in a high profile First Amendment case litigated all the way to the Supreme Court by Professors Laurence Tribe and David Rosenberg, the First Circuit has found the non-stop presence of non-speaking attorneys to be unjustified, reducing the amount of hours claimed by over half. *Grendel's Den*, 749 F.2d at 952-53. Pfizer accordingly proposes that Kaiser's claimed hours during the immediate pre-trial and post-trial period in this case be reduced by 20 percent across the board to account for overstaffing.

*Second*, related to this excessive billing of hours, Kaiser improperly bills full attorney rates even for so-called "non-core" work, "such as letter-writing, telephone calls, and other clerical duties." *Chao v. Ballista*, No. 07cv10934-NG, 2011 WL 3654040, at *6 (D. Mass. Aug. 18, 2011). As the Third Circuit has observed of such tasks, even "[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Ursic v. Bethlehem Mines*, 719 F.2d

16

670, 677 (3d Cir. 1983); *accord Lipsett*, 975 F.2d at 940 ("[C]lerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them."). Here, for example, because of the massive number of lawyers committed to this case, 28.6% of the billing entries submitted by Kaiser contains time relating to conferencing among Kaiser's team. (*See* Ex. L.) As this Court has observed, "[e]xcessive telephone calls and conferences represent a duplication of effort for which less than full fare should logically be charged for all participants," and those "near-constant bi-coastal efforts to coordinate case 'strategy' and 'status'" should be reduced by a third as non-core. *Guckenberger*, 8 F. Supp. 2d at 100-01. In addition, this Court has held that non-core work includes discovery matters such as "responding to discovery requests, . . . issuing subpoenas and noticing depositions, . . . writing memos to the file," or generic use of "File Review." *Alfonso*, 66 F. Supp. 2d at 196. "[N]on-core services also include attendance at court hearings in a non-participatory capacity," *Guckenberger*, 8 F. Supp. 2d at 101 (quotation omitted), which, given the 33 attorneys on trial in this case, includes a large amount of attorney time. Finally, preparation of a fee petition, while compensable, is classified as non-core, *see id.* at 102, and thus the 922.55 hours containing entries for that task must be reduced. (Ex. M.) Apart from the conferencing and fee petition objections, entries embracing 911.25 hours contain non-core tasks, which should be reduced by a third. (Ex. N.)

*Third*, Kaiser's retention of new appellate counsel, Kellogg Huber of Washington D.C., should not be compensated at full amounts due to the duplication of effort associated with a change in counsel. *See Ackerley Commc'ns of Mass., Inc. v. City of Somerville*, 901 F.2d 170, 171 (1st Cir. 1990) (holding that it was not "appropriate to charge Somerville with the costs associated with Ackerley's decision to switch on appeal from competent local counsel to the more expensive and distant Washington, D.C. firm"). As in *Ackerly*, Kaiser's high-priced appellate counsel presented "no theories or arguments that took the analysis to a level beyond that reached in the district court." *Id.* None of Kaiser's co-plaintiffs retained separate appellate counsel for their appeals. In particular, Pfizer should not be charged "'with the time necessary for replacement appellate counsel to reach the level of familiarity with the case for which trial

17

counsel had already been compensated.'" *Id.* (citation omitted.)   Moreover, Kaiser's trial attorneys' failure to properly preserve the trial record required a massive undertaking by trial and appellate counsel to locate missing exhibits and assemble the record for appeal, resulting in work noted in entries totaling 142.4 hours. (*See* Ex. O.) Pfizer therefore submits that the fees for Kaiser's appellate representation—a total of 2518.5 hours—should be reduced by one third, and the duplicative hours associated with obtaining the missing exhibits should be stricken.

*Fourth*, Kaiser excessively and improperly billed for its attorneys' travel time in connection with the trial of this matter.   Significantly, although Ms. Nussbaum, Kaiser's lead counsel, claims to have instructed other firms not to submit bills for "travel time where description did not reflect that the attorney was also working on matter during travel" (Pl. Mem. at 14), the bills she has actually submitted tell a different story.   Indeed, Ms. Nussbaum is the biggest offender in this regard, submitting more than 394.8 hours containing entries for travel time without any indication that substantive work was being performed during travel. (*See* Ex. P.)   Other firms' bills include improper entries comprising an additional 778.65 hours.   This Court has previously eliminated "[t]ime spent traveling during which no specific legal work was recorded," *Guckenberger*, 8 F. Supp. 2d at 102, and it should do so again here.[15]

In sum, using a reasonable Boston-area rate charged in similar cases, multiplied by the number of hours reasonably expended on Kaiser's RICO claim and accounting for appropriate deductions for non-core work, travel, and other items, any attorneys' fee award should be capped at a maximum of **12,994.1 hours**, for a total award of no more than **$3,348,297.23.**

## IV.   THE VAST MAJORITY OF KAISER'S EXPENSES ARE NON-REIMBURSABLE

### A.   Kaiser Is Not Entitled to Expert Fees

Almost $1 million of Kaiser's request for expenses consists of requests for reimbursement for expert fees. (*See* Ex. Q.)   However, payment of such fees is not recoverable

---

[15]   Although "courts in this circuit normally reduce the rate charged by fifty percent" for non-working travel time, *Conservation Law Found.*, 767 F. Supp. 2d at 255, complete elimination is appropriate here because "retention of [non-local] counsel was not essential." *Guckenberger*, 8 F. Supp. 2d at 102.

