FILED UNDER SEAL

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:   NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br>        Plaintiffs,<br>v.<br>PFIZER INC. et al.,<br>        Defendants. | Chief Judge Patti B. Saris<br>Magistrate Judge Leo T. Sorokin |

**DECLARATION OF MARK S. CHEFFO IN OPPOSITION TO
KAISER'S MOTION FOR ATTORNEYS' FEES AND COSTS**

I, Mark S. Cheffo, declare and state as follow:

1.      I am a partner with the law firm of Quinn Emanuel Urquhart & Sullivan, LLP, counsel for Defendants Pfizer Inc. and Warner-Lambert Company LLC ("Pfizer"). The exhibits discussed below were prepared by attorneys and paralegals at Quinn Emanuel acting under my supervision.

**The Master Spreadsheet**

2.      Attached as Exhibit A is Pfizer's Master Fee Entry Spreadsheet (the "Master Spreadsheet"), which contains all of Kaiser's billing submission data in a structured, searchable electronic form. An electronic copy of the original Microsoft Excel file will be separately provided to chambers and served on counsel for Kaiser.

3.      To incorporate the data provided in the billing statements provided by Kaiser's attorneys, the Master Spreadsheet includes columns designated "Firm," "Date," "Biller," "Narrative," "Claimed Hours," and "Claimed Dollars," which are populated with data to the extent provided in Kaiser's submission. Some firms, for instance, did not provide information on the dollar amount claimed for each billing entry. In addition, for the Court's convenience, Pfizer has also added a "Page" column indicating the page number of the relevant PDF on which

each billing entry appears, as well as a "Entry Order" column, which indicates the position of the entry within the billing statement of the submitting firm.

4.      The "Rate" column of the Master Spreadsheet reflects the rate status attributable to each biller as argued in Pfizer's memorandum of law: P for Partner ($350/hour), A for associate and of counsel ($250/hour), PL for paralegal and staff or contract attorney ($100/hour), and NL for non-legal (no hour credit, for improper billing entries by doctors, research analysts, secretaries, IT personnel, or others).  Because Kaiser did not provide rank or status information for many of its billers, Pfizer has had to use its best judgment with respect to many billers in assigning them an appropriate rate code.

5.      The "Adjusted Hours" column of the Master Spreadsheet reflects the number of hours Pfizer believes is appropriately assigned to each billing entry based on all of the applicable objections argued in its memorandum of law, which are listed together for each entry in the "Objection Codes" column.  Pfizer carefully reviewed and re-reviewed each of the proffered billing entries and assigned objection codes to each in accordance with the law of the First Circuit and this Court's precedents.  The Excel version of the spreadsheet also includes a separate column for each objection code to facilitate sorting and review by specific objection.

6.      Pfizer calculated the quantitative effect of each of these objection codes on each entry through a series of mathematical functions corresponding to the deductions requested and argued for in Pfizer's memorandum of law.  Those functions are described in more detail below. In addition to the deductions applied by these objection codes, for the reasons stated in Pfizer's memorandum of law, a final, across-the-board discount of 20.44% is applied to all entries to account for Kaiser's lack of success on its nociceptive pain claims.

7.      Pfizer believes that these mathematical functions, which are described in more detail below and in connection with each of the objection codes, provide a reasonable method of evaluating and appropriately discounting Kaiser's voluminous fee petition.  Pfizer has endeavored to provide a favorable inference to Kaiser in cases of arguable uncertainty.

8.      The "Adjusted Dollars" column of the Master Spreadsheet reflects the multiple of the adjusted hours for each entry and the applicable billing rate.  The total maximum fee award argued for in Pfizer's memorandum of law is the sum of all entries in the adjusted amount column of the Master Spreadsheet.

**Accuracy of Master Spreadsheet**

9.      The Master Spreadsheet was prepared by copying the information from each individual billing entry submitted by Kaiser's 16 law firms and pasting it into a single spreadsheet.  Although Pfizer has striven to carefully transfer this data to the Master Spreadsheet and correct any errors due to incorrect OCR, there may be minor typographical errors in transposition in the "Narrative" column of the spreadsheet.  In the transposition process, Pfizer undertook to correct any apparent errors in Kaiser's fee submissions that would affect the arithmetic accuracy of the Master Spreadsheet.

10.     Pfizer cross-checked its transposition of data from the billing statements of Kaiser's attorneys to the Master Spreadsheet by comparing the total number of hours claimed by each firm with the sum amount for each firm stated on the Master Spreadsheet.  In all but two cases, there was identity of the amounts or a difference of less than five hours.  Pfizer deemed differences of this size to be *de minimis* in light of total requested hours, and thus not requiring further review.

