FILED UNDER SEAL

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:   NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>*Kaiser Foundation Health Plan, Inc., et al. v. Pfizer, Inc., et al.* (1:04-cv-10739) | Chief Judge Patti B. Saris<br>Magistrate Judge Leo T. Sorokin |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFFS KAISER FOUNDATION HEALTH PLAN, INC. AND KAISER FOUNDATION HOSPITALS FOR ATTORNEYS' FEES AND COSTS PURSUANT TO THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**

FILED UNDER SEAL

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ...................................................................................... 1

II.     COUNSEL'S RATES ARE REASONABLE, PARTICULARLY FOR THIS CASE ...... 4

    A.      Courts in this District hold that rates for national class action counsel, such as those who litigated, tried, and defended the appeal of the Kaiser case, are far higher than Pfizer recommends, and are consistent with what Kaiser seeks here .. 4

    B.      Numerous courts, including this Court, have approved counsels' hourly rates as reasonable ................................................................................................................ 6

    C.      Pfizer's counsels' actual rates provide a reliable benchmark ................................. 6

    D.      Hourly rates on the District of Massachusetts bankruptcy docket and other public sources demonstrate that counsels' rates are reasonable ........................................ 8

III.    KAISER'S TIME IS REASONABLE, PARTICULARLY FOR THIS CASE ................. 8

    A.      Due to the fundamental differences between fee awards in RICO case and civil rights cases, Pfizer's request to deduct for what it designates as non-core time should be denied ..................................................................................................... 8

    B.      Kaiser should not be penalized for block billing .................................................. 10

    C.      Pfizer's requests to strike all UCL time and cut all time due to nociceptive pain results should be denied ...................................................................................... 11

        1.      Kaiser's UCL claim arises from the same set of facts as its RICO claim  12

        2.      Pfizer's request for a 20% deduction based on nociceptive pain should be denied ................................................................................................... 13

    D.      Pfizer's novel "unsuccessful contentions" standard should be rejected ............... 14

    E.      Time spent in connection with settlement efforts is properly included ............... 15

    F.      Pfizer's other ill-considered objections should be rejected .................................. 16

        1.      Client relations .......................................................................................... 16

        2.      Compensable staff ..................................................................................... 16

        3.      So-called unrelated work .......................................................................... 16

IV.     PFIZER'S OTHER VARIED REQUESTS TO CUT COUNSELS' TIME SHOULD BE DENIED ................................................................................................................... 16

    A.      Pfizer's "Trial Work" objection is absurd ........................................................... 16

    B.      Pfizer's vagueness objection is overbroad and inappropriate in in a case such as this ....................................................................................................................... 17

    C.      Pfizer's request to deduct 33% of appellate counsels' time should be denied ..... 17

    D.      Pfizer's non-contemporaneous objection should be disregarded.......................... 18

    E.      Pfizer ECF objection is overblown ...................................................................... 18

F.      Pfizer's travel while working objection overreaches ............................................ 18

V.      PFIZER MUST REIMBURSE KAISER FOR EXPERT FEES INCURRED IN THIS
        CASE ................................................................................................................................ 19

VI.     THE OTHER EXPENSES KAISER CONTINUES TO REQUEST ARE REASONABLE
        ........................................................................................................................................ 20

VII.    CONCLUSION ................................................................................................................ 20

FILED UNDER SEAL

## I.      PRELIMINARY STATEMENT

It doesn't take extensive research or elaborate multi-level spreadsheets to figure out that some lawyers are more expensive than others or that complex federal cases are costly to litigate. Yet, Pfizer is "shocked, shocked" that lawyers, such as Kaiser's counsel, command the rates that they do; and that the litigation, trial, and appeal of Kaiser's complex RICO case demanded the attorney time and expenses that it actually did.  The hourly rates, time expended, and expenses incurred were reasonable for this case.  Pfizer's request to cut Kaiser's application under RICO, to a fraction of what has been reasonably requested, should be denied.

It is no secret that attorneys who try complex federal cases—whether representing plaintiffs or defendants—command rates higher than most, no matter the locale.  "The type of services rendered by lawyers, as well as their experience, skill, and reputation, varies extensively—even within a law firm.  Accordingly, the hourly rates of lawyers in private practice also vary widely."[1]  And lawyers' salaries "vary widely according to the type, size, and location of their employer."[2]  For instance, Pfizer's law firms in this case—Skadden Arps and Quinn Emanuel—each enjoy revenues per partner in excess of $1.2 million, ranking fourth and seventh in the nation, respectively.[3]  By contrast, it is well-known that the hourly rates for personal injury insurance defense work "are among the lowest in the legal profession."[4]  Even within law firms,

---

[1] *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (citations omitted).
[2] Bureau of Labor Statistics, *U.S. Department of Labor, Occupational Outlook Handbook (2012-13), Lawyers*, at http://www.bls.gov/ooh/legal/lawyers
[3] The American Lawyer, *Revenue Per Lawyer: A Modest Upturn*, at http://www.americanlawyer.com/PubArticleTAL.jsp?id=1202596368857&slreturn=20131005112351
[4] Legal Billing & Litigation Management Consultant John Conlon, *Why Aren't Insurance Defense Attorney Rates Higher?* http://legalbillreviewerblog.com/2011/04/20/why-insurance-attorney-rates-arent-higher/#more-177 http://www.linkedin.com/groups/Why-Arent-Insurance-Defense-Attorney-80469.S.51240903

"the work performed for insurance companies at rates sometimes as much as 50 percent below the prevailing hourly fee for non-insurance company clients."[5]

The centerpiece of Pfizer's opposition rests on the faulty assumption that Kaiser's counsels' rates should be set in stone at rates appropriate for different kinds of lawyers in different kinds of cases, and akin to the rates of lawyers who defend individual personal injury cases. Pfizer brags that it accepted for purposes of one fee application before this Court such discounted rates in a personal injury case in which it also represented Pfizer, but it fails to acknowledge that it did so in a wholly different context. Pfizer argues that the discounted rates that it put in for on one occasion in the personal injury context, upon prevailing in one discovery sanctions motion against one attorney, Levi Boone, to be paid personally by Mr. Boone for his failure to comply with basic template and other discovery in certain of the products liability cases in this MDL, should set the market rate here. Tellingly, Pfizer's lawyers do not say that they have been paid that "discounted rate" in this case.

In fact, Kaiser's counsels' hourly rates:

- Are in-line with precedents in this District and elsewhere for complex federal litigation;

- Have been approved by numerous courts, including by this Court and others in this District;

- Are at or below the levels of Pfizer's counsel in the Kaiser RICO case; and

- Are consistent with publicly available information that comparable counsel charge for comparable services, including in Boston.

