# EXHIBIT V

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>*Kaiser Foundation Health Plan, Inc., et al. v. Pfizer, Inc., et al.* (1:04-cv-10739) | Chief Judge Patti B. Saris<br>Magistrate Judge Leo T. Sorokin |

### SUPPLEMENTAL DECLARATION OF RICHARD J. KILSHEIMER IN SUPPORT OF KAISER'S MOTION FOR ATTORNEY'S FEES AND COSTS

I, Richard J. Kilsheimer, declare, under penalty of perjury, that the following is true and correct:

1. I am an attorney-at-law and a partner of Kaplan Fox & Kilsheimer LLP ("KFK"). Previously I submitted a declaration dated September 11, 2013, with exhibits, in support of the motion of Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser") for an award of attorneys' fees and costs, specifically in connection with services rendered by KFK in the prosecution of this case by Kaiser ("Kaiser case"). I submit this supplemental declaration in further support of that motion in order to address statements made by Pfizer's counsel concerning my firm in its opposition to the motion for attorneys' fees and expenses. I am fully familiar with the facts set forth herein, and could and would testify to them under oath if called upon to do so.

2. Pfizer contends that there is a discrepancy of 8.75 hours between KFK's requested time as contained in Exhibit 1 to the Kilsheimer Affidavit (8,975.75 hours) and those listed in Exhibit 2 (8,984.50 hours). *See* Cheffo Decl. ¶11. I do not believe that there is

a discrepancy but, to be clear, KFK is seeking payment for the lesser of the two numbers as reflected in my prior declaration: 8,975.75 hours.

3. Pfizer contends that KFK has charged an extraordinary amount for "travel time." Indeed, Pfizer claims that "Ms. Nussbaum is the biggest offender in this regard...." *See* Pfizer Br. at p.18. Ms. Nussbaum, who handled this litigation, was a partner at KFK from February 2007 until May 2010.

4. We disagree with Pfizer's contention. KFK included "travel time" of certain individuals (*e.g.*, Linda Nussbaum, Elana Katcher, John Radice and Susan Schwaiger) because their practice was to work on the case while in transit. Indeed, based upon the purpose of the travel (*e.g.* to attend court conferences, take or defend depositions, meet with experts, etc.) working while traveling would have been the norm. Accordingly, to the extent that supposed "non-productive" travel time is not compensable, the travel time that KFK is seeking to recover fees for was "productive." In reviewing its time records prior to submitting to the Court, KFK already eliminated from its requested hours the travel time spent by individuals who were not engaged in tasks that would require them to be working while in transit. Thus for example, KFK eliminated travel time for individuals who travelled to and from document review assignments.

5. Pfizer complains about three meals charged by Louis Kessler (not "Louis Kaplan" as reflected on Pfizer's Exhibit Q), an associate at KFK, for meals in Nashville, Tennessee, in the amounts of $108.02, $206.86, and $116.28, as excessive meal charges. *See* Pfizer Exhibit Q under "Gratuitous Travel Expenses."

6. We disagree with Pfizer's contention. Louis Kessler was an associate who, among other things, was an experienced document reviewer for the firm. He spent weeks at the document depository in Nashville reviewing, analyzing, and coding documents produced in discovery, along with other reviewers from other firms. The reviewers had a practice of

2

going to meals together, and taking turns picking up the tab. I spoke to Mr. Kessler who assured me that in each of these instances he would have been picking up the tab for himself and for several other reviewers, and that on other occasions other reviewers picked up the tab for his meals, so that in the end, the expenses were roughly equalized. In short, if Mr. Kessler had only paid for his own meals during his time in Nashville, there would have been numerous additional occasions on which he would have been paying for his meal, rather than those meals being put on another reviewer's charges.

7. Pfizer contends that KFK has attempted to charge it for business class ticket for $2,930.40 for Linda Nussbaum for a round-trip flight from New York to Los Angeles on February 11 and February 12, 2010. *See* Exhibit Q and D-299. We disagree. This ticket was not used and in fact was refunded in full. *See* D-296. When calculating travel expenses, KFK netted out all credits, including this one. In short, this ticket is not included in KFK's travel expenses for it which it seeks reimbursement.

8. Pfizer also complains of a charge for a first class ticket in the amount of $936.40 for Linda Nussbaum for a flight on February 4, 2010. *See* Exhibit Q and D-299. (The cited document lists a charge for $935.40.) We disagree with Pfizer's contention. On the face of the document, it indicates that this ticket was "refunded." (D-299). Indeed the supporting documents show that there was a refund for this ticket in the amount of $890.40 (which did not include the $45.00 travel agent charge). *See* D-296. As stated above, all credits have been included in KFK's calculation. This ticket is not included in the amount for which KFK seeks reimbursement.

9. Pfizer complains of a charge for a first class ticket in the amount of $948.40 for Linda Nussbaum for a flight on January 7, 2010. *See* Exhibit Q and D-318. We disagree with this contention. The documentation indicates that this ticket, less the $45.00 travel

3

agency charge, was refunded. *See* D-317. As above, all credits have been netted against charges. Accordingly KFK is not seeking to be reimbursed for this ticket.

10. Pfizer complains about a charge for a first class ticket in the amount $993.40 for Linda Nussbaum for a flight on January 7, 2010. *See* Exhibit Q and D-319. We disagree with Pfizer's contention. Pfizer is confusing the documentation. There are two "flights" indicated in this document. The total net after credits applied was $993.40, which included two $45.00 travel agency charges. However, the documentation shows two credits of $451.70 each (totaling $903.40) shown on D-318. As above, all credits were applied in calculating travel expenses. KFK has not sought reimbursement for this ticket.

11. Pfizer complains about a charge for a first class ticket in the amount of $903.40 for Linda Nussbaum. *See* Exhibit Q and D-319. We disagree with Pfizer's contention. This is the same ticket as the $948.40 charge referred to above (less the $45.00 travel agency fee) which was refunded as described above.

12. Pfizer complains concerning a business class airfare in the amount of $1,264.40 for a round-trip ticket from New York to Los Angeles departing on January 11, and returning on January 12, 2010 for Linda Nussbaum. *See* Exhibit Q and D-320. We disagree with Pfizer's contention. The record indicates that this was a "discount business" ticket for a flight that left New York at 6:25 a.m. on January 11 and was scheduled to arrive back in New York at 12:45 a.m. on January 13 (having left Los Angeles at 4:30 p.m. on January 12). Given that round trip tickets on the Shuttle between New York and Boston cost more than $800.00, this was a very reasonable fare. Ms. Nussbaum flew to Los Angeles to prepare and attend the deposition of Dr. Wieder, who was a Kaiser doctor whom <u>Pfizer</u> listed as a potential trial witness. Pfizer demanded that Dr. Wieder appear for deposition prior to trial, which Kaiser opposed. The Court granted Pfizer's request to depose Dr. Wieder, thus

4

necessitating Ms. Nussbaum's trip to Los Angeles. Ultimately, Pfizer did not call Dr. Wieder as a witness at trial.

13. Last, Pfizer contends that Kaiser has tried to "double count" expert expenses claimed by KFK and the Plaintiffs' Steering Committee ("PSC"). *See* Pfizer Br. at 19. We disagree. KFK has sought reimbursement of $132,500 for contributions it made to the fund maintained by the PSC, for expert services rendered on behalf of Kaiser. It is my understanding that no part of this amount is included in the amount sought by the PSC for expert fees in its application. Thus, there is no overlap.

The foregoing statements are true and correct under penalty of perjury.

Dated: November 6, 2013

*[signature]*
Richard J. Kilsheimer

5