UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1629 CIVIL ACTION NO. 04-10981 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF CASE MANAGEMENT ORDER SUPERVISING SETTLEMENT DISCUSSION AND ESTABLISHING COMMON BENEFIT ACCOUNT** |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    THIS COURT SHOULD SUPERVISE EXISTING AND PROSPECTIVE
SETTLEMENT DISCUSSIONS ........................................................................... 2

III.    THIS COURT HAS THE EQUITABLE JURISDICTION, AND THE
INHERENT AND RULE-BASED AUTHORITY, TO ASSESS A
PERCENTAGE HOLD-BACK ON ALL RECOVERIES AND
ESTABLISH A COMMON BENEFIT ACCOUNT ............................................ 4

IV.    HOW THE COMMON BENEFIT SYSTEM WORKS:  "UP FRONT"
ASSESSMENTS AND "HOLD BACK" ORDERS............................................. 9

V.    THE COMMON BENEFIT DOCTRINE INCENTIVIZES
CONTINGENT EFFORTS AND EXPENDITURES TO CONSERVE
THE RESOURCES OF LITIGANTS.................................................................. 12

VI.    THE REQUESTED 30% HOLD-BACK IS APPROPRIATE GIVEN THE
PARTICULAR CIRCUMSTANCES OF THIS LITIGATION ......................... 14

VII.    CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Battle v. Liberty Nat'l Life Ins. Co.*,
877 F.2d 877 (11th Cir. 1989) ............................................................................ 9

*Bennett v. Roark Capital Group, Inc.*,
2011 WL 1703447 (D. Me. May 4, 2011) ........................................................ 11

*Blum v. Stenson*,
465 U.S. 886 (1984) ........................................................................................ 17

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................ 6, 8, 17

*Central R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885) ................................................................................ 6, 7, 13

*Government Employees Hospital Association v. Serono International*,
246 F.R.D. 93 (D. Mass. 2007) ................................................................ 11, 12, 18

*In re Air Disaster at Florida Everglades on December 29, 1972*,
549 F.2d 1006 (5th Cir. 1977) ................................................................... passim

*In re Avandia Mktg., Sales Practices & Prods. Liability Litig.* (MDL No. 1871),
2012 U.S. Dist. LEXIS 180561 (E.D. Pa. 2012) .................................................. 15

*In re Baldwin-United Corp.*,
770 F.2d 328 (2d Cir. 1985) ............................................................................. 9

*In re Cabletron Sys. Securities Litig.*,
239 F.R.D. 30 (D.N.H. 2006) ......................................................................... 11

*In re Corrugated Container Antitrust Litig.*,
659 F.2d 1332 (5th Cir. 1981) ......................................................................... 9

*In re Diet Drugs Prod. Liab. Litig.*,
582 F.3d 524 (3d Cir. 2009) ..................................................................... 10, 15

*In re Diet Drugs Prods. Liab. Litig.*,
369 F.3d 293 (3d Cir. 2004) ............................................................................. 8

*In re Diet Drugs*,
282 F.3d 220 (3d Cir. 2002) ............................................................................. 8

*In re FTC Line of Business Report Litig.*,
626 F.2d 1022 (D.C. Cir. 1980) ........................................................................ 7

*In re Guidant Corp. Implantable Defibrillators Products Liability Litigation* (MDL No. 1708),
2008 WL 682174 (D. Minn. 2008) ........................................................... 3, 14, 15

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Linerboard Antitrust Litig.*,
333 F. Supp. 2d 343 (E.D. Pa. 2004) ................................................................. 13

*In re Linerboard Antitrust Litigation* (MDL No. 1261),
292 F. Supp. 2d 644 (E.D. Pa 2003) ................................................. 12, 13, 15, 18

*In re Lupron Marketing & Sales Practices Litig.*,
2005 WL 2006833 (D. Mass. 2005) .................................................................. 11

*In re MGM Grand Hotel Fire Litig.* (MDL No. 453),
660 F.Supp. 522 (D. Nev. 1982)............................................................... 7, 10, 13

*In re Pharm. Indus. Average Wholesale Price Litigation* (MDL No. 1456),
2008 U.S. Dist. LEXIS 111818 (D. Mass. 2008) ................................................ 17

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011) ................................................................... 11

*In re Relafan Antitrust Litig*,
231 F.R.D. 52 (D. Mass. 2005)........................................................................ 11

*In re San Juan DuPont Plaza Hotel Fire Litig.* (MDL No. 721),
111 F.3d 220 (1st Cir. 1997)........................................................................ 7, 13

*In re Vioxx Products Liability Litigation* (MDL No. 1657*)*,
650 F. Supp. 2d 549 (E.D. La. 2009) ....................................................... 3, 14, 15

*In re Zyprexa Products Liability Litigation*,
424 F. Supp. 2d 488 (E.D.N.Y. 2006) ................................................................. 3

*In re: Nineteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litigation*,
982 F.2d 603 (1st Cir. 1992)............................................................................ 17

*In re: Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litigation*,
56 F.3d 295 (1st Cir. 1995)............................................................................ 17

*LaTorraca v. Centennial Technologies, Inc.*
834 F. Supp. 2d 25 (D. Mass. 2011) ................................................................. 11

*Mulligan Law Firm v. Zyprexa MDL Plaintiffs' Steering Committee*,
594 F.3d 113 (2d Cir. 2010) .............................................................................. 6

*Nilsen v. York County*,
400 F. Supp. 2d 266 (D. Me. 2005) ................................................................... 11

*Skelton v. General Motors Corp.*,
860 F.2d 250 (7th Cir. 1988) ............................................................................. 7

*Smiley v. Sincoff*,
958 F.2d 498 (2d Cir. 1992) .............................................................................. 7

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Sprague v. Ticonic National Bank,*
   307 U.S. 161 (1939) ........................................................................... 6, 7, 13

