# EXHIBIT A

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:   NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No.  1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>ALL SALES AND MARKETING CASES | Judge Patti B. Saris<br><br>Mag. Judge Leo T. Sorokin |

### DECLARATION OF MICHAEL TABB IN SUPPORT OF MOTION FOR ENTRY OF CASE MANAGEMENT ORDER SUPERVISING SETTLEMENT DISCUSSION AND ESTABLISHING COMMON BENEFIT ACCOUNT

I, Michael Tabb, having personal knowledge of the following facts, hereby state and declare as follows:

1.       I am an attorney licensed to practice law in the Commonwealth of Massachusetts.  I am a partner in the law firm of Greene LLP, and was also a partner of Greene LLP's predecessor firm, Greene & Hoffman, P.C.  I have been one of the attorneys in the firm who has been involved in the Neurontin Sales and Marketing Multi-District Litigation since proceedings were initiated in 2004.  Prior to the initiation of this MDL proceeding, our firm filed and litigated the original qui tam case against the Parke-Davis division of Warner Lambert relating to Neurontin in 1996.  My partner, Thomas Greene, is one of the lawyers who was appointed to the Plaintiffs' Steering Committee of this MDL by the District Court for the District of Massachusetts, and he was elected chair of the committee by the court-appointed members.  I have personally participated in litigation relating to improper marketing of Neurontin since 2000.

2.      Given our firm's long involvement in Neurontin marketing litigation, our firm has acted as a clearinghouse of factual information regarding the marketing of Neurontin and its efficacy for off-label conditions.  As part of that role we routinely received all (or almost all) of the depositions that were taken in the MDL that related to the sales and marketing side of the proceeding.  In connection with the filing of this motion, our firm has reviewed those depositions to identify which law firms representing sales and marketing plaintiffs participated in the conduct of the depositions.

3.      In our review, we identified 130 depositions of 89 fact witnesses; 25 depositions of 13 experts identified by class plaintiffs or the coordinated plaintiffs; and two depositions of one expert identified by Pfizer.  We looked at how many of these depositions were attended by attorneys who represented the class plaintiffs; how many were attended by attorneys from the law firm of Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg," which represented Aetna); how many were attended by attorneys from the law firm of Rawlings & Associates ("Rawlings,"which had represented the Guardian Life Insurance Company of America ("Guardian")); and how many were attended by attorneys that represented the Assurant Plaintiffs (the "Assurant Plaintiffs, "who have been represented in this MDL by the law firms of Robins, Kaplan, Miller & Ciresi and Blank Rome LLP).  We did not include any depositions that were taken in the products liability cases which only pertained to individual plaintiffs' personal injury claims.  We did include depositions that were devoted to employees, agents or representatives of a particular sales and marketing

litigant, such as the corporate representative of one of the coordinated plaintiffs or the deposition of a putative class representative.

4.      Of the 130 depositions of fact witnesses which we reviewed, attorneys representing the class plaintiffs appeared at 112 of the depositions, attorneys representing the Assurant Plaintiffs appeared at 45 depositions, attorneys from Rawlings appeared at 12 depositions and attorneys from Lowey Dannenberg appeared at 9 depositions.

5.      Of the two depositions of an expert identified by Pfizer, attorneys representing the class plaintiffs conducted both depositions.  Attorneys representing the Assurant Plaintiffs appeared at one of the depositions.  Neither Lowey Dannenberg nor Rawlings appeared at either of the depositions of the Pfizer experts.  Nor did either of those firms conduct their own expert depositions.

6.      Of the 25 depositions of experts identified by the Sales and Marketing Plaintiffs, attorneys representing the class plaintiffs appeared at each and every deposition.  Attorneys representing the Assurant Plaintiffs appeared at nine of the expert depositions.  Lowey Dannenberg and Rawlings did not appear at a single expert deposition.

7.      After a notice of appeal was filed on behalf of Guardian, Rawlings executed a stipulation of dismissal on behalf of Guardian and did not prosecute the appeal for Guardian.  Lowey Dannenberg did successfully prosecute an appeal on behalf of Aetna, but recently executed a Stipulation of Dismissal on behalf of Aetna.  I have been informed, but do not have personal knowledge, that Lowey Dannenberg and

Aetna have asserted they represent a number of health insurers and other TPPs in connection with those entities' claims relating to improper marketing of Neurontin for off-label uses.  None of those entities have yet filed suit against Pfizer or any other person allegedly responsible for the marketing.

Signed this 21st day of January under the pains and penalties of perjury in Boston, Massachusetts.


/s/Michael Tabb
Michael Tabb