# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 <br><br> Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: <br><br> HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, d/b/a BLUE CROSS/BLUE SHIELD OF LOUISIANA; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; JAN FRANK WITYK; and GARY VARNAM, on behalf of themselves and all others similarly situated, <br><br>    Plaintiffs, <br><br> v. <br><br> PFIZER INC. and WARNER-LAMBERT COMPANY, <br>    Defendants. | Judge Patti B. Saris <br><br> Mag. Judge Leo T. Sorokin |

### CLASS PLAINTIFFS' MOTION TO PRECLUDE RELITIGATION OF ISSUES AND FACTS DETERMINED BY THE *KAISER* TRIERS OF FACT AT TRIAL

On behalf of a class of similarly situated plaintiffs, Harden Manufacturing Corp., ASEA/AFSCME Local 52 Health Benefits Trust, and Louisiana Health Service Indemnity Company, d/b/a Blue Cross/Blue Shield of Louisiana (together, the "Class Plaintiffs") move for a collateral estoppel order to preclude relitigation of issues and facts determined by the finders of fact at the trial of *Kaiser Foundation Health Plan, Inc., et al.*, No 04-10739-PBS (the "Kaiser Trial"). The Class Plaintiffs request that this motion not be decided until after a class has been certified.

Both judge and jury sat as finders of fact in the Kaiser Trial. On November 3, 2010, this Court issued its own extremely thorough Findings of Fact and Conclusions of Law (Dkt No. 3120), which it amended (the "*Kaiser Findings*"). Dkt. No. 3602, *In re Neurontin Mktg. and Sales Practices Litig.*, No. 04-cv-10739-PBS, 2011 WL 3852254 (D. Mass. Aug. 31, 2011). In addition, this Court issued jury instructions that dovetailed with the Special Verdict Form in the Kaiser Trial with the express purpose "that the findings [of the jury] will have preclusive effect on subsequent litigation." Procedural Order of November 12, 2009 (Dkt. No. 2172); *see* "Trial Transcript," vol. 20, pp. 23-57, March 23, 2010 (Dkt. No. 3491).

Based on the *Kaiser Findings* or the jury instructions, and for the reasons stated here and in the accompanying memorandum, the Class Plaintiffs move for collateral estoppel on the following issues:

A. <u>RICO Findings</u>:

  1. A RICO enterprise existed, to which Pfizer was a party. Trial Transcript, at 44, 46.

  2. The RICO enterprise that existed to which Pfizer was a party affected interstate or foreign commerce. Trial Transcript, at 44.

  3. Pfizer engaged in a pattern of racketeering activity. Trial Transcript, at 44.

  4. Pfizer conducted or participated in the conduct of that enterprise through that pattern of racketeering activity. Trial Transcript, at 44.

B.  Nationwide Fraudulent Marketing Scheme:

5.  Pfizer fraudulently marketed Neurontin by making material misrepresentations in advertising supplements, articles it sponsored, and direct communications. *Kaiser Findings*, at *2.

6.  Pfizer fraudulently marketed Neurontin by showcasing positive information about Neurontin's efficacy in the published literature, while suppressing negative evidence from Pfizer-sponsored clinical trials about Neurontin's efficacy for bipolar disorder. *Kaiser Findings*, at *2.

7.  Parke-Davis medical liaisons were trained to tell physicians that Neurontin was "highly effective" for bipolar disorder, and they failed to disclose both that there was no scientific support for that indication and that the FDA had found an associated increased risk of suicide and depression for Neurontin patients. *Kaiser Findings*, at *13.

8.  In February 1996, three members of Parke-Davis's department of Central Nervous System Clinical Research and Development published an article entitled "Effect of Gabapentin (Neurontonin [sic]) on Mood and Well-Being in Patients with Epilepsy" that failed to reference the FDA's findings that Neurontin increased the risk of depression with or without suicidal ideation. *Kaiser Findings*, at *14.

9.  In 1998, Parke-Davis sponsored the publication of a supplement to the Cleveland Clinic Journal of Medicine titled "New Treatment Strategies in Psychiatry: Role of Anticonvulsants that was distributed to 43,000 psychiatrists and that was intentionally misleading by only publishing half-truths. *Kaiser Findings*, at *14.

3

10. In 1999, an article written by Parke-Davis employee Leslie Magnus was published in a supplement to the journal Epilepsia, with a circulation of 5,000, which was intentionally misleading and factually untrue. *Kaiser Findings*, at *14-*15.

11. Pfizer suppressed the negative results of Dr. Atul Pande's original bipolar study in 1998, completed in 1997, until October 2000, when the study was published in the journal Bipolar Disorders, a "fairly narrow" and "small journal" with a circulation of only 455 physicians. It failed to cite the negative results of two other Parke-Davis DBRCTs conducted by Drs. Frye and Guille, which were sponsored by Pfizer and the results of which were available at the time of publication. *Kaiser Findings*, at *15.

12. Pfizer completely suppressed the negative Guille and Frye studies. *Kaiser Findings*, at *15.

13. Pfizer detailed psychiatrists to sell Neurontin for bipolar without disclosing to doctors the information about the negative clinical studies. *Kaiser Findings*, at *15.

