UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x
:   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,    :
 SALES PRACTICES AND    :   Master File No. 04-10981
 PRODUCTS LIABILITY LITIGATION  :
---------------------------------------------------------------x   Judge Patti B. Saris
:
THIS DOCUMENT RELATES TO:   :   Magistrate Judge Leo T. Sorokin
:
McLendon v. Pfizer, et al. (No. 1:08-cv-12034)   :
---------------------------------------------------------------x

**TEVA PHARMACEUTICALS USA, INC. and IVAX PHARMACEUTICALS, INC.'S
<u>MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

Defendants Teva Pharmaceuticals USA, Inc. ("Teva USA") and Ivax Pharmaceuticals, Inc. ("Ivax") (collectively, the "Teva Defendants"), file this memorandum in support of their Motion to Dismiss Plaintiff's Second Amended Complaint ("Complaint" or "Compl.") pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff's claims are preempted by federal law governing generic prescription drugs, as recognized by the United States Supreme Court in two recent decisions: *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2574 (2011), *reh'g denied*, 132 S. Ct. 55, and *Mutual Pharmaceutical Company v. Bartlett*, 133 S. Ct. 2466 (2013).

<u>**INTRODUCTION**</u>

The Teva Defendants are manufacturers of gabapentin, the generic equivalent of the name-brand drug Neurontin®, which is FDA-approved to treat certain neurological disorders. This lawsuit arises from injuries Plaintiff Denise McLendon alleges she sustained after ingesting gabapentin. Plaintiff Denise McLendon filed a Second Amended Complaint on December 7, 2009, asserting that the Teva Defendants' (among others) "wrongful conduct" was that they were "well aware and had ample knowledge that gabapentin caused adverse mood and behavioral

changes, but [] failed to apply to the FDA to make the requisite label changes." Compl. ¶¶ 148, 164. On November 14, 2013, the Teva Defendants filed a Suggestion of Death Upon the Record as to the Plaintiff (ECF No. 4192), and on December 13, 2013 filed a Supplement to the Suggestion (ECF No. 4203). To date, no party has moved for substitution of parties as to the Plaintiff.

## ARGUMENT

### I. Plaintiff's Claims Are Preempted By Federal Law, as Recognized By Two Recent Supreme Court Decisions.

All drugs sold in interstate commerce in the United States must be approved by the FDA prior to their sale. *See* 21 U.S.C. § 355(a). The FDA approves a drug for sale in the United States only when its benefits outweigh its risks for the treatment of a particular disease or condition. That approval encompasses not only the active ingredient, but also the labeling that accompanies the drug. Indeed, that is how the FDA accounts for a drug's risks: It approves prescription drugs for sale only **as labeled.** *See* 21 U.S.C. § 355(j)(2)(A)(i) (requiring those applying for approval to sell generic drugs "to show that the conditions of use prescribed, recommended, or suggested *in the labeling* proposed for the new drug have been previously approved") (emphasis added).

The FDA approval process for a drug depends on whether that drug is brand-name or generic. Drugs with new active ingredients (commonly the brand-name drug) are approved pursuant to section 355(b) of the Federal Food, Drug, and Cosmetic Act ("FDCA"). Drugs that are bioequivalent to a previously-approved drug (the generic version of the new drug) are approved pursuant to section 355(j) of the FDCA. The claims in this lawsuit involve a generic drug. There are several major differences in the regulation of new (brand-name) drugs and generic drugs. Critical to this motion is that while federal law permits brand-name drug

manufacturers, in some cases, to unilaterally change their drug labeling based on new information without prior FDA approval, *see* 21 C.F.R. § 314.70(c)(6)(iii)(A), (C) and *Wyeth v. Levine*, 555 U.S. 555, 557 (2009) (brand-name drug manufacturers "need not wait for FDA approval" to make certain labeling changes), generic drug applicants **may not**.

