UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No.  1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>CLASS ACTION | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL</u>

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   PROCEDURAL AND FACTUAL BACKGROUND.......................................... 1

III.  MATERIAL TERMS OF THE SETTLEMENT ........................................ 5

     A.     The Settlement Class and Subclass ............................................ 5

     B.     The Settlement Fund .................................................................. 7

     C.     Attorneys' Fees and Expenses .................................................. 8

     D.    Compensation Payments to Class Representatives..................... 8

     E.     Plan of Distribution................................................................... 8

     F.     Class Action Settlement Notice Program .................................. 9

     G.    Mutual Release.......................................................................... 9

IV.  PRELIMINARY APPROVAL SHOULD BE GRANTED............................ 10

V.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE........ 13

     A.     Rule 23(a)'s Requirements Are Satisfied. ................................ 14

            1.     Numerosity...................................................................... 14

            2.     Commonality................................................................... 14

            3.     Typicality ....................................................................... 14

            4.     Adequacy ....................................................................... 15

     B.     Rule 23(b)(3) is Satisfied. ....................................................... 15

     C.     Rule 23(g) is Satisfied.............................................................. 16

VI.  THE PROPOSED FORM OF NOTICE AND NOTICE PLAN SHOULD
       BE APPROVED. ...................................................................... 17

     A.     The Proposed Class Notice Provides For The Best Notice
            Practicable Under The Circumstances. ..................................... 17

            1.     Mailed Notice.................................................................. 17

            2.     Settlement Website and Long-Form Notice ............... 18

            3.     Toll-Free Number and E-Mail Address ...................... 18

            4.     Opt-Out Procedure ......................................................... 18

            5.     Opportunity to Object .................................................... 18

     B.     The Proposed Form Of Class Notice Adequately Informs Class
            Members Of Their Rights In This Litigation............................ 19

## TABLE OF CONTENTS
(continued)

**Page**

VII.   THE COURT SHOULD SCHEDULE A FAIRNESS HEARING AND
       SET CORRESPONDING DEADLINES. ........................................................... 20

VIII.  CONCLUSION ................................................................................................. 21

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................................................................................... 13, 14, 15, 16

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ............................................................................................... 15

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir. 1996) ............................................................................... 10, 13

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir. 1996) ..................................................................................... 9

*Clarkson v. Coughlin*,
145 F.R.D. 339 (S.D.N.Y. 1993) ................................................................................. 7

*Encinas v. J.J. Drywall Corp.*,
265 F.R.D. 3 (D.D.C. 2010) ......................................................................................... 7

*In re Baldwin-United Corp.*,
770 F.2d 328 (2d Cir 1985) ......................................................................................... 21

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) ..................................................................................... 19

*In re Diet Drugs Prods. Liab. Litig.*,
282 F.3d 220 (3d Cir. 2002) ......................................................................................... 21

*In re Evergreen Ultra Short Opportunities Fund Secs. Litig.*,
275 F.R.D. 382 (D. Mass. 2011) ................................................................................. 13

*In re Lupron Mktg. & Sales Pracs. Litig.*,
345 F. Supp. 2d 135 (D. Mass. 2004) ......................................................................... 11

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) ................................................................................... 10

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ....................................................................... 12

*In re Neurontin Marketing, Sales Pracs. & Prods. Liab. Litig.*,
244 F.R.D. 89 (D. Mass. 2007) ...................................................................... 3, 14, 15, 16

*In re Neurontin Marketing, Sales Pracs. & Prods. Liab. Litig.*,
433 F. Supp. 2d 172 (D. Mass. 2006) ........................................................................... 3

*In re Neurontin Marketing, Sales Pracs. & Prods. Liab. Litig.*,
2011 U.S. Dist. LEXIS 61636 (D. Mass. May 17, 2011) ................................... 4, 13, 15

*In re Neurontin Marketing, Sales Pracs. & Prods. Liab. Litig.*,
257 F.R.D. 315 (D. Mass. 2009) ...................................................................... 2, 3, 13, 14

*In re Neurontin Marketing, Sales Pracs. & Prods. Liab. Litig.*,
712 F.3d 60 (1st Cir. 2013) ........................................................................................... 4

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Neurontin Marketing, Sales Pracs. & Prods. Liab. Litig.*,
 754 F. Supp. 2d 293 (D. Mass. 2010) ........................................................ 4

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
 588 F.3d 24 (1st Cir. 2009) ........................................................ 11, 13

*In re Puerto Rican Cabotage Antitrust Litig.*,
 269 F.R.D. 125 (D. Mass. 2010) ........................................................ 10

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004) ........................................................ 14

*In re: M3Power Razor Sys. Mktg. & Sales Prac. Litig.*,
 270 F.R.D. 45 (D. Mass. 2010) ........................................................ 10

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
 247 F.R.D. 253 (D. Mass. 2008) ........................................................ 13

*Pfizer, Inc., et al. v. Harden Manufacturing Corp., et al.*,
 134 S. Ct. 786 (2013) ........................................................ 4

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
 559 U.S. 393 (2010) ........................................................ 12

*TBK Partners, Ltd. v. Western Union Corp.*,
 675 F.2d 456 (2d Cir. 1982) ........................................................ 9

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541 (2011) ........................................................ 14

*Wyly v. Weiss*,
 697 F.3d 131 (2d Cir. 2012) ........................................................ 21

