# EXHIBIT A

## to the Memorandum in Support of Motion for Preliminary Approval

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL THIRD-PARTY PAYOR ACTIONS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | MDL Docket No. 1629<br><br>Master File No. 04-10981<br><br>Chief Judge Patti B. Saris<br>Magistrate Judge Leo T. Sorokin |

### SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Settlement Agreement") is made and entered into on May 28, 2014, by and between

(a)     Pfizer Inc. and Warner-Lambert Company LLC (collectively, "Defendants");

(b)     Harden Manufacturing Corporation; Louisiana Health Service Indemnity Company, d/b/a Blue Cross/Blue Shield of Louisiana; and ASEA/AFSCME Local 52 Health Benefits Trust, plaintiffs (collectively, "Class Plaintiffs"), individually and on behalf of a proposed third-party payor class, in *Harden Manufacturing Corp., et al. v Pfizer Inc., et al. (In re Neurontin Marketing Products Liability and Sales Practices Litigation)*, No. 04-10981-PBS, MDL Docket No. 1629 (D. Mass.) (the "Class Action");

(c)     Assurant Health, Inc.; Blue Cross and Blue Shield of Florida, Inc.; Louisiana Health Service & Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana; Blue Cross Blue Shield of Massachusetts; Blue Cross Blue Shield of Michigan; Blue Cross Blue Shield of Minnesota; CareFirst, Inc.; Blue Cross Blue Shield of Delaware, Inc.; Excellus Health Plan, Inc.; Federated Mutual Insurance Company; Group Health Service of Oklahoma d/b/a Blue Cross Blue Shield of Oklahoma; Health Care Service Corporation; Mutual of Omaha Insurance Company; Trustmark Insurance Company; WellChoice, Inc.; and WellChoice Insurance of

New Jersey, Inc., which are plaintiffs in *Assurant Health, Inc., et al. v Pfizer Inc., et al. (In re Neurontin Marketing Products Liability and Sales Practices Litigation)*, No. 05-10535-PBS (D. Mass.) (the "Assurant Action"), together with their subsidiaries and affiliates named in the Assurant Action and the self-insured customers on whose behalf they had authority to pursue claims in the Assurant Action (collectively, the "Assurant Plaintiffs").

Class Plaintiffs and the Assurant Plaintiffs are collectively referred to herein as "Plaintiffs." Class Plaintiffs, the Assurant Plaintiffs and Defendants are collectively referred to as the "Parties." The Class Action and the Assurant Action are collectively referred to herein as the "Actions."

WHEREAS, Class Plaintiffs initially brought their class complaint against Defendant in the United States District Court for the District of Massachusetts (the "Court"), alleging, among other things, that Defendants' marketing of the drug Neurontin violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and that Class Plaintiffs and the Class (as further defined in section 1 below) suffered economic injury and calculable damages as a result;

WHEREAS, Assurant Plaintiffs initially brought a lawsuit in New Jersey state court, alleging, among other things, that Defendants' marketing and other conduct regarding the drug Neurontin violated state antitrust and consumer protection statutes and that the Assurant Plaintiffs suffered economic injury, antitrust injury, and calculable damages as a result;

WHEREAS, Defendants deny each and every one of Class Plaintiffs' and the Assurant Plaintiffs' allegations of fraudulent or misleading conduct or antitrust violations, and deny that any conduct challenged by Class Plaintiffs and the Assurant Plaintiffs caused any injury or damage whatsoever and have asserted a number of defenses to Class Plaintiffs' and the Assurant Plaintiffs' claims;

WHEREAS, the Parties agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability

or wrongdoing by Defendants or of the truth of any claim or allegation or a waiver of any defenses thereto;

WHEREAS, arm's length settlement negotiations have taken place between counsel for the Parties for an extended period of months, and this Settlement Agreement, which embodies all of the terms and conditions of the settlement (the "Settlement") between Plaintiffs and Defendants, both individually and on behalf of the Class (as defined in section 1 below), has been reached, subject to final approval of the Court; and

WHEREAS, Plaintiffs and their counsel have concluded, after extensive discovery, investigation, motion practice, and appellate practice, and after carefully considering all of the circumstances of the Class Action and the Assurant Action, and despite their belief in the validity of Plaintiffs' claims, that it would be in the best interests of the Class to enter into this Settlement Agreement in order to avoid the uncertainties of, and risks and delays associated with, the outcome of a trial and/or any subsequent appeals, and to assure a benefit to the Class and further, that Plaintiffs and their counsel consider the Settlement to be fair, reasonable, and adequate and in the best interests of the Class; and

WHEREAS, Defendants have concluded, despite their belief that they are not liable for the claims asserted and that they have good defenses thereto, that it would be in their best interests to enter into this Settlement Agreement to avoid further expense, inconvenience, uncertainties of, and risks and delays associated with a trial and/or any subsequent appeals, and the distraction of burdensome and protracted litigation and thereby to resolve this controversy;

NOW THEREFORE, it is agreed by the Parties, through their respective authorized representatives who have signed below, that the Class Action and the Assurant Action and all claims made or that could have been made against Defendants by Class Plaintiffs, the Class, or the Assurant Plaintiffs be settled, compromised, and dismissed on the merits and with prejudice and, except as hereinafter provided, without costs as to Class Plaintiffs, the Class, the Assurant Plaintiffs or Defendants, subject to the approval of the Court, on the following terms and conditions:

1.      Class and Subclass

1.1     Class.  Plaintiffs will seek, and Defendants will not oppose, certification of a settlement class (the "Class") by the Court pursuant to Federal Rule of Civil Procedure 23, for the purpose of settlement only, defined as follows:

> All third-party payors ("TPPs") in the United States and its territories who purchased, paid for, administered, and/or reimbursed all or any portion of the price for Neurontin or for gabapentin sold by Greenstone LLC at any time from their first sale in the United States through the Effective Date for purposes other than resale.

The TPPs in the Class include, but are not limited to, insurance companies, healthcare benefit providers, health maintenance organizations, union health and welfare plans, self-funded health and welfare plans, and any other health benefit provider and/or entity that contracts with a health insurance company or other entity to serve as a third-party claims administrator to administer its prescription drug benefits, entities that may provide prescription drug benefits for current or former public employees and/or retirees, and private entities that provide pharmacy benefits for a state Medicaid program or Medicare Part D to the extent such entities are at risk for the payment of the cost of Neurontin prescriptions for their insureds; provided that the following TPPs are excluded from the Class:  Kaiser Foundation Health Plan, Inc. and its subsidiaries; Aetna, Inc.; Blue Cross and Blue Shield of Alabama; Municipal Workers Compensation Fund, Inc.; and Union of Operating Engineers, Local No. 68 Welfare Fund.

1.2     The Class does not include:

a.      The Defendants and their officers, directors, management, employees, predecessors-in-interest, successors-in-interest, assignees or affiliates, and subsidiaries;

b.      The United States and/or State governments and their agencies and departments, except to the extent they purchased branded Neurontin or its generic equivalents for their employees or others covered by a government employee health plan;

c.      Any judge or special master who has presided over the Class Action or the Assurant Action.

The proposed Class includes, without limitation, Class Plaintiffs, the Assurant Plaintiffs and qualifying TPPs.

1.3     Subclass.  The Plaintiffs will seek, and Defendants will not oppose, certification of a settlement subclass ("Subclass A") by the Court pursuant to Federal Rule of Civil Procedure 23, for the purpose of settlement only, defined as follows:

> All indirect purchasers in the Class who, on or before December 31, 2008, commenced a lawsuit alleging that the Defendants violated state antitrust laws by delaying the entry of generic gabapentin into the marketplace and which was still pending as of May 23, 2014.

> Subclass A includes the plaintiffs in *Assurant Health, Inc., et al. v. Pfizer, Inc., et al.*, 04-cv-10981-PBS identified as Assurant Health, Inc.; Blue Cross and Blue Shield of Florida, Inc.; Louisiana Health Service & Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana; Blue Cross Blue Shield of Massachusetts; Blue Cross Blue Shield of Michigan; Blue Cross Blue Shield of Minnesota; CareFirst, Inc.; Blue Cross Blue Shield of Delaware, Inc.; Excellus Health Plan, Inc.; Federated Mutual Insurance Company; Group Health Service of Oklahoma d/b/a Blue Cross Blue Shield of Oklahoma; Health Care Service Corporation; Mutual of Omaha Insurance Company; Trustmark Insurance Company; WellChoice, Inc. and WellChoice Insurance of New Jersey, Inc. as well as their subsidiaries and affiliates named in the Assurant Action and self-insured customers on whose behalf they had authority to pursue claims in the Assurant Action.

1.4     Certification for Settlement Purposes Only.  The Parties' stipulation to Court approval of certification of the Class and Subclass A is only for purposes of effectuating the Settlement, and for no other purpose.  The Parties retain all of their respective objections, arguments and/or defenses with respect to class certification should there be no settlement of the Actions.  The Parties acknowledge that if the Settlement Agreement does not become final and effective pursuant to the terms of section 5 herein, the stipulation and any related Court orders as to the Class and Subclass A become null and void.

2.      Best Efforts to Effectuate This Settlement.  Counsel for the undersigned agree to recommend approval of this Settlement Agreement by the Court and to undertake their best

efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Settlement Agreement.  Counsel for the undersigned as well as the Parties to this Settlement Agreement further agree, consistent with their obligations in this section, not to do anything to encourage any Class Member to oppose or obstruct the Settlement, or to do anything to encourage any person or entity to request exclusion from the Class.

      3.    <u>Motion for Preliminary Approval</u>.  Class Plaintiffs, through their counsel ("Class Counsel"), shall file with the Court a motion for preliminary approval of the Settlement, which contains a proposed preliminary approval order in a form agreed upon by Class Counsel and Defendants.  The proposed preliminary approval order shall include, *inter alia*, (a) a proposed notice plan, (b) appointment of a Claims Administrator, (c) the deadline and procedures for requesting exclusion from the class, (d) the deadline and procedures for objecting to the Settlement, and (e) an order temporarily barring Class Members, directly or representatively, from commencing or prosecuting any action or proceeding in any court or tribunal asserting any of the Released Claims against the Released Parties pending final determination of whether the Settlement should be approved.  In the event that the Court preliminarily approves the Settlement, Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the preliminary approval order, direct the Claims Administrator, to be approved by the Court, to provide the Class with settlement notice as ordered by the Court ("Settlement Notice").  The Parties have agreed on a proposed notice plan for approval by the Court, including the forms of notice to the Class, as more fully described in the Declaration of Daniel Coggeshall in Support of Proposed Settlement Notice Program, Form of Notice, and Appointment of Notice Administrator ("Coggeshall Declaration") attached hereto as Exhibit A.  All costs of Settlement Notice, including any notice required by the Class Action Fairness Act of 2005 ("CAFA"), shall be paid exclusively from the Settlement Fund (as defined in section 6 herein) as provided in this Settlement Agreement.

4.     <u>Motion for Final Approval and Entry of Final Judgment</u>.    If the Court preliminarily approves the Settlement, Class Plaintiffs, through Class Counsel, shall submit a motion for final approval by the Court, after appropriate notice to the Class.  The form of any proposed Final Judgment, related order or proposed findings and conclusions of law, and any proposed order seeking approval for establishment of the qualified settlement fund described in section 6 herein, shall be jointly agreed upon before submission to the Court, and shall include an order and final judgment:

a.     finding the Settlement and its terms to be fair, reasonable and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

b.     providing for payments from the Settlement Fund (as defined in section 6 herein) to the Class Members pursuant to the Court approved plan of distribution;

c.     providing for an award of funds in addition to whatever monies each Class Plaintiff will receive from the Settlement Fund pursuant to the Court-approved plan of distribution, to compensate Class Plaintiffs for the effort, time and expense spent by them in connection with the prosecution of the Actions ("compensation awards");

d.     providing for payment of reasonable attorneys' fees and reimbursement of expenses from the Settlement Fund (as defined in section 6 herein);

e.     setting forth the method for allocating the Settlement Fund (as defined in section 6 herein) between and among Class Members;

f.     directing that the Actions and any other matter filed in or transferred to *In re Neurontin Marketing Products Liability and Sales Practices Litigation*, MDL Docket No. 1629 (D. Mass.) (the "MDL") be dismissed with prejudice and, except as provided for herein, without costs;

g.       approving the release of claims specified herein as binding and effective as to all Class Members and permanently barring and enjoining such Class Members from asserting any Released Claims (as defined in section 11 herein);

h.       reserving exclusive and continuing jurisdiction over the Settlement and this Settlement Agreement, including the Settlement Fund (as defined in section 6 herein) and the administration, consummation and interpretation of this Settlement and Settlement Agreement; and

i.       directing that final judgment of dismissal be entered in the Actions and in any other action pending in the MDL.

5.       <u>Effective Date of Settlement</u>.   The Settlement and Settlement Agreement shall become final and effective upon the occurrence of all of the following ("Effective Date"):

a.       Neither Plaintiffs nor Defendant have/has availed themselves/itself of any right to terminate the Settlement pursuant to sections 12-14 herein;

b.       the Settlement is approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

c.       entry, as provided for in section 4 herein, is made of the order and final judgment with prejudice against Class Plaintiffs and Class Members; and

d.       the time for appeal from the Court's approval of the Settlement as described in 5(b) hereof and entry of a final judgment as described in 5(c) hereof has expired or, if appealed, either all such appeals shall have been dismissed prior to resolution by the appellate court or approval of this Settlement Agreement and final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review, by certiorari or otherwise; provided, however, a modification or reversal on appeal of any amount of the fees and expenses awarded by the Court from the Settlement Fund, or the amount of compensation payments to the Class

Plaintiffs, shall not by itself prevent this Settlement Agreement from becoming final and effective if all other aspects of the final judgment have been affirmed.

6.     Settlement Consideration.  Subject to the provisions hereof, and in full, complete and final settlement of the Class Action and the Assurant Action, and the claims of the Class and Subclass, Defendants shall pay **three hundred twenty-five million dollars ($325,000,000)** (the "Settlement Amount") in total.  As provided herein, portions of the Settlement Amount shall be paid into an escrow account (the "Settlement Fund"), held and administered by an Escrow Agent (the "Escrow Agent") to be selected by Class Counsel with consent of Defendants and approval of the Court (the "Payment").

6.1     Except as provided in sections 9.1(a) and 10.2 below, Payment shall be made no later than sixty (60) days after the later of (i) the Effective Date and (ii) Defendants' receipt of a properly completed W-9 form in the name of the Settlement Fund, a properly completed Beneficiary/Bank/Administrator Wire Instructions on a form to be provided by the Court approved Escrow Agent, and a fully executed escrow agreement consistent with the form of Escrow Agreement attached hereto as Exhibit B. ("Escrow Agreement").

6.2     Defendants shall have no liability, obligation or responsibility with respect to the investment, disbursement, or other administration or oversight of the Settlement Fund.  The Settlement Fund shall be established and administered pursuant to the Escrow Agreement.  The Settlement Fund is the total amount that Defendants will pay under this Settlement Agreement in exchange for release of the Released Claims (as defined in section 11 herein), including without limitation funds to satisfy claims by Class Plaintiffs, Class Members, the Assurant Plaintiffs, attorneys' fees and costs, any Court-approved payments to the Class Plaintiffs, payment of any and all administrative and notice expenses associated with the Class Action, the Settlement Fund, the escrow account, or this Settlement.

