# Exhibit D

## Agreement between Blank Rome LLP and Neurontin Class Counsel

1.      This agreement (the "Agreement"), dated as of March 24, 2014, is by and between Blank Rome LLP ("BR") and the law firms listed at the bottom of this agreement, all of which are members of the Plaintiffs Steering Committee (the "PSC") and are prosecuting class action claims (the "Class Counsel") in *In re Neurontin Mktg., Prods. Liab. And Sales Prac. Litig.*, MDL Docket No. 1629 (the "Class Action").

2.      Class Counsel, together with other counsel, represents a putative class of third party payers ("TPPs") in the Neurontin Class Action. The proposed class (the "Class") includes TPPs that reimbursed their members' purchases of Neurontin.

3.      A portion of the proposed class purportedly includes two groups of TPPs represented for these purposes by BR, the Assurant Group of TPPs that have a filed civil action as shown on Exhibit A (the "Assurant Group") and several TPPs represented by BR as of January 1, 2014 who have not filed a civil action as shown on Exhibit B (the "non-filed BR TPPs"). BR represents that, as of January 1, 2014, it has been retained by all of the TPPs identified in Exhibits A and B (the "BR TPPs") with respect to claims against Pfizer for payment for Neurontin prescribed for off-label use. Moreover, BR represents that it has been retained by the Assurant Group in connection with potential antitrust claims relating to Neurontin. BR further represents that such representation extends, as applicable, to both commercial and ASO business conducted by the BR TPPs.

4.      BR and Class Counsel agree to work and cooperate with each other in connection with settlement and prosecution efforts to reach a settlement with Pfizer encompassing both the Class and the BR TPPs (the "Global Settlement") and to maximize the value of any such settlement with Pfizer.

5.      In the event that a Global Settlement is achieved, the class definition will exclude the BR TPPs, and instead will separately define the BR TPPs as Independent Settling Health Plans ("ISHPs"); provided, however, that all of the BR TPPs, including the Assurant Group, have agreed to participate in the court-supervised, TPP class expedited claims process,. If any BR TPP chooses not to participate in the court-supervised claims process at any time, then such TPP will forfeit any right of recovery that it may have under the Global Settlement, but that this Agreement will remain in full force and effect with respect to all other BR TPPs.

6.      In any application by Class Counsel to the Court for an award of fees in an amount up to thirty percent (30%) of the gross amount recovered for the Class, BR will support, and advise its clients of the reasonableness of, such a Class Counsel application.

7.      Notwithstanding that the Court may award a Class Counsel fee of less than 30%, the Assurant Group agrees to pay additional fees (the "Additional Assurant Group Fee") such that the total fee paid on the ratable share of the gross distributable funds allocated to the Assurant Group in the Global Settlement (as those amounts are determined in accordance with paragraph 8 of this Agreement) equals 30%. For example, if the Court awards Class Counsel a fee of 20% and the ratable share of the distributable funds allocated to the Assurant Group in the settlement equals $10 million prior to deduction for fees or expenses, the Assurant Group will pay a total of $3 million in fees ($2 million as a result of the Court's award, and an additional $1 million to ensure a 30% fee). All such fees will be allocated in accordance with paragraphs 9 and 10 of this Agreement.

8. For purposes of calculation of any payment to BR TPPs from a class settlement, all BR TPPs will participate in the court-supervised, expedited claims process. As to the Assurant Group members, such claim amounts as shall be submitted by them shall receive a multiplier of 1.95 -- *i.e.*, the actual amount of Neurontin purchases by a member of the Assurant Group submitted in accordance with any claims administration process and verified by the claims administrator shall be multiplied by 1.95 before being used to calculate the percentage of the net distributable amount to be paid to such Assurant Group member. For example, if the total amount of Neurontin purchases submitted by the Assurant Group member, and accepted by the claims administrator, is $20 million, that figure will be multiplied by 1.95 such that $39 million will be used to determine the ratable share of the funds to be paid to such Assurant Group member. As to the non-filed BR TPPs, those TPPs will receive a 1.0 multiplier.

9. In recognition of the efforts made by Class Counsel and BR, and for settlement purposes only, BR and Class Counsel shall apportion fees attributable to the claims of the Assurant Group ("Assurant Group Fees") fifty-five percent (55%) to Class Counsel and forty-five percent (45%) to BR.

10. Irrespective of any common benefit fee awarded by the Court, the BR TPPs will be obligated to pay thirty percent (30%) in fees from their share of the Global Settlement. The Assurant Group Fees (from which the aforementioned 55%-45% allocation shall be made) will be calculated by multiplying the amount of money distributed by the Class to the Assurant Group by thirty percent (30%):

> Example: If the Assurant Group is entitled pursuant to Paragraph 8 above to a payment of $40 million of the Global Settlement proceeds, then the Assurant Group Fees will be $12 million (*i.e.*, $40 million multiplied by 30%, irrespective of whether the Court awards a Class Counsel fee of less than 30%).

11. BR and Class Counsel shall apportion fees attributable to the claims of the non-filed BR TPPs ("non-filed BR TPP Fees") seventy-five percent (75%) to Class Counsel and twenty-five percent (25%) to BR. The calculation shall be made following the same process as set forth above.

