## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

In re: NEURONTIN MARKETING AND
SALES PRACTICES LITIGATION

MDL DOCKET NO. 1629
MASTER CIVIL ACTION NO. 04-10981

THIS DOCUMENT RELATES TO:
ALL ACTIONS

**Honorable Patti B. Saris,**
**United States District Judge**

### DECLARATION OF THOMAS M. SOBOL IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, AWARD OF ATTORNEYS' FEES AND EXPENSES, AND COMPENSATION TO NAMED CLASS REPRESENTATIVES

Thomas M. Sobol declares pursuant to 28 U.S.C. § 1746 as follows:

### Introduction

1.      I am a partner with Hagens Berman Sobol Shapiro LLP and have practiced complex civil and criminal litigation for over 30 years.  I am a member of the bars of the Supreme Judicial Court of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts and have been appointed *pro hac vice* to numerous federal and state courts across the country.  For over twelve years my practice has focused on health care-related complex litigation, particularly on matters that affect the price of pharmaceutical and medical devices.

2.      This Court appointed me as co-lead counsel for the class in this case on December 17, 2004 and I have served in that capacity continuously since that time as a member of the six-firm Plaintiff Steering Committee ("PSC").

3.      I have been Court-appointed lead counsel, co-lead counsel, or a member of the steering committee in many of the largest pharmaceutical pricing cases in the country.  I was co-

lead counsel in *In re Average Wholesale Price Litigation, In re Lupron Marketing Sales and Marketing Practices Litigation,* and numerous drug antitrust matters including the *Augmentin, Relafen, Paxil, Doryx, Tricor, Toprol* litigations and many others.  Recoveries for my clients in pharmaceutical matters alone (including the classes they represent and other purchaser classes) are estimated in the billions of dollars.

4.      I provide this declaration in support of Class Plaintiffs' motion for final approval of the proposed settlement and the application of class counsel for an award of attorneys' fees in order to provide the Court with a brief explanation of the arm's length negotiations with Pfizer, as well as other stakeholders such as the Assurant Plaintiffs, that resulted in the proposed settlement.  In addition, I describe the activities undertaken by the PSC since the Court preliminarily approved the Settlement to vet the time and expenses reported by class counsel which forms the basis of class counsel's request for an award of attorneys fees and expenses.

## Settlement Negotiation

5.       After more than ten years of hard-fought litigation, the parties have reached a settlement that will bring this litigation to a close.  Under the settlement Defendants Pfizer Inc. and Warner-Lambert Company LLC ("Defendants" or "Pfizer") will pay $325 million to resolve the claim of all class members arising out of the sale and marketing of the drug Neurontin.  The settlement, which provides significant and long-awaited benefits to class members, exceeds the standard for preliminary approval for class action settlements.

6.      The Court is of course well aware of the long and storied history of this litigation – spanning more than a decade.  I refer the Court to the Declaration of Thomas Greene, filed contemporaneously herewith, for a full exposition of the efforts of class counsel in prosecuting this matter vigorously over the preceding 10 years.

7.      While the Defendants' Petition for Writ of Certiorari concerning the First Circuit Court of Appeal's opinion reversing the grant of summary judgment and vacating the denial of class certification was pending, class plaintiffs renewed their motion for class certification (Dkt. No 4153).  After certiorari was denied by the United States Supreme Court, this Court heard oral argument on the renewed Motion for Class Certification and shortly thereafter the parties began intensive arm's length negotiations aimed at resolving all pending claims, including those asserted by class plaintiffs and plaintiffs in *Assurant Health, Inc., et al. v. Pfizer, Inc. et al.*, No. 05-10535-PBS (D. Mass) (the "Assurant Plaintiffs").

8.      In addition to asserting the same allegations of fraudulent marketing of Neurontin alleged by Class Plaintiffs, the Assurant Plaintiffs also alleged that Pfizer engaged in unlawful conduct intended to delay the entry of generic Neurontin (gabapentin) causing the Assurant Plaintiffs to pay for the more expensive branded Neurontin when, but for Pfizer's illegal conduct, a cheaper generic version would have become available years earlier.[1]

9.      Pfizer originally began separate negotiations with class counsel and the Assurant Group, as well as with counsel for a large group of third party payers represented by the law firms of Lowey Dannenbery Cohen & Hart, P.C. and Rawlings & Associates, PLCC. (the "Lowey/Rawlings Group" ).[2]  The Lowey/Rawlings Group includes many of the largest TPPs in the United States.

