**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

```
                                )
In re NEURONTIN MARKETING       )
AND SALES PRACTICES LITIGATION  )
                                )
THIS DOCUMENT RELATES TO:       )
                                )
HARDEN MANUFACTURING CORP.,     )
et al.,                         )
            Plaintiffs,         )
                                )  Civil Action No. 04-10981-PBS
        v.                      )
                                )
PFIZER INC., et al.,            )
            Defendants.         )
                                )
```

## MEMORANDUM AND ORDER

November 10, 2014

Saris, U.S.D.J.

### INTRODUCTION

This Court has separately issued a Final Order and Judgment approving the class action settlement.

Class Counsel have moved pursuant to Fed. R. Civ. P. 23(h), 54(d), and 52(a) for an award of attorneys' fees and reimbursement of expenses. Having held a hearing on October 22, 2014 and considered all of the submissions and arguments, the Court now **ALLOWS** the motion with a fee award percentage of 28% of the common fund.

### BACKGROUND

This petition for attorneys' fees arises out of the

1

settlement of a nationwide, decade-long multi-district litigation against Pfizer, Inc. and Warner-Lambert Company (collectively "Pfizer") for a fraudulent scheme to promote and sell the drug Neurontin for "off-label" conditions. Harden Manufacturing Corp., Louisiana Health Service Indemnity Company, and ASEA/AFSCME Local 52 Health Benefits Trust are the representatives of a nationwide class of third-party payors ("TPPs") who covered the cost of Neurontin during the period since its first sale in the United States. The beneficiaries range from very small Taft-Hartley funds to large payors. There is also a subclass of indirect purchasers ("Subclass A"), represented by Blue Cross Blue Shield of Massachusetts, who alleged that Pfizer violated antitrust laws.

The factual and procedural background of this case is set forth in Harden v. Pfizer, 712 F.3d 60, 61-66 (1st Cir. 2013), cert. denied, 132 S. Ct. 786 (2013); Kaiser v. Pfizer, 712 F.3d 21, 25-27 (1st Cir. 2013), cert. denied, 132 S. Ct. 786 (2013); In re Neurontin Mktg. & Sales Practices Litig., 754 F. Supp. 2d 293, 296-308 (D. Mass. 2010); In re Neurontin Mktg. & Sales Practices Litig., 677 F. Supp. 2d 479, 484-91 (D. Mass. 2010); In re Neurontin Mktg. & Sales Practices Litig., 257 F.R.D. 315, 317-18 (D. Mass. 2009); In re Neurontin Mktg. & Sales Practices Litig., 244 F.R.D. 89, 92-103 (D. Mass. 2007); see also Kaiser v. Pfizer, 748 F. Supp. 2d 34, 38-81 (D. Mass. 2010).

The settlement has resulted in a common fund of $325

million. Class Plaintiffs have requested that the Court award Class Counsel fees and expenses amounting to 33 1/3% of the settlement fund, $108.33 million dollars.[1] There is no separate request for reimbursement of litigation-related expenses, which amount to $4.38 million.

**DISCUSSION**

**A. Legal Framework**

Under the "common fund doctrine," attorneys whose efforts lead to the creation of a fund for the benefit of the class are "entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). In common fund cases, a "district court, in the exercise of its informed discretion, may calculate counsel fees either on a percentage of the fund basis or by fashioning a lodestar." In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 307 (1st Cir. 1995). The fee must be based on a percentage of the fund which the Court deems "reasonable." Id. at 305.

In weighing a common fund request, courts generally consider the following so-called Goldberger factors: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the

---

[1] At oral argument, Class Counsel and counsel for Subclass A also suggested 30% would be fair. Hrg. Tr. 26:18-27:1; 33:21-34:1.

complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." In re Lupron Mktg. & Sales Practices Litig., No. MDL 1430, 01-CV-10861-RGS, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005), citing Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000); Third Circuit Task Force, Court Awarded Attorneys Fees, 108 F.R.D. 237, 255-56 (1985).

