UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1629<br>MASTER CIVIL ACTION NO. 04-10981 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**DECLARATION OF SANDY A. LIEBHARD IN SUPPORT OF
MOTION FOR REALLOCATION OF ATTORNEYS' FEES
AND FOR DISCOVERY IN SUPPORT OF REALLOCATION**

I, Sandy A. Liebhard, declare as follows:

1. I am a partner at the law firm of Bernstein Liebhard LLP. I submit this declaration in support of the motion for the Court to reallocate attorneys' fees.

## BACKGROUND OF THIS MOTION

### *Bernstein Liebhard's Role In The Case*

2. Bernstein Liebhard served as co-chair of the discovery committee in this litigation, expending 8,900 hours for a total lodestar of $5,273,035—a commitment greater than all but one other firm, including five of the six firms constituting the Plaintiffs' Steering Committee ("PSC").

3. Among other things, Bernstein Liebhard took, attended and defended depositions, handled discovery disputes with defense counsel, conducted document review, contributed to PSC litigation strategy sessions, coordinated discovery between all of the varying plaintiff groups, and contributed to the litigation fund.

4. In terms of risks taken and work contributed, Bernstein Liebhard performed a role equivalent to a PSC member.

1

5.     Almost all of Bernstein Liebhard's work was tallied before 2008. Following this Court's denial of class certification, the PSC stopped assigning work.

6.     Unlike the PSC firms that were paid very well in the *Kaiser* case, Bernstein Liebhard has yet to be compensated for any of the work it performed in this litigation.

***PSC Tells the Court that It Conducted a Fee Audit, and Misrepresents to Bernstein Liebhard that the Firm Would Not Be Disparately Impacted***

7.     In September 2014, the PSC moved for an award of attorneys' fees on behalf of all class counsel.

8.     The PSC did not share the brief with Bernstein Liebhard or the broader class counsel group before filing.

9.     In its brief in support of the motion, the PSC stated that it had performed "a careful audit of time submitted by all firms who have worked on the plaintiffs' behalf, which Class Counsel undertook to weed out duplicative or inefficient billing." Mem. in Supp. of Motion for an Award of Attorney's Fees, Reimbursement of Expenses, and Compensation Awards to Class Representatives (ECF No. 4288) at 16, n. 6.

10.    Thomas M. Greene of Greene LLP, Chair of the PSC, submitted an affidavit in support of the motion as well. He attested that:

> In the course of preparing this fee application, members of the Plaintiffs' Steering Committee have reviewed the time records of each firm to ensure that all time was properly recorded to the class action (as opposed to work on the *Kaiser* trial), to eliminate any charges for duplicated efforts, and to ensure hourly rates charged by each firm were reasonable. After review of each firms' records, the Plaintiffs' Steering Committee made certain adjustments downward from the reported time to derive a conservative estimate of the total lodestar expended by the firms in this matter. The Plaintiffs Steering Committee received affidavits and supporting material that indicates the firms expended almost 79,000 hours of professional time from the inception of this case to date. Billed at those firms' current reasonable billing rates, this time amounted to a total lodestar of approximately $36.8 million. After our review, however, to eliminate

>duplication of effort, and to only consider time that was appropriately billed to the class action, the Plaintiffs' Steering Committee conservatively estimates the lodestar of work performed by all counsel to be $27.4 million.

Aff. of Thomas M. Greene in Supp. of Class Plaintiff Counsel's Motion for an Award of Attorney's Fees, Reimbursement of expenses, and Compensation Awards to Class Representatives (ECF No. 4289) (Greene Aff.).

11. Thomas Sobol of Hagens Berman Sobol Shapiro LLP, another PSC member, also submitted a declaration in support of the motion. Sobol attested that: 1) "[t]he total unaudited lodestar reported by all class counsel in this process, including counsel for the *Assurant* Plaintiffs, was $36.8 million"; and 2) "[h]aving reviewed each firm's detailed contemporaneous records, and having reduced the reported time to account for identified instances of inefficiency in billing, duplication of effort, and some instances where the work performed was related to claims by *Kaiser* rather than the class, the PSC conservatively estimates the lodestar of all class counsel at $27.4 million. This represents a reduction of approximately 26%." Decl. of Thomas M. Sobol in Supp. of Class Plaintiff Counsel's Motion for an Award of Attorney's Fees, Reimbursement of expenses, and Compensation Awards to Class Representatives (ECF No. 4286) (Sobol Decl).

12. Prior to submitting the motion, the PSC had not disclosed to Bernstein Liebhard, or the non-PSC class counsel, that such an audit would be or had been performed, let alone what criteria would be used and what impact it might have on the allocation of any potential fee award.

13. Having learned of this audit for the first time only on September 15, 2014, when the PSC filed its motion for attorneys' fees, and needing to assess whether its own submission might be required to protect its interests, Bernstein Liebhard immediately contacted Greene.

