UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS


IN RE:                          )
                                )   Civil Action
NEURONTIN MARKETING, SALES      )   No. 04-10981-PBS
PRACTICES AND PRODUCTS          )
LIABILITY LITIGATION            )
                                )
                                )




**MOTION HEARING**



BEFORE THE HONORABLE LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE


UNITED STATES DISTRICT COURT
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
June 29, 2012
11:30 a.m.



*   *   *   *



CATHERINE A. HANDEL, RPR-CM, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
(617) 261-0555

```
 1

 2      APPEARANCES:

 3

 4      For the Plaintiffs:

 5      LAW OFFICE OF NEWTON B. SCHWARTZ
        By:  Newton B. Schwartz, Sr., Esq.
 6           1911 Southwest Freeway
             Houston, TX 77098
 7

 8

 9
        For the Defendant Pfizer:
10
        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
11      By:  Mark S. Cheffo, Esq., and
             Catherine B. Stevens, Esq.
12           Four Times Square
             New York, NY 10036
13

14

15

16

17
        ALSO PRESENT:
18

19      LAW OFFICE OF JACK W. HARANG
        (By:  Jack W. Harang, Esq.)
20            528 St. Charles Avenue
              Suite 501
21            New Orleans, LA 70130

22

23

24

25
```

```
1                      P R O C E E D I N G S

2              (The following proceedings were held in open court

3    before the Honorable Leo T. Sorokin, United States Magistrate

4    Judge, United States District Court, District of Massachusetts,

5    at the John J. Moakley United States Courthouse, 1 Courthouse

6    Way, Boston, Massachusetts, on June 29, 2012.)

7              COURTROOM DEPUTY CLERK SIMEONE:  The Honorable Leo

8    Sorokin presiding.  Today is June 29th.  The case of In Re:

9    Neurontin, Civil Action 04-10491 will now be heard before the

10   Court.  Counsel please identify themselves for the record.

11             MR. HARANG:  I'm Jack Harang here on behalf of

12   somebody, some plaintiffs, your Honor.

13             MR. SCHWARTZ:  Newton Schwartz in my final

14   appearance.

15             THE COURT:  All right.  It's a pleasure to see you,

16   Mr. Schwartz, but I don't think you had to come.  You know,

17   the Federal Court has a lot of power, but I don't think I want

18   to get between a lawyer and his spouse.

19             MR. SCHWARTZ:  Well, we arranged -- we had the

20   hearing yesterday in Texas on our case and in case any clients

21   showed up -- they were notified of the hearing -- I thought it

22   better that I be here in case -- none have appeared so far.

23             THE COURT:  Right.  All right.

24             MR. CHEFFO:  Good afternoon -- good morning, your

25   Honor.  Mark Cheffo and Catherine Stevens.
```

```
 1              MS. STEVENS:  Good afternoon.

 2              THE COURT:  Good morning, still.

 3              MS. STEVENS:  Good morning.

 4              THE COURT:  All right.  So, where are we, Mr. Harang?

 5         Let me tell you where I understand things are.  We

 6    have the motion by Mr. Schwartz with two categories of Mr.

 7    Schwartz's cases.  One category of cases were those cases that

 8    had been stayed and one category were the 23 cases that Mr.

 9    Schwartz had been planning to proceed on, and back in -- I

10    think it was May, Mr. Schwartz indicated as to those 23 cases

11    he wanted to withdraw as well, but, Mr. Harang, you said you

12    might want to take those cases.  You weren't sure.  So, I

13    said, all right, I'll give you an opportunity to do that and

14    that's why we're -- so, we've been proceeding on two tracks

15    with the other -- other than the 23 cases Mr. Schwartz filed

16    the notices and -- to his clients that he intended to

17    withdraw.  I think we've received an objection -- or a

18    response from one or two clients.

19              MR. SCHWARTZ:  Taylor was the only one we received,

20    Judge, and we responded to her fairly quickly and sent her the

21    transcript of the hearing and --

22              THE COURT:  Fine.

23              MR. SCHWARTZ:  -- and our reasons for --

24              THE COURT:  You might be right that it's only one.

25              MR. SCHWARTZ:  We didn't file publicly or even with
```

```
1     Mr. Cheffo because they were privileged communications.
2               THE COURT:  Fine.
3               MR. SCHWARTZ:  She's the only one we know of.
4               THE COURT:  All right.  So, I'm --
5               MR. SCHWARTZ:  From Florida.
6               THE COURT:  I don't -- I will look that over.  I
7     wasn't planning to address that today.
8               The real question I thought for today was as to the
9     23 cases, I want to hear from Mr. Harang as to what he intends
10    to do.
11              MR. HARANG:  Your Honor, I have responded.  I think
12    it was on the 21st.  I sent a status report into the Court and
13    to you.
14              THE COURT:  All right.  I don't know if I saw that.
15              MR. HARANG:  Anyway, I've definitively rejected
16    pursuing 13 of those 23 cases and all of the others, because I
17    looked at the -- I didn't limit my thought process to just the
18    ones that were --
19              THE COURT:  Just to the 23?
20              MR. HARANG:  Yes, your Honor.
21              THE COURT:  I see.  So, as to all those ones that
22    were stayed, and anything other than the 23 you're not
23    interested?
24              MR. HARANG:  That's correct.
25              THE COURT:  And as to the 23 --
```

```
 1              MR. HARANG:  13 I've definitively said I'm not

 2    interested in taking -- in pursuing or doing anything with.

 3    Ten there are -- in my response I asked the Court -- I've

 4    talked to Mr. Cheffo.  I would like to have a little more time

 5    to do a little bit more in-depth into those ten.

 6              THE COURT:  When did you file the status report?

 7              MR. HARANG:  That was June the 21st.  It was sent in

 8    on the 21st, your Honor.

 9              (Discussion off the record at the bench.)

10              THE COURT:  I apologize.  I'm sure you filed it.  I

11    think I missed it.

12              COURTROOM DEPUTY CLERK SIMEONE:  Yes, you filed it.

13              MR. HARANG:  I was just looking at it.  I hope you

14    got it.

15              THE COURT:  It's on the docket?

16              COURTROOM DEPUTY CLERK SIMEONE:  It's on the docket.

17              THE COURT:  I didn't see it.

18              MR. HARANG:  Okay.  That's the status on those, your

19    Honor.

20              MR. CHEFFO:  Jack, excuse me.

21              (Discussion off the record.)

22              MR. HARANG:  It wasn't a big document.  So, it

23    probably didn't get a lot of attention.

24              THE COURT:  It's okay.  Short and to the point is

25    always the best.
```

1              MR. HARANG:  I had a professor that told me that the

2     hardest contract to break was one that said, "I'll sell you my

3     car for $500."

4              THE COURT:  Okay.  So, I have it.  I see it.

5              13 you don't want to participate.  Ten you want

6     additional time.  How much time do you want?

7              MR. HARANG:  Your Honor, I said -- Mark and I talked

8     yesterday and I said two weeks.  The one thing I didn't take

9     into account is the fact that this coming week is going to

10    become a difficult week.  So, it's somewhere between two and

11    three weeks, is the most I'd want.