under RICO's fee-shifting provisions.   The Supreme Court made this much clear in *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83 (1991).   There, the Court observed that while "some fee-shifting provisions . . . refer only to 'attorney's fees,' . . . many others explicitly shift expert witness fees *as well as* attorney's fees." *Id.* at 88.   The Court concluded that expert fees are not recoverable unless specifically authorized by the fee-shifting statute, there, the Civil Rights Act, 42 U.S.C. § 1988. *Id.* at 88-92.   Nor could expert fees "be treated as part of the expenses of the attorney," as this would render specific authorizations for expert fees redundant with respect to statutes that already allowed for "expenses reasonably incurred." *Id.* at 90-91. Expert fees are therefore not authorized under RICO, since its "cost-allocating provisions mirror those of § 1988, and the Supreme Court in [*Casey*] held that § 1988 did not permit reallocation of expert witness fees." *Bonilla v. Trebol Motors Corp.*, No. 92-1795 (JP), 1997 WL 178861, at *11 (D.P.R. Mar. 27, 1997), *rev'd in part on other grounds*, *Bonilla v. Volvo Car Corp.*, 150 F.3d 88 (1st Cir. 1998).   And although Congress amended § 1988 following the *Casey* decision to allow expert fees, *see id.* at 4 n.7; *Guckenberger*, 8 F. Supp. 2d at 111, it enacted no such amendment for RICO.   It is thus plain that "Congress did not wish to shift expert witness fees in RICO," *Bonilla*, 1997 WL 178861, at *11, and Kaiser's request for same must be denied.

Moreover, Kaiser's submissions in this regard are deeply flawed.   For example, Kaiser arbitrarily deems all expert work performed in 2009 in the entire sales and marketing litigation to relate to its case (Pl. Ex. Q, Sobol Decl. ¶¶ 5-7), even though trial was not ordered until November.   Kaiser also double counts more than $82,500 in expert fees in its submission: Kaplan Fox seeks reimbursement for $132,500 paid to the Plaintiffs' Steering Committee for expert fees (Pl. Ex. D, Kilsheimer Decl. Ex. 4 at 1), but the PSC deducts only $50,000 from its request for expert fees to account for the Kaplan Fox payment.   (Pl. Ex. Q, Sobol Decl. ¶ 9.) Further, even where permissible, expert fees "may only be awarded if the Court determines that they are 'reasonable.'" *Guckenberger*, 8 F. Supp. 2d at 111.   As with its attorneys' fees, Kaiser's submission fails to show that its experts' rates are reasonable under prevailing market rates.   *See id.*   In sum, all of Kaiser's expert expense submissions, a total of $979,015, must be stricken.

**B.    Kaiser's Travel Bills Are Excessive**

The $157,245 Kaiser requests for travel expenses is vastly excessive. At the outset, the amount of travel undertaken by Kaiser's attorneys in this case is excessive, especially when Kaiser "has provided no information as to why out-of-state counsel was necessary," and "[i]f Massachusetts counsel had been used, it would have been unlikely that the hotel costs would have been incurred." *Parker v. Town of Swansea*, 310 F. Supp. 2d 376, 400 (D. Mass. 2004). For example, a substantial amount of travel relates to Kaiser's deposition designation project, which involved flying no less than 6 attorneys to Boston for a period of 4 days. Moreover, certain travel expenses proffered by Kaiser—including first-class airfare, manicures, guided tours, and in-room entertainment—reflect a degree of luxury patently inappropriate for a fee-shifting award. The First Circuit has reversed awards of similarly extravagant expenses where, for example, the attorney in question made "[no] effort to minimize costs in . . . taking a three-bedroom suite at an expensive hotel." *Grendel's Den*, 749 F.2d at 957. After eliminating such obviously improper entries, Kaiser's travel expenses should be cut in half. (*See* Ex. Q.)

**C.    Kaiser Is Not Entitled to Reimbursement for Overhead Costs**

In addition to manifestly improper requests for over-time use of air-conditioning and basic office supplies, Kaiser also requests many other routine expenses that are part of firm overhead and cannot be billed to Pfizer. The "work of administrative staff" is properly considered firm overhead, *Guckenberger*, 8 F. Supp. 2d at 102, as well as matters including "in-house photocopies, Fed Ex costs, costs for long distance calls, costs for meals, parking costs, taxi costs, and other miscellaneous costs." *Norkunas v. HPT Cambridge, LLC*, No. 11-12183-WGY, 2013 WL 5229838, at *11 (D. Mass. Sept. 18, 2013). Those overhead costs constitute $53,251, which should be eliminated from Kaiser's award. Finally, $28,680.77 of Hagens Berman's $63,641.75 request for expenses is completely undocumented and must be denied. (*See* Ex. Q.)

## CONCLUSION

For the foregoing reasons, any award should be capped at a maximum of **$3,348,297.23** in attorneys' fees and **$402,880.70** in expenses.

20

Dated: October 14, 2013

Respectfully submitted,

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP

By:   /s/ Mark S. Cheffo
      Mark S. Cheffo

51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000
Email:  markcheffo@quinnemanuel.com

*Attorneys for Defendants Pfizer Inc. and*
*Warner-Lambert Company LLC*

21

## CERTIFICATE OF SERVICE

I, Mark S. Cheffo, hereby certify that I caused the foregoing document filed under seal to be served by Federal Express, postage pre-paid upon the following counsel of record:

Linda P. Nussbaum (*pro hac vice*)
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, NY 10017
Tel. 646-722-8500
Fax. 646-722-8501
lnussbaum@gelaw.com

Dated:  October 14, 2013                   /s/ Mark S. Cheffo
                                           Mark S. Cheffo