11.     In one case, for the firm Kaplan Fox, there was a difference of 8.75 hours between Kaplan Fox's requested fee amount and the Master Spreadsheet.  Pfizer carefully reviewed the documents to analyze the source of this difference.  Pfizer determined the difference resulted from an error by Kaplan Fox:  the sum of its hourly billing entries was equal to the amount on the Master Spreadsheet, not the amount claimed by Kaplan Fox in its cover statement. (*Compare* Pl. Ex. D, Kilsheimer Aff., Ex. 1 (requesting 8975.75 hours), *with id.*, Ex. 2 (requesting a total of 8984.5 hours).)

12.     In another case, for the Dugan law firm, there was a difference of 6.75 hours between the Dugan firm's requested fee amount and the Master Spreadsheet.  Pfizer carefully

3

reviewed the documents to analyze the source of this difference.  Pfizer determined that the difference resulted from a rounding up of hours by the Dugan Firm and by Mr. Dugan's misstatement of his total hours—he requests 88, but his time records show only 81.  (*Compare* Pl. Ex. M, Ex. 1 at 1, *with id.* at 10.)

13.     Pfizer accordingly believes that the Master Spreadsheet accurately summarizes and restates the billing statements submitted by Kaiser.

**Block Billing and Multiple Objections**

14.     Each of the objection codes listed in the Master Spreadsheet corresponds to a reduction in hours as argued in Pfizer's memorandum of law.  However, a difficult question is presented with respect to computation of deductions for block-billed entries that involve some legitimate, unobjectionable work in addition to objectionable work.  A similar difficulty is presented for entries that involve multiple objections.  Pfizer has accordingly developed formulae to compute deductions in these scenarios.  It has crafted these formulae with an eye toward assigning a reasonable, not overly complicated deduction for these block-billed entries.

15.     Pfizer accounted for block-billed entries involving both objectionable and unobjectionable work by adding a "Legitimate Work" code to the spreadsheet.  This code was checked as applicable whenever an entry, whether block-billed or not, contained at least one task to which no objection applied.  This Court's precedents hold that block-billed entries involving both objectionable and legitimate work should be given half credit for the legitimate work, with the other half discounted according to the objection.  Accordingly, for any entry coded with both legitimate work and an objection, Pfizer awarded half the entry value to Kaiser and discounted the other half according to the applicable objection.  For example, consider an entry listing travel time in which no work was performed and appearance at a hearing.  For such an entry, half of the claimed time is assigned to Kaiser for the hearing appearance, and the other half is eliminated pursuant to the arguments in Pfizer's memorandum of law that non-working travel time is non-compensable.

16.     For block-billed entries involving legitimate work and multiple objections, Pfizer still awarded Kaiser credit for half of the claimed hours and discounted the other half using a weighted average of the deductions associated with each applicable objection code.  For example, consider an entry involving advocacy at a hearing (legitimate work), travel time in which no work was performed (full elimination), and non-core conferencing (one-third reduction).  Kaiser would receive half of its claimed hours at the outset for the legitimate work, and the other half would be reduced by the weighted average of full elimination and one-third reduction, which is two thirds.  Thus, in total, Kaiser would receive two-thirds credit for the full entry.

17.     Similarly, for entries involving multiple objectionable tasks and no legitimate work, the Master Spreadsheet applies a weighted average of all applicable objection codes to the entire entry.  For example, an entry involving non-working travel (full elimination), non-core conferencing (two thirds credit), and work on the UCL claim (full elimination) would receive a weighted average of 2/9 or .22 of the full entry amount.

18.     Finally, Pfizer notes that deductions for three of its objection codes have been applied independently of these block-billing rules.  This is so because these objection codes relate to general characteristics of the work performed or the party performing it, rather than to specific tasks.  These three objection codes are "Non-Contemporaneous," "Trial Work," and "Appellate Work," each of which is discussed in more detail below.   These deductions, in addition to the across-the-board deduction for nociceptive pain, would be applied after the deductions for specific objection codes.

19.     Pfizer believes that these formulae provide a reasonable and appropriate method of evaluating and discounting billing entries that raise multiple issues, in that they avoid double-counting of objections and give appropriate credit to Kaiser for legitimate work.

**Billing Rates**

20.     In support of Pfizer's arguments concerning proper rates for Kaiser's attorneys, attached as Exhibit B is a true and correct copy of a report by ALM Legal Intelligence titled

Billing Rates & Practices: A Study of the Billing Rates and Billing Practices of Attorneys in Small and Midsize Firms, dated January 2013.

21.     Attached as Exhibit C is Pfizer's Billing Rates Spreadsheet, which lists the name of each biller identified by Kaiser, along with their firm name, stated or apparent rank or position, and the rate assigned to them by Pfizer.