Thus, contrary to another of Pfizer's refrains, one need not leave Boston to show how reasonable counsels' rates are for this case. The local/out-of-town dichotomy Pfizer proffers is a red herring. The key consideration here is the sophistication of the practice and of the matter.

---

[5] Ed Wesemann, *Strategic Options for Insurance Defense Law Firms* (Dec. 22, 2008), at
http://edwesemann.com/articles/strategy/2008/12/22/strategic-options-for-insurance-defense-law-firms/

Attorneys from Boston in the same league as Kaiser's counsel command as much, if not more, in the way of hourly rates as do Kaiser's lead, trial, and appellate counsel, whether from New York, San Francisco, Washington, or elsewhere.  Contemporaneous with the RICO trial, the Boston Globe reported, "Although hourly rates vary depending on the type of work and the size of the client, the cost of advice from the most experienced partners at elite Boston firms can be as high as $700 to $900 an hour for company work."[6]  A 2011 Boston Business Journal article echoed, "Partners at Boston's largest law firms charge anywhere from $600 per hour, up to $1,000 per hour."[7]  In any event, no Boston firm played a major role for Pfizer at trial, as contrasted with Kaiser, for which a major part of its trial team was Boston-based.[8]  Moreover, Pfizer's attack on Kaiser for retaining "out of town" counsel neglects the fact that Kaiser, based in California, brought its case here in the context of a national multidistrict litigation.

In addition to requesting that this Court cut counsels' reasonable and customary rates by about half, Pfizer would have the Court cut counsels' time by about half.  Pfizer compounds numerous multi-faceted objections to counsels' time, blending overheated rhetoric with a convoluted line-by-line forensic review of Kaiser's counsels' time records.  But neither its manufactured outrage, or its elaborate and creative accounting are called for here:

> We emphasize, as we have before, that the determination of fees should not result in a second major litigation.  The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should

---

[6] Kit Chellel, *In downturn, no break on legal fees*, The Boston Globe (Jan. 16, 2010) at http://www.boston.com/business/articles/2010/01/16/in_downturn_no_break_on_legal_fees/
[7] Lisa van der Pool, *Alternatives step-up competition for Boston's white-shoe law firms*, Boston Business Journal (May 27, 2011), at http://www.bizjournals.com/boston/print-edition/2011/05/27/alternatives-step-up-competition-for.html?page=all  The Massachusetts Lawyers Weekly just reported that the average hourly rates for all Boston attorneys in 2012 were $598.69 for partners and $388.21 for associates.  Brandon Gee, *The Going Rate(s)*, Massachusetts Lawyers Weekly, at 1 (Oct. 14, 2013).
[8] *See, e.g.*, Dkt. 2791 at 2 (appearances on record at Day One of Jury Trial for Pfizer consisting only of counsel from New York (Cheffo, Armstrong), San Francisco (Kennedy), and Denver (Hooper), while appearances for Kaiser included two Boston firms (Greene and Hagans Berman)).

not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.[9]

By a variety of formulae, spreadsheets, faulty assumptions, and mischaracterizations, Pfizer has created out of whole cloth a system for scoring counsels' time, compounding a seemingly unending series of objections, some overarching and others picayune.  Although the Court "should not, in its lodestar analysis, become enmeshed in a meticulous analysis of every detailed facet of the professional reputation,"[10] that is precisely what Pfizer asks the Court to do.

## II.    COUNSEL'S RATES ARE REASONABLE, PARTICULARLY FOR THIS CASE

The hourly rates of counsel for Kaiser, each of whom litigate complex cases in federal courts throughout the country, have been approved by numerous courts in other cases, including this Court and others in this District.  Pfizer ignores this inconvenient fact.

The rates paid—and court-approved—in Boston and elsewhere for comparable work by comparable firms, including Pfizer's counsel's real rates, set the standard by which the reasonableness of Kaiser counsels' rates should be judged.  Counsels' rates are more than reasonable when viewed against appropriate benchmarks.

### A.    Courts in this District hold that rates for national class action counsel, such as those who litigated, tried, and defended the appeal of the Kaiser case, are far higher than Pfizer recommends, and are consistent with what Kaiser seeks here

"A reasonable rate is measured by comparing counsel's regular rates with those of the marketplace."[11]   In *Tuli v. Brigham & Women's Hospital Inc.*, Judge Gertner, reviewed and approved a request with rates as follows:

Brown Rudnick requests rates of $570 to $615 per hour for Pinkham (partner); $630 to $695 for Shaw (senior partner); $685 to $735 for Elizabeth Ritvo

---

[9] *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) (citations omitted).
[10] *Westcott v. Secretary of HHS*, No. 77-0222-F, 1982 U.S. Dist. LEXIS 12403, at *22 (D. Mass. May 21, 1982) (citations omitted).
[11] *Tuli v. Brigham & Women's Hosp., Inc.*, No. 07-cv-12338-NG, 2009 U.S. Dist. LEXIS 129768, **5-8 (D. Mass. June 8, 2009).

(partner); $410 to $495 for Lipton (fourth-year associate); $320 to $385 for Gerwin (second-year associate); $320 for Jennifer Paradee (first-year associate); $250 to $335 for Monica Cafaro (first-year associate); $225 for five different summer associates; $275 for Susan Oldham (career paralegal); $255 to $275 for Laura Rappaport (career paralegal); $240 for Holly Matteson (librarian); $240 to $250 for library staff; and $110 to $240 for administrative staff. . . .

I find that the rates are reasonable.  These are the rates of large law firms, and they are consistent with the fee awards in other cases.[12]

The Court also explained that knowledge of what is or is not a reasonable rate "is a matter well within the court's expertise."[13]

Judge Gertner built on the precedent on reasonable rates established in the *Tuli* case in *Davis v. Footbridge Engineering Services, LLC*.[14]  In *Footbridge*, Judge Gertner held that the level of hourly rates approved in *Tuli* were not reserved solely for large law firms, but, rather, such rates also are reasonable for national class action firms, as well.  As Judge Gertner explained, "While higher rates at the large firms may be justified by their higher overhead, the overhead and transaction costs of a class action litigation practice, particularly a national practice, is similarly high."[15]

*Footbridge* is particularly on-point for this case: Judge Gertner specifically approved as reasonable the rates of one of Kaiser's firms in this case, Shapiro Haber & Urmy.  The case also renders irrelevant Pfizer's Exhibit B, the report on which it relies to justify its proposed rate caps of $350, $250, and $150.  While *Footbridge* teaches that national class action counsel should be compensated in line with large defense firms, the title report Pfizer proffers is entitled "A Study of the Billing Rates and Billing Practices of Attorneys in Small and Midsize Firms."[16]

---

[12] *Id*. at **6-7.
[13] *Id*. at *7.  Judge Gertner also approved plaintiffs' proffer of public sources for rate information.  *Id*.  ("It does not matter that plaintiff provided a chart of hourly rates charged by local large firms, rather than an expert to opine that the rates were reasonable.").
[14] No. 09-cv-11133-NG, 2011 U.S. Dist. LEXIS 93645 (D. Mass. Aug. 22, 2011).
[15] *Id*. at *11.
[16] Cheffo Decl., Ex. B, at 1.