*Trombley v. Bank of America, Corp.,*
   2013 WL 5153503 (D.R.I. 2013 Sept. 12, 2013) ................................... 11

*Trustees v. Greenough,*
   105 U.S. 527 (1881) ......................................................................... passim

*Turner v. Murphy Oil USA, Inc.,*
   422 F. Supp. 2d 676 (E.D. La. 2006) ..................................................... 10

*Walitalo v. Iacocca,*
   968 F.2d 741 (8th Cir. 1992) .................................................................... 7

*Walsh v. Popular, Inc.,*
   839 F. Supp. 2d 476 (D.P.R. 2012) ........................................................ 11

**STATUTES**

All-Writs Act,
   28 U.S.C. § 1651 ...................................................................................... 9

**RULES**

Fed. R. Civ. P.
   23(d) ......................................................................................................... 2
   23(g) ......................................................................................................... 2
   23(h) ..................................................................................................... 2, 6

**TREATISES**

*Manual for Complex Litigation (Fourth)* (Federal Judicial Center 2004)
   § 10.223 .................................................................................................. 13
   § 14.215 .................................................................................................. 13
   §§ 14.22-14.232 ..................................................................................... 13
   § 20.312 .................................................................................................... 2
   § 21 ........................................................................................................... 2
   § 21.12 ...................................................................................................... 2
   § 22.62 ................................................................................................... 1, 4

**OTHER AUTHORITIES**

Alan Hirsch and Diane Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation*
   (Federal Judicial Center 1994) ................................................................ 8

*Black's Law Dictionary* (7th Ed.) ................................................................ 8

# TABLE OF AUTHORITIES
## (continued)

Page

*In re: State of Louisiana, Petitioner*, No. 11-30178, Order Denying Petition for Writ of
  Mandamus to the United States District Court for the Eastern District of Louisiana, U.S.D.C.
  No. 2:10-MD-2179, issued April 11, 2011 ............................................................................... 5

Mary Frances Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees § 2.03* ......................... 8

William B. Rubinstein "On What A 'Common Benefit Fee' Is, Is Not, and Should Be," Class
  Action Attorney Fee Digest (March 2009) ............................................................................... 15

I.       **INTRODUCTION**

In its December 16, 2004 Corrected Case Management Order, this Court appointed

Plaintiffs' Liaison Counsel and a Plaintiffs' Steering Committee ("PSC").  These counsel

(collectively, "class counsel") have spearheaded the litigation for the common benefit of all

plaintiffs (and would-be plaintiffs) in these and other proceedings alleging economic claims

against Pfizer stemming from Pfizer's improper marketing of the drug Neurontin.  Class counsel

have spent nine years zealously litigating claims on behalf of third party payers and consumers;

their efforts have included comprehensive pretrial documentary discovery; creating a document

repository; deposing fact and expert witnesses; retaining and cultivating expert witnesses

(addressing five different indications, as well as causation and damages); litigating appeals from

both summary judgment and class certification decisions to the First Circuit; and trying a single

payer's civil RICO claim, which culminated in a $142 million jury verdict that may or may not

have preclusive effect on all other similar economic claims. Virtually all of this work was done

on a contingent basis, with class counsel advancing the substantial expenses necessary to conduct

the litigation.

Any purported class member – whether it has filed its own individual cases or not[1] – that

ultimately reaches a settlement with Pfizer will have benefitted from the nine years of sustained

and intensive work that class counsel have put into this litigation.

Under the *Manual for Complex Litigation (Fourth)* (Federal Judicial Center 2004)

("*MCL 4th*") § 22.62, and the venerable "common benefit" doctrine promulgated by the Supreme

Court over 130 years ago, class counsel are entitled to seek and obtain reimbursement and

compensation for these common benefit expenses and services out of every recovery by the

MDL No. 1629 plaintiffs (including the members of the proposed Plaintiff class as defined in the

Master Complaint and pending class certification motion); this Court has the jurisdiction to so

---

[1] Individual plaintiffs who have filed such cases include, among others, the Guardian Life
Insurance Company of America, Aetna, Inc., Assurant Health, Inc., Blue Cross Blue Shield of
Alabama, and Travelers Indemnity Company.

order; and the litigation is at an appropriate juncture to secure such common benefit remuneration through the establishment of a court-supervised common benefit account.  The leading case establishing the propriety of this practice, in the MDL context, under the common benefit doctrine, *In re Air Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006 (5th Cir. 1977), has been followed in the federal courts nationwide for over 35 years, including the First Circuit.

The common benefit account sought here, generated by a 30% assessment on all plaintiffs' recoveries for economic claims, is a common feature of contemporary MDLs, and is familiar to litigants in a wide array of mass tort, consumer and marketing multi-district cases.[2] Class counsel respectfully request that the Court order such an account be created here.

## II.  THIS COURT SHOULD SUPERVISE EXISTING AND PROSPECTIVE SETTLEMENT DISCUSSIONS

These MDL No. 1629 proceedings require and should receive active judicial case management, including the supervision of settlement activities and the enforcement of the common benefit system, not merely because they are an MDL, but also because of their active prosecution through the class action mechanism.  Fed. R. Civ. P. 23(d) vests this court with the authority to guard the integrity of cases brought as class actions, at all times in the litigation, including at the pre-certification stage, by making necessary and appropriate orders to protect the procedural interests of all members of the class.[3]  Fed. R. Civ. P. 23(e) requires court approval of class action settlements themselves, and Fed. R. Civ. P. 23(g) and (h) ) guide the appointment and compensation of class counsel.

---

[2] "MDL judges generally issue orders directing that defendants who settle MDL-related cases contribute a fixed percentage of the settlement to a general fund to pay national counsel." *Manual for Complex Litigation*, § 20.312 & n.701, at 233 (citing cases).