14. Pfizer engaged in the fraudulent marketing of Neurontin for the treatment of bipolar disorder. In addition to fraudulent detailing, Pfizer sponsored at least two fraudulent supplements, engaged in a fraudulent publication strategy by publishing only positive information and suppressing negative; and conducted at least two fraudulent continuing medical education programs. *Kaiser Findings*, at *17.

15. Pfizer designed the national strategy of off-label marketing (by promotional spending on detailing doctors and sponsorship of CME conferences) to implement its fraudulent publication strategy. *Kaiser Findings*, at *33.

4

16. Pfizer had a duty to disclose scientific data demonstrating the lack of efficacy of Neurontin for bipolar. This duty arose because Pfizer was marketing the drug for unapproved uses by disclosing positive information about the drug while suppressing negative information in its possession. *Kaiser Findings*, at *47.

C. <u>Bipolar Prescriptions Attributable to Pfizer's Promotion</u>:

17. Professor Rosenthal used gold standard national data on Neurontin and other anti-epileptic drugs from IMS Health and Verispan to link national data on Pfizer's promotional spending with sales. *Kaiser Findings*, at *32.

18. 99.4% of Neurontin prescriptions for bipolar disorder were caused by Pfizer's off-label promotion. *Kaiser Findings*, at *58.

D. <u>Bipolar Prescriptions Attributable to Pfizer's Fraudulent Promotion</u>:

19. Professor Rosenthal's analysis assumes that the promotional spending on off-label marketing was the same as the promotional spending on fraudulent off-label marketing. That assumption was reasonable given the pervasive nature of the publication fraud that infected the nationwide sources of information available to all physicians. *Kaiser Findings*, at *33.

20. 99.4% of Neurontin prescriptions for bipolar were caused by Pfizer's fraudulent marketing of Neurontin. *Kaiser Findings*, at *33, *58.

E. <u>Neurontin's Efficacy for Bipolar</u>:

21. Requiring two DBRCTs to prove the efficacy of a drug is a reliable standard followed by the medical community. *Kaiser Findings*, at *35.

22. There is no reliable or scientifically acceptable evidence that Neurontin is effective in the treatment of bipolar disorder. *Kaiser Findings*, at *34, *36.

23. None of the numerous scientific studies conducted by Pfizer provided evidence that Neurontin was effective for treating bipolar disorder. *Kaiser Findings*, at *12.

24. The first DBRCT to examine Neurontin's efficacy in the treatment of bipolar disorder was the Pande trial, conducted from March 1996 through July 1997, by Dr. Atul Pande, a Parke-Davis employee. The results of the Pande trial showed that the placebo outperformed Neurontin in treating patients with bipolar disorder. *Kaiser Findings*, at *12.

25. The Frye trial was an independent DBRCT conducted between 1997 and 1999 that compared Neurontin to the drug Lamotrigine and placebo in the treatment of refractory, or difficult to treat, bipolar disorder. The Frye trial found that Lamotrigine outperformed both Neurontin and placebo, and that there was no statistically significant difference between Neurontin and placebo. *Kaiser Findings*, at *12.

26. The Guille trial was also a DBRCT that compared Neurontin to placebo in treating refractory bipolar disorder. The trial investigators found no significant difference between Neurontin and placebo for treatment of bipolar disorder. *Kaiser Findings*, at *12.

27. The Vieta trial was a DBRCT funded by defendants that compared Neurontin to placebo. It was completed in February 2004. The Vieta trial showed no difference between Neurontin and placebo in the "intention-to-treat" population,

6

meaning the entire population of study participants who were included in the trial. *Kaiser Findings*, at *13.

WHEREFORE, for the reasons set forth above and in the accompanying memorandum, the Class Plaintiffs request a collateral estoppel order for the findings referenced above.

Dated:  April 3, 2014                              Respectfully Submitted,

By:

*/s/ Thomas M. Greene*
Thomas M. Greene, BBO # 210020
Greene LLP
One Liberty Square, 12th Floor
Boston, MA 02109
tgreene@greenellp.com

*/s/ Don Barrett*
Don Barrett
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, MS 39095
dbarrett@barrettlawgroup.com

*/s/ Daniel Becnel*
Daniel Becnel, Jr.
Law Offices of Daniel Becnel, Jr.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084
dbecnel@becnellaw.com

*/s/ Elizabeth J. Cabraser*
Elizabeth J. Cabraser
Lieff Cabraser Heimann &
  Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
ecabraser@lchb.com

*/s/ James Dugan*
James Dugan
The Dugan Law Firm
One Canal Street
365 Canal St., Suite 1000
New Orleans, LA 70131
jdugan@dugan-lawfirm.com

*/s/ Thomas M. Sobol*
Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
tom@hbsslaw.com

*Members of the Class Plaintiffs' Steering Committee*

**CERTIFICATE OF SERVICE**

   I, Thomas M. Greene, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 3, 2014.

Dated: April 3, 2014                 */s/ Thomas M. Greene*
                                      Thomas M. Greene