The warnings given by generic drug manufacturers are mandated by federal law – specifically, the Hatch-Waxman Amendments to the FDCA and its implementing regulations. Under federal law, generic drug warnings must be "**the same as**" the warnings of the brand-name drug on which it is based. *See* 21 U.S.C. § 355(j)(2)(A)(v). In fact, the statutes and regulations require that generic drugs be the "same as" their brand-name counterparts in every clinically relevant way: the same active ingredient, route of administration, dosage form, strength, and labeling. *Id.* Generic drug manufacturers are not permitted to alter either the drug's design or labeling. *Id.* This sameness requirement serves Congress's goal of permitting generic drug manufacturers a more cost-efficient FDA-approval process so that consumers have affordable access to many of their prescription medications. *See PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2574 (2011) (noting that the Hatch-Waxman Amendments "allow[ed] manufacturers to develop drugs inexpensively"), *reh'g denied*, 132 S. Ct. 55.

In June 2011, the United States Supreme Court analyzed whether generic drug manufacturers may be held liable under state law for allegedly failing to adequately warn of the risks of their drugs: "The question presented is whether federal drug regulations applicable to generic drug manufacturers directly conflict with, and thus pre-empt, these state law claims." *Mensing*, 131 S. Ct. at 2572. After analyzing the provisions in the Hatch-Waxman Amendments requiring that generic drugs maintain labeling that is "the same as" that approved by the FDA for their brand-name counterpart, 21 U.S.C. § 355(j)(2)(A)(v), the Supreme Court answered the

question clearly: "We hold that they do." *Mensing*, 131 S. Ct. at 2572.  The Court found that state-law tort duties relating to a generic medication's warning label are in irreconcilable conflict with federal labeling requirements applicable to generic-drug manufacturers. *Id.* at 2577 ("We find impossibility [preemption] here.  It was not lawful under federal law for the Manufacturers to do what state law required of them.").  Thus, the Court held, state-law claims against generic drug manufacturers based on allegedly inadequate warnings are preempted by federal law, since it is "impossible for [generic drug manufacturers] to comply with both their state-law duty to change the label and their federal law duty to keep the label the same." *Id.* at 2578.  The Supreme Court also rejected the argument that generic manufacturers had a duty to ask or convince the FDA to permit a label change. *Id.* at 2579 ("[P]re-emption analysis should not involve speculation about ways in which federal agency and third-party actions could potentially reconcile federal duties with conflicting state duties.  When the 'ordinary meaning' of federal law blocks a private party from **independently** accomplishing what state law requires, that party has established preemption.") (emphasis added).

In June 2013, the Supreme Court reaffirmed its *Mensing* decision in *Mutual Pharmaceutical Company v. Bartlett*, 133 S. Ct. 2466 (2013).  In *Bartlett*, the Supreme Court held that design-defect allegations, just like allegations that directly challenge a drug's labeling, are preempted by federal law because they require a generic drug manufacturer either to change a drug's design or its labeling, neither of which is permissible under federal law. *Id.* at 2474-76.  The Supreme Court explained that "redesign was not possible . . . [since] the FDCA requires a generic drug to have the same active ingredients, route of administration, dosage form, strength, and labeling as the brand-name drug on which it is based." *Id.* at 2475.  The Court reiterated that strengthening a drug's labeling is similarly impossible for all the reasons

4

articulated in *Mensing*. *Id.* at 2467 ("[A]s this Court recognized just two terms ago in *PLIVA, Inc. v. Mensing*, . . . , federal law prohibits generic drug manufacturers from independently changing their drugs' labels.") (citation omitted). It concluded that state-law requirements that conflict with federal law are preempted and "without effect." *Id.* at 2477.

Just as in *Mensing* and *Bartlett*, Plaintiff's claims here are preempted by federal law, requiring dismissal.

## II. Courts Applying *Mensing* Have Dismissed the Same Claims Plaintiffs Advance Here As Preempted.

Dozens of state and federal courts, following the *Mensing* and *Bartlett* decisions, have dismissed cases against generic drug manufacturers pursuant to federal law. In those cases, claims for negligence, strict liability, breach of warranties, misrepresentation, and fraud – the very same claims brought by the plaintiffs in *Mensing* and the Plaintiff here – were all dismissed as preempted. The following citations are but a small sampling of those decisions:

- *Drager v. PLIVA USA, Inc.*, 741 F.3d 470 (4th Cir. 2014) (holding that plaintiff's claims for negligence, strict liability, breach of warranties, misrepresentation and fraudulent concealment were all preempted by federal law).