**Statutes**

28 U.S.C. § 1651 ........................................................ 21

**Rules**

Fed. R. Civ. P. 23 ........................................................ 12

Fed. R. Civ. P. 23(a)(1) ........................................................ 13

Fed. R. Civ. P. 23(a)(2) ........................................................ 14

Fed. R. Civ. P. 23(a)(3) ........................................................ 14

Fed. R. Civ. P. 23(b)(3) ........................................................ 15

Fed. R. Civ. P. 23(c)(2)(B) ........................................................ 16, 19

Fed. R. Civ. P. 23(c)(5) ........................................................ 13

Fed. R. Civ. P. 23(e) ........................................................ 10, 12, 16

Fed. R. Civ. P. 23(g)(A)(i) ........................................................ 16

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Other Authorities**

1 *Newberg on Class Actions*
    § 3:16 (5th ed. 2011) .................................................................................... 7

4 *Newberg on Class Actions*
    § 11:25 (4th ed. 2002) .................................................................................. 10

*Federal Judicial Center, Manual for Complex Litigation*
    § 21.23 (4th ed. 2004) .................................................................................. 13

*Federal Judicial Center, Manual for Complex Litigation*
    § 21.311 (4th ed. 2004) ................................................................................ 16

*Federal Judicial Center, Manual for Complex Litigation*
    § 21.312 (4th ed. 2004) ................................................................................ 19

*Federal Judicial Center, Manual for Complex Litigation*
    § 21.612 (4th ed. 2004) ................................................................................ 12

*Federal Judicial Center, Manual for Complex Litigation*
    § 21.632 (4th ed. 2004) ................................................................................ 10

## I.      <u>INTRODUCTION</u>

After more than ten years of hard-fought litigation, the parties have reached a settlement that will bring this litigation to a close.  Under a class settlement negotiated at arm's length and described in more detail below, Defendants Pfizer Inc. and Warner-Lambert Company LLC ("Defendants") will pay $325 million to resolve the claims of Class Members (defined below) arising out of the sale and marketing of the drug Neurontin.  This settlement, which provides significant and long-awaited benefits to Class Members, exceeds the standard for preliminary approval of a class action settlement.  Class Plaintiffs[1] respectfully seek preliminary approval of the settlement, certification of the Class for settlement purposes, approval of the proposed form of notice and notice plan, and that the Court schedule a hearing to determine whether to grant final approval to the settlement.

## II.     <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

Beginning in 2004, in numerous complaints in jurisdictions across the country, various payors of Neurontin alleged that Defendants fraudulently marketed Neurontin and caused them economic harm.  These complaints were centralized for pretrial proceedings before this Court as Multidistrict Litigation No. 1629.  On December 16, 2004, the Court entered an order, establishing, among other things, the Plaintiffs' Steering Committee and delineating its responsibilities for the management of the consolidated actions.  (*See* Dkt. No. 15.)  Class Plaintiffs filed a consolidated class action complaint on February 1, 2005 (Dkt. No. 30), asserting violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO") and other statutory and common law claims.  Other third-party payor plaintiffs filed separate individual cases asserting substantially the same claims, as well as state antitrust and

---

[1] Class Plaintiffs are defined here as Harden Manufacturing Corporation, Louisiana Blue Cross/Blue Shield, and ASEA/AFSCME Local 52 Health Benefits Trust.

state consumer protection claims, against Defendants, including a group of payors referred to here and in the settlement agreement as the Assurant Plaintiffs.[2]  *See* Settlement,[3] at 1-2; *Assurant Health, Inc., et al. v. Pfizer Inc., et al.*, No. 05-10535-PBS (D. Mass.).

In their complaint, Class Plaintiffs alleged that Defendants engaged in a fraudulent scheme to market and sell Neurontin for a variety of uses for which it was neither approved by the Food and Drug Administration ("FDA") nor medically efficacious. Although the FDA approved Neurontin for a relatively narrow indication – as adjunctive therapy for adult epilepsy, and later, for treatment of post-herpetic neuralgia – Class Plaintiffs alleged that Defendants sought to market Neurontin for several off-label uses in a variety of ways, including through false or misleading statements to physicians at conferences and medical education events, directly to physicians through sales representatives, and in medical publications.  As the Court summarized Class Plaintiffs' allegations, "plaintiffs allege[d] that defendants' off-label promotion scheme constituted a pervasive fraud designed to saturate the medical community with false information about Neurontin's efficacy for several highly profitable off-label indications."  *In re Neurontin Marketing, Sales Pracs. & Prods. Liab. Litig.*, 257 F.R.D. 315 (D. Mass. 2009).

The Assurant Plaintiffs' case, filed on November 24, 2004 as an individual action against Pfizer in state court in New Jersey, was removed by Pfizer to federal court and ultimately transferred to the Marketing and Sales MDL in the District of Massachusetts.  Since its initial

---

[2] The Assurant Plaintiffs include:  Assurant Health, Inc.; Blue Cross and Blue Shield of Florida, Inc.; Louisiana Health Service & Indemnity Company; Blue Cross Blue Shield of Massachusetts; Blue Cross Blue Shield of Michigan; Blue Cross Blue Shield of Minnesota, CareFirst, Inc., Excellus Health Plan, Inc.; Federated Mutual Insurance Company; Group Health of Oklahoma, Health Care Service Corporation; Mutual of Omaha Insurance Company; Trustmark Insurance Company; Wellchoice, Inc. and Wellchoice of New Jersey, Inc. (now part of WellPoint, Inc.).