6.3     It is intended that the escrow account shall be at all times a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1, and that the

"administrator" of the Settlement Fund, within the meaning of Treas. Reg. § 1.468B-2(k), shall comply with all applicable requirements, which shall include, without limitation,

    a.    preparing a "Regulation Section 1.468B-3 Statement" pursuant to Treas. Reg. § 1.468B-3(e) on behalf of Defendants and providing copies to Defendants' Counsel for review and approval; and

    b.    preparing and timely filing on behalf of the Settlement Fund (i) such income tax and other returns and statements as are required to comply with Treas. Reg. § 1.468B-2 and the other applicable provisions of the Internal Revenue Code of 1986, as amended (the "Code"), and (ii) all necessary state, local and foreign tax returns.

    6.4    Any taxes due as a result of income earned by the Settlement Fund will be imposed upon and paid from the Settlement Fund.  Interest earned by the Settlement Fund (less any tax imposed upon such interest) shall be for the benefit of the Class, less reasonable attorneys' fees and expenses approved by the Court (and any interest awarded thereon), any Court-approved award to Class Plaintiffs and payment of any and all administrative and notice expenses associated with the Class Action, the Settlement Fund, the escrow account or Settlement.  Defendants shall have no liability, obligation or responsibility for any such taxes, costs, expenses, or for any reporting requirements relating thereto.  Defendants' transfer of the Settlement Fund to the escrow account described above shall constitute full and complete satisfaction of their obligations under this section 6. Defendant shall not have any liabilities, obligations or responsibilities with respect to the payment, disbursement, disposition or distribution of the Settlement Fund after such transfer.  Notwithstanding any effort, or failure, of the administrator of the Settlement Fund and the parties to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Section 1.468B-1 of the Treasury Regulations effective as of the date hereof, any tax liability, interest or penalties incurred by Defendants resulting from income earned by the Settlement Fund (or the receipt of any payment under this

section) shall be reimbursed from the Settlement Fund in the amount of such tax liability, interest or penalties upon Defendants' written request to the administrator of the Settlement Fund.

7.  <u>Full Satisfaction: Limitation of Interest and Liability</u>.  Class Plaintiffs and Class Members shall look solely to the Settlement Fund for settlement and satisfaction against Defendants of all claims that are released herein.  Class Plaintiffs and Class Members shall not under any circumstances be entitled to any further compensation from Defendants with respect to any claims released herein.  In the event that the Settlement becomes final and effective pursuant to section 5 herein, the Settlement Fund will fully satisfy any and all Released Claims (as defined in section 11 herein).  Except as provided by order of the Court, no Class Member shall have any interest in the Settlement Fund or any portion thereof.

8.  <u>Reimbursement of Costs, Fees and Expenses</u>.  Plaintiffs and their counsel will be reimbursed and indemnified solely out of the Settlement Fund for all costs, fees and expenses including, but not limited to, the costs of Settlement Notice and administration of the Settlement Fund.  Defendants shall not be liable for any costs, fees or expenses of any Class Members, Plaintiffs, or of any Class Members' or Plaintiffs' attorneys, experts, consultants, advisors, agents and representatives.  Any such costs, fees and expenses, to the extent approved and awarded by the Court, shall be paid out of the Settlement Fund.

9.  <u>Disbursement of the Settlement Fund</u>.  The Settlement Fund shall be disbursed as follows or as otherwise ordered by the Court.

9.1  <u>Prior to the Effective Date of this Settlement Agreement</u>.

a.  Defendants shall pay all costs of notice as invoiced by the Claims Administrator to Class Counsel within 30 days after receipt of such invoices by Defendants from the Claims Administrator or Class Counsel.   Notice costs will not be refunded to Defendants in the event that the Effective Date does not occur.

b.  Disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due, as a result of income earned by the Settlement Fund,

shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to counsel for the Parties.

    c.    Defendants shall advance a portion of the attorney fees awarded by the Court pursuant to section 10.2 below.

    9.2    <u>After the Effective Date of this Settlement Agreement</u>. If the Settlement becomes final and effective pursuant to the provisions of section 5 herein, the remainder of the Settlement Fund not previously disbursed pursuant to Defendants' obligation to pay invoices for notice and administration and to advance payment of attorney fees (pursuant to section 10.2 below), and net of the Pfizer Opt-Out Reduction (as defined in section 12 below), if any, shall be distributed as follows.

    a.    The balance of the attorneys' fees and costs approved by the Court, and not previously advanced by Defendants pursuant to section 10.2 below, shall be distributed to Class Counsel from the Settlement Fund within ten (10) days of the receipt of payment of the remaining Settlement Amount by the Escrow Agent from Pfizer pursuant to section 6.1 hereof.

    b.    The remaining fees or expenses incurred in connection with the administration of the escrow account and the Settlement Fund shall be paid pursuant to the Escrow Agreement, and the reasonable remaining fees and expenses incurred as part of notice and claims administration, shall be paid from the Settlement Fund by the Escrow Agent with notice of such disbursements provided to Class Plaintiffs' counsel.

    c.    Disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due as a result of income earned by the Settlement Fund shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to counsel for the Parties.

d.   Any compensation awards determined by the Court for services rendered to the Class by Class Plaintiffs or as otherwise ordered by the Court, shall be distributed to Class Plaintiffs from the Settlement Fund.

e.   An amount, not to exceed $45,000, shall be segregated for expenses associated with the dismissal of claims by individual consumers who have claims pending in *In re Neurontin Marketing Products Liability and Sales Practices Litigation* and elsewhere, the dismissal of which claims was integral to achieving this class action settlement.

f.   The balance of the Settlement Fund after the payment of attorneys' fees, costs, and expenses, taxes, compensation awards, and costs of notice and administration of the Settlement and Settlement Fund, shall be distributed to Class Members who submit claims that are accepted by the Claims Administrator ("Authorized Claimants") in accordance with the Plan of Distribution ("Plan of Distribution" or "Distribution Plan"), attached hereto as Exhibit C, and applicable procedures as approved by the Court.  No funds will be disbursed to any Authorized Claimant until the claims of all Authorized Claimants have been submitted and verified by the Claims Administrator.  The Claims Administrator shall make periodic reports to Class Counsel describing the status of the claims administration process, the number and amount of claims received, and any amounts disbursed.

g.   Defendants shall have no liability or responsibility with respect to disbursements from the Settlement Fund.

10.   <u>Attorneys' Fees, Expenses and Costs</u>.

10.1   Class Counsel intend to seek solely from the Settlement Fund, for distribution to Plaintiffs' counsel, attorneys' fees of up to one-third (33.33%) of the total Settlement Fund attributable to claims filed by Class Members.  In addition, Class Counsel intend to seek solely from the Settlement Fund, for distribution to Plaintiffs' counsel, reimbursement of reasonable costs and expenses incurred in the prosecution of the Actions.  Class Counsel have entered into a

separate agreement concerning attorneys' fees with the Assurant Plaintiffs and counsel for the Assurant Plaintiffs, and with counsel for certain other TPPs who are separately represented, as specified in Exhibit D hereto.

10.2    Within sixty (60) days after the date the Court enters an order awarding fees and expenses to Class Counsel and regardless whether the Effective Date has yet to occur, Defendants shall pay to Class Counsel an amount not to exceed twenty percent (20%) of the total Settlement Fund as an advance on a portion of the payment of approved Class Counsel fees; provided that Class Counsel shall first provide to Defendants a demand note executed by all Class Counsel in sufficient form to require Class Counsel, jointly and severally, to repay the sums set forth above in this paragraph in the event of the occurrence of events set forth in the next paragraph below.

10.3    Class Counsel shall be obligated, within ten (10) days of a written demand, (i) to promptly re-pay in full such fees and expenses described in section 10.2 herein in the event that the Effective Date does not occur or the settlement is terminated and/or (ii) to promptly re-pay any portion of such fees that is reduced by the Court or any appellate court.  If repayment is not made within sixty (60) days of the relevant event described in (i) or (ii), Defendants shall have the right to execute on any demand note provided by Class Counsel, and in this event Defendants shall be entitled to interest at the rate of 7.0% per annum (from the date such outstanding amounts were first provided) plus attorneys' fees and expenses.

10.4    Class Counsel may seek payment of reasonable compensation awards, not to exceed $25,000, for each Class Plaintiff, as noted in section 4(c) above.

10.5    Provided that they do not exceed the amounts set forth in this Settlement Agreement, Defendants agree to take no position with respect to the application by Class Counsel for the attorneys' fees and expense payments or compensation awards set forth above and agree not to oppose any request by Class Counsel that the Court order that any attorneys' fees and expenses awarded by the Court shall be disbursed only to Lead Class Counsel for

allocation among Class Counsel and the other counsel representing the Class Plaintiffs, individual Class Members and the Assurant Plaintiffs.

  11. <u>Release</u>.

  11.1 As used throughout this Settlement Agreement and specifically in this section 11, references to "members of the Class," or "Class Members" means any person or entity falling within the definition of the Class, except for persons and entities who file timely and valid requests for exclusion from the Class.  The Releasing Parties include all Class Members and any of their past, present or future officers, directors, stockholders, attorneys, employees, legal representatives, trustees, agents, parents, subsidiaries, general and limited partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns, acting in their capacity as such.

  11.2 Upon the Settlement Agreement becoming effective in accordance with section 5 herein, in consideration of the mutual promises made in this Settlement Agreement and the benefits extended to the Class pursuant to this Settlement Agreement, all Class Members and Releasing Parties release and forever discharge the Released Parties (as defined in section 11.3 below) from any and all Released Claims (as defined in section 11.4 below).

  11.3 The Released Parties are Pfizer Inc., Warner-Lambert Company LLC, Greenstone, LLC, and their respective past, present and future parents, subsidiaries, divisions, and affiliates, as well as the past, present and future parents, subsidiaries, divisions, business units, associated and affiliated companies, general partners, limited partners, officers, directors, employees, stockholders, agents, attorneys, servants, predecessors, successors, heirs, executors, administrators, and representatives of all the foregoing.

  11.4 The Released Claims are any and all past, present or future liabilities, claims, demands, obligations, suits, damages, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, arising out of or relating to any conduct, events, or transactions, (i) alleged, or which could have been alleged, in all or any of the Class Action, the Assurant

Action, or any other complaint filed in or transferred to the MDL, or (ii) in any way related to Defendants' or any of the Released Parties' sale, distribution or marketing of Neurontin or gabapentin from the date of Neurontin's first sale in the United States to the Effective Date (the "Released Claims").

11.5    "Released Claims" shall not include claims Plaintiffs or Class Members may hold, now or in the future, as Medicare secondary payers or for subrogation or reimbursement with respect to funds recovered by or awarded to persons covered by Plaintiffs' or Class Members' plans for the cost of treatment of such persons' personal injuries alleged to have resulted from the use of Neurontin or gabapentin.

11.6    Except for enforcing this Agreement, each Plaintiff and each Class Member, for themselves and their respective Releasing Parties, hereby covenants and agrees that it shall not, hereafter, seek to establish liability against any Released Party based, in whole or in part, on any of the Released Claims.

11.7    In addition, each Plaintiff and each Class Member, for itself and its respective Releasing Parties, hereby expressly waives and releases, upon the Settlement becoming effective pursuant to section 5 herein, any and all provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. General Release – Claims Extinguished. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States or any other jurisdiction or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code, including, without limitation, Mont. Code Ann. § 28-1-1602, S.D. Codified Laws § 20-7-11, N.D. Cent Code § 9-13-02, and 18 Guam Code Ann. § 82602.  Plaintiffs and Class Members may hereafter discover facts other than or different from those which they know or believe to be true with respect to the claims which are the subject matter of this section, but each Plaintiff and each Class Member, for itself and its respective Releasing Parties, hereby expressly waives and

fully, finally and forever settles and releases, upon the Settlement Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

11.8    Class Counsel and the Claims Administrator will ensure that each claimant is advised of the release set forth in section 11 hereof, and agreement to the terms of such release shall be acknowledged via electronic checkbox by each Class Member or its authorized representative as a precondition to submitting a claim or receiving any portion of the Settlement Fund.

11.9    Notwithstanding the above, each Plaintiff and each Class Member intend by this Settlement Agreement to settle and release only the Released Parties, and the Parties do not intend this Settlement Agreement, any part hereof or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any rights the Releasing Parties have or may have against any other party or entity whatsoever other than the Released Parties with respect to the Released Claims pursuant to this section.

11.10   Defendants shall release any counterclaims they may have against Plaintiffs and Class Members arising from the facts alleged in the Class Action, Assurant Action, or any lawsuit pending in the MDL.

12.    Settlement Termination: Requests To Be Excluded From Class.

12.1    Class Counsel will immediately inform Defendants' counsel by email, with confirmation by overnight mail or other next day delivery service, if any TPP requests exclusion from the Class.

12.2    Defendants have the absolute and unconditional right, in their sole discretion, to terminate the Settlement and Settlement Agreement if the TPPs filing valid requests for exclusion ("TPP Opt-Outs") from the Class represent more than the percentage agreed upon by the parties (as set forth in a side letter dated of even date as this Settlement Agreement) (the

"Opt-Out Termination Percentage" or "OTP") of the total purchases of Neurontin by the third party payor class of trade from January 1, 1994 to January 1, 2004, exclusive of purchases by Kaiser Foundation Health Plan, Inc. and its subsidiaries; Aetna, Inc.; Blue Cross and Blue Shield of Alabama; Municipal Workers Compensation Fund, Inc.; and Union of Operating Engineers, Local No. 68 Welfare Fund, or any entity excluded from the Class pursuant to section 1.2. Alternatively, Defendants can elect to proceed with the Settlement, but the Settlement Amount will be reduced by the percentage of Neurontin purchases represented by the TPP Opt-Outs (as set forth in a side letter of even date).  The reduction of the Settlement Amount (the "Pfizer Opt-Out Reduction") shall be determined in the first instance by the Claims Administrator and shall be conducted in accordance with the procedures set forth in the Court approved Plan of Distribution.

     12.3    If the TPP Opt-Outs do not represent more than the OTP, Pfizer shall not have the right to terminate the Settlement Agreement, but the Settlement Amount shall be reduced by the Pfizer Opt-Out Reduction.

     12.4    Defendants may terminate the Settlement pursuant to Section 12.2 above by providing written notice (which may be by electronic mail) to Class Counsel by 5 p.m. eastern time within seven (7) calendar days before the final approval hearing scheduled by the Court.

     12.5    If Defendants terminate the Settlement, the Settlement Agreement shall be cancelled and terminated pursuant to section 14 herein.

     13.    <u>Effect of Disapproval</u>.  If the Court declines to finally approve the Settlement or Plan of Distribution, or if such approval is reversed, vacated, or otherwise modified on appeal, or if the Court does not enter the final judgment in substantially the form provided for in section 4, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is reversed, vacated or modified, then this Settlement Agreement shall be terminated upon the election of either (a) Class Counsel, or (b) Defendants; provided however that any reversal, vacating, or modification on appeal of any amount of the fees and expenses awarded by the Court from the Settlement Fund, or any amount of payments to any Plaintiff, or

any determination by the Court to award less than the amount requested in attorneys' fees or costs or awards to Plaintiffs, shall not give rise to any right of termination or otherwise serve as a basis for termination of this Settlement Agreement.