12. Both Class Counsel and BR will be entitled to apply to the Court for the reimbursement from the Global Settlement proceeds of their previously unreimbursed reasonable costs and expenses incurred in connection with the Class Action ("Application for Costs"). In the event that the Court denies such Application for Costs in whole or in part, the BR TPPs will have no obligation to pay any portion of Class Counsel's unreimbursed costs.

13. The parties to this Agreement acknowledge that Travelers has filed non-class claims against Pfizer for allegedly fraudulent Neurontin marketing practices, and that those claims may become part of joint settlement discussions or litigation efforts along with the claims in the Class Action. BR represents that the BR TPPs do not object to the participation of such non-class interests by Travelers in a joint settlement, and that in any joint settlement of claims the BR TPPs will not object to a reasonable multiplier (not to exceed 1.25) to be received by Travelers (to reflect breadth of claims or other reasonable differences between the class and non-class claims).

14.     So long as this remains a binding and enforceable agreement, BR and Class
Counsel stipulate that this agreement settles all claims between them concerning allocation of
fees.  Class Counsel shall cause the PSC's Motion for Entry of Case Management Order
Supervising Settlement Discussion and Establishing Common Benefit Account, Doc. # 4211, to
be amended to reflect that BR TPPs are exempt from the motion in light of this Agreement.


**Blank Rome LLP:**

By:     _____
        W. Scott Simmer
        BLANK ROME LLP
        Watergate 600 New Hampshire
        Avenue, N.W.
        Washington, DC 20037
        simmer@BlankRome.com

**Class Counsel:**

By:     _____
        Thomas M. Greene
        GREENE LLP
        One Liberty Square, 12th FBR
        Boston, MA 02109
        tgreene@greenellp.com

By:     _____
        Don Barrett
        BARRETT LAW OFFICE
        404 Court Square North
        P.O. box 987
        Lexington, MS 39095
        dbarrett@barrettlawgroup.com

By:     _____
        Elizabeth J. Cabraser
        LIEFF CABRASER HEIMANN &
        BERNSTEIN, LLP
        275 Battery Street, 30th FBR
        San Francisco, CA 94111-3339
        ecabraser@lchb.com

By:     _____
        Thomas M. Sobol
        HAGENS BERMAN SOBOL
        SHAPIRO LLP
        55 Cambridge Parkway, Suite 301
        Cambridge, MA 02142
        tom@hbsslaw.com

**March 24, 2014 Agreement between Blank Rome LLP and Neurontin Class Counsel**

**Class Counsel continued:**

By:

_____

James R. Dugan II
The Dugan Law Firm, LLC
One Canal Place - Suite 1000
365 Canal Street
New Orleans, LA70130
jdugan@dugan-lawfirm.com

By:

_____

Daniel Becnel, Jr.
Law Offices of Daniel Becnel, Jr.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084
dbecnel@becnellaw.com

678824v1

## Exhibit A

1. Assurant Health, Inc.

2. Blue Cross and Blue Shield of Florida, Inc. and its wholly-owned subsidiary Health Options, Inc.

3. Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana, and its subsidiary HMO Louisiana, Inc.

4. Blue Cross Blue Shield of Massachusetts

5. Blue Cross Blue Shield of Michigan and its wholly-owned subsidiary Blue Care Network, Inc.

6. Blue Cross Blue Shield of Minnesota, a subsidiary of Aware Integrated, Inc., and its wholly-owned subsidiaries Comprehensive Care Services, Inc., First Plan of Minnesota, Atrium Health Plain, Inc., and HMO Minnesota

7. Group Health Services of Oklahoma, Inc., d/b/a Blue Cross Blue Shield of Oklahoma, and its wholly owned subsidiary Group Health Maintenance Organization, Inc., d/b/a BlueLincs HMO

8. CareFirst, Inc. and its wholly owned subsidiaries CareFirst of Maryland, Inc., Willse & Associates, Inc., CFS Health Group, Inc., Delmarva Health Plan, Inc., Free State Health Plan, Inc., Patuxent Medical Group, Inc., Group Hospitalization and Medical Services, Inc., Capital Care, Inc., and Capital Area Services, Inc.

9. Blue Cross Blue Shield of Delaware, Inc.

10. Excellus Health Plan, Inc. and its wholly owned subsidiary Excellus Benefit Services, Inc.

11. Federated Mutual Insurance Company

12. Health Care Services Corporation, on behalf of itself and its Illinois, New Mexico and Texas Divisions

13. Mutual of Omaha Insurance Company

14. Trustmark Insurance Company

15. WellChoice, Inc. and its wholly owned subsidiary Empire HealthChoice Assurance, Inc., d/b/a Empire Blue Cross Blue Shield and Empire Blue Cross, and its wholly owned subsidiaries Empire HealthChoice HMO, Inc., doing business in New York as Empire Blue Cross Blue Shield HMO and Empire Blue Cross HMO and doing business in New Jersey as WellChoice HMO of New Jersey

16. WellChoice Insurance of New Jersey, Inc., a wholly-owned subsidiary of Empire HealthChoice Assurance, Inc.

## **Exhibit B**

1. Golden Rule Insurance Company
2. Pacificare, Inc.
3. United Wisconsin Life, Inc., a/k/a American Medical Security Group
4. WEA Insurance Corporation