10.     Class counsel determined that rather than negotiate separately with Defendants, a united approach would provide plaintiffs the greatest leverage and would likely maximize the overall recovery for the class.  To that end, prior to entering into formal negotiations with Pfizer,

---

[1] Class plaintiffs have previously addressed the nature of the Assurant Plaintiffs' claims at length (Dkt. No. 4268) as has counsel to the Assurant Plaintiffs (Dkt. Nos. 4273, 4274).

[2] For a list of the TPPs included in the Lowey/Rawlings Group see the Declaration of W. Scott Simmer in Further Support of Preliminary Approval of Settlement (Dkt. No. 4274-6) ("Simmer Declaration").

class counsel also engaged separately with counsel for the Assurant Plaintiffs and the Lowey/Rankings Group to ensure their participation in the settlement negotiations with Defendants and to ensure the interests of these groups were in lock step with those of the class. Prior to in-person mediation with Pfizer, class counsel sought to conclude negotiations with the Assurant Plaintiffs and the Lowey/Rawlings Group.

11.     On March 7, 2014, Class Counsel and the Lowey/Rawlings Group entered into an agreement whereby they would jointly participate in mediation with Defendants to resolve all claims.  The agreement with the Lowey/Rawlings Group provides that each member of that group will participate in any resulting class settlement as a class member.  No premium or additional consideration will be paid to members of the Lowey/Rawlings Group for their participation in the class.  The agreement also contains provisions related to the apportionment of any attorneys' fees awarded by the Court between class counsel and attorneys for the Lowey/Rawlings Group.

12.     On March 24, 2014, class counsel and the Assurant Plaintiffs entered into an agreement whereby the Assurant Plaintiffs would participate jointly in mediation with Pfizer in an attempt to resolve their claims.[3]  In recognition of the strength of their additional antitrust claims, under the agreement the Assurant Plaintiffs will submit claims for purchasers of Neurontin on the same basis as all class members.  Those claims would receive a multiplier of 1.95 in the claims process.

---

[3] A copy of the agreement between Blank Rome LLP and class counsel is attached as Exhibit D to the Simmer Affidavit (Dkt. No. 4274-4).

13.     Subsequent to class counsel's agreement with the Assurant Plaintiffs, negotiations between the Assurant Plaintiffs and the Lowey/Rawlings Group resulted in a reduction of the multiplier to be applied to Assurant Plaintiffs' claims from 1.95 to 1.8.[4]

14.     Based on the manner in which claim amounts are calculated and the 1.8 multiplier applied, the value of the Assurant Plaintiffs' 1.8 multiplier does not mean an Assurant Plaintiff will receive 1.8 times the recovery received by a class member for the same Neurontin expenditure.  Under the final agreed formula, the 1.8 multiplier is applied to increase the dollar value of the Assurant Plaintiffs' claims submitted in the settlement from which their pro-rated award would be determined.  Although their claim amount would be enhanced by 1.8, the denominator (the total amount of all Neurontin purchases claimed by all claimants, including the Assurant Plaintiffs) used to calculate the *pro-rata* payment to each claimant also includes the corresponding increase in the Assurant Plaintiffs' claim amounts, diluting the effect of the 1.8 multiplier.

15.     In addition to the multiplier, the agreement with the Assurant Plaintiffs also addresses the issue of attorneys' fees to be paid by members of that group.  The Assurant Plaintiffs insisted, and the agreement reflects, that that no matter what percentage the Court awards of the total settlement amount as a fee to class counsel, the Assurant Plaintiffs will pay 30% of their recovery from the class settlement in satisfaction of class counsel's request for a fee.

16.     Having established participation by all third-party payors, Class Plaintiffs and Pfizer engaged a highly experienced and universally respected mediator, Hon. Layn Phillips, a retired Federal District Court Judge, and held their first full-day, in-person mediation on March

---

[4] See April 15, 2014 e-mail from Scott Simmer. (Dkt. No. 4274-5).