In so-called "megafund" cases, defined as those which yield settlement funds of over $100 million, some courts have adopted a practice of lowering the fee award percentage as the size of the settlement increases to avoid giving attorneys a windfall at the plaintiffs' expense. See, e.g., In re Citigroup Inc. Bond. Litig., 988 F. Supp. 2d 371, 374-75 (S.D.N.Y. 2013) (setting fee award at 16% of $730 million common fund); Kifafi v. Hilton Hotels Ret. Plan, 999 F. Supp. 2d 88, 100, 104 (D.D.C. 2013) (setting fee award at 15% of $140 million common fund). The Manual for Complex Litigation has noted this trend, pointing out that "[o]ne court's survey of fee awards in class actions with recoveries exceeding $100 million found fee percentages ranging from 4.1% to 17.92%." Federal Judicial Center, Manual for Complex Litigation - Fourth 188-89 (2004), citing In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 339-40 (3rd Cir. 1998). Additionally, Professor Brian T. Fitzpatrick submitted a

helpful affidavit in this case compiling several recent unpublished cases with common funds similar in size to the one here. Fitzpatrick Aff., Table 2, citing New England Carpenters Health Benefits Fund v. First Databank, Inc., No. 05-11148-PBS, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding 20% of $350 million common fund); Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., No. 1:08-cv-10841 (S.D.N.Y. May 8, 2012) (awarding 17% of $315 million common fund); In re Bear Stearns Co., Sec., Derivative and ERISA Litig., No. 08-MD-1963 (S.D.N.Y. Nov. 9, 2012) (awarding 12% of $295 million common fund).

Some courts have rejected the practice of lowering fees in megacases, reasoning that "[b]y not rewarding Class Counsel for the additional work necessary to achieve a better outcome for the class, the sliding scale approach creates the perverse incentive for Class Counsel to settle too early for too little." In re Checking Account Overdraft Litig., 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011) (setting fee award at 30% of $410 million common fund), quoting Allapattah Servs., Inc. v. Exxon Corp., 454 F. Supp. 2d 1185, 1213 (S.D. Fla. 2006); see also In re Synthroid Mktg. Litig., 264 F.3d 712, 718 (7th Cir. 2001) (rejecting a 10% cap on fee awards for common funds of $75 million and over, noting that "[p]rivate parties would never contract for such an arrangement, because it would eliminate counsel's incentive to press for more than $74 million from the defendants"). Professor

Fitzpatrick's affidavit also contained examples of this perspective in other cases with similarly-sized funds. Fitzpatrick Aff., Table 2, citing In re Tricor Direct Purchaser Antitrust Litig., C.A. No. 05-340-SLR (D. Del. Apr. 23, 2009) (awarding 33% of $250 million fund); In re Initial Pub. Offering Sec. Litig., 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (awarding 33.33% of $510 million fund).

**B. Application**

Class Counsel seek an award of 33 1/3% of the settlement fund. The Court must evaluate that request using the Goldberger factors.

In fashioning the fee award, the Court gives due weight to the fact that this case was lengthy and complex. Class Counsel achieved excellent results for their clients. They brought a great deal of experience to the case, and throughout the litigation they performed with considerable skill. After more than a decade of hard-fought litigation against a formidable opponent, Pfizer, the settlement creates a $325,000,000 fund to settle the claims of more than 40,000 class members. Only one class member has opted out,[2] and only one class member objected, but not with respect to the amount of the fund, or the reasonableness of the attorneys' fees. Public policy militates in

---

[2] See Order & Judgment Granting Final Approval of the Class Action Settlement Agreement and Release and Approving Proposed Allocation of Settlement Funds, Ex. A.

favor of a considerable fee award, as lawsuits which help curtail fraudulent drug marketing provide a valuable service in helping to safeguard the health and welfare of the general public.

Class Counsel emphasize that they have invested more than ten years and millions of dollars in expenses. They argue that they should receive more than the lodestar because of the risk they took in undertaking this litigation, which involved novel cutting-edge legal questions and complex scientific issues. The riskiest portion of the litigation against Pfizer was the bellwether trial for which Kaiser served as a plaintiff. The outcome of that case - a jury found that Pfizer had violated the Racketeer Influenced and Corrupt Organizations Act (RICO) - substantially increased the certainty that Class Plaintiffs would be able to recover their payments through civil litigation. See In re Neurontin Mktg. & Sales Practices Litig., Civ. No. 04-cv-10739-PBS, 2011 WL 3852254, at *1 (D. Mass. Aug. 31, 2011). The Kaiser trial accounted for several years of the litigation. Significantly, Class Counsel have already been compensated for the Kaiser trial and the risks inherent within it. Counsel declined to disclose the amount of the attorneys' fees settlement reached by the lead counsel who also served on this case. While counsel subtracted the attorneys' fees attributable to the Kaiser case in calculating the lodestar in the present fee petition, a high-end percentage of the fund here might over-compensate Class

Counsel for risks of litigation that have already been accounted for elsewhere.