3

Greene explained to Bernstein Liebhard that its time and expenses had not been individually impacted by the audit. In reliance on this representation, Bernstein Liebhard did not make its own submission in regard to the fee at that time.

14. During the hearing on the motion for attorneys' fees, Mr. Sobol repeated the assertion that a detailed audit had been conducted prior to the submission: "What we did with the time in the case is, we made sure that we were giving you - - well, what we did was, we looked at all the lawyers' time. We went through it, and we said, 'Okay, we want to make sure that we give the Court not what our highest inflated time value would be so that makes our multiplier look low.' Instead, what we did is, we did an analysis of the time, and we said "What is the smallest, most reasonable number that we could provide?'" Hr'g Tr. 10/22/14 at 27.

15. At the hearing, Sobol argued that the risk assumed by class counsel—risk like hiring lawyers to work on the case for several years and not being paid during the pendency of the litigation—justified the multiplier it was requesting on the aggregate fee. *Id.*

16. The Court noted that many of the attorneys on the PSC, especially Greene and Sobol, had already been compensated for much of the risk, having been "well paid in this case, both through the False Claims Act case and through the *Kaiser* case." Hr'g Tr. 10/22/14 at 33.

17. In November 2014, the Court granted Class Counsel's fee request, awarding 28% of the common fund.

18. In reaching its decision to award a 3.32 multiplier, rather than the 3.9 multiplier requested by the PSC, the Court noted that "Class Counsel have given the Court only a bottom line lodestar figure . . . and have not provided detailed information regarding hours worked, hourly rates charged, or expenses charged, rendering it impossible for the court to perform a proper lodestar cross-check. . . ." Mem. and Order at 8-9 (ECF No. 4303).

19.     The Court directed the PSC to "allocate the fees and expenses among Class Counsel in a reasonable fashion."

20.     In February 2015, the PSC informed Bernstein Liebhard of its allocation. The PSC tentatively allocated Bernstein Liebhard a 1.468 mutiplier to an unfairly downward adjusted lodestar—essentially no multiplier at all on its actual lodestar.

### *Bernstein Liebhard Requests the PSC's Work Product to Assess the Reasonableness of the Fee Allocation and the PSC Admits That It Never Performed a Careful Fee Audit*

21.     Bernstein Liebhard promptly objected to the PSC's planned allocation and requested information to assist it in an assessment of the fairness and reasonableness of the PSC's determination.

22.     On February 23, 2015, Bernstein Liebhard specifically requested work product supporting Mr. Sobol's assertion that the PSC had conducted a careful audit of all firms' time, a copy of work product that resulted in the proposed attorney fee and expense allocation, and a copy of the proposed attorneys fee and expense allocation to all firms. *See* Exhibit A.

23.     On February 25, 2015, in response to Bernstein Liebhard's letter, the PSC admitted that, in fact, no such audit had been conducted prior to the hearing on the PSC's application for fees. *See* Exhibit B.

24.     As Greene explained:

> [T]he effort at that time did not involve a firm-by-firm determination of precise reductions in stated lodestar. Instead . . . the work referred to in [the Sobol affidavit] was the work necessary to arrive at a "conservative estimate" or "bottom line" figure with certainty sufficient to submit the affidavit. The purpose of that estimate was for Judge Saris to have at her disposal a number by which she could confidently perform a multiplier "cross check" to the total attorneys' fees and expenses awarded. That was the only purpose of that procedure, and that procedure was not relied on for allocation.

*See* Exhibit B.

5

### *PSC Fabricates Excuses To Treat Bernstein Liebhard Disparately By Cutting Its Time*

25.     The PSC also stated in their February 25, 2015 response that downward adjustments were made to Bernstein Liebhard's lodestar to: 1) exclude all time performed by contract attorneys, reducing lodestar by $1.1 million[1]; 2) exclude largely unspecified "unnecessary or undetermined matters," reducing lodestar by another $200,000; 3) reduce hourly rates by paralegals to the "upper end of paralegal rates in Boston ($175 an hour)," further reducing lodestar by $28,000; and 4) reduce the hourly rate of Ronald Aranoff (the day-to-day partner on the case for Bernstein Liebhard) to a "reasonable Boston junior partner's rate—$600 per hour—commensurate with his experience at the time his work on the case was complete in 2008," resulting in another nearly $1 million reduction. *Id.*

26.     Bernstein Liebhard's lodestar after all of the above reductions were applied was $3,020,199.

27.     The PSC also said that other reductions to Bernstein Liebhard were considered but not adopted, and that ultimately, the committee determined that it was fair and reasonable to simply adjust Bernstein Liebhard's lodestar to exactly $3,000,000—more than $2.2 million less than Bernstein Liebhard's submitted lodestar.