12             THE COURT:  So, what you really want is not to start

13    the discovery on any of these ten cases that I now have --

14             MR. HARANG:  Because there may be nine of the ten

15    that I'm not -- when I get a chance to do an in-depth look at

16    them, your Honor, I may not want nine of the ten or eight of

17    the ten or ten of the ten.

18             THE COURT:  And you agree to that, Mr. Cheffo?

19             MR. CHEFFO:  Yes, your Honor.  I don't have a -- you

20    know, as long as it's a few weeks and we're making progress.

21             THE COURT:  So, I think we'll do this, then.  What

22    I'll do is -- the schedule that I set was going to go into

23    effect on July 1.  With respect to any cases that Mr. Harang

24    wanted to proceed on will go into effect on August 1, and I'll

25    say that Mr. Harang should file a status report by July 20th

```
1    as to what he intends to do for the other -- for the remaining
2    ten cases.
3              MR. HARANG:  Okay.  Thank you.
4              THE COURT:  And I don't see the need to have another
5    hearing about that.  You can file it and then I'll act in
6    response to that.
7              My thought with respect to the -- that is, if those
8    -- if you say no to all ten or any portion of the ten, they
9    move into one track and as to any you say yes on, they'll move
10   into the other track that I've already outlined the schedule
11   for.
12             MR. HARANG:  Yes, your Honor.
13             THE COURT:  With respect to the 13 that you are not
14   interested in and any of the ten that you've decided you're
15   not interested in, I think that we should follow the same
16   process that Mr. Schwartz followed with respect to what I'm
17   calling the "stayed cases" to provide notice to the clients of
18   the desire to withdraw.
19             My thought would be just to do it once.  Wait until
20   you decide whether it's 13, 14 or 23 and do one notice, then,
21   to everybody else, and then I will address any -- address that
22   request, that motion, the earlier motion, and any objections
23   once I hear -- once the time period for those people to
24   respond has run.
25             MR. HARANG:  I think, your Honor, that because the
```

1    way that the letter was sent to the clients on the original

2    large group of people, it's probably going to -- it's probably

3    going to have to -- at least I would feel more comfortable

4    including that whole group of people for some reason, because

5    it was -- there was an implication in the letter that I was

6    going to pick up their case.

7              THE COURT:  Oh, I see.

8              MR. HARANG:  And so, I've gotten 100 phone calls.

9              THE COURT:  Why don't you do this.  On July 20th, you

10   do two things:

11             One, you tell me which of the ten cases, if any, you

12   wish to proceed on; and, two, you file -- after confirming

13   with Mr. Schwartz and Mr. Cheffo, together you all file a

14   proposal for how to notify everybody the -- everyone else,

15   plus the ten, plus any of the 13, that pool of people, how you

16   want to notify them of the motions to withdraw and whether

17   you're going to file a new motion, whether it's -- as to some

18   people it will be a new motion, but as to the others, whether

19   you're filing a new file, which is just more notice of the old

20   motion, what you want to send to the clients, and a motion to

21   the Court to withdraw and a timetable of -- we'll send the

22   people the notice by this date.  We'll give them this amount

23   of time.  They should have at least three weeks, I think, to

24   respond, given most of these people we can presume will be

25   mailing things in rather than ECF filing.

```
1              MR. HARANG:  Yes, your Honor.

2              THE COURT:  Whatever notice to them should provide

3    the address of the Court with Ms. Simeone's name, attention to

4    her, and the docket of the MDL so that we can be reasonably

5    sure they will end up in the right place, and then a proposal

6    of how to do it.

7              MR. HARANG:  Yes, your Honor.

8              THE COURT:  And that's fine.  If you all agree to the

9    notice -- you've seen ones before similar.

10             MR. HARANG:  Yes.

11             THE COURT:  I think it would just be fine to proceed

12   with it.  You don't need a particular blessing from me as long

13   as the three of you agree that --

14             MR. HARANG:  Blessings are nice, your Honor.

15             THE COURT:  Yes, if you want the blessing, then you

16   can ask for it, but if you want to keep it moving --

17             MR. HARANG:  Yes, your Honor.

18             THE COURT:  All right.  So, I have no objection to

19   giving people more notice, and I wasn't planning on acting on

20   the others.

21             MR. HARANG:  I just needed a safety valve because

22   there was some indication in there that representation was

23   going to get picked up.

24             THE COURT:  Fine.  No problem.  I think it's better

25   to notify.  Any other issues with respect to all of that?
```

1          MR. HARANG:  I don't think so, your Honor.

2          MR. CHEFFO:  I agree with everything.  So, I think

3     we're on the same page, your Honor.

4          The only -- there's two kind of points I think that

5     just for clarification we should be thinking about.  The first

6     is we only want to send out notice once and we don't want to

7     get to a point and then have another three months.

8          So, I think -- one thing I'm concerned about I think

9     we can address pretty easily is -- I think our old assumption

10    is once Mr. Schwartz and Mr. Harang pick those cases and

11    ultimately move to withdraw, we're assuming those will be pro

12    se cases so the Court can address them.

13         I think to make sure that is, in fact, the case --

14    there are some people who may have been on complaints five or

15    six years ago who are kind of out there.  I think it might be

16    helpful if your Honor were to just, basically, put something

17    on the ECF filing saying if you believe you represent any of

18    these people, please file a notice of appearance or apprise

19    the Court.

20         The reason I say that is because we don't want to

21    work out all of this, send notice out and then, you know,

22    somebody comes forward and says, Oh, you know what?  I was on

23    the complaint.  Now I have to move to withdraw.  I think it's

24    easier to identify those lawyers, if there are -- I don't

25    believe there are any, but because this record is a little bit

1     unclear, I'm trying to avoid --

2           THE COURT:  I understand the idea, but tell me

3     exactly --

4           MR. CHEFFO:  I guess, you know, in a perfect world,

5     your Honor, it would be something that -- it would be an order

6     from the Court, basically, on ECF saying with respect to the

7     Schwartz cases -- and we can denominate them in any way that

8     you want -- to the extent that you believe that you were

9     counsel of record or you have an intention to represent or

10     believe you currently have, you know, an attorney/client

11     representation with any of these people, please file a

12     subsequent notice of intent to proceed as counsel.  I'm not

13     being very articulate in that.

14           THE COURT:  So, what you want me to do is you all

15     file a list that says these are the individual people in the

16     Schwartz cases and the two -- the individual case docket

17     number under -- in addition to the 04-10981 docket number, and

18     you want me to issue an order that says Attorneys Harang and

19     Schwartz intend to withdraw or are seeking to withdraw from

20     these cases as counsel of record.  If you believe that you are

21     also counsel of record in this case, then you shall file a

22     notice of appearance within seven days.