**Objection Codes**

22.     Exhibits D through Q are spreadsheets consisting of various sets of data that have been extracted from the Master Spreadsheet in relation to specific objection codes. Microsoft Excel versions of these spreadsheets can be found in separate tabs within the Excel file provided to the Court and served on Kaiser. Pfizer offers these spreadsheets as a way of illustrating to the Court the pervasiveness of various objectionable billing entries within Kaiser's submission.

23.     While these spreadsheets indicate a number of total hours relating to the objection code at the bottom, this is not, in most cases, the amount of hours that Pfizer is requesting to be subtracted from Kaiser's award due to the objection. This is so because Kaiser's use of block-billing renders it likely that each given hour entry contains multiple tasks that may involve multiple objections and/or some legitimate work. As a result, these entries will not be adjusted pursuant to a single objection code, but will instead be processed under the block-billing rules set forth above, which are designed to give Kaiser a reasonable, favorable inference to provide it with credit for legitimate work. Thus, the inclusion of a billing entry in these spreadsheets implies only that some aspect of the entry is objectionable, not that the entire entry is objectionable.

24.     Attached as Exhibit D is Pfizer's UCL Spreadsheet. This spreadsheet includes all entries in the Master Spreadsheet marked with the "UCL" objection code, which applies to entries relating to work on the UCL claim. As argued in its memorandum of law, Pfizer submits that all time attributable to the UCL claim must be stricken from the lodestar. This spreadsheet also includes entries coded with "Post-trial Motions" work. Because there were three major post-trial motions in this case, one of which related exclusively to the UCL claim, Pfizer submits

6

that entries generically referring to post-trial motions should be reduced by a third to reflect work presumptively attributable to the UCL claim.  The Master Spreadsheet reflects the imposition of these proposed deductions on each applicable entry.

25.    Attached as Exhibit E is Pfizer's Unsuccessful Contentions Spreadsheet.  This spreadsheet includes all entries in the Master Spreadsheet marked with the "Pre-judgment Interest" objection code, which applies to work related to Kaiser's unsuccessful motion for prejudgment interest, as well as all entries marked with the "Janney Deposition" objection code, which applies to all work related to Kaiser's unsuccessful motion to compel the deposition of Carol Janney.  As argued in its memorandum of law, Pfizer submits that all time attributable to these unsuccessful contentions must be stricken from the lodestar.  The Master Spreadsheet reflects the imposition of this proposed deduction on each applicable entry.

26.    Attached as Exhibit F is Pfizer's Settlement and Mediation Spreadsheet.  This spreadsheet includes all entries in the Master Spreadsheet marked with the "Settlement and Mediation" objection code, which applies to entries relating to work on potential settlement and mediation of this action.  As argued in its memorandum of law, Pfizer submits that all time attributable to the settlement and mediation of this action must be stricken from the lodestar. The Master Spreadsheet reflects the imposition of this proposed deduction on each applicable entry.

27.    Attached as Exhibit G is Pfizer's Other Matters Spreadsheet.  This spreadsheet includes all entries in the Master Spreadsheet marked with the "Other Matters" objection code, which applies to entries relating to work on other cases, including personal injury products liability cases (often termed "suicide cases") or the Class Plaintiffs' claims.  As argued in its memorandum of law, Pfizer submits that all time attributable to other cases must be stricken from the lodestar.  The Master Spreadsheet reflects the imposition of this proposed deduction on each applicable entry.

28.    Attached as Exhibit H is Pfizer's Client Relations and Staffing Spreadsheet.  This spreadsheet includes all entries in the Master Spreadsheet marked with the "Client Relations"

objection code, which applies to entries relating to work on client relations matters or general staffing issues.  As argued in its memorandum of law, Pfizer submits that all time attributable to client relations matters must be stricken from the lodestar.  The Master Spreadsheet reflects the imposition of this proposed deduction on each applicable entry.

29.     Attached as Exhibit I is Pfizer's Non-Contemporaneous Billing Spreadsheet.  This spreadsheet identifies all billers whose bills suggest that they did not enter their time contemporaneously because a high percentage of their entries use flat-hour and half-hour billing increments, among other problems set forth in Pfizer's memorandum of law.  The entries for these billers have been coded with the "Non-Contemporaneous" objection code.  As argued in its memorandum of law, Pfizer submits that all time for these billers must be reduced by 10%.  The Master Spreadsheet reflects the imposition of this proposed deduction on each applicable entry.

30.     Attached as Exhibit J is Pfizer's ECF Review Spreadsheet.  This spreadsheet includes all entries in the Master Spreadsheet marked with the "ECF Review" objection code, which applies to repetitive, small billing entries relating to review of docket entries.  As argued in its memorandum of law, Pfizer submits that all time attributable to routine review of ECF notices must be stricken from the lodestar.  The Master Spreadsheet reflects the imposition of this proposed deduction on each applicable entry.