### B.   Numerous courts, including this Court, have approved counsels' hourly rates as reasonable

The hourly rates of many of the key lawyers that tried this case have been held to be reasonable.   This Court, for example, has approved the rates of Hagens Berman and, in particular, Thomas Sobol, and multiplied them eight-fold.[17]   The hourly rates submitted by Mr. Sobol and other Hagens Berman counsel in that case were largely the same as submitted here (times 8).[18]   Other Courts have approved the same or very similar rates submitted here in complex multidistrict and other such litigation, including Ms. Nussbaum's hourly rate, which has been approved by multiple courts numerous times.[19]

### C.   Pfizer's counsels' actual rates provide a reliable benchmark

As Pfizer notes in its opposition brief, Pfizer's lead counsel was "New York-based Skadden Arps—a preeminent international law firm renowned for its expertise, but not for its low rates."[20]   In light of this and given Pfizer's stance on counsels' rates and hours, Kaiser sought some basic information on a voluntary basis about defense counsels' hourly rates and other information, in order to provide some context for the Court as to the allegations leveled

---

[17] *See New Eng. Carpenters Health Benefits Fund v. First Databank*, Case 1:05-cv-11148-PBS, 2009 U.S. Dist. LEXIS 68419, **9-10 (D. Mass. Aug. 3, 2009) (Saris, J.) (awarding attorneys' fees with multiplier of 8.3).

[18] *Compare* First Sobol Decl., Ex. I (Sept. 13, 2013), *with* Berman Decl., 1:05-cv-11148-PBS, Dkt. 762, at 40.

[19] For examples of approvals of the rates of Ms. Nussbaum and other Grant & Eisenhofer attorneys, see *Rochester Drug Co-operative, Inc. v. Braintree Labs., Inc. (Miralax Antitrust Litig.)*, Case 1:07-cv-00142-SLR (D. Del. Robinson, J.), Dkt. 243 (May 31, 2012) (hourly rates approved in lodestar cross-check); Nussbaum Decl., Dkt. 236-5 (Mar. 19, 2012) (setting forth approved hourly rates similar to that proposed here, including: Ms. Nussbaum (partner) ($795), Mr. Radice (counsel) ($620/625), Ms. Schwaiger ($550/595) (associate); Ms. Finnimore ($190) (paralegal)); *In re Wellbutrin SR Antitrust Litig.*, 04-5525 (E.D. Pa. Stengel, J.),, Dkt. 413 (Nov. 21, 2011) ("Class Counsel's actual, current, reasonable hourly rates" approved in lodestar cross-check); Nussbaum Decl., Dkt. 410-4 (Oct. 11, 2011) (setting forth approved hourly rates similar to that proposed here); *In re Metoprolol Antitrust Litig.*, Case 06-cv-52-MPT, Dkt. 191 (Feb. 21, 2012) (D. Del. Thynge, J.) (hourly rates approved in lodestar cross-check); Nussbaum Decl., Dkt. 189-1 (Dec. 19, 2011) (setting forth approved hourly rates similar to that proposed here). For certain of the attorneys and firms associated for trial, see *Lonardo v. Travelers Indemnity Co.*, Case 1:06-cv-00962-KMO, Dkt. 194 (Mar. 31, 2010) (N.D. Ohio O'Malley, J.) at 41-42 (specifically approving same or similar hourly rates four Kaiser trial counsel, as follows: Charles Barrett, ($325); Don Barrett ($650); Lieff, Cabraser attorneys (including Elizabeth Cabraser) ($825-$395); Thomas P. Thrash ($500)) ("although the rates listed above are high compared to the average attorney, based on this Court's knowledge of attorneys' fees in complex civil litigation and multi-district litigation, the requested rates are reasonable for this case considering the experience and expertise these particular lawyers have in this particular area of law").

[20] Opp. Br. at 8 n.8.

against Kaiser's counsel.  Pfizer refused to disclose any information whatsoever.[21]  This is despite the fact that such information could have been helpful to the Court.[22]

While Kaiser is therefore unable to provide the Court with all the particulars of what Pfizer brought to the table in terms of litigating, trying, and appealing this case, there is some information Kaiser has been able to gather from the public sources.  Publicly available information confirms the following:

- Forbes reported in 2009 that "Skadden partners routinely charge $1,000 an hour, while associates . . . cost $250 to $500 an hour."[23]

- Mr. Cheffo, Pfizer's lead counsel, then of the Skadden firm, had a standard hourly rate of $895.00 per hour in 2009.[24]

- Trial counsel Raoul Kennedy, of Skadden's San Francisco, California office, had a billing rate of $1010.00 per hour in 2010.[25]

- On appeal, Pfizer brought in another high-profile national specialist, Kathleen M. Sullivan, of Quinn Emanuel in New York.[26]

As to her hourly rate, Ms. Sullivan just last week moved for $790,000 in fees relating solely to appellate representation of a nuclear power plant operator against the State of Vermont.[27]  In seeking fees, her client is requesting leave to submit evidence on the fee request and thus reveal Ms. Sullivan's hourly rate to Judge Murtha in the District of Vermont— information Pfizer is unwilling to furnish this Court.

---

[21] Correspondence reflecting Pfizer's refusal is filed herewith as Exhibit R to the Third Declaration of Linda Nussbaum in Support of Kaiser's Motion for Attorneys' Fees and Expenses, dated Nov. 7, 2013.

[22] *See, e.g.*, *United States ex rel. Liotine v. CDW-Government, Inc.*, No. 5-cv-00033-DRH-PMF, 2013 U.S. Dist. LEXIS 54882, at **5-6 (S.D. Ill. Apr. 15, 2013).

[23] *Id.  See also In re Radnor Corp.*, Case 06-10894-PJW, Dkt. 1989-4, at 9 (November 8, 2012) (reporting Mark S. Chehi's billing rate in 2012 to be $1,090.00 per hour).

[24] *See Padilla v. Manlapaz*, Case 1:07-cv-04866, *Memorandum of Law in Support of Plaintiff's Application for an Award of Attorneys' Fees and Costs and Prejudgment Interest*, Dkt. 72, at 16 (S.D.N.Y. Nov. 25, 2009).

[25] *See Minor v. Christies's, Inc.*, No. C 08-05445, No. C 09-00471 WHA, 2011 U.S. Dist. LEXIS 9219, at *38 (N.D. Cal. Jan. 28, 2011).

[26] Dkt. 11-1904.