[3] Rule 23(d), allows courts to issue orders "to protect class members and fairly conduct the action" and "impose conditions on represented parties."  The *Manual for Complex Litigation* explains that "[t]he court must protect the interests of absent class members, and Rule 23(d) gives the judge broad administrative power to do so, reflecting the equity origins of class action" which includes the ability to "regulate communications with potential class members, even before certification."  § 21, at p. 244 and § 21.12, at p. 247.

It is unknown at this time whether and when a class settlement will be presented to this court; or, indeed, what form (class, mass, or individual) any settlements with members of the proposed class may take. Regardless of form or extent, such activity should not take place outside the knowledge and supervision of this Court. Indeed, early in this litigation, in Part III ("Settlement Discussions") of its <u>Case Management Order No. 3</u> (March 18, 2005), this Court provided:

> To protect the integrity of the MDL process, counsel for the parties shall notify the Court in writing of any attempts to settle or release any of the claims before this Court in another jurisdiction upon the commencement of such discussions. Failure to do so may result in injunctive relief, contempt sanctions, and refusal to give any judgment preclusive effect.

Although this Court has not (yet) decided whether to certify a litigation class, other MDL transferee courts, in a wide array of non-class pharmaceutical-related MDLs comprising wrongful death, personal injury claims, and/or TPP claims, have directly supervised both the settlement approval and administration process, and the common benefit/fee award process. These courts recognize the close functional relationship between formal Rule 23 class actions and multidistrict proceedings, and aptly characterizing the latter, for purposes of court supervision, authority, and control over settlements and attorneys for, as "quasi-class actions." *See, e.g.*, *In re Vioxx Products Liability Litigation* (MDL No. 1657), 650 F. Supp. 2d 549, 553-554 (E.D. La. 2009); *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation* (MDL No. 1708*)*, 2008 WL 682174, at *18 (D. Minn. Mar. 7, 2008) (relying on the quasi-class action nature of an MDL proceeding and the court's equitable authority to implement a reasonable cap on contingent fees); *In re Zyprexa Products Liability Litigation*, 424 F. Supp. 2d 488, 491 (E.D.N.Y. 2006) (exercising the court's inherent power to "impose . . . fiduciary standards to ensure fair treatment to all parties and counsel regarding fees and expenses.").

Thus, two lines of authority—the best practices in contemporary MDLs, and the unique authority and obligation to supervise and ensure the integrity of actions brought as class actions for the protection of class members—together with this Court's own prior Case Management

Orders, all converge to support the entry of the accompanying [Proposed] <u>Order Supervising Settlement Discussions and Establishing Common Benefit Account</u>.  As this Memorandum demonstrates, there is ample authority, in the Rules, the case law, and the *Manual for Complex Litigation*, for such an order, and it is appropriate and necessary to enter one at this juncture.

## III.  THIS COURT HAS THE EQUITABLE JURISDICTION, AND THE INHERENT AND RULE-BASED AUTHORITY, TO ASSESS A PERCENTAGE HOLD-BACK ON ALL RECOVERIES AND ESTABLISH A COMMON BENEFIT ACCOUNT

The courts appointed to serve as MDL transferee courts are vested with broad discretion and authority to coordinate and supervise the complex multidistrict litigation that is centralized under their stewardship.  To manage such complex litigation, the Transferee Court may appoint Liaison Counsel and Plaintiffs' Steering Committees to coordinate and conduct investigation, discovery, and other pretrial preparation and trial work.  *See Manual for Complex Litigation (Fourth)*, § 22.62.[4]  Moreover, the "necessary corollary to court appointment of [such] counsel . . . is the power to assure that these attorneys receive reasonable compensation for their work."  *Id.* As the Fifth Circuit explained in *Florida Everglades*,

> [I]f lead counsel are to be an effective tool, the court must have means at its disposal to order appropriate compensation for them.  The court's power is illusory if it is dependent upon lead counsel's performing the duties desired of them for no additional compensation.

*Florida Everglades*, 549 F.2d at 1016.

The Fifth Circuit recently reaffirmed the principles and mechanisms it endorsed in *Florida Everglades*, stating:

---

[4] The tasks the undersigned counsel have completed over the past nine years for which the MCL 4th prescribes appointment of common benefit counsel:

> Lead counsel and committees of counsel for the plaintiffs in mass tort litigation perform a host of functions.  They develop proof of liability and anticipate defenses; gather the expertise necessary to prove causation and other elements of plaintiffs' cases; trace patters of exposure; manage discovery; coordinate the various filings; and communicate with counsel for plaintiffs, counsel for defendants, and the court.

*MCL 4th*, § 22.62, at 406.

> We have long held that a district court has the inherent authority and discretion to consolidate and manage complex litigation, particularly when serving as the transferee court in a multidistrict proceeding.  *See [Florida Everglades*, 549 F.2d at 1012-16] …. This discretion is firmly grounded in the Federal Rules of Civil Procedure, particularly Rules 16, 26, 37, 42, and 83, which contain numerous grants of authority that supplement a district court's inherent power to manage litigation.  Indeed, Rule 16(c) expressly authorizes district courts to adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems."  Fed. R. Civ. P. 16(c)(2)(L).[5]

Common benefit or "hold back" orders thus reflect a basic equitable principle:  a party whose efforts benefit other parties should receive reasonable compensation for those benefits conferred, the burden should be shared among all beneficiaries, and the burden should be proportional to the benefit.

The common benefit doctrine predates the MDL system.  The Supreme Court has repeatedly held that a party who expended resources to secure a common benefit should be compensated by all those who have benefited.  The Supreme Court first articulated this common benefit doctrine over 130 years ago, long before the advent of modern class action or multidistrict litigation, in the landmark decision of *Trustees v. Greenough*, 105 U.S. 527 (1881).