- *Lashley v. Pfizer, Inc.*, Nos. 12-60861, 12-41148, 2014 WL 661058 (5th Cir. Feb. 21, 2014) (holding that "[s]tate law claims for damages are not available as an end-run around preemption" because they are all premised on an alleged failure to provide adequate warnings).

- *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378 (6th Cir. 2013) (holding that when a "generic manufacturer cannot obey federal law without being held liable under a state-law warranty action, the state action is preempted").

- *Schrock v. Wyeth, Inc.*, 727 F.3d 1273 (10th Cir. 2013) (holding that where a plaintiff's claim would require a generic drug manufacturer to "alter either the composition or the labeling, as broadly defined by the FDA," it is preempted).

- *Guarino v. Wyeth, LLC*, 719 F.3d 1245 (11th Cir. 2013) ("No matter the garb in which she attempts to present them, [plaintiff]'s claims are at bottom allegations regarding Teva's failure to warn her of the dangers of long-term metoclopramide use, and they therefore cannot escape *Mensing*'s grasp.").

5

- *Morris v. PLIVA, Inc.*, 713 F.3d 774 (5th Cir. 2013) (*per curiam*) (holding that plaintiffs' allegations failed because they were "yet another attempt to circumvent disfavored failure-to-warn claims" preempted under *Mensing*).

- *Demahy v. Schwarz Pharm., Inc.*, 702 F.3d 177 (5th Cir. 2012) (*per curiam*) (holding that *Mensing* required dismissal of plaintiffs' entire complaint because plaintiffs' "only remaining claims had been characterized by the district court, this Court, and the Supreme Court as failure-to-warn claims").

- *Moretti v. Mutual Pharm. Co.*, No. 12-2380, 2013 WL 3107472 (8th Cir. June 21, 2013) (*per curiam*) (affirming dismissal of plaintiff's entire complaint and agreeing with the district court that "the essence" of plaintiff's claims was that "[d]efendants failed to warn of material safety information concerning metoclopramide").

- *Metz v. Wyeth, LLC*, No. 12-13321, 2013 WL 3942831 (11th Cir. Aug. 1, 2013) (*per curiam*) (affirming dismissal of plaintiffs' entire complaint).

- *Abicht v. PLIVA, Inc.*, Nos. 12-1278 (PAM/JJG), 12-2172 (PAM/JJG), 2013 WL 141724 (D. Minn. Jan. 9, 2013) (dismissing various failure-to-warn claims couched under different theories in two cases because they "are just the sort . . . that *Mensing* prohibits").

- *Gardley-Starks v. Pfizer, Inc.*, 917 F. Supp. 2d 597 (N.D. Miss. 2013) ("[S]tate law tort claims asserted against generic drug manufacturers, no matter how styled, are ultimately based on a failure-to-warn and therefore preempted.").

Plaintiff's lawsuit is indistinguishable from the many cases dismissing claims against generic drug manufacturers since the U.S. Supreme Court's 2011 *Mensing* decision. Plaintiff has no viable claims against the Teva Defendants and her case should be dismissed.

### III.   Federal Law Preempts Each of Plaintiff's State-Law Claims.

*COUNT VI/IX – NEGLIGENCE*[1]

Plaintiff's various assertions of negligence all allege that the Teva Defendants failed to provide adequate warnings of dangerous side effects associated with prolonged use of gabapentin. Specifically, Plaintiff claims that the Teva Defendants "[**f]ailed to adequately warn** of the risk of suicide or aggressive, self-destructive behavior of which defendant Teva knew or should have known about." Compl. ¶¶ 285, 306 (emphasis added). *Mensing* squarely

---

[1] Counts VI, VII, and VIII are against Teva, while Counts IX, X, and XI are against Ivax. The Teva Defendants address these claims together.