[3] The Settlement is attached as Exhibit A to this Memorandum.

transfer in 2004 to the Marketing and Sales MDL, the Assurant Plaintiffs' original complaint has been stayed by stipulation, at the direction of the Court.  That stay required all appeals to be exhausted, including any petition before the Supreme Court, before it could be lifted.

Defendants moved to dismiss Class Plaintiffs' complaint.  The Court granted in part Defendants' motion to dismiss Class Plaintiffs' complaint, *see In re Neurontin Marketing, Sales Pracs. & Prods. Liab. Litig.*, 433 F. Supp. 2d 172 (D. Mass. 2006), and allowed amendment. Plaintiffs ultimately filed a second, third, and fourth amended complaint.  (*See* Dkt. Nos. 379, 580, and 3373.)

Discovery proceeded over the course of years, and was a monumental undertaking. Defendants produced, and Plaintiffs' counsel reviewed, several million pages of documents. Plaintiffs took the depositions of 89 fact witnesses in 130 days of testimony in locations across the country and obtained additional written discovery from Defendants.  Numerous third parties produced substantial volumes of documents and provided testimony pursuant to subpoena. Plaintiffs also took 25 days of deposition testimony from Defendants' experts, and presented expert opinion in connection with class certification.  Counsel for the Assurant Plaintiffs worked actively and in coordination with Class Counsel and counsel for the Coordinated Plaintiffs (Kaiser Foundation Health Plan and Kaiser Foundation Hospitals, Guardian Life Insurance Company, and Aetna, Inc.) on document discovery and fact and expert depositions.

The parties heavily litigated class certification.  Class Plaintiffs' first class certification motion was denied without prejudice on August 29, 2007.  *See In re Neurontin Marketing, Sales Pracs. & Prods. Liab. Litig.*, 244 F.R.D. 89 (D. Mass. 2007).  After further discovery, Plaintiffs renewed their motion for class certification, which the Court denied.  *In re Neurontin Marketing, Sales Pracs. & Prods. Liab. Litig.*, 257 F.R.D. 315 (D. Mass. 2009).  Following additional

discovery, Class Plaintiffs moved for reconsideration of the Court's denial of their renewed motion for class certification and proposed a narrower class, consisting of TPPs who paid for Neurontin prescriptions for bipolar disorder.  The Court denied that motion in 2011.  *See In re Neurontin Marketing, Sales Pracs. & Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 61636 (D. Mass. May 17, 2011).  Prior to this motion for reconsideration, the Court granted Defendants' summary judgment motion as to all plaintiffs except two consumer class representatives.  *In re Neurontin Marketing, Sales Pracs. & Prods. Liab. Litig.*, 754 F. Supp. 2d 293 (D. Mass. 2010).

Class Plaintiffs timely appealed the Court's decisions on summary judgment and class certification.  In 2013, the First Circuit Court of Appeals reversed the grant of summary judgment and vacated the denial of class certification.  *See In re Neurontin Marketing, Sales Pracs. & Prods. Liab. Litig.*, 712 F.3d 60 (1st Cir. 2013).  Pfizer petitioned the United States Supreme Court for a writ of certiorari, which Class Plaintiffs opposed and which the Supreme Court denied on December 9, 2013.  *See Pfizer, Inc., et al. v. Harden Manufacturing Corp., et al.*, 134 S. Ct. 786 (2013).  Class Plaintiffs again renewed their motion for class certification (Dkt. No. 4153), and Pfizer again opposed the motion (Dkt. No. 4168).

While the most recent class certification motion was pending, the parties began intensive arm's length negotiations aimed at resolving all pending claims, including those asserted by the Class Plaintiffs and by the Assurant Plaintiffs.  The parties engaged a highly experienced and universally respected mediator, Hon. Layn Phillips, a retired federal district court judge, and held a full-day, in-person mediation on March 25, 2014.  A second, in-person, full-day mediation on April 13, 2014 followed, with numerous interim phone calls and correspondence between the parties and their counsel, resulting in an agreement in principle.  In the weeks that followed, the parties finalized the settlement agreement ("Settlement"), which Class Plaintiffs now present to

the Court for preliminary approval.

## III.   MATERIAL TERMS OF THE SETTLEMENT

### A.   The Settlement Class and Subclass

The Settlement defines the proposed Settlement Class as follows:

> All third-party payors ("TPPs") in the United States and its territories who purchased, paid for, administered, and/or reimbursed all or any portion of the price for Neurontin or for gabapentin sold by Greenstone LLC at any time from their first sale in the United States through the Effective Date for purposes other than resale.  The TPPs in the Class include, but are not limited to, insurance companies, healthcare benefit providers, health maintenance organizations, union health and welfare plans, self-funded health and welfare plans, and any other health benefit provider and/or entity that contracts with a health insurance company or other entity to serve as a third-party claims administrator to administer their prescription drug benefits, entities that may provide prescription drug benefits for current or former public employees and/or retirees, and private entities that provide pharmacy benefits for a state Medicaid program or Medicare Part D to the extent such entities are at risk for the payment of the cost of Neurontin prescriptions for their insureds; provided that the following TPPs are excluded from the Class:  Kaiser Foundation Health Plan, Inc. and its subsidiaries; Aetna, Inc.; Blue Cross and Blue Shield of Alabama; Municipal Workers Compensation Fund, Inc.; and Union of Operating Engineers, Local No. 68 Welfare Fund.