14.      <u>Termination</u>. In the event that the Settlement is terminated pursuant to section 12 or 13 herein, or for any other reason does not become effective in accordance with the terms of section 5 herein, then

a.      this Settlement Agreement and all negotiations and proceedings and releases relating thereto shall be without prejudice as to the rights of any and all Parties to this Settlement Agreement, and the Parties to this Agreement shall be restored to their respective positions existing as of April 12, 2014;

b.      this Settlement Agreement shall be of no force or effect, except as provided in section 14(e);

c.      the Settlement Fund, including, any and all interest earned thereon, shall be returned to Defendants, less only the amount validly disbursed for the costs incurred in giving notice to the Class and administering the Settlement Fund during the interim period;

d.      the Parties shall jointly move that any order entered pursuant to this Agreement be vacated and void and all findings withdrawn.

e.      The following sections shall survive termination of this Settlement Agreement: 1.4, 9.1(a), 10.2, 10.3, 15, 26, 27, and 28.

15.      <u>Preservation of Rights</u>. The Parties agree that this Settlement Agreement, whether or not it shall become effective pursuant to section 5 herein, and any and all negotiations, documents and discussions associated with it, shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by the Defendants, or of the truth of any of the claims or allegations contained in the complaint or any other pleading or document, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in this case

or any other action or proceeding.  The Parties expressly reserve all of their rights and defenses if the Settlement Agreement does not become final and effective in accordance with the terms of this Settlement Agreement.

16.     <u>Binding Effect</u>.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties and to the Released Parties. Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Plaintiffs and their counsel shall be binding upon all Class Members.

17.     <u>No Third Party Beneficiaries</u>.  This Settlement Agreement shall not expand the rights of any persons who are not Parties hereto, Class Members or Released Parties, and no person who is not a Party to this Agreement, a Class Member or a Released Party shall acquire any rights hereunder, whether as a purported third party beneficiary or otherwise.

18.     <u>Integrated Agreement</u>. This Settlement Agreement, together with all exhibits hereto, the escrow agreement, distribution plan, the side letter referenced in section 12.2, and proposed orders and notice plan explicitly referenced herein, constitute the sole and entire agreement among the Parties with regard to the subject of this Settlement Agreement and the Released Claims and supersedes any prior negotiations, representations, promises or warranties (oral or otherwise) made by any Party or its agents, attorneys, employees or representatives concerning the subject of this Settlement Agreement.  No Party shall be liable or bound to any other Party for any prior negotiation, representation, promise or warranty (oral or otherwise) except for those expressly set forth in this Settlement Agreement.

19.     <u>No Oral Modification</u>.  This Settlement Agreement shall not be modified in any respect except by a writing executed by the undersigned in the representative capacities specified, or others who are authorized to act in such representative capacities.  A Party's waiver or failure to enforce any provision of this Settlement Agreement shall not constitute a waiver of any other provision.

20.     Headings. The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

21.     No Party Is the Drafter.   All Counsel to all Parties hereto have materially participated in the drafting of this Settlement Agreement.   None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

22.     Choice of Law.   This Settlement Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York applicable to contracts agreed upon and to be performed in the State of New York.

23.     Consent to Jurisdiction and Choice of Exclusive Forum.   Any and all disputes arising out of or related to the Settlement or the Settlement Agreement must be brought by Defendants, Class Plaintiffs, each Class Member and Assurant Plaintiff exclusively in this Court. Defendants, Class Plaintiffs, each Class Member and Assurant Plaintiff hereby irrevocably submit to the exclusive and continuing jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to this Settlement or the Settlement Agreement or the applicability or interpretation of this Settlement Agreement, including, without limitation any suit, action, proceeding or dispute relating to the release provisions herein, except that this section shall not prohibit (a) any Released Party from asserting in the forum in which a claim is brought that the release herein is a defense, in whole or in part, to such claim or, (b) in the event that such a defense is asserted in that forum and this Court determines that it cannot bar the claim, the determination of the merits of the defense in that forum.

24.     Enforcement of Settlement.   Nothing in this Settlement Agreement prevents Defendants from enforcing or asserting any release herein, subject to the provisions of sections 12, 13 and 14 herein.   Notwithstanding any other provision of this Settlement Agreement, this Settlement Agreement and the releases contained herein may be pleaded as a full and complete

defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted by Class Plaintiffs, each Class Member, or Assurant Plaintiff with respect to any Released Claims and may be filed, offered and received into evidence and otherwise used for such defense.

25.    <u>Authorization to Act on Behalf of Class Plaintiffs, the Class and the Subclass</u>. The undersigned counsel represent that they have been and are fully authorized to conduct settlement negotiations with Defendants' counsel on behalf of Class Plaintiffs, the Class, and Subclass A and to enter into, and execute, this Settlement Agreement on behalf of Class Plaintiffs, the Class, and Subclass A subject to Court approval pursuant to Fed. R. Civ. P. 23(e), subject to submission of a valid claim form agreeing to the terms of the Settlement Agreement and the release set forth in Section 11 hereof.

26.    <u>No Admission</u>.  Nothing in this Settlement Agreement shall be construed as an admission in any action or proceeding, of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority, present or future, by Defendants or Class Plaintiffs or Assurant Plaintiffs, or any of them, including without limitation that Defendants have engaged in any conduct or practices that violate RICO, any consumer protection of consumer fraud statute, any antitrust statute, or any other law.

27.    The Parties expressly acknowledge and agree that this Settlement Agreement, along with all related drafts, motions, court papers, conversations, negotiations, mediations and correspondence, including statements made in mediations or written submissions to the mediator, constitute an offer to compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of procedure or evidence of any state.

28.    Except as provided in section 29, neither this Settlement Agreement, approved or not approved, nor any exhibit, document or instrument delivered hereunder, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Settlement Agreement, shall be admissible in evidence in this or any other proceeding for any purpose.

29.     Notwithstanding the foregoing section 28, this Settlement Agreement, any order granting preliminary or final approval to this Settlement Agreement and any appellate decision affirming Final Judgment is admissible as provided in this section 29.

29.1    This Settlement Agreement is admissible by any of the Parties or Released Parties for the purpose of obtaining approval of, implementing and/or enforcing this Agreement.

29.2    This Settlement Agreement, and any order granting preliminary or final approval of this Settlement Agreement, any appellate decision affirming Final Judgment, and any proceedings and submissions in connection with this Settlement Agreement are admissible for purposes of determining Class Counsel's application for attorneys' fees and costs or in connection with any appeal of an award of Class Counsel's attorneys' fees and costs in this Action.

29.3    This Settlement Agreement, any order granting preliminary or final approval to this Settlement Agreement and any appellate decision affirming Final Judgment, may be pleaded by Defendants or the Released Parties as a full and complete defense (including any defense based upon release, res judicata, or injunction) to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims; and this Settlement Agreement, any order granting preliminary or final approval to this Agreement and any appellate decision affirming Final Judgment, or any other proceedings in connection therewith, may be filed, offered or submitted by Defendants or the Released Parties or otherwise used in support of such defense.

30.     <u>Return of Discovery Materials</u>:   Except to the extent that documents have previously been publicly disclosed or used in the context of a public court proceeding, the Parties agree that, within 30 calendar days after the Effective Date, the Parties will return to the relevant Party any materials produced by that Party in discovery in the Actions, or alternatively, provide an affidavit that all such materials have been destroyed.   As used herein, the term "materials" refers inclusively to documents, both paper and electronic, depositions, deposition exhibits, CDs, DVDs, data compilations, photographs and videotapes, of every sort, as well as all

copies of any such materials.  If material required to be returned pursuant to this section has been scanned, transferred or otherwise input into any electronic database or network by the Parties, the material must be deleted from such database or network and the Party required to make such deletion shall provide an affidavit to the Party that produced the material in discovery attesting to the material's deletion from the database or network.  This section 30 shall not apply to any materials that a Party is required to retain by law or court order.

31.    <u>Execution in Counterparts</u>. This agreement may be executed in counterparts. Facsimile or PDF signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this agreement and filed with the Court.

IN  WITNESS  WHEREOF,  the  parties  hereto  through  their  fully  authorized representatives have agreed to this Settlement Agreement on the date first herein above written.

**Pfizer Inc. and Warner-Lambert**
**Company LLC**

By: _Malini Moorthy_  5/30/14
Malini Moorthy
Vice President & Assistant General Counsel
PFIZER, INC.
235 E. 42nd Street
New York, NY 10017

**Plaintiffs Steering Committee:**

By: _____
Thomas M. Sobol
HAGENS BERMAN SOBOL
    SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
tom@hbsslaw.com

By: _Thomas M. Greene_
Thomas M. Greene
GREENE LLP
One Liberty Square, 12th Floor
Boston, MA 02109

copies of any such materials.  If material required to be returned pursuant to this section has been scanned, transferred or otherwise input into any electronic database or network by the Parties, the material must be deleted from such database or network and the Party required to make such deletion shall provide an affidavit to the Party that produced the material in discovery attesting to the material's deletion from the database or network.  This section 30 shall not apply to any materials that a Party is required to retain by law or court order.

31.   <u>Execution in Counterparts</u>. This agreement may be executed in counterparts. Facsimile or PDF signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this agreement and filed with the Court.

IN  WITNESS  WHEREOF,  the  parties  hereto  through  their  fully  authorized representatives have agreed to this Settlement Agreement on the date first herein above written.

**Pfizer Inc. and Warner-Lambert Company LLC**

By:_____
Malini Moorthy
Vice President & Assistant General Counsel
PFIZER, INC.
235 E. 42nd Street
New York, NY 10017


**Plaintiffs Steering Committee:**

By:_____
Thomas M. Sobol
HAGENS BERMAN SOBOL
   SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
tom@hbsslaw.com

By:_____
Thomas M. Greene
GREENE LLP
One Liberty Square, 12th Floor
Boston, MA 02109

copies of any such materials. If material required to be returned pursuant to this section has been scanned, transferred or otherwise input into any electronic database or network by the Parties, the material must be deleted from such database or network and the Party required to make such deletion shall provide an affidavit to the Party that produced the material in discovery attesting to the material's deletion from the database or network. This section 30 shall not apply to any materials that a Party is required to retain by law or court order.

31. <u>Execution in Counterparts</u>. This agreement may be executed in counterparts. Facsimile or PDF signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this agreement and filed with the Court.

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement on the date first herein above written.

**Pfizer Inc. and Warner-Lambert Company LLC**

By:_____
Malini Moorthy
Vice President & Assistant General Counsel
PFIZER, INC.
235 E. 42nd Street
New York, NY 10017


**Plaintiffs Steering Committee:**


By:_____
Thomas M. Sobol
HAGENS BERMAN SOBOL
    SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
tom@hbsslaw.com

By: _~Thomas M. Greene~_
Thomas M. Greene
GREENE LLP
One Liberty Square, 12th Floor
Boston, MA 02109

By: *Don Barrett*
Don Barrett
BARRETT LAW OFFICE
404 Court Square North
PO Box 987
Lexington, MS 39095

By:_____
Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
275 Batter Street, 30th FBR
San Francisco, CA 94111-3339


By:_____
James R. Dugan II
THE DUGAN LAW FIRM, LLC
One Canal Place – Suite 1000
365 Canal Street
New Orleans, LA 70130

By:_____
Daniel Becnel, Jr.
LAW OFFICES OF DANIEL BECNEL, JR.
106 W. Seventh Street
PO Drawer H
Reserve, LA 70084


**Non-Class Steering Committee Member**


By:_____
Richard W. Cohen
LOWEY DANNENBERG COHEN &
   HART, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310


**Counsel for Plaintiffs in *Assurant Health, Inc., et al. v Pfizer Inc., et al. (In re Neurontin Marketing Products Liability and Sales Practices Litigation)*, No. 05-10535-PBS (D. Mass.)**


By:_____
W. Scott Simmer
BLANK ROME LLP
Watergate 600 New Hampshire Ave. , NW.
Washington, DC 20037

By:_____
Don Barrett
BARRETT LAW OFFICE
404 Court Square North
PO Box 987
Lexington, MS 39095

By:_____
Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
275 Batter Street, 30th FBR
San Francisco, CA 94111-3339

By:_____
James R. Dugan II
THE DUGAN LAW FIRM, LLC
One Canal Place – Suite 1000
365 Canal Street
New Orleans, LA 70130

By:_____
Daniel Becnel, Jr.
LAW OFFICES OF DANIEL BECNEL, JR.
106 W. Seventh Street
PO Drawer H
Reserve, LA 70084

**Non-Class Steering Committee Member**

By:_____
Richard W. Cohen
LOWEY DANNENBERG COHEN &
   HART, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310

**Counsel for Plaintiffs in *Assurant Health, Inc., et al. v Pfizer Inc., et al. (In re Neurontin Marketing Products Liability and Sales Practices Litigation)*, No. 05-10535-PBS (D. Mass.)**

By:_____
W. Scott Simmer
BLANK ROME LLP
Watergate 600 New Hampshire Ave. , NW.
Washington, DC 20037

By:_____
Don Barrett
BARRETT LAW OFFICE
404 Court Square North
PO Box 987
Lexington, MS 39095

By:_____
James R. Dugan II
THE DUGAN LAW FIRM, LLC
One Canal Place – Suite 1000
365 Canal Street
New Orleans, LA 70130

By:_____
Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
275 Batter Street, 30th FBR
San Francisco, CA 94111-3339

By:_____
Daniel Becnel, Jr.
LAW OFFICES OF DANIEL BECNEL, JR.
106 W. Seventh Street
PO Drawer H
Reserve, LA 70084

**Non-Class Steering Committee Member**

By:_____
Richard W. Cohen
LOWEY DANNENBERG COHEN &
    HART, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310

**Counsel for Plaintiffs in *Assurant Health,
Inc., et al. v Pfizer Inc., et al. (In re
Neurontin Marketing Products Liability and
Sales Practices Litigation)*, No. 05-10535-
PBS (D. Mass.)**

By:_____
W. Scott Simmer
BLANK ROME LLP
Watergate 600 New Hampshire Ave. , NW.
Washington, DC 20037

By:_____
Don Barrett
BARRETT LAW OFFICE
404 Court Square North
PO Box 987
Lexington, MS 39095

By:_____
James R. Dugan II
THE DUGAN LAW FIRM, LLC
One Canal Place – Suite 1000
365 Canal Street
New Orleans, LA 70130

By:_____
Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
275 Batter Street, 30th FBR
San Francisco, CA 94111-3339

By:_____
Daniel Becnel, Jr.
LAW OFFICES OF DANIEL BECNEL, JR.
106 W. Seventh Street
PO Drawer H
Reserve, LA 70084

**Non-Class Steering Committee Member**

By:_____
Richard W. Cohen
LOWEY DANNENBERG COHEN &
   HART, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310

**Counsel for Plaintiffs in *Assurant Health,
Inc., et al. v Pfizer Inc., et al. (In re
Neurontin Marketing Products Liability and
Sales Practices Litigation)*, No. 05-10535-
PBS (D. Mass.)**

By:_____
W. Scott Simmer
BLANK ROME LLP
Watergate 600 New Hampshire Ave. , NW.
Washington, DC 20037

By:_____
Don Barrett
BARRETT LAW OFFICE
404 Court Square North
PO Box 987
Lexington, MS 39095