25, 2014.  The mediation was attended by members of the PSC and attorneys representing the

Assurant Plaintiffs and the Lowey/Rawlings Group.  Although unsuccessful in resolving the

litigation, this session was very productive and the parties agreed to continue the mediation

process with oversight by Judge Phillips.

17.     A second in-person, full-day mediation with Judge Phillips on April 13, 2014

followed, with numerous interim phone calls and correspondence between the parties and their

counsel.  These efforts resulted in Defendants' agreement to pay $325 million to settle all claims.

In the weeks that followed, the parties finalized the settlement agreement, which the Court

preliminarily approved.

### Class Counsels' Time and Expenses

18.     Subsequent to the Court's order preliminarily approving the proposed settlement,

the PSC undertook the task of reviewing all of the detailed time and expense records submitted

by all class counsel from the inception of the litigation.

19.     Shortly after being appointed in 2004, the PSC tasked one firm with the collection

and maintenance, on a monthly basis, of all time and expenses claimed by each class counsel.

The time and expense materials accumulated over ten years of hard fought litigation are

voluminous.

20.     The PSC obtained and reviewed all such records in order to identify and eliminate

any potential overcharges due to inefficiency, duplication of effort, excessive hourly rates, or

record-keeping discrepancies.

21.     Counsel also paid particular care to ensure that any time and expenses recorded in

the 2009-2010 time period incurred in furtherance of claims on behalf of Kaiser were not

included in any lodestar or expense calculation for purposes of their fee application here.  Those

6

class counsel involved in preparing for and conducting the trial of claims on behalf of Kaiser previously submitted their time and expense records associated with their work in the Kaiser trial in 2009 and 2010 and received payment of fees and expenses associated with that representation. All time and expenses reported for purposes of class counsel's motion for fees in this matter are exclusive of the time and expenses associated with the Kaiser trial, including any preparation and post-trial briefing associated with that trial.

      22.    In addition to review of the previously submitted time and expense reports, class counsel asked each firm to provide two affidavits, one attesting to the firm's time records and the other its expenses.  Each firm was asked to attest to the accuracy of their contemporaneously kept time and expense records and to provide any missing backup to support their claimed time and expenses.  The time and expenses of any firm who failed to provide an affidavit was not considered in the PSC's calculation of lodestar and expenses.

      23.    The total unaudited lodestar reported by all class counsel in this process, including counsel for the Assurant Plaintiffs, was $36.8 million.  Having reviewed each firm's detailed contemporaneous records, and having reduced the reported time to account for identified instances of inefficiency in billing, duplication of effort, and some instances where the work performed was related to claims by Kaiser rather than the class, the PSC conservatively estimates the lodestar of all class counsel at $27.4 million.   This represents a reduction of approximately 26% from the unaudited time reported by all class counsel.

      24.    Using the requested fee of $108.33 million, the conservative lodestar estimate of $27.4 million yields a multiplier on class counsel's audited time of 3.97.  The multiplier is even lower if you consider that class counsel is not seeking an additional award of litigation expenses.

25.     With respect to expenses, the funds spent by the PSC from the PSC's litigation funds total over $3.3 million.  The majority of these funds were used to pay for the expenses associated with experts, transcripts, and document management.  The litigation fund also received contributions from coordinated plaintiffs, including Aetna and Kaiser, as well as a reimbursement of some funds as a result of the award of expenses associated with the Kaiser trial.  Subtracting these amount the unreimbursed amount PSC has spent from its litigation fund is in excess of $2.66 million.  Cumulatively class counsel report an additional $1.762 million in out-of-pocket expenses associated with each firm's individual expenses, outside of their contributions to the litigation fund.   The total reported expenses of class counsel, including the litigation fund and out-of-pocket expenses total no less than $4.38 million.  Class counsel do not seek a separate award of expenses and seek only an award of one-third of the total settlement amount in compensation for *both* their time and expenses.

27.     Given the effort put forth over the preceding ten years by class counsel and the extraordinary results achieved in the settlement, I believe an award of one-third of the total settlement amount is well within the acceptable range of awards by courts in the First Circuit, and is well deserved.

HAGENS BERMAN SOBOL SHAPIRO, LLP

/s/ Thomas M. Sobol
Thomas M. Sobol

Dated: September 15, 2014.