The sizes of fee awards in similar mega-cases suggest that 33 1/3% of the settlement fund is too high a percentage. An empirical study of federal class action fee awards in 2006 and 2007 found that nearly two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund. See Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical L. Stud. 811, 833-34 (2010). In the First Circuit, the mean was 27% and the median was 25%. Id. at 836. Importantly, however, the study also broke down fee award data according to the size of the settlement fund, and found that for settlements between $250 million and $500 million, the mean percentage was just 17.8%. Id. at 839.

Class Counsel argue that the multiplier on the lodestar of 3.97 is appropriate in light of the complexity of the case, and that if they don't receive the requested high percentage (33 1/3%) of the fund the resulting multiplier would be too low. However, Class Counsel have given the Court only a bottom line lodestar figure - $27.4 million excluding time spent on the Kaiser trial - and have not provided detailed information regarding hours worked, hourly rates charged, or expenses charged, rendering it impossible for the court to perform a

8

proper lodestar cross-check on the reasonableness of the 33 1/3% award amount. Indeed, based on the high hourly rates requested by those of Class Counsel who were involved in the Kaiser fee award petition, some over $900 per hour, it is quite likely that the court would have reached a lower lodestar figure by imposing hourly rate caps to better reflect the Boston market, and the legal market generally post-2008.[3] See Mem. in Supp. of Mot. for Atty Fees, Dkt. 4166. In any event, 28% would yield a multiplier of 3.32, which is well within the range. See In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, and "ERISA" Litig., 4 F. Supp. 3d 94, 113 n.20 (D.D.C. 2013), quoting 4 Newberg on Class Actions § 14:7 (4th ed. 2002) ("Generally, multipliers from 1-3 are the norm.").

In light of the above, the Court reduces the proposed percentage and awards Class Counsel 28% of the common fund for attorneys fees' and expenses. Setting attorneys' fees at the end of a decade-long multidistrict litigation is a sour task. The court's decision not to award the requested fees of 33 1/3% does not diminish its view of the excellent lawyering here.

**ORDER**

---

[3] See, e.g., Commonwealth Care Alliance v. AstraZeneca Pharm., LP, No. CIV. A. 05-0269, 2013 WL 6268236, at *1-*2 (Mass. Super. Aug. 5, 2013) (concluding that hourly rates of $590 for a senior partner are reasonable and in line with rates charged at medium to large law firms in Boston and applying a lodestar multiplier of 2).

The Court **ALLOWS** the plaintiffs' motion for attorneys' fees, reimbursement of expenses, and compensation to class plaintiffs (Docket No. 4287). Class Counsel are hereby awarded 28% of the settlement fund, inclusive of reimbursement of reasonable litigation expenses, plus interest accrued thereon, if any. In light of the factors and findings described above, the 28% fee award is within the applicable range of reasonable percentage fund awards. The Court finds this award to be fair and reasonable.

The awarded fees and expenses shall be paid to Class Counsel from the settlement fund in accordance with the terms of the Settlement Agreement. The Plaintiffs Steering Committee shall allocate the fees and expenses among Class Counsel in a reasonable fashion.

Class and Subclass Representatives are hereby compensated in the following amounts for their reasonable time spent on tasks related to their representation of the Class and Subclass A, which shall be paid from the Settlement Fund: Harden Manufacturing Corporation, $25,000; Louisiana Health Service Indemnity Company, d/b/a/ BlueCross/BlueShield of Louisiana, $25,000; ASEA/AFSCME Local 52 Health Benefits Trust, $25,000; and Blue Cross Blue Shield of Massachusetts, $25,000. These payments are in recognition of the work these plaintiffs undertook in representing the Class and Subclass A, which amount is in

addition to whatever monies these plaintiffs will receive from the settlement fund pursuant to the plan of distribution. The Court finds these awards to be fair and reasonable.

The Court retains exclusive jurisdiction over the Settlement Agreement, including over any issues relating to attorneys' fees and expenses.

                                              /s/ PATTI B. SARIS
                                              PATTI B. SARIS
                                              United States District Judge