28.     On February 26, 2015, Bernstein Liebhard responded to the PSC by reiterating its earlier request for information so that it could determine how it was treated "relative to the other

---

[1] Notably, the PSC had never informed Bernstein Liebhard that contract attorney time would be disallowed. In fact, contract attorney lodestar is typically treated the same as permanent attorney lodestar in fee awards. *See, e.g., Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400, 403 (D. Conn.), *aff'd*, 355 F. App'x 523 (2d Cir. 2009). This is appropriate since a rational firm would not expend hundreds of thousands of dollars on legal personnel merely for the chance to recover those expenses dollar for dollar, or in this case, not at all. Furthermore, not only was the PSC aware that Bernstein Liebhard had hired contract attorneys to perform specific functions requested by the PSC, but in December 2006 an attorney from Greene LLP personally worked with Ronald Aranoff to train the Bernstein Liebhard contract attorneys in New York to perform the tasks.

firms in the case"—in other words, whether its allocation was in fact both fair and reasonable. *See* Exhibit C.

29.     On March 3, 2015, the PSC provided some more information, but not nearly what Bernstein Liebhard had requested. *See* Exhibit D. Among other things, the PSC supplied the "unadjusted lodestars reported" for each firm. According to the PSC, this was "irrelevant" (1) for the purpose of the overall fee determination, because an estimate of "reasonable lodestar" was provided to the Court for the lodestar cross-check, as opposed to reported lodestar; and (2) for the purpose of the ultimate allocation by the PSC, because the PSC's allocation would be based on an "apples-to-apples" comparison of the reasonable lodestar for each firm, and also because the reported lodestar did not include that for the third party payer counsel, who received approximately $19 million out of the $91 million fee award.[2]

30.     The PSC did not provide (1) details regarding what its "apples-to-apples" standards were and how they were applied to other firms, and (2) the lodestar for the third party payer counsel.

31.     The PSC also provided the "current hourly rates reported by each firm that were used to calculate their reported lodestar." *See* Exhibit D. The PSC noted that "there was no attempt to impose Boston hourly rates across the board; but the PSC did make adjustments to the reported hourly rates of clear outliers using Boston rates as a touchstone." *Id.* The PSC did not specify what constituted a clear outlier of Boston hourly rates, nor detail when adjustments were made and to which lawyers or firms (aside from Bernstein Liebhard's).

32.     Finally, the PSC provided the tentative allocation for expenses, cash assessments, and lodestar made by the PSC from the "lodestar pool."

---

[2] Though the PSC has not disclosed the lodestar for the third party payer counsel, Bernstein Liebhard estimates that the payment made to them constitutes as much as a 4x multiplier.

33. The PSC noted that the tentative allocation it provided did not include any so-called "bonus awards" from the $24.5 million slush fund, which had not yet been determined by the PSC.

34. In regards to the "bonus awards," the PSC explained:

> You will see from attachment C [listing the tentative allocations to each firm] that after (1) paying all firms' expenses; (2) paying a 2x multiplier on all firms' cash assessments; (3) paying each firm the same multiplier [1.468x] on their *adjusted* lodestar; and (4) subtracting these amounts from the gross estimated $72 million, there remains a bonus pool of approximately $24.5 million. We anticipate that the vast majority of these funds will go to those firms that provided the most value during the entire 11 year litigation—and it was those firms that negotiated the settlement and achieved a favorable outcome for the Class.

*Id.* at 2.

35. Except to hint that they intended to divvy the vast majority of the bonus pool amongst themselves, the PSC did not disclose (and to this day has not disclosed) to whom it allocated its "bonus pool" or how much each firm received.

36. In addition, while the PSC again failed to provide documentation for the manner in which it adjusted lodestar, or support for its own time submissions, as mentioned above it did provide charts summarizing for each firm the reported lodestar and the "current tentative adjusted lodestar."

37. A comparison of the PSC's submitted lodestar to its adjusted lodestar calls into question whether any serious audit was made of the PSC lodestar at all (save for one member):

| PSC Firm | Submitted Lodestar | Adjusted Lodestar per 3/3/15 Sobol Letter |
| --- | --- | --- |
| Barrett Law Office PA | $1,449,411.00 | $1,477,821.00 |
| Greene LLP | $8,515,720.50 | $8,513,039.50 |

8

| Hagens Berman Sobol | $3,160,930.75 | $3,160,930.75 |
| --- | --- | --- |
| Lieff Cabraser | $3,361,631.00 | $3,361,631.00 |
| Daniel E. Bechnel, Jr. | $746,932.50 | $746,932.50 |
| Dugan Law Firm[3] | $2,026,149.51 | $1,000,000.00 |

38.     Remarkably, after the PSC employed its undisclosed process for making adjustments to lodestars, non-PSC firms saw their aggregate lodestar reduced by approximately 27% (from roughly $12.9 million to roughly $9.4 million), while the PSC (excepting Dugan) saw its lodestar actually *increase* by $25,729.