23           MR. HARANG:  Exactly.  That will do two things:

24           One, it will alert us if there's cases that need to

25     proceed as those counsel, because then we'll do the 15

1  depositions --

2          THE COURT:  If somebody files a notice of appearance,

3  then they'll be in --

4          MR. CHEFFO:  Right.

5          THE COURT:  -- so we won't have a pro se issue and if

6  they don't, it will be clear later that there was no lawyer.

7          MR. CHEFFO:  Exactly.  Or there may be people who are

8  somewhat similarly situated as Mr. Harang and Mr. Schwartz

9  saying, Oh, you know what?  I am on the complaint --

10          THE COURT:  My only concern I have with that is that

11  -- apropos of the most difficult contract to break, the one

12  that says, "I will sell you my car for $500," then does it

13  raise the implication that in other cases in this MDL, where I

14  have followed a similar kind of procedure without that step,

15  that for people proceeding pro se, that I should have done

16  that or that, in fact, there's an issue there?

17          MR. CHEFFO:  Well, you raise a fair point, your

18  Honor.  I just think --

19          THE COURT:  I mean, here's the thing as a practical

20  matter.  I'm not aware of any anybody else -- no one else has

21  shown up in court on behalf of anybody Mr. Schwartz has

22  represented other than Mr. Harang, Mr. Schwartz or people in

23  the law firm of Mr. Schwartz.  I believe that the withdrawal

24  by Mr. Schwartz's law firm encompasses all those people who

25  work for them and, obviously -- I don't recall the gentleman's

1   name, but he worked for Mr. Schwartz and left in February.

2          MR. SCHWARTZ:  Stegall.

3          THE COURT:  Stegall.  I don't know that he's filed a

4   withdrawal, but he -- I don't understand him to be

5   representing them anymore because his employment with the

6   Schwartz law firm has terminated.  And so, I'm not sure it's

7   necessary to clear the ambiguity.  I'm not aware of anyone

8   else whose name is on the complaints unless -- these

9   complaints unless you know of one.

10          MR. CHEFFO:  Well, that's the thing.

11          The reason why it was brought to a head, because a

12   few weeks -- and I'm not sure if it was inadvertent or not,

13   but someone from Mr. Schwartz's office filed a notice of

14   appearance on behalf of Higgenbothem's firm in West Virginia.

15          THE COURT:  I'm sorry.  Who are we talking about,

16   now?  Who is the plaintiff?

17          MR. SCHWARTZ:  That would have probably been Pastine,

18   but he was originally a Pennsylvania filing by Mr. Sacks and

19   Mr. Harang.  That was inadvertent.  We had talked with a

20   lawyer with Mr. Higgenbothem's firm --

21          THE COURT:  Well, with respect to -- hold on.

22          MR. CHEFFO:  Let me take a step back.

23          This is the complication.  I'm with you.  I don't

24   want to set -- you know, kind of redo anything, because I

25   think everything that's been done has been perfectly proper

     1     and there doesn't need to be any new notice.  The only thing --

     2               THE COURT:  Did I get that right?

     3               MR. CHEFFO:  Yes, you did, your Honor.  It's on the

     4     record, officer of the Court.

     5               But, you know, if you take a step back, there was

     6     initially 225 folks who were plaintiffs in only a few

     7     complaints.  They were just multi-party complaints.  And

     8     recently -- and, again, this may have just been inadvertent,

     9     but I think it somehow raised kind of a complexity -- is

    10     someone from Mr. Schwartz's office filed a notice of

    11     appearance in one of those cases on behalf of a firm --

    12               THE COURT:  So, there was a -- who was the plaintiff?

    13               MR. CHEFFO:  There was like 50 plaintiffs in the

    14     case.

    15               THE COURT:  So, where was the case originally filed?

    16               MR. CHEFFO:  I think it was a Pennsylvania case.

    17               THE COURT:  And then it was transferred here as part

    18     of the MDL?

    19               MR. CHEFFO:  Correct.

    20               MR. HARANG:  I think they only made an appearance on

    21     behalf of --

    22               COURT REPORTER:  On behalf of?

    23               MR. HARANG:  Pastine.

    24               MR. CHEFFO:  P-a-s-t-i-n-e.

    25               MR. HARANG:  It's a deceased and wife.

```
 1              THE COURT:  Just so I understand the procedural

 2    context.  The complaint was filed in Pennsylvania.  It had

 3    approximately 50 plaintiffs in it.  It was transferred here as

 4    part of the MDL.

 5              Who were the lawyers who filed the complaint in

 6    Pennsylvania?  Was it Mr. Schwartz's law firm.

 7              MR. SCHWARTZ:  No.  Sacks & Weston.

 8              MR. HARANG:  Yes.

 9              THE COURT:  Sacks & Weston.

10              MR. SCHWARTZ:  Mr. Harang may have been on it.

11              MR. HARANG:  I don't believe I was.

12              THE COURT:  So, Sacks & Weston definitely filed it.

13    It was transferred here.

14              Did anyone from Mr. Schwartz's law firm ever file a

15    notice of appearance on behalf of any of those 50 people in

16    this Court?

17              MR. HARANG:  Yes, your Honor.

18              MR. SCHWARTZ:  Yes.

19              THE COURT:  All right.  And are they within -- what

20    happened to those 50 people or however many it was?

21              MR. CHEFFO:  Most of them have either been dismissed

22    previously or -- to answer your question, there's only three

23    complaints that encompass 225 or 250 people.  So --

24              THE COURT:  How did one of these people end up in

25    West Virginia -- or back in Pennsylvania?
```

```
 1              MR. SCHWARTZ:  They're from all over, your Honor.

 2     They're not specifically Pennsylvania residents, like Mr.

 3     Girard, who --

 4              THE COURT:  But why would we have sent the case back

 5     to West Virginia?

 6              MR. CHEFFO:  We didn't.

 7              MR. SCHWARTZ:  You --

 8              COURT REPORTER:  Excuse me.  One at a time, please.

 9              THE COURT:  She's right.

10              MR. CHEFFO:  The case is still before your Honor.

11     That's the issue.  All three of these complaints are still

12     before your Honor.  When we talk about these 23 people left --

13              THE COURT:  Yes.

14              MR. CHEFFO:  -- the 23, plus the 40, they're all

15     encompassed within the three complaints that are before the

16     Court.  You have not remanded anything.

17              THE COURT:  Right.

18              MR. CHEFFO:  And recently a notice of appearance was

19     filed --

20              THE COURT:  In this Court?

21              MR. CHEFFO:  In this Court, with one of those caption

22     names.

23              THE COURT:  In one of the three cases?

24              MR. CHEFFO:  Correct.

25              THE COURT:  For one party -- one of the plaintiffs in
```

```
 1    one of those three cases?
 2              MR. CHEFFO:  Well --
 3              THE COURT:  Or maybe for more, maybe for not.
 4              MR. CHEFFO:  That's the problem.
 5              THE COURT:  And by whom --
 6              MR. CHEFFO:  Somebody in Mr. Schwartz's office, for
 7    some reason, filed --
 8              THE COURT:  Filed a notice of appearance on behalf of
 9    Pastine.
10              MR. CHEFFO:  Yes.
11              THE COURT:  I understand.
12              MR. HARANG:  I'm familiar with the law firm in West
13    Virginia, your Honor, that represents that one person, and I
14    don't know why -- why there was -- a motion was filed to --
15              THE COURT:  But Mr. Schwartz's law firm filed a
16    motion to appear or the West Virginia law firm?
17              MR. SCHWARTZ:  No.
18              MR. HARANG:  I think he did on behalf of the West
19    Virginia law firm.
20              THE COURT:  How does one lawyer file a notice --
21              MR. HARANG:  I'm not sure of that, your Honor, but
22    the -- I think it was an artifact of the overall positioning
23    that he was going to withdraw from the case and --
24              THE COURT:  Who is "he"?
25              MR. HARANG:  Mr. Schwartz.  I'm sorry.
```

```
 1              THE COURT:  So, why is he filing a notice of
 2   appearance?
 3              MR. HARANG:  Because they would have been -- they
 4   were going to be their local counsel in this particular case.
 5   They are the personal lawyer, who --
 6              THE COURT:  Who is "they," now?
 7              MR. HARANG:  The Higgenbothem law firm.
 8              THE COURT:  In West Virginia?
 9              MR. HARANG:  Yes, your Honor.
10              THE COURT:  So, they were local counsel -- they were
11   the originating counsel?
12              MR. HARANG:  They were the originating lawyers.
13              THE COURT:  Right.  And then they -- did they decide
14   they wanted to appear in this action?
15              MR. HARANG:  I'm not sure of that.
16              MR. SCHWARTZ:  I can speak to that.
17              When we were pursuing -- Pastine was one of our first
18   two designated cases for remand, Pastine and Girard.  Girard
19   is a Pennsylvania resident.  He was, in fact, the lead
20   plaintiff of the 50 or --
21              THE COURT:  You want to withdraw from Pastine?
22              MR. SCHWARTZ:  We've withdrawn from all of them now,
23   but I --
24              THE COURT:  So, what's the notice of appearance that
25   you filed?
```