31.     Attached as Exhibit K is Pfizer's Vague Billing Spreadsheet.  This spreadsheet includes all entries in the Master Spreadsheet marked with the "Vague" objection code, which applies to entries where the description of the work performed is insufficiently precise to determine its reasonableness and/or its relation to prevailing party status.  As argued in its memorandum of law, Pfizer submits that all such vague billing entries must be stricken from the lodestar.  The Master Spreadsheet reflects the imposition of this proposed deduction on each applicable entry.

32.     Attached as Exhibit L is Pfizer's Conferencing Spreadsheet.  This spreadsheet includes all entries in the Master Spreadsheet marked with the "Conferencing" objection code, which applies to entries involving internal conferences, conferences with co-counsel, and

conferences with third parties. It does not include conferences with clients or with opposing counsel. As argued in its memorandum of law, Pfizer submits that all such conferencing time should be treated as non-core and reduced by one third. The Master Spreadsheet reflects the imposition of this proposed deduction on each applicable entry.

33.     Attached as Exhibit M is Pfizer's Fee Petition Spreadsheet. This spreadsheet includes all entries in the Master Spreadsheet marked with the "Fee Petition" objection code, which applies to entries relating to Kaiser's efforts to recover its attorneys' fees. As argued in its memorandum of law, Pfizer submits that all time devoted to recovering fees should be treated as non-core and reduced by one third. The Master Spreadsheet reflects the imposition of this proposed deduction on each applicable entry.

34.     Attached as Exhibit N is Pfizer's Non-Core Spreadsheet. This spreadsheet includes all entries in the Master Spreadsheet marked with the "Non-Core" objection code, which applies to entries relating to non-core work by attorneys and non-legal billers, but not by paralegals. As argued in its memorandum of law, Pfizer submits that all time devoted to non-core work should be reduced by one third. The Master Spreadsheet reflects the imposition of this proposed deduction on each applicable entry.

35.     Attached as Exhibit O is Pfizer's Missing Exhibits Spreadsheet. This spreadsheet includes all entries in the Master Spreadsheet marked with the "Missing Exhibits" objection code, which applies to entries relating to Kaiser's efforts to locate missing exhibits, which was necessary to assemble the record for appeal. As argued in its memorandum of law, Pfizer submits that all time devoted to this task should be stricken from the lodestar. The Master Spreadsheet reflects the imposition of this proposed deduction on each applicable entry.

36.     Attached as Exhibit P is Pfizer's Travel Time Spreadsheet. This spreadsheet, which is sorted by billing attorney, includes all entries in the Master Spreadsheet marked with the "Travel" objection code, which applies to entries involving travel where no work on substantive matters is indicated during the travel period. As argued in its memorandum of law,

Pfizer submits that all such travel time should be stricken from the lodestar. The Master Spreadsheet reflects the imposition of this proposed deduction on each applicable entry.

37.     In addition to the objection codes reflected in the above spreadsheets, two additional discounts have been applied to the adjusted hours for classes of entries, as argued in Pfizer's memorandum of law. First, a discount of 20% has been applied to work during the immediate pretrial and trial period (November 1, 2009 to March 26, 2010), which entries have been coded with the "Trial Work" objection code. Second, a discount of 33% has been applied to entries relating to Kaiser's representation on appeal by Kellogg Huber, which entries have been coded with the "Appellate Work" objection code.

### Expenses

38.     Attached as Exhibit Q is Pfizer's Expense Itemization Spreadsheet. This spreadsheet itemizes the dollar amounts of Kaiser's objectionable expenses, including expert fees, travel expenses, overhead expenses, and undocumented expenses by Hagens Berman. The spreadsheet adds the objectionable expenses in each category and adjusts the total for each category as follows: expert expenses are wholly disallowed; travel expenses are reduced by half following the elimination of gratuitous travel expenses; overhead expenses are disallowed; and undocumented expenses of Hagens Berman are disallowed.

39.     The total amount of Pfizer's adjusted expense deductions is set forth at the bottom of the expense spreadsheet. It is then subtracted from Kaiser's total claimed expense amount, resulting in the total maximum expense award set forth in Pfizer's memorandum of law. A Microsoft Excel version of this spreadsheet can be found in a separate tab within the Excel file provided to the Court and served on Kaiser.

Signed under the penalties of perjury this 14th day of October 2013.

Dated:  October 14, 2013                         /s/ Mark S. Cheffo
                                                 Mark S. Cheffo

## CERTIFICATE OF SERVICE

I, Mark S. Cheffo, hereby certify that I caused the foregoing document filed under seal to

be served by Federal Express, postage pre-paid upon the following counsel of record:

Linda P. Nussbaum (*pro hac vice*)
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, NY 10017
Tel. 646-722-8500
Fax. 646-722-8501
lnussbaum@gelaw.com

Dated:  October 14, 2013                          /s/ Mark S. Cheffo
                                                  Mark S. Cheffo