[27] *See Entergy Nuclear Vermont Yankee, LLC et al., v. State of Vermont ex rel. Shumlin*, Case 1:11-cv-00099-JG, *Supplemental Memorandum of Law In Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Costs, and for Leave to File Evidence in Support*, Dkt. 229, at 10 (Oct. 31, 2013).

7

**D.** **Hourly rates on the District of Massachusetts bankruptcy docket and other public sources demonstrate that counsels' rates are reasonable**

Publicly available information from the bankruptcy docket confirms the rates that comparable Boston lawyers really command.  In high-stakes cases in the District of Massachusetts Bankruptcy Court, hourly rates more than twice what Pfizer claims are reasonable are regularly court-approved, and debtor-paid.  Filings by Boston's Mintz, Levin, for instance, reveal rates right in-line with what Kaiser proposes: $795 and $650 for partners of varying experience, $525 for counsel, $335 for associate time and $250 for paralegals.[28]  In another example from 2011, Palmer & Dodge (now Edwards Wildman) Boston partners' court-approved hourly rates were up to $765 per hour, counsel up to $555; associates up to $325; and paralegals up to $245.[29]  As reported by Westlaw in 2010, Boston's Brown Rudnick in another complex bankruptcy billed as high as $950 per hour for partners, and up to $665 per hour for associates in 2009.[30]  No Boston partner from any of the three firms in the report (Brown Rudnick, Weil Gotshal, and Foley Hoag) billed out at less than $610 per hour, with many billing in the $700s and $800s; the least expensive first year associate's hourly rate was $335.[31]

## III.   KAISER'S TIME IS REASONABLE, PARTICULARLY FOR THIS CASE

**A.** **Due to the fundamental differences between fee awards in RICO case and civil rights cases, Pfizer's request to deduct for what it designates as non-core time should be denied**

Mandatory fee shifting law is distinct from discretionary fee shifting law, such as under Section 1988.  The core/non-core distinction is inappropriate where, as here, fee-shifting is

---

[28] *See, e.g.,, In re Trans National Communications International, Inc.,* Case 11-19595 (D. Mass. Bankr.), *Second Interim Application for Compensation of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. for Allowance and Payment of Compensation and Reimbursement of Expenses,* Dkt. 754, at 11 (Aug. 14, 2012).
[29] *See, e.g., In re SW Boston Hotel Venture LLC,* Case 10-14535 (D. Mass Bankr.), *Final Application for Compensation and Reimbursement,* Dkt. 911-4 at 42 (January 5, 2012) (rates of partners Stephen Paul and Karl Fryzel).  *See also* Dkt. 891 at 40 (setting forth numerous rates, including hourly rates in 2010 for Boston of counsel up to $555; Boston associate up to $325; and Boston paralegal up to $245).
[30] *E.g., Westlaw CourtExpress Legal Billing Report* (May 2010), at 43-44.
[31] *Id.* at 99-100.

mandatory.[32]   Pfizer's core/non-core objection thus is not well-taken; Pfizer's request for deductions for ostensibly non-core work should be denied.  Even if it were appropriate here to employ, Pfizer has not demonstrated, as it must, "that a rigid demarcation between core and noncore work would be an accurate depiction of the efforts expended in this action."[33]   For instance, a great deal of what Pfizer designates "'noncore' work, such as telephone conversations, could [and did] require substantial legal thought and be consequential to the course of litigation."[34]   Objections to purported non-productive conferencing should be denied.

While perhaps appropriate in the discretionary civil rights context, the core/non-core distinction is not for calculating mandatory fees in RICO litigation.  In mandatory fees litigation, the "lodestar calculation will yield a presumptively correct result and . . . additional tinkering merely serves to double count some factors."[35]   In RICO, as with other mandatory fee-shifting statutes, like the False Claims Act, the "Court's lack of discretion here stands in contrast to other fee-authorizing provisions, such as the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. 1988(b), which states that the Court 'may allow' attorney's fees to the prevailing party 'in its discretion.'"[36]   Thus, it is improper, as Pfizer would have it, for the Court to "'tinker' with the lodestar calculation by separating core from non-core work."[37]

There is a balance to this, however.  In RICO, in further contrast to discretionary fee circumstances, "upward or downward adjustments of the lodestar fee based on the degree of

---

[32] *See Systems Mgmt., Inc. v. Loiselle*, 154 F. Supp. 2d 195, 209 & n.2 (D. Mass. 2001).

[33] *Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs.*, 642 F. Supp. 2d 58, 70 (D. Mass. 2009).

[34] *Id.*

[35] *Mogilevsky v. Bally Total Fitness Corp.*, 311 F. Supp. 2d 212, 217-18 (D. Mass. 2004) (rejecting core/non-core approach).

[36] *United States ex rel. Averback v. Pastor Med. Assocs. P.C.*, 224 F. Supp. 2d 342, 350 n.6 (D. Mass. 2002) (rejecting core/non-core approach in mandatory fee-shifting litigation under False Claims Act, 31 U.S.C. § 3730(d)(1)).  *Accord Davignon v. Clemmey*, 176 F. Supp. 2d 77, 98 (D. Mass. 2001) (rejecting core/non-core approach in mandatory fee-shifting litigation).

[37] *Averback*, 224 F. Supp. 2d at 350.  *See also Change the Climate, Inc. v. Mass. Bay Transp. Auth.*, No. 00-10973-REK, 2005 U.S. Dist. LEXIS 40681, at *8 (D. Mass. June 8, 2005) (rejecting core/non-core approach); *Rolland v. Cellucci*, 106 F. Supp. 2d 128, 143 (D. Mass. 2000) (rejecting core/non-core approach).

success . . . will likewise not be considered," as fees are mandatory under RICO.[38]  Thus, in adhering to this further distinction, Kaiser does not seek an upward adjustment, as to which it would otherwise be entitled, given its unqualified success in this case.  Quite the opposite, as explained in its moving brief, Kaiser seeks a lodestar based on historical rates, which actually results in a voluntary departure downward, up-front.