The doctrine articulated in *Trustees v. Greenough* ensures that litigants and counsel whose efforts and expenditures have recovered, preserved, or enhanced recoveries for the benefit of others are ratably reimbursed and compensated by the beneficiaries of their efforts by recognizing the equity jurisdiction of federal district courts to do so.  In traditional terms, this is an elementary matter of equitably apportioning the costs of a benefit conferred to avoid unjust enrichment.  A long line of Supreme Court authority reaffirms that it is unjust enrichment and contrary to public policy for claimants who benefit from others' work in a litigation, to do so without contributing to the cost of the efforts that produced the benefit.  This authority therefore recognizes a right to recover payment from them and the jurisdiction of federal courts to provide

---

[5] *In re: State of Louisiana, Petitioner*, No. 11-30178, Order Denying Petition for Writ of Mandamus to the United States District Court for the Eastern District of Louisiana, U.S.D.C. No. 2:10-MD-2179, issued April 11, 2011.

for and enforce such payment.  *See Trustees*, *supra*; *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 166 (1939).  The common benefit doctrine "reflects the traditional practice in courts of equity" and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

While the common benefit doctrine is applied frequently, but not exclusively, in class actions, and shares some principles and concepts with the class counsel fee procedures under Fed. R. Civ. P. 23(h), it was developed by the Supreme Court prior to and independent of the class action procedure, and applies to all substantive and procedural litigation contexts.  *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166 (1939).  "That the party in a situation like the present neither purported to sue for a class nor formally established by litigation a fund available to the class, does not seem to be a differentiating factor so far as it affects the source of the recognized power of equity to grant reimbursements of the kind for which the petitioner in this case appealed to the Chancellor's discretion."  *Id.*  Rather, the power to withhold, collect and spread costs through a common benefit mechanism is "part of the original authority of the Chancellor to do equity in a particular situation."  307 U.S. at 166.  The doctrine rests broadly on the principle that "to allow others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich others unjustly at the plaintiff's expense." *Pettus*, 113 U.S. at 116; s*ee also Mulligan Law Firm v. Zyprexa MDL Plaintiffs' Steering Committee*, 594 F.3d 113, 119 (2d Cir. 2010) (petition for writ of mandamus from MDL common benefit order denied).

The venerable equitable common benefit doctrine reflects the inherent authority of *every* federal district judge to do equity in a wide variety of procedural circumstances, and it has become a staple of effective case management in modern complex litigation, especially contemporary multidistrict ("MDL") litigation.  The Fifth Circuit led the way in its early appellate affirmation of a transferee court's common benefit order in *Florida Everglades*, a non-

class mass disaster MDL. *Florida Everglades* followed the Supreme Court's *Trustees*, *Sprague*, and *Pettus* common benefit decisions to hold that proper management of multidistrict litigation requires the entry of what have since become known as "common benefit," "assessment" or "hold back" orders. *Florida Everglades* gave practical implementation to court-appointed lead/liaison counsel and Plaintiffs' Steering Committee structures by holding that because "lead counsel's services are in part for all parties with like interests and their lawyers," a multidistrict litigation transferee court is obligated to compensate counsel who developed and prosecuted a case from the recovery of others who reaped the benefit of that work and followed on its coattails. *Id.* at 1017 (emphasis added). The doctrine has since been adapted in federal courts across the nation, and the First Circuit employed it in the series of appeals arising from the *DuPont Plaza Hotel Fire* MDL, as described below.

Thus, under the common benefit doctrine, multidistrict transferee courts are empowered to require that fees be equitably shared in complex civil litigation. *See, e.g.*, *Florida Everglades*, 549 F.2d at 1016 ("We hold that the district court had the power to direct that the Committee and its counsel be compensated and that requiring the payment come from other [non-member] attorneys was permissible."); *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) ("District courts have exercised this power to establish fee structures designed to compensate committee members for their work on behalf of all plaintiffs involved in consolidated litigation."); *Walitalo v. Iacocca*, 968 F.2d 741, 747 (8th Cir. 1992) ("It is well established that courts can impose liability for court-appointed counsel's fees on all plaintiffs benefiting from their services"); *In re San Juan DuPont Plaza Hotel Fire Litig.* (MDL No. 721), 111 F.3d 220, 223-25 (1st Cir. 1997); *In re MGM Grand Hotel Fire Litig.* (MDL No. 453), 660 F. Supp. 522 (D. Nev. 1982); *In re FTC Line of Business Report Litig.*, 626 F.2d 1022, 1027 (D.C. Cir. 1980). Underlying these and other decisions, in a wide variety of class action, MDL, consolidated, and other complex litigation contexts, is "the equitable notion that those who have benefited from litigation should share its costs." *Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988) (citation omitted).

As *Greenough* noted, the fund from which common benefit fees and costs are to be paid

must be "subject to the control of the court."  105 U.S. at 536.  In *Boeing v. Van Gemert*,

444 U.S. 472, 478 (1980), the Supreme Court explained that this means the court must have

"[j]urisdiction over the fund involved in the litigation."  This criterion is satisfied by jurisdiction

over a party that controls the fund, usually the defendant.[6]  In the MDL context, transferee courts

create this fund through orders directing defendants to "hold back" a specified percentage from

settlements that release claims asserted in the MDL.  The account into which these held back

funds are deposited becomes the source of common benefit fees and costs awards that are made,[7]

at the close of the proceedings, pursuant to duly-noticed motion and a court approval process.

Any unawarded funds are returned to the beneficiaries.

The comprehensive case management jurisdiction of a district court over complex

litigation, MDL proceedings, or class actions has been recognized as *in rem*[8] jurisdiction, with

the common fund, settlement fund, or the litigation or the complex litigation itself as the

foundational *res*.  In the proper exercise of this *in rem* jurisdiction, the district court may regulate

and enjoin the conduct of those appearing before it, and others, in order to prevent interference

with its administration of the litigation, to enjoin conflicting or competing state proceedings, and

to protect, preserve, approve, and apportion judgments or settlements.[9]  *See In re Baldwin-United*

---

[6] Alan Hirsch and Diane Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation*, at p. 59 (Federal Judicial Center 1994); Mary Frances Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees § 2.03*, at 2-27 to 2-34.1 (discussing various ways in which a court may exercise control of the fund).