6

held that such claims are preempted. 131 S. Ct. at 2575-77 ("[F]ederal law did not permit the Manufacturers to issue additional warnings. . . [and] prevented the Manufacturers from independently changing their generic drugs' safety labels."). Since Plaintiff cannot plead any viable claim for negligence, Counts VI and IX should be dismissed with prejudice. *See, e.g.*, *In re Fosamax*, 2011 WL 5903623, at *8 (dismissing negligence claim); *Abicht*, 2013 WL 141724, at *2 (same); *Billingsly*, slip op. at 2-6 (same).

### *COUNT VII/X - BREACH OF WARRANTY*

Plaintiff's breach of warranty count is also directed at the alleged inadequacy of the gabapentin warning. Specifically, Plaintiff alleges that the Teva Defendants, by "adopting the statements, studies, labeling and representations of the brand name manufacturer of Neurontin, impliedly warranted in manufacturing, distributing, selling, advertising, marketing and promoting gabapentin to all foreseeable users, including plaintiff, that gabapentin was safe and effective." Compl. ¶¶ 293, 314. As the *Morris* Court held, this claim is preempted:

> Appellants' final claim is for breach of express warranty based on the generic defendants' introducing a defective product into the stream of commerce. It is urged that the drug is unreasonably dangerous as designed and so, in fact, no warnings would have been sufficient: metoclopramide should not have been sold at all. . . . [the generic drug at issue] has legitimate therapeutic purposes, as evidenced by the FDA's approval of Reglan in the first place. Any state law-based holding that the generic manufacturers should have acted differently with respect to warnings or should have ceased manufacturing these products because of insufficient warnings not only violates the duty of sameness but conflicts with FDA's exclusive authority to approve drugs and drug labels. This claim is preempted.

*Morris*, 713 F.3d at 778; *see also In re Fosamax*, 2011 WL 5903623, at *8-9 (dismissing warranty claims); *Abicht*, 2013 WL 141724, at *2 (same). The result should be the same here.

### *COUNT VIII/XI - STRICT PRODUCTS LIABILITY*

Plaintiff's allegations of wrongful conduct supporting Counts VIII and XI also fail because, as discussed above, Plaintiff's allegations amount to a claim that the Teva Defendants

7

should have designed a different drug, and such claims are preempted. *See Bartlett*, 133 S. Ct. at 2466 (state-law design-defect cause of action was preempted by federal law as it "imposed a duty on [generic manufacturer] to strengthen [generic medication] warnings"); *see also Metz v. Wyeth LLC*, 872 F. Supp. 2d 1335, 1341 (M.D. Fla. 2012) ("Plaintiffs' strict liability claim is, in essence, a claim based on Actavis' failure to provide an adequate warning as to the risks associated with the long-term use of metoclopramide . . . A claim that Actavis should have redesigned metoclopramide to alleviate the risks associated with its long-term use would be preempted under *Mensing*."); *see also In re Fosamax*, 2011 WL 5903623, at *5-8 (dismissing strict liability claims); *Abicht*, 2013 WL 141724, at *2 (same); *Billingsly*, slip op. at 2-6 (same).

### RELIEF REQUESTED

In light of the Supreme Court's decisions in *Mensing* and *Bartlett*, the Teva Defendants respectfully request that this Court dismiss Plaintiff's Second Amended Complaint against them in its entirety, with prejudice.

Dated:  April 9, 2014

Respectfully submitted,

TEVA PHARMACEUTICALS USA, INC.,
IVAX PHARMACEUTICALS, INC.

By their attorneys,

/s/ Chad W. Higgins
Chad W. Higgins (BBO #668924)
Richard A. Oetheimer (BBO #377665)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
617.570.1000
chiggins@goodwinprocter.com
roetheimer@goodwinprocter.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document, filed through the ECF system, will be electronically sent to those indicated on the Notice of Electronic Filing as registered participants, and hard copies will be sent to those indicated as non-registered participants, on April 9, 2014.

                                            /s/ Chad W. Higgins