Settlement ¶ 1.1.

The proposed Class does not include: (a) The Defendants and their officers, directors, management, employees, predecessors-in-interest, successors-in-interest, assignees or affiliates, and subsidiaries; (b) The United States and/or State governments and their agencies and department, except to the extent they purchased branded Neurontin or its generic equivalents for their employees or others covered by a government employee health plan; and (c) Any judge or special master who has presided over the Actions.  Settlement ¶ 1.2.

The proposed Class includes, without limitation, Class Plaintiffs, the Assurant Plaintiffs

and qualifying TPPs.

In addition, the Settlement provides for a Subclass defined as follows:

> All indirect purchasers in the Class who, on or before December 31, 2008, commenced a lawsuit alleging that the Defendants violated state antitrust laws by delaying the entry of generic gabapentin into the marketplace and which was still pending as of May 23, 2014.

> Subclass A includes the plaintiffs in *Assurant Health, Inc., et al. v. Pfizer, Inc., et al.*, 04-cv-10981-PBS identified as Assurant Health, Inc.; Blue Cross and Blue Shield of Florida, Inc.; Louisiana Health Service & Indemnity Company; d/b/a Blue Cross Blue Shield of Louisiana; Blue Cross Blue Shield of Massachusetts; Blue Cross Blue Shield of Michigan; Blue Cross Blue Shield of Minnesota; CareFirst, Inc.; Blue Cross Blue Shield of Delaware, Inc.; Excellus Health Plan, Inc.; Federated Mutual Insurance Company; Group Health of Oklahoma, Health Care Service Corporation, Mutual of Omaha Insurance Company, Trustmark Insurance Company, WellChoice, Inc. and WellChoice of New Jersey, Inc. as well as their subsidiaries and affiliates named in the Assurant Action and self-insured customers on whose behalf they had authority to pursue claims in the Assurant Action.

Settlement ¶ 1.3.

The Assurant Plaintiffs' complaint alleged an over-arching scheme involving unlawful marketing *coupled with* unlawful anticompetitive actions.[4]  The Assurant Plaintiffs alleged that Pfizer engaged in an unlawful off-label marketing campaign, and created a robust off-label market for Neurontin, encouraging the drug's use for the treatment of pain, bipolar disorder, migraines, dosing over 1800 mg, and other unapproved uses.  The Assurant Plaintiffs' Complaint also alleged that Pfizer engaged in unlawful conduct between 2000 and 2004 specifically to forestall the entry of generic gabapentin competition.  As a result, the Assurant Plaintiffs were required to pay for branded versions of Neurontin, for both approved and unapproved uses, when they could have and should have been paying for generic gabapentin starting as early as 2000.

---

[4] *Assurant Health, Inc., et. al. v. Pfizer, Inc., et al.,* Dkt. No. L1379204 (N.J. Sup. Ct., Law Div., Bergen Cty.).

The Assurant Plaintiffs' suit is the only one still pending in which TPPs allege non-time-barred antitrust claims related to Pfizer's patent infringement scheme.

The Assurant Plaintiffs constitute an appropriate subclass of the settlement class for purposes of effectuating an overall settlement and resolving long-running litigation.  The additional antitrust claim asserted by the Assurant plaintiffs includes different elements and facts than the class wide Civil RICO claim that has been the focus of the Class Plaintiffs' efforts, but, like the RICO claim, sounds in economic loss, provides for the same damages, and arises from the marketing and sales of the same drug by the same defendant.

The designation of small subclasses within a settlement class structure in which the subclass members are also members of the larger class, as is the case here, is proper under Rule 23(c)(5). As noted in *Newberg*, in such cases "courts have held that the subclass may not be required to satisfy independently the numerosity requirement."  1 *Newberg on Class Actions* § 3:16, at 223-24 (5th ed. 2011).  This approach is proper as a matter of court discretion because (as here) "subclasses will occasionally be quite small, with relatively few class members possessing the designated subclass characteristics ... small subclasses have often been designated and upheld for reasons of convenience and judicial economy."  *Id.  See also Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 8 (D.D.C. 2010); *Clarkson v. Coughlin*, 145 F.R.D. 339, 348 (S.D.N.Y. 1993) (7-member subclass certified). Here, the Assurant subclass also meets the additional Rule 23 factors.  As listed above, its members are known, Assurant's claims are typical of this group (all members' claims are identically asserted), with commonality and predominance, in the settlement context, also thus assured.  The group has been adequately and independently represented with respect to its antitrust claims.

**B.**     **The Settlement Fund**

The Settlement provides that Defendants will pay $325,000,000 ("Settlement Fund") to

settle the claims of Class and the Subclass.  (Settlement ¶ 6.)

C.        **Attorneys' Fees and Expenses**

Class Counsel will separately apply for payment from the Settlement Fund to compensate

them for their work on behalf of the Settlement Class and for their litigation expenses incurred in

this litigation.  Class Counsel's application will be limited to seeking an award of attorneys' fees

in an amount not to exceed 33.33% of the total Settlement Fund, and will seek reimbursement of

reasonable costs and expenses incurred in the prosecution of this litigation, also to be paid from

the Settlement Fund.  (Settlement ¶ 10.1)  In addition, Class Counsel have entered into a separate

agreement concerning attorneys' fees with the Assurant Plaintiffs and their counsel.  (*Id.*; Exh. D

to Settlement.)