By:_____
Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
275 Batter Street, 30th FBR
San Francisco, CA 94111-3339

By:_____
James R. Dugan II
THE DUGAN LAW FIRM, LLC
One Canal Place – Suite 1000
365 Canal Street
New Orleans, LA 70130

By:_____
Daniel Becnel, Jr.
LAW OFFICES OF DANIEL BECNEL, JR.
106 W. Seventh Street
PO Drawer H
Reserve, LA 70084

**Non-Class Steering Committee Member**

By:_____   *Richard W. Cohen*
Richard W. Cohen
LOWEY DANNENBERG COHEN &
    HART, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310

**Counsel for Plaintiffs in *Assurant Health,
Inc., et al. v Pfizer Inc., et al. (In re
Neurontin Marketing Products Liability and
Sales Practices Litigation)*, No. 05-10535-
PBS (D. Mass.)**

By:_____
W. Scott Simmer
BLANK ROME LLP
Watergate 600 New Hampshire Ave. , NW.
Washington, DC 20037

03482.62807/5939312.1                                         25

By:_____
Don Barrett
BARRETT LAW OFFICE
404 Court Square North
PO Box 987
Lexington, MS 39095

By:_____
Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
275 Batter Street, 30th FBR
San Francisco, CA 94111-3339


By:_____
James R. Dugan II
THE DUGAN LAW FIRM, LLC
One Canal Place – Suite 1000
365 Canal Street
New Orleans, LA 70130

By:_____
Daniel Becnel, Jr.
LAW OFFICES OF DANIEL BECNEL, JR.
106 W. Seventh Street
PO Drawer H
Reserve, LA 70084


**Non-Class Steering Committee Member**


By:_____
Richard W. Cohen
LOWEY DANNENBERG COHEN &
   HART, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310


**Counsel for Plaintiffs in *Assurant Health, Inc., et al. v Pfizer Inc., et al. (In re Neurontin Marketing Products Liability and Sales Practices Litigation)*, No. 05-10535-PBS (D. Mass.)**

By:_____
W. Scott Simmer
BLANK ROME LLP
Watergate 600 New Hampshire Ave. , NW.
Washington, DC 20037

# EXHIBIT A

# to the Settlement Agreement

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| In re Neurontin Marketing, Sales Practices and Products Liability Litigation | MDL Docket No. 1629<br>Master File No. 04-10981 |
|---|---|

**DECLARATION OF DANIEL COGGESHALL IN SUPPORT OF**
**PROPOSED SETTLEMENT NOTICE PROGRAM, FORM OF NOTICE**
**AND APPOINTMENT OF NOTICE ADMINISTRATOR**

Daniel Coggeshall, declares and states as follows:

1.     I am a Senior Project Administrator for Rust Consulting, Inc. ("Rust"), a firm specializing in class action notice and administration.  I submit this declaration to provide the Court with information concerning Rust's qualifications in class notice and administration matters and to provide a proposed notice program and form of notice to members of the proposed settlement class in this action.

*__Qualifications of Rust Consulting, Inc.__*

2.     Rust is in the business of carrying out large public notice or payment projects on behalf of businesses and governmental agencies.  Rust also processes claims associated with these projects, providing toll-free telephone hotlines staffed by information specialists, websites, direct mail programs, financial reporting, and other resources to assist clients and the public in connection with notice and payment projects.  Rust has been in operation for more than 35 years.

3.     Rust has more than three decades of experience in developing and administering large and complex class action settlement notice and claims programs.  Our broad range of

experience encompasses the administration of settlements for all phases of Third-Party Payor ("TPP") class actions.

4.      Rust (and its predecessor company Complete Claim Solutions, LLC ("CCS")) has been a Court-appointed Notice and/or Claims Administrator for TPP prescription drug claimants in pharmaceutical product class actions, such as this, which include *In re Lupron Marketing and Sales Practices Litigation* (MDL No. 1430) (D. Mass.); *In Re Pharmaceutical Industry Average Wholesale Price Litigation* (Civil Action: 01-CV-12257-PBS) (D. Mass.); *In Re: Bextra And Celebrex Marketing, Sales Practices, And Product Liability Litigation* (N.D.Ca. MDL No. 1699) and *In Re: Vytorin/Zetia Marketing, Sales Practices And Product Liability Litigation* (D.N.J. 08-0285 (DMC)).

5.      Other pharmaceutical products class actions in which Rust has received appointments are:

- *In re Lorazepam and Clorazepate Antitrust Litigation* (MDL No. 98-1232) (D.D.C.);
- *In re Cardizem CD Antitrust Litigation* (MDL No. 1278) (E.D. Mich);
- *Vista Healthplan, Inc., and Ramona Sakiestewa v. Bristol-Myers Squibb Co., and American BioScience, Inc.* (Civil Action No. 1:01CV01295 (EGS) (AK) (D.D.C.));
- *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation* (Docket No. 2:02cv442) (E.D.Va.);
- *Carpenters and Joiners Welfare Fund, et al. v. Smithkline Beecham* (No. CV 04-3500 MJD/SRN) (D. Minn.);
- *New Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare Trust Fund, et al. v. Purdue Pharma L.P.* (Civil Action No. 07-CV-6916-JGK) (S.D.N.Y.);
- *Alma Simonet, et al. v. SmithKline Beecham Corporation, d/b/a GlaxoSmithKline* (Civil Action: 06-1230 (GAG) (D. Puerto Rico));
- *In re Tricor Indirect Purchaser Antitrust Litigation*, C.A. No. 05-360 (D. Del.);
- *Vista Health Plan, Inc. v. Warner Holdings Company III, Inc*., 246 F.R.D. 349, 356 (D.D.C. 2007);

- *In re Remeron Antitrust Litig.*, Civ. No. 02-2007 FSH, Civ. 04-5126 FSH, 2005 WL 2230314, at *5 (D.N.J. Sept. 13, 2005);

- *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99MDL1317, 2005 WL 2451960, at *1 (S.D. Fla. July 8, 2005);

- *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 63-64 (D. Mass. 2004);

- *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 244, 252-53 (D. Del. 2002), *aff'd*, 391 F.3d 516, 536-37 (3d Cir. 2004);

- *VistaHealth Plan, Inc. v. Bristol-Myers Squibb Co.*, 266 F. Supp. 2d 44, 45-46 (D.D.C. 2003);

- *In re Metoprolol Succinate End-Payor Antitrust Litigation*, C.A. No. 06-cv-71(GMS-MPT) (D. Del.);

- *In re Flonase Antitrust Litigation*, C.A. No. 08-cv-3301 (AB) (E.D. Pa.); and

- *Cipro Cases I and II*, JCCP4154 & 4220, CA Superior Court, County of San Diego.

Through these and other matters, Rust has developed and demonstrated the expertise to effectively execute class notice programs in pharmaceutical products class actions and Rust will apply the same notice protocols in this case as it has in the prior cases in which it has been appointed claims administrator.

6.    To ensure that the best practicable notice is provided to the Class, Rust has developed a notice plan that is consistent with other effective and court-approved litigation programs.  This plan provides the following methods of notification to TPP Class members: a) Individual Notice mailed directly to all reasonably identifiable TPP Class members; b) publication notice in appropriate national and regional media; and c) a website where the Long Form Notice and other key documents will be posted for convenient viewing and reading by TPP Class members.

7.    In addition, if appointed by the Court as Claims Administrator, Rust will make available on the class settlement website (www.NeurontinSettlement.com) an electronic portal through which class members may submit their claims for payment from the settlement in

electronic form, as well as all data necessary to verify their claim.  The collection of claims electronically reduces the time for collection of claims and shortens the time necessary for claimants to file the information necessary to perfect their claim.

***Notice to Third-Party Payors ("TPPs")***

8.     Rust (and its predecessor CCS) has developed a proprietary mailing database to be used to notify TPP class members in settlements of large pharmaceutical class actions (the "TPP Mailing Database").  When first developed in 2001, the TPP Mailing Database was based on data gathered from public sources, including

- Pharmacy Benefit Management Institute
- Health Insurance Association of America
- Benefits Sourcebook;
- Managed Care Information Centers
- Judy Diamond Associates
- A.M. Best Company
- Association of Managed Care Providers
- Society of Professional Benefit Administrators
- American Association of Health Plans
- Self Insurers Institute of America
- National Association of Insurance Commissioners

9.     Through its experience as a court-appointed claims administrator in class action matters involving pharmaceutical products, Rust has updated the TPP Mailing Database with changes of address and has added TPPs and record keepers as they are identified through subsequent settlement communications.  Rust's TPP Mailing Database now includes over 40,000 potential TPP Class members and entities who represent, advise, or communicate with potential

TPP Class members (including third party administrators, pharmacy benefit managers, attorneys and other authorized agents).

10.   ***Mailed notice***.  To provide targeted notice to the TPP Class members, Rust's TPP Mailing Database has captured multiple contacts for each TPP entity, where available, in an effort to reach the appropriate department within the entity and to eliminate duplicate records from overlapping sources.  Rust believes it is important to specifically identify the intended (targeted) notice recipient at each company or health plan; e.g., the President/CEO, the Fund Administrator, Legal Department, etc.  The implication of the forms not reaching the proper "desk" may promote erroneous opt-outs to be filed and/or claims to be deficient, incomplete, duplicative or overlapping with related unions, administrators or self-insureds.

11.   Rust shall cause a Postcard Notice to be mailed by first-class mail to the names and addresses of all entities in the TPP Mailing Database described above, as soon as practicable, on or before the Court-ordered "Initial Mailing Date" informing them of their legal rights and how they may participate in or opt-out of the class action.

12.   The Postcard Notice will be designed to ensure, as reasonably possible, that it will have the best chance of being read when it is received into the TPP Class members' place of business.   Annexed hereto as Exhibit 1 is the proposed Postcard Notice for the Court's consideration.

13.   ***Published Notice***.  To provide notice to Class members whose mailing addresses were unavailable, Rust will, in consultation with Rust's sister company Kinsella Media, LLC ("KM"), initiate a published notice campaign designed to distribute the Summary Notice as widely as possible and in the most cost-effective manner. The proposed Summary Notices will

be published in publications targeting employee benefit funds, insurance companies, pharmacy benefit managers, and other potential class members.  A copy of the Summary Notice is annexed hereto as Exhibit 2 for the Court's consideration.

14.    Specifically, Rust will cause the Summary Notice to be published in the:

(a)    *Wall Street Journal* – the industry leader delivering the most crucial news of the day, insightful opinion and fair-minded analysis with an approximate circulation of 1,480,725; and

(b)    *National Underwriter*: *Life & Health* – a monthly magazine edited for key decision-makers in the life, health and financial services industry and identifies, analyzes and comments on the latest trends and developments for their significance to the market, giving readers the information they need to make critical business decisions with an approximate circulation of 50,150.

15.    The Summary Notice shall be published once in each of these media.   Based on our experience, potential Class members, upon seeing the publication notice, will visit the website, e-mail and/or call the Claims Administrator to obtain information regarding the proposed settlement in the event they did not receive the Postcard Notice.

16.    ***Internet Website*** - In addition to mailed and published notice, Internet presence (via www.NeurontinSettlement.com) is an integral part and critical component of a Notice Program. The Website address will be cited in notice materials and will be registered with search engines so that any Class Member who may miss the mailed and published notices can find the site when searching for various related keyword combinations.  The Website will be activated on the Initial Mailing Date and Rust will continue to maintain this website throughout the Action and will

promptly post all pertinent documents thereon to afford TPP Class members easy access to all such documents for their reference.

17.   The website will contain basic information about the Settlement, Frequently Asked Questions (FAQs), contact information for Rust and Counsel, and links to important documents, such as the Long-Form Notice, Stipulation and Court orders.   The links permit any person, including potential Class Members with internet access, to view, download, and print a copy of the Long-Form Notice, as well as electronically submit a Proof of Claim, thereby providing potential Class Members with information about the Settlement at their convenience.   Annexed hereto as Exhibit 3 is the Long-Form Notice for the Court's consideration.

18.   ***Toll-Free Hotline.***   Rust will also set up a case-dedicated toll-free telephone number for all verbal communications necessary relating to the Notice and the Claims Process. The toll-free number will be activated on the Initial Mailing Date.   The Notice and Summary Notice will list the toll-free telephone number for potential Class members to call.   Callers will first hear a pre-recorded introductory message briefly describing the settlement and deadlines, after which callers will then have the option to speak with a live operator.   Rust will field all callers' questions, including, but not limited to, requests for copies of the Notice to be mailed to TPP Class members.   Rust will update the TPP Mailing Database with the names and addresses of the requestors and will promptly cause Notices to be mailed to them.   The pre-recorded introductory message on the toll-free line and the live operator script will be updated as appropriate throughout the course of administration.

19.   Similarly,   Rust   will   establish   a   case-dedicated   email   address (info@NeurontinSettlement.com) to allow persons to email the Claims Administrator with

questions or inquiries.  The email address will be activated on the Initial Mailing Date and will be stated in the Notice and on the website.  Rust will read and reply to all emails and update the TPP Mailing Database with persons requesting copies of the Notice, and will promptly mail the Notice to all such persons.

20.    ***Processing of Mail.***  Rust will lease and maintain a case-dedicated Post Office Box to facilitate the Notices returned by the United States Postal Service ("USPS") as undeliverable and to receive requests for exclusions and other settlement related correspondence.   The following is the mail process:

(a)    Every business day, Rust will monitor the Post Office Box designated for undeliverables for any Notice returned;

(b)    For any Notice that is returned by the USPS as undeliverable with a forwarding address, Rust will update the TPP Mailing Database and promptly re-mail the Notice to the TPP Class member using the address provided by the USPS; and

(c)    For any Notice that is returned by the USPS as undeliverable without a forwarding address, Rust will mark the record in the TPP Mailing Database as undeliverable and perform a database sweep to compile a file of all "flagged" undeliverable addresses to be submitted to an information supplier to which Rust subscribes to perform address trace searches. If the search produces a new address, Rust will update the TPP Mailing Database and promptly re-mail the Notice to the TPP Class member using the new address information.

21.    Rust will receive, log, and promptly report to Counsel any and all requests for exclusion from the Class ("Opt Outs").  Opt-out requests must be received or postmarked no later than a date set by the Court.   Similarly, Rust will receive, log, and promptly report to Counsel any objection to the Settlement or Plan of Allocation submitted to the Claims

Administrator.  Objections must be filed or received no later than a date set by the Court.

### *Filing and Processing of Claim*

22.   As previously stated in ¶ 7, above, the class settlement website will contain a portal which will enable class members to submit their claims and required data electronically.  By filing the claim electronically, all information and supporting documentation necessary to process the claim and calculate any award amount will be captured into a case-dedicated database exclusively for this settlement.  A sample of a claim form, for illustrative purposes only, is attached as Exhibit 4 for the Court's consideration.  The sample claim form describes the information and supporting documentation which the class member will need to provide in order to submit their claim online.

23.   It should be noted that online claim filing will allow Rust to establish certain protocols/controls that will enable a class member's claim to be validated at the time it is being filed, thereby reducing the number of deficient claims.   In addition, online filing enables claimants to file their claim faster than by mailing same.