39.     Bernstein Liebhard's reduction amounted to about 63% of the aggregate non-PSC downward adjustments.

40.     As is evident from the PSC's own chart, whatever process it employed to determine adjusted lodestar, none of the criteria impacted the PSC.

41.     On March 5, 2015, Bernstein Liebhard wrote the PSC once more. *See* Exhibit E. Bernstein Liebhard requested 1) the underlying time records for the PSC firms and the co-discovery chair firm in order to compare the treatment of Bernstein Liebhard's time; 2) the underlying time records for the third party payer counsel that accounted for $19 million of the total fee distributed; 3) the names of contract attorneys employed by other firms; and 4) the "bonus pool" allocation plan.

42.     The PSC simply ignored Bernstein Liebhard's March 5, 2015 letter.

---

[3] Much of Dugan's lodestar reduction was due to the fact that much of its time was allocated to another firm.

9

43. On March 17, 2015, Bernstein Liebhard again wrote to the PSC asking for a response, to which the PSC replied that it had "made no final decisions" and "did not know timing at this point" to make final decisions. *See* Exhibit F.

44. On March 30, 2015, Bernstein Liebhard again requested a response to its prior demands, and advised the PSC that it should not distribute any allocation because it was prepared to seek judicial intervention to resolve this matter, if necessary. *See* Exhibit G.

45. On April 1, 2015, the PSC responded by email that despite the pending requests for information and the ongoing dispute, it had already issued instructions to the escrow agent to distribute the allocation. *See* Exhibit H.

46. In a letter received April 2, 2015 (but dated March 26, 2015), the PSC stated that it had determined that Bernstein Liebhard should receive $4,882,614 in total payments, covering fees and expenses. *See* Exhibit I.

47. The PSC then offered Bernstein Liebhard an allocation of $5,651,214.85 instead, so long as Bernstein Liebhard did not seek judicial intervention to review the fairness of the allocation process.

48. Bernstein Liebhard endeavored to reach an agreement with the PSC to privately mediate this dispute on two conditions: 1) that it be permitted to cash a check in the amount of the minimum fair and reasonable allocation—$4,882,614—without prejudice, and 2) that the parties inform the Court that a dispute exists and that private mediation is being tried to resolve it. The PSC rejected both conditions.

49. Prior to Bernstein Liebhard's filing of this motion, the PSC reversed its previous position and threatened that even the $4,882,614 allocation—which itself is a negative multiplier

to Bernstein Liebhard's actual lodestar—would be off-the-table if Bernstein Liebhard sought judicial intervention into the fairness of the PSC's fee allocation process.

## EXHIBITS REFERENCED

50. Attached hereto as Exhibit A is a true and correct copy of the February 23, 2015 letter from Sandy A. Liebhard, Esq. to Thomas M. Greene, Esq. and Thomas M. Sobol, Esq.

51. Attached hereto as Exhibit B is a true and correct copy of the February 25, 2015, from Thomas M. Greene, Esq. to Sandy A. Liebhard, Esq.

52. Attached hereto as Exhibit C is a true and correct copy of the February 26, 2015, letter from Sandy A. Liebhard, Esq. to Thomas M. Greene, Esq. and Thomas M. Sobol, Esq.

53. Attached hereto as Exhibit D is a true and correct copy of the March 3, 2015 letter from Thomas M. Sobol, Esq. to Sandy Liebhard, Esq.

54. Attached hereto as Exhibit E is a true and correct copy of the March 5, 2015 letter from Sandy A. Liebhard, Esq. to Thomas M. Greene, Esq. and Thomas M. Sobol, Esq.

55. Attached hereto as Exhibit F is a true and correct copy of the March 17, 2015 letter from Sandy A. Liebhard, Esq. to Thomas M. Greene, Esq. and Thomas M. Sobol, Esq.

56. Attached hereto as Exhibit G is a true and correct copy of the March 30, 2015 letter from Sandy A. Liebhard, Esq. to Thomas M. Greene, Esq. and Thomas M. Sobol, Esq.

57. Attached hereto as Exhibit H is a true and correct copy of an April 1, 2015 e-mail from Thomas Sobol, Esq. to Sandy A. Liebhard, Esq.

58. Attached hereto as Exhibit I is a true and correct copy of a March 26, 2015 letter from Thomas M. Greene, Esq. to Sandy Liebhard, Esq.

59. Attached hereto as Exhibit I is a true and correct copy of the March 26, 2015 letter from Thomas M. Greene, Esq. to Sandy A. Liebhard, Esq.

Dated this 7th of May, 2015

_____
Sandy A. Liebhard