1          MR. SCHWARTZ:  It was done before we were intending

2     to withdraw because local counsel in West Virginia --

3          THE COURT:  Originating counsel?  I view local

4     counsel as people who are members of the Massachusetts bar and

5     members of the bar of this Court who show up on behalf of

6     lawyers who are admitted in other districts but aren't

7     admitted in this district, but are appearing pro hac vice.

8     Just so I'm -- I hate to be literal, but you can -- that

9     confused me.

10         So, you're speaking of them not in the local counsel

11    sense that I am?

12         MR. SCHWARTZ:  No.

13         THE COURT:  You mean in the sense that they're in the

14    jurisdiction where the plaintiff lives and they were the

15    lawyers who originated the case and brought it to you?

16         MR. SCHWARTZ:  I was not even in these cases when

17    Sacks & Weston -- and I'm pretty sure Mr. Harang also appeared

18    as filing the complaint for the Pennsylvania residents --

19    Pennsylvania claimants Girard, et al., G-i-r-a-r-d.  One of

20    them is a Samuel Pastine, deceased, by the widow.  I can't

21    recall her name now.  When we were preparing to --

22         THE COURT:  Here's what I want to know, okay?

23         One, do you want to be a lawyer in that case?

24         MR. SCHWARTZ:  No.  No.  We're withdrawing from

25    everything.

```
 1              THE COURT:  You're withdrawing from all of them?

 2              MR. SCHWARTZ:  We've done that.  We've done that.

 3    We've withdrawn.

 4              THE COURT:  Two, before you wanted to -- before you

 5    filed your request to withdraw, you filed a notice of

 6    appearance on behalf of these lawyers from West Virginia?

 7              MR. SCHWARTZ:  That's correct.  And they did not --

 8    evidently, Mr. and Mrs. Lo --

 9              THE COURT:  And they do or don't want to appear in

10    this case?

11              MR. SCHWARTZ:  They disclaim --

12              THE COURT:  They don't want to?

13              MR. SCHWARTZ:  They do not.  They filed -- not

14    formally, but they have advised us they do not want to

15    appear -- when I withdrew, I said if you're interested, you

16    better pick up this case and -- you know, I did give them the

17    courtesy, as we did every client.

18              THE COURT:  Sure.  They said thank you very much for

19    the courtesy, but no thank you?

20              MR. SCHWARTZ:  That's the latest I understand it to

21    be from the Higgenbothem firm and for another reason -- Mr.

22    Harang has separate --

23              THE COURT:  Okay.  So, this is what I think should

24    happen as to that notice of appearance:

25              That notice of appearance -- as I understand the
```

1   circumstances, your office filed -- Mr. Schwartz, filed a

2   notice of appearance in a case on behalf of at least one

3   plaintiff in that case by a lawyer, this law firm,

4   Higgenbothem law firm in West Virginia.

5        Since you and your office filed it, you need to

6   determine whether that filing was correct or whether it was in

7   error.  If it was in error, inadvertent, miscommunication,

8   change, whatever, but at the time that it was filed, they did

9   not intend and wish to be lawyers, file notices of appearance,

10  and I think what you need to do is file a motion to vacate or

11  withdraw that notice of appearance on the grounds that it was

12  inadvertently filed or filed in error.  And I don't need to

13  know all of the -- whatever attorney/client work product

14  communications might have or might go back and forth.  If it

15  was filed -- you know, if you filed a notice of appearance and

16  it was filed in error, then absent somebody saying it wasn't

17  in error, I'm going to allow that and it will be withdrawn and

18  they won't be lawyers of record.

19       Alternatively, if they want to be lawyers of record

20  in that case, then they should -- instead of you filing a

21  motion to withdraw, they should file a notice of appearance,

22  which would reaffirm, in effect, the earlier filing and then

23  we'll know and a document on -- that they sign under their

24  signature, just like any other notice of appearance, and then

25  we would know that they are appearing on their behalf.

1    MR. SCHWARTZ:  Do you want a motion from them to

2  withdraw if it was inadvertently filed?  Because at the time

3  they may have intended to be joining the case.  Do you want my

4  withdrawal notice --

5    THE COURT:  I see.  It may be that they wanted to

6  appear then.

7    MR. SCHWARTZ:  That's correct.

8    THE COURT:  But now they don't want to appear.

9    MR. SCHWARTZ:  That's correct.  And you want a

10  withdrawal from them or my firm only to --

11    THE COURT:  Well, that depends.  I think, at a

12  minimum, you should move to withdraw it, but if they don't

13  want to be in, they should file it, too.

14    MR. SCHWARTZ:  Good.  We'll get both.

15    THE COURT:  Both would be better.  All right.  That

16  would, I think, more clearly resolve that issue than this

17  other notice.

18    MR. CHEFFO:  That's what I was thinking of, and I

19  think you addressed the specifics and I think that's fine.