### B.    Kaiser should not be penalized for block billing

"Although defendant challenges plaintiff counsel's practice of 'block billing,' whereby attorneys itemize several tasks within a single time entry rather than maintaining separate time entries for each task performed, that method of billing is not unreasonable if the attorneys maintain contemporaneous records and provide sufficiently detailed explanations of those bills."[39]  For example, Pfizer would have the Court dismember and apply multiple objections with various discounts on the following time entries:

| Firm | Date | Attorney | Narrative | Hours Recorded | Minimum Number of Pfizer Objections | Pfizer's Proposed Reduced Hours | Pfizer's Proposed Reduction |
|------|------|----------|-----------|----------------|-------------------------------------|--------------------------------|-----------------------------|
| Hagens | 1/8/2010 | TMS | Trial preparation; numerous discussions with co-counsel regarding the same; work on Motions in Limine. | 4.8 | 5 | 2.29 | 52% |
| Kellogg | 5/16/2013 | SKA | Conference with Supreme Court clerk's office regarding Pfizer's stay application and to confirm that no response would be required; exchange e-mails with D. Frederick and A. Deibert concerning denial of the stay by Justice Breyer. | 0.5 | 5 | 0.22 | 56% |
| | | | | 5.3 | 10 | 2.51 | 53% |

The two above time entries are the subject of at least ten Pfizer objections and a 53% reduction in time credited if Pfizer's methods were followed.  Time entries such as those above should not

---

[38] *Averback*, 224 F. Supp. 2d at 350.  *Accord Burdett v. Miller*, 957 F.2d 1375, 1384 (7th Cir. Ill. 1992) (Posner, J.).
[39] *RFF Family Partnership v. Link Dev., LLC*, No. 11-10968-NMG, 2013 U.S. Dist. LEXIS 89673, at **6-7 (D. Mass. June 26, 2013).

be sliced and diced and subject to compounded objections as Pfizer proposes.  A recent RICO

fee opinion is instructive on this issue:

> Defendants also complain about so-called "block billing"- single time entries that cover a number of activities or activities relating to more than one defendant - but there is no prohibition of this as a basis for properly compensable time.  In a case this large and complex, in which attorneys are routinely performing multiple tasks on any given day, it is neither surprising nor inappropriate for them to aggregate their work into a single entry.  Indeed, in the Court's experience, this sort of timekeeping is the norm in the marketplace. The Court finds these entries appropriate and sufficient as a basis upon which to determine the overall compensable fees. The Court therefore overrules defendants' objections.[40]

Thus, cutting fees for block billing is not, as Pfizer suggests, mandatory, particularly in cases,

where, as here, the financial stakes are significant and where, as here, fees are  mandatory.[41]

### C.    Pfizer's requests to strike all UCL time and cut all time due to nociceptive pain results should be denied

Pfizer's challenges to Kaiser's fee application based on time spent on the UCL claim and

on nociceptive pain ignore well-established law in this Circuit and others holding that a

prevailing plaintiff is entitled to a fully compensatory fee where it achieves total or near-total

success on its claims, and that no discount is appropriate for unsuccessful claims that arise from

a common core of facts.  In its opening brief, Kaiser cited the First Circuit's holding, in *Coutin v.

Young & Rubicam, P.R.*,[42] that, "If a prevailing party is successful on all (or substantially all) of

her claims, and receives complete (or near-complete) relief, it goes without saying that

reasonable fees should be paid for time productively spent, *without any discount for limited*

---

[40] *Phoenix Bond & Indem. Co. v. Bridge*, Nos. 05-c-409, 07-c-1367, 2012 U.S. Dist. LEXIS 173721, at *28 (N.D. Ill. Dec. 7, 2012).

[41] In those cases where a deduction is imposed in the mandatory fees context, particularly RICO, only a relatively modest deduction of five or ten percent should be imposed, rather than the higher amounts sometimes deducted in the discretionary fees context. *In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 289 (D.D.C. 2009) (cutting fees by five percent in RICO case).  *See also Hermida v. Archstone*, No. 12083-WGY, 2013 U.S. Dist. LEXIS 84368, at **32-34 (D. Mass. June 14, 2013) (citing *Resnick v. Jeffrey S. Baker, P.C.*, 29 Mass. L. Rep. 527 (Mass. Super. Ct. 2012) (deducting 10% in Chapter 93A mandatory fees context for block billing)). Kaiser thus respectfully submits that if there is to be any reduction at all for block-billing, which there should not be, that it be no more than five percent of the lodestar attributable to block-billed entries, particularly since Kaiser conservatively seeks only compensation based upon historical rates.

[42] 124 F.3d 331 (1st Cir. 1997).

success."[43]  *Coutin* explicitly contrasted the "near-complete" relief that Kaiser achieved here, with a case where a plaintiff prevailed on only an "insubstantial subset of her interrelated claims and obtains only limited relief," for which the district court thus had the "discretion to shrink fees to reflect that inferior result."[44]  Pfizer's opposition thus is a (futile) attempt to shoehorn Kaiser's undeniable near-total success into a case where a plaintiff achieved limited success.[45]

Pfizer ignores the First Circuit's standard from *Coutin*, and ignores the leading case on RICO fee-shifting from this District, *Loiselle*, in which Judge Young held, "the Court will not feel obliged to parse out the unsuccessful claims or to reduce arbitrarily the overall award to reflect the results obtained" where the "unsuccessful claims are interconnected with the successful RICO claims."[46]  A claim is severable only where it "rest[s] on different facts and legal theories" from another claim,[47] rather than from a "common core" of facts.[48]  The work to which Pfizer objects—including related to Kaiser's successful UCL claim and for damages for fraudulent marketing for nociceptive pain—is not severable; RICO mandates it be compensated.

### 1. Kaiser's UCL claim arises from the same set of facts as its RICO claim

Pfizer mischaracterizes Kaiser's fee application as a request for fees for prevailing on the

---

[43] *Id.* at 337-39.
[44] *Id.*
[45] The authorities Pfizer relies on (and its decision to ignore cases such as *Loiselle*, where the plaintiff achieved substantial relief) reflect this effort, as all involve plaintiffs who prevailed as to only a fraction of their claims.  In *Kennedy v. Town of Billerica*, No. 04-12357-PBS, 2008 U.S. Dist. LEXIS 56751, at *7 (D. Mass. July 24, 2008) many of plaintiff's claims did not survive summary judgment, and the jury "rejected most of the claims" that did survive.  In *Prof'l Servs. Grp., Inc. v. Town of Rockland*, No. 04-1131-PBS, 2008 U.S. Dist. LEXIS 35592, at *4 (D. Mass. Apr. 30, 2008), the plaintiff pressed forward on "multiple claims, and lost all but one of them."  In *Culebras Enters. Corp. v. Rivera-Rios*, 846 F.2d 94, 102 (1st Cir. 1988), the plaintiff did not prevail as to damages at all.  *Atlantech Inc. v. Am. Panel Corp.*, No. 07-10342-DPW, 2013 U.S. Dist. LEXIS 30064, at *27 (D. Mass. Mar. 6, 2013), applied Georgia law.
[46] 154 F. Supp. 2d 195 (D. Mass. 2001).  *See also Davignon v. Clemmey*, 176 F. Supp. 2d 77, 95-96 (D. Mass. 2001) ("Accordingly, it does not matter that the Davignons and their children enjoyed spectacular success on more than just their civil rights claims. They received complete relief and thus are entitled to all reasonable attorneys' fees.");
[47] *See Coutin*, 124 F.3d at 339.
[48] HON. JED S. RAKOFF & HOWARD W. GOLDSTEIN, RICO: CIVIL AND CRIMINAL LAW AND STRATEGY § 4.04[1] (2010) (citing *Abell v. Potomac Insurance Co.*, 858 F.2d 1104 (5th Cir. 1988)).