[7] The common benefit account can be held by the Clerk of the Court or, as is typical, can be established by Lead or Liaison Counsel.

[8] According to *Black's Law Dictionary* (7th Ed.), *in rem* [Latin for "against a thing"] is jurisdiction "involving or determining the status of the thing, and therefore the rights of persons generally with respect to that thing."  Accordingly,

> An action *in rem* is one in which the judgment of the court determines the title to property, and the rights of the parties, not merely as between themselves, but also as against all persons at any time dealing with them or with the property upon which the court had adjudicated.  R.H. Graveson, *Conflicts of Laws*, 98 (7th. ed. 1974).

[9] *In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 306 (3d Cir. 2004); *In re Diet Drugs,* 282 F.3d 220, 235 n.12 (3d Cir. 2002); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 882

*Corp.*, 770 F.2d 328, 330 (2d Cir. 1985) (upholding district court's authority, under the All-Writs

Act, 28 U.S.C. § 1651, to enjoin states' Attorneys General from bringing actions that would

affect the rights of any plaintiff or class members, whose claims, in the form of putative class

actions, were before the district court and analogizing the MDL court's jurisdiction to "that of a

court in an *in rem* action or in a school desegregation case, where it is intolerable to have

conflicting orders from different courts.").[10]

## IV.   HOW THE COMMON BENEFIT SYSTEM WORKS:  "UP FRONT" ASSESSMENTS AND "HOLD BACK" ORDERS

      The most powerful feature of the common benefit doctrine as it has been adapted to

contemporary mass tort MDL case management is the mechanism that enables MDL courts to

exercise their jurisdiction over the named parties (including defendants) and their counsel to

compensate and reimburse costs incurred and labor expended by class counsel for the common

benefit.  This is accomplished by ordering the Defendants, who are properly before the court and

over whom it has jurisdiction, to "hold back" a percentage of the funds they (or an amount

equivalent to such percentage, as is requested here) pay to claimants to settle MDL-related

claims.  The fund accumulated by deposits of this "hold back" into a Court-supervised account is

then available to compensate (after court scrutiny and approval) common benefit attorneys

whose work has protected or enhanced the value of such claims, such as through the

development of the law and facts common to all claims, or through the development of

structures, mechanisms, or systems that facilitate or expedite the settlements themselves.  This

"hold back" frequently neither diminishes the plaintiffs' recovery, nor increases their attorneys'

---

(11th Cir. 1989); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334-35 (5th Cir. 1981).

[10] As the decision notes, "an important feature of the All-Writs Act is its granted authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction."  *Id.* at 341.  Thus, states as parties to an MDL proceeding, or as plaintiffs in actions seeking to affect the rights of such parties, are subject to the district court's jurisdiction, including its *in rem* jurisdiction to supervise and administer complex proceedings, and to create and preserve common funds, to the same extent as other parties.

fees:  it may, depending upon the circumstances, be assessed potentially or entirely against the defendants, or against the attorneys' portion of any recovery.

The amount and value of the benefit conferred is not determined by either the beneficiary or the benefactor, since each might view benefit with a different eye.  The "hold back" itself thus does not guarantee that any specific amount of common benefit will be paid, it does not relieve common benefit applicants of the burden of demonstrating that their time, effort, and expense in fact produced the benefit, nor does it shift this burden from the applicants to anyone else.  Funds available through a hold back mechanism to pay qualified applicants are not immediately awarded.  The Court, as the most knowledgeable and neutral assessor of value, must decide how much to award, and to whom.  Any balance not awarded is redistributed to the beneficiaries.  This failsafe feature of the hold back mechanism ensures that no claimant ever pays, directly or indirectly, more than the value of the services rendered.[11]

Typically, Liaison Counsel and the members of the Court-designated PSC contribute "up front" cash assessments to fund the common benefit work.  Here, PSC members have already contributed to a working fund to pay for the work of document discovery and analysis, the conduct of depositions, fact investigation, the retention and preparation of experts, and other activities which, in turn, will produce a tangible and valuable benefit for all plaintiffs.  Without a hold back order in place, the PSC will have expended many millions of dollars in upfront assessments to fund the necessary work for the common benefit of all plaintiffs which this Court

---

[11] For example, in the *Diet Drugs* MDL, the initial common benefit assessment was 9%, a typical assessment of that era.  After it became clear there were sufficient funds available to compensate the common benefit lawyers, the court reduced this amount to 6%.  *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 554 (3d Cir. 2009).  *See also Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676 (E.D. La. 2006) (approving 10% assessment for common benefit attorney's fees, and 2% assessment for common benefit costs, on individuals who opted out and retained counsel for purposes of filing lawsuits or settling claims); *In re MGM Grand Hotel Fire Litig.* (MDL No. 453), 660 F. Supp. 522 (D. Nev. 1987) (adjusting assessment percentage upward to 7%).  Common benefit orders typically provide that, to the extent the Fund ultimately exceeds the amount needed to make payments as provided in the Proposed Order, the Court may order a refund, on a *pro rata* basis, to those who contributed to the Fund.

has designated and directed them to undertake, without any system for equitable reimbursement. In addition to the ongoing advancement of "up front" cost assessments to pay for document analysis, depositions,[12] investigations, expert witnesses, and other major expenses of this litigation, the PSC devotes its time, again on a contingent basis, in keeping and submitting its time records, while awaiting the "if" and "when" of an ultimate recovery for compensation of this common benefit time. All together, the PSC has already contributed over $20 million in expenses and lodestar attorney time.