D.        **Compensation Payments to Class Representatives**

Settlement Class Counsel will also petition the Court for compensation payments for the

Class Representatives, in an amount not to exceed $25,000 each, to compensate them for their

time and commitment on behalf of the Settlement Class in this litigation, to be paid from the

Settlement Fund.  (Settlement ¶ 10.4.)

E.        **Plan of Distribution**

The Settlement incorporates a Plan of Distribution (attached as Exhibit B to the

Settlement), which sets forth the process by which Class Members may submit claims for

payment from the Settlement Fund, including required documentation, and the method of

calculation of settlement payments that the Claims Administrator[5] will employ in administering

---

[5] The Settlement provides that Class Plaintiffs' preliminary approval motion will seek, and Class
Plaintiffs' motion does seek, the Court's approval of a Claims Administrator, specifically Rust
Consulting.

claims from Class Members and Subclass Members.[6]

### F.     Class Action Settlement Notice Program

The Settlement provides that this preliminary approval motion shall include a proposed notice plan to be jointly developed and agreed upon by the parties.  (Settlement ¶ 3.)  The parties have developed and agreed upon a proposed form of notice and a notice program that is designed to ensure the best notice practicable under the circumstances and describes the key terms of the Settlement, the claims deadline, Class Counsel's fee and expense application, and Class Members' opt-out and objection rights.  The costs of disseminating notice will be paid from the Settlement Fund.  (Settlement ¶ 3.)  The notice and plan of notice are described in more detail below.

### G.     Mutual Release

In exchange for the benefits provided under the Settlement, Class Members and the Subclass Members will release Defendants from any claims they may have related to the issues in this litigation.  (Settlement ¶ 11.)  Although Class Plaintiffs focused their claims later in the litigation to those involving prescriptions for bipolar and other mood disorders, the release will encompass all claims and all indications that were or could have been asserted in the MDL.  "It is well-settled that 'in order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.'"  *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1044 (1st Cir. 1996) (quoting *TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456, 460 (2d Cir. 1982)).

---

[6] As the Plan of Distribution explains, properly supported claim amounts from Subclass Members accepted by the Settlement Administrator will receive a multiplier of 1.80, reflecting the fact that Subclass members filed and litigated claims not asserted by Class Plaintiffs.

Likewise, although Class Members other than the Assurant Plaintiffs did not assert timely antitrust claims, the release will encompass all such claims that could have been asserted.  Other than the claims by the Assurant Plaintiffs before this Court, there are no pending indirect purchaser claims concerning Neurontin, and it is highly unlikely any plaintiff could assert such a claim today given the expiration of the relevant statutes of limitations.  In August 2002, 17 individual and putative class action indirect purchaser suits that had been filed against Pfizer/Warner-Lambert were consolidated for coordinated pretrial proceedings in the District of New Jersey.  The suits were brought under the antitrust and/or deceptive practice statutes of 22 states and the District of Columbia, all making similar allegations—that Pfizer/Warner-Lambert engaged in anti-competitive conduct to delay and prevent generic competition for Neurontin. The indirect purchaser consolidated class complaint was dismissed by stipulation on April 2, 2009, after all of the named indirect purchaser plaintiffs voluntarily dismissed their individual claims without prejudice.  *See* Order Dismissing Consolidated Class Action Complaint, *In re Neurontin Antitrust Litig.*, Case No. 2:02-cv-1390-FHS-PS (D.N.J. April 2, 2009), ECF No. 178.

## IV.    PRELIMINARY APPROVAL SHOULD BE GRANTED.

Approval of a class action settlement under Fed. R. Civ. P. 23(e) involves a two-step process.  First, counsel submits the proposed terms of settlement and the court makes a preliminary fairness evaluation.  *See Federal Judicial Center, Manual for Complex Litigation* § 21.632 (4th ed. 2004) (hereafter "*Manual*"); *see also* 4 *Newberg on Class Actions* § 11:25, at 38-39 (4th ed. 2002) (endorsing two-step process).  In this preliminary evaluation of a proposed settlement, courts determine only whether the settlement has "obvious deficiencies" to determine whether "it is in the range of fair, reasonable, and adequate."  *In re: M3Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 52 (D. Mass. 2010) (Woodlock, J.) (citing *Manual* § 21.632).  In this Circuit and elsewhere, settlements are favored, particularly of class actions.  *In*

*re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)).

"At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather the Court need only determine whether it falls within the range of possible approval." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D. Mass. 2010) (Dominguez, J.). "Ultimately, the more fully informed examination required for final approval will occur in connection with the Final Fairness Hearing, where arguments for and against the proposed settlement will be presented after notice and an opportunity to consider any response provided by the potential Class Members." *In re M3 Power Razor Sys.*, 270 F.R.D. at 62.

If the Court finds that the parties reached the settlement as a result of arm's length negotiations and after sufficient discovery, then a presumption of fairness attaches to the settlement. *See In re Pharm. Indus. Avg. Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009). Specifically, courts in this Circuit have looked to four factors to determine whether a settlement is entitled to such a presumption: "(1) the negotiations occurred at arm's length; 2) there was sufficient discovery; 3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[7] *In re Lupron Mktg. & Sales Pracs. Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (Stearns, J.) This settlement more than satisfies the relevant criteria for preliminary approval.