24.   Once the claims have been submitted, as described above, Rust will:

(a)   review the documentation provided and flag any claims submitted with insufficient documentation;

(b)   review the list of administrative service plans-only ("ASOs") supplied by Third-Party Administrators/Pension Benefit Managers for missing names and/or FEINs and advise the claimants of the deficiencies; and

(c)   review the submitted claims for duplicate claims, including the review of the list of ASOs for duplicative claims in which an ASO has filed on its own.

Rust will then advise the claimant of any deficiency and/or adjustment to their claim and provide the claimant with an opportunity to remedy/correct the deficiency.

25.   Once the review of the submitted claims has been completed, Rust will review the results with Class Counsel and prepare a report to be submitted to the Court for approval of distribution of settlement funds to members of the Class who have filed valid claims.

Executed this 21st day of May, 2014 in Palm Beach Gardens, Florida.

Daniel Coggeshall

# EXHIBIT 1

*Court-Ordered Legal Notice*

NEURONTIN SETTLEMENT
CLAIMS ADMINISTRATOR
PO BOX 1906
FARIBAULT, MN 55021-7161

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Rust Consulting, Inc.

## Important Notice About Neurontin Settlement

NAME
ADDRESS
CITY STATE ZIP CODE

# If You Purchased, Paid For, Administered and/or Reimbursed for

# Generic Gabapentin Sold by Pfizer and Its Subsidiaries

## *A Class Action Settlement Could Affect You*

A proposed Settlement has been reached in a class action lawsuit against Pfizer Inc. and Warner-Lambert Company LLC (collectively "Defendants") regarding the marketing of the prescription drug Neurontin. The lawsuit claims that Defendants' marketing of the drug Neurontin violated federal law. Defendants deny they have done anything wrong. Both sides have agreed to the Settlement to resolve the controversy and to avoid the cost and expense of further litigation. The lawsuit is not about the safety of Neurontin.

**Who is included?** Third-Party Payors ("TPPs") in the United States and its territories who purchased, paid for, administered, and/or reimbursed for Neurontin sold by Defendants or gabapentin sold by Greenstone LLC at any time from their first sale in the United States through the Effective Date of the Settlement for any purpose other than resale.

**What does the Settlement provide?** Defendants will pay $325 million into a Settlement Fund to settle TPP claims. Class Counsel will ask for attorneys' fees in an amount not to exceed one-third of the Settlement Fund, plus interest, litigation expenses and compensation awards to the Class Representatives. After these deductions, the remainder of the Settlement Fund will be distributed proportionally to Class Members based on the amount of purchases claimed.

**What can I get from the Settlement?** The amount of money you are eligible to receive will depend on how much you paid and/or reimbursed for Neurontin (or gabpentin sold by Greenstone LLC) and on how much other Class Members paid and/or reimbursed. Some members of the Class who belong to a subclass of TPPs will be paid at a 1.80 multiplier of actual purchases in recognition of the fact that members of this subclass timely filed claims against Defendants that were not asserted in the class lawsuit.

**How do I get a payment?** You must submit a Claim Form electronically at www.NeurontinSettlement.com by **Month 00, 2014** to get a payment. Class Members submitting claims for purchases over $300,000 must provide documentation with their Claim Form. Visit the website for more details on submitting a claim.

**What are my other rights?** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement. The exclusion deadline is **Month 00, 2014**. If you stay in the Settlement you will not be able to sue the Defendants for any claims relating to the Settlement. You will be bound by all the Court's orders. However, if you stay in the Settlement, you may object to all or part of it by **Month 00, 2014** and you may appear at the hearing described below in support of your objection.

The Court will hold a hearing on **Month 00, 2014 at XX:XX x.m.** to consider whether to approve the Settlement and a request for attorneys' fees. The Court has appointed attorneys to represent the Class. You may also hire your own attorney, at your own expense.

**For more information or a Claim Form:  1-855-793-1372   www.NeurontinSettlement.com**

# EXHIBIT 2

# If You Purchased, Paid for, Administered and/or Reimbursed for Branded or Generic Gabapentin Sold by Pfizer and Its Subsidiaries

## *A Class Action Settlement Could Affect You*

A proposed Settlement has been reached in a class action lawsuit against Pfizer Inc. and Warner-Lambert Company LLC (collectively "Defendants") regarding the marketing of the prescription drug Neurontin. The lawsuit claims that Defendants' marketing of the drug Neurontin violated federal law. Defendants deny they have done anything wrong. Both sides have agreed to the Settlement to resolve the controversy and to avoid the cost and expense of further litigation. The lawsuit is not about the safety of Neurontin.

### Who is included?

Third-Party Payors ("TPPs") in the United States and its territories who purchased, paid for, administered, and/or reimbursed for Neurontin sold by Defendants or gabapentin sold by Greenstone LLC at any time from their first sale in the United States through the Effective Date of the Settlement for any purpose other than resale.

### What does the Settlement provide?

Defendants will pay $325 million into a Settlement Fund to settle TPP claims. Class Counsel will ask for attorneys' fees in an amount not to exceed one-third of the Settlement Fund, plus interest, litigation expenses and compensation awards to the Class Representatives. After these deductions, the remainder of the Settlement Fund will be distributed proportionally to Class Members based on the amount of purchases claimed.

### What can I get from the Settlement?

The amount of money you are eligible to receive will depend on how much you paid and/or reimbursed for Neurontin (or gabapentin sold by Greenstone LLC) and on how much other Class Members paid and/or reimbursed. Some members of the Class who belong to a subclass of TPPs will be paid at a 1.80 multiplier of actual purchases in recognition of the fact that members of this subclass timely filed claims against Defendants that were not asserted in the class lawsuit.

### How do I get a payment?

You must submit a Claim Form electronically at www.NeurontinSettlement.com by **Month 00, 2014** to get a payment. Class Members submitting claims for purchases over $300,000 must provide documentation with their Claim Form. Visit the website for more details on submitting a claim.

### What are my other rights?

If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement. The exclusion deadline is **Month 00, 2014**. If you stay in the Settlement you will not be able to sue the Defendants for any claims relating to the Settlement. You will be bound by all the Court's orders. However, if you stay in the Settlement, you may object to all or part of it by **Month 00, 2014** and you may appear at the hearing described below in support of your objection.

The Court will hold a hearing on **Month 00, 2014 at XX:XX x.m.** to consider whether to approve the Settlement and a request for attorneys' fees. The Court has appointed attorneys to represent the Class. You may also hire your own attorney, at your own expense.

## For more information or a Claim Form: 1-855-793-1372
## www.NeurontinSettlement.com

# EXHIBIT 3

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

# If You Purchased, Paid for, Administered and/or Reimbursed for Branded or Generic Gabapentin Sold by Pfizer and Its Subsidiaries

## A Class Action Settlement Could Affect You

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- A proposed Settlement has been reached in a class action lawsuit against Pfizer Inc. and Warner-Lambert Company LLC (collectively "Defendants") regarding the marketing of the prescription drug Neurontin.  The lawsuit claims that Defendants' marketing of the drug Neurontin violated federal law.  Defendants deny they have done anything wrong.  Both sides have agreed to the Settlement to resolve the controversy and to avoid the cost and expense of further litigation.  The lawsuit is not about the safety of Neurontin.

- Defendants have agreed to settle the claims of Third-Party Payors ("TPPs") in the lawsuit for a total of $325 million (the "Settlement Fund").

- You may be included in the Class if you are a TPP that paid for or reimbursed all or part of the cost of branded Neurontin for your members, employees, plan participants, beneficiaries, or insureds during the period from January 1, 1994 to the Effective Date of the Settlement *(see* question 5 for details).

- You may also be included in Subclass A if you are a TPP that, on or before December 31, 2008, commenced a lawsuit alleging that the Defendants violated state antitrust laws by delaying the entry of generic gabapentin into the marketplace, and if that lawsuit was still pending as of May 13, 2014 (*see* question 6 for details).

- Your legal rights are affected whether you act or don't act.  Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **FILE A CLAIM BY MONTH 00, 2014** | The only way to get a payment from the Settlement. |
| **EXCLUDE YOURSELF BY MONTH 00, 2014** | Get no benefits from the Settlement.  This is the only option where you keep your right to sue Defendants at your own expense over the claims resolved by this Settlement. |
| **OBJECT BY MONTH 00, 2014** | Write to the Court about what you think about the Settlement. |
| **GO TO A HEARING ON MONTH 00, 2014** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Get no payment.  Remain in the Class and give up any rights to sue Defendants on your own about the same legal claims in these lawsuits. |

- Your options are explained in more detail in this notice.  To be excluded, you must act before _____, **2014**.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ...................................................... **PAGE 3**
    1.     Why was this Notice issued?
    2.     What are the lawsuits about?
    3.     What is a class action?

**WHO IS IN THE CLASS AND SETTLEMENT** .................................. **PAGE 4**
    4.     What is a TPP?
    5.     How do I know if I am part of the Class and the Settlement?
    6.     Who else is included in the Settlement?
    7.     What if I'm still not sure if I'm included in the Class?

**THE SETTLEMENT'S BENEFITS** ...................................................... **PAGE 5**
    8.     What does the Settlement provide?
    9.     What do I have to do to get a payment?
    10.    How much will my payment be?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ..................... **PAGE 6**
    11.    How do I get out of the Settlement?
    12.    If I don't exclude myself from the Settlement, can I sue Defendants for the same thing later?
    13.    If I exclude myself, can I still get a payment from the Settlement?
    14.    What happens if I do nothing and stay in the Settlement?

**THE LAWYERS REPRESENTING YOU** ........................................... **PAGE 8**
    15.    Do I have a lawyer in this case?
    16.    How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ............................................... **PAGE 9**
    17.    How do I tell the Court what I think about the Settlement?
    18.    What's the difference between objecting and excluding?

**THE FINAL APPROVAL HEARING** ................................................ **PAGE 10**
    19.    When and where will the Court decide whether to approve the Settlement?
    20.    Do I have to come to the Hearing?
    21.    May I speak at the Hearing?

**GETTING MORE INFORMATION** ...................................................... **PAGE 11**
    22.    Where can I get more information?

## BASIC INFORMATION

### 1. Why was this Notice issued?

A Court authorized this notice because you have a right to know about the Settlement of a class action lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights.

U.S. District Court Judge Patti B. Saris of the U.S. District Court for the District of Massachusetts is overseeing the case. The litigation is known as *Harden Manufacturing Corp. v Pfizer Inc. (In re Neurontin Marketing Products Liability and Sales Practices Litigation)*, No. 04-10981-PBS, MDL Docket No. 1629 ("the lawsuit"). The lawsuit involves purchases of branded Neurontin in the United States and its territories. The TPPs who sued are called "plaintiffs," and the companies they sued are called the "defendants," which in this case are Pfizer, Inc. ("Pfizer") and Warner-Lambert Company LLC ("Warner-Lambert").

### 2. What is the lawsuit about?

The lawsuit relates to Defendants' prescription drug Neurontin. The lawsuit claims that Defendants' marketing violated the law by promoting the use of Neurontin for various uses and to treat various conditions for which it was: (1) not approved by the FDA and (2) was not effective. The lawsuit is not about the safety of Neurontin. The lawsuit alleges that, although the FDA approved Neurontin for a relatively narrow indication – as adjunctive therapy for adult epilepsy, and later, for treatment of post-herpetic neuralgia – Defendants sought to market Neurontin for several off-label uses in a variety of ways, including through false or misleading statements to physicians at conferences and medical education events, directly to physicians through sales representatives, and in medical publications. Plaintiffs also claim that Class Members were injured by paying for more Neurontin than they would have paid otherwise. A copy of the Plaintiffs' Fourth Amended Consolidated Class Action Complaint, filed March 24, 2011, is available at www.NeurontinSettlement.com.

Defendants deny these claims, and deny they did anything wrong. Defendants have agreed to the Settlement solely to avoid further expense, inconvenience, and the burden of this litigation. The Settlement Agreement is available for review at www.NeurontinSettlement.com.

### 3. What is a class action?

In a class action, one or more persons or entities, called "class representatives," sue on behalf of those who have similar claims. All these persons or entities are a "class" or "class members." One court resolves the issues for all class members, except for those who exclude themselves from the class.

## WHO IS IN THE CLASS AND THE SETTLEMENT

### 4. What is a TPP?

TPPs (Third-Party Payors) are all insurance companies, healthcare benefit providers, health maintenance organizations, union health and welfare plans, self-funded health and welfare plans, and any other health benefit provider and/or entity that contracts with a health insurance company or other entity to serve as a third party claims administrator to administer their prescription drug benefits.  These payors also include entities that may provide prescription drug benefits for current or former public employees and/or retirees and private entities that provide pharmacy benefits for a state Medicaid program or Medicare Part D, but only to the extent that the entity was at risk for the cost of the payment(s).

### 5. How do I know if I am part of the Class and the Settlement?

You are a Class Member if you are a TPP in the United States and its territories that purchased, paid for, administered, and/or reimbursed all or any portion of the price for Neurontin or for gabapentin sold by Greenstone LLC at any time from their first sale in the United States through the Effective Date of the Settlement for any purpose other than resale.

Excluded from the Class are:
1. The Defendants and their officers, directors, management, employees, predecessors-in-interest, successors-in-interest, assignees or affiliates, and subsidiaries;
2. The United States and/or State governments and their agencies and department, except to the extent they purchased branded Neurontin or its generic equivalents for their employees or others covered by a government employee health plan;
3. Any judge or special master who has presided over the Actions; and
4. Kaiser Foundation Health Plan, Inc. and its subsidiaries; Aetna, Inc.; Blue Cross and Blue Shield of Alabama; Municipal Workers Compensation Fund, Inc.; and Union of Operating Engineers, Local No. 98 Welfare Fund.  These TPPs have previously resolved claims against the Defendants.

### 6. How do I Know if I am part of Subclass A?

Subclass A includes Assurant Health, Inc.; Blue Cross and Blue Shield of Florida, Inc.; Louisiana Health Service & Indemnity Company; d/b/a Blue Cross Blue Shield of Louisiana; Blue Cross Blue Shield of Massachusetts; Blue Cross Blue Shield of Michigan; Blue Cross Blue Shield of Minnesota; CareFirst, Inc.; Blue Cross Blue Shield of Delaware, Inc.; Excellus Health Plan, Inc.; Federated Mutual Insurance Company; Group Health Service of Oklahoma d/b/a Blue Cross Blue Shield of Oklahoma; Health Care Service Corporation, Mutual of Omaha Insurance Company, Trustmark Insurance Company, WellChoice, Inc. and WellChoice Insurance of New Jersey, Inc. (the "Assurant group").  Members of the Assurant group have filed a separate suit against defendants alleging, among other things, that Defendants' marketing and other conduct regarding the drug Neurontin violated state antitrust and consumer protection statutes.  The lawsuit involving these claims is *Assurant Health, Inc, v Pfizer Inc. (In re Neurontin Marketing Products Liability and Sales Practices Litigation)*, No.

05-10535-PBS (D. Mass.).  In recognition of the fact that members of the Assurant group have timely filed claims against Defendants that were not asserted in the class lawsuit, the payment amount of any valid claim submitted by members of the Assurant group will be calculated by multiplying their actual amount of Neurontin purchases by 1.80. This figure, if properly supported and accepted by the Claims Administrator, will be used for purposes of calculating the payment made to each member of the Assurant group, as in the example below.