20    THE COURT:  Okay.  All right.

21    Any other -- I think, as a general matter, at least

22  in this Court -- I think at least in this Court, I would

23  suggest all of you, to the extent -- this case, obviously, has

24  a somewhat further life -- that you not be filing notice of

25  appearances for other people.  I think lawyers should only

```
 1    file notice of appearances for themselves and those within
 2    their firm and that if a notice of appearance -- but lawyers
 3    should not file notice of appearances for lawyers in other
 4    firms.  If the lawyer in the other firm wants to appear, then
 5    that lawyer should file a notice of appearance.  I think it
 6    will be better for -- it will be clearer for the Court.  It
 7    will be clearer for the client.  It will be safer for -- I
 8    think if another lawyer tells you that he wants to appear,
 9    then you don't help yourself by filing a notice of appearance.
10    It would be better not to file a notice of appearance and tell
11    him or her to file it than for you to file it, because once
12    people are in, it's different.
13             All right.  Anything else about these Schwartz cases?
14             MR. CHEFFO:  Just very quickly, your Honor.
15             The only thing -- and it is really probably a preview
16    at this point, something that we'll maybe be addressing in a
17    few months, but we've had a process in place where the pro se
18    cases have been remanded.  I know that's been brought to the
19    Court's attention.  I would just ask the Court to explore
20    whether --
21             THE COURT:  That's on my list.
22             MR. CHEFFO:  Okay.
23             THE COURT:  That's all right.
24             My question to you, really -- you raised it last time
25    that you wanted something different done with the pro se
```

```
1    cases, done differently than cases in which counsel has
2    withdrawn.  And so, I say to you, Well, what do you want us to
3    do?
4              MR. CHEFFO:  Sure.
5              The reason why we're asking for it, your Honor, is
6    because we've had a little bit of history now and experience,
7    and, you know, the vast majority of these cases folks just
8    don't show up or they don't have experts, and it's not just a
9    burden on Pfizer, which it is, but, frankly, to some of the
10   magistrate judges who get the laboring oar and have to write,
11   you know, a seven- or eight-page decision saying that you
12   can't proceed without an expert, just -- you know, it's fairly
13   burdensome, particularly now if there's going to be 70 or 80
14   cases that are going to be sent back to district --
15             THE COURT:  So, what do you want me to do?
16             MR. CHEFFO:  So, a few -- I probably give you a few
17   different levels.  The first and easiest would be some type of
18   just requirement that the folks come forward, indicate that
19   they intend to proceed with their lawsuits.  So, when people
20   who have lost touch completely, rather than just remanding it,
21   they have to actually file something.  That would be the
22   easiest and least burdensome on people.
23             The next, I think, level would some indication as to
24   the experts, an understanding that they have to have experts,
25   and either require them to have a certain period of time to
```

```
 1      identify the experts or something short of that, just a
 2      statement that they have a reasonable expectation that they've
 3      contacted or will be able to contact an expert to proceed.
 4      Because that's really how most of these cases are getting
 5      dismissed, but it takes three or four months of summary
 6      judgment practice in order to -- because the courts then set
 7      deadlines.  They don't have an expert.  We move for summary
 8      judgment and they're granted, and it's just a fairly
 9      cumbersome task.  So, I think --
10              THE COURT:  You want, essentially, two requirements:
11              One, that the plaintiff notify the Court of his or
12      her intent to proceed so that those plaintiffs who have lost
13      track of their cases or lost interest in their cases and don't
14      wish to proceed, the Court, it would be your suggestion, would
15      then summarily dismiss for failure to prosecute or something
16      like that?
17              MR. CHEFFO:  Yes, your Honor.
18              THE COURT:  And then those who notify the Court in
19      writing that they wanted to proceed, that the Court should
20      say, You have a period of time to designate experts in some
21      fashion and copy to plaintiffs -- to defense counsel notice to
22      the Court of it occurring, and if they don't do it, then issue
23      an order that says you didn't do it.  It's an order of the
24      Court.  And you have to prosecute your case and give you a
25      further period of time to do it and if they didn't do it then
```

1    in response to that, then you say I should -- the Court should

2    dismiss the case either for failure to prosecute or a

3    sanction?

4            MR. CHEFFO:  Yes.  It's actually summary -- you know,

5    that's really what's happening.  So, we're not, I don't think,

6    asking this Court to do anything that is, frankly, different

7    than if you were to remand these types of cases.  The first

8    thing we would do with the various magistrates around the

9    country is say, Can you please set an order regarding expert

10   testimony?  And the Courts typically do, and then they all

11   meet them or if they -- so, that's really --

12           THE COURT:  I'll tell you, just to throw out for you,

13   one of the concerns that we've had and one of the reasons we

14   thought about sending the pro se cases back, is it's one thing

15   to make Mr. Schwartz and Mr. Harang and you troop up here to

16   Boston from somewhat substantial distances to appear in cases.

17   It's quite another for a pro se litigant to be required to

18   litigate their case in a faraway court and it's quite another

19   thing for them to be able to litigate it in a forum that at

20   least presumably is closer to home.

21           It's not clear to me, now that you've raised this

22   issue about Mr. Pastine, if, in fact, by remanding these

23   cases, we're necessarily remanding it to jurisdictions that

24   are closer to the plaintiff, but that was at least a thought

25   in our mind.

1          MR. CHEFFO:  And I appreciate that.

2          I think that -- you know, what I'm -- my suggestion

3    or request for the Court is to, basically, accommodate that.

4    So, I'm not saying that, you know, have a hearing where the

5    people need to come here personally --

6          THE COURT:  No.  Just in writing.

7          MR. CHEFFO:  All they have to do is basically say,

8    you know, I have this expert.  Here's what I've done.  I have

9    a good-faith intention of proceeding.  And even if we wind up,

10   then, with 10 or 15, we've eliminated 60 or 70 cases.

11         THE COURT:  What do you say, Mr. Harang?

12         MR. HARANG:  I'm --

13         THE COURT:  Sort of as a --

14         MR. HARANG:  I don't have a dog in the fight at this

15   exact moment, but I believe, as I followed the litigation, by

16   allowing the general causation experts to be taken to be

17   ubiquitously used among all of the litigants, that these

18   people by that fact have an expert, if it's to be a general

19   causation expert, or whatever.  I think when you're dealing

20   with a case with specific experts that may address their

21   cases, which takes it out of the arena of this Court.

22         And I know that's not what you would like me to say,

23   but I just believe that those people have a real due process

24   question that comes up and when you say you -- they write to

25   them and say, Do you have an expert, when, in fact, they kind

1    of do and --

2          THE COURT:  What about -- and then specific causation

3    is really not an issue for this Court because it's not within

4    the MDL.  That is sort of a case-by-case adjudication and --

5          MR. HARANG:  But I think the letter that's saying --

6    doesn't include that part of it, do you have any intention of

7    pursuing this through either a local lawyer or obtaining

8    another lawyer and proceeding yourself, would probably answer

9    the Court's question as to whether they intend to proceed and

10   maybe you can dismiss their action on that basis.  So, I think

11   that there's a little bit of a two part to that, because some

12   of these people are -- some of them, as I looked back at some

13   of these files, just don't respond at all, and I'm sure that's

14   been your experience, too, as if they just -- for whatever

15   reason, your Honor.