UCL claim itself. Kaiser does not ask for fees *pursuant* to the UCL; instead, it ask for fees attributable to time spent on its UCL claim *pursuant* to RICO, because the same proof – adduced over years of discovery and at trial—established Pfizer's liability under RICO and the UCL. In cases where, as here, the plaintiff prevails on RICO and on other companion claims, courts award fees for the companion claims.[49] Moreover, the First Circuit has repeatedly held that a party may be compensated for time spent on unsuccessful claims if the unsuccessful claims "included 'a common core of facts' or were 'based on related legal theories' linking them to the successful claim."[50]

The case for fees is even more pronounced here: Kaiser *prevailed* on the UCL claim, and had no choice but to litigate that claim after trial, as Pfizer challenged both the Court's finding of liability as to the UCL and the jury's findings of liability as to RICO, and no appeal could be taken until proceedings relating to both claims were concluded. Pfizer does not—because it cannot—argue that the UCL claim is severable within the meaning of this Circuit's precedents. This Court relied on the trial record to make its findings on the RICO claim.[51]

### 2.    Pfizer's request for a 20% deduction based on nociceptive pain should be denied

Pfizer simply asserts that Kaiser's claim for fraudulent marketing of Neurontin for nociceptive pain is "unquestionably factually separable" because the jury and this Court separated it for liability purposes. This is not the standard. If it were, then the doctrine of

---

[49] *See Bingham v. Zolt*, 823 F. Supp. 1126, 1137 n.9 (S.D.N.Y. 1993) (awarding fees for entire litigation, including non-RICO claims, because they "involved a common nucleus of facts and were based on related legal theories"). *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, No. 90-c-2370, 1994 U.S. Dist. LEXIS 15757, at *2-3 (N.D. Ill. Oct. 31, 1994) (awarding fees where plaintiff prevailed on RICO and Illinois Consumer Fraud Act claims).
[50] *Lipsett v. Blanco*, 975 F.2d 934, 940 n.6 (1st Cir. 1992).
[51] *See generally In re Neurontin Mktg. & Sales Practices Litig.*, No. 04-cv-10739-PBS, 2011 U.S. Dist. LEXIS 99593 (D. Mass. Aug. 31, 2011). In a "heads I win, tails you lose" argument, Pfizer argues that work on "causation," which it concedes could apply to either claim, is not evidence of the claims' interrelatedness (an attorney working on "causation" potentially could not specify which claim that work went to), but is instead impermissible block-billing.

interrelatedness, which the First Circuit has reaffirmed on "numerous occasions," would be meaningless.[52]  All separately considered claims would be deemed unrelated, even if they arose from the same facts and were based on the same legal theories.  Pfizer does not dispute that the basis of this Court's finding of no liability as to nociceptive pain was in part that the evidence supporting Pfizer's fraud as to this indication was indistinct from evidence concerning pain generally, supporting a finding that time spent on nociceptive pain is not separable.[53]

By using an off-the-top 20.44% overall deduction of the hours recorded in every time entry to account for the verdict with respect to nociceptive pain, Pfizer impermissibly asks the Court to "reduce arbitrarily the overall award to reflect the results obtained."[54]  To the extent the Court deducts any portion of the request based solely on nociceptive pain, the Court should require Pfizer to specifically object to and account for associated deductions, just like Pfizer has shown it is willing and able to do with other objections.  Cutting counsel's hours on a percentage basis based on not obtaining an additional 20.44% of damages is wholly inconsistent with Pfizer's line-item approach to attacking Kaiser's motion, and calls into question the validity of Pfizer's entire methodology.[55]

### D.    Pfizer's novel "unsuccessful contentions" standard should be rejected

After arguing for a reduction in Kaiser's fees based on the damages sought in connection with the nociceptive pain claim, Pfizer then abandons that metric to argue that no fees should be awarded in connection with two unsuccessful motions to: (i) compel one deposition, and (ii)

---

[52] *Lipsett*, 975 F.3d at 940.

[53] Pfizer again tries to have it both ways, arguing for a reduction in the fee "[b]ecause Kaiser's billing records do not provide a basis to exclude work on nociceptive pain."  Opp. Br. at 11.  Pfizer's inability to separate out this work, despite the time it spent on line-item review of the billing records is evidence of the extent to which nociceptive pain work was tied to other work on this case.

[54] *Loiselle*, 154 F. Supp. 2d at 208.

[55] Even entries coded as "Legitimate Work" were subject to a 20.44% reduction in hours, regardless of whether the Legitimate Work entry described work pertaining to nociceptive pain or not.  Pfizer does not offer a "Legitimate Work" exhibit, making elusive the full effect of the nociceptive deduction.

obtain prejudgment interest.  The Court's denial of those motions did not reduce the damages Kaiser won, and so by Pfizer's proffered metrics elsewhere, no reduction in fees is appropriate. Pfizer's assertion that the denial of individual motions should affect a fee application is also contrary to the cases it cites, and that Kaiser cited, which refer to a district court's discretion to reduce a fee award for unsuccessful *claims*, not unsuccessful *motions*.[56]

### E.     Time spent in connection with settlement efforts is properly included

The time spent in connection with efforts to mediate and settle this case are part of the "fully compensatory fee" to which Kaiser is entitled.[57]  Pfizer does not argue that those hours were unrelated to the RICO claim, or that there are any other problems with the time documented in connection with settlement.  In *Coutin*, the First Circuit found that it was an abuse of discretion to reduce a fee award based on a plaintiff's rejection of an earlier settlement offer; the First Circuit wished to avoid "inordinate pressure on plaintiffs to accept low settlement offers" by adopting a rule that would allow a fee reduction based on rejection of such an offer.[58]  The same principle applies here.  Pfizer cites to no authority that supports its contention that it can pick and choose among the hours related to the prosecution of the RICO claim.  The inclusion of hours related to settlement efforts is what the First Circuit has called the natural downside of Pfizer's "hard-nosed approach to litigation."[59]

---

[56] *See, e.g.,* Opp. Br. at 11; *Coutin*, 124 F.3d at 337 (referring to success "on all (or substantially all) of her *claims*") (emphasis added).
[57] *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (addressing fee-shifting statutes).
[58] 124 F.3d at 341.
[59] *Lipsett*, 975 F.2d at 940.