This Court has applied the equities of the common fund doctrine to circumstances far closer to that of the instant case. In *Government Employees Hospital Association v. Serono International*, 246 F.R.D. 93 (D. Mass. 2007), a class settlement was reduced by the phenomenon of individual settling health plans, a situation similar to what may be developing here. Class counsel sought 25% of the amount to be paid to the class (after payments to the individual plans), the benchmark percentage for class counsel fees.[13] This Court did not approve

---

[12] The staffing of depositions is one stark example of the massive investment of resources on the part of the PSC, especially when compared to the efforts of counsel for individual, non-class plaintiffs who now stand to benefit from the PSC's labor. The PSC attended 112 depositions of fact witnesses, while of the three firms in this MDL currently representing individual plaintiffs, one firm attended 45 depositions, a second attended 12 and a third only attended nine. The PSC attended each of the 25 days of expert testimony; one non-class law firm attended nine days and the other two did not attend any expert depositions. *See* Exhibit A, Declaration of Michael Tabb in Support of Motion for Entry of Case Management Order Supervising Settlement Discussion and Establishing Common Benefit Account.

[13] A number of decisions within the First Circuit establish a normative or benchmark range of percentage fees in class actions. *See e.g.*, *In re Relafan Antitrust Litig*, 231 F.R.D. 52 (D. Mass. 2005) (drug pricing antitrust class settlement; one-third of settlement fund awarded in fees); *Nilsen v. York County*, 400 F. Supp. 2d 266 (D. Me. 2005) (Sec. 1983 class action) (25% award); *In re Puerto Rican Cabotage Antitrust Litig*., 815 F. Supp. 2d 448 (D.P.R. 2011) (shipping anti-trust) (23% award); *In re Cabletron Sys. Securities Litig*., 239 F.R.D. 30 (D.N.H. 2006) (securities class action settlement) (21.5% award); *LaTorraca v. Centennial Technologies, Inc*., 834 F. Supp. 2d 25 (D. Mass. 2011) (securities class action) (25% award); *Walsh v. Popular, Inc*., 839 F. Supp. 2d 476 (D.P.R. 2012) (ERISA class action) (23% award); *In re Lupron Marketing & Sales Practices Litig*., 2005 WL 2006833 (D. Mass. 2005) (drug marketing and pricing) (25% award); *Bennett v. Roark Capital Group, Inc*., 2011 WL 1703447 (D. Me. May 4, 2011) (WARN Act Class Action) (33% award); *Trombley v. Bank of America, Corp*., 2013 WL 5153503 (D.R.I. Sept. 12, 2013) (consumer class action against bank for TIL and other

the application, noting that the global settlement was considerably higher than the class increment, and that it was unfair to the class to pay exclusively for fees, when it appeared that the individually settling plans received a substantial benefit from the class counsels' work. Accordingly, the Court called for all attorneys to submit their hours, and for the individual settlers to pay their fair share of the class lawyers' fees and expenses. The *Government Employees* scenario is the quintessential application of the common benefit doctrine to the circumstances of MDL litigation that combines class and individual claims and settlements. Plaintiffs' liaison counsel and the PSC respectfully request the entry of a before-the-fact order placing all parties and their counsel on notice of the Court's exercise of its authority to regulate fees, ensure equitable sharing and allocation of fees in accord with the common benefit doctrine, and to avoid unfair advantage or disadvantage to any Plaintiffs or counsel.

## V.      THE COMMON BENEFIT DOCTRINE INCENTIVIZES CONTINGENT EFFORTS AND EXPENDITURES TO CONSERVE THE RESOURCES OF LITIGANTS

A core purpose of MDL centralization is to coordinate and conserve judicial and litigant resources in the conduct of common question discovery and pretrial proceedings. Litigants save by being relieved of the obligation of replicating discovery efforts, while a few counsel undertake the burden of discovery and prosecution on behalf of all. *See, e.g.*, *In re Linerboard Antitrust Litigation* (MDL No. 1261), 292 F. Supp. 2d 644, 653-656 (E.D. Pa 2003). Based on the common benefit doctrine, the *Manual for Complex Litigation (4th ed. 2004)* (the "*Manual 4th*"), emphasizes that, together with an MDL court's power and obligation to appoint responsible counsel, comes the power and obligation to ensure that counsel who have undertaken core work on the litigation, particularly court-appointed counsel, receive compensation, including from later-filed (or unfiled) cases and settlements that take advantage of and piggy-back on their work. The *Manual 4th* recognizes and endorses the hold back mechanism as follows:

violations) (30% award).

> "Class counsel generally have the benefit of the common fund doctrine to support payment for their efforts on behalf of the class or consolidated litigants. MDL judges generally issue orders directing that defendants who settle MDL-related cases contribute a fixed percentage of the settlement to a general fund to pay national counsel." *Id.* § 20.312; see also *id.* §§ 11.211, 14.211, 14.215, 22.927.

Thus, multidistrict transferee courts routinely enter orders that create a funded source for future court-approved compensation to liaison counsel and court-appointed committees. Funds held back under a common benefit order are distributed to counsel only after court scrutiny and approval of the reasonableness of the time and costs for which awards are requested. *See generally*, *MCL 4th*, §§ 10.223; 14.215; 14.22-14.232).

Numerous courts have enforced the common benefit doctrine in the context of non-class, mass tort or product liability multidistrict litigation, as the decrees in *Florida Everglades*, *supra*; *DuPont Plaza*; and *In re MGM Grand Hotel Fire Litigation* (MDL No. 453), 570 F. Supp. 913 (D. Nev. 1983) demonstrate.