First, the parties engaged in extensive arm's length negotiations to achieve the Settlement. This Settlement is a product of negotiations supervised by an extremely experienced mediator, Hon. Layn Phillips, including two, separate, full-day mediations and numerous

---

[7] The fourth factor is more often relevant for purposes of final approval, after notice has issued and class members have been given an opportunity to opt-out or object to a settlement.

additional telephone calls and correspondence concerning the settlement terms.

Second, there can be no question that there was sufficient discovery over the ten years that these cases have been pending.  The parties engaged in a massive amount of discovery, through summary judgment and class certification, up to the First Circuit Court of Appeals and United States Supreme Court, and then back to the trial court to prepare for a renewed class certification motion and trial.  In addition, Class Counsel and counsel for Defendants participated in a four-week trial (the Kaiser Civil RICO trial) that ended with a jury verdict for the plaintiff and which involved claims and facts related to those at issue in these cases.

Finally, the experience of counsel is relevant to the Court's determination of whether a settlement should be preliminarily approved.  This Court has previously found that Class Counsel are experienced and qualified.  Defendants' counsel are also highly experienced in class actions and complex litigation generally, and pharmaceutical marketing litigation including prosecution and resolution of third party payor claims, specifically.  *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010) (holding, in final approval context, that "[t]he quality of the opposition should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance").  Class Counsel include the attorney who has been involved in Neurontin-related litigation for eighteen years, dating back to the *qui tam* case filed in 1996.  Class Counsel also include firms that have successfully prosecuted numerous pharmaceutical marketing fraud class actions and other complex litigation.  Class Counsel have considered the benefits of this settlement and the delays and risk of non-recovery for the Class attendant to continued litigation through class certification, trial, and potential appeals.  In their informed assessment, this settlement, believed to be the largest third party payor settlement involving a single drug, is unquestionably fair and reasonable.

## V.   **CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.**

Settlement of a class action requires the Court's approval.  *See* Fed. R. Civ. P. 23(e).

Courts routinely certify classes solely for settlement purposes.  *See Manual* § 21.612, at 313 )

("Settlement classes – cases certified as class actions solely for settlement – can provide

significant benefits to Class Members and enable the defendants to achieve final resolution of

multiple suits.").[8]

Rule 23's requirements apply to settlement classes.  Federal Rule of Civil Procedure 23

"states that '[a] class action may be maintained' if two conditions are met: The suit must satisfy

the criteria set forth in subdivision (a) ( i.e., numerosity, commonality, typicality, and adequacy

of representation), and it also must fit into one of the three categories described in subdivision

(b)."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 399 (2010)

(quoting Fed. R. Civ. P. 23).

This Court has previously found all but Rule 23(b)(3)'s superiority requirement satisfied,

holding, in its decision on Class Plaintiffs' motion for reconsideration of the Court's denial of

class certification, that damages issues presented manageability issues.  *See In re Neurontin*,

2011 U.S. Dist. LEXIS 61636, at *59.  However, the Court need not, in the settlement context,

"inquire whether the case, if tried, would present intractable management problems" as part of its

determination, under Rule 23(b)(3)(D), of whether a class action is superior to other methods for

adjudicating the controversy.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).[9]

---

[8] None of the concerns that the *Manual* identifies in certain settlement classes, particularly lack of discovery due to early settlement, are present here.  *See Manual* § 21.612, at 313-14.

[9] The First Circuit has endorsed settlement classes which are broader than classes allowed in the litigation context.  *See In re Pharmaceutical Industry Avg. Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009) (holding that it was "perfectly clear why the district court expanded the settlement class" to allow for global resolution of all remaining claims); *accord City P'ship Co.*, 100 F.3d at 1044.

The proposed class and subclass[10] may be certified for settlement purposes.

### A.    Rule 23(a)'s Requirements Are Satisfied.

#### 1.    Numerosity

Rule 23(a)(1) requires a showing that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This Court previously found that Class Plaintiffs satisfy Rule 23(a)(1)'s numerosity requirement. *See Neurontin*, 257 F.R.D. at 320 (holding that there is "no question that joinder in this case would be impracticable").

#### 2.    Commonality

Under Rule 23(a)(2)'s commonality requirement, a plaintiff must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court has held, even a "single common question will satisfy" Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). This case has presented numerous common questions of law and fact, from whether Defendants fraudulently marketed Neurontin for off-label uses, to whether Neurontin was ineffective for various off-label indications, to whether an enterprise existed for purposes of liability under RICO, and more. This Court has held that Class Plaintiffs satisfy the commonality requirement. *See Neurontin*, 257 F.R.D. at 319.

#### 3.    Typicality

Rule 23(a)(3) provides that a plaintiff's claims must be "typical of the claims or defenses

---

[10] Federal Rule of Civil Procedure 23(c)(5) calls for the certification of subclasses "[w]hen appropriate," and courts have routinely certified subclasses where, as here, the subclass is defined to include class members who have a separate or distinct claim or claims, potentially implicating, for example, differences in damages calculations. *See, e.g., In re Evergreen Ultra Short Opportunities Fund Secs. Litig.*, 275 F.R.D. 382, 392 (D. Mass. 2011); *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 269 (D. Mass. 2008). Indeed, "[s]ubclasses must be created when differences in the positions of class members require separate representatives and separate counsel." *Manual*, § 21.23 (quoted in *Natchitoches Parish Hosp.*, 247 F.R.D. at 269). Here, Subclass A's representative is Blue Cross and Blue Shield of Massachusetts, Inc., and its counsel is W. Scott Simmer, Thomas J. Poulin and Mary Ann Mullaney of Blank Rome LLP.

of the class." Fed. R. Civ. P. 23(a)(3).  As this Court has explained:

> A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other Class Members and her claims are based on the same legal theory.  Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the  same essential characteristics as the claims of the class at large.