If a member of the Assurant group filed a claim for $10,000 of Neurontin purchases that number would be multiplied by 1.8 and $18,000 will be used to calculate the TPPs pro rata portion of the settlement proceeds.

Exhibit C to the Settlement Agreement available at www.NeurontinSettlement.com describes the claims process for Class Members in detail.

| **7.  What if I am still not sure I am included in the Class?** |
|---|

If you are still not sure whether you are included, you can get more information at www.NeurontinSettlement.com, or get free help by calling or writing the lawyers in this case, at the phone number or address listed in Question 15.

## THE SETTLEMENT'S BENEFITS

| **8. What does the Settlement provide?** |
|---|

Defendants will pay $325 million into a Settlement Fund to settle all TPP claims.  Attorneys' fees and expenses, the cost of administering the proposed Settlement, and the Class Representative compensation awards will also be deducted from the $325 million.  The remaining amount will be distributed proportionally among Class Members based on the size of their claims according to the Plan of Distribution (*see* Question 10).

More details are in the Settlement Agreement, available at www.NeurontinSettlement.com.

| **9.  What do I have to do to get a payment?** |
|---|

To be eligible to receive a payment if the Court approves the Settlement, you must fill out and submit a valid electronic Claim Form online at www.NeurontinSettlement.com by _____, **2014**.  Read the instructions carefully.  Fill out the form and include all the information the form requests.

Class Members are required to provide the amount of branded Neurontin they purchased from January 1, 2003 to June 30, 2004.  The purchase amount during this "proxy period" is being substituted for the amount of Neurontin purchased during the full class period because many TPPs may have difficulty accessing older claims data that may not be kept electronically or on current electronic systems.  This "proxy period" will be used to determine the payments made to each Class Member as described in Question 10.

Class Members with claimed purchases for Neurontin during the proxy period that are more than $300,000 must submit electronic claims documentation with their electronic claim. Those Class Members whose claimed purchases are $300,000 or less do not need to submit documentation with their electronic claim but must provide this claims documentation upon request of the Claims Administrator.

## 10. How much will my payment be?

The Settlement Fund will be distributed based on valid claims submitted on time by Class Members, as allowed by the Claims Administrator and approved by the Court. The amount of money you get will depend on how much you paid and/or reimbursed for Neurontin and on how much other Class Members paid and/or reimbursed. Distributions will be calculated as follows:

(a) All attorneys' fees, expenses, and compensation awards awarded by the Court, and all costs of Settlement Notice and administration, will be deducted from the Settlement Fund; and

(b) The Claims Administrator will determine each Class Member's "Recognized Claim." These amounts will be calculated according to a Plan of Distribution that is available at www.NeurontinSettlement.com; then

(c) The remaining Settlement Fund will be distributed proportionally to each Class Member by (1) multiplying the amount of the remaining Settlement Fund by each Class Member's Recognized Claim, and then, (2) dividing by the total amount of all Recognized Claims of all Class Members.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the Settlement, and you want to keep the right to sue Defendants on your own about the legal issues in this case, then you must take steps to get out of the Settlement. This is called excluding yourself from – or "opting out" of – the Class.

## 11. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must send a letter that includes:
- The full name of your entity (including any predecessor entities from January 1, 2004 forward), FEIN, and address;
- A statement saying that your entity wants to be excluded from the Settlement in *Harden Manufacturing Corp. v Pfizer Inc. (In re Neurontin Marketing Products Liability and Sales Practices Litigation)*, No. 04-10981-PBS, MDL Docket No. 1629;
- Your signature on behalf of the entity;
- If your entity claims to have authority to exclude a Class Member in a representative capacity, you must provide all information requested above for that Class Member, and provide written evidence of your entity's authority to exclude the Class Member in a representative capacity. For example, your entity must provide a list of all self-funded

healthcare plans ("SFPs") or other entities (if any), for which it is authorized to opt out of the settlement, including the name and Employer Identification Number ("EIN") of each entity on whose behalf your entity is authorized to act; and

- The amount of Neurontin your entity (or the entity or entities you are authorized to act for) purchased during the period of January 1, 1994 to October 31, 2004.  A list of relevant National Drug Codes ("NDCs") associated with Neurontin to be used for this purpose is available at www.NeurontinSettlement.com.

Your request for exclusion must also include a signed certification containing the following language:

> The undersigned individual hereby represents that he/she has authority to sign and submit this notice of exclusion on behalf of the above-named entity falling within the definition of the Class. The undersigned also certifies that he/she has not received any advice from the parties to this litigation or their attorneys concerning his/her or the fiduciary obligations of the entity seeking exclusion from the Class under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1100, et seq., or other laws governing their obligations to any class member. The undersigned understands that by submitting this notice of exclusion, the entity identified above will not be entitled to receive any proceeds of the class Settlement Fund. By affixing my signature below, I certify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

The request for exclusion must be received by the Claims Administrator no later than **_____, 2014**, at:

Neurontin Settlement Claims Administrator
P.O. Box 1906,
Faribault, MN 55021-7161

## 12. If I don't exclude myself from the Settlement, can I sue Defendants for the same thing later?

No.  Unless you exclude yourself, you give up the right to sue Defendants for the claims that the Settlement resolves.  If you have a pending lawsuit against Defendants that involves the claims resolved by the Settlement, speak to your lawyer in that lawsuit immediately.  You must exclude yourself from the Settlement Class to continue your own lawsuit.

## 13. If I exclude myself, can I still get a payment from the Settlement?

No.  You will not get any money if you exclude yourself from the Settlement.

**14. What happens if I do nothing and stay in the Settlement?**

If you remain in the Settlement, you will be bound by the Court's decisions. Unless you exclude yourself, you won't be able to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against Defendants about the legal issues in this case, ever again.

You will also be bound by all terms of the Settlement Agreement, including, among other things, the Release and Discharge provision. This means that if the Settlement becomes final, you will be releasing any claims you have against Defendants as described in Section 11 of the Settlement Agreement. The Settlement Agreement is available at www.NeurontinSettlement.com or by calling 1-855-793-1372.

## THE LAWYERS REPRESENTING YOU

**15. Do I have a lawyer in this case?**

Yes. The Court has appointed the following attorneys to represent you and other Class Members as "Class Counsel":

| | |
|---|---|
| Thomas M. Sobol<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>55 Cambridge Parkway, Suite 301<br>Cambridge, MA 02142 | Thomas M. Greene<br>GREENE LLP<br>One Liberty Square, 12th Floor<br>Boston, MA 02109 |
| Don Barrett<br>BARRETT LAW OFFICE<br>404 Court Square North<br>PO Box 987<br>Lexington, MS 39095 | Elizabeth J. Cabraser<br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>275 Batter Street, 30th FBR<br>San Francisco, CA 94111-3339 |
| James R. Dugan II<br>THE DUGAN LAW FIRM, LLC<br>One Canal Place – Suite 1000<br>365 Canal Street<br>New Orleans, LA 70130 | Daniel Becnel, Jr.<br>LAW OFFICES OF DANIEL BECNEL, JR.<br>106 W. Seventh Street<br>PO Drawer H<br>Reserve, LA 70084 |

The Court has appointed the following attorney to represent members of Subclass A:

| | |
|---|---|
| W. Scott Simmer<br>BLANK ROME LLP<br>Watergate 600 New Hampshire Ave. , NW.<br>Washington, DC 20037 | |

In addition, the following law firms, which have represented TPP interests in numerous prescription drug class action cases, have worked with the above-listed law firms:

| | |
|---|---|
| Richard W. Cohen<br>LOWEY DANNENBERG COHEN &<br>    HART, P.C.<br>One North Broadway, Suite 509<br>White Plains, NY 10601-2310 | Mark D. Fischer<br>RAWLINGS & ASSOCIATES, PLLC<br>One Eden Park<br>LaGrange, KY 40031-1800 |

8

You won't be charged personally for these lawyers, but they will ask the Court to award them a fee that will be paid out of the Settlement Fund.

## 16. How will the lawyers be paid?

Class Counsel will ask the Court for an award from the Settlement Fund for attorneys' fees in an amount not to exceed one-third of the Settlement Fund, plus interest. This request will cover all professional services already provided in this lawsuit, as well as all future services. Class Counsel's request for fees and expenses will be filed with the Clerk of the Court on or before _____, 2014, and be posted at www.NeurontinSettlement.com.

At the Final Approval Hearing, Class Counsel will also ask the Court for compensation awards from the Settlement Fund of up to $25,000 each for the Class Representatives in recognition of their efforts on behalf of the Class. This request will be filed with the Clerk of the Court on or before _____, 2014, and posted at www.NeurontinSettlement.com.

### OBJECTING TO THE SETTLEMENT

If you do not exclude yourself, you can tell the Court that you don't agree with the Settlement or part of it.

## 17. How do I tell the Court what I think about the Settlement?

If you have comments about, or disagree with any aspect of the Settlement, including the requested attorneys' fees, you may express your views to the Court by writing to the address below. To comment, or object, you must submit a letter that includes:

- The name of your entity, address, and telephone number;
- A statement saying that the entity objects to the Settlement in *Harden Manufacturing Corp. v Pfizer Inc. (In re Neurontin Marketing Products Liability and Sales Practices Litigation)*, No. 04-10981-PBS, MDL Docket No. 1629;
- The specific legal and/or factual reasons for your objections, including any briefs and evidentiary materials you want the Court to consider;
- Proof that the entity is a Class Member; and
- Your signature or the signature of a person with the authority to make the objection on the entity's behalf, along with a statement of the basis for that authority.

The response must be filed with the Court, and received by Counsel, on or before _____, 2014 at the following addresses:

9

| Court Clerk | Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of Court<br>United States District Court<br>1 Courthouse Way<br>Boston, MA 02210 | Thomas M. Sobol<br>Edward Notargiacomo<br>HAGENS BERMAN<br>SOBOL SHAPIRO LLP<br>55 Cambridge Parkway,<br>Suite 301<br>Cambridge, MA 02142<br><br>Thomas M. Greene<br>GREENE LLP<br>One Liberty Square, 12th<br>Floor<br>Boston, MA 02109 | David Weinraub<br>Quinn Emanuel Urquhart &<br>Sullivan, LLP<br>51 Madison Avenue, 22nd<br>Floor<br>New York, NY  10010 |

## 18. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the Settlement.  You can object to the Settlement only if you do not exclude yourself from it.  Excluding yourself from the Settlement is telling the Court that you don't want to be part of it.  If you exclude yourself from the Settlement, you have no basis to object because it no longer affects you.

## THE FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees, expenses, and compensation awards to the Class Representatives.  You may attend and you may ask to speak, but you don't have to.

## 19. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on _____, 2014 at XX:XX x.m. at the United States District Court, 1 Courthouse Way, Boston, MA 02210 to: (1) determine whether the Settlement should be approved as fair, reasonable, and adequate; and (2) consider the award of attorneys' fees, reimbursement of expenses, and compensation awards to the TPP Class Representatives.  If there are objections or comments, the Court will consider them at this time.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NeurontinSettlement.com for updated information.

## 20. Do I have to come to the Hearing?

Attendance is not required, even if you properly mailed a written comment or objection. If you file an objection, you may appear at the hearing and present evidence and argument in support of your objection.  In order to speak at the hearing you must file a Notice of Intention to Appear described below.

Class Counsel is prepared to answer the Court's questions. If you or your personal attorney want to attend the hearing, you are more than welcome at your expense. As long as your objection was received before the deadline, the Court will consider it.

## 21. May I speak at the Hearing?

If you want to speak or want your own lawyer instead of Class Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Intention to Appear." The Notice of Intention to Appear should include the following:

- Your name and address;
- A statement of your position to be asserted at the Final Approval Hearing and the grounds for your objections;
- Copies of any supporting papers or briefs;
- Your signature or the signature of your attorney.

The Notice of Intention to Appear must be filed with the Court on or before _____, **2014** at the addresses in Question 17.

## GETTING MORE INFORMATION

## 22. Where can I get more information?

If you want more detailed information, you may visit the website www.NeurontinSettlement.com where you will find the important case-related documents. You may also call toll-free at 1-855-793-1372 for more information, or write to Neurontin Settlement Administrator, P.O. Box 1906, Faribault, MN 55021-7161.

# EXHIBIT 4

<table>
<tr><td>Must be Postmarked<br>On or Before<br>xxxxxx, 201x</td><td><i>In re Neurontin Marketing, Sales Practices and<br>Products Liability Litigation</i><br>MDL Docket No. 1629 - Master File No. 04-10981<br><br><b>U.S. District Court</b><br><u>District of Massachusetts</u></td><td>For Official Use Only<br><br>0x</td></tr>
</table>



## <u>THIRD-PARTY PAYOR PROOF OF CLAIM AND RELEASE</u>

Please Type or Print - Use blue or black ink only.

> *ATTENTION: THIS FORM IS ONLY TO BE FILLED OUT ON BEHALF OF A THIRD PARTY PAYOR*
> *NOT INDIVIDUAL CONSUMERS*

## PART I – <u>THIRD-PARTY PAYOR ("TPP") IDENTIFICATION:</u>

**CLAIMANT**
(Third-Party Payor, Health Plan, TPA or PBM)

Federal Employer Identification No. ("FEIN")
(Third-Party Payor, Health Plan, TPA or PBM)

Authorized Agent's Firm Name (if applicable)

Contact Person's Name (Your Name)

Contact Mailing Address

Floor/Suite

City

State

Zip Code

Contact Area Code – Telephone Number

Contact Area Code – Fax Number

Contact Email Address





| Third-Party Payor/Health Plan | | Authorized Agent, TPA or PBM |
|---|---|---|
| If you are filing for your **Company or Health Plan**, check the term below that best describes your company/health plan and provide a list** of any other names by which your company or health plan has been known or other Federal Employer Identification Numbers ("FEINs") it has used since January 19, 1994.<br><br>☐  Health Insurance Company/HMO<br><br>☐  Self-Insured Employee Health Plan<br><br>☐  Self-Insured Union Health & Welfare Fund<br><br>☐  Other (Explain): | **OR** | If you are filing as an **Authorized Agent who is filing on behalf of one or more ASOs** (Administrative Services Only), check the term below that best describes your relationship with the Claimant and provide a list** of the name and FEIN of every Claimant for whom you have been duly authorized to submit this Claim Form (attach additional sheets to this Proof of Claim as necessary).<br><br>☐  Third Party Administrator filing on behalf of ASOs<br><br>☐  Pharmacy Benefits Manager filing on behalf of ASOs<br><br>☐  Other (Explain): |

**Submit the requested list of Third-Party Payor Health Plan or Claimant names and FEINs in an electronic format, such as Excel or a tab-delimited text file saved on a disk.  For your convenience, the Settlement website (www.xxxxxx.com) has an exemplar spreadsheet containing these categories for your review as well as a downloadable version of an Excel spreadsheet.  Please use this format if possible.

## PART II – TOTAL AMOUNT OF NEURONTIN REIMBURSEMENTS

In the table below, state the total amount paid or reimbursed for Neurontin net of co-pays, deductibles, and co-insurance, during the period from Xxxxxxxxx xx, 200x to Xxxxxxxxx xx, 200x. You may not include amounts for which you have been reimbursed by another TPP.

Note that this Settlement does not apply to fully insured health plans, *i.e.*, plans that purchased insurance from another TPP covering 100% of the Plan's reimbursement obligations for prescription drugs to its members.