16         THE COURT:  All right.  I'll think about this and

17   there's nothing to do at the moment.  I think if I do

18   something like that, I shouldn't do it until after July 20th,

19   when Mr. Harang has determined which of the cases he intends,

20   if any, to keep out of the ten and -- so that if I do

21   something like that, I do it once for everyone.

22         So, what I suggest to you -- it's on my list of

23   things that we need to do or at least I need to consider doing

24   before we're done.

25         What I would say to you, Mr. Cheffo, is when the

1    notice process is done for withdrawal and I've resolved to

2    allow or not address the motion to withdraw by Mr. Harang and

3    Mr. Schwartz and that process is complete, then file a motion,

4    if I don't have a hearing scheduled, which I probably won't,

5    to suggest some -- what you want along these lines or

6    something along these lines, and then I'll either consider on

7    the papers or decide it and that will be the time to do it.

8             I had a couple more items on my list that don't

9    relate to Schwartz cases, but when I have you here, I would

10   like to just go over.

11            There were four cases last time, Mr. Cheffo, you

12   reported in which plaintiffs were represented by other

13   counsel.  Are those cases -- what's happened with those cases?

14            MR. CHEFFO:  Your Honor, I'm sorry, I don't actually

15   know what's happened.  I know we've moved to dismiss on a few

16   cases recently.