### F.    Pfizer's other ill-considered objections should be rejected

#### 1.    Client relations

Pfizer's "client relations" objection should be rejected; "the notion of spending 'excessive time' with one's client is incoherent."[60]

#### 2.    Compensable staff

The time of research analysts and in-house experts, such as Dr. Palko Goldman of Greene LLP,[61] is compensable as is paralegal time, along with attorneys' fees.[62]   Pfizer's request to eliminate such time should be denied.

#### 3.    So-called unrelated work

Kaiser's case is part of a large MDL, and thus from time to time Kaiser counsel had the need to coordinate with class counsel or products counsel or others or become familiar with a factual or legal issue in one of the related cases.  This does not mean that the work performed was for another matter.  All such time is properly attributable to the Kaiser case.

## IV.   PFIZER'S OTHER VARIED REQUESTS TO CUT COUNSELS' TIME SHOULD BE DENIED

### A.    Pfizer's "Trial Work" objection is absurd

If any time should be immune from discount, it is the time counsel spent trying this case. Kaiser's counsels' hours were not "grossly excessive," "duplicative," or "inflated," as Pfizer contends; this was hard-fought victory in a complex high-stakes case.  Pfizer's faulting of Kaiser for billing for trial counsel who attended trial, but had no speaking role, misses the mark.  There

---

[60] *Tuli v. Brigham & Women's Hosp., Inc.*, Case No. 1:07-cv-12338-NG, 2009 U.S. Dist. LEXIS 129768, at *9 n.5 (D. Mass. June 8, 2009).

[61] *See* Greene Decl., Ex. W, at ¶ 2.

[62] *See, e.g.*, *Bank of Am., N.A. v. Viders*, No. 10-0025 (DRH), 2011 U.S. Dist. LEXIS 116796, at *8-13 (E.D.N.Y. July 26, 2011) (awarding fees for "research analysts" as with attorneys and paralegals); *In re Qwest Communs. Int'l, Inc. Sec's Litig.*, 625 F. Supp. 2d 1143, 1149 (D. Colo. 2009) ("lead counsel's documentation of time spent on this [securities] case includes time spent by paralegals [and] in-house accountants. . .  I conclude that, in this case, such costs properly may be considered along with time spent by attorneys as part of the first Johnson factor. Time spent by paralegals and other professionals frequently is billed to clients by the hour.  The assistance of such professionals is mandatory in a case like this case.").

was no casual observation; rather, lawyers and paralegals in the courtroom played a vital role in

the case and their presence in the Court was crucial to their continuing work out of Court, which

itself was crucial for those who did have speaking roles at trial.[63]

### B.   Pfizer's vagueness objection is overbroad and inappropriate in in a case such as this

Kaiser's counsel has submitted comprehensive time records; a line-by-line discounting of

each entry that might have been more descriptive in hindsight, is the wrong approach.   As

explained in the RICO context:

> For lawyers preparing for trial, for example, it is common and reasonable for
> them to record preparation time as just that - trial preparation - without further
> specificity. It would be entirely unreasonable to impose, at the risk of forfeiting a
> fee award, a standard that would require them to disaggregate such time into its
> components, for example, "reviewed document A," "reviewed document B,"
> "developed strategy for cross-examining witness X."  Trial preparation involves a
> variety of interrelated tasks that cannot be neatly subdivided for billing purposes.
> In the Court's experience, paying clients have no trouble understanding this.[64]

Pfizer's vagueness objection is hypercritical and improper in the context of a RICO trial.

### C.   Pfizer's request to deduct 33% of appellate counsels' time should be denied

Pfizer's suggested 33% deduction for appellate counsel is not well-taken.   It is

commonplace for separate appellate counsel to be retained in any matter, especially a high stakes

matter such as *Neurontin*.  Pfizer itself retained appellate specialist Kathleen Sullivan to argue its

appeal.   Kaiser should hardly be faulted for bringing in its own appellate counsel to defend

against Pfizer's appeal.[65]

---

[63] Pfizer's accusations against Ms. Johnson Parker have no place in this Court.  Her hours were as they were billed;
her work and her attendance at trial were crucial, as was that of others.   *See* Johnson-Parker Decl., Ex. Y, at ¶ 2;
Sobol Decl., Ex. X, at ¶ 5-7.

[64] *Phoenix Bond & Indem. Co. v. Bridge*, Nos. 05-c-409, 07-c-1367, 2012 U.S. Dist. LEXIS 173721, at **27-28
(N.D. Ill. Dec. 7, 2012).

[65] In addition to the 33% overall appellate deduction, Pfizer takes issue with 142 hours in its view billed for
assembling the record from the trial court, blaming trial counsel for failing to adequately preserve the trial record.
Whether billed by one firm or another, the bottom line is that given Pfizer's appeal, somebody had to do the work of
putting together the record, whether it be trial counsel or appellate counsel.

### D. Pfizer's non-contemporaneous objection should be disregarded

Pfizer's "non-contemporaneous" objection is based on speculation and conjecture. Pfizer can't tell whether certain entries were rounded up or down or rounded at all. And, given the demands of trial, it is likely that numerous entries do not reflect the full amount of work that Kaiser's counsel put into each workday.[66] In addition, Pfizer will be disappointed to learn that the bills for city tours and so forth inadvertently left on Mr. Barrett's hotel bill (now eliminated) were in fact charged by his wife, while Mr. Barrett in fact worked the long hours he reported.[67]

### E. Pfizer ECF objection is overblown

Kaiser's request that the Court strike all the time of the Shapiro and Dugan firms should be denied. First, Pfizer criticizes Mr. Shapiro and his firm for billing for reading and reviewing ECF notices. While such review is on the face of Mr. Shapiro's contemporaneously recorded timesheets, Mr. Shapiro's declaration—reflecting the actual amount Kaiser seeks—explains that such time was deducted proactively at lead counsel's request, prior to submission to the Court.[68] The Dugan firm's challenged entries are not for ECF review; rather they are for substantive review of court papers by counsel who was very involved in the case.[69]

### F. Pfizer's travel while working objection overreaches

Attorneys were instructed to delete time entries that reflected travel without working. Numerous line-items challenged in this regard by Pfizer do not, however, reflect travel-only time; yet, Pfizer asks they be stricken. That an attorney may have used a semi-colon rather than a conjunction to describe billing while working in transit, does not suggest the adverse inference

---

[66] In addition, while Pfizer takes issue with the different formats and billing conventions of Kaiser's counsel. Such differences should come as no surprise and are by no means objectionable. If anything, the different timekeeping systems, styles, and practices refute the accusation that time was kept non-contemporaneously.

[67] Barrett Decl., Ex. S, at ¶ 11.

[68] Shapiro Decl., Ex. G to Opening Brief, at ¶¶ 4-5 (Sept. 10, 2013) (revising bill downward from $98,533 to $55,242). Along with the use of historical as opposed to current rates, the fee request for this firm's work amount to half of what it otherwise would have been.