The right of an MDL Court to order a hold-back from settlements by opting out class members to preserve a fund for class counsel was analyzed in detail, and approved in the *Linerboard* MDL. The MDL court appointed designated counsel to fund and staff the common benefit effort, and later certified plaintiff classes, thereafter approving a class settlement. *Linerboard*, 292 F. Supp. 2d at 648-650. Numerous class members opted-out of the classes and filed their own actions, piggy-backing on the work of designated counsel while seeking to avoid class counsel or common benefit fees. The effort was unsuccessful: The *Linerboard* court issued an order sequestering a percentage of settlements and judgments in these opt-out actions for the common benefit work performed by designated counsel. 292 F. Supp. 2d at 668. This was done under the *Trustees*, *Pettus* and *Sprague* line of Supreme Court precedent, the *Air Crash* and *Diet Drug* appellate opinion, and examples of common benefit assessments from numerous MDL transferee courts. *Id.* at 653-667.[14]

---

[14] The percentage amount to be sequestered from individual recoveries was left by the court to the negotiation of counsel, party agreement, or later court determination. *Id.* at 669-670. *See also*, *In re Linerboard Antitrust Litig.*, 333 F. Supp. 2d 343 (E.D. Pa. 2004).

The common benefit doctrine is of particular, practical, and immediate utility in the MDL context. By designating a relatively small group of plaintiffs' attorneys with substantial resources that are directed by the Court to risk these resources in a common cause—the prosecution of the MDL on behalf of all plaintiffs—the Court assures at the outset that significant benefit accrues to all plaintiffs, their counsel, and to the system itself throughout the proceedings. Such benefit creation includes the real net benefit of lower costs and less work for individual counsel, some of which would otherwise be required to conduct all discovery, replicate the time and costs of litigating all motions, preparing for trial, and retaining all experts on their own. The only work entitled to compensation from a common benefit fund is work that has demonstrably provided a benefit to all plaintiffs, or to a defined group of plaintiffs as a whole—the common benefit work. In contrast, work benefiting only a single plaintiff is, of course, compensated under the terms of that plaintiffs' fee contract with his or her individual counsel. MDL courts have regulated such individual fees as well, as the *Vioxx* and *Guidant* examples illustrate, to ensure all plaintiffs are treated equitably. Here, where non-litigants, whose counsel have not participated at all in this litigation and created no benefits for any plaintiff, stand to benefit from the extraordinary outlay of resources by the PSC, the need for regulation by the MDL court is especially stark.

## VI. THE REQUESTED 30% HOLD-BACK IS APPROPRIATE GIVEN THE PARTICULAR CIRCUMSTANCES OF THIS LITIGATION

Common benefit assessments have been approved, over the years, in a broad range of percentages in non-class MDLs. These frequently range below the level at which class action attorneys' fees would be awarded under prevailing guidelines, because, in a non-class case, much of the active litigation work is conducted on a plaintiff-specific, rather than common benefit basis, and most claims are formalized via individually-filed complaints that are subject to discovery and other obligations. Thus, individual plaintiffs' attorneys may expend substantial fees and costs in actively preparing their clients' individual personal injury cases for trial or resolution. In order to avoid an aggregate attorneys' fee and cost assessment upon these

plaintiffs' recoveries that is unreasonable, and to ensure that the client does not pay twice for the same legal services or costs, MDL courts recognize that individual plaintiff's contingent fees of one-third or higher are already involved, and hence assess all or part of the common benefit hold-back from these fees.  *See, e.g.*, the *Vioxx* and *Guidant* examples, setting caps of 32% (*Vioxx*) and 37% (*Guidant*) on private contingent fees and assessing common benefit hold-backs from such fees.  This phenomenon is why, as has frequently been reported, common benefit percentage assessments in non-class MDLs appear to range from 4% to 18%.[15]  Class action fees, on the other hand, display a similarly broad range, but one which clusters, historically, in the 25%−30% "benchmark" range, with some awards ranging higher (one-third or more) and with an observed downward adjustment from these percentages in so-called "super-mega-fund" class settlements of over $1 billion.  *See, e.g., In re Diet Drugs Product Liability Litigation*, 582 F.3d 524, 544 (3d Cir. 2009); *In re Avandia Mktg., Sales Practices & Prods. Liability Litig.* (MDL No. 1871), 2012 U.S. Dist. LEXIS 180561, at *16 (E.D. Pa. 2012).

The *Manual* advises the court to make provision for the compensation of designated counsel.  In cases that will be litigated, adjudicated and resolved exclusively as class actions, Rule 23 itself provides a framework and a jurisprudence for such compensation, which is contingent upon a successful outcome, and subject to court review.[16]  On the plaintiffs' side, most representation is contingent.  In this MDL, contingent common representation is, of necessity, the norm.  Indeed, the members of the Plaintiffs' Steering Committee designated by

---

[15]  *See, e.g.*, William B. Rubinstein "On What A 'Common Benefit Fee' Is, Is Not, and Should Be," Class Action Attorney Fee Digest (March 2009)

[16]  This MDL, unlike most mass tort MDLs, in which "hold back" orders are typically in place, features class actions for economic loss of the type courts have certified under Rule 23(b)(3). The ultimate resolution of all or part of these proceedings would most likely take the form of a class action settlement.  In such case, attorneys' fees would be awarded from the defendants or a common fund; the hold back account would be applied to this award, or, if unused, could be returned.  In no event would duplicative costs or fees be paid.  The *Linerboard* litigation is an example of such a common benefit hold-back in a class action MDL.  In this litigation, MDL No. 1629, a hold-back order on personal injury recoveries was entered in 2008, over Pfizer's opposition.  [*See* Dkt. 2045.]

this Court act for the common benefit of all plaintiffs, are representing the proposed class and all its members on a contingent court-awarded fee basis.  The members of the Plaintiffs' Steering Committee are not only prosecuting class claims on a contingent basis, risking both their time, and advancing costs out of their pocket to do so; they are working on a doubly contingent basis, since their common benefit work for individual plaintiffs and class members who may also have individual counsel, is likewise contingent.  There is no public or private source of funding for the PSC's work on an ongoing basis, other than their own resources.  Thus, while their service as a PSC benefits the Court, the public, all plaintiffs (and indeed the defendant as well, at least indirectly), none of the beneficiaries is compensating the members of the PSC or defraying their expenses, on an ongoing basis.