*Neurontin*, 257 F.R.D. at 321 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004)).  The three class representatives' claims arise from the same course of conduct and rely on the same legal theory as the rest of the class, satisfying Rule 23(a)(3).

### 4.    Adequacy

As this Court has held, Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Neurontin Mktg. & Sales Pracs. Litig.*, 244 F.R.D. 89, 107 (D. Mass. 2007) (quoting *Amchem*, 521 U.S. at 625).  Even in the litigation context, Defendants did not identify any such conflicts, and the Court found that Class Plaintiffs satisfied Rule 23(a)(4)'s requirement of adequacy of representation.  *See id.*

### B.    Rule 23(b)(3) is Satisfied.

Rule 23(b)(3) requires that "questions of law or fact common to Class Members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3)'s predominance standard does not, as the Supreme Court recently held, "require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (internal citations and alterations omitted).  Class Plaintiffs satisfy both the predominance and superiority requirements of Rule 23(b)(3).

As to predominance, this Court has found that, as to liability issues, "common issues

predominate over individual TPP issues." *In re Neurontin Mktg. & Sales Pracs. Litig.*, 2011

U.S. Dist. LEXIS 61636, at *52 (D. Mass. 2011).  Rule 23(b)(3) "does *not* require a plaintiff

seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to

classwide proof.'  *Post* [dissent], at 7.  What the rule does require is that common questions

'*predominate* over any questions affecting only individual[class] members.' Fed. Rule Civ. Proc.

23(b)(3) (emphasis added)."

     As to superiority, because the claims are being certified for purposes of settlement, there

are no issues with manageability, and resolution of thousands of claims in one action is far

superior to individual lawsuits and promotes consistency and efficiency of adjudication.  *See*

Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615 (holding that a class action is the superior

method of adjudication if it will "achieve economies of time, effort, and expense, and promote

… uniformity of decision as to persons similarly situated, without sacrificing procedural fairness

or bringing about other undesirable results").

     **C.**    **Rule 23(g) is Satisfied.**

     Rule 23(g) provides that the Court must appoint class counsel when it certifies a class.

Rule 23(g) sets forth several factors that the Court must consider, including:

> (i) the work counsel has done in identifying or investigating potential
> claims in the action; (ii) counsel's experience in handling class actions,
> other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and (iv) the resources that
> counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(A)(i)-(iv). This Court has already found that Plaintiffs' counsel are

"experienced and highly-qualified."  *Neurontin*, 244 F.R.D. at 108.  Counsel's persistence and

willingness to commit extraordinary resources to this case have paid off in this settlement,

confirming the Court's assessment from 2007.  Proposed class counsel satisfy Rule 23(g).

**VI.**     <u>**THE PROPOSED FORM OF NOTICE AND NOTICE PLAN SHOULD BE**</u>
<u>**APPROVED.**</u>

    **A.**     <u>**The Proposed Class Notice Provides For The Best Notice Practicable Under**</u>
<u>**The Circumstances.**</u>

Under Rule 23(e), this Court must direct notice in a reasonable manner to Class Members

who would be bound by the proposed class settlement. *See* Fed. R. Civ. P. 23(e). The proposed

forms of notice and notice program here fully comply with due process and Fed. R. Civ. P. 23.

Rule 23(c)(2)(B) requires "the best notice practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort." Fed. R. Civ.

P. 23(c)(2)(B); *see also Amchem*, 521 U.S. at 617. Here, individual mailed notice is practicable,

satisfying Rule 23(c)(2)(B). *See also Manual*, § 21.311, at 292 ("Individual notice generally is

preferable."). Mailed notice will be supplemented with publication notice in appropriate national

and regional media of a Summary Notice, and through a website that will include easy access to

a Long-Form Notice and other key case documents.[11]

    **1.**     <u>**Mailed Notice**</u>

The Notice will be sent to Class Members via U.S. Mail. The Settlement Administrator

will update all mailing addresses through the National Change of Address database, and mail the

notice to each Class Member. As explained in the Coggeshall Declaration, the Settlement

Administrator maintains and will use a proprietary database that it has developed and updated

since 2001 to provide notice in numerous class action matters involving TPP class members.

Coggeshall Decl. ¶¶ 8-9.

To the extent Notices are returned with forwarding address information, the Settlement

---

[11] The Notice, Summary Notice, and Long-Form Notice are attached as Exhibits 1-3, respectively, to the accompanying Declaration of Daniel Coggeshall In Support of Proposed Settlement Notice Program, Form of Notice and Appointment of Notice Administrator ("Coggeshall Decl."), attached as Exhibit A to the Settlement Agreement.

Administrator will re-mail the Notice to the new address indicated.  If Notices are returned as undeliverable and without a forwarding address, the Settlement Administrator will submit those addresses to perform additional address trace searches and re-mail the Notice with the new address information.  *See* Coggeshall Decl. ¶ 20.