Note also that this Settlement applies to claims relating to any purchase of Neurontin by any governmental entities to the extent that such entities were at risk for the cost of the payments on behalf of its employees and retirees, such as government funded employee benefit plans.

| Service or Fill Date | Total Amount Paid for Neurontin |
|---|---|
| From Xxxxxxxxx xx, 200x to Xxxxxxxxx xx, 200x | $ |

**You must submit electronic claim data and information in support of the purchase amounts stated above if your total net claim amount is more than $300,000.**  Instructions on how to do so are found in the Claim Documentation Instructions below.  If your total net claim is $300,000 or less, you need not provide complete claims data with this Claim Form, but the Claims Administrator may require supporting documentation.

*Claimant certifies that the figures are true and accurate and are based upon actual records maintained by or otherwise available to the claimant.*

## CLAIM DOCUMENTATION INSTRUCTIONS

You must provide all the information requested in Part II above.  If you are claiming more than $300,000 in net purchase amounts, you must also provide data and information sufficient to show the total purchase amounts of Neurontin (xxxxxxxxxxxxxxxxx) that you are claiming. Your claimed purchase amounts of Neurontin must be net of co-pays, deductibles, and co-insurance.

It is mandatory that you provide the data for **all** categories listed below.

1.  Unique patient identification number or code
2.  **NDC Number —** e.g., 00000-0000-00
3.  **Fill Date or Date of Service —** e.g., 01/01/2007
4.  Amount Billed (not including dispensing fee) – e.g., 40.00
5.  **Amount Paid by TPP** net of co-pays, deductibles, and co-insurance.**—** e.g., 20.00

If you are submitting a Claim Form on behalf of multiple Claimants, also provide the following information for each prescription:

6.  Plan or Group Name
7.  Plan or Group FEIN

For your convenience, the Settlement website (www.xxxxxx.com) has an exemplar spreadsheet containing these categories for your review as well as a downloadable version of an Excel spreadsheet.  Please use this format if possible.

## PART III – JURISDICTION OF THE COURT, CERTIFICATION AND INDEMNIFICATION

By signing below, under penalty of perjury, I hereby swear and affirm that: (1) I have authority to submit this Claim Form either directly or on behalf of the Claimant or as its Authorized Agent, and, in turn, have been given the authority to submit this Claim Form by each Claimant identified in this Claim Form and in any attachments to it, and to receive on behalf of each such Claimant any and all amounts that may be distributed from the Settlement Fund to such Claimant; (2) each entity on whose behalf I have submitted a claim is a TPP Claimant; (3) the information contained in this Claim Form and any attachments hereto is true and accurate, based on records maintained by or otherwise available to me; (4) I, the Authorized Agent (if any), and the Claimant on whose behalf this Claim Form is submitted, hereby submit to the jurisdiction of the United States District Court for the District of Massachusetts (the "Court") for all purposes associated with this Claim Form and the Settlement, including resolution of disputes relating to this Claim Form; (5) I have read and agree to the Release quoted in Part IV below; and (6) in the event that amounts from the Settlement Fund are distributed to the Authorized Agent of a Claimant, and the Claimant later claims that the Authorized Agent did not have the authority to claim and receive such amounts on its behalf, the Authorized Agent, I and/or my employer will hold the Class, Counsel for the Class, Defendant, Counsel for Defendant, and the Claims Administrator harmless with respect to any claims made by said Claimant.

*Signature*

*Position/Title*

*Print Name*

*Month/Day/Year*

## Part IV – Release

**Note**:  Capitalized terms are defined in the Settlement Agreement dated Xxxxxxxxx xx, 201x, available at www.xxxxxxxxx.com.

Upon the Settlement Agreement becoming effective in accordance with paragraph X of the Settlement Agreement, Defendant and its past, present and future parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, general or limited partners, employees, agents, attorneys, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing) (the "Released Party" or "Released Parties") are and shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever (whether such claims, demands, actions, suits, causes of action, damages or liabilities arise or are incurred before, during or after the date hereof), including costs, expenses, penalties and attorneys' fees known or unknown, suspected or unsuspected, in law or equity, that Plaintiffs or any member or members of the Settlement Class, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly, indirectly, representatively, derivatively or in any other capacity, relating to any conduct, events or transactions, prior to the date hereof, alleged or which could have been alleged in the Actions, relating to xxxxxxxxxxxx (branded Neurontin) (the "Released Claims").   Except for enforcing this Settlement Agreement, each member of the Settlement Class hereby covenants and agrees that he, she or it shall not, hereafter, seek to establish liability against any Released Party based, in whole or in part, on any of the Released Claims. Without in any way limiting the definition of Released Parties, the following specific entities are Released Parties: Xxxxxxxxxxxxxxxxxx.  In addition, Plaintiffs and each Settlement Class member hereby expressly waives and releases, upon the Settlement becoming effective pursuant to paragraph 5 of the Settlement Agreement, any and all provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. General Release -- Claims Extinguished. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or rights and benefits conferred by any law of any state or territory of the United States or any other jurisdiction or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  Plaintiffs and each Settlement Class member may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this paragraph, but each Plaintiff and each Settlement Class member hereby expressly waives and fully, finally and forever settles and releases, upon the Settlement Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs and each Settlement Class member also hereby expressly waives and fully, finally and forever settles and releases any and all claims it may have against any Released Party under §17200, et seq., of the California Business and Professions Code, or any similar, comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction or principle of common law, which claims are hereby expressly incorporated into the definition of Released Claims.

The releases set forth above shall not release any claims arising in the ordinary course of business among Plaintiffs, Settlement Class members and the Released Parties concerning product liability, breach of warranty or contract (other than breach of warranty or contract based in whole or in part on any conduct challenged in the Actions), and/or personal or bodily injury, and/or any claims for costs of providing medical care for individuals allegedly injured by xxxxxxxxxxxxxxxxxx.

# EXHIBIT B

## to the Settlement Agreement

## EXHIBIT B

### Proposed Plan of Distribution

This Proposed Plan of Distribution is incorporated by reference in and made a part of the Settlement Agreement and Release in *In re: Neurontin Marketing, Sales Practices, and Products Liability Litigation*, MDL. No. 1629 (the "Settlement Agreement").

A.      Required Class Claims Documentation

Class Members shall be required to submit the amount of branded Neurontin they purchased during the period of January 1, 2003 to June 30, 2004.  This period is substituted for the amount of expenditures for Neurontin and gabapentin associated with the full class period in recognition of the difficulty many TPPs have in accessing claims data that are older and likely not kept electronically or on current electronic systems.  This "proxy period" shall be used to determine the payments made to each Class Member in accordance with the procedures set forth below.

All claims of all class members must be submitted electronically as set forth in the Notice and Claim Form attached as exhibits to the Declaration of Daniel Coggeshall in Support of Proposed Settlement Notice Program, Form of Notice, and Appointment of Notice Administrator ("Coggeshall Declaration").  The Coggeshall Declaration is attached to the Settlement Agreement at Exhibit A.  In order to validate a claim for payments associated with Neurontin, Class Members with claimed expenditures for Neurontin during the proxy period that exceed $300,000.00 in total shall be required to submit electronic claims documentation with their electronic claim.  The form and data required to be submitted are delineated in the Claim Form attached as Exhibit 4 to the Coggeshall Declaration.  Those Class Members whose claimed expenditures are $300,000.00 or less need not submit electronic claims documentation with their electronic claim but must furnish such claims documentation upon request of the Claims Administrator.

1.      Each Class Member shall provide a list of self-funded pharmacy benefit plans ("SFPs") or other entities for which it is authorized to make a claim, including the identity of each entity on whose behalf the Class Member is authorized to act by name.

2.      Each Class Member shall provide a declaration made by a duly authorized employee of the Class Member certifying:

(a)      the employee's authority to submit a claim on behalf of the particular Class Member;

(b)     the total net dollar amount of purchases of Neurontin by the
Class Member during the period January 1, 2003 to June
30, 2004;

(c)     that the data and other information provided as part of the
Claims Documentation submitted by the Class Member is
true and accurate, based on records maintained by or
otherwise available to the Class Member submitting the
claim.

B.      Calculating Recognized Claim Amounts

Procedures for establishing a recognized claim for each Class Member and each Subclass
A Member have been established as follows.

1.      Class Members.

In recognition of the fact that the claims of all Class Members will exceed the total
amount of settlement funds available to satisfy the claims of Class Members and Subclass A
Members under the Settlement Agreement and that each Class Member will be paid a pro-rata
portion of the Settlement Amount, the recognized claim for Class Members shall be the total
amount of purchases of Neurontin during the period of January 1, 2003 to June 30, 2004.  This
figure, if properly supported and accepted by the Claims Administrator, is the Class Member's
"Recognized Claim" used for purposes of calculating the payment made to each Class Member
as set forth below.

If a particular Class Member contacts the Claims Administrator and indicates that
although the Class Member purchased Neurontin during the Class Period, the Class Member
made no purchases of Neurontin during the proxy period of January 1, 2003 to June 30, 2004, the
Claims Administrator, in consultation with Class Counsel, may accept the purchases from a
different proxy period as close to the January 1, 2003 to June 30, 2004 proxy period as is
practicable.

2.      Subclass A Members

In recognition of the fact that Subclass A members have filed and litigated claims against
Defendants asserting claims not asserted in the Class Action, such claim amounts submitted by
any Subclass A member, shall receive a multiplier of 1.80 -- *i.e.*, the actual amount of Neurontin
purchases by any Subclass A member submitted in accordance with any audited claims
administration process and verified by the Claims Administrator, shall be multiplied by 1.80.
This figure, if properly supported and accepted by the Claims Administrator, is the Subclass A
member's "Recognized Claim" used for purposes of calculating the payment made to each such
Subclass A member as set forth below.

For example, if the total amount of Neurontin purchases submitted by a Subclass A
member, as accepted by the Claims Administrator, is $20 million, that figure will be multiplied

by 1.80 such that $36 million will be that Subclass A member's Recognized Claim used to determine the ratable share of the funds to be paid to that Subclass A member.

C.    Calculation of Class Members' and Subclass A Members' Settlement Payments

Settlement payments to each Class Member and Subclass A member filing a valid claim accepted by the Claims Administrator shall be determined by use of the formula set forth below:

The total amount of distributable settlement funds (Settlement Fund net of the Pfizer Opt-Out Reduction, taxes, attorneys' fees, and litigation expenses) multiplied by a percentage derived by dividing the Class Member's (or Subclass A Member's) Recognized Claim Amount by the sum of the Recognized Claim Amounts of (1) all Class Members, and (2) all Subclass A Members.

Example Calculation No. 1:

Assumptions:

- Class Member No. 1's Submitted Claim Amount = $15 million.
- Total of all Class Members' Recognized Claims Amounts = $250 million
- Total of all Subclass A Members' Recognized Claim Amounts = $50 million
- Total Distributable Settlement Funds (Net) = $205 million.

Class Member No. 1's settlement payment = $205 million x ($15 million / $300 million) = $205 million x .05 = $10,250,000.00

Example Calculation No. 2:

Assumptions:

- Subclass A Member No. 2's Submitted Claim Amount = $15 million.
- Total of all Class Members' Recognized Claims Amounts = $250 million
- Total of all Subclass A Members' Recognized Claim Amounts = $50 million
- Total Distributable Settlement Funds (Net) = $205 million.

Subclass A Member No. 2's settlement payment = $205 million x ($15 million x 1.80) / $300 million) = $205 million x ($27 million / $300 million) = $205 million x .09 = $18,450,000.

D.      Calculating Pfizer Opt-Out Reduction.

             1.      Settlement Amount Reduction for TPP Opt-Outs.

        As set forth in Section 12.2 of the Settlement Agreement, in the event there are any Class Members or Subclass A Members who file a valid request to be excluded from the Class or Subclass A ("TPP Opt-Out") Defendants shall have the right to terminate the Settlement Agreement if  the percentage of Neurontin purchases represented by TPP Opt-Outs exceeds a percentage agreed upon by the parties of the total of all purchases of Neurontin by the third party payor class of trade during the same time period (the "Opt-Out Termination Percentage" or "OTP").  The OTP is specified in a side letter of even date with the Settlement Agreement.  Also as specified in Section 12.2 of the Settlement Agreement, Defendants may alternatively elect to reduce the Settlement Amount by a percentage derived by dividing the amount of each TPP Opt-Out's documented purchases of Neurontin from January 1, 1994 through October 31, 2004 by the total of all purchases of Neurontin by all entities falling within the definition of the Class, including TPP Opt-Outs, during the same time period (the "Pfizer Opt-Out Reduction").  If TPP Opt-Outs do not exceed the OTP, Pfizer shall not have the right to terminate the Settlement Agreement, but the Settlement Amount shall be reduced by the Pfizer Opt-Out Reduction. Procedures for calculation of the Pfizer Opt-Out Reduction are set forth below.

        Until the Effective Date, Defendants shall notify Class Counsel of any settlement discussions between Defendants and a TPP Opt-Out (or group of TPP Opt-Outs) related to claims consistent with those brought in any of the MDL Class Complaints prior to undertaking any such settlement discussions.  The notice referred to in the preceding sentence shall be deemed confidential and shall be used by Class Counsel solely for the purpose of seeking an award of attorneys' fees from the settling Opt-Out (or group of Opt-Outs) and/or their respective counsel.  Class Counsel agrees that it will not seek any fee from Defendants in connection with Opt-Out claims or settlement.

             2.      TPP Opt-Out Requirements.

        For purposes of implementation of the Settlement Agreement, an entity falling within the definition of the Class seeking to file a valid request for exclusion from the Class will be required to file a notice of exclusion.  Each TPP Opt-Out will be requested, as part of its notice of exclusion, to provide documentation sufficient to demonstrate (i) that it would otherwise be a Class Member, (ii) that it wishes to opt out of the settlement, and (iii) the amount of its purchases of such Neurontin during the period of January 1, 1994 to October 31, 2004.  Each TPP Opt Out shall be requested to provide a list of all self-funded healthcare plans ("SFPs") or other entities, if any, for which it is authorized to opt out of the settlement, including the identity of each entity on whose behalf the TPP Opt Out is authorized to act by name and Employer Identification Number ("EIN").  If additional information is needed by the parties hereto or the Claims Administrator from any TPP Opt-Out to implement this Section or any other provision of the Settlement Agreement, the parties shall cooperate to obtain such information from the TPP Opt-Out, including, but not limited to, seeking an order of the MDL Court to obtain such information.

In addition to the requirements set forth above, as part of its request for exclusion, each TPP shall include a signed certification containing the following language:

> The undersigned individual hereby represents that he/she has authority to sign and submit this notice of exclusion on behalf of the above-named entity falling within the definition of the Class. The undersigned also certifies that he/she has not received any advice from the parties to this litigation or their attorneys concerning his/her or the fiduciary obligations of the entity seeking exclusion from the Class under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1100, et seq., or other laws governing their obligations to any class member. The undersigned understands that by submitting this notice of exclusion, the entity identified above will not be entitled to receive any proceeds of the class Settlement Fund. By affixing my signature below, I certify under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

### 3.  TPP Opt-Out Amounts and Pfizer Opt-Out Reduction

The Claims Administrator shall in the first instance calculate the Pfizer Opt-Out Reduction due under this Section for each valid TPP Opt-Out, as well as the total Pfizer Opt-Out Reduction due to Defendants.