17            THE COURT:  Today I noticed that.

18            MR. CHEFFO:  Yes.  And the reason why I'm pausing is

19   because I can't tell you -- and I apologize.  I should have

20   looked at this.  I'm not sure if those were cases -- because

21   those are actually -- they were once represented.  So, I'm not

22   sure if there's an overlap, but those are the cases.  If not,

23   I can file something --

24            THE COURT:  So, here's what I'm wondering about:

25            What I see left in this litigation before we're ready

```
 1    to close this MDL is the following:
 2              One, the completion of the process of the motions to
 3    withdraw with respect to the Schwartz cases.  Two, if Mr.
 4    Harang takes any of the cases, the discovery in those cases.
 5    Three, once the withdrawal process is adjudicated and
 6    resolved, considering whatever you would like to do with
 7    respect to the pro se cases and either we'll do something
 8    differently or we won't.  Then we'll need to remand those pro
 9    se cases and at some point -- those that remain.
10              And then, lastly, I have on my list that there are
11    four -- there were four cases.  I don't know the names or
12    numbers.  That there were four cases in which plaintiffs are
13    represented by other counsel other than Schwartz.  And I
14    thought you were going to file a motion proposing what you
15    should do with those cases.  And I'm not positive that those
16    cases haven't been resolved since I last saw you, but that's
17    what I have on my list.
18              I think, in addition, there were two cases in which
19    the Finkelstein law firm had withdrawn from that were -- I had
20    given time to the plaintiffs to find another lawyer and I
21    think Judge Saris has now dismissed those cases.  So, I think
22    those are done.
23              I don't think that there's anything else on the
24    products liability side of the case that remains to be done.
25              MR. CHEFFO:  That's right.
```

```
 1              One case I do know about is -- it may have been part
 2     of the four -- is the Santos case.  You may recall, we
 3     actually made a motion for summary judgment on that on the
 4     statute of limitations.  It turns out it's a Stevens-Johnson
 5     Syndrome case, which is kind of separate from some of the
 6     issues.
 7              So, what -- I, frankly, don't recall if it was you or
 8     Judge Saris.  I think it might have been Judge Saris -- issued
 9     an order saying, on reflection, she's going to remand that
10     case.  It's something that is outside the purview of -- she's
11     not going to decide it.  We can make that motion.  I think
12     it's from Connecticut, if I recall.  So, that's probably
13     something that just needs to be remanded at this point.
14              THE COURT:  So, you think she's entered the order,
15     but not the remand order?
16              I think what you should do on that is first call
17     Judge Saris' courtroom deputy, Maryellen Malloy, and apprise
18     her of -- tell her the docket number, Judge Saris did this.
19     Can you just remand it or do you need us to file a motion to
20     remand it in light of that?
21              And then I think the last thing that needs to happen,
22     not until we're done with the discovery in Mr. Harang's cases,
23     but -- at some point, but -- and at that point, certainly --
24     is you need to make a motion to remand any cases that are left
25     so we know that -- because each one, I think, gets remanded
```

```
1    individually and -- each case, not each plaintiff.
2            And so, we should do that before we close the MDL,
3    and it will probably be -- you're the only party that's in
4    every case.  It would be useful to have that.  I mean, you can
5    do it earlier and then we can do for all the ones now and then
6    later for other ones, but at some point there should have been
7    a filing that says -- there should be a filing that says,
8    We've reviewed the law.  These are the ones we think need to
9    be remanded that are left.  Please remand them.  Perhaps it's
10   -- has more description, perhaps not, depending on what is
11   necessary, and at that point we think it's done.  I don't
12   think you need to do that now, but I think that's, perhaps,
13   the last thing that ought to happen.
14           MR. CHEFFO:  Agree, your Honor.  We will prepare that
15   so we'll be ready for that.
16           THE COURT:  Great.  All right?
17           MR. HARANG:  One last thing.
18           THE COURT:  Yes.
19           MR. HARANG:  To put your geographical concerns aside,
20   where Mrs. Pastine lives in West Virginia is right next to
21   Pennsylvania.  It's right on the northern tip.
22           THE COURT:  That's the problem living east of the
23   Hudson River.
24           MR. HARANG:  The distance is not as great as it may
25   seem in our heads.
```

```
 1              MR. SCHWARTZ:  One last matter before I withdraw.
 2              The four names you mentioned, one sticks out in my
 3     mind.  At either the April 9th or the May 23rd hearing, Mr.
 4     Cheffo mentioned a multi-plaintiff, two hundred or so, in
 5     which Mr. Girard was involved, and I've asked him and I ask
 6     him again to note who that lawyer is, because I, having
 7     withdrawn from Mr. Girard, we're continuing to get
 8     confidential, privileged communications from a certain party
 9     that I would like to send to the lawyer and at least offer him
10     on my part the file I have if he's going to take the case.
11              Now, in fairness to Mr. --
12              THE COURT:  So, you think that there's a lawyer named
13     Girard or a plaintiff?
14              MR. SCHWARTZ:  No.  No.  A lawyer appearing -- the
15     lawyer's name is not disclosed and I couldn't find it on a
16     hurried check on Pacer, who appeared filing a multi-plaintiff
17     complaint.  And Mr. Cheffo can correct me if I'm wrong.  It's
18     one of those two hearings that Mr. Girard was included in a
19     multi-plaintiff filing.  I don't know who the other multi-
20     plaintiffs were, but --
21              THE COURT:  Were you on that complaint?
22              MR. SCHWARTZ:  No, of course not.  Of course not.  I
23     don't even know about it.
24              THE COURT:  I see.  And the client is writing --
25              MR. SCHWARTZ:  No.  No.
```

```
 1              THE COURT:  The plaintiff is writing you?
 2              MR. SCHWARTZ:  No.  We're writing the plaintiff --
 3              THE COURT:  Writing --
 4              MR. SCHWARTZ:  -- and we have not heard from the
 5    plaintiff, Mr. Girard.  We sent him the notice --
 6              THE COURT:  But why are you sending the notice if you
 7    never represented him?
 8              MR. SCHWARTZ:  Oh, we did.  We were representing him
 9    originally.  Judge, you're confusing two things.
10              Mr. Girard, as I said earlier today and previously,
11    was not only a plaintiff, he was the named plaintiff in Mr.
12    Sacks and Weston's original complaint in Pennsylvania.  I
13    think in the eastern --
14              THE COURT:  So, in Pennsylvania's complaint Mr.
15    Girard is the named plaintiff?
16              MR. SCHWARTZ:  Right.
17              THE COURT:  The first plaintiff?
18              MR. SCHWARTZ:  Recently --
19              THE COURT:  You didn't sign that complaint.
20              MR. CHEFFO:  No.
21              THE COURT:  But at some point you filed a notice of
22    appearance on behalf of the parties in that?
23              MR. SCHWARTZ:  No doubt.  No question about that.
24              THE COURT:  I see.
25              MR. SCHWARTZ:  Now, recently, April 9th or May 23rd,
```

```
 1     a hearing in this courtroom, Mr. Cheffo, from my notes, said
 2     that a recently -- maybe I misunderstood -- that a
 3     recently-filed complaint -- how you get around the statute, I
 4     don't know -- included Girard.  And all I know -- want to know
 5     is if some other lawyer is appearing to represent Mr. Girard,
 6     I would want to --
 7             THE COURT:  I think what you need to consider is
 8     those lawyers who filed that complaint --
 9             MR. SCHWARTZ:  No.  They've been out of the -- Sacks
10     & Weston had withdrawn six years ago.
11             THE COURT:  They withdrew a long time ago.  Okay.
12             MR. SCHWARTZ:  I entered when they left.
13             THE COURT:  I see.
14             MR. SCHWARTZ:  In 2005, 2006.
15             THE COURT:  So, you can talk to Mr. Cheffo about this
16     and if there is another -- if Mr. Cheffo or Pfizer is aware of
17     a complaint filed somewhere in which Mr. Girard is making the
18     same claims he's making here and something needs to be
19     addressed by this Court about it, then all of you can let me
20     know, but short of that, we'll leave it be.
21             MR. SCHWARTZ:  It's not required, but as a courtesy
22     to whoever his lawyer is -- we're sending everything --
23             MR. HARANG:  If there is a lawyer.
24             MR. SCHWARTZ:  If there is a lawyer.
25             THE COURT:  Do me one favor.
```

```
 1              MR. SCHWARTZ:  I'm sorry.

 2              THE COURT:  Do me one favor.

 3              MR. SCHWARTZ:  Sure.

 4              THE COURT:  As a courtesy, do not file a notice of

 5    appearance on behalf of that lawyer here if you find out who

 6    it is.

 7              MR. SCHWARTZ:  We are not.  And if it was done --

 8    Pastine -- we will get a disclaimer.  I'm sure their lawyer,

 9    Mr. -- the Higgenbothem firm has since sent us a letter saying

10    they are not in the case.  And let me explain again, Judge,

11    because it's all in good faith.

12              THE COURT:  I don't have any doubt about that.

13              MR. SCHWARTZ:  When we were going to move to -- our

14    number-one target -- the number-two targets were Girard and

15    Pastine.  We notified West Virginia counsel because Mr.

16    Pastine died in West Virginia and we were going to need a

17    local counsel upon remand to prosecute the case in West

18    Virginia and one of their lawyers in the Higgenbothem firm

19    said they are very interested and being local counsel in West

20    Virginia after remand from this Court.  Thereafter, either Mr.

21    or Ms. Lo inadvertently -- and we're going to get that cleared

22    up by --

23              THE COURT:  Fine.

24              MR. SCHWARTZ:  -- probably sunset today or if not,

25    before the Fourth of July, that they are not interested and we
```

```
1    have withdrawn from it, but I just want to be sure that if Mr.

2    Girard -- or some other lawyer is appearing for him, I've got

3    a duty to notify that lawyer and send him copies --

4              THE COURT:  Sure.  So, you talk to Mr. Cheffo about

5    it.

6              MR. SCHWARTZ:  Sure.

7              THE COURT:  If Mr. Cheffo doesn't know about it and

8    if you don't know who it is, then -- and it's probably not --

9              MR. SCHWARTZ:  Now, may I be excused permanently or

10   at least excused?

11             THE COURT:  No.  You don't need to appear -- you

12   don't need to appear here anymore.

13             MR. SCHWARTZ:  Okay.

14             THE COURT:  Okay.  You don't.

15             I'm not allowing your withdrawal yet because we

16   haven't finished that process.  You provided the notice, but

17   there's 23 people we haven't -- you didn't provide notice to,

18   and that's fine, because I didn't ask you to provide notice to

19   them yet because if Mr. Harang is coming in for them, you

20   don't need to provide notice.  He's appearing for them.  And I

21   would just allow your withdrawal in the ordinary course.

22             He's thinking about those 23.  There's 13 we know

23   he's not coming in on.  There's ten we don't know what he's

24   doing.  By July 20th he's going to tell me about those ten.

25   Once he decides, there's going to be another round of notice
```

1    to the 13 he's not taking who haven't received notice yet,

2    plus any one of the ten who he decides he's not taking, plus

3    -- because Mr. Harang would like to be extra careful, and

4    that's fine, there's going to be -- he says he'll do a round

5    of notice to everybody, all the people he already sent notice

6    to, that will advise them of your and his desire to withdraw.

7         After that there'll be a period of time for each of

8    those individual plaintiffs to object to the request to

9    withdraw and to send their objection in writing to the Court,

10   attention Ms. Simeone.  21 days is what I suggest is a

11   reasonable period of time to allow them to do that.

12        I will then review those objections.  In all

13   likelihood, though I'm not prepared to answer in advance, as

14   to any plaintiff that does not object, I will allow the motion

15   to withdraw.  As to any plaintiff that does object, I will

16   review the objection and do one of the following things:

17        If I feel the objection is not -- either not

18   meritorious or is an objection upon which I can rule on the

19   papers of the objection and the motion, I'll simply rule on

20   them.  If for some reason I think that the objection is of

21   such a nature that it merits either a supplemental written

22   submission from you or Mr. Harang, I will issue an order

23   saying that, and if I think it was of such a nature that it

24   was appropriate to have a hearing, I'll have a hearing, and

25   which I would allow the pro se plaintiff to come by phone and

1    I would consider allowing you to come by phone.

2            After that I'll resolve those motions, after that

3    process, and at that point you'll have a determination in all

4    -- I don't think I have yet allowed -- required a lawyer to

5    remain in a case -- in this case after he or she has sought to

6    withdraw, even over the objection of a client, because the

7    objections I've seen to date were not objections that I

8    thought were sufficient to overcome the reasons for

9    withdrawal.

10           I have -- I will tell you, Mr. Schwartz, it's

11   possible I will want you to come back for a hearing on one of

12   those, but at the moment I don't anticipate that.  I have had

13   a handful of hearings in this MDL over the years where -- with

14   plaintiff's counsel and with their clients, sometimes the

15   clients in person, sometimes on the telephone, to address

16   questions about withdrawal, but it would be my hope to not do

17   that because you come from far away and it's a burden and

18   because the client comes from far away and it's a burden.

19           So, you have no obligation at the moment to come back

20   to this Court in this case at any time.  You are not yet

21   discharged from the case because the motions to withdraw are

22   pending, pending this process.

23           You have no -- I know of no obligations you have to

24   conduct discovery or prosecute the cases by way of formal

25   activities at the moment because nobody -- I'm not requiring

1    anyone to take any discovery as to those cases that do go

2    forward, the ones Mr. Harang might take, or if some for reason

3    I decide that I wouldn't let you out in a particular case for

4    some reason, then this period of time would not be held

5    against you in the discovery process.  I would look to where

6    we were when this process began and then decide, okay, what

7    should I do.

8           And so, I think you're reasonably comfortable in

9    waiting out this process in terms of pressing the cases

10   forward until this process completes itself, and then at that

11   point, absent a powerful or reasonable objection from a

12   client, in all likelihood what you will see then is a decision

13   by the Court allowing you to withdraw and then you would be

14   done.

15          MR. SCHWARTZ:  The only thing that I question on what

16   you said is as to the 23, Mr. Harang has stated earlier that

17   my letter to the client, those 23 that we were withdrawing and

18   that the hearing was going to be yesterday at 3:30 and --

19          THE COURT:  No, I don't think that the -- if I recall

20   correctly, (A) I don't believe I required you to send notice

21   to the 23, and (B) I don't think I told those people that the

22   -- that there would be a hearing on the motion to withdraw

23   yesterday.  And, in any event, nobody -- we're not aware of

24   anyone coming yesterday looking for that hearing.

25          MR. SCHWARTZ:  And Monday, the 25th, we sent another

1    letter saying they've been changed to 10:30 -- 11:30 today

2    with -- now, Mr. Cheffo can correct that.  We sent them copies

3    of these.  In fact, we pre-copied Mr. Cheffo to be sure there

4    was no objection as to the form or the wording wasn't --

5    didn't meet compliance with the Court's orders.

6              Did we not notify the 23?  It was copied to you.

7              THE COURT:  It doesn't matter whether you notified

8    the 23 because we're going to notify those members of the

9    23 --

10             MR. SCHWARTZ:  Okay.  That's fine.

11             THE COURT:  -- who Mr. Harang is not taking again and

12   we're going to give another notice to all the other people

13   again, anyway.  So, that will give some people -- somebody who

14   didn't object -- and I'm only aware of one or maybe two, but I

15   don't recall at the moment -- who didn't object will have a

16   second bite at the apple, if you will.  If they file an

17   objection in response to what Mr. Harang sends out, then I'm

18   going to deal with it, notwithstanding the fact they didn't

19   file an objection in response to what you sent out.

20             So, I think that's it for you, Mr. Harang.  July

21   20th, which, if any, of the ten you want.  Plus, you will

22   notify me then of -- you're sending a notice to everybody.

23   You're giving them 21 days and you'll file a motion to

24   withdraw in all of cases that you want to withdraw from.

25             I think, if you wish, you could file one motion to

1    withdraw, captioning the docket numbers and listing in the

2    motion all of the plaintiffs and then -- it will be simpler on

3    the docket, and then what you should do is serve on each of

4    those plaintiffs whom you're withdrawing from the motion to

5    withdraw, and if you want me to issue an order that you attach

6    to it, propose -- and July 20th -- an order that there has

7    been this motion to withdraw, that plaintiffs' counsel is

8    ordered to serve a copy of the motion to withdraw and this

9    order that I'm issuing on each plaintiff by both regular mail

10   and certified mail or whatever -- and whatever other means you

11   might have to reasonably contact them.  So, if you have an

12   email address, you should send it to them as well.  And that

13   each person has until -- if you file it on July 20th, I will

14   issue it, let's say, no later than July 27th, because I'm

15   actually away for a couple of days at a conference.  And so,

16   the 21 days -- you should say they have to notify -- why don't

17   we just say they have to notify the Court by August 31st.

18           MR. HARANG:  That seems like a good day.

19           THE COURT:  And then we'll come back from the end of

20   August and we'll see what objections we have and then we can

21   proceed from there.

22           MR. HARANG:  That sounds great, Judge.

23           THE COURT:  All right.  So, if you file the proposed

24   order, I'll act on it.  I'll issue the proposed order.  You

25   can then send your motion with the proposed order to everybody

```
 1    and then we'll have it and then at that point --

 2             MR. HARANG:  The process is I will withhold sending

 3    my notice until I get your proposed order.

 4             THE COURT:  You give me the proposed order and I'll

 5    allow it and I'll sign it and then you can attach it.

 6             MR. HARANG:  Thank you.

 7             THE COURT:  And run it all by Mr. Cheffo to make sure

 8    -- and there are other ones on the docket that I've issued in

 9    the past that you can use as a model.  I think the point is to

10    give them an opportunity to object.

11             I'm not inclined, I will tell you, unless you all

12    think -- if you all think it's necessary, I will do it, but

13    I'm not inclined to schedule a hearing that I notice in that

14    order, because my experience has been many people don't

15    object.  If people do object, they object in writing, and I

16    can deal with it in writing and decide if they want to have a

17    hearing -- if I want to have a hearing, to have the hearing

18    and then -- if a number of people object, it's hard to do them

19    on the phone one by one in a row to make sure they're

20    available.  It's easier to arrange it individually.

21             And, perhaps, what the order should say if they do

22    object, they need to list in their objection all of their

23    contact information, name, mailing address, their phone

24    number, so you have it, and their email address.  That's so

25    that Mr. Cheffo has it, if they have email.  All right?
```

1          MR. HARANG:  Thank you, your Honor.

2          THE COURT:  We're adjourned.  Thank you very much.

3     Have a nice weekend and holiday.

4          COURTROOM DEPUTY CLERK SIMEONE:  All rise.  This

5     matter is adjourned.

6          (Adjourned, 12:24 p.m.)

7

8

9

10

11          C E R T I F I C A T E

12          I, Catherine A. Handel, Official Court Reporter of

13     the United States District Court, do hereby certify that the

14     foregoing transcript, from Page 1 to Page 45, constitutes to the

15     best of my skill and ability a true and accurate transcription

16     of my stenotype notes taken in the matter of In Re: Neurontin

17     Marketing, Sales Practices and Products Liability Litigation,

18     Civil Action No. 04-10981-PBS.

19

20

     July 6, 2012              /s/Catherine A. Handel
21     Date                      Catherine A. RPR-CM, CRR

22

23

24

25