[69] Dugan Decl., Ex. Z, at ¶ 6.

Pfizer asks the Court to draw.  This is especially so in light of the declarations of counsel that it was their and their colleagues practice to work while in transit.[70]

## V.  PFIZER MUST REIMBURSE KAISER FOR EXPERT FEES INCURRED IN THIS CASE

Pfizer's request that it not pay for Kaiser's experts is contrary to law.  The case was very expert intensive, and expert testimony played a crucial role in proving Kaiser's case.  Pfizer must pay Kaiser's experts under RICO.  It's request to evade this duty should be rejected out of hand.  Where, as here,[71] expert testimony is reasonable necessary to proving the case, expert fees are reimbursed under RICO, as in other contexts; a discussion of this by the Seventh Circuit in the leading *Uniroyal* case is instructive:

> [Defendant] also contests the award of reimbursement for the expenses [Plaintiff] incurred in obtaining the testimony of its experts and expenses incurred in copying documents. We can dispose of each of these claims succinctly. RICO authorizes the trial court to award a successful plaintiff "the cost of the suit." 18 U.S.C. § 1964(c). Before the trial court, [Defendant] argued that [Plaintiff] had not adequately apportioned its expert witness fees to account for the claims in which the experts' testimonies were helpful and those claims in which it was not. Terming this argument "baseless," [the District Court] held that because the testimonies of [Plaintiff's] two experts were "reasonably necessary for [Plaintiff] to prove its case," their expenses were reimbursable. . . . Because we believe this analogy to be sound, we affirm the trial court's conclusion.[72]

Numerous cases (which Pfizer ignores) are in accord.[73]

---

[70] *See, e.g.*, Kilsheimer Decl., Ex. V, at ¶ 4; Small Decl., Ex. U, at ¶ 8.  To err on the side of conservatism, Kaiser hereby deducts from its fee request $129,172.50, corresponding to 42 billing entries, to account for arguably travel-only time.  (Ex. BB.)  The deduction, as with all others voluntarily taken, is reflected in the total amount requested in the proposed order filed herewith.  In addition, there was one inadvertently submitted block of time included in the bills of one law firm, which has now been remedied by that firm.  By the enclosed declaration of Mr. John (Don) Barrett, Ex. S, Kaiser reduces its request for fees by $156,975.00.  A portion of the fees originally submitted by Mr. Barrett were duplicative of fees submitted by his son, Mr. Charles Barrett.  Barrett Decl., Ex. S, at ¶ 2.

[71] As reflected in accompanying declarations, Kaiser submitted no duplicative bills for expert work.  *See* Kilsheimer Decl., Ex. Y, at ¶ 13; Sobol Decl., Ex. X, at ¶ 23.

[72] *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 526 (7th Cir. 1995) (cited in DAVID B. SMITH, CIVIL RICO ¶ 10.08 (2010)).

[73] *See, e.g., In re Ins. Brokerage Antitrust Litig.*, No. 04-cv-05184-CCC, 2013 U.S. Dist. LEXIS 108042, at **116-117 (D.N.J. Aug. 1, 2013) (awarding reimbursement of "fees for experts, costs associated with creating and maintaining electronic document databases, participating in mediation, travel and lodging expenses, and photocopying, mailing, telephone and deposition transcription costs"); *Phoenix Bond & Indem. Co. v. Bridge*, Nos. 05-c-409, 07-c-1367, 2012 U.S. Dist. LEXIS 173721, at *39 (N.D. Ill. Dec. 7, 2012) "Defendants challenge the fees charged by plaintiffs' experts . . . . The fees billed are indeed quite large, but the experts analyzed a very large

## VI.     THE OTHER EXPENSES KAISER CONTINUES TO REQUEST ARE REASONABLE

As now amended, Kaiser's other expenses should be reimbursed.  After pouring through the voluminous record submitted by Kaiser, Pfizer managed to pick out a few line-items unsuitable for reimbursement.  In main, however, what it calls egregious expenses and otherwise takes issue with, are a tempest in a teapot, often incorrect, and where correct, are now eliminated, as explained in the enclosed declarations.[74]   What Pfizer deems impermissible requests for overhead expenses are largely compensable.   Telephone and copying charges are basic reimbursable costs, to which Kaiser is entitled.[75]  The HVAC costs incurred by Hagens Berman are not a part of that firm's overhead.[76]   In addition, Hagans Berman has submitted backup for expenses inadvertently not included in the prior submission.[77]

## VII.    CONCLUSION

For the foregoing reasons and the reasons stated in its moving brief and supporting papers, Kaiser respectfully requests that the Court award it attorneys' fees and costs.

---

amount of data in order to derive their opinions and prepare for challenges by defendants both at deposition and at trial."); *Hertz Corp. v. Caulfield*, 796 F. Supp. 225, 230 (E.D. La. 1992) (awarding expert witness fees under RICO).

[74] By the enclosed declaration of Mr. Barrett, Ex. S, Kaiser withdraws its request for $865.08 in expenses, which should not have been submitted in the first place.  Barrett Decl., Ex. S, at ¶ 11.

[75] *See generally* DAVID B. SMITH, CIVIL RICO ¶ 10.08 (2010); *Uniroyal*, 63 F.3d at 526; *In re Ins. Brokerage Antitrust Litig.*, 2013 U.S. Dist. LEXIS 108042, at **116-117; *Associated Builders & Contractors, Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 380 (5th Cir. 1990).

[76] *See* Sobol Decl., Ex. X, at ¶ 12.

[77] *Id*. at 18-19.

Dated: November 7, 2013

Respectfully submitted.

By:/s/  *Linda P. Nussbaum*

Linda P. Nussbaum *(pro hac vice)*
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, NY 10017
Tel.  646-722-8500
Fax.  646-722-8501
lnussbaum@gelaw.com

*Attorney for Plaintiffs Kaiser Foundation*
*Health Plan, Inc. and Kaiser Foundation*
*Hospitals*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused the foregoing document filed under seal to be served

by electronic means and by U.S. Mail, postage pre-paid upon the following:

Mark S. Cheffo
Katherine Armstrong
Kathleen Sullivan
David S. Weinraub
QUINN EMANUEL URUQHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel. 212-849-7000
Fax. 212-849-7100
markcheffo@quinnemanuel.com
katherinearmstrong@quinnemanuel.com
kathleensullivan@quinnemanuel.com
davidweinraub@quinnemanuel.com

Dated: November 7, 2013

By:/s/  *Linda P. Nussbaum*
Linda P. Nussbaum *(pro hac vice)*
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, NY 10017
Tel.  646-722-8500
Fax.  646-722-8501
lnussbaum@gelaw.com

*Attorney for Plaintiffs Kaiser Foundation*
*Health Plan, Inc. and Kaiser Foundation*
*Hospitals*