What should the hold-back assessment in <u>this</u> TPP class MDL be?  Here, the class claims actively litigated by Plaintiffs' liaison counsel and the PSC include federal statutory claims (under civil RICO) that provide for an award of attorneys' fees.  It is thus predictable, given a trial rather than a settlement, that Defendants would be called upon to pay Plaintiffs' attorneys' fees.  Thus, the amount "held back" by Defendants from any individual settlements would be subject to a return to those plaintiffs, in whole or in part, depending upon whether the class case proceeds to trial and judgment, or is compromised in a class action settlement, short of trial, with the attorneys' fee feature the subject of separate negotiation, and, of course, ultimate court approval.

The circumstances particular to this litigation – particularly, the need to protect the integrity of the class action by preventing the unjust enrichment of individual plaintiffs benefitting from the PSC's work – lead us to propose a hold-back from all individual settlements with TPPs whose claims and identities fall within the ambit of the operative class complaint and class pending class certification motion, in an amount of 30%, a percentage that approximates the class action attorneys' fee for which Plaintiffs would expect to apply, and for which there is relevant precedent.  In the First Circuit, such precedent indicates that a hold-back, by Defendant Pfizer, of an amount equivalent to 30% of individual settlements, and the placement of that hold-

back in a court-supervised common benefit account, is appropriate.

In *In re Pharm. Indus. Average Wholesale Price Litigation* (MDL No. 1456), 2008 U.S. Dist. LEXIS 111818 (D. Mass. 2008), this Court acknowledged and applied the Supreme Court's common benefit doctrine, as articulated, *inter-alia*, in *Boeing Co. v. Vangemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), in awarding a 30% fee to class counsel.

The First Circuit has embraced the common benefit doctrine in the MDL context. *See In re: Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litigation*, 56 F.3d 295 (1st Cir. 1995), and in doing so secured the equitable allocation of attorneys' fees in the 33% range. There, the issue was the appropriate allocation of the common fund between the steering committee and individually retained attorneys: the First Circuit held that a 50%–50% allocation between the two groups was appropriate, given the relative investment of time and costs, in that non-class mass disaster litigation, by each group. An earlier First Circuit decision in the same litigation, *In re: Nineteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litigation*, 982 F.2d 603 (1st Cir. 1992), described the litigation, the resulting $220 million aggregate settlement fund, the formation of an attorneys' fee fund of approximately $66 million (generated by held-back individual contingent fee contracts, approximately one-third of the recovery) and confirmed the propriety of applying the Supreme Court's common fund doctrine to guide the allocation of this attorney fee fund as between common benefit providers (essentially the PSC) and the individually retained attorneys. *Id.* at 606-607. Thus, the PSC collectively was awarded one-half of the one-third attorneys fee, or nearly 17% of the aggregate recovery.

This Court's "Average Wholesale Price" litigation (MDL No. 1456) illustrates the appropriateness of the 30% fee award level, and, inferentially, the propriety of a hold-back order to secure its equitable allocation and payment by all beneficiaries. In *AWP*, the percentage fee awards in a series of court-approved class action settlements ranged from 28% to 33.3% in a series of settlements totaling over $300 million. *See*, *e.g.*, MDL No. 1456 Docket No. 7412

(30% of $13 million settlement); Docket No. 7979 (28% of $50 million consumer settlement, 30% of $100 million TPP class settlement); Docket No. 5624 (30%); Docket No. 4619 (33.3% of $85 million); and Docket No. 7433 (30% of $90 million).

**VII.    CONCLUSION**

This Court took affirmative action, at the early stages of this MDL, to ensure the integrity of the MDL proceedings by requiring candor from counsel with respect to ongoing proceedings, such as settlement discussions, and has supervised the ongoing discovery, motions practice, and trials in MDL No. 1629 to the highest standards.  Now is the time to extend and supplement the case management procedures of this Court's earlier case management orders with an order specifically ensuring its supervision of settlement discussions, and its authority to fairly and equitably allocate, from Plaintiffs' recoveries, an amount appropriate and sufficient to reimburse and compensate a common benefit work that has sustained these proceedings thus far.

We do not ask for a specific percentage award of attorneys' fees, or allocation thereof, at this time:  To do so would be presumptive.  We must ask, however, given the lessons of *Linerboard* and *Government Employees*, for a system to be put in place to assure that such a determination can be made, if and when it becomes appropriate, before settlement proceeds are misallocated or dispersed beyond recall.  The establishment of a common benefit account, through an order imposing an assessment hold-back obligation, is the practice-tested mechanism for so doing in routine MDL practice, including the class action context, and its utilization is especially appropriate here.

Dated: January 21, 2014                    Respectfully submitted,

By:     */s/ Thomas Greene*
Thomas M. Greene, BBO # 210020
Greene LLP
One Liberty Square, 12th Floor
Boston, MA 02109
tgreene@greenellp.com

Plaintiffs' Liaison Counsel

_/s/ Don Barrett_
Don Barrett
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, MS 39095
dbarrett@barrettlawgroup.com

_/s/ Daniel Becnel_
Daniel Becnel, Jr.
Law Offices of Daniel Becnel, Jr.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084
dbecnel@becnellaw.com

_/s/ Elizabeth J. Cabraser_
Elizabeth J. Cabraser
Lieff Cabraser Heimann &
  Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
ecabraser@lchb.com

_/s/ James Dugan_
James Dugan
The Dugan Law Firm
One Canal Street
365 Canal St., Suite 1000
New Orleans, LA 70131
jdugan@dugan-lawfirm.com

_/s/ Thomas M. Sobol_
Thomas M. Sobol
Kristen Johnson Parker
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
tom@hbsslaw.com
kristenjp@hbsslaw.com

**_Members of the Class Plaintiffs'_**
**_Steering Committee_**

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas M. Greene, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 21, 2014.

Dated: January 21, 2014                              <u>/s/ Thomas Greene</u>
                                                      Thomas M. Greene

{00015385 }
1148718.5