### 2.     Settlement Website and Long-Form Notice

On or before the date mailed notice commences, the Settlement Administrator will establish a Settlement Website, where Class Members may submit claims electronically, obtain additional information about the Settlement, and access copies of the Long-Form Notice; the Settlement and exhibits (including the Plan of Distribution); the Court's Preliminary Approval Order; and other case documents.  The web address for the Settlement Website will be included in the Notice.

### 3.     Toll-Free Number and E-Mail Address

The Settlement Administrator will also establish and maintain a toll-free number where Class Members can obtain additional information and request copies of the notice.  The toll-free number will be included in the Notice.  The Settlement Administrator will also establish a dedicated email address, also to be included in the Notice, to allow persons to submit questions or inquiries.

### 4.     Opt-Out Procedure

Any Class Member may request to be excluded from the Settlement Class by sending a signed, written request to the Settlement Administrator by the deadline prescribed by the Notice.

### 5.     Opportunity to Object

Class Members who do not timely and validly request exclusion may object to the Settlement, Class Counsel's fee and expense application, and/or the request for compensation payments for the Class Representatives.  To be considered, an objection must be sent to the

counsel for both parties and to the Clerk of the Court, at the addresses indicated in the notice, must be postmarked by the deadline prescribed by the notice,  and must include the information prescribed by the Notice.

**B.      The Proposed Form Of Class Notice Adequately Informs Class Members Of Their Rights In This Litigation.**

The proposed Notice also satisfies Rule 23(c)(2)(B)'s requirements for the content of the notice.  The rule provides that:

> The notice must concisely and clearly state in plain, easily understood language:  the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a Class Member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on Class Members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  According to the *Manual, supra*, at § 21.312, the settlement notice should:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

• Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

• Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed notice satisfies all of the above criteria. *See also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003). In addition, the notice directs Class Members to the settlement website and makes clear that Class Members have access to the full settlement agreement and other relevant documents.

## VII.   THE COURT SHOULD SCHEDULE A FAIRNESS HEARING AND SET CORRESPONDING DEADLINES.

The next steps in the settlement approval process are to notify the Settlement Class of the proposed Settlement, allow Class Members an opportunity to exclude themselves or file objections, and hold a Final Approval Hearing. Towards those ends, the parties propose the following schedule:

| | |
|---|---|
| Last day for the Settlement Administrator to complete the initial mailing of the Notice. | **June 13, 2014**[12] |
| Last day for: (a) the Parties to file any motions in support of final approval of the Settlement; and (b) Settlement Class Counsel to file their Fee Application and request for compensation payments for the Class Representatives. | **August 1, 2014** |
| Opt-Out Deadline | **August 18, 2014** |
| Objection Deadline | **August 18, 2014** |

---

[12] It is anticipated that the initial mailing of the Notice can begin no later than two weeks after the Court enters an order granting this motion.

| Last day for the Parties to file any additional papers in support of final approval of the Settlement, responses to objections and any replies in support of Settlement Class Counsel's Fee Application. | **August 25, 2014** |
|---|---|
| Claim Deadline | **September 2, 2014** |
| Final Approval Hearing | **On or after September 15, 2014** |

## VIII.   CONCLUSION

For the foregoing reasons, Class Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) certify the Class for settlement purposes; (3) appoint the Class Plaintiffs as Class Representatives; (4) appoint Class Counsel; (5) appoint a Claims Administrator; (6) approve the proposed notice plan and form of notice; (7) schedule a hearing for final approval of the Settlement; and (8) temporarily bar Class Members, directly or representatively, from commencing or prosecuting any action or proceeding in any court or tribunal asserting any of the Released Claims (as defined in the Settlement) against the Released Parties (as defined in the Settlement) pending final determination of whether the Settlement should be approved.[13]  A proposed order granting these requests accompanies this Memorandum.

Dated: May 30, 2014                              Respectfully Submitted,


                                                  By:      /s/ Thomas M. Sobol
                                                           Thomas M. Sobol
                                                           Hagens Berman Sobol Shapiro LLP
                                                           One Main Street, 4th Floor
                                                           Cambridge, MA  02142
                                                           Boston, MA 02110

---

[13] The All Writs Act, 28 U.S.C. § 1651, authorizes such orders to ensure the integrity and orderly completion of the class settlement approval process.  *See In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir 1985); *Wyly v. Weiss*, 697 F.3d 131 (2d Cir. 2012); *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220 (3d Cir. 2002).

By:      */s/ Thomas Greene*
         Thomas Greene
         Greene LLP
         One Liberty Square, Ste. 1200
         Boston, MA 02109


By:      */s/ Elizabeth J. Cabraser*
         Elizabeth J. Cabraser
         Lieff Cabraser Heimann &
             Bernstein, LLP
         Embarcadero Center West
         275 Battery Street, 30th Floor
         San Francisco, CA 94111-3339

By:      */s/ Don Barrett*
         Don Barrett
         Barrett Law Office
         404 Court Square North
         P.O. Box 987
         Lexington, MS 39095


By:      */s/ Daniel Becnel*
         Daniel Becnel, Jr.
         Law Offices of Daniel Becnel, Jr.
         106 W. Seventh Street
         P.O. Drawer H
         Reserve, LA 70084


By:      */s/ James Dugan*
         James Dugan
         Dugan & Browne
         650 Poydras St., Suite 2150
         New Orleans, LA 70130


***Members of the Class Plaintiffs'
Steering Committee***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system has been served

pursuant to Case Management Order #3 on May 30, 2014.

*/s/ Thomas Sobol*
Thomas Sobol