When possible given the data available, the Pfizer Opt-Out Reduction shall be calculated using the following formula:

> $325 million multiplied by a percentage derived by dividing the amount of each TPP Opt-Out's documented purchases of Neurontin from January 1, 1994 through October 31, 2004 by the total of all purchases of Neurontin by all entities falling within the definition of the Class, including TPP Opt-Outs, during the same time period.
>
> a) The amount of each TPP Opt-Out's documented purchase of Neurontin from January 1, 1994 through October 31, 2004 shall be requested from each TPP seeking to exclude itself from the settlement.  If not provided by the TPP Opt-Out, the parties and the Claims Administrator shall attempt informally to obtain such data from the TPP Opt-Out. Barring receipt of such data in a timely fashion, the parties shall subpoena such information and, if necessary, seek an order of the MDL Court to obtain such information.

b) The total of all purchases of Neurontin by all entities within the definition of the Class, including TPP Opt-Outs,  during the period January 1, 1994 through October 31, 2004 shall be obtained by reference to the Verispan VONA Data previously used by the parties in the litigation to measure total prescriptions of Neurontin, as well as the average retail price per prescription of Neurontin. The total number of prescriptions of Neurontin during the applicable time period, restricted to prescriptions paid for by all entities within the definition of the Class, including TPP Opt-Outs, shall be converted into total purchases by multiplying total prescriptions by the average retail price per prescription found in the Verispan VONA data.  Verispan VONA data shall be reduced by a reasonable estimate of prescriptions paid for by entities excluded from the class definition and payments by consumers.

c) If after attempts, both formal and informal, to obtain data from a TPP opt-out concerning their total purchases of Neurontin, such data is deemed by the parties not to be reasonably available, the Claims Administrator shall undertake good faith efforts to estimate the TPP Opt-Out amount and Pfizer Opt-Out Reduction using publicly available or other more easily obtainable information about the TPP Opt-Out agreeable to Defendants and Class Counsel, such as the number of covered lives attributable to the TPP Opt-Out.  In making such estimations, the Claims Administrator shall utilize such data sources as are reasonably available, including, without limitation, U.S. Census data, the applicable *Atlantic Information Services (AIS) Directory of Health Plans* or the *AIS Employer Health Plan Database and Directories*.

d) If Defendants' Counsel or Class Counsel dispute the Claims Administrator's determinations, or if Defendants' Counsel or Class Counsel determine that they have received insufficient purchase or other information from the Claims Administrator or any TPP Opt-Out to determine the amount of the total Pfizer Opt-Out Reduction, and, therefore, a dispute exists regarding the amount of the Pfizer Opt-Out Reduction, the parties, the Claims Administrator, and the TPP Opt-Out(s) shall attempt informally to resolve any such dispute.

e) The parties agree to submit promptly any unresolved disputes concerning TPP Opt-Out amounts and/or the

Pfizer Opt-Out Reduction to the MDL Court and the MDL Court's decision shall be binding and final and the parties waive any right to appeal.

f)   In recognition of the fact that determination of the Pfizer Opt-Out Refund is necessary in order to make a distribution of funds to members of the Class and that timely distribution of settlement funds is paramount, the parties, in consultation with the Claims Administrator, have established the following schedule for determining the Pfizer Opt-Out Refund:

| Event | To be completed within: |
|---|---|
| Claims Administrator ("CA") to provide each party a calculation of the Pfizer Opt Out Reduction for each valid Opt-out. | seven (7) days of deadline for filing requests for exclusion |
| Party to notify the CA and opposing party that a dispute over the calculation of the Opt-Out Reduction exists with respect to one or more Opt-outs | seven (7) days of receipt of the calculation of the Opt-Out Reduction from CA |
| Parties shall informally attempt to resolve any dispute or present the dispute for binding resolution by the Court | seven (7) days of receipt of notice of the existence of a dispute over the calculation of the Opt-Out Reduction |
| All disputes regarding the Opt-Out reduction must be resolved and/or Pfizer must elect whether to terminate the settlement in accordance with Section 12 of the Settlement Agreement | Seven (7) days prior to the Final Approval Hearing scheduled by the Court |

g)   If Pfizer does not elect to terminate the Settlement within seven days prior to the Final Approval Hearing scheduled by the Court, the total amount of the Settlement Fund shall be reduced by the amount of Pfizer's Opt-Out Refund, including for purposes of determining the final amount of the attorney fee award.

# EXHIBIT C

## to the Settlement Agreement

# ESCROW AGREEMENT

This Escrow Agreement dated May __, 2014, is made among Harden Manufacturing Corporation; Louisiana Health Service Indemnity Company, d/b/a Blue Cross/Blue Shield of Louisiana; and ASEA/AFSCME Local 52 Health Benefits Trust, plaintiffs, individually and on behalf of a proposed third-party payor class, in *Harden Manufacturing Corp., et al. v Pfizer Inc., et al. (In re Neurontin Marketing Products Liability and Sales Practices Litigation),* No. 04-10981-PBS, MDL Docket No. 1629 (D.Mass.) by and through counsel ("Class Plaintiffs"), Pfizer Inc. and Warner-Lambert Company LLC by and through counsel (collectively, "Defendants"), and **THE HUNTINGTON NATIONAL BANK**, as escrow agent ("Escrow Agent").

## Recitals

A.       This Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Settlement Agreement (the "Settlement Agreement") dated May __, 2014 to which this Escrow Agreement is attached as Exhibit __, entered into by, among others, Class Counsel on behalf of the Class Plaintiffs and Defense Counsel on behalf of the Defendants, will be paid to settle the class action referenced above (the "Class Action").

B.       Pursuant to the terms of the Settlement Agreement, the Defendants have agreed to pay or cause to be paid the total amount of $325,000,000 (Three Hundred Twenty Five Million Dollars) in cash (the "Settlement Amount") in settlement of the claims brought against the Defendant in the Class Action.

C.       As detailed in Sections 6, 9, and 10 of the Settlement Agreement, within 60 days of the Effective Date of the Settlement Agreement, that portion of the Settlement Amount not previously paid by Defendants for notice to the Class and not paid by Defendants to advance attorney fees is to be deposited into escrow and used to satisfy payments to Authorized Claimants, payments for any additional attorneys' fees and expenses awarded by the Court, payments for tax liabilities, and other costs pursuant to the terms of the Settlement Agreement.

D.       Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## Agreement

1.       <u>Appointment of Escrow Agent</u>.   The Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

2.       <u>The Escrow Account</u>.   The Escrow Agent shall establish and maintain an escrow account titled Neurontin Sales Practice Litigation Settlement Fund (the "Escrow Account").   As provided in Sections 6, 9, 10 of the Settlement Agreement, the Defendants shall cause so much of the Settlement Amount not previously distributed to pay for the cost of Notice to the Class or to advance payment of attorney's fees, to be deposited into the Escrow Account no later than

sixty (60) days after the later of (i) the Effective Date of the Settlement Agreement and (ii) Defendants' receipt of a properly completed W-9 form in the name of the Settlement Fund, a properly completed Beneficiary/Bank/Administrator Wire Instructions on a form to be provided by the Escrow Agent.   Escrow Agent shall receive the Settlement Amount into the Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as the "Settlement Fund."   The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement and in orders of the Court approving the disbursement of the Settlement Fund.

3.   <u>Investment of Settlement Fund</u>.   At the written direction of Class Counsel, the Escrow Agent shall invest the Settlement Fund exclusively in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit.   At the written direction of Class Counsel, the Escrow Agent shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Escrow Agent.

4.   <u>Escrow Funds Subject to Jurisdiction of the Court</u>.   The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court.

5.   <u>Tax Treatment & Report</u>.   The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1.   Class Counsel and, as required by law, the Defendant, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date.   For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be Class Counsel.   Class Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1.   Class Counsel shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6.   <u>Tax Payments of Settlement Fund</u>.   All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Fund and the Escrow Agent shall timely pay such Taxes out of the Settlement Fund, as appropriate, without prior order of the Court, as directed by Class Counsel**.** Class Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law.   The Class Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the

2

Settlement Fund. The Settlement Fund shall indemnify and hold the Defendant harmless for any taxes that may be deemed to be payable by the Defendant by reason of the income earned on the Settlement Fund, and Escrow Agent shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to the Defendant pursuant to the terms of the Settlement Agreement, the Defendant shall provide Escrow Agent with a properly completed Form W-9.

      7.     <u>Disbursement Instructions</u>

      (a)     Class Counsel may, without further order of the Court or authorization by the Defendant's Counsel, instruct Escrow Agent to disburse the funds necessary to pay Notice and Administration Expenses.

      (b)     Disbursements other than those described in paragraph 7(a), including disbursements for distribution of Class Settlement Funds, must be authorized by either (i) an order of the Court, or (ii) the written consent of Thomas M. Sobol and Thomas Green of Class Counsel and Sheila L. Birnbaum of Defense Counsel.

      (c)     In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Escrow Agent will seek confirmation of such instructions by telephone call back to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. It will not be reasonably necessary to seek confirmation if Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b). To assure accuracy of the instructions it receives, Escrow Agent may record such call backs. If Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved. The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Escrow Agent. Class Counsel agree to notify Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed. If it is determined that the transaction was delayed or erroneously executed as a result of Escrow Agent's error, Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law. Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

      8.     <u>Termination of Settlement</u>. If the Settlement Agreement terminates in accordance with its terms, Class Counsel and the Defendant shall jointly notify Escrow Agent of the termination of the Settlement Agreement. Upon such notification, the balance of the Settlement Fund, together with any interest earned thereon, less any Notice and Administration Expenses paid and actually incurred in accordance with the terms of the Settlement Agreement but not yet

paid, and any unpaid Taxes due, as determined by Class Counsel and the Defendant, shall be returned to the Defendant in accordance with instruction from the Defendant's Counsel.

9.     Fees.   For all services rendered by Escrow Agent pursuant to this Escrow Agreement, Escrow Agent shall charge a flat fee of $5,000.   The escrow fee shall be waived if the fund is invested in an FDIC insured account.   In the event that a portion of the Escrow Account is invested in Treasury Bills, Escrow Agent shall charge an annualized fee of 0.03% (3 basis points) for Treasury Bill purchases.   All fees and expenses of Escrow Agent shall be paid solely from the Settlement Fund.   The Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Class Counsel.   If Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into.

10.     Duties, Liabilities and Rights of Escrow Agent.   This Escrow Agreement sets forth all of the obligations of Escrow Agent, and no additional obligations shall be implied from the terms of this Escrow Agreement or any other agreement, instrument or document.

(a)     Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Class Counsel or Counsel for the Defendant, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order.   Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

(b)     Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel. Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Escrow Account only (i) upon approval by Class Counsel and the Defendant or (ii) pursuant to an order of the Court.

(c)     The Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

(d)     Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)     Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Escrow Agreement. The Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages,

4

settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Escrow Agent of, any of the Escrow Agent's duties under this Agreement, except as a result of the Escrow Agent's bad faith, willful misconduct or gross negligence.

       (f)    Upon distribution of all of the funds in the Escrow Account pursuant to the terms of this Escrow Agreement and any orders of the Court, Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Escrow Agreement, except as otherwise specifically set forth herein.

11.    <u>Non-Assignability by Escrow Agent</u>.  Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Class Counsel and the Defendant.

12.    <u>Resignation of Escrow Agent</u>.  Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Escrow Agreement herein.  On the effective date of such resignation, Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents and all funds in the Escrow Account to the successor Escrow Agent, subject to this Escrow Agreement.  If a successor Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Escrow Agent may petition the Court for the appointment of a successor Escrow Agent, or other appropriate relief.  Any such resulting appointment shall be binding upon all of the parties to this Escrow Agreement.

13.    <u>Notices</u>.  Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

If to Class Counsel:     Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
tom@hbsslaw.com

Thomas M. Greene
GREENE LLP
One Liberty Square, 12th FLR
Boston, MA 02109

If to Defendant:        Sheila L. Birnbaum
Katherine Armstrong
David S. Weinraub
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010


If to Escrow Agent:     THE HUNTINGTON NATIONAL BANK
Attention:  Robyn Griffin, Senior Vice President
Rockefeller Center
1230 Avenue of the Americas, 7th Floor
New York, NY  10020
Telephone:  (212) 581-5055
E-mail:  robyn.griffin@huntington.com

Kimberlee Wilson, Vice President
Huntington National Bank
7 Easton Oval – EA4E63
Columbus, Ohio 43219
Telephone:  (614) 331-9556
E-mail:  kim.wilson@huntington.com


14.    <u>Patriot Act Warranties</u>.  Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56 ), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information").  The parties to this Escrow Agreement agree that they will provide the Escrow Agent with such Identification Information as the Escrow Agent may request in order for the Escrow Agent to satisfy the requirements of the Patriot Act.

15.    <u>Entire Agreement</u>.  This Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto.  Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.  To the extent this Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16.    <u>Governing Law</u>.  This Escrow Agreement shall be governed by the law of the State of Ohio in all respects.  The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Escrow Agent may commence pursuant to this Escrow Agreement for the appointment of a successor escrow agent, and all

parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17. <u>Termination of Escrow Account</u>.  The Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Escrow Agreement.

18. <u>Miscellaneous Provisions</u>.

(a) <u>Counterparts</u>.  This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Escrow Agreement.

(b) <u>Further Cooperation</u>.  The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Escrow Agreement in order (a) to give Escrow Agent confirmation and assurance of Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Escrow Agreement, each in such form and substance as may be acceptable to Escrow Agent.

(c) <u>Non-Waiver</u>.  The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Escrow Agent

By: _____
      Robyn Griffin, Senior Vice President

Class Counsel

By:_____
Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
tom@hbsslaw.com

By:_____
Thomas M. Greene
GREENE LLP
One Liberty Square, 12th Floor
Boston, MA 02109

By:_____        By:_____
Don Barrett                       Elizabeth J. Cabraser
BARRETT LAW OFFICE                LIEFF CABRASER HEIMANN &
404 Court Square North               BERNSTEIN, LLP
PO Box 987                        275 Battery Street, 29th Floor
Lexington, MS 39095               San Francisco, CA 94111-3339


By:_____        By:_____
James R. Dugan II                 Daniel Becnel, Jr.
THE DUGAN LAW FIRM, LLC           LAW OFFICES OF DANIEL BECNEL, JR.
One Canal Place – Suite 1000      106 W. Seventh Street
365 Canal Street                  PO Drawer H
New Orleans, LA 70130             Reserve, LA 70084



Defense Counsel

By: _____
Sheila L. Birnbaum
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

8

# EXHIBIT D

# to the Settlement Agreement

## <u>Exhibit D to Settlement Agreement</u>

Pursuant to Fed.R.Civ.P. 23(e)(3), Class Counsel identify for the Court the following agreements made in connection with the proposed settlement:

1. Class Counsel entered into an agreement with Blank Rome LLP, counsel representing plaintiffs in the Assurant Matter and members of proposed Subclass A.  The agreement concerns the apportionment of attorney's fees in this matter.

2. Class Counsel entered into an agreement with Lowey Dannenberg Cohen & Hart, P.C. and Rawlings & Associates PLLC, counsel representing certain members of the proposed Class.  The agreement concerns the apportionment of attorney's fees in this matter.

3. As described in paragraph 12.2, the Parties have entered into a letter agreement setting forth the Opt